

August 31, 2021

**<u>VIA HAND DELIVERY AND ECF</u>**
The Honorable P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan
  United States Courthouse
500 Pearl St.
New York, NY 10007-1312

*In re: Google Digital Advertising Antitrust Litig., No. 21-md-3010-PKC*

Dear Judge Castel:

The undersigned firms—Boies Schiller Flexner LLP, Korein Tillery LLC, and Berger Montague PC—are interim co-lead counsel for the two proposed Publisher classes in *In re Google Digital Publisher Antitrust Litig.* (1:21-cv-07034-PKC) (the "Publisher Class Case").[1] The Publisher Class Case, which was filed before the case that is brought by the various state Attorneys General (the "State AG Case"), is one of several matters transferred to this Court as part of this MDL—*In re Google Digital Advertising Antitrust Litig.*, No. 1:21-md-03010-PKC ("MDL 3010").[2]  We write to advise the Court of specific information concerning the Publisher Class Case and to respond to the Court's Pre-Trial Order No. 1.

In addition to the Publisher Class Case, there are two other separately represented groups of publisher plaintiffs in this MDL: a group of thirteen regional newspaper publishers (the "Newspaper Group"), and the Daily Mail newspaper (collectively "Publisher Plaintiffs" or "Publishers").  Neither of those cases is a class action—in essence, they are optouts of the Publisher Class Case.  All of the Publisher Plaintiffs use Google's publisher tools to sell display advertising inventory on their websites.  They include newspapers, periodicals, and myriad other digital information providers, such as the music lyrics site run by named class plaintiff Genius Media.  Also consolidated, but not part of the Publisher Class Case or the opt-out publisher plaintiff cases, are cases brought by web advertisers, including on behalf of three proposed classes of such advertisers (collectively, the "Advertisers").

The Publisher Classes share the Court's desire to advance the cases now centralized before it efficiently and expeditiously.  We respectfully submit that given the various plaintiff groups' divergent theories of liability, goals, and interests, these cases should proceed by: (1) having the claims of the Publishers, the Advertisers, and the States proceed on separate but parallel and coordinated tracks, with separate representation for each plaintiff group; (2)

---

[1] The transferor court also appointed an Executive Committee of the three interim co-lead firms together with the Kirby McInerney LLP and Gustafson Gluek PLLC firms.

[2] We provide the Court with a hand delivered copy of this letter a courtesy copy of the Consolidated Amended Complaint in the Publisher Class Case.

Honorable P. Kevin Castel
August 31, 2021
Page 2

proceeding simultaneously with all motions to dismiss that Google or the other defendants may wish (and be authorized by this Court) to file in the parallel cases; and (3) proceeding with discovery concurrently across all of the cases, allowing document discovery—which had begun in several of the cases—to continue during the pendency of any motions to dismiss.

**I.      The Divergent Interests and Goals of the Various Plaintiff Groups Require Independent Representation, Concurrent Motions to Dismiss, and Coordination Rather Than Consolidation**

The Publisher Plaintiffs are creators and deliverers of online news, information, and services, using publisher-facing tools purchased from Google to sell display ad space on their web pages.  All Publisher Plaintiffs allege that Defendants Alphabet, Google, and YouTube engaged in a series of mutually reinforcing anticompetitive acts in adjoining markets to secure and maintain monopoly power over the markets for these publisher-facing tools, artificially inflating Google's charges to Publishers and suppressing the prices Publishers receive for their ad space.  Each Publisher Plaintiff group alleges that Google's conduct constitutes actual and/or attempted illicit monopoly acquisition and maintenance under Section 2 of the Sherman Act and seeks treble damages and injunctive relief.

The Publisher Class Case (like the opt-out Publishers) identifies the markets for three products: publisher Ad Servers, Ad Exchanges, and Ad Networks.  Publisher Ad Servers enable publishers to make their ad space inventory available for sale, to select the winning ad, and to "serve" that ad to the viewer.  Ad Exchanges match publishers seeking to sell online ad space with advertisers seeking to buy it, in an auction-like process.  Ad Networks cater to smaller publishers with more limited traffic, matching publishers with advertisers through a pooling of advertising inventory.

The other principal plaintiff groups in this MDL (Advertisers and the State AGs) have different and frequently divergent interests, goals, and claims.  Advertisers, for instance, necessarily purchase different tools in different markets to connect with the auction-processes to buy ad space from publishers.  While the Publisher Plaintiffs agree with the Google Advertiser Plaintiffs and the States that Google's anticompetitive conduct has caused publishers and advertisers alike to pay higher prices for Google's advertising tools than could be sustained in a competitive marketplace, the Publisher Plaintiffs *further* allege that Google's conduct has resulted in bid suppression, *i.e.*, an overall lowering of the amounts that advertisers pay, and thus that publishers receive, for digital ad space inventory.  Only publishers are injured by bid suppression because they receive less for their ad space than they would be paid in a competitive marketplace.  Advertisers as a group, by contrast, benefit from bid suppression because they receive the same ad space at a lower cost.  As a result of these differences, the transferor court appropriately recognized that separate counsel would be required in the Publisher Class Case and the Advertiser class case.  *See* Hrg. Tr., *In re Google Digital Advertising Antitrust Litig.*, No. 20-cv-3556, at 16-17 (N.D. Cal. Apr. 1, 2021) (questioning whether Publisher and Advertiser cases should have been related at all, concluding that "the advertiser claims overlap but are not the same as the publisher claims," and appointing entirely separate leadership groups).

Honorable P. Kevin Castel
August 31, 2021
Page 3

The States, meanwhile, which were the last of the plaintiffs' groups to file, pursue claims on behalf of their individual citizens—who are neither publishers nor advertisers—contending that consumers are injured when the price of advertising is artificially inflated resulting in added costs passed on by advertisers in the form of higher prices for the goods and services being advertised.  While Publisher Plaintiffs agree that advertisers on the whole pay inflated rates for advertiser tools because Google's anticompetitive conduct results in an outsized "take rate" from every advertising transaction, the States' position about damages flowing indirectly from harms to advertisers that are passed on to consumers is in tension with Publishers' claims that Publishers are not receiving enough compensation for their ad space inventory.  The States thus appear to have an interest in maximizing harms to advertisers (to argue the added costs were passed on to their citizens) while downplaying Publishers' bid suppression claims (which claim would justify higher prices for inventory, with more value going to publishers than Google's non-competitive take rate provides).

As a result of these differences, no single party or counsel can uncompromisingly advance all of the divergent theories of liability and damages at issue in this MDL without unfairly compromising the interests of some of the parties.  Indeed, courts regularly appoint separate and independent lead counsel when distinct groups of plaintiffs or classes seek to recover portions of the same overcharge or otherwise have partially conflicting claims or interests or are differently situated.  For example, this Court appointed three firms to serve as co-lead class counsel for direct purchasers (with nine additional firms appointed to a steering committee), three firms to represent the commercial end-user plaintiff class, and two firms to represent the consumer end-user plaintiff class in *In re Aluminum Warehousing Antitrust Litig.*, No. 1:13-md-2481, ECF No. 216 (S.D.N.Y. Mar. 6, 2014).  Likewise, this Court appointed separate firms to serve as co-lead counsel for (a) the over-the-counter plaintiff class actions; (b) the exchange-based plaintiff class actions; (c) the bondholder plaintiff class actions; and (d) other plaintiff classes (financial institutions, student loan borrowers, and homeowners) in *In Re Libor-Based Financial Instruments Antitrust Litig.*, No. 1:11-md-2262, ECF Nos. 90 & 206 (S.D.N.Y. Dec. 22, 2011).  *See also Goldsleler v. Bank of America Home Loans* No. 1:14-cv-7720, ECF No. 17 (S.D.N.Y. Oct. 14, 2014) (separate leadership for (a) a class of student loan borrowers; (b) a class of banks, savings & loans, and credit unions; and (c) a class of homeowners alleging artificially high interest rates).

The need for separate representation here is particularly acute because the States and the private class plaintiffs all seek to represent the interests of absent individuals.  *Cf. In re Joint E. & S. Dist. Asbestos Litig.*, 133 F.R.D. 425, 430 (E.D.N.Y. 1990) ("The court must be sensitive to the responsibility of class counsel to absent members . . . and will not countenance even the appearance of divided loyalties.").  In the class action context, the Second Circuit has emphasized that district courts are obligated to ensure that the plaintiffs and counsel appointed to represent the interests of absent class members must not have divided loyalties on issues that go to the heart of the underlying litigation.  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 231 (2d Cir. 2016) ("To avoid antagonistic interests, any fundamental conflict that goes to the very heart of the litigation, must be addressed with a structural assurance of fair and adequate representation for the diverse groups and individuals among the plaintiffs.").  Merely seeking different remedies, in certain circumstances, can require

Honorable P. Kevin Castel
August 31, 2021
Page 4

separate representation. *Id.* In short, because the different plaintiff groups have different interests and seek different remedies, each group must have separate counsel to represent its interests and goals zealously.

Even the other Publisher Plaintiffs—the Newspapers and the Daily Mail opt-outs that have chosen to litigate separately from the Publisher Class Case—pursue somewhat different claims against non-overlapping defendants and seek to recover on different damages theories. In similar cases involving multiple class actions and individual actions, courts consolidate only the cases involving plaintiffs with identical class claims—consolidating, for example, all direct purchaser class cases and separately consolidating all end-payor class cases—while coordinating all the consolidated cases under the same caption and docket for pretrial purposes.[3] Further, courts put class cases and individual cases brought by class members opting to pursue individual claims on parallel, but separate tracks. *See, e.g., In re Brand Name Prescription Drugs Antitrust Litig.*, 2000 WL 748155, at *1 (N.D. Ill. June 5, 2000); *In re Lincoln National COI Litig.*, Nos. 16-cv-6605, 17-cv-2592 (E.D. Pa.). This Court should do the same here.

Just as the various competing interests of the different plaintiffs' groups require the continued separate representations of their respective clients and proposed classes, so too each such plaintiff group should procedurally be permitted to pursue its claims on its own. Publisher Plaintiffs should not be dependent upon the positions taken by a potentially competing interest-holder to defend the claims, relevant markets, and liability and damages theories they allege, as would happen if only the State AG case were to proceed with motion to dismiss briefing while the private and class claims are held in abeyance. The fair and more efficient approach would instead be to allow Defendants to indicate issues on which they seek to move, allow each of the plaintiff groups (Publishers, Advertisers, and State AGs) to seek leave to amend their respective complaints if they choose, then proceed with any motions to dismiss in all of the cases, adjudicating them on coordinated schedules.

Proceeding in this way would also be more efficient because the divergence of theories, interests, claims, and Defendants across the various plaintiff groups in this MDL makes it highly unlikely that resolving a motion to dismiss in the States' case would dispose of or advance all or most of the other plaintiff groups' claims. As just noted, for example, the States face some conflict in pursuing the bid suppression claims that Publisher Plaintiffs have alleged. Moreover, should the Court deny a motion to dismiss relating to one or more of the alleged anticompetitive acts in the States' case, it would not preclude Defendants from challenging certain of the *different* alleged anticompetitive acts, or potentially discrete markets, in the private cases. Similarly, should the Court deny a motion to dismiss relating to any of the forms of relief sought

---

[3] *See, e.g., In re Bystolic Antitrust Litig.*, No. 1:20-cv-5735-LJL, ECF No. 82 (S.D.N.Y. Nov. 4, 2020), ¶ 14; *In re Novartis and Par Antitrust Litig.*, No. 1:18-cv-04361-AKH, ECF No. 112 (S.D.N.Y. Nov. 5, 2018), ¶ 1; *In re Suboxone (Buprenorphine Hydrochloride and Nalaxone) Antitrust Litig.*, No. 13-md-2445-MSG, ECF No. 320 (E.D. Pa. Jan. 12, 2017), ¶¶ 3-5; *In re Domestic Drywall Antitrust Litig.*, No. 13-md-2437, ECF No. 11 (E.D. Pa. May 7, 2013), ¶¶ 1-3; *In re Lipitor Antitrust Litig.*, MDL No. 2332, ECF No. 109 (D.N.J. Aug. 10, 2012), ¶¶ 6-12; *In re Effexor Antitrust Litig.*, No. 11-cv-5479, ECF No. 86 (D.N.J. Dec. 13, 2011), at ¶¶ 5-8.

Honorable P. Kevin Castel
August 31, 2021
Page 5

by the States, it would not preclude Defendants from challenging the private plaintiffs' alleged injury or damages claims or their other relief sought.

Thus, it is highly likely that should the Court first adjudicate only a motion to dismiss in the States' case—and even if the private plaintiff groups each amended their complaints to account for the Court's ruling—Google and the other Defendants would *still* seek to move to dismiss in all or most of the private cases. That process—coming on the heels of a lengthy process in the State AG Case—could, in turn, take another year or more to resolve. Such delays could be avoided altogether by allowing all the plaintiff groups to seek leave to amend their complaints, and then addressing simultaneously whatever motions to dismiss Google and the other Defendants might wish to file in any of the centralized cases. That way, the Court could resolve all issues with the pleadings in all of these centralized cases at the same time.

Of course, while the cases and claims differ across the various plaintiff groups, there are some key areas of overlap. Thus, addressing motions to dismiss in all of the cases at once would have the added benefit of ensuring that the Court would be able to consider all of the plaintiff groups' divergent perspectives on any overlapping issues even while those plaintiff groups coordinate their briefing to avoid unnecessary duplication where issues genuinely overlap. Because the necessarily separate perspectives would be presented by separate counsel ethically bound to advance those perspectives zealously on behalf of their respective client groups, the Court will be able to consider the advocacy of all perspectives as it makes the formative determinations that will settle the pleadings in the various centralized actions.

## II.     The Publisher Class Plaintiffs Request Confirmation of the Interim Leadership Structure Established by the Transferor Court

With respect to an issue not addressed in Your Honor's Order, the Publisher Class Plaintiffs also respectfully request that this Court maintain the leadership structure established by Judge Freeman in the transferred Publisher Class Case. On April 26, 2021, after a hearing and full briefing, Judge Freeman appointed Boies Schiller Flexner LLP, Korein Tillery, LLC, and Berger Montague PC as interim co-lead counsel in the *Digital Publisher* litigation, and established an Executive Committee comprising interim co-lead counsel, along with two more firms: Kirby McInerney LLP and Gustafson Gluek PLLC. *In re Google Digital Publisher Antitrust Litig.*, No. 1:21-cv-7034, ECF No. 76 (S.D.N.Y. Apr. 26, 2021).[4]

The undersigned respectfully suggest that this decision by the transferor court should be given significant deference, consistent with the law of the case doctrine. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (explaining that the law of the case

---

[4] The breadth and complexity of this case and the Publisher Plaintiff Class issues will also benefit substantially from contributions from Executive Committee members Kirby McInerney LLP and Gustafson Gluek PLLC, both of which have significant antitrust and class action litigation experience, and both of which join in requesting continuation of the interim leadership structure. Interim co-lead counsel have developed time and expense protocols designed to ensure that the assets of the entire Executive Committee are utilized in the most efficient and optimal manner. *See id., ECF No. 75* (S.D.N.Y. April 26, 2021).

Honorable P. Kevin Castel
August 31, 2021
Page 6

"doctrine applies as much to the decisions of a coordinate court in the same case as to a court's own decisions").  Indeed, Judge Freeman's determination in this context is consistent with the approach regularly made by Courts in this district to utilize multi-firm leadership structures in large, complex antitrust cases such as the instant one, *e.g.*, *In re Treasury Sec. Auction Antitrust Litig.*, No. 15 MD 2673 (PGG), 2017 WL 10991411, at *2 (S.D.N.Y. Aug. 23, 2017) (finding it appropriate to appoint "three firms as co-lead counsel" in an antitrust class action); *supra* at pp. 2-3 (citing antitrust cases appointing multiple co-leads).  Subsequent events have only demonstrated the wisdom of Judge Freeman's chosen leadership structure and choice of firms to serve as interim co-lead counsel and on the Executive Committee in this matter.

The undersigned interim co-lead counsel are among this nation's most respected class action and complex antitrust litigation firms.  *See Digital Publisher*, ECF No. 69 at 1-6 (S.D.N.Y. April 12, 2021).  Interim co-lead counsel have conducted a significant amount of work in a highly collaborative fashion identifying and investigating potential claims in this action for over two years, including the preparation and submission of a comprehensive, consolidated amended complaint, *see id.*, ECF No. 64 (S.D.N.Y. April 6, 2021), culminating in a coordinated response to Google's motion to dismiss.  *See id.*, ECF No. 92 (S.D.N.Y. July 23, 2021).

And there can be no doubt about the resources interim co-lead counsel (and the rest of the Executive Committee) would commit to this case—already, they have invested substantial resources, expertise, and knowledge in this case; retained world-class experts; prepared and submitted a consolidated amended complaint and an opposition to Google's motion to dismiss; attended multiple status conferences; established and funded a litigation fund for the Publisher Class Case for the benefit of the proposed classes; secured a court order obtaining from Google over a million pages of documents previously produced to the States; contracted with a document depository for the storage of those documents; and initiated a comprehensive review and analysis of those documents.

In addition, Publisher Class Plaintiffs have already demonstrated their ability to coordinate with the various plaintiff groups.  They have worked actively with the Advertiser plaintiffs in drafting pre-trial discovery orders and initial sets of document demands; are actively negotiating with a number of the plaintiff groups to share access to, and the cost of, their document review platform; and have consulted with the Newspaper Group, the Daily Mail, the States, and the California Advertiser plaintiffs concerning substantive theories of liability and advancing unified protective, ESI and expert orders in this MDL.  Publisher Class Plaintiffs are prepared to coordinate with the other Publisher Plaintiffs to represent the common interests of all publishers, without any question of divided loyalties.

## III.    A Stay of Discovery is Not Warranted

Handling motions to dismiss *ad seriatim*, as the Court's Pre-Trial Order No. 1 contemplates, could put the cases on entirely different discovery tracks.  Just as the pleadings close and discovery begins in the States' case, the inevitably lengthy process of amended complaints and dispositive motions would just be getting underway in the private cases.  And if the Court were to impose a discovery stay in the private cases while resolving the pleadings in those cases, that would mean that the States' case could get out front in discovery, which could

Honorable P. Kevin Castel
August 31, 2021
Page 7

require Google, other Defendants, and third parties to undergo separate and distinct document
and custodial searches, serial depositions of the same witnesses, re-litigation of discovery
disputes, and other inefficiencies that this MDL was meant to avoid.  In contrast, advancing these
cases simultaneously would enable all the various plaintiff groups to coordinate discovery on
overlapping issues while independently pursuing their discrete areas of inquiry.

        Moreover, time is of the essence.  All of the plaintiff groups are seeking significant
injunctive relief.  It is not an exaggeration to say that the survival of free, abundant, and vibrant
content on the web is at stake in these cases.  Accordingly, Plaintiffs do not believe a lengthy
stay of their cases or of discovery would be efficient or fair.  Indeed, discovery has already
begun in several of the cases.  Google has produced over 150,000 documents consisting of more
than 1.25 million pages in the States' case, and those documents have been produced to several
of the private plaintiff groups, including the Publisher Class Plaintiffs.  The parties in many of
the cases have completed or nearly completed negotiations relating to protective and eDiscovery
orders.  Plaintiffs believe that, at minimum, document discovery from the Defendants and third
parties should proceed during the pendency of any motions to dismiss in any of the cases.  There
is a tremendous amount of work to do in document and data discovery from Google, Facebook,
and other third parties.  Respectfully, that work should begin now.

        In short, in the Publisher Plaintiff Classes' view, the Court should (a) allow the various
plaintiff groups' cases to move forward in a coordinated, but not consolidated fashion, with
separate representation for each group; (b) confirm the appointment of the existing leadership
structure in the Publisher Class Case; (c) put the private and State AG Cases on the same track,
and adjudicate any motions to dismiss concurrently; and (d) allow discovery to proceed (or at
minimum, document discovery) in all of the cases.

                                    Respectfully,

                                    /s/ Philip C. Korologos

                                    Philip C. Korologos
                                    Boies Schiller Flexner LLP
                                    55 Hudson Yards
                                    New York, NY 10001
                                    pkorologos@bsfllp.com
                                    212-446-2390

Honorable P. Kevin Castel
August 31, 2021
Page 8

/s/ George A. Zelcs

George A. Zelcs
Korein Tillery LLC
205 North Michigan Avenue
Suite 1950
Chicago, IL 60601
GZelcs@KoreinTillery.com
312-641-9750

/s/ Eric L. Cramer

Eric L. Cramer
Berger Montague PC
1818 Market Street
Suite 3600
Philadelphia, PA 19103
ecramer@bm.net
215-875-3009

attch.  (Hand delivery only)

Copy without attachment to:  All Counsel of Record via ECF.