**EXHIBIT A**

# Congress of the United States
## Washington, DC 20510

August 31, 2021

The Honorable Merrick Garland
Attorney General
Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

The Honorable Nicholas Ganjei
Acting U.S. Attorney
Department of Justice, Eastern District of Texas
550 Fannin, Suite 1250
Beaumont, Texas 77701

Dear Attorney General Garland and Acting U.S. Attorney Ganjei:

We are writing regarding disturbing new reports that Google LLC (Google) and Facebook, Inc. (Facebook) executives struck a secret 2018 deal with deeply troubling antitrust implications. This agreement, nicknamed "Jedi Blue," guaranteed that Facebook would win a fixed percentage of advertising bids on Google's platform in exchange for Facebook's "bowing out of . . . technology that threatened Google's ad display dominance."[1] If the reports are accurate, the behavior appears to be a clear violation of Section 1 of the Sherman Antitrust Act (Sherman Act), which criminalizes "mak[ing] any contract" "in restraint of trade or commerce."[2]

Several states are currently seeking civil relief against Google regarding this agreement, and because it is imperative that criminal antitrust activity be prosecuted to the fullest extent of the law, we urge the Department of Justice (DOJ) to conduct its own investigation into whether Google and Facebook executives violated the Sherman Act and are subject to sanctions -- including criminal penalties -- under the Act.[3]

Google acknowledged the existence of the Jedi Blue agreement in April 2021 during an ongoing antitrust lawsuit brought against it by Texas and several other states.[4] Although the lawsuit primarily focuses on Google's unilateral actions in its advertising business, the states also allege that Google struck an express, anticompetitive agreement with Facebook that violated

---

[1] MLex, "Google's description of 'Jedi Blue' clarifies states' US antitrust complaint," Mike Swift & Michael Acton, April 9, 2021, https://mlexmarketinsight.com/news-hub/editors-picks/area-of-expertise/antitrust/googles-description-of-jedi-blue-clarifies-states-us-antitrust-complaint.
[2] 15 U.S.C. § 1.
[3] *Id.*
[4] MLex, "Google's description of 'Jedi Blue' clarifies states' US antitrust complaint," Mike Swift & Michael Acton, April 9, 2021, https://mlexmarketinsight.com/news-hub/editors-picks/area-of-expertise/antitrust/googles-description-of-jedi-blue-clarifies-states-us-antitrust-complaint.

Section 1 of the Sherman Act.[5] In a court filing viewed by the press, Google reportedly confirmed the existence of a 2018 "network bidding agreement" with Facebook.[6]

According to the reports, Google, in the secret deal, sought to kill a new industry innovation called "header bidding." Previously, publishers could only solicit bids for their advertising space via digital marketplaces for selling advertising space, such as Google's ad exchange. Header bidding enables publishers to instead solicit real-time bids from multiple exchanges.[7] Facebook publicly announced it would adopt header bidding in March 2017.[8] Google "[w]ithin months . . . began formal negotiations" with Facebook, allegedly to ensure that Facebook would not adopt header bidding out of the fear that this move would threaten Google's monopoly on ad exchanges.[9]

Google's tactic apparently worked; in September 2018, Google and Facebook jointly agreed that Facebook would not use header bidding and would instead route bids through Google's ad server.[10] As outlined in the unredacted files from the lawsuits against Google, Facebook agreed "to bid on at least 90 percent of the bid requests it received from Google" and "to spend at least $500 million a year on Google's" ad auctions by the fourth year of the deal.[11] In exchange, Google guaranteed that Facebook would win ten percent of ad bids on Google's server.[12] Google also allegedly promised "to reveal the identity of a specific percentage of consumers to Facebook, which would help Facebook win more auctions" because advertisers "generally only bid when they recognize the identity of a consumer."[13]

This highly problematic Jedi Blue agreement was signed by Google's Senior Vice President and Chief Business Officer Philipp Schindler and Facebook's Chief Operating Officer Sheryl Sandberg.[14] Even more troubling, it included "a provision governing the parties' options to terminate the agreement in the event of certain government investigations of the agreement,"[15]

---

[5] Complaint at 106-107, Texas v. Google, December 16, 2020, https://www.texasattorneygeneral.gov/sites/default/files/images/admin/2020/Press/20201216%20COMPLAINT_REDACTED.pdf.
[6] MLex, "Google's description of 'Jedi Blue' clarifies states' US antitrust complaint," Mike Swift & Michael Acton, April 9, 2021, https://mlexmarketinsight.com/news-hub/editors-picks/area-of-expertise/antitrust/googles-description-of-jedi-blue-clarifies-states-us-antitrust-complaint.
[7] Complaint at 58-59, Texas v. Google, December 16, 2020, https://www.texasattorneygeneral.gov/sites/default/files/images/admin/2020/Press/20201216%20COMPLAINT_REDACTED.pdf.
[8] *Id.* at 64; Business Insider, "Facebook forays into header bidding with six new ad tech partnerships," Robert Elder, March 27, 2017, https://www.businessinsider.com/facebook-forays-into-header-bidding-2017-3.
[9] Complaint at 66, Texas v. Google, December 16, 2020, https://www.texasattorneygeneral.gov/sites/default/files/images/admin/2020/Press/20201216%20COMPLAINT_REDACTED.pdf.
[10] *Id.*
[11] MLex, "Google's description of 'Jedi Blue' clarifies states' US antitrust complaint," Mike Swift & Michael Acton, April 9, 2021, https://mlexmarketinsight.com/news-hub/editors-picks/area-of-expertise/antitrust/googles-description-of-jedi-blue-clarifies-states-us-antitrust-complaint.
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] MLex, "Google acknowledges it foresaw possibility of probe of 'Jedi Blue' advertising deal with Facebook," Michael Acton & Mike Swift, April 7, 2021, https://mlexmarketinsight.com/news-hub/editors-picks/area-of-

suggesting that the executives were aware that they might be violating antitrust laws. This provision could be evidence of criminal intent.

Courts have recognized certain anticompetitive actions -- such as price fixing, bid rigging, and market allocation -- as "*per se*" violations that have no legitimate justification and should be considered unlawful without additional analysis of the actions' net effect on competition under the so-called "rule of reason."[16] If Google and Facebook executives in fact agreed that Facebook "would win a mutually determined, fixed share of Google's ad auctions,"[17] then the agreement would appear to be an example of bid rigging, a clear violation of Section 1 of the Sherman Act, which provides that any "contract … or conspiracy, in restraint of trade or commerce … is declared to be illegal."[18] This section imposes criminal penalties on persons who violate the law, including up to $100 million for guilty companies and up to $1 million in fines and 10 years in prison for guilty individuals.[19]

The DOJ has a responsibility to enforce the nation's antitrust laws in order to protect consumers, small businesses, and the public. The Antitrust Division has previously sought criminal charges in cases of *per se* unlawful restraints of trade, including charges against an engineering firm that admitted to engaging in bid rigging earlier this year.[20] The facts presented in the Texas lawsuit suggest that Google and Facebook engaged in a similar bid-rigging scheme and warrant the DOJ's consideration of whether similar criminal charges are merited here. Given the egregiously anticompetitive nature of the alleged agreement here, we ask that you investigate this matter to uncover any criminal behavior that may have transpired in violation of the Sherman Act.

Thank you for your attention to this important matter.

---

expertise/antitrust/google-acknowledges-it-foresaw-possibility-of-probe-of-jedi-blue-advertising-deal-with-facebook.

[16] Ohio v. American Express Company, 138 S. Ct. 2274 (2018), at 2283-2284; United States v. Joyce, 895 F.3d 673 (9th Circuit, 2018); U.S. Department of Justice Archives, Archived Antitrust Resource Manual, "Elements of the Offense," February 20, 2020, https://www.justice.gov/archives/jm/antitrust-resource-manual-1-attorney-generals-policy-statement.

[17] MLex, "Google's description of 'Jedi Blue' clarifies states' US antitrust complaint," Mike Swift & Michael Acton, April 9, 2021, https://mlexmarketinsight.com/news-hub/editors-picks/area-of-expertise/antitrust/googles-description-of-jedi-blue-clarifies-states-us-antitrust-complaint.

[18] 15 U.S.C. § 1.

[19] 15 U.S.C. § 1.

[20] Faegre Drinker, "DOJ Antitrust Division Secures $8.5 Million in Bid-Rigging Penalties from Engineering Firm on Highway Water Projects," June 14, 2021, https://www.faegredrinker.com/en/insights/publications/2021/6/doj-antitrust-division-secures-8-5-million-in-bid-rigging-penalties.

Sincerely,

Elizabeth Warren
United States Senator

Pramila Jayapal
Member of Congress

Richard Blumenthal
United States Senator

Mondaire Jones
Member of Congress

CC:
Lina Khan, Chair, Federal Trade Commission
Richard Powers, Acting Assistant Attorney General – Antitrust Division, Department of Justice