# HERMAN JONES LLP
ATLANTA · NEWARK · SEATTLE

Serina M. Vash
svash@hermanjones.com

September 3, 2021

Hon. P. Kevin Castel
United States District Judge
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

      Re:    *In re Google Advertising Antitrust Litig.*, No. 21-md-3010 (PKC)

Dear Judge Castel:

      We write in response to Your Honor's Order dated August 13, 2021 and in advance of the status conference scheduled for October 14, 2021 at 2:30 p.m. ECF Nos. 4, 39. We represent the plaintiffs in 13 of the 14 non-class, private cases against Google and Facebook (the "Direct Action Cases") subject to this MDL proceeding.[1] Our clients – a group of newspaper publishers that have brought federal antitrust claims against Google and Facebook – have a significant interest in the outcome of these proceedings as noted in the U.S. House Judiciary Report (pp. 57-73).[2] We write as directed to respond to the matters described in paragraphs 6 through 11 of Your Honor's Order and respectfully offer suggestions to further the orderly and efficient advancement of this proceeding.

---

[1] The case numbers are *HD Media Co., LLC v. Google, LLC*, No. 3:21-cv-00077 (S.D. W. Va.); *AIM Media Ind. Operating, LLC v. Google, LLC*, No. 1:21-cv-00951 (S.D. Ind.); *AIM Media Midwest Operating, LLC v. Google*, No. 2:21-cv-01915 (S.D. Ohio); *AIM Media Tex. Operating, LLC v. Google, LLC*, No. 7:21-cv-00150 (S.D. Tex.); *Brown Cnty. Publ'g Co. v. Google, LLC*, No. 1:21-cv-00498 (E.D. Wis.); *Clarksburg Publ'g Co., d.b.a. WV News v. Google, LLC*, No. 1:21-cv-00051 (N.D. W. Va.); *Coastal Point LLC v. Google, LLC*, No. 1:21-cv-00554 (D. Del.); *Eagle Printing Co. v. Google, LLC*, No. 2:21-cv-00518 (W.D. Pa.); *Ecent Corp. v. Google, LLC*, No. 5:21-cv-00251 (S.D. W. Va.); *Emmerich Newspapers, Inc. v. Google, LLC*, No. 3:21-cv-00274 (S.D. Miss.); *Flag Publ'ns, Inc. v. Google, LLC*, No. 1:21-cv-00965 (D. Md.); *Gale Force Media, LLC v. Google, LLC*, No. 2:21-cv-09716 (D.N.J.); and *Journal Inc. v. Google, LLC*, No. 1:21-cv-00072 (N.D. Miss.).

[2] Investigation of Competition in Digital Markets, U.S House of Representatives, Majority Staff Report and Recommendations, Subcommittee on Antitrust, Commercial and Administrative Law, Committee on the Judiciary, October 5, 2020 (herein the "U.S. House Judiciary Report"), https://judiciary.house.gov/uploadedfiles/competition_in_digital_markets.pdf?utm_campaign=4493-519.

Hon. P. Kevin Castel
September 3, 2021
Page 2

**Paragraphs 6-9**: As explained further below, Plaintiffs respectfully submit that the State AG Actions, Putative Class Cases, and Direct Action Cases should proceed on parallel but coordinated tracks.

With respect to settling the pleadings, Plaintiffs believe the most efficient process would be as follows: (i) briefing on any motions to dismiss filed by defendants should proceed simultaneously across all three tracks of cases and (ii) consistent with Rule 3.A.i of Your Honor's Individual Practices, any moving defendants should file a letter describing the bases for their dismissal motions before filing any such motions, allow Plaintiffs seek leave to amend their complaints if they choose, and then proceed with any motions to dismiss.

**Paragraphs 10-11**: Most respectfully, Plaintiffs oppose any discovery stay in the following respects.

First, Plaintiffs ask that the documents Google has already produced in connection with the State AG Action (*State of Texas, et al. v. Google LLC*, No. 4:20-cv-957-SDJ (E.D. Tex.)) and *United States, et al. v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C.), and investigations related thereto, be promptly produced to plaintiffs in the Direct Action Cases.[3]

Because these documents have already been produced by Google, there is no burden on Google to re-produce these pre-packaged productions. They can be produced subject to the protective order entered in the Texas AG Action or designated as attorneys' eyes only, until a protective order is entered in this MDL.

Nor is there any cognizable claim that these documents are irrelevant or should otherwise not be produced. Both the Direct Action Cases and the State AG Action bring Sherman Act §2 claims against Google for monopolization of advertising markets, and the documents produced by Google in the State AG Action bear directly on the antitrust claims against Google across all of the various plaintiff groups subject to this MDL, as Google has recognized. Google Defendants' Motion for Transfer of Actions to the Northern District of California Pursuant to 28 U.S.C. §1407 for Coordinated or Consolidated Proceedings at 6, n. 3 (on many issues the newspaper cases will require the "same discovery" from Google as the Class and State AG cases); *id*. at 11-12 (each group of cases will "entail production of the same documents and depositions of the same witnesses"). Indeed, the need for overlapping discovery was one of Google's primary bases for seeking MDL status. Now that Google's MDL petition been granted and the Direct Action Cases are part of coordinated MDL, Plaintiffs ask that they be given access to the same discovery already provided to the other two plaintiff groups. The U.S. DOJ investigation is focused on Google's advertising practices, including

---

[3]  Plaintiffs understand that a substantial subset of the materials from the State AG Action have already been produced by Google at least twice: once in the State AG Action and again to the plaintiffs in the advertiser and publisher putative class litigation filed in the Northern District of California.

Hon. P. Kevin Castel
September 3, 2021
Page 3

its power in the digital ad markets at issue here, and thus documents produced therein are likewise relevant.

Second, we ask that Plaintiffs be permitted to pursue discovery from Facebook, which is not a party to the State AG Action. Permitting Plaintiffs to prosecute their claims against Facebook while the Court resolves a motion to dismiss filed only by Google is more efficient than staying all discovery against Facebook until Google's dismissal motion, which may take many months.

Relatedly, we ask that Your Honor consider the entry of an MDL protective order, which will facilitate the exchange of discovery and allow the parties to get a head start on the extensive discovery that will need to be done in this matter. Our newspaper clients brought actions against Google and Facebook to promptly remedy the very real impact of defendants' actions on their businesses. Every day that passes further threatens their financial viability. To unduly delay prosecution of their claims could prejudice our clients, even to the extent of putting viable newspapers (at least for the time being) out of business.

**Organization and Coordination**:  Broadly speaking, three sets of cases were consolidated into this MDL: (i) the State AG Action – the action brought by 16 state attorneys general in Texas; (ii) the Putative Class Cases - four cases brought on behalf of advertisers and publishers; and (iii) the Direct Action Cases - 14 private, non-class cases brought by publishers of over one hundred and thirty individual newspapers or newspaper groups. The State AG Action is being led by Keller Lenkner and The Lanier Law Firm. In a set of orders entered in late April, the Northern District of California established a leadership structure for the advertiser and publisher class cases brought against Google. In the Direct Action Cases, plaintiffs in 13 of the 14 cases are represented by the undersigned counsel, and Associated Newspapers LTD, the remaining plaintiff, is represented by Kellogg Hansen.

Plaintiffs propose that the three sets of cases be organized for pre-trial proceedings along these natural tracks, with procedures in place to facilitate coordination and efficiency. As the Court observed, there are some commonalities and some differences among the various cases. ECF No. 4. To promote economy, while allowing each plaintiff group to protect their respective interests by investigating any factual issues unique to their claims, Plaintiffs suggest that the Court appoint counsel in the Direct Action Cases responsible for organization among the various Direct Action Cases, and coordination with the leadership of the Class Actions and State AG Action to the extent their interests overlap with those of the Direct Action Cases. The goal would be to substantially reduce duplication and enhance efficiency by coordinating discovery and other pre-trial matters, including briefing. As contemplated in Your Honor's August 13, 2021 Order, counsel in each of the three plaintiff groups have already begun discussions in an effort to coordinate on issues such as an MDL protective order, an ESI protocol, storage and review of documents produced in the litigation, cost sharing and related issues where coordination may be in the interest of all parties.

Similar structures have been utilized in previous MDL proceedings involving multiple groups of plaintiffs with similar, but not entirely coextensive, interests to avoid unnecessary, duplicative or redundant work and expenses. *See e.g.*, *In re EpiPen Mktg., Sales Practices & Antitrust Litig.*, MDL

Hon. P. Kevin Castel
September 3, 2021
Page 4

No. 2:17-md-02785-DDC-TJ (D. Kan. Sept. 12, 2017), ECF No. 40 (appointing plaintiffs' leadership and liaison counsel inclusive of class and direct competitor plaintiffs for purposes of coordination of common discovery); *In re Cathode Ray Tube Crt Antitrust Litig.*, MDL No 1917, 2015 U.S. Dist. LEXIS 199477, at *68-70 (N.D. Cal. Oct. 21, 2015) (discovery protocol required liaison counsel for the various class and direct action plaintiff groups, represented by liaison counsel, to coordinate discovery); *In re Nat'l Prescription Opiate Litig.*, No. 1:17-CV-2804, 2018 U.S. Dist. LEXIS 90155, at *49-*53, *64-*65 (N.D. Ohio Apr. 11, 2018) (coordinating actions through liaison and executive committees appointed to represent various plaintiff groups, including municipalities and counties, third party payors, Indian Tribes, Hospitals, and babies born with Neonatal Abstinence Syndrome, all of whom are coordinating with the State Attorneys General).

      If the Court agrees, Plaintiffs herein further respectfully suggest that co-lead counsel in the Direct Actions track should include Chad Johnson from the Manhattan office of Robbins Geller and the undersigned, Serina Vash of Herman Jones.  Herman Jones and Robbins Geller both have extensive MDL and antitrust experience and are eager to work cooperatively and collaboratively with additional Direct Action counsel, with plaintiffs' counsel in the other suggested tracks, and with defense counsel in this important MDL.

      Thank you for providing us with this opportunity to share our thoughts regarding the efficient management of this proceeding.

                                        Respectfully Submitted,

                                        /s/ *Serina M. Vash*

                                        Serina M. Vash

cc:      All counsel of record via ECF