# Keller | Lenkner



September 3, 2021

**VIA ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *In re: Google Digital Advertising Antitrust Litigation*, No. 21-md-03010-PKC

Dear Judge Castel:

The seventeen Plaintiff States,[1] together with the private plaintiffs in many of the matters now centralized before this Court in MDL 3010,[2] submit this joint letter pursuant to the Court's invitation in Pre-Trial Order No. 1 (ECF No. 4). The first section below contains the Plaintiff States' comments, and the second section contains the Private Plaintiffs' comments.[3] All of these plaintiffs have begun in earnest to develop efficient and collaborative approaches to discovery and other pretrial issues in this MDL. Accordingly, we respectfully submit the following joint update. Pursuant to the Court's Individual Practices, we note that an initial conference in this MDL has been set for October 14, 2021 (*see* ECF No. 39). We appreciate the Court promptly setting an initial conference date. We understand the scheduling difficulties of such a large matter, but we also wanted to alert the Court that lead counsel for Plaintiff States currently have hard conflicts on October 14, 2021, including as lead trial counsel in the opioids MDL. Counsel will make themselves available sooner (as early as September 23 or 24, 2021) or the first part of October if the Court has another date available that works with Your Honor's schedule.

---

[1] The plaintiffs in *Texas, et al. v. Google, LLC*, 1:21-cv-06841-PKC (the "State Enforcement Action") are: the states of Texas, Alaska, Arkansas, Florida, Idaho, Indiana, Louisiana, Mississippi, Missouri, Montana, Nevada, North Dakota, South Carolina, South Dakota, and Utah, and the commonwealths of Kentucky and Puerto Rico (collectively, the "States" or "Plaintiff States"). As of the date of this letter, Louisiana and South Carolina are not party to the State Enforcement Action; accordingly, their submission of this letter is contingent upon being added as plaintiffs to this matter, which would occur if the Court grants the Plaintiff States' pending Motion for Leave to Amend and/or Louisiana and South Carolina's Motions to Intervene.

[2] The private plaintiffs joining this submission are: the Advertiser Class Plaintiffs in *In re Google Digital Advertising Antitrust Litigation*, 5:20-cv-03556-BLF (N.D. Cal.); and the plaintiffs in *Associated Newspapers Ltd. and Mail Media, Inc*, *et. al.*, 1:21-03446-PKC, collectively, the "Private Plaintiffs").

[3] Although this submission includes positions of both state and private plaintiffs, the positions of various plaintiffs might diverge on certain particulars, as noted herein.

## I. PLAINTIFF STATES' COMMENTS

The Plaintiff States largely agree with the plan of action articulated in the Court's Pre-Trial Order No. 1 (ECF No. 4). In particular, the Plaintiff States agree that it makes sense to first decide their Motion for Leave to Amend (ECF No. 12). Then, if Google intends to file a motion to dismiss, Google should "file with the Court a Pre-Motion letter," and the Plaintiff States should "then have the opportunity to seek further leave to amend or stand on their pleading as written." Pre-Trial Order No. 1 at ¶ 7. With respect to timing, the States seek to maintain an expeditious schedule in this MDL, consistent with the trajectory and advanced status of their case and their need—as law-enforcement agents—to swiftly halt Google's anticompetitive and deceptive conduct. The Plaintiff States therefore respectfully request that the Court hew as closely as possible to the scheduling order previously entered in the State Enforcement Action, with a few minor deviations to account for recent delays. Similarly, the Plaintiff States respectfully ask that discovery not be delayed, particularly given that much of the discovery at issue here would not pose a substantial burden on Google.

**A.    Background on the State Enforcement Action.**

Unlike the private cases, the State Enforcement Action arises from and builds on an expansive, 18-month governmental pre-suit investigation. During that investigation, the Plaintiff States devoted significant resources to quickly uncovering Google's ever-evolving misconduct in the online display advertising technology, or "ad tech," industry. To that end, Texas began issuing Civil Investigative Demands (CIDs) in September 2019, requiring Google to produce documents and answer interrogatories. In partial compliance with these CIDs, Google produced more than two million documents and responded to interrogatories with answers and objections. During the investigation, Texas also obtained the sworn statements of 10 Google employees, conducted or participated in more than 50 third-party interviews, and issued more than 20 third-party CIDs (receiving more than 700,000 documents in response). Ultimately, the Plaintiff States' pre-suit investigation was extensive, entailing the production of around three million documents and the participation of more than 60 witnesses.

In December 2020, this far-reaching investigation culminated in the State Enforcement Action—with a Complaint filed by 10 states; an Amended Complaint joined by 5 additional states; and, if permitted, a Second Amended Complaint joined by two additional states (Dkt. No. 76). Building on the investigation's considerable progress, the States and Google diligently pursued the case while in the Eastern District of Texas.[4] After much negotiation between the parties, Judge Jordan issued a comprehensive protective order (Dkt. No. 101). The Plaintiff States request that the Court consider the advanced progress and status of the State Enforcement Action in scheduling deadlines in this MDL.

---

[4] For instance, the States and Google participated in Rule 16 and Rule 26 conferences, submitted a Joint Report addressing various agreements and positions, and exchanged initial disclosures (including the States' production to Google of all Texas-issued third-party CIDs and all documents received in response to those CIDs). Also, the States filed (and Google answered) both an original and Amended Complaint.

**B.    The States are well positioned to respond to any motion to dismiss.**

The States agree with the Court that they are the appropriate plaintiffs to proceed in considering and responding to a motion to dismiss (and first, a Pre-Motion Letter) by Google. The trajectory of the States' case, including the States' extensive pre-suit investigation, make the States particularly well suited to address any such motion.

**C.    The State Enforcement Action requires prompt resolution and should maintain an expeditious schedule and proceed without a delay in discovery.**

Because of the exigent need to halt the ongoing—and irreparable—harm to competition and consumers that is being caused by Google every day, the Plaintiff States sought an efficient schedule for this case in Texas. Judge Jordan recognized this need, setting a trial date of June 2023, with the close of fact and expert discovery in June and November 2022, respectively. In denying Google's motion to transfer the State Enforcement Action, Judge Jordan also expressed particular concern that transferring the State Enforcement Action to the same venue—on potentially the same timeline—as proposed private class actions would "introduce a substantial risk of unnecessary delay" (Dkt. No. 121, at 16). The JPML likewise "recognize[d] the states' concerns regarding potential delay from centralization with putative class actions" and instructed the States "to raise [these concerns] with the transferee court for resolution." Transfer Order, MDL No. 3010, Doc. 126 at 6 (J.P.M.L. June 2, 2021). The Plaintiff States therefore reiterate those concerns here and request that the State Enforcement Action maintain an expeditious schedule and proceed without a delay in discovery.

### 1.  The States seek to maintain an expeditious schedule.

Because the MDL process has thus far delayed the State Enforcement Action by only a few months, the States request that any new scheduling order be based on the scheduling order Judge Jordan entered in Texas, with an adjustment to the deadlines of approximately 90 days (assuming discovery is not delayed, as addressed below). A 90-day adjustment would set the close of fact and expert discovery in October 2022 and February 2023, respectively, and would set a deadline for dispositive motions in March 2023.

In addition to these adjustments, the Plaintiff States propose that Google be ordered to submit the Pre-Motion Letter referenced in paragraph 7 of Pre-Trial Order No. 1 (ECF No. 4), if any, within 21 days of when the Court grants the Plaintiff States' Motion for Leave to File Second Amended Complaint (which is nearly identical to the Amended Complaint). Google has known about every substantive allegation and claim in that complaint for over 5 months, and about most of the claims and allegations for much longer. Moreover, in the nine months that the Plaintiff States' case has been pending, Google has been served with an original Complaint and an Amended Complaint, both of which Google declined to move to dismiss and answered instead. There is therefore no reason for Google to delay filing a Pre-Motion Letter now.

Finally, to facilitate the continued momentum of their case, the States have already begun substantive coordination with private plaintiffs in this MDL on various important agreements, including a protective order, expert stipulation, and an order to govern discovery of electronically stored information (an "ESI Order"). Accordingly, the States also request that the Court set a

deadline of October 8, 2021, for Google and all plaintiffs to complete good faith negotiations of a protective order, expert stipulation, and ESI protocols (as addressed below), and to submit joint filings reflecting their agreements and any remaining areas of disagreement.

### 2. Discovery should continue without a stay.

The States respectfully request that discovery proceed during the briefing and resolution of any motion to dismiss by Google. The States are seeking the significant injunctive and structural relief necessary to remedy the harm that Google has caused—and continues to cause—to competition and consumers. Any delay in the resolution of the State Enforcement Action, including a delay in discovery, will exacerbate that harm.

Indeed, formal discovery was already underway while this case was before Judge Jordan. The Plaintiff States served two sets of document requests on Google in April 2021, and Google and Texas engaged for months in detailed negotiations over a stipulation and ESI Order—they were nearing a final agreement when this case was transferred. But now, even though there is no existing stay of discovery in this MDL, Google has ceased all progress on discovery. Initially, Google had refused to produce any documents in the absence of an ESI Order, and now Google refuses to so much as engage in further negotiations over an ESI Order. Regardless of whether discovery is eventually stayed, the parties' months-long negotiations should not be squandered, and Google should be ordered to resume the parties' near-final negotiations.

Allowing the parties to move forward with discovery immediately will not prejudice Google or cause undue burden. Google has already produced and been compelled to produce documents relevant to the State Enforcement Action in other governmental investigations and actions, both in the United States and abroad.[5] The States intend to seek the productions from those other investigations and actions here. Requiring Google to *re*-produce the same relevant documents would pose little additional burden, and the significant benefits to law enforcement of

---

[5] Competition authorities around the globe are investigating many of Google's business practices throughout a variety of markets. Although the States have taken a lead role in seeking to reform and remedy Google's ad tech misconduct, that misconduct is also the subject of at least three additional competition probes. In the United States, it has been reported that the Department of Justice is also conducting such an investigation and interviewing numerous witnesses. *See* David McLaughlin, *U.S. DOJ Readying Google Antitrust Lawsuit Over Ad-Tech Business*, BLOOMBERG (Sept. 1, 2021, 3:47 pm), https://www.bloomberg.com/news/articles/2021-09-01/u-s-doj-readying-google-antitrust-lawsuit-over-ad-tech-business. In addition, the European Union is also reportedly investigating Google's ad tech practices. *See* Foo Yun Chee, *Google's Adtech Business Set To Face Formal EU Probe By Year-End*, REUTERS, https://www.reuters.com/technology/eu-antitrust-regulators-probe-googles-adtech-business-by-year-end-sources-2021-06-18/ (June 18, 2021 7:36 pm). In June 2021, French competition regulators concluded an investigation and reached a settlement in which Google agreed to make certain changes to its advertising business and pay a fine of approximately $260 million. *See* Natasha Lomas, *France Fines Google $268m For Adtech Abuses and Gets Interoperability Commitments*, TECHCRUNCH (June 7, 2021 6:46 am), https://techcrunch.com/2021/06/07/france-fines-google-268m-for-adtech-abuses-and-gets-interoperability-commitments/. In December 2020, the Australia Competition and Consumer Commission ("ACCC") issued an extensive report detailing its findings concerning competitive issues in the ad tech industry, including issues surrounding Google's conduct and positions in the ad tech industry. ACCC, *Digital Advertising Services Inquiry - Interim Report* (Dec. 2020), https://www.accc.gov.au/system/files/Digital%20Advertising%20Services%20Inquiry%20-%20Interim%20report.pdf. The United Kingdom and Japan have also engaged in competition investigations of Google's ad tech practices. *See id.* at 9, n 4.

allowing the Plaintiff States to proceed apace outweigh any minor burden from simply copying productions from other investigations.[6]

Moreover, because "[t]he Court anticipates staying all briefing on purely state law claims," *see* ECF No. 4 at ¶ 11, those claims (e.g., the States' consumer protection claims) will likely remain unaffected throughout any motion-to-dismiss practice. Accordingly, discovery should not be stayed as to those state-law consumer protection claims, in particular.

For the foregoing reasons, the Plaintiff States respectfully request that the Court allow them to proceed with discovery—or at a minimum the Court compel finalization of an ESI Order and re-production of materials from other ad tech investigations—while the parties brief, and the Court rules on, any motion to dismiss. The States also request that their case not be delayed by issues specific to the class action proceedings in this MDL, including class discovery and class certification briefing. As suggested by Google and reiterated by the JPML, these "potential discovery delays from class certification proceedings could be managed by first scheduling a common discovery period, and then having the class claims proceed to class certification while the non-class claims proceed to dispositive motions." Transfer Order, MDL No. 3010, Doc. 126 at 6 (J.P.M.L. June 2, 2021); *see also* Google Reply Br., MDL No. 3010, Doc. No. 89, at 3 (J.P.M.L. June 2, 2021). The Plaintiff States are amenable to such a procedure.

## II.   PRIVATE PLAINTIFFS' COMMENTS

### A.   Advertiser Class Plaintiffs in *In re Google Digital Advertising Antitrust Litigation*, 5:20-cv-03556-BLF (N.D. Cal.).

The Advertiser Class Plaintiffs[7] were the first plaintiffs—public or private—to file a complaint related to the issues in this MDL. When the MDL was recently established, Advertiser Class Plaintiffs, through their court-appointed interim class counsel, were preparing their Second Amended Consolidated Class Action Complaint, had retained a leading antitrust economist and consulted with several other experts, and had begun reviewing and analyzing Google's document productions of July 30 and August 6, 2021. These productions consist of documents concerning

---

[6] *See, e.g.*, *In re Broiler Chicken Antitrust Litig.*, 1:16-CV-08637, 2017 WL 4417447, at *2-7 (N.D. Ill. Sept. 28, 2017) (ordering limited production of material previously provided to government entity before resolution of motions to dismiss, even where "not all documents produced to or communications with governmental entities are subject to production in this case."); *In re Cattle Antitrust Litig.*, No. 19-cv-1222 (JRT/HB) (D. Minn. Sept. 10 & Oct. 30, 2020), ECF 259, 295 (after defendants prevailed on motions to dismiss and opposed re-producing their DOJ production on grounds that they would need to re-review it, the court nonetheless ordered them to produce relevant and non-privileged documents "[b]ecause the documents have already been gathered and organized for production to the DOJ, because the great majority of those documents are highly likely to be relevant to Plaintiffs' claims and to be of assistance in the discovery-related tasks . . . and in view of the absence of any showing that reviewing that group of documents for relevance and confidentiality would impose a significant incremental burden").

[7] Hanson Law Office, as successor-in-interest to Hanson Law Firm, PC; Surefreight Global LLC d/b/a Prana Pets; and Vitor Lindo.  The applicable statutes of limitations remain tolled by these Plaintiffs' filing in May 2020 of the first class action against Google for antitrust violations relating to display advertising services. *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018); *In re Google Digital Advert. Antitrust Litig.*, 5:20-cv-03556-BLF (N.D. Cal. filed May 27, 2020), Doc. 1.  Plaintiffs filed their First Amended Consolidated Class Action Complaint ("FAC") on December 4, 2020—before Google's "Jedi Blue" agreement with Facebook became public.  (Doc. 52.)  Since May 2021, U.S. District Judge Beth L. Freeman ruled on Google's motion to dismiss the FAC (Doc. 143), extended the time for Advertiser Class Plaintiffs to amend (Doc. 148), and entered a stipulated expert protocol (Doc. 155).

this matter that Google previously provided to the Texas Attorney General's office, the U.K.'s Competition and Markets Authority, and the U.S. House Judiciary Committee. Since the transfer order, counsel for the Advertiser Class Plaintiffs have conferred with counsel for several other plaintiff groups, including the States, the Publisher Class Plaintiffs, and other advertiser plaintiffs.

With respect to the Court's proposed plan of action, Advertiser Class Plaintiffs do not oppose sequencing the pleading stage of the litigation such that Rule 12 challenges to the States' complaint are settled first. Orderly and efficient proceedings will be promoted if a decision on Google's anticipated motion to dismiss the state case precedes (and informs) private plaintiffs' framing of their MDL complaints. *See, e.g.*, *In re BP p.l.c. Sec. Litig.*, 109 F. Supp. 3d 946, 949-51 (S.D. Tex. 2014) (decision on motion to dismiss first tranche of MDL cases resolved issues raised by defendants in the second-tranche cases). Allowing document discovery to proceed in the interim will reduce any delay that might otherwise result from this sequencing. *See, e.g.*, *In re Vitamin C Antitrust Litig.*, 237 F.R.D. 35 (E.D.N.Y. 2006) (in antitrust MDL, declining to stay discovery pending resolution of motion to dismiss); *In re Currency Conversion Fee Antitrust Litig.*, No. MDL 1409, 2002 WL 88278, at *2 (S.D.N.Y. Jan. 22, 2002) (where discovery had commenced before the Panel ruled, discerning "no compelling reason why [defendants] should be able to disengage from those obligations now"). Further, although the States' operative complaint may be redacted initially, documents and proceedings related to a motion to dismiss should be open, particularly inasmuch as they will affect the private actions. *See United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) (presumption of access to material filed with the court is strongest as to "matters that directly affect an adjudication").

Advertiser Class Plaintiffs also respectfully submit that this Court should confirm the prior appointment of their interim class counsel. On April 26, 2021, Judge Freeman appointed Dena Sharp of Girard Sharp LLP and Tina Wolfson of Ahdoot & Wolfson, P.C. as interim co-lead counsel for the proposed advertiser class, with a Plaintiffs' executive committee of Archana Tamoshunas of Taus, Cebulash & Landau, LLP and April D. Lambert of the Radice Law Firm, P.C. (*See* 5:20-cv-03556-BLF (N.D. Cal.), Doc. 133, attached hereto as Exhibit A.) The court vested co-lead counsel with "authority to conduct all pretrial and trial work on behalf of the proposed class"—including "crafting pleadings, conducting discovery, and negotiating case matters and settlement as well as all other pretrial and trial proceedings." (*Id*. at 1.) Keeping these appointments in place will facilitate coordination between Advertiser Class Plaintiffs and other plaintiffs, and will ensure that the advertisers speak with one voice, "clarif[ying] responsibility for protecting the interests of the class during precertification activities[.]" Manual for Complex Litigation, Fourth § 21.11 (2004). For example, given that one or more of the States' claims may survive, we intend to continue our review and analysis of Google's substantial document productions. To this end, Advertiser Class Plaintiffs, in conjunction with Publisher Class Plaintiffs, retained a e-discovery vendor and established a document review database. To ensure the continued efficient and coordinated prosecution of the private actions, the Court may wish to expand the executive committee for the proposed advertiser class to include capable counsel for other advertisers in later-filed class actions, such as *SPX Total Body Fitn*ess (4:21-cv-00801-HSG (N.D. Cal.)) and *Cliffy Care Landscaping* (1:21-cv-00360-KBJ (D.D.C.)). *See generally* Fed. R. Civ. P. 23(g) advisory committee's note (2003).

In addition to appointing interim counsel, Judge Freeman entered a timekeeping protocol that provides for the quarterly in camera submission of their summary time and expense records. (*See* 5:20-cv-03556-BLF (N.D. Cal.), Doc. 135, attached hereto as Exhibit B.)  Under this protocol, only time and expenses authorized by class counsel that advance the litigation are compensable. (*See id*. ¶ 3.)  Periodic submission of time and expense reports allows the Court to supervise the progress of counsel's work and prevents any surprises when and if their fee application is submitted.  Advertiser Class Plaintiffs respectfully request that the Court re-enter this protocol on the MDL docket so that it will continue to apply to interim counsel for the proposed advertiser and publisher classes.

### B. *Associated Newspapers Ltd. and Mail Media, Inc. et. al.*, 1:21-03446-PKC ("Daily Mail").

Daily Mail supports the State AGs' proposals described above.

Daily Mail is in a different position than the other private publishers (including the publisher class plaintiffs).  Daily Mail is the only large publisher plaintiff to sue Google.  It has suffered the most damage from Google's conduct and consequently is the private plaintiff that is most familiar with Google's practices.  Daily Mail is the only plaintiff to file its original case in this Court (and, supported by the large publisher trade associations, the only plaintiff to have urged the JPML to locate the MDL in this Court).  Daily Mail is one of the few plaintiffs besides the State AGs that has made a significant investment working with expert witnesses in evaluating Google's conduct, and is the only plaintiff to have produced discovery *to* Google.

Daily Mail supports the Court's proposed plan to consider a Google motion to dismiss the State AG complaint as a starting point.  The alternative of Google's filing multiple motions to dismiss and the various plaintiffs answering those motions would not be unduly burdensome on the parties, compared to the stakes of Google's conduct.  But the Court has to start somewhere. The State AGs' March 15, 2021 Amended Complaint is sufficiently detailed that, despite Google's answering the States' complaint previously, Google should now be able to identify any threshold legal deficiencies and allow the Court to decide those issues.

While there are some differences between the State AGs' complaint and those of the other plaintiffs, we nonetheless believe those differences are sufficiently modest that the evaluation of the sufficiency of the States' complaint will advance the litigation for all parties.  Google could also be required to send pre-motion letters to all plaintiffs now, regarding issues that Google wishes to raise separately from its motion to dismiss the States' complaint, so that those additional motions and any amendments can be "on deck" when the Court is ready to turn to them.

Daily Mail also supports the State AGs' proposal to fix or at least aspire to an end date for the pre-trial proceedings.  The stakes in this case for publishers and Google are so high that leaving the proceedings open-ended and temporally indefinite will lead to a sort of Zeno's paradox: Before any action can be accomplished, a different action must occur first, etc., precluding forward motion.  An example is Google's recent proposal that, before it can critique the States' current amended complaint, the States should be ordered to amend again.  Complex antitrust cases can be

put on a relatively fast track, if the Court will hold the parties' feet to the fire. We've seen it done. For example, in *Bell Atlantic Corp. v. AT&T Corp.*, No. 5-96CV45 (E.D. Tex. 1996), a Section 2 case involving complex telecom switching equipment and software, the district court moved the case from filing of complaint to trial in 13 months.

Simple things can occur immediately to make progress in parallel to working on the motion to dismiss. The Court should adopt a protective order and require the parties to exchange all discovery materials that have been previously produced in this or related litigation. During the State AGs' pre-complaint investigation, Daily Mail provided documents and data to the States. Daily Mail then re-produced those same materials to Google with confidentiality designations in June 2021. As described above, Google has already produced millions of documents in the State pre-complaint investigation. There is no additional burden on Google to making those documents available to all plaintiffs now.

Indeed, full document discovery can begin now. Permitting discovery to proceed in tandem with briefing on Google's motion to dismiss will ensure that, once that motion is resolved, all parties are adequately prepared to meaningfully advance these cases. Permitting discovery to proceed while important legal issues are resolved in motions to dismiss is commonplace in complex multidistrict litigation. *See, e.g.*, Case Management Order, *In re Qualcomm Antitrust Litig.*, No. 5:17-md-02773, ECF No. 36 (N.D. Cal. May 25, 2017) (ordering that "[d]iscovery shall begin immediately" beginning with the defendant's production to plaintiffs of "documents it submitted to government investigatory agencies that do not contain third-party confidential information within two days of the entry of the protective order"); Motion to Dismiss and/or Strike, *In re Qualcomm Antitrust Litig.*, No. 5:17-md-02773, ECF No. 110 (N.D. Cal. Aug. 11, 2017) (motion to dismiss filed three months after discovery commenced; motion was eventually granted in part and denied in part). For example, in another MDL involving Google, Google has, for several months, already been engaged in discovery despite its intention to move to dismiss the constituent actions. Min. Entry (Apr. 2, 2021), *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981, ECF No. 18 (N.D. Cal.) (describing order that Google produce "all relevant documents that were produced by Google to the House Judiciary Committee" during its investigation of Google's monopolistic conduct); Joint Statement re Case Schedule, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-2981, ECF No. 91 (N.D. Cal. Aug. 28, 2021) (indicating Google will file a motion to dismiss on September 8, 2021; further indicating that all parties intend for fact discovery to be completed in March 2022, only four months after motion to dismiss briefing is complete). And this Court, too, has permitted discovery to proceed in a complex MDL despite an imminent motion to dismiss. *In re Currency Conversion Fee Antitrust Litig.*, No. MDL 1409, 2002 WL 88278, *2 (S.D.N.Y. Jan. 22, 2002) (holding that discovery should proceed despite a forthcoming motion to dismiss in part because defendants had already "agreed to engage in . . . discovery" in some of the constituent actions prior to MDL centralization).

Daily Mail and other publishers are suffering irreparable injury. As the House Antitrust Subcommittee concluded earlier this year, Google's conduct is harming "the free and diverse press" and endangering citizens' "political and economic liberty." House Antitrust Subcommittee, *Final Rep. and Recommendations, Investigation of Competition in Digital Markets*, at 57-77, 206-11 (Apr. 15, 2021). Daily Mail is seeking injunctive relief to restore competition. A process that takes five years to get to trial will allow much more harm than a process that takes two years.

We note that some of our colleagues have addressed the leadership structure for the MDL. Since the Court's Pre-Trial Order No. 1 stated it will defer proposals regarding MDL leadership and division of responsibility to later, Daily Mail does not address those issues here, except to note that its counsel have represented the winning side, both plaintiffs and defendants, in many significant antitrust cases that may be relevant in this MDL.[8]

---

[8] *E.g.*, *Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768 (6th Cir. 2002) (Section 2 case and largest U.S. antitrust jury verdict); *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429 (7th Cir. 2020) (approving tying claim similar to the tying claims here); *Ohio v. American Express Co.*, 138 S. Ct. 2274 (2018) (regarding when markets treated as two-sided); *Verizon Communications Inc. v. Law Offices of Curtis V. Trinko*, 540 U.S. 398 (2004) (whether Section 2 requires monopoly to share its facilities); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Date:  September 3, 2021          Respectfully submitted,

| | |
|---|---|
| /s/ *W. Mark Lanier* | /s/ *Ashley Keller* |
| W. Mark Lanier | Ashley Keller |
| New York Bar No.: 4327284 | ack@kellerlenkner.com |
| Mark.Lanier@LanierLawFirm.com | Brooke Smith |
| Alex J. Brown | brooke.smith@kellerlenkner.com |
| New York Bar No.: 4593604 | Jason A. Zweig |
| Alex.Brown@LanierLawFirm.com | New York Bar No.: 2960326 |
| Zeke DeRose III | jaz@kellerlenkner.com |
| Zeke.DeRose@LanierLawFirm.com | 150 N. Riverside Plaza, Suite 4270 |
| Tower 56 | Chicago, Illinois 60606 |
| 126 East 56th Street, 6th Floor | (312) 741-5220 |
| New York, NY 10022 | Zina Bash |
| (212) 421-2800 | zina.bash@kellerlenker.com |
| **THE LANIER LAW FIRM, PLLC** | 111 Congress Avenue, Suite 500 |
| | Austin, TX 78701 |
| | (512) 690-0990 |
| | **KELLER LENKNER LLC** |

*Counsel for Texas, Idaho, Louisiana (The Lanier Law Firm only), Mississippi, North Dakota, Mississippi, South Carolina, and South Dakota*

*Submitted on behalf of all Plaintiff States*

Date:  September 3, 2021          Respectfully submitted,

/s/ *Dena C. Sharp*
Dena C. Sharp (*pro hac vice*)
Jordan Elias (*pro hac vice*)
Scott M. Grzenczyk (*pro hac vice* forthcoming)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dsharp@girardsharp.com
jelias@girardsharp.com
scottg@girardsharp.com

/s/ *Tina Wolfson*
Tina Wolfson (NY #5436043)
Rachel Johnson (*pro hac vice* forthcoming)
Theodore W. Maya (*pro hac vice* forthcoming)
**AHDOOT & WOLFSON, PC**
2600 West Olive Avenue, Suite 500
Burbank, CA 91505
Tel.: (310) 474-9111
Fax: (310) 474-8585
twolfson@ahdootwolfson.com
rjohnson@ahdootwolfson.com
tmaya@ahdootwolfson.com

*Interim Co-Lead Counsel for Advertiser Plaintiffs*

Archana Tamoshunas (AT-3935)
**TAUS, CEBULASH & LANDAU, LLP**
80 Maiden Lane, Suite 1204
New York, NY 10038
Tel: (212) 931-0704
Fax: (212) 931-0703
atamoshunas@tcllaw.com

April Lambert (*pro hac vice* forthcoming)
**RADICE LAW FIRM, PC**
475 Wall Street
Princeton, NJ 08540
Tel: (646) 245-8502
Fax: (609) 385-0745
alambert@radicelawfirm.com

*Executive Committee for Advertiser Plaintiffs*

Date: September 3, 2021                             Respectfully submitted.

/s/ *John Thorne*

John Thorne
**KELLOGG, HANSEN, TODD, FIGEL
& FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, DC 20036
202 326-7900
jthorne@kellogghansen.com

*Counsel for Associated Newspapers Ltd. and
Mail Media, Inc.*