# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE: GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION** | No. 1:21-md-3010 (PKC) |

*This Document Relates To:*

| | |
|---|---|
| **THE SLATE GROUP LLC,** *Plaintiff,* - against - **GOOGLE LLC AND ALPHABET INC.,** *Defendants.* | No. 1:25-cv-07697 (PKC) |

**DEFENDANTS GOOGLE LLC AND ALPHABET INC.'s**
**FIRST SET OF INTERROGATORIES TO THE SLATE GROUP LLC**

**PROPOUNDING PARTIES:**      Google LLC and
                            Alphabet Inc.

**RESPONDING PARTY:**         The Slate Group LLC

**SET NUMBER:**               One

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendants Google LLC and Alphabet Inc. (collectively, "Google"), through their counsel, hereby request that Plaintiff The Slate Group LLC answer the following Interrogatories within thirty (30) days of service according to the Definitions and Instructions set forth herein and supplement its Interrogatory answers, as necessary, to comply with Federal Rule of Civil Procedure 26(e).

**INSTRUCTIONS**

1.    In addition to the specific instructions set forth below, these Interrogatories incorporate the instructions set forth in Federal Rules 26 and 33, the Local Rules, the Stipulation and Order Regarding Discovery Procedure ("ESI Order") (ECF No. 508), the Modified

1

Confidentiality Order (ECF No. 685), and the Scheduling Order (ECF No. 1209), or the operative version of those Orders in place at the time responses are served.

2.      These Interrogatories seek information available to You, or to which You may gain access through reasonable effort, including information in the possession of Your past and present attorneys, accountants, investigators, consultants, agents, or other persons directly or indirectly employed or retained by You, or anyone else otherwise subject to Your control who maintains records on Your behalf, in Your name, or otherwise under Your control.

3.      Unless otherwise specified, these Interrogatories each require a separate response.

4.      If You cannot provide a full and complete response to any Interrogatory, You should respond to the Interrogatory to the extent possible, specifying the portion of the Interrogatory You are unable to answer and providing whatever information You have regarding the unanswered portion.

5.      If You object to, or otherwise decline to answer, all or any portion of any Interrogatory, please provide all information called for by the Interrogatory to which You do not object or do not decline to answer. For those portions of any Interrogatory to which You object or otherwise decline to answer, state the reason for such objection or declination. If You object to any Interrogatory on the ground that it is too broad (i.e., that it calls for information which is not relevant), please provide such information as You concede to be not overly broad. If You object to any Interrogatory on the ground that it would constitute an undue burden to provide an answer, please provide such requested information as can be supplied without undertaking such undue burden.

6.      If You perceive any ambiguity in an Interrogatory, provide a brief statement of the nature of the perceived ambiguity and the interpretation You used to resolve it.

7.    Pursuant to Federal Rule 26(b)(5), if You believe that any Interrogatory calls for information subject to a claim of privilege, then:

a.  Answer all parts of the Interrogatory to which You do not object;

b.  Explain the basis for Your claim of privilege as to each part of the Interrogatory to which You object; and

c.  Identify the general nature of the information withheld.

8.    In construing the Interrogatories:

a.  Terms not specifically defined shall be given their ordinary meaning as You understand them to be used in the trade;

b.  The use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all other tenses, moods, or voices, whenever necessary, to bring within the scope of any Interrogatory all information that might otherwise be construed to be outside its scope;

c.  The use of the singular form of any word includes the plural and vice versa;

d.  Words in the masculine, feminine, or neutral gender shall include each of the other genders;

e.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Interrogatory all responses that might otherwise be construed to be outside of its scope;

f.  The terms "all," "any," and "each" shall each be construed as encompassing any and all.

9.    None of the Definitions or Interrogatories shall be construed as an admission relating to the existence of any evidence, to the relevance or admissibility of any evidence, or to

3

the truth or accuracy of any statement or characterization in the Definitions or the Interrogatories.

10.    These Interrogatories are continuing in nature. In the event that You become aware of responsive information in addition to, or in any way inconsistent with, that which You previously have provided, prompt supplementation of Your responses is required.

11.    Google specifically reserves the right to seek supplementary responses to the Interrogatories before trial.

12.    Unless otherwise stated, the Interrogatories call for responsive information from the Relevant Period.

## DEFINITIONS

1.    To the extent the terms defined below are used in the Requests, they should be construed broadly to the fullest extent of their meaning in a good-faith effort to comply with the Federal Rules and the Local Rules. These Definitions are provided solely for the purposes of these Interrogatories.

2.    The term **"Action"** refers to all lawsuits consolidated in the above-captioned multidistrict litigation, *In re: Google Digital Advertising Antitrust Litigation*, No. 21-md-3010 (S.D.N.Y.).

3.    The term **"Ad Buying Tool"** shall mean any third-party or In-House software, application, service, tool, or other interface (including DSPs and Ad Networks) through which an Advertiser Purchased or can Purchase Inventory.

4.    The terms **"Ad Exchange," "Supply-Side Platform,"** or **"SSP"** shall mean a third-party or In-House product or service through which two or more Ad Buying Tools (at least one of which is not owned or controlled by the entity operating the Ad Exchange) placed or can

4

place Bids in real-time auctions for Inventory offered for sale by or on behalf of two or more Publishers (at least one of which is not owned or controlled by the entity operating the Ad Exchange).

5.      The term **"Ad Network"** shall mean a third-party or In-House product or service (other than an Ad Exchange) through which two or more Advertisers (at least one of which is unaffiliated with the entity operating the Ad Network) Purchased or can Purchase Inventory offered for sale by two or more Publishers (at least one of which is unaffiliated with the entity operating the Ad Network).

6.      The term **"Ad Selling Tool"** shall mean any third-party or In-House software, application, service, tool, or other interface (including Publisher Ad Servers, Ad Exchanges, Ad Networks, SSPs, Header Bidding, or Header Bidding Wrappers) through which a Publisher sold or can sell Inventory.

7.      The terms **"Ad Tech"** or **"Ad Tech Product"** shall mean a product, service, application, tool, solution or other interface that facilitates or is involved in the Purchase or sale of Inventory, including but not limited to a Publisher Ad Server, Ad Exchange, Ad Network, Header Bidding, Header Bidding Wrapper, DSP, SSP, other Ad Buying Tool, or other Ad Selling Tool. For the avoidance of doubt, this term includes In-House Ad Tech Products, as well as products or services offered by social media outlets (including but not limited to, for example, Facebook.com and Twitter.com) and certain other Publishers that enable the Purchase of Inventory on their Properties via their own In-House Ad Tech Products. This term does not include general-purpose software or systems on which an Ad Tech Product relies.

8. The term **"Ad Tech Provider"** shall mean a person, firm, association, or other entity selling, reselling, licensing, or otherwise providing at least one Ad Tech Product, whether or not for a fee or other compensation.

9. The term **"Advertiser"** shall mean a person or entity that, directly or through one or more intermediaries, places one or more Display Advertisements intended to advertise or promote a good or service offered by that person or entity, or otherwise convey such person or entity's desired message, on a Publisher's Property so that it is viewed by at least one User visiting such Property. For the avoidance of doubt, Advertisers typically, but need not, pay for the placement of such Display Advertisements.

10. The term **"AdX"** shall mean Google's Ad Exchange that was marketed as DoubleClick Ad Exchange, inclusive of all prior and subsequent iterations of the product and all variants thereof, and including, for the avoidance of doubt, the Ad Exchange functionality of Google Ad Manager and Google Ad Manager 360.

11. The term **"Agency"** shall mean an advertising agency or similar consulting firm that is hired by an Advertiser to manage the Purchase of Inventory for one or more Campaigns. For the avoidance of doubt, although an Agency may use DSPs or other tools to manage such Campaigns, an entity operating a DSP shall not, solely on that basis, be deemed an Agency.

12. The term **"Bid"** shall mean an offer, made in response to a Query, to pay a specified amount in exchange for the right to render a Display Advertisement in a unit of Inventory.

13. The term **"Campaign"** shall mean one or more Display Advertisements that are targeted to particular types of Inventory, Users, or objectives.

14.     The term **"communication"** shall have the meaning provided in Local Rule 26.3, namely, the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

15.     The term **"concerning"** shall have the meaning provided in Local Rule 26.3, namely, relating to, referring to, describing, evidencing, or constituting.

16.     The term **"Connected Television"** shall mean devices or services that allow Users to watch television content served over the internet on a television screen, such as smart TVs (e.g., Samsung, TCL, Sony), media streaming devices (e.g., Roku Streaming Stick, Apple TV, Chromecast), or video game consoles (e.g., Xbox, PlayStation).

17.     The terms **"Demand-Side Platform"** or **"DSP"** shall mean an Ad Buying Tool, that enables an Advertiser to automatically buy Inventory sold via Ad Selling Tools in real-time on an Impression-by-Impression basis. For the avoidance of doubt, an Agency trading desk shall be deemed a DSP for purposes of this definition.

18.     The terms **"Display Advertisement"** or **"Display Advertising"** shall mean Online Advertising other than Search Advertising, and shall include Native, banner, in-app, or video advertising, whether social or non-social.

19.     The term **"document"** shall have the meaning provided in Local Rule 26.3, namely, that the term shall be synonymous in meaning and equal in scope to the usage of the phrase "documents or electronically stored information" in Federal Rule 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

20.     The terms **"DoubleClick for Publishers"** or **"DFP"** shall mean Google's Publisher Ad Server that was marketed as DoubleClick for Publishers, inclusive of all prior and subsequent iterations of the product and all variants thereof (e.g., Small Business, Enterprise

editions, etc.), and including for the avoidance of doubt the ad server functionality of Google Ad Manager and Google Ad Manager 360.

21.     The term **"Dynamic Allocation"** shall mean the DFP Feature that enabled demand from AdX to compete in real-time with demand from third-party Ad Exchanges, Ad Networks, and Ad Buying Tools via a price floor for AdX in DFP.

22.     The term **"Enhanced Dynamic Allocation"** shall mean the modification to Dynamic Allocation first introduced in or about 2014, which enabled guaranteed and non-guaranteed Line Items to compete on a per-Impression basis.

23.     The term **"Feature"** shall mean any design, feature, limitation, policy, mechanism, innovation, improvement, optimization, or strategy related to how Ad Tech Products buy, sell, price, bid, or auction Inventory, how Ad Tech Products improve ad quality or Match Quality, how Ad Tech Products measure, or report on the effectiveness of Display Advertising, or how Ad Tech Products integrate or interoperate with other Ad Tech Products, whether owned or operated by the same entity or different entities.

24.     The term **"Fees"** shall mean any money retained by a provider of Ad Tech Products, including via Take Rates, for services related to the Purchase of Display Advertisements.

25.     The term **"Format"** shall mean the general makeup or layout of an ad. Different types of Display Advertising Formats include Native Advertising, Instream Video Advertising, Outstream Video Advertising, and Static Advertising.

26.     The term **"Google"** shall mean Google LLC, any current or former parents, subsidiaries, affiliates, divisions, predecessors, officers, directors, employees, agents or representatives, and any other person acting on their behalf.

8

27.     The terms **"Google Ad Manager"** or **"GAM"** shall mean the product introduced by Google on June 27, 2018, which brought together DFP and AdX into a unified programmatic platform.

28.     The term **"Header Bidding"** shall mean the use by a Publisher of code that is directly or indirectly called during the web browser's processing or rendering of the HTML header of a webpage (and prior to the invocation of a Publisher Ad Server) and that causes Queries to be sent to one or more Ad Exchanges, Ad Networks, DSPs, or other sources of demand.

29.     The term **"Header Bidding Wrapper"** shall mean a Header Bidding management system.

30.     The term **"identify,"** when referring to a person, shall have the meaning provided in Local Rule 26.3, namely, to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

31.     The term **"identify,"** when referring to documents, shall have the meaning provided in Local Rule 26.3, namely, to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

32.     The terms **"impact"** and **"effect"** shall include both qualitative and quantitative, direct and indirect meanings of those terms.

33. The term **"Impression"** shall mean the service of a single Display Advertisement to a single User.

34. The term **"In-House"** shall describe an Ad Tech Product created for a Publisher's, Advertiser's, or Agency's internal use.

35. The term **"including"** shall mean including but not limited to.

36. The term **"Instream Video Advertising"** shall mean Online Advertising in which the advertisement is displayed within a stream of video content that the User is viewing, e.g., before, in the middle of, or after the video content.

37. The term **"Inventory"** shall mean space offered by Publishers for the sale or placement of Display Advertising.

38. The term **"Line Item"** shall mean the Feature of a Publisher Ad Server that contains parameters for how a given Display Advertisement is intended to be served on a Publisher's Property, along with pricing and other delivery details.

39. The term **"Match Quality"** shall mean the effectiveness of matching customer information parameters to a website event.

40. The term **"Native Advertising"** shall mean Online Advertising that follows the natural form and function of the User experience in which it is placed (such as sponsored ads within a User's Facebook feed).

41. The terms **"Online Advertisement"** or **"Online Advertising"** shall mean advertising via the internet, including on websites, apps, and Connected Television. For example, both Display Advertising and Search Advertising are forms of Online Advertising.

42. The term **"Outstream Video Advertising"** shall mean Online Advertising, other than Instream Video Advertising, that includes a video or animation.

10

43.    The term **"person"** shall have the meaning provided in Local Rule 26.3, namely, any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

44.    The terms **"Plaintiff"** and **"Defendant"** as well as a party's full or abbreviated name or a pronoun referring to a party shall have the meaning provided in Local Rule 26.3, namely, the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the Action.

45.    The term **"Property"** shall mean a website, mobile application, or other product or service containing space that is sold or offered for sale for the placement of Display Advertising.

46.    The term **"Publisher"** shall mean a person or entity operating a Property. For the avoidance of doubt, the owner of the Property shall be deemed the Publisher, even if it has out-sourced the sale of its associated Inventory, in whole or in part, to a third party.

47.    The term **"Publisher Ad Server"** shall mean a third-party or In-House product, service, or system that is responsible for selecting (or attempting to select), on behalf of a Publisher, the Display Advertisement (or source from which such Display Advertisement shall be obtained) for a unit of Inventory. For the avoidance of doubt, a Publisher Ad Server may be owned and/or operated by a third-party Ad Tech Provider, or may be owned, developed, or operated by the Publisher or by a third party on behalf of or under contract with the Publisher. For the further avoidance of doubt, a system that creates or manages mediation chains constitutes a Publisher Ad Server for purposes of these Interrogatories.

11

48.     The term **"Purchase,"** when used in connection with Inventory or Impressions, shall mean to obtain, directly or indirectly through one or more intermediaries, the right to render or display a Display Advertisement in a unit of Inventory, typically but not necessarily in exchange for a monetary payment.

49.     The term **"Query"** shall mean a request to provide, or bid to provide, a Display Advertisement to be rendered in a unit of Inventory, whether denominated as an "ad request," "bid request," or otherwise. A Query may, but need not, request a Bid that will be considered before awarding the right to actually display a Display Advertisement to a particular Advertiser.

50.     The term **"Relevant Period"** shall mean January 1, 2013 to present.

51.     The term **"Search Advertising"** shall mean Online Advertising that is displayed in response to a User's search intent or search terms.

52.     The term **"Static Advertising"** shall mean Online Advertising consisting solely of static (i.e., non-moving or -changing) text, images, or graphics.

53.     The term **"Take Rate"** shall mean the proportion of total revenue generated from Purchased Inventory that an Ad Tech Provider collects as part of its fee arrangement in connection with the Purchased Inventory.

54.     The term **"User"** shall mean an end user visiting or using a Property, or a proxy for that end user (including, but not limited to, cookie identifiers or mobile ad identifiers).

55.     The terms **"You"** or **"Your"** refer to The Slate Group LLC, including its parents, predecessors, successors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, agents, and representatives of the foregoing. "You" and "Your" includes each of The Slate Group LLC's brands or Properties, including any brand, magazine, newspaper, entity, Property, or service on whose behalf Plaintiff claims damages in this Action.

## INTERROGATORIES

**INTERROGATORY NO. 1**

Identify and describe each business or legal entity under Your control, including the dates of operation, its purpose or line of business, all locations in which You conducted business, and associated time periods for each.

**INTERROGATORY NO. 2**

State what Your revenue was in each year, including all sources of that revenue and amount of revenue by each source, and including all digital advertising revenue by Format (e.g., video, banner).

**INTERROGATORY NO. 3**

Identify all ad-supported, whether in-whole or in-part, websites You maintain, maintained, control, controlled, own, or owned and, for each, identify the time period during which each website has operated, and the identity of all of Your employees or agents involved in selling advertising space offered on such website.

**INTERROGATORY NO. 4**

Identify each of Your Google digital advertising accounts including, for each: the date the account was opened; the dates during which the accounts were in use; any account IDs associated with the account, including Google customer IDs; which business entity or entities has owned the account (and associated time period); and which individual(s) has used or accessed the account on behalf of You (and associated time period).

**INTERROGATORY NO. 5**

Identify Your communications with Google upon which You rely for any of Your claims, including identifying the dates of such communications, the relevant individuals from You and

13

Google who participated in the communications, the subject matter of such communications, and all documents related thereto.

**INTERROGATORY NO. 6**

Identify all contracts for Your Google digital advertising accounts that You entered into, including, but not limited to, all contracts for Google Ad Tech products and services, including all DoubleClick for Publishers/Google Ad Manager contracts, and all terms of service including all revised or updated terms of service, and including, for each contract, identifying the date on which You entered into the contract, identifying the person who accepted the contract on Your behalf, and identifying all of Your communications relating to the contract or its negotiation.

**INTERROGATORY NO. 7**

Identify each Ad Tech Provider and Ad Tech Product You used (whether from Google, any other Ad Tech Provider, or developed In-House), including the associated time period in which You used each Ad Tech Provider and Ad Tech Product, and the amount in Fees paid monthly to each Ad Tech Provider by Ad Tech Product used.

**INTERROGATORY NO. 8**

Identify for each year and for each website You maintain, maintained, control, controlled, own, or owned, the amount of advertising revenue You received, including identifying revenue generated in connection with Your use of Google's Ad Tech tools to fill ad space on Your websites, and identifying revenue generated in connection with Your use of any other Ad Tech tools from other Ad Tech Providers besides Google.

**INTERROGATORY NO. 9**

Identify any in-app advertising Inventory that You sell, including the time period in which You have sold such Inventory.

14

**INTERROGATORY NO. 10**

Identify all Your "sponsorship" deals from which Enhanced Dynamic Allocation reallocated inventory to AdX, as set forth in Paragraph 159 of Your Complaint, and identify the terms of each "sponsorship" deal, the effective dates of each deal, the amount of inventory reallocated to AdX and the date of each reallocation, and the amount paid for the inventory sold through AdX.

Dated: October 30, 2025

/s/ *Justina K. Sessions*
Justina K. Sessions
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250
justina.sessions@freshfields.com

Eric Mahr
Andrew J. Ewalt
700 13th Street NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
eric.mahr@freshfields.com
andrew.ewalt@freshfields.com

Craig M. Reiser
AXINN VELTROP & HARKRIDER LLP
630 Fifth Avenue
New York, NY 10111
Telephone: (212) 728-2218
creiser@axinn.com

*Counsel for Defendants Google LLC and
Alphabet, Inc.*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2025, I caused the foregoing to be served on all counsel of record via email.

*/s/ Justina K. Sessions*
Justina K. Sessions
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250
justina.sessions@freshfields.com

16