KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215

(202) 326-7900

FACSIMILE:
(202) 326-7999

October 1, 2021

*Via CM/ECF*

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC) [rel. No. 1:21-cv-03446 (PKC)]

Dear Judge Castel:

      Undersigned counsel for plaintiffs Associated Newspapers Ltd. and Mail Media, Inc. (collectively "Daily Mail") write in response to Paragraph 5 of the Court's September 24, 2021 Order, ECF No. 129 ("Order"). Pursuant to Your Honor's Individual Practices 1.A.iv, counsel note that there is currently no conference scheduled in this matter. Counsel further respectfully request to be heard on this matter. As explained below, Kellogg Hansen does not have a conflict of interest; Daily Mail is not pursuing claims against Facebook. Of course, other parties to this MDL are adverse to Facebook, and a Plaintiffs Coordinating Committee is meeting at the Court's direction to organize workflows. Daily Mail and its chosen counsel are important participants in this MDL. Kellogg Hansen anticipates participating vigorously in the pursuit of its clients' interests in this litigation, and in connection with the MDL. But Kellogg Hansen plans to be walled off in aspects of the MDL where Facebook's interests are adverse to other MDL participants'. To address such issues, Daily Mail has retained separate and independent conflicts counsel as a precaution.

**I.    There is No Conflict in Kellogg Hansen's Representation of Daily Mail and, in an Unrelated Matter, Facebook**

      There is not a "present conflict in" Kellogg Hansen's "simultaneous representation of" Daily Mail and Facebook. Order ¶ 5. Under the New York Rules of Professional Conduct a conflict arises if a "reasonable lawyer would conclude that" a particular representation would "involve the lawyer in representing differing interests." N.Y. R. Pro. Conduct 1.7(a)(1).

"Differing interests" are those interests "that will adversely affect either the judgment or the loyalty of a lawyer to a client, whether it be a conflicting, inconsistent, diverse, or other interest." N.Y. R. Pro. Conduct 1.0(f). No such conflict is present here. From the outset of Kellogg Hansen's representation of Daily Mail and Facebook, both clients understood Kellogg Hansen's representation of the other, both clients engaged Kellogg Hansen with full knowledge of the relevant facts, and both clients have since reaffirmed their desire to be represented by Kellogg Hansen. The fact that Daily Mail's complaint against Google has now been centralized with other cases where other plaintiffs have named Facebook as a defendant does not create a conflict for Kellogg Hansen where none existed previously. The absence of a present conflict requiring Kellogg Hansen's disqualification is confirmed by Professor Anthony Sebok, an expert in legal ethics, whose declaration is attached as Exhibit 1 to this letter.

First, counsel's simultaneous representation of Daily Mail and Facebook in separate, unrelated matters does not jeopardize counsel's judgment on behalf of or loyalty to either client. Neither party is adverse to the other in these matters – in the case before Your Honor, Daily Mail neither names Facebook as a defendant nor challenges (or even mentions) in its complaint the agreement between Facebook and Google challenged by others in this MDL. A "party's right to a lawyer of its choice" should not be infringed "absent compelling factors that the attorney's loyalty to his client has been compromised." *GB v. Town of Hempstead*, No. 17-cv-06625 (ADS)(ARL), 2019 WL 3330243, *4 (E.D.N.Y. May 1, 2019) (quoting *Softel, Inc. v. Dragon Med. & Sci. Commc'ns Ltd.*, No. 87-cv-00167 (MGC), 1995 WL 75490, *3 (S.D.N.Y. Feb. 23, 1995). When sophisticated parties "with knowledge of a possible conflict of interest, reaffirm their desire for . . . representation" by a particular firm, "the Court should be reluctant to disqualify their chosen counsel." *Como v. Commerce Oil Co.*, 607 F. Supp. 335, 342 (S.D.N.Y. 1985); *cf. Fisons Corp. v. Atochem N. Am., Inc.*, No. 90-cv-1080 (JMC), 1990 WL 180551, *5 (S.D.N.Y. Nov. 14, 1990) (finding no conflict when full information about potential conflict was provided to "a knowledgeable and sophisticated client").

In retaining Kellogg Hansen, Daily Mail, a highly sophisticated party, understood that Kellogg Hansen also represented Facebook in unrelated matters. Before being engaged by Daily Mail in 2019, undersigned counsel discussed with Daily Mail the fact of Kellogg Hansen's representation of Facebook, and counsel informed Daily Mail that it can neither advise Daily Mail on the strength of nor prosecute any claim Daily Mail might have against Facebook. Counsel further advised Daily Mail that any analysis of those potential claims would need to be undertaken by separate counsel. In December 2020, a group of State AGs filed a complaint against Google alleging that an agreement between Google and Facebook contributed to an antitrust violation by Google. The State AGs' allegations regarding the previously confidential agreement were covered extensively by the press, including Daily Mail itself. *See, e.g.*, Daisuke Wakabayashi & Tiffany Hsu, *Behind a Secret Deal Between Google and Facebook*, N.Y. Times (Jan. 17, 2021), https://www.nytimes.com/2021/01/17/technology/google-facebook-ad-deal-antitrust.html?smid=url-share. On March 15, 2021, the State AGs filed their First Amended

Complaint and reasserted their claims regarding the agreement. In April of 2021, Daily Mail made an informed decision to file its complaint against *only* defendants Google, LLC and Alphabet, Inc. Compl., *Associated Newspapers, Ltd. v. Google, LLC*, No. 1:21-cv-03446 (PKC) (S.D.N.Y. Apr. 20, 2021), ECF No. 1 ("Daily Mail Compl."). It made no allegation concerning any agreement between Google and Facebook.

Similarly, Facebook was made aware of Kellogg Hansen's work on behalf of Daily Mail in challenging Google's monopolization of publisher-facing advertising technology markets. Kellogg Hansen discussed the ramifications of that representation with Facebook and Facebook chose to continue being represented by Kellogg Hansen. When Daily Mail filed its suit against Google in April 2021, Kellogg Hansen again discussed the matter with Facebook, and Facebook reaffirmed that it wants to be represented by Kellogg Hansen in the other matters.

Legal ethics expert Anthony Sebok agrees that there is no present conflict in Kellogg Hansen's simultaneous representation of Daily Mail and Facebook requiring disqualification. As he explains, courts in the Second Circuit will disqualify a firm only if the challenged representation "taints the underlying judicial proceeding." Ex. 1, Sebok Decl. ¶ 7. Here, Professor Sebok concludes that any potential conflict would be "positional" and that "no reasonable lawyer would think that in the Second Circuit a positional conflict would threaten to taint the matter before the tribunal sufficient to warrant disqualification." *Id*. ¶ 9. He further concludes that the "measures proposed by Kellogg Hansen," described below, "are sufficient" to prevent any future "harm" to "the interests of any of its current clients." *Id*. ¶ 5. There is thus "no basis to conclude that [Kellogg Hansen] may not represent" both Facebook and Daily Mail. *Id*.

Accordingly, a reasonable attorney would not conclude that Kellogg Hansen's representation of Daily Mail in its suit against Google would involve the firm in representing "differing interests." Daily Mail and Facebook, as sophisticated business entities, understand fully that Kellogg Hansen cannot advise either regarding any claim asserted by one against the other. There is no "present conflict." Order ¶ 5.

Second, that Facebook was brought into this MDL does not derive from any adversity between Daily Mail and Facebook, but rather from the choices of other plaintiffs who filed their cases in other venues, Google's motion to centralize these cases together, and the Judicial Panel on Multidistrict Litigation's ("JPML") order granting that request. Those facts do not create a conflict for Kellogg Hansen where none previously existed.

This Court has previously determined that no conflict exists in similar circumstances. In *Sumitomo Corp. v. J.P. Morgan & Co.*, the law firm Paul, Weiss, Rifkind, Wharton & Garrison ("Paul Weiss") represented the Sumitomo Corporation in a number of actions including one in this Court against J.P. Morgan & Co., Inc. ("J.P. Morgan"). Nos. 99-cv-8780(JSM), 99-cv-

4004(JSM), 2000 WL 145747, *1-2 (S.D.N.Y. Feb. 8, 2000). Sumitomo, represented by different counsel, had also brought in this Court a substantially similar suit against Paul Weiss's then-current client Chase Manhattan Bank ("Chase"). *Id*. at *2. Chase simultaneously moved to "coordinate [the] cases for pretrial purposes" and to disqualify Paul Weiss from representing Sumitomo. *Id*. at *1 & n.1. Construing the motion for pretrial coordination as one for consolidation, the Court consolidated the actions but refused to disqualify Paul Weiss. Applying Rule 1.7(a)(1)'s predecessor, which "forb[ade] a lawyer from representing a client if that representation [would] adversely affect the interests of another current client,"[1] the court determined that no conflict arose because "Paul Weiss [was] not involved in attempting to establish wrongdoing by Chase or seeking a judgment that [would] directly impact Chase." *Id*. at *3, *5. That the actions had been "consolidated . . . for pretrial purposes" changed nothing – "[u]pon consolidation, no conflict arises because consolidation does not merge separate lawsuits into a single action and does not make parties in one suit parties in another." *Id*. at *5.

In *Sumitomo*, Paul Weiss took a position in suing J.P. Morgan that, "if adopted, would prejudice an argument that Chase," Paul Weiss's other client, "was advancing in a separate case." *Id*. at *4. Not so here – Daily Mail's complaint focuses on markets monopolized by Google where Facebook is not a competitor. Vindication of Daily Mail's allegations will not prejudice Facebook. Moreover, unlike Daily Mail, the client in *Sumitomo* filed suit against another of its counsel's clients. Here, Daily Mail could have chosen to sue Kellogg Hansen's client Facebook, but it did not do so. The absence of a conflict in *Sumitomo* thus confirms the absence of a conflict in the circumstances of this case.

*Sumitomo* also makes clear that the procedural fact of centralization of Daily Mail's suit with other suits against another defendant does not create a conflict where none existed before. Just like cases consolidated for pretrial purposes under Federal Rule of Civil Procedure 42(a), cases centralized for multidistrict litigation under 28 U.S.C. § 1407 "retain their separate identities." *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 (2015); *see also* J.P.M.L. R. 2.1(c) ("Any attorney of record in any action transferred under Section 1407 may continue to represent his or her client in any district court of the United States to which such action is transferred."). Participation in an MDL, moreover, does not create an attorney-client relationship between participating counsel and any party that counsel has not been retained to represent. *In re Gen.*

---

[1] This Court and the Eastern District of New York have held that the rule applied by the *Sumitomo* court is "substantially similar to . . . Rule 1.7 of the New York Rules of Professional Conduct." *Akagi v. Turin Housing Dev. Fund Co.*, No. 13-cv-05258 (KPF), 2017 WL 1076345, *10 n.8 (S.D.N.Y. Mar. 22, 2017) (quoting *All Star Carts & Vehicles, Inc. v. BFI Canada Income Fund*, No. 08-cv-01816 (LDW)(AKT), 2010 WL 2243351, at *3 (E.D.N.Y. June 1, 2010); *see also Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F. Supp. 1080, 1083 n.5 (S.D.N.Y. 1989) ("Canon 5" – the rule applied by the *Sumitomo* court – "has been reconstituted as Rule 1.7.").

*Motors LLC Ignition Switch Litig.*, No. 14-md-02543 (JMF), 2016 WL 1441804, *7 (S.D.N.Y. Apr. 12, 2016) ("*General Motors*") ("[MDL lead counsel] does not serve as counsel for all" MDL plaintiffs; "instead, each of those plaintiffs is represented by counsel of his or her choice."). Daily Mail is no more adverse to Facebook today than it was when it filed its complaint.

Should these sophisticated parties become adverse, both are aware that the retention of separate counsel would be necessary. In any event, "the mere possibility of a legally cognizable claim between or among a group of jointly represented clients does not require disqualification of their counsel." *Muniz v. Re Spec Corp.*, 230 F. Supp. 3d 147, 155 (S.D.N.Y. 2017). To hold otherwise would risk undermining Daily Mail's "right freely to choose [its] counsel." *Hempstead Video, Inc. v. Inc. Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978); *see also Mura v. Thomas*, No. 19-cv-08699 (LMS), 2020 WL 2086039 (S.D.N.Y. Apr. 30, 2020) ("The Court should not disturb a client's choice of counsel unless the attorney's representation would so taint the prosecution or defense of a matter as to call into question the integrity of the adversarial process.").

**II.     Daily Mail Should Be Permitted To Participate in Appropriate MDL Activities**

Your Honor asked Mr. Boies and Mr. Lanier to organize an initial meeting of the Plaintiffs Coordinating Committee to discuss coordination of various work streams in this MDL. Kellogg Hansen will not participate on the Plaintiffs Coordinating Committee and will not engage in any discussions with the Plaintiffs Coordinating Committee that implicate Facebook. Undersigned counsel should be permitted to attend meetings with the other plaintiffs for such parts as are not adverse or related to Facebook. Daily Mail and its chosen counsel are important participants in this MDL. Large publishers like Daily Mail have different interests in this litigation because they use different Google products than small publishers. Daily Mail Compl. ¶ 63. Because large publishers sell a far greater volume of ad impressions (the term used to describe a single ad served to a single user), they feel the impact of Google's conduct more intensely, and are thus able to identify and measure conduct small publishers might not. *Cf.* Manual for Complex Litigation § 10.224 (2004) (encouraging judges overseeing multi-party litigation to ensure that coordinating committees "fairly represent the various interests in the litigation"); Principles of the Law of Aggregate Litigation § 1.05, cmt. e (2010) (explaining that "parties with sizeable stakes" are vital participants in aggregate litigation). Just as Genius Media (the world's largest music encyclopedia) has a seat at the table, it is important that the world's most popular English-language newspaper website has a seat also. The MDL will be more effective as a result.

Removing Kellogg Hansen as Daily Mail's counsel from MDL activities entirely would prejudice Daily Mail. *Cf. Muniz*, 230 F. Supp. 3d at 152 ("Disqualification is disfavored because

it has an immediate adverse effect on the client by separating him from counsel of his choice." (internal quotation marks and citation omitted)). Daily Mail selected Kellogg Hansen as its counsel because Kellogg Hansen has experience in many significant antitrust cases that may be relevant to its claims. *E.g.*, *Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768 (6th Cir. 2002) (Section 2 case finding liability for monopolist's blocking access by rivals to independent retail shelf space); *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429 (7th Cir. 2020) (approving tying claim similar to the tying claims here); *Ohio v. American Express Co.*, 138 S. Ct. 2274 (2018) (regarding when markets are treated as two-sided); *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko*, 540 U.S. 398 (2004) (whether Section 2 requires monopolist to share its facilities); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Daily Mail has invested over two years in working with Kellogg Hansen developing the case it filed in this Court. Daily Mail provided evidence to the State Attorneys General, leading to the State AG complaint now before Your Honor. Daily Mail has made a substantial investment in the experts retained by Kellogg Hansen on Daily Mail's behalf. The active participation of Daily Mail and its counsel in this MDL will aid in efficiently and effectively bringing these matters to resolution.

Coordination between Daily Mail and the other plaintiffs in the MDL can be managed without involving Kellogg Hansen in the alleged network bidding agreement between Google and Facebook. The Court suggested that the organization of MDL leadership and the division of responsibilities is a matter for discussion among the various plaintiffs. Pre-Trial Order No. 1 ¶ 8, ECF No. 4. The role and contribution of undersigned counsel for Daily Mail in the MDL can be developed in those discussions. The JPML has long recognized that the centralization of disparate actions would sometimes involve combining parties with "conflicting interests." *In re "Fine Paper" Antitrust Litig.*, 453 F. Supp. 118, 121 (U.S. J.P.M.L. 1978); *see also General Motors*, 2016 WL 1441804 at *8 ("It is inevitable in litigation of this size and complexity that there will [be] tensions among plaintiffs' counsel — whose interests are mostly aligned, but sometimes competing."). The JPML empowered transferee judges to design processes that would "protect the rights of all concerned, while at the same time streamlining the entire pretrial process." *Fine Paper*, 453 F. Supp. at 122. "[A]ny antagonistic interests among the parties in the various actions may be accommodated by the transferee judge in designing the pretrial program." *Id.* (quoting *In re Corrugated Container Antitrust Litig.*, 447 F. Supp. 468, 471 (J.P.M.L. 1978)). To that end, counsel has implemented the following procedures:

*First*, the Kellogg Hansen counsel for Daily Mail have been "walled off" from participation in any matter involving Facebook. Kellogg Hansen has put in place an ethical wall to ensure that no attorney working on behalf of Daily Mail will access or obtain Facebook materials, and vice versa. Such walls are typically erected around attorneys who join firms that are adverse to the attorney's former clients. *See, e.g.*, *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 827 F. Supp. 2d 341, 345-46 (S.D.N.Y. 2011).

*Second*, Kellogg Hansen will not participate in any discussion with the other plaintiffs of claims against Facebook or claims related to the alleged agreement between Facebook and Google known alternatively as "Jedi Blue" or the "Network Bidding Agreement."

*Third*, Kellogg Hansen will not participate in seeking discovery from Facebook or Facebook employees.  See Ronald D. Rotunda, *Resolving Client Conflicts by Hiring "Conflicts Counsel*,*"* 62 Hastings L.J. 677, 692-96 (2011) (explaining that "conflicts counsel" is often used in discovery to simultaneously ensure a client is adequately represented and that it is "able to retain counsel of choice" that might otherwise be conflicted); N.Y. City Bar Ass'n Comm. On Pro. Ethics, Formal Op. 2017-6 (2017) ("[W]ith the litigation client's consent, another lawyer may be retained for the limited purpose of taking discovery from the client-witness.").  Daily Mail has engaged conflicts counsel.

    Respectfully submitted,

    /s/ *John Thorne*

    John Thorne
    KELLOGG, HANSEN, TODD, FIGEL &
      FREDERICK, P.L.L.C.
    1615 M Street NW, Suite 400
    Washington, DC  20036

    Samuel Issacharoff
    40 Washington Square South, Suite 411J
    New York, NY  10012

    *Counsel for Associated Newspapers, Ltd.*
    *and Mail Media, Inc.*

cc:   All Counsel of Record (via CM/ECF)