# Exhibit 1

**BEFORE THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION | Civil Action No. 1:21-md-03010-PKC |

*This declaration relates to:*

| | |
|---|---|
| ASSOCIATED NEWSPAPERS LTD. and MAIL MEDIA, INC., | |
| Plaintiffs, | Civil Action No. 1:21-cv-03446-PKC |
| -against- | |
| GOOGLE LLC and ALPHABET INC., | |
| Defendants. | |

**EXPERT DECLARATION OF PROFESSOR ANTHONY SEBOK**

1.      I am a Professor of Law and Co-Director of the Jacob Burns Center for Ethics in the Practice of Law, Benjamin N. Cardozo School of Law, where I have taught legal ethics from 2007 to the present.  The Jacob Burns Center for Ethics in the Practice of Law was established in 1991 at Cardozo to support education programming promoting a commitment to ethical objectives among both students and the legal profession.  I teach Professional Responsibility at Cardozo and frequently write and speak on topics pertaining to the Rules of Professional Conduct.  I am a member of the New York State Bar Association Committee on Professional Ethics.

2.      Before coming to Cardozo in 2007, I was the Centennial Professor of Law and the Associate Dean for Research at Brooklyn Law School, where I taught for 15 years.  I was a

Fellow in the Program in Law and Public Affairs at Princeton University from 2005 to 2006, and in 1999, I was a Fellow at the American Academy in Berlin.

3.      In addition to the foregoing, I have served as a Visiting Professor of Law at several institutions, including Cornell Law School (Spring 2018), Haifa University in Israel (Spring 2016), Columbia Law School (Fall 2011), and Tsinghua University School of Law in Beijing, China (Summer 2010).  My curriculum vitae is attached as Exhibit A.

4.      I have been asked to provide an expert declaration in support of the letter to Hon. P. Kevin Castel, dated October 1, 2021, pursuant to Paragraph 5 of his September 24, 2021 Order.  I am being compensated $1000 per hour.  No part of the compensation I receive is dependent on the conclusions I reach or the result in any matter in which this declaration might be introduced.

5.      In summary, and as described more fully below, in my opinion, under the current precedent of the Second Circuit, there is no basis to conclude that Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. may not represent the plaintiffs ("Daily Mail") and that the measures proposed by Kellogg Hansen to prevent the transmission of confidential information in the future that might harm the interests of any of its current clients are sufficient.

6.      The question raised by Judge Castel is whether Kellogg Hansen's "duty of loyalty" to Daily Mail and Facebook create a conflict that can be cured only by the withdrawal of Kellogg Hansen from the current case.  From my review of materials listed in Exhibit B, the putative conflict arises from the fact that Kellogg Hansen represents Daily Mail in the current case and Facebook in other cases in other courts.  Kellogg Hansen currently represents Facebook in *Federal Trade Commission v. Facebook, Inc.*, No. 20-3590 (JEB) (D.D.C.); *New York v. Facebook, Inc.*, No. 21-7078 (D.C. Cir.); and related cases raising similar claims.  The judge

expressed concern that, because other parties in this MDL have taken positions adverse to Facebook, that Kellogg Hansen may be required to choose between actions that assist either Facebook (at the expense of Daily Mail) or Daily Mail (at the expense of Facebook).  As I will explain below, the foregoing concern does not support the conclusion that Kellogg Hansen may not continue to represent both Daily Mail and Facebook in this case.

       7.      The power to disqualify counsel derives from courts' "inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (*quoting Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)).  A court should disqualify an attorney "only if '[his] conduct tends to taint the underlying trial.'" *Akagi v. Turin Hous. Dev. Fund Co.*, No. 13 Civ. 5258 (KPF), 2017 WL 1076345, at *10 (S.D.N.Y. Mar. 22, 2017) (alteration in original) (quoting *GSI Commerce Sols., Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010) (quoting *Nyquist*, 590 F.2d at 1246)). Federal courts in the Second Circuit employ the New York Rules of Professional Conduct ("NYRPC") as a source when assessing whether to disqualify a lawyer in a case before them.  In deciding disqualification motions, courts may look to "'the American Bar Association (ABA) and state disciplinary rules,' however 'such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification.'" *Canfield v. SS&C Techs. Holdings, Inc.*, No. 1:18-CV-08913(ALC), 2020 WL 3960929, at *3 (S.D.N.Y. July 10, 2020), (quoting *Hempstead Video*, 409 F.3d at 132), *reconsideration denied*, No. 1:18-CV-10252 (ALC), 2021 WL 1026128 (S.D.N.Y. Mar. 17, 2021)  Kellogg Hansen should be disqualified

only if, under the test articulated in the Second Circuit, representation by a lawyer of differing interests taints the underlying judicial proceeding.[1]

8.      In the Second Circuit, disqualification is not required where the difference in interests between two clients of the same attorney (here, separate attorneys at the same law firm) is based on the consolidation of an action adverse to one client, not represented by the lawyer, with another case in which the lawyer represents another client.  *See Sumitomo Corp. v. J.P. Morgan & Co*., Nos. 99 Civ. 8780(JSM), 99 Civ. 4004(JSM), 2000 WL 145747 (S.D.N.Y. Feb. 8, 2000).  Other jurisdictions that have adopted *Sumitomo's* reasoning have held that two matters with "overlapping facts and law" are not the "same matter" for purposes of determining whether two clients have adverse interests.  *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 965 F. Supp. 2d 104, 112 (D.D.C. 2013).

9.      Given that NYRPC adopts the phrase "differing interests" (as opposed to the ABA Model Rule 1.7(a)(1) phrase "directly adverse"), the court's concern may be that Kellogg Hansen faces a type of positional conflict under NYRPC 1.7(a)(1).  *See* Simon's NY Rules of Prof. Conduct § 1.7:15 ("Representing multiple clients in different matters").  Comment 24 of NYRPC 1.7(a)(1) says:  "A conflict of interest exists, however, *if there is a significant risk that a lawyer's action on behalf of one client will materially limit the lawyer's representation of another client in a different action*" (emphasis added).  Even if this were the case, no reasonable lawyer would think that in the Second Circuit a positional conflict would threaten to taint the

---

[1]  "Even if [the lawyer's] representation . . . in this litigation *were a violation of his professional obligations*, there is no indication that any such violation would taint the trial in this case." *Tour Tech. Software, Inc. v. RTV, Inc.*, No. 17 CV 5817 (MKB) (CLP), 2018 WL 3682483, at *6 (E.D.N.Y. Aug. 2, 2018) (emphasis added).  While I have not been asked for my opinion about whether Kellogg Hansen has, or would in the future, violate NYRPC 1.7(a)(1) in connection with its decision to represent both Facebook and Daily Mail, my opinion on this question, subject to revision based on further research and the emergence of new facts, is that Kellogg Hansen's continued representation is not in violation NYRPC 1.7(a)(1), especially if it were to obtain an advance waiver in connection with the representation under NYRPC 1.7(b)(4).

matter before the tribunal sufficient to warrant disqualification, especially when as here Daily Mail has retained "conflicts counsel" to provide separate advice and, as necessary, separate advocacy.[2]

10.     In my opinion, the risk of taint resulting from Kellogg Hansen's divided loyalties in this case is not material under the law of the Second Circuit.  To the extent that taint might arise from the transmission of confidential information, either in a trial connected with the Daily Mail claim against Google or – and this is more likely – a trial connected to Kellogg Hansen's representation of Facebook, prophylactic steps can be taken to insure that neither client is harmed by careless error.  *See Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 827 F. Supp. 2d 341, 345-46 (S.D.N.Y. 2011) (describing steps that can be taken to reduce risk of confidential information adverse to one client being used by lawyer on behalf of another).   Both clients have indicated a desire to continue being represented by Kellogg Hansen, and that desire is reasonable based on Kellogg Hansen's evident commitment and dedication to each client's interests. Sophisticated clients' choices are a strong signal for the court that the risk of taint is viewed as minimal by the parties most at risk of injury were Kellogg Hansen to be disloyal.

Dated:     Oct  1,  2021

Anthony Sebok

---

[2] As a leading treatise observes, "[p]ositional conflicts usually do not rise to the level of a significant risk, but if they do, then the lawyer must obtain consent from all affected clients. Fortunately, positional conflicts are nearly always consentable." Simon's NY Rules of Prof. Conduct § 1.7:31 ("Positional" or "issue" conflicts of interest").  I understand that both Daily Mail and Facebook were informed by Kellogg Hansen of the facts underlying this putative conflict.  Arguably, their lack of objection to the representation is consent to a positional conflict, if one exists.

# EXHIBIT A

**ANTHONY JAMES SEBOK**

Benjamin N. Cardozo School of Law
55 Fifth Ave.
New York, NY 10011

Tel.:  917 364 9032 (cell)
email: sebok@yu.edu

| | |
|---|---|
| **EDUCATION** | **Princeton University**, Ph.D. (Politics) 1993 |
| | **Yale Law School**, J.D. (Law) 1991 |
| | **University of Oxford**, M.Phil. (Politics) 1986 |
| | **Cornell University**, B.A. *magna cum laude* (Philosophy) 1984 |
| | |
| **EMPLOYMENT** | **Professor of Law and Co-Director, Jacob Burns Center for Ethics in the Practice of Law**, Benjamin N. Cardozo School of Law, New York, NY, 2007 – present |
| | **Fellow, Center on Civil Justice,** NYU School of Law, 2019 – 20 |
| | **Visiting Professor of Law**, Cornell Law School, Ithaca, NY, Spring 2018 |
| | **Visiting Professor of Law**, Haifa University, Haifa, Israel, Spring 2016 |
| | **Distinguished Research Professor of Law**, Swansea University, Wales, UK, 2013 – 2016 |
| | **Joseph F. Cunningham Visiting Professor of Commercial and Insurance Law,** Columbia Law School, New York, NY, Fall 2011 |
| | **Visiting Professor of Law**, Tsinghua University School of Law, Beijing, China, Summer 2010 |
| | **Visiting Professor of Public and International Affairs**, Princeton University, 2007-08 |

**Associate Dean for Research**, Brooklyn Law School, Brooklyn, NY, 2006-07

**Centennial Professor of Law,** Brooklyn Law School, Brooklyn, NY, 2005-2007

**Fellow,** Program in Law and Public Affairs and **Visiting Professor of Public and International Affairs**, Princeton University, 2005-06

**Professor of Law,** Brooklyn Law School, Brooklyn, NY, 1997-2005

**DAAD Visiting Professor of Law**, Freie Universität, Berlin, 2001

**Berlin Prize Fellow,** The American Academy in Berlin, 1999

**Visiting Associate Professor of Law**, Benjamin N. Cardozo School of Law, New York, NY, Spring 1997

**Assistant Professor of Law**, Brooklyn Law School, Brooklyn, NY, 1992-95

**Law Clerk**, Chief Judge Edward Cahn, U.S. District Court, Philadelphia, PA, 1991-1992

**TEACHING**   Torts, Professional Responsibility, Jurisprudence, Advanced Torts, Remedies, Insurance Law, Mass Torts and Social Justice (seminar), Tort Theory (seminar), Litigation Finance (seminar) , Comparative Products Liability, Constitutional Law

**BOOKS AND ESSAYS**   TORT LAW: GLOBAL PERSPECTIVES (with Mauro Bussani and Marta Infantino) (Oxford University Press, forthcoming 2021)

TORT LAW: RESPONSIBILITIES AND REDRESS, FIFTH EDITION (with John C.P. Goldberg, Leslie Kendrick & Benjamin Zipursky) (Wolters Kluwer, 2021)

COMPARATIVE TORT LAW: GLOBAL PERSPECTIVES, SECOND EDITION (edited with Mauro Bussani) (Edward Elgar Publishing, 2021)

"History of Champerty and Maintenance" (with David Capper) and "Comparative Legal Ethics in Legal Finance" (with Lucy Pert) *in* LAW AND BUSINESS OF LITIGATION FINANCE (Steven Friel, ed.) (Bloomsbury Professional, UK, 2020)

"White Paper on Mandatory Disclosure in Third Party Litigation Finance," *in* SELECTED PAPERS ON LITIGATION FINANCE DISCLOSURE RULES (Center on Civil Justice, NYU School of Law, 2020)

"Sources of Attorney's Duties to Third Parties in the Litigation Funding Context," *in* HANDBOOK ON THIRD-PARTY FUNDING IN INTERNATIONAL ARBITRATION (Nikolaus Pitkowitz, ed., Juris Publishing, 2018)

"Actual Causation in the Second and Third Restatements: Or, the Expulsion of the Substantial Factor Test," *in* CAUSATION IN EUROPEAN TORT LAW (Marta Infantino & Eleni Zervogianni, eds., Cambridge University Press, 2017)

"Normative Theories of Punitive Damages:  The Case of Deterrence," *in* PHILOSOPHICAL FOUNDATIONS OF THE LAW OF TORTS (John Oberdieck, ed., Oxford University Press, 2014)

"The U.S. Supreme Court's Theory of Common Law Punitive Damages: An Inauspicious Start," *in* THE POWER OF PUNITIVE DAMAGES:  IS EUROPE MISSING OUT, (Lotte Meurkens and Emily Nordin, eds., Intersentia Press, 2012)

"Adversarial Legalism and the Emergence of a New European Legality:  A Comparative Perspective" *in* IMAGINING NEW LEGALITIES:  PRIVACY AND ITS POSSIBILITIES IN THE 21ST CENTURY (Austin Sarat, Lawrence Douglas, and Martha Merrill Umphrey, eds., Stanford University Press, 2012) (with Lars Trägårdh)

"Comment on 'Law as a Means'" *in* THE HART/FULLER DEBATE AT FIFTY (Peter Cane, ed., Hart Publishing, 2009)

"United States" and "Aggravated Damages" *in* UNIFICATION OF TORT LAW: PUNITIVE DAMAGES (Helmut Koziol and Vanessa Wilcox, eds., Research Unit for European Tort Law, 2009)

"Legal Positivism," *in* ENCYCLOPEDIA OF LEGAL HISTORY (Stanley Katz, ed., Oxford University Press, 2009)

"Legal Process and the Practices of Principle," *in* TOPICS IN CONTEMPORARY PHILOSOPHY, VOL. 3 (Michael O'Rourke, ed., MIT Press, 2006)

"A Brief History of Mass Restitution Litigation in the United States," *in* CALLING POWER TO ACCOUNT:  LAW'S RESPONSE TO PAST INJUSTICE (D. Dyzenhaus & M. Moran, eds., University of Toronto Press, 2005)

"Should We Care About Fairness in Tort Damages?  An Inquiry into American Exceptionalism," *in* AMERICAN AND GERMAN LEGAL CULTURES: CONTRAST, CONFLICT, CONVERGENCE? (Krakau, Knud & Streng, eds., Carl Winter Universitätsverlag, 2003)

"The Invisible Borderlines of Tort on the Internet" *in* SELECTED LEGAL ISSUES OF E-COMMERCE (Y. Kono, C. Paulus, & H. Rajak, eds., Kluwer Law Int'l, 2002)

"Legal Positivism and American Slave Law:  The Case of Chief Justice Shaw," *in* RECRAFTING THE RULE OF LAW: THE LIMITS OF ORDER (D. Dyzenhaus, ed., Hart Pub., 1999)

LEGAL POSITIVISM IN AMERICAN JURISPRUDENCE (Cambridge University Press, 1998)

Co-editor with J. Coleman, PHILOSOPHY OF LAW:  A COLLECTION OF ESSAYS (Garland Press, 1994)

**ARTICLES**            *The Deep Architecture of American COVID-19 Tort Reform,* 71 DEPAUL L. REV. __ (forthcoming 2022) (Symposium on Tort Law & Social Policy, Civil Litigation In A Post-Covid World)

*The Mysterious Market for Post-Settlement Litigant Finance*, 96 N.Y.U. L. REV. ONLINE 181 (2021) (with Ronen Avraham and Lynn Baker)

*The MDL Revolution and Consumer Legal Funding*, 40 REV. LITIG. 143 (2021) (with Ronen Avraham and Lynn Baker)

*Going Bare in the Law of Assignments: When Is an Assignment Champertous?*, 14 FIU L. REV. 85 (2020)

*New Means of Financing Tort Lawsuits and Law Firms*, 49 SOUTHWESTERN L. REV. 505 (2019)

*An Empirical Investigation of Third Party Consumer Litigation Funding*, 104 CORNELL L. REV. 1133 (2019) (with Ronen Avraham)

*Selling Attorneys' Fees*, 2018 U. ILL. L. REV. 1207

*Private Dollars For Public Litigation*, 12 NYU J.L. & BUS. 809 (2016) (Symposium Litigation Funding, Center for Civil Justice, NYU School of Law)

*The Unwritten Federal Arbitration Act*, 65 DEPAUL L. REV. 1301 (2016) (Symposium on the Supreme Court, Business and Civil Justice)

*Should the Law Preserve Party Control? Litigation Investment, Insurance Law and Double Standards,* 56 WILLIAM & MARY L. REV. 837 (2015)

*What Do We Talk About When We Talk About Control?* 82 FORDHAM L. REV. 2939 (2014) (Symposium on the Legal Profession's Monopoly on the Practice of Law)

*Litigation Investment and Legal Ethics: What are the Real Issues?,* 55 CANADIAN BUSINESS LAW JOURNAL 111 (2014)

*"Operation Arbitration": Massing Individual Arbitrations in a Post-Class Action Era*, 63 DEPAUL L. REV. 447 (2014) (with Myriam Gilles) (Symposium on the Changing Face of Litigation and Law Firm Finance)

*Jeffrey O'Connell and the Market in Tort Claims,* 6 JOURNAL OF TORT LAW 115 (2013) (Symposium in Memory of Jeffrey O'Connell)

*Characterizing the Parties' Relationship in Litigation Investment: Contract and Tort Good Faith Norms,* 66 VAND. L. REV. 1832 (2013) (with W. Bradley Wendel)

*The Failed Promise of a General Theory of Pure Economic Loss:*

*An Accident of History?* 61 DEPAUL L. REV. 615 (2012)
(Symposium on the Work of Robert Rabin)

*What is Wrong About Wrongdoing?*, 39 FLA. ST. U.L. REV. 209
(2011)

*The Inauthentic Claim,* 64 VAND. L. REV. 61 (2011)

*Betting on Tort Suits After the Event:  From Champerty to
Insurance,* 60 DEPAUL L. REV. 453 (2011) (Symposium on
Uncertainty in Tort Law)

*What Do We Talk About When We Talk About Mass Torts?* 106
MICH. L. REV. 1213 (2008) (Annual Symposium Issue
on Books in Law) (reviewing Richard Nagareda, MASS TORTS IN
A WORLD OF SETTLEMENT)

*Taking "Tort" Seriously in the Alien Tort Statute*, 33 BROOK J.
INT'L L. 871 (2008) (Symposium on Corporate Liability for
Grave Breaches of International Law)

*After* Philip Morris v. Williams*:  What is Left of the "Single
Digit" Ratio?,* 2 CHARLESTON L. REV. 287 (2008)
(Symposium on the Future of Punitive Damages)

*Teaching Tort Law From a Comparative Perspective*, 57 J. LEG.
EDUC. 562 (2007)

*Punitive Damages:  From Myth to Theory*, 92 IOWA L. REV. 957
(2007)

*Dispatches from the Tort Wars:  A Review Essay* 85 TEX. L. REV.
1465 (2007) (review essay on three recent books on tort reform
and civil litigation)

*The Place of Reliance in Fraud*, 48 ARIZ. L. REV. 1001 (2006)
(coauthored with John C.P. Goldberg and Benjamin C. Zipursky)
(Symposium on Economic Torts)

*Translating the Immeasurable:  Thinking About Pain and
Suffering Comparatively,* 55 DEPAUL L. REV. 379 (2006)
(Symposium on Measuring Pain and Suffering); *translated into
Italian and reprinted in* DANNI DOLLARI E DOLORI (Marta
Infantino & Mauro Bussani, eds., Editoriale Scientifica, 2016)

*Deterrence or Disgorgement?  Reading* Ciraolo *After* Campbell, 63 MD. L. REV. 541 (2005) (Symposium on Guido Calabresi's *The Cost of Accidents*)

*Two Concepts of Justice in Slavery Reparations*, 84 B.U.L. REV. 1405 (2004) (Symposium on the Jurisprudence of Slavery Reparations)

*Pretext, Transparency and Motive in Mass Restitution Litigation*, 57 VAND. L. REV. 2177 (2004) (Symposium on Lawyers as Activists: Achieving Social Change through Civil Litigation)

*What's Law Got to Do with It? Designing Compensation Schemes in the Shadow of the Tort System*, 53 DEPAUL L. REV. 501 (2003) (Symposium on The September 11th Compensation Fund and the Future of Civil Justice)

*Deutsche Firmen vor US-Gerichten,* NEUE JURISTISCHE WOCHENSCHRIFT, S. 3244 - 3246 (November 3, 2003) (co-authored with Dr. Reiner Geulen)

*The Fall and Rise of Blame in American Tort Law*, 68 BROOK. L. REV. 1031 (2003) (Symposium on Responsibility & Blame: Psychological and Legal Perspectives)

*Introduction: What Does It Mean To Say That a Remedy Punishes*? 78 CHI-KENT L. REV. 3 (2003) (Symposium Editor, Private Law, Punishment, and Disgorgement)

*What Did Punitive Damages Do?  Why Misunderstanding the History of Punitive Damages Matters Today*, 78 CHI-KENT L. REV. 163 (2003) (Symposium on Private Law, Punishment, and Disgorgement)

*Reparations, Unjust Enrichment, and the Importance of Knowing the Difference Between the Two*, 58 N.Y.U. ANN. SURV. AM. L. 651 (2003) (Symposium on A Dream Deferred: Comparative and Practical Considerations for the Black Reparations Movement)

*A Road Not Taken:  Harry Wellington, Legal Process and Adjudication*, 44 N.Y.L.S. L. REV. 207 (2001) (Symposium on the Scholarship of Harry Wellington)

*Purpose, Knowledge and Recklessness: Pruning The Restatement (Third)'s Definition of Intent*, 54 VAND. L. REV.1165 (2001)

(Symposium on the Third Restatement of Torts: General Principles)

*Liability Without Cause?  Further Ruminations on Cause-in-Fact as Applied to Handgun Liability*, 32 CONN. L. REV. 1379 (2000) (co-authored with Aaron Twerski) (Symposium on Guns and Liability in America)

*Finding Wittgenstein at the Core of the Rule of Recognition*, 52 SMU L. REV. 75 (1999)

*Is the Rule of Recognition a Rule?*, 72 NOTRE DAME L. REV. 1539 (1997)

*The Insatiable Constitution*, 70 S. CAL. L. REV. 601 (1997)

*Reading THE LEGAL PROCESS*, 94 MICH. L. REV. 2701 (1996)

*Does an Objective Theory of Self-Defense Demand Too Much?*, 57 U. PITT. L. REV. 725 (1996)

*Misunderstanding Positivism*, 93 MICH. L. REV. 2054 (1995) (*reprinted in* Tom Campbell, ed., THE INTERNATIONAL LIBRARY OF ESSAYS IN LAW AND LEGAL THEORY, 2ND SERIES (Ashgate Publishing, 1999))

*Judging the Fugitive Slave Acts*, 100 YALE L. J. 1835 (1991) (*reprinted in* D. Dyzenhaus & A. Ripstein, eds., LAW AND MORALITY: READINGS IN LEGAL PHILOSOPHY (University of Toronto Press, 1996))

**REPORTS**  ABA Commission on Ethics 20/20, *White Paper on Alternative Litigation Finance* (2012) (Academic Co-reporter with W. Bradley Wendel)

**SHORT PIECES**  *Book Review*, 8 J. EUR. TORT L. 372 (2017) (*reviewing* Eoin Quill & Raymond J. Friel (eds.), *Damages and Compensation Culture: Comparative Perspectives* (2016))

*Book Review*, 5 J. EUR. TORT L. 137 (2014) (*reviewing* John Bell and David Ibbetson, *European Legal Development:  The Case of Tort* (2012))

*Book Review,* JURIST, Vol. 2, Number 8, October 1999 (*reviewing* Richard Posner, *The Problematics of Moral and Legal Theory* (1999))

*Book Review,* 11 CAN. J. L. & JURIS. 457 (1998) (*reviewing* Dennis Patterson, *Law and Truth* (1997))

**MEDIA**          **Regular Columns**

**1. Jotwell** (www.Jotwell.com):

*Is Less Really More? Abraham and Kendrick on Getting Rid of Affirmative Duties* (Review of Kenneth S. Abraham & Leslie Kendrick, *There's No Such Thing as Affirmative Duty*) (January 23, 2019)

*Doing Away With Battery* (Review of Stephen D. Sugarman, *Restating the Tort of Battery*) (December 20, 2017)

*What Is It Like To Think Like A Pre-Modern? (*Review of Kenneth S. Abraham & G. Edward White*, The Transformation of the Civil Trial and the Emergence of American Tort Law*) (February 13, 2016)

*What Happens If We Call Discrimination a Tort?* (Review of Sandra Sperino, *Let's Pretend Discrimination is a Tort*) (December 17, 2015)

*Why Answer?* (Review of Nils Jansen, *The Idea of Legal Responsibility*) (January 10, 2014)

*Does Tort Law Empower?* (Review of Ori J. Herstein, *How Tort Law Empowers*) (December 19, 2013)

*Are Risks Wrong?* (Review of John Oberdiek, *The Moral Significance of Risking*) (February 27, 2012)

**2. New Private Law** (http://blogs.law.harvard.edu/nplblog/):

*Naked Came the Assignment* (May 19, 2015)

*A Frolic Of His Own* (June 17, 2015)

*Can Tort Damages Discriminate?* (August 17, 2015)

9

### 3.  Writ

Between 2000 – 2009 I wrote over 150 columns about litigation and society for *Writ*, an on-line legal journal.  An archive of the columns can be found at:  http://writ.news.findlaw.com/sebok.

### 4.  Occasional Media Publications

*We Must Fight The Phantom Threat Of Texas' Abortion Law*, LAW360, September 15, 2021

*New Ethics Opinion on Litigation Funding Gets It Wrong*, NEW YORK LAW JOURNAL, August 31, 2018 (with Anthony E. Davis)

*Lawsuit Lending Gets a Bad Rap:  Killing the Industry With Regulation Would Hurt Accident Victims Again*, CRAINS NEW YORK BUSINESS, June 11, 2018

*Insight:  Procedural, Substantive Concerns About The Litigation Funding Transparency Act of 2018,* BLOOMBERG BNA, June 7, 2018

*Americans Should Have the Proper Protections When Bringing Lawsuits*, THE HILL, March 29, 2018 (with Ronen Avraham)

*Mythic Pizza*, THE NEW YORK TIMES, January 7, 2007 (with Samuel K. Murumba)

*The Asbestos Mess*, WALL ST. JOURNAL, March 8, 2006 (with Peter H. Schuck)

*Menschenrechtsklagen in den USA*, AUFBAU: DAS JÜDISCHE MONATSMAGAZIN, February 2006

*Hearing On 9-11 Tort Cases Raises Difficult Questions Of Who Owed Duty To Whom,* 21 No. 5 ANDREWS AVIATION LITIG. REP. 5 (May 13, 2003)

*Prosaic Justice*, LEGAL AFFAIRS 51 (Sept./Oct. 2002)

*Disaster Plan,* LEGAL TIMES, March 25, 2002

*Is This Deal Good or Raw?*  NEWSDAY, January 27, 2002

*Litigation Management: Sneaky Tort Reform,* NATIONAL LAW JOURNAL, January 14, 2002

10

**Television**:  The Oprah Winfrey Show, CBS Evening News, CNN, BBC World Business Report, Reuters TV, and RNN

**Radio**: NPR, WNYC, PRI's Marketplace. BBC Radio, Bavaria Radio and South African Radio

**AWARDS AND FELLOWSHIPS**
Berlin Prize Fellow, The American Academy in Berlin, 1999
Research Fellow, Humboldt Universität, Berlin, Germany, 1999
Fellow, Program in Law and Public Affairs, Princeton University, Princeton, NJ, 2005-06

**PROFESSIONAL ACTIVITIES**
American Bar Association

American Law Institute

American Association of Law Schools (Sections on Insurance Law, Jurisprudence, Remedies, and Torts & Compensation Systems)

MPRE Subject Matter Expert for the National Conference of Bar Examiners

Advisory Board, Dispute Financing Library, Center on Civil Justice, NYU School of Law

Ethics Consultant, Burford Group (U.K. and USA)

Co-Reporter, ABA Commission on Ethics 20/20, Third-Party Financing of Litigation Working Group (2011 – 2012)

Drafter, Section on Principles of Procedural Justice, ABA Litigation Section Project, "The Rule of Law in Times of Calamity" (2006)

Committee on Professional Ethics, New York City Bar Association, (2021 – present)

Products Liability Committee, New York City Bar Association (2000 – 03); (2005 – 2007)

Civil Rights Committee, New York City Bar Association (1998 – 1999)

Lectures and Continuing Education Committee, New York City Bar Association (1995 – 96)

**TESTIMONY**     New York Senate Standing Committee on Consumer Protection, Public Hearing on Lawsuit Lending, May 16, 2018, (written and oral)

# EXHIBIT B

**Materials Considered**

1. Complaint, *Associated Newspapers Ltd. v. Google LLC*, No. 1:21-cv-03446-PKC (S.D.N.Y. Apr. 20, 2021), ECF No. 1

2. Sample of Complaints in MDL Member Cases

    a. Second Amended Complaint, *Texas v. Google LLC*, No. 4:20-cv-00957 (E.D. Tex. Aug. 4, 2021), ECF No. 138

    b. Complaint, *HD Media Co., LLC v. Google, LLC*, No. 3:21-cv-00077 (S.D. W. Va. Jan. 29, 2021), ECF No. 1

    c. Consolidated Class Action Complaint, *In re Google Digital Publisher Antitrust Litig.*, No. 5:20-cv-08984-BLF (N.D. Cal. Apr. 5, 2021), ECF No. 64

    d. First Amended Consolidated Class Action Complaint, *In re Google Digital Advertising Antitrust Litig.*, No. 5:20-cv-03556-BLF (N.D. Cal. Dec. 4, 2020), ECF No. 52

    e. Class Action Complaint, *SPX Total Body Fitness LLC v. Google, LLC*, No. 3:21-cv-00801 (N.D. Cal. Feb. 1, 2021), ECF No. 1

    f. Consolidated Amended Class Action Complaint, *Cliffy Care Landscaping LLC v. Facebook, Inc.*, No. 1:21-cv-00360-KBJ (D.D.C. May 19, 2021), ECF No. 25

3. Transfer Order, *In re Digital Advertising Antitrust Litigation*, MDL No. 3010 (J.P.M.L. Aug. 10, 2021), ECF No. 126

4. Pre-Trial Order No. 1, *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010-PKC (S.D.N.Y. Aug. 13, 2021), ECF No. 4

5. Letter to Judge Castel from Jonathan Rubin, *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010-PKC (S.D.N.Y. Sept. 3, 2021), ECF No. 49

6. Memorandum Opinion, *Federal Trade Commission v. Facebook, Inc.*, No. 1:20-cv-03590-JEB (D.D.C. June 28, 2021), ECF No. 73

7. Memorandum Opinion, *State of New York v. Facebook, Inc.*, No. 1:20-cv-03589-JEB (D.D.C. June 28, 2021), ECF No. 137

8. Excerpt from September 24, 2021 Hearing Transcript (pages 36-40), *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010-PKC (S.D.N.Y.)

9. Order, *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010-PKC (S.D.N.Y. Sept. 24, 2021), ECF No. 129

10. Consolidated Advertiser Class Action Complaint, *Klein v. Facebook, Inc.*, No. 5:20-cv-08570-LHK (N.D. Cal. Apr. 22, 2021), ECF No. 86