# HERMAN JONES LLP

ATLANTA · NEWARK · SEATTLE

Serina M. Vash
svash@hermanjones.com

December 17, 2021

Hon. P. Kevin Castel
United States District Judge
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

      Re:    *In re Google Digital Advertising Antitrust Litig.*, No. 21-md-3010 (PKC)

Dear Judge Castel:

      On September 24 and November 5, 2021, the Court ordered Defendant Google to produce "to all plaintiffs in the MDL the documents previously produced to any of the State Plaintiffs in their digital advertising investigations, whether voluntarily, pursuant to CIDs or otherwise." (ECF Nos. 129, 168.)  In its September 24, 2021 Order, the Court directed the parties to negotiate and submit a proposed protective order, and ordered Google to produce these documents within 30 days of the entry of such order. (ECF No. 129.) Some twelve weeks later, the protective order remains under negotiation and no documents have been produced. Pursuant to Your Honor's Individual Practices, there is currently no upcoming conference scheduled before the Court.

      As negotiations of a comprehensive protective order are proceeding substantially slower than anticipated, all of the private Plaintiffs respectfully request that the Court enter an Interim Protective Order for the Production of Documents, submitted herewith. The private Plaintiffs hereby request an informal pre-motion discovery conference with the Court to obtain an Interim Protective Order governing Google's production of documents, as ordered by the Court, to move the discovery process forward with appropriate celerity.[1]

---

[1] This request is jointly made by all Plaintiffs before the Court, with the exception of the State Plaintiffs.  Pursuant to 3B of Your Honor's Individual Practices concerning Discovery Disputes, Local Civ. Rule 37.2, and Fed. R. Civ. P. 37(a)(1), the undersigned certifies that the private Plaintiffs have in good faith conferred or attempted to confer with counsel for Defendants Google, Alphabet and YouTube (collectively "Google") in an effort to obtain the requested documents pursuant to an Interim Protective Order. Prior even to the formation of this MDL, the plaintiffs in *Associated Newspapers, Ltd. v. Google, LLC*, No. 1:21-cv-03446 (S.D.N.Y), requested that Google provide the documents Google had already given to the State Plaintiffs, but Google refused. Ltr. (Apr. 30, 2021), *Associated Newspapers, Ltd. v. Google, LLC*, No. 1:21-cv-03446 (S.D.N.Y.), ECF No. 16. The Direct Action Newspaper Plaintiffs initially made a request for these documents in advance of the Court's September 24, 2021 Conference, which request Google declined. As set forth herein, additional

Hon. P. Kevin Castel
December 17, 2021
Page 2

Background

In response to Your Honor's Order dated August 13, 2021 (ECF No. 4) and in advance of the status conference scheduled for September 24, 2021, the parties submitted their positions to further the orderly and efficient advancement of this proceeding, including our positions concerning discovery. As Your Honor is aware, the Direct Action Newspaper Plaintiffs and other plaintiffs opposed a discovery stay insofar as we sought production of the over 2 million documents previously produced to the State of Texas and ordered by Judge Beth L. Freeman on June 10, 2021 to be produced in the class action cases previously pending in the Northern District of California. This request and the status of discovery were discussed at length before the Court on September 24, 2021. The Court granted our request to receive these documents, notwithstanding the stay of prospective discovery pending the outcome of an anticipated Motion to Dismiss the State Plaintiffs' Third Amended Complaint by Google.

During the September 24, 2021 conference and in the corresponding minute order (ECF No. 129), the Court ordered the parties to negotiate and submit a proposed protective order, subject to which Google is to produce to plaintiffs in all cases those documents that Google has previously produced to the State of Texas and to certain class plaintiffs.[2] Within ten days of the conference, the Plaintiffs' Coordinating Committee was able to meet in New York, thereafter coordinate edits and comments on a draft protective order with all MDL Plaintiffs, and provide a draft protective order to Defendants on October 15, 2021.

On October 25, 2021, the parties collectively submitted an Unopposed Motion for Expedited Interim Protective Order (ECF No. 154), to permit the State Plaintiffs to share with outside counsel for the other private Plaintiffs groups, on an External Attorney's Eyes Only basis, the fully unredacted Second Amended Complaint (ECF No. 81) and drafts of the States' then-forthcoming Third Amended Complaint. The request was narrowly tailored to limit disclosure to only the outside counsel representing the private Plaintiffs, and specifically disallowed disclosure to the private Plaintiffs themselves (or their in-house counsel). This Court entered the Interim Protective Order on October 27, 2021 (ECF No. 156).

At the same time, private Plaintiffs' counsel have been working together to obtain access to the 2 million-plus documents already produced to the State Plaintiffs. To assuage Google's concerns, we have offered to be covered by the interim protective order governing Google's production in the

---

requests were made September 27, 2021 and November 12, 2021 to no avail, and Plaintiffs' counsel raised the issue with Google again on December 13, 2021 and advised Google of Plaintiffs' intent to seek Court intervention. The State Plaintiffs are likewise aware of our request.

[2] *See* Transcript of September 24, 2021 Proceeding, ECF No. 142.

Northern District of California or, alternatively, agreed to be subject to the same terms entered by this Court as respects disclosure of the Second and Third Amended Complaints (ECF No. 156). Immediately following the September 24, 2021 Conference with this Court, the publishers' class counsel requested production on behalf of the private Plaintiffs of the approximately 1.8 million documents that Google had yet to produce pursuant to Judge Freeman's order.[3] (*See* September 27, 2021, Letter of Philip Korologos, attached hereto as Exhibit A.) Following Plaintiffs' letter, Google sought to avoid production of the full 2 million documents and restrict Your Honor's ruling to the production of a tiny subset of documents, a position this Court rejected on November 5, 2021. (ECF No. 168.)

On November 12, 2021, the private Plaintiffs again jointly sought production of the more than 2 million documents previously produced to the State Plaintiffs and ordered to be produced to certain class plaintiffs. (*See* November 12, 2021, Email from Caitlin Coslett, attached hereto as Exhibit B.) As stated in that email, all private Plaintiffs agreed to operate under the protections set forth in the Interim Protective Order filed at ECF No. 156 and endorsed by this Court on October 27, 2021. We requested production on or before November 26, 2021, to comport with the Court's Order requiring production within 30 days of entry of a protective order. As stated in the November 12, 2021 correspondence, until such time as a non-interim protective order is finalized (the final terms of which are still being negotiated and are subject to review and entry by the Court), Your Honor's operative October 27, 2021 Order would enable the parties to expeditiously move forward with document review and analysis as contemplated by the Court. (ECF Nos. 129, 142.) Two weeks later, Google declined to produce the documents. (*See* November 26, 2021, Email from Justina Sessions, attached hereto as Exhibit C.)

### Status of Negotiations of a Prospective Protective Order

The parties have been negotiating an overarching protective order[4] in this matter for the last twelve weeks and appear to be many weeks away from finalizing it. We believe these negotiations have been delayed beyond what was initially contemplated. Despite the Plaintiffs' Coordinating

---

[3] To date, only the State Plaintiffs have the full 2 million document production. Despite Judge Freeman's June 10, 2021 Order to produce the documents produced to the State Plaintiffs, Google has produced only approximately 152,000 to the class Plaintiffs, not the full 2 million documents. Notably, neither the Direct Action Newspaper Plaintiffs nor the plaintiffs in *Associated Newspapers* have received a single document.

[4] While the Court ordered that the parties negotiate a protective order before receipt of the 2 million-plus documents previously produced, the draft in discussion is comprehensive including covering Defendant Meta (formerly known as Facebook, Inc. and referred to herein as "Facebook") and matters such as depositions, disclosure of transcripts of testimony, the sealing process, and motion practice, none of which is implicated in production of the previously disclosed documents.

Hon. P. Kevin Castel
December 17, 2021
Page 4

Committee meeting on October 5, 2021, and despite receiving the MDL Plaintiffs' collective draft on October 15, 2021, no response was received from Google for five weeks.[5] After finally receiving Googles' suggested edits to the proposed protective order, Plaintiffs promptly conferred among themselves and collectively turned around another draft by December 7, 2021. As of this date that draft is currently sitting with Defendants and, despite a meet and confer, no formal response from Defendants is expected for several weeks.  Moreover, there are real concerns regarding whether any such order can be agreed upon without this Court's intervention and without a formal motion.  By way of example, Google is insisting upon including a highly unusual, invasive and burdensome provision in the Protective Order whereby private Plaintiffs' counsels' cell phones and computers would be subject to forensic examination.[6]

Twelve weeks have now passed since this Court ordered the parties to submit a protective order. (ECF No. 142, at 30.)  Whatever the cause for delay, respectfully, it has been too long and undermines this Court's and the parties' intent to assure that all of the MDL plaintiffs can cooperate and collaborate in the efficient advancement of these cases. Delay harms the injured publishers and advertisers who remain subject to Google's digital advertising monopoly. For all of the private Plaintiffs, harm and loss alleged in the various complaints continue to mount, while Google's profits continue to rise.  For the Direct Action Newspaper Plaintiffs specifically, delay threatens the clients' financial viability.[7]  Indeed, the Newspaper Plaintiffs have alleged that the unlawful practices of

---

[5] While we understand that this delay is due to both Google and Facebook, there is no need for a comprehensive protective order with Facebook before the 2 million-plus documents from Google are re-produced.

[6] In its current form, the requested provision is as follows: "*[A]ny individuals who are provided Confidential or Highly Confidential information and/or materials must agree to the following: (i) that their documents and communications relating to this Action—and any electronic devices or accounts potentially containing such documents and communications—may be subject to a forensic investigation: (ii) that such forensic investigation shall include the collection, copying, and examination of their electronic devices and accounts including, but not limited to, mobile phones, tablets, laptops, desktops, email accounts, filesharing accounts, and server- or cloud-based storage accounts; and (iii) that they will provide a complete list of all electronic devices and accounts that they may use to communicate regarding this Action or to store documents or communications relating to this Action, and that they will not use any electronic devices or accounts not specifically identified for storing, sending, or receiving documents related to this Action without first amending the list and signing an amended confidentiality agreement to that effect.*"

[7] *See* Investigation of Competition in Digital Markets, U.S. House of Representatives, Majority Staff Report and Recommendations, Subcommittee on Antitrust, Commercial and Administrative Law, Committee on the Judiciary, October 5, 2020 (herein the "U.S. House Judiciary Report") at 57-73,

Hon. P. Kevin Castel
December 17, 2021
Page 5

Google and Facebook threaten the existence of the newspaper industry itself – particularly local news and journalism.[8]  Moreover, Plaintiffs are eager to use this time productively and valuable time is being lost while we await a comprehensive agreement with all defendants.

      The overarching protective order in this case will govern all prospective discovery in all of the centralized cases. The expansive protections contemplated therein need not be completed before Google re-produces documents already twice produced under other interim protective orders in Texas and California.  Google sought this centralization, citing the need for efficiency. Respectfully, it should not be permitted to strategically use it to facilitate delay.

      Accordingly, private Plaintiffs jointly request that the Court conduct an informal pre-motion discovery conference so that an Interim Protective Order for Production of Documents may be entered as respects Google. Proceeding in this fashion will facilitate the best use of the time during which the private Plaintiffs' actions are otherwise stayed.

                                                 Respectfully Submitted on Behalf of All Private Plaintiffs,

                                                 /s/ *Serina M. Vash*

                                                 Serina M. Vash

cc:      All counsel of record via ECF

---

https://judiciary.house.gov/uploadedfiles/competition_in_digital_markets.pdf?utm_campaign=4493-519.

[8]  Newspaper advertising revenue, which is critical for funding high-quality journalism, has declined from $49 billion in 2006 to $16.5 billion in 2017.  *See* Majority Staff Report and Recommendations, *Investigation of Competition in Digital Markets* (Oct. 6, 2020), https://judiciary.house.gov/uploadedfiles/competition_in_digital_markets.pdf.  These losses have had dire consequences for the newspaper industry.  Researchers at the University of North Carolina School of Media and Journalism found that the United States has lost nearly 1,800 newspapers since 2004 either to closure or merger, 70% of which were in metropolitan areas.  As a result, the majority of counties in America no longer have more than one publisher of local news, and 200 counties are without any paper whatsoever.  *Id*. at 61.  Additionally, according to the Bureau of Labor Statistics, between 1990 and 2016 nearly 30,000 newspaper jobs disappeared – a 60% industry-wide decline.  U.S. Bureau of Labor Statistics, *Employment Trends in Newspaper Publishing and Other Media*, 1996 – 2016 (June 2, 2016), https://www.bls.gov/opub/ted/2016/employment-trends-in-newspaperpublishing-and-other-media-1990-2016.htm.