UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

IN RE GOOGLE ADVERTISING ANTITRUST                    21-md-3010 (PKC)
LITIGATION
                                                    ORDER

-------------------------------------------------------------x
CASTEL, District Judge:

       At the September 24, 2021 conference, the Court stayed all discovery in the action, except it required the production to all other plaintiffs the documents that Google LLC ("Google") had produced to the state of Texas and to plaintiffs in an action in the Northern District of California. In doing so, the Court relied upon Google's representations about its prior productions. It is too late in the game for Google to revisit this discovery ruling.

       Set forth below is the Court's exchange with Google's counsel:

       THE COURT: . . Now, let me hear from Google in the first instance. I have heard about the 700,000 documents that are part of the CID [Civil Investigative Demand] production, which I gather is not all Google documents. I would assume that's the universe of everybody who produced documents. I've heard about 2 million documents produced by Google. I've heard about possible productions to the advertiser class and to the publisher class. So let me ask you to tell me what has happened, first of all, so I understand what Google has produced and to whom.

       MR. MAHR: Thank you, your Honor. Ms. Sessions and I both represent Google -- I in the Texas case and Ms. Sessions in the private cases. We're now combined, obviously . . . . But counsel in the Texas case, just so it's clear, there were 2 million documents produced by Google in that investigation. The 700,000 documents are from a third party in that investigation.

                                                 * * * *

       THE COURT: . . . Now, let me hear about what has been produced in any of the other cases.

> MS. SESSIONS: . . . Before the cases were transferred to your Honor, Judge Freeman, in the Northern District, ordered that Google re-produce the 2 million documents that were part of the investigative production to Texas to counsel for the advertiser and plaintiff classes in those cases, and Google has done that. So that's the full scope of document production that Google has made.

(9/24/21 at 24–25.)

> THE COURT: . . . So I am going to order the parties to negotiate a protective order and I'm going to require Google to produce, subject to that protective order, the documents that have been produced by Google to the state of Texas and to certain class action plaintiffs in this case, and that it be done in -- certainly it should be done within 30 days of the entry of a protective order. . .
>
> I am not going to order the production of third-party documents, examinations conducted by the state plaintiffs, documents produced by Google to DOJ. It's restricted to what I've said at this stage of the game. And when you all finish reading the 2 million documents, come back to me and I'll see about letting you read some more. OK? That should keep everyone occupied for a while.
>
> MS. SESSIONS: Just one point of clarification. We appreciate and understand your Honor's guidance on this subject. Google may have defenses to some of the private complaints that are pleading defenses, and I just want to make sure that Google's production of documents pursuant to your Honor's order will not be construed as a waiver of any of those defenses that we may have at the time that we would move to dismiss those.
>
> THE COURT: They are not a waiver.
>
> MS. SESSIONS: Thank you, your Honor.

(Id. 30–31.) The Court's directive was reasonably plain: Google was required to produce to all plaintiffs in the MDL the documents Google had produced to the state of Texas and to certain other plaintiffs, numbering approximately 2 million, within 30 days of entry of a protective order. Because the document production was a mirror copy of prior productions that already existed in an electronic format, it could be accomplished without significant difficulty or expense.

As noted in the quoted transcript, there is a separate Department of Justice ("DOJ") investigation. The Court had no reason to know the direction that investigation may take. Accordingly, at the September 24 conference it did not order Google to also produce the documents that were sought by the DOJ; the production to plaintiffs was limited to the documents that had been produced to the state of Texas which were also said to be the documents it had produced to plaintiffs in the Northern District of California. By mid-October, Google first attempted to constrain its production by claiming a belief that the Court had authorized it to redact from its production any document that also had been requested by the DOJ. (Letter of Oct. 13, 2021; Doc 145.) By that logic, if the DOJ asked for all documents produced to the state of Texas or to private Northern District of California plaintiffs, then Google would not be required to produce anything. This prompted the Court to enter an Order on November 5, 2021 as follows:

> While neither side has sought specific relief, it is appropriate for the Court to restate its direction at the September 24, 2021 conference regarding document production. Google shall produce to all plaintiffs in the MDL the documents previously produced to any of the state plaintiffs in their digital advertising investigations, whether voluntarily, pursuant to CIDs or otherwise. At the risk of redundancy, Google may not withhold from the foregoing those documents that have also been produced to the DOJ.

(Order of Nov. 5, 2021; Doc 168.) The Court has now learned that Google is seizing on the language of the November 5 Order arguing that it modified the September 24, 2021 direction because it referred to "the state plaintiffs in their digital advertising investigations . . . ."[1]

---

[1] The Court's interpretation of Google's position may be excessively charitable to it. The February 3, 2022 letter (Doc 243), without citation to any particular language in the transcript, retrospectively interprets the September 24 direction to include the same limitation: "The Court's September 24 Order required production of "those documents that Google has previously produced to the State of Texas and to certain class plaintiffs." ECF No. 129 at 1. Google has produced to the Private Plaintiffs all documents that Google previously produced to Texas in response to the Texas AG's September 2019 civil investigative demand concerning digital advertising ("Ad Tech CID") and later

3

Google interprets this to mean that the Court has granted it permission to pour through the documents produced to the state of Texas and remove any that in Google's view do not specifically relate to digital advertising.

Having considered the arguments of the parties, the Court ORDERS as follows:

Within 30 days of this Order, Google shall produce to all plaintiffs in the above-captioned MDL (1) all documents without limitation produced by Google or any corporate affiliate to the state of Texas from January 1, 2018 through September 24, 2021, whether pursuant to a CID, voluntarily or otherwise; and (2) to the extent not subsumed by (1), all documents without limitation produced by Google or any corporate affiliate prior to September 24, 2021 to any plaintiff in the above-captioned MDL, including in any action commenced in the Northern District of California.  The production shall be protected by the existing protective order.  Google is advised that failure to fully comply will result in sanctions pursuant to Rule 37(b), Fed. R. Civ. P., which may include the striking of its answer and entry of judgment against it.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       February 7, 2022

---

reproduced to certain class plaintiffs in the Northern District of California suits." The Court is not sure if this also was intended to convey a second limitation: if in its Northern District production, Google withheld documents that it produced to the state of Texas, then it considered itself authorized to withhold them from other plaintiffs.