**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: GOOGLE ADVERTISING ANTITRUST LITIGATION | 21-md-3010 (PKC) |
| This document relates to: CLIFFY CARE LANDSCAPING, LLC, *et al.* on behalf of themselves and all others similarly situated, | |
| *Plaintiffs*, v. | Civil Action No. 1:21-cv-6910 (PKC) |
| FACEBOOK, INC., GOOGLE LLC, and ALPHABET INC. *Defendants*. | |

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>
<u>**IN SUPPORT OF THE APPLICATION OF CLIFFY CARE**</u>
<u>**LANDSCAPING, LLC *ET AL*. FOR APPOINTMENT OF INTERIM**</u>
<u>**LEAD COUNSEL FOR THE CLASS OF NON-FACEBOOK ADVERTISERS**</u>
<u>**HARMED BY THE FACEBOOK-GOOGLE NETWORK BIDDING AGREEMENT**</u>

## <u>TABLE OF CONTENTS</u>

I.      Legal Standard ...................................................................................................... 1

II.     The *Cliffy Care* Class Is Entitled to Its Own Independent Class Counsel ......................... 2

     A.      The *Cliffy Care* Facts and Claims Require Independent Legal Counsel ............... 2

     B.      Rule 23 (g)(4) Adequacy Requires Appointment of Independent Counsel for the *Cliffy Care* Class ................................................................................................ 4

     C.      The SPX and Surefreight Classes Lack Class Standing to Represent the *Cliffy Care* Class. ............................................................................................................ 7

III.    The Rule 23(g)(1)(A) Criteria for Appointment Strongly Favor Appointment of MoginRubin LLP ............................................................................................................ 9

     A.      MoginRubin's Work Identifying and Investigating Plaintiffs' Claims (Rule 23(g)(1)(A)(i)) ................................................................................................... 9

     B.      Experience and Familiarity with Applicable Law (Rules 23(g)(1)(A)(ii) & (iii)) 10

          1.      MoginRubin LLP ...................................................................................... 10

          2.      Hartley LLP .............................................................................................. 12

          3.      Shaffer Lombardo Shurin, P.C. ................................................................. 13

     C.      Adequate Resources (Rule 23(g)(1)(A)(iv)) ........................................................ 14

IV.     CONCLUSION ............................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..........................................................................................5

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006))...........................................................................6

*Goldemberg v. Johnson & Johnson*,
  317 F.R.D. 374 (S.D.N.Y. 2016) .....................................................................5

*In re Air Cargo Shipping Antitrust Litig.*,
  240 F.R.D. 56, 57 (E.D.N.Y. 2006)..................................................................1

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
  258 F.R.D. 260, 272 (S.D.N.Y. 2009) .............................................................2

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  299 F. Supp. 3d 430 (S.D.N.Y. 2018) .............................................................5

*In re Libor–Based Financial Instruments Antitrust Litig.*, MDL No. 2262
  2011 WL 5007957 (S.D.N.Y. Oct. 18, 2011)...............................................4, 5

*In re Literary Works in Elec. Databases Copyright Litig.*,
  654 F.3d 242 (2d Cir. 2011) ............................................................................5

*In re Mun. Derivatives Antitrust Litig.*,
  252 F.R.D. 184, 186 (S.D.N.Y. 2008) .............................................................1

*In re Payment Card Interchange Fee and Merchant Discount Litig.*,
  827 F.3d 223, 231 (2d Cir. 2018) ...........................................................5, 6, 13

*Merryman v. City Group, Inc., Markets Inc.*,
  2018 WL 1621495 (S.D.N.Y. Mar. 22, 2018) .................................................7

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
  693 F.3d 145 (2d Cir. 2012) ............................................................................7

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999)..........................................................................................5

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
  632 F.3d 762 (1st Cir. 2011)............................................................................7

*Raines v. Byrd*,
  521 U.S. 811 (1997)..........................................................................................8

*Retirement Bd. of the Policemen's Annuity and Ben. Fund of the City of Chicago v. Bank of New York Mellon,*
775 F.3d 154 (2d Cir. 2014) ............................................................................... 7

*Robinson v. Metro–North Commuter R.R. Co.,*
267 F.3d 147 (2d Cir. 2001) ............................................................................... 6

*Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG,*
277 F.Supp.3d 521 (S.D.N.Y. 2017) .................................................................. 5

**Statutes**

Sherman Act, Section 1, 15 U.S.C. §1 ......................................................... 3, 10

**Rules**

Fed. R. Civ. P. 23(g)(1) ..................................................................................... 2

Fed. R. Civ. P. 23(g)(1)(A)(i) ........................................................................... 9

Fed. R. Civ. P. 23(g)(1)(A)(ii), ....................................................................... 10

Fed. R. Civ. P. 23(g)(1)(A)(iv) ....................................................................... 14

Fed. R. Civ. P. 23(g)(1)(A). ............................................................................. 1

Fed. R. Civ. P. 23(g)(2) ................................................................................. 2, 7

Fed. R. Civ. P. 23(g)(3) ............................................................................... 1, 16

Fed. R. Civ. P. 23(g)(4) ............................................................................... 2, 4

**Other Authorities**

Manual for Complex Litigation (4th ed.) § 21.11 .............................................. 1

Manual for Complex Litigation (4th ed.) § 21.27 .............................................. 1

## I.     Legal Standard

Under 23(g)(3), "[t]he court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). Likewise, the Manual for Complex Litigation (4th ed.) counsels that appointment of interim lead counsel clarifies responsibility for protecting the interests of the class during precertification activities. MCL, 4th § 21.11.[1]

In deciding whether to appoint interim counsel, the court "must consider," at a minimum:

   i.     the work counsel has done in identifying or investigating potential claims in the action;

   ii.    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

   iii.   counsel's knowledge of the applicable law; and

   iv.    the resources that counsel will commit to representing the class[.]

Fed. R. Civ. P. 23(g)(1)(A).[2]

The court also "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(A). These include "(1) the quality of the pleadings; (2) the vigorousness of the prosecution of the lawsuits; and (3) the capabilities of counsel." *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D.

---

[1] Neither Rule 23(g) nor the MCL, 4th discuss the situation where interim lead counsel has been appointed before transfer and centralization by the MDL panel. *See, e.g.* Manual for Complex Litigation (4th ed.) §21.27.

[2] Although not expressly stated in Rule 23, "[w]hen appointing interim class counsel, courts generally look to the same factors used in determining the adequacy of class counsel under Rule 23(g)(1)(A)." *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008) (citing *In re Air Cargo Shipping Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006)).

260, 272 (S.D.N.Y. 2009) (quoting *In re Comverse Tech., Inc. Derivative Litig.*, No. 06 Civ. 1849(NGG)(RER), 2006 WL 3761986, at *2–3 (E.D.N.Y. Sept. 22, 2006)).

Fed. R. Civ. P. 23(g)(2) requires the court to consider adequacy. To ensure that the standard is met, "the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4)," and if more than one adequate attorney applies, "the court must appoint the applicant best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2). To meet the standard, a court may appoint counsel to a leadership position "only if the applicant is adequate under Rule 23(g)(1) and (4)." Fed. R. Civ. P. 23(g)(2).

## II.   The *Cliffy Care* Class Is Entitled to Its Own Independent Class Counsel

Independent counsel for the *Cliffy Care* class is required by the unique facts and claims asserted by them and by the standard for adequacy embodied in Rule 23(g)(4). Counsel for the *SPX* and *Surefreight* plaintiffs also lack standing to seek leadership of the *Cliffy Care* class.

### A.   The *Cliffy Care* Facts and Claims Require Independent Legal Counsel

Three crucial differences between the advertisers belonging to the *Cliffy Care* class and the advertisers comprising the *SPX* and *Surefreight* classes preclude the attorneys for *SPX* or *Surefreight* from making a sufficient showing under either Fed. R. Civ. P. 23(g)(1) or Fed. R. Civ. P. 23(g)(4) to merit appointment as interim class counsel for the *Cliffy Care* class. In contrast, MoginRubin LLP is fully capable of adequately representing the unique *Cliffy Care* class.

First, all of the *SPX* and many of the *Surefreight* class members purchased advertising directly from Meta on webpages and apps owned or operated by Meta or other publishers that may or may not have participated in the Network Bidding Agreement. The *Cliffy Care* class members, in contrast, did *not* buy advertising from Meta. Instead, they bought advertising from *other* demand-side platforms and won the bidding on the exchange operated by Google. For this

reason, the *Cliffy Care* class claims are separate and distinct and occupy entirely different factual universes compared to *SPX* and *Surefreight*.

Second, in equally stark contrast, the *Cliffy Care* complaint joins Meta as a defendant while Google is the lone defendant named in the *SPX* and *Surefreight* complaints. The *Cliffy Care* complaint properly names Meta because its antitrust claim is predicated on the anticompetitive Network Bidding Agreement between Google and Meta as a contract, combination or conspiracy, in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. §1. Meta is equally culpable under this legal theory. Thus, in addition to the factual gulf separating *Cliffy Care* from the other two actions, *Cliffy Care* will travel a divergent legal path.

Third, the claim asserted by the *Cliffy Care* class arises solely out of the specific harm caused by the operation of the Network Bidding Agreement. *SPX* and *Surefreight* plead claims (against Google only) implicating the broader digital advertising market and invoke a body of jurisprudence and are premised on economic analysis and manifold facts that are alien to *Cliffy Care*'s action. Although the *SPX* plaintiffs also plead their claim as a Section 1 violation, they would be spread thin by also litigating the vastly different and significantly more complex claim in which the Network Bidding Agreement is a contributor to Google's dominance in the market.

Even if *Surefreight* had no conflict, in seeking to represent an entire unsegmented "advertisers' class," it would be required to litigate simultaneously an enormous monopolization claim implicating the entirety of the digital advertising industry, a Section 1 claim involving a broad array of conduct going back as far as 2009 (*SPX*) on behalf of a Facebook class, *and Cliffy Care*'s non-overlapping, highly targeted claim for a smaller class based on the specific unreasonable anticompetitive restraint between two industry participants created by the Network Bidding Agreement. Clearly, no single appointment of lead class counsel for an advertisers' class

will be adequate to ensure that the Section 1 claims of the *Cliffy Care* class and the Section 2 monopolization claims of the *Surefreight* class both will be vigorously and independently pursued.

**B.    Rule 23 (g)(4) Adequacy Requires Appointment of Independent Counsel for the *Cliffy Care* Class**

No single legal counsel can take the most advantageous litigation strategy decisions or pursue the optimal discovery priorities that will simultaneously serve the best interests of both the Section 1 claimants in *Cliffy Care* and the Section 2 claimants alleged in *Surefreight*. Failing to appoint separate counsel for the *Cliffy Care* class would create irreconcilable conflicts with the *SPX* and *Surefreight* classes. Rule 23(g)(4) mandates that "[c]lass counsel must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). Without their own counsel, the *Cliffy Care* class members—a group of advertisers who do not belong to either the *SPX* class or the *Surefreight* class—will not be represented at all, let alone fairly and adequately. Rule 23(g)(4), therefore, also militates against the appointment of attorneys representing completely different advertising purchasers who have sued only Google.

Courts routinely protect class members with conflicting interests by assigning them to separate classes and appointing separate lead counsel for each. In particular, courts recognize that disparate groups of purchasers should have their own legal representation. An illustrative example is the decision in *In re Libor–Based Financial Instruments Antitrust Litig.*, which presented closely analogous circumstances with contrasting categories of purchasers. One group, like the *SPX* and *Surefreight* classes here, bought financial products directly from the defendants. MDL No. 2262, 2011 WL 5007957, at *1 (S.D.N.Y. Oct. 18, 2011). The other group bought the same products on a trade exchange rather than transacting directly with the defendants. *Id*. For two reasons, the *LIBOR* court created separate classes for the two purchaser groups, each with its

4

own counsel. First, the court reasoned that the purchasers "may be differently positioned at various stages of the litigation, creating a potential conflict in their joint representation." *Id*. at *2. As an example, the court suggested that one group might be subject to a legal defense that didn't apply to the other group. *Id*. (noting that the exchange plaintiffs might face a standing challenge). Second, the court recognized that "the two categories of plaintiffs may require different treatment in the event of settlement." *Id*.[3]

The potential for both categories of conflict is present here. The *Surefreight* purchasers will be exposed to Section 2 defenses that the *Cliffy Care* purchasers will not have to overcome. Indeed, the *LIBOR* rationale applies *a fortiori* to this case because there the same defendants were common to both classes.

Anticipating potential settlements in this litigation is another reason to appoint separate class counsel to lead the *Cliffy Care* class. The *Cliffy Care* purchasers no doubt will be treated differently in any settlement led by *Surefreight.* The reality of unfortunate settlement repercussions is observed in the reversals of class settlements due to conflicting class interests.[4] A recent example is the *Payment Card Interchange Fee* litigation, in which the Second Circuit rejected a pre-certification settlement proposing two classes. In doing so, the court first

---

[3] Other decisions have denied standing on similar grounds. *See, e.g.*, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 478 n.31 (S.D.N.Y. 2018) (rejecting plaintiffs' argument that it had "'class standing' to assert contract-based claims against all defendants, not just those with which they transacted."); *Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG*, 277 F.Supp.3d 521, 549 (S.D.N.Y. 2017) (denying the plaintiffs' standing as to certain derivative products because the class complaint did not allege that the defendants manipulated bids for them in the same way); *Goldemberg v. Johnson & Johnson*, 317 F.R.D. 374, 391 (S.D.N.Y. 2016) (holding that plaintiffs lacked standing with respect to products they did not purchase because they were not the same "in all essential respects" to the ones they did buy).

[4] *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999); *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242 (2d Cir. 2011).

reaffirmed that Rule 23(a)(4)'s adequacy requirement in this circuit "is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class and must have no interests antagonistic to the interests of other class members." *In re Payment Card Interchange Fee and Merchant Discount Litig.*, 827 F.3d 223, 231 (2d Cir. 2018) ("*Payment Card*") (citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)). *See also Robinson v. Metro–North Commuter R.R. Co.*, 267 F.3d 147, 171 (2d Cir. 2001) ("To assure vigorous prosecution, courts consider whether the class representative has adequate incentive to pursue the class's claim, and whether some difference between the class representative and some class members might undermine that incentive."). The adequacy test that doomed the *Payment Card* settlement and others could undermine a settlement in this case, where the class representatives in *SPX* and *Surefreight* have no incentive to pursue the distinct claim made by the *Cliffy Care* purchasers.

There are also substantial differences in the likely expenses necessary to prosecute the *Cliffy Care* case as compared to the other cases because its claims are narrower, with a shorter time period, and a smaller class—all of which will be reflected in the comparative proof necessary to prepare the case for trial. The expenses associated with prosecuting *Cliffy Care* will likewise be less than the other advertiser cases. It would be inequitable to require the *Cliffy Care* class to financially support the broader classes or to allow counsel with conflicting interests to assess *Cliffy Care* a disproportioned share of "common expenses," particularly when the majority of expenses are not likely to be common at all. It would also be inequitable for other counsel to control or condition *Cliffy Care*'s access to discovery materials as was proposed by *Surefreight's* counsel prior to their letter motion. Nor does counsel for *Cliffy Care* seek such power over the other cases.

For all these reasons, counsel for *SPX* and *Surefreight* do not appear to pass the adequacy test with respect to *Cliffy Care*. Furthermore, even assuming (for purposes of argument only) that those attorneys did clear this bar, they are not "best able to represent the interests of the [*Cliffy Care*] class." Rule 23(g)(2).

### C.   The SPX and Surefreight Classes Lack Class Standing to Represent the *Cliffy Care* Class.

The Second Circuit's "class standing" requirement is another independent reason for appointment of separate, independent class counsel for the *Cliffy Care* class. In a putative class action,

> a plaintiff has class standing if he plausibly alleges (1) that he personally has
> suffered some actual injury as a result of the putatively illegal conduct of the
> defendant, and (2) that such conduct implicates the same set of concerns as the
> conduct alleged to have caused injury to other members of the putative class by
> the same defendants.

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co*., 693 F.3d 145, 162 (2d Cir. 2012) (citation omitted). This two-part test is intended to ensure that a "named plaintiff's litigation incentives are sufficiently aligned with those of the absent class members that the named plaintiff may properly assert claims on their behalf." *Id*. at 161. *Retirement Bd. of the Policemen's Annuity and Ben. Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154, 161 (2d Cir. 2014). Derived from constitutional standing principles, this test is "distinct from the criteria that govern whether a named plaintiff is an adequate class representative under Rule 23(a)." *Id*. (citing *NECA*, 693 F.3d at 158 n.9). Class standing is also independent of Article III and antitrust standing. *Id*. at 158.[5]

_____

[5] Standing turns on the litigation incentives of the named plaintiffs, "not [of] their lawyers." *Merryman v. City Group, Inc., Markets Inc.*, No. 15 Civ. 9185 (CM), 2018 WL 1621495, at *10 (S.D.N.Y. Mar. 22, 2018) (quoting *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp*., 632 F.3d 762, 770 (1st Cir. 2011). Thus, "[t]he fact that it would be

Pre-suit investigation performed on behalf of the *Cliffy Care* plaintiffs included a detailed analysis of the economics underlying the arrangement between defendants Meta and Google. By contrast, the *Surefreight* plaintiffs have yet to even *allege* the claims asserted in the *Cliffy Care* case, as they acknowledge in their letter motion ("we have not yet had an opportunity to include allegations regarding the agreement and a corresponding Section 1 claim," Doc 248, at 2).

Accordingly, both *SPX* and *Surefreight* do not appear to pass either prong of the class standing test to represent the *Cliffy Care* class. As to part one, they do not allege any illegal conduct of Meta, a defendant named only in *Cliffy Care*. The second part also precludes *SPX* and *Surefreight* for two reasons. First, it too requires alleged illegal conduct by "the same defendants." Again, *SPX* and *Surefreight* do not join Meta as a defendant. Second, the conduct those plaintiffs allege does not implicate the same set of concerns. *Cliffy Care* alleges that Google conspired with Meta to manipulate prices on the Google Exchange auction platform to confer a competitive advantage to Meta as a participant in those auctions in return for Meta's loyalty as an advertisers' broker. *See* Consolidated Complaint ¶¶ 2-3. The *Cliffy Care* advertisers bid on the Google Exchange for ad space in the "open display" advertising market which are placed on third-party publishers' websites and mobile apps. *Id*. ¶¶ 34-35. When bidding for space made available by participants in the Network Bidding Agreement, they are exposed to disadvantages that are separate and distinct from the injuries alleged in the *Surefreight* or *SPX* complaints.

In sum, neither the *SPX* and *Surefreight* class representatives nor their counsel have litigation incentives that are "sufficiently aligned with those of the [*Cliffy Care*] class members"

---

possible for a plaintiff to litigate a given claim plainly does not imply that she should be the one to litigate it." *Id*. (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (emphasis added).

so that they "may properly assert claims on their behalf." This lack of standing and their

inadequacy under Rule 23 are compelling reasons to recognize a separate *Cliffy Care* class and to

appoint separate, independent lead counsel.

### III.     The Rule 23(g)(1)(A) Criteria for Appointment Strongly Favor Appointment of MoginRubin LLP

As the District Court for the District of Columbia previously determined, MoginRubin

LLP, with the assistance and support of its co-counsel, is well qualified to serve as interim lead

counsel for the *Cliffy Care* class and is committed to pursuing vigorously the interests of the

class and its members. The factors enumerated in Rule 23(g)(1)(A) weigh heavily in favor of

appointing MoginRubin LLP to represent the *Cliffy Care* class.

### A.     MoginRubin's Work Identifying and Investigating Plaintiffs' Claims (Rule 23(g)(1)(A)(i))

Beginning with the first factor to be considered, comparing the respective complaints,

"the work [MoginRubin] has done in identifying or investigating potential claims in the action"

is significantly more detailed with respect to the effect of the Network Bidding Agreement and

the claims of the *Cliffy Care* class. In contrast, *Surefreight* concedes they have not "include[d]

allegations regarding the agreement and a corresponding Section 1 claim." *See* Fed. R. Civ. P.

23(g)(1)(A)(i). Moreover, defendant Meta would escape liability without separate legal counsel

representing the *Cliffy Care* class.

MoginRubin LLP conceived of and were first to file this case and conducted significant

pre-suit identification and investigation of plaintiffs' claims. Even before the public disclosure of

defendants' Network Bidding Agreement, MoginRubin attorneys consulted and analyzed a large

number of information sources. Data-intensive interviews were conducted with numerous class

members and potential class members. The extent and nature of any antitrust injury to the

members of the class caused by defendants' arrangement was evaluated. Based on the significant

volume of information collected and reviewed, MoginRubin and its consulting economists

evaluated defendants' potential liability and injury to the class under Section 1 of the Sherman

Act.

Significant effort was also devoted to ensuring the feasibility of an economic model

based on well accepted economic theory capable of reliably estimating aggregate damages

suffered by the class caused by defendants' conduct. Further analysis was conducted concerning

adherence to the requirements of Rule 23 for the successful certification of the class.

## B.   Experience and Familiarity with Applicable Law (Rules 23(g)(1)(A)(ii) & (iii))

### 1.   MoginRubin LLP

Experience leading antitrust class actions is one of the most important Rule 23(g) factors.

MoginRubin LLP is highly accomplished in efficiently coordinating groups of plaintiffs' counsel

and experienced in issues unique to antitrust class actions, including unique class certification

issues, the development and production of sophisticated economic evidence, and countering

defendants' economic experts.

Based on the credentials described below, MoginRubin LLP clearly meets the standard

set forth in Fed. R. Civ. P. 23(g)(1)(A)(ii), which considers "counsel's experience in handling

class actions, other complex litigation, and the types of claims asserted in the action." The *Cliffy

Care* purchasers' rights and the zealous advocacy of their claims requires effective representation

by separate counsel to perform critical tasks such as pleading, establishing a pretrial schedule,

conducting discovery, opposing motions to dismiss, mediating or otherwise negotiating a

settlement, and myriad others at the earliest practicable time.

Examples of significant antitrust class actions litigated by the firm include:

a    *National ATM Council v. Visa, et. al.*, Case No. 1:11-cv-01803-RJL (D.D.C.) (J. Leon). Appointed Lead Class Counsel for a certified nationwide class of ATM Operators in antitrust class action alleging that Visa and Mastercard used their market power to illegally fix and artificially increase ATM network fees in violation of Section 1 of the Sherman Act.

b.    *Containerboard Products Antitrust Litigation*: (*Kleen Products LLC, et al. v. International Paper, et al.* (N.D. Ill., No. 1:10-cv-05711). Appointed co–lead counsel in nationwide Sherman Act certified class action for direct purchaser class alleging price-fixing and supply restriction claims against the major integrated producers of containerboard and corrugated products. Reported: 775 F. Supp. 2d 1071 (N.D. Ill. 2011); 306 F.R.D. 585 (N.D. Ill. 2015) 831 F3d. 919; 2016 U.S. App. LEXIS 14282; 2016 WL 4137371 (7th Cir. 2016). Settlements of over $376 million; Daniel Mogin named Illinois Trial Lawyer of the Year.

c.    *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation* (MDL 1486, N.D. Cal., No. 4:02-md-01486-PJH). Appointed co-lead counsel for class of indirect purchasers involving an international price-fixing cartel in the PC memory industry.  Reported: 516 F. Supp. 2d 1072 (N.D. Cal. 2007); 536 F. Supp. 2d 1129 (N.D. Cal. 2008). Settled for over $310 million.

d.    *In Re Circular Thermostat Litigation* (MDL 1673 (remanded as *Roos and Santos et al. v. Honeywell International Inc.*, San Francisco, Cal. Superior Court, No. CGC-04-436205- lead case for Vermont, Maine and other jurisdictions). Appointed lead counsel for plaintiff class in multi-state action alleging monopolization and concerted conduct to abuse intellectual property rights and foreclose entry into key thermostat sub-market.  Reported: 241 Cal. App. 4th 1472 (2015). Settled- 78% classwide damages.

e.    *California Microsoft Antitrust Litigation* (JCCP 4106, 4107, 4109, 4110 & 4112 assigned to San Francisco, Cal. Superior Court). Court-appointed Executive Committee representing certified class of Windows and other Office applications alleging monopolization /exclusionary practices.  Reported: 135 Cal. App. 4th 706.  Settled: $1.1 billion.

f.    *San Diego MLS Antitrust Litigation* (S.D. Cal. 04-cv-1495-BEN(JMA). Appointed lead counsel in a Sherman Act case involving the San Diego real estate multiple listing service.  Reported: 225 F.R.D. 616 (S.D. Cal. 2004)). Settled.

Recognition and awards to the firm and its attorneys, which are detailed in the firm resume attached as Exhibit "A," include recognition of MoginRubin LLP by U.S. News & World Report as a "Best Law Firm" for Antitrust Litigation.

The MoginRubin LLP attorneys who will be principally responsible as interim lead class counsel are:

**Jonathan L. Rubin (partner),** a seasoned trial attorney who also holds a Ph.D. in economics, formerly  a senior Fellow of the American Antitrust Institute and a partner in Patton Boggs has been a D.C.-based practitioner specializing in antitrust litigation and counseling for the past 21 years. He currently serves as co-lead class counsel in *National ATM Council v. Visa, et. al.*, Case No. 1:11-cv-01803-RJL (D.D.C.) (J. Leon).

**Daniel J. Mogin (partner)** has led numerous antitrust class actions and has frequently been appointed as lead or liaison counsel in Sherman Act cases over his 40-year career. He has led some of the largest antitrust class actions in the United States.

**Jennifer M. Oliver (partner)** is a ten-year veteran of the New York office of Weil, Gotshal & Manges LLP practicing antitrust and complex commercial litigation prior to joining MoginRubin in 2016. Ms. Oliver, who has litigated and tried many complex cases in courts across the country, was named as one of the Daily Journal's Top 40 Attorneys Under 40 in the State of California in 2020.

## 2. Hartley LLP

MoginRubin's co-counsel, Hartley LLP attorneys have extensive experience in all aspects of complex litigation, including antitrust and other large class action cases. Their relevant experience and qualifications are noted in detail on the firm's webpage, https://hartleyllp.com, and in the Firm Resume, attached as Exhibit B, and include the following:

a. *In re DPP Beef Antitrust Litigation*, 20-cv-01319-JRT-HB (D.Minn.).  Hartley LLP was appointed co-lead counsel for the direct purchaser class in this antitrust price fixing case against domestic beef processors. Hartley and its co-counsel recently received preliminary approval of an ice-breaker settlement with one defendant of over $52 million.

b. *Fond du Lac Bumper v. Gordon, et al.,* No. 09-CV-0852 (E.D. Wis.).  Hartley LLP attorneys spent months investigating this proprietary case before filing it in 2009. Hartley LLP served as court-appointed Lead Counsel on behalf of companies in the U.S. that purchased automotive sheet metal parts, such as hoods, fenders, and panels. The case finally settled with the last defendant in 2019 for over $33 million.

c. *Leiszler, et al. v. Align Technologies,* No. 10-CV-2010 (N.D. Cal.).  Hartley LLP attorneys were lead counsel for a class of more than 22,000 dentists against the maker of Invisalign teeth aligners for unfair competition in suspending or decertifying dentists who did not prescribe a minimum number of new Invisalign cases. Hartley LLP attorneys obtained a settlement that amounted to a 100% recovery for the class, with a value of more than $50 million in cash and non-cash relief.

d. *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,* No. 05-md-01720 (E.D.N.Y).  Hartley LLP attorneys are part of the executive committee in this ground-breaking antitrust case, one of the largest in U.S. history. In it, merchants challenged the fundamental structure of the credit card industry, asserting that the setting of interchange fees by credit card associations and banks constitutes illegal price fixing. The parties reached a settlement on September 18, 2018 for up to $6.26 billion in cash for merchants across the country, which was approved by the District Court. The settlement is currently pending appellate court review.

### 3.   Shaffer Lombardo Shurin, P.C.

Shaffer Lombardo Shurin, P.C., also co-counsel to MoginRubin LLP in this case, is a multi-specialty firm with an emphasis on litigation. Richard Lombardo served from 2001 through 2012 as one of two lead counsel appointed by former Missouri Appellate Judge Albert A. Riederer, Special Deputy Receiver of General American Mutual Holding Company ("General American"), recovering more than $260 million for the benefit of General American members, including:

a. *Keith Wenzel, Director, Department of Insurance, State of Missouri v. General American Mutual Holding Company*, Case No. CV 99 323050 (Cir. Ct. of Cole County, Mo), recovery from former officers and directors.

b. *Scott B. Lakin et al. v. KPMG, LLC*, Case No. 02CV233493, (Cir. Ct. of Jackson County, Mo.), recovery from the international accounting firm of KPMG.

c. *Scott Lakin et al. v. Morgan Stanley & Co., et al.,* Case No. 22042-7900-01 (Missouri Circuit Court, 22nd Judicial Circuit, St. Louis City), recovery from investment banking firm, Morgan Stanley.

13

    d.   *Scott Lakin et al. v. Goldman Sachs et al.*, Case No. 22042-7900-01 (Missouri Circuit Court, 22nd Judicial Circuit, St. Louis City), recovery from investment banking firm, Goldman Sachs.

    e.   *John M. Huff and Albert Riederer v. Dewey LeBoeuf*, Case No. 09BA-CV04635 (Cir. Ct. of Boone Cty., Mo.), recovery from the law firm of Dewey and LeBoeuf.

Mr. Lombardo is a fellow in the American College of Trial Lawyers and the International Academy of Trial Lawyers with significant experience in complex litigation and class actions. including:

    a.   *Fox et al. v. TransAm Leasing, Inc.,* Case No. 2:12-CV-02706 (D. Kan.), appointed lead class counsel.

    b.   *Jacob Rieger v. Cincinnati Insurance Company,* Case No. 20-CV-00681-SRB (W.D. Mo.), appointed lead class counsel.

    c.   *In Re: Pre-Filled Propane Tank Antitrust Litigation,* Case No. 14-02567-MD-W-GAF (W.D. Mo.), appointed liaison counsel for Direct Purchaser Plaintiffs in nationwide price fixing case.

Further information about Shaffer Lombardo Shern's relevant experience and qualifications is available on the firm's webpage: https://sls-law.com.

C.    **Adequate Resources (Rule 23(g)(1)(A)(iv))**

MoginRubin LLP also makes the strongest showing of "resources that counsel will commit to representing the class." *See* Fed. R. Civ. P. 23(g)(1)(A)(iv). *Surefreight*'s counsel have no motivation to dedicate substantial resources to a Section 1 claim they have not yet plead. MoginRubin LLP, on the other hand, will focus its resources on this litigation exclusively on *Cliffy Care*'s Section 1 claim. Counsel for the *SPX* and *Surefreight* classes have to this point shown little interest in prosecuting claims encompassing the purchases made by the *Cliffy Care* class members. *Cliffy Care* opens a second battlefront which *SPX* and *Surefreight* may have no motivation to enter.

Numerous courts have found that MoginRubin LLP has the resources to devote to these types of cases, including a core team of experienced antitrust attorneys and professional staff who have worked together for many years and whose backgrounds which include Am Law 200 law firms, the American Antitrust Institute, and prestigious litigation boutiques. As outlined above, the MoginRubin LLP legal team has litigated in federal courts throughout the United States, including numerous antitrust class actions.

In addition to its human resources, MoginRubin LLP has demonstrated its ability to carry cases for years without reimbursement of fees and expenses. Examples include *National ATM Council v. Visa et al.,* Case No. 1:11-cv-01803-RJL (D.D.C.) (J. Leon) *supra,* 2011-present, (11 years); *DRAM Antitrust Litigation, supra,* 2002-2016 (14 years); the *Circular Thermostat Litigation, supra,* 2004-2016 (12 years) and the *Department Store Cosmetics Cases Antitrust Litigation,* (*Azizian v. Federated Dept. Stores, Inc.* ND-CA (03-cv-3359)), 1998-2008 (10 years).

MoginRubin's additional resources include considerable investments in litigation technology, affording it capabilities typically associated with larger firms; its professional staff and paralegals hold numerous certifications in eDiscovery and trial technology; and, most importantly, it is a diverse and cohesive group, many of whose members have been with the firm for many years.

Finally, in urging the court to appoint independent lead counsel for the *Cliffy Care* class, counsel are mindful of the Court's legitimate concern to avoid unduly complicating the class structure. However, for the reasons stated above, separate lead counsel is essential for compliance with the standards embodied in Rule 23 of the Federal Civil Rules, the avoidance of irreconcilable conflicts, and the fair and efficient administration of justice.

**IV.    CONCLUSION**

Accordingly, pursuant to Fed. R. Civ. P. 23(g)(3), applicants respectfully request an Order appointing Jonathan L. Rubin, Daniel J. Mogin, and Jennifer M. Oliver of the firm of MoginRubin LLP as interim lead counsel for the proposed *Cliffy Care* class.

February 23, 2022

/s/ Jonathan Rubin

Jonathan L. Rubin
(D.C. Bar No. 353391)
**MOGINRUBIN LLP**
2101 L Street, N.W.
Washington, D.C. 20037
(202) 630-0616
jrubin@moginrubin.com

Daniel J. Mogin
Jennifer M. Oliver
Timothy Z. LaComb
**MOGINRUBIN LLP**
600 West Broadway, Suite 3300
San Diego, CA 92101
(619) 687-6611
dmogin@moginrubin.com
joliver@moginrubin.com
tlacomb@moginrubin.com

*Counsel for Plaintiffs Cliffy Care, Kinin, Rodrock, and Raintree*

Richard F. Lombardo
Peter F. Rottgers
**SHAFFER LOMBARDO SHURIN** 2001
Wyandotte Street Kansas City, MO 64108
(816) 931-0500
rlombardo@sls-law.com
prottgers@sls-law.com

*Counsel for Plaintiffs Cliffy Care, Rodrock, and Raintree*

Jason S. Hartley
Jason M. Lindner
**HARTLEY LLP**
101 W. Broadway, Ste 820
San Diego, CA 92101
(619) 400-5822
hartley@hartleyllp.com
lindner@hartleyllp.com

*Counsel for Plaintiff Kinin*

**Certificate of Electronic Mail Service**

All counsel on the ECF list were served a true and correct copy of the foregoing on

February 23, 2022, via the Court's CM/ECF system and to the best knowledge of the

undersigned there are no recipients who are not registered to receive electronic service.


 /s/    Jonathan Rubin_____
Jonathan L. Rubin