# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re Google Advertising Antitrust Litigation* | Civil Action No. 21-MD-3010 (PKC) |

**APPLICATION OF PLAINTIFFS SUREFREIGHT GLOBAL LLC D/B/A PRANA PETS, HANSON LAW OFFICE, AS SUCCESSOR-IN-INTEREST TO HANSON LAW FIRM, PC, AND VITOR LINDO FOR APPOINTMENT OF GIRARD SHARP LLP AND AHDOOT & WOLFSON, PC AS INTERIM CO-LEAD COUNSEL FOR THE PROPOSED ADVERTISER CLASS AND APPOINTMENT OF AN ADVERTISER CLASS EXECUTIVE COMMITTEE**

# TABLE OF CONTENTS

I.      INTRODUCTION ...........................................................................................................1

II.     BACKGROUND .............................................................................................................1

III.    THE COURT SHOULD ESTABLISH A SINGLE LEADERSHIP
        STRUCTURE FOR ALL ADVERTISER CLASS CASES ...........................................4

IV.     THE COURT SHOULD APPOINT SUREFREIGHT COUNSEL AS
        COUNSEL FOR THE ADVERTISER CLASS CASES .................................................6

        A.      Surefreight Counsel Led the Investigation and Prosecution of This
                Litigation.........................................................................................................7

        B.      Surefreight Counsel Have a Proven Track Record of Success in
                Nationwide Class Actions and Substantial Knowledge of Antitrust Law. .........8

        C.      Surefreight Counsel Possess and Will Apply the Resources Necessary to
                Effectively Prosecute the Advertiser Claims. ...................................................12

        D.      Surefreight Counsel Will Efficiently Manage the Progress of this
                Litigation..........................................................................................................12

V.      CONCLUSION..............................................................................................................12

Pursuant to Federal Rule of Civil Procedure 23(g), Advertiser Plaintiffs Surefreight Global LLC d/b/a Prana Pets, Hanson Law Office, as successor-in-interest to Hanson Law Firm, PC, and Vitor Lindo ("Surefreight Plaintiffs") respectfully submit this application for the appointment of Girard Sharp LLP and Ahdoot & Wolfson, PC ("Surefreight Counsel") as interim co-lead counsel for the proposed advertiser class, with an Executive Committee including Archana Tamoshunas of Taus, Cebulash & Landau, LLP and April Lambert of Radice Law Firm, PC, and any other firms the Court may deem appropriate to appoint to the committee.

## I.    INTRODUCTION

This multidistrict litigation centers on Google's monopolization of display advertising services in the digital economy.  Google engaged in unilateral conduct and entered an anticompetitive agreement with Facebook as part of its scheme to acquire and protect its monopoly.  All plaintiffs in this MDL—the States, advertisers, and publishers—allege that Google's anticompetitive conduct in markets for digital advertiser services caused noncompetitive pricing and antitrust injuries.

Surefreight Counsel, the Girard Sharp and Ahdoot Wolfson firms, have been at the forefront of the litigation since its inception.  They filed the first complaint challenging Google's anticompetitive practices many months before any other plaintiff, led subsequent litigation in the Northern District of California, and since the creation of this MDL have worked cooperatively with counsel for other plaintiff groups as part of the plaintiff coordinating committee. Surefreight Counsel have a track record of successfully and efficiently prosecuting complex cases, and are prepared to continue devoting the time and resources necessary to represent all advertisers here as lead counsel with the support of an experienced executive committee.

## II.    BACKGROUND

In May 2020, Girard Sharp filed the first class action lawsuit arising from Google's

ad-tech monopoly in the Northern District of California on behalf of plaintiffs Surefreight Global and Hanson Law.  (1:21-cv-07001-PKC, Doc. 1.)  Ahdoot Wolfson filed its own independent complaint, and Surefreight Counsel then joined efforts, including by filing a consolidated complaint on behalf of a proposed class of all persons in the United States that used Google's display advertising services from January 1, 2016 to the present.  (*Id.*, Doc. 52, ¶ 225.)  The complaints were the result of the firms' independent investigation into Google's conduct and undue market power; the Surefreight complaint was filed months before the Department of Justice filed a search-advertising monopoly action against Google in October 2020 and before several state attorneys general and publishers filed ad-tech monopoly suits in December 2020.

In April 2021, Judge Freeman of the Northern District of California appointed Girard Sharp and Ahdoot Wolfson as interim co-lead counsel for the advertisers, and appointed Archana Tamoshunas of Taus, Cebulash & Landau, LLP and April D. Lambert of Radice Law Firm, PC as members of the Advertising Plaintiffs' Steering Committee.  (*Id.*, Doc. 133.)  Girard Sharp and Ahdoot Wolfson have led the prosecution of the advertiser claims in all respects.  In 2020 and the first half of 2021, the firms advanced early case management activities on behalf of private plaintiffs and in consultation with the Court, prepared a discovery plan, worked on an ongoing basis with Google counsel, consulted with industry experts and economists, briefed and argued Google's initial motion to dismiss, and advocated for and obtained an order requiring Google's production of documents that it produced to the States.  In this MDL, Surefreight Counsel have worked alongside counsel for the States and publisher plaintiffs and represented the advertisers on the committee that is coordinating the prosecution of all plaintiffs' claims.

The SPX Plaintiffs, another group of advertiser plaintiffs, also filed a complaint in the Northern District of California, in February 2021.  (1:21-cv-06870-PKC.)  Though they do not name Facebook as a defendant, SPX seeks to represent a class of advertisers on Facebook.  (*Id.*,

Doc. 1, ¶ 131.)  The Cliffy Care Plaintiffs filed their case in D.C. federal court, also in February 2021, seeking to represent a class of persons who placed display advertisements *other* than through Facebook (1:21-cv-06910-PKC, Doc. 25, ¶ 22)—a class that overlaps with the class defined by Surefreight Plaintiffs.  The narrower classes proposed by SPX and Cliffy Care Plaintiffs were limited to transactions occurring after Google and Facebook's September 2018 network-bidding (or "Jedi Blue") agreement; both sets of plaintiffs assert only a claim under Section 1 of the Sherman Act based on that agreement.  Because Surefreight Plaintiffs filed their most recent complaint on December 4, 2020, before the agreement became public, they have not yet had the opportunity to add allegations regarding the agreement and a corresponding Section 1 claim, but intend to do so as permitted by the Court.  (*See* 9/24/21 Hr'g Tr. at 15, 19.)

At the September 2021 conference, this Court directed the various advertiser counsel "to get together in a room and talk, because what happens is, ultimately, if you're not able to speak with approximately one voice on issues, I will have to put some sort of a structure in place."  (*Id.* at 32-33.)  Since that conference, Surefreight Counsel, as the designated advertiser representative on the plaintiffs' coordinating committee, have acted as liaison between that committee and counsel for Cliffy Care and SPX Plaintiffs (e.g., coordinating with and collecting comments from them on draft confidentiality and other proposed orders).  The various advertiser counsel have had a series of discussions concerning leadership structure, but have been unable to reach agreement on advertiser leadership and it has become apparent that the lack of an overall leadership structure is causing inefficiencies and other problems in the representation of advertisers.  For example, Surefreight Plaintiffs understand that Cliffy Care Plaintiffs intend to review Google's document production on their own, meaning that two sets of counsel seeking to represent overlapping classes of Google advertisers would be independently reviewing the same documents.  The proposed classes do not benefit from such duplication.

- 3 -

III.   **THE COURT SHOULD ESTABLISH A SINGLE LEADERSHIP STRUCTURE FOR ALL ADVERTISER CLASS CASES**

Appointing a small number of firms as interim co-lead counsel for the proposed advertiser class and any subclasses will centralize decision-making, avoid counterproductive disputes over leadership, and promote effective and efficient representation against well-resourced defendants. *See, e.g.*, *In re Interest Rate Swaps Antitrust Litig.*, No. 16-MD-2704 (PAE), 2016 WL 4131846, at *4 (S.D.N.Y. Aug. 3, 2016); *In re Bystolic Antitrust Litig.*, No. 20-CV-5735 (LJL), 2020 WL 6700830, at *1 (S.D.N.Y. Nov. 12, 2020) (appointing as interim co-lead counsel two firms that "were the first to identify the claims in these actions and to investigate them and have expended substantial resources").

Prosecution of the advertisers' claims will benefit from the contributions of other experienced and knowledgeable counsel as well. *See, e.g.*, *In re Interest Rate Swaps Antitrust Litig.*, 2016 WL 4131846, at *4 (designating firms to be "on-call" "at interim co-lead counsel's sole discretion" and concluding that "more than two interim co-lead counsel will likely yield needless duplication of effort and inefficient decision making."); *In re Crude Oil Commodity Futures Litig.*, No. 11 Civ. 3600 (WHP), 2012 WL 569195, at *2 (S.D.N.Y. Feb. 14, 2012). Surefreight Plaintiffs thus propose a structure under which two firms serving as lead counsel can draw upon the skills and expertise of other advertiser counsel on a committee.

Surefreight Counsel have invited the participation of SPX and Cliffy Care Plaintiffs' counsel on an advertisers' executive committee. As to SPX, a committee role would allow their proposal to represent a non-overlapping class of Facebook advertisers to be taken into account. As to Cliffy Care, Surefreight Counsel appreciate the antitrust experience of the Mogin Rubin firm and the narrower Section 1 claim they have asserted. But, insofar as SPX and Cliffy Care Plaintiffs have elected not to assert a Section 2 claim, or allege overcharges on transactions going

- 4 -

back to 2016, neither can effectively represent the class proposed by the Surefreight Plaintiffs. Moreover, appointing separate sets of lead counsel for different or overlapping proposed classes of advertisers would be inefficient, in contrast to the considerable efficiencies to be gained from a single leadership group. *See* Manual for Complex Litigation § 21.11 at p. 246 (4th ed. 2004) ("*Manual 4th*") (when "overlapping, duplicative, or competing suits" may be consolidated, "designation of interim counsel clarifies responsibility for protecting the interests of the class").

Surefreight Plaintiffs advised the other advertiser plaintiffs that they intend to add a Section 1 claim when the time comes for private plaintiffs to amend their complaints, and the Court already noted that this possibility means it is irrelevant that different Plaintiffs presently assert different legal theories. *See* 9/24/21 Hr'g Tr. at 15 ("[O]ther plaintiffs may incorporate some aspect of [Cliffy Care Plaintiffs' Section 1] claim."). Further, even though it was filed before the Jedi Blue agreement came to light, Surefreight Plaintiffs' December 2020 complaint includes allegations related to the subject matter and purpose of that agreement, reflecting Google's motive to "kill," in its words (Third Am. Compl., Doc. 195, ¶ 352), the "header bidding" technology that threatened its exchange monopoly (First Am. Consol. Class Action Compl., 1:21-cv-07001-PKC, Doc. 52, ¶¶ 142-43).

On a claim arising from the same transaction (Jedi Blue), both Google and Facebook advertisers must establish the agreement's illegality, and this litigation reality favors a single group of plaintiffs' counsel. *See, e.g.*, *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2020 WL 1180550, at *61 (D. Kan. Mar. 10, 2020) (appointing a single group of co-lead counsel where all plaintiffs asserted unlawful pricing conduct, despite the alleged monopolist's argument that counsel would "represent plaintiffs with different theories of injury and competing damage claims"); *In re Community Bank of N. Va. Mortg. Lending Pracs. Litig.*, 795 F.3d 380, 392-94 (3d Cir. 2015) (affirming

- 5 -

decision not to appoint separate counsel and explaining in part that "all class members can, at least in theory, recover all of their damages without impacting the recovery of any other class members"). This MDL already comprises several distinct, separately-led plaintiff groups. That the SPX Plaintiffs propose a Facebook advertiser class at most may weigh in favor of appointing their counsel to a committee position, as "[c]ommittees are most commonly needed when group members' interests and positions are sufficiently dissimilar to justify giving them representation in decision making." *Manual 4th* § 10.221 at p. 25.

It goes without saying that the advertisers may assert both Section 2 and Section 1 claims. The States' complaint alleges that Google restrained competition through a scheme to monopolize that it carried out both by acting unilaterally *and* through its agreement with Facebook. The facts as alleged by the States indicate that the network-bidding agreement, while a "big deal strategically," was but one element of Google's strategy to "protect" its controlling position as broker of display ads. (Third Am. Compl., Doc. 195, ¶¶ 420, 423.) Even if there were any hypothetical tension between the claims, the best course is to have one leadership team determine how best to reconcile the claims instead of the same class members (Google advertisers) having their claims pitted against one another by separately led groups, particularly given the overriding interest in proving the merits. *See In re Community Bank*, 795 F.3d at 394; *In re EpiPen*, 2020 WL 1180550, at *61; *see also* Fed. R. Civ. P. 23(g) advisory committee's note (2003) (noting that designation of interim counsel may benefit the proposed class by avoiding "rivalry or uncertainty").

## IV. THE COURT SHOULD APPOINT SUREFREIGHT COUNSEL AS COUNSEL FOR THE ADVERTISER CLASS CASES

Rule 23(g)(3) allows the Court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." The same factors that

apply in choosing class counsel at the time of certification also apply in choosing interim counsel.  *See* Fed. R. Civ. P. 23(g)(1)(A); *In re Crude Oil*, 2012 WL 569195, at *1.  The Court may also "consider other matters pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).

> **A.     Surefreight Counsel Led the Investigation and Prosecution of This Litigation.**

In most antitrust cases, private plaintiffs file complaints on the heels of DOJ announcements or other government investigations or indictments.  By contrast, Surefreight Plaintiffs sued Google well before any government action based upon the independent investigation of their counsel.  *See, e.g.*, *In re Interest Rate Swaps Antitrust Litig.*, 2016 WL 4131846, at *3 (appointing as interim co-lead counsel two firms that filed the first class action, "not by piggybacking on an existing government investigation or enforcement action, but by undertaking an independent investigation").  Surefreight Counsel investigated the facts, Google's conduct, its terms and conditions, economic conditions related to display advertising, governmental activity and investigations, and the potential legal claims and theories.  In May and June of 2020 Surefreight Plaintiffs took the plunge and filed the first complaints included in this MDL.  *See* Newberg on Class Actions § 20:56 ("[I]n cases developed entirely by private plaintiffs, the counsel who filed the first complaint may have done the most investigative work to date in the case, making her particularly qualified to serve as class counsel under Rule 23(g)(1).") (citing Antitrust Class Actions Handbook 131 n.120 (ABA Section of Antitrust Law ed., 2010)).

Surefreight Counsel continued to lead the litigation after instituting it, including by:

- Conducting court conferences and motion hearings on September 24, 2020; February 4, 2021; April 1, 2021; April 8, 2021; and June 10, 2021 (1:21-cv-07001-PKC, Docs. 32, 80, 124, 127, 150);

- Conferring regularly with Google's lawyers on case management and progress;

- Drafting early case management documents—a protective order, an ESI protocol, and an expert witness protocol—and negotiating the provisions with Google;

- Developing a discovery plan and opposing Google's motion to stay discovery (*id.*, Doc. 43);

- Preparing early Rule 34 requests for documents Google previously produced to the Texas Attorney General's Office;

- Consulting with industry participants and antitrust economists on issues relating to market definition and antitrust impact and damages;

- Organizing and leading conferences among all class plaintiffs' counsel, and among all class plaintiffs' counsel and Google's counsel;

- Briefing and arguing two petitions before the JPML (in this MDL and in MDL No. 2981, *see In re Google Antitrust Litig.*, 521 F. Supp. 3d 1358 (J.P.M.L. 2021));

- Briefing and arguing Google's motion to dismiss the advertisers' claims;

- Reviewing, as they were released, government reports on anticompetitive conditions and conduct in digital advertising markets; and

- Obtaining an order from Judge Freeman requiring Google's production, by July 31, 2021, of the documents that it produced to the Texas Attorney General's Office.

Once this MDL was established, Surefreight Counsel participated in the Court's initial conference of September 24, 2021; attended in person the October 5, 2021 meeting of MDL plaintiffs' counsel; reviewed and analyzed documents that Google produced; advised the States on antitrust issues connected with amending their complaint and opposing Google's Rule 12 motion; participated in several video meetings of the plaintiffs' coordinating committee, as well as a meet-and-confer with Google and Facebook regarding the draft confidentiality order; engaged in multiple lengthy discussions and made drafting proposals on the confidentiality, ESI, and expert orders; and contributed to all joint letters filed with the Court since the conference.

> **B.**     **Surefreight Counsel Have a Proven Track Record of Success in Nationwide Class Actions and Substantial Knowledge of Antitrust Law.**

Surefreight Counsel's firm resumes (Exhibits A and B) demonstrate that Girard Sharp and Ahdoot Wolfson have the knowledge and experience to lead this MDL for the advertisers.

Girard Sharp is a national plaintiffs' firm that has successfully led many complex

antitrust class actions and gained favorable results for clients and the classes they represent. Recent antitrust matters handled by the firm include *In re Lidoderm Antitrust Litigation*, MDL No. 2521 (N.D. Cal.), which yielded a precedent-setting $104.75 million settlement on the eve of trial, as well as the recently-settled *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation*, MDL No. 2819 (E.D.N.Y.). The firm also served as co-lead counsel in *In re Lehman Brothers Holdings Securities and ERISA Litigation*, MDL No. 2017 (S.D.N.Y.), arising out of the collapse of Lehman Brothers Holdings, Inc., the largest bankruptcy in American history. The *Lehman* litigation generated recoveries of over $735 million.

Girard Sharp currently serves as interim co-lead class counsel in *In re California Gasoline Spot Market Antitrust Litigation*, No. 3:20-cv-03131-JSC (N.D. Cal.), where plaintiffs allege consumers overpaid at the pump because oil companies engaged in manipulative spot-market trading to maintain high prices after a supply disruption. The firm also serves on the end-payer plaintiffs' steering committee in *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.), where the firm's lawyers, acting alongside state agencies, play a key role in managing discovery from over 30 defendants and preparing the bellwether conspiracy case for trial. In both matters the firm's attorneys have closely coordinated with State Attorneys General, just as the firm's attorneys are collaborating with the States here.

If appointed, Girard Sharp's team will be led by name partner **Dena Sharp**. Ms. Sharp serves or has served as co-lead counsel in numerous complex, high-stakes antitrust litigations, including *Lidoderm*, *Restasis*, *Gasoline*, and *In re Xyrem Antitrust Litigation*, MDL No. 2966 (N.D. Cal.). As lead trial counsel in *In re Pacific Fertility Center*, Ms. Sharp and her team obtained a $15 million jury verdict in a 2021 bellwether case for women and families whose frozen eggs and embryos were destroyed in an IVF storage tank malfunction. For two consecutive years the National Law Journal has recognized Ms. Sharp as one of a handful of

"Elite Women of the Plaintiffs' Bar" nationwide who "have consistently excelled in high-stakes matters on behalf of plaintiffs over the course of their careers."  Ms. Sharp leads a stellar team.

**Jordan Elias** has advocated for plaintiffs in antitrust cases for many years.  Mr. Elias helped lead the LCDs price-fixing case for the direct purchasers in MDL No. 1827, and took the lead in briefing the appeal in *In re Cipro Cases I & II*, 61 Cal. 4th 116 (2015), where the court reversed the dismissal of claims arising from a "pay-for-delay" agreement.  He is also the author of the Supreme Court chapter in the ABA's *Survey of Federal Class Action Law* and the chapter on standing, causation and remedies in *California State Antitrust and Unfair Competition Law*.

**Scott Grzencyzk** likewise focuses his practice on antitrust litigation, including the *Gasoline*, *Xyrem*, *Restasis, Lidoderm* and *Generic Pharmaceuticals* matters.  In 2020 the American Antitrust Institute recognized Mr. Grzenczyk for "Outstanding Antitrust Litigation Achievement by a Young Lawyer."

Like Girard Sharp, Ahdoot Wolfson has obtained impressive results in national class actions—and its experience with data-related matters should be particularly valuable to plaintiffs in this case.  Attorneys at Ahdoot Wolfson were among the first to successfully advocate for the privacy rights of consumers against major financial institutions engaged in the hidden compilation and sale of personal financial data to third-party telemarketers without the consumers' consent.  The firm's work helped pave the way for such legislation as the Gramm-Leach-Bliley Act, and Ahdoot Wolfson has been at the forefront of data-related litigation ever since.  For example, acting as co-lead counsel, Ahdoot Wolfson recently achieved an $85 million settlement for consumers who alleged that Zoom invaded their privacy by allowing the collection of personal information through third-party software development kits and failed to provide end-to-end encryption.  The settlement includes over 30 items of injunctive relief that overhaul Zoom's practices.  *In re Zoom Video Commc'ns Inc. Privacy Litig.*, No. 5:20-cv-02155 (N.D.

Cal.).  The firm also serves as co-lead counsel in *In re Google Location History Litigation*, No. 5:18-cv-05062 (N.D. Cal.), which alleges that Google collects and stores comprehensive user location information even after users turn off location tracking on their mobile devices.

Ahdoot Wolfson has substantial antitrust experience as well.  The firm currently serves on the executive committee for advertiser plaintiffs who assert that Facebook engaged in anticompetitive conduct to dominate and increase pricing for digital advertising on social media. *Klein v. Meta Platforms, Inc.*, No. 3:20-cv-08570 (N.D. Cal.).  The firm's attorneys also helped achieve an $80 million cash settlement for dental practitioners, clinics, and laboratories in a case alleging an anticompetitive conspiracy among three dominant U.S. dental supply companies. *In re Dental Supplies Antitrust Litig.*, No. 1:16-cv-00696 (E.D.N.Y.).  And in *Robinson v. Jackson Hewitt, Inc.*, No. 2:19-cv-09066 (D.N.J.), the firm represents current and former employees who contend that anticompetitive "no poach" policies lowered their pay.

**Tina Wolfson** will serve as Ahdoot Wolfson's lead attorney and co-lead counsel with Ms. Sharp, if appointed.  As one of a handful of female founding partners of a national plaintiffs' class action firm, Ms. Wolfson has been a pioneer of the plaintiffs' class action bar.  She has served in leadership roles in many complex class actions, including antitrust cases.

**Theodore Maya** has represented plaintiff classes for the majority of his 20-year legal career and has significant trial and appellate experience.  Mr. Maya's oral argument in *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015), helped established multiple bases for Article III standing for data breach victims that courts had not previously recognized.  Along with Ms. Wolfson, Mr. Maya leads Ahdoot Wolfson's work in the *Meta Platforms* antitrust case.

**Bradley King** has over a decade of experience working as court-appointed class counsel in data privacy litigation and has been an integral member of the Ahdoot Wolfson team in several antitrust cases, including the *Jackson Hewitt* and *Meta Platforms* matters.

- 11 -

###### C.     Surefreight Counsel Possess and Will Apply the Resources Necessary to Effectively Prosecute the Advertiser Claims.

Surefreight Counsel have the resources to prosecute this litigation and are committed to bringing it to a favorable outcome, as they have in other matters.  *E.g.*, *In re Lidoderm*, 2018 WL 4620695, at *2-3 (N.D. Cal. Sept. 20, 2018) (noting that the case "involved substantial risk" and that Girard Sharp and its co-lead counsel "provided their clients with diligent and skilled representation"); *In re Experian*, 8:15-cv-01592, Doc. 322 at 9 (C.D. Cal. May 10, 2019) (noting "(1) the excellent result achieved" by Ahdoot Wolfson and "(2) the size and complexity of this case, which involved 15 million consumers from every state in the country, and (3) the great amount of legal labor").  Counsel's dedication to this litigation was shown by their willingness to file a case against Google months before the public disclosure of any government investigations or filing of complaints by other plaintiffs.  Surefreight Counsel were prepared then—as they are now—to litigate this complex action against one of the world's largest companies.

###### D.     Surefreight Counsel Will Efficiently Manage the Progress of this Litigation.

If appointed, Surefreight Counsel will call upon the skills and experience of other capable advertiser counsel.  Surefreight Counsel have a track record of productive, collegial collaboration with other firms, including those involved in this litigation, and are well-positioned to manage prosecution of the advertiser claims without unnecessary duplication of effort.  Demonstrating their commitment to efficient work, Surefreight Plaintiffs submitted a time and expense protocol on behalf of all class plaintiffs, which the Court entered as modified.  (Doc. 166.)

## V.     CONCLUSION

For the foregoing reasons, Surefreight Plaintiffs respectfully request that the Court appoint Girard Sharp LLP and Ahdoot & Wolfson, PC as interim co-lead counsel for advertisers, with a supporting Executive Committee.

Dated: February 23, 2022                    Respectfully submitted,

                                            /s/ *Dena C. Sharp*

                                            Dena C. Sharp (*pro hac vice*)
                                            Jordan Elias (*pro hac vice*)
                                            Scott M. Grzenczyk (*pro hac vice*)
                                            **GIRARD SHARP LLP**
                                            601 California Street, Suite 1400
                                            San Francisco, CA 94108
                                            Tel: (415) 981-4800
                                            Fax: (415) 981-4846
                                            dsharp@girardsharp.com
                                            jelias@girardsharp.com
                                            scottg@girardsharp.com

                                            Tina Wolfson (TW-1016)
                                            Theodore W. Maya (*pro hac vice*)
                                            Bradley K. King (BK-1971)
                                            **AHDOOT & WOLFSON, PC**
                                            2600 West Olive Ave., Suite 500
                                            Burbank, CA 91505
                                            Tel.: (310) 474-9111
                                            Fax: (310) 474-8585
                                            twolfson@ahdootwolfson.com
                                            tmaya@ahdootwolfson.com
                                            bking@ahdootwolfson.com

                                            *Attorneys for Advertiser Plaintiffs Surefreight*
                                            *Global LLC d/b/a Prana Pets; Hanson Law*
                                            *Office, as successor-in-interest to Hanson Law*
                                            *Firm, PC; and Vitor Lindo*