# Exhibit 1

CERA LLP
SOLOMON B. CERA (Bar No. 099467)
PAMELA A. MARKERT (Bar No. 203780)
595 Market St. Suite 1350
San Francisco, CA 94105
Telephone: (415) 777-2230
Fax:  (415) 777-5189
Email: scera@cerallp.com
Email: pmarkert@cerallp.com

*Counsel for Plaintiff Negron and the Proposed Class*
*[Additional Counsel listed on*
*signature page]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY NEGRON, Individually and On Behalf of All Others Similarly Situated,<br><br>                                    Plaintiff,<br><br>                    v.<br><br>GOOGLE  LLC,<br><br>                                    Defendant. | Case No. 4:21-cv-00801-HSG<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO APPOINT INTERIM COUNSEL PURSUANT TO FED. R. CIV. P. 23(g)**<br><br>Judge:   Hon. Haywood S. Gilliam, Jr.<br>Date:    July 1, 2021<br>Time:    2:00 p.m.<br>Ctrm:    2 – 4th Floor |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>NOTICE OF MOTION AND MOTION</u>

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 1, 2021 at 2:00 p.m. or as soon thereafter as counsel may be heard, before the Honorable Haywood S. Gilliam, Jr., Courtroom 2 of the United States District Court for the Northern District of California, Ronald V. Dellums Federal Building & United States Courthouse, 1301 Clay Street, Oakland, California 94612, Plaintiff Kimberly Negron, individually and on behalf of all others similarly situated, will and hereby does move for an order under Fed. R. Civ. P. 23(g) appointing Interim Counsel, comprised of an Executive Committee including Fred T. Isquith, Jr. as Chair of the Plaintiffs' Executive Committee and two additional members, Pamela A. Markert and Kate M. Baxter-Kauf. Defendant Google LLC does not oppose this motion.

This motion is based upon this Notice of Motion and Motion, the supporting Memorandum set forth below, the exhibits attached hereto, the pleadings and records on file in this action, and all other matters properly before the Court.

1

## **TABLE OF CONTENTS**

2                                                                                            **Page(s)**

3   I.      LEGAL STANDARD ...................................................................................................... 1

4   II.     ARGUMENT .................................................................................................................. 2

5           A.      Interim Class Counsel Should be Appointed in this Case ........................................ 2

6           B.      The Work Done in Identifying or Investigating Potential Claims Justifies
                    Appointment of Counsel ........................................................................................... 3

7
8           C.      Proposed Interim Counsel Have Extensive Experience Handling Class
                    Actions, Complex Litigation, and the Types of Claims at Issue, and Know the
                    Applicable Law ......................................................................................................... 4

9
10                  1.      Fred T. Isquith, Jr., Of Counsel at Zwerling, Schacter & Zwerling
                            LLP as Chair of the Plaintiffs' Executive Committee ................................... 4

11                  2.      Pamela M. Markert of Cera LLP as Plaintiffs'        Executive
                            Committee Member and local liaison counsel ............................................... 5

12
13                  3.      Kate M. Baxter-Kauf of Lockridge Grindal Nauen P.L.L.P. as
                            Plaintiffs' Executive Committee Member ..................................................... 5

14          D.      Counsel Will Commit the Necessary Resources to Represent the Class ................... 6

15          E.      Proposed Leadership Structure ................................................................................. 7

16          F.      Appointment of Proposed Interim Counsel Will Advance Diversity in Lead
                    Counsel Appointments .............................................................................................. 9

17
18   III.    CONCLUSION ............................................................................................................. 10

19

20

21

22

23

24

25

26

27

28

1

2

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Chacanaca v. Quaker Oats Co.*,
　　No. C 10-0502 RS, 2011 WL 13141425 (N.D. Cal. June 14, 2011) .......................................3

*Gallagher v. Bayer AG*,
　　No. 14-CV-04601-WHO, 2015 WL 4932292 (N.D. Cal. Aug. 18, 2015) .............................3

*In re Apple & AT&TM Antitrust Litig.*,
　　No. 07-05152 JW, 2008 U.S. Dist. LEXIS 120061 (N.D. Cal. Apr. 15, 2008).....................3

*In re Aurora Dairy Corp.*,
　　No. 4:08MD01907 ERW, 2008 U.S. Dist. LEXIS 32189 (E.D. Mo. Apr. 18, 2008) ............7

*In re Fairlife Milk Prod. Mktg. & Sales Practices Litig.*,
　　No. 19-CV-3924, 2020 WL 362788 (N.D. Ill. Jan. 22, 2020)...........................................7, 10

*In re Qualcomm Antitrust Litig.*,
　　No. 17-MD-02773-LHK, 2017 WL 2222531 (N.D. Cal. May 15, 2017) ..............................7

*In re S.C. Johnson & Son, Inc. Windex Non-Toxic Litig.*,
　　No. 20-CV-03184-HSG, 2020 WL 6081722 (N.D. Cal. Oct. 15, 2020) ................................2

*In re Seagate Tech. LLC Litig.*,
　　No. 16-CV-00523-RMW, 2016 WL 3401989 (N.D. Cal. June 21, 2016)...............................1

*LeBeau v. United States*,
　　222 F.R.D. 613 (D.S.D. 2004) ...............................................................................................6

*Olosoni v. HRB Tax Grp., Inc.*,
　　No. 19-CV-03610-SK, 2019 WL 7576680 (N.D. Cal. Nov. 5, 2019), *aff'd sub nom. Snarr v. HRB Tax Grp., Inc.*, No. 19-17441, 2020 WL 7249334 (9th Cir. Dec. 9, 2020) ...................3

*Vincent v. Hughes Air West, Inc.*,
　　557 F.2d 759 (9th Cir. 1977) ..................................................................................................2

**Rules**

Civil L.R. 11-3 .....................................................................................................................................9

Federal Rules of Civil Procedure

　　Rule 23 .....................................................................................................................................1

　　Rule 23(g) ..........................................................................................................................*passim*

　　Rule 23(g)(1)(A) ......................................................................................................................1

　　Rule 23(g)(1)(A)(i) ..................................................................................................................4

　　Rule 23(g)(2)............................................................................................................................1

Rule 23(g)(3) ................................................................................................................ 1, 10

**Other Authorities**

*Guidelines and Best Practices for Large and Mass-Tort MDLs*, Sept. 2018 (2d Ed.) ....................... 9

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, Plaintiff Kimberly Negron ("Negron"), individually and on behalf of all others similarly situated, moves this Court to appoint her counsel, Fred T. Isquith, Jr., as Chair of the Plaintiffs' Executive Committee, along with two additional Executive Committee members, Pamela A. Markert and Kate M. Baxter-Kauf, as interim class counsel to act on behalf of Plaintiffs and the proposed class. *See* Fed. R. Civ. P. 23(g)(3). Appointment of interim class counsel is appropriate in this case. The proposed interim class counsel are experienced in complex litigation, committed to efficiently prosecute this case, and will best serve the advertiser class's interests in a just and speedy manner. Plaintiff respectfully requests that the motion be granted.

## I.   **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 23(g)(3), a court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). A court should "designate interim counsel during the pre-certification period if necessary to protect the interests of the putative class." *See Wang v. OCZ Tech. Grp., Inc.,* No. C 11-01415 PSG, at *4 (N.D. Cal. June 29, 2011) (citing Fed. R. Civ. P. 23). In considering the appointment of interim class counsel, courts typically look to the factors used in determining the adequacy of class counsel under Rule 23(g)(1)(A). *See, e.g., In re Seagate Tech. LLC Litig.,* No. 16-CV-00523-RMW, 2016 WL 3401989, at *2 (N.D. Cal. June 21, 2016). These factors are:

1)   the work counsel has done in identifying or investigating potential claims in the action;

2)   counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

3)   counsel's knowledge of the applicable law; and

4)   the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *See* Fed. R. Civ. P. 23(g)(1)(B). When faced with competing applications for interim class counsel, the court "must appoint the applicant best able to represent the interests of the class." *See* Fed. R. Civ. P. 23(g)(2).

## II.    ARGUMENT

The factors outlined in Rule 23(g) and the relevant case law support Plaintiff's motion to appoint interim counsel.

### A.    Interim Class Counsel Should be Appointed in this Case

It is well-established that a court may appoint leadership to direct and manage complex cases. *See Vincent v. Hughes Air West, Inc.,* 557 F.2d 759, 774-75 (9th Cir. 1977). In determining whether designation of interim counsel during the pre-certification period is necessary to protect the interests of the putative class, *see Wang*, No. C 11-01415 PSG, at *4, the Court first generally determines whether there are "special circumstances that warrant appointment of interim counsel at this stage." *In re S.C. Johnson & Son, Inc. Windex Non-Toxic Litig*., No. 20-CV-03184-HSG, 2020 WL 6081722, at *2 (N.D. Cal. Oct. 15, 2020) (internal quotation omitted). Given the complex nature of this litigation, the need for protection of the interests of the unique class alleged, and the need for communication (if not coordination), with the other cases pending in this District, *see infra*, there are sufficient special circumstances that warrant the appointment of interim class counsel.

The proposed interim class counsel filed the complaint in this action on February 1, 2021. The complaint alleges claims arising from an alleged unlawful agreement entered into between defendant Google LLC ("Google") and Facebook, Inc. ("Facebook") in September 2018. On February 9, 2021, Plaintiff moved to relate this action ("*Negron*") to *In re Google Digital Advertising Antitrust Litig.,* No 5:20-cv-03556-BLF (N.D. Cal.), which has been pending in this District since May 2020. That motion was denied on March 2, 2021. *See Google Digital Ads Antitrust Litig.,* No 5:20-cv-03556-BLF, ECF No. 108 (N.D. Cal. Mar. 2, 2021).

While the *Negron* action is different from the multiple antitrust lawsuits against Google pending before Judge Freeman, counsel anticipate that the parties in the various cases will attempt to coordinate discovery. The proposed interim class counsel has developed relationships with the attorneys in the multiple cases before Judge Freeman that span years. Mr. Isquith, Ms. Markert, and Ms. Baxter-Kauf all have significant experience working with other plaintiff firms on related actions and are confident they be able to avoid unnecessary time and expense as these cases advance by sharing document databases and related costs, coordinating depositions and other discovery matters.

*See Olosoni v. HRB Tax Grp., Inc*., No. 19-CV-03610-SK, 2019 WL 7576680, at *5 (N.D. Cal. Nov. 5, 2019), *aff'd sub nom. Snarr v. HRB Tax Grp., Inc.*, No. 19-17441, 2020 WL 7249334 (9th Cir. Dec. 9, 2020) (granting request for appointment of interim counsel because "two similar precertification putative class actions are pending" and Rule 23(g) requirements were satisfied); *Gallagher v. Bayer AG*, No. 14-CV-04601-WHO, 2015 WL 4932292, at *8 (N.D. Cal. Aug. 18, 2015) (granting motion to appoint counsel even in absence of other class suits when Rule 23(g)(1) factors are met and defendants will not be prejudiced).

For these reasons, the proposed executive committee comprised of Chair Fred T. Isquith, Jr., and members Pamela A. Markert and Kate M. Baxter-Kauf, are best suited to represent the interests of the class alleged in *Negron* and should be appointed interim class counsel.

## B.   The Work Done in Identifying or Investigating Potential Claims Justifies Appointment of Counsel

Rule 23(g) requires that in deciding a motion for appointment of Interim Counsel, the court should consider the work undertaken by that counsel in the case to date. *See Chacanaca v. Quaker Oats Co*., No. C 10-0502 RS, 2011 WL 13141425, at *3 (N.D. Cal. June 14, 2011) (noting appropriateness of appointing counsel responsible for original investigation of case and claims); *In re Apple & AT&TM Antitrust Litig.,* No. 07-05152 JW, 2008 U.S. Dist. LEXIS 120061, at *9-10 (N.D. Cal. Apr. 15, 2008). As evidenced by counsel's filing of the motion to relate and previous work developing the complaint, Mr. Isquith, Jr., along with Ms. Markert and Ms. Baxter-Kauf, have already done extensive work to investigate, identify, and advocate for the claims of the class. Indeed, as Judge Freeman noted during a hearing on February 4, 2021, *Negron* is unique in its claims. Prior to filing the complaint, Ms. Negron's counsel researched facts and law to allege claims specific to the allegedly unlawful agreement entered into between defendant Google and Facebook in September 2018.

Mr. Isquith, Jr., is properly suited to lead this class of advertisers asserting Section 1 Sherman Act claims against Google, having researched these specific claims and advocated on behalf of this specific class, and has worked with Ms. Markert and Ms. Baxter-Kauf to investigate, prosecute and pursue this case. Proposed interim counsel and their firms have expended considerable effort in the

early stages of this litigation through numerous calls and emails among plaintiff's counsel, conferences with defense counsel, and hearing attendance. Their firms and they have worked with each other in the past. Their work supports appointment pursuant to Fed. R. Civ. P. 23(g)(1)(A)(i).

### C. Proposed Interim Counsel Have Extensive Experience Handling Class Actions, Complex Litigation, and the Types of Claims at Issue, and Know the Applicable Law

Courts applying Rule 23(g) have placed emphasis on proposed class counsel's experience and knowledge of the applicable law. In addition to their combined experience in prosecuting class actions, as set forth below, and significant efforts expended in developing this case, Mr. Isquith, Jr., along with Ms. Markert and Ms. Baxter-Kauf, have extensive experience in prosecuting the types of claims at issue and knowledge of the applicable law and the Sherman Act.

### 1. Fred T. Isquith, Jr., Of Counsel at Zwerling, Schacter & Zwerling LLP as Chair of the Plaintiffs' Executive Committee

As set forth in the Zwerling, Schachter & Zwerling LLP resume, attached as <u>Exhibit 1</u>, Mr. Isquith, Jr., is of counsel at Zwerling, Schachter, & Zwerling, and is also the managing attorney of Isquith Law PLLC in New York, where he engages in complex litigation and specializes in providing counsel regarding expert matters. Mr. Isquith has almost 11 years of complex litigation experience. He has extensive experience in prosecuting matters regarding market manipulation, violations of the Sherman Act, violations of the Clayton Act, and various state consumer protection statutes. This experience, which he has obtained in his current firm affiliation and prior firms, has included leadership of numerous cases. Zwerling Schachter Zwerling LLP, whose lawyers have acted or is presently acting as a lead counsel or member of an executive committee in numerous class actions involving antitrust claims and deceptive trade practices. Mr. Isquith has routinely represented plaintiffs in antitrust matters like the one alleged by Ms. Negron, including ones in which he has played an integral part and managed attorneys in each of those matters. Such cases include *In re Juul Labs, Inc. Antitrust Litig*, 20-cv-2345(N.D. Cal); *First Impression v. National Milk Producers*, 13-cv-454 (S.D. Ill); and *In re Crude Oil Commodity Futures Litig*., 11-cv-3600 (S.D.N.Y.). Mr. Isquith will have the support of and ability to work with some of the highest regarded attorneys in the field.

2.      Pamela M. Markert of Cera LLP as Plaintiffs'
Executive Committee Member and local liaison counsel

As set forth in the Cera LLP resume, attached as Exhibit 2, Ms. Markert is a partner at the firm, where she litigates complex, multi-party cases in federal courts throughout the United States, including extensive practice in the Northern District of California. For more than 30 years, Cera LLP, formerly known as Gold Bennett Cera & Sidener LLP, has played a leading role in significant antitrust cases and has recovered more than $2 billion for its clients in complex class action litigation.

Ms. Markert has practiced law for more than 21 years representing both plaintiffs and defendants in commercial litigation. For the past 15 years, Ms. Markert's practice has focused exclusively on representing plaintiffs in complex class action litigation in the areas of securities fraud, antitrust and consumer class actions, with the majority of her caseload during the past decade focused on antitrust class actions. Ms. Markert takes an active role her cases from drafting the complaint through settlement approval. In 2020, she was appointed one of four Steering Committee Members involving three different plaintiff classes by the Honorable William H. Orrick, III, in *In re Juul Labs, Inc., Antitrust Litigation*, Case No. 3:20-cv-02345-WHO, ECF No. 115 (N.D. Cal. August 24, 2020). Representative antitrust cases include: *In re Shock Absorbers Antitrust Litigation*, 16-cv-13616-SFC-RSW (E.D. Mich.); *Merced Irrigation District v. Barclays Bank PLC*, Case No. 15-cv-04878-VM-GWG (S.D.N.Y.); *Grand Strand Water & Sewer Authority v. Oltrin Solutions LLC et al.*, Case No. 14-cv-2800-RMG (D.S.C. ); *In re Bearings Antitrust Litigation*, Case No. 12-cv-00501(E.D. Mich.); and *In re Municipal Derivatives Antitrust Litigation*, Case No. 08-cv-02516-VM-GWG (S.D.N.Y.).

3.      Kate M. Baxter-Kauf of Lockridge Grindal Nauen
P.L.L.P. as Plaintiffs' Executive Committee Member

As set forth in her resume, attached as Exhibit 3, Ms. Baxter-Kauf currently serves as a partner at Lockridge Grindal Nauen P.L.L.P., and has extensive experience in technology, networks, and privacy cases in addition to antitrust experience through trial. She has almost 10 years of complex litigation experience and the full support of her firm to assist in leading this litigation, as reflected in the resume attached as Exhibit 3. Lockridge Grindal Nauen is a nationally recognized law firm based out of Minneapolis, Minnesota that specializes in complex and class action litigation, especially

antitrust cases such as this one. Ms. Baxter-Kauf regularly represents plaintiffs in consumer, data privacy, data breach, antitrust, ERISA, and securities class actions across the country and in the Northern District of California. She was appointed liaison counsel by the Honorable Paul A. Magnuson in *In re EpiPen ERISA Litigation*, Case No. 17-cv-1884, ECF No. 301 (D. Minn. Nov. 20, 2018). In addition, Ms. Baxter-Kauf was a part of the trial team in *In re Wholesale Grocery Products Antitrust Litigation*, MDL No. 2090 (D. Minn.), which sought damages on behalf of wholesale grocers against one of the two largest wholesale grocers in the United States and involved multiple appeals to the Eighth Circuit Court of Appeals. During law school, she also served as a law clerk for the Student Law Intern Program for the Networks, Technology and Enforcement Section of the Antitrust Division at the Department of Justice, investigating technology companies for antitrust violations.

As a result, Ms. Baxter-Kauf has an in-depth understanding of the relevant substantive law at issue in the instant litigation, as well as the underlying industries and technology necessary to prosecute the case effectively. Ms. Baxter-Kauf prides herself on working collaboratively with others to achieve the best possible result for the class.

**D.     Counsel Will Commit the Necessary Resources to Represent the Class**

As required by Rule 23(g), courts also consider the resources that proposed class counsel will commit to the prosecution of the lawsuit. *LeBeau v. United States,* 222 F.R.D. 613, 619 (D.S.D. 2004) ("In considering the resources that counsel will commit to representing the class, the Court may consider the staff, supplies and professional commitments of that attorney.") (citation omitted).

Mr. Isquith, Jr., Ms. Markert, and Ms. Baxter-Kauf are fully aware of the financial and human resources that will be required to bring this case to a successful conclusion. The Court should have no reservations that proposed interim counsel and their law firms have and are willing to commit the necessary resources for the benefit of Plaintiff Negron and the advertiser class.

If appointed, their team will follow a billing protocol to ensure that the class is not overcharged for attorney services consistent with the protocol implemented by this Court in other matters. *See In re Stubhub Refund Litig.*, Case No. 4:20-md-02951-HSG, ECF No. 28, at 3 (N.D. Cal. Nov. 18, 2020). To ensure that duplicative billing is avoided, Mr. Isquith, Jr., will implement contemporaneous billing

guidelines and efficiency protocols, similar to those implemented in other consolidated class actions within this District, and will ensure that any potential fee applications comport with Ninth Circuit law and the billing requirements and disclosures outlined in the Northern District's Procedural Guidance for Class Action Settlements.

Mr. Isquith, Jr., Ms. Markert, and Ms. Baxter-Kauf are amply poised to lead this litigation from the outset and look forward to successfully prosecuting Google for its alleged wrongdoing and misconduct as alleged in the complaint.

### E.  Proposed Leadership Structure

As indicated above, Plaintiff Negron requests that this Court appoint interim counsel in the form of an Executive Committee with Mr. Isquith, Jr., as Chair and additional members consisting of Ms. Markert and Ms. Baxter-Kauf. Such organization is appropriate in complex cases, and can be used to minimize expense and provide judicial efficiency, and a three-person committee structure such as that proposed has been previously found appropriate in antitrust cases in this district. *See In re Qualcomm Antitrust Litig.*, No. 17-MD-02773-LHK, 2017 WL 2222531, at *1 (N.D. Cal. May 15, 2017) (appointing three-member steering committee to best serve the interest of antitrust class); *see also In re Fairlife Milk Prod. Mktg. & Sales Practices Litig.*, No. 19-CV-3924, 2020 WL 362788, at *3 (N.D. Ill. Jan. 22, 2020) (appointing three-firm structure because "the cross-fertilization of ideas from multiple law firms is preferable to a single firm as lead counsel" given Court's confidence in "safeguards to ensure that a tripartite leadership structure will not result in duplication of work or other inefficiencies"); *In re Aurora Dairy Corp.,* No. 4:08MD01907 ERW, 2008 U.S. Dist. LEXIS 32189, at *15-16, *21-22 (E.D. Mo. Apr. 18, 2008) ("When coordinating multi-district litigation, district courts may combine procedures, appoint lead counsel, recognize steering committees of lawyers, limit and manage discovery, etc. to minimize expense to all litigants and to provide judicial efficiency.") (internal citations omitted). Here, Plaintiff proposes that the Executive Committee be generally responsible for the overall conduct and have the following specific responsibilities:

1.  Determine and present to the Court and opposing parties the position of Plaintiff and putative class members on all matters arising during pretrial proceedings;

2.    Enter into stipulations with opposing counsel as necessary for the conduct of the litigation;

3.    Coordinate the initiation and conduct of discovery on behalf of Plaintiff and putative class members, including the preparation of joint interrogatories and requests for the production of documents and the examination of witnesses in depositions;

4.    Hire expert witnesses and consultants on behalf of the putative class, as needed to prepare for class certification or trial, and advance other costs that may be reasonable and necessary to the conduct of the litigation;

5.    Conduct settlement negotiations on behalf of Plaintiff and putative class members, where appropriate, and to present any proposed settlements to the Court on behalf of putative class members;

6.    Prepare and distribute status reports to any other law firms that may appear in the case to represent putative class members;

7.    Monitor the activities of any other law firms that may appear in the case to represent putative class members, and, where appropriate, allocate work assignments to such firms;

8.    Collect and maintain all Plaintiff's counsels' contemporaneously recorded time records, and to ensure that unnecessary expenditures of time and funds are avoided, as described above; and

9.    Perform such other duties as may be incidental to the proper prosecution and coordination of pretrial activities on behalf of Plaintiff and the putative class or authorized by further order of this Court.

*See Stubhub Refund Litig.*, Case No. 4:20-md-02951-HSG, ECF No. 28, at 2-3.

As Chair, Mr. Isquith, Jr., will supervise these tasks and allocate assignments in consultation with the Executive Committee. Mr. Isquith will also be responsible for coordinating, when necessary, with Defense Counsel and Counsel in the *In Re Digital Advertisement* matter to ensure an efficient and cost-effective discovery process for Ms. Negron and the class. As to the two other members, Ms. Markert and Ms. Baxter-Kauf will implement assignments, conduct discovery, and present arguments

to the Court as directed by the Chair. In addition, Ms. Markert, who is a member of the California Bar and admitted to practice in both the State of California and the United States District Court for the Northern District of California, will serve the functions typically assigned to liaison counsel, such as ensuring conformance with local rules, acting as co-counsel as required by Civil L.R. 11-3, and filing and serving pleadings and other papers.

### F. Appointment of Proposed Interim Counsel Will Advance Diversity in Lead Counsel Appointments

Finally, the "demonstrat[ion of] careful attention to creating a diverse team" supports appointment of the proposed Interim Counsel here. *Stubhub Refund Litig.*, Case No. 4:20-md-02951-HSG, ECF No. 28, at 2. As the Bolch Judicial Institute at Duke Law School's *Guidelines and Best Practices for Large and Mass-Tort MDLs* note, when appointing Interim Counsel, "a balanced team, with diversity of skills, expertise, prior casework and role, and demographics, should be sought."[1] The proposed Interim Counsel structure is composed of one lead counsel and a two-person executive committee made up of two women, a variety of skills, and spans the whole country geographically.

Here, in addition, appointment of the proposed Interim Counsel would be consistent with the Directive of the Guidelines that "the strong repeat player dynamic that has historically existed reduces fresh outlooks and innovative ideas, and increases pressure to go along with the group and conform, all of which may negatively impact the plaintiffs whose cases are being pursued in the MDL. At the same time, leadership needs repeat players who understand the ropes." Ms. Markert has been involved in class action litigation since 2006, Mr. Isquith, since 2009, and Ms. Baxter-Kauf since 2011. They and their firms have recovered millions for class members, victims of antitrust violations, and shareholders, have extensive antitrust experience, and have litigated all portions of a case from initial pleadings to trial. They have the backing of nationally-known more senior lawyers and law firms with sufficient resources to raise no concerns about adequate protection of the class. At the same time, each has limited experience in formal court appointments to leadership, and appointment would

---

[1] Bolch Judicial Institute at Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDLs*, Sept. 2018 (2d Ed.), at 37–38, *available at* https://judicialstudies.duke.edu/wp-content/uploads/2018/09/MDL-2nd-Edition-2018-For-Posting.pdf (last accessed Mar. 8, 2021).

advance the ability of fresh outlooks and innovative ideas, and obtaining leadership experience for new and diverse leaders. This factor supports the appointment of counsel and adoption of the proposed Interim Counsel slate. *Accord Fairlife*, 2020 WL 362788, at *1 (N.D. Ill. Jan. 22, 2020) (noting appointment of tripartite group made up of two women and one man as advancing diversity goals, consistent with Rule 23(g), and consistent with Bolch Judicial Institute guidelines).

### III.    CONCLUSION

For the foregoing reasons, Plaintiff Negron, individually and on behalf of all others similarly situated, respectfully requests the Court appoint her counsel, Fred T. Isquith, Jr., as Chair of the Plaintiffs' Executive Committee, with the Executive Committee to be comprised of Mr. Isquith and two others, Pamela A. Markert and Kate M. Baxter-Kauf, as Interim Counsel to act on behalf of Plaintiff and the proposed class. *See* Fed. R. Civ. P. 23(g)(3).

Dated:   March 29, 2021                          Respectfully submitted,


**CERA LLP**


By:   */s/ Pamela A. Markert*
          Pamela A. Markert

          -and-

Fred T. Isquith, Sr. (*pro hac vice* forthcoming)
Fred T. Isquith, Jr. (admitted *pro hac vice*)
Robert S. Schachter (admitted *pro hac vice*)
Sona R. Shah (*pro hac vice* forthcoming)
**ZWERLING, SCHACHTER**
  **& ZWERLING, LLP**
41 Madison Avenue, 32nd Floor
New York, NY 10010
Tel: (212) 223-3900
Fax: (212) 371-5969
ftisquith@zsz.com
rschachter@zsz.com
sshah@zsz.com
ddrachler@zsz.com
havery@zsz.com

Fred T. Isquith, Jr. (admitted *pro hac vice*)
**ISQUITH LAW**
220 East 80th Street
New York, NY 10075
Tel: (607) 277-6513
isquithlaw@gmail.com

Heidi Silton (*pro hac vice* forthcoming)
Kate M. Baxter-Kauf (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue S., Suite 2200
Minneapolis, MN 55401-2159
Tel: (612) 596-4092
hmsilton@locklaw.com
kmbaxter-kauf@locklaw.com

Richard Vita (*pro hac vice* forthcoming)
**VITA LAW OFFICES, P.C.**
100 State Street, Suite 900
Boston, MA 02109
Tel: (617) 426-6566
rjv@vitalaw.com

*Attorneys for Plaintiff and the Class*

# EXHIBIT 1

# FIRM RESUME OF
# ZWERLING, SCHACHTER & ZWERLING, LLP

The firm of Zwerling, Schachter & Zwerling, LLP was formed on January 1, 1985 (the "Zwerling Firm"), and is currently involved in numerous class actions in the areas of securities fraud, consumer fraud, and antitrust litigation.

## Antitrust / Consumer Litigation

The Zwerling Firm has acted or is presently acting as a lead counsel or member of an executive committee in numerous class actions involving antitrust claims and deceptive trade practices, including: *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation,* 18-MD-2819 (E.D.N.Y.); *In re Cipro Cases I and II*, JCCP Nos. 4154 and 4220 (Cal. Super.); *In re Ciprofloxacin Hydrochloride Antitrust Litigation*, MDL No. 1383 (E.D.N.Y.);*In re OxyContin Litigation*, MDL No. 1603 (S.D.N.Y.); *In re Insurance Brokerage Antitrust Litigation*, MDL No. 1663 (D.N.J.); *In re Neurontin Antitrust Litigation*, MDL No. 1479 (D.N.J.); *In re Tamoxifen Citrate Antitrust Litigation*, MDL No. 1408 (E.D.N.Y.); *Karofsky v. Abbott Laboratories,* No. CV-95-1009 (Me. Super. Ct. Cumberland County) (as well as in 10 related cases in other state courts); *In re Lorazepam and Clorazepate Antitrust Litigation*, MDL No. 1290 (D.D.C.) (as well as in 11 related cases in state courts); *Newman v. DuPont Merck Pharmaceutical Company,* No. 788358 (Cal. Super. Ct. Orange County); *Pickett v. Holland America Line-Westours, Inc.*, 6 P.3d 63 (Wash. Ct. App. 2000); *Latman v. Costa Cruise Lines, N.V.,* 758 So. 2d 699 (Fla. Dist. Ct. App. 2000); *Renaissance Cruises, Inc. v. Glassman*, 738 So. 2d 436 (Fla. Dist. Ct. App. 1999) (as well as in 7 related cases in other state courts); *Garcia v. General Motors Corporation*, No. L-4394-95 (N.J. Super. Ct.); *In re Playmobil Antitrust Litigation*, No. 9:95-cv-2896 (JS) (E.D.N.Y.); and *Boni v. America Online Inc.*, C.A. No. 95-C-07 (Del. Ch.) and *Feige v. America Online Inc.*, Index No. 118333/95 (N.Y. Sup. Ct. N.Y. County) (as well as other related cases in state courts).

In the antitrust area, the firm is currently Liaison Counsel for indirect purchaser plaintiffs in the *Restasis Antitrust Litigation*. In that capacity, the firm participates in all decision-making in connection with the prosecution of the litigation and serves as the direct liaison with the Court and other parties.

The Zwerling Firm has represented union health and welfare funds in litigation to recover damages for price-fixing and other anti-competitive behavior for over 20 years. Such actions have included the *Norvir Antitrust Litigation*, the *Tamoxifen Antitrust Litigation*, the *Lorazepam and Clorazepate Antitrust Litigation,* and the *Ciprofloxacin Hydrochloride Antitrust Litigation.* In both the federal MDL and the California *Cipro* cases, the firm served as Co-Lead Counsel challenging pay-for-delay pharmaceutical agreements on behalf of a class of indirect purchasers of the drug ciprofloxacin. As Co-Lead Counsel in California, the Zwerling Firm was able to revive a case that had been dismissed by numerous courts and abandoned by most of plaintiffs' counsel. In the process, California Co-Lead Counsel were able to reverse a significant error in the application of antitrust law to pharmaceutical reverse payment agreements and achieve a total settlement of $399.1 million; a total in excess of plaintiffs' expert's estimate of single damages.

1

In *In re Abbott Laboratories Norvir Antitrust Litigation*, the Zwerling Firm represented the SEIU International Health Fund ("SEIU") against Abbott Laboratories in an action for monopoly leveraging under Section 2 of the Sherman Antitrust Act, as well as the California Unfair Competition law and state law unjust enrichment.  In August, 2008, the parties reached a settlement whereby thirteen not-for-profit organizations shared almost $5 million in Cy Pres funds.

In *In re OxyContin Litigation*, the Zwerling Firm represents Local 1199 National Benefit Fund and has been appointed third-party payor co-lead counsel.  This matter challenges the monopoly pricing of OxyContin, a pain killer, the patents for which are in question. The matter is currently stayed pending the resolution of the underlying patent litigation.

The Zwerling Firm was appointed co-lead counsel for plaintiffs in numerous related indirect purchase actions brought against Mylan Laboratories, Inc. regarding injury to competition and monopolization, as well as price fixing.  Those actions included an action in federal court, *In re Lorazepam & Clorazepate Antitrust Litigation*, and resulted in settlements of over $100 million. The plaintiffs represented by the Zwerling Firm included several institutions, such as union health funds and private insurers.

The Zwerling Firm was co-lead counsel and a member of the Executive Committee in eleven actions filed against the major pharmaceutical manufacturers alleging violations of state antitrust laws for charging higher prices to consumers who purchased brand name prescription drugs from retail pharmacies.  Those cases resulted in a $65 million settlement.  The courts presiding over those cases have commented on the Zwerling Firm's expertise:

- I think the lawyering in this case is most commendable.  I think that both sides have accorded themselves in a manner that allows us to be proud of the profession. . . .

Transcript of Hearing at 16-17, *Kerr v. Abbott Laboratories,* No. 96-2837 (Minn. Dist. Ct. Nov. 24, 1998).

- [T]his Court, in particular, has been helped along every step of the way by some outstanding lawyering . . . .You can hardly say that there's been anything but five star attorneys involved in this case.

Transcript of Hearing at 31 & 33, *Scholfield v. Abbott Laboratories,* No. 96 CV 460 (Wis. Cir. Ct. Oct. 5, 1998).

- I think the quality of counsel is excellent.

Transcript of Hearing at 28, *McLaughlin v. Abbott Laboratories,* No. CV 95-628 (Ariz. Super. Ct. Oct. 28, 1998).

- I'll join my learned colleagues from this and other jurisdiction[s] in commending counsel in arriving at something that represents a great deal of hard work and a great deal of ingenuity in putting together a settlement of this magnitude and complexity,

2

> and especially the cost effective way in which this settlement is proposed to be distributed.

Transcript of Hearing at 17, *Karofsky v. Abbott Laboratories,* No. CV-95-1009 (Me. Super. Ct. Dec. 2, 1998).

In *Insurance Brokers*, settlements totaling over $198 million were reached with three of the many defendant groups. The Zwerling Firm was also one of the three class counsel in *Rodriguez v. West Publishing Corporation*, No. 2:05-cv-3222 R(MCx) (C.D. Cal.), where a $49 million settlement of antitrust claims was approved by the Court and affirmed by the Ninth Circuit Appeals on behalf of a class of law graduates enrolled in the BAR/BRI bar review courses.

In addition, the Zwerling Firm represented consumers who were victims of overcharging in the sale of toys in *In re Playmobil Antitrust Litigation*. Judge Seybert complimented the work of Class Counsel, including the Zwerling Firm, stating in her opinion certifying the Class:

> As set forth in greater detail in the firm resumes...: (1) Zwerling, Schachter & Zwerling, LLP [and three other firms]...all have extensive familiarity with the prosecution of complex litigations, class actions and specifically, antitrust litigations. This is further borne out by counsels' submissions and conduct to date before this Court.

*In re Playmobil Antitrust Litigation*, 35 F. Supp. 2d 231, 245 (E.D.N.Y. 1998) (citation omitted).

In the area of deceptive trade practices, the Zwerling Firm was lead counsel in coordinated nationwide actions against the world's leading passenger cruise lines regarding their advertising practices concerning "port charges." (*Cicogna v. Royal Caribbean Cruises, Ltd.*, No. 96-8075 (Fla. Cir. Ct. Dade County); *Espinet v. Kloster Cruise Ltd.*, No. 96-8076 (Fla. Cir. Ct. Dade County); *Bellikoff v. Celebrity Cruises Inc.*, No. 96-8077 (Fla. Cir. Ct. Dade County); *Hackbarth v. Carnival Cruise Lines Inc.*, No. 96-8078 (Fla. Cir. Ct. Dade County); *Glassman v. Renaissance Cruises, Inc.*, No. 96-5490 (Fla. Cir. Ct. Broward County); *Pickett v. Holland America Line-Westours, Inc.*, No. 96-2-10831 (Wash. Super. Ct. King County) ("*Pickett*"), *Barton v. Princess Cruises Inc.*, No. BC 148448 (Cal. Super. Ct. Los Angeles County); *Millheiser v. Dolphin Cruise Line*, No. 96-18146 (Fla. Cir. Ct. Dade County); *Latman v. Costa Cruise Lines N.V.*, No. 96-18139 (Fla. Cir. Ct. Dade County); and *Cronin v. Cunard Cruise Line Ltd.*, Index No. 115899/96 (N.Y. Sup. Ct. N.Y. County)). These cases resulted in settlements in excess of $100 million. In *Pickett*, the Court complimented the Zwerling Firm by declaring that "[t]his has been litigated very professionally from the beginning to the end."

In addition, the Zwerling Firm was involved in cases regarding defective automobile brakes (*McGill v. General Motors Corporation*, Index No. 15525/95 (N.Y. Sup. Ct. Bronx County) (related to *Garcia v. General Motors Corporation*, No. L-4394-95 (N.J. Super. Ct.))).

The Zwerling Firm was appointed Administrator for the General Motors Diesel Litigation Fund under the direction of Judge Henry Bramwell, District Judge, United States District Court,

Eastern District of New York.

## Other Complex Litigation

The Zwerling Firm represents numerous Indian Tribes and Native Villages seeking relief from pharmaceutical manufacturers and distributors of prescription opioid drugs in *In re: National Prescription Opiate Litigation*, MDL No. 2804 (N.D. Ohio). The Zwerling Firm serves on the Tribal settlement committee, and helped organize and draft an amicus brief submitted on behalf of over 450 Tribes throughout the United States.

In *County of Nassau v. Hotels.com, L.P.*, No. 2:06-cv-5724 (ADS) (E.D.N.Y.), the Zwerling Firm represents Nassau County (NY) in a class action seeking to recover unpaid taxes from internet-based hotel reservation companies on behalf of a class consisting of all New York counties and municipalities.

In addition, the Zwerling Firm has also represented union health and welfare funds in litigation against the tobacco industry. Those claims were for the excess costs incurred by the funds in providing health care to the members of their unions as a result of the fraudulent and deceptive practices of the tobacco companies (*Eastern States Health & Welfare Fund v. Philip Morris, Inc.*, Index No. 603869/97 (N.Y. Sup. Ct. N.Y. County)).

The Zwerling Firm has been counsel in high profile constitutional and civil rights actions. In *Haley v. Pataki*, No. 3:95-cv-550 (TJM) (N.D.N.Y.), the firm obtained an order forcing the Governor of the State of New York to stop withholding salaries from legislative employees in an attempt to coerce members of the State Legislature to vote on his State budget. In a related case, *Dugan v. Pataki*, Index No. 16341/95 (N.Y. Sup. Ct. Kings County), the Zwerling Firm obtained the same relief for the elected members of the State Legislature.

The Zwerling Firm has represented the New York City Council in *Mayor of New York v. Council of New York*, Index No. 402354/95 (N.Y. Sup. Ct. N.Y. County), an action in which the Mayor challenged the legislative powers of the City Council in connection with the establishment of a board to review allegations of police corruption.

The Zwerling Firm also represented the Straphangers Campaign, a mass transit advocacy group, in *New York Urban League, Inc. v. Metropolitan Transportation Authority*, No. 1:95-cv-9001 (RPP) (S.D.N.Y.), an action to compel the State of New York and the MTA to allocate transit subsidies in a manner which does not have a discriminatory impact on minority ridership in New York City.

The Zwerling Firm was an active member of the 9/11 Union Project where it provided legal representation *pro bono* for low income victims of the World Trade Center attacks and their families.

4

## Securities Litigation

The Zwerling Firm has acted or is presently acting as a lead counsel or as a member of an executive committee for plaintiffs in many securities related lawsuits, including: *Zoidis v. T. Rowe* Price *Associates, Inc.*, No. 1:16-cv-02786-MJG (D. Md.); *Kennis v. Metropolitan West Asset Management, LLC*, No. 2:15-cv-08162 (C.D. Cal.) GW-FFM; *Redus-Tarchis v. New York Life Investment, LLC*, No. 2:14-cv-07991(D.N.J., Newark Division)-WHW-CLW; *Tumpowsky v. Harbor Capital Advisors, Inc.*, No. 1:14-cv-07210 (N.D. Ill., Eastern Division); *Hebda v. Davis Select Advisors*, No. 14-cv-4318 (S.D.N.Y.); *The Lynn Kennis Trust v. First Eagle Investment Management, LLC*, No. 1:14-cv-00585 (D. Del.); *Goodman v. J.P. Morgan Investment Management, Inc.*, No. 2:14 -cv-00414 (S.D. Ohio)-GLF-NMK; *Clancy v. BlackRock Investment Management, et al.*, No. 3:14-cv-01165 (D.N.J.)(JAP)(DEA); *McClure v. Russell Investment Management Company*, No. 1:13-cv-12631(D. Mass.)–LTS; *Kasilag v. Hartford Investment Financial Services, LLC*, No. 11-cv-1083 (D.N.J.); *Toomey v. Hofhines*, No. 1:09-cv-613-S-EJL-MHW (D. Idaho); *McCoy v. Cullum & Burks Securities, Inc.,* No. 8:09-cv-1084-DOC (RNBx) (C.D. Cal.) ("*Medical Capital Securities Litigation*"); *Billitteri v. Securities America, Inc.,* No. 3:09-cv-1568-F (N.D. Tex.) ("*Provident Royalties Litigation"*); *Anwar v. Fairfield Greenwich Limited*, Master File No. 1:09-cv-118 (VM) (S.D.N.Y.) and *In re Santander Optimal Securities Litigation*, No. 1:09-cv-20215-PCH (S.D. Fla.), both of which seek recovery on behalf of investors in "feeder funds" that in turn invested with Bernard L. Madoff Securities, LLC.; *In re Citigroup Auction Rate Securities Litigation,* No. 1:08-cv-3139 (LTS) (S.D.N.Y.); *In re NYMEX Holdings Shareholder Litigation,* C.A. No. 3621 (VCN) (Del. Ch.); *In re Vonage Initial Public Offering (IPO) Securities Litigation*, No. 3:07-cv-177 (FLW) (D.N.J.); *In re BP Prudhoe Bay Royalty Trust Securities Litigation*, No. C06-1505 MJP (W.D. Wash.); *Diana Allen Life Insurance Trust v. BP plc,* No. 1:06-cv-14209 (PAC) (S.D.N.Y.); *In re First BanCorp Securities Litigation*, No. 3:05-cv-2148 (GAG) (D.P.R.); *Fox v. Levis*, No. 1:07-cv-3252 (RO) (S.D.N.Y.); *In re Silicon Image, Inc. Securities Litigation*, Master File No. C 05-456 (MMC) (N.D. Cal.); *In re Old Banc One Shareholders Securities Litigation,* No. 00C2100 (N.D. Ill.); *In re Network Associates Derivative Litigation*, No. CV 781854 (Cal. Super. Ct. Santa Clara County); *In re Telxon Corporation Securities Litigation*, No. 5:98-cv-2876 (KMO) (N.D. Ohio); *Hayman v. PricewaterhouseCoopers LLP*, No. 1:01-cv-1078 (KMO) (N.D. Ohio); *In re Corrections Corporation of America Shareholder Litigation*, Master File No. 98-1257-iii (Tenn. Ch.); *In re Adaptec Inc. Derivative Litigation*, No. CV 772590 (Cal. Super. Ct. Santa Clara County); *In re Pacific Scientific Securities Litigation*, No. SACV-96-1106-LHM(EEx) (C.D. Cal.); *Kaplan v. Prins Recycling Corporation*, No. 2:96-cv-2444 (WHW) (D.N.J.); *In re Health Management Inc. Securities Litigation*, No. 9:96-cv-889 (ADS) (E.D.N.Y.); *Weikel v. Tower Semiconductor, Ltd.*, No. 2:96-cv-3711 (AJL) (D.N.J.); *In re Bennett Funding Group, Inc. Securities Litigation*, No. 1:96-cv-2583 (JES) (S.D.N.Y.); *In re Horizon/CMS Healthcare Corporation Securities Litigation*, Master File No. 1:96-cv-442 BB/LCS (D.N.M.); *Rosenberg v. Stauth*, No. 5:96-cv-1808-M (W.D. Okla.); *Solomon v. Armstrong*, C.A. No. 13515 (Del. Ch.) (the "*GM/EDS Split-off Litigation*"); *In re Archer Daniels Midland Company Derivative Litigation*, C.A. No. 14403 (Del. Ch.); *In re American Pacific Securities Litigation*, No. CV-S-93-576-PMP (D. Nev.); *McNeil v. Austin*, Index No. 33189/91 (N.Y. Sup. Ct. N.Y. County), *In re Foodmaker/Jack-in-the-Box Securities Litigation*, No. C93-517 WDL (W.D. Wash.); *In re Ames Department Stores, Inc. Stock Litigation*, No. 2:90-cv-27 (PCD) (D. Conn.); *In re General Development Corporation Securities Litigation*, No. 1:90-cv-691

(SM) (S.D. Fla.); *In re Republic Pictures Corporation Shareholders Litigation*, C.A. No. 13122 (Del. Ch.); *In re Blockbuster Entertainment Corporation Shareholders Litigation*, C.A. No. 13319 (Del. Ch.); *In re First Capital Holdings Corporation Financial Products Securities Litigation*, MDL No. 901 (C.D. Cal.); *In re New World Entertainment Securities Litigation*, Master File No. CV 88-6260-MRP(Kx) (C.D. Cal.); *In re Anchor Securities Litigation*, No. 1:88-cv-3024 (CPS) (E.D.N.Y.); *In re 3Com Corporation Securities Litigation*, No. C-89-20480 (WAI) (N.D. Cal.); *In re Par Pharmaceutical, Inc. Derivative Litigation*, No. 1:89-cv-5497 (RPP) (S.D.N.Y.); *Fishbein v. Resorts International Inc.*, No. 1:89-cv-6043 (MGC) (S.D.N.Y.); *In re Bank of Boston Securities Litigation*, Master File No. 89-2269-H (D. Mass.); *In re Howard Savings Bank Securities Litigation*, No. 2:89-cv-5131 (WGB) (D.N.J.); *Merrit v. Gulf States Utilities Co.*, No. B-86-574-CA (E.D. Tex.).

In addition, the Zwerling Firm represents or has represented public employee pension funds and union pension funds in securities litigations, including: *In re MGIC Investment Corporation Securities Litigation*, No. 2:08-cv-458-LA (E.D. Wis.); *In re American International Group, Inc. Securities Litigation*, No. 1:08-cv-4772 (LTS) (S.D.N.Y.); *In re Doral Financial Corporation Securities Litigation*, MDL No. 1706 (S.D.N.Y.); and *Clinton Charter Township Police and Fire Retirement System v. Reckler,* No. 2:03-cv-5008 (TCP) (E.D.N.Y.).

The following is a representative sample of the complex securities claims which the Zwerling Firm has litigated:

· *In re First BanCorp Securities Litigation*, No. 3:05-cv-2148 (GAG) (D.P.R.) - co-lead counsel in securities fraud class action involving sham mortgage sales transactions between Puerto Rico banks. The Zwerling Firm achieved a $74.25 million settlement in less than eighteen months of litigation, which is pending court approval.

· *Hayman v. PricewaterhouseCoopers, LLP*, No. 1:01-cv-1078 (KMO) (N.D. Ohio) - brought on behalf of investors in Telxon Corp. securities against the company's auditors for issuing false opinions on the company's financial statements. The Zwerling Firm obtained a recommendation for a default judgment against PricewaterhouseCoopers, LLP and subsequently settled the action for $27.9 million.

· *In re Telxon Corp. Securities Litigation*, No. 5:98-cv-2876 (KMO) (N.D. Ohio) - a securities fraud class action where the Zwerling Firm, as sole lead counsel obtained a settlement of $40 million on behalf of investors. Class members in the *PricewaterhouseCoopers* and *Telxon* actions received over 70% of their losses in the two settlements.

· *In re Corrections Corporation of America Shareholder Litigation*, Master File No. 98-1257-iii (Tenn. Ch.) - shareholder class action challenging a management-led buyout of public shareholders in exchange for shares in a publicly held REIT.

· *In re Bennett Funding Group, Inc. Securities Litigation*, No. 1:96-cv-2583 (S.D.N.Y.) - securities fraud class action involving the single largest alleged Ponzi scheme in the United States.  The Zwerling Firm has been on the Executive Committee which has successfully prosecuted the accountants, insurers, and sellers of the alleged fraudulent securities.

· *In re Health Management Inc. Securities Litigation*, No. 9:96-cv-889 (ADS) (E.D.N.Y.) - securities fraud class action alleging accounting fraud by the company and its auditors.  The Zwerling Firm was co-lead trial counsel in the first case tried pursuant to the Private Securities Litigation Reform Act of 1995.

· *Rosenberg v. Stauth*, No. 5:96-cv-1808-M (W.D. Okla.) - shareholders' derivative action involving alleged improper business practices at Fleming Companies, Inc. in which the demand futility defense was successfully defeated.

· *In re ICN/Viratek Securities Litigation*, No. 1:87-cv-4296 (S.D.N.Y.) - securities fraud class action involving FDA sought approval of an HIV drug.

· *McNeil v. Austin*, Index No. 33189/91 (N.Y. Sup. Ct. N.Y. County) - shareholders' derivative action regarding the sale of defective nuclear containment systems by General Electric.

· *In re Adaptec Inc. Derivative Litigation*, Master File No. CV 772590 and *In re Network Associates Derivative Litigation*, Master File No. CV 781854 (Cal. Super. Ct. Santa Clara County) – shareholders' derivative lawsuits pursuant to California's insider trading statute to recover profits from the company's officers and directors.

· *In re Ames Department Stores, Inc. Stock Litigation*, No. 2:90-cv-27 (PCD) (D. Conn.) - securities fraud class action in which the Second Circuit reaffirmed the scope of the "in connection with" requirement of the Securities Exchange Act § 10(b).

Courts have commented favorably upon the expertise of the Zwerling Firm.  In appointing the firm as lead counsel in *In re Old Banc One Shareholders Securities Litigation*, No. 00C2100 (N.D. Ill.), the Court noted that the "attorneys have extensive experience, many successes on their resumes, and have obtained sizable recoveries on behalf of their clients." Minute Order dated December 21, 2000.

In appointing it as lead counsel in *In re Telxon Corporation Securities Litigation*, No. 5:98-cv-2876 (KMO) (N.D. Ohio), the Court determined that the Zwerling Firm has "the requisite ability and expertise to prosecute and manage this litigation effectively."  Memorandum and Order at 39, August 25, 1999.

As a member of a team of plaintiffs' trial counsel in *In re ICN/Viratek Securities Litigation*, No. 1:87-cv-4296 (S.D.N.Y.), the Zwerling Firm was complimented by Judge Kimba Wood as having done a "superb job on behalf of the class.... This was a very hard fought case.  You had very able, superb opponents, and they put you to your task.... The trial work was beautifully done and I believe very efficiently done...."

In *In re Par Pharmaceutical, Inc. Derivative Litigation*, No. 1:89-cv-5742 (RPP) (S.D.N.Y.), Judge Patterson, in commenting on the Zwerling Firm, said "[they] acted skillfully and resourcefully....[The Zwerling Firm] exercised wisdom and judgment and negotiated a skillful settlement with the defending company and with the officer and director/defendants." Slip opinion dated June 15, 1992.

Chief Judge Weinstein, in the *Jack Eckerd Corporation* litigation (E.D.N.Y. 1986), and Judge Charles P. Sifton in both *Golden v. Shulman,* [1988 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 94,060 (E.D.N.Y. Sept. 30, 1988) and *Cagan v. Anchor Savings Bank, FSB*, [1990 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 95,324 (E.D.N.Y. May 22, 1990) also commented favorably upon the Zwerling Firm.

One of the partners of the Zwerling Firm was appointed by former Chief Judge Browning as Proof-of-Claim Counsel in connection with the loss analysis in *In re Washington Public Power Supply System Securities Litigation*, MDL No. 551 (D. Ariz.). In that matter, former United States District Judge Nicholas J. Bua, as Special Master appointed by the Court, in commenting on one of the partners in the Zwerling Firm, said: "I...find that the services of Mr. Schachter were efficiently and reasonably performed by him personally....Mr. Schachter specifically was appointed by the District Court to serve as Claims Counsel....It was not unreasonable for a senior partner like Mr. Schachter, with his vast knowledge of the case, to directly oversee the claims administration process rather than relying upon less knowledgeable junior attorneys. The class received its money's worth for Mr. Schachter's services...."

## Members of the Firm

### Jeffrey C. Zwerling

Jeffrey C. Zwerling was admitted to the bar of the State of New York in 1972 and to the bar of the State of Arizona in 1981; he is admitted to the following federal courts: the United States District Court for the Southern and Eastern Districts of New York, and the United States Court of Appeals for the Second Circuit. He received a Bachelor of Science degree with Honors from Lehigh University in 1968 and a Juris Doctor degree from Columbia University School of Law in 1971. He was Articles Editor of the Columbia Journal of Transnational Law. His professional affiliations include: New York State Bar Association, Association of the Bar of the City of New York, Nassau County Bar Association, and State Bar of Arizona.

On July 1, 1977, Mr. Zwerling founded the Law Offices of Jeffrey C. Zwerling; on January 1, 1985 that firm became Zwerling, Schachter & Zwerling, LLP. Prior to 1977, Mr. Zwerling was associated with the firms of Gasperini, Koch & Savage; Koch & Gluck; and Murray A. Gordon, P.C., with emphasis on civil litigation, real estate, general corporate and commercial matters. Mr. Zwerling has represented and advised the Uniformed Fire Officers Association in regard to its pension funds and annuity plans.

Mr. Zwerling has extensive experience in all phases of complex litigation, including jury

and non-jury trials, mediation, expert discovery, and settlement negotiations. He has negotiated several innovative corporate governance and structural changes in the resolution of shareholders' complaints. He is highly knowledgeable about economic and finance issues. Mr. Zwerling co-authored "The Dell Case: The Doors To The Courts Close Further For Investors" in the Aspatore Special Report (Thomson Reuters/Aspatore 2008).

## Robert S. Schachter

Robert S. Schachter was admitted to the bar of the State of New York in 1972; he is admitted to the following federal courts: the United States District Court for the Southern and Eastern Districts of New York and the Central District of California, the United States Court of Appeals for the Second, Fifth and Ninth Circuits, and the Supreme Court of the United States. He received a Bachelor of Arts degree from Syracuse University in 1968 and a Juris Doctor degree from Brooklyn Law School in 1971. His professional affiliations include: The American Bar Association (Lecturer, Panels in Class Actions, 1980 and 1998) and the Second Circuit Federal Bar Council. Mr. Schachter was a panelist at the Public Funds Summit (2002-2004), Investment Education Symposium sponsored by the Council of Louisiana Trustees (2002), and Fire & Police Pension Summit (2002). Mr. Schachter is a panelist for a series of seminars moderated by Professor Francis McGovern of the Duke University Law School concerning "Distribution of Securities Litigation Settlements—Improving the Process." These seminars are aimed to develop solutions to improve the efficiency and effectiveness of securities litigation settlement distributions. Participants in the conference include attorneys, judges, regulators, institutional filers and claims administrators. The purpose of the seminars is to prepare a report for presentation to the Federal Judicial Conference.

Prior to the formation of the Zwerling Firm, Mr. Schachter was associated since 1973 with the firm now known as Labaton Sucharow LLP. Mr. Schachter became a partner of that firm on January 1, 1978, concentrating in complex multi-district litigation.

Mr. Schachter has extensive experience in all phases of complex litigation. He has been involved in many settlement negotiations, as well as the drafting of complex settlement documents, and has particular expertise in the administration of class settlements. Mr. Schachter has been instrumental in crafting novel settlements which have been applauded by courts in securities, as well as antitrust matters, including corporate governance issues.

## Robin F. Zwerling

Robin F. Zwerling was admitted to the bar of the State of New York in 1976; she is admitted to the following federal courts: the United States District Court for the Southern and Eastern Districts of New York, the United States Court of Appeals for the Second, Fourth, Sixth, Seventh and Ninth Circuits, and the Supreme Court of the United States. She received a Bachelor of Arts degree *cum laude* from Jackson College of Tufts University in 1972, and a Juris Doctor degree from Georgetown University Law Center in 1975. Her memberships include: the

American Bar Association, the National Institute of Trial Advocacy, the National Association of Securities and Commercial Law Attorneys, and the Second Circuit Federal Bar Council.  As a member of the Program Committee of the Second Circuit Federal Bar Council, Ms. Zwerling plans and coordinates Continuing Legal Education programs.

Ms. Zwerling has concentrated in litigation since her graduation from law school.  At that time, she became associated with Martin, Clearwater & Bell, becoming a partner in 1982 and remained there until the formation of the Zwerling Firm in 1985.  Ms. Zwerling has extensive experience in all phases of litigation, including trials and appellate arguments.  She has tried cases in both state and federal courts.  Ms. Zwerling successfully completed the National Institute of Trial Advocacy's Advanced Trial Practice course after having tried a number of cases.

### Susan Salvetti

Susan Salvetti was admitted to the bar of the State of New York in 1980; she is admitted to the following federal courts: the United States District Court for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Second and Sixth Circuits. She received a Bachelor of Arts degree *summa cum laude* from Thomas More College of Fordham University in 1976 and a Juris Doctor degree from Fordham University School of Law in 1979. Her memberships include: the American Bar Association, the Second Circuit Federal Bar Council, Who's Who in American Women, and Phi Beta Kappa. Ms. Salvetti authored the published *Report on Class Certification for Particular Issues Pursuant to Federal Rules of Civil Procedure 23(C)(4)(A)*, 12 NYLitigator 63 (2007).

Ms. Salvetti has concentrated in litigation throughout her career, becoming a partner of the Zwerling Firm on January 1, 1992.  Prior to her association with the firm in 1985, she was associated with Martin, Clearwater & Bell.  Prior to that time, Ms. Salvetti was associated with Newman, Tannenbaum, Helpern & Hirschtritt, a general practice firm.

Ms. Salvetti has extensive experience in all phases of complex litigation, including as trial counsel; she has taken and defended numerous depositions, argued motions before trial and appellate courts, and negotiated complicated settlements in both securities and consumer matters.

### Of Counsel

### Fred T. Isquith, Jr.

Fred T. Isquith, Jr. was admitted to the bar of the State of New York in 2010; he is also admitted to the following federal courts: The United States District Court for the Southern and Eastern Districts of New York. He received a Bachelor of Science degree from Cornell University in 2004, and a Juris Doctor degree from Syracuse University College of Law in 2009, where he served as an editor on the Journal of International Law and Commerce and as an executive board member for the Moot Court Honors Society. Mr. Isquith also has a Master's degree in Public Administration from the Syracuse University Maxwell School of Citizenship and Public Affairs in 2009.

10

Mr. Isquith has handled all phases of class action litigation with a concentration in antitrust, commodities, market manipulation, and consumer class actions. He has served on the New York County Lawyers' Association's Federal Courts Committee and currently serves on New York City Bar Association's Antitrust and Trade Regulation Committee. He has published articles in the National Association of Shareholder and Consumer Attorneys ("NASCAT") weekly newsletter regarding some of his notable cases. In 2018 – 2020, Mr. Isquith was named one of Super Lawyers' Rising Stars in the Antitrust field.

## Fred T. Isquith, Sr.

Fred Taylor Isquith, Sr. is Of Counsel – National Litigation to Zwerling, Schachter & Zwerling.  He graduated from Columbia University Law School in 1971. Since then, Mr. Isquith has concentrated in antitrust and securities litigation, often as lead counsel in large, complex, class actions across the country.  Clients have included businesses and investors with claims for wrongdoing against the largest corporations in America.

Mr. Isquith has extensive experience in complex market and financial areas representing institutional investors, such as public and labor pension funds, labor health and welfare benefit funds, and private institutional investors. He has recovered over $7 billion. Prior to Zwerling, Schachter & Zwerling, Mr. Isquith was Chair of the Antitrust Department of Wolf Haldenstein. There, he was lead counsel in, among others, the *Package Seafood Antitrust Litigation*, (S.D. Cal.), the *Keurig Coffee Antitrust Litigation* (S.D.N.Y.), *Salmon Antitrust* (S.D. Fla.) and *Viega Plumbing Antitrust* (M.D. Pa).

Mr. Isquith is currently Chair of the Antitrust Committee of the New York City Bar Association.  He was the President of the National Association of Securities and Commercial Law Attorneys. He has lectured before bar associations and at law schools, has authored more than 50 published articles and 1000 columns and as recently as 2019 participated in a CLE program for the ABA.  He is the author of a chapter in a Bar Association book on Federal Civil Practice and is often cited by legal industry media and the general press regarding complex litigation. Other activities include the New York State Bar Association President's Committee on Access to Justice and its Committee on Evidence. He is also a Fellow of the American Bar Foundation.

Mr. Isquith was co-lead in *Panzier v. Wolf*, which established the fraud on the market theory in the Second Circuit, later affirmed by the United States Supreme Court.

*In the Genetically Modified Rice Litigation,* Mr. Isquith represented US rice farmers in a landmark action against Bayer A.G., achieving a recovery of $750 million.

Courts have often commented favorably about Mr. Isquith where he was in a leadership position. For example:

*K.J. Egleston, L.P. v. Heartland Industrial Partners*, Judge Rosen stated in June 2010, of the "outstanding job of representing clients" and further commented that "the conduct of all counsel in this case and the result they have achieved for all of the parties confirms that they deserve the national recognition they enjoy."

*Parker Friedland v. Iridium World Communicans Led*, Judge Laughrey said in said (October 2008), "I really appreciate the quality of work that we had in our chambers as a result of this case."

*In re: Comdisco Sec Litigation* (July 2005), Judge Shadur commented upon the "kind of professionalism that the critics of class actions…are never willing to recognize. I really cannot speak too highly of the services rendered by class counsel in an extraordinarily difficult situation."

*In re Dynamic Random Access Memory Antitrust Litigation*, Judge Hamilton (August 2007) said: "…the results are exceptional…. The percentages as you have outlined them, do put this [case] in one of the upper categories of results of this kind of [antitrust class action]. I am aware of the complexity…. You did an exceptionally good job at organizing and managing the case, assisting me in management of the case…."

Mr. Isquith as among the nation's top securities class action attorneys, as recognized in *Venture* magazine. Mr. Isquith has been elected as among the top 5% of attorneys in the New York City area chosen as a "Super Lawyer" since 2006; *Avenue Magazine* has listed him among the legal elite; and he is listed in Martindale Hubbell as a "Preeminent Lawyer", as well as in Who's Who in America.


## Dan Drachler

Dan Drachler was admitted to the bar of the State of New York in 1988; he is also admitted to the bar of the States of Washington, and New Jersey; he is admitted to the following federal courts:  the United States District Court for the Southern and Eastern Districts of New York, the United States District Court for the Western and Eastern Districts of Washington, the United States Court of Federal Claims, and the United States Court of Appeals for the Second, Ninth and Federal Circuits.  Mr. Drachler received a Bachelor of Arts degree *cum laude* from the University of South Carolina in 1980, and his Juris Doctor degree *cum laude* from New York Law School in 1987.  At New York Law School, Mr. Drachler was a member of the law review and was a John Ben Snow Merit Scholar.  His professional affiliations include:  the Washington State Bar Association, the King County Bar Association, and the American Antitrust Institute.

Prior to joining the Zwerling Firm, Mr. Drachler served as Chief Deputy Attorney General for the State of New York.  In that position, all litigation and investigations were subject to Mr. Drachler's review, including those in the Antitrust and Consumer Protection Bureaus.  Mr. Drachler also regularly counseled state agencies and the Governor's office regarding a variety of legal and non-legal matters. From 1987 to 1993, Mr. Drachler was an associate and then partner of Koppell, Drachler & Lipofsky.  At that firm, he concentrated in general civil litigation, real estate, and trusts and estates.

Mr. Drachler was an Adjunct Professor at New York Law School from 1992-97.  He taught "Negotiation, Counseling and Interviewing," a course designed to develop skills in counseling clients and conducting negotiations in simple and complex matters.  He was awarded Outstanding

Antitrust Litigation Achievement in Private Law Practice by the American Antitrust Institute in 2017 and has been appointed to its Advisory Board.


**Joseph Lipofsky**

Joseph Lipofsky was admitted to the bar of the State of New Jersey in 1972, and is also admitted to the bar of the States of New York, Missouri and Michigan; he is admitted to the following federal courts: the United States District Court for the Southern and Eastern Districts of New York, the District of New Jersey, the Eastern District of Missouri, the Eastern District of Michigan, and the Supreme Court of the United States. He received a Bachelor of Science degree from Rider College in 1969, and a Juris Doctor degree *cum laude* from Seton Hall University School of Law in 1972. His professional affiliations include: the American Bar Association; the New York State Bar Association, where he serves on the Executive Committee of the Antitrust Section; the National Lawyers Guild; and the National Association of Consumer Advocates. He also serves as a Board Member for Brooklyn Legal Services Corporation A; and for the Sugar Law Center for Economic and Social Justice.

Prior to joining the Zwerling Firm, Mr. Lipofsky served as Deputy Counsel to the Attorney General of New York. In that capacity, he regularly counseled state agencies and the Governor's office regarding a variety of legal and non-legal matters. From 1991 to 1993, Mr. Lipofsky was counsel to the firm of Koppell & Drachler and then partner of Koppell, Drachler & Lipofsky. Prior to 1991, he served as an attorney and Executive Director with legal service programs in New Jersey, Missouri and Michigan, as well as with various labor unions including their ERISA funds.

Mr. Lipofsky is located in the Zwerling Firm's New York office.


**Senior Counsel**

**Hillary Sobel**

Hillary Sobel was admitted to the bar of the State of New York in 1989; she is also admitted to the following federal courts: the United States District Court for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Fourth and Ninth Circuits. She received a Bachelor of Arts Degree from Barnard College of Columbia University in 1985, and a Juris Doctor degree from the Benjamin N. Cardozo School of Law of Yeshiva University in 1988, where she was Editor of the ILSA International Law Journal. Her memberships include: the American Bar Association.

Ms. Sobel has been involved in complex discovery, including responding to and drafting discovery requests, questioning fact and expert witnesses, as well as arguments before the court. She has also participated at trial, including witness questioning, as well as trial preparation.

**Andrew W. Robertson**

Andrew W. Robertson was admitted to the bar of the State of New York in 2005; he also is admitted to the United States District Courts for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Sixth Circuit. He received a Bachelor of Arts degree *magna cum laude* from Vanderbilt University in 2000, and a Juris Doctor degree from New York University School of Law, where he was Managing Editor of the N.Y.U. Journal of International Law and Politics.

Mr. Robertson has handled all phases of class action and derivative litigation, as well as arbitration, including taking and defending depositions, representing clients in jury trials and arbitration hearings, and arguing at the trial and appellate levels. He has represented clients in cases involving failure to disclose material information, breach of fiduciary duty, excessive mutual fund fees, mismanagement of client accounts, incorrect valuation of securities, and unsuitable investment recommendations.

Mr. Robertson has published "Claims Involving Investment Companies," Litigating Securities Class Actions (LexisNexis 2011); "The Aftermath of the Mutual Fund Crisis," 38 Review of Securities & Commodities Regulation 21 (Dec. 7, 2005); and "Be Careful What You Waive," San Francisco Daily Journal (Apr. 28, 2004). Prior to joining the Zwerling Firm, Mr. Robertson was associated with Milbank, Tweed, Hadley & McCloy LLP.

**Sona R. Shah**

Sona R. Shah was admitted to the bar of the State of New Jersey in 1997, and to the bar of the State of New York in 1998; she is also admitted to the following federal courts: the United States District Court for the Southern and Eastern Districts of New York. She received a Bachelor of Arts degree from New York University in 1994, and a Juris Doctor degree from Fordham University School of Law in 1997. Her professional affiliations include: the New York State Bar Association.

Prior to her association with Zwerling Schachter, Ms. Shah was associated with the Center for Constitutional Rights. She was awarded Outstanding Antitrust Litigation Achievement by a Young Lawyer by the American Antitrust Institute.

## Associates of the Firm

**Justin M. Tarshis**

Justin M. Tarshis was admitted to the bar of the State of New York in 2003; he is also admitted to the United States District Court for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Second Circuit. He received a Bachelor of Science degree from the University of Wisconsin in 1999, and a Juris Doctor degree *cum laude* from Brooklyn Law School in 2002. While in law school, Mr. Tarshis was the recipient of the Samuel

L. Sporn Academic Achievement Scholarship and the CALI Excellence for the Future Award in Civil Practice. In addition, Mr. Tarshis served as an intern to the Honorable Shira A. Scheindlin of the Southern District of New York, as well as an intern in the New York State Attorney General's Office.

**Ana Cabassa**

Ana Maria Cabassa was admitted to the bar of the State of New York in 2001 and to the bar of the District of Columbia in 2001; she is admitted to the following federal courts: the United States District Court for the District of Columbia, and the Tax Court. She received a Bachelor of Science degree in Accounting and Finance, *magna cum laude*, from Georgetown University in 1995 and a Juris Doctor degree from New York University, School of Law in 2000. She received the Thomas Stoddard Award for editing contributions to the Journal of Legislation and Public Policy. Her professional affiliations include: American Bar Association and New York State Bar Association.

Ms. Cabassa is also a Certified Public Accountant.

Prior to her association with the Zwerling Firm, Ms. Cabassa was associated with Latham & Watkins, LLP, where she represented clients in antitrust, securities and complex commercial litigation matters.

Ms. Cabassa has extensive experience in all phases of complex litigation, including the investigation and analysis of potential matters and the development of electronic discovery requirements.

**Donatella P. Keohane**

Donatella P. Keohane was admitted to the bar of the State of New York in 2003; she is also admitted to the Brazilian bar (State of Rio de Janeiro chapter). She received a Bachelor of Laws degree from Universidade Federal do Rio de Janeiro in 1998, and a Master of Laws degree from Fordham University School of Law in 2002. Prior to her association with the Zwerling firm, Ms. Keohane had been associated with Clifford Chance US LLP.

Ms. Keohane is located in the Zwerling firm's New York office.

**Jessica C. Hermes**

Jessica C. Hermes was admitted to the bar of the State of New York in 2016. She received a Bachelor of Arts degree from Villanova University in 2012 and a Juris Doctor degree from New York University School of Law in 2015, where she was Notes Editor and Staff Editor for the *Journal of Legislation & Public Policy*.

15

# EXHIBIT 2



Cera LLP, formerly known as Gold Bennett Cera & Sidener LLP, is based in San Francisco, California, and has an office in Boston, Massachusetts.  The Firm is devoted to the aggressive pursuit of its clients' legal objectives.  The Firm's practice consists primarily of complex business litigation with an emphasis on securities litigation and antitrust litigation.  The Firm has had experience representing its clients in federal and state courts located across the nation.  The particular areas of the Firm's expertise include the following practice areas:

- Antitrust Litigation

- Securities Litigation

- Breach of Fiduciary Duties by Corporate Officers and Directors and General Partners

- Accountants' Liability

- Consumer Actions

- Whistleblower Litigation

- Corporate Litigation

The Firm's clientele is diverse.  In the course of its practice, the Firm has served as counsel to a variety of individuals and business organizations including entrepreneurs, individual and corporate investors, and small to large businesses.  The Firm represents its clients on either a contingent fee or a negotiated fee basis depending on the specific circumstances and needs of the client.

During the course of the Firm's work, its members have gained considerable knowledge of a number of varied industries.  They include but are not limited to the following: commodity chemicals; airlines; banking; retailing; insurance; commercial real estate; toys; communications; electronics; video games; medical imaging; savings and loan; finance leasing; capital equipment leasing; microcomputers; mainframe computers; independent power production; industrial chemicals; oil and gas; retail and institutional brokerage; municipal bonds; tax-advantaged investments; hedged fund investing and derivatives; food and beverage; food additives; animal feed; health care and e-commerce.

In addition, members of the Firm have acquired expertise in a number of different business disciplines including: corporate reorganizations; mergers and acquisitions; investment banking; economic modeling; accounting; auditing and damage analyses.

Resume of Cera LLP
Page Two of Four

For over forty (40) years, the Firm has played a leading role in some of the most significant cases in the country. These cases resulted in substantial recoveries, well in excess of $1 billion, for the Firm's clients and have established some of the basic principles for handling complex litigation.

## Antitrust Litigation

The Firm has significant antitrust litigation experience. The Court in the *Rubber Chemicals Antitrust Litigation* found that it was undisputed that the Firm has "extensive experience and expertise in antitrust and other class actions, as well as other complex litigation, and have successfully prosecuted such cases in courts across the country." *In re Rubber Chemicals Antitrust Litigation*, 232 F.R.D. 346 (N.D. Cal. 2005). The Firm has played or is playing a lead role in the following antitrust actions:

| | |
|---|---|
| *Titanium Dioxide Antitrust Litig.*<br>($163.5 million) (Baltimore) | *Cast Iron Soil Pipe Antitrust Litig.*<br>($30 million) (Chattanooga) |
| *Merced v. Barclays Antitrust Litig.*<br>($29 million) (New York) | *Methionine Antitrust Litig.*<br>($107 million) (San Francisco) |
| *EPDM Antitrust Litig.*<br>($99.3 million) (Connecticut) | *Rubber Chemicals Antitrust Litig.*<br>($320 million) (San Francisco) |
| *CR Antitrust Litig.*<br>($62 million) (Connecticut) | *Polyester Staple Antitrust Litig.*<br>($63.5 million) (Charlotte) |
| *Organic Peroxide Antitrust Litig.*<br>($37 million) (Washington, D.C.) | *High Pressure Laminates Antitrust Litig.*<br>($40.5 million) (New York) |
| *Plastic Additives Antitrust Litig.*<br>($46.8 million) (Philadelphia) | *NBR Antitrust Litig.*<br>($35 million) (Pittsburgh) |
| *MCAA Antitrust Litig.*<br>($15.6 million) (Washington D.C.) | *Carbon Black Antitrust Litig.*<br>($20 million) (Boston) |

The Firm is currently acting as a lead counsel for plaintiffs in a number of other pending securities and antitrust actions, and has or is also currently representing plaintiffs in other class actions: *Juul Antitrust Litigation* (San Francisco), *Caustic Soda Antitrust Litigation* (Buffalo, New York) *Bearings Antitrust Litigation* (Detroit), *Ceramic Substrates Antitrust Litigation* (Detroit), *Shock Absorbers Antitrust Litigation* (Detroit), *Zinc Antitrust Litigation* (New York), *Capacitors Antitrust Litigation* (San Francisco), *Packaged Seafood Products Antitrust Litigation* (San Diego), *Chickens Antitrust Litigation* (Chicago), *Bulk Bleach Antitrust Litigation* (Charleston, SC), *VeriFone Securities Litigation* (San Jose), *Yuhe International Securities Litigation* (Los Angeles),

Resume of Cera LLP
Page Three of Four

*Wonder Auto Technology Securities Litigation* (New York), *Sino Clean Energy Securities Litigation* (Los Angeles), *China Intelligent Securities Litigation* (Los Angeles), *Wire Harness Antitrust Litigation* (Detroit), *Foreign Exchange Benchmark Rates Antitrust Litigation* (New York), *Brent Crude Futures Antitrust Litigation* (New York), *Aluminum Warehousing Antitrust Litigation* (New York), *Gold Futures Antitrust Litigation* (New York), *Municipal Derivatives Antitrust Litigation* (New York), *Blood Plasma Antitrust Litigation* (Chicago), *Compressors Antitrust Litigation* (Detroit), *Railroad Freight Surcharge Antitrust Litigation* (Washington, DC), *Airfreight Shipping Surcharge Antitrust Litigation* (New York), *Sorbate Antitrust Litigation* (San Francisco), *Folding Carton Antitrust Litigation* (Chicago), *Corrugated Carton Antitrust Litigation* (Houston), *Sugar Antitrust Litigation* (San Francisco), *Beer Antitrust Litigation* (Honolulu), and the *Infant Baby Formula Antitrust Litigation* (Los Angeles).

## Securities Litigation

The Firm also has significant experience in successfully litigating securities litigation cases. Some of these cases in which the Firm has played a lead role include:

| | |
|---|---|
| *Tronox Securities Litig.*<br>($37 million) (New York) | *Pacific Lumber Sec. Litig.*<br>($140 million) (New York) |
| *Peregrine Systems, Inc. Sec. Litig.*<br>($117 million) (San Diego) | *Legato Systems Sec. Litig.*<br>($85 million) (San Jose) |
| *Hedged Investment Assoc. Sec. Litig.*<br>($50 million) (Denver) | *Nucorp Energy Sec. Litig.*<br>($54 million) (San Diego) |
| *Itel Corporation Sec. Litig.*<br>($40 million) (San Francisco) | *First Capital Holdings Sec. Litig.*<br>($47.5 million) (Los Angeles) |
| *Hallwood Realty Partners, L.P. Sec. Litig.*<br>($35.5 million) (San Francisco) | *Sonus Securities Litig.*<br>($40 million) (Boston) |
| *CBT Group PLC Sec. Litig.*<br>($32 million) (San Jose) | *American Energy Resources Sec. Litig.*<br>($33 million) (San Francisco) |
| *Rent-Way Sec. Litig.*<br>($30 million) (Erie, PA) | *Wickes Cos. Securities Litig.*<br>($32 million) (San Diego) |
| *Consolidated Capital Sec. Litig.*<br>($29.5 million) (San Francisco) | *Sun Microsystems Sec. Litig.*<br>($30 million) (San Jose) |
| *Diasonics Sec. Litig.*<br>($25 million) (San Jose) | *HPL Technologies, Inc. Sec. Litig.*<br>($25.5 million) (San Francisco) |
| *BearingPoint Securities Litig.*<br>($7.5 million) (Alexandria, VA) | *Textainer Equipment Partnership Litig.*<br>($10 million) (San Francisco) |

Resume of Cera LLP
Page Four of Four

## **Other Complex Business Litigation**

The Firm recently obtained a Ninth Circuit reversal of a decision in an ERISA action on behalf of an individual who alleged he was denied a retirement benefit now worth approximately Fifty Million Dollars.  *Sender v. Franklin Resources, Inc.*, 660 F.App'x 379 (9th Cir. 2015).  The Ninth Circuit oral argument may be viewed at http://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000007711

Sizeable recoveries have been made in complex business cases as well.  For example, the Firm recovered approximately three million dollars ($3,000,000) on behalf of two individuals in a business fraud case.  In a major case involving breaches of trust and fiduciary duty, the Firm's effort caused a capital restructuring of a sizeable financial institution, thereby creating a substantial benefit to the Firm's clients and the financial institution (by the elimination of "management" stock), as well as a cash recovery of over one million dollars ($1,000,000).

The Firm also represented management shareholders of a then private biotechnology company where it was successful in recovering $2 million in stock, reconstituting the board, and imposing voting restrictions on certain significant shares which were held by investors hostile to management.  The litigation was an important milestone in the Company's history and permitted the Company to complete a $76 million Initial Public Offering.

The Firm has also handled the defense of major litigation.  In one situation, the Firm orchestrated the successful defense of a multi-million dollar claim asserted against numerous sophisticated individuals and a related Chapter 11 bankruptcy proceeding.  In another defense matter, we represented a publicly traded company and were successful in settling the case whereby plaintiffs agreed to pay our client (the defendant) over $2 million.  In a bankruptcy case, the Firm represented a major equityholder in connection with a Plan of Reorganization.

Proud of its prior achievements, the Firm continues to excel in its representation of diverse clients in a wide variety of complex business litigation scenarios.  The Firm is willing to take on representation, where appropriate, on a contingent fee arrangement.  As demonstrated by the results previously achieved, the Firm possesses the experience, qualifications and resources necessary to provide superior representation to all of its clients.  Attached are profiles of the principal attorneys of the Firm.

## PRINCIPAL ATTORNEYS OF THE FIRM

### SOLOMON B. CERA

Mr. Cera joined the Firm as an associate in 1983, became a partner in 1994, and managing partner in 2009. Over the course of his more than thirty-five (35) year career at the Firm, Mr. Cera has played a role in virtually all of the Firm's major cases and has led the litigation of a wide variety of securities, antitrust, and consumer fraud class actions in federal and state courts throughout the country that have resulted in significant recoveries for the Firm's clients. In overseeing the Firm's nationwide practice, Mr. Cera brings to bear his vast experience in litigating cases in numerous diverse industries and disciplines. These include high tech, software, oil and gas, executive compensation, commodity chemicals, accounting, tax advantaged investments, environmental liabilities, ERISA, hedge funds, agriculture, insurance, and workers compensation, among others.

Among the more significant cases in which Mr. Cera has played a leading role include the *Titanium Dioxide Antitrust Litigation*, No. 10-318 RDB (D. Md.). In 2014, the proceeds from a recovery of $163.5 million in this antitrust price fixing class action were distributed to hundreds of small, medium, and large businesses throughout the nation. The case was developed by the Firm and litigated intensively for three years, leading to the substantial cash recovery.

In approving the settlements, United States District Judge Richard D. Bennett stated:

> And Mr. Cera has aptly noted the high quality with great pride of the plaintiffs' trial team. . . . [O]n more than one occasion, you may have noticed quite a few law clerks and interns, not just from here to my left, but also in the courtroom, who were watching the outstanding lawyering that went on here. And I would be remiss if I didn't really comment upon the extraordinarily high level of professionalism that I found attended to these cases, that you make us all proud to be part of this profession in terms of quality of your representation. I mean that sincerely as to all of you. With all the level of cynicism at times as to our profession, of the frustration and sitting in rooms, and particularly younger lawyers here going through billions of documents and document review and discovery, there's still a place here for outstanding advocacy. . . . [I]t was a pleasure to preside over this case and see the quality of the lawyering I saw on both sides of the aisle. So you present the best of our profession.

Mr. Cera's excellent advocacy has been recognized by numerous courts. For example, in *Roberts v. Heim*, No. 84-8069 TEH (N.D. Cal.), Mr. Cera represented a class of approximately 3,000 investors who lost money in an oil and gas limited partnership investment. The Firm recovered $33 million in cash for the investors and obtained injunctions which barred collection from the limited partners on $500 million worth of promissory notes. In this same case, Mr. Cera obtained more than 10 judgments on behalf of his clients against various defendants for in excess

of $100 million each.  In commenting on the Firm's representation of its clients in the case, the Chief Judge of the United States District Court for the Northern District of California stated as follows:

> [T]his action has been extraordinarily complex, resulting in over 300 orders by this court, several of which have been published, and many of which addressed difficult issues of first impression, and were eventually published . . . [T]hroughout this action, class counsel has demonstrated superior legal abilities, and has submitted to the court briefs, memoranda and oral argument of the highest quality . . . [C]ounsel's efforts have conferred substantial benefits on the class.

*Roberts v. Heim*, Case No. C84-8069 TEH, 1991 WL 427888 at *6 (N.D. Cal. August 28, 1991).

In the *Peregrine Securities Litigation* No. C 02-870 (S.D. Cal.), Mr. Cera was instrumental in obtaining a recovery believed to be the largest cash payment from outside directors of a public company in class action securities litigation funded through personal assets and not insurance, payments of $55 million in cash out of a total settlement of $117 million.

In *Higley v. Donahue, et al.*, No. 93-CV-4288 (Denver District Court), Mr. Cera acted on behalf of the firm as co-lead counsel in an action in Colorado state court against several large, nationally known brokerage firms, based on their involvement in a hedged options trading scheme. A settlement with a value of $50 million was reached for the benefit of a class of approximately 800 investors in the space of 15 months.

In *Joseph v. Wiles*, 223 F.3d 1155 (10th Cir. 2000), Mr. Cera obtained reinstatement of a case against officers and directors, underwriters and accountants in a class action securities fraud case involving a disk drive manufacturer.  The decision is important insofar as it approves the filing of securities law claims by purchasers in the aftermarket of an initial offering of securities, and further analyzes the statute of limitations in a way which benefits investors.

Throughout his career, Mr. Cera has served as a court-appointed lead counsel, co-lead counsel, and counsel for plaintiffs in a multitude of actions, applying his wealth of experience in complex civil litigation to deliver outstanding results for the Firm's clients and the classes of individuals and businesses who have incurred damages and which the Firm has represented. Mr. Cera is fiercely dedicated to achieving meaningful results for the Firm's clients, and is prepared to litigate cases aggressively from the initial investigation stage through trial. Mr. Cera strives at all times to present the highest quality written and oral advocacy on behalf of the Firm's clients.

Mr. Cera graduated from Pomona College, Claremont, California, and received his J.D. from the University of San Francisco School of Law where he was the recipient of the American Jurisprudence Award in corporations law for attaining the highest grade in the course, and was winner of the best oral advocate award in the law school's Moot Court competition. He is admitted to practice before the Supreme Court of the United States as well as a multitude of federal courts throughout the country, and is a member of the State Bar of California and the American Bar Association, including its Litigation Section. Mr. Cera has been designated with the highest

possible "AV" rating by Martindale-Hubbell, and has repeatedly been selected as a Northern California Super Lawyer.

### C. ANDREW DIRKSEN

Mr. Dirksen, who joined the Firm in April 2000, now manages the Firm's Boston office, which opened in 2014. He devotes his practice to litigation representing clients in complex multidistrict antitrust class action matters. He has assisted in recovering more than one billion dollars for clients and other class members, and has served as Co-Lead Counsel for the class plaintiffs on numerous cases, including:

**In re Titanium Dioxide Antitrust Litigation (D.Md.):** After more than a year of investigation by our firm, our client Haley Paint Company initiated this price-fixing litigation in February 2010 in the United States District Court for the District of Maryland before Judge Richard D. Bennett. Settlements of $163.5 million were obtained without the benefit of any governmental or regulatory investigation or proceeding. The last defendant settled on the Friday before trial was set to begin on Monday, September 9, 2013.

**In re Rubber Chemicals Antitrust Litigation (N.D.Cal.):** We recovered $320 million for our clients and class members (purchasers of several types of rubber chemical products directly from defendants) in this price-fixing case that was prompted by a Department of Justice grand jury investigation.

**In re EPDM Antitrust Litigation (D.Conn.):** After years of hard-fought litigation, $99 million was recovered for direct purchasers of EPDM, a synthetic rubber.

**In re Plastics Additives Antitrust Litigation (E.D.Pa.):** Recoveries of nearly $47 million were obtained for direct purchasers of organotin heat stabilizers, MBS and acrylic impact modifiers, acrylic processing aids, and epoxidized soybean oil.

**In re Methionine Antitrust Litigation (N.D.Cal.):** Settlements with defendants totaling $107 million were achieved for the benefit of direct purchasers of methionine, an animal feed additive.

Mr. Dirksen has represented plaintiffs in dozens of other antitrust actions in a variety of industries. His other matters include: *In re Capacitors Antitrust Litigation, In re Packaged Seafood Products Antitrust Litigation, In re Cast Iron Soil Pipe and Fittings Antitrust Litigation, In re Foreign Exchange Benchmark Rates Antitrust Litigation, In re Urethane Antitrust Litigation (Polyether Polyols Cases), and In re Vehicle Carrier Services Antitrust Litigation.* Mr. Dirksen also has defended a company targeted by the California Attorney General's office in a civil antitrust investigation, and worked extensively on several of the firm's securities fraud matters, including *In re CBT Securities Litigation.*

Prior to attending law school, Mr. Dirksen worked in Washington, D.C., at a large firm as a paralegal on a variety of complex antitrust matters. He assisted in the defense of corporate clients

involved in individual and class action antitrust litigation, as well as federal Department of Justice and state attorneys general grand jury investigations.

Mr. Dirksen is admitted to practice in all California and Massachusetts state courts; in the United States District Court for the Northern District of California; in the United States District Court for the District of Massachusetts; and in the Ninth Circuit Court of Appeals. Mr. Dirksen received his B.A. *magna cum laude* from Boston College and his J.D. from the University of San Francisco School of Law. During law school, he served as the Article Editor of USF's *Maritime Law Journal.* In law school, Mr. Dirksen interned in the Special Prosecution Unit of the San Francisco District Attorney's Office. After law school, Mr. Dirksen performed work for clients engaged in products liability, patent, and maritime litigation in both state and federal courts, until he joined the firm in 2000.

Mr. Dirksen is a member of the State Bar of California, the State Bar of Massachusetts, and the American Bar Association. He also serves as Vice President and Associate General Counsel to The Mockingbird Foundation, an all-volunteer-run 501(c)(3) charitable organization that has raised and distributed over $1,000,000 to music education programs for children nationwide since its founding in 1997.

## THOMAS C. BRIGHT

Mr. Bright joined the Firm in 2002. Mr. Bright concentrates his practice on antitrust class action litigation involving price fixing and securities class action litigation involving fraud. He is also one of the Partners who oversees the firm's new matter department.

Mr. Bright handles a range of complex securities fraud cases where the firm is appointed Lead or Co-Lead Counsel, including:

**In re VeriFone Systems Securities Litigation (N.D. Cal.):** The firm is representing an institutional investor in litigation alleging the Defendants made false and misleading statements regarding the company's growth and revenues.

**In re China Intelligent Lighting and Electronics, Inc. (C.D. Cal.)**: The firm is representing an institutional investor in litigation alleging the Offering Documents of the Company contained false and misleading statements.

**In re Tronox, Inc., Securities Litigation (S.D. N.Y.):** Recovered $37 million on behalf of investors in a suit against a Company which had been spun-off from a parent corporation. The suit alleged that the Company, its parent corporation, parent's officers and general counsel, and parent's successor corporation were liable for false and misleading statements made about the spun-off company's environmental remediation liabilities and its reserves during and following the company's initial public offering.

**Gary Redwen v. Sino Clean Energy, Inc. (C.D. Cal.):** Recovered $2 million for investors in a lawsuit alleging Defendants overstated their revenues, owned "ghost factories," used strictly for show, which had no operations, and identified the existence of customers which were not doing any business with the Company.

**In re Wonder Auto Technologies, Inc. Securities Litigation. (S.D.N.Y.):** Recovered $3 million on behalf of investors in a case alleging Defendants made certain materially false and misleading statements and omissions about WATG's financial results, internal controls, and inventory accounting and, as a result, the prices of WATG securities were inflated.

Mr. Bright also played a key role in the following securities cases: *In re Aspeon, Inc. Securities Litigation*, No. 00-cv-995 (C.D. Cal.); *Jerome Feitelberg v. Credit Suisse First Boston LLC, et al*., No. 03-cv-817914 (Superior Court of Santa Clara); *In re HR Block Securities Litigation*, No. 06-cv-00236 (W.D. Missouri); *In re Peregrine Systems, Inc. Securities Litigation*, No. 02-cv-00870 (S.D. Cal.); and *In re Rent-Way Securities Litigation*, No. 00-cv-323 (W.D. Pa.).

Mr. Bright represents class representatives in antitrust cases, including:

**In re Air Cargo Shipping Services Antitrust Litigation (E.D.N.Y.):** The firm represents a freight forwarder serving as a class representative in a multi-district antitrust litigation stemming from an investigation by governmental authorities of worldwide price-fixing activity in the air cargo industry. At this time, recoveries in this case exceed $900 million.

**In re Processed Egg Products Antitrust Litigation, No. 08-md-02002 (E.D. Pa.):** The firm represents two direct purchaser class representatives in antitrust litigation alleging that producers fixed the price of whole eggs and egg products in the United States by controlling the aggregate supply of domestic eggs. To date, the recoveries in this case exceed $60 million.

**In re Bearings (E.D. Mich.):** The firm represents two direct purchasers of ball bearings serving as class representatives in a multi-district antitrust litigation alleging worldwide price-fixing activity in the automotive and industrial ball bearing industry.

**In re Polyester Staple Antitrust Litigation, No. 03-cv-1516 (W.D. North Carolina)**: Recovered $63.5 million on behalf of a class, which represented a little more than 100% of the damages. The firm was appointed Co-Lead Counsel in this multi-district antitrust litigation alleging a national price-fixing conspiracy in the textile industry. Mr. Bright played a lead role in preparing the case for trial and it settled successfully just before the trail began.

**In re Refrigerant Compressors Antitrust Litigation (E.D. Mich.):** Recovered $48.4 million in a multi-district antitrust litigation alleging a national price-fixing conspiracy in the refrigerant compressor industry.

**In re Parcel Tanker Shipping Svc Antitrust Litigation (D. Conn.):** The firm was appointed Co-Lead Counsel in a multi-district antitrust litigation alleging worldwide price-fixing activity in the parcel tanker industry. The case went to the Supreme Court of the United States where Mr. Bright was on the brief.

Before joining the firm in 2002, Mr. Bright worked for an antitrust, intellectual property and business litigation firm in San Francisco whose clients were small to medium-sized businesses including publicly listed companies.

Prior to his relocation to San Francisco, Mr. Bright engaged in complex business and insurance litigation for four years in the Southern California office of a national firm based in New York. In addition to litigating primarily commercial liability coverage disputes, tort, employment and business matters, Mr. Bright was an entertainment lawyer and assumed various roles in attorney fee matters, ranging from performing internal audits to serving as counsel in litigated matters.

After law school, he worked in the motor sports division of International Management Group, the country's largest sports agency.

Mr. Bright graduated from Vanderbilt University in Nashville, Tennessee with a Bachelor of Arts degree in History. He received his Juris Doctorate from the Pepperdine University School of Law in Malibu, California. During his final year of law school, he was an extern under Justice Mildred Lillie for the California Court of Appeals, Second Appellate District, Division Seven.

Mr. Bright is a member of the State Bar of California, the State Bar of New York and the District of Columbia Bar. Mr. Bright is also admitted to practice in the Southern District of California, Central District of California, Eastern District of California and Northern District of California.

## PAMELA A. MARKERT

Ms. Markert joined the Firm in 2006. Ms. Markert specializes in complex multidistrict antitrust class action and securities class action and litigation. She also has experience in business, consumer and general liability matters representing clients ranging from individuals, partnerships and closely-held corporations to multinational companies. Cases in which Ms. Markert has played a key role include:

**Merced v. Barclays Bank PLC (S.D.N.Y.)**:  Recovered $29 million for individuals and entities who held contracts for electricity which settled against daily index prices that were allegedly manipulated at four western electricity hubs.

**Grand Strand Water & Sewer Authority v. Oltrin Solutions LLC et al. (D.S.C.)**: Recovered $2.2 million for purchasers of sodium hypochlorite in concentrations of at least 10% arising from alleged conspiracy to allocate bulk bleach markets in North Carolina and South Carolina.

**In re Bearings (E.D. Mich.)**:  The firm represents two direct purchasers of ball bearings serving as class representatives in a multi-district antitrust litigation alleging worldwide price-fixing activity in the automotive and industrial ball bearing industry.

**Sonus Networks, Inc. Securities Litigation (D.Mass.)**:  Recovered $40 million for shareholders in securities fraud action arising from false statements and omissions allegedly contained in company's publicly issued financial statements.

**Gianzero v. Wal-Mart Stores, Inc. et.al. (D.Colo.)**:  Obtained $8 million settlement involving Wal-Mart Stores, Inc., Claims Management, Inc., Concentra Health Services, Inc., and American Home Assurance Co. Claims arose from alleged dictation of medical

care and treatment of Wal-Mart and Sam's Club employees who suffered workplace injuries and submitted workers' compensation claims in Colorado. Settlement also includes four-year injunction against Wal-Mart and CMI, and programmatic relief of four years duration as to Concentra.

**BearingPoint, Inc., Securities Litigation (E.D.Va.):**   Recovered $7.5 million for shareholders in a securities fraud action arising from false statements and omissions allegedly contained in company's publicly issued financial statements and after the subsequent bankruptcy and liquidation of the company.

**Feyko v. Yuhe International Inc., et al. (C.D.Cal.):**   Recovered $2.7 million for shareholders in a securities fraud action arising from false statements and omissions allegedly contained in company's publicly issued financial statements. Defendants included a company headquartered in the People's Republic of China and three of its officers; the company's independent auditor and three underwriters of its stock offering.

Ms. Markert has worked, or continues to work, on a number of antitrust and securities fraud cases including: *In re Juul Antitrust Litigation; In re Zinc Antitrust Litigation, In re Shock Absorbers Antitrust Litigation; In re Municipal Derivatives Antitrust Litigation; In re Processed Egg Products Antitrust Litigation; and In re Plasma-Derivative Protein Therapies Antitrust Litigation.*

Prior to her career in law, Ms. Markert worked at SunGard Financial Systems, Inc. providing technical direction to clients for a comprehensive investment accounting and portfolio management system for client portfolios totaling more than $27 billion. While at SunGard, she spent a year in Washington D.C. providing on-site client support for the capital markets division of the Resolution Trust Corporation.

Ms. Markert received a B.S. in Business Administration, Finance *cum laude* from California State University, Northridge, and a J.D. from Santa Clara University School of Law. She was an Articles Editor of the *Santa Clara Law Review* and her comment was published. Ms. Markert was honored as an Emery Academic Scholarship recipient at Santa Clara.

Ms. Markert is admitted to practice in the State of California, United States District Court for the Northern District of California, United States District Court for the Central District of California, United States District Court for the District of Colorado, United States District Court for the Eastern District of Michigan, Fourth Circuit Court of Appeals and the Ninth Circuit Court of Appeals.

Ms. Markert is a member of Queen's Bench Bar Association of the San Francisco Bay Area since 2000. She served as a Director during the years 2008, 2009, 2018 and 2019, and chaired the Bylaws Committee from 2008 through 2011.

**Selected Published Decisions**
**In Which The Firm**
**<u>Has Played A Significant Role</u>**

1.   *In re Auto Parts Antitrust Litig.*,
     952 F.3d 377 (6th Cir. 2020)

2.   *Merced Irrigation Dist. v. Barclays Bank PLC*,
     165 F. Supp. 3d 122 (S.D.N.Y. 2016)

3.   *Merced Irrigation Dist. v. Barclays Bank PLC*,
     220 F. Supp. 3d 412 (S.D.N.Y. 2016)

4.   *In re Activision Securities Litigation*,
     (CCH) Fed.Sec.L.Rep. ¶92,397 (N.D.Cal. 1985)

5.   *In re Activision Securities Litigation*,
     621 F.Supp. 415 (N.D.Cal. 1985)

6.   *In re Activision Securities Litigation*,
     723 F.Supp. 1373 (N.D.Cal. 1989)

7.   *Adobe Systems, Inc. Securities Litigation*,
     Fed.Sec.L.Rep. (CCH) ¶95,873 (N.D.Cal. 1991)

8.   *Adobe Systems, Inc. Securities Litigation*,
     Fed.Sec.L.Rep. (CCH) ¶96,051 (N.D.Cal. 1991)

9.   *In re ASK Securities Litigation*,
     Fed.Sec.L.Rep. (CCH) ¶96,991 (N.D.Cal. 1992)

10.  *Businessland Securities Litigation*,
     Fed.Sec.L.Rep. (CCH) ¶96,059 (N.D.Cal. 1991)

11.  *In re BearingPoint Securities Litigation*,
     232 F.R.D. 534 (E.D. Va. 2006)

12.  *In re Carbon Black Antitrust Litigation*,
     2005 W.L. 102966 (D. Mass. 2005)

13.  *Colaprico v. Sun Microsystems. Inc.,*
     Fed.Sec.L.Rep. (CCH) ¶95,874 (N.D.Cal. 1991)

14.  *Colaprico v. Sun Microsystems, Inc.,*
     Fed.Sec.L.Rep. (CCH) ¶96,198 (N.D.Cal. 1991)

15.    *In re Consolidated Air West Securities Litigation,*
       73 F.R.D. 12 (N.D.Cal. 1977)

16.    *In re Consolidated Capital Securities Litigation,*
       (CCH) Fed.Sec.Rptr. ¶95,238 (N.D.Cal. 1990)

17.    *In re Daisy Systems Securities Litigation,*
       Fed.Sec.L.Rep. (CCH) ¶96,190 (N.D.Cal. 1991)

18.    *Desmond v. BankAmerica Corp.,*
       Fed.Sec.L.Rep. (CCH) ¶90,995 (N.D.Cal. 2000)

19.    *In re Diasonics Securities Litigation,*
       599 F.Supp. 447 (N.D.Cal. 1984)

20.    *Digital Microwave Corp. Securities Litigation,*
       Fed.Sec.L.Rep. (CCH) ¶97,044 (N.D. Cal. 1992)

21.    *Duval v. Gleason,*
       Fed.Sec.L.Rep. (CCH) ¶96,153 (N.D.Cal. 1991)

22.    *Eminence Capital, LLC v. Aspeon, Inc.,*
       316 F.3d 1048 (9th Cir. 2003)

23.    *Eza Charitable Trust v. Rent-Way, Inc.,*
       136 F.Supp.2d 435 (W.D. Pa. 2001)

24.    *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.,*
       681 F. Supp. 2d 141 (D. Conn. 2009).

25.    *In re Fortune Systems Securities Litigation,*
       604 F.Supp. 150 (N.D.Cal. 1984)

26.    *Gaillard v. Natomas Co.,*
       173 Cal.App.3d 410, 219 Cal.Rptr. 74 (1985)

27.    *Gaillard v. Natomas,*
       208 Cal.App.3d 1250 (1989)

28.    *In re Gap Stores Securities Litigation,*
       79 F.R.D. 283 (N.D.Cal. 1978)

29.    *In re Granite Partners, L.P.,*
       194 BR 318 (Bankr. S.D.N.Y. 1996)

30.   *Green v. Occidental,*
      541 F.2d 1335 (9th Cir. 1976)

31.   *Haley Paint Co. v. E.I. DuPont de Nemours and Co.,*
      804 F. Supp. 2d 419 (D.Md. 2011)

32.   *In re: Zinc Antitrust Litig.,*
      No. 14-CV-3728 (KBF), 2016 WL 3167192 (S.D.N.Y. June 6, 2016*)*

33.   *Hudson v. Capital Management, Inc.,*
      565 F.Supp. 615 (N.D.Cal. 1983)

34.   *Hudson v. Capital Management Int'l., Inc.,*
      Fed.Sec.L.Rep. (CCH) ¶99,221 (N.D.Cal. 1982)

35.   *Hudson v. Capital Management Int'l., Inc.,*
      Fed.Sec.L.Rep. (CCH) ¶99,222 (N.D.Cal. 1982)

36.   *In re Itel Securities Litigation,*
      596 F.Supp. 226 (N.D.Cal. 1984)

37.   *In re Itel Securities Litigation,*
      89 F.R.D. 104 (N.D.Cal. 1981)

38.   *Joseph v. Wiles,*
      223 F.3d 1155 (10th Cir. 2000)

39.   *Lilley v. Charren,*
      936 F.Supp. 708 (N.D.Cal. 1996)

40.   *Marshall v. Holiday Magic,*
      550 F.2d 1173 (9th Cir. 1977)

41.   *Masstor Systems Corporation Securities Litigation,*
      Fed.Sec.L.Rep. (CCH) ¶92,719 (N.D.Cal. 1986)

42.   *Matrix Capital Management Fund, LP v. BearingPoint, Inc.*
      576 F.3d 172 (4th Cir. 2009)

43.   *McFarland v. Memorex Corp.,*
      581 F.Supp. 878 (N.D.Cal. 1984)

44.   *In re Memorex Securities Case,*
      61 F.R.D. 88 (N.D.Cal. 1973)

45.     *In re Nucorp Energy Securities Litigation,*
        Fed.Sec.L.Rep. (CCH) ¶99,158 (S.D.Cal. 1983)

46.     *In re Nucorp Energy Securities Litigation,*
        Fed.Sec.L.Rep. (CCH) ¶93,224 (S.D.Cal. 1987)

47.     *In re Plastic Additives Antitrust Litigation,*
        2004 WL 2743591 (E.D. Pa. 2004)

48.     *In re Pizza Time Theatre Securities Litigation,*
        Fed.Sec.L.Rep. (CCH) ¶92,53 7 (N.D.Cal. 1986)

49.     *In re Polyester Staple Antitrust Litig.,*
        No. 03-cv-1516, 2007 WL 2111380 (W.D. N.C. July 19, 2007)

50.     *Primavera Familienstiftung v. Askin,*
        173 F.R.D. 115 (S.D.N.Y. 1997)

51.     *In re Rent-Way Sec. Litig.,*
        209 F.Supp.2d 493 (W.D. Pa. 2002)

52.     *Roberts v. Heim,*
        Fed.Sec.L.Rep. (CCH) ¶94,393 (N.D.Cal. 1989)

53.     *Roberts v. Heim,*
        Fed.Sec.L.Rep. (CCH) ¶94,394 (N.D.Cal. 1989)

54.     *Roberts v. Heim,*
        Fed.Sec.L.Rep. (CCH) ¶95,430 (N.D.Cal. 1990)

55.     *Roberts v. Heim,*
        Fed.Sec.L.Rep. (CCH) ¶95,431 (N.D.Cal. 1990)

56.     *Roberts v. Heim,*
        Fed.Sec.L.Rep. (CCH) ¶96,094 (N.D. Cal. 1991)

57.     *Roberts v. Heim,*
        Fed.Sec.L.Rep. (CCH) ¶96,095 (N.D.Cal. 1991)

58.     *Roberts v. Heim,*
        Fed.Sec.L.Rep. (CCH) ¶96,221 (N.D.Cal. 1991)

59.     *Roberts v. Heim,*
        Case No. C 84-8069 TEH, 1991 WL 427888 (N.D.Cal. 1991)

60.    *Roberts v. Peat Marwick Mitchell & Co.,*
       857 F.2d 646 (9th Cir. 1988)

61.    *Rogers v. NationsCredit Financial Services Corp.,*
       Bankr. L. Rep. (CCH) ¶77,918 (N.D.Cal. 1999)

62.    *In re Rubber Chemicals Antitrust Litigation,*
       232 F.R.D. 346 (N.D. Cal. 2005)

63.    *In re Seagate Technology II Securities Litigation,*
       Fed.Sec.L.Rep. (CCH) ¶97,028 (N.D. Cal. 1992)

64.    *In re Technical Equities Federal Securities Litigation,*
       Fed.Sec.L.Rep. (CCH) ¶94,093 (N.D.Cal. 1988)

65.    *In re Titanium Dioxide Antitrust Litig.,*
       284 F.R.D. 328 (D.Md. 2012)

66.    *In re Titanium Dioxide Antitrust Litig.,*
       959 F. Supp. 2d 799 (D.Md. 2013)

67.    *In re Tronox, Inc. Sec. Litig.*
       262 F.R.D. 338 (S.D.N.Y. 2009)

68.    *In re Tronox, Inc. Securities Litigation,*
       2010 WL 2835545 (S.D.N.Y. June 28, 2010)

69.    *In re Tronox, Inc. Sec. Litig.*
       769 F. Supp. 2d 202 (S.D.N.Y. 2011)

70.    *In re Victor Technologies Securities Litigation,*
       102 F.R.D. 53 (N.D.Cal. 1984)

71.    *In re Victor Technologies Securities Litigation,*
       Fed.Sec.L.Rep. (CCH) ¶93,158 (N.D.Cal. 1987)

72.    *In re Worlds of Wonder Securities Litigation,*
       35 F.3d 1407 (9th Cir. 1994)

73.    *In re Worlds of Wonder Securities Litigation,*
       721 F.Supp. 1140 (N.D.Cal. 1989)

74.    *In re Worlds of Wonder Securities Litigation,*
       Fed.Sec.L.Rep. (CCH) ¶95,004 (N.D.Cal. 1990)

75.   *In re Worlds of Wonder Securities Litigation,*
      694 F.Supp. 1427 (N.D.Cal. 1988)

76.   *In re Worlds of Wonder Securities Litigation,*
      Fed.Sec.L.Rep. (CCH) ¶97,041 (N.D. Cal. 1992)

77.   *In re Worlds of Wonder Securities Litigation,*
      Fed.Sec.L.Rep. (CCH) ¶97,018 (N.D. Cal. 1992)

78.   *Zatkin v. Primuth,*
      551 F.Supp. 39 (S.D.Cal. 1982)

79.   *Zell v. Intercapital Income Securities, Inc.,*
      675 F.2d 1041 (9th Cir. 1982)

# EXHIBIT 3





## LOCKRIDGE GRINDAL NAUEN P.L.L.P.

Founded in 1978, Lockridge Grindal Nauen P.L.L.P. has extensive experience in antitrust, securities, environmental, employment, health care, commercial, intellectual property, and telecommunications law.  Our clients include agri-businesses, business enterprises, banks, local governments, trade and industry associations, real estate developers, telecommunications providers, health care professionals, and insurers.

Lockridge Grindal Nauen is one of the preeminent class action law firms in the country, has vast experience representing banks, financial institutions, shareholders, and other institutional investors in complex litigation, and has extensive experience litigating cases in Minnesota and across the country.  Lockridge Grindal Nauen P.L.L.P. attorneys are assisted by more than 20 paralegals and government relations specialists, and an extensive support staff.  The firm has offices in Minneapolis, Minnesota, Washington, D.C., and Fargo, North Dakota.

### ANTITRUST EXPERIENCE

LGN practices extensively in antitrust litigation.  The firm has litigated major cases and class actions involving price fixing, industry cartels, predatory pricing, price discrimination, and other antitrust and trade regulation issues in courts nationwide.  LGN attorneys have been recognized by courts, peer review publications, and other professional organizations as leading antitrust lawyers.  LGN's antitrust team is made up of 18 attorneys (8 partners and 10 associates and staff attorneys) who have significant experience in antitrust litigation.  Six partners heading LGN's antitrust team were named as Super Lawyers in 2019 and another three attorneys were named Rising Stars by Super Lawyers in 2019.

For 40 years, the firm has prosecuted antitrust cases on behalf of large and small businesses injured by price-fixing and other violations of the antitrust laws. In the last ten years alone, LGN and its co-counsel have recovered more than $2 billion for their clients and class members in antitrust cases involving national and global price-fixing schemes. LGN has served as Lead Counsel, Co-Lead Counsel, on the executive committee, or played a substantial role in many antitrust cases, including:

- *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, Case No. 2:16-MD-02724 (E.D. Penn.);

- *In re Broiler Chicken Antitrust Litigation*, Case No. 1:16-cv-08637-TMD-JTG (N.D. Ill.);

- *In re Packaged Seafood Products Antitrust Litigation*, No. 3:15-md-2670 (S.D. Cal.);

- *In re Freight Forwarders Antitrust Litigation (Precision Associates, Inc. v. Panalpina World Transport (Holding) Ltd., et al.)*, Case No. 1:08-cv-42-JG-VVP (E.D.N.Y.);

- *In re Wholesale Grocery Products Antitrust Litigation*, MDL No. 2090, Case No. 0:09-md-2090-ADM (D. Minn.);

- *Ploss et al. v. Kraft Foods Group, Inc. et al*, Case No. 1:15-cv-2937 (N.D. Ill.)

- *In re Surescripts Antitrust Litigation*, Case. No. 1:19-cv-06627-JJT (N.D. Ill.);

- *In re Pork Antitrust Litigation*, Case No. 18-cv-01776-JRT-HB (D. Minn)

- *Beef Antitrust Litigation* (*Kenneth Peterson, et al. v. JBS USA Food Co., et al.*), Case No. 19-cv-1129-JRT-HB (D. Minn.);

- *In re Peanut Farmers Antitrust Litigation*, Case No. 2:19-cv-463-RAJ-LRL (E.D. Va.);

- *Peter Staley, et al., v. Gilead Sciences, Inc. et al, No.: 3:19-cv-02573 (N.D. Cal.);*

- *Salmon Antitrust Litigation* (*Wood Mountain Fish LLC v. Mowi, ASA, et al.*), Case No. 19-cv-22128-RS (S.D. Fla.);

- *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation* , MDL No. 2542 (S.D.N.Y.);

- *In re Potash Antitrust litigation (II)*, Civil No. 1:08-cv-06910-RC (N.D. Ill.);

- *In re Flat Glass Antitrust Litigation (II)*, Civil No. 2:08-mc-180-DWA (W.D. Pa.); and

- *In re Urethane Antitrust Litigation*, Civil No. 2:04-md-01616-JWL-DJW (D. Kan.).

The firm has also played key roles in dozens of other antitrust class actions across the nation for 40 years. More information on these and other cases can be found here.



**LOCKRIDGE GRINDAL NAUEN**
P. L. L. P.
*Attorneys at Law*

# Kate M. Baxter-Kauf

**Kate M. Baxter-Kauf**
*Partner*
612-339-6900
kmbaxter-kauf@locklaw.com

## Practices
Antitrust Law
Data Breach Litigation
Business Litigation
Securities Litigation

## Education
University of Minnesota Law School, 2011
*magna cum laude*, Order of the Coif

## Bar Admissions
2011, Minnesota

## Court Admissions
Minnesota
U.S. District Court, District of Minnesota
US. Court of Appeals, Eighth Circuit

Kate Baxter-Kauf's practice is concentrated in the firm's antitrust law, data breach, business litigation, and securities litigation practice groups. She represents individuals, consumers, financial institutions and small businesses in litigation to protect their rights and, most often, the rights of the class members they seek to represent. Ms. Baxter-Kauf is a 2011 magna cum laude and Order of the Coif graduate of the University of Minnesota Law School. While in law school, she served as an Articles Editor for the Minnesota Law Review and interned with the Honorable Magistrate Judge Janie S. Mayeron of the United States District Court  for the District of Minnesota. She also spent her 2L summer in the Summer Law Intern Program at the Department of Justice Antitrust Division's Networks and Technology Enforcement Section.  Prior to joining the firm, Ms. Baxter-Kauf clerked for the Honorable Alan C. Page, the Honorable Helen M. Meyer, and the Honorable Christopher J. Dietzen, Associate Justices of the Minnesota Supreme Court.

Before law school, Ms. Baxter-Kauf was an award-winning coach of high school and college policy debate teams across the country and facilitated debate teams at Twin Cities urban middle and high schools. She coached the 2003 National Forensic League policy debate national champions.

## Representative Cases

- *In re Wholesale Grocery Products Antitrust Litigation,* MDL No. 2090 (D. Minn.)
- *In re EpiPen ERISA Litig.*, No. 17-cv-1884 (D. Minn.) (appointed liaison counsel)
- *Adkins v. Facebook, Inc.*, No. 18-cv-05982 (N.D. Cal.)
- *In re: Yahoo! Inc. Customer Data Security Breach Litig.,* MDL No. 2752 (N.D. Cal.)
- *First Choice Federal Credit Union et al v. The Wendy's Company et al,* No. 2:16-cv-00506 (W.D. Pa.)
- *In re: Target Corp. Customer Data Breach Security Litig.,* MDL No. 2522 (D. Minn.)
- *Ploss et al. v. Kraft Foods Group, Inc. et al,* Case No. 1:15-cv-2937 (N.D. Ill.)
- *Soderstrom et al v. MSP Crossroads Apartments LLC,* No. 16-cv-233 (D. Minn.)
- *In re Facebook, Inc., Customer Privacy User Profile Litig.,* No. 18-2843 (N.D. Cal)
- *Khoday v. Symantec Corp.,* No. 11-cv-180-JRT-TNL (D. Minn.)
- *In re Medtronic, Inc. Shareholder Litigation,* A15-0858 (Minn.)

## From the Courtroom to the Capitol®

**Professional Recognition**

• Named a Minnesota Rising Star from 2015-2019 by Super Lawyers.

• Named a Rising Star by Law360 in the area of Cybersecurity & Privacy in 2018.

• Named an 'Up & Coming Attorney' by Minnesota Lawyer for 2016.

• Named a 'North Star Lawyer' by the Minnesota State Bar Association for 2015-2020 in recognition of pro bono work.

**Community Involvement**

• Minnesota Urban Debate League Advisory Board (Board Member)

• NARAL Pro-Choice Minnesota Foundation Board of Directors (Chair)

• American Constitution Society

• Randolph Heights PTA (Past President)

• Macalester-Groveland Community Council (Elected At-Large Representative & Chair, Inclusivity Task Force)

• *In re Premera Blue Cross Customer Data Security Breach Litig.*, No. 15-2633 (D. Or.)

• *In re Regions Morgan Keegan Open-End Mutual Fund Litigation,* No. 2:07-cv-02784 (W.D. Tenn)

• *Turnidge et al v. TruGreen Limited Partnership,* No. 27-CV-14-14711 (Henn. Cty. Dist. Ct.)

• *UrbanWorks Architecture LLC v. Hunt Associates et al,* Nos. 27-CV-14-8415 & 27-CV-16-10241 (Henn. Cty. Dist. Ct.)

## Presentations

• Data Breach Class Actions, *Practical Perspectives*, HB Litigation Conferences (May 19, 2020)

• 2019 Federal Bar Association's Rising Professionals Symposium, *Now That We've Found Standing, What Are We Gonna Do With It? What's on the Horizon for Data Breach Litigation* (Featured Speaker), FBA Rising Professionals Symposium, Las Vegas (February 1, 2019)

• 2016 Cyber Security Summit, Interactive Table Top Exercise on Preparing for and Reacting to Data Breach incidents (Counsel Panelist), Cyber Security Summit Minneapolis (October 11, 2016)

• 2011 J.D. Class Commencement Address, University of Minnesota Law School (May 14, 2011)

## Publications

• *Modern Data Breach Litigation*, The Hennepin Lawyer (January/February 2020)

• Plaintiffs' Commentary on Appropriate Attorney-Client Privilege and Work-Product Protection, Sedona Conference Working Group 11 (June 25, 2019)

• *Great Bites in Brief,* The Hennepin Lawyer (May/June 2017)

• *The Value of a Clerkship*, Minn. Lawyer JDs Rising (May 2013).

• *Lean In: A Review for Young Lawyers,* Minn. Lawyer JDs Rising (April 2013).

• *Environmental Justice and the BP Deepwater Horizon Oil Spill*, 20 N.Y.U. Environmental L.J. 99 (2012) (with Hari M. Osofsky, Bradley Hammer, Ann Mailander, Brett Mares, Amy Pikovsky, Andrew Whitney, & Laura Wilson).

• *Breastfeeding in Custody Proceedings*, 15 Rich. J.L. Pub. Int. 627 (2012).

## Professional Associations

• Federal Bar Association

• Minnesota State Bar Association (Appellate Practice Section and Participant, Public Defender Appellate Pro Bono Project)

• The Sedona Conference (Member, Working Group 11 – Data Security and Privacy Liability)

• Minnesota Women Lawyers

• National Association of Shareholder and Consumer Attorneys

• Minnesota Supreme Court Historical Society

## From the Courtroom to the Capitol®



**LOCKRIDGE GRINDAL NAUEN** P.L.L.P.
*Attorneys at Law*

# Heidi M. Silton

Heidi Silton is a partner in the firm's antitrust department and practices primarily in complex business litigation. Heidi represents mainly small and mid-sized businesses in complex litigation involving other businesses and litigates in Minnesota and throughout the United States. She and the firm are regularly appointed lead and co-lead plaintiffs' class counsel by courts in nationwide antitrust litigation.

For the past several years, Heidi has been named one of Minnesota's top 50 Women Lawyers, and top 100 Lawyers, by a peer review list of leading Minnesota Lawyers. She currently serves as the President of The Committee to Support the Antitrust Laws (COSAL) and as an Advisory Member of the American Antitrust Institute (AAI), and co-chairs the American Antitrust Institute (AAI) Private Enforcement Awards Judging Committee. She also serves as an advisor to the American Bar Association's Global Private Litigation Committee. Heidi is a past chair and emeritus of the Minnesota State Bar Association Antitrust Law Section.

In addition to her litigation practice, Heidi serves as Chair of the firm's business development committee and is the current Hiring Partner. She is a member of the firm's Diversity and Inclusion Committee. Heidi believes in the value of mentorship, and works to mentor other women attorneys both inside and outside her firm.

An active volunteer in her community, Heidi serves on the board of Arete Academy and as a Reader/Writer coach for 8th graders in conjunction with Meet Me in the Middle Nonprofit. Heidi has also co-chaired galas to support the Sanneh Foundation, the American Diabetes Association and Second Harvest.

## Representative Cases

- *In re Generic Drug Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.);
- *In re Freight Forwarders Antitrust Litigation (Precision Associates, Inc., et al. v. Panalpina World Transport (Holding) Ltd., et al.)*, No. 1:08-cv-42 (E.D.N.Y.)*;*
- *In re Digital Music Antitrust Litigation,* No. 1:06-md-01780-LAP (S.D.N.Y.);
- *Peter Staley, et al., v. Gilead Sciences, Inc. et al*, No.: 3:19-cv-02573 (N.D. Cal.);
- *In re Packaged Seafood Products Antitrust Litigation*, No. 3:15-md-2670 (S.D. Cal.);

**Heidi M. Silton**
*Partner*
612-596-4092
hmsilton@locklaw.com

### Practices
Antitrust Law Business
Litigation

### Education
William Mitchell College of Law, 1995

### Bar Admissions
1995, Minnesota

### Court Admissions
Minnesota
U.S. District Court, District of Minnesota
U.S. Court of Appeals, Seventh Circuit
U.S. Court of Appeals, Eighth Circuit

## From the Courtroom to the Capitol®

## Professional Recognition

- Named a Minnesota Super Lawyer® from 2003-2020

- Named one of Minnesota's Top 50 Women Super Lawyers® in 2012, 2015-2020, and a Top 100 Minnesota Women Super Lawyer® for 2007-2009.

- Named a Top 100 Minnesota Super Lawyer® in 2017.

- Named one of the Minneapolis/St. Paul Business Journal's "40 Under 40" in 2005.

- President of the Committee to Support the Antitrust Laws (COSAL)

- Co-Vice Chair of the American Bar Association Membership, Diversity & Inclusion Committee

- Advisory Member of the American Bar Association Global Private Litigation Committee, Antitrust Section

- Member of the Twin Cities Diversity In Practice (TCDIP) Engagement & Innovation Committee

- Co-Chair of the American Antitrust Institute (AAI) Antitrust Enforcement Awards Judging Committee

- Advisory Board Member of the American Antitrust Institute (AAI)

## Community Involvement

- Arete Academy Board Member

- Reader/Writer Board Member and student Mentor

- Former Co-chair of the Sanneh Foundation Annual Gala

- Former Co-chair of the American Diabetes Association Gala

- Former Co-chair of the Twin Cities Second Harvest fundraising event, the annual "Butterball"

- *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation* , MDL No. 2542 (S.D.N.Y.);

- *In Re Potash Antitrust Litigation (II)*, Case No. 1:08-cv-6910 (N.D. Ill.);

- *In Re Urethane Antitrust Litigation*, Case No. 2:04-md-1616 (D. Kan.*);*

- *In Re MSG Antitrust Litigation*, Case No. 00-MDL-1328 (D. Minn.);

- *Johnson v. NPAS Solutions, LLC.*, Appellate Case No. 18-12344 (Eleventh Circuit Court of Appeals)

- *Salmon Antitrust Litigation (Wood Mountain Fish LLC v. Mowi, ASA, et al.),* Case No. 19-cv-22128-RS (S.D. Fla.)

## Presentations

- "Antitrust and Diversity in the Plaintiffs' Bar: A Conversation With Two Leading Private Enforcers", on the American Antitrust Institutes' (AAI) Ruled by Reason Podcast (Nov. 3, 2020);

- "Getting a Seat at the Table and What to do Once You've Obtained Your Seat: Tips for Women Lawyers" at the Practicing Law Institute's Women Lawyers in Leadership 2018 conference (January 26, 2018)"Fundamentals – Consumer Protection" at the 65th Antitrust Law Spring Meeting (March 29, 2017)

- "Hot Topics in Obtaining Discovery in Foreign Countries" at the University of Minnesota Law School as part of an Electronic Discovery Seminar (March 4, 2014)

- "Generational Issues in the Law" at the University of Minnesota Law School as part of the MSBA and Women in the Legal Profession seminar series (April 4, 2013)

- "Hot Topics in Antitrust Law" at a Minnesota Women Lawyers CLE (January 18, 2012)

- "Hypotheticals for Practical Application" at the MSBA CLE on Antitrust Law Issues in Intellectual Property Litigation and Licensing (May 25, 2011)

- 2002 speaker at an MSBA CLE on Fraud, Misrepresentation and Deceptive Trade Practices; frequent speaker at local civic organizations

## Publications

- *Animal Science: The US Supreme Court's Interpretation of Foreign Law Asserted by Foreign Governments in Competition Law Case*s, 12 Global Competition Litigation Review no. 2, at 45 (2019) (with Craig Davis and Kasia Kokoszka)

- *The Discovery Evolution of European Commission Competition Law Documents,* 9 Global Competition Litigation Review no. 3, at 96 (2016) (with Craig Davis)

- *Trending Methods of International Service of Process:@ elusivedefendant#youcanrunbutyoucan'thide#HagueConvention;* 31 No. 19 Westlaw Journal Computer and Internet 1; February 27, 2014

- *A Conspiracy of Note (and your withdrawal should be too);* American Bar Association Journal — Law News Now, March 2013

- *Social Media Discovery: The Ongoing Struggle to "Update Status";* Bench & Bar of Minnesota, December 2012 (with Courtney Blanchard); republished in The Computer & Internet Lawyer, May 2013.

- *Pfleiderer AG v. Bundeskartellamt: A Step Forward in Efforts to Obtain Discovery From European Commission Antitrust Proceedings,* 19 No. 6 Westlaw Journal Antitrust 1; September 8, 2011 (with Craig S. Davis)

- Litigation Strategy: Making & Defending the Case, 2002

## From the Courtroom to the Capitol®

1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                   **NORTHERN DISTRICT OF CALIFORNIA**

10

11   KIMBERLY NEGRON, Individually and On          ) Case No. 4:21-cv-00801-HSG
     Behalf of All Others Similarly Situated,      )
12                                                 ) **[PROPOSED] ORDER GRANTING**
                                                   ) **PLAINTIFF'S MOTION TO**
13                          Plaintiff,             ) **APPOINT INTERIM COUNSEL**
                                                   ) **PURSUANT TO FED. R. CIV. P. 23(g)**
14              v.                                 )
                                                   ) Judge:  Hon. Haywood S. Gilliam, Jr.
15   GOOGLE  LLC,                                  ) Date:   July 1, 2021
                                                   ) Time:   2:00 p.m.
16                          Defendant.             ) Ctrm:   2 – 4th Floor
                                                   )
17                                                 )

18

19         Pending before the Court is Plaintiff's unopposed Motion to Appoint Interim Counsel

20   Pursuant to Fed.R.Civ.P 23(g) seeking to appoint Interim Counsel, comprised of an Executive

21   Committee including Fred T. Isquith, Jr. as Chair of the Plaintiffs' Executive Committee and two

22   additional members, Pamela A. Markert and Kate M. Baxter-Kauf. *See* Dkt. No. ___. The Court

23   **GRANTS** Plaintiff's motion.

24         Under Federal Rule of Civil Procedure 23(g)(3), a court "may designate interim counsel to

25   act on behalf of a putative class before determining whether to certify the action as a class action."

26   Fed. R. Civ. P. 23. A court should "designate interim counsel during the pre-certification period if

27   necessary to protect the interests of the putative class." *See Wang v. OCZ Tech. Grp., Inc.,* No. C 11-

28   01415 PSG, at *4 (N.D. Cal. June 29, 2011) (citing Fed. R. Civ. P. 23). Although Rule 23(g)(3) does

not provide a standard for appointment of interim counsel, courts typically look to the factors used in determining the adequacy of class counsel under Rule 23(g)(1)(A). *See, e.g., In re Seagate Tech. LLC Litig.*, No. 16-CV-00523-RMW, 2016 WL 3401989, at *2 (N.D. Cal. June 21, 2016). These factors are: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *See* Fed. R. Civ. P. 23(g)(1)(B).

Mr. Fred T. Isquith Jr, and the Executive Committee of Pamela A. Markert and Kate M. Baxter-Kauf, have demonstrated careful attention to creating a diverse team. In short, the Court finds that they would best represent the interests of the putative class in this case, and hereby appoints them to serve as Interim Co-Lead Counsel. Interim Co-Lead Counsel will be generally responsible for the overall conduct of the litigation on behalf of the putative class and will have the following specific responsibilities:

1. Determine and present to the Court and opposing parties the position of Plaintiffs and putative class members on all matters arising during pretrial proceedings;

2. Enter into stipulations with opposing counsel as necessary for the conduct of the litigation;

3. Coordinate the initiation and conduct of discovery on behalf of Plaintiffs and putative class members, including the preparation of joint interrogatories and requests for the production of documents and the examination of witnesses in depositions;

4. Hire expert witnesses and consultants on behalf of the putative class, as needed to prepare for class certification or trial, and advance other costs that may be reasonable and necessary to the conduct of the litigation;

5. Conduct settlement negotiations on behalf of Plaintiffs and putative class members, where appropriate, and to present any proposed settlements to the Court on behalf of putative class members;

6.  Prepare and distribute status reports to any other law firms that may appear in the case to represent putative class members;

7.  Monitor the activities of any other law firms that may appear in the case to represent putative class members, and, where appropriate, allocate work assignments to such firms;

8.  Collect and maintain all Plaintiffs' counsels' contemporaneously recorded time records, and to ensure that unnecessary expenditures of time and funds are avoided; and

9.  Perform such other duties as may be incidental to the proper prosecution and coordination of pretrial activities on behalf of Plaintiffs and the putative class or authorized by further order of this Court.

**IT IS SO ORDERED**

Dated: _____, 2021

_____
HONORABLE HAYWOOD S. GILLIAM, JR.
UNITED STATES DISTRICT JUDGE

1
2
3
4
5
6

CERA LLP
SOLOMON B. CERA (Bar No. 099467)
PAMELA A. MARKERT (Bar No. 203780)
595 Market St. Suite 1350
San Francisco, CA 94105
Telephone: (415) 777-2230
Fax:  (415) 777-5189
Email: scera@cerallp.com
Email: pmarkert@cerallp.com

7
8

*Counsel for Plaintiff SPX Total Body Fitness LLC*
*and the Proposed Class*
*[Additional Counsel listed on  signature page]*

9
10
11

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

12
13
14
15
16
17
18
19

SPX Total Body Fitness LLC, d/b/a The Studio
Empower, on behalf of itself and all others
similarly situated,

                                            Plaintiff,

                        v.

GOOGLE  LLC,

                                            Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 4:21-cv-00801-HSG

**PLAINTIFF'S SUPPLEMENT
REGARDING MOTION TO
APPOINT INTERIM COUNSEL
PURSUANT TO FED. R. CIV. P. 23(g)**

Judge:    Hon. Haywood S. Gilliam, Jr.
Date:      July 1, 2021
Time:     2:00 p.m.
Ctrm:     2 – 4th Floor

20
21
22
23
24
25
26
27
28

Plaintiff SPX Total Body Fitness LLC, d/b/a The Studio Empower ("SPX"), on behalf of itself and all others similarly situated, hereby submits this supplement to its motion to Appoint Interim Counsel Pursuant to Fed. R. Civ. P. 23(g) (ECF No. 25) (the "Motion").[1]  The information set forth in the Supplement is pertinent to the issues before the Court on the Motion.  While no other parties have moved for appointment as interim lead counsel, there have been developments in similar matters pending in this District and elsewhere that weigh heavily in favor of the appointment of Interim Lead Counsel.  In particular, the appointment is necessary to ensure that Plaintiff and the class will not be prejudiced by discovery that is already proceeding in similar matters.  Plaintiff respectfully requests its motion be granted so that its counsel will have the authority to begin coordination of discovery from Defendant Google LLC ("Google") with Lead Counsel appointed in other matters.

### DEVELOPMENTS SINCE THE MARCH 29, 2021 FILING OF THE MOTION

### A.      Cases Pending in this District

Since Plaintiff filed its pending motion, Google moved the United States Judicial Panel on Multidistrict Litigation (the "Panel") to transfer and centralize numerous cases pending in district courts across the country.  *See In re Digital Advertising Antitrust Litigation*, No. 3010 (MDL ECF No. 1) (J.P.M.L. Apr. 30, 2021) ("Advertising MDL").  All briefing is completed, and the Panel will hear arguments on Google's motion on July 29, 2021. (MDL ECF No. 91).

There are two cases filed in the Northern District of California pending before the Honorable Beth Labson Freeman that are rapidly moving forward with discovery.  Judge Freeman has organized and appointed a leadership structure including a discovery coordinating committee.  *See In re Digital Advertising Antitrust Litigation,* 20-cv-3556, ECF Nos. 133, 134 (N.D. Cal. Apr. 26, 2021) ("*Digital Advertisers*"); and *In re Digital Publisher Antitrust Litigation*, 20-cv-8984, ECF Nos. 74, 76 (Apr. 26, 2021) ("*Digital Publishers*").  In *Digital Advertisers* and *Digital Publishers,* the plaintiffs have propounded at least one set of requests for production of documents.  *See Digital Advertisers*, (ECF No. 145); Advertising MDL, (MDL ECF No. 78) (May 26, 2021).  Judge Freeman issued an opinion

---

[1]      At the May 11, 2021 Case Management Conference, the Motion was confirmed for hearing on July 1, 2021.

granting a motion to dismiss in *Digital Advertisers* with leave to amend (ECF No. 143) (May 13, 2021).  In *Digital Publishers*, a motion to dismiss was filed and a briefing schedule set. (ECF Nos. 83, 88) (Jun. 4, 2021, and Jun. 15, 2021).

       **B.**       **The State Attorneys General Lawsuit**

       Several state attorneys general filed a lawsuit pending in the United States District Court for the Eastern District of Texas (the "AGs Action").  In the AGs Action, a motion to dismiss was denied, and discovery is ongoing.[2]  The District Court in the Eastern District of Texas recently denied Google's motion to transfer that case to the Northern District of California, however, Google's motion before the MDL Panel continues to seek centralization of the AGs Action along with matters in the Northern District of California.

**ARGUMENT**

       Rule 23(g)(3) provides that a court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."  Fed. R. Civ. P. 23(g)(3).  A court should "designate interim counsel during the pre-certification period if necessary to protect the interests of the putative class."  *See Wang v. OCZ Tech. Grp., Inc.,* No. C 11-01415 PSG, at *4 (N.D. Cal. June 29, 2011) (citing Fed. R. Civ. P. 23).

       The cases before Judge Freeman and the AGs Action are proceeding with discovery and dispositive motion practice.  Without appointment of Lead Interim Counsel from this Court for this case and its unique class, Plaintiff is concerned that coordination efforts to obtain necessary documents and avoid duplicate discovery efforts and motion practice will be disregarded.  Without the authorization to negotiate and participate in the ongoing discovery efforts with appointed counsel in *Digital Advertisers* and *Digital Publishers*, Plaintiff and its counsel have reason to conclude that they will be detrimentally hampered in their ability to protect Plaintiff and the class it seeks to

---

[2]     Including the Civil Investigation Demands and formal discovery, the AG Action has obtained more than two million documents, responses to interrogatories, and sworn statements from ten Google employees.  *In re Digital Advertising Antitrust Litig.*, MDL No. 3010, ECF No. 71 at 4 (J.P.M.L. May 26, 2021).

represent.  For this reason, and for the protection of the Class, Plaintiff requests the Court grant Plaintiff's Motion to Appoint Interim Counsel Pursuant to Rule 23(g)(3).

### CONCLUSION

For the foregoing reasons, SPX, individually and on behalf of all others similarly situated, respectfully requests the Court appoint its counsel, Fred T. Isquith, Jr., as Chair of the Plaintiffs' Executive Committee, to be comprised of Mr. Isquith and Pamela A. Markert and Kate M. Baxter-Kauf, as Interim Lead Counsel to act on behalf of SPX and the proposed class.

Dated:  June 24, 2021                    Respectfully submitted,


**CERA LLP**


By:    */s/ Pamela A. Markert*
          Pamela A. Markert

          -and-

Fred T. Isquith, Sr. (*pro hac vice* forthcoming)
Fred T. Isquith, Jr. (admitted *pro hac vice*)
Robert S. Schachter (admitted *pro hac vice*)
Sona R. Shah (*pro hac vice* forthcoming)
**ZWERLING, SCHACHTER**
  **& ZWERLING, LLP**
41 Madison Avenue, 32nd Floor
New York, NY 10010
Tel: (212) 223-3900
Fax: (212) 371-5969
ftisquith@zsz.com
rschachter@zsz.com
sshah@zsz.com
ddrachler@zsz.com
havery@zsz.com


Fred T. Isquith, Jr. (admitted *pro hac vice*)
**ISQUITH LAW**
220 East 80th Street
New York, NY 10075
Tel: (607) 277-6513
isquithlaw@gmail.com

Heidi Silton (admitted *pro hac vice* )
Kate M. Baxter-Kauf (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue S., Suite 2200
Minneapolis, MN 55401-2159
Tel: (612) 596-4092
hmsilton@locklaw.com
kmbaxter-kauf@locklaw.com

Richard Vita (*pro hac vice* forthcoming)
**VITA LAW OFFICES, P.C.**
100 State Street, Suite 900
Boston, MA 02109
Tel: (617) 426-6566
rjv@vitalaw.com

*Attorneys for Plaintiff and the Class*