PUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
IN RE GOOGLE DIGITAL ADVERTISING
ANTITRUST LITIGATION                              21-md-3010 (PKC)

-------------------------------------------------------------x


**SPX PLAINTIFFS' RESPONSE TO THE CLIFFY CARE AND SUREFREIGHT INTERIM LEAD COUNSEL APPLICATIONS AND IN FURTHER SUPPORT OF SPX'S MOTION FOR THE CREATION OF A COORDINATING COMMITTEE AND THE APPOINTMENT OF ZWERLING, SCHACHTER & ZWERLING LLP AS <u>INTERIM CLASS COUNSEL FOR THE SPX CLASS</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

    A.    *Cliffy Care* and *Surefreight* Agree *SPX* is Distinctive. Coordination Should be Ordered. ........................................................................................... 2

    B.    The *Cliffy Care* and *Surefreight* Proposals are Contrary to Establishing an Efficient and Economic Process For The Advertising Class Actions....................... 5

        1.    The *Surefreight* Proposal ................................................................. 5

        2.    The *Cliffy Care* Proposal ................................................................. 8

    C.    None of the Applications Have Challenged the Qualifications of *SPX's* Proposed Interim Counsel............................................................................... 8

CONCLUSION...................................................................................................................... 9

## TABLE OF AUTHORITIES

**Cases**

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) ............................................................................................................... 6

*Fed. Trade Comm'n v. Facebook, Inc.*,
    No. 20-3590 (JEB), 2021 WL 2643627 (D.D.C. June 28, 2021) ............................................... 3

**Rules**

Fed. R. Civ. P. 1 ................................................................................................................... 2

**Other Authorities**

Majority Staff of H. Subcomm. on Antitrust, Com. & Admin. Law of the Comm. On the
    Judiciary, 116th Cong., *Investigation of Competition in Digital Markets:
    Majority Staff Report and Recommendations* (Oct. 2022) ........................................... 3

*Manual for Complex Litigation Fourth* (2004) ........................................................... 2, 6

INTRODUCTION

The SPX Plaintiffs[1] submit this response to the Applications of *Cliffy Care* and *Surefreight* (ECF Nos. 252,[2] 253[3]) and in further support of *SPX's* Motion for the formation of a coordinating committee for the Advertiser Class Actions and the appointment of interim class counsel for their unique class of Facebook advertisers.

The Advertiser Class Actions unsuccessfully endeavored to agree on a coordinating structure pursuant to this Court's directive at the September 24, 2021 conference. *See, Isquith Declaration in Support of the Motion*, ECF No. 257, ("Isquith Decl.") Ex. 4 (Hr'g Tr. 32:25-33:3 and 34:20-22). The initial submissions demonstrate that the *SPX* Plaintiffs are the only plaintiff group who submitted a proposal for coordination in conformity with the Court's statement.

All three applicants agree that the three Advertiser Class Actions cover different platforms, different transactions, and different markets. The appointment of a single interim lead counsel for these classes is contrary to law. The *SPX* Class only represents advertisers on the social media site Facebook. The *Surefreight* Class is on behalf of those who transacted directly on the exchange operated by Google, not on social media. The *Cliffy Care* Class pertains to only transactions on platforms other than Google or Facebook (class defined as persons who "bought advertising from *other* demand-side platforms and won the bidding on the exchange operated by

---

[1]  All capitalized terms, not otherwise defined herein, shall have the meaning ascribed to them in SPX Plaintiffs Memorandum of Law in Support of a Motion for an Order Creating a Coordinating Committee and the Appointment of Interim Class Counsel, ECF No. 256 (S.D.N.Y. Feb 23, 2022) ("*SPX* App.").

[2]  Application of Cliffy Care Landscaping, LLC et al. for Appointment of Interim Lead Counsel, ECF No. 252 (S.D.N.Y. Feb 23, 2022) ("*Cliffy Care* App.").

[3]  Application of Plaintiffs Surefreight Global LLC et al. for Appointment of Interim Co-Lead Counsel, ECF No. 253 (S.D.N.Y. Feb. 23, 2022) ("*Surefreight* App.").

Google"). *Cliffy Care* App. (ECF No. 252-1) at 2. *Surefreight* claims that its class members were injured by an alleged Google monopoly. *SPX* and *Cliffy Care* assert claims arising from the Agreement between Facebook and Google.

The *Surefreight* Plaintiffs, whose complaint has been dismissed, argue that the Court should allow them to engulf and absorb the *SPX* and *Cliffy Care* Classes, with their counsel assuming the command of all three distinct and separate classes. *Surefreight* App. at 4-5. *Surefreight's* inherent conflicts of interest cannot be resolved by suggesting that its counsel will choose attorneys to represent the *SPX* Class on an "executive committee" without any authority. *SPX* Plaintiffs have already chosen their counsel to represent their interests. A position on *Surefreight's* extensive "executive committee" whose interests may directly conflict with those of the *SPX* Class is not a solution that conforms with Rule 23.

*Cliffy Care* agrees with *SPX* regarding the need for separate counsel for each class. However, the *Cliffy Care* Application does not address coordination. Any solutions without coordination ignores the Judicial Panel's directive to centralize the pre-trial proceedings; this Court's explicit directive to coordinate; the *Manual's* exhortation that the organizational structure in multiparty litigation seek to achieve efficiency and economy, *see* MCL 4th §10.22; and Fed. R. Civ. P. 1's requirement that the parties and the court seek to ensure an "inexpensive determination" of every action and proceeding.

**ARGUMENT**

A. ***Cliffy Care* and *Surefreight* Agree *SPX* is Distinctive. Coordination Should be Ordered.**

All three Advertiser Class Actions agree the Facebook advertising transactions injured only the *SPX* Class they seek to represent, and do not overlap with any of the transactions alleged by either *Surefreight* or *Cliffy Care*. Neither *Cliffy Care* nor *Surefreight* seek recovery for

2

transactions on Facebook that were affected by the anti-competitive behavior of Google or Facebook. *See Cliffy Care* App. at 2-4 ("The differences between the classes are so material and substantial in nature that no single interim class counsel can adequately or faithfully represent the interest of the members of all the advertiser classes . . . . There is zero overlap between the claims asserted by the members of the proposed SPX class and the Cliffy Care class . . . the claims asserted by the SPX and Cliffy Care advertiser classes are totally distinct and mutually exclusive."); *Surefreight* App. at 4, 6 (appointment of *SPX* counsel to proposed executive committee "would allow their proposal to represent a *non-overlapping* class of Facebook advertisers. . . . This MDL already comprises several distinct, separately-led plaintiff groups. That the SPX Plaintiffs propose a Facebook advertiser class at most may weigh in favor of appointing their counsel to a committee.") (emphasis added).

The *SPX* Plaintiffs only advance claims on behalf of persons and entities who advertised on Facebook, which is the largest social media company, and which occupies a market wholly distinct from class members who advertise through Google. *Fed. Trade Comm'n v. Facebook, Inc.*, No. 20-3590 (JEB), 2021 WL 2643627, at *9-10 (D.D.C. June 28, 2021), *relevant market confirmed*, 2022 WL 103308, at *4-5, (D.D.C. Jan 11, 2022); Complaint, *United States of America v. Google LLC*, No. 20-cv-03010-APM (D.D.C. Oct. 20, 2020), ECF No. 1; Majority Staff of H. Subcomm. on Antitrust, Com. & Admin. Law of the Comm. On the Judiciary, 116th Cong., *Investigation of Competition in Digital Markets: Majority Staff Report and Recommendations* (Oct. 2022). The *SPX* Plaintiffs' claims are brought pursuant to Section 1 of the Sherman Act, alleging a *per se* violation of the antitrust laws. Prior to the Panel's transfer, the Honorable Beth Labson Freeman of the Northern District of California noted that *Surefreight's* complaint alleged a monopoly under the rule of reason and did not include social

3

media platforms, such as Facebook, as a possible substitute. Isquith Decl. Ex. 2 at 6. Moreover, *Surefreight's* allegations of the relevant market did not consider potential substitutes including social media because to do so would endanger its Google monopoly claims. *See infra* at 6. As described in its application, *Cliffy Care* only seeks recovery for transactions on "demand-side platforms" other than Facebook or Google. *Cliffy Care* App. (ECF No. 252-1) at 2.

*SPX* Plaintiffs submit that each of the Advertiser Class Actions will require an understanding of the Google advertising exchange, the Agreement, and the markets in which each of the transactions occurred. While *SPX* alleges industry background facts, it does not allege a claim against Google for monopolization. *Cliffy Care* confuses industry background allegations with asserted claims. *Cf. Cliffy Care* App. at 3. There will be discovery of Google, Facebook, and potentially the same third parties within the markets in which the respective transactions took place. The contemplated discovery is reason enough that coordination would avoid duplicative discovery and unnecessary expenses. Both *SPX* and *Surefreight* acknowledge that duplication should be avoided. *SPX* App. at 4; *Surefreight* App. at 12. *SPX's* proposed counsel will work with the other tracks in the MDL to avoid duplication, as they have throughout the course of this litigation.

Neither proposal by *Surefreight* nor *Cliffy Care* supports deviating from the Court's directive that the Advertising Class Actions coordinate their activities on common issues. The *SPX* Plaintiffs respectfully request that the Court select one lawyer from each of the three Advertiser Class Actions as interim lead counsel consistent with the structure proposed by the *SPX* Plaintiffs.

### B. The *Cliffy Care* and *Surefreight* Proposals are Contrary to Establishing an Efficient and Economic Process For The Advertising Class Actions.

The *Surefreight* and *Cliffy Care* proposals either conflict with rules regarding the representation of incompatible classes (*Surefreight*), or conflict with this Court's directive, the Manual for Complex Litigation's directives for efficient litigation in multidistrict litigation and the Panel's centralization purposes (*Cliffy Care*). Neither proposal has a liaison with the Court that is located in New York City and familiar with this Court's procedures. The only proposal before the Court that eliminates the conflicts of interest among the classes and addresses the inefficiencies of duplicate pretrial processes is the proposal made by *SPX*.

### 1. The *Surefreight* Proposal

*Surefreight's* application is not dissimilar to a proposal that Judge Freeman previously rejected. *Surefreight* sought to lead both the Google Advertisers' and the Google Publishers' cases. Judge Freeman directed that the Google Advertiser action and the Google Publisher action have distinct leadership. *See In re Google Digital Publisher Antitrust Litig.*, No. 20-cv-08984, ECF No. 76 (N.D. Cal. Apr.26, 2021); *In re Google Digital Advertising Antitrust Litig.*, No. 20-cv-3556, ECF No. 133 (N.D. Cal. Apr. 26, 2020). Further, Judge Freeman ruled that the *Surefreight* claims were unrelated to the *SPX* claims.

*Surefreight's* counsel proposes that they take over the unrelated *SPX* Class action, which they explicitly note has different interests than the class *Surefreight* represents. *Surefreight* requests the Court appoint its law firms as "leaders" and several other firms to an essentially powerless "executive committee" comprised entirely of counsel representing identical classes as *Surefreight*. *See Surefreight* App. at 3. A single position on a powerless executive committee that can be overruled by lead counsel is inadequate to protect the interests of the *SPX* Class, especially should those interests conflict with those of the *Surefreight* Class or its lead counsel's decisions.

5

This Court, in contrast to the *Surefreight* proposal, directed cooperation and indicated three is a manageable number. *See,* Isquith Decl. Ex. 4 ( (Hr.'g Tr. 34:17-18) ("three, so it's not yet a totally unmanageable number").

*Surefreight's* Application fails to explain how they will resolve potential conflicts arising from their leadership proposal. As in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), the present risk that *Surefreight's* interests in its own Section 2 claims will trump its prosecution of the *SPX* Plaintiffs' Section 1 claims demonstrates the need for *SPX* to have its own lead counsel. The *Surefreight* proposal would force *SPX's* clients to rely on counsel whom they have not retained and have not developed and been litigating their claims for more than a year.

*Surefreight's* reliance on § 21.11 of the *Manual* regarding the appointment of a single leadership group is misguided. That section focuses on overlapping and duplicative suits, which does not exist here. *Cf. Surefreight* App. at 5. This Court should instead be guided by the *Manual's* instructions for a committee when there are inherent or potential conflicts in the actions. *See Manual* § 10.221, at 25 (creating a coordinating committee when "group members' interests and positions are sufficiently dissimilar to justify giving them representation in decision making").

*Surefreight* claims that, at the time it filed its Amended Complaint (December 4, 2020), it lacked a multiplicity of information about Google, including the Agreement (which was available no later than December 16, 2020). *Surefreight* App. at 5. It had plenty of time to seek leave to amend its complaint. Whatever the reasons the *Surefreight* Plaintiffs did not use the information available to them to seek leave to amend their complaint, that decision is irrelevant, as even had they amended their complaint in a timely manner, it would still not resolve the

potential conflicts between the *Surefreight* Class and the *SPX* Class or include transactions which occurred on Facebook.

*SPX* has always been consistent regarding the need for coordination between the *SPX* Action and the *Surefreight* Action, as demonstrated in *SPX's* motion to relate the two actions in the Northern District of California. *In re Google Digital Advertising Antitrust Litig.*, No. 20-cv-03556-BLF, ECF Nos. 88, 108 (N.D. Cal. Feb. 9, 2021, and Mar. 2, 2021, respectively). At that time, *Surefreight* had an opportunity to address any potential conflicts or express an intent to seek leave to amend its complaint to include a Section 1 claim yet chose to remain silent. The Court, noting differences between the two actions, ruled the two were unrelated and should proceed independently. *In re Google Digital Advertising Antitrust Litig.*, No. 20-cv-3556-BLF, ECF No. 108 (N.D. Cal. Mar. 2, 2021). *Surefreight* remained silent regarding that decision, too.

Finally, *Surefreight* makes no mention of the significant role that *SPX* played in coordination of the Advertiser Class Actions with the other tracks in this MDL. Rather, it overstates its own role. *See Surefreight* App. at 3. *SPX* counsel have attended multiple MDL Plaintiffs' coordinating committee meetings and calls and have drafted and edited joint letters to the Court without input of *Surefreight's* counsel. Further, *SPX* counsel participated in MDL Plaintiffs' coordinating committee drafting sessions and strategy for various discovery orders, including the proposed protective order, proposed ESI order, and other coordinating documents requested by Court during the September status conference. *SPX* counsel has worked seamlessly with all plaintiffs' counsel thus far and has had no problem representing its interests.

While both *Surefreight* and *SPX* agree with the need for an organizational committee, *Surefreight's* suggestion that as lead counsel it have all decision-making authority is unworkable and fails to adequately address the potential for conflicts noted by *SPX* and *Cliffy Care*. The

7

*Surefreight* proposal thus does not comport with the provisions of Rule 23(g) or the *Manual's* guidelines.

### 2.  The *Cliffy Care* Proposal

The *Cliffy Care* proposal eliminates the potential conflict issues that could arise under the *Surefreight* proposal but creates problems as to the efficient and economical prosecution of the Advertising Class Actions. As noted above, the *Cliffy Care* complaint alleges claims based on an illegal agreement between Facebook and Google under Section 1 of the Sherman Act, and its class claims are brought on behalf of those who "bought advertising from other demand-side platforms and won the bidding on the exchange operated by Google." *Cliffy Care* App. (ECF No. 252-1) at 2. *Cliffy Care* states explicitly in its Application that its claims and class do not overlap with those of *SPX* or *Surefreight* and excludes transactions on Facebook. *Id*. at 2-4. The class definition in the complaint excludes transactions on Facebook. *See Cliffy Care* App at 3.

Coordination, as proposed by *SPX*, will give *Cliffy Care* its requested representation while avoiding duplication in pre-trial proceedings among the Advertising Class Actions. *See, e.g.*, *Surefreight* App. at 3 (noting that the *Cliffy Care* Plaintiffs intend on reviewing documents independently). A coordination committee would ensure *Cliffy Care's* ability to litigate and defend its claims regarding the advertising they purchased from other "demand-side platforms" while gaining the efficiencies envisioned by the *Manual* and Federal Rules.

### C.  None of the Applications Have Challenged the Qualifications of *SPX's* Proposed Interim Counsel

None of the applications submitted take issue with the qualifications and resources of *SPX's* proposed interim counsel. That information was amply supported in the *SPX* Application. *See* Isquith Decl. Ex. 1. Thus, the only issue concerns the proposed organizational structure.

**CONCLUSION**

The *SPX* Plaintiffs have proposed a method to coordinate the Advertiser Class Actions as requested by the Court on September 24th. Their proposal ensures coordination for common issues and removes potential conflicts among the proposed classes. *SPX's* Rule 23(g) motion provides for a small group of lawyers to direct the *SPX* Class.

The *SPX* Plaintiffs respectfully request that the motion for coordination and appointment for appointment of interim class counsel under Rule 23(g) should be granted in full.

Dated:  March 2, 2022                                         Respectfully submitted,

**ZWERLING, SCHACHTER
 & ZWERLING, LLP**

By: */s/ Fred T. Isquith, Sr.*
Fred T. Isquith, Sr. (FI-6782)
Robert S. Schachter (RS-7243)
Robin F. Zwerling (RZ-6736)
41 Madison Avenue, 32nd Floor
New York, NY 10010
Tel: (212) 223-3900
Fax: (212) 371-5969
Email: ftisquith@zsz.com
Email: rschachter@zsz.com
Email: rzwerling@zsz.com

Fred T. Isquith, Jr. (FI-1064)
**ISQUITH LAW**
220 East 80th Street
New York, NY 10075
Tel: (607) 277-6513
Email: isquithlaw@gmail.com

Solomon B. Cera (admitted *pro hac vice*)
Pamela A. Markert (admitted *pro hac vice*)
**CERA LLP**
595 Market St., Suite 1350
San Francisco, CA 94105
Telephone: (415) 777-2230

Fax: (415) 777-5189
Email: scera@cerallp.com
Email: pmarkert@cerallp.com

Heidi Silton (admitted *pro hac vice*)
Kate M. Baxter-Kauf (admitted *pro hac vice*)
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue S., Suite 2200
Minneapolis, MN 55401-2159
Tel: (612) 596-4092
Email: hmsilton@locklaw.com
Email: kmbaxter-kauf@locklaw.com

Richard Vita (*pro hac vice* forthcoming)
**VITA LAW OFFICES, P.C.**
100 State Street, Suite 900
Boston, MA 02109
Tel: (617) 426-6566
Email: rjv@vitalaw.com

*Attorneys for Plaintiffs SPX Total Body Fitness LLC, d/b/a The Studio Empower, SkinnySchool LLC d/b/a/ Maria Marques Fitness, and Mint Rose Day Spa LLC, on Behalf of Themselves and All Others Similarly Situated*