# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re Google Advertising Antitrust Litigation* | Civil Action No. 21-MD-3010 (PKC) |

**RESPONSE IN SUPPORT OF APPLICATION OF PLAINTIFFS SUREFREIGHT GLOBAL LLC D/B/A PRANA PETS, HANSON LAW OFFICE, AS SUCCESSOR-IN-INTEREST TO HANSON LAW FIRM, PC, AND VITOR LINDO FOR APPOINTMENT OF GIRARD SHARP LLP AND AHDOOT & WOLFSON, PC AS INTERIM CO-LEAD COUNSEL FOR THE PROPOSED ADVERTISER CLASS AND APPOINTMENT OF AN ADVERTISER <u>CLASS EXECUTIVE COMMITTEE</u>**

I.      INTRODUCTION

All applications from the various advertiser plaintiffs confirm that a single leadership structure will best serve the interests of any proposed advertiser class or classes. The Cliffy Care Plaintiffs and the SPX Plaintiffs do not oppose Surefreight Counsel's continued service as interim co-lead counsel for the class proposed by the Surefreight Plaintiffs, but Cliffy Care and SPX each seek a *separate* lead counsel appointment, arguing that the classes proposed in their *pre*-MDL complaints differ from Surefreight's proposed class. Yet the differences among those complaints, including the legal theories that the other advertisers contend are unique, exist only by reference to an outdated litigation posture and will be moot when the time comes for the plaintiffs to file an amended complaint on behalf of the advertisers. Cliffy Care vastly overstates the "crucial differences" among the pre-MDL proposed classes, and SPX fails to demonstrate any conflict, much less a fundamental one, between Google and Facebook advertisers. The claims of all advertisers arise from the same anticompetitive conduct in the same display advertising markets. A single leadership structure is, therefore, in the advertisers' best interests, and neither Cliffy Care nor SPX has shown otherwise.

The Cliffy Care and SPX proposals to put overlapping groups of advertisers into different groups and appoint separate counsel for each group would result in duplication of work and unclear lines of authority. This MDL is already unusually complex, with the States, class publishers, newspaper opt-outs, and Daily Mail groups all coordinating with the advertisers. Adding another layer of coordination and process from an advertiser "coordinating committee," in addition to the overall coordinating committee, is a solution in search of a problem and would not advance the cause for plaintiffs who share the common interest of proving liability. Creating a headless committee for advertisers and splitting their leadership into separate groups would give rise to uncertainty and inefficiencies—for both the advertisers and the litigation on the

whole—and would pit the advertisers against each other instead of allowing them to focus single-mindedly on developing the case.

Consequently, the Court should reject the competing proposals and, at most, appoint counsel for Cliffy Care and SPX to an advertiser executive committee under the leadership of Surefreight Counsel.

## II.   ARGUMENT

### A.   Cliffy Care and SPX Overstate Factual and Legal Distinctions and Reference Pre-MDL Complaints.

It is only because of (1) the timing of case events in other forums (the Northern District of California and the Judicial Panel on Multidistrict Litigation), and (2) the sequencing of the States' pleading first in this MDL, that the most recent complaint filed by Surefreight Plaintiffs does not include a Section 1 claim based on the network-bidding (or "Jedi Blue") agreement between Google and Facebook. There is no ambiguity in the record that Surefreight intends to assert such a claim at the appropriate time, a possibility that the Court recognized (9/24/21 Hr'g Tr. at 15, 19) but which Cliffy Care and SPX Plaintiffs choose to ignore. Cliffy Care's "class standing" argument (Doc. 252-1 at 7-9), its mantra that it sued Facebook (*id*. at 3, 8), and SPX's insistence that the three cases are different (Doc. 256 at 4, 6) are based on an outdated posture. Any support for those arguments will evaporate once the advertiser complaints are amended— ideally in a single, coherent, consolidated complaint. *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 n.3 (2015).[1] Cliffy Care's and SPX's insistence that the pre-MDL complaints include distinct classes that should proceed separately is misplaced.

---

[1] In Pre-Trial Order No. 1, this Court advised that private plaintiffs "may wish to consider the desirability of filing one or more consolidated pleadings" (Doc. 4, ¶ 9), as "in MDL transferee courts . . . a consolidated amended class action complaint . . . may serve as the vehicle for determination of common issues, including trial." Manual for Complex Litigation § 22.36 at p. 373 (4th ed. 2004) ("*Manual 4th*").

While Cliffy Care observes that "[t]here is zero overlap between the claims . . . of the proposed *SPX* class and the *Cliffy Care* class" (Doc. 252 at 4), Cliffy Care's proposed class does include members of *Surefreight*'s proposed class—namely, advertisers that placed display ads through Google since September 2018.  Cliffy Care notes that its proposed class members "bid on the Google Exchange for ad space in the 'open display' advertising market which are placed on third-party publishers' websites and mobile apps." (Doc. 252-1 at 8.)  Those advertisers are Surefreight class members as well—Surefreight Plaintiffs allege that they "sustained antitrust injury by paying supra-competitive prices to Google to broker the placement of . . . display advertisements on third-party websites," seeking to represent advertisers similarly injured.  (1:21-cv-07001-PKC, Doc. 52, ¶¶ 8, 13, 14, 18, 19, 23, 225, 228.)  Cliffy Care now says its class is limited to advertisers that placed ads with "publisher[s] participating in the Facebook-Google arrangement" (Doc. 252 at 3) and that "bought advertising from other demand-side platforms and won the bidding on the exchange operated by Google" (Doc. 252-1 at 2).  But Cliffy Care's definition is not limited in those ways, and even if it was, Surefreight's definition also includes those advertisers because they used Google's services to place display advertisements.[2]

Cliffy Care offers no justification for having more than one set of lawyers review millions of documents, coordinate the work of experts, make judgment calls, and otherwise develop the case for the same class members, which would be inefficient at best, and at worst counterproductive.  Whether some Surefreight class members also purchased advertising on Facebook (Doc. 252-1 at 2) does not affect their claims based on their use of Google's

---

[2] Modifying Cliffy Care's class definition to cover advertisers "harmed by" the network-bidding agreement is no solution.  (Doc. 252 at 1.)  That definition would neither eliminate nor reduce the substantial overlap, and is also an impermissible fail-safe.  *See Lawrence v. NYC Med. Prac., P.C.*, No. 1:18-CV-8649-GHW, 2021 WL 2026229, at *6 (S.D.N.Y. May 20, 2021).

advertising services in the relevant markets or the resulting harm. Nor does that possibility favor appointing different counsel to represent different subclasses and pursue distinct strategies that may ultimately hinder all advertisers' efforts. Contrary to Cliffy Care's assertion that its case occupies an "entirely different factual universe" (*id*. at 3), the advertiser claims all arise in the same digital advertising services markets and the network-bidding agreement was an exclusionary practice that advanced Google's monopolization scheme.[3]

SPX likewise offers no reason why separate sets of lawyers representing Google and Facebook advertisers should concurrently take discovery, review documents, prepare expert reports, and develop strategies concerning the legality of the Jedi Blue agreement. SPX's reliance on an order that Judge Freeman issued under the Northern District of California's local rules, deeming SPX's case not related to Surefreight's case (Doc. 256 at 2, 6), ignores the JPML's holding that *all* constituent cases "present common factual questions concerning the allegation that Google has monopolized or suppressed competition in online display advertising services in violation of federal antitrust law, whether that market is described singly as all display advertising services, as components of display advertising, or as some larger spectrum of digital advertising." *In re Digital Advert. Antitrust Litig.*, No. MDL 3010, 2021 WL 3523450, at *2 (J.P.M.L. Aug. 10, 2021). SPX nonetheless asserts—for the first time—that its claims arise in a separate "social media market" (Doc. 256 at 6) even though its pre-MDL complaint does not define or mention that market. (*Cf*. 1:21-cv-06870-PKC, Doc. 1, ¶¶ 54, 146.)

Cliffy Care also points to the District Court for the District of Columbia's pre-MDL entry

---

[3] Cliffy Care incorrectly claims that "[a]ll plaintiffs' counsel in the consolidated cases support the appointment of MoginRubin LLP as lead counsel for the *Cliffy Care* class." (Doc. 252 at 4.) Surefreight Plaintiffs do *not* support the appointment of separate leads for separate proposed advertiser classes or subclasses, as opposed to all advertisers in this litigation.

of Cliffy Care's proposed order that accompanied its unopposed motion, filed on April 20, 2021, to appoint Mogin Rubin as interim lead counsel in that action. (Doc. 252-1 at 9; Doc. 252 at 2; 1:21-cv-06910-PKC, Docs. 19, 19-2, 31.) But Cliffy Care's motion did not disclose the then-pending antitrust cases arising from the same facts (1:21-cv-06910-PKC, Doc. 19), and nothing in the brief appointment order (*id.*, Doc. 31) suggests that this Court now should implement a structure that would permit divergent approaches to litigation of claims on behalf of advertisers as a whole.

The most efficient and sensible course is for advertisers, represented by a single group of counsel, to plead both Section 1 and Section 2 claims in a single complaint to facilitate their prosecution and resolution. Cliffy Care's argument that pursuing this case will be an "enormous" undertaking (Doc. 252-1 at 3) supports adopting Surefreight's proposed co-lead counsel and executive committee structure under which experienced counsel can work together instead of being placed in competition. And, while SPX argues that *each* proposed advertiser class should "be able to 'speak with one voice' on common issues" (Doc. 256 at 4), the Court made clear that *all* of the advertisers should speak with "approximately one voice" (9/24/21 Hr'g Tr. at 32-33)—which is particularly important when the litigation includes four other plaintiff groups.

B.   **There Is No Fundamental Conflict Between the Pre-MDL Proposed Classes.**

As there is no conflict that precludes appointment of a single leadership team, appointing separate counsel for advertisers would be wasteful. *All* advertisers have an interest in establishing Google's antitrust violations and maximizing their recoverable damages—not in prioritizing one set of claims over another. That alone should settle the matter of case organization because, "[s]o long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not

antagonistic for representation purposes." *In re Community Bank of N. Va. Mortg. Lending Pracs. Litig.*, 795 F.3d 380, 394 (3d Cir. 2015) (quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981)); *see, e.g.*, *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2020 WL 1180550, at *61 (D. Kan. Mar. 10, 2020) (rejecting defendant's argument that co-lead counsel could not "represent plaintiffs with different theories of injury and competing damage claims"). By contrast, creating a three- or four-way advertiser committee without designated lead counsel would result in distraction and uncertainty, undermining effective representation of all plaintiffs.[4]

SPX's and Cliffy Care's Rule 23 arguments lack merit. Even where there is no overlap between claims, separate attorneys are not required to represent multiple classes that have common interests. In fact, "class counsel may represent multiple sets of litigants . . . so long as the litigants' interests are not inherently opposed," and this may "benefit the class to the extent that class counsel gain useful legal and factual knowledge in pursuing the concurrent action." Newberg on Class Actions § 3:75; *see, e.g.*, *In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*, 258 F.R.D. 260, 271 (S.D.N.Y. 2009) (denying pre-certification request to appoint a separate "niche plaintiff" for a specific class, which "would add to the expense of the litigation, to the

---

[4] SPX does not explain how its proposed advertiser coordinating committee would interface with the overall plaintiff coordinating committee, or who would represent the advertisers on that committee, or who would resolve disputes among the various advertiser groups. In this regard, while SPX quotes the same sentence from the Manual for Complex Litigation as Surefreight, SPX apparently overlooks the next sentence, which presumes clear leadership: "Committees are most commonly needed when group members' interests and positions are sufficiently dissimilar to justify giving them representation in decision making. *The court or lead counsel may task* committees with preparing briefs or conducting portions of the discovery program if one lawyer cannot do so adequately." Manual 4th § 10.221 at p. 25 (emphasis added); Doc. 256 at 4. Surefreight Plaintiffs welcome the participation of counsel for SPX and Cliffy Care on an advertisers' executive committee, a leadership structure that would resolve their unfounded concern about whether all plaintiffs would have a voice in determining case strategy. (Doc. 260 at 2-3; Doc. 261 at 5-6.)

detriment of" putative class members).

None of the arguments for separate representation warrants, let alone necessitates, the inefficient path advocated by Cliffy Care and SPX. Because this is not a case in which purchasers of the same product at different levels of a distribution chain (*i.e.*, direct and indirect purchasers) seek damages for the same overcharge—an inherent conflict—*Lidoderm* and the other antitrust class cases cited by SPX and Cliffy Care are inapplicable. (Doc. 256 at 4-5; Doc. 252-1 at 4-5.) Even at the class certification stage, a "speculative conflict should be disregarded," *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001) (citation omitted), *abrogated on other grounds by In re IPO Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006); accordingly, SPX's assertions of "potential" conflicts and interests that "may . . . conflict" are insufficient. (Doc. 261 at 2, 6, 7.)

Similarly, "uncertain prediction[s]," like Cliffy Care's speculation that a single leadership structure "could" create Rule 23 adequacy problems for settlement (Doc. 252-1 at 5-6), do not justify separate appointments. *Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010); *see In re Community Bank*, 795 F.3d at 395 (there is no need for separate counsel if an asserted conflict between classes is "dependent on some future event or turn in the litigation that might never occur.") (citation omitted); *Sundquist v. Nebraska*, No. 8:14CV220, 2015 WL 6118515, at *2 (D. Neb. Oct. 16, 2015) ("Separate representation is not required until any 'potential conflict matures into an actual material conflict.'") (citation omitted).[5] In reality, the advertisers' bargaining power will increase to the extent they form a united and cohesive group. *See* Newberg on Class Actions § 3:75 (noting that "concurrent representation may enable

---

[5] *See also In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 541 (E.D. Va. 2006); *Mehl v. Canadian Pac. Ry. Ltd.*, 227 F.R.D. 505, 515 (D.N.D. 2005).

counsel to leverage a better settlement for both sets of plaintiffs due to a defendant's desire to obtain a global resolution.").

### III. CONCLUSION

For the reasons set forth above and in their Application, Surefreight Plaintiffs respectfully request that the Court appoint Girard Sharp LLP and Ahdoot & Wolfson, PC as interim co-lead counsel for advertisers, with a supporting Executive Committee.

Dated: March 2, 2022                                Respectfully submitted,

/s/ *Dena C. Sharp*

Dena C. Sharp (*pro hac vice*)
Jordan Elias (*pro hac vice*)
Scott M. Grzenczyk (*pro hac vice*)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dsharp@girardsharp.com
jelias@girardsharp.com
scottg@girardsharp.com

Tina Wolfson (TW-1016)
Theodore W. Maya (*pro hac vice*)
Bradley K. King (BK-1971)
**AHDOOT & WOLFSON, PC**
2600 West Olive Ave., Suite 500
Burbank, CA 91505
Tel.: (310) 474-9111
Fax: (310) 474-8585
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com
bking@ahdootwolfson.com

*Attorneys for Advertiser Plaintiffs Surefreight Global LLC d/b/a Prana Pets; Hanson Law Office, as successor-in-interest to Hanson Law Firm, PC; and Vitor Lindo*