# Keller | Lenkner



April 6, 2022

**VIA ECF**

The Honorable P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan, United States Courthouse
500 Pearl St., Courtroom 11D
New York, New York 10007

      **Re: *In re Google Digital Advertising Antitrust Litig.*, 1:21-md-03010 (S.D.N.Y.)(PKC)**
      **This Document Relates to: ALL ACTIONS**

Dear Judge Castel:

      Pursuant to Your Honor's Individual Practice 3B and Local Rule 37.2, the undersigned Plaintiffs write to request a pre-motion conference regarding plaintiffs' anticipated motion for entry of a confidentiality order to govern the actions in this MDL. No conference is scheduled at this time.

      At the September 24, 2021 initial status conference, the Court ordered the Parties to negotiate a confidentiality order. 9/24/21 Tr. 30:5-23, Doc. 142. Since then, the Parties have expended considerable effort in an attempt to agree upon all aspects of a confidentiality order.[1] Although the Parties have agreed upon the vast majority of provisions, seven disagreements remain:

1. Despite the formation of an MDL which Google petitioned for, Google now wants a prior Texas state court protective order and confidentiality agreement between the State Plaintiffs and Google to apply to the pre-complaint Investigation Materials which have already been produced to all Plaintiffs in this MDL. This would mean the State Plaintiffs would be governed by one set of orders/agreements, and the private Plaintiffs by another. This Court should reject Google's balkanized approach, which is wholly inconsistent with the MDL process. Plaintiffs' proposed Confidentiality Order makes

---

[1]     Pursuant to Your Honor's Individual Practice 3B and Fed. R. Civ. P. 37(a)(1), the Plaintiffs certify that we attempted in good faith to reach agreement on all issues without Court action. In the interests of brevity, we have not set out the full details of the meet and confer process or provided a chronology of the Parties' negotiations (which lasted over five months). Plaintiffs will do so if the Court requests.

The Honorable P. Kevin Castel
April 6, 2022
Page 2

1. clear that it supersedes all prior protective orders and applies to *all* discovery (including the Investigation Materials) and *all* Parties in this MDL.[2]

2. Rule 26(b)(5)(B) expressly allows parties to sequester clawed back documents for the purpose of presenting a prompt challenge of the clawback to a court. Defendants, however, want to deprive Plaintiffs of this ability. This Court should follow the example of many other MDL courts, and Rule 26 itself, and include a provision in the Confidentiality Order that permits the Receiving Party to sequester clawed back Documents and utilize them solely for purposes of a challenge.

3. Even though Google itself sought (and received) a protective order provision in the *U.S. v. Google* search case allowing a party's Highly Confidential (*HCI*) and Confidential Information (*CI*) to be shown to any current employee of that Party, the Defendants oppose such a provision here. They also wish to eliminate Plaintiffs' rights to show HCI and CI to those with "knowledge" of the HCI and CI, and to limit those who may see HCI and CI to those who had "lawful" access to the material, whatever that means. These restrictions should be rejected and the Parties should be permitted to show HCI and CI to a Party's current employees, and whoever had access to, or otherwise had knowledge of, the HCI and CI.

4. Google wants *all* deposition testimony to be designated at least as CI, even though not all of it will qualify as CI. This position has no basis in law or logic and should be rejected.

5. Without a shred of evidence that any Party to this MDL has committed any wrongdoing, Google seeks a draconian and unnecessary provision allowing the Court to conduct a "forensic examination" of the Parties and their electronic devices in the event there is a violation of this Court's eventual confidentiality order. All Parties who access HCI and CI will already be subject to the Court's jurisdiction, and this Court already has the authority to investigate and punish any violators of its Orders. Plaintiffs and Facebook oppose a forensic examination requirement, and it should be rejected by the Court.

6. The Court also should reject Facebook's attempt to include a provision that allows a Party to limit Document productions in this MDL to only certain individual Actions. Like Google's efforts to require different confidentiality orders for different Parties (*see* point one above), this provision defeats the purpose of an MDL and has no place in the Court's order.

---

[2] Attached as Exhibit 1 is a clean copy of the confidentiality order that Plaintiffs respectfully request the Court enter (hereafter *Confidentiality Order*). Unless otherwise defined herein, all defined terms have the same meaning as those in the proposed Confidentiality Order.

The Honorable P. Kevin Castel
April 6, 2022
Page 3

    7. After indicating that additional protections for Source Code would be necessary, and despite being provided with Plaintiffs' proposal for such protections in December 2021, Google has refused to engage with Plaintiffs on Source Code. Rather than reward this intransigence, the Court should adopt Plaintiffs' Source Code provisions.

Plaintiffs also note that ¶ 24 of the proposed Confidentiality Order—which the Parties agree on—deviates in certain respects from the Court's Individual Practice 4 regarding sealing of court filings. Given the significant amount of CI and HCI at issue in this case, the Parties propose a sealing procedure tailored to reduce their burden when filing confidential information. The proposed sealing provisions maintain the spirit of the Court's Individual Practices regarding sealing, requiring that, among other things, the Party which requests that its information remain sealed provide an affidavit and memorandum of law demonstrating that the standards for sealing have been met, and specifically addressing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006).

Contemporaneous with this filing, the Parties have also filed a joint submission that identifies the areas of agreements and disagreements between the Parties. Below, we address the seven remaining issues on which Plaintiffs seek the Court's resolution.

1. *This Confidentiality Order should supersede prior orders and agreements and govern the Investigation Materials for all Parties in the MDL.*

As the Court is aware, in their pre-suit investigation, the State Plaintiffs served Google and various third parties with civil investigative demands (*CIDs*). In response, Google produced over 150,000 Documents (more than 1.2 million pages) to the State Plaintiffs.[3] In February 2020, in connection with those productions, a Texas state court entered a protective order governing Texas's treatment and use of Google's CID productions.[4] At the same time, the other State Plaintiffs (as well as sovereign non-State Plaintiffs), all of whom weren't subject to jurisdiction in Texas state court or subject to the Texas State Court Order, entered into a separate confidentiality agreement with Google.[5] Both the Texas State Court Order and the Multistate Confidentiality Agreement were designed for a limited purpose (the pre-suit investigation); neither contain provisions dealing with a wide variety of uses of CI and HCI.

In December 2020, the State Plaintiffs filed their complaint against Google in the Eastern District of Texas and the case was assigned to Judge Sean Jordan. On April 14, 2021, Judge Jordan resolved certain disputes between Google and State Plaintiffs concerning a protective order and

---

[3]    The Documents Google and others produced to the States during their investigation, including those Google produced in response to the CIDs, are defined herein as the "Investigation Materials," a term also defined at ¶ 1(k) in the proposed Confidentiality Order.

[4]    A copy of the Texas state court protective order (*Texas State Court Order*) is attached as Exhibit 2. Paragraph 14 of that order allows Google and Texas to modify the order.

[5]    A copy of the "Multistate Confidentiality Agreement" is attached as Exhibit 3. Paragraph 9 of the agreement allows the signatories to modify the agreement.

The Honorable P. Kevin Castel
April 6, 2022
Page 4

entered a protective order. [4:20-cv-957, Doc. 101 (E.D. Tex.)] (*EDTX Protective Order*). The clear intention of that protective order was to govern the Investigation Materials going forward. The EDTX Protective Order contains an identical definition of Investigation Materials as that in the Confidentiality Order, and contains numerous provisions concerning the treatment of the Investigation Materials.

All Parties seem to agree that the new Confidentiality Order will govern the Actions going forward, including all further Document productions, and will supersede the EDTX Protective Order. Where the Parties diverge, however, is the treatment of the Investigation Materials (produced before the EDTX Protective Order and the creation of this MDL), including as to issues such as clawbacks. So as not to have conflicting protective orders as to the Investigation Materials, Plaintiffs offered a common-sense solution: include provisions in the Confidentiality Order that provide that the Investigation Materials are deemed produced in this case and governed by the proposed Confidentiality Order (*see, e.g.,* ¶1(k)).[6] Google rejected this, apparently preferring instead a balkanized approach in which some Parties in this MDL would be governed by one set of orders, and different Parties by other orders.[7] But, this defeats the purpose of an MDL.

The private Plaintiffs were not parties to the prior Texas State Court Order or Multistate Confidentiality Agreement. Therefore, if Google were to have its way, as to the Investigation Materials, the State Plaintiffs will continue to be bound by the Texas State Court Order and/or Multistate Confidentiality Agreement *as well as* the new Confidentiality Order (which are in conflict in some respects), but the private Plaintiffs would be bound only by the new Confidentiality Order—creating different requirements for different Plaintiffs. This Court's Interim Protective Order governing Google's production of Investigation Materials to private Plaintiffs explicitly provides that the Confidentiality Order entered in this MDL will govern the Investigation Materials as to private Plaintiffs, once entered. Doc. 192, at ¶ 3. It isn't hard to foresee the (avoidable) complications arising from Google's approach. For example, it could prevent the State Plaintiffs and the private Plaintiffs from filing joint pleadings containing HCI and CI in the Investigation Materials, since they would be governed by different orders. When Google argued for this MDL it said: "Multidistrict centralization and transfer eliminates duplicative discovery, avoids conflicting rulings and schedules, reduces litigation costs, and saves time and effort for the parties, the witnesses, and the courts." 21-MDL-3010 (J.P.M.L.), Doc. No. 1-1 at 9. Yet, Google's position would result in conflicting rulings, increase litigation costs, and cause the Parties and the Court to expend extra effort. Having obtained the MDL it asked for, Google can't now run from the consequences of its choices.

---

[6] In discovery, while the State Plaintiffs' case was in the Eastern District of Texas, they served Google with document requests that requested that Google reproduce its Investigation Materials in their case to ameliorate the risk that Google would play games with the Investigation Materials (as it is doing now). Google objected to these requests.

[7] Facebook takes no position on the application of the Texas State Court Order or Multistate Confidentiality Agreement.

The Honorable P. Kevin Castel
April 6, 2022
Page 5

Therefore, the Court should order that the Investigation Materials are deemed produced in this MDL as to all Parties, they are to be governed by the Confidentiality Order, and that the Confidentiality Order supersedes all prior protective orders and confidentiality agreements.

2. *The Parties should be permitted to sequester a clawed back document solely for purposes of challenging the clawback assertion.*[8]

If the Receiving Party receives a clawback request, Rule 26(b)(5)(B) permits the receiving party to sequester a copy of the clawed back document for purposes of challenging the clawback. This is routinely done in large multi-party cases and MDLs (probably because, again, that's what Rule 26(b)(5)(B) expressly permits).[9] *See* Fed. R. Civ. P. 26(b)(5)(B) (permitting receiving parties to "sequester" and "present the [clawed back] information to the court"); *United States Home Corp. v. Settlers Crossing, LLC*, 2012 WL 5193835, at *5 (D. Md. Oct. 18, 2012) ("It would be wholly illogical to read Rule 26(b)(5)(B) as prohibiting the use of documents 'subject to a claim of privilege' when resolving that very claim of privilege."). During meet and confers, Defendants' stated reason for opposing Plaintiffs' proposal was that it would lead to discovery disputes. It appears that by discovery disputes, Defendants meant challenges to its clawback assertions. Translation: Defendants want to deprive Plaintiffs of the ability to challenge their clawbacks.

How to treat clawbacks is already a live issue. In January 2022, Google sought to clawback from the State Plaintiffs 20 documents from the Investigation Materials it produced nearly two years ago. It claimed that its clawback request should be governed by the Texas State Court Order, the Multistate Confidentiality Agreement (even though neither of those documents even address clawbacks), and state law. Upon receiving Google's request, the State Plaintiffs immediately isolated the clawed back documents. Those documents remain isolated and, pending the disposition of the clawback request, State Plaintiffs have committed to use them only to challenge the clawback. During a February 8 meet and confer on the clawbacks in an attempt to determine the appropriate procedure and venue for Plaintiffs' clawback challenge, the State Plaintiffs pointed out that the Investigation Materials were now governed by the EDTX Protective Order and the Federal Rules and any challenge to the clawback should be brought in this Court. The State Plaintiffs also noted that if the Investigation Materials were governed by the Texas State Court Order and Multistate Confidentiality Agreement, Google would need to litigate its clawback requests in each of the 17 different State Plaintiffs' home courts, since States other than Texas weren't subject to jurisdiction in Texas state court. Google agreed it would need to bring separate

---

[8] The clawback provision in the Confidentiality Order appears at ¶ 12(c). Both Google and Facebook dispute Plaintiffs' clawback provision.

[9] In the interests of brevity, Plaintiffs have not attached orders from those other MDLs here. If the Court would like them, Plaintiffs will provide them.

The Honorable P. Kevin Castel
April 6, 2022
Page 6

challenges in the State Plaintiffs' individual state courts. The State Plaintiffs also requested that Google produce a privilege log as to the 20 documents. Google has declined to do so.[10]

The Defendants' approach is, essentially, to ask that Plaintiffs trust them when it comes to clawbacks and privilege calls. But, given Google's discovery conduct in this case already, its steadfast refusal to produce a privilege log, and, the serious accusations leveled against Google in another case, it is too much to ask Plaintiffs to trust the Defendants on privilege issues. In *United States, et. al v. Google LLC*, 1:20-CV-03010 (D.D.C.), the plaintiffs there recently moved for sanctions against Google for abusing privilege assertions. The DOJ, joined by several of the same State Plaintiffs in this action, alleged that Google adopted a formal corporate policy called "Communicate-with-Care" under which its executives and employees are instructed to copy an attorney on sensitive communications and to make pretextual requests for guidance. *See generally* 1:20-CV-03010 (D.D.C.), Doc. 326-1. The fact that copied attorneys almost never responded to these requests, the plaintiffs there allege, clearly demonstrates that Google's policy is an illegitimate attempt to shield important, non-privileged documents from legitimate discovery. *Id.* at p. 13. This scheme was seemingly followed by employees at all levels of the company, including Google's CEO (Sundar Pichai) (*id.* at 10) and its Chief Business Officer (Phillip Schindler) (*id.* at 15–16). When plaintiffs there challenged nearly 81,000 privilege entries on Google's initial volume of its privilege log, Google reversed its privilege claims for "tens of thousands of documents." *Id.* at 22.

To avoid clawback challenges from having to be litigated in state courts throughout the country, and to provide Plaintiffs with what Rule 26(b)(5)(B) expressly allows, the Confidentiality Order should provide that, as to both Investigation Materials *and* Documents produced in the future, the Receiving Party may sequester a copy of any clawed back Documents *solely* for purposes of challenging the clawback.

3. *Plaintiffs should be permitted to examine deponents regarding their employer's information or information to which they had access or knowledge.*

In paragraphs 14–15 of the Confidentiality Order, Plaintiffs propose that a Party be allowed to show CI or HCI to deponents who are: (a) current employees of the Designating Party (¶¶ 14(j) & 15(j)); and (b) a Person who the information itself indicates, or who the Receiving Party has a good-faith basis to believe, had "access" to or "knowledge" of the information (¶¶ 14(h)-(i) & 15(h)-(i)). The Defendants disagree.

Defendants' efforts to restrict Plaintiffs' ability to depose witnesses would unduly burden Plaintiffs' ability to obtain testimony from employees relating to their own employer's information. Defendants are unlikely to suffer any conceivable competitive harm from their own current employees seeing their confidential facts. And, indeed, Google recently sought nearly the exact

---

[10] The State Plaintiffs have been seeking a privilege log from Google as to the whole corpus of Investigation Materials since 2020, and private Plaintiffs recently requested such a log. The Plaintiffs will continue their pursuit of privilege logs from Google and if Google continues its intransigence, Plaintiffs will move this Court to compel Google to produce such a log.

The Honorable P. Kevin Castel
April 6, 2022
Page 7

same provisions that Plaintiffs seek here concerning current employees. In *United States v. Google*, 1:20-cv-03010-APM (D.D.C.), Google specifically requested that the protective order be modified "to clarify that during a deposition counsel may show any document designated 'Highly Confidential' or 'Confidential' by a Party or Non-Party to 'persons *who are current employees of the Party or Non-Party that produced the document.*'" (*Id.*, Doc. 285 at p. 30 (emphasis added).) Google explained that the change was necessary to "minimize the total number of depositions and avoid potential disputes that may arise" over whether a particular employee was the "author, addressee, recipient, custodian or source of [a] document," or "previously had lawful access to" it, because "incomplete metadata [may] not identify some or all of the custodians" or "may indicate that the document was stored in a shared drive or database, without revealing which individual employees" uploaded or had access to it. (*Id.*, at pp. 30–31.) Google's justifications for these provisions in *U.S. v. Google* apply with equal force in this case.

Further, Defendants' insistence that a deponent's access to CI or HCI must have been "lawful" is hopelessly vague and represents a solution in search of a problem. The Party taking the deposition is unlikely to know if the deponent's access to information was "lawful." Only the Designating Party is likely to know of non-disclosure agreements or other similar restrictions. Defendants respond that the Party taking the deposition need only have a "good faith basis" to believe that the deponent had lawful access, but that does nothing to eliminate the one-sided nature of their proposal: Defendants could simply claim that a witness didn't have lawful access, which would potentially vitiate any good faith belief (and lead to collateral disputes before this Court as to whether the access was lawful).

Defendants' position would preclude, for instance, use of CI or HCI during the deposition of a whistleblower who, in Defendants' view, *un*lawfully accessed such information. Such concerns are hardly hypothetical given Frances Haugen's well-known publication of Facebook's otherwise confidential information. Defendants' restrictive proposal would prevent Plaintiffs from asking Haugen about information that she disclosed to many news outlets, simply because Defendants contend (rightly or wrongly) she did not have "lawful" access to the Documents in the first place.

If a witness had access to HCI or CI—whether lawful or not—or otherwise knew that information, there is no basis to shield the witness from it, as the cat is already out of the bag. For instance, Defendants' opposition to allowing disclosure of CI or HCI to those aware of it would prevent introduction of such material during the deposition of a witness not otherwise entitled to access it (say, a former employee), even where that witness testifies that he or she knows of that very material. Showing a former employee or third-party deponent information that the witness already knows about will cause no more harm to Defendants than showing their information to current employees, or to witnesses who independently have access to the information. The Court should not endorse any of these absurd restrictions.

The Confidentiality Order should allow use of CI or HCI during depositions of a Designating Party's current employees, those who had access to or knowledge of the CI or HCI.

The Honorable P. Kevin Castel
April 6, 2022
Page 8

4. *The Court should reject Google's request to cloak non-Confidential deposition testimony with a "Confidential" designation.*[11]

The Parties have agreed that for 45 days following a deposition, the entire transcript of the deposition "will be treated as Highly Confidential." *See* Confidentiality Order, ¶7(b). During that 45-day period, the Parties also agree that any Party or Non-Party may designate as CI or HCI, any portion of the transcript or exhibits which contain CI or HCI. *Id.* Google, however, takes the extraordinary view that, once the 45-day period expires, any testimony <u>not</u> designated as HCI or CI defaults to CI. The Court should reject Google's request for what is in essence a "confidentiality presumption" that lacks any support in the law.

Not every word or phrase spoken at a deposition will qualify as CI. Indeed, not only is "Confidential Information" a defined term in the Order, and limited by Rule 26(c), *see id.*, ¶1(b), but the parties have *agreed* that "[i]ndiscriminate designations are prohibited." *See id.*, ¶7(a). Designating the entire transcript as confidential, without regard to whether such material is confidential, is the very essence of indiscriminate.

Consider, for example, questions posed to a Google employee regarding their work history based on the employee's public-facing LinkedIn profile. This material *doesn't* qualify for protection under Rule 26(c), but would be treated as CI under Google's proposal. Google's request to presume that entire deposition transcripts are Confidential finds no support in Rule 26(c) or the other provisions of the Order. *See Robinson v. De Niro*, 2022 WL 274677, at *4 (S.D.N.Y. Jan. 26, 2022) (declining to seal entire deposition transcript and noting that "[o]ther portions of the deposition transcript are not particularly sensitive and cover routine or publicly available information."); *Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2017 WL 3738451, at *3 (S.D.N.Y. Aug. 10, 2017)(regardless of whether "deposition transcripts ... are judicial documents such that a presumption of public access would attach[,]" a party or non-party seeking confidential treatment of such transcripts must still "carr[y] their burden of demonstrating that the information at issue, [including information] which has long been publicly available, is entitled to confidential treatment[.]").

Google claims it would be too burdensome for it to review each transcript to determine what should be designated confidential. However, Google has to review each line of each transcript anyway to determine what is HCI. Thus, its burden arguments lack merit and the Court should reject its default confidentiality request.

5. *The Court already possesses the power to punish violators of its Orders, rendering Google's forensic examination provisions unnecessary and draconian.*

When the State Plaintiffs' case was before Judge Jordan, he ordered the State Plaintiffs and Google to negotiate a comprehensive protective order. [4:20-CV-00967, Doc. 35, at p. 3 (E.D.

---

[11] Facebook takes no position on this issue.

The Honorable P. Kevin Castel
April 6, 2022
Page 9

Tex.)]. During those negotiations, Google demanded that prior to disclosing Google's CI or HCI to anyone, the States disclose to Google the names of all individuals they wished to provide access to Google's information. [*Id.*, Doc. 83, at pp. 1-4]. Google claimed it needed such protections as a result of screenshots of the State Plaintiffs' complaint (which contained Google's confidential information) having been disclosed to the media. *Id.* However, there was zero evidence that State Plaintiffs were responsible for the disclosure. The State Plaintiffs weren't the only ones with access to Google's confidential information that it produced in the pre-suit investigation. Other states who were part of the pre-suit investigation (but didn't join as plaintiffs in the State Plaintiffs' case), as well as the Department of Justice and Google insiders, also had access to Google's information. *Id.* at pp. 6-7.

Judge Jordan rejected both State Plaintiffs' and Google's proposals, and instead included provisions permitting the Court to conduct a forensic examination of the Parties' electronic devices in the event of a leak of CI or HCI. [Doc. 101, at p. 13.] Neither the State Plaintiffs nor Google voluntarily agreed to these provisions. Further, the private Plaintiffs, who weren't ever before Judge Jordan, indisputably had nothing to do with the leak and never agreed to the forensic examination provisions. Yet, Google now seeks these same provisions in this Confidentiality Order—provisions opposed by all Plaintiffs, as well as Facebook.

The acknowledgments that accompany the proposed Confidentiality Order—which all who obtain access to any CI or HCI in this case must sign—contain agreements that accessing protected information will subject themselves to the jurisdiction of this Court. Additionally, this Court already has the power to punish violators of its Orders**.** *See, e.g., Thompson v. United States Dep't of Hous. & Urban Dev.,* 404 F.3d 821, 833 (2d Cir.2005) ("[C]ourts do not sit for the idle ceremony of making orders and pronouncing judgments, the enforcement of which may be flouted, obstructed, and violated with impunity, with no power in the tribunal to punish the offender.")(citation omitted). Thus, the forensic provisions Google seeks are unnecessary.[12]

Accordingly, Plaintiffs oppose the inclusion of Confidentiality Order provisions relating to forensic examination.

---

[12] In its zeal to try to justify the necessity of these provisions, Google made a misrepresentation to this Court, which the State Plaintiffs have asked Google to correct. Specifically, in its December 21, 2021 letter opposing the entry of an interim protective order between the private Plaintiffs and Google, Google stated that "Google recently learned that [State] Plaintiffs failed to notify some third parties that their highly confidential information (produced to Texas OAG) formed part of the recently filed Third Amended Complaint." [Doc. 191, at p. 4.] This is categorically false. *Prior* to filing the Third Amended Complaint, Texas OAG employees notified *each* third party whose information appeared in the complaint. On January 20, 2022, the State Plaintiffs asked Google to correct this misstatement, but Google has declined to do so. Google's misrepresentation cannot serve as a basis for an onerous and superfluous forensic audit provision.

The Honorable P. Kevin Castel
April 6, 2022
Page 10

> 6. *The Court should reject Facebook's attempt to allow Parties to unilaterally limit their productions to certain Actions.*

Facebook seeks a provision allowing it to "designate any Litigation Materials that it produces as produced only in connection with one or more particular Actions if it believes in good faith that the material is not properly produced more broadly, in which case the Litigation Materials shall not be disclosed or used in any other Actions." This proposal not only contradicts the JPML's order centralizing the Actions in this Court, but it is also inefficient and unworkable.

The JPML centralized these Actions to "promote the just and efficient conduct of this litigation." *In re Digital Advert. Antitrust Litig.*, 2021 WL 3523450, at *5 (J.P.M.L. Aug. 10, 2021). It expressly recognized that, whether or not each case names Facebook as a defendant, "all cases will require discovery from Facebook because of the questions surrounding Facebook's status as a competitor; in at least 16 actions, discovery also will cover the Google-Facebook agreement." *Id.* at *2. The JPML explained in part that "the alleged 'header bidding' threat to Google's ad exchange that the Google-Facebook agreement allegedly neutralized is at issue in all 19 actions." *Id.* at *3. Facebook also supported the creation of an MDL. (MDL No. 3010, Doc. 75).

In addition to defeating the purpose of an MDL, Facebook's proposal is also inefficient and unworkable. It would impede Plaintiffs' ability to coordinate this Action and would give rise to additional (avoidable) disputes when Plaintiffs inevitably challenge Defendants' attempt to produce certain materials in some, but not all, Actions. Particularly given these foreseeable effects, there is no place for a provision allowing a party to designate material produced in only a subset of MDL Actions.

Notably, it was Facebook that proposed this provision *after* Google and Plaintiffs had already dropped it from the Confidentiality Order. Plaintiffs provided Defendants with the first draft of the Confidentiality Order on October 15, 2021 without this provision. Even though Google now takes no position on the issue, it was Google which first proposed such a provision on November 15, 2021 when it provided its first response to Plaintiffs' October 15 proposal.[13] Following a meet-and-confer, Plaintiffs transmitted a revised Confidentiality Order on December 7, 2021 which dropped the provision. On January 13, 2022, following several meet-and-confers, and various concessions made by both Plaintiffs and Google, Google provided a revised Confidentiality Order which did not include this provision and Plaintiffs rightfully believed that this provision had been negotiated away. Despite receiving the draft Confidentiality Order on October 15, 2021, it wasn't until *three months later* (January 25, 2022), that Facebook provided its *first* comments to the draft. And, at that time, Facebook reinserted a limitations of Actions provision, along with numerous other significant substantive changes. Facebook's reinsertion of this language, and its other substantive proposed revisions, delayed the negotiations over the

---

[13] Although all Plaintiffs are coordinating their efforts, and working together well, Google and Facebook don't seem willing to cooperate with each other, forcing Plaintiffs to deal with each Defendant separately. This has significantly delayed progress on many fronts.

The Honorable P. Kevin Castel
April 6, 2022
Page 11

Confidentiality Order. Facebook's delay should not be rewarded. The misguided provision should be dropped, as Plaintiffs and Google have already agreed.

The Court should reject the Facebook's proposal to include this limitation of Actions provision in the Confidentiality Order. Should it be necessary for Defendants to produce Documents to a more limited group of Plaintiffs, they can either seek consent of the Parties to do so or move for a protective order.

7. *The proposed Confidentiality Order should include provisions on Source Code.*[14]

Since Plaintiffs first provided Google with a proposed Confidentiality Order in October 2021, Plaintiffs have made two separate proposals governing the confidentiality of Source Code. Google has yet to make *any* counter-proposal and has consistently requested that Source Code be taken off the table. Although Google's approach is consistent with its strategy of delay, it is inefficient, inconsistent with this Court's instructions to the parties, and likely to derail any discovery schedule. 9/24/21 Hr'g Tr. at 30:21-22, Doc. 142; *see also* MANUAL FOR COMPLEX LITIGATION § 11.43 (cautioning that "procedures to accommodate . . . protection of . . . trade secrets" should be addressed "before discovery begins" lest those "matters . . . later disrupt the discovery schedule"); *Corley v. Google, Inc.*, 2016 WL 3421402, at *2 (N.D. Cal. June 22, 2016) ("Google's suggestion—to hold off on setting boundaries for source-code discovery until future disputes about source-code discovery have developed—seems likely to unduly delay this case and to unnecessarily increase litigation costs.").

In cases like this one—alleging a defendant used software to commit wrongdoing, including antitrust violations—confidentiality orders routinely address source code, as should the order here. *Cf.* Lee A. Hollaar, *Requesting and Examining Computer Source Code*, 4 Expert Evid. Rep. 238, 238-40 (2004), http://digital-law-online.info/papers/lah/BNAsourcecode.pdf (explaining "[t]he treatment of source code needs to be considered in the development of any protective order in a software-related case" including in "antitrust litigation"). Google employs computerized systems to manipulate advertising auctions, distort bids and prices, and drive both revenue and user traffic away from customers Google considers non-compliant. *See, e.g.*, State Plaintiffs' Third Amended Complaint [Doc. 195], at ¶¶ 297–311. The State Plaintiffs previously requested Google Source Code nearly two years ago in one of their CIDs. Plaintiffs in this MDL will likewise request access to Google's Source Code—and the coder commentary that accompanies it—as it will be direct evidence of Google's relevant conduct. Google, for its part, has already indicated that the design of its products will be a major component of its defense to the Actions. [Doc. 218, at pp. 20–27]. The Confidentiality Order therefore should address Source Code, instead of kicking the can down the road.

In their first draft of the Confidentiality Order, Plaintiffs initially proposed that Source Code receive the same level of protection as all other HCI. That was eminently reasonable, since

---

[14] Facebook takes no position on the issue of Source Code.

The Honorable P. Kevin Castel
April 6, 2022
Page 12

that is what Google already agreed to in the Eastern District of Texas and with DOJ in its lawsuit regarding Google search. However, five weeks later, Google returned its redline of the Confidentiality Order and proposed, without explanation, that Source Code receive *additional* protections to be negotiated at some unstated future date. Rather than put off negotiations, Plaintiffs provided Google in early December with a proposed Source Code protocol. In designing that protocol, Plaintiffs relied on the Northern District of California's model protective order and two protective orders from cases involving Google: *Kewazinga v. Google*, 20-CV-1106 (S.D.N.Y.) and *Oracle v. Google*, 10-CV-3561 (N.D. Cal.).

Since then, Google has refused to provide any counter-proposal for the additional Source Code protections Google claimed were necessary. Instead, Google has demanded that Plaintiffs provide a line-by-line justification of their proposal and that Plaintiffs prove the relevance of Source Code to their claims; insisted that its motion to dismiss would resolve all issues to which Source Code may be relevant; and, in each communication with Plaintiffs, proposed taking Source Code off the table. Google also objects to Plaintiffs' proposed modifications to the model source code orders geared to permit Plaintiffs to use Source Code discovery more effectively. In a last-ditch effort to put off serious negotiation of a Source Code protocol, Google offered in early March to agree that any Source Code discovery would be governed by the Northern District of California model order until the Parties agreed on a Source Code protocol. That model protocol is not acceptable to Plaintiffs, and agreeing to a default protocol favorable to Google would incentivize it to drag out negotiations far longer than it already has.

The Court directed the Parties to negotiate a confidentiality order for the Actions. In all other aspects of the negotiations, the Parties have traded proposals for how materials or matters should be addressed. Google has not done so with respect to Source Code. Google's persistent efforts to put off negotiations regarding a major aspect of expected discovery undermine the promised efficiencies of both the MDL and this Court's thoughtful plan of action to move these cases forward. Plaintiffs therefore respectfully request that the Court enter their Source Code proposal attached as Appendix C to the Confidentiality Order.

Plaintiffs are available to answer any further questions the Court may have.

The Honorable P. Kevin Castel
April 6, 2022
Page 13

Respectfully submitted,

| | |
|---|---|
| /s/ W. Mark Lanier | /s/ Ashley Keller |
| W. Mark Lanier | Ashley Keller |
| New York Bar No.: 4327284 | ack@kellerlenkner.com |
| Mark.Lanier@LanierLawFirm.com | Brooke Clason Smith |
| Alex J. Brown | brooke.smith@kellerlenkner.com |
| New York Bar No.: 4593604 | Jason A. Zweig |
| Alex.Brown@LanierLawFirm.com | New York Bar No.: 2960326 |
| Zeke DeRose III | jaz@kellerlenkner.com |
| Zeke.DeRose@LanierLawFirm.com | 150 N. Riverside Plaza, Suite 4100 |
| Tower 56 | Chicago, Illinois 60606 |
| 126 East 56th Street, 6th Floor | (312) 741-5220 |
| New York, NY 10022 | Zina Bash |
| (212) 421-2800 | zina.bash@kellerlenker.com |
| THE LANIER LAW FIRM, PLLC | 111 Congress Avenue, Suite 500 |
| | Austin, TX 78701 |
| | (512) 690-0990 |
| | KELLER LENKNER LLC |

*Counsel for Texas, Idaho, Indiana, Louisiana (The Lanier Law Firm only), Mississippi, North Dakota, South Carolina, and South Dakota*

*On behalf of the State Plaintiffs*

| | |
|---|---|
| /s/ Dena C. Sharp | /s/ John Thorne |
| | John Thorne |
| Dena C. Sharp (*pro hac vice*) | Daniel G. Bird |
| Jordan Elias (*pro hac vice*) | Daniel V. Dorris |
| Scott M. Grzenczyk (*pro hac vice*) | Bethan R. Jones |
| **GIRARD SHARP LLP** | Mark P. Hirschboeck |
| 601 California Street, Suite 1400 | Eliana M. Pfeffer |
| San Francisco, CA 94108 | Eric J. Maier |
| Tel: (415) 981-4800 | KELLOGG, HANSEN, TODD, FIGEL & |
| Fax: (415) 981-4846 |   FREDERICK, P.L.L.C. |
| dsharp@girardsharp.com | 1615 M Street NW, Suite 400 |
| jelias@girardsharp.com | Washington, DC  20036 |
| scottg@girardsharp.com | Tel: (202) 326-7900 |
| | Fax: (202) 326-7999 |
| Tina Wolfson (TW-1016) | jthorne@kellogghansen.com |

The Honorable P. Kevin Castel
April 6, 2022
Page 14

Theodore W. Maya (*pro hac vice*)
Bradley K. King (BK-1971)
**AHDOOT & WOLFSON, PC**
2600 West Olive Ave., Suite 500
Burbank, CA 91505
Tel.: (310) 474-9111
Fax: (310) 474-8585
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com
bking@ahdootwolfson.com

*Interim Co-Lead Counsel for Advertiser Plaintiffs*

/s/ Caitlin G. Coslett
Eric L. Cramer
ecramer@bm.net
Michael C. Dell'Angelo
mdellangelo@bm.net
Caitlin G. Coslett
ccoslett@bm.net
Patrick F. Madden
pmadden@bm.net
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000

Philip C. Korologos
pkorologos@bsfllp.com
Brianna S. Hills
bhills@bsfllp.com
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300

David Boies
dboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200

Jeffrey A. Lamken
Caleb Hayes-Deats
MOLOLAMKEN LLP
Tel: (202) 556-2000
Fax: (202) 556-2001
jlamken@mololamken.com

*Counsel for Associated Newspapers, Ltd. and Mail Media, Inc.*

/s/ Serina M. Vash
Serina M. Vash
New York Bar No.: 2773448
svash@hermanjones.com
153 Central Avenue, # 131
Westfield, NJ 07090
(404) 504-6516
HERMAN JONES LLP

John C. Herman
jherman@hermanjones.com
3424 Peachtree Road, N.E., Suite 1650
Atlanta, GA 30326
(404) 504-6500
HERMAN JONES LLP

Paul T. Farrell, Jr.
paul@farrellfuller.com
Michael J. Fuller, Jr.
mike@farrellfuller.com
1311 Ponce De Leon, Suite 202
San Juan, PR 00907
(939) 293-8244
FARRELL & FULLER, LLC

/s/ Stuart A. Davidson
Paul J. Geller
pgeller@rgrdlaw.com
Stuart A. Davidson
sdavidson@rgrdlaw.com

The Honorable P. Kevin Castel
April 6, 2022
Page 15

Jesse Panuccio
jpanuccio@bsfllp.com
BOIES SCHILLER FLEXNER LLP
1401 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 895-7580

Mark C. Mao
mmao@bsfllp.com
Sean P. Rodriguez
srodriguez@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6820

Sabria A. McElroy
smcelroy@bsfllp.com
BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 377-4216

*Interim Co-Lead Counsel for the Publisher Class*

Alexander C. Cohen
acohen@rgrdlaw.com
Maxwell H. Sawyer
msawyer@rgrdlaw.com
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
(561) 750-3000
ROBBINS GELLER RUDMAN & DOWD LLP

David W. Mitchell
davidm@rgrdlaw.com
Steven M. Jodlowski
sjodlowski@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058
ROBBINS GELLER RUDMAN & DOWD LLP

Robert P. Fitzsimmons
bob@fitzsimmonsfirm.com
Clayton J. Fitzsimmons
clayton@fitzsimmonsfirm.com
Mark A. Colantonio
mark@fitzsimmonsfirm.com
1609 Warwood Avenue
Wheeling, WV 26003
(304) 277-1700
FITZSIMMONS LAW FIRM PLLC

*Counsel for Direct Action Newspaper Plaintiffs AIM Media Indiana Operating, LLC, AIM Media Midwest Operating, LLC, AIM Media Texas Operating, LLC, Brown County Publishing Company, Inc. and Multi Media Channels, LLC, Clarksburg Publishing Company, d/b/a WV News, Coastal Point LLC, Eagle Printing Company, Ecent Corporation, Emmerich Newspapers, Incorporated, J.O. Emmerich & Associates, Inc., Delta Democrat Publishing Company, Commonwealth Publishing Company, Inc., Delta Press Publishing Company, Inc., Newton County*

The Honorable P. Kevin Castel
April 6, 2022
Page 16

*Appeal Inc., Marion Publishing, Company, Yazoo Newspaper, Co., Inc., Sunland Publishing, Company, Inc., Simpson Publishing Co., Inc., Montgomery Publishing Co., Inc., Franklinton Publishing Co., Inc., Charleston Publishing Co., Inc., Clarion Publishing Company, Inc., Scott Publishing, Inc., Clarke Publishing, Inc., Hattiesburg Publishing, Inc., Tallulah Publishing, Inc., Louisville Publishing, Inc., Kosciusko Star-Herald, Inc., Enterprise-Tocsin, Inc., Grenada Star, Inc., Tate Record Inc., Flag Publications, Inc., Gale Force Media, LLC,*
*HD Media Company, LLC, Journal Inc., Robinson Communications, Inc., Something Extra Publishing, Inc., Rome News Media, LLC, Times Journal, Inc., Neighbor Newspapers, Savannah Publishing Co., Inc., Gould Enterprises, Inc., Union City Daily Messenger, Inc., Weakley County Press, Inc., and Southern Community Newspapers, Inc.*

CC: Counsel of Record