# Freshfields Bruckhaus Deringer US LLP

**Via ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Washington
700 13th Street, NW, 10th Floor
Washington, DC 20005-3960
T  +1 (202) 777-4500 (Switchboard)
   +1 (202) 777-4545 (Direct)
F  +1 (202) 507-5945
E  eric.mahr@freshfields.com
www.freshfields.com

April 6, 2022

Re:   *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC)

Dear Judge Castel:

We write pursuant to Your Honor's Order directing the Parties in the above-captioned action (the "MDL") to negotiate a protective order. ECF 129. The parties have submitted an agreed joint draft Order reflecting the parties' respective positions (the "Joint Order"), ECF 272-1, and Google's proposed Order is attached as Exhibit A. Pursuant to Your Honor's Individual Practices, we note that no conference is currently scheduled.

The history of this case shows that robust confidentiality protections are needed. Texas announced its investigation of Google on the steps of the U.S. Supreme Court in September 2019. Over the next 15 months, Texas' subpoenas to Google, Google's responses, and other non-public documents were leaked to various news outlets and covered by the press.

State Plaintiffs filed suit in the Eastern District of Texas in December 2020. Days later, part of an unredacted draft of the Complaint was leaked to at least two national newspapers. Both ran articles publicizing confidential Google and third-party information. This included portions of pre-suit Investigation Materials (as defined in Joint Order ¶ 1(k)) that Google had designated "Highly Confidential" and provided to the Office of the Attorney General for the State of Texas ("Texas OAG") pursuant to an "Agreed Protective Order" entered in Texas state court, Ex. B,[1] and which were shared with other investigating states and territories pursuant to a "Multistate Confidentiality Agreement"[2] with similar terms (together, the "Agreed State Protections").

---

[1] Agreed Protective Order, *Google v. Paxton*, No. D-1-GN-19-007654 (261st Dist. Ct., Travis Cnty., Tex. Feb. 21, 2020).

[2] In the Matter of the Multistate Investigation of Alphabet Inc. (Feb. 20, 2020) (between Google and various states, including State Plaintiffs).

Google raised its concerns with Judge Jordan,[3] who observed that "the protective order needs to be robust and arguably quite robust here, given the sensitivity of the information involved," and that this "unfortunate leak . . . underscores . . . just how robust the protections will need to be."[4] Judge Jordan then entered a Protective Order (the "E.D. Tex. Order") including a requirement that all viewers of Confidential and Highly Confidential Information consent to forensic examination in the event of a leak and a default designation of "Confidential" for deposition testimony (subject to later challenge).[5] The E.D. Tex. Order did not include any of the new provisions that Plaintiffs now pursue, such as detailed procedures for production of source code.

Google has agreed to dozens of changes at the request of Plaintiffs,[6] and has gone to great lengths to resolve outstanding issues without the need for Court intervention. Plaintiffs seek to water down both the protections that Judge Jordan deemed necessary in the E.D. Tex. Order and the protections (to which State Plaintiffs stipulated) in the Agreed State Protections pursuant to which the pre-suit Investigation Materials were produced. Google respectfully submits that this Court should keep those protections in place.

**1.    Forensic Examination (Paragraphs 10(b), (c), App. A, B)**

Google requests that the Court preserve Judge Jordan's forensics provision, Joint Order ¶¶ 10(b), (c), App. A, B. Although Texas represented that its investigation was "completely confidential" under Texas law,[7] that confidentiality was not maintained. *See supra* at 1. When Google observed that pre-suit Investigation Materials were leaked via the draft complaint, State Plaintiffs represented to Judge Jordan that they had "no qualm [with] anyone signing the [protective order], and it will include redress, and it will include the Court's ability to come down as a hammer," and that they would "ascribe to any kind of hammer the Court wants . . . and we are quick to say bring the hammer down if we violate [confidentiality]."[8] Judge Jordan accepted State Plaintiffs' invitation and, to dissuade further leaks, imposed a provision requiring anyone who views Confidential or Highly Confidential Information to acknowledge that their "documents and communications relating to this Action—and any electronic devices or accounts potentially containing such documents and communications—may be subject to a forensic investigation," and to identify those devices and accounts.[9]

---

[3] Tr. of Prelim. Scheduling Conference Proceedings at 23:3-24:6, *Texas v. Google*, No. 1:21-cv-6841-PKC (S.D.N.Y. Feb. 8, 2021), ECF 57.

[4] *Id.* at 29:4-8.

[5] Protective Order, ¶¶ 6(a), 9, 10, *Texas v. Google*, No. 1:21-cv-6841-PKC (S.D.N.Y. Apr. 14, 2021), ECF 101.

[6] Among other things, Google agreed to Plaintiffs' request for a modified sealing provision that represents a deviation from the default sealing procedures laid out in Paragraph 4 of Your Honor's Individual Practices. Joint Order ¶ 24.

[7] Tr. of Hr'g. on Google's Pet. for Protective Order at 43:3-5, 45:24-46:3, *Google v. Paxton*, No. D-1-GN-19-007654 (261st Dist. Ct., Travis Cnty., Tex. Jan. 22, 2020); *see also* Tex. Bus. & Com. Code Ann. § 15.10(i) (West).

[8] Tr. of Prelim. Scheduling Conference Proceedings at 26:4-7; 27:10-15, No. 1:21-cv-6841-PKC (S.D.N.Y. Feb. 8, 2021), ECF 57.

[9] Protective Order, App. A, ¶¶ 4-5, *Texas v. Google*, No. 1:21-cv-6841-PKC (S.D.N.Y. Apr. 14, 2021), ECF 101; *accord* Joint Order, App. A.

State Plaintiffs have now reversed course. They asserted during the meet and confer process that they see no further need for this provision, and that the Private Plaintiffs do not agree to it. But the risk of leaks and attendant need for "robust" protections have not diminished since Judge Jordan entered the E.D. Tex. Order. If anything, they have increased significantly now that 30 cases have been centralized and Google has provided Investigation Materials to Private Plaintiffs.

## 2. Confidentiality Designations (Paragraph 7(b))

Google requests that this Court adopt Google's proposal with respect to confidentiality designations for deposition testimony. The E.D. Tex. Order contained a provision that any deposition testimony not designated Highly Confidential would default to Confidential treatment, and Google requests that the Court order the same here. Joint Order ¶ 7(b). That provision is consistent with *Seattle Times Co. v. Rhinehart*, in which the Supreme Court observed that "pretrial depositions . . . are not public components of a civil trial" and are "conducted in private as a matter of modern practice." 467 U.S. 20, 33 (1984).

State Plaintiffs have reversed course on this issue, too. They stipulated to an identical provision in the proceedings before Judge Jordan and have articulated no reason why they cannot do so again here.[10] Given the subject matter of the case and "the sensitivity of the information involved,"[11] the majority of testimony elicited during depositions will likely qualify for Confidential treatment. Indeed, when Google asked Plaintiffs to articulate, during the meet and confer process, the types of testimony they anticipated would not qualify for Confidential treatment, the only example Plaintiffs provided was the deponent's background.

Plaintiffs' proposal makes no practical sense in litigation of this scale and subject matter. Plaintiffs have asserted in the meet and confer process that their proposal is intended to guard against the risk of over-designation. But that purported risk is an illusory one: There is no "unrestrained right to disseminate information that has been obtained through pretrial discovery," and a "litigant has no First Amendment right of access to information made available only for purposes of trying his suit." *Rhinehart*, 467 U.S. at 31-32. The history of this case has shown that the real—and far more relevant—risk is the potential for further leaks or misuse of Confidential or Highly Confidential Information. *Supra* at 1. Deposition testimony can always be de-designated. But once Confidential or Highly Confidential Information has been leaked into the public domain, that bell cannot be unrung.

In any event, Google's proposal addresses Plaintiffs' concerns about the risk of over-designation. *First*, Plaintiffs have the ability to challenge unwarranted designations, Joint Order ¶ 13. *Second*, to the extent that deposition transcripts are referenced in a judicial filing, the Parties will need to reassess those designations in light of the more stringent standard applicable under

---

[10] Joint Status Report Regarding Protective Order, *Texas v. Google*, No. 1:21-cv-6841-PKC (S.D.N.Y. Mar. 18, 2021), ECF 83.

[11] Tr. of Prelim. Scheduling Conference Proceedings at 29:5-6, *Texas v. Google*, No. 1:21-cv-6841-PKC (S.D.N.Y. Feb. 8, 2021), ECF 57.

*Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006). As the Court has observed, Google has, consistent with the Court's prior orders, "propose[d] only modest redactions" under that standard. ECF 175 at 2. *Third*, if this case were to reach the (presumptively public) trial phase where *Lugosch* concerns will be directly implicated, the Parties would be required to meet and confer with respect to a new Order governing the use of Confidential and Highly Confidential Information. Joint Order ¶ 26.

3. **Access to Highly Confidential Information and Confidential Information (Paragraphs 14 and 15)**

**Lawful access.** Google requests that Highly Confidential Information and Confidential Information can be shown to people who previously had "lawful" access to such information. Joint Order ¶¶ 14(h), 15(h). Plaintiffs, on the other hand, assert that such information can also be viewed by those who had access of any kind (whether lawful or unlawful). *See id*. That is improper, especially when viewed in light of the history of this case. In the unlikely circumstance that it is, in fact, appropriate to show Highly Confidential Information or Confidential Information to a person who previously had *unlawful* access to it, Plaintiffs can seek to do so through consent or court order. Joint Order ¶¶ 14(l), 15(m).

**Knowledge.** Plaintiffs also seek to show Highly Confidential Information and Confidential Information to people who had "knowledge" of the information at issue. *See* Joint Order ¶¶ 14(i), 15(i). That provision is vague and broad, and introduces an unacceptable level of subjectivity into the decision to share information. Under Google's proposal, Parties will be able to share Highly Confidential and Confidential information with the "author, addressee, recipient, custodian, or source" of the document (among others). *See* Joint Order ¶¶ 14 and 15. This is more than adequate, and any purported need to expand this sharing should be dealt with on a case-by-case basis.

**Employees.** Plaintiffs seek to introduce a provision that would allow "any employee" of a producing party to view any Highly Confidential Information or Confidential Information produced by that party. Joint Order ¶¶ 14(j), 15(j). Meta's proposal, to which Google does not object, addresses the only two situations that Plaintiffs have identified in which such disclosure would be proper *i.e.*, executive officers and depositions under Fed. R. Civ. P. 30(b)(6). Plaintiffs have not articulated any need for broader disclosure in this MDL.

4. **Clawbacks (Paragraph 12(c))**

Google requests that the Court enter an Order, consistent with Federal Rule of Civil Procedure 26 and governing case law, requiring that clawed-back documents be returned or destroyed and that the information contained in them only be used to the extent that the receiving party learned of the contents of the document in issue prior to the producing party's assertion of privilege. Joint Order ¶ 12(c). Plaintiffs, on the other hand, seek a provision that would exceed the bounds of permissible discovery under the Federal Rules and deprive Google of bargained-for protections.

Under Fed. R. Civ. P. 26(b)(5)(B) there is no general right to retain and use privileged documents as part of a privilege challenge. When challenging a clawback, "the party may use the content of the information *only to the extent permitted by the applicable law of privilege . . . and professional responsibility*." Fed. R. Civ. P. 26(b)(5) advisory committee's note to 2006 amendment (emphasis added). The Second Circuit has observed that "[i]f opposing counsel is allowed access to information arguably protected by the privilege before an adjudication as to whether the privilege applies, a pertinent aspect of confidentiality will be lost." *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 165 (2d Cir. 1992). *Chase* has been interpreted as "articulat[ing] baseline principles for the protection of privileged documents and attorney conduct." *Stinson v. City of New York*, 10-CV-4228 (RWS), 2014 WL 5090031, at *3 (S.D.N.Y. Oct. 10, 2014). And in the specific context of clawing back privileged documents, "*Chase* can be read to counsel judges to mitigate damage to the protections of privilege as much as possible." *Id*.

Plaintiffs' proposal is inconsistent with the Second Circuit's "baseline principles." Plaintiffs have made clear in the meet and confer process that, under their proposal, any documents clawed back for privilege can (and will) be circulated among the broader Plaintiffs' group (presently comprising more than 125 attorneys of record) and then reviewed for the purpose of litigating any privilege challenge—without regard to whether those attorneys had previously seen the privileged document. To be sure, "neither *Chase* nor the [Federal Rules] prevent parties from reaching *agreements* regarding how inadvertently disclosed documents may be treated by the non-disclosing party, including *agreements* allowing the non-disclosing party to retain and use the materials in question for the purposes of litigating the claim of privilege." *Stinson*, 2014 WL 5090031, at *3 n.2 (emphasis added) (internal citations omitted). But, absent agreement, *Chase* counsels that it would be improper for a court to impose a provision enabling the unfettered use of clawed-back documents in a privilege challenge, and doing so may implicate ethical concerns.[12] Google does not agree to the expanded right to use clawed-back documents that Plaintiffs seek here.

Google proposes that the Court enter a more limited provision consistent with the "baseline principles" in this Circuit. Courts applying *Chase* have limited the use of information gleaned from clawed-back documents to that learned prior to notification of the inadvertent disclosure. *See Stinson*, 2014 WL 5090031, at *3 ("[W]hile Plaintiffs must return remaining copies of the Documents, the Plaintiffs may rely on any information learned prior to notification of the inadvertent disclosure for the purposes of litigating the privilege claim."). Courts have imposed such a limitation even when the protective order at issue contains an explicit right to use the documents for purposes of a challenge. *In re Keurig Green Mountain Single Serve Coffee Antitrust Litig.*, No. 14-MD-2542 (VSB) (HBP), 2019 WL 2003959, at *1, *3 (S.D.N.Y. May 7, 2019) (permitting use of content for purposes of privilege challenge only "to the extent that the receiving party learned of the contents of the document in issue prior to the producing party's assertion of privilege").

---

[12] Governing ethical rules caution that "a lawyer who reads or continues to read a document that contains privileged or confidential information may be subject to court-imposed sanctions, including disqualification and evidence-preclusion." N.Y. Rules of Pro. Conduct r. 4.4 cmt. 2.

### 5.      Investigation Materials (Footnote 1, Paragraphs 1(k), 3)

Google proposes that all future clawbacks of Investigation Materials should be "governed by" Google's proposal on clawbacks, Joint Order ¶ 1(k), but that the Agreed State Protections should otherwise remain in place. Joint Order 1 n.1, ¶ 3. Google's proposal addresses Plaintiffs' principal concern that there should be a common procedure for all clawbacks in the MDL, but does so without modifying the terms of the Agreed State Protections, depriving Google of bargained-for protections, or subjecting third parties without notice to the Federal Rules of Civil Procedure. *See* Joint Order n.1, ¶ 3. The Court should decline to include Plaintiffs' proposed language (not found in the E.D. Tex. Order) that the Investigation Materials are "deemed to have been produced" in this MDL. *See* Joint Order ¶ 1(k). Plaintiffs' proposal is deficient for four main reasons.

*First*, Plaintiffs are seeking to unilaterally modify the Agreed State Protections and, in so doing, weaken Google's bargained-for protections. In response to Civil Investigative Demands, Google produced the pre-suit Investigation Materials to 50 investigating states and territories. The Agreed State Protections contain clawback provisions but do not provide for the right to use documents for the purposes of a privilege challenge that Plaintiffs now seek. *See* Ex. B, ¶ 5. State Plaintiffs agreed to keep the Investigation Materials "confidential to the fullest extent applicable by law." Ex. B, ¶ 3. The Agreed State Protections provide that those confidentiality obligations "survive the conclusion of the Investigation," Ex. B, ¶ 10, and that Google has the right to object to the use of Investigation Materials "in any proceeding on any grounds," Ex. B, ¶ 13. The Agreed State Protections further provide that any modification of State Plaintiffs' confidentiality obligations requires Google's consent and, in the case of the Multistate Confidentiality Agreement, the consent of all 50 investigating states and territories. Ex. B, ¶ 14. Principles of comity and federalism counsel that this Court should not overturn the Agreed State Protections unless there is no practical alternative.[13]

*Second*, by proposing their "deemed to have been produced" language, Joint Order ¶ 1(k), Plaintiffs apparently seek to leverage this Order to obtain privilege logs and the right to challenge privilege calls made during the pre-suit investigation that they failed to pursue during that investigation. *See* Fed. R. Civ. P. 26(b)(5)(A). Google offered to meet and confer with respect to the question of privilege logs for Investigation Materials, but Plaintiffs refused to do so without explanation.

*Third*, Plaintiffs are seeking to apply the terms of this Order retroactively *i.e.*, so that it governs clawbacks previously issued by Google to the 50 investigating states and territories pursuant to the Agreed State Protections. But there was no clawback provision in the E.D. Tex.

---

[13] *See, e.g.*, *Puerto Rico Aqueduct & Sewer Auth. v. Clow Corp.*, 111 F.R.D. 65, 67-68 (D.P.R. 1986) (concluding that the proper way for a third party to challenge a protective order is to move to intervene in the action in which it was issued, and principles of comity require a subsequent court to await a ruling by the court that issued the order); *Deford v. Schmid Prod. Co.*, 120 F.R.D. 648, 650-52, 655 (D. Md. 1987) (declining to compel production of documents to the extent covered by protective orders issued by other federal and state courts); *Dushkin Publ'g Grp., Inc. v. Kinko's Serv. Corp.*, 136 F.R.D. 334, 335-36 (D.D.C. 1991) (declining, as a matter of comity and respect for another federal court, to modify a protective order issued by the other court and instead requiring the party seeking the modification to go first to the issuing court).

Order,[14] nor anything to suggest it would supersede or rescind the Agreed State Protections. In January 2022, before producing them to Private Plaintiffs, Google clawed back certain documents from the 50 investigating states and territories that were produced before this litigation commenced, pursuant to the Agreed State Protections. State Plaintiffs are now refusing to return or destroy those documents on the theory that this proposed Order, once entered, will apply retroactively and permit Plaintiffs to circulate the documents that were clawed back in January among the entire Plaintiff group for review and use as part of a possible future privilege challenge. That is improper under this Circuit's "baseline principles" set forth in *Chase*.

*Fourth*, Investigation Materials are defined to include those produced by third parties during the pre-suit investigation. Joint Order ¶ 1(k). And so Plaintiffs' proposal would subject the documents of third parties to the Federal Rules of Civil Procedure without their knowledge or consent. That is inconsistent with paragraph 39 of the draft Order (introduced by Plaintiffs) which requires that third parties are only subject to the terms of the Order "to the extent such Non-Party has agreed to be bound by this Order." Joint Order ¶ 39.

## 6. Source code (Paragraphs 1(h) n.4, 1(u), Appendix C)

Plaintiffs' source code Appendix contains a raft of burdensome provisions to which Google does not agree and which Plaintiffs refuse to discuss or explain. Google respectfully requests that the Court reject it.

There were no specific procedures for the handling of source code in the Agreed State Protections or the E.D. Tex. Order. And there were no such procedures in Plaintiffs' initial draft of *this* proposed Order. In December 2021, over ten weeks into the negotiations, Plaintiffs injected eight new pages of detailed and complex source code procedures into their draft and then told Google that they would bring any unresolved issues to the Court's attention in January. In an attempt to portray their belated introduction as non-controversial, Plaintiffs represented that their proposals were drawn from other orders that Plaintiffs understood Google had entered into recently. Plaintiffs subsequently clarified that they were referring to the Northern District of California Model Provision, as well as protective orders entered in two cases in which Google was a party (together, the "Purported Precedents").

Google told Plaintiffs that the injection of source code provisions at that late juncture would impede the negotiation process, and suggested that the issue be separately negotiated. *See* Joint Order ¶ 1(h) n.4. Google also asked Plaintiffs to explain the rationale for their source code proposal and their reasons for any deviations from the Purported Precedents.[15]

---

[14] Protective Order at 14 n.3, *Texas v. Google*, No. 1:21-cv-6841-PKC (S.D.N.Y. Apr. 14, 2021), ECF 101.

[15] On December 28, Google wrote Plaintiffs that "[w]e could, of course, locate the protective orders in the cases that you have identified, run comparisons, identify the provisions you have used and the points of deviation, and then ask Plaintiffs to explain the rationale for those deviations. But it seems that this is information Plaintiffs already have and that, in the context of a meet and confer, it would be more efficient for you to provide those explanations to us now so that we can avoid these unnecessary intermediate steps." Plaintiffs refused to do so.

Plaintiffs have steadfastly refused to do so. Google has now asked Plaintiffs to explain—seven times—the rationale for their proposal, and the reasons for deviation from the Purported Precedents.[16] But Plaintiffs have either ignored those requests or declined to provide an explanation. Plaintiffs did, however, offer to discuss any particular provisions in Plaintiffs' source code proposal to which Google objected.

Absent cooperation from Plaintiffs, Google reverse-engineered their source code proposal and notified Plaintiffs of 13 independent objections, reproduced in the Appendix to this letter, *infra* at 10-12, and asked Plaintiffs to explain the specific justifications for these deviations from the Purported Precedents. Confronted with those specific objections to particular provisions, Plaintiffs then walked back their prior offer to discuss them, and have since refused to do so despite repeated requests.

Plaintiffs' source code proposal is neither reasoned nor adequate. Indeed, once Google reverse-engineered Plaintiffs' proposal, it became clear that the proposal is entirely different from the Purported Precedents. In every instance, Plaintiffs' deviations from the Purported Precedents serve no purpose other than to deprive Google of protection or to shift burdens from Plaintiffs to Google. *See infra* at 10-12. The most egregious is their restructuring of the usual objection framework, putting the onus on *Google* to move the Court to *prevent* disclosure of its own source code, and providing that a failure to do so within three days amounts to a waiver. *Id*. (Google's objection to paragraph 4); *see also Viacom Int'l Inc. v. Youtube Inc.*, 253 F.R.D. 256, 260 (S.D.N.Y. 2008) (denying motion to compel source code because "Google should not be made to place this vital asset in hazard merely to allay speculation," and placing onus on Plaintiff to make "preliminary proper showing justifying production of the [source] code").

Google proposes to have a meaningful negotiation regarding source code when the contours of source code production—if any—are more clear. To alleviate any potential prejudice or delay, Google proposes that in the meantime any productions of source code (to the extent that Google agrees or is ordered to make them in the ordinary course of discovery) should, as an interim measure, be made pursuant to the Northern District of California Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets. Plaintiffs refused to agree to that interim proposal but did not explain why.

\* \* \*

Google has agreed to dozens of changes at the request of Plaintiffs. But Google objects to the additional changes that Plaintiffs introduced late and now press before this Court. Google respectfully requests that the Court enter an Order in the form attached to this letter as Exhibit A.

---

[16] Google first raised the issue in a meet and confer on December 13, and then followed up with written requests for explanation on December 20, December 28, January 13, January 27, and February 14. Google asked again during a meet and confer on February 24.

Respectfully submitted,

*/s/ Eric Mahr*
Eric Mahr
FRESHFIELDS BRUCKHAUS DERINGER US LLP
700 13th Street, NW
10th Floor
Washington, DC 20005
Telephone: (202) 777-4545
Email: eric.mahr@freshfields.com

Justina K. Sessions
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2197
Email: jsessions@wsgr.com

*Counsel for Defendants Google LLC, Alphabet Inc., and YouTube LLC*

CC:  All Counsel of Record (via ECF)

# APPENDIX

## GOOGLE'S OBJECTIONS TO PLAINTIFFS' SOURCE CODE PROPOSAL (JOINT ORDER, APP. C) THAT PLAINTIFFS HAVE REFUSED TO DISCUSS OR ADDRESS

| Paragraph No. | Google's Objections (As Communicated in February 14, 2022 Email) |
|---|---|
| 1 | "Paragraph 1 adds the jury to the list of approved disclosure recipients without requiring written permission. This addition is not reflected in any of the [Purported Precedents] on which Plaintiffs said that they based their proposal." |
| 2 | "Paragraph 2 removes the requirement that Plaintiffs identify 'each person or entity from whom the Expert has received compensation or funding for work in his or her areas of expertise' and limits that disclosure to those for whom the expert has provided professional services. It would seem from this change that Plaintiffs intend to obscure some of the sources from which their experts obtain funding or compensation." |
| 3 | "Paragraph 3 halves the time Google has to object to disclosures, from 14 days to 7, even though all of the [Purported Precedents] Plaintiffs have cited give 14 days. Plaintiffs have also appended a new sentence to the end of this paragraph, not reflected in any of the [Purported Precedents], that unnecessarily restricts Google's ability to object." |
| 4 | "Paragraph 4 reflects a drastic restructuring of the objection framework, requiring that Google move the court to prevent disclosure. This is the precise opposite of the objection framework set forth in the [Purported Precedents] upon which Plaintiffs purport to rely (which requires the requesting party to move the court to seek permission to disclose in the face of an objection). Plaintiffs have also added a provision requiring Google to object within three business days, failing which it waives the right to do so." |
| 5 | "Paragraph 5 substantially increases the burden Google must meet when opposing disclosure. Rather than having to prove only that the harm of disclosure outweighs the need for disclosure, Plaintiffs' new, unjustified amendment imposes a 'particularized showing' requirement not reflected in the [Purported Precedents] upon which Plaintiffs told us they relied." |

| 6, 7 | "Paragraphs 6 and 7 include language apparently invented by Plaintiffs (and not featured in any of the [Purported Precedents] cited by Plaintiffs) to introduce a loophole to the prosecution and acquisition bars. This language would exempt individuals who review and work with source code when that review consists of 'notes, summaries, excerpts, printed pages or other Source Code Documents' rather than in-person review." |
|---|---|
| 8 | "Paragraph 8 removes without explanation the 'office of the Producing Party's counsel' as a possible location for reviewing source code. (This option exists in all of the [Purported Precedents] that Plaintiffs told us they used to formulate their proposal)." |
| 9 | "Paragraph 9 appears to be a stricter version of a similar provision in [one of the Purported Precedents providing for review tools for source code, but] that removes the "good faith" language present in that provision [which circumscribes the additional obligation on the Producing Party]." |
| 10 | "Paragraph 10 deviates in various material and harmful ways from the [Purported Precedents] upon which Plaintiffs told us that they based their proposal. Plaintiffs have changed the beginning of the paragraph to allow the 'Receiving Party' rather than 'Receiving Party's Counsel' or experts to take handwritten notes. In practice, this would permit Google's competitors (as opposed to their counsel) to view source code." |
| 10 | "Also in Paragraph 10, Plaintiffs have added a sentence allowing themselves to copy 'filenames, directory names, module names, class names, parameter names, variable names, function names, method names, comments or procedure names' from source code. This addition is not found in any of the [Purported Precedents] upon which Plaintiffs said that they based their proposal, and significantly limits what is otherwise a blanket ban on copying source code (rather than taking notes) during in-person review. And despite the proposed expansion of their ability to copy source code into their notes, Plaintiffs have also added another new sentence to the end of this paragraph that affords additional protection to their own notes on source code [by requiring immediate destruction or deletion of any such notes left behind]." |
| 11 | "Paragraph 11 also deviates in material ways from the [Purported Precedents] on which Plaintiffs told us they based their proposal. It allows printed pages of source code for any 'use in this Action,' rather than the N.D. Cal. model's specifically enumerated uses. Plaintiffs also removed a requirement that they 'shall not request paper copies for the purposes of reviewing the source code other than electronically as set forth in paragraph [8] in the first instance.'" |

| 11 | "Also in Paragraph 11, Plaintiffs have removed a safeguard—present in all of the [Purported Precedents] upon which Plaintiffs purportedly relied—that allows the producing party to challenge the amount of source code requested in hard copy." |
|---|---|
| 12 | "In Paragraph 12, it appears that Plaintiffs have imported language from [one of the Purported Precedents] that permits electronic copies of source code (which are not permitted under the other two [Purported Precedents] that Plaintiffs [purportedly] relied upon). But instead of taking that provision as drafted, Plaintiffs have removed the related protections, including electronic encryption, password protection, limits on transfer, and marking copies as 'HIGHLY CONFIDENTIAL – SOURCE CODE.'" |