# CRAVATH, SWAINE & MOORE LLP

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: +1-212-474-1000
FACSIMILE: +1-212-474-3700

JOHN W. WHITE
EVAN R. CHESLER
ROBERT H. BARON
CHRISTINE A. VARNEY
PETER T. BARBUR
MICHAEL S. GOLDMAN
RICHARD HALL
STEPHEN L. BURNS
KATHERINE B. FORREST
KEITH R. HUMMEL
DAVID J. KAPPOS
DANIEL SLIFKIN
ROBERT I. TOWNSEND, III
PHILIP J. BOECKMAN
RONALD E. CREAMER JR.
WILLIAM V. FOGG
FAIZA J. SAEED
THOMAS E. DUNN
MARK I. GREENE
DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
GARY A. BORNSTEIN

TIMOTHY G. CAMERON
KARIN A. DEMASI
DAVID S. FINKELSTEIN
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL
CRAIG F. ARCELLA
LAUREN ANGELILLI
TATIANA LAPUSHCHIK
ALYSSA K. CAPLES
MINH VAN NGO
KEVIN J. ORSINI
MATTHEW MORREALE
JOHN D. BURETTA
J. WESLEY EARNHARDT
YONATAN EVEN
BENJAMIN GRUENSTEIN
JOSEPH D. ZAVAGLIA
STEPHEN M. KESSING
LAUREN A. MOSKOWITZ
DAVID J. PERKINS
J. LEONARD TETI, II
D. SCOTT BENNETT
TING S. CHEN
CHRISTOPHER K. FARGO
DAVID M. STUART

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: +44-20-7453-1000
FACSIMILE: +44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER
+1-212-474-1596

WRITER'S EMAIL ADDRESS
Korsini@cravath.com

AARON M. GRUBER
O. KEITH HALLAM, III
OMID H. NASAB
DAMARIS HERNÁNDEZ
JONATHAN J. KATZ
DAVID L. PORTILLA
ROPE A. LERARIS
MARGARET T. SEGALL
DANIEL K. ZACH
NICHOLAS A. DORSEY
ANDREW C. ELKEN
JENNY HOCHENBERG
VANESSA A. LAVELY
G.J. LIGELIS JR.
MICHAEL E. MARIANI
LAUREN R. KENNEDY
SASHA ROSENTHAL-LARREA
ALLISON M. WEIN
MICHAEL P. ADDIS
JUSTIN C. CLARKE
SHARONMOYEE GOSWAMI
C. DANIEL HAAREN
EVAN MEHRAN NORRIS
LAUREN M. ROSENBERG
MICHAEL L. ARNOLD
HEATHER A. BENJAMIN
MATTHEW J. BOBBY
DANIEL J. CERQUEIRA

ALEXANDRA C. DENNING
HELAM GEBREMARIAM
MATTHEW G. JONES
MATTHEW M. KELLY
DAVID H. KORN
BRITTANY L. SUKIENNIK
ANDREW M. WARK
ANDREW T. DAVIS
DOUGLAS DOLAN
SANJAY MURTI
BETHANY A. PFALZGRAF
MATTHEW L. PLOSZEK
ARVIND RAVICHANDRAN

PARTNER EMERITUS
SAMUEL C. BUTLER

OF COUNSEL
MICHAEL L. SCHLER
CHRISTOPHER J. KELLY
KIMBERLEY S. DREXLER
LILLIAN S. GROSSBARD
KIMBERLY A. GROUSSET
ANDREI HARASYMIAK
JESSE M. WEISS
MICHAEL J. ZAKEN

April 6, 2022

<u>In re Google Digital Advertising Antitrust Litigation</u>,
No. 1:21-md-03010 (PKC) (S.D.N.Y.)

Dear Judge Castel:

I represent Meta Platforms, Inc.[1] ("Meta") in the above-captioned multidistrict litigation (the "MDL") and respectfully submit this letter on behalf of Meta to address certain disputed provisions in the parties' proposed protective order (the "Protective Order") in these proceedings. In accordance with Rule 1.A of the Court's Individual Practices, Meta notes that no upcoming conferences are currently scheduled in this matter.

Meta's position throughout the Protective Order negotiations has been for the parties to agree to clearly articulated standards to safeguard confidential and sensitive information. Doing so now not only would ensure the protection of such confidential and sensitive information, but also would minimize the number of disputes requiring resolution by the Court. To that end, over the past five months, Meta has negotiated in good faith with the other parties in this MDL and reached agreement on the vast majority of the provisions in the Protective Order.

Meta respectfully submits this letter with respect to three of the open issues over which the parties reached impasse while negotiating the Protective Order:

*First*, Meta has been unable to reach agreement with Plaintiffs to limit the production of certain documents only to the actions in the MDL where they are relevant to the parties' claims and defenses and proportional to the needs of the actions. Such

---

[1] Facebook, Inc. changed its name to Meta Platforms, Inc. effective October 28, 2021.

protection is critical in this MDL, where Meta is not a party to, or even mentioned in, many of the cases centralized before this Court.  Requiring a broad production of Meta's highly sensitive material to parties in cases unrelated to Meta is neither relevant at all to those parties' claims nor proportional to their actions.  For the reasons set forth below, there is good cause to afford Meta (and any other parties) the ability to limit the scope of their productions only to the parties and cases in which such productions are relevant to the claims in those actions.  Meta understands that Google takes no position on this issue. (*See infra* Section I.)

*Second*, Meta and Google have been unable to reach agreement with Plaintiffs concerning the individuals who may be afforded access to material designated either Highly Confidential or Confidential under the Protective Order.  Plaintiffs attempt to water down the confidentiality protections of the Protective Order by defining broadly the individuals who may review and testify about such material—even if they neither had access to nor knowledge of the information.  For the reasons set forth below, Plaintiffs' position should be rejected.  (*See infra* Section II.)

*Third*, Meta and Plaintiffs have been unable to reach agreement with Google concerning the need for the parties to produce information to support a forensic investigation in the event that material protected by the Protective Order is disseminated in violation of the order.  Meta believes that it is unnecessary and unwarranted to require any parties and their counsel to produce sensitive and potentially privileged information in the event of such a Protective Order violation.  (*See infra* Section III.)

Furthermore, Meta understands from the parties' negotiations that Google intends to address the more tailored language proposed by Meta and Google concerning individuals who only had lawful access to such confidential information.  (*See* Protective Order ¶¶ 14(h), 15(h).)  Meta respectfully submits that the Court should adopt Meta and Google's proposed language for this provision.  Meta also understands that Google and Plaintiffs have been unable to reach agreement concerning:  (i) protections relating to productions of source code, (ii) the confidential treatment of Google's productions in prior proceedings; and (iii) the default confidentiality designation and treatment for deposition testimony.  Meta does not take a position on these disputes.

## I.    Limitation of Productions to Particular Actions (Meta's Proposed ¶ 7(h)).

Meta proposes including a provision that permits a party to limit its own productions and the productions it receives to particular actions if a party believes in good faith that the material is not properly produced more broadly.[2]  Under the proposed

---

[2] On November 8, 2021, Google proposed language to limit the dissemination of productions to certain actions in this MDL based on their relevance to the claims in those actions.  During negotiations, on January 13, 2022, Google indicated that it was willing to concede on this provision in favor of others.  On January 25, 2022, Meta made clear that it did not support removing this provision.  In response, Plaintiffs contended that Meta could not object to removing the provision because Google had already assented to its

language, other parties may object to any such designation.  Plaintiffs disagree with any limit on which party may receive productions, even if those productions are irrelevant to the party's claims or defenses.[3]

Plaintiffs' position is that because all of these cases have been centralized in this MDL, each plaintiff is entitled to all discovery produced in the MDL, regardless of whether any of the plaintiffs could satisfy the basic rules of relevance.  This is illogical.  Indeed, only a subset of the complaints in this MDL include allegations related to Meta—many of those complaints fail to mention Meta at all, let alone any allegation concerning the network bidding agreement between Meta and Google.  *See Associated Newspapers Ltd. et al v. Google LLC et al.*, No. 1:21-cv-03446-PKC (S.D.N.Y.); *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-cv-07001-PKC (S.D.N.Y.); *In re Google Digital Publisher Antitrust Litigation*, No. 1:21-cv-07034-PKC (S.D.N.Y.).  It makes little sense for Meta to be required to produce highly sensitive commercial information to numerous plaintiffs who fail even to state any *allegation*, *let alone a claim*, against Meta.

The appropriate result—consistent with Rule 26 of the Federal Rules of Civil Procedure—is Meta's proposed language allowing producing parties to limit their productions only to the actions to which they are relevant to the claims or defenses and are proportional to the needs of those actions.  *See* Fed. R. Civ. P. 26(b).  Furthermore, Meta's proposed language is consistent with language used in other similarly situated multidistrict litigations.  For example, this language is drawn from the protective order entered in another multidistrict antitrust litigation proceeding in this district.  *See In re Libor-Based Fin. Instruments Antitrust Litig.*, 1:11-md-02262-NRB (S.D.N.Y.) (Dkt. No. 1347).  That case—like this one—involves different types of plaintiffs asserting a variety of claims against multiple defendants.

None of the arguments Plaintiffs offered during the Protective Order negotiations overcome the basic rule of relevance.  *First*, Plaintiffs argued that this provision is unnecessary because they anticipate that all of the private plaintiffs will add allegations related to the network bidding agreement in their forthcoming consolidated complaints.  As an initial matter, this Court's ruling on Google's motion to dismiss the *Texas* action (which is not yet fully briefed) could dispose of such claims—as this Court suggested, the private plaintiffs should "tak[e] account" of its decision when crafting any amended complaints.  (Dkt. No. 4 at 3.)  Moreover, should the plaintiffs' consolidated complaints actually assert claims against Meta, then Meta's proposed language to limit the distribution of its productions would not bar those plaintiffs from receiving the documents that are relevant to their claims and proportional to the needs of their cases.  Therefore, Meta's proposed language should be adopted.[4]

---

removal.  But Google does not represent Meta, and as the instant submissions make clear, the parties are not aligned on all issues.

[3] Meta understands that Google takes no position on this issue.

[4] Moreover, the JPML recently entered a conditional transfer order regarding *Klein, et al. v. Facebook, Inc.*, No. 5:20-cv-08570-JD (N.D. Cal.).  If the conditional transfer

*Second*, Plaintiffs also argue that the provision is inappropriate because the JPML centralized the relevant actions because "all cases will require discovery from Facebook because of the questions surrounding Facebook's status as a competitor". (Transfer Order at 3, MDL Dkt. No. 1.)  That is true for the documents that are relevant to the claims in those actions—the JPML's transfer order is not a blanket override of the basic rules of relevance (nor does the JPML have authority to do so).  Indeed, the JPML acknowledged that the "transferee court may account, at his discretion, for any differences among the actions by using appropriate pretrial devices", including any guidelines for coordinated discovery that Meta proposes here.  (*Id.* (quoting *In re Valsartan Prods. Liab. Litig.,* 433 F. Supp. 3d 1349, 1352 (J.P.M.L. 2019)).)[5]

## II. Individuals' Access to Highly Confidential Information and Confidential Information (¶¶ 14, 15).

The parties have reached an impasse over which individuals may have access to either Highly Confidential or Confidential information under the Protective Order.  The parties agree that individuals who are the authors, recipients, addressees or custodians of any confidential information may access, review and testify about such information.  (*See* Protective Order ¶¶ 14(g), 15(g).)  The parties' dispute centers on what level of access lay individuals (*e.g.*, fact witnesses) who are *not* the authors, recipients, addressees or otherwise custodians of such information may have to either Highly Confidential or Confidential information.

Courts consider several factors when determining whether information warrants protection, including "the extent to which information is known outside the business", "the extent to which information is known to those inside the business" and "the measures taken to guard the secrecy of the information".  *Errant Gene Therapeutics, LLC v. Sloan-Kettering Institute for Cancer Research*, No. 15-CV-2044 (AJN) (RLE), 2016 WL 4618972, at *3 (S.D.N.Y. Sept. 2, 2016) (citations omitted); *Sullivan Marketing, Inc. v. Valassis Commc'ns, Inc.*, No. 93 CIV. 6350 (PKL), 1994 WL 177795, at *2 (S.D.N.Y. May 5, 1994) (finding protection of information warranted because,

---

order is finalized, as Meta anticipates and supports, then that action will be transferred to the MDL.  The *Klein* advertiser complaint includes allegations related to the network bidding agreement—which is why it belongs in this MDL—but it also includes allegations unrelated to these proceedings, including allegations related to Facebook's purported use of data and acquisitions to neutralize competitive threats.  Including this provision provides the flexibility necessary to accommodate cases like *Klein* (and other future tag-along actions) that belong in this MDL but may involve distinct issues.

[5] Plaintiffs also raised that limiting access to productions based on the claims in the actions in this MDL would undermine Plaintiffs' shared use of a single document review platform.  Plaintiffs' argument is perplexing, as it is a common feature of e-discovery review platforms to allow parties to manage access to certain repositories or documents. In any event, Plaintiffs' chosen logistics cannot override relevance rules in discovery.

among other factors, "[w]ithin News America, such information is provided only to employees who have a need to know it").

Meta proposes including language that allows any employee who is either an executive officer or a designated corporate representative testifying pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure to access and review any confidential material from the producing party. (*See* Protective Order, Meta and Google's Proposed ¶¶ 14(i), 15(j).)  Meta initially proposed this language in response to Plaintiffs' concern during negotiations that a deponent should be able to testify about certain confidential material, even if that individual is neither the custodian of the document, nor the author, addressee or recipient of that information. (*See id.* ¶¶ 14(g), 15(g).)  Indeed, what Meta proposes is the only circumstance in which it makes sense to share confidential information with an individual who otherwise did not possess it—where the witness is charged with knowledge of that information.  This is also consistent with the foregoing factors that courts consider in evaluating the propriety of a protective order.  *See Errant Gene Therapeutics*, 2016 WL 4618972, at *3; *Sullivan Marketing*, 1994 WL 177795, at *2 ("Within News America, such information is provided only to employees who have a need to know it.").

By contrast, Plaintiffs propose an unreasonably expansive scope of who may access Highly Confidential and Confidential information.  *First*, Plaintiffs propose allowing *any* current employee of a Designating Party (*i.e.*, Meta or Google) to have access to any information produced in this MDL.  (*See id.* Plaintiffs' Proposed ¶ 14(j); *id.* ¶ 15(j).)  It is unclear why Plaintiffs require such a broad ability to show information to *any* current employee.  Meta and Google are both corporations employing thousands of individuals in myriad roles.  Information is necessarily compartmentalized.  And under their proposal, Plaintiffs suggest that they may show a low-level employee a confidential email between solely the CEO and CFO concerning prospective business strategy with which the low-level employee is not involved.  Not only is this impractical, it also violates one of the factors courts consider to determine whether protection is warranted: "the extent to which the information is known to those inside the business".  *Errant Gene Therapeutics*, 2016 WL 4618972, at *3.  It is simply unnecessary and also contrary to the Protective Order's purpose of preserving confidentiality for the Protective Order to include Plaintiffs' "any current employee" language.

*Second*, Plaintiffs then go even further and seek discretion to show both Highly Confidential and Confidential information to *any* individual merely if Plaintiffs believe that person had "knowledge" of that information.  (*See id.* Plaintiffs' Proposed ¶¶ 14(i), 15(i).)  Plaintiffs do not limit to whom they may disclose confidential information under this provision.  Nor do Plaintiffs define what constitutes "knowledge" sufficient for Plaintiffs to proceed with disclosing confidential information.  Put simply, Plaintiffs propose a wholly unworkable standard.  Plaintiffs' proposal creates a loophole in which they may disclose confidential information to any individual without strictly violating the terms of the Protective Order.

*Third*, Meta and Google have proposed more tailored language to address the potential access to confidential material only to individuals who only had lawful

access to such confidential information.  (*See id.* ¶¶ 14(h), 15(h).)  Based on the parties' negotiations to date, Meta understands that Google intends to address this issue in its own letter.  The Court should adopt Meta and Google's proposed language in this provision.

**III.   Forensic Investigation (Google's Proposed ¶¶ 10(b)-(c); Appendix A, Google's Proposed ¶¶ 4-5; Appendix B, Google's Proposed ¶¶ 1-2).**

      Google proposes including provisions providing that, in the event of an unauthorized disclosure of protected information, the parties agree the Court may order a forensic investigation if the source of the disclosure is not readily identifiable.  To facilitate any such potential investigation, any individuals who sign the Agreement Concerning Confidentiality (Appendix A) and the In-House Counsel Agreement Concerning Confidentiality (Appendix B) must provide a list at the time of signing with all of the electronic devices and accounts that may be used to access confidential documents.  Under the provision, in the event of an unauthorized disclosure, all of the material on those devices may be collected, copied or examined.  Plaintiffs and Meta oppose including these provisions.

      Similar provisions were implemented by the Honorable Sean D. Jordan after confidential information was leaked during the course of the *State of Texas, et al v. Google, LLC*, No. 20-cv-00957 (E.D. Tex.), proceedings prior to that action's transfer to this MDL.  Meta was not a party to these proceedings, and therefore did not have an opportunity to object to these forensic investigation provisions when they were ordered there.  Indeed, Meta is unaware of any other case in which such a forensic investigation provision was included in a protective order.  Although Meta agrees with Google that these unauthorized disclosures are highly concerning, Meta believes these provisions go too far.  Counsel for the respective parties in this action possess large volumes of sensitive and privileged information regarding their clients in this MDL as well as many other clients not involved in these proceedings.  These provisions subject all of those documents and communications to a forensic investigation for which it is unclear who the investigator will be, what the scope of that investigator's authorities will be, and what documents and information swept up in the investigation will be viewable by the other parties in this MDL.  This combination of sweeping authority and a lack of clarity is extremely concerning given the sensitive and privileged communications at issue.

      Moreover, while this provision may have made sense in the *Texas* action, which involved only the State Plaintiffs and Google, it makes less sense in a multidistrict litigation of this size.  Although the potential for leaks is arguably greater in a large multidistrict litigation, the potential for abuse of this provision is much greater as well.  As written, this provision provides that "any Party" can request that the Court approve a forensic investigation into an unauthorized disclosure.  It is not difficult to envision a scenario in which a flurry of finger pointing unfolds that leads to an expensive and burdensome process in which large volumes of sensitive and privileged documents involving these parties (and parties outside this MDL) are put at risk.

      Therefore, while Google's concerns regarding unauthorized disclosures are well-founded, the forensic investigation provisions are too sweeping and contain too

many unknowns.  Accordingly, Meta submits these provisions should not be included in the protective order.

*     *     *

       For the reasons set forth above Meta respectfully submits that its positions are in the interests of protecting confidential and sensitive information under clear, workable guidelines and should be adopted by this Court.

       Respectfully submitted,

       */s/ Kevin J. Orsini*

       Kevin J. Orsini

The Honorable P. Kevin Castel
   United States District Judge
      Southern District of New York
        500 Pearl Street
         New York, New York 10007

cc:    All Counsel of Record (via CM/ECF)