

**Freshfields Bruckhaus Deringer** US LLP

Washington
700 13th Street, NW, 10th Floor
Washington, DC 20005-3960
T   +1 (202) 777-4500 (Switchboard)
    +1 (202) 777-4545 (Direct)
F   +1 (202) 507-5945
E   eric.mahr@freshfields.com
www.freshfields.com

**Via ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

May 10, 2022

**Re:**   *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC)

Dear Judge Castel:

We write further to the April 19, 2022 discovery conference (the "Conference") during which Your Honor directed the parties to submit a revised proposed confidentiality Order.  As directed, Google produced a first draft that implemented the Court's guidance.  The parties have since met and conferred but Plaintiffs have sought to deviate from that guidance and, regrettably, there remain issues in dispute with respect to clawbacks and source code.

- As to clawbacks, Plaintiffs are: (a) refusing to abide by the Court's directive not to quote or attach sequestered documents as part of a privilege challenge, (b) insisting that a large group of Plaintiff attorneys (many more than the Court suggested would be reasonable) be permitted to review sequestered documents, and (c) insisting on extending the right to review clawed back documents to those that were never previously reviewed.
- As to source code, Google provided Plaintiffs with *five* exemplars from other cases (after being directed by the Court to provide three), including the exemplars that Plaintiffs told the Court they relied on to draft their own proposal.  Plaintiffs have rejected all five and are insisting on a sixth that is not based on the Northern District of California Model Rules.

Google's proposed Order is attached as Exhibit A.  Pursuant to Your Honor's individual practices, we note that no conference is currently scheduled.

## 1.  Clawbacks (Paragraph 12(c))

The Court directed the parties to modify the proposed clawback provision and "get as close as you can to the language in Rule 26."  Tr. of Apr. 19, 2022 Conference at 36:11-15, ECF No. 291.  Google started with the language of Rule 26 and then, consistent with the Court's guidance, made the following modifications that Plaintiffs have refused to accept.

(a)    Plaintiffs Are Insisting That They Can Quote Or Attach
        <u>Sequestered Documents Despite The Court's Direction To The Contrary</u>

The Court directed that, for any sequestered document, the parties should not "quote it verbatim or attach it to their position" when challenging a clawback.  Tr. at 35:21-23; *see also* Tr. at 34:16-19 ("And no one is going to get hurt because if [the clawback document is] sequestered, and there's a big fight about it, the document is going to come to [the Court], and I'm going to open the envelope, and I'm going to look at it.").  Google's first draft stated that the challenging party "may not quote or attach the information . . . when making the challenge."  Ex. A at 16.  Plaintiffs deleted this provision.  They have since reinserted a modified version that still appears to permit quoting or attaching the privileged information as part of a privilege challenge.

Plaintiffs' position stems from their misunderstanding of the word "sequester."  The Court directed the parties to "use the word sequester and define it." Tr. at 34:15-16.  Google understood that the Court intended "sequester," as used in the context of Rule 26, to prevent prevent further review of a clawed-back document:

> MR MAHR: . . . [W]e don't have any objection to the use of sequester in the way it's been used in common English language, or in the federal rules, which means put it away somewhere where nobody will see it.
> THE COURT: Put it in a sealed envelope and keep it on the side of your desk, right?
> MR. MAHR: A locked cabinet would be better.
> THE COURT: Yeah.

Tr. at 33:25-34:7.

Consistent with the Court's direction and the case law, Google defined "sequester" to "prohibit[] the Party in possession from further review of the material once a claim of privilege is made." Ex. A at 16 n.6;[1] *see U. S. Equal Emp. Opportunity Comm'n v. George Washington Univ.*, 502 F. Supp. 3d 62, 72-74 (D.D.C. 2020) (collecting cases finding that only the Court, not parties, can review materials and make privilege determinations, and noting that "a party who, when informed of a claim of privilege, 'promptly return[ed] . . . or destroy[ed] the specified information and any copies' it had would necessarily *no longer be able to review that information*.  It follows, then, that *sequestration should similarly ban further review*" (alterations in original) (emphasis added)).[2]

---

[1] Google also added a provision that "any summaries" of the clawed-back document were also subject to sequestration.  The 2006 Committee Notes to Rule 26 state that "[t]he option of sequestering or destroying the information is included in part because the receiving party may have incorporated the information in protected trial-preparation materials."  Thus, Rule 26 applies equally to trial preparation materials, such as summaries, as to privileged material contained in clawed back documents.

[2] *See also Greater N.Y. Taxi Ass'n v. City of New York*, No. 13-CV-3089(VSB)(RWL), 2018 WL 2316629, at *6 (S.D.N.Y. May 8, 2018) (requiring attorneys notified of claim of privilege to cease review of the allegedly privileged documents, and noting that ethical responsibilities further mandate refraining from review of privileged

Plaintiffs deleted Google's proposed definition of "sequester" and proposed no alternative definition.  At a recent meet and confer, Plaintiffs indicated that they did so because they disagreed with the inclusion of the word "sequester" (which is in the text of Rule 26) as well as Your Honor's interpretation of Rule 26.  Yesterday, Plaintiffs agreed for the first time to define the word "sequester," and to adopt Google's definition.  But, in contravention of the Court's guidance and the case law cited above, Plaintiffs' most recent draft still included the right to quote from and attach the sequestered information as part of a privilege challenge.  Google submits that Plaintiffs' position is inconsistent with the Court's guidance and governing law.  *See supra* at 2.[3]

(b)  Plaintiffs Have Insisted That As Many As Twenty Attorneys
     And Their Staff Be Permitted To Review Sequestered Documents

The Court proposed that four attorneys—"one designated lawyer by the state plaintiffs, the publisher class action, the advertiser class actions, and collectively individual actions have to pick a person," Tr. at 35:6-10—could look at a sequestered document to frame any privilege challenge.  Google therefore proposed that four Plaintiff attorneys, one designated by each group, would comprise a "Privilege Committee" for that purpose.  Google offered to include five attorneys so that the Daily Mail could also have a representative in the event that a privilege challenge does not involve Meta.

Deviating from the Court's guidance, Plaintiffs first sought to expand that group from four to 20 attorneys.  They have since reduced their demand to 15 attorneys and, yesterday, to 10 attorneys and now 8 attorneys (in each case, plus support staff).  Google's initial draft tracked the Court's guidance, while Plaintiffs' latest proposal still designates twice as many representatives as the Court suggested.  We respectfully request that Google's proposal be implemented here.[4]

---

documents); *Stinson v. City of New York*, No. 10 Civ. 4228 (RWS), 2014 WL 5090031, at *3 (S.D.N.Y. Oct. 10, 2014) (denying request for retention to oppose claim of privilege because "baseline principles for the protection of privileged documents and attorney conduct . . . counsel judges to mitigate damage to the protections of privilege as much as possible" (citing *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159 (2d Cir. 1992))); *Willis Elec. Co., Ltd. v. Polygroup Trading Ltd.*, No. 15-cv-3443-WMW-KMM, 2021 WL 568454, at *4 (D. Minn. Feb. 16, 2021) ("[T]he weight of authority examining this issue suggests that the better course of action is for the receiving party to cease all review of the allegedly privileged material once it is notified of a privilege claim."); *In re: Disposable Contact Lens Antitrust Litig.*, No. 3:15-md-2626-J-20JRK, 2016 WL 7115998, at *4 (M.D. Fla. Oct. 24, 2016) (holding that it is "consistent with the Rules … [that] a review of the [clawed-back] documents is not permitted")

[3] On the evening of filing day, Plaintiffs reached out to Google to clarify the scope of their proposal that documents can be quoted or attached as part of a privilege was somewhat narrower than the plain language in their draft would suggest. We understand that Plaintiffs intend to submit a revised and more tailored proposal to the Court. But Google has not had the opportunity to review that proposal prior to filing.

[4] Late on filing day, Plaintiffs informed Google that they thought it was inequitable for Google to have two representatives on the Privilege Committee while Plaintiffs have only one representative per Plaintiff group.  Although Plaintiffs raised this concern for the first time today, for the avoidance of doubt, Google is prepared to accept a single designee on the Privilege Committee provided that Plaintiffs are restricted to the four designees suggested by the Court.

(c)   Defendants Propose That Any Review Of Clawed Back Information Be Limited To
      <u>Documents That Have Already Been Reviewed By The Receiving Party</u>[5]

        Consistent with Google's position at the Conference, and the governing case law,
Google's proposal included a provision tracking the language of Rule 26 and requiring the
return, destruction or sequestration of any clawed back documents. Parties have no right to
review clawed back documents for any purpose, much less to make their own privilege
assessment. *See supra* at 2. That is and always has been the exclusive province of the Court.
*U.S. Equal Emp. Opportunity Comm'n*, 502 F. Supp. 3d at 73-74 (collecting cases).

        To the extent that the Receiving Party has reviewed the documents prior to being notified
of a clawback, courts recognize that the Receiving Party may rely on the information learned
*prior* to notification for the purpose of bringing a privilege challenge. *See, e.g.*, *Stinson*, 2014
WL 5090031, at *4 ("while Plaintiffs must return remaining copies of the Documents, the
Plaintiffs may rely on any information learned prior to notification of the inadvertent disclosure
for the purposes of litigating the privilege claim"). Courts have struck this balance even when
the protective order at issue contains an explicit right to use the documents for purposes of a
challenge. *See In re Keurig Green Mountain Single Serve Coffee Antitrust Litig.*, No. 14-MD-
2542 (VSB) (HBP), 2019 WL 2003959, at *1, *3 (S.D.N.Y. May 7, 2019) (permitting use of
content for purposes of privilege challenge only "to the extent that the receiving party learned of
the contents of the document in issue prior to the producing party's assertion of privilege").

        Consistent with those decisions, Google proposed that in circumstances where the
Receiving Party has already reviewed a document, the document can be reviewed by the
Privilege Committee for the limited purpose of determining whether to challenge the
clawback. Ex. A at 16. Plaintiffs accepted Google's proposal without objection for two
weeks. Late last night, however, Plaintiffs provided a revised draft of the Order in which they
expanded the right of the Privilege Committee to review all clawed back documents—even those
which had not previously been reviewed by the Receiving Party.

**2.      Source Code (Appendix C)**

        The Court directed Google to provide Plaintiffs with three exemplars of protective orders
concerning source code from other cases. Tr. at 13:21-14:1. Google understood the basis of the
Court's directive to be that these exemplars would be derived from the Northern District of
California Model Protective Orders (the "Model Order"). Tr. at 13:16-20 ("It's reported that
[Plaintiffs] found your inspiration from [the Model Order] . . . assuming you did, what's the
problem?"). Google provided Plaintiffs with three different exemplars agreed to in other cases
and based on the Model Order. Plaintiffs rejected all three. Google then offered "two other
[exemplars] that Google had signed onto in other cases," which Plaintiffs told the Court formed

---

[5] Immediately prior to filing, Plaintiffs informed Google that they no longer intend to contest this point and that they
anticipated the Parties' competing proposals to be consistent on this issue. Google has not seen Plaintiffs' revised
draft, but we anticipate that this point will no longer be disputed.

the basis of their own source code proposal.  Tr. at 14:10-13.  Plaintiffs rejected those exemplars, too.

Plaintiffs are now insisting on only the provisions drawn from the *Play* litigation.[6]  But much of the source code requested by the plaintiffs in *Play* is from the Android Open Source Project, which is freely available on the Internet (source.android.com).  Most of the remainder of the source code requested by plaintiffs in *Play* concerns mobile application software that, by its nature, is distributed to billions of users around the world and stored on their mobile devices.  However, in this case, Plaintiffs have indicated that they intend to request source code implementing competitively-sensitive ad tech algorithms, some of which carry a higher security designation and more restricted access (even within Google).

Plaintiffs' proposal is also flawed because it would deprive Google of the protections afforded by the Model Order, including by reversing the usual burdens of proof.  These are not minor changes, but instead significant deviations from the protections typically allocated to sensitive source code under the Model Order.[7]  While Google treats all source code as being sensitive, those changes would be of enormous consequence in this case given the nature of the source code that Plaintiffs have indicated they will request.  And Plaintiffs' recently asserted argument—that *Play* is somehow a better precedent because it is an antitrust case—makes no sense because the nature of the claims has no bearing on the sensitivity of the source code at issue.

Google respectfully requests that the Court adopt the source code provisions reflected in Google's proposal, which are cut-and-pasted (with minor conforming edits)[8] from *Kewazinga v. Google*.  Ex. A, App. C.  Plaintiffs represented to the Court that this is one of the sets of provisions that they relied on to formulate their own "amalgam" proposal.  Tr. at 14:10-13.  The source code provisions in *Kewazinga* are based on the Model Order and were entered following a contested proceeding in which the court resolved a number of the disputed provisions *against* Google.

---

[6] *In re Google Play Store Antitrust Litig.*, Case No. 3:21-md-02981-JD (N.D. Cal.).

[7] As an illustrative example, under the Model Order, Google would have 14 days to object to an expert's request for source code.  If no agreement is reached, Plaintiffs must then move the court and describe the reasons the disclosure is needed, assess the risk of harm, and propose a method to reduce that risk.  Google then bears the burden of showing that the risk of harm from disclosure outweighs Plaintiffs' need for disclosure to that expert.  But under Plaintiffs' proposal, Google's deadline to object is reduced to 3 business days and then, absent agreement, Google must move the court to prevent disclosure of its own source code, failing which it waives it the right to do so.  And Google must then make a particularized showing far more burdensome than the balancing test required by the Model Order, while Plaintiffs are relieved of the obligations imposed by the Model Order to explain the need for disclosure and to make any proposal to ameliorate the risk of harm.

[8] Google changed the reference to specific Individual Rules in *Kewazinga* to "Local Rules and Individual Practices," changed reference to patents "asserted in" this action to patents "related to the subject matter of" this action (because no patents are "asserted in" this action), and removed "New York City" as a limitation on the location of review of source code.

\* \* \*

Google sought in its first draft of the revised Order to implement the Court's guidance.  Plaintiffs have deviated from that guidance.  Google respectfully requests that the Court enter an Order in the form attached as Exhibit A.

*/s/ Eric Mahr*
Eric Mahr
FRESHFIELDS BRUCKHAUS DERINGER US LLP
700 13th Street, NW
10th Floor
Washington, DC 20005
Telephone: (202) 777-4545
Email: eric.mahr@freshfields.com

Justina K. Sessions
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2197
Email: jsessions@wsgr.com

*Counsel for Defendants Google LLC, Alphabet Inc., and YouTube LLC*