UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>*AIM Media Ind. Operating, LLC v. Google, LLC*, No. 1:21-cv-06912-PKC (S.D.N.Y.)<br><br>*AIM Media Midwest Operating, LLC v. Google, LLC*, No. 1:21-cv-06884-PKC (S.D.N.Y.)<br><br>*AIM Media Tex. Operating, LLC v. Google, LLC*, No. 1:21-cv-06888-PKC (S.D.N.Y.)<br><br>*Brown Cnty. Publ'g Co., Inc. v. Google, LLC*, No. 1:21-cv-06915-PKC (S.D.N.Y.)<br><br>*Capital Region Indep. Media LLC v. Google LLC*, No. 1:22-cv-06997-PKC (S.D.N.Y.)<br><br>*Clarksburg Publ'g Co., d/b/a WV News v. Google, LLC*, No. 1:21-cv-06840-PKC (S.D.N.Y.)<br><br>*Coastal Point LLC v. Google, LLC*, No. 1:21- cv-06824-PKC (S.D.N.Y.)<br><br>*Eagle Printing Co. v. Google, LLC*, No. 1:21- cv-06881-PKC (S.D.N.Y.)<br><br>*ECENT Corp. v. Google, LLC*, No. 1:21-cv- 06817-PKC (S.D.N.Y.)<br><br>*Emmerich Newspapers, Inc. v. Google, LLC*, No. 1:21-cv-06794-PKC (S.D.N.Y.)<br><br>*Flag Publ'ns, Inc. v. Google, LLC*, No. 1:21-cv-06871-PKC (S.D.N.Y.)<br><br>*Gale Force Media, LLC v. Google, LLC*, No. 1:21-cv-06909-PKC (S.D.N.Y.)<br><br>*Gould Enters., Inc. v. Google,  LLC*, No. 1:22-cv-01705-PKC (S.D.N.Y.)<br><br>*HD Media Co., LLC v. Google, LLC*, No. 1:21-cv-06796-PKC (S.D.N.Y.)<br><br>*Journal Inc. v. Google, LLC*, No. 1:21-cv-06828-PKC (S.D.N.Y)<br><br>*Neighborhood Newspapers, Inc. v. Google LLC*, | Case No. 1:20-cv-03010 (PKC)<br><br>**RESPONSE IN SUPPORT OF NEWSPAPER PLAINTIFFS' MOTION TO SEAL** |

No. 1:21-cv-10188-PKC (S.D.N.Y.)

*Robinson Commc'ns, Inc. v. Google, LLC*, No. 1:21-cv-08032-PKC (S.D.N.Y.)

*Rome News Media, LLC v. Google LLC*, No. 1:21-cv-10186-PKC (S.D.N.Y.)

*Savannah Publ'g Co. v. Google, LLC*, No. 1:22-cv-01693-PKC (S.D.N.Y.)

*Something Extra Publ'g, Inc. v. Google, LLC*, No. 1:21-cv-09523-PKC (S.D.N.Y.)

*Southern Cmty. Newspapers, Inc. v. Google, LLC*, No. 1:22-cv-01971-PKC (S.D.N.Y.)

*Times Journal, Inc. v. Google LLC*, No. 1:21-cv-10187-PKC (S.D.N.Y.)

*Union City Daily Messenger, Inc. v. Google, LLC*, No. 1:22-cv-01704-PKC (S.D.N.Y.)

*Weakley Cnty. Press, Inc. v. Google, LLC*, No. 1:22-cv-01701-PKC (S.D.N.Y.)

## INTRODUCTION

In their proposed Consolidated Amended Complaint ("CAC", Dkt. No. 329-1), the plaintiffs in the individual newspaper actions[1] (the "Newspapers") included certain information that they represented comes from "internal Facebook documents".[2] (CAC ¶¶ 314, 315.)  That information includes the alleged "take rate"—or margin—that the Newspapers claim Meta retained in auctions held through Google's ad server.  (*Id.*)  Notably, none of the civil plaintiffs in this case has received any discovery from Meta, and the Newspapers have declined after repeated requests to identify for Meta:  (1) what specific internal Facebook documents they were referring to; and (2) where and how they gained access to the information allegedly reflected in Facebook's internal documents.  Instead, notwithstanding their allegations in the CAC concerning the purported content of "internal Facebook documents", the Newspapers have now disclaimed ever having any of Facebook's confidential documents.

---

[1] The plaintiffs in the individual newspaper actions include the plaintiffs in the following actions: *AIM Media Ind. Operating, LLC v. Google, LLC*, No. 1:21-cv-06912-PKC (S.D.N.Y.); *AIM Media Midwest Operating, LLC v. Google, LLC*, No. 1:21-cv-06884-PKC (S.D.N.Y.); *AIM Media Tex. Operating, LLC v. Google, LLC*, No. 1:21-cv-06888-PKC (S.D.N.Y.); *Brown Cnty. Publ'g Co., Inc. v. Google, LLC*, No. 1:21-cv-06915-PKC (S.D.N.Y.); *Capital Region Indep. Media LLC v. Google LLC*, No. 1:22-cv-06997-PKC (S.D.N.Y.); *Clarksburg Publ'g Co., d.b.a. WV News v. Google, LLC*, No. 1:21-cv-06840-PKC (S.D.N.Y.); *Coastal Point LLC v. Google LLC*, No. 1:21-cv-06824-PKC (S.D.N.Y.); *Eagle Printing Co. v. Google, LLC*, No. 1:21-cv-06881-PKC (S.D.N.Y.); *ECENT Corp. v. Google, LLC*, No. 1:21-cv-06817-PKC (S.D.N.Y.); *Emmerich Newspapers, Inc. v. Google, LLC*, No. 1:21-cv-06794-PKC (S.D.N.Y.); *Flag Publ'ns, Inc. v. Google, LLC*, No. 1:21-cv-06871-PKC (S.D.N.Y.); *Gale Force Media, LLC v. Google, LLC*, No. 1:21-cv-06909-PKC (S.D.N.Y.); *Gould Enters., Inc. v. Google, LLC*, No. 1:22-cv-01705-PKC (S.D.N.Y.); *HD Media Co., LLC v. Google, LLC*, No. 1:21-cv-06796-PKC (S.D.N.Y.); *Journal, Inc. v. Google, LLC*, No. 1:21-cv-06828-PKC (S.D.N.Y.); *Neighborhood Newspapers, Inc. v. Google, LLC*, No. 1:21-cv-10188-PKC (S.D.N.Y.); *Robinson Commc'ns, Inc. v. Google, LLC*, No. 1:21-cv-08032-PKC (S.D.N.Y.); *Rome News Media, LLC v. Google, LLC*, No. 1:21-cv-10186-PKC (S.D.N.Y.); *Savannah Publ'g Co. v. Google, LLC*, No. 1:22-cv-01693-PKC (S.D.N.Y.); *Something Extra Publ'g, Inc. v. Google, LLC*, No. 1:21-cv-09523-PKC (S.D.N.Y.); *Southern Cmty. Newspapers, Inc. v. Google, LLC*, No. 1:22-cv-01971-PKC (S.D.N.Y.); *Times Journal, Inc. v. Google, LLC*, No. 1:21-cv-10187-PKC (S.D.N.Y.); *Union City Daily Messenger, Inc. v. Google, LLC*, No. 1:22-cv-01704-PKC (S.D.N.Y.); and *Weakley Cnty. Press, Inc. v. Google, LLC*, No. 1:22-cv-01701-PKC (S.D.N.Y.).

[2] On October 28, 2021, Facebook, Inc. changed its name to Meta Platforms, Inc.

Meta respectfully requests that the Court permit that very targeted portions of the relevant Paragraphs 314 and 315 of the CAC—the figures reflecting the alleged "take rates"—remain under seal. Meta's proposed redactions are highlighted in the accompanying Exhibit A. Meta submits that these limited redactions are appropriate because disclosure of the information cited would cause Meta competitive harm and any public interest in access to judicial documents does not outweigh that risk.

*First*, the competitively sensitive information the Newspapers cite was included to support an antitrust claim that this Court already dismissed from the complaint brought by the state attorneys general (the "States"). As Meta will demonstrate in its forthcoming opposition to the Newspapers' proposed amended claim based on the Network Bidding Agreement ("NBA"), the Newspapers have not identified any reason that their new proposed NBA claim should avoid the same fate. And, in any event, there is no credible argument that the inclusion of alleged margins as a factual allegation will in any way change the Court's reasoning in dismissing the same claim asserted by the States.

*Second*, any potential public interest in the relevant documents is refuted by the suspect provenance of the relevant material. Meta has produced no documents to the private plaintiffs in the MDL and the Newspapers have declined to inform Meta how they obtained access to Meta's internal documents. This lack of clarity weighs in favor of keeping the material Meta proposes redacting under seal.

## FACTUAL BACKGROUND

At the outset of this MDL, this Court determined that it would treat the complaint brought by the States as a bellwether pleading that it would resolve prior to addressing any motions to amend or motions to dismiss in the cases brought by the

2

private plaintiffs.  (Dkt. No. 4 ¶¶ 7-10; Dkt. No. 129 ¶¶ 2-3.)  This procedure would allow the private plaintiffs to "tak[e] account of the rulings on the motion to dismiss in the state case" when proposing amendments to their own pleadings.  (Dkt. No. 4 ¶ 9.)

While the relevant parties were briefing Google's motion to dismiss the States' complaint, Google, pursuant to this Court's order, reproduced certain documents that it had produced to government entities and certain private parties relating to conduct at issue in the MDL.  Meta, whom the Court did not order to produce any documents, produced no documents in the MDL.

On September 13, 2022, the Court ruled on Google's motion to dismiss the States' complaint.  (Dkt. No. 308.)  In the order, the Court dismissed the States' claim based on the digital advertising agreement between Meta and Google—the NBA—but otherwise denied Google's motion to dismiss the States' complaint.  (*Id.*)

Following the ruling, the Newspapers, along with other private plaintiffs in the MDL, submitted their proposed amended complaint.  (Dkt. No. 329-1.)  The Newspapers' CAC contained an amended claim related to the NBA notwithstanding the Court's dismissal of that claim from the States' complaint.  (*Id.*)  The Newspapers' CAC also contained two paragraphs of sealed material that the Newspapers represented in their accompanying motion to seal came from "internal documents designated as confidential by Facebook."  ("Mot. Seal", Dkt. No. 323 at 2.)

Following the filing of the CAC, counsel for Meta contacted counsel for the Newspapers and requested an explanation of how the Newspapers obtained access to confidential internal Meta documents if Meta had produced no documents in the MDL.  (*See* Orsini Decl., Ex. A, Email Chain Between Counsel for Meta Platforms, Inc. and

3

Counsel for the Newspapers, at 7.)  Counsel for the Newspapers stated that they were not in possession of "any of Facebook's confidential documents". (*Id.* at 6.)  When pressed where Facebook's internal documents came from if they were not produced by Meta, the Newspapers stated the information cited in their complaint was from their "investigation, [their] work product, information available from the Google document production, as well as information available and in the public domain". (*Id.* at 1, 5.)  Meta has been unable to locate the documents the Newspapers reference in the sealed portion of the CAC in Google's document productions or the public domain and the Newspapers have declined to provide any more specificity about the source of the material despite being repeatedly asked.

## LEGAL STANDARD

In considering requests to seal or redact "judicial documents," courts must balance "the weight of the presumption" of public access against "competing considerations," including "the privacy interests" of those who oppose disclosure. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (internal quotations omitted).  A court may determine that redactions are "essential to preserve higher values and [are] narrowly tailored to serve that interest." *Id.* at 120 (internal citation and quotation marks omitted).  Less weight is given to the presumption of access where the "confidential information does not go to the heart of the judicial process" because it "is not central to the Court's rulings". *Mullinix v. Mount Sinai Sch. of Med.*, No. 12-CV-8659 (PKC), 2014 WL 3687217, at *21 (S.D.N.Y. July 24, 2014).

In situations where a judicial document, such as a complaint, contains sensitive commercial information, courts frequently permit redactions to prevent competitive harm. *See, e.g.*, *Valassis Commc'ns, Inc. v. News Corp.*, No. 17-CV-7378

4

(PKC), 2020 WL 2190708, at *3 (S.D.N.Y. May 5, 2020) (sealing "sensitive business information . . . such as [] financial metrics"); *Skyline Steel, LLC v. PilePro, LLC*, 101 F. Supp. 3d 394, 412-13 (S.D.N.Y. 2015) (sealing "highly confidential sales information, including pricing information" as well as information "revealing confidential negotiations" with a customer).

## ARGUMENT

I. **Disclosure of Audience Network's Alleged Margin Will Cause Meta Significant Competitive Harm**.

Meta requests that one figure cited in two instances in Paragraph 314 and one instance in Paragraph 315 of the CAC remain under seal. The figure cited purports to reflect the "take rate"—also known as the margin—that Meta Audience Network retains on transactions that take place in Google's ad auctions. As the accompanying Declaration by Amit Bhojwani explains, disclosure of a figure that is alleged to reflect the Audience Network margin could be used by competing advertising networks in the competition for both advertisers and publisher ad impressions, directly hurting Meta's business, and if improperly used, also hurting the business of Meta's publisher and advertiser customers. (Bhojwani Decl. ¶ 2-4.) Disclosing this information (while information related to the margins of other ad networks remains confidential) could also impair Audience Network's relationship with publishers. (*Id.*)

Courts have regularly found that this sort of commercially sensitive information can merit redactions. *See, e.g.*, *Kewazinga Corp. v. Microsoft Corp.*, No. 1:18-CV-4500 (GHW), 2021 WL 1222122, at *6 (S.D.N.Y. Mar. 31, 2021) (permitting "details of Microsoft's sources of revenue and the amounts of its revenue and sales" and "specific revenue amounts from certain offerings" to remain under seal); *Playtex Prods.,*

5

*LLC v. Munchkin, Inc.*, No. 14-CV-1308 (RJS), 2016 WL 1276450, at *11 (S.D.N.Y. Mar. 29, 2016) (permitting "sales and revenue" figures to remain under seal "because Plaintiffs would be competitively harmed if they were revealed").

Meta's proposed redactions are narrowly tailored to include only the most competitively sensitive information—the alleged take rate figure cited—and not any of the contextual information surrounding it.  For example, Meta does not seek to redact the Newspapers' characterizations of the take rate (*i.e.*, that the rate allegedly "increased" after the NBA) or the inferences the Newspapers purport to draw from this alleged increase (*i.e.*, that it was the result of Meta "gain[ing] pricing power" after the NBA).  In short, Meta proposes redacting only the information that is most likely to cause Meta competitive harm, leaving the public with sufficient information to understand the Newspapers' allegations and evaluate the merits of their claims.

II. **The Interest in Preventing Competitive Harm Outweighs Public Access Considerations**.

Meta respectfully submits that the interest in preventing the competitive harm articulated above outweighs any public access considerations here for at least two reasons.

*First*, as Meta will explain further in its forthcoming opposition to the Newspapers' motion to amend, the Newspapers' proposed amendments to their NBA claim are futile.  In their amended complaint, the Newspapers advance the same theory regarding the NBA that the States advanced and that this Court rejected—that is, that Google and Meta entered into an agreement in which Meta agreed to drop its support for header bidding in exchange for certain benefits in Google's ad auctions.  (*See* CAC ¶¶ 267-321.)  While the Newspapers contend in their motion to amend that they have

added additional factual allegations to "bolster and cure the pleading deficiencies" the Court identified in its order dismissing the States' NBA claim, the Newspapers do not even attempt to explain in their motion why these purported new allegations render their claim any more plausible than the allegations in the States' complaint.³ (*See* "Mot. Amend", Dkt. No. 328 at 3.)

Given that the Newspapers' theory overlaps almost entirely with the States' theory that this Court already rejected, the Newspapers' NBA claim will fail for the numerous reasons identified in the Court's prior order without regard for the take rate that Meta proposes remain redacted. Indeed, in their briefing in support of their motion to amend, the Newspapers do not even suggest that the specific take rate allegations somehow provide the critical missing information that would lead the Court to depart from its well-reasoned (and correct) decision dismissing the States' NBA claim. Nor could they. Any purported margin that Meta retained from auctions subject to the NBA has no bearing on the reasons the Court dismissed the States' NBA claim. The irrelevance of the confidential alleged take rate weighs in favor of permitting the number to remain under seal. *See Mullinix*, 2014 WL 3687217, at *21 (permitting confidential information to remain under seal where the information was "not central to the Court's rulings").

*Second*, the circumstances surrounding how the Newspapers obtained access to commercially sensitive internal Meta documents remains unclear. Although the

---

³ Instead, the Newspapers lean into the theory that they should be permitted to amend their NBA claim as of right. This position is directly contradicted by the amendment procedures set forth by this Court in Pretrial Order Nos. 2 and 3 (Dkt. Nos. 309, 311) and the relevant law. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243 (2d Cir. 2007) (explaining that when a court issues a pre-trial order pursuant to Rule 16, that order, not Rule 15(a), governs a plaintiff's ability to amend its complaint).

Newspapers contend the information is from their "investigation, [their] work product, information available from the Google document production, as well as information available and in the public domain" (*see* Orsini Decl., Ex. A at 1, 5), Meta has been unable to locate the documents the Newspapers reference in Google's document productions or the public domain. Indeed, it is unclear how and why the Newspapers would be in possession of "internal Facebook documents, including emails sent to Facebook's highest executives". (*See* CAC ¶ 315.)

## CONCLUSION

For the foregoing reasons, Meta respectfully requests the Court permit the targeted information highlighted in Paragraphs 314 and 315 of the version of the CAC attached hereto as Exhibit A remain under seal.

Dated:  October 19, 2022	Respectfully submitted,

By:	/s/ Kevin J. Orsini
Peter T. Barbur
Kevin J. Orsini
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
pbarbur@cravath.com
korsini@cravath.com

*Attorneys for Defendant Meta Platforms, Inc.*