# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re Google Advertising Antitrust Litigation* | Civil Action No. 21-MD-3010 (PKC)<br><br>This Document Relates to: ALL ACTIONS |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR ORDER COMPELLING PRODUCTION OF DOCUMENTS WITHHELD AS PRIVILEGED <u>AND CLARIFYING GUIDELINES FOR PRODUCTION</u>**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 1

II.  RELEVANT BACKGROUND ........................................................................... 2

III. ARGUMENT ....................................................................................................... 4

    A.  The Court Should Clarify the Attorney-Client Privilege and the Attorney Work Product Doctrine for Purposes of Documents Produced in the MDL. ............................................................................... 5

    B.  The Four Exemplar Documents Are Not Privileged. ..................... 11

IV. CONCLUSION .................................................................................................. 13

## TABLE OF AUTHORITIES

Page

**Cases**

*Alomari v. Ohio Dep't of Pub. Safety*,
  626 F. App'x 558 (6th Cir. 2015) ................................................................................. 6

*BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, N.A.*,
  2017 WL 953514 (S.D.N.Y. Mar. 9, 2017) .................................................................. 5

*Certain Underwriters at Lloyd's v. Nat'l R.R. Passenger Corp.*,
  162 F. Supp. 3d 145 (E.D.N.Y. 2016) .......................................................................... 5

*Congregation BNEI Luzer, Inc. v. Maryland Cas. Co.*,
  2004 WL 2609570 (S.D.N.Y. Nov. 17, 2004) ............................................................ 10

*Denney v. Jenkens & Gilchrist*,
  362 F. Supp. 2d 407 (S.D.N.Y. 2004) ........................................................................ 10

*Doe v. Intermountain Health Care, Inc.*,
  2021 WL 425117 (D. Utah Feb. 8, 2021) .................................................................... 8

*ECDC Env't v. New York Marine & Gen. Ins. Co.*,
  1998 WL 614478 (S.D.N.Y. June 4, 1998) .................................................................. 9

*Fisher v. United States*,
  425 U.S. 391 (1976) ..................................................................................................... 8

*Granite Partners v. Bear, Stearns & Co.*,
  184 F.R.D. 49 (S.D.N.Y. 1999) .................................................................................... 9

*In re Aenergy, S.A.*,
  451 F. Supp. 3d 319 (S.D.N.Y. 2020) ................................................................. 4, 5, 8

*In re Allergan plc Sec. Litig.*,
  2021 WL 4121300 (S.D.N.Y. Sept. 9, 2021) ............................................................ 5, 8

*In re County of Erie*,
  473 F.3d 413 (2d Cir. 2007) ..................................................................................... 6, 7

*In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*,
  318 F.3d 379 (2d Cir. 2003) ....................................................................................... 12

*In re Horowitz*,
  482 F.2d 72 (2d Cir. 1973) ......................................................................................... 10

*In re McRay, Richardson, Santana, Wise, & Salaam Litig.*,
  2011 WL 5880994 (S.D.N.Y. Nov. 22, 2011) ............................................................. 9

*In re Signet Jewelers Ltd. Sec. Litig.*,
  332 F.R.D. 131 (S.D.N.Y. 2019) ............................................................................. 5, 6

*In re Zyprexa Prod. Liab. Litig.*,
  254 F.R.D. 50 (E.D.N.Y. 2008) ................................................................................... 5

*Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*,
  295 F.R.D. 28 (E.D.N.Y. 2013) ............................................................................ 10, 12

*M&T Bank Corp. v. State Nat'l Ins. Co.*,
 2020 WL 5494501 (W.D.N.Y. Sept. 11, 2020) ................................................................ 9, 11, 12

*Pearlstein v. BlackBerry Ltd.*,
 2019 WL 1259382 (S.D.N.Y. Mar. 19, 2019) ................................................................ 6, 7, 10, 12

*Renner v. Chase Manhattan Bank*,
 2001 WL 1356192 (S.D.N.Y. Nov. 2, 2001) ............................................................................ 8

*Scott v. Chipotle Mexican Grill, Inc.*,
 94 F. Supp. 3d 585 (S.D.N.Y. 2015) ........................................................................................ 9

*SEC v. Beacon Hill Asset Mgmt. LLC*,
 231 F.R.D. 134 (S.D.N.Y. 2004) ............................................................................................. 9

*SEC v. Ripple Labs, Inc.*,
 2022 WL 4584111 (S.D.N.Y. Sept. 29, 2022) ......................................................................... 6

*Serin v. N. Leasing Sys., Inc.*,
 2010 WL 6501666 (S.D.N.Y. Oct. 6, 2010) ............................................................................ 8

*Sure Fit Home Prods., LLC v. Maytex Mills Inc.*,
 2022 WL 1597000 (S.D.N.Y. May 20, 2022) ......................................................................... 4

*TVT Recs. v. Island Def Jam Music Grp.*,
 214 F.R.D. 143 (S.D.N.Y. 2003) ............................................................................................. 8

*U.S. Postal Serv. v. Phelps Dodge Ref. Corp.*,
 852 F. Supp. 156 (E.D.N.Y. 1994) .......................................................................................... 6

*United States v. Correia*,
 468 F. Supp. 3d 618 (S.D.N.Y. 2020) ..................................................................................... 8

*United States v. Hatfield*,
 2009 WL 3806300 (E.D.N.Y. Nov. 13, 2009) ......................................................................... 7

*Universal Standard Inc. v. Target Corp.*,
 331 F.R.D. 80 (S.D.N.Y. 2019) ............................................................................................. 10

*Valassis Commc'ns, Inc. v. News Corp.*,
 2018 WL 4489285 (S.D.N.Y. Sept. 19, 2018) ............................................................... 5, 6, 8, 11

*Valley Forge Ins. Co. v. Hartford Iron & Metal, Inc.*,
 2017 WL 1361308 (N.D. Ind. Apr. 14, 2017) ......................................................................... 7

*Verschoth v. Time Warner Inc.*,
 2001 WL 286763 (S.D.N.Y. Mar. 22, 2001) ........................................................................... 9

**Rules**

Fed. R. Civ. P. 26(b)(3) ................................................................................................................ 10

Civ. L.R. 26.2 ............................................................................................................................ 2, 6

**Other Authorities**

3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 503.22[4][a]
 (2000) ..................................................................................................................................... 9

I.      **INTRODUCTION**

As permitted by the Court's Order of October 7, 2022 (Doc. 333), Plaintiffs respectfully ask that the Court compel production of four representative documents that Google improperly clawed back as privileged, and clarify production guidelines for Google as discussed below.

Google's privilege log, produced in response to the Court's Order, and its decision to reverse course and retract its request to claw back some of the documents in question, raise more questions than they answer. (Doc. 352-1.) Several entries on the log assert attorney-client or work product protections without indicating that an attorney was copied on the document. Other entries list attorneys but do not appear to be communications that seek or provide legal advice. Compounding Google's inappropriate assertions of privilege, the same day that it was ordered to produce its log, Google sent Plaintiffs a letter *reversing its own clawback decisions* for several of its recently clawed back documents. Google has provided no explanation, and no reasonable explanation is apparent, for why it (i) twice produced these documents (first to the State Plaintiffs and the U.S. Department of Justice, and then to the private Plaintiffs in this MDL); (ii) thereafter sought to claw them back as privileged; (iii) refused to provide more information to Plaintiffs in the subsequent weeks when Google was maintaining that all 68 documents absolutely were privileged; and then, (iv) after being compelled by this Court to log the documents for privilege, reversed its own (tardy) clawbacks. Absent the Court's order, Plaintiffs fear that Google would have continued to improperly withhold the documents at issue, including those it now admits are *not* privileged.

With the Court's permission, to demonstrate Google's overly broad approach to privilege designations, Plaintiffs are submitting *in camera* four exemplar documents that Google still maintains contain privileged portions. Plaintiffs do not believe any part of these documents is privileged. Moreover, with discovery soon beginning in earnest, Plaintiffs believe the parties

1

and the proper resolution of this litigation will benefit from the Court instructing Defendants as to the applicable standards for withholding a document on privilege grounds including in the hope of avoiding this type of issue in the future.  Plaintiffs therefore respectfully request the Court compel production of the four exemplar documents in their entirety with accompanying parameters for appropriate privilege claims, and further direct the parties to meet and confer to determine whether there is any basis for seeking clawback of the remaining documents in light of the Court's guidance.

**II.      RELEVANT BACKGROUND**

On August 10, 2022, Google made an untimely clawback request for 68 of its produced documents.  (Doc. 331-1.)  Upon receiving Google's notice, all Plaintiffs promptly sequestered the 68 documents in accordance with Paragraph 12(c) of the Confidentiality Order.  (Doc. 297.)  Google did not provide Plaintiffs any information to assess its privilege claims as mandated by the Federal Rules, Local Rule 26.2, and the Confidentiality Order.  Google's notice came over two years after it produced the purportedly privileged documents to the State Plaintiffs and, separately, to the Department of Justice, and eight months after Google produced these documents to the private Plaintiffs in these actions.

The Plaintiffs' Privilege Committee was permitted to review 29 of the 68 clawed back documents, and concluded that each of these 29 documents bears no indication of an applicable privilege.  The documents include meeting minute compilations from Google ad-tech business divisions, a PowerPoint showing financial information, and email chains regarding ad tech with no indication of legal advice being sought or provided.

Plaintiffs and Google conferred several times in August and September 2022.  Plaintiffs requested a privilege log in connection with the clawed back documents or, alternatively, a list of Google attorneys relevant to the documents.  Google refused, arguing that its bare privilege

claims complied with the Confidentiality Order's requirement that a party seeking to claw back documents state "the basis of the privilege asserted." (Doc. 297, ¶ 12(c).) In other words, Google contended that because Google said the 68 documents are privileged, Plaintiffs should simply take Google's word for it and move on, despite Google having reviewed and produced these documents multiple times.

Plaintiffs' premotion letter, filed October 6, 2022, requested that the Court (1) require Google to provide a privilege log as to the 68 documents listed in its August 2022 clawback notice, and (2) accept an *in camera* submission of four documents whose privilege status Plaintiffs challenge at this time, as representative examples of the type of documents over which Google is broadly claiming privilege. (Doc. 331.) Plaintiffs noted in part that when the Department of Justice challenged Google's privilege designations in the search monopoly case, Google reversed its privilege decisions for **37,000 documents**. (No. 1:20-cv-03010-APM, Doc. 361 at 21-22 (D.D.C. June 16, 2022).)

On October 7, 2022, the Court ordered Google to file a privilege log within 14 days. (Doc. 333.) The Court also permitted Plaintiffs to file the present motion, and held "[s]ubmission of exemplars in camera approved." (*Id*.)[1]

On October 21, 2022, Google filed a privilege log under seal (Doc. 352-1)[2] and a letter stating that it "is prepared to defend its privilege assertions but continues to believe that any

---

[1] The beginning production numbers for the four documents being provided *in camera* are: GOOG-DOJ-09092627; GOOG-DOJ-11698798; GOOG-DOJ-12866023; and GOOG-DOJ-08154428. Google's log denotes a "Status" of "Redact" for each of these documents. (Doc. 352-1.) Plaintiffs accordingly lodge both the original document and the substitute redacted version that Google produced with its clawback notice. Plaintiffs further note that the document with the beginning production number GOOG-DOJ-08154428 was originally produced with redactions, and the replacement version contains additional redactions, at pages -469 and -470.

[2] Plaintiffs do not oppose Google's motion—which the Court provisionally granted—to maintain the existing redactions to Google's privilege log on the public docket to protect the confidentiality interests of certain of its employees. (Docs. 350, 359.)

3

privilege challenge should be limited to documents that are relevant to the issues in dispute and responsive to document requests issued in this MDL." (Doc. 348.) Following the Court's Opinion and Order on Google's motion to dismiss the States' Third Amended Complaint (Doc. 308), Plaintiffs asked if Google would identify any of the 68 documents it believed were not relevant to the issues in dispute. Google refused to do so.

Google on October 21 also denied that it has "misuse[d]" privilege. (Doc. 348.) That same day, Google sent Plaintiffs a letter—attached hereto as Exhibit A—stating that it "no longer requests clawback of" ten documents on its list of the 68 documents that Google clawed back, tacitly admitting there is not even a colorable argument of privilege for these documents.

## III.  ARGUMENT

At this stage of the litigation, the Court should issue "bellwether" rulings on the status of four documents that Google clawed back (4/19/22 Hr'g Tr. at 51), provide further guidance on privilege issues as set forth below, and direct the parties to meet and confer in light of such guidance.[3] Given the high rate at which Google has withdrawn its privilege claims, the parties will benefit from an order on concrete privilege issues presented by way of the representative documents, with the objective of guiding the parties and clarifying privilege standards that apply to production of documents in the MDL. *See, e.g.*, *In re Aenergy, S.A.*, 451 F. Supp. 3d 319, 328 (S.D.N.Y. 2020) (ordering defendant "to re-review all of its privilege determinations under the correct 'predominant purpose' standard articulated herein."); *BlackRock Allocation Target*

---

[3] Plaintiffs reserve all rights with respect to challenging Google's clawbacks, including based on the principles set forth in Section III.A of this Memorandum, as well as on waiver grounds because Google's lengthy delay in seeking to claw back 68 (now 58) documents precludes it from clawing back the documents on its August 2022 list that it still claims are privileged. *See*, *e.g.*, *Sure Fit Home Prods., LLC v. Maytex Mills Inc.*, No. 21 Civ. 2169 (LGS) (GWG), 2022 WL 1597000 (S.D.N.Y. May 20, 2022) (privilege is waived when disclosing party fails to assert it over course of years despite multiple opportunities to do so).

*Shares: Series S Portfolio v. Wells Fargo Bank, N.A.*, No. 14-CV-09371 (KPF) (SN), 2017 WL 953514, at *3 (S.D.N.Y. Mar. 9, 2017) ("Going forward, the Court sets forth the following guidance for the parties with regards to this category of privilege assertions. . . .").

### A. The Court Should Clarify the Attorney-Client Privilege and the Attorney Work Product Doctrine for Purposes of Documents Produced in the MDL.

Plaintiffs respectfully submit that the following principles should apply to Google's claims of attorney-client privilege:

*First*, because the Court has original jurisdiction under the Clayton Act based on Plaintiffs' federal antitrust claims, federal common law applies to privilege issues. *See Certain Underwriters at Lloyd's v. Nat'l R.R. Passenger Corp.*, 162 F. Supp. 3d 145, 151 n.3 (E.D.N.Y. 2016) ("LMI brings this action pursuant to this Court's federal question jurisdiction. Thus, the Court applies federal common law to the privilege issues") (citations omitted); *In re Allergan plc Sec. Litig.*, No. 18 Civ. 12089 (CM)(GWG), 2021 WL 4121300, at *2 (S.D.N.Y. Sept. 9, 2021) ("Because the claims in this case arise under federal law, federal common law on attorney-client privilege applies."); *In re Signet Jewelers Ltd. Sec. Litig.*, 332 F.R.D. 131, 134 n.2 (S.D.N.Y. 2019); *see also In re Zyprexa Prod. Liab. Litig.*, 254 F.R.D. 50, 52 (E.D.N.Y. 2008) ("[E]ven where a federal question case contains pendent state law claims, the federal law of privileges still obtains.").

*Second*, as this Court emphasized, the attorney-client privilege must be narrowly construed because its application may prevent relevant facts from coming to light. *Valassis Commc'ns, Inc. v. News Corp.*, No. 17-CV-7378 (PKC), 2018 WL 4489285, at *1-2 (S.D.N.Y. Sept. 19, 2018); *see In re Aenergy*, 451 F. Supp. 3d at 322; *In re Allergan*, 2021 WL 4121300, at *2 (noting that because "[i]t runs counter to the ordinary judicial interest in the disclosure of all relevant evidence . . . courts apply the attorney-client privilege only where necessary to achieve

its purpose and construe the privilege narrowly because it renders relevant information undiscoverable." (quotation marks and citations omitted)).  As the party asserting privilege, Google bears the burden of showing that the privilege applies.  *Id.* at *3.  Satisfying that burden should require providing all of the information required for the assertion of a privilege under Local Civil Rule 26.2, including the nature of the privilege; the type of document, e.g., letter or memorandum; the general subject matter of the document; and the author, addressees, and any other recipients together with, if not readily apparent, the relationship of the author, addressees, and recipients to each other.

      *Third*, under Second Circuit law, for the privilege to apply, the "predominant purpose" of the communication must be to solicit or render legal advice.  *SEC v. Ripple Labs, Inc.*, No. 20 Civ. 10832 (AT) (SN), 2022 WL 4584111, at *5 (S.D.N.Y. Sept. 29, 2022) (quoting *In re County of Erie*, 473 F.3d 413, 420 (2d Cir. 2007)); *see also Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 570 (6th Cir. 2015) ("When a communication involves both legal and non-legal matters, we consider whether the predominant purpose of the communication is to render or solicit legal advice.").  Under the applicable test, therefore, the inclusion of an attorney on a communication alone does not render it privileged.  *Pearlstein v. BlackBerry Ltd.*, No. 13CV-07060-CM-KHP, 2019 WL 1259382, at *4 (S.D.N.Y. Mar. 19, 2019).  The privilege attaches only "to a confidential communication from a client to the client's lawyer if the predominate purpose of the communication is seeking legal advice."  *Valassis Commc'ns*, 2018 WL 4489285, at *2; *see U.S. Postal Serv. v. Phelps Dodge Ref. Corp.*, 852 F. Supp. 156, 163-64 (E.D.N.Y. 1994) ("A corporation cannot be permitted to insulate its files from discovery simply by sending a 'cc' to in-house counsel."); *In re Signet Jewelers Ltd. Sec. Litig.*, 332 F.R.D. 131, 136 (S.D.N.Y. 2019) ("While it is true that Signet in-house counsel were copied on the emails

. . . that does not make them privileged."). For the same reason, that they may be stamped "privileged and confidential" or the like does not render documents privileged. *See United States v. Hatfield*, No. 06-CR-0550 (JS), 2009 WL 3806300, at *14 (E.D.N.Y. Nov. 13, 2009) (noting "parties frequently place these designations on plainly non-privileged material."); *Valley Forge Ins. Co. v. Hartford Iron & Metal, Inc.*, No. 1:14-cv-00006-RLM-SLC, 2017 WL 1361308, at *8 (N.D. Ind. Apr. 14, 2017).

*Fourth*, "[w]hen an attorney is consulted in a capacity other than as a lawyer, as (for example) a policy advisor . . . [or] business consultant . . . that consultation is not privileged." *In re County of Erie*, 473 F.3d at 421. That an attorney is included in the communication is not dispositive of the privilege question—he or she must be *acting as a lawyer and rendering legal rather than business* advice. As the Second Circuit explained: "Normally, the capacity in which a lawyer receives or generates a communication is related to determining whether the communication actually involves a lawyer; in other words, a lawyer not acting in her capacity as a lawyer is not a lawyer for the purpose of the attorney-client privilege." *In re County of Erie*, 473 F.3d at 421 n.9. Thus, while "[t]he privilege applies to a company's communications with its external and in-house lawyers . . . in light of the two hats often worn by in-house lawyers, communications between a corporation's employees and its in-house counsel . . . must be scrutinized carefully to determine whether the predominant purpose of the communication was to convey business advice and information or, alternatively, to obtain or provide legal advice." *Pearlstein*, 2019 WL 1259382, at *4. "[I]f the attorney is called upon to render solely business advice based on an expertise that is distinct from his legal calling, his communications with his client are plainly not protected." *TVT Recs. v. Island Def Jam Music Grp.*, 214 F.R.D. 143, 147 (S.D.N.Y. 2003) (citation omitted); *see In re Aenergy*, 451 F. Supp. 3d at 323-24 ("Although a

7

request for legal advice need not be explicit, because information is frequently sent to in-house corporate counsel in order to keep them apprised of ongoing business developments, the implied request for advice must still be the primary reason for the communication in order for the privilege to attach."). It is insufficient for a party asserting privilege to simply claim that its employees copy attorneys on internal correspondence. *In re Allergan*, 2021 WL 4121300, at *4.

*Fifth*, "[t]he attorney-client and attorney work-product privileges do not prevent from disclosure the underlying factual information included in attorney-client communication." *Serin v. N. Leasing Sys., Inc.*, No. 7:06-CV-1625, 2010 WL 6501666, at *2 (S.D.N.Y. Oct. 6, 2010). In other words, factual information that is otherwise discoverable does not become privileged just because it passes through an attorney's hands. *Fisher v. United States*, 425 U.S. 391, 403-04 (1976); *see Valassis Commc'ns*, 2018 WL 4489285, at *2 (holding that "[p]reexisting business documents . . . cannot be affected by any after-the-fact advice received from the lawyer; they are simply not privileged."); *Serin*, 2010 WL 6501666, at *2; *United States v. Correia*, 468 F. Supp. 3d 618, 622 (S.D.N.Y. 2020) (contents of package not privileged just because they were sent to counsel); *Renner v. Chase Manhattan Bank*, No. 98 CIV. 926 (CSH), 2001 WL 1356192, at *5 (S.D.N.Y. Nov. 2, 2001); *TVT Records*, 214 F.R.D. at 149 (finding "no basis for [the] position" "that any communications between the client and its outside counsel, even the mere transmittal of non-privileged documents, were privileged."). Further, "[e]ven if attorney-client privilege protects an email itself, attachments to the email are not privileged unless the attached document is privileged when the client created it." *Doe v. Intermountain Health Care, Inc.*, No. 2:18-CV-807-RJS-JCB, 2021 WL 425117, at *2 (D. Utah Feb. 8, 2021). Likewise, drafts prepared or edited by a lawyer are not privileged unless they contain "confidential information communicated by the client to the attorney that is maintained in confidence." *SEC v. Beacon*

*Hill Asset Mgmt. LLC*, 231 F.R.D. 134, 145 (S.D.N.Y. 2004).  Relatedly, when the lawyer's contribution is primarily factual rather than legal, no privilege attaches.  *See In re McRay, Richardson, Santana, Wise, & Salaam Litig.*, No. 03 CIV. 9685 DAB RLE, 2011 WL 5880994, at *7 (S.D.N.Y. Nov. 22, 2011).  Thus "[a]n attorney's communication to a client reporting facts learned by the attorney from a third party is not within the attorney-client privilege unless the information is included in legal analysis or advice communicated to the client." *ECDC Env't v. New York Marine & Gen. Ins. Co.*, No. 96 CIV.6033 (BSJ) (HBP), 1998 WL 614478, at *9 (S.D.N.Y. June 4, 1998).

*Sixth*, when a privileged communication is conveyed to a *non*-attorney employee, the privilege is waived, except if the recipient "had a need to know the content of the communication in order to perform his or her job effectively or to make informed decisions concerning, or affected by, the subject matter of the communication."  *M&T Bank Corp. v. State Nat'l Ins. Co.*, No. 18-CV-787-EAW-MJR, 2020 WL 5494501, at *3 (W.D.N.Y. Sept. 11, 2020).  As a result, "[a] corporate entity's attorney-client privilege may . . . be waived by disclosure of the communication to employees of the corporation who are not in a position to act or rely on the legal advice contained in the communication."  *Scott v. Chipotle Mexican Grill, Inc.*, 94 F. Supp. 3d 585, 598 (S.D.N.Y. 2015).  And the corporation "bears the burden of demonstrating that it disseminated any communications containing legal advice only to persons with a need to know." *Verschoth v. Time Warner Inc.*, No. 00 Civ 1339 (AGS) (JCF), 2001 WL 286763, at *2 (S.D.N.Y. Mar. 22, 2001) (citing, *inter alia*, 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 503.22[4][a] & n.33 (2000)); *see Granite Partners v. Bear, Stearns & Co.*, 184 F.R.D. 49, 54 (S.D.N.Y. 1999) ("Just as the party seeking to assert a claim of privilege bears the burden of establishing the existence of the privilege, that same party has the

burden of establishing nonwaiver."); *Denney v. Jenkens & Gilchrist*, 362 F. Supp. 2d 407, 412 (S.D.N.Y. 2004) (requiring a showing that the communications "have been maintained in confidence.") (emphasis omitted); *In re Horowitz*, 482 F.2d 72, 81-82 (2d Cir. 1973) (finding it "difficult to be persuaded that the documents were intended to remain confidential in the light of the fact that they were indiscriminately mingled with the other routine documents of the corporation and that no special effort to preserve them in segregated files with special protections was made.") (citation omitted).

As for claims of attorney work product protection, "[f]ederal law rather than state law governs the applicability of the work-product doctrine in all actions in federal court." *Congregation BNEI Luzer, Inc. v. Maryland Cas. Co.*, No. 04 CIV. 2353(BSJ)(DF), 2004 WL 2609570, at *2 (S.D.N.Y. Nov. 17, 2004); *see Pearlstein*, 2019 WL 1259382, at *5 (citing Fed. R. Civ. P. 26(b)(3)). The "key factor" in determining whether a party has met its "heavy burden" of showing this doctrine applies "is whether the documents or things were prepared with an eye toward or in anticipation of or because of the prospect of litigation." *Id.* (quotation marks and citations omitted); *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 39 (E.D.N.Y. 2013) (citation omitted); *see Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 93 (S.D.N.Y. 2019) ("Importantly, the materials to be protected must result from the conduct of investigative or analytical tasks to aid counsel in preparing for litigation.") (quotation marks and citation omitted). Hence, a document is not protected attorney work product "if it was prepared in the ordinary course of business or would have been created in essentially similar form irrespective of the litigation." *Koumoulis*, 295 F.R.D. at 39 (quotation marks and citations omitted). And "conclusory assertions that a document constitutes opinion work product will be insufficient to establish that the document is privileged." *Id.*

B.       **The Four Exemplar Documents Are Not Privileged.**

Applying these principles, none of the four exemplar documents that Plaintiffs are lodging with chambers is privileged. These documents are representative of the overall set, as they include most of the types of documents on Google's August 2022 list (internal emails, PowerPoint presentations, and business meeting minute compilations) and both forms of privilege asserted on its privilege log (attorney-client privilege and attorney work product doctrine). Google has not sustained its burden of establishing that any portion of these four documents was maintained in confidence and is privileged:

- GOOG-DOJ-09092627: Google's log indicates that this email thread involves legal advice (Doc. 352-1, Entry No. 8) yet the matters discussed in the redacted emails concern business facts and strategies. As noted above, that these messages are labeled "Privileged & Confidential" or were received by in-house attorneys does not convert them into privileged attorney-client communications. Even if the business matters referred to were somehow privileged, there is no indication that the non-attorneys engaged in the email communication needed to know the information to perform their job duties. *See M&T Bank Corp.*, 2020 WL 5494501, at *3.

- GOOG-DOJ-11698798: Google's log states that this PowerPoint presentation reveals advice of outside counsel regarding EU law. (Doc. 352-1, Entry No. 30.) But no attorney is specified on the log or mentioned in the document, and the document on its face does not advise on a legal matter. The presentation neither is a communication from counsel nor has the predominant purpose of "seeking legal advice." *Valassis Commc'ns*, 2018 WL 4489285, at *2.

- GOOG-DOJ-12866023: Google's log contends these notes disclose "opinion work product of Competition and Product Counsel in anticipation of litigation and in response to active government investigations by the State of Texas, the Antitrust Division of the United States Department of Justice," and European enforcement authorities. (Doc. 352-1, Entry No. 55.) But the redacted portion does not disclose a legal opinion of counsel or refer to any government investigation or expected litigation. In fact, no attorney is specified on the log and the document appears to contain the meeting minutes of a Google ad-tech business division. *See, e.g.*, *Koumoulis*, 295 F.R.D. at 39 (noting that "[a] party's conclusory assertions that a document constitutes opinion work product will be insufficient").

- GOOG-DOJ-08154428: According to Google's log, this compilation of meeting notes contains advice from an attorney "regarding privacy and competition laws with respect to product development." (Doc. 352-1, Entry No. 31.) But the attorney's name does not appear in the newly redacted portions, which describe business information and strategies. *See Pearlstein*, 2019 WL 1259382, at *4 (privilege does not attach where "the predominant purpose of the communication was to convey business advice and information"). Nor has Google shown that the non-attorneys participating in these meetings had a need to know the redacted information. *See M&T Bank Corp.*, 2020 WL 5494501, at *3.

Google has therefore failed to carry its "heavy" burden, *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2003), of establishing that any of these documents are protected. Accordingly, the Court should order their production in unredacted form.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court compel production of unredacted versions of the four exemplar documents and issue an order clarifying guidelines for production for the benefit of the parties.

Dated: November 4, 2022                                       Respectfully submitted,

| | |
|---|---|
| */s/ W. Mark Lanier* | */s/ Ashley Keller* |
| W. Mark Lanier | Ashley Keller |
| New York Bar No.: 4327284 | ack@kellerpostman.com |
| Mark.Lanier@LanierLawFirm.com | Brooke Clason Smith |
| Alex J. Brown | brooke.smith@kellerpostman.com |
| New York Bar No.: 4593604 | Jason A. Zweig |
| Alex.Brown@LanierLawFirm.com | New York Bar No.: 2960326 |
| Zeke DeRose III | jaz@kellerpostman.com |
| Zeke.DeRose@LanierLawFirm.com | 150 N. Riverside Plaza, Suite 4100 |
| Tower 56 | Chicago, Illinois 60606 |
| 126 East 56th Street, 6th Floor | (312) 741-5220 |
| New York, NY 10022 | Zina Bash |
| (212) 421-2800 | zina.bash@kellerpostman.com |
| **THE LANIER LAW FIRM, PLLC** | 111 Congress Avenue, Suite 500 |
| | Austin, TX 78701 |
| | (512) 690-0990 |
| | **KELLER POSTMAN LLC** |

*Counsel for Texas, Idaho, Indiana, Louisiana (The Lanier Law Firm only), Mississippi, North Dakota, South Carolina, and South Dakota*

*On behalf of the State Plaintiffs*

| | |
|---|---|
| */s/ Dena C. Sharp* | */s/ John Thorne* |
| Dena C. Sharp (*pro hac vice*) | John Thorne |
| Jordan Elias (*pro hac vice*) | Daniel G. Bird |
| Scott M. Grzenczyk (*pro hac vice*) | Bethan R. Jones |
| **GIRARD SHARP LLP** | Mark P. Hirschboeck |
| 601 California Street, Suite 1400 | Eliana M. Pfeffer |
| San Francisco, CA 94108 | Eric J. Maier |
| Tel: (415) 981-4800 | **KELLOGG, HANSEN, TODD,** |
| Fax: (415) 981-4846 | **FIGEL & FREDERICK, P.L.L.C.** |
| dsharp@girardsharp.com | 1615 M Street NW, Suite 400 |
| jelias@girardsharp.com | Washington, DC 20036 |
| scottg@girardsharp.com | Tel: (202) 326-7900 |

13

Tina Wolfson (TW-1016)
Theodore W. Maya (*pro hac vice*)
Bradley K. King (BK-1971)
**AHDOOT & WOLFSON, PC**
2600 West Olive Ave., Suite 500
Burbank, CA 91505
Tel.: (310) 474-9111
Fax: (310) 474-8585
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com
bking@ahdootwolfson.com

*Interim Co-Lead Counsel for Advertiser Plaintiffs*

/s/ Caitlin G. Coslett
Eric L. Cramer
ecramer@bm.net
Michael C. Dell'Angelo
mdellangelo@bm.net
Caitlin G. Coslett
ccoslett@bm.net
Patrick F. Madden
pmadden@bm.net
**BERGER MONTAGUE PC**
1818 Market St., Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000

Philip C. Korologos
pkorologos@bsfllp.com
Brianna S. Hills
bhills@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300

David Boies
dboies@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504

Fax: (202) 326-7999
jthorne@kellogghansen.com

Jeffrey A. Lamken
Caleb Hayes-Deats
**MOLOLAMKEN LLP**
Tel: (202) 556-2000
Fax: (202) 556-2001
jlamken@mololamken.com

*Counsel for Associated Newspapers, Ltd. and Mail Media, Inc.*

/s/ Serina M. Vash
Serina M. Vash
New York Bar No.: 2773448
svash@hermanjones.com
153 Central Avenue, # 131
Westfield, NJ 07090
(404) 504-6516
**HERMAN JONES LLP**

John C. Herman
jherman@hermanjones.com
3424 Peachtree Road, N.E., Suite 1650
Atlanta, GA 30326
(404) 504-6500
**HERMAN JONES LLP**

Paul T. Farrell, Jr.
paul@farrellfuller.com
Michael J. Fuller, Jr.
mike@farrellfuller.com
1311 Ponce De Leon, Suite 202
San Juan, PR 00907
(939) 293-8244
**FARRELL & FULLER, LLC**

/s/ Stuart A. Davidson
Paul J. Geller
pgeller@rgrdlaw.com
Stuart A. Davidson
sdavidson@rgrdlaw.com

| | |
|---|---|
| Telephone: (914) 749-8200 | Alexander C. Cohen<br>acohen@rgrdlaw.com |
| Jesse Panuccio<br>jpanuccio@bsfllp.com<br>**BOIES SCHILLER FLEXNER LLP**<br>1401 New York Avenue, NW<br>Washington, DC 20005<br>Telephone: (202) 895-7580 | Maxwell H. Sawyer<br>msawyer@rgrdlaw.com<br>120 East Palmetto Park Road, Suite 500<br>Boca Raton, FL 33432<br>(561) 750-3000<br>**ROBBINS GELLER RUDMAN & DOWD LLP** |
| Mark C. Mao<br>mmao@bsfllp.com<br>Sean P. Rodriguez<br>srodriguez@bsfllp.com<br>**BOIES SCHILLER FLEXNER LLP**<br>44 Montgomery Street, 41st Floor<br>San Francisco, CA 94104<br>Telephone: (415) 293-6820 | David W. Mitchell<br>davidm@rgrdlaw.com<br>Steven M. Jodlowski<br>sjodlowski@rgrdlaw.com<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101<br>(619) 231-1058<br>**ROBBINS GELLER RUDMAN & DOWD LLP** |
| Sabria A. McElroy<br>smcelroy@bsfllp.com<br>**BOIES SCHILLER FLEXNER LLP**<br>401 E. Las Olas Blvd., Suite 1200<br>Fort Lauderdale, FL 33301<br>Telephone: (954) 377-4216 | Robert P. Fitzsimmons<br>bob@fitzsimmonsfirm.com<br>Clayton J. Fitzsimmons<br>clayton@fitzsimmonsfirm.com<br>Mark A. Colantonio<br>mark@fitzsimmonsfirm.com<br>1609 Warwood Avenue<br>Wheeling, WV 26003<br>(304) 277-1700<br>**FITZSIMMONS LAW FIRM PLLC** |
| George A. Zelcs<br>gzelcs@koreintillery.com<br>Randall P. Ewing<br>rewing@koreintillery.com<br>Marc A. Wallenstein<br>mwallenstein@koreintillery.com<br>Ryan A. Cortazar<br>rcortazar@koreintillery.com<br>**KOREIN TILLERY LLC**<br>205 North Michigan Avenue, Suite 1950<br>Chicago, IL 60601<br>Tel.: (312) 641-9750<br>Fax: (312) 641-9751 | *Counsel for Direct Action Newspaper Plaintiffs AIM Media Indiana Operating, LLC, AIM Media Midwest Operating, LLC, AIM Media Texas Operating, LLC, Brown County Publishing Company, Inc. and Multi Media Channels, LLC, Clarksburg Publishing Company, d/b/a WV News, Coastal Point LLC, Eagle Printing Company, Ecent Corporation, Emmerich Newspapers, Incorporated, J.O. Emmerich & Associates, Inc., Delta Democrat Publishing Company, Commonwealth Publishing Company,* |
| Stephen M. Tillery<br>stillery@koreintillery.com<br>Michael E. Klenov | |

15

mklenov@koreintillery.com
Carol L. O'Keefe
cokeefe@koreintillery.com
**KOREIN TILLERY LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Tel.: (314) 241-4844
Fax: (314) 241-3525

*Interim Co-Lead Counsel for the Publisher Class*

*Inc., Delta Press Publishing Company, Inc., Newton County Appeal Inc., Marion Publishing, Company, Yazoo Newspaper, Co., Inc., Sunland Publishing, Company, Inc., Simpson Publishing Co., Inc., Montgomery Publishing Co., Inc., Franklinton Publishing Co., Inc., Charleston Publishing Co., Inc., Clarion Publishing Company, Inc., Scott Publishing, Inc., Clarke Publishing, Inc., Hattiesburg Publishing, Inc., Tallulah Publishing, Inc., Louisville Publishing, Inc., Kosciusko Star-Herald, Inc., Enterprise-Tocsin, Inc., Grenada Star, Inc., Tate Record Inc., Flag Publications, Inc., Gale Force Media, LLC, HD Media Company, LLC, Journal Inc., Robinson Communications, Inc., Something Extra Publishing, Inc., Rome News Media, LLC, Times Journal, Inc., Neighbor Newspapers, Savannah Publishing Co., Inc., Gould Enterprises, Inc., Union City Daily Messenger, Inc., Weakley County Press, Inc., and Southern Community Newspapers, Inc.*