# Exhibit C

**Freshfields Bruckhaus Deringer US LLP**

New York
601 Lexington Avenue
31st Floor
New York, NY  10022
T  +1 212 277-4000 (Switchboard)
    +1 212 284-4910 (Direct)
F  +1 646 521-5710
E  rob.mccallum@freshfields.com
www.freshfields.com

**Via Email**

Zeke DeRose III
Lanier Law Firm
10940 W. Sam Houston Pkwy N
Suite 100
Houston, TX 77064

May 23, 2022

**Re:** *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC)

Dear Zeke:

I write regarding Plaintiffs' initial draft of the ESI protocol that you circulated on April 26, 2022 ("Plaintiffs' Draft").  Seven months in the making, Plaintiffs' Draft ignores all of the Court's recent guidance concerning the need for efficiency in discovery.  It also jettisons the concept of proportionality and goes so far beyond the obligations imposed by the Federal Rules that it appears engineered to achieve an impasse.  As a result, it is an unworkable starting point for negotiations.  We summarize our main concerns below and propose an efficient and practical alternative solution that is consistent with the Court's guidance.

1. **Plaintiffs' Draft Ignores the Court's Guidance**

At the April 19, 2022 Conference, Judge Castel questioned the need to "reinvent wheels" in this case, and cautioned the parties against "lard[ing] up" discovery orders.  ECF 291 at 14, 32; *see also id*. at 56 ("[M]y goal here is to get this simplified and get it done.")  Plaintiffs' Draft ignores that guidance.  Having ballooned to 44 pages, it is twice the length of the prior draft under negotiation with State Plaintiffs, and includes a slew of unnecessary provisions emblematic of the type of "overkill" that we understand the Court to have discouraged.  *See id*. at 5.

In addition to running afoul of the Court's overarching guidance as to the need for efficiency, Plaintiffs' Draft also conflicts with the Court's specific guidance on the management of discovery in this MDL.

*First*, Plaintiffs' Draft seeks to shift the consequences of Plaintiffs' delay to Google.  After a seven month delay, Plaintiffs now propose that this Order should be entered in mid-June and that

215

obligations concerning "discovery requests pending at the time of this Order" should commence "within 7 days of the entry of this Order" (which in turn triggers additional cascading deadlines). Plaintiffs' Draft ¶ 5.3. The timeline proposed in Plaintiffs' Draft is not only burdensome, but it conflicts with the Court's guidance that Plaintiffs should coordinate the drafting of Rule 34 document requests, ECF 129, to ensure that Google had sufficient time to formulate its response to such requests (recognizing that doing so might take "months"). *See* ECF 142 at 33. If implemented, Plaintiffs' Draft would deprive Google of the necessary time to formulate its response to Plaintiffs' belated Rule 34 requests in contravention of the Court's guidance.

*Second*, Plaintiffs' Draft seems intended to generate regular discovery disputes. We understand the Court to have encouraged the parties to prioritize efficiency and negotiate in good faith in an effort to minimize "weekly" discovery disputes. *See* ECF 291 at 42-43. But Plaintiffs' Draft walks back most of the progress that Google and State Plaintiffs achieved in negotiations during the summer of last year and replaces that progress with numerous one-sided provisions that will lead to impasse. Perhaps recognizing that it is bound to create disputes, Plaintiffs' Draft introduces various affirmative obligations to go to Court whenever disagreement is reached. *See* Plaintiffs' Draft ¶¶ 5.4, 5.17, 8.2.

*Third*, Plaintiffs' Draft introduces more than six pages of provisions concerning clawbacks and privilege logs which are inconsistent with the Court's guidance and the recently entered Confidentiality Order. Judge Castel has already ruled on the scope of an appropriate privilege clawback provision in this case, ECF 297, so there is no reason for Plaintiffs to reinvent that wheel by seeking to modify or supplement those procedures through this Order. *See* Plaintiffs' Draft ¶¶ 7.2-7.5. And the Court has already rejected Plaintiffs' proposal that Investigation Materials are "deemed to be produced" in this MDL because that language could be read to give rise to an obligation to create privilege logs that the Court has declined to endorse. *Compare* Plaintiffs' Draft ¶ 1.1 *with* ECF 291 at 19-22. Instead of implementing the Court's guidance with respect to privilege logs, Plaintiffs' Draft ignores it and sets forth pages of burdensome provisions detailing the format and content of privilege logs, the vast majority of which are superfluous. Plaintiffs' Draft ¶¶ 7.6-7.14. Plaintiffs' Draft also purports to impose an obligation on the party asserting privilege to provide unspecified "additional relevant information" in the event that the Receiving Party claims to be "unable to adequately assess" the claims of privilege. Plaintiffs' Draft ¶ 7.3.

**2.   Plaintiffs' Draft Conflicts With the Federal Rules of Civil Procedure**

The purpose of the Federal Rules is to achieve the "just, speedy, and inexpensive determination" of disputes. Fed. R. Civ. P. 1. Plaintiffs' Draft appears intended to do the opposite because it jettisons the baseline requirement of proportionality and replaces it with a scorched-earth approach to discovery, and otherwise purports to impose a range of obligations not found in the Federal Rules.

*First*, Plaintiffs' Draft discards various provisions incorporating the concept of proportionality. The draft ESI protocol under negotiation with State Plaintiffs last summer tracked Rule 26 and, among other things, required the parties to use reasonable, good faith, and

315

proportional efforts to preserve, identify, and produce relevant information, including identifying appropriate limits to discovery.  Consistent with Rule 26, State Plaintiffs agreed to various sensible limitations on the requirement to search, review, and produce certain materials, including with respect to deleted documents and data accessible only by forensics, ephemeral data that is difficult to preserve, temporary internet files, dynamic fields of databases or log files that are not retained in the usual course of business, and certain data in metadata fields.  Plaintiffs' Draft undoes that progress and replaces those provisions with a blanket requirement to "preserve and allow inspection of all relevant, discoverable Documents in their original, native, unmodified format, unless otherwise jointly agreed to by the Parties in writing."  Plaintiffs' Draft ¶ 4.2.  And while State Plaintiffs had agreed that certain types of information—such as backup and disaster recovery systems, system logs, server logs, and network logs, and systems no longer in use—need not be searched, Plaintiffs' Draft requires immediate disclosure of information concerning "disaster recovery media and rotation of backup media" as well as "the identity and version of applicable legacy software" (among other things). Plaintiffs Draft ¶ 5.4.

*Second*, Plaintiffs' Draft is laced with burdensome obligations that have no basis in the Federal Rules.  Perhaps most egregious is the vague and ambiguous requirement to produce "materials properly within the scope of discovery" without any limitation by search terms or agreed Custodial Sources.  Plaintiffs' Draft seems to defeat the purpose of agreed limitations on discovery because it purports to require production of responsive documents "regardless of whether the materials hit upon any agreed-upon Search Terms or fall within the constraints of an agreed-upon electronic search methodology."  Plaintiffs' Draft ¶ 5.9.  And the remainder of Paragraph 5 of Plaintiffs' Draft concerning "Search and Collection of Documents," which runs to approximately 10 pages, purports to impose various other burdensome obligations, including some which require discovery of documents that are irrelevant on their face.  For example, under Plaintiffs' Draft a Producing Party would be required to conduct a sampling and review exercise for search terms where the parties disagree as to whether the discovery sought is "unduly burdensome or not proportional to the needs of these Actions," Plaintiffs' Draft ¶ 5.11.6, and to provide "disclosures regarding the non-relevant information that each Search Term is returning or terms or phrases that may be returning non-responsive documents."  *Id*.  Requiring sampling of every term a party disagrees with and requiring disclosures about non-relevant information would cause delay, be unduly burdensome, unfairly prejudice a party's ability to object to inappropriate search terms, and would require disclosure of information outside the proper scope of discovery.

*Third*, Plaintiffs' Draft seeks to replace the timeframes set forth in the Federal Rules with a series of bespoke timelines of Plaintiffs' choosing.  Various provisions of Plaintiffs' Draft purport to impose cascading 7- and 14-day deadlines.  *See* Plaintiffs' Draft, ¶¶ 4.2, 5.1, 5.11.5, 5.11.6.  Under the Federal Rules, a party has 30 days to file Responses and Objections to a Request for Production made pursuant to Rule 34, following which the parties would, in the ordinary course, meet and confer concerning an appropriate scope of discovery.  There is no reason to depart from the deadlines provided for in the Federal Rules.

*Fourth*, Plaintiffs' Draft presumes the propriety of all document requests because various deadlines are triggered by the service of any "request" without regard to its breadth or relevance. *See, e.g.*, Plaintiffs' Draft ¶¶ 5.3, 5.4. The Court has already made clear that some of State Plaintiffs' prior requests for documents would be overbroad and inappropriate on their face if propounded in the MDL. *Compare* State Pls.' Second Set of Reqs. for Produc., Nos. 2-3 (Apr. 30, 2021), *with* ECF 291 at 21 ("If it's one Rule 34 request that says, 'Pursuant to Rule 34, give me everything you gave in the civil investigative stage,' that's not going to work with me."). Google believes that the more efficient course is to adopt the framework contemplated by the Federal Rules, pursuant to which a recipient of a request for production of documents is afforded the opportunity to file Responses and Objections that will inform any subsequent meet-and-confer.

*Fifth*, Plaintiffs' Draft includes numerous provisions that invite delay and corollary discovery and disputes, and intrude on a Producing Party's right to discharge its discovery obligations without undue interference by the Requesting Party. Specifically, Plaintiffs' Draft imposes various obligations on a Producing Party to provide an unspecified amount of additional information to enable the Receiving Party to "assess" or "evaluate" the "sufficiency" or "efficacy" of searches and proposed Custodians, and purports to provide the Requesting Party with other broad rights to oversee and "validate" the Producing Party's discovery efforts. Plaintiffs' Draft ¶¶ 5.3, 5.4, 5.11.1, 5.11.2, 5.12, 5.13. There is no obligation under the Federal Rules to provide that kind of information or submit to that degree of oversight by an adversary. It is for Google and its counsel to propose and conduct appropriate searches in response to discovery requests issued by Plaintiffs (and to confer in good faith as to the scope of those searches). If Plaintiffs contend that we have not discharged our discovery obligations in any particular instance, the appropriate course of action is to meet and confer. If necessary, Google will justify the scope of its discovery efforts to the Court.

\* \* \*

Judge Castel ordered Plaintiffs to coordinate as to a draft ESI Protocol in September 2021. ECF 129. Plaintiffs represented to the Court in October 2021 that they had done so and were consolidating comments on an ESI Stipulation to be provided to Defendants. ECF 141. Having waited over seven months to present that draft, Plaintiffs now assert that time is of the essence and that the parties should aim to submit an agreed draft to Judge Castel in mid-June.

But Plaintiffs' Draft ignores the Court's guidance and the Federal Rules to such a degree that it is not a workable starting point for negotiations. As a result, Google proposes to follow the Court's guidance from the Confidentiality Order negotiations: We have enclosed two exemplar ESI Orders that Google has entered into in other cases, both of which are based on the Federal Rules, streamlined, and efficiently address the relevant ESI issues without seeking to reinvent the wheel. *See* ECF 291 at 13-14. As requested, we have also coordinated with Meta's counsel and we understand that they will be proposing a third exemplar. We invite Plaintiffs to select from one of those exemplars with the goal of submitting a joint ESI stipulation and proposed order to Judge Castel by mid-June as requested by Plaintiffs.

515

We are available to meet and confer.

Very truly yours,

/s/ Robert J. McCallum

Robert J. McCallum

Enclosures

cc: Lauren Kaplin
    Mikaela Evans-Aziz
    Kevin Orsini
    Martha Reiser
    Jason Zweig
    Caitlin Coslett
    John Thorne
    Daniel Bird
    Eric Maier
    Ted Maya
    Jordan Elias
    Stuart Davidson
    Serina Vash
    Thomas Ray