KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215

———

(202) 326-7900

FACSIMILE:
(202) 326-7999

November 10, 2022

*Via CM/ECF*

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY  10007

      Re:    *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC),
                related case: No. 1:21-cv-03446 (PKC)

Dear Judge Castel:

      Undersigned counsel for plaintiffs Associated Newspapers Ltd. and Mail Media, Inc. (collectively "Daily Mail") write in response to Google's pre-motion letter (MDL Doc. 367) seeking leave to move to dismiss two of six counts in Daily Mail's First Amended Complaint ("FAC") and strike certain other allegations.[1]  Pursuant to Your Honor's Individual Practices, Daily Mail notes that there is currently no conference scheduled in this matter.

      Google's proposed motion to dismiss Daily Mail's complaint is narrow, procedurally improper, and meritless.  As a result, Daily Mail does not seek to further amend its complaint at this time.  Google does not dispute that Daily Mail's FAC states claims for relief under Sections 1 and 2 of the Sherman Act.  But despite its concession that the vast majority of Daily Mail's allegations must proceed to discovery, Google requests 225 days and 100 pages of briefing for its proposed motion to dismiss.  In the meantime, Google has sought to extend the discovery stay – already in place for 14 months – until this Court decides all four (and potentially five) of Google's separate motions to dismiss the various complaints in these centralized actions.

---

[1] Pursuant to Pretrial Orders 2 and 3, MDL Docs. 309 & 311, Daily Mail moved to amend its complaint on October 5, 2022, MDL Doc. 318.  Google chose not to oppose that motion.  *See* MDL Doc. 354.  Although the Court has not yet granted Daily Mail's motion, this letter treats Daily Mail's First Amended Complaint, MDL Doc. 319-1, as its operative pleading.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable P. Kevin Castel
November 10, 2022
Page 2

While Daily Mail agrees that separate motion-to-dismiss briefing is appropriate, Google's proposed briefing schedule is excessive, and Google's bid to further delay general discovery is unwarranted and contrary to this Court's considered plan for pretrial proceedings. Daily Mail respectfully submits that general discovery should open on the allegations in its operative pleading without delay. Daily Mail also proposes that all motion to dismiss briefing be completed in 120 days from entry of the Court's order granting leave, not next Summer.

I.  **Google's Proposed Motion To Dismiss Daily Mail's Complaint Is Narrow and Meritless**

Unlike with most of the other plaintiffs in this MDL, Google does not seek to dismiss Daily Mail's antitrust claims, but rather requests leave to strike specific allegations supporting those claims. Google seeks (at 2, 4) to challenge Daily Mail's allegations related to: 1) Google's interference with publishers' ability to share their data with Google's rivals (i.e., hashing user IDs); 2) Google's disabling of Header Bidding for a large and important source of publishers' mobile traffic (i.e., Accelerated Mobile Pages ("AMP")); 3) Google's coercing publishers to participate in Exchange Bidding; and 4) Google's punishing publishers for dealing with rival ad exchanges by demoting those publishers in Google's search rankings. Google also seeks to dismiss Counts V and VI of the FAC, which plead deceptive-practices and fraud claims under New York law.

Google's proposed motion lacks merit. As Daily Mail explained in moving to amend its complaint, its amended allegations regarding the hashing of user IDs, Exchange Bidding, and AMP clarify the anticompetitive nature of those programs in light of this Court's order denying Google's motion to dismiss the State Plaintiffs' Third Amended Complaint ("TAC"). Daily Mail's Mem. Supp. Mot. To Amend ("Mem.") at 6-15, MDL Doc. 319. Daily Mail makes clear that user IDs belong to publishers (not to Google), and Google's hashing of those user IDs affirmatively interferes with publishers' ability to do business with Google's rivals. *Id*. at 7-11. Daily Mail also explains how Google used technical limitations and deception to coerce publishers to abandon client-side header bidding in favor of Google's Exchange Bidding. *Id*. at 11-13. And Daily Mail details how Google outright denied vital search traffic to publishers who did not adopt the AMP page format, thereby locking publishers into AMP and blocking them from using client-side header bidding to encourage competition for their inventory. *Id*. at 13-15. Google's pre-motion letter ignores these allegations, stating (at 2) only that Daily Mail's allegations are "inconsistent with this Court's ruling[ ]" on the TAC and "fail on the merits."

Google also ignores or misreads (at 4) Daily Mail's allegations concerning Google's use of its search monopoly to harm competition in the relevant ad-tech markets. For instance, Daily Mail does not, as Google suggests, assert a tying claim regarding Google's sale of search ad inventory only to advertisers who use AdWords. Instead, Daily Mail describes how Google used that relationship to "lock advertiser demand for display inventory into AdX" in order to obtain power in the market for advertising exchanges. FAC ¶ 92. Ultimately, Google exercised that

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable P. Kevin Castel
November 10, 2022
Page 3

market power to enact its tie between AdX and Google's publisher ad server, a tying claim this Court has already approved. FAC ¶¶ 92-97. And although Google complains that Daily Mail fails to identify the impetus for Google's decision to demote Daily Mail (and other publishers including Condé Nast, Prevention Magazine, the New York Times, and NFL.com) in its search rankings, Daily Mail's complaint could not be clearer on that point: Google targeted "those [publishers] that made AdX," Google's ad exchange, "compete more vigorously for impressions." *Id*. ¶ 219; *see also id.* ¶ 224.

Google's proposed motion to "dismiss" these specific allegations is also procedurally improper. "A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (emphasis in original); *see also In re Am. Express Anti-Steering Rules Antitrust Litig.*, 343 F. Supp. 3d 94, 100 (E.D.N.Y. 2018) (explaining that "a defendant may not simply seek adjudication of facts in a complaint that are not dispositive of any of the pleas for legal redress"). Google cannot use a Rule 12(b)(6) motion to slice and dice Daily Mail's antitrust claims. *See Am. Express*, 343 F. Supp. at 100-01 (defining Section 2 claim broadly to include all "monopolistic activity").

As for Daily Mail's state law fraud and deceptive practices claims, Google's objections are similarly thin. Google claims (at 11) that its deceptions were "mere puffery" and that its conduct is not actionable under New York General Business Law Section 349. But it was not puffery when, for instance, Google told publishers its exchange conducted a second-price auction when in fact it was running third-price auctions. FAC ¶¶ 130-38. In any event, whether a practice is materially misleading is "usually a question of fact" not suited for disposition on a motion to dismiss. *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013); *see also Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 566 (S.D.N.Y. 2016) ("Courts have generally held that" whether an act "is misleading in a material way" is a question that "cannot be resolved on a motion to dismiss"). Google also complains that Daily Mail's common-law fraud allegations do not meet the particularity requirements of Rule 9(b), but Daily Mail's Amended Complaint contains numerous descriptions of fraudulent statements in sufficient detail "to provide [Google] fair notice" of Daily Mail's claim. *S.E.C. v. China Ne. Petroleum Holdings Ltd.*, 27 F. Supp. 3d 379, 386-87 (S.D.N.Y. 2014) (Buchwald, J.). *See*, *e.g.*, FAC ¶¶ 44, 112, 145, 148, 149, 163, 219.

II.   **Google's Proposed Motions Cannot Justify Staying General Discovery**

Google has requested to continue the complete stay on discovery – or alternatively to carve broad categories of relevant materials out of discovery – until after this Court resolves its forthcoming motions to dismiss. *See* Ltr. at 1, 5 (Nov. 7, 2022), MDL Doc. 371. Because Google's motion, even if successful, will not dispose of Daily Mail's entire case (or even most of

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable P. Kevin Castel
November 10, 2022
Page 4

it), any discovery stay is inappropriate.  A partial stay would also be inefficient and inconsistent with this Court's plan for pre-trial proceedings.[2]

"The pendency of a dispositive motion is not, in itself, an automatic ground for a stay." *Mirra v. Jordan*, 2016 WL 889559, \*2 (S.D.N.Y. Mar. 1, 2016) (Fox, M.J.) (citation omitted); *see also In re Chase Manhattan Corp. Sec. Litig.*, 1991 WL 79432, \*1 (S.D.N.Y. May 7, 1991) (McKenna, J.).  The defendant must make "a *strong* showing that a motion to dismiss the case *in its entirety* would be granted."  *Medina v. City of New York*, No. 19-cv-9412, 2020 WL 3050971, \*2 (S.D.N.Y. June 8, 2020) (Wang, M.J.) (first emphasis in original).  Thus, motions to dismiss of questionable merit, *see*, *e.g.*, *Guiffre v. Maxwell*, 2016 WL 254932, \*1 (S.D.N.Y. Jan. 20, 2016) (Sweet, J.), and "*partial* motion[s] to dismiss," *Medina*, 2020 WL 3050971, at \*2; *see also Kirschner v. J.P. Morgan Chase Bank, N.A.*, 2020 WL 230183, \*2-3 (S.D.N.Y. Jan. 15, 2020) (Cave, M.J.), cannot support a motion to stay discovery.  Even if Google's proposed motion succeeded, almost all of Daily Mail's Amended Complaint would survive.  Under those circumstances, any stay of discovery is inappropriate.

Google's alternative of a partial discovery stay would be inefficient and impractical.  Coordinated discovery on the vast majority of the allegations in Daily Mail's complaint will soon commence because this Court already held, and Google does not dispute, that they state plausible claims for relief.  To let most discovery proceed while pausing it for only certain discrete allegations is a recipe for duplicative, cumbersome discovery.  For example, while Google proposes to stay all discovery of its "search business," Ltr. (Nov. 7, 2022) at 5, Google witnesses knowledgeable about the mechanics of AdX likely also possess information relevant to Daily Mail's allegations that Google used its search rankings to punish publishers who forced AdX to compete more vigorously for impressions.  Thus, any search-related stay, once lifted, may result in some of those already-deposed AdX witnesses needing to be recalled.  Such duplication of discovery is likely to be particularly prejudicial because Google's proposed motion-to-dismiss briefing schedule contemplates nearly eight months of briefing, and Plaintiffs have proposed a 15-month fact discovery period.  Under Google's proposal, then, discovery on issues subject to its motions to dismiss likely will not open (at the earliest) until the fact-discovery period is more than half over, and potentially many months after any witness already have been deposed.

Google's plan would also prejudice non-parties having information relevant to both stayed and unstayed topics.  For example, employees at now-defunct or struggling rival ad exchanges – who are plainly relevant to many of the allegations this Court already has sustained – are also likely to have information regarding the effect of Google's hashing user IDs.  Once Google's proposed discovery stay is lifted, Plaintiffs may be forced to serve second subpoenas

---

[2] Google's proposed discovery stay is also inappropriate for the reasons described in the letter from Plaintiffs' Lead Attorneys regarding Plaintiffs' proposed case management plan. MDL Doc. 358 at 3-4.

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable P. Kevin Castel
November 10, 2022
Page 5

on, and even re-depose, such third-party witnesses.  As with Daily Mail's search allegations, this discovery redux would occur many months after the first-round depositions and document productions.

Finally, Google's proposal would disrupt this Court's plan for pre-trial proceedings.  The Court indicated early on that discovery would open on the operative pleadings following its decision on Google's motion to dismiss the States' complaint.  Hr'g Tr. (Sept. 24, 2021) at 12:24-13:7 (indicating that if "the state pleading . . . passes muster" the Court would have "confidence that there will be other pleadings that pass muster" meaning "the stay of discovery" could "be dissolved").  The Court also made clear that, if Google wished to maintain a stay on discovery, it should oppose Daily Mail's and the other plaintiffs' motions to amend.  Pre-Trial Order No. 2 ¶ 3 (staying discovery in certain actions only "pending the hearing and determination of the motion to amend").  By now, opposed motions to amend would have been fully briefed.  But Google chose not to oppose amendment, and has sought instead to use a procedurally improper Rule 12(b)(6) motion to extend the discovery stay for an additional nine months (and likely longer).  Such a result would bear little relation to how this Court has indicated this litigation should proceed.

**III.    Separate Motions To Dismiss Each Complaint Are Warranted**

Daily Mail agrees that Google must separately move to dismiss each complaint in these centralized actions.  The various actions in this MDL are distinct and "retain their separate identities."  *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 (2015); *see also In re Fosamax (Alendronate Sodium) Prods. Liability Litig.*, 852 F.3d 268, 302 (3d Cir. 2017) (An MDL "is not a class action" but "a collection of separate lawsuits."), *vacated on other grounds sub nom. Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668 (2019).  Allegations in one complaint cannot be imputed to or bind parties to other, different complaints.  *See Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 488-90 (7th Cir. 2020) (holding that parties to an MDL do not merge their allegations absent an expressed intent to do so).  That is especially true here, when the various plaintiff groups proceed on different legal theories and different factual allegations.

Daily Mail's complaint differs from the other complaints in this MDL in several important ways, as Google recognizes.  For instance, although Google seeks (at 8) to dismiss allegations related to Google's "Minimum Bid to Win" program from the Putative Publisher Class's complaint, Google does not seek to dismiss Daily Mail's different allegations related to the same program.  FAC ¶¶ 49-52, 166-69.  For good reason.  Daily Mail does not complain that "Minimum Bid to Win" "reduced the volume of header bidding transactions" by making "Google's bidding tools more popular."  Ltr. at 8.  Rather, Daily Mail pleads that "Minimum Bid to Win" is "functionally the same as Last Look," such that "Google is continuing to trade on inside information despite its assurances to the contrary."  FAC ¶ 167-168; *see also id.* ¶ 168 ("Put another way, when Google wins, its bids are suspiciously close to the next highest bidder.").  This Court already has found that trading on rivals' bid information is

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable P. Kevin Castel
November 10, 2022
Page 6

"anticompetitive conduct that permit[s] AdX to win bids based on price manipulations by Google, as opposed to a superior product or some other legitimate business factor." *In re Google Digital Advert. Antitrust Litig.*, 2022 WL 4226932, at *30 (S.D.N.Y. Sept. 13, 2022).

To take another example, Daily Mail pointed out in its unopposed motion to amend that, unlike other plaintiffs, its complaint "always has contained a detailed description of 'the mechanics of Google's search engine'" and how Google uses search rankings "to the detriment of client-side header bidding and exchange rivals." Mem. at 13; FAC ¶¶ 201-25. Those allegations are not included in the other complaints in this MDL. And Daily Mail does not bring a claim regarding the relationship between Google's search product and its ad buying tools like the Advertiser and Publisher Classes do, *see* Ltr. at 3-4, nor does it make a claim regarding the relationship between Google search and Google's Chrome browser, as the Direct Action Newspaper Plaintiffs do, *see* Ltr. at 5 n.4. Google's apparent attempt (at 2-5) to lump together various "claims involving Google's search business" is thus inappropriate.

Finally, while Daily Mail agrees that separate briefing of Google's motions to dismiss is warranted, Daily Mail objects to Google's proposed briefing schedule. Google's proposed motion to dismiss is narrow, non-dispositive, and meritless, and therefore easily can be briefed within 120 days: 45 days to file the motion, 45 days to oppose, and 30 days to reply. This schedule would put Daily Mail on the same briefing schedule that Google has proposed for its second motion to dismiss the States' TAC. Indeed, for efficient resolution, all motions to dismiss could proceed on the same schedule. Google's claim that it requires more time given the "breadth" of the private complaints (measured by adding the challenged and unchallenged paragraphs of all complaints) is not credible. By our count, Google seeks to dismiss only Daily Mail's deceptive practices and fraud claims and to strike at most 37 paragraphs of Daily Mail's 275-paragraph complaint, 24 of which were presented in Daily Mail's complaint filed 19 months ago. Every month of delay preserves many billions of dollars for Google. *See* Keach Hagey et al., *Why Google Plays Down Its Ad-Tech Business but Is Determined to Keep It*, Wall St. J., Nov. 1, 2022 (Google's "brokering the buying and selling of ads on other websites . . . generated about $31.7 billion last year"; "Google's ad tools also play a larger role in the company's overall $209 billion ad business").[3]

---

[3] Available at https://www.wsj.com/articles/why-google-plays-down-its-ad-tech-business-but-is-determined-to-keep-it-11667292084?st=1q694mkxz5lrtef&reflink=desktopwebshare_permalink.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable P. Kevin Castel
November 10, 2022
Page 7

| | |
|---|---|
| Date: November 10, 2022 | /s/ *John Thorne* |
| | John Thorne |
| | Daniel G. Bird |
| | Bethan R. Jones |
| | Christopher C. Goodnow |
| | Mark P. Hirschboeck |
| | Eliana Margo Pfeffer |
| | Eric J. Maier |
| | KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C. |
| | 1615 M Street NW |
| | Suite 400 |
| | Washington, DC 20036 |
| | Tel.: (202) 326-7900 |
| | Fax: (202) 326-7999 |
| | Email: jthorne@kellogghansen.com |
| | dbird@kellogghansen.com |
| | bjones@kellogghansen.com |
| | cgoodnow@kellogghansen.com |
| | mhirschboeck@kellogghansen.com |
| | epfeffer@kellogghansen.com |
| | emaier@kellogghansen.com |
| | |
| | Jeffrey A. Lamken |
| | Caleb Hayes-Deats |
| | MOLOLAMKEN LLP |
| | 600 New Hampshire Avenue NW |
| | Washington, DC 20037 |
| | Tel: (202) 556-2000 |
| | Fax: (202) 556-2001 |
| | Email: jlamken@mololamken.com |
| | chayes-deats@mololamken.com |
| | |
| | *Counsel for Plaintiffs Associated Newspapers Ltd. and Mail Media, Inc.* |

cc:   All Counsel of Record (via CM/ECF)