


601 California Street, Suite 1400  
San Francisco, CA 94108  
(415) 981-4800

2600 West Olive Avenue, Suite 500  
Burbank, CA 91505  
(310) 474-9111

November 10, 2022

Hon. P. Kevin Castel  
United States District Judge  
Southern District of New York  
Daniel Patrick Moynihan United States Courthouse  
500 Pearl Street  
New York, NY 10007-1312

      Re:    *In re Google Digital Advertising Antitrust Litig.*, No. 1:21-md-3010 (PKC)

Dear Judge Castel:

      The Advertiser Class Plaintiffs respond below to Google's pre-motion letter and do not seek to further amend their proposed Consolidated Advertiser Class Action Complaint, Doc. 317-1 ("CAC").[1]  No conference is currently scheduled.

      **Arbitration Issues.**  Google claims that each Advertiser Class Plaintiff entered into a binding arbitration agreement with it, and states that it plans to move to compel individual arbitrations.  Doc. 367 at 6.  Although Google has not yet tried to make the showing necessary to such requests, Plaintiffs anticipate the following responses:

      First, Google did not move to arbitrate the causes of action of all Plaintiffs in response to the previous consolidated advertiser complaint.  *See* No. 1:21-cv-07001-PKC, Doc. 66 at p. 11 of 32 (Google arguing on January 15, 2021, that "[t]wo of three remaining Plaintiffs agreed to Google's Terms of Service providing for arbitration of disputes").  The Court should not permit Google to change its position as to the third of those original Plaintiffs, Hanson Law Office, after Google intentionally refrained from seeking to arbitrate Hanson's causes of action and instead asked a federal judge to dismiss them as implausible.  *See Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1714 (2022) (holding that arbitration rights may be waived even absent prejudice and remanding for further proceedings as to the question: did the defendant "knowingly relinquish the right to arbitrate by acting inconsistently with that right?").

---

[1] Advertiser Class Plaintiffs moved for leave to amend their complaint on October 5, 2022 (Docs. 316, 317), as permitted by the Court's Pre-Trial Order No. 2 (Doc. 309).  Google did not oppose that motion.  Doc. 354.  Meta opposed granting leave to include Counts III and IV in Advertiser Class Plaintiffs' complaint.  Doc. 355.  Advertiser Class Plaintiffs replied to Meta's opposition.  Doc. 376.  While their motion to amend remains pending, this letter presumes that the proposed CAC is the Advertiser Class Plaintiffs' operative pleading.

Hon. P. Kevin Castel
November 10, 2022
Page 2

Second, Google must be held to its burden and the applicable standard of proof. "The party seeking to compel arbitration bears the burden of establishing the existence of an arbitration agreement." *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 829 (S.D.N.Y. 2020). A summary judgment-like standard applies to the questions of whether an agreement to arbitrate exists and applies to a dispute. *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 179 (2d Cir. 2021) (citing *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)). Thus, "[c]ourts must consider all relevant, admissible evidence submitted by the parties . . . and draw all reasonable inferences in favor of the non-moving party." *Id.* at 180 (internal quotation marks and alterations omitted) (citing *Nicosia*, 834 F.3d at 229).

Third, an injunction to restore competition in the relevant markets will have the primary effect of benefiting the public, for the reasons explained in the CAC (¶¶ 319-20, 356, 405). A company cannot shield itself from such an order under California law. *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 961 (2017) (citing Cal. Civ. Code § 3513). The clause that Google invoked in relation to a subset of Advertiser Class Plaintiffs provides that an arbitrator may issue an injunction "only to the extent necessary to provide relief warranted by that party's individual claim without affecting other Google users or other customers or advertisers." No. 1:21-cv-07001-PKC, Doc. 66-3 at p. 7 of 8 & Doc. 66-6 at pp. 6-7 of 8. This restrictive language is unenforceable under *McGill* because it precludes injunctive relief for the public. *See, e.g.*, *Snarr v. HRB Tax Grp., Inc.*, 839 F. App'x 53, 54 (9th Cir. 2020) (affirming denial of arbitration motion in class action for deceit because clause provided that relief in arbitration "must be individualized to you and will not affect any other client"); *Mejia v. DACM Inc.*, 54 Cal. App. 5th 691, 702-03 (2020) (in dispute alleging unfair competition, affirming denial of arbitration motion under *McGill* because clause would have precluded the arbitrator from making "an award for the benefit of, or against, anyone other than a named party"). Google cites *California Crane School, Inc. v. Google LLC*, but that court declined to apply California's *McGill* rule because the plaintiffs asserted no claim under California law. 2022 WL 3348425, at *4 (N.D. Cal. Aug. 12, 2022).

**Network Bidding Agreement.** As discussed in Advertiser Class Plaintiffs' briefing in support of their motion to amend (Docs. 317, 376), their Section 1 claim concerning the defendants' Network Bidding Agreement ("NBA") was not included in the States' Third Amended Complaint. Advertisers allege a more targeted Section 1 claim arising from the NBA's "horizontal consequences" (Sept. 13 Order & Opinion at 28) in the form of distorted bidding in the final auction market that Google runs—the market that appears on the face of the agreement. Such rigging between auctioneer and bidder has long been condemned. *See Bale v. Glasgow Tobacco Board of Trade, Inc.*, 339 F.2d 281, 287 (6th Cir. 1964) (affirming a judgment condemning an auction rule that disadvantaged a subgroup of bidders by restricting their selling time and space); *Smith v. Ullman*, 58 Md. 183, 189 (1882) (indicating that public policy forbids "any corrupt bargain or combination between the parties for the purpose of preventing a fair competition among bidders").

The Advertisers adequately allege that, within Google's final clearinghouse auction itself, the NBA skewed the bidding process in favor of Meta, a horizontal competitor and a large bidder on behalf of a high volume of advertising demand, by giving Meta superior information and extra time to bid relative to competing bidders. Consequently, advertisers that bid against Meta

Hon. P. Kevin Castel
November 10, 2022
Page 3

in Google's auctions were disadvantaged and could not compete equally for ad impressions. The competitive harm that resulted from Meta's "leg up" in these auctions, and the economic harm inflicted upon non-Meta advertisers, make this claim actionable. The Court should allow it to proceed.

**Injury and Standing.** Google foreshadows various standing or injury challenges (Doc. 367 at 7), but those arguments call for factual determinations not susceptible to resolution on the pleadings. *See New York Jets LLC v. Cablevision Sys. Corp.*, No. 05 CIV. 2875(HB), 2005 WL 2649330, at *10 (S.D.N.Y. Oct. 17, 2005) (explaining that "existence of an 'antitrust injury' is not typically resolved through [a] motion[] to dismiss.") (citation omitted). Analyzing antitrust injury in a case such as this requires an understanding of what would have happened in the relevant markets but for Google's unlawful conduct. *See, e.g.*, *New York Citizens Comm. on Cable TV v. Manhattan Cable TV, Inc.*, 651 F. Supp. 802, 811 (S.D.N.Y. 1986) (stating that plaintiff "should be given the opportunity to show that its members have suffered injury from higher prices.").

Advertiser Class Plaintiffs allege that Google's ad-tech monopolies are interlinked and "self-reinforcing" (CAC ¶ 166)—including because the buying tool markets adjoin the ad exchange market (*id*. ¶¶ 57-59, 68, 90, 93, 185)—and each Plaintiff used Google's services in these markets and suffered antitrust injury on account of its violations (*id*. ¶¶ 14-32, 355, 362). Causation is a quintessential fact issue, *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 178 (2d Cir. 2012), and whether conduct or transactions in the exchange market or the market for ad-buying tools for large advertisers proximately caused injury to these Plaintiffs is not an issue that is appropriate to decide on the pleadings. The case that Google cites recognizes that, under *Blue Shield of Virginia v. McCready*, 457 U.S. 465 (1982), viable antitrust plaintiffs are "not strictly limited to participants in the defendants' market." *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 158-61 (2d Cir. 2016).

The Advertiser Class Plaintiffs dealt directly with Google and allege that its "supra-competitive take rate in the exchange market . . . is borne in part by advertisers." CAC ¶¶ 310, 314. They therefore suffered the type of injury from Google's monopolization that antitrust law is intended to forestall, and the Court's findings regarding harm to competition confirm this injury is plausible. Google's efforts to cordon off markets are premature, presenting adequacy of representation and typicality questions properly addressed at class certification. *See, e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 111 (S.D.N.Y. 2010) (Pauley, J.) (typicality met based on "overarching" anticompetitive scheme); *Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*, 148 F. Supp. 3d 285, 297 (S.D.N.Y. 2015) (rejecting the defendant's standing challenge "because the parties have not yet had the opportunity to conduct discovery about whether [plaintiff's] injuries 'implicate[] the same set of concerns as the conduct alleged to have caused injury to other members'" of the proposed class) (quoting *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 149 (2d Cir. 2012)).

The Advertiser Class Plaintiffs further note that their claims under California competition law (Counts IV, VI, and VII) are neither subject to *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), nor to *Associated General Contractors, Inc. v. California State Council of Carpenters*,

Hon. P. Kevin Castel
November 10, 2022
Page 4

459 U.S. 519 (1983).  *See* Cal. Bus. & Prof. Code § 16750(a); *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1195 (2013).

**Supporting Allegations.**  Google's letter previews attacks on cherry-picked allegations, in contrast to claims for relief.  Doc. 367 at 3-5.  Section VI.A of the CAC frames the subsequent section discussing Google's harmful conduct by alleging how its acquisitions of competing providers, overwhelming dominance in search, and control of user data caused most advertisers to rely only on Google for their display advertising campaigns.  *See* CAC ¶¶ 167-98.  Because Rule 12 "does not provide for the dismissal of particular allegations in support of a claim," *Lynch v. Ackley*, 2013 WL 6732540, at *2 (D. Conn. Dec. 19, 2013), Google "may not simply seek adjudication of facts in a complaint that are not dispositive of any of the pleas for legal redress."  *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 343 F. Supp. 3d 94, 100 (E.D.N.Y. 2018).  Therefore, the Court should not permit a motion to dismiss the factual allegations in Section VI.A.  *See* CAC ¶ 199 (noting that "[w]hile the preceding section [Section VI.A] provides background on how advertisers have been coerced to place display ads using only Google's services, this section [Section VI.B] sets out the particular anticompetitive or deceptive acts and processes carried out by Google . . . that directly injured advertisers.").[2]

**Motion Practice and Discovery.**  Google seeks a drawn-out briefing schedule for a motion to dismiss (with prolix page allowances) as well as continuation of the discovery stay.  *See* Doc. 367 at 11; Doc. 371 at 1, 5.  The Advertiser Class Plaintiffs filed their case in May 2020.  Their pleading should be settled without excessive further delay, and discovery should now begin for the reasons set forth in letters on file from Plaintiffs' Lead Attorneys (Doc. 358 at 3-4) and Daily Mail (Doc. 377 at 3-5).  Instead of Google's 90-90-45 briefing schedule, the Advertiser Class Plaintiffs propose the Court direct Google to move within 30 days and allow 30 days for the opposition and 14 days for a reply.

We appreciate Your Honor's attention to these matters.

Respectfully,

/s/ *Dena C. Sharp*                             /s/ *Tina Wolfson*
Dena C. Sharp                                      Tina Wolfson
GIRARD SHARP LLP                          AHDOOT & WOLFSON, P.C.

---

[2] Google succumbs to wishful thinking in arguing that its secret use of Reserve Price Optimization to increase bids has been dismissed from the case.  *See* Doc. 367 at 2.  In fact, the Court's analysis at pages 57 to 61 of its September 13 Order & Opinion (Doc. 208) directly supports Plaintiffs' contention that Reserve Price Optimization is one of the deceptive practices that renders Google liable under California law (CAC ¶¶ 239-53, 403).  Similarly, the Court found a reasonable likelihood that Google's changes to its interactions with publishers through "unified pricing" rules and by restricting individual line items harmed competition in advertiser-facing markets.  *See* Sept. 13 Order & Opinion at 66-68, 74-77.  As such, any standing challenge to Counts V and VI, which arise from these combinations, would be futile.