UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION | No. 21-MD-3010 (PKC) *This Document Relates to:* *ALL ACTIONS* |

**GOOGLE'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER COMPELLING PRODUCTION OF DOCUMENTS <u>WITHHELD AS PRIVILEGED</u>**

FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Fax: (202) 777-4555

AXINN, VELTROP & HARKRIDER LLP
114 West 47th Street
New York, NY 10036
Telephone: (212) 728-2200
Fax: (212) 728-2201

*Counsel for Defendants Google LLC,*
*Alphabet Inc., and YouTube LLC*

WILSON SONSINI GOODRICH &
ROSATI
Professional Corporation
One Market Plaza, Spear Tower
Suite 3300
San Francisco, CA  94105
Telephone: (415) 947-2000
Fax: (415) 947-2099

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND .............................................................................................................. 2

ARGUMENT .................................................................................................................... 4

I.      Google's Clawbacks Were Timely ..................................................................... 4

II.     The Court Should Decline Plaintiffs' Invitation to Issue an Advisory
        Opinion on the Law of Privilege ........................................................................ 5

III.    Google Has Consistently Acted in Good Faith in Making Its Privilege
        Determinations .................................................................................................... 7

IV.     The Adjudication of Privilege Disputes Should Be Limited to Documents
        That Are Relevant to This Dispute ..................................................................... 10

V.      The Redactions in the Remaining Three Documents Are Privileged or
        Protected Work Product ...................................................................................... 12

                A.      GOOG-DOJ-11698798 is privileged ................................................. 13

                B.      GOOG-DOJ-12866023 is protected work product ............................ 15

                C.      GOOG-DOJ-08154428 is privileged ................................................. 17

CONCLUSION ................................................................................................................. 21

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*In re Abilify (Aripiprazole) Prods. Liab. Litig.*,
    2017 WL 6757558 (N.D. Fla. Dec. 29, 2017) ............................................................ 15

*In re Aenergy, S.A.*,
    451 F. Supp. 3d 319 (S.D.N.Y. 2020).......................................................................... 7

*A.I.A. Holdings, S.A. v. Lehman Bros.*,
    2002 WL 31385824 (S.D.N.Y. Oct. 21, 2002) .......................................................... 12

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
    2016 WL 6779901 (S.D.N.Y. Nov. 16, 2016)............................................................ 11

*Am. Nat'l Bank & Tr. Co. v. Equitable Life Ass. Soc'y*,
    406 F.3d 867 (7th Cir. 2005) ................................................................................. 8, 10

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*,
    160 F.R.D. 437 (S.D.N.Y. 1995) ............................................................................ 9, 14

*BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, N.A.*,
    2017 WL 953514 (S.D.N.Y. Mar. 9, 2017) ................................................................ 7

*BNP Paribus Mortg. Corp. v. Bank of Am., N.A.*,
    2013 WL 2322678 (S.D.N.Y. May 21, 2013) ............................................................ 9

*Bowne of New York City, Inc. v. AmBase Corp.*,
    150 F.R.D. 465 (S.D.N.Y. 1993) .............................................................................. 14

*Bovis Lend Lease, LMB, Inc. v. Seasons Contracting Corp.*,
    2002 WL 31729693 (S.D.N.Y. Dec. 5, 2002) .......................................................... 17

*Brookfield Asset Mgmt., Inc. v. AIG Fin. Prods. Corp.*,
    2013 WL 142503 (S.D.N.Y. Jan. 7, 2013) .................................................................. 5

*In re Copper Mkt. Antitrust Litig.*,
    200 F.R.D. 213 (S.D.N.Y. 2001) .............................................................................. 16

*In re Cnty. of Erie*,
    473 F.3d 413 (2d Cir. 2007)...................................................................... 6, 13, 18, 20

*CSC Recovery Corp. v. Daido Steel Co.*,
    1997 WL 661122 (S.D.N.Y. Oct. 22, 1997) ......................................................... 12, 14

*Dover v. Brit. Airways, PLC*,
    2014 WL 4065084 (E.D.N.Y. Aug. 15, 2014).............................................................. 5

*E. End Ventures, LLC v. Inc. Vill. of Sag Harbor*,
    2011 WL 6337708 (E.D.N.Y. Dec. 19, 2011) .............................................................. 7

*Edmondson v. RCI Hosp. Holdings, Inc.*,
    2018 WL 4112816 (S.D.N.Y. Aug. 29, 2018)............................................................ 11

*Fitzpatrick v. Am. Int'l Grp., Inc.*,
  2011 WL 335672 (S.D.N.Y. Jan. 28, 2011) ............................................................. 17

*Grinnell Corp. v. ITT Corp.*,
  222 F.R.D. 74 (S.D.N.Y. 2003) ................................................................................ 13

*Han v. Fin. Supervisory Serv.*,
  2017 WL 7689223 (S.D.N.Y. Oct. 6, 2017) .............................................................. 6

*Hasemann v. Gerber Prod. Co.*,
  2018 WL 6344204 (E.D.N.Y. Oct. 25, 2018) ......................................................... 6, 8

*Hopson v. Mayor & City Council of Baltimore*,
  232 F.R.D. 228 (D. Md. 2005) .................................................................................. 9

*HSH Nordbank Nordbank AG New York Branch v. Swerdlow*,
  259 F.R.D. 64 (S.D.N.Y. 2009) ................................................................................ 5

*Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*,
  529 F.3d 371 (7th Cir. 2008) .................................................................................... 9

*Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*,
  295 F.R.D. 28 (E.D.N.Y. 2013) .............................................................................. 17

*Lazare Kaplan Int'l, Inc. v. KBC Bank N.V.*,
  2016 WL 4154274 (S.D.N.Y. July 22, 2016) ......................................................... 14

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
  2006 WL 3476735 (S.D.N.Y. Nov. 30, 2006) ........................................................... 6

*M&T Bank Corp. v. State Nat'l Ins. Co. Ins.*,
  2020 WL 5494501 (W.D.N.Y. Sep. 11, 2020) ........................................................ 21

*MacNamara v. City of New York*,
  2007 WL 755401 (S.D.N.Y. Mar. 14, 2007) .......................................................... 18

*Matos v. Peerless Ins. Co.*,
  2017 WL 444687 (W.D.N.Y. Feb. 2, 2017) ............................................................ 12

*Midwest Gas Servs., Inc. v. Indiana Gas Co.*,
  2000 WL 760700 (S.D. Ind. Mar. 7, 2000)............................................................. 11

*Motorola Sols., Inc. v. Hytera Commc'ns. Corp.*,
  2021 WL 5083758 (N.D. Ill. Nov. 2, 2021) ............................................................. 9

*Occidental Chem. Corp. v. 21st Century Fox Am., Inc.*,
  2022 WL 2805637 (D.N.J. July 18, 2022).................................................................. 7

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  2018 WL 1162552 (E.D.N.Y. Feb. 26, 2018)............................................................ 16

*Pearlstein v. BlackBerry Ltd.*,
  2019 WL 1259382 (S.D.N.Y. Mar. 19, 2019) .................................................... 20, 21

*In re Rivastigmine Pat. Litig.*,
    2005 WL 2319005 (S.D.N.Y. Sept. 22, 2005).........................................................6, 7

*Safeco Ins. Co. of Am. v. M.E.S., Inc.*,
    289 F.R.D. 41 (E.D.N.Y. 2011) ...................................................................................12

*Sampedro v. Silver Point Cap.*, L.P.,
    818 F. App'x 14 (2d Cir. 2020) ...................................................................................12

*Shih v. Petal Card, Inc.*,
    565 F. Supp. 3d 557 (S.D.N.Y. 2021)..........................................................................16

*In re Sulfuric Acid Antitrust Litig.*,
    235 F.R.D. 407 (N.D. Ill. 2006) ..................................................................................10

*Sure Fit Home Prods., LLC v. Maytex Mills Inc.*,
    2022 WL 1597000 (S.D.N.Y. May 20, 2022) ................................................................4

*United States v. ChevronTexaco Corp.*,
    241 F. Supp. 2d 1065 (N.D. Cal. 2002) .......................................................................19

*United States v. Constr. Prods. Rsch., Inc.*,
    73 F.3d 464 (2d Cir. 1996)..........................................................................................12

*United States v. DeFonte*,
    441 F.3d 92 (2d Cir. 2006) ..........................................................................................19

*United States v. Fruehauf*,
    365 U.S. 146 (1961)................................................................................................6, 7

*United States v. Google*,
    No. 1:20-cv-03010-APM (D.D.C. May 13, 2022)....................................................9, 10

*United States v. United Health Grp., Inc.*,
    2020 WL 10731257 (C.D. Cal. Nov. 9, 2020)................................................................9

*United States v. Wells Fargo Bank, N.A.*,
    2015 WL 5051679 (S.D.N.Y. Aug. 26, 2015) ................................................................5

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981).....................................................................................................21

*Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*,
    2017 WL 9401103 (N.D.N.Y. Jan. 13, 2017)..........................................................14, 19

*von Kahle v. Cargill, Inc.*,
    2022 WL 1223264 (S.D.N.Y. Apr. 24, 2022)................................................................17

*Verschoth v. Time Warner, Inc.*,
    2001 WL 546630 (S.D.N.Y. May 22, 2001) .................................................................21

*Wellnx Life Scis. Inc. v. Iovate Health Scis. Rsch. Inc.*,
    2007 WL 1573913 (S.D.N.Y. May 24, 2007) ...............................................................20

*Welton v. AMCO Ins. Co.*,
 2015 WL 1262904 (D. Kan. Mar. 19, 2015) ................................................................. 7

*In re Wright,*
 220 B.R. 543 (S.D.N.Y. 1998)........................................................................................ 6

*Wultz v. Bank of China Ltd.*,
 304 F.R.D. 384 (S.D.N.Y. 2015) .................................................................................. 16

*Zimmerman v. Poly Prep Country Day Sch.*,
 2011 WL 2601481 (E.D.N.Y. June 30, 2011) ............................................................. 15

**Rules**

Fed. R. Civ. P. 26(b)(1)...................................................................................................... 11

Fed. R. Civ. P. 26(b)(3)...................................................................................................... 15

## PRELIMINARY STATEMENT

Plaintiffs challenge Google's targeted redactions to thirty-six lines of text out of 206 pages across four documents—one of which is not relevant to this dispute.  Based on those cherry-picked documents, Plaintiffs seek a sweeping advisory opinion on the scope of privilege and work product protection prior to the commencement of discovery.

Plaintiffs' Motion to compel should be denied, as the relevant materials in dispute are properly withheld under the attorney-client privilege or work product doctrine.  Plaintiffs' request to treat these documents as "bellwethers" is acutely premature; to the extent any guidance on the scope of privilege becomes necessary, it should be founded upon a live dispute over documents reviewed and produced as relevant to this litigation.  Plaintiffs—who have yet to serve a single discovery request in the MDL—propose to reverse the ordinary procedure to the detriment of the efficient administration of this case.

Even before commencement of discovery, all Plaintiffs have had access to more than two million documents that Google produced in connection with investigations by the Department of Justice and certain State Plaintiffs.  A large proportion of those documents were produced on a tight timeline to investigating regulators that are not parties to this litigation on subjects unrelated to any of Plaintiffs' claims here.

Throughout the meet and confer process Google consistently offered to produce a privilege log for any clawbacks that are relevant and responsive to document requests served in this MDL in line with the Court's prior guidance.  ECF No. 348-2 at 2.  Google also made clear that it "would not take the position that Plaintiffs had not promptly challenged these clawbacks."  *Id.*  Google told Plaintiffs (and continues to believe) that it is a waste of judicial resources to litigate documents that ultimately have no bearing on the issues in dispute in this case.

Indeed, what is "relevant" in this MDL has yet to be determined.  At the September 2021 conference, the Court stated that it would "behoove" Plaintiffs to coordinate with respect to common document requests that could, with the Court's leave, be served on Google while the discovery stay was in effect.  ECF No. 142 at 33:18-25.  Plaintiffs represented two weeks later that they would do so.  ECF No. 141.  Fourteen months later, Plaintiffs have yet to serve any requests.  And all Plaintiffs have expressed an intention to amend their complaints.

Against this backdrop, Plaintiffs' Motion should be denied.  One of the four documents that Plaintiffs have selected for in camera review has no relevance to this MDL.  The remaining three documents contain privileged or protected work product material.[1]

## BACKGROUND

Beginning in 2019, Google produced over 2.2 million documents in connection with separate investigations by the Department of Justice and certain State Plaintiffs, along with other state attorneys general.  These investigations covered a variety of subject matter entirely unrelated to ad tech, including but not limited to Google's Search, application store, and mobile operating system businesses, among other topics.  Though discovery has been stayed in this MDL, all Plaintiffs now possess the documents produced in those investigations, including the documents unrelated to the claims in this litigation.

At the April 19, 2022 conference, Plaintiffs argued for a provision in the Confidentiality Order that materials produced in those investigations were "deemed produced" in the MDL.  ECF No. 291 at 7:15-25.  Google expressed its concern to the Court that "Plaintiffs will use [the 'deemed produced' language] as a back door to then ask for a privilege log that they didn't pursue during the investigation."  *Id*. at 7:21-25.

---

[1] In support of this Opposition, Google is filing a Declaration of Robert J. McCallum ("McCallum Decl."), which appends four declarations—labeled as Exhibits A, B, C, and D—provided by Google employees.

In addressing the issues, the Court stated: "I don't think it's appropriate for the private plaintiffs to turn around and say, well, go back and look at what caused you to produce this to the state in the state investigative phase and tell me what you didn't produce to them because it's privileged." *Id*. at 19:13-17.  Yet that is precisely what Plaintiffs now seek to do.  The Court further stated that it may be fair for Google to produce a privilege log for state investigative materials that are responsive to properly propounded document requests in this MDL pursuant to Federal Rule of Civil Procedure 34.  *Id*. at 19:18-22:12.  And that is what Google offered to do.

The Confidentiality Order governing this MDL contains a clawback provision that "shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d)." ECF No. 297 ¶ 12(c).  Pursuant to that provision, on August 10, 2022, Google clawed back 68 documents that were produced to State Plaintiffs in the pre-suit investigative phase and subsequently provided to Private Plaintiffs.  Approximately half of those clawbacks do not concern ad tech, but instead concern Google's app store, Search functionality, Android partnerships, privacy compliance, and Google's commercial relationship with Apple (among other things).

To avoid the need to litigate irrelevant documents, Google asked if Plaintiffs would identify a subset of documents of concern to them,[2] but Plaintiffs declined to do so.  Plaintiffs demanded: (1) a privilege log, (2) a list of all attorneys that worked at Google over the last 10 years, and (3) that Google identify which clawbacks might be relevant to Plaintiffs' claims.  ECF No. 348 at 1. Google offered to: (1) provide a privilege log for any of the clawbacks that were responsive to properly propounded document requests, (2) identify which, if any, of the clawed back documents were in fact responsive to Plaintiffs' requests (once they served them), and (3) refrain from

---

[2] Under the governing Confidentiality Order, Plaintiffs' "Privilege Committee" had the ability to review documents already seen by Plaintiffs for the purposes of determining whether to challenge a clawback.  The Privilege Committee reviewed twenty-nine of the documents clawed back.  ECF No. 369 at 2.

asserting that Plaintiffs have failed to bring any challenge "promptly" so that they would suffer no prejudice.  ECF No. 348-2 at 2.

Plaintiffs then filed a pre-motion letter in which they represented to the Court that Google had "flat[ly] refus[ed]" to provide any information to Plaintiffs concerning the clawbacks.  ECF No. 331 at 2.  The following day, the Court ordered Google to produce a log and permitted Plaintiffs to file any motion 14 days thereafter.

Plaintiffs bring the instant Motion in which they assert waiver based on the wrong legal standard, seek an advisory opinion as to the law of privilege, spin Google's cooperation and diligence in discovery as bad faith, and then challenge redactions to four documents—one of which has nothing to do with this case.  ECF No. 369 ("Mot.").

## ARGUMENT

### I.   Google's Clawbacks Were Timely.

Plaintiffs' assertion that Google's clawbacks were "untimely," Mot. at 2, is based on the wrong law and should be disregarded.  Here, as in their pre-motion letter, Plaintiffs argue that Google's clawbacks were "untimely" by citing exclusively to case law interpreting Federal Rule of Evidence 502**(b)**.  Mot. at 4 n.3; ECF No. 331 at 1.[3]  But the governing Confidentiality Order explicitly provides that "Federal Rule of Evidence 502**(b) shall not apply**" to clawbacks in this MDL.  ECF No. 297 at ¶ 12(a) (emphasis added).

Google brought Plaintiffs' oversight to their attention when filing the privilege log.  ECF No. 348 at 2 n.4 ("Plaintiffs' assertion that Google's clawbacks were 'untimely' is based on case law interpreting Federal Rule of Evidence 502(b) which explicitly does 'not apply' here." (quoting

---

[3] Plaintiffs rely on *Sure Fit Home Products, LLC v. Maytex Mills Inc.*, but that court's observations regarding the timing of a clawback were made in the context of Rule 502(b).  No. 21 Civ. 2169, 2022 WL 1597000, at *1 (S.D.N.Y. May 20, 2022).

ECF No. 297 at ¶ 12(a))).  But in their Motion, Plaintiffs again direct the Court to the wrong legal standard and rely on the same inapplicable case law in support of their baseless timeliness argument.  *See* Mot. at 4 n.3.

The Confidentiality Order governing this MDL provides that "[t]he production of privileged or work-product protected Documents, electronically stored information ('ESI') or information, whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding," and that this provision "shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502**(d)**."  ECF No. 297 at ¶ 12(a) (emphasis added).  This provision, in conjunction with Federal Rule of Evidence 502(d), affords litigants the ability to claw back documents "no matter what the circumstances giving rise to their production."  *Brookfield Asset Mgmt., Inc. v. AIG Fin. Prods. Corp.*, No. 09 Civ. 8285, 2013 WL 142503, at *1 (S.D.N.Y. Jan. 7, 2013).[4]  As a result, Google's clawbacks were timely.

## II. The Court Should Decline Plaintiffs' Invitation to Issue an Advisory Opinion on the Law of Privilege.

Having reviewed the privileged portions of Google's clawbacks, Plaintiffs' Privilege Committee has determined to challenge thirty-six lines of redacted text.  Plaintiffs contend that those redactions are "representative" because they were applied to different types of documents and invoke both privilege and attorney work product.  Mot. at 11.  Based on this gerrymandered sample set, Plaintiffs ask the Court to "clarify production guidelines," Mot. at 1, before Plaintiffs

---

[4] To support waiver under the terms of the Confidentiality Order, Plaintiffs would need to demonstrate complete recklessness, which means the producing party "must have shown no regard for preserving the confidentiality of the privileged documents."  *E.g.*, *HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 75 (S.D.N.Y. 2009); *United States v. Wells Fargo Bank, N.A.*, No. 12-CV-7527, 2015 WL 5051679, at *2 (S.D.N.Y. Aug. 26, 2015) (same); *see also Dover v. Brit. Airways, PLC*, No. CV 2012-5567, 2014 WL 4065084, at *3 (E.D.N.Y. Aug. 15) (disclosure was not completely reckless where "plaintiffs inadvertently produced the protected information" twice, even when the second production occurred after plaintiffs were aware of the protected nature of the information), *aff'd*, 2014 WL 5090021 (E.D.N.Y. Oct. 9, 2014).

have even served their initial discovery requests in this MDL.  But privilege review "involves a document-by-document analysis." *Hasemann v. Gerber Prod. Co.*, No. 15-cv-2995, 2018 WL 6344204, at *3 (E.D.N.Y. Oct. 25, 2018) (citing *In re Cnty. of Erie*, 473 F.3d 413, 420 (2d Cir. 2007)); *see also In re Rivastigmine Pat. Litig.*, No. 05 MD 1661, 2005 WL 2319005, at *5 (S.D.N.Y. Sept. 22), *aff'd*, 2005 WL 3159665 (S.D.N.Y. Nov. 22, 2005) (declining to rule on privilege not tied to "specific documents" because "privilege determination is fact-sensitive").

Plaintiffs' request that the Court "[c]larify the [a]ttorney-[c]lient [p]rivilege and the [a]ttorney [w]ork [p]roduct [d]octrine for [p]urposes of [d]ocuments [p]roduced in the MDL" seeks an improper advisory opinion.  Mot. at 5.  The Court should reject Plaintiffs' request because "federal courts may adjudicate only live controversies and must generally refrain from issuing advisory opinions." *In re Wright*, 220 B.R. 543, 544 (S.D.N.Y. 1998) (citing *United States v. Fruehauf*, 365 U.S. 146, 157 (1961) (explaining that the Supreme Court has "consistently refused to give" advisory opinions)).  "[F]ederal courts frequently invoke the advisory opinion rule when declining to provide advance decisions as to discovery or evidentiary disputes which are not yet ripe and which therefore lack the 'clear concreteness provided when a question emerges precisely framed and necessary for decision.'" *Han v. Fin. Supervisory Serv.*, No. 17-cv-4383, 2017 WL 7689223, at *5 (S.D.N.Y. Oct. 6, 2017) (quoting *Fruehauf*, 365 U.S. at 157), *report and recommendation adopted*, 2018 WL 791353 (S.D.N.Y. Feb. 8, 2018).

Restating general principles of privilege untethered to specific documents in dispute would amount to an impermissible advisory opinion, as the Court's ruling should be limited to whether these four specific documents are privileged.  *See, e.g.*, *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, No. 04 Civ. 5316, 2006 WL 3476735, at *5 (S.D.N.Y. Nov. 30, 2006) (noting that the court is "obviously not in a position to provide [plaintiff] with advance immunization from

arguments that may be asserted by [defendant] on the basis of facts unknown at the present, particularly those arising from the substance of the documents to be produced"); *In re Rivastigmine Pat. Litig.*, 2005 WL 2319005, at *5 ("The defendants also seek a ruling that [certain] communications . . . are not subject to the attorney-client privilege. . . .  The difficulty with this application is that it does not focus on any specific documents. . . .   Since the privilege determination is fact-sensitive, then, I decline to issue an advisory opinion that assumes any particular set of circumstances."); *E. End Ventures, LLC v. Inc. Vill. of Sag Harbor*, No. CV 09-3967, 2011 WL 6337708, at *1 n.3, *2 (E.D.N.Y. Dec. 19, 2011) (declining "to provide abstract 'guidelines for going forward'" and refusing to grant "a request for an advisory opinion" on whether privilege could be invoked at a deposition that had not yet been conducted, but noting that "[t]he Court's reasoning as to the specific disputed questions . . . should be of assistance to the parties").[5]

## III.   Google Has Consistently Acted in Good Faith in Making Its Privilege Determinations.

Prior to serving a single document request in this litigation, Plaintiffs have been provided access to over two million documents that Google produced in previous investigations, including many documents that have nothing to do with ad tech.  Making privilege determinations in reviews

---

[5] *See also Occidental Chem. Corp. v. 21st Century Fox Am., Inc.*, No. 18-cv-11273, 2022 WL 2805637, at *4 (D.N.J. July 18, 2022) (declining to apply assessments of privilege log adequacy and document sample reviewed in camera to other privilege logs and documents therein because "[a]pplying the [rulings] to other logs not before the Court would be advisory"); *Welton v. AMCO Ins. Co.*, No. 14–4066, 2015 WL 1262904, at *3 (D. Kan. Mar. 19, 2015) (denying portion of motion to compel that requested "some type of advisory opinion from the Court regarding Defendant's general reliance on the attorney-client privilege" because "[t]he Court cannot make a determination as to whether or not certain documents are privileged in the absence of actual document requests by Plaintiffs and responses/objections by Defendant").  Moreover, cases cited in Plaintiffs' own Motion confirm that any opinion regarding privilege should be tethered to an actual live dispute regarding specific documents.  *See In re Aenergy, S.A.*, 451 F. Supp. 3d 319, 328 (S.D.N.Y. 2020) (ordering a revised privilege log in light of privilege rulings made in connection with three clawbacks); *BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, N.A.*, No. 14-cv-09371, 2017 WL 953514, at *3 (S.D.N.Y. Mar. 9, 2017) (setting forth targeted guidance governing discrete category of documents presented to the court in camera).

of this scale on the timelines demanded by investigating regulators has been an enormous undertaking.

The enormity of that task is further complicated by the nature of the documents.  Many aspects of Google's operations have significant legal implications (such as contractual and privacy-related issues) and are subject to frequently evolving, global government oversight and regulation.  Google in-house counsel work hand-in-hand with lay employees every day to navigate complex legal and commercial issues.  Distinguishing between privileged legal advice and nonprivileged business advice is an "especially difficult" "area of privilege law," and reasonable lawyers can have "good faith difference(s) of opinion" over privilege calls.  *Am. Nat'l Bank & Tr. Co. v. Equitable Life Assurance Soc'y*, 406 F.3d 867, 878-79 (7th Cir. 2005).  It is also for this reason that privilege rulings must be made on an individual document-by-document basis.  *See Hasemann*, 2018 WL 6344204, at *3 ("The test for determining whether a document's primary purpose is legal in nature involves a document-by-document analysis.").

To illustrate, Google devoted immense resources to the privilege review in *United States v. Google*, No. 1:20-cv-03010-APM (D.D.C. May 13, 2022) ("*Search*"), which documents overlap with those provided to Plaintiffs before the commencement of discovery in this case.[6]  The process in *Search* involved reviews, re-reviews, and various levels of quality assurance resulting in post-production throwbacks.  ECF No. 328-1 ¶¶ 4-22. Google's outside counsel and contract attorneys

---

[6] Indeed, because of the overlap in investigative materials and how resource-intensive privilege challenges are—for all parties and the Court—Google submits that the relevance of documents to this ad tech litigation should be ascertained *before* litigating further privilege challenges.  Google offered during the meet and confer process to provide Plaintiffs with a privilege log for documents that are responsive to the document requests that Plaintiffs serve in this MDL.  Google understood that proposal to be consistent with the Court's guidance at the April conference. *See* ECF No. 291 at 19:18-22:12 (observing that it may be fair for Google to produce a privilege log for state investigative materials that are responsive to properly propounded document requests pursuant to Federal Rule of Civil Procedure 34).

devoted over 21,000 hours to privilege-related work, and the resulting privilege log identified over a thousand attorneys.  *Id*. ¶¶ 9, 11.

Courts across the country recognize that, in electronic document reviews of this size, perfection is impossible.  *See, e.g.*, *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, No. 09 CIV. 9783, 2013 WL 2322678, at *5-8 (S.D.N.Y. May 21, 2013) (describing reasonable precautions in the context of an extensive electronic document review, a context where "[c]ourts have found that '[privilege] errors are, of course, inevitable'" (quoting *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437 (S.D.N.Y. 1995))); *Motorola Sols., Inc. v. Hytera Commc'ns. Corp.*, No. 1:17-CV-01972, 2021 WL 5083758, at *9-10 (N.D. Ill. Nov. 2, 2021) (finding no waiver where "Motorola has produced more than *three million* documents over the course of this and prior litigation between the two parties. The fact that some privileged material slipped through the cracks and was inadvertently produced is unsurprising and, perhaps, even inevitable").[7]  That Plaintiffs now challenge Google's narrowly tailored redactions to just thirty-six lines of text out of 206 pages across four documents is a testament to Google's diligence and the veracity of its processes.

Against that backdrop, Plaintiffs' assertions that Google has somehow "misuse[d]" the privilege, Mot. at 4, strain credulity.  Judge Mehta has already debunked those very claims in the *Search* case, finding that most of Google's withheld documents were "clearly privileged" and that "a very small percentage, even sort of descending to only one percent" did not appear to be privileged.  *Search*, ECF No. 353 at 61:2-62:1.

---

[7] *See also Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008) ("Where discovery is extensive, mistakes are inevitable and claims of inadvertence are properly honored so long as appropriate precautions are taken." (quoting *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 417 (N.D. Ill. 2006))); *United States v. United Health Grp., Inc.*, No. CV 16-8697, 2020 WL 10731257, at *4 (C.D. Cal. Nov. 9, 2020) (holding that clawbacks are reasonable given the extensive document collection and review process, which involved millions of documents); *Hopson v. Mayor & City Council of Baltimore*, 232 F.R.D. 228, 244 (D. Md. 2005) (given that electronic discovery may encompass "hundreds of thousands, if not millions" of documents, insisting upon "record-by-record pre-production privilege review, on pain of subject matter waiver, would impose upon parties costs of production that bear no proportionality to what is at stake in the litigation").

Plaintiffs are attempting to spin Google's diligence and ongoing good faith efforts to re-review privilege calls and to throw back non-privileged documents as evidence of bad faith.  Mot. at 4; ECF No. 331 at 4.  But Judge Mehta recognized throwbacks as part of Google's "good-faith effort[s] to . . . re-review [withheld documents], re-categorize them, de-privilege those that need to be de-privileged, and produce them to the plaintiffs."  *Search*, ECF No. 353 at 62:7-10.  Other courts have similarly acknowledged throwbacks as part of good-faith privilege review proceedings.  *See, e.g.*, *Am. Nat'l Bank & Tr. Co.*, 406 F.3d at 879 (defendant "exhibited good faith throughout the privilege log proceedings [by] among other acts . . . waiv[ing] the privilege for two documents . . . to help close the matter").  Google respectfully submits that this Court should do the same.

## IV.   The Adjudication of Privilege Disputes Should Be Limited to Documents That Are Relevant to This Dispute.

Having interviewed multiple witnesses in preparing this Opposition, Google has in good faith determined that it will no longer assert privilege over the first document challenged by Plaintiffs (commencing with Bates number GOOG-DOJ-09092627, hereinafter the "Irrelevant Document").[8]   The Irrelevant Document concerns Google's response strategy regarding anticipated privacy changes to an unrelated third party's web browsing platform.[9]  But neither the third party nor its web browsing platform is at issue in this litigation.

Many other of the fifty-eight clawed back documents do not concern ad tech.[10]  Reproduced sets of documents from earlier investigations ("cloned discovery") are not relevant in litigation

---

[8] Prior to filing its Opposition, Google provided Plaintiffs with a replacement copy of this document.

[9] To be clear, the changes to the third party's web browsing platform have no relevance to State Plaintiffs' Privacy Sandbox claim involving Google's web browser (Chrome). But even if it did, this Court has dismissed that claim because it is not ripe for adjudication.  ECF No. 308 at 72-74.

[10] Prior to submitting its log, and consistent with Google's good faith review of its privilege determinations, Google informed Plaintiffs that it is no longer asserting privilege over one document that was withheld in its entirety, one email chain produced with limited redactions in different parts of the email thread, and two other documents produced with limited redactions.

unless responsive to a properly propounded document request. *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126, 2016 WL 6779901, at *1, *4 (S.D.N.Y. Nov. 16, 2016) (cloned discovery held to be irrelevant, disproportionate, and overbroad and plaintiffs directed to articulate specific relevance for documents sought); *Midwest Gas Servs., Inc. v. Indiana Gas Co.*, No. IP99-0690, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000) (cloned discovery "irrelevant and immaterial" unless documents are responsive to a document request).

"[T]he burden is on [the party seeking disclosure] to make a showing of relevance *before* this Court will compel disclosure." *Edmondson v. RCI Hosp. Holdings, Inc.*, No. 16-CV-2242, 2018 WL 4112816, at *2 (S.D.N.Y. Aug. 29, 2018) (declining to adjudicate privilege issue when moving party "failed to articulate the relevance of the requested documents"); *see also* Fed. R. Civ. P. 26(b)(1). Plaintiffs have not made the requisite showing as to any of the documents.

It is not yet known what documents Plaintiffs will request under Federal Rule of Civil Procedure 34. At the September 2021 conference, the Court encouraged Plaintiffs to coordinate with respect to common document requests that could, with the Court's leave, be served on Google while the discovery stay was in effect. ECF No. 142 at 33:18-25. Plaintiffs represented two weeks later that they would do so. ECF No. 141 at 1. Fourteen months later, Plaintiffs have yet to serve any requests.[11] Until those requests are served and negotiated, Google submits that it would be wasteful to litigate further privilege calls.

Google respectfully requests that the Court deny Plaintiffs' request that the Court "direct the parties to meet and confer to determine whether there is any basis for seeking clawback of the

---

[11] Indeed, Plaintiffs' very claims remain a moving target. State Plaintiffs recently confirmed that, despite having represented to the Court that their Third Amended Complaint was intended to be "comprehensive" and as "complete as possible," ECF No. 141 at 1-2, their TAC still needs to be "clean[ed] up," ECF No. 362 at 3 n.6, and they seek another opportunity to "put their best foot forward," *id*. at 3. All other Plaintiffs are in the process of amending, and many seek to add claims that the Court has dismissed as failing to plausibly state a claim.

remaining [54] documents."  Mot. at 2.  Any further meet and confers or motion practice with respect to clawbacks should be restricted to relevant documents and stayed until the parties negotiate the scope of properly propounded document requests pursuant to Federal Rule of Civil Procedure 34.

## V.    The Redactions in the Remaining Three Documents Are Privileged or Protected Work Product.[12]

The remaining three documents challenged by Plaintiffs contain narrowly targeted redactions supported by a detailed privilege log.

The burden to demonstrate privilege rests on Google, but only with respect to the elements of privilege that Plaintiffs have challenged.  *A.I.A. Holdings, S.A. v. Lehman Bros.*, No. 97 Civ. 4978, 2002 WL 31385824, at *5-6 (S.D.N.Y. Oct. 21, 2002) (duty only to establish challenged elements of the applicable privilege "properly allocates the burden of proof and saves the Court and the parties from having to address any elements of a privilege or protection that are not in dispute").  Google believes it has met this burden through its log[13] and the documents themselves. *See Matos v. Peerless Ins. Co.*, No. 14-CV-120, 2017 WL 444687, at *7 (W.D.N.Y. Feb. 2, 2017) ("An adequately detailed privilege log may satisfy this burden [of establishing privilege] if, 'as to each document, it sets forth specific facts that, if credited, would suffice to establish each element of the privilege.'" (quoting *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, 289 F.R.D. 41, 47 (E.D.N.Y. 2011))); *CSC Recovery Corp. v. Daido Steel Co.*, No. 94CIV.9214, 1997 WL 661122, at *2 (S.D.N.Y. Oct. 22, 1997) ("[A]ffidavits by the authors and recipients of the documents are not

---

[12] Pursuant to Paragraph 12(c) of the governing Confidentiality Order, ECF No. 297, Google understands that it is Plaintiffs' responsibility to submit documents for in camera review by the Court (together with a proposed Order sealing any submission).  For the Court's convenience, Google will include copies of these three documents as part of courtesy copies of Google's Opposition papers submitted to Chambers.

[13] *Sampedro v. Silver Point Cap*., L.P., 818 F. App'x 14, 17 (2d Cir. 2020) ("The log should identify each document and the individuals on the communications to sufficiently allow the court to determine if the document is 'is at least potentially protected from disclosure.'" (quoting *United States v. Constr. Prods. Rsch., Inc.*, 73 F.3d 464, 473 (2d Cir. 1996))).

invariably required, particularly where the context in which the documents were created, or the documents themselves, leave little doubt as to whether a privilege has been properly asserted."). In addition, Google is submitting four declarations to further substantiate the privileged or protected nature of the material at issue. *Grinnell Corp. v. ITT Corp.*, 222 F.R.D. 74, 78 (S.D.N.Y. 2003) (explaining "burden must be satisfied for each document individually on the basis of its privilege log entries, affidavits, *and/or* the documents themselves" (emphasis added)).

### A.      GOOG-DOJ-11698798 is privileged.

The document bearing Bates number GOOG-DOJ-11698798 is a presentation titled "Dec 2019 Finance Updates" concerning, in relevant part, alignment on principles that the Global Partnerships cross-functional committee (GPx) would consider when reviewing prospective partnership deals between Google and publishers.

Google redacted just one out of eighteen slides on the basis of attorney-client privilege. *See* ECF No. 351-1, at Row 30.   The attorney-client privilege "protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance," with the purpose of "encourag[ing] attorneys and their clients to communicate fully and frankly . . . to the benefit  . . . of the client who wishes to know his options and responsibilities." *In re Cnty. of Erie*, 473 F.3d 413, 418 (2d Cir. 2007).

Google's privilege log accurately describes the document as a "Presentation, the redacted portion of which reveals legal advice of EU outside counsel regarding EU law." ECF No. 351-1, at Row 30.  The content on the slide itself contains legal guidance on pricing.  In further support of its privilege claim, Google is submitting as Exhibit A the declaration of an author of the presentation.  Exhibit A affirms that the redacted material on Slide 7 (page -804) "reflects the legal advice of attorneys at the law firm Slaughter and May, one of Google's European outside counsel, concerning pricing guidance under EU law."  McCallum Decl., Ex. A.  With those materials,

Google has met its burden.  *See CSC Recovery Corp.*, 1997 WL 661122, at *2 (combination of privilege log, the documents themselves, and an affidavit which "provid[ed] greater detail about the authors and recipients of the documents and the context in which they were generated" was "more than sufficient to support the asserted claims of privilege"); *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993) (burden could be met through an "adequately detailed privilege log in conjunction with evidentiary submissions to fill in any factual gaps").   Thus, even if Plaintiffs' contention that the "document on its face does not advise on a legal matter," Mot. at 11, were correct, it is irrelevant.

Plaintiffs' argument that the "presentation neither is a communication from counsel nor has the predominant purpose of 'seeking legal advice'" similarly fails.  Mot. at 11-12.  That the initial legal advice of European outside counsel was subsequently relayed to other Google employees in an internal presentation drafted by a non-attorney does not change the privileged nature of the advice.  *See Lazare Kaplan Int'l, Inc. v. KBC Bank N.V.*, No. 1:11-cv-09490, 2016 WL 4154274, at *2-3 (communications among non-lawyer corporate employees discussing legal advice received from counsel are privileged); *Bank Brussels*, 160 F.R.D. at 442 ("[T]he privilege protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation.").

Plaintiffs' remaining argument—that "no attorney is specified on the log or mentioned in the document," Mot. at 11—also fails.  Exhibit A identifies the law firm that provided the advice. McCallum Decl., Ex. A.  In any event, identification of a specific attorney is not necessary so long as the evidence demonstrates that the material asserted as privileged reflects legal advice by a lawyer.  *See, e.g.*, *Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, No. 6:12-cv-00196, 2017 WL 9401103, at *5 (N.D.N.Y. Jan. 13, 2017) (affirming Magistrate opinion which found that while

"the specific identity of the Rivkin attorney who authored the notes . . . was not provided on the privilege log . . . the contents of the notes clearly establish that this was a notation by a lawyer"); *Zimmerman v. Poly Prep Country Day Sch.*, No. 09 CV 4586, 2011 WL 2601481, at *7 (E.D.N.Y. June 30, 2011) (finding two privilege log entries without a named attorney "satisfactory" where one entry was described as "handwritten notes . . . the 'redacted portion [of which] reflects conversation with outside counsel regarding strategy for response to David Hiltbrand and John Paggioli demand letters,'" and the second as a "June 6, 2002 letter to counsel for David Hiltbrand, prepared under supervision of outside counsel and reflecting outside counsel's legal advice and strategy").[14]

### B.   GOOG-DOJ-12866023 is protected work product.

The document bearing Bates number GOOG-DOJ-12866023 is an eighty-one page compilation of notes, of which Google applied a single, targeted redaction of two lines.  The redacted portion reveals substantive details about a project over which Google has asserted work product protection.  The work product doctrine protects (i) documents or tangible things; (ii) prepared by or for a party (*i.e.*, by or for a party or a party's representative); and (iii) prepared in anticipation of litigation or for trial.  Fed. R. Civ. P. 26(b)(3).

Google's privilege log accurately summarizes the document as "Notes, the redacted portion of which reveals opinion work product of Competition and Product Counsel in anticipation of litigation and in response to active government investigations by" seven government authorities. ECF No. 351-1 at Row 55.  In further support of its work product assertion, Google is submitting as Exhibit B the declaration of the author of the notes.  The declarant affirms that the redacted

---

[14] *See also In re Abilify (Aripiprazole) Prods. Liab. Litig.*, No. 3:16-md-2734, 2017 WL 6757558, at *6 (N.D. Fla. Dec. 29, 2017) ("[W]here a specific [attorney's] name is not identified, this is not fatal to the assertion of privilege so long as it is evident that the information being compiled or discussed by corporate employees was information requested by or generated by an attorney.").

material reveals the substance of a remedy analysis project undertaken in anticipation of litigation and in response to active investigations by the State of Texas, the Antitrust Division of the United States Department of Justice, and various European authorities.  McCallum Decl., Ex. B.  The name of the project appears in the document immediately preceding the redacted portion.

Google's privilege log and Exhibit B are sufficient to meet Google's burden.  Plaintiffs' contention that "the redacted portion does not disclose a legal opinion of counsel or refer to any government investigation or expected litigation" is inapposite.  Mot. at 12.  The fact that Plaintiffs were unable to ascertain the link between the project and the active investigations, and that they chose not to credit Google's privilege log identifying that link, is irrelevant.  *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-md-1720, 2018 WL 1162552, at *6-11 (E.D.N.Y. Feb. 26, 2018) (finding work product protection based on declaration explaining the connection to a litigation even though the connection was not apparent on the face of the document).  Exhibit B confirms that link and the protected nature of the redacted material.

Plaintiffs' next argument—that "no attorney is specified on the log," Mot. at 12—incorrectly assumes that one is necessary.  Work product protection extends to material prepared by non-attorneys so long as it was prepared in anticipation of litigation.  *Shih v. Petal Card, Inc.*, 565 F. Supp. 3d 557, 572 (S.D.N.Y. 2021) ("[T]he case law makes it clear that 'it is not in fact necessary that the material be prepared by or at the direction of an attorney.'" (quoting *Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 394 (S.D.N.Y. 2015) (collecting cases))); *see also In re Copper Mkt. Antitrust Litig.,* 200 F.R.D. 213, 221 (S.D.N.Y. 2001) (finding "documents prepared in anticipation of litigation need not be created at the request of an attorney").  In any event, Exhibit B identifies by name the attorneys who supervised the work product project at issue.  McCallum Decl., Ex. B.

Plaintiffs' final argument—that "the document appears to contain the meeting minutes of a Google ad-tech business division," Mot. at 12—again reflects a misunderstanding of the scope of the work product doctrine.  Meeting minutes are "documents or tangible things" within the meaning of Federal Rule of Civil Procedure 26(b)(3).   A substantive description of a remedy analysis prepared in response to active government investigations and in anticipation of litigation is squarely protected by the work product doctrine.  *Fitzpatrick v. Am. Int'l Grp., Inc.*, No. 10 Civ. 142, 2011 WL 335672, at *4 (S.D.N.Y. Jan. 28, 2011) (documents were protected work product where materials' purpose was to be used in settlement discussions intended to avoid litigation); *Bovis Lend Lease, LMB, Inc. v. Seasons Contracting Corp.*, No. 00 Civ. 9212, 2002 WL 31729693, at *6 (S.D.N.Y. Dec. 5, 2002) (same). Those materials do not lose their protected status because they are contained within a document also discussing business issues.  *See von Kahle v. Cargill, Inc.*, No. 1:21-cv-08532, 2022 WL 1223264, at *4 (S.D.N.Y. Apr. 24, 2022) (spreadsheet detailing financial transactions is properly redacted under work product protection as to portions including notes reflecting legal strategy and advice).[15]

### C.     GOOG-DOJ-08154428 is privileged.

The document bearing Bates number GOOG-DOJ-08154428 is a compilation of meeting notes.  Google applied narrowly targeted redactions to eight short passages (comprising twenty-seven lines of text) out of ninety-nine pages of material.  Of these eight passages, Plaintiffs only

---

[15] Plaintiffs' only case in support, *Koumoulis v. Independent Financial Marketing Group, Inc.*, involved a "privilege log [that] provide[d] insufficient information to determine whether an attorney created these documents because of litigation or whether, absent the threat of future litigation, no comparable communications would have been created" and "Defendants did not provide any affidavits that might have remedied these deficiencies."  295 F.R.D. 28, 43 (E.D.N.Y. 2013), *aff'd*, 29 F. Supp. 3d 142 (E.D.N.Y. 2014).  But Google's privilege log provided a "Description" column, not present in *Koumoulis*, that supplied precisely that information.  *Compare id.* at 43, *with* ECF No. 351-1 at Row 29.  Moreover, Google has supplemented its log with Exhibit B, which (1) clearly explains that the notes in question reveal the substance of a work product project undertaken because of and in response to active government investigations and anticipated litigation and (2) identifies by name attorneys who oversaw the project.  McCallum Decl., Ex. B.

challenge the three "newly redacted portions," Mot. at 12, which Google understands to be the three redactions on pages -469 and -470 that were applied as part of the August 10 clawbacks.[16]

During the meet and confer process, Google invited Plaintiffs to point to particularized concerns with Google's privilege assertions.  They declined to do so.  Now, having interviewed multiple witnesses about these thirteen lines of text, Google has in good faith determined that it will no longer assert privilege over the second line of the first redaction on page -469.[17]  But in support of the privileged nature of the first line of the redaction at the top of page -469, Google is submitting as Exhibit C a declaration prepared by the presenter on the relevant topic discussed at the meeting.  As explained in Exhibit C, the redacted material "describes the legal strategy of Google in-house counsel [three of whom are identified by name in Exhibit C] regarding potential privacy law changes" discussed at the June 28, 2019 meeting.  McCallum Decl., Ex. C.  Material revealing attorney strategy on legal matters, such as the client's positioning in reference to potential changes in law, is privileged.  *See In re Cnty. of Erie*, 473 F.3d at 422-23 (attorney-client privilege protects communications containing "lawyer's assessment of [applicable legal] requirements, and provid[ing] guidance in crafting and implementing alternative policies for compliance"); *MacNamara v. City of New York*, No. 04 Civ. 9612, 2007 WL 755401, at *7 (S.D.N.Y. Mar. 14) (communications providing information so that an attorney could "render legal advice regarding [applicable] policies" are protected by attorney-client privilege), *adhered to on reconsideration*, 2007 WL 3196295 (S.D.N.Y. Oct. 30, 2007).

The remaining two redactions on pages -469 and -470 are privileged.  The second redaction

---

[16] The five redactions unchallenged by plaintiffs are privileged.  *See* GOOG-DOJ-08154428 at page -444 ("Legal position to date . . . is . . ."); page -445 (describing course of action taken based upon legal advice); page -516 (explicitly reflecting an action item directed to the legal team); page -517 (addressing the same subject matter and action item addressed at page -516); and page -521 (addressing "legal implications" of taking a certain course of action).

[17] Prior to filing its Opposition, Google provided Plaintiffs with a replacement copy of this document.

on page -469 begins: "Legal says . . ." and then plainly lays out the legal advice received.  The redaction on page -470 discusses legal guidance regarding similar competition legal issues.  *See Utica Mut. Ins. Co.*, 2017 WL 9401103, at *5 (affirming privilege where "contents of the notes clearly establish that this was a notation by a lawyer").  The privileged nature of both redactions is further supported by Exhibit D, which is a declaration from the presenter at the June 21, 2019 meeting at issue in the notes.  Exhibit D explains that "[t]he redacted material on the bottom of page -469 and on page -470 in the Document reflects legal advice regarding competition laws from [three Google in-house counsel identified by name in Exhibit D] that was given or discussed at this meeting."  McCallum Decl., Ex. D.  Moreover, just beneath the redacted material on page -470 is a note that the meeting attendees had discussed and agreed with in-house counsel to "[t]ak[e] this question to EU outside counsel," which further supports that this redaction is privileged.  *See United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002) ("Materials . . . that reflect matters about which the client intends to seek legal advice are comparable to notes a client would make to prepare for a meeting with her lawyer. . . . It would undermine the purpose of the attorney-client privilege not to extend protection to such notes.  Therefore, internal communications that reflect matters about which the client intends to seek legal advice are protected."); *see also United States v. DeFonte*, 441 F.3d 92, 96 (2d Cir. 2006) ("[A]n outline of what a client wishes to discuss with counsel—and which is subsequently discussed with one's counsel—would seem to fit squarely within our understanding of the scope of the privilege.").

Plaintiffs' principal argument[18] is that the redacted material describes mere "business

---

[18] Plaintiffs also assert that the name of the specific attorney identified in Google's privilege log is not evident from the newly redacted portions of the document.  Mot. at 12.  But the attorney identified was in fact associated with the legal strategy redacted on page -469.  McCallum Decl., Ex. C.  As explained above, the fact that a document does not

information and strategies." Mot. at 12. But Google has submitted declarations attesting to the involvement of attorneys in these meetings. *See* Exs. C, D. In light of the involvement of multiple attorneys (including product counsel, competition counsel, and privacy counsel) in the meetings, Google appropriately applied targeted redactions to protect attorney-client privileged material. The fact that business matters were discussed at these meetings does not undermine the privileged nature of legal advice shared at these meetings, even if the advice touched upon "business information and strategies," Mot. at 12. *See Wellnx Life Scis. Inc. v. Iovate Health Scis. Rsch. Inc.*, No. 06 Civ. 7785, 2007 WL 1573913, at *2 (S.D.N.Y. May 24, 2007) (Castel, J.) ("The issue is not whether any business considerations were also under discussion between the attorney and client but 'whether the predominant purpose of the communication is to render or solicit legal advice.'" (quoting *In re Cnty. of Erie*, 473 F.3d at 420)); *Pearlstein v. BlackBerry Ltd.*, No. 13-CV-07060, 2019 WL 1259382, at *4 (S.D.N.Y. Mar. 19, 2019) ("[T]hat a lawyer may highlight collateral non-legal risks and costs . . . in the course of rendering legal advice [on business matters] does not compromise the privilege so long as the predominant purpose of the communication was to render legal advice.").

Here, the redactions on the bottom of page -469 and on page -470 occur in the context of pricing decisions, but contain legal advice regarding those pricing decisions. As *Pearlstein* illustrates, the "predominant purpose" of the redacted communications was not business, even if it related to business issues. *See* 2019 WL 1259382 at *17, *19 (collection of information about product sales and return rates, and emails soliciting legal advice on customer communication strategies, were privileged because the predominant purpose of these materials was legal in nature). It is evident the predominant purpose of the redacted material at issue here was to convey legal

---

contain a particular attorney's name does not strip the material of privilege when, as here, the material reflects legal advice provided by an attorney. *See supra* Part V.A (citing cases).

advice which would inform corporate policy—a scenario within the core of the privilege. *See Upjohn Co. v. United States*, 449 U.S. 383, 392 (1981) (explaining that the "very purpose of the privilege" in the corporate context is to allow attorneys to "convey full and frank legal advice to the employees who will put into effect the client corporation's policy").

Plaintiffs' remaining argument—that the non-lawyer members attending the meetings had no "need to know" the redacted legal advice—makes no sense. Corporate employees have a need to know of legal guidance which informs their business activities. *See id.* at 390 ("[T]he privilege exists [in the corporate context] to protect . . . the giving of professional advice to those who can act on it."); *see also Verschoth v. Time Warner, Inc.*, No. 00 CIV 1339, 2001 WL 546630, at *2 (S.D.N.Y. May 22, 2001) ("An employee or agent of a corporation who shares responsibility for the subject matter of a communication would clearly need to be familiar with such communication.").[19] Google's in-house counsel were involved in the meetings and discussions in order to provide legal advice to guide corporate decision-making in those meetings. Exs. C, D. Attorneys sharing their legal advice with corporate employees whose duty it was to make business decisions informed by such legal advice goes to the core of the attorney-client privilege in the corporate context. *Upjohn*, 449 U.S. at 390-92.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court deny Plaintiffs' motion to compel. Any further meet and confers or motion practice with respect to the

---

[19] Plaintiffs' argument to the contrary, Mot. at 12, is based on the vastly different facts in *M&T Bank Corp. v. State Nat'l Ins. Co.* There, the court determined that "updates . . . disseminated by non-attorney M&T employees to other non-attorney M&T employees" were not privileged where it was "not clear to the Court what, if any, legal advice is contained in these documents." No. 18-CV-787, 2020 WL 5494501, at *2 (W.D.N.Y. Sep. 11, 2020). Moreover, unlike in *M&T* where the investigation updates were not tied to recipients' job responsibilities, here recipients of these meeting notes were attendees who had business responsibilities tied to the substance of these meetings. *See* McCallum Decl., Exs. C, D.

clawbacks should be restricted to relevant documents and stayed until the parties negotiate the scope of properly propounded document requests pursuant to Federal Rule of Civil Procedure 34.

Dated: November 14, 2022                         Respectfully Submitted,


                                                 */s/ Eric Mahr*
                                                 Eric Mahr
                                                 Julie Elmer
                                                 Andrew J. Ewalt (admitted *pro hac vice*)
                                                 Jan Rybnicek (admitted *pro hac vice*)
                                                 Lauren Kaplin
                                                 Robert J. McCallum
                                                 FRESHFIELDS BRUCKHAUS
                                                   DERINGER US LLP
                                                 700 13th Street NW, 10th Floor
                                                 Washington, DC 20005
                                                 (202) 777-4500
                                                 eric.mahr@freshfields.com
                                                 julie.elmer@freshfields.com
                                                 andrew.ewalt@freshfields.com
                                                 jan.rybnicek@freshfields.com
                                                 lauren.kaplin@freshfields.com
                                                 rob.mccallum@freshfields.com

                                                 Justina Sessions
                                                 Jonathan Jacobson
                                                 Jessica Lonergan
                                                 Mikaela Evans-Aziz
                                                 WILSON SONSINI GOODRICH &
                                                   ROSATI
                                                 Professional Corporation
                                                 One Market Plaza, Spear Tower
                                                 Suite 3300
                                                 San Francisco, CA 94105
                                                 (415) 947-2000
                                                 jsessions@wsgr.com
                                                 jjacobson@wsgr.com
                                                 jlonergan@wsgr.com
                                                 mevansaziz@wsgr.com

                                                 John Harkrider
                                                 Daniel Bitton
                                                 Bradley Justus (admitted *pro hac vice*)

Koren Wong-Ervin (admitted *pro hac vice*)
AXINN VELTROP & HARKRIDER LLP
114 West 47th Street
New York, NY 10036
(212) 728-2200
jharkrider@axinn.com
dbitton@axinn.com
bjustus@axinn.com
kwongervin@axinn.com

*Counsel for Defendants Google LLC,*
*Alphabet Inc., and YouTube LLC*