# EXHIBIT F



Wilson Sonsini Goodrich & Rosati
Professional Corporation

One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105-1126

O: 415.947.2000
F: 415.947.2099

MIKAELA E. EVANS-AZIZ
mevansaziz@wsgr.com

December 16, 2022

VIA ELECTRONIC MAIL

Serina M. Vash
Herman Jones LLP
153 Central Avenue # 131
Westfield, NJ 07090
svash@hermanjones.com

**Re:     *In re: Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC)**

Dear Serina:

I write in response to your letter dated December 9, 2022 in connection with the ESI negotiations in the above-captioned MDL.  Plaintiffs' letter sets forth a revisionist history of these negotiations yet still fails to provide Plaintiffs' promised explanations to support their positions.  As set forth below, we have accepted Plaintiffs' edits to the extent that they make practical sense but have rejected them when they do not.  Should Plaintiffs and Meta wish to meet and confer, we are available on December 19, 20, and 21 between 3pm and 5pm ET.

**Plaintiffs Have Misrepresented the History of the ESI Negotiations**

Plaintiffs' letter of December 9, 2022 is inaccurate in numerous respects.

First, Plaintiffs have had no operative counterproposal on the table since June 1, 2022.  At the November 10, 2022 meet and confer we explicitly asked Plaintiffs whether they had an operative counterproposal and Plaintiffs' counsel confirmed that they did not.

Second, Plaintiffs' assertion that Google has insisted that the parties negotiate from an ESI Order "to which no active party in this MDL has ever agreed" lacks any factual basis.  Google offered to negotiate from two different templates of its own.  Meta (which is a Party to these proceedings) offered a third template.  When Plaintiffs failed to negotiate from any of those three templates (each of which had been entered by a federal judge), Google and Meta prepared a joint proposal based on Meta's template because it was the one that best addressed *Plaintiffs'* stated concerns.

Third, Plaintiffs' suggestion that Google is somehow to blame for these protracted negotiations is plainly wrong.  The Court ordered Plaintiffs to coordinate with respect to drafting an ESI order in

**WILSON SONSINI**

December 16, 2022
Page 2

September 2021, ECF No. 129, and Plaintiffs represented that they would do so. ECF No. 141. For at least ten of the last fourteen months, the ball has been in Plaintiffs' court. Plaintiffs are not entitled to credit for the time they wasted preparing their unworkable opening proposal, which ran to almost 50 pages and which they have long since abandoned.

Fourth, Plaintiffs' characterization of the November 10, 2022 meet and confer is also inaccurate. In advance of that meet and confer, Google notified Plaintiffs in writing of Google's position on various proportionality issues. All of the explanations in our October 14, 2022 letter were based on Fed. R. Civ. P. 26 and the Sedona Principles. Plaintiffs have never responded to the explanations in that letter. At the November 10 meet and confer, Plaintiffs promised to confirm, in writing, their position with respect to paragraphs II.3.h, II.3.k, II.3.m, concerning certain categories of ESI that are not reasonably accessible. Plaintiffs failed to do so.[1] Please provide us with those overdue written explanations.

Fifth, Plaintiffs' assertion that Google has "consistently resisted any meaningful explanation of its proposals" is demonstrably wrong. In addition to the meet and confer process, we have explained our position in our letters dated May 23, July 1, October 14, and November 18. And we are again providing detailed explanations for our positions in this letter. Plaintiffs, by contrast, have consistently rejected Google's proposals without explanation (and continue to do so). For the avoidance of doubt, Google does not consider the various margin comments that Plaintiffs provided on November 4 (such as "Plaintiffs disagree with this insertion" and "We do not agree to this") as adequate explanations to support Plaintiffs' positions.

**Plaintiffs' Eleventh Hour Proposal Remains Unworkable**

The proposed ESI Order that Plaintiffs provided on December 9, 2022 is the first operative counterproposal that we have received from Plaintiffs in six months. Despite Plaintiffs' extraordinary delay, Google has accepted some of Plaintiffs' edits (which in many cases are to provisions that Plaintiffs drafted), but Google does not agree to Plaintiffs' edits to the extent that they do not make sense or are impractical as further described below.

***En masse* reproductions and readability (paragraph I.2)**. We do not understand the purpose of Plaintiffs' edits to this paragraph, including the introduction of a provision contemplating further *en masse* reproductions. The Court has indicated that it will not entertain requests for *en masse* reproductions.[2] In light of Pre-Trial Order No. 5 ("PTO-5"), ECF No. 394, and the Court's prior statements, we do not think it is necessary or practical for Google to now reproduce portions

---

[1] We do not consider Plaintiffs' margin comment that "browser history files should be preserved for a case like this" to be an adequate explanation of Plaintiffs' position.

[2] Tr. of April 29, 2022 Conference, ECF No. 291 21:19-23 ("[I]f your Rule 34 requests describe categories of documents, that's one thing. If it's one Rule 34 request that says, 'Pursuant to Rule 34, give me everything you gave in the civil investigative stage,' that's not going to work with me.").

WILSON
SONSINI

December 16, 2022
Page 3

of the Investigation Materials in a different format.  If Plaintiffs contend otherwise, please explain
in writing the reasons for that contention.

In addition, we note that Plaintiffs' additional language regarding readability is redundant in light
of the provisions in the Appendix covering readability of TIFF files (Appendix E), native files
(Appendix H), linked files (Appendix J), and encrypted files (Appendix T).  If Plaintiffs disagree,
please explain your reasons in writing.

**Exact duplicates (paragraphs II.2(a); II.3(c), (d), and (n); III.5)**.  We do not agree to Plaintiffs'
introduction of the new concept of "exact duplicates" throughout the ESI Order because Plaintiffs
have defined that term in a way that would defeat the purpose of the ESI Order.  Under Plaintiffs'
definition, any producing party must first collect, search, and de-duplicate documents before
deciding that some of them need not be preserved.  That would unduly restrict all producing
parties' ability to make sensible preservation decisions.  If Plaintiffs disagree, please explain your
reasons in writing.  Moreover, the deduplication method already set forth in the ESI protocol is
standard procedure and should address plaintiffs' concerns.

**Procedures for de-duplication (paragraph III.5)**.  We note that Google's planned migration to
source hashing for deduplication has been delayed and Google will continue to use industry
standard hashing for deduplication in the meantime.  We have amended this provision accordingly.

**Ad logs (paragraphs II.3(k))**.  Google explained its position regarding the relevance of ad logs
to this dispute in its November 18 letter.  Plaintiffs have not responded to those explanations.  We
do not agree to add New Zealand or the 27 Member States of the European Union to the list of
countries carved out from this provision.  If Plaintiffs contend that ad log data concerning ads
viewed in these additional 28 jurisdictions are relevant to this dispute, please now explain in
writing the reasons for that contention.  Further, we do not understand what Plaintiffs mean by the
reference to "potential benchmarks" in their December 9 redline and we do not consider this
margin comment to be an adequate explanation of Plaintiffs' position.

**Encryption keys and mapping tables (paragraph II.3)**.  Plaintiffs have failed to give any reason
for adding the caveat at the end of paragraph II.3 regarding encryption keys, mapping tables,
identifiers, or other data.  Please provide us with a written explanation of the reason for the
proposed addition.

**Privilege logs (paragraph V.1 and V.5)**.  Plaintiffs' proposal that logs are due within 30 days of
any production is impractical.  Google has proposed that privilege logs be produced 90 days after
the substantial completion deadline, and 30 days after any subsequent productions.  That means
logs will be produced for the majority of produced documents seven months from service of initial
requests and approximately 10 months before the close of fact discovery.  That is reasonable.  If
Plaintiffs contend otherwise, please explain in writing the reasons for that contention.  Plaintiffs'
additional proposal to condition the inclusion of a single document containing multiple email

WILSON
SONSINI

December 16, 2022
Page 4

messages as a single log entry only "if it is produced in redacted form with all email header information visible," is unworkable because Gmail truncates email header information.

**Identification of specific attorneys on privilege logs  (paragraph V.3(h))**.  As we have previously stated, it is not necessary to identify the name of a specific attorney on a privilege log. ECF No. 385 at 14-15; *see also Utica Mut. Ins. Co. v. Munich Reinsurance Am.*, Inc., No. 6:12-cv-00196, 2017 WL 9401103, at *5 (N.D.N.Y. Jan. 13, 2017); *Zimmerman v. Poly Prep Country Day Sch.*, No. 09 CV 4586, 2011 WL 2601481, at *7 (E.D.N.Y. June 30, 2011).  If Plaintiffs contend otherwise, please explain the reasons for that contention in writing.

**Plaintiff-specific exemption from obligation to log (paragraph V.8(g))**.  We do not agree to exempt Plaintiffs from the same privilege log obligations that they seek to impose on Defendants. If Plaintiffs continue to press for this one-sided exemption, please explain in writing your support for this position.

**Privilege logs from other productions (paragraph V.12)**.  Plaintiffs' proposal is based on the assumption that the Court will permit *en masse* productions from other cases.  As addressed above, the Court has indicated that it will not permit requests of this nature.  However, Google agrees to add qualifying language that logs sourced from any other cases should comply with Fed. R. Civ. P. 26, and to provide them in Excel form when requested and reasonable to do so.

**Metadata fields (Appendix D)**.  We invited Plaintiffs to explain their need for additional metadata fields over five months ago.  Plaintiffs have never done so.  The additional fields that Plaintiffs have proposed are burdensome because these fields are, in many cases, not part of Google's collection scheme, duplicative, or would require custom-scripting to extract.  The hyperlinks that Plaintiffs cite to are not instructive here; the fact that Google offers its customers access to these fields does not necessarily mean that Google uses all of them for its own purposes.

**Presentations as native files (Appendix H)**.  We assume that Plaintiffs' concern with presentations is the readability of such documents.  We cannot agree to production of presentations in native format because those documents often contain live links directly to Google's systems. As a compromise, Google would be willing to agree to production of presentations as color documents in .JPEG format, where that is possible, which we assume will address Plaintiffs' concerns.  Please let us know if Plaintiffs will agree to that compromise.  If Plaintiffs contend that presentations must be produced in native format, please explain in writing the basis for that contention.

**Linked documents (Appendix J)**.  Plaintiffs' proposal is completely unworkable because it would lead to potentially unlimited productions of links within links with no regard to relevance or proportionality.  This provision must be grounded in principles of proportionality (which Plaintiffs have proposed to delete in their draft) and apply equally across collaborative work environments used by all Plaintiffs and all Defendants.  Google has a limited ability to search for links within emails but cannot do what Plaintiffs are proposing here.  We understand that Meta "does not have

WILSON
SONSINI

December 16, 2022
Page 5

an automated tool available to identify linked documents" in the manner that Plaintiffs describe. And we do not agree to Plaintiffs' request to cherry-pick provisions from the *Play* litigation. The Court has previously rejected Plaintiffs' efforts to do so in the context of the Protective Order. If Plaintiffs intend to pursue their edits to this provision, it would be helpful to understand how Plaintiffs propose to conduct these searches.

**Password Protected / Encrypted Files (Appendix T).** Google has no automated functionality to unlock passwords. Accordingly, any search for passwords is a manual process. That is burdensome, especially when producing parties must produce non-responsive family members which are potentially password-protected. As a compromise, Google agrees to make a reasonable effort to provide Plaintiffs with any passwords or information necessary to access password-protected or encrypted files that Google has produced. If Plaintiffs contend that producing parties must proactively seek to unlock password protected documents, please explain in writing the basis for that contention.

In addition, Plaintiffs' draft ignores, without explanation, all of the comments provided by Defendant Meta in their email dated November 21, 2022. Google's draft incorporates Meta's comments as to email threading (paragraph III.6) and time zones (Appendix O). In the event of a dispute between Plaintiffs and Meta on those provisions, Google does not anticipate taking a position. Similarly, we do not plan to take a position on Plaintiffs' proposal to add various references to Fed. R. Civ. P. 45 throughout their proposed ESI order. We assume that these edits are in service of Plaintiffs' position that Meta is no longer a Party to these proceedings but should be treated as one for discovery purposes.

\* \* \*

Google's proposed ESI Order is attached. Please provide us with the information requested above and Plaintiffs' position on any remaining provisions in dispute no later than December 23, 2022.

Best Regards,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*/s/ Mikaela E. Evans-Aziz*

Mikaela E. Evans-Aziz
*Counsel for Defendants Google LLC,*
*Alphabet Inc., and YouTube LLC*

Cc: Counsel for Publisher Plaintiffs, Advertiser Plaintiffs, Daily Mail, and State Plaintiffs