# EXHIBIT H

## HERMAN JONES LLP
<small>ATLANTA · NEWARK · SEATTLE</small>

Serina M. Vash
svash@hermanjones.com

January 11, 2023

**<u>VIA CM/ECF</u>**

Via Email

Mikaela Evans-Aziz
Freshfields Bruckhaus Deringer LLP
601 Lexington Avenue, 31st Floor
New York, New York 11221

Re: In re Google Digital Advertising, 1:21-md-03010 (PKC)

Dear Mikaela,

  We write in furtherance of the parties' December 21, 2022 Meet and Confer and in response to your January 6, 2023 Letter. As previously stated, Plaintiffs have consistently provided our responses (both written and otherwise) and here address additional issues raised during the parties' meet and confer.

## GENERAL PROVISIONS

**Production Specifications (paragraph I.2).** As requested by Google, we have deleted the term "*en masse*" and included the term "previously" in "previously produced." Otherwise, we cannot accept Defendants' language, which suggests encompassing myriad other matters and investigations not before this Court and exempting documents produced in those matters from the ESI Protocol in this matter.

## PRESERVATION

**Meaning of Duplicative (paragraph II.2(a),(c)(n); III.5)** As you noted, Plaintiffs raised a concern about the term "duplicative" and its use in this ESI order and suggested that the term "exact duplicate" be used instead. We accepted Google's edits, with the proposed changing of the term "information" to "documents, electronically stored information, and tangible things." These terms are used in the FRCP and are preferable to the vague term "information." Our acceptance is contingent upon this change. Any party's failure to preserve, collect and/or produce

Re: In re Google Digital Advertising, 1:21-md-03010 (PKC)
January 11, 2023
Page 2

relevant, non-duplicative documents, electronically stored information and tangible things may limit that party's ability to make certain arguments during this litigation.

As respects logs of calls made from cellular phones (paragraph II.2(d)), Plaintiffs have not accepted the change and have included proposed compromise language.

**Preservation of Certain Categories of Documents (paragraphs II.3(h), (j), and (l))**: The Plaintiffs cannot accept the excepted categories you proposed as revised Subsections II(3)(h), (j), and (l). The data and documents covered by these subsections are relevant to Google products and services at issue in the case, such as Dynamic Allocation and Last Look. The interplay between Google's role as the moderator of online ad auctions via ad servers on the one hand, and as a participant in the same ad auctions on the other, will be memorialized in, for instance, "internet histor[ies]", "server [and] network logs", and "log files", especially if Google engages in any self-preferencing within the fractions of a millisecond that winners and losers of ad auctions are decided. The categories you are attempting the except need to be preserved, not destroyed. This is important evidentiary information.

**Preservation of Ad Logs (paragraph II.3(k))** Respectfully, Google was made fully aware that certain parties were unable to attend the Meet and Confer and that Plaintiffs wanted to proceed in good faith notwithstanding that fact. Plaintiffs took no position during the Meet and Confer as respects logs for ads viewed in the European Union and elsewhere outside the United States. We understand that counsel for the Publisher Class and for Daily Mail have been in touch with Google about this issue, and that both are currently awaiting Google's response. To the extent any agreement is reached, we will include the same in our submission.

**Encryption Keys (paragraph II.3)** Plaintiffs cannot agree to relieve Google of its obligation to preserve encryption keys, mapping tables, identifiers, or other data sources that are necessary to make relevant ESI and Documents useable for the purposes of this Action. That is especially true in light of Google's refusal, in its proposed Appendix T, to take reasonable steps to break any encryption or password protection that would render relevant and responsive data and documents unusable.

**COLLECTION AND REVIEW**

**De-duplication (paragraph III.5)**. Plaintiffs asked that Google confirm the method of deduplication that it will use prior to its migration to Source Hash. Google has informed us that it is using the MD5 Hash value in combination with the Axcelerate calculated "RM_duplicate" hash value. Our technicians ask how Google proposes using the RM_Duplicate hash value and how it

Re: In re Google Digital Advertising, 1:21-md-03010 (PKC)
January 11, 2023
Page 3

differs or supports the industry standard MD5 hash value?  Please explain so that we can evaluate why simply using MD5 hash value for deduplication would not be sufficient.

**Email threading (paragraph III.6)** Plaintiffs cannot accept the new proposed language here. As an initial matter, Google already agreed with Plaintiffs to produce all messages comprising any given thread and the proposed change comes from Meta; we are losing ground here for no good reason. There is no additional burden and no prejudice to Google to revert to the prior agreement with Plaintiffs.  Moreover, Meta's new proposal risks the loss of important metadata and will make use of the documents unwieldy and inefficient, rather than streamlining depositions, expert and witness testimony.

## PRODUCTION FORMAT

Plaintiffs would be willing to accept your change to paragraph IV.1 if we come to agreement on paragraph I.2.

## PRIVILEGE LOGS

**Privilege Log Timelines and Method of Production (paragraph V.1)**. The parties discussed trying to agree to a mutually acceptable time limit and method for producing privilege logs. Respectfully, your proposed compromise conflates these two important issues.

It is and has always been Plaintiffs' position that production of privilege logs should *not* occur "at the close of the four-month substantial completion deadline" as you have suggested but rather that privilege logs are to be produced on a *rolling basis*. This was expressly raised by Plaintiffs during the meet and confer and in prior drafts of the ESI Order.  On the Meet and Confer, Google's stated objection to rolling privilege logs was that it would incentivize Google to produce documents only at the end of the four-month period allowed.  Google's suggestion that it will withhold responsive documents until just before the substantial completion deadline so that it can delay complying with its privilege log obligations is troubling.  In order to ensure discovery proceeds efficiently, Plaintiffs expect all parties to respond to document requests on a rolling basis.  To do otherwise would lead to delay as respects, *inter alia*, depositions and expert reports, which will be impacted by any privilege challenges.

Plaintiffs' position is that (1) documents and accompanying privilege logs should be produced on a rolling basis; and (2) privilege logs should be produced 30 days following each production. In an effort to come to some compromise, Plaintiffs are willing to agree that Google is to produce privilege logs (1) on a rolling basis; (2) 45 days following each production. We expect that Google will work in good faith to provide documents over the course of the four-month substantial

Re: In re Google Digital Advertising, 1:21-md-03010 (PKC)
January 11, 2023
Page 4

completion deadline and reserve the right to make any and all arguments concerning impact on the case of a single or multiple eleventh-hour productions.

**Identification of Specific Attorneys and Email Chains (paragraph V.3(h) and V.5)**. Plaintiffs' position is that privilege logs must include both the name of the attorney(s) and the legal organization who provided the legal advice at issue. This case involves matters on which attorneys provide substantial business advice and this matter has already seen belated claims of privilege asserted and then withdrawn by Google when challenged by Plaintiffs. Clarity on the basis for Google's privilege assertions is thus paramount. Moreover, Google's stated position that it would wait until the end of the four-month substantial completion period before producing documents (and thus privilege logs) demands precision in Google's privilege logs so that privilege challenges can be timely and efficiently made.

**Privilege Log Exemptions (paragraph V.8(g))**. The nature of this proceeding as a Multidistrict Litigation necessitates the language proposed by Plaintiffs. Plaintiffs will consider language from Google that provides reciprocal exclusion for defendants so long as it provides for logging documents that could substantiate claims of collusion between Defendants that are the subject of and asserted in this litigation (e.g., Jedi Blue, whitelisting of FB).

**APPENDICIES**

**Meta Data Fields (Appendix D)**. Google eliminated Google-Drive-specific metadata fields from the list of metadata fields included in the Appendix, without explanation. As explained during our December 21 meet-and-confer, and in comments accompanying Plaintiffs' prior drafts adding these fields, these Google-Drive-Specific metadata fields are known to be available through Google Drive, and their production, where such metadata is available, entails virtually no additional burden. As the language preceding the metadata table makes clear, "[t]he parties are not obligated to populate manually any of the[se] fields." Plaintiffs have added these fields back into their current proposal.

**Presentations (Appendix H, I)**. Presentations need to be produced in native format. As we have expressed, they are otherwise not searchable, often unreadable, and important links are undetectable. Notably, Google's suggested compromise that it "produce presentations in a readable .JPEG format together with a searchable text file" adds burden and unnecessary complexity, and presents the risk that presenter comments and similar data may be omitted. Plaintiffs' position remains that these documents must be produced in native format.

**Linked documents (Appendix J)**. Linked documents are critical in this matter. Google informed Plaintiffs that it has an automated tool for identifying links in e-mails and searching for documents

Re: In re Google Digital Advertising, 1:21-md-03010 (PKC)
January 11, 2023
Page 5

associated with those links.  At least with respect to e-mails, the burden on Google is low to provide linked documents.  Plaintiffs' propose that Google use that tool as it already agreed to do months ago.  Plaintiffs additionally request the right to make "reasonable and proportionate requests" for linked documents they identify in Defendants' productions.  Google had previously agreed to that provision as well. Plaintiffs are rejecting Meta's change.

**Databases, Data Sources, Logs, and Other Structured Data (Appendix L)**.  We are informed that the review platform utilized by a number of the plaintiff groups does not support Parquet, and so Plaintiffs request that Google utilize other file types such as .xlms/.xls or .csv.

**Password-Protected, Encrypted, or Proprietary-Software Files (Appendix T)**.  With respect to any ESI items that are password-protected or encrypted within the scope of review, it is Plaintiffs' position that the producing party must provide the documents in a reviewable and readable format.  That includes making reasonable efforts to break any encryption or password protection that would prevent Plaintiffs from reviewing responsive materials.  A similar provision was included in the ESI order in *FTC v. Meta Platforms, Inc.*, the model order Google insisted the parties use as a basis for negotiation, and Google has provided no credible reason to exclude a similar provision in this Order.  *See* Stipulation and Order Regarding Discovery Procedure App'x 1, ¶ R, *F.T.C. v. Meta Platforms, Inc.*, No. 1:20-cv-03590 (D.D.C. Mar. 8, 2022), ECF No. 108.  We have attached a revised ESI protocol (dated 01.11.2023) that accepts the language as indicated and reverts back to Plaintiffs' and/or the parties' prior agreed-upon language where noted. It also includes comments bubbles explaining our position. One or more of us would be happy to be available to discuss this prior to our Friday submissions in an effort to come to agreement without the need to bring any issues to the Court.

Sincerely,

*s/ Serina M. Vash*

Serina M. Vash

cc:    All Counsel of Record (via CM/ECF)