# Freshfields Bruckhaus Deringer US LLP

**Via ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

**Washington**
700 13th Street, NW
10th Floor
Washington, DC 20005-3960
T  +1 202 777 4500 (Switchboard)
   +1 202 777 4545 (Direct)
F  +1 202 507 5945
E  eric.mahr@freshfields.com
www.freshfields.com

February 1, 2023

**Re:**  *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC)

Dear Judge Castel:

On behalf of Defendants Google LLC, Alphabet Inc., and YouTube LLC ("Google"), we write pursuant to Pre-Trial Order No. 5, ECF No. 394 ("PTO-5") ¶ 13, to apprise the Court of four issues in advance of the Case Management Conference scheduled for February 15, 2023.

*First*, on January 24, 2023, the United States Department of Justice ("DOJ") and eight states filed a lawsuit against Google LLC in the Eastern District of Virginia alleging antitrust violations in connection with Google's ad tech.[1]  The complaint asserts the same theories as those at issue in this MDL (including monopolization under Section 2 and tying) and seeks largely the same relief (including injunctive and structural remedies).  Counsel to the DOJ have informed us that they intend to take additional discovery which Google anticipates will overlap (we expect completely) with the discovery sought by Plaintiffs in this MDL.  We have notified counsel to the DOJ that, for reasons of judicial efficiency and to mitigate the obvious risk of inconsistent judgments, Google intends to file a motion seeking to transfer the case to the Southern District of New York pursuant to 28 U.S.C. § 1404 so that it can be related to this case and that discovery can be coordinated.

*Second*, on January 27, 2023, Plaintiffs issued more than three hundred requests for production to Google seeking documents dating back to 2007.  We attach those requests as Exhibit A.[2]  Google's preliminary assessment is that Plaintiffs' requests are wildly overbroad and untethered to principles of proportionality.  For example:

---

[1] Compl., *United States et al. v. Google LLC*, No. 1:23-cv-00108 (E.D. Va. Jan. 24, 2023), ECF No. 1.

[2] In Exhibit A we have redacted a single reference to an employee of Google whose name the Court has previously Ordered be sealed.  ECF No. 194.

- Request No. 111—which is a 318-word sentence—jams together a string of obviously separate requests and interrogatories into a single unwieldy mess.[3]  Ex. A at 39-40.
- Request No. 243—which runs to five full pages and contains 55 subparts—seeks production of "[a]ll data concerning each display ad transaction processed by" any part of Google's "Ad Tech Stack" (which Plaintiffs fail to define) since 2007.  Ex. A at 62-67.
- Request No. 260 seeks essentially all ad tech source code, including source code for "[e]ach of [Google's] past, present, and proposed Ad Tech Products and Ad Tech Auction Mechanics."  This goes far beyond the services at issue in this litigation, not in the least because Plaintiffs defined "Ad Tech Products" to include all systems and products for rendering any format of digital advertising on a device (i.e., including search ads products).  Ex. A at 3-4; 69-71.
- Request No. 274 seeks reproduction of all documents produced to the DOJ, the Federal Trade Commission, various U.S. Congressional Committees, the European Commission, the U.K. Competition and Markets Authority, the Australian Competition and Consumer Commission, the Italian Competition Authority, and the French Competition Authority.  Ex. A at 74-75.  That is both facially improper[4] and inconsistent with the Court's guidance.[5]  This request underscores the absurdity of Plaintiffs' ESI proposal, which would not only require Google to recollect and reformat those millions of previously-produced documents according to Plaintiffs' newest preferred production specifications, but would also then

---

[3] Request No. 111 seeks "All Documents concerning Your decision to implement Dynamic Revenue Sharing ('DRS'), including any Document concerning analysis of the effect in terms of revenue, price and/or utility, of DRS and tDRS on Publishers, Advertisers, or You, feature changes or updates to DRS and tDRS, comparisons between various DRS models, and including any Documents concerning the conditions of, effects of or results from any offline experiments or auction simulations, online experiments and statistics from Rasta, hold-back experiments run on live traffic via Rasta, launches through Ariane, and live user testing, as documented via Human Evaluations or other means You ran, that measured how each version of DRS adjusts Your take rates, including Data on the implemented take rates from Supermixer logs, WebPropertyPageSettings protobuf fields from the Supermixer, QEMs, and QSEMs logged to AdQueries and other databases following the AdX auction, and all other logs pertaining to the AdX auction prior to, during, and after the launches of each variant of DRS; impacts on Your revenue and other Metrics; how DRS affected the U.S. markets for Publisher Ad Servers, Ad Exchanges, and Ad Networks, Ad Buying Tools, including via changes in market shares among competitors; the effects on Publishers' and/or Advertisers' Metrics, such as Publishers' revenue and Advertisers' prices; the effects on AdX's win-rate and Your competitors' Metrics; as well as any Documents, experiments, or Data concerning the selection of DRS candidates for launch, including DRS v1, DRS v2, two-sided DRS, revised two-sided DRS, eDRS, truthful DRS, Negative Rev-share DRS, RPO-aware DRS v2, and RPO-powered Bid-oblivious DRS, and any other variants that were considered; as well as the identities of the individuals and/or groups that made the implementation decision, the identities of any individuals and/or groups that approved the decision, the dates of the decision and any approval(s) thereof, Documents memorializing the decision or any approval(s) thereof, and Documents describing or analyzing the reasons for the decision or any approval(s) thereof."  Ex. A at 39-40.

[4] *See Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126 (JMF), 2016 WL 6779901 at *4 (S.D.N.Y. Nov. 16, 2016) (discovery of all documents produced to regulatory bodies held to be irrelevant, disproportionate, and overbroad and plaintiffs directed to articulate specific relevance for documents sought).

[5] At the April 19, 2022 conference, the Court stated that: "[I]f your Rule 34 requests describe categories of documents, that's one thing.  If it's one Rule 34 request that says, 'Pursuant to Rule 34, give me everything you gave in the civil investigative stage,' that's not going to work with me."  Tr. of April 19, 2022 Conference, ECF No. 291 at 21:19-23.

require a search for an untold number of additional documents linked within them—again, regardless of relevance—across countless custodians.

In PTO-5 the Court set a discovery schedule that took account of "the substantial document production that has already been made in these actions." ECF No. 394 ¶ 5. Yet Plaintiffs ignore the Court's guidance and essentially seek to begin discovery anew. Google submits that Plaintiffs' requests also do not comply with the Federal Rules of Civil Procedure ("Federal Rules") because they are both "unreasonable" and "unduly burdensome" when "considering the needs of the case" and the "prior discovery in the case." Fed R. Civ. P. 26(g)(1)(B)(iii). Accordingly, Google respectfully requests that Plaintiffs' requests be stricken and that Plaintiffs be directed to serve new requests for production (not to exceed 80) that comply with the Federal Rules and this Court's prior guidance on discovery. See Fed R. Civ. P. 26(g)(3); see also *BAT LLC v. TD Bank, N.A.*, No. 15 CV 5839 (RRM) (CLP), 2018 WL 3626428, at *3 (E.D.N.Y. July 30, 2018) (Requests for production "should be reasonable from the start" rather than "demand[ing] the moon thinking they can always fall back to something reasonable." (quoting *Boston Scientific Corp. v. Lee*, No. 14 MC 80188, 2014 WL 3851157, at *7 n.59 (N.D. Cal. Aug. 4, 2014))).

*Third*, Plaintiffs' voluminous requests implicate complex questions regarding ESI preservation and production that Plaintiffs could have raised at a much earlier juncture—but failed to do so. The parties were obliged to discuss "any issues about disclosure, discovery, or preservation of electronically stored information" as part of the Scheduling Order and ESI order negotiations. Fed. R. Civ. P. 26(f)(3)(C); *Bailey v. Brookdale Univ. Hosp. Med. Ctr.*, No. CV 16-2195 (ADS) (AKT), 2017 WL 2616957, at *4 (E.D.N.Y. June 16, 2017) ("Rule 26(f) requires that the parties meet and confer to develop a discovery plan that discusses 'any issues about disclosure or discovery of [ESI], including the form or forms in which it should be produced . . . . It requires disclosure and dialogue on the parameters of preservation."). Google tried to engage with Plaintiffs on these complex questions but Plaintiffs declined to address them in any meaningful way. See ECF No. 434 at 4-6; ECF No. 434-4 at 2-3; ECF No. 434-5 at 1-2; ECF 434-6 at 4-5. It is now apparent from the technical specificity of Plaintiffs' requests—*see, e.g.*, Request No. 111, *supra* at n.3—that Plaintiffs planned, for many months, to seek specific and granular types of ESI that they have never discussed with Google notwithstanding Google's explicit invitations.

*Fourth*, Google notifies the Court that today the J.P.M.L. ordered transfer of two actions to the MDL, *Stellman v. Google LLC, et al.*, No. 5:22-cv-05273 (N.D. Cal.), and *Inform, Inc. v. Google LLC, et al.*, No. 1:19-cv-05362 (N.D. Ga.). *See* Transfer Orders, MDL No. 3010, ECF Nos. 227 and 228 (J.P.M.L. Feb. 1, 2023). Counsel for plaintiffs in these actions have already appeared in the MDL. Counsel for Mr. Stellman is also co-lead counsel for the Advertisers (Tina Wolfson of Ahdoot & Wolfson, PC). Counsel for Inform, Inc. is also counsel for the Newspaper Plaintiffs (John C. Herman and Serina M. Vash of Herman Jones LLP). Stellman admits that his claims "are premised exclusively on conduct that the MDL Court recently held does not support an antitrust claim against Google," namely Reserve Price Optimization. MDL No. 3010,

ECF No. 218-1.  Should Stellman intend to move forward with his complaint, Google will seek permission to move to dismiss.  *Inform* was filed over three years ago and has gone through multiple amended complaints, but counsel moved to transfer it only after the Eleventh Circuit remanded the case to district court to resolve Google's 12(b)(6) arguments in the first instance.  Google has filed a motion to dismiss the current *Inform* complaint.

\* \* \*

Over sixteen months ago, at the September 24, 2021 conference, the Court invited Plaintiffs to prepare and submit consolidated document requests and stated that, if Plaintiffs did so, "Google will not be able to say, My God, I just got this on Tuesday and it's going to take me months to figure out what's within the scope of this."  ECF No. 142 at 33:13-15.  Plaintiffs told the Court they would do so, ECF No. 141, but then did not.  At the same conference, the Court charged Plaintiffs with the responsibility to coordinate the drafting of an ESI Order, ECF No. 129 ¶ 4, but Plaintiffs dropped the ball.  *See* ECF No. 434 at 4-6.  At best, Plaintiffs have squandered the last sixteen months with the result that Google must now grapple with these complex ESI issues within the four month period that the Court has set for substantial completion of production.  At worst, Plaintiffs have chosen not to raise these issues until now for tactical reasons.

Respectfully submitted,

*/s/* Eric Mahr
Eric Mahr
FRESHFIELDS BRUCKHAUS DERINGER US LLP
700 13th Street, NW
10th Floor
Washington, DC 20005
Telephone: (202) 777-4545
Email: eric.mahr@freshfields.com

Justina K. Sessions
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2197
Email: jsessions@wsgr.com

*Counsel for Defendants Google LLC, Alphabet Inc., and YouTube LLC*

CC:  All Counsel of Record (via ECF)