# Exhibit E

**Google LLC Advertising Program Terms**

These Google LLC Advertising Program Terms ("**Terms**") are entered into by Google LLC ("**Google**") and the entity executing these Terms or that accepts these Terms electronically ("**Customer**"). These Terms govern Customer's participation in Google's advertising programs and services (i) that are accessible through the account(s) given to Customer in connection with these Terms or (ii) that incorporate by reference these Terms (collectively, "**Programs**"). **Please read these Terms carefully. They require the use of binding individual arbitration to resolve disputes rather than jury trials or class actions. If Customer wishes, Customer may opt out of the requirement to arbitrate disputes by following the instructions in Section 13(F) below within 30 days of the first acceptance date of any version of these Terms containing an arbitration provision.**

**1 Programs**. Customer authorizes Google and its affiliates to place Customer's advertising materials, feed data, and technology (collectively, "**Ads**" or "**Creative**") on any content or property (each a "**Property**") provided by Google or its affiliates on behalf of Google or, as applicable, a third party ("**Partner**"). Customer is solely responsible for all: (i) Ads, (ii) Ads trafficking or targeting decisions (e.g., keywords) ("**Targets**"), (iii) destinations to which Ads direct viewers (e.g., landing pages, mobile applications) along with the related URLs, waypoints, and redirects ("**Destinations**"), and (iv) services and products advertised on Destinations (collectively, "**Services**"). The Program is an advertising platform on which Customer authorizes Google and its affiliates to use automated tools to format Ads. Google and its affiliates may also make available to Customer certain optional Program features to assist Customer with the selection or generation of Targets, Ads, or Destinations. Customer is not required to authorize use of these optional features and, as applicable, may opt-in to or opt-out of usage of these features. However, if Customer uses these features, then Customer will be solely responsible for the Targets, Ads, and Destinations. Google and its affiliates or Partners may reject or remove a specific Target, Ad, or Destination at any time for any or no reason. Google and its affiliates may modify or cancel Programs at any time. Customer acknowledges that Google or its affiliates may participate in Program auctions in support of its own services and products. Some Program features are identified as "**Beta**" or as otherwise unsupported or confidential ("**Beta Features**"). Customer may not disclose any information from Beta Features or the terms or existence of any non-public Beta Features.

**2 Policies**. Customer is solely responsible for its use of the Programs (e.g., access to and use of Program accounts and safeguarding usernames and passwords) ("**Use**"). Program Use is subject to applicable Google policies available at google.com/ads/policies, and all other policies made available by Google to Customer, including Partner policies, and to the extent applicable, the Google EU User Consent Policy at privacy.google.com/businesses/userconsentpolicy (in each case, as modified from time to time, "**Policies**"). Customer also authorizes Google to modify Ads as described in Policies. In connection with the Program, Google will comply with the Google Privacy Policy available at google.com/policies/privacy (as modified from time to time). To the extent Program Use is within scope, Google and Customer agree, as applicable, to the (i) Google Ads Controller-Controller Data Protection Terms at privacy.google.com/businesses/controllerterms; or (ii) Google Ads Data Processing Terms at privacy.google.com/businesses/processorterms (collectively the "**EU Data Terms**"). Google will not modify the EU Data Terms, except as expressly permitted under the EU Data Terms. Customer will not, and will not authorize any third party to, (i) generate automated, fraudulent or otherwise invalid impressions, inquiries, clicks or conversions, (ii) conceal conversions for Programs where they are required to be disclosed, (iii) use any automated means or form of scraping or data extraction to access, query or otherwise collect Google advertising-related information from any Property except as expressly permitted by Google, or (iv) attempt to interfere with the functioning of the Programs. Customer will direct communications regarding Ads on Partner Properties under these Terms only to Google.

**3 Ad Serving**. (a) Customer will not provide Ads that contain or connect to malware, spyware, unwanted software or any other malicious code, or knowingly breach or circumvent any Program security measure. (b) Customer may utilize an Ad server solely for serving or tracking Ads under Programs that permit third-party Ad serving and only if the Ad server has been authorized by Google to participate in the Program. Google will implement Customer's Ad server tags so that they are functional. (c) For online display Ad impressions billed on a CPM or vCPM basis ("**Display Ads**"), if Google's applicable impression count ("**IC**") for a Program is higher than Customer's third-party Ad server ("**3PAS**") IC by more than 10% over the invoice period, Customer will

facilitate reconciliation efforts between Google and 3PAS. If this discrepancy is not resolved, Customer's sole remedy is to make a claim within 60 days after the invoice date ("**Claim Period**"). If Google determines that the claim is valid, then Google will issue to Customer advertising credits equal to (90% of Google's IC minus 3PAS's IC), multiplied by Google's reported campaign average CPM or vCPM, as applicable, over the invoice period. Any advertising credits issued must be used by Customer within 60 days of issuance ("**Use-By Date**") and Google may suspend Customer's permission to utilize that 3PAS provider and may suspend or void the effectiveness of the discrepancy resolution provisions of this Section for that 3PAS provider. Metrics from 3PAS whose Ad server tags are provided to Google will be used in the above discrepancy resolution calculations. Google may require that discrepancy records be provided directly by 3PAS to Google. Customer will not be credited for discrepancies caused by 3PAS's inability to serve Ads.

**4 Testing**. Customer authorizes Google and its affiliates to periodically conduct tests that may affect Customer's Use of Programs, including Ad formatting, Targets, Destinations, quality, ranking, performance, pricing, and auction-time bid adjustments. To ensure the timeliness and validity of test results, Customer authorizes Google to conduct such tests without notice or compensation to Customer.

**5 Ad Cancellation**. Unless a Policy, the Program user interface, or an agreement referencing these Terms (an "**IO**") provides otherwise, either party may cancel any Ad at any time before the earlier of Ad auction or placement, but if Customer cancels an Ad after a commitment date provided by Google (e.g., a reservation-based campaign), then Customer is responsible for any cancellation fees communicated by Google to Customer, and the Ad may still be published. Cancelled Ads will generally cease serving within 8 business hours or as described in a Policy or IO, and Customer remains obligated to pay all charges resulting from served Ads (e.g., fees based on conversion). Customer must effect cancellation of Ads (i) online through Customer's account, if the functionality is available, (ii) if this functionality is not available, with notice to Google via email to Customer's account representative, or (iii) if this functionality is not available and Customer does not have an account representative, with notice to Google via email to adwords-support@google.com. Customer will not be relieved of any payment obligations for Ads not submitted or submitted by Customer after the due date provided by Google. Google will not be bound by a Customer provided IO.

**6 Warranty, Rights, and Obligations**. Customer warrants that (a) Customer holds, and hereby grants Google, its affiliates and Partners, the rights in Ads, Destinations, and Targets for Google, its affiliates and Partners to operate the Google Programs (including, in the case of feed data, after Customer ceases to use the Programs), and (b) all information and authorizations provided by Customer are complete, correct and current. Customer authorizes Google and its affiliates to automate retrieval and analysis of, and create test credentials to access, Destinations for the purposes of the Programs. By providing any mobile or other telephone number to Google in connection with the Programs, Customer authorizes Google, its affiliates and their agents to call and send text messages (for which standard message and data rates may apply) to the provided telephone numbers, including by an automatic telephone dialing system, for purposes of the Programs. However, Google will not rely on this permission to initiate autodialed calls or text messages for marketing purposes. Customer further authorizes Google, its affiliates and their agents to send electronic mail to Customer for purposes of the Programs. Customer warrants that it is authorized to act on behalf of, and has bound to these Terms, each third party, if any, for which Customer advertises in connection with these Terms ("**Advertiser**") and any references to Customer in these Terms will also apply to Advertiser, as applicable. If for any reason Customer has not bound an Advertiser to these Terms, Customer will be liable for performing any obligation Advertiser would have had under these Terms had Advertiser been bound. If Customer is using a Program on its own behalf to advertise, for that use Customer will be deemed to be both Customer and Advertiser. Customer will provide Advertiser with reporting data no less than on a monthly basis, that discloses absolute dollars spent on Google and performance (at a minimum cost, clicks and impressions of users on the account of that Advertiser) in a reasonably prominent location. Google may, upon request of an Advertiser, share Advertiser-specific information with Advertiser.

**7 Make-Goods**. For reservation-based Display Ads, Google will deliver any agreed on aggregate number of Display Ads by the end of the campaign, but if Google fails to do so, then Customer's sole remedy is to make a claim during the Claim Period. If Google confirms the accuracy of the claim, then Google will not charge Customer for the undelivered Display Ads or, if Customer has already paid, at Google's reasonable discretion,

Google will provide for (i) advertising credits, which must be used by the Use-By Date, (ii) placement of the Display Ads in a position Google deems comparable within 60 days of Google's confirmation of the accuracy of the claim or (iii) an extension of the term of the campaign. Google cannot assure that any auction-based Ads will be delivered and therefore make-goods do not apply to auction-based Ads.

**8 Payment**. Customer will pay all charges incurred in connection with a Program, using a payment method approved by Google for that Customer (as modified from time to time), within a commercially reasonable time period specified by Google (e.g., in the Program user interface or IO). Late payments bear interest at the rate of 1.5% per month (or the highest rate permitted by law, if less). Charges are exclusive of taxes. Customer will pay (i) all taxes and other government charges and (ii) reasonable expenses and legal fees Google incurs in collecting late payments that are not disputed in good faith. Charges are based on the billing criteria under the applicable Program (e.g., based on clicks, impressions, or conversions). Any portion of a charge not disputed in good faith must be paid in full. No party may offset any payment due under these Terms against any other payment to be made under these Terms. Google may, in its sole discretion, extend, revise or revoke credit at any time. Google is not obligated to deliver any Ads in excess of any credit limit. If Google does not deliver Ads to the selected Targets or Destinations, then Customer's sole remedy is to make a claim for advertising credits within the Claim Period, after which Google will issue the credits following claim validation which must be used by the Use-By Date. Customer understands that third parties may generate impressions or clicks on Customer's Ads for prohibited or improper purposes and if that happens, Customer's sole remedy is to make a claim for advertising credits within the Claim Period, after which Google will issue the credits following claim validation, which must be used by the Use-By Date. TO THE FULLEST EXTENT PERMITTED BY LAW, (A) CUSTOMER WAIVES ALL CLAIMS RELATING TO ANY PROGRAM CHARGES UNLESS A CLAIM IS MADE WITHIN THE CLAIM PERIOD AND (B) THE ISSUANCE OF ADVERTISING CREDITS (IF ANY) IS AT GOOGLE'S REASONABLE DISCRETION AND IF ISSUED, MUST BE USED BY THE USE-BY DATE.

**9 Disclaimers**. TO THE FULLEST EXTENT PERMITTED BY LAW, GOOGLE, ON BEHALF OF ITSELF AND ITS PARTNERS AND AFFILIATES, DISCLAIMS ALL WARRANTIES, WHETHER IMPLIED, STATUTORY OR OTHERWISE, INCLUDING FOR NON-INFRINGEMENT, SATISFACTORY QUALITY, MERCHANTABILITY AND FITNESS FOR ANY PURPOSE, AS WELL AS ANY WARRANTIES ARISING OUT OF ANY COURSE OF DEALING OR USAGE OF TRADE. TO THE FULLEST EXTENT PERMITTED BY LAW, THE PROGRAMS AND GOOGLE AND PARTNER PROPERTIES ARE PROVIDED "AS IS," "AS AVAILABLE" AND "WITH ALL FAULTS," AND CUSTOMER USES THEM AT ITS OWN RISK. GOOGLE, ITS AFFILIATES, AND ITS PARTNERS DO NOT MAKE ANY GUARANTEE IN CONNECTION WITH THE PROGRAMS OR PROGRAM RESULTS. GOOGLE MAKES NO PROMISE TO INFORM CUSTOMER OF DEFECTS OR ERRORS.

**10 Limitation of Liability**. EXCEPT FOR SECTION 11 AND CUSTOMER'S BREACHES OF SECTIONS 3(A), 14(E) OR THE LAST SENTENCE OF SECTION 1, TO THE FULLEST EXTENT PERMITTED BY LAW REGARDLESS OF THE THEORY OR TYPE OF CLAIM: (a) GOOGLE, CUSTOMER, AND THEIR RESPECTIVE AFFILIATES WILL NOT BE HELD LIABLE UNDER THESE TERMS OR ARISING OUT OF OR RELATED TO THESE TERMS FOR ANY DAMAGES OTHER THAN DIRECT DAMAGES, EVEN IF THE PARTY IS AWARE OR SHOULD KNOW THAT SUCH OTHER TYPES OF DAMAGES ARE POSSIBLE AND EVEN IF DIRECT DAMAGES DO NOT SATISFY A REMEDY; AND (b) OTHER THAN CUSTOMER'S PAYMENT OBLIGATIONS UNDER THESE TERMS, GOOGLE, CUSTOMER, AND THEIR RESPECTIVE AFFILIATES WILL NOT BE HELD LIABLE FOR DAMAGES UNDER THESE TERMS OR ARISING OUT OF OR RELATED TO PERFORMANCE OF THESE TERMS FOR ANY GIVEN EVENT OR SERIES OF CONNECTED EVENTS IN THE AGGREGATE OF MORE THAN THE AMOUNT PAYABLE TO GOOGLE BY CUSTOMER UNDER THE TERMS IN THE THIRTY DAYS BEFORE THE DATE OF THE ACTIVITY FIRST GIVING RISE TO THE CLAIM.

**11 Indemnification**. Customer will defend and indemnify Google, its Partners, agents, affiliates, and licensors against all liabilities, damages, losses, costs, fees (including legal fees), and expenses relating to any third-party allegation or legal proceeding to the extent arising out of or related to Ads, Targets, Destinations, Services, Use or any breach of these Terms by Customer. Partners are intended third-party beneficiaries of this Section.

**12 Changes to Terms**. Google may make non-material changes to these Terms at any time without notice, but Google will provide advance notice of any material changes to these Terms. The Terms will be posted at google.com/ads/terms. Other than changes made under Section 13(G), the changes to the Terms will not apply retroactively and will become effective 7 days after posting. However, changes made for legal reasons will be effective immediately upon notice. Either party may terminate these Terms at any time with notice to the other party, but (i) campaigns not cancelled under Section 5 and new campaigns may be run and reserved and (ii) continued Program Use is, in each case, subject to Google's terms and conditions then in effect for the Programs (available at google.com/ads/terms). Google may suspend Customer's ability to participate in the Programs at any time. In all cases, the running of any Customer campaigns after termination is in Google's sole discretion.

**13 Dispute Resolution Agreement**.

**A. Arbitration of disputes**. Google, Customer, and Advertiser agree to arbitrate all disputes and claims between Google and Customer or between Google and Advertiser that arise out of or relate in any way to the Programs or these Terms. This agreement to arbitrate ("**Dispute Resolution Agreement**" or "**Section 13**") is intended to be broadly interpreted and includes, for example:

1. claims brought under any legal theory;
2. claims that arose before Customer or Advertiser first accepted any version of these Terms containing an arbitration provision;
3. claims that may arise after the termination of Customer's or Advertiser's Use of the Programs;
4. claims brought by or against Google, Google affiliates that provide the Programs to Customer or Advertiser, Google parent companies, and the respective officers, directors, employees, agents, predecessors, successors, and assigns of these entities; and
5. claims brought by or against Customer or Advertiser, the respective affiliates and parent companies of Customer or Advertiser, and the respective officers, directors, employees, agents, predecessors, successors, and assigns of these entities.

This Dispute Resolution Agreement does not preclude any party from seeking an individualized preliminary injunction or temporary restraining order until a claim is arbitrated, or from bringing an individualized action in small claims court, in any court that has jurisdiction; provided that, as limited by Section 13(C) below, the arbitrator will have exclusive jurisdiction to finally resolve claims not within the jurisdiction of a small claims court. Nor does this Dispute Resolution Agreement bar any party from bringing issues to the attention of federal, state, or local agencies.

Google, Customer, and Advertiser agree that, by entering into this arbitration agreement, all parties are waiving their respective rights to a trial by jury or to participate in a class or representative action. The Federal Arbitration Act governs the interpretation and enforcement of this Dispute Resolution Agreement. With respect to all disputes or claims that arise out of or relate in any way to the Programs or these Terms, this Dispute Resolution Agreement supersedes any contrary terms regarding dispute resolution in any other agreement between the parties.

**B. Notice of disputes**. If any party intends to seek arbitration of a dispute, that party must provide the other party with notice in writing ("**Notice of Dispute**"). This Notice of Dispute to Google must be sent to the following address ("**Google's Notice Address**"):

Google LLC

Legal Department - Google Ads Arbitration

c/o Corporation Service Company

2710 Gateway Oaks Drive, Suite 150N

Sacramento, CA 95833

Google will send notice to Customer or Advertiser at the e-mail and mailing addresses associated with Customer's account. Customer and Advertiser each agree to receive notice at those addresses. In addition, Customer agrees to notify Advertiser promptly of any such notice. Customer's or Advertiser's Notice of Dispute to Google must provide, as applicable, (a) Customer's or Advertiser's name and mailing address, (b) the email address Customer or Advertiser uses to log into Customer's account, (c) the Google Ads Customer ID(s), (d) the Case Number(s) assigned by Google to track previous attempts to resolve the dispute, (e) a description of the dispute, including identification of the relevant campaigns and/or AdGroups, and (f) a statement of the relief requested. If the parties are unable or unwilling to resolve the dispute within 60 days after the Notice of Dispute is submitted, the dispute will be resolved by arbitration upon one party sending the other party or parties and the American Arbitration Association ("**AAA**") a demand for arbitration. For the avoidance of doubt, no arbitration demand may be submitted until at least 60 days after submission of the Notice of Dispute. Unless the parties agree otherwise, Customer's or Advertiser's demand for arbitration must be sent to Google's Notice Address and entitled "Demand for Arbitration." Google will send demands for arbitration to Customer or Advertiser at the e-mail and mailing addresses associated with Customer's account.

**C. Arbitration procedures**. The arbitration will be governed by the AAA's Commercial Arbitration Rules ("**AAA Rules**"), as modified by these Terms, and will be administered by the AAA. Unless the parties agree otherwise, the Expedited Procedures of the AAA Rules will apply to any claim of $75,000 or less. The AAA Rules are available online at adr.org. If the AAA is unavailable, the parties will agree to another arbitration provider or the court will appoint a substitute. To the fullest extent permitted by applicable law, any evidentiary submissions made in arbitration will be maintained as confidential in the absence of good cause for its disclosure. The arbitrator's award will be maintained as confidential only to the extent necessary to protect either party's trade secrets or proprietary business information or to comply with a legal requirement mandating confidentiality.

Unless the parties agree otherwise, any arbitration hearings will take place in the county (or parish) of Customer's principal place of business (or, if the arbitration is commenced by Advertiser, the county (or parish) of Advertiser's principal place of business). If the value of Customer's or Advertiser's claim is $25,000 or less, Customer or Advertiser may choose whether the arbitration will be conducted solely on the basis of documents submitted to the arbitrator, by telephone, or by an in-person hearing. If the value of Customer's or Advertiser's claim exceeds $25,000, the right to a hearing will be determined by the AAA Rules. Regardless of the manner in which the arbitration is conducted, the arbitrator will issue a reasoned written decision sufficient to explain the essential findings and conclusions on which the decision is based. All issues are for the arbitrator to decide, except that only a court of competent jurisdiction may decide issues relating to the scope and enforceability of this arbitration provision, the arbitrability of disputes, or the interpretation of Section 13(E). The arbitrator will not be bound by rulings in other arbitrations in which Customer or Advertiser is not a party. The arbitrator can award the same individualized damages and relief that a court can award. Judgment on the award may be entered by any court having jurisdiction.

**D. Costs of arbitration**. The AAA's fee schedule is subject to change and may be found in the AAA Rules (available online at adr.org or by calling the AAA at 1-800-778-7879). Google will pay all AAA filing, administrative, and arbitrator fees for any arbitration that Google commences. If Customer or Advertiser commenced arbitration at least 60 days after submitting the Notice of Dispute to Google, and the value of Customer's or Advertiser's claim is $75,000 or less, Google will pay Customer's or Advertiser's share of any such AAA fees. If the value of Customer's or Advertiser's claim is between $75,000 and $300,000, Customer's or Advertiser's share of any such fees will be capped at $200 (unless the law of Customer's or Advertiser's state requires Google to pay all such fees). If the value of Customer's or Advertiser's claim exceeds $300,000, the allocation of AAA fees will be governed by the AAA Rules. But the arbitrator may reallocate the fees to require Google to pay all fees if Customer or Advertiser cannot afford to pay them. If, however, the arbitrator finds that either the substance of Customer's or Advertiser's claim or the relief sought is frivolous or brought for an improper purpose (as measured by the standards in Federal Rule of Civil Procedure 11(b)), then the payment of all AAA fees will be governed by the AAA Rules. In such cases, the arbitrator may direct Customer or Advertiser to reimburse Google for amounts that Google paid on Customer's or Advertiser's behalf.

**E. No class or representative arbitration**. The arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim without affecting other Google users or other customers or advertisers. CUSTOMER, ADVERTISER, AND GOOGLE AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, REPRESENTATIVE, OR PRIVATE ATTORNEY GENERAL PROCEEDING. Further, unless all affected parties agree otherwise, the arbitrator may not consolidate more than one Advertiser's or Customer's claims, and may not otherwise preside over any form of a representative or class proceeding. If a court decides that applicable law precludes enforcement of any of this subsection's limitations as to a particular claim for relief, then that claim (and only that claim) must be severed from the arbitration and may be brought in court.

**F. 30-day opt out period**. Customer (both for itself and for any Advertiser that Customer represents) and Advertiser have the right to opt out of this Dispute Resolution Agreement. A Customer or Advertiser who does not wish to be bound by this Dispute Resolution Agreement (including its waiver of class and representative claims) must notify Google as set forth below within 30 days of the first acceptance date of any version of these Terms containing an arbitration provision (unless a longer period is required by applicable law). Customer's or Advertiser's notice to Google under this subsection must be submitted via webform available at adwords.google.com/nav/arbitration. An opt-out notice does not revoke or otherwise affect any previous arbitration agreement between Customer and Google or between Advertiser and Google.

**G. Future changes to Dispute Resolution Agreement**. If Google makes any changes to this Dispute Resolution Agreement (other than a change to Google's Notice Address), Customer or Advertiser may reject any such change by notifying Google via webform as set forth in Section 13(F) within 30 days of the change. It is not necessary to submit a rejection of the future change to this Dispute Resolution Agreement if Customer or Advertiser had properly opted out of arbitration in compliance with the requirements of Section 13(F). By rejecting a future change, Customer or Advertiser is agreeing that it will arbitrate any dispute in accordance with the language of this Dispute Resolution Agreement, as modified by any changes that Customer or Advertiser did not reject.

**14 Miscellaneous**. (a) ALL CLAIMS ARISING OUT OF OR RELATING TO THESE TERMS OR THE PROGRAMS WILL BE GOVERNED BY CALIFORNIA LAW, EXCLUDING CALIFORNIA'S CONFLICT OF LAWS RULES, EXCEPT TO THE EXTENT THAT CALIFORNIA LAW IS CONTRARY TO OR PREEMPTED BY FEDERAL LAW. (b) EXCEPT AS PROVIDED IN SECTION 13, ALL CLAIMS ARISING OUT OF OR RELATING TO THESE TERMS OR THE PROGRAMS WILL BE LITIGATED EXCLUSIVELY IN THE FEDERAL OR STATE COURTS OF SANTA CLARA COUNTY, CALIFORNIA; THE PARTIES CONSENT TO PERSONAL JURISDICTION IN THESE COURTS. (c) Customer will not seek an injunction based on patent infringement in connection with the Programs in any proceeding filed while these Terms are in effect, and for one year after any termination of these Terms. (d) These Terms are the parties' entire agreement relating to their subject matter and supersede any prior or contemporaneous agreements on those subjects. (e) Customer may not make any public statement regarding the relationship contemplated by these Terms (except when required by law). (f) Except as provided in Section 13, all notices of termination or breach must be in writing and addressed to the other party's Legal Department (or if it is not known if the other party has a Legal Department then to the other party's primary contact or other address on file). The email address for notices being sent to Google's Legal Department is legal-notices@google.com. Except as provided in Section 13, all other notices to Customer will be in writing and sent to an email address associated with Customer's account. Except as provided in Section 13, all other notices to Google will be in writing and addressed to Customer's primary contact at Google or other method made available by Google. Notice will be treated as given on receipt, as confirmed by written or electronic means. These notice requirements do not apply to legal service of process, which is instead governed by applicable law, nor do they apply to Section 13. (g) Except for modifications to these Terms by Google under Section 12, any amendment must be agreed to by both parties and must expressly state that it is amending these Terms. Neither party will be treated as having waived any rights by not exercising (or by delaying the exercise of) any rights under these Terms. Except as provided in Section 13(E), if any provision of these Terms is found unenforceable, that provision will be severed and the balance of the Terms will

remain in full force and effect. (h) Neither party may assign any of its rights or obligations under these Terms without the written consent of the other party, except to an affiliate but only where (I) the assignee agrees in writing to be bound by these Terms, (II) the assigning party remains liable for obligations under these Terms if the assignee defaults on them, and (III) the assigning party has notified the other party of the assignment. Any other attempt to transfer or assign is void. (i) Except as provided in Sections 11 and 13, there are no third-party beneficiaries to these Terms. (j) These Terms do not create any agency, partnership or joint venture among the parties. (k) Sections 1 (last sentence only) and 8 through 14 will survive termination of these Terms. (l) Except for payment obligations, no party or its affiliates are liable for failure or delay in performance to the extent caused by circumstances beyond its reasonable control.

*November 1, 2019*