UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE: GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION** | **No. 1:21-MD-3010 (PKC)** |

*This Motion Relates To:*

| | |
|---|---|
| **SPX Total Body Fitness LLC, d/b/a The Studio Empower, on behalf of itself and all others similarly situated.** | **No. 1:21-cv-06870-PKC** |
| *Plaintiff,* | |
| -against- | |
| **GOOGLE LLC.,** | |
| *Defendant.* | |
| **SKINNYSCHOOL LLC d/b/a MARIA MARQUES FITNESS and MINT ROSE DAY SPA LLC, on behalf of themselves and all others similarly situated.** | **No. 1:21-cv-07045-PKC** |
| *Plaintiffs,* | |
| -against- | |
| **GOOGLE LLC.,** | |
| *Defendant.* | |

**DEFENDANT GOOGLE LLC'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS
SPX PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Fax: (202) 777-4555

WILSON SONSINI GOODRICH &
ROSATI
Professional Corporation
One Market Plaza, Spear Tower
Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Fax: (415) 947-2099

AXINN, VELTROP & HARKRIDER LLP
114 West 47th Street
New York, NY 10036
Telephone: (212) 728-2200
Fax: (212) 728-2201

*Counsel for Defendant Google LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

TABLE OF ABBREVIATIONS ................................................................................................... iv

INTRODUCTION ...........................................................................................................................1

BACKGROUND .............................................................................................................................2

LEGAL STANDARD......................................................................................................................2

ARGUMENT ..................................................................................................................................3

I.      SPX PLAINTIFFS' COMPLAINT RESTS ENTIRELY ON A SECTION 1
CLAIM THAT HAS ALREADY BEEN DISMISSED FROM THE STATES'
CASE. ................................................................................................................................3

      A.     SPX Plaintiffs Fail to Allege that Meta Agreed Not to Support Header
Bidding...................................................................................................................3

      B.     Meta's "Win-Rate" Was Not Anticompetitive Under The Rule of Reason. ...........6

II.     SPX PLAINTIFFS LACK ANTITRUST STANDING BECAUSE THEY DID
NOT BUY ANY ADVERTISING COVERED BY THE NBA........................................9

      A.     SPX Plaintiffs Do Not Allege Antitrust Injury. .....................................................9

      B.     SPX Plaintiffs Are Not Efficient Enforcers. .........................................................11

CONCLUSION..............................................................................................................................13

## TABLE OF AUTHORITIES

**Cases**                                                                                             **Page(s)**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..............................................................................................2, 3, 5

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,*
    459 U.S. 519 (1983)..............................................................................................11, 12

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..............................................................................................2, 5

*Broadway Delivery Corp. v. United Parcel Serv. of Am., Inc.,*
    651 F.2d 122 (2d Cir. 1981)..............................................................................8

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
    429 U.S. 477 (1977)..............................................................................................9

*Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.,*
    996 F.2d 537 (2d Cir. 1993)..............................................................................7

*Copy-Data Sys., Inc. v. Toshiba Am., Inc.,*
    663 F.2d 405 (2d Cir. 1981)..............................................................................7

*Gatt Commc'ns., Inc. v. Pmc Assocs.,*
    711 F. 3d 68 (2d Cir. 2013)..............................................................................9, 13

*Gucci Am., Inc. v. Alibaba Grp. Holding Ltd.,*
    2016 WL 6110565 (S.D.N.Y. Aug. 4, 2016) ..............................................2, 3

*Harry v. Total Gas & Power N. Am., Inc.,*
    889 F.3d 104 (2d Cir. 2018)..............................................................................9, 10

*In re Aluminum Warehousing Antitrust Litig.,*
    833 F.3d 151 (2d Cir. 2016)..............................................................................9, 11

*In re Interest Rate Swaps Antitrust Litig.,*
    261 F. Supp. 3d 430 (S.D.N.Y. 2017)..............................................................5

*IQ Dental Supply, Inc. v. Henry Schein, Inc.,*
    924 F.3d 57 (2d Cir. 2019)..............................................................................12, 13

*Mayor & Council of Balt. v. Citigroup, Inc.,*
    709 F.3d 129 (2d Cir. 2013)..............................................................................4, 6

*Paycom Billing Servs. v. Mastercard Int'l.,*
    467 F. 3d 283 (2d Cir. 2006)..............................................................................13

*Reading Indus., Inc. v. Kennecott Copper Corp.,*
    631 F.2d 10 (2d Cir. 1980)..............................................................................12

*Tops Mkts., Inc. v. Quality Mkts., Inc.*,
    142 F.3d 90 (2d Cir. 1998)............................................................................................7, 8

*United States v. Google LLC*,
    1:23-cv-00108 (E.D. Va. Jan. 24, 2023), ECF No. 1 .......................................................3

**Statutes**

15 U.S.C. § 1 ...........................................................................................................1, 3, 9, 11

15 U.S.C. § 2 ..........................................................................................................................11

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................1, 2

**Miscellaneous**

European Commission, *Daily News 19/12/22*,
    https://ec.europa.eu/commission/presscorner/detail/en/mex_22_7832 (last
    accessed February 1, 2023).............................................................................................3

## TABLE OF ABBREVIATIONS

| Term | Definition |
|---|---|
| AdX | Google's Ad Exchange |
| Complaint | Consolidated Amended Class Action Complaint, ECF No. 406 |
| DFP | DoubleClick for Publishers |
| EB | Google's Exchange Bidding |
| FAN | Facebook Audience Network |
| Google | Google LLC |
| MTD Op. | Opinion and Order, ECF No. 308 |
| NBA | 2018 Network Bidding Agreement between Google and Facebook |
| SPX Plaintiffs | SPX Total Body Fitness LLC, SkinnySchool LLC, and Mint Rose Day Spa LLC |
| States | State Plaintiffs |
| States' TAC | State Plaintiffs' Third Amended Complaint, ECF No. 195 |

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Google LLC moves for an order dismissing the Consolidated Amended Class Action Complaint ("Complaint"), ECF No. 406, filed by SPX Total Body Fitness LLC, SkinnySchool LLC, and Mint Rose Day Spa LLC ("SPX Plaintiffs").

## INTRODUCTION

SPX Plaintiffs base their Complaint on a single claim stemming from a 2018 agreement between Google and Meta Platforms, Inc. (formerly Facebook, Inc.).  In doing so, SPX Plaintiffs bring a cause of action no longer viable in this case—and they are not even the correct plaintiffs to bring it.

SPX Plaintiffs recycle the States' Section 1 arguments, all of which already have been rejected by this Court.  SPX Plaintiffs challenge a Network Bidding Agreement ("NBA") that poses no harm to competition.  SPX Plaintiffs' Complaint falls short on this basis alone.

Further, SPX Plaintiffs do not have standing to bring this action.  SPX Plaintiffs fundamentally confuse advertising *on Meta* with advertising on *third-party websites* via Meta's Audience Network.  The NBA relates exclusively to the latter, while SPX Plaintiffs' asserted injury relates exclusively to the former.  SPX Plaintiffs assert injury from purportedly higher prices for ads *on Meta*, but they fail to allege facts showing that the NBA had any effect on those prices.  SPX Plaintiffs therefore fail to plausibly plead injury from the challenged agreement.

## BACKGROUND[1]

SPX Plaintiffs' claim concerns the NBA entered into between Google and Meta.  Compl. ¶¶ 357-63.  The NBA involves Meta's Advertising Network (then known as "FAN").  *Id.* ¶ 169. According to SPX Plaintiffs, FAN is an advertising network by which third-party publishers sell inventory to advertisers.  *Id.* ¶¶ 67, 169-70.  SPX Plaintiffs each "purchased display advertisements on Facebook[.]" *Id.* ¶¶ 23-25.  They purport to represent a class of advertisers who purchased ads "on or over Facebook." *Id.* ¶ 343.  No plaintiff claims to have purchased display advertising by using any Google tools.  *And no plaintiff claims to have used FAN*, which is all this case is about.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To do so, the complaint must make factual allegations sufficient to "raise a reasonable expectation that discovery will reveal evidence," *Twombly*, 550 U.S. at 556, that would "allow[] the court to draw the reasonable inference that the defendant is liable." *Iqbal*, 556 U.S. at 678.  It is "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief,'" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations omitted).  "In assessing the sufficiency of the complaint, a court must disregard legal conclusions, because they are not entitled to the presumption of truth." *Gucci Am., Inc. v. Alibaba Grp. Holding Ltd.*, 2016

---

[1] For purposes of this motion to dismiss, Google assumes the truth of the well-pleaded allegations in the Amended Complaint.  Should any part of SPX Plaintiffs' case survive this motion, Google expects to contest many of those allegations in the future.

WL 6110565, at *4 (S.D.N.Y. Aug. 4, 2016) (Castel, J.).  Rather, the Court "must examine the well-pleaded factual allegations 'and then determine whether they plausibly give rise to an entitlement to relief.'"  *Id*.  (quoting *Iqbal*, 556 U.S. at 679).

## ARGUMENT

I.  **SPX PLAINTIFFS' COMPLAINT RESTS ENTIRELY ON A SECTION 1 CLAIM THAT HAS ALREADY BEEN DISMISSED FROM THE STATES' CASE.**

SPX Plaintiffs build their entire action around a claim that this Court has already dismissed in the States' case.[2]  Like the States, SPX Plaintiffs claim that Meta and Google agreed to restrict Meta's use of header bidding, but the Complaint asserts no facts to support that allegation.  Moreover, SPX Plaintiffs fail to establish under the rule of reason that the so-called "win-rate" provision was anticompetitive.  The Court held that, with respect to the States' Section 1 claim based on Google's agreements with Meta, the States failed to "plausibly allege . . . an adverse effect on competition as a whole in a relevant market."  *See* MTD Op., ECF No. 308 ("MTD Op."), at 34.  In accordance with the Court's previous ruling, SPX Plaintiffs' Section 1 claim should be dismissed.

### A.  SPX Plaintiffs Fail to Allege that Meta Agreed Not to Support Header Bidding.

Despite SPX Plaintiffs' claim, the NBA does not prohibit Meta from using header bidding.  SPX Plaintiffs' argument is substantially the same as the one made by the States:  that to "kill" header bidding, Google encouraged Meta to abandon header bidding and instead support

---

[2] On December 19, 2022, the European Commission announced that it closed an investigation it had been conducting into the NBA without filing any charges after "a careful assessment of all relevant evidence, including information received from Google, Meta and other companies active in the tech sector", finding that the "evidence did not confirm [the Commission's] initial concerns" with the agreement.  *See* European Commission, *Daily News 19/12/22* (Dec. 19, 2022), https://ec.europa.eu/commission/presscorner/detail/en/mex_22_7832 (last accessed February 1, 2023).  Additionally, the United States Department of Justice's recent complaint against Google does not include any claims for relief based on the NBA.  Compl., *United States v. Google LLC*, 1:23-cv-00108 (E.D. Va. Jan. 24, 2023), ECF No. 1.

Google's Exchange Bidding program.  *Compare* States' TAC, ECF No. 195, ¶¶ 413, 418, 420, *with* Compl. ¶¶ 228-29.  This claim fails because, as this Court noted in the States' case, SPX Plaintiffs "do not plausibly allege joint or concerted action between Google and Facebook to restrict Facebook's use of header bidding."  *See* MTD Op., at 22.

SPX Plaintiffs offer no allegations from which an agreement to limit Meta's use of header bidding could be inferred.  To properly allege an illegal agreement, a plaintiff may "assert direct evidence that the defendants entered into an agreement in violation of the antitrust laws." *Mayor & Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013).  Or, "a complaint may . . . present circumstantial facts supporting the *inference* that a conspiracy existed." *Id.* (emphasis in original).  SPX Plaintiffs' complaint offers neither.

SPX Plaintiffs offer no direct evidence that Google and Meta agreed to limit Meta's use of header bidding.  Contrary to SPX Plaintiffs' suggestion, Compl. ¶¶ 203-08, nothing in the NBA requires Meta to withdraw its support for other technologies.  In fact, the NBA explicitly allowed Meta to continue using other non-Google services.  As the Court made clear, the NBA does not expressly restrict Meta from developing or enhancing a competing product, nor is it an exclusive agreement.  MTD Op., at 21; *see also* NBA, ECF No. 221-1, at § 2.4(e) ("[T]he foregoing does not restrict Facebook from developing or enhancing a product or service that competes with DoubleClick for Publishers, AdX, or AdMob . . . ."); NBA § 19.10 (the NBA "is not an exclusive agreement.").

Nor do SPX Plaintiffs allege any circumstantial evidence that could give rise to an inference of an unlawful agreement.  Attempting to support an inference of collusion, SPX Plaintiffs rehash the States' allegations regarding Google and Meta's negotiations.  *Compare* States' TAC ¶ 420, *with* Compl. ¶¶ 211-16.  But as this Court recognized in the States' case,

4

"[n]owhere in these internal memos is there a hint that Facebook was offering a commitment to substantially curtail use of header bidding or that Google was insisting on such a commitment." MTD Op., at 24. Moreover, SPX Plaintiffs do not sufficiently allege the NBA's effect on Meta's use of header bidding—a defect also found in the States' case. *See* MTD Op., at 25. They make empty assertions that "as a result" of the NBA, Meta "substantially curtailed its use of header bidding." Compl. ¶¶ 208, 320. But SPX Plaintiffs offer no facts to support those allegations. *See Iqbal*, 556 U.S. at 678 (pleading "labels and conclusions" without "factual enhancement" is insufficient to state a claim (citing *Twombly,* 550 U.S. at 555, 557)).

SPX Plaintiffs try to suggest that the NBA's alleged "special advantages" for Meta imply a "*quid pro quo*" to kill header bidding. Compl. ¶¶ 227-31. That argument, too, has already been rejected. *See* MTD Op., at 21-22. SPX Plaintiffs, like the States before them, outline the alleged benefits Meta received from the agreement, including longer timeouts to recognize users and return bids, direct billing with publishers, information about potential spam, improved match rates that allow Meta to recognize auction users and win bids more often, and restrictions on Google's use of Meta's bid data. Compl. ¶¶ 237-61. Both SPX Plaintiffs and the States argued that Google gave Meta a "leg up" in its auctions, "help[ed Meta's] ad network FAN beat the competition[,]" States' TAC ¶ 413, and effectively "exclud[ed] rival bidders," *id.* ¶ 441. *Compare* States' TAC ¶¶ 413, 441, *with* Compl. ¶¶ 295, 320.

But SPX Plaintiffs do not show that these "favorable terms" are anything more than Google seeking to maximize its business with Meta, a procompetitive rationale. *See* MTD Op., at 22, 25-26. There can be no inference of collusion if a company's conduct "made perfect business sense, there are obvious alternative explanations for the facts alleged, or the alleged facts suggest competition at least as plausibly as they suggest anticompetitive conspiracy." *In re*

*Interest Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 462 (S.D.N.Y. 2017) (internal citations and alterations omitted).   As this Court observed, Meta and Google each had a unilateral self-interest to enter the agreement—Google, to secure a large customer, and Meta, to receive favorable terms.  MTD Op., at 25 ("Google's actions are consistent with a firm seeking to secure the business of a very large potential customer by offering it favorable terms.").  "Offering favorable terms to a large potential customer, such as Facebook . . . does not convert the agreement into an unreasonable restraint of trade[,]" *id.* at 26, but instead, is "entirely consistent with competition[,]" *id.* at 25.  This Court already concluded that it "made perfect business sense" for Google and Meta to agree to the terms of the NBA absent any conspiracy to allocate markets or withdraw support for rivals.  *See* MTD Op., at 22 (quoting *Mayor & City Council of Balt.*, 709 F.3d at 138); *see also* MTD Op., at 25-26.  Therefore, SPX Plaintiffs do not sufficiently allege any collusive agreement to thwart header bidding.

**B. Meta's "Win-Rate" Was Not Anticompetitive Under The Rule of Reason.**

Like the States, SPX Plaintiffs argue that Google and Meta agreed to limit competition between each other by "fixing a minimum share of impressions that Facebook will win in developers' auctions."  *Compare* States' TAC ¶ 437, *with* Compl. ¶ 276.  SPX Plaintiffs allege that the companies agreed that Meta would identify the end user for at least 80 percent of Google's auctions, would bid on at least 90 percent of those auctions, and would win at least 10 percent of all such auctions.  Compl. ¶¶ 278-80.  The States alleged the same.  States' TAC ¶ 438.

The Court concluded that the NBA should be analyzed under a rule-of-reason analysis because it is "principally a vertical agreement[.]"  MTD Op., at 28.  The Court looked to the structure of the auction, where Meta is a provider of an in-app network and participates in the auctions that Google offers.  *Id.*  It concluded that Google and Meta have a "predominately

vertical" relationship, and thus the rule of reason analysis is appropriate. *Id.* at 29.  Despite this

ruling, SPX Plaintiffs maintain that Google and Meta are "horizontal competitors[.]"  *See* SPX

Plaintiffs' Response to Google's Pre-Motion Letter, ECF No. 380, at 4.  While the Court

recognized the NBA's "potential horizontal consequences[,]" MTD Op., at 28, it found the *per se*

rule to be inappropriate given Google and Meta's "hybrid" relationship.  *Id.* at 29 (discussing

*Copy-Data Sys., Inc. v. Toshiba Am., Inc.*, 663 F.2d 405, 411 (2d Cir. 1981)).

The rule of reason requires a plaintiff to show "an *actual* adverse effect on competition as

a whole in the relevant market[.]"  *Capital Imaging Assocs., P.C. v. Mohawk Valley Med.*

*Assocs., Inc.*, 996 F.2d 537, 543 (2d Cir. 1993) (emphasis in original) (citation omitted); *see also*

MTD Op., at 30.  The plaintiff may demonstrate such effect through (i) actual harm, such as

increased prices, or (ii) market power "plus some other ground for believing that the challenged

behavior could harm competition[.]"  *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 96-97

(2d Cir. 1998); *see also* MTD Op., at 30.

Using a rule-of-reason analysis, this Court determined that the win-rate provision is not

anticompetitive.  First, the States failed to show actual harm to competition.  According to the

Court, the win-rate provision does not guarantee the outcome of any auction, but ensures that

Meta submits competitive bids.  MTD Op., at 31-32.  "Rather than insulate Google's in-app

network from competition, [the NBA] promotes competition with Google's in-app network by

bringing in a new competing bidder."  *Id*. at 32.  Moreover, the States failed to offer any

allegation of "side deals, winks or nods" to support an inference of collusive bidding.  *Id*.

Therefore, "[t]he win rate provision cannot be reasonably read to require collusive bidding or

any other form of distorted bidding by Google or Facebook."  *Id*. at 31.  Second, the States did

not plausibly allege Google's market power or ability to harm competition in an in-app

mediation tool market or in-app networks market.  MTD. Op. at 33-34.

SPX Plaintiffs do not allege any new facts about the win-rate provision that address the

failings of the States' case.  *Compare* States' TAC ¶¶ 437-47, *with* Compl. ¶¶ 276-306.  As to

actual harm to competition, SPX Plaintiffs do not plausibly explain how the provision

contributed to a "collusive scheme" to exclude rival networks and raise prices for in-app

impressions.  Compl. ¶ 303.  Nor do they offer evidence of an implicit agreement between Meta

and Google to distort bidding.

Moreover, SPX Plaintiffs do not cure the defects in market-power and competitive-

effects allegations that doomed the States' claim.  They allege that, in an in-app ad networks

market, "Google was by far the dominant ad network, with approximately 25% share." Compl. ¶

171.  25% is far below the share at which courts infer monopoly power.  *See Tops Mkts.*, 142

F.3d at 99 ("[A]market share below 50% is rarely evidence of monopoly power, a share between

50% and 70% can occasionally show monopoly power . . ." (citing *Broadway Delivery Corp. v.

United Parcel Serv. of Am., Inc.*, 651 F.2d 122, 129 (2d Cir. 1981))).  For the in-app mediation

tool market, SPX Plaintiffs reference in passing that "60 percent of all indirect in-app

impressions are sold" via Google's auction house.  Compl. ¶ 303.  The States made the same

allegation, States' TAC ¶ 228, and the Court found that the States "allege[d] in a conclusory

fashion that Google has market power in the in-app mediation tool market, but [have] failed to

plausibly allege that Google has the ability to control prices or exclude competition."  *See* MTD

Op., at 33.  And also like the States, SPX Plaintiffs fail to allege harm to competition in an in-

app mediation tool market.  *See id.*  Namely, SPX Plaintiffs do not explain why allegedly lower

prices paid to developers, Compl. ¶ 276, would lead to inflated prices to advertisers, as opposed to higher margins.  MTD Op., at 33-34.

Because SPX Plaintiffs fail to establish a plausible inference of collusion or marketwide harm, their Section 1 claim should be dismissed.

## II.   SPX PLAINTIFFS LACK ANTITRUST STANDING BECAUSE THEY DID NOT BUY ANY ADVERTISING COVERED BY THE NBA.

To establish antitrust standing, a private plaintiff must allege that it (i) suffered an antitrust injury, and (ii) is a proper plaintiff (*i.e.*, "efficient enforcer") to bring the alleged antitrust claims.  *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 157 (2d Cir. 2016); *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 115 (2d Cir. 2018).  Taking the complaint's assertions as true, SPX Plaintiffs neither suffered an antitrust injury nor are the proper plaintiffs to pursue the alleged antitrust violation.

### A.  SPX Plaintiffs Do Not Allege Antitrust Injury.

To establish antitrust injury, a plaintiff must demonstrate "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).  Courts in the Second Circuit "compare the anticompetitive effect of the specific practice at issue to the actual injury the plaintiff alleges."  *See., e.g., Gatt Commc'ns., Inc. v. Pmc Assocs.,* 711 F. 3d 68, 76 (2d Cir. 2013) (internal quotation marks omitted); *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 115 (2d Cir. 2018).  "Generally, only those that are participants in the defendants' market can be said to have suffered antitrust injury[,]" but "parties whose injuries are inextricably intertwined with the injuries of market participants" may also allege injury.  *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d at 158 (internal quotation marks omitted).

SPX Plaintiffs neither participate in any relevant market nor suffered injuries "inextricably intertwined" with injuries of market participants.  SPX Plaintiffs vaguely reference the relevant antitrust markets as "the relevant online display advertising markets, including the sell-side market for ad servers in the United States[,]" Compl. ¶ 359, a "market for open display and in-app inventory[,]" Compl. ¶ 272, and an "ad exchange market[,]" Compl. ¶ 327.  Yet, SPX Plaintiffs fail to establish antitrust injury in any potentially relevant market because they allege no facts indicating that they were harmed by the NBA, the sole basis of their Complaint.  *See Harry*, 889 F.3d at 116 (finding no standing because "[t]here is no actual injury the Plaintiffs allege, let alone a connection between Defendants' unlawful conduct and that non-injury").

According to SPX Plaintiffs, the NBA concerned the ad network known as FAN, which facilitates ad placement on third-party properties—***not*** on Facebook.com.  *See* Compl. ¶ 176 (FAN submitted bids to open-web publishers); *id.* ¶ 218 (citing Google document about Google competing with FAN for third-party inventory).  SPX Plaintiffs never claim that they used FAN or that they otherwise purchased display advertising on third-party properties through Meta or any other service.  Rather, SPX Plaintiffs all state that they bought advertisements on Meta itself (and not using Google's ad tools).  *Id*. at ¶¶ 23-25; *see also* ECF No. 380, at 3 ("The SPX Plaintiffs only had transactions with Facebook[.]").  They insist that the NBA restrained competition and led to higher prices for those who advertised on Meta.  ECF No. 380, at 3; *see also* Compl. ¶ 353 (alleging that class members "paid artificially inflated prices for advertising on Facebook").  But SPX Plaintiffs do not make any plausible connection between the NBA—the sole basis of its antitrust claim—and purported inflated prices for advertisers *who bought ads on Facebook.com*.  SPX Plaintiffs fail to allege that the NBA had anything to do with buying ads

on Meta's owned and operated properties.  Nor can they, as the NBA concerned bidding on third-party advertising inventory.

The Complaint alleges that "[a]dvertisers . . . migrated to header bidding in vast numbers because it helped them to optimize the purchase of inventory through the most cost-effective exchange[,]" Compl. ¶ 141, and "allowed advertisers to transact through an exchange of their choosing," Compl. ¶ 153.  But SPX Plaintiffs never claim that they bought advertising through any exchange.  Nor do SPX Plaintiffs explain how they could have been affected by FAN foregoing header bidding when they do not allege that they ever used FAN or header bidding in the first place.  The Complaint also alleges that the terms of the agreement were "to the detriment of other auction participants."  *Id*. ¶ 325.  But SPX Plaintiffs never allege that *they* participated in any affected auction.  SPX Plaintiffs also include a grab-bag of complaints about Google's auctions under the heading "Anticompetitive Effects," *id*. at Part VIII & ¶¶ 322-42, but these allegations (about, for example, "supra-competitive fees," "Last Look", Google's take rate) are not related to the NBA at all.[3]  And even if they were, SPX Plaintiffs never allege that they suffered the effects of any of these alleged practices because SPX Plaintiffs never claim to have participated in any auction involving Google's ad exchange.

**B.  SPX Plaintiffs Are Not Efficient Enforcers.**

In addition to failing to allege antitrust injury, SPX Plaintiffs do not establish that they are efficient enforcers of a claim relating to the NBA.  An "efficient enforcer" is a proper party to bring the antitrust action.  *In re Aluminum Warehousing*, 833 F.3d at 157-58; *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters* ("*AGC*"), 459 U.S. 519, 535 n.31

---

[3] SPX Plaintiffs' allegations concerning Google's auction designs and other ad tech practices, Compl. ¶¶ 63, 118-22, 130, 164, & 166, fall entirely outside the scope of Section 1 and can only be reached, if at all, through Section 2—an avenue that SPX Plaintiffs have not pursued here.

(1983).  Courts require the plaintiff to be an efficient enforcer so that a defendant is "not liable to every person who can persuade a jury that he suffered a loss in some manner 'that might conceivably be traced' to the conduct of the defendants."  *Reading Indus., Inc. v. Kennecott Copper Corp.*, 631 F.2d 10, 12 (2d Cir. 1980) (citation omitted).  The factors to determine whether a plaintiff is an efficient enforcer are:  "(1) the directness or indirectness of the asserted injury," which requires evaluation of the "chain of causation" linking the asserted injury and the alleged conspiracy; "(2) the existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement[;] (3) the speculativeness of the alleged injury[;] and (4) the difficulty of identifying damages and apportioning them among direct and indirect victims so as to avoid duplicative recoveries."  *IQ Dental Supply, Inc. v. Henry Schein, Inc.*, 924 F.3d 57, 65 (2d Cir. 2019) (internal quotations omitted).

As to the first and third factors, SPX Plaintiffs are not efficient enforcers because their alleged injuries are far too remote from the alleged conspiracy, making their claims for damages entirely speculative.  *See AGC*, 459 U.S. at 540 (affirming dismissal in part because the plaintiff union's injuries "were only an indirect result" of the alleged coercion of contractors and the "chain of causation" between the alleged conduct and alleged injury contained "vaguely defined links").  The harm SPX Plaintiffs allegedly suffered (higher prices on Facebook.com) is completely untethered to the NBA, which had nothing at all to do with advertisements shown on Facebook.com.  Because SPX Plaintiffs fail to allege facts showing that the NBA caused them any injury, their damages claim is wholly speculative.

Nor do SPX Plaintiffs have the requisite motivation or ability to identify damages.  As to the necessary self-interest factor, courts look to whether there are more direct victims of the

alleged misconduct.  *See IQ Dental Supply,* 924 F.3d at 66; *Gatt*, 711 F. 3d at 79.  SPX Plaintiffs

do not have the necessary self-interest because, as discussed, the NBA agreement did not involve

ad buying on Facebook.com, the only place where SPX Plaintiffs claims to have advertised.

Instead, it involved FAN, which SPX Plaintiffs do not aver to have used.  Therefore, SPX

Plaintiffs are not the proper parties to bring this suit.  Finally, identifying damages would be

prohibitively complex, if at all possible.  It is not clear what amount plaintiffs who advertised on

Meta would receive since those purchases cannot be connected with the NBA, and therefore

"quantifying their damages would require wholesale speculation[.]"  *See Paycom Billing Servs.*

*v. Mastercard Int'l.*, 467 F. 3d 283, 294 (2d Cir. 2006).

Because SPX Plaintiffs fail to allege antitrust injury or satisfy a single "efficient

enforcer" factor, they have no antitrust standing to pursue their claim.

## CONCLUSION

For the foregoing reasons, Google respectfully requests that this Court dismiss SPX

Plaintiffs' Complaint in full and with prejudice.

Dated: February 3, 2023                              Respectfully Submitted,

                                                     */s/ Justina K. Sessions*
                                                     Justina K. Sessions
                                                     Jonathan Jacobson
                                                     Jessica Lonergan
                                                     Mikaela Evans-Aziz (admitted *pro hac vice*)
                                                     Vadim Egoul
                                                     WILSON SONSINI GOODRICH & ROSATI
                                                     Professional Corporation
                                                     One Market Plaza, Spear Tower
                                                     Suite 3300
                                                     San Francisco, CA 94105
                                                     (415) 947-2000
                                                     jsessions@wsgr.com

jjacobson@wsgr.com
jlonergan@wsgr.com
mevansaziz@wsgr.com
vegoul@wsgr.com

Eric Mahr
Julie Elmer
Andrew J. Ewalt (admitted *pro hac vice*)
Jan Rybnicek (admitted *pro hac vice*)
Lauren Kaplin
Robert J. McCallum
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street NW, 10th Floor
Washington, DC 20005
(202) 777-4500
eric.mahr@freshfields.com
julie.elmer@freshfields.com
andrew.ewalt@freshfields.com
jan.rybnicek@freshfields.com
lauren.kaplin@freshfields.com
rob.mccallum@freshfields.com

John Harkrider
Daniel Bitton
Bradley Justus (admitted *pro hac vice*)
Koren Wong-Ervin (admitted *pro hac vice*)
AXINN, VELTROP & HARKRIDER
LLP
114 West 47th Street
New York, NY 10036
Telephone: (212) 728-2200
jharkrider@axinn.com
dbitton@axinn.com
bjustus@axinn.com
kwongervin@axinn.com

*Counsel for Defendant Google LLC.*

14