UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION | No. 21-MD-3010 (PKC) |

**DECLARATION OF COURTNEY SHADD IN SUPPORT OF DEFENDANTS GOOGLE LLC AND ALPHABET, INC.'S MOTIONS TO DISMISS ADVERTISERS' CONSOLIDATED CLASS ACTION COMPLAINT AND <u>ORGANIC PANACEAS' CLASS ACTION ANTITRUST COMPLAINT</u>**

I, Courtney Shadd, declare as follows:

1. I am a legal assistant on the Ads legal team at Google LLC ("Google"). I began working at Google in my current role in May 2021. Through my work, I am very familiar with records relating to Google Ads and the relevant terms and policies that apply to Google Ads. In my current role, I have access to the below referenced records.

2. The content of this declaration is based on my personal knowledge and from my review of Google's relevant records. If called as a witness, I could and would testify competently thereto.

**Google Advertising Program Terms**

3. When advertisers sign up to use Google's advertising platforms in the United States, they are shown Google's Advertising Program Terms ("Terms") and are requested to expressly agree to the Terms by clicking a button labeled "Accept" located under the Terms. An advertiser will not be able to use Google's services until after the Terms have been agreed to.

4. Beginning at least as early as 2016, Google Ads has had a Terms of Service. These Terms have been modified from time to time, and in September 2017, the Terms were modified to, among other things, incorporate an agreement to arbitrate disputes. At that time,

existing advertisers were given notice asking them to review and accept the modified Terms. That notice campaign included direct email to advertisers, a public blog post, and an alert that advertisers could see when they logged in to their accounts.

5. Attached as **Exhibit A** is a true and correct copy of the September 2017 Terms, *available at* https://payments.google.com/payments/apis-secure/get_legal_document?ldi=30847.

6. As noted above, advertisers received several types of notice that the Terms were being modified, and they were requested to review and accept the new Terms. Each type of notice included a link that, when clicked, directed the advertiser to the webpage shown at **Exhibit B**. The entire text of the September 2017 Terms was available on the webpage shown at Exhibit B by scrolling down in the embedded window, without needing to access other webpages. Above the embedded window, at the top of the page, Exhibit B states: "Please review these Terms carefully. They include the use of binding arbitration to resolve disputes rather than jury trials or class actions. Please follow the instructions in the terms below if you wish to opt out of this provision." Thus, advertisers were put on notice, without needing to scroll down in the embedded window or visit another webpage, that the September 2017 Terms contain an arbitration clause and the ability to opt out of it.

7. The September 2017 Terms contains the following provision in the first paragraph:

> Please read these Terms carefully. They require the use of binding individual arbitration to resolve disputes rather than jury trials or class actions. If Customer wishes, Customer may opt out of the requirement to arbitrate disputes by following the instructions in Section 13(F) below within 30 days of the first acceptance date of any version of these Terms containing an arbitration provision.

8. Section 13(A) of the September 2017 Terms provides:

2

> Arbitration of disputes. Google, Customer, and Advertiser agree to arbitrate all disputes and claims between Google and Customer or between Google and Advertiser that arise out of or relate in any way to the Programs or these Terms. This agreement to arbitrate ("Dispute Resolution Agreement" or "Section 13") is intended to be broadly interpreted and includes, for example:
> 1. claims brought under any legal theory;
> 2. claims that arose before Customer or Advertiser first accepted any version of these Terms containing an arbitration provision;
> 3. claims that may arise after the termination of Customer's or Advertiser's Use of the Programs;
> 4. claims brought by or against Google, Google affiliates that provide the Programs to Customer or Advertiser, Google parent companies, and the respective officers, directors, employees, agents, predecessors, successors, and assigns of these entities; and
> 5. claims brought by or against Customer or Advertiser, the respective affiliates and parent companies of Customer or Advertiser, and the respective officers, directors, employees, agents, predecessors, successors, and assigns of these entities.

9. Section 13(F) of the September 2017 Terms provides:

> 30-day opt out period. Customer (both for itself and for any Advertiser that Customer represents) and Advertiser have the right to opt out of this Dispute Resolution Agreement. A Customer or Advertiser who does not wish to be bound by this Dispute Resolution Agreement (including its waiver of class and representative claims) must notify Google as set forth below within 30 days of the first acceptance date of any version of these Terms containing an arbitration provision (unless a longer period is required by applicable law). Customer's or Advertiser's notice to Google under this subsection must be submitted via webform available at adwords.google.com/nav/arbitration. An opt-out notice does not revoke or otherwise affect any previous arbitration agreement between Customer and Google or between Advertiser and Google.

10. By clicking on the hyperlink in Section 13(F), an advertiser would have been taken to a landing webpage containing the Opt Out Procedure. The webpage containing the Opt Out Procedure went live in September 2017 in a coordinated rollout with the September 2017 Terms. Attached as **Exhibit C** is a true and correct copy of the webpage containing the Opt Out Procedure, also *available at* adwords.google.com/nav/arbitration. The substance of this webpage has been unchanged since its inception in September 2017.

DocuSign Envelope ID: 7C49A186-F905-4A43-BA1B-AB7BAAC4E62E

11. Google updated the Terms in April 2018. Attached as **Exhibit D** is a true and correct copy of the April 2018 Terms, *available at* https://payments.google.com/payments/apis-secure/get_legal_document?ldi=31462. The Dispute Resolution Agreement in the September 2017 Terms, including the sections quoted above, was not modified.

12. Google again updated the Terms in November 2019. Attached as **Exhibit E** is a true and correct copy of the November 2019 Terms, *available at* https://payments.google.com/payments/apis-secure/u/0/get_legal_document?ldi=131839. The Dispute Resolution Agreement in the November 2019 Terms, including the sections quoted above, was not modified.

13. Google keeps regular records of the advertisers that have provided Google with notice that they are opting out of the Dispute Resolution Agreement pursuant to Section 13(F) of the September 2017, April 2018, and November 2019 Terms.

**Plaintiffs' Google Advertising Accounts**

14. I have reviewed Google's records relating to the September 2017, April 2018, and November 2019 Terms for the plaintiffs identified in this litigation: Christopher Hanson d/b/a Hanson Law Office ("Hanson Law Office"), Vitor Lindo, Cliffy Care Landscaping LLC ("Cliffy Care"), Kinin, Inc. ("Kinin"), Raintree Medical and Chiropractic Center, LLC ("Raintree"), Rodrock Chiropractic PA ("Rodrock"), and Organic Panaceas, LLC ("Organic Panaceas").

15. According to Google's records, the account associated with Vitor Lindo of Savannah, Georgia accepted the September 2017 Terms on September 8, 2017. Google's records do not reflect any attempts by Mr. Lindo to opt out of the Dispute Resolution Agreement pursuant to Section 13(F) of the September 2017 Terms.

16. According to Google's records, the account associated with Cliffy Care accepted the November 2019 Terms on November 20, 2019. Google's records do not reflect any attempts by Cliffy Care to opt out of the Dispute Resolution Agreement pursuant to Section 13(F) of the November 2019 Terms.

17. According to Google's records, the account associated with Kinin accepted the September 2017 Terms on September 19, 2017. Google's records do not reflect any attempts by Kinin to opt out of the Dispute Resolution Agreement pursuant to Section 13(F) of the September 2017 Terms.

18. According to Google's records, there are two accounts associated with Raintree. The first account associated with Raintree accepted the September 2017 Terms on September 8, 2017. Google's records do not reflect any attempts by this first account to opt out of the Dispute Resolution Agreement pursuant to Section 13(F) of the September 2017 Terms. The second account associated with Raintree accepted the April 2018 Terms on May 22, 2019. Google's records do not reflect any attempts by this second account to opt out of the Dispute Resolution Agreement pursuant to Section 13(F) of the April 2018 Terms.

19. According to Google's records, the account associated with Rodrock accepted the November 2019 Terms on February 14, 2020. Google's records do not reflect any attempts by Rodrock to opt out of the Dispute Resolution Agreement pursuant to Section 13(F) of the November 2019 Terms.

20. According to Google's records, the account associated with Organic Panaceas accepted the April 2018 Terms on May 14, 2018. Google's records do not reflect any attempts by Organic Panaceas to opt out of the Dispute Resolution Agreement pursuant to Section 13(F) of the April 2018 Terms.

DocuSign Envelope ID: 7C49A186-F905-4A43-BA1B-AB7BAAC4E62E

21. As of this date, I have not been able to locate any indication that Hanson Law Office accepted the September 2017, April 2018, or November 2019 Terms.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 2, 2023, in San Francisco, California.

DocuSigned by:

*Courtney Shadd*

1FBA0E55271B411...

COURTNEY SHADD
