# WILSON SONSINI

Wilson Sonsini Goodrich & Rosati
Professional Corporation

One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105

O: (415) 947-2000

JUSTINA K. SESSIONS
Email: jsessions@wsgr.com
Direct dial: (415) 947-2197

March 6, 2023

**VIA CM/ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

**Re:** *In re: Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC)

Dear Judge Castel:

Defendant Google LLC respectfully submits this letter in response to Newspaper Plaintiffs' February 28, 2023 letter regarding a "separate track of discovery" for the Newspapers. ECF No. 480-1. Pursuant to Your Honor's Individual Practices, we note that no conference is scheduled at this time.

Newspaper Plaintiffs do not describe the "separate discovery track" that they request. Yet it appears that Newspaper Plaintiffs would like to exempt themselves from some or all discovery, while (i) taking full discovery from Google and (ii) having both sides adhere to a case schedule that does not provide for any separate tracks. They already asked once for a "bellwether" discovery process that would apply only to themselves, and the Court rejected that request when it issued PTO-5. Newspaper Plaintiffs' latest request provides no reason to depart from this Court's prior ruling or the case schedule that has been in place since November 2022.

Each Newspaper Plaintiff chose to proceed with its own direct action case. Each Newspaper Plaintiff alleges various impacts and harms to itself, as well as damages. Google needs the opportunity to test and take discovery regarding these allegations. As Google has previously noted, any Newspaper Plaintiff who wishes to avoid being subject to discovery could avoid that burden by proceeding as an unnamed member of the putative representative actions in this MDL. But so long as each Newspaper Plaintiff intends to pursue its own direct action case, each Newspaper Plaintiff must provide the discovery that Google needs to defend against their allegations.

**WILSON
SONSINI**

March 6, 2023
Page 2

I.      **Background**

As part of last fall's submissions on scheduling order proposals, Newspaper Plaintiffs requested a "bellwether" discovery process.  *See* Plaintiffs' Proposed Case Management Plan and Scheduling Order at ¶ 6.5 ("Bellwether Discovery for the Direct Action Newspaper Plaintiffs"), ECF No. 358-1.  Google objected to this proposal because it would deprive Google of the ability to conduct discovery into each Newspaper Plaintiff's claims and was unsupported by the case law. ECF No. 371.

On November 21, 2022, having considered the parties' scheduling proposals and accompanying submissions, Your Honor entered Pre-Trial Order No. 5 which did not include Newspaper Plaintiffs' proposed Paragraph 6.5 regarding bellwether discovery.  PTO-5, ECF No. 394.  PTO-5 instead set a uniform discovery schedule applicable to all parties and did not provide any separate track for Newspaper Plaintiffs—and Newspaper Plaintiffs did not raise the issue further.  Among other things, PTO-5 provided that "No Interrogatories shall be served except in compliance with Local Rule 33.3(a) without first obtaining leave of Court, except as follows: defendants may serve one set of interrogatories not to exceed 25 questions on each named plaintiff, including named class representatives, in each Member Case by January 27, 2023."  *Id. at* ¶ 6.2. Pursuant to PTO-5, Google served requests for production and interrogatories on Plaintiffs (including Newspaper Plaintiffs) on January 27, 2023.  Plaintiffs (including Newspaper Plaintiffs) served 301 Requests for Production on Google the same day.

II.     **"Bellwether Discovery" Is Not Appropriate for 25 Direct Action Antitrust Cases**

Bellwether *trials* are often seen in MDLs (most commonly in the mass tort setting) and can promote settlement, streamline the proceedings, and provide parties with trial frameworks for subsequent cases.  *See* Melissa J. Whitney, Fed. Judicial Center and JPML, Bellwether Trials in MDL Proceedings: A Guide for Transferee Judges at 4-7 (2019).  But Newspaper Plaintiffs have never suggested that only some of the *cases* should move forward now as bellwethers through trial. They instead argue that all 25 cases should continue but that the Newspaper Plaintiffs be put on a separate track only for "bellwether *discovery*."

Although the details of this proposal have been (and are still) unclear, Newspaper Plaintiffs seem to envision one Newspaper Plaintiff who will be subject to "full discovery" with the remainder of Newspapers only providing "more limited discovery" such as "fact sheets."  ECF No. 480-1 at 2.  The "fact sheets" they reference are most commonly used in the mass tort and products liability contexts where there are hundreds or thousands of plaintiffs involved.  *See* Margaret S. Williams et al., Fed. Judicial Center and JPML, Plaintiff Fact Sheets in Multidistrict Litigation Proceedings, Multidistrict Lit. Manual Appendix J (2022).[1]  As an example, the

---
[1] *See also, e.g.*, *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prod. Liab. Litig.*, 2011 WL 3035087, at *1 (S.D. Ill. July 25, 2011) (plaintiff fact sheets used for proceeding with nearly 6,350 individual cases); *In re Silica Prod. Liab. Litig.*, 398 F. Supp. 2d 563, 576 (S.D. Tex. 2005) (10,000 plaintiffs were required to complete plaintiff fact sheets); *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1224 (9th Cir. 2006) (over 1,500 plaintiffs in 736 cases required to complete plaintiff fact sheets).

**WILSON
SONSINI**

March 6, 2023
Page 3

Multidistrict Litigation Manual explains that a plaintiff fact sheet in a products liability case might ask when and why the plaintiff used a product or device or for product identification records.  *Id.* These types of fact sheets are often used to weed out or separate cases into categories, *e.g.*, plaintiffs that were diagnosed with a condition versus those who were not.  This procedure has no place in a complex antitrust case with a far more limited number of plaintiffs.

It is not clear what purpose Newspaper Plaintiffs' "fact sheet" proposal would serve in this antitrust case.  "Fact sheets" providing fill-in-the-blank, limited, basic information are not an adequate substitute for discovery from each Newspaper Plaintiff.  *First*, Google needs ordinary-course documents and data from Newspaper Plaintiffs.  For example, each Newspaper Plaintiff alleges "a massive decrease in advertising revenue caused by Defendants' anticompetitive and unlawful conduct."  Compl. ¶ 143, ECF No. 402.  Ordinary-course documents and data will allow Google to test and potentially refute the assertion that any declines in revenue are attributable to the challenged conduct as opposed to any number of other potential causes.  Newspaper Plaintiffs claim to have faced falling revenues, budget cuts, and newsroom job losses, Compl. ¶¶ 144-45, requiring individual discovery to assess how each newspaper performed and the particular business decisions and cost-benefit tradeoffs each made during the relevant time period.  "Fact sheets" would not reveal whether any Newspaper Plaintiff has actually ever conducted any analysis of the cause(s) of any revenue decline(s), nor would they reveal how each Newspaper Plaintiff understood or explained them at the time.  *Second*, Google needs information from each individual Newspaper Plaintiff responsive to its interrogatories.  For example, the Newspaper Plaintiffs do not make the same allegations regarding use of Google products; some newspapers allege to have "paid for and used Google's digital publishing products" (*e.g.*, Compl. ¶ 20), while others allege only to have "sold and/or attempted to sell digital advertisements" (*e.g.*, Compl. ¶ 23).  These individual factual circumstances will be relevant to multiple aspects of the case—including questions of antitrust standing and damages.  To what extent each newspaper used non-Google substitutes over the relevant time period may also vary by newspaper and require individual discovery to assess Newspaper Plaintiffs' claims of alleged monopoly power.  While this information could, in theory, be captured in a "fact sheet" for each Newspaper Plaintiff, at that point there would be no practical difference between a fact sheet and an interrogatory response.

It appears that Newspaper Plaintiffs are trying to avoid having to provide responsive information for each plaintiff.  In Newspaper Plaintiffs' own words, "most of [Google's] discovery requests are unique to the individual client."  ECF No. 480-1 at 1-2.  Google served the same discovery requests on each Newspaper Plaintiff, so Newspapers must mean that the *answers* to these requests are unique to the individual client.  This weighs heavily *against* the utility of bellwether discovery here and the idea that discovery from one or a few "bellwethers" could somehow serve as a substitute for discovery from *all* the Newspaper Plaintiffs.  Rather, each Newspaper Plaintiff prosecuting its own case should be providing its own "unique" discovery in response to Google's requests.

*Epi-Pen*, the only ***antitrust*** case that Newspaper Plaintiffs cite, does not support their proposal.  In that case, the direct action plaintiff participated in discovery.  The consumer class representatives (who are not analogous to newspapers in any event) provided fact sheets ***in***

**WILSON SONSINI**

*addition to* responding to discovery requests, including producing documents.  *See* Class Plaintiffs' Interim Status Report at 4, *In re EpiPen Mktg., Sales Practices & Antitrust Litig.*, No. 17-md-2785-DDC-TJJ (D. Kan. Feb. 16, 2018), ECF No. 219-1.  Thus, even that case, which involved very different types of plaintiffs and different types of claims, does not support excusing plaintiffs from discovery altogether.

**III.    Newspapers' Burden Arguments Are Unsupported, Specious, and Provide No Reason to Exempt Them from Discovery Altogether**

In accordance with PTO-5, Google served reasonable and proportionate document requests and interrogatories on Newspaper Plaintiffs.  Tellingly, the Newspaper Plaintiffs' letter does not focus on the burden of responding for any particular individual Newspaper Plaintiff—but rather on the cumulative burden *on counsel* of responding to discovery requests for their 25 different Newspaper cases.  Their complaint that "Google served a total of 750 interrogatories and 1,975 requests for production on the Newspaper Plaintiffs," ECF No. 480-1 at 1, is a result of multiplying the discovery requests Google served (25 interrogatories, five Local Rule 33.3(a) interrogatories, and 79 requests for production) by the number of cases which counsel has brought on behalf of Newspaper Plaintiffs (25).  These aggregate figures are not relevant to anyone other than counsel who has chosen to represent clients in this number of cases; the obligation of each Newspaper Plaintiff is of course only to respond to the discovery requests served on it.

Google does not disagree with many of Newspaper Plaintiffs' points about the complexity and burdens of discovery, including that "harvesting digital data from a corporate client is a multi-step process." *Id.* at 2.  But Newspaper Plaintiffs are capably represented by four law firms (Farrell & Fuller Law, Herman Jones LLP, Robbins Geller LLP, and Fitzsimmons Law Firm PLLC) to guide them in their document collection, review, and production obligations.  These firms should not be starting from scratch with any of their clients, as they had a duty to conduct a pre-suit investigation into the evidentiary support *each* of their clients had for the factual contentions brought in *each* of the 25 complaints.  *O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 706 (2d Cir. 1990) (citation omitted) ("Rule 11 imposes an 'affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading' before actually signing it."); Fed. R. Civ. P. 11(b)(3).

For example, Newspaper Plaintiffs claim without support that "they cannot readily access the data [without] significant resources." ECF No. 480-1 at 2.  Google cannot help but point out that it will be forced to expend significant resources to respond to Newspaper Plaintiffs' data requests.  Indeed, it is ironic that Newspaper Plaintiffs make this complaint while at the same time their counsel Ms. Vash insists that Google must preserve voluminous data relating to countries and transactions for which Newspaper Plaintiffs bring no claims.  Moreover, Newspaper Plaintiffs' suggestion that they lack or have not accessed the data that would substantiate or disprove their allegations is cause for concern, not special treatment.  These data—among other categories of documents and information—is precisely the type of information that Google needs from *each* Newspaper Plaintiff.  In any event, any concerns about burden or expense of data retrieval to a

**WILSON SONSINI**

March 6, 2023
Page 5

particular plaintiff can be discussed during the meet and confer process, in accordance with the Federal Rules.  *See* Fed. R. Civ. P. 37.

**IV.    Splintering Off a Separate Newspaper Discovery Track from PTO-5's Uniform Schedule Would Cause Inefficiency and Delay**

While Newspaper Plaintiffs rely primarily on an efficiency argument, allowing only certain Newspaper Plaintiffs to proceed as discovery "bellwethers" (with the remaining Newspapers effectively on the sidelines until later) would only undo the efficiencies of the uniform discovery schedule under PTO-5.  Google disagrees that "addressing discovery disputes across a broad spectrum of individual plaintiffs exponentially expands the problem and threatens the orderly and efficient completion of discovery."  ECF No. 480-1 at 2.  This is actually the *ideal* way to address discovery disputes and the epitome of efficient MDL discovery coordination.[2]  Having all 25 of these Newspaper Plaintiff actions in this MDL allows Newspaper Plaintiffs' counsel to negotiate Google's discovery requests in a coordinated fashion.  This will allow, for example, the Newspaper Plaintiffs to all participate in any joint discovery disputes.  This is much more efficient than the parties engaging in multiple cycles of negotiating the same discovery requests.

**V.    Conclusion**

Google respectfully submits that Newspaper Plaintiffs' request that the parties be sent to further meet and confer to discuss departing from the discovery procedures and case schedule applicable to all other parties would not be productive.  The parties have already met and conferred on this same issue on two separate occasions, and the Court has once already decided that Newspaper Plaintiffs should adhere to the discovery and case schedule for all parties.  In light of the fast-approaching substantial completion deadline of May 30, 2023 set by PTO-5, now is the time for each Newspaper Plaintiff to fully participate in the discovery process and for the parties to proceed to discussing the discovery requests Google served.

Respectfully submitted,

*/s/ Justina K. Sessions*
Justina K. Sessions
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

---

[2] For example, the defendants and Direct Action Plaintiffs (DAPs) were able to jointly brief DAP discovery disputes in *Broiler Chicken*–including a discovery dispute that was applicable to "at least 20 DAPs" at once.  Defendants' Mot. to Compel Discovery at 4, *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-08637 (N.D. Ill. Oct. 29, 2020), ECF No. 3954.  This allowed the court to issue decisions that applied broadly across DAPs.  *See, e.g.*, Joint Order Regarding Direct Action Plaintiff Discovery Obligations, *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-08637 (N.D. Ill. Jan. 26, 2021), ECF No. 4220.  *Broiler Chicken* also supports keeping the DAPs on the same track as other plaintiffs, as the court there denied the motion from "Certain Restaurant DAPs" for a "separate DAP track."  Minute Entry, *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-08637 (N.D. Ill. May 7, 2021), ECF No. 4616.

**WILSON SONSINI**

March 6, 2023
Page 6

One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2197
Email: jsessions@wsgr.com

Eric Mahr
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street, NW
10th Floor
Washington, DC 20005
Telephone: (202) 777-4545
Email: eric.mahr@freshfields.com

*Counsel for Defendant Google LLC*

Cc: All Counsel of Record (via ECF)