**WILSON SONSINI**

Wilson Sonsini Goodrich & Rosati
Professional Corporation

One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105

O: (415) 947-2000

JUSTINA K. SESSIONS
Email: jsessions@wsgr.com
Direct dial: (415) 947-2197

March 8, 2023

**VIA CM/ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *In re: Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC)

Dear Judge Castel:

    I write on behalf of Defendants Google LLC, Alphabet Inc., and YouTube LLC (collectively "Google") further to the parties' February 21, 2023 joint submission to the Court regarding the ESI order, ECF No. 468-1 (the "Joint Submission") and the conference held on February 22, 2023 concerning the two remaining issues in dispute: preservation of European ad log data and hyperlinks. ECF No. 481. No conference is scheduled.

    After the February 22 conference, Google proposed a compromise: Google would agree to Plaintiffs' burdensome hyperlinks provision in the Joint Submission, and in exchange, Plaintiffs would stop insisting that Google preserve vast quantities of European ad log data that has no discernible relevance to this case.

    Yesterday, Plaintiffs rejected Google's compromise and informed Google that, contrary to their representations to the Court two weeks ago, *infra* at 3, Plaintiffs would no longer adhere to the preservation agreements that Google negotiated in good faith for over ten months, as reflected in the Joint Submission and in Plaintiffs' proposed ESI order submitted to the Court on January 13, ECF No. 439-1. Plaintiffs further informed Google that they will no longer even agree to the same hyperlinks provision they advocated for at the February 22 conference. In taking these positions, Plaintiffs have undermined the entire history of ESI negotiations and the basis on which Google has made all of its concessions to date. Having now backed away from their own proposed provisions, Plaintiffs have left the parties further apart than they were at the February 22 conference.

    Although Plaintiffs' latest position is extraordinary, it is part of their broader pattern of intransigence and unreasonableness in this MDL. Plaintiffs owe this dysfunction in large part to their disregard of the Court's guidance and rotating cast of counsel whose sporadic attendance during the meet-and-confer process makes consensus difficult. Despite being designated as a

member of the Discovery Steering Committee, it is the Publisher class, specifically, that failed to participate at the end of 2022 when ESI preservation agreements were hammered out, Ex. B at 2-3, only to inject themselves in February 2023 and disavow agreements that had been reached and submitted to the Court on behalf of all Plaintiffs.

Google should not be deprived of the benefit of preservation limitations that it bargained for over the course of ten months in exchange for significant concessions. The Court should enter the Order attached as Exhibit A, which reflects the further compromise that Google proposed following the conference: Plaintiffs' proposal on links, and Google's proposal on ad logs.

I. **Plaintiffs Should Not Be Permitted to Renege on Agreements They Have Twice Submitted to the Court.**

Almost eighteen months ago, the Court ordered Plaintiffs to coordinate drafting an ESI order. ECF No. 129. After Plaintiffs failed in that basic task, *see* ECF No. 434 at 4-6, Defendants produced a draft in which they proposed a number of categories of data that are "not reasonably accessible" within the meaning of Federal Rule of Civil Procedure 26(b)(2)(B)—*i.e.*, "because of undue burden or cost."[1] And because all Plaintiffs' claims are U.S.-focused, Google initially proposed that there be no obligation to preserve vast quantities of ad log data, measured in "exabytes," that relates to ads viewed outside the United States.

Throughout negotiations, Google made clear that it was prepared to agree to dozens of Plaintiffs' burdensome demands explicitly on the condition that "Plaintiffs will agree to appropriate limitations on the scope of discoverable ESI grounded in principles of proportionality." ECF No. 434-4 at 1; *see also id.* at 4 ("If Plaintiffs will agree to appropriate limitations to the scope of ESI as described in this letter, then Google is prepared to make the additional concessions described in this letter and set forth in the enclosed redline.").

By the end of 2022, Google had agreed to more than 70 changes proposed by Plaintiffs in exchange for Plaintiffs' agreement to preservation limitations. As is evident from the proposed ESI order that *Plaintiffs* submitted to the Court on January 13, 2023, the parties had agreed on eleven categories of documents that were "not reasonably accessible in this litigation" and therefore "*need not be preserved, searched, collected, or reviewed*." ECF No. 439-1 at 4 (emphasis added). Plaintiffs now want to abandon their side of the agreement, while retaining all of the concessions Google made throughout the negotiations.

One of the eleven categories that Plaintiffs agreed was not reasonably accessible was ad log data. Plaintiffs' proposed ESI order reflects that the parties had agreed that "[a]d log files

---

[1] "A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery." Fed. R. Civ. P. 26(b)(2)(B).

March 8, 2023
Page 3

concerning ads viewed outside the United States, Canada, the United Kingdom, Australia, [and] New Zealand" need not be preserved, but had not reached any agreement on the European Union logs. ECF No. 439-1 at 4. Plaintiffs purported to "reserve all rights" regarding E.U. ad log data ***only***. *Id*. at n.2.

The Publisher Class then parachuted into the negotiations. On February 10, 2023, the Publisher Class asserted that (1) they had never agreed to any limitations of any kind on Google's preservation obligations; (2) if Google did not agree to the Publisher Class's demand to preserve E.U. ad log data, then the Publisher Class would decline to be bound by the scope of the agreement that all Plaintiffs submitted to the Court three weeks earlier, on January 13, 2023; and (3) Google must preserve all data worldwide and for all time until the Publisher Class concludes that Google no longer needs to do so. Ex. B at 2.

The parties negotiated further and narrowed the disputed issues to just two: E.U. ad logs and hyperlinks. The February 21, 2023 Joint Submission reflects their agreement, in paragraph II.3, that eleven "categories of ESI are not reasonably accessible in this litigation and *the parties agree that they need not be preserved, searched, collected, or reviewed*." ECF No. 468-1 at 4 (emphasis added). The Joint Submission also reflects that Plaintiffs had expanded their "reservation of rights" to cover not just E.U. ad log data (as they represented to the Court just weeks earlier), but "any ad log files." *Id*. at n.2. Google disputed Plaintiffs' reservation of rights, as well as the relevance of E.U. data generally. *Id*.

At the February 22 conference, the Court asked Plaintiffs' counsel whether their reservation of rights would "undercut all of paragraph [II.]3" and stated that if Plaintiffs were asserting that "the following categories are not reasonably accessible, but you act at your peril if you don't preserve it" then "how does that accomplish anything?" ECF No. 481 at 7:11-15. Plaintiffs asserted that, if relevant information were to come to light in the future, Google should not be able to "point[] to the ESI document saying, plaintiffs said we didn't have to preserve it, the Court said we didn't have to preserve it." *Id.* at 19:14-17. The following exchange then occurred:

> THE COURT: So why am I bothering with any of paragraph [II.]3? Your argument proves too much, I guess is what I'm saying. Because if that's true, that would be true for logs of calls made from cellular phones, that would be true for data stored in RAM and temporary files. You could later find out it has gold in there.
>
> MS. VASH: Except, your Honor, that *as respect to those particular provisions, we're not going to come back*. . . .

*Id*. at 19:18-20:5 (emphasis added). And yet, that's exactly what Plaintiffs are doing. Yesterday, Plaintiffs informed Google that they would no longer honor the Joint Submission or any preservation agreements that the parties had reached over the course of ten months of negotiation. Instead, Plaintiffs' most recent proposal to Google deletes the language about the parties' agreement on these issues and instead would require the Court to "order" this provision (apparently over Plaintiffs' objection). Plaintiffs' purpose in doing so is to further expand their reservation of rights to seek sanctions for spoliation for *all* eleven categories of documents that they have already

March 8, 2023
Page 4

twice told the Court they agreed need not be preserved.[2]  Plaintiffs have also deleted reference to the parties' prior agreement that there is no obligation to search, collect, or review these eleven categories of documents.

By undercutting paragraph II.3, Plaintiffs seek to deprive it of any effect and thus deprive Google of the benefit of the agreements reached over months of, in Google's case, good-faith negotiations.

## II.     Plaintiffs Have Yet to Explain the Relevance of the E.U. to Their Claims.

Plaintiffs have, for over a year, had access to more than two million documents assembled by the State Plaintiffs during their pre-Complaint investigation.  All Plaintiffs assert relevant markets in the United States.[3]  No Plaintiff has made any allegations regarding the European Union or reference the E.U. in any way in their pleadings.  And Plaintiffs have never been able to credibly explain the relevance of the E.U. to their claims to Google or the Court.  *See, e.g.*, *id.* at 20:4-14.

Instead, Plaintiffs have asserted that they need expedited discovery-on-discovery to enable them to ascertain whether E.U. ad log data might conceivably become relevant to their U.S. claims in the future.  To finalize this ESI order, Plaintiffs proposed that Google respond to informal interrogatories, produce source code, algorithms, and other documentation, and sit for a 30(b)(6) deposition, all on an expedited basis.  But the Federal Rules of Civil Procedure are clear that relevance is not "so broad to sweep in information that 'reasonably could lead to another matter that could bear on, any issue that is or may be in the case,'" but rather relevance is "circumscribed" to information "relevant to the claims and defenses."  *See In re Lifetrade Litig.*, No. 17CV2987JPOKHP, 2022 WL 3079735, at *2 (S.D.N.Y. Aug. 3, 2022).  Plaintiffs' serial questions would not help resolve any genuine issues regarding the potential relevance of E.U. ad log data but, rather, appear to be calculated either to increase burdens on Google or just indulge curiosity.

The preservation burden that Plaintiffs insist Google assume is extraordinary.  Ad log data are voluminous, and all ad log data are not retained indefinitely in the ordinary course of business.  Retaining E.U. data,[4] the relevance of which remains a mystery, would cost millions of dollars each year, require the deployment of engineering resources, and occupy storage space that Google requires for its business operations.  *See* ECF No. 434 at 2, 8.  At the February 22 conference, Plaintiffs did not dispute the burden, conceding that a "phenomenal amount of data" is at issue,

---

[2] At the February 22 conference, Plaintiffs' counsel told the Court that they intended to "make the argument, . . . that we said this data needs to be preserved.  And if it's not preserved and it turns out to be critical to this case, we will be making motions for sanctions."  ECF No. 481 at 20:16-18.

[3] Publisher Plaintiffs have asserted an alternative market consisting of the "predominantly English-speaking countries of the United States, Canada, the United Kingdom, and Australia."  ECF No. 408 at 41.  Google does not concede that Plaintiffs' alternative geographic market is appropriate (nor that any alleged market is appropriate), nor does Google concede that any plaintiff may obtain damages outside of the United States (nor any damages at all).

[4] The data at issue concern advertising impressions viewed by users in the E.U., with the exception of Ireland.

March 8, 2023
Page 5

but instead speculated that the burden might not be so significant years in the future.  ECF No. 481 at 19:4-7.

Unable to explain the relevance of the data to their claims, Plaintiffs' position is that the preservation obligation is not constrained by principles of proportionality or relevance, *see, e.g.*, *id.* at 9:22-23 ("This is a preservation, your Honor, [it's] not a production").  But the Federal Rules do not recognize the distinction that Plaintiffs seek to draw, *Pippins v. KPMG LLP*, 279 F.R.D. 245, 255 (S.D.N.Y. 2012) ("Preservation and production are necessarily interrelated. The application of the proportionality principle to preservation flows from the existence of that principle under the Federal Rules of Civil Procedure . . . proportionality is necessarily a factor in determining a party's preservation obligations."); *see also The Sedona Conference Commentary on Proportionality in Electronic Discovery*, 11 Sedona Conf. J. 289, 291 (2010) ("The burdens and costs of preservation of potentially relevant information should be weighed against the potential value and uniqueness of the information when determining the appropriate scope of preservation.").

Against that backdrop, it is entirely reasonable to limit preservation requirements for ad log data.  Rule 26(b)(1) limits the scope of discovery to what is "proportional to the needs of the case."  Guided by this rule, the Sedona Conference notes that "it is neither feasible nor reasonable to require litigants to canvas all potential sources of ESI in discharging their preservation obligations and responding to discovery requests."  *The Sedona Principles*, Third Edition, 19 Sedona Conf. J. 1, 112, 173 (2018).  For ad logs not covered by paragraph II.3 of the ESI stipulation, the parties have agreed to meet and confer regarding a relevant and proportionate set of ad logs to be sampled and/or preserved.  Ex. A at 5 n.2.  Google does not concede relevance of ad log data related to any jurisdiction nor whether it would be proportionate to the needs of the case to preserve or produce ad log files related to any jurisdiction.

### III.     Plaintiffs Should Be Held to Their Hyperlinks Proposal.

In the Joint Submission, Google proposed language that permitted requesting parties to make reasonable and proportionate requests for production of linked documents.  Google's proposal is consistent with recent case law on this issue.[5]  Plaintiffs' position, that a linked-to document is necessarily relevant, runs contrary to this case law.  Their reflexive insistence on automatic, categorical production of links takes no account of Google's substantial document production to date and the extensive additional review Google has offered to perform.

At the February 22 conference, the Court encouraged Google to consider some kind of sampling of links to ascertain the burden of producing them.  Google, as part of its proposed compromise after the conference, was prepared to agree to Plaintiffs' links proposal in the Joint

---

[5] *Nichols v. Noom Inc.*, No. 20CV3677LGSKHP, 2021 WL 948646 at *4 (S.D.N.Y. Mar. 11, 2021) (holding that linked documents are "not necessarily" attachments, "underlying hyperlinked documents may be unimportant to the communication," and if Plaintiffs "determine there is a need for an additional targeted pull or production or clarifying information about a hyperlinked document's identity or Bates number, Plaintiffs can request it.").

**WILSON SONSINI**

March 8, 2023
Page 6

Submission as drafted. Plaintiffs conceded that if there was no dispute on the links provision then no sampling was necessary.

Yesterday, Plaintiffs told Google for the first time that they would no longer honor the hyperlinks language they proposed in the Joint Submission. Specifically, we understand that Plaintiffs no longer agree to be bound by the provision that they submitted to the Court providing that, with respect to an automated sweep across responsive emails, "the producing party is not required to search for or produce linked documents outside the scope of collection sets of documents for the agreed-upon custodians." ECF No. 468-1 at 24.[6] Plaintiffs now contend that they are confused about the meaning and effect of their own language and that they need yet more information from Google in order to assess the "adequacy" of their own proposal. There is no confusion, and no more information is needed. To be clear: Google is prepared to agree to language that *Plaintiffs* submitted. Once Google indicated that it would agree, Plaintiffs came up with a host of new questions and hypothetical objections, designed to create the false impression that Plaintiffs are somehow making a concession, rather than Google. This negotiating tactic should not be rewarded, and the Court should enter Google's proposed ESI Protocol, Ex. A, which incorporates Plaintiffs' own proposed provision on links.

\* \* \*

Plaintiffs continue to change their position and overcomplicate what should have been a routine ESI order. They have now demonstrated beyond a doubt that they are incapable of responsibly bringing these protracted negotiations to an end. Google respectfully requests that the Court enter the ESI order attached as Exhibit A.

Respectfully submitted,

*/s/ Justina K. Sessions*
Justina K. Sessions
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2197
Email: jsessions@wsgr.com

---

[6] Plaintiffs' proposal in the Joint Submission (to which Google is prepared to agree) includes an obligation to respond to reasonable and proportionate requests for linked documents, whether or not the linked document was previously collected. Thus, the latest dispute relates only to the scope of Google's obligation to automatically add documents to its production despite those documents not hitting on agreed-upon search terms or being otherwise responsive.

Eric Mahr
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street, NW
10th Floor
Washington, DC 20005
Telephone: (202) 777-4545
Email: eric.mahr@freshfields.com

*Counsel for Defendants Google LLC,
Alphabet Inc., and YouTube LLC*

cc: All Counsel of Record (via CM/ECF)