UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE: GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION** | No. 1:21-MD-3010 (PKC) |

*This Motion Relates To:*

| | |
|---|---|
| **SPX Total Body Fitness LLC, d/b/a The Studio Empower, on behalf of itself and all others similarly situated.**<br><br>                              *Plaintiff,*<br><br>                    -against-<br><br>**GOOGLE LLC.,**<br><br>                              *Defendant.* | No. 1:21-cv-06870-PKC |
| **SKINNYSCHOOL LLC d/b/a MARIA MARQUES FITNESS and MINT ROSE DAY SPA LLC, on behalf of themselves and all others similarly situated.**<br><br>                              *Plaintiffs,*<br><br>                    -against-<br><br>**GOOGLE LLC.,**<br><br>                              *Defendant.* | No. 1:21-cv-07045-PKC |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
GOOGLE LLC'S MOTION TO DISMISS
SPX PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Fax: (202) 777-4555

AXINN, VELTROP & HARKRIDER LLP
114 West 47th Street
New York, NY 10036
Telephone: (212) 728-2200
Fax: (212) 728-2201

WILSON SONSINI GOODRICH &
ROSATI
Professional Corporation
One Market Plaza, Spear Tower
Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
Fax: (415) 947-2099

*Counsel for Defendant Google LLC*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... ii

TABLE OF ABBREVIATIONS ......................................................................................... iv

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 1

I.      SPX PLAINTIFFS LACK ANTITRUST STANDING. ........................................... 1

      A.      SPX Plaintiffs Are Not Efficient Enforcers. ............................................ 2

      B.      SPX Plaintiffs Did Not Suffer Antitrust Injury ...................................... 6

II.     SPX PLAINTIFFS FAIL TO ALLEGE THAT THE NBA VIOLATES SECTION 1 OF THE SHERMAN ACT. ......................................................................... 7

      A.      Plaintiffs' Argument that Google and Meta Are Horizontal Competitors Does Not Aid Its Case ............................................................................ 7

      B.      Plaintiffs Fail to Plausibly Allege that the NBA Is Unlawful ................. 8

CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**                                                                                               **Page(s)**

*2238 Victory Corp. v. Fjallraven USA Retail, LLC*,
    2021 WL 76334 (S.D.N.Y. Jan. 8, 2021) ...........................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...........................................................................................................3

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983) ...........................................................................................................3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...........................................................................................................3

*Copy-Data Sys., Inc. v. Toshiba Am., Inc.*,
    663 F.2d 405 (2d Cir. 1981) ..............................................................................................8

*Fund Liquidation Holdings LLC v. UBS AG*,
    2021 WL 4482826 (S.D.N.Y. Sept. 30, 2021) ..................................................................6

*Gatt Communs., Inc. v. PMC Assocs., L.L.C.*,
    2011 WL 1044898 (S.D.N.Y. Mar. 10, 2011) ..................................................................8

*Gelboim v. Bank of Am. Corp.*,
    823 F.3d 759 (2d Cir. 2016)..........................................................................................2, 4

*Gross v. New Balance Ath. Shoe Inc*,
    955 F. Supp. 242 (S.D.N.Y. 1997) .............................................................................4, 5, 6

*In re Aluminum Warehousing Antitrust Litig.*,
    833 F.3d 151 (2d Cir. 2016)..........................................................................................2, 6

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
    19 F.4th 127 (2d Cir. 2021) ..........................................................................................2, 4

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
    433 F. Supp. 3d 395 (E.D.N.Y. 2020) ..............................................................................5

*IQ Dental Supply, Inc. v. Henry Schein, Inc.*,
    924 F.3d 57 (2d Cir. 2019)............................................................................................2, 5

*Klein v. Meta Platforms, Inc.*,
    2022 WL 17477101 (N.D. Cal. Dec. 6, 2022) ..................................................................9

*Laydon v. Mizuho Bank, Ltd.*,
    2014 WL 1280464 (S.D.N.Y. Mar. 28, 2014) ..................................................................3

*Mayor & Council of Baltimore v. Citigroup, Inc.*,
    709 F.3d 129 (2d Cir. 2013)........................................................................................8, 10

*Paycom Billing Servs. v. Mastercard Int'l.*,
    467 F. 3d 283 (2d Cir. 2006)..............................................................................................6

*Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*,
    22 F.4th 103 (2d Cir. 2021) ...............................................................................................4

**Statutes**

15 U.S.C. § 1.....................................................................................................................7

**TABLE OF ABBREVIATIONS**

| Term | Definition |
|---|---|
| AdX | Google's Ad Exchange |
| Compl. | Consolidated Amended Class Action Complaint, ECF No. 456 |
| FAN | Facebook Audience Network |
| Google | Google LLC |
| Mot. | Defendant Google LLC's Memorandum of Law in Support of its Motion to Dismiss SPX Plaintiffs' Consolidated Amended Class Action Complaint, ECF No. 456 |
| MTD Op. | Opinion and Order, ECF No. 308 |
| NBA | Network Bidding Agreement |
| Opp. | SPX Plaintiffs' Opposition to Google's Motion to Dismiss, ECF No. 486 |
| SPX Plaintiffs | SPX Total Body Fitness LLC, SkinnySchool LLC, and Mint Rose Day Spa LLC |
| States | State Plaintiffs |

**INTRODUCTION**

SPX Plaintiffs are attempting to revive a claim—an alleged conspiracy between Google and Meta in entering into the Network Bidding Agreement—that is not viable, that they have no relation to, and that has already been rejected in substance.

As a threshold matter, SPX Plaintiffs lack standing to bring their claim. SPX Plaintiffs argue that they were "directly" injured by the NBA, but their own pleadings reveal otherwise. SPX Plaintiffs concede they did not participate in any alleged relevant market potentially affected by the NBA, and explicitly admit to have never purchased advertising covered by the NBA.

The claim is not viable in any event. SPX Plaintiffs now argue that their NBA-related claim is different from the States' dismissed NBA claim, because SPX argues that Google and Meta are horizontal competitors. As explained below, this argument was rejected by this Court and is inconsistent with SPX Plaintiffs' other allegations. Given that the SPX Plaintiffs cannot meet the threshold standing requirement, let alone allege any conduct capable of altering this Court's prior analysis of the NBA, SPX Plaintiffs' conspiracy claim should be dismissed in its entirety, and with prejudice.

**ARGUMENT**

**I.   SPX PLAINTIFFS LACK ANTITRUST STANDING.**

SPX Plaintiffs admit that they did not buy any advertising covered by the NBA. *See* Opp. 17 ("SPX Plaintiffs did not purchase advertising through FAN, third-party properties, an exchange, or an auction involving Google's ad exchange"). This resolves the standing inquiry. Mot. 9-13. SPX Plaintiffs have not plausibly alleged that they are proper plaintiffs to pursue antitrust claims in light of the four "efficient enforcer" factors, or that they have sustained an

antitrust injury.  *See In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 157-58 (2d Cir. 2016).

### A.  SPX Plaintiffs Are Not Efficient Enforcers.

 SPX Plaintiffs are not "efficient enforcers" of NBA-related claims under the four-factor efficient enforcer analysis, which weighs heavily against them.  The injury asserted by the SPX Plaintiffs—allegedly inflated prices for the advertising on Facebook.com—is indirect at best and causally unconnected to the NBA.  Other classes of plaintiffs are better suited to pursue the NBA-related claims.[1]  And SPX Plaintiffs' damages claim is entirely speculative.  *See Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 778 (2d Cir. 2016) (listing "efficient enforcer" factors).

*Directness*.  Antitrust standing requires direct harm caused by the alleged conduct.  *See id.*; *see also IQ Dental Supply, Inc. v. Henry Schein, Inc.*, 924 F.3d 57, 65 (2d Cir. 2019) ("The first efficient-enforcer factor requires a direct injury" which "means close in the chain of causation."); *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 19 F.4th 127, 134-35 (2d Cir. 2021) (antitrust liability is limited "to parties injured at the first step of the causal chain of the defendants' actions").

SPX Plaintiffs allege no causal connection whatsoever between their alleged injury and the NBA.  They claim that they "paid supracompetitive prices by purchasing advertising from Facebook," Opp. 17, but fail to allege any plausible mechanism by which the NBA had any effect on Facebook.com ad prices.  SPX Plaintiffs argue that "the Agreement included the curtailment of the advanced development of the header bidding exchange, and as a result supported the inflated pricing of advertising on Facebook."  Opp. 12.  But they never plead, nor explain, how the development of header bidding (which operates on publisher websites), would

---

[1] Google does not concede that the NBA is anticompetitive, regardless of the plaintiff bringing these claims.

2

have any effect on the price of Facebook.com ads (which are definitionally exclusive to Facebook). SPX Plaintiffs also allege that "[t]he fact that the Agreement only explicitly concerned Google's exchanged-based [sic] advertising does not mean that Facebook's own ad network was unaffected." Opp. 17. That observation is purely speculative and ultimately irrelevant since SPX pleaded no such effect. SPX Plaintiffs must affirmatively plead *facts* showing that they were affected directly and they have offered none. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564-66 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

While none is alleged, any link between Facebook.com ad prices and open-web header bidding or ad exchange prices would necessarily be multi-step and indirect. SPX Plaintiffs effectively concede the point in their Complaint: based on their allegations, the NBA concerned FAN ad network and ad placement on third-party properties—not on Facebook.com. *See* Compl. ¶¶ 176, 218; Mot. 10. It would take multiple (entirely unpleaded and unexplained) steps to get from FAN ad network placement on third-party properties to prices on Facebook.com. *See Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 540 (1983) (affirming partial dismissal because "the chain of causation" between the alleged conduct and injury contained "vaguely defined links"); *see also Laydon v. Mizuho Bank, Ltd.*, 2014 WL 1280464, at *9 (S.D.N.Y. Mar. 28, 2014), *aff'd sub nom. Laydon v. Cooperatieve Rabobank U.A.*, 51 F.4th 476 (2d Cir. 2022) and 55 F.4th 86 (2d Cir. 2022) (finding that plaintiff is not an efficient enforcer where "[p]laintiff alleges a causal chain with at least four discrete links, requiring a complicated series of market interactions").

**Umbrella Standing.** While SPX Plaintiffs do not explicitly rely on an "umbrella standing" theory, they are obviously improper umbrella plaintiffs. The "umbrella" issue arises when a plaintiff who deals with non-defendants alleges injury by virtue of the defendants'

conspiracy.  *Gelboim*, 823 F.3d at 778.  Umbrella standing is likewise limited by the *causation* requirement because of the concern that it can "vastly extend the potential scope of antitrust liability."  *Id*. at 779.

Courts in the Second Circuit do not recognize umbrella standing based on an indirect injury.  For example, in *In re Am. Express Anti-Steering Rules*, merchants who did not accept American Express cards, claimed that they were harmed by the company's anti-steering policies.  *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 19 F.4th at 134.  The Second Circuit denied umbrella standing to the merchants because they did not have a contractual relationship with American Express such that the policies applied to them directly.  *Id*. at 140.  In another case involving an alleged conspiracy among banks to depress LIBOR (a benchmark interest rate), *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, the Second Circuit considered whether plaintiffs, who purchased LIBOR-based bonds from non-conspiring banks, had standing to sue the alleged conspirators.  22 F.4th 103, 114 (2d Cir. 2021).  The court denied umbrella standing, reasoning that the third parties' independent decisions to reference LIBOR in their bonds "broke the causal chain."  *Id*. at 109.  In *Gross v. New Balance Ath. Shoe Inc.*, consumer plaintiffs asserted standing based on the alleged conspiracy's effect on the prices of athletic shoes.  955 F. Supp. 242, 243-44 (S.D.N.Y. 1997).  The court denied umbrella standing in part because "the causal connection" between the asserted injury and conduct was "attenuated by significant intervening causative factors," such as independent pricing decisions.  *Id.* at 245-47;  *see also Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp.*, PLC, 22 F.4th 103, 116 (2d Cir. 2021) (plaintiffs "whose injuries stemmed from their deals with third parties" are not efficient enforcers).

SPX Plaintiffs do not have umbrella standing because they did not buy any advertising covered or affected by the NBA. SPX Plaintiffs admit that they "did not purchase advertising through FAN, third-party properties, an exchange, or an auction involving Google's ad exchange." Opp. 17. And as explained above, they do not plead any plausible mechanism connecting their alleged injury to the NBA, making their allegations insufficient to support an inference of umbrella standing.

***Identifiable Class of Other More Direct Victims***. In two sentences devoid of any substance, SPX Plaintiffs claim that they are "motivated to vindicate the public interest in antitrust enforcement," and therefore should be allowed recovery. Opp. 19. This is not enough. "The antitrust laws recognize that not every victim of an [alleged] antitrust violation needs to be compensated" for antitrust laws to be properly enforced. *IQ Dental Supply*, 924 F.3d at 66 (internal quotation marks and citation omitted). Courts often hold that indirect victims are ill-suited to "vindicate the public interest in antitrust enforcement." *See In re Am. Express Anti-Steering Rules Antitrust Litig.*, 433 F. Supp. 3d 395, 4011-12 (E.D.N.Y. 2020) (finding that merchants who accepted American Express cards and were actually bound by the anti-steering provisions were "an obvious class of more direct victims" to enforce antitrust laws); *New Balance Ath. Shoe Inc.*, 955 F. Supp. at 245-47 (recognizing that consumers who purchased directly from conspiring retailers were better suited to bring antitrust claims). Those who actually used FAN or purchased display ads on third-party properties through Meta are better suited to pursue any NBA-related claims. And of course, as the Court is well aware, there already have been plenty of NBA claims in this MDL, including the dismissed States' claim.

***Speculative damages***. SPX Plaintiffs' damages claim for overpayment for Facebook.com ads is entirely speculative. They never allege *how* the NBA affected the price of

Facebook.com ads.  SPX Plaintiffs argue that damages are not "highly speculative" because they were "directly caused by Google's conduct."  Opp. 19.  They claim that they are not required to "identify a method of calculating damages" because "the fact that [they] were injured is enough." *Id*.  That is incorrect.  "While some degree of uncertainty stems from the nature of antitrust law and is permitted, plaintiffs must be able to allege that they could arrive at a just and reasonable estimate of damages."  *Fund Liquidation Holdings LLC v. UBS AG*, 2021 WL 4482826, at *7 (S.D.N.Y. Sept. 30, 2021) (internal quotation marks and citation omitted), *decision clarified on reconsideration*, 2022 WL 3904556 (S.D.N.Y. Aug. 30, 2022); *see also New Balance Ath. Shoe Inc.*, 955 F. Supp. at 246-47 (recognizing difficulties in identifying and quantifying damages based on indirect injury).  Claiming that damages "have quantifiable components" does not remedy the issue because SPX Plaintiffs never explain what those are or how they would be quantified.  Opp. 19.  Nor can they, because there is no plausible way to connect Facebook.com advertising prices to the NBA without "wholesale speculation."  *See Paycom Billing Servs. v. Mastercard Int'l.*, 467 F. 3d 283, 294 (2d Cir. 2006).

For the reasons set forth above, this Court should find that SPX Plaintiffs are not "efficient enforcers" of the NBA-related claims.

### B.  SPX Plaintiffs Did Not Suffer Antitrust Injury.

SPX Plaintiffs fail to allege any facts suggesting that they participated in any relevant market or suffered injuries "inextricably intertwined" with those of market participants.  *See In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d at 158.  SPX Plaintiffs concede that they did not participate in any possible relevant markets for "online display advertising markets, including the sell-side market for ad servers," Compl. ¶ 359, "open display and in-app inventory," Compl. ¶ 272, or "ad exchanges" Compl. ¶ 327; *see* Opp. 16 (SPX Plaintiffs did not purchase ads through auctions or exchanges).

6

Instead, SPX Plaintiffs claim to have participated in an "online display advertising market," Opp. 16, but they do not explain how the NBA affected competition in such an alleged market. As discussed below, hanging their claim on an "online display advertising market" proves too much. With respect to display advertising, SPX Plaintiffs allege that Google operates an ad exchange (not that it is a display advertising publisher in the alleged "online display advertising market"). Compl. ¶ 19.

## II.   SPX PLAINTIFFS FAIL TO ALLEGE THAT THE NBA VIOLATES SECTION 1 OF THE SHERMAN ACT.

### A.   Plaintiffs' Argument that Google and Meta Are Horizontal Competitors Does Not Aid Its Case.

SPX Plaintiffs' attempt to re-characterize Google and Meta's relationship under the NBA fails. Google and Facebook are fierce competitors, but not in any way relevant to Plaintiffs' NBA claim. SPX Plaintiffs "allege that Google and Facebook are direct horizontal competitors, both competing for advertising dollars directed to their respective websites." Opp. 13-14. Google sells search advertising on Google.com and Facebook sells display advertising on Facebook.com. But SPX Plaintiffs plead that search advertising and display advertising are "not interchangeable." Compl. ¶¶ 37-40. And, by SPX's allegations, the NBA does not have anything to do with advertising on Google.com or Facebook.com. *See* Compl. ¶ 176 (FAN submitted bids to open-web publishers); *id.* ¶ 218 (citing Google document about Google competing with FAN for third-party publishers' inventory).

SPX Plaintiffs attempt to overturn what this Court has already decided in the States' case—that the NBA is "principally a vertical agreement" subject to the rule of reason standard. MTD Op. 28. As explained in Google's opening brief, Mot. 6, this Court analyzed the structure of the auction, and concluded that while the NBA has potential "horizontal consequences," MTD Op. 28, the relationship between Google and Meta at issue here is "hybrid" and "predominantly

vertical." *Id.* at 29 (discussing *Copy-Data Sys., Inc. v. Toshiba Am., Inc.*, 663 F.2d 405, 411 (2d Cir. 1981)); *see 2238 Victory Corp. v. Fjallraven USA Retail, LLC*, 2021 WL 76334, at *9-*13 (S.D.N.Y. Jan. 8, 2021) (rule of reason applies to "dual distribution" arrangements); *Gatt Communs., Inc. v. PMC Assocs., L.L.C.*, 2011 WL 1044898, at *8 (S.D.N.Y. Mar. 10, 2011) (per se rule is inappropriate for relationships with both horizontal and vertical elements); *see also Copy-Data*, 663 F.2d at 411 ("Expansion of the per se rule should be approached with great caution.") (internal quotation marks and citation omitted). SPX Plaintiffs offer no new facts to change this analysis.

SPX Plaintiffs argue that the above analysis does not hold for the "digital advertising market for direct transactions between the advertisers . . . and Facebook." Opp. 13. Even if SPX Plaintiffs properly alleged a "digital advertising market for direct transactions between the advertisers . . . and Facebook," which they do not, SPX Plaintiffs make no plausible connection between this market and their conspiracy claim that is entirely based on the NBA agreement and has nothing to do with direct transactions between advertisers and Meta.

### B. Plaintiffs Fail to Plausibly Allege that the NBA Is Unlawful.

Plaintiffs insist on reviving NBA-related claims because they have "a different complaint by a different set of plaintiffs, with a different set of facts" from the States' case. Opp. 8. As discussed above, a "different set of facts" as to the alleged relationship between Google and Meta does not aid SPX Plaintiffs' claim.

SPX Plaintiffs seem to equate the mere existence of the NBA to "direct evidence" of a conspiracy. Opp. at 8. To properly allege a conspiracy, SPX Plaintiffs are required to either "assert direct evidence" or "present circumstantial facts" sufficient to support an inference of an unlawful agreement or conspiracy. *See Mayor & Council of Baltimore v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013). SPX Plaintiffs do neither.

Aside from alleging that the NBA was negotiated "in secret," SPX Plaintiffs offer no facts to suggest that Google and Meta agreed to limit Meta's use of header bidding.  Opp. at 8. They completely ignore the terms of the agreement that do not require Meta to withdraw its support for header bidding, and that expressly allow Meta to offer and develop competing products.  *See* NBA, ECF No. 221-1, at § 2.4(e) ("[T]he foregoing does not restrict Facebook from developing or enhancing a product or service that competes with DoubleClick for Publishers, AdX, or AdMob . . . .").

 SPX Plaintiffs also argue that their claims should proceed because of *Klein v. Meta Platforms*, *Inc.*—a case allegedly involving the NBA that survived Meta's 12(b)(6) motion. 2022 WL 17477101 (N.D. Cal. Dec. 6, 2022).  SPX Plaintiffs mischaracterize the court's opinion, which focused on the alleged effects in a "social network market"—a market not alleged by SPX Plaintiffs—and did not consider Google's competition for the NBA.

Nor do SPX Plaintiffs offer any circumstantial evidence to plausibly infer an agreement between Google and Meta outside the explicit terms of the NBA.  SPX Plaintiffs argue that the following allegations constitute sufficient circumstantial evidence: (i) Meta allegedly abandoning "years of research and development" against its self-interest; (ii) allegedly inequitable agreement terms that gave Meta access to Google's data but protected Meta's own data; and (iii) "numerous" communications between Google and Meta.  Opp. 10.

These allegations are incapable of curing the defects in the SPX Plaintiffs' Complaint. SPX Plaintiffs offer no new evidence to substantiate the claims that Meta had forsaken its initial research and development plans as the result of the NBA, or that it has done so against its self-interest.  This Court has already found that the NBA was "advantageous to Google and to Facebook," MTD Op. 21, and "made perfect business sense."  *Id.* at 22.  SPX Plaintiffs also do

not explain why allegedly inequitable terms relating to data access make the NBA unlawful, or were not "motivated by the legitimate, pro-competitive desire" to secure business from Meta for example.  MTD Op. 22.  As to the "numerous of allegations which show communication between the two companies," Opp. 10, this Court has already concluded that "[n]owhere in these internal memos is there a hint that Facebook was offering a commitment to substantially curtail use of header bidding or that Google was insisting on such a commitment."  MTD Op. 24.

Finally, SPX Plaintiffs argue that "Google's explanations for its conduct create a factual dispute which requires a denial of [its] Motion to Dismiss."  Opp. 11.  This is incorrect.  The question on a motion to dismiss is whether SPX Plaintiffs plead sufficient facts to permit the inference of the conspiracy they allege.  *See Mayor & Council of Baltimore v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013).  As discussed above, SPX Plaintiffs fail to do so.

## CONCLUSION

For the foregoing reasons, Google respectfully requests that this Court dismiss SPX Plaintiffs' Complaint in full and with prejudice.

Dated: March 31, 2023

Respectfully Submitted,

*/s/ Justina K. Sessions*
Justina K. Sessions
Jonathan Jacobson
Jessica Lonergan
Mikaela Evans-Aziz (admitted *pro hac vice*)
Vadim Egoul
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
One Market Plaza, Spear Tower
Suite 3300
San Francisco, CA 94105
(415) 947-2000

jsessions@wsgr.com
jjacobson@wsgr.com
jlonergan@wsgr.com
mevansaziz@wsgr.com
vegoul@wsgr.com

Eric Mahr
Julie Elmer
Andrew J. Ewalt (admitted *pro hac vice*)
Jan Rybnicek (admitted *pro hac vice*)
Lauren Kaplin
Robert J. McCallum
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street NW, 10th Floor
Washington, DC 20005
(202) 777-4500
eric.mahr@freshfields.com
julie.elmer@freshfields.com
andrew.ewalt@freshfields.com
jan.rybnicek@freshfields.com
lauren.kaplin@freshfields.com
rob.mccallum@freshfields.com

John Harkrider
Daniel Bitton
Bradley Justus (admitted *pro hac vice*)
Koren Wong-Ervin (admitted *pro hac vice*)
AXINN, VELTROP & HARKRIDER
LLP
114 West 47th Street
New York, NY 10036
Telephone: (212) 728-2200
jharkrider@axinn.com
dbitton@axinn.com
bjustus@axinn.com
kwongervin@axinn.com

*Counsel for Defendant Google LLC*