

**Washington**
700 13th Street, NW
10th Floor
Washington, DC 20005-3960
T +1 202 777 4500 (Switchboard)
  +1 202 777 4545 (Direct)
F +1 202 507 5945
E eric.mahr@freshfields.com
www.freshfields.com

<u>**Via ECF**</u>

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

May 15, 2023

Re:     *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC)

Dear Judge Castel:

On behalf of Defendants Alphabet Inc., Google, LLC, and YouTube, LLC ("Google"), we write to correct various inaccuracies and misrepresentations in Plaintiffs' letter dated May 11, 2023 concerning the May 30, 2023 deadline for substantial completion of production of documents and data in the above-captioned MDL, ECF No. 544 ("Letter" or "Ltr."). A conference is scheduled for 2pm tomorrow, May 16, 2023.

By the substantial completion deadline, Google will have produced—at minimum—well over 3 million documents to Plaintiffs. Those documents include many produced during parallel investigations conducted by antitrust enforcers from the U.S. Department of Justice ("DOJ") and the Office of the Attorney General of the State of Texas ("Texas OAG") into the conduct at issue in this MDL. In setting the deadlines for fact discovery, the Court stated that it had "considered the substantial document production that has already been made in these actions," ECF No. 394 ¶ 5, which Google understands to be a reference to its initial production to all Plaintiffs, more than a year ago, of more than 2.25 million documents that were previously produced to the DOJ and Texas OAG before State Plaintiffs' case was filed. As the Court is aware, Google has also agreed to produce, by the end of May, an additional tranche of approximately 800,000 documents that have been produced to the DOJ since State Plaintiffs filed their case. ECF No. 539.

Knowing full well that this production of over 3 million documents is enormous and covers the issues in this case, Plaintiffs now seek to downplay its significance by asserting that the DOJ and Texas OAG did not negotiate over or agree to the search terms. But the DOJ negotiated with Google over those search terms for more than three months, and the Texas OAG never objected to

the search terms that Google proposed.  While conducting their investigations, both agencies had tremendous leverage to demand that Google add more search terms to its proposal.  It is telling that, in the parallel proceedings in the Eastern District of Virginia, the DOJ has proposed only a limited number of additional search strings to supplement those used in its years-long investigation.  Google has agreed to all of those additions and told the Plaintiffs in this MDL over a week ago that they would also receive the output from applying the DOJ's additional search terms.

Against that backdrop, the amorphous and premature "issue" that Plaintiffs have asked this Court to consider is, in essence: How much further must Google go to satisfy the insatiable desire of various groups of private plaintiffs for more discovery?  All of Plaintiffs' gripes center on the areas where they demand more discovery than the Texas OAG needed to conclude its investigation and more discovery than the DOJ apparently believes it needs to proceed to trial.  Although Google does not concede that *any* more is required to meet its substantial-completion obligation, as further described below, Google has nevertheless agreed to undertake a comprehensive supplemental review to fill in gaps that might remain.

Unlike many Plaintiffs,[1] Google timely served its Responses and Objections to Plaintiffs' 301 Requests for Production of Documents, many of which contain multiple subparts, by the deadline specified in the Federal Rules of Civil Procedure (i.e., February 27, 2023).  And unlike any Plaintiffs, Google's Responses and Objections included a comprehensive proposal for providing documents and data promptly (Google's "Discovery Proposal," attached hereto as Exhibit A).[2]

In addition to producing the more than 3 million documents described above, Google informed Plaintiffs that it had embarked on a review of additional documents from the files of 119 custodians using 80 extremely broad search strings covering a 10-year period.  Ex. A at 2-3, 12-31.  Applying those parameters generated an additional review population of more than 2 million documents.   Recognizing that it would not be possible to complete that comprehensive

---

[1] All 17 State Plaintiffs missed the deadline for service of Responses and Objections to Google's discovery requests and then sought a retroactive extension on the basis that they were "confused" about the deadline to respond specified in the Federal Rules of Civil Procedure.  The Advertiser Class requested an extension to their deadline to serve Responses and Objections to Google's discovery requests, which Google gave.

[2] Minutes before filing their Letter, Plaintiffs asked Google to de-designate Google's February 27 letter but not its appendices.  If Plaintiffs had given Google time to respond then Google would have agreed to de-designate the letter.  Exhibit A contains both the February 27 letter and its Appendix A which sets forth the search strings included in Google's Discovery Proposal.  In Exhibit A we have redacted reference to three employee names, and we have also omitted Appendix B to the February 27 letter because it contains the names of 119 Google custodians, which is information that the Court has generally permitted to remain under seal.  *See* ECF Nos. 147 at 9, 151 at 1, 186 at 2, 189 at 1, 194 at 2, 250 at 1, 359 at 1, 395 at 1.

supplemental review in three months, Google told Plaintiffs on February 27 that its goal was to "produce as many responsive documents as possible by May 30, 2023."[3]  Ex. A at 3.

Feigning surprise, Plaintiffs now complain to the Court that Google has been hiding the ball regarding the contours of its Discovery Proposal.  But Plaintiffs' purported "frustration with the snail's pace of discovery-related negotiations in the MDL" rings hollow.  Eleven weeks ago, Google "offer[ed] to meet and confer about Google's plans for substantially completing its production of responsive materials by May 30, 2023."  Ex. A at 1.  Google offered Plaintiffs 19 hours over four days to discuss their document Requests and 24 hours spread across five days to discuss their data Requests.  Ex. A at 3.  Out of that 43 hours of combined availability, Plaintiffs scheduled a single one-hour meet and confer on March 24, 2023.  Plaintiffs set no agenda and declined Google's invitation to identify any specific Requests for discussion.[4]

Citing no law, Plaintiffs also complain that Google has acted unilaterally and "eschew[ed] standard discovery practice" in its conduct of that supplemental review.  Ltr. at 2.  But courts in this District adhere to Sedona Principle 6 which provides that "the responding party is best situated to decide how to search for and produce ESI responsive to [Plaintiffs'] document requests."  *Hyles v. New York City*, 2016 WL 4077114, at *3 (S.D.N.Y. Aug. 1, 2016) (denying motion to compel).[5]  In the ordinary course, "the responding party is entitled to select the custodians most likely to possess responsive information and to search the files of those individuals."  *Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2017 WL 2305398, at *2 (S.D.N.Y. May 18, 2017).

Even if that were not so, Plaintiffs' claims of improper unilateral action by Google are just plain wrong.  Pursuant to the governing ESI Order, Google requested that if Plaintiffs planned to "propose modifications or a list of additional [search] terms," ECF No. 508, ¶ III.2, they do so by March 13, 2023.  Ex. A at 3.  Plaintiffs missed that deadline by several weeks, eventually proposing an additional 188 search terms which would yield an additional *8 million* documents (before

---

[3] Plaintiffs have taken the position that "[b]eyond the 800,000 documents, Google still needs to produce hundreds of thousands of documents responsive to Plaintiffs' requests for production."  ECF No. 542 at 1.  On top of the 800,000 documents that will soon be produced,  Google expects to have produced by May 30 at least 140,000 additional documents.  Google is also preparing another set of over 160,000 documents, which it aims to produce by May 30 or shortly thereafter, depending on processing time.

[4] Plaintiffs have adopted similar practices in the handful of meet and confers that have followed.  In the last two weeks, Plaintiffs have scheduled two meet and confers where their sole agenda item is the date for the next meet and confer, even though Google has repeatedly emphasized the need for a detailed agenda given the sprawling nature of Plaintiffs' 301 Requests for Production.

[5] *See also Kaye v. N.Y. City Health & Hosps. Corp.*, 2020 WL 283702, at *2 (S.D.N.Y. Jan. 21, 2020) ("When documents are produced in discovery, . . . the Court does not believe that, in the first instance, the receiving party has a right to examine and evaluate the way the production was made or require collaboration in the review protocol and validation process.").

deduplication), plus revisions to 14 out of 24 of the already extremely broad DOJ ad tech investigation search strings.[6]  Google has already agreed to 59 of Plaintiffs' 188 additional search strings and invited Plaintiffs to explain or further refine their remaining proposals.  Later this week, the parties are scheduled to discuss Plaintiffs' belated proposals for additional search terms and a further 75 custodians on top of the 119 Google is already searching.[7]  The scope of Google's supplemental review has grown as a result of the accommodations that Google has already made to Plaintiffs, and may continue to grow as a result of further negotiations.

Finally, we note that Plaintiffs' representation that "Google has thus far refused to search centrally stored non-custodial sources of documents" is false.  Ltr. at 2.  Thus far, Google has contacted more than 50 Google employees to ascertain non-custodial sources and has searched more than 25 such sources.  Google has twice told Plaintiffs that it would conduct a diligent search of non-custodial sources and, upon seeing Plaintiffs' letter, promptly advised them that their representation to the Court was not true.  Regrettably, Plaintiffs chose not to correct it.

* * *

Achievement of substantial completion should not be measured by reference to the boundless desire of private plaintiffs for "more" of something: more search terms, more custodians, or simply more documents.  Google respectfully submits that its production of over 3 million documents by the end of May will satisfy that obligation because it reflects the output of investigations conducted by DOJ and state enforcement agencies covering the issues in dispute.  Although Google respectfully submits that no more is needed, Google has nevertheless agreed to fill potential gaps, including by negotiating in good faith with the various Plaintiff constituencies in an effort to meet their various burdensome demands.  We further note that Plaintiffs have said little about their own plans to meet the substantial completion deadline, and some of them have yet to even propose custodians or search terms.

In the event that the Court deems it appropriate to adjust the deadline for substantial completion, Google respectfully submits that the Court may wish to align it with the equivalent deadline in the Eastern District of Virginia, i.e., July 7, 2023.  By that date, Google expects to have produced documents responsive to the targeted additional search terms recently requested by the

---

[6] Plaintiffs did not propose any revisions to the 56 Texas OAG search strings.

[7] As to Plaintiffs' requests for data, just as it did in response to Plaintiffs' requests for documents, Google offered concrete proposed responses in its Responses and Objections served on February 27.  Plaintiffs indicate in their letter that Google has not agreed to produce any data.  This is incorrect.  Google has not just already agreed to produce data; it has in fact already *produced* 24 terabytes of auction data (comprising 280 billion bids) from Google Ad Manager, as well as the entire four years of data contained in its header bidding monitoring database.  Google also expects to produce, by the end of May, monthly data on web display transactions involving Google Ads, DV360, and Google Ad Manager going back as much as nine years.

DOJ.  At that point, there should be no credible question that substantial completion has occurred, even if the private plaintiffs continue to demand more.

Respectfully submitted,

*/s/* Eric Mahr
Eric Mahr
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street, NW
10th Floor
Washington, DC 20005
Telephone: (202) 777-4545
Email: eric.mahr@freshfields.com

Justina K. Sessions
WILSON SONSINI GOODRICH &
ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105
Telephone: (415) 947-2197
Email: jsessions@wsgr.com

*Counsel for Defendant Google LLC*

CC: All Counsel of Record (via ECF)