# WILSON SONSINI

Wilson Sonsini Goodrich & Rosati
Professional Corporation

One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105-1126

O: 415.947.2000
F: 866.974.7329

JUSTINA K. SESSIONS
Email: jsessions@wsgr.com
Direct dial: (415) 947-2197

May 19, 2023

**VIA CM/ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:       *In re Google Digital Advertising Litigation*, **1:21-md-03010 (PKC)**

Dear Judge Castel:

On behalf of Defendants Google LLC, Alphabet Inc., and YouTube LLC, we respectfully submit this pre-motion letter in anticipation of moving to dismiss under Federal Rule of Civil Procedure 12(b)(6) the majority of the federal-law claims in the Second Amended Complaint filed by Inform, Inc. ("SAC," ECF No. 535).[1]  As Inform has already amended its complaint twice, Google will move to dismiss these claims with prejudice.  Although Inform cites no specific law as the bases for its tortious interference and fraud claims, Google assumes that those are state common-law claims and therefore does not move to dismiss them at this time.  Google also respectfully requests that discovery remain stayed for Inform's claims that do not overlap with the claims proceeding in the States' case.  Pursuant to Your Honor's Individual Practices, we note that there is no conference scheduled at this time.

## I.    Inform has not plausibly alleged that Google monopolized or attempted to monopolize an "online video advertising" market.

Each of Inform's federal antitrust counts (Counts I - V) involves an assertion that Google has monopoly power or a dangerous probability of achieving monopoly power in an alleged "online video advertising" market.  Yet Inform fails to allege facts that would support such an inference.  Inform alleges that Google has 52% of such a market, SAC ¶ 116, which by itself is

---

[1] In its third complaint, Inform now alleges for the first time that it used Google's publisher ad server and paid ad server fees to Google.  In light of these allegations, which must be accepted as true at this stage, Google does not move to dismiss on the basis of standing, but reserves all right to assert arguments related to these allegations at a later date.

**WILSON
SONSINI**

May 19, 2023
Page 2

insufficient as a matter of law to support either a monopolization or an attempted monopolization claim. *See Pepsico, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 109 (2d. Cir. 2002) ("Absent additional evidence . . . a 64 percent market share is insufficient to infer monopoly power."); *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993) (requiring a plaintiff to show "predatory or anticompetitive conduct" for an attempted monopolization claim).

II.   **The crux of Inform's complaint—Google's transition from Flash to HTML5—does not constitute anticompetitive conduct.**

Inform claims that Google's transition from Flash technology to HTML5 harmed competition. It alleges that advertisers were "faced" with a choice to either convert content to HTML5 or use Google products. SAC ¶ 246. But the industry-wide adoption of HTML5 cannot be exclusionary conduct by Google. The transition from Flash to HTML5 was a technological change initiated by the entire industry, not just Google. *See, e.g.*, Salvador Rodriguez, *Adobe to Pull Plug on Flash, Ending an Era*, REUTERS (July 25, 2017), https://www.reuters.com/article/us-adobe-systems-flash/adobe-to-pull-plug-on-flash-ending-an-era-idUSKBN1AA22R (describing the decline in Flash technology due to concerns about Flash's reliability, security, and performance); *see also* Steve Jobs, *Thoughts on Flash*, APPLE (April 2010), https://web.archive.org/web/20100501010616/https://www.apple.com/hotnews/thoughts-on-flash/ (writing an open letter criticizing Flash technology). And Inform admits that HTML5 is "open source" technology not owned or otherwise controlled by Google. *Id*. ¶ 255. Advertisers could create HTML5 content without using a Google product or service. *See* Defs.' Mot. to Dismiss the First Am. Compl., *Inform Inc. v. Google LLC*, No. 19-cv-05362-JPB, ECF No. 61-1, at 12 (N.D. Ga. Oct. 21, 2022) ("2022 MTD"). Inform complains that Google helped its own advertising customers transition ad content to HTML5, but providing a service to its customers—and not providing that service for free to non-customers—does not render the transition exclusionary or anticompetitive.[2]

Inform also claims that Google's switch away from Flash "eviscerated" direct ad sales and impacted "dozens" of customers "virtually overnight." SAC ¶ 253. But any alleged impact on "dozens" of customers (out of thousands) does not sufficiently demonstrate an effect on competition in the online video advertising market as a whole. *See Balaklaw v. Lovell*, 14 F.3d 793, 797-99 (2d Cir. 1994) (requiring market-wide harm); *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 543 (2d Cir. 1993) (requiring "proof of harm to the whole market"). Nor is Inform's allegation plausible. According to Inform, Google phased out Adobe Flash across a few years, which allowed advertisers ample time and means to avoid any supposed "overnight" impact. SAC ¶¶ 244-49; *see also* Defs.' Mot. to Dismiss the First Am. Compl., *Inform Inc. v. Google LLC*, No. 19-cv-05362-JPB, ECF No. 38-1, at 11-12 (N.D. Ga. Nov. 13, 2020) ("2020 MTD").

---

[2] Inform also asserts that this conduct "foreclosed competition in the ad exchange . . . market," SAC ¶ 254, but makes no connection whatsoever between this conduct and ad exchanges.

**WILSON
SONSINI**

May 19, 2023
Page 3

Finally, Inform complains that in June 2015 Google Chrome began to automatically pause video ads that were not "central to the webpage," such as "animations on the side."  SAC ¶ 248.  In addition to being time-barred, this allegation fails to state a claim.  Inform does not plausibly allege that this product design decision—to not automatically play video ads that were not central to the webpage—lacked a valid business purpose.  *See In re Adderall XR Antitrust Litig.*, 754 F.3d 128, 133 (2d Cir. 2014) (finding conduct to be anticompetitive if it occurs "without a legitimate business purpose" and "makes sense only because it eliminates competition") (internal quotation marks omitted).  Nor does Inform make any allegation of anticompetitive harm.  Inform does not allege that Google prevented any of Inform's advertisements from playing at all.

### III.    Inform's tying claim related to YouTube ad inventory fails as a matter of law.

Inform alleges that Google "coerce[d] *advertisers* to license its ad buying tools by conditioning the sale of its YouTube ad inventory (tying product) on the use of Google's separate ad buying tools (tied products)."  SAC ¶ 178 (emphasis added).  That Google sells its own YouTube ad inventory using its own advertising technology is about as unremarkable as it gets.  It is not predatory or exclusionary.

Inform does not plausibly allege any injury related to this so-called "tie."  Inform fails to allege that it was "forced" to use any Google ad buying tool and never claims to have bought YouTube inventory.  The only harm Inform alleges is that the so-called tie made rival tools "less attractive" to advertisers, allegedly harming "Inform's ability to compete for advertising spend on its digital media and advertising platform."  SAC ¶ 182.  This falls far short of "forcing" Inform (or anyone else) to use Google's products.  *See* 2020 MTD at 21; 2022 MTD at 23 (identifying similar deficiencies in Inform's First Amended Complaint).  Nor does it allege harm to competition in the alleged "online video advertising market" as a whole.[3]

### IV.    Inform's tying claim related to AdX and DFP fails because Inform's own allegations demonstrate a lack of coercion.

Inform alleges that Google "used and leveraged the monopoly power of its AdX ad exchange to coerce publishers to license its DFP publisher ad server" by "forcing customers and publishers to license Google's ad server if they wanted to receive live, competitive bids from AdX."  SAC ¶¶ 168, 170.  While other plaintiffs' similar claims survived a motion to dismiss, Inform has pled itself out of court.  Inform was not coerced to use DFP because there was no economic imperative for it to receive "live, competitive bids from AdX."  *See id.* ¶ 171.  Inform alleges that it "ranked AdX last or close to last" among exchanges, and that "other exchanges offered higher prices to publishers."  *Id.* ¶ 189.  If that is true, Inform did not need to receive live, competitive bids from AdX.  And while Inform alleges that some unidentified publishers were

---

[3] Inform asserts that this alleged tie foreclosed competition in the alleged ad server and ad exchange markets as well, SAC ¶ 188, but fails to connect the conduct to any effects in those markets.

**WILSON SONSINI**

May 19, 2023
Page 4

"required" to sign contracts that "included both Google's DFP ad server and Google's AdX exchange," SAC ¶ 173, Inform never alleges that it signed such a contract.

## V.    Inform's leveraging claims fail as a matter of law.

Inform claims that Google "leverage[d]" internet search services to gain power in the alleged online video advertising market.  SAC ¶ 293.  It specifically alleges that Google forced publishers to use Accelerated Mobile Pages (AMP) and prioritized YouTube in its search results. *Id*.

**AMP.**  Inform alleges that Google required publishers to use AMP, a software development that was supposedly incompatible with Flash advertisements and header bidding. SAC ¶¶ 293-297.  The Court already dismissed similar allegations in the States' case.  MTD Op., ECF No. 308, at 70-72.  Moreover, any leveraging claim based on AMP must fail because AMP is not exclusionary. *Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 415 n.4 (2004) ("[L]everaging presupposes anticompetitive conduct[.]").  Google has no obligation to design its web pages with competitors in mind. *See Novell, Inc. v. Microsoft Corp.,* 731 F.3d 1064, 1072 (10th Cir. 2013) (Gorsuch, J.) (no duty to "lend smaller rivals a helping hand").  Finally, Inform completely fails to explain how Google allegedly "dropp[ing] the PageRank of sites that did not adopt AMP" could possibly have affected competition as a whole in the alleged market for online video advertising. *See* SAC ¶ 297.

**YouTube Search Results.**  Inform also makes a passing reference to Google's "premium placement" of YouTube in search results.  SAC ¶ 298.  That allegation is not enough to constitute a leveraging claim.  Inform has not alleged that YouTube's high search ranking is in any way harmful to competition*. See Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1141-42 (9th Cir. 2022) (affirming that Google's top placement of Google Images in search results does not plausibly harm competition in an online search advertising market).  Nor does Inform explain at all how YouTube's search ranking was an "attempt to monopolize the online video advertising market."  SAC ¶ 293.

## VI.    Inform alleges claims pleaded by other MDL plaintiffs that fail as a matter of law.

**Hashed User IDs.**  Mirroring claims from other plaintiffs, Inform includes allegations about hashed user IDs that have already been dismissed by the Court.  MTD Op., at 40-44.  Like many private plaintiffs and the States, Inform alleges that Google encrypted user IDs, thereby depriving publishers of user data.  SAC ¶¶ 267-273; *see also* Daily Mail Am. Compl., ECF No. 400, ¶¶ 108-13; Advertisers' Compl., ECF No. 399, ¶¶ 184-86; Publishers' Am. Compl., ECF No. 408, ¶ 217; States' TAC, ECF No. 195, ¶ 257.  Inform also repeats verbatim inadequate allegations that Google's privacy justification is supposedly pretextual. *Compare* Daily Mail Am. Compl. ¶ 112 *with* SAC ¶ 271.

**WILSON
SONSINI**

May 19, 2023
Page 5

Hashed IDs are not anticompetitive because Google has no duty to share unencrypted user IDs with rival ad exchanges or other alleged competitors like Inform. *See* MTD Op., at 42-43; *see also Novell,* 731 F.3d at 1074 ("Even a monopolist generally has no duty to share (or continue to share) its intellectual or physical property with a rival."); *Dreamstime.com*, 54 F.4th at 1142 (finding that Google's "captur[ing]" of user and advertiser data is a lawful competitive advantage).

**Acquisitions.** Like the Advertisers, Inform alleges acquisition-based claims that are time-barred. SAC ¶¶ 95-106; *see also* Advertisers' Compl., ¶¶ 167-171. Inform includes allegations about acquisitions ranging from 2003 to 2011.

Inform must allege a "new and independent act that is not merely a reaffirmation of a previous act" and which "inflict[s a] new and accumulating injury." *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 68-69 (2d Cir. 2019). Inform offers no underlying theory of liability for these acquisitions, only that Google failed to "grow[]organically." SAC ¶ 95; *see also* 2020 MTD at 3 ("Plaintiff also describes Google acquisitions . . . but does not base any claim on them."). That allegation does not constitute an independent act that inflicts injury. *See New York v. Meta Platforms, Inc.*, No. 1:20-cv-03589, slip op. at *18-30 (D.C. Cir. Apr. 27, 2023) (rejecting the State's argument that the Instagram and WhatsApp acquisitions are part of an anticompetitive "course of conduct"); *In re Google Digital Advert. Antitrust Litig.*, 2021 WL 2021990, at *4 (N.D. Cal. May 13, 2021) ("[T]he statute of limitations poses a significant problem to Plaintiffs' acquisition-based allegations.").

**Bypassing direct deals on high news days.** Like the Newspapers, Inform alleges that Google bypassed direct ad campaigns on high news days to favor cheaper programmatic ads. SAC ¶¶ 229-235; Newspapers' Am. Compl., ECF No. 401, ¶¶ 257, 269-71. Inform alleges that Inform "and other publishers" were "deprived" of a "neutral ad server," but that does not describe harm to competition or the competitive process in any relevant market. SAC ¶ 235. It also makes the vague allegation that "other competitors" in addition to Inform "lost the ability to compete for additional ad spend." SAC ¶ 234. Even if true, there is generally no duty to help competitors succeed. *Trinko*, 540 U.S. at 407-08 ("Compelling such firms to share the source of their advantage is in some tension with the underlying purpose of antitrust law . . . .").

**Browser defaults.** Like the Newspaper plaintiffs, Inform claims that the default installation of Google's Chrome browser on some phones allowed Google to advance its alleged monopoly in digital advertising. *Compare* SAC ¶ 291 ("Chrome Browser now serves as a way for Google to control the entry points for its core [advertising] markets") *with* Newspapers' Am. Compl. ¶ 341 ("Chrome Browser now serves as a way for Google to control the entry points for its advertising products."). This allegation falls short of a leveraging claim or any anticompetitive conduct. Google's practices related to its browser bear no relationship to the alleged relevant markets for ad servers, ad exchanges, and online video advertising.

**WILSON
SONSINI**

May 19, 2023
Page 6

The only explanation Inform offers is the conclusory statement that a Chrome browser default "enhances Google's ability to provide preferential placement of its own advertising products and services to the detriment of Inform and other competitors."  SAC ¶ 290.  Inform provides no plausible explanation as to how default installation of Chrome on any device would somehow allow Google to favor its ad tech products.  It also does not sufficiently explain how pre-installation of Chrome "disadvantages Inform and other competitors."  SAC ¶ 289; *see also* 2020 MTD at 32; 2022 MTD at 20.  For instance, if Inform means to suggest that pre-installation of Chrome disadvantaged Inform because Chrome no longer supported Flash, Inform fails to allege that any alternative browser that might have been pre-installed would have supported Flash.  (Such an allegation would be implausible given that Apple's Safari, Mozilla's Firefox, and Microsoft's Edge do not support Flash.)

**Enhanced Dynamic Allocation (EDA).**  Like other MDL plaintiffs, Inform criticizes Google's development of EDA.  It alleges that Google developed EDA in and around 2014.  SAC ¶ 198.  According to Inform, it was on notice of Google's practices regarding EDA.  SAC ¶ 201 ("Inform repeatedly reached out to the Google Team with its concerns.").  This claim is time-barred because the alleged misconduct occurred before November 25, 2015.  Additionally, Inform asserts that EDA harmed competition in the alleged ad server and online advertising markets but fails to sufficiently explain how.[4]  Regarding the ad server market, Inform again asserts that EDA deprived it of a "neutral ad server," SAC ¶ 204, but this is not anticompetitive harm.  Regarding the alleged online advertising market, Inform alleges that EDA caused customers to spend less on ads with Inform.  That is a classic allegation of harm to a single (alleged) competitor, rather than an allegation of harm to the online video advertising market as a whole. *See NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998) (requiring harm "not just to a single competitor, but to the competitive process").

**VII.    Inform is not entitled to injunctive relief.**

Among other forms of relief, Inform seeks an injunction against Defendants.  SAC, Prayer of Relief, ¶ 2.  Because Inform is allegedly "out of business," SAC ¶ 13, 115, it cannot establish future injury and therefore is not entitled to injunctive relief.  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974); *see also Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014) (finding that the plaintiff "has not alleged a sufficient future injury to establish standing to assert her claims for injunctive relief because she has demonstrated that she is, in fact, unlikely to purchase [the products in question] again.").

---

[4] In ruling on Google's motion to dismiss the States' Third Amended Complaint, the Court found that the States plausibly alleged that EDA affected the alleged ad exchange market but not any other alleged markets.  MTD Op., at 49-50.

**WILSON SONSINI**

May 19, 2023
Page 7

**VIII.**     <u>**Discovery by or from Inform should remain stayed for non-overlapping claims.**</u>

       Google respectfully requests that Your Honor stay discovery on Inform's claims that do not overlap with those claims proceeding in the States' case, specifically the claims relating to Flash, Chrome, YouTube, and Search results.  Google is moving to dismiss each of these claims. This approach would prevent Inform from seeking discovery on topics unrelated to ad tech.  It is also consistent with PTO-3, which ordered the Plaintiffs' Discovery Steering Committee to draft requests that are "common" to all Plaintiffs.  ECF No. 311, at 1-2; *see also Ltr. from Justina K. Sessions and Eric Mahr to J. Castel*, ECF No. 526, at 4.  Discovery on Inform's non-common claims would be unnecessary and wasteful at this stage, when many such claims have already been dismissed twice before.

*     *     *

       For all of these reasons, Google respectfully requests permission to file a motion to dismiss Inform's Second Amended Complaint.  Due to the length and prolixity of Inform's complaint, Google requests permission to file an opening brief of 30 pages.  *See* PTO-4, ECF No. 392 (allowing main briefs of 30 pages for motions to dismiss other private Member Case complaints).

                          Respectfully submitted,

                          */s/ Justina K. Sessions*
                          Justina K. Sessions
                          WILSON SONSINI GOODRICH & ROSATI
                          Professional Corporation
                          One Market Plaza
                          Spear Tower, Suite 3300
                          San Francisco, California 94105
                          Telephone: (415) 947-2197
                          Email: jsessions@wsgr.com

                          Eric Mahr
                          FRESHFIELDS BRUCKHAUS
                          DERINGER US LLP
                          700 13th Street, NW
                          10th Floor
                          Washington, DC 20005
                          Telephone: (202) 777-4545
                          Email: eric.mahr@freshfields.com

                          *Counsel for Defendants Google LLC, Alphabet Inc., and YouTube LLC*

**WILSON
SONSINI**

May 19, 2023
Page 8

cc: All Counsel of Record (via ECF)

**WILSON
SONSINI**