**Discovery Steering Committee**
**In re Google Digital Advertising Antitrust Litigation**

September 20, 2023

<u>**VIA ECF**</u>
Honorable P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan
  United States Courthouse
500 Pearl Street
New York, NY 10007-1312

*In re Google Digital Advertising Antitrust Litigation*
*No. 1:21-md-03010 (PKC)*

Dear Judge Castel:

The Discovery Steering Committee writes to update the Court on the status of discovery.[1] Google has recently revealed that its assurances that it complied with this Court's November 21, 2022, Pretrial Order No. 5 requiring substantial completion of documents by the end of May, 2023, were far from accurate. Google has now admitted that it failed to review millions of documents for production. This failure has caused substantial problems related to coordination of depositions with the *United States v. Google* action pending in the Eastern District of Virginia. These concerns are further complicated by the failure of Google to respond to MDL Plaintiffs' proposals following extensive back and forth with Google aimed at finally resolving negotiations over search terms and custodians—issues Google has unilaterally put on hold while it grapples with its document production deficiencies. MDL Plaintiffs respectfully request a conference with the Court further to address this situation. No conference in the MDL is scheduled at this time.

***Relevant Background***

This Court's November 21, 2022, Scheduling Order ("PTO No. 5") required substantial completion of document and data production within four months after service of initial requests for production, which occurred January 28, 2023. (Doc. 394 at ¶ 6.1.) Substantial completion was thus required by May 30, 2023.

Leading up to that deadline, during meet-and-confer discussions, MDL Plaintiffs were skeptical of Google's assurances that it would be able to meet this deadline and repeatedly asked Google to clarify what databases, custodians, or other sources it would use for collecting potentially responsive documents. For example, on May 10, MDL Plaintiffs asked, "again: what is included in the 'potential review population' and what is included in the set of documents in fact reviewed by Google for responsive documents?" We had long sought from Google an understanding why it used the phrase "potential review population" separately from the pool or set of documents on which Google actually ran search terms to find responsive documents to produce.

---

[1] The Direct Action Newspaper Plaintiffs take no position regarding this letter at this time.

We thus expressly asked: "What is the difference between the two pools/sets of documents?  And, on what basis is Google making a distinction between the two?  In other words, if you do not propose to search the entire 'potential review population,' why not?"

MDL Plaintiffs' concern about ensuring Google would be in compliance with its substantial completion obligations was more than just the standard concern for ensuring proper participation in discovery.  In the *Brown v. Google* matter, the court found that Google violated multiple court orders and twice sanctioned Google for repeatedly failing to disclose relevant data sources to the plaintiffs, imposed over $1 million in fines including attorneys' fees, and recommended an adverse jury instruction against Google.  *See Brown et al. v. Google, LLC*, No. 20-cv-3664 (N.D. Cal.), Docs. 593-3, 911-3.  And, as DOJ noted in its briefing in the EDVA, Google also failed to produce hundreds of thousands of custodial documents until 13 months after the close of fact discovery in DOJ's action against Google over its alleged monopolization of the online search market.  (DOJ Action, Doc. 416 at 4-5.)  On July 5, 2023, in response to similar concerns by DOJ over whether Google would comply with its discovery obligations in the DOJ Action, Google's counsel explicitly assured DOJ that there would not be "similar collection issues" in this litigation.  (*Id.* at 5.)  That turned out to be false.

The Court may recall at the last conference in this matter, on May 16, 2023, that Plaintiffs expressed concern that Google was being very limited in what it was producing in this MDL to comply with its obligations in the MDL separate from those in the DOJ Action.  For example, we raised with the Court our concern that Google's efforts to substantially complete its production by the end of May were too limited and "more in line with what Google wants to produce, rather than what" DOJ and the states that brought the "DOJ Action" seek in the Eastern District of Virginia— which was still "a step away from what we believe should be produced".  (5/16/2023 Tr. at 14.)

During the parties' meet and confers, Google assured MDL Plaintiffs that it would substantially complete its production of responsive documents within this Court's timeframe.  Google claimed to the MDL Plaintiffs that it had satisfied this Court's substantial completion deadline based on (i) its production of 2.25 million documents from the Texas pre-suit investigation (at least a majority of which are unrelated to ad tech issues), (ii) approximately 805,000 documents it had previously produced to DOJ as part of DOJ's ad-tech investigation, and (iii) an additional 339,000 documents contained in three productions made in the MDL matter on May 30, 2023.

On June 2, this Court entered its Order Regarding Coordination of Discovery (Doc. 564) providing for the coordination of discovery in this MDL and in the DOJ Action.  It provides in relevant part for the joint conduct of depositions during the "Coordinated Discovery Period," defined to include the time period after the deadline for Google's substantial completion of its document production in the DOJ Action (July 7) and before the fact discovery cutoff in that case (previously September 8).  On July 7, Google's counsel represented that, "as of Friday, July 7, 2023, 'Google has met the Court-ordered substantial completion deadline.'"  (DOJ Action, Doc. 416 at 5.)

Hon. P. Kevin Castel
September 20, 2023
Page 3 of 6

Based on Google's representations that it had substantially completed its document production in each of the DOJ Action and this MDL, the DOJ and the MDL Plaintiffs began coordinating the taking of depositions in July.  DOJ noticed ten Google deponents.  MDL Plaintiffs ultimately cross-noticed depositions of three of those witnesses.  One joint deposition occurred over a two-day period in the middle of August; the other two have not yet occurred.  MDL Plaintiffs also noticed the deposition of a Google witness whom the DOJ did not notice.  That deposition has not yet occurred, and Magistrate Judge Anderson ruled that DOJ can use that testimony affirmatively even though Google would not schedule it before September 8.  (DOJ Action, Doc. 378.)

### *Google Admits It Has Failed to Produce Millions of Responsive Documents*

On August 28, 2023, Google's counsel in this matter forwarded to MDL Plaintiffs an email that it had sent to DOJ and other plaintiffs in the DOJ Action stating, "We recently discovered that certain custodial documents that were collected and that hit on search terms were inadvertently omitted from our document review."

On September 1, at a regularly scheduled discovery conference before Magistrate Judge Anderson in the DOJ Action, and only one week before the then-scheduled close of fact discovery in that matter, Google announced that it had "recently become aware of an issue with Google's document production that, we believe, is going to impact our ability to complete the production of all of our documents by the close of fact discovery" and that it believed it "will be producing a substantial number of additional documents in this case".  (9/1/23 DOJ Action Tr. at 85.)  Google explained that "when it collects information from custodians, it stores that information in ingestion sites" and that "there are multiple ingestion sites where the custodian's documents are stored".  (*Id.* at 85-86.)  Google stated that "it has come to our attention that the search terms that Google agreed to use for the litigation were mistakenly not run over all of the ingestion sites where the custodians' documents are stored."  (*Id.* at 86.)  At that September 1 conference, Google indicated that the impact of its discovery issue was limited, stating that "there are two depositions that could be impacted" that were scheduled to occur during that case's last week of fact discovery.

In response, Judge Anderson stated that the development was "very unfortunate," that "I don't understand how mistakenly so-and-so wasn't done," and that "what the consequences of that will be" remained to be determined.  (*Id.* at 87.)

On September 2, MDL Plaintiffs requested "that Google provide a full explanation of the issue, when and how it was discovered, and the steps and timing of efforts to correct the issue."  We also requested "that Google precisely delineate the scope of the failure and identify all custodians for whom documents were omitted from your document review or production until you discovered this issue".  MDL Plaintiffs supported DOJ's position that all depositions of Google witnesses be suspended pending further information about Google's document production deficiencies and noted that MDL Plaintiffs' decisions not to take certain depositions noticed by DOJ in its action had been "due in part to the paltry number of documents Google had produced related to such witnesses".

Hon. P. Kevin Castel
September 20, 2023
Page 4 of 6

On September 8, DOJ moved for interim relief from the existing discovery schedule in its case.  Based on its discussions that week with Google, DOJ reported (DOJ Action, Doc. 416 at 2-4) among other points that:

- Google ran agreed-upon search terms on only two out of seven "ingestion" sites that house relevant custodians' documents, failing to run the search terms on the other five sites resulting in over 10 million raw documents that were not included in Google's production processes;[2]

- Documents from 96 custodians—a majority of the 160 agreed-upon custodians in the DOJ case—were housed on these five ingestion sites from which Google neglected to collect responsive materials;

- Google first learned there was a document collection problem on or about August 16, but did not notify DOJ of any problem until August 28, the day before a Google witness was deposed, and even then Google did not characterize the problem as one that affected a large number of custodians; Google did not disclose the extent of the problem until the September 1 hearing;

- The total number of responsive documents that Google had failed to produce exceeds the total number of documents Google had produced at that point in the DOJ case.

DOJ requested in part that the court order Google to file a sworn declaration explaining: (a) how these discovery mistakes occurred; (b) the extent to which the mistakes are similar to the discovery mistakes made in DOJ's Search case; (c) when Google first learned about these issues; and (d) what steps Google has taken to ensure that these issues will not persist and that all nonprivileged relevant documents have been collected, reviewed, and produced.  (DOJ Action, Doc. 415-1.)

Google responded to the DOJ motion on September 13 and provided to MDL Plaintiffs a copy of its filed response in the DOJ Action to respond to our requests for information concerning Google's document production deficiencies.  In its response to DOJ's motion and in its representations to the Court in the EDVA, Google explained that far from being a narrow issue—with only "two depositions that could be impacted"—as it had suggested to Judge Anderson on September 1, the ingestion sites that had not been included in the review process covered documents from "a broader set of custodians".  (9/15/23 DOJ Action Tr. at 60.)  Google further explained that as of September 13, over 3 million unique documents had been identified as previously not having been reviewed for production out of 9.4 million documents processed and deduplicated by that time.  (DOJ Action, Doc. 422-1 ¶¶ 22-23.)  An additional 6.3 million documents had then not yet been processed and deduplicated, which could add (assuming a similar

---

[2] A declaration appended to Google's response in the DOJ Action would confirm that nearly 16 million documents had not been searched for possible production.  (DOJ Action, Doc. 422-1 ¶ 22.)

Hon. P. Kevin Castel
September 20, 2023
Page 5 of 6

deduplication ratio to the earlier-processed documents) an additional 2.2 million documents.  (*See id.*)

As a result of Google's discovery failure, a total of ***well over 5 million custodial documents were never reviewed*** in Google's document review process that it represented complied with the substantial completion deadlines in this Court and in the DOJ Action.  (*See id.*)  Despite those representations, Google's "best estimate" on September 15 was "there are going to end up being 6 million documents that need to be reviewed" that should have been reviewed prior to claiming substantial completion.  (9/15/23 DOJ Action Tr. at 62.)  Both MDL Plaintiffs and the DOJ relied upon Google's representations that it had substantially completed document production for the relevant custodians in our decisions to notice depositions during the Coordinated Discovery Period.

At the September 15 hearing, Judge Anderson pressed Google to explain how it could have permitted what the court termed an "egregious" and "very significant problem in this case":  "I'm not understanding how this could happen with what should have been at least two levels of oversight."  (9/15/23 DOJ Action Tr. at 52, 54, 59.)  As the Court noted:  "You produced how many documents since the filing of this lawsuit?  1 million.  So you're talking about potentially five times what you've produced, and you're saying you thought there was substantial completion done?  It's false.  It wasn't; was it?"  (*Id.* at 55.)

After hearing from Google's counsel, the court stated, "It's no excuse" and "Maybe it wasn't malicious, maybe it wasn't in bad faith, but it clearly was not being done under proper supervision, either internally or externally.  And you've put everyone in an unfortunate situation by your failure to do that."  (*Id.* at 56, 58.)  The Court appeared further concerned about the delay in jumping on this issue sooner:  "You've known about this for a month now.  You knew about it starting on August 18th.  You knew there was a real issue.  There didn't seem to be a call to arms then.  The first time I heard about it was September 1, and it was this, you know, like, whoops, we've got a problem.  It wasn't as clear as I now know how egregious this is."  (*Id.* at 59.)

In its order entered after the hearing, the court extended the time for deposing Google witnesses to November 17 and ordered Google to complete its document production by October 6 and file a status report each Friday between September 15 and its completion of document production.  (DOJ Action, Doc. 440.)

In transmitting its DOJ Action filings to MDL Plaintiffs, Google unilaterally stated that, given its document production deficiency "issue and the stage of the EDVA case, we do not think it is efficient to continue custodian or search term negotiations specific to MDL Plaintiffs at this time, particularly because the existing review population is in flux."  As a result, Google has not responded to MDL Plaintiffs' proposals to resolve the remaining search term and custodian disputes respecting MDL Plaintiffs' First Set of RFPs, which proposals were made on August 10 and September 1, respectively.  MDL Plaintiffs' proposals came after several weeks of exchanges between the two sides in an attempt finally to resolve remaining disputes on search terms and custodians.

Hon. P. Kevin Castel
September 20, 2023
Page 6 of 6

\*     \*     \*

The Discovery Steering Committee respectfully requests that the Court schedule a discovery conference to address the above issues and receive further updates on the status of discovery in this matter.

Respectfully,

_____/s/  Jordan Elias_____          _____/s/  Philip Korologos_____
Jordan Elias                              Philip Korologos
Girard Sharp LLP                      Boies Schiller Flexner LLP

___/s/  Zeke DeRose_____      ___/s/  Noah Heinz_____      ___/s/  Serina Vash_____
Zeke DeRose                    Noah Heinz                    Serina Vash
The Lanier Law Firm, PC      Keller Postman LLC            Herman Jones LLP

Copy to:  All Counsel via ECF