UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION | No. 1:21-md-3010 (PKC) |

*This Document Relates To:*

| | |
|---|---|
| SUNNY SINGH, individually and on behalf of all others similarly situated<br>*Plaintiff*,<br><br>- against -<br><br>GOOGLE LLC, ALPHABET INC. and META PLATFORMS, INC.<br>*Defendants.* | No. 1:23-cv-03651-PKC |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
DEFENDANTS GOOGLE LLC AND ALPHABET INC.'S MOTION TO DISMISS
<u>THE SINGH COMPLAINT</u>**

FRESHFIELDS BRUCKHAUS
DERINGER US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250
Fax: (650) 461-8276

AXINN, VELTROP & HARKRIDER LLP
114 West 47th Street
New York, NY 10036
Telephone: (212) 728-2200
Fax: (212) 728-2201

*Counsel for Defendants Google LLC and
Alphabet Inc.*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1
ARGUMENT .................................................................................................................................... 1
  I. SINGH EXPRESSLY AGREED TO ARBITRATE ................................................................ 1
    A. Plaintiff Singh Knowingly Accepted Google's Terms and Declined to Opt Out ............... 1
    B. Plaintiff Singh Raises No Factual Dispute that Discovery Could Resolve. ...................... 3
  II. SINGH'S CLAIMS ARE ARBITRABLE ............................................................................... 3
CONCLUSION ................................................................................................................................. 5

# TABLE OF AUTHORITIES

**Cases**

*Diaz v. Sohnen Enterprises*, 34 Cal. App. 5th 126, 130-31 (2019) ................................................. 3

*DuBois v. Macy's E. Inc.*, 338 F. App'x 32, 34 (2d Cir. 2009) ....................................................... 2

*Flores v. Nat'l Football League*, 2022 WL 3098388, at *2 (S.D.N.Y. Aug. 4, 2022) ................... 3

*Fteja v. Facebook, Inc.*, 841 F.Supp.2d 829, 837 (S.D.N.Y. 2012) ............................................... 2

*Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 548-549 (9th Cir. 2021) ..................... 4

*McGill v. Citibank, N.A.* 2 Cal. 5th 945, 955 (2017) ...................................................................... 4

*Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) ............................................................ 2

*Olsen v. Charter Commc'ns, Inc.*, 2019 WL 3779190, at *6 n.7 (S.D.N.Y. Aug. 9, 2019) ............ 3

*Starke v. SquareTrade, Inc.*,  913 F.3d 279, 295 (2d Cir. 2019) ...................................................... 2

## INTRODUCTION

Plaintiff Singh does not dispute any part of Google's affidavit submitted as evidence that he expressly and knowingly agreed to arbitrate any claims arising from his use of Google Ads. *See* Declaration of Courtney Shadd, ECF No. 627 ("Shadd Decl."). Instead, he hopes to slow the inevitable by claiming that additional discovery is needed. Yet more discovery would show nothing new or different because Singh expressly agreed to arbitrate after being provided conspicuous notice. This Court therefore has all it needs to enforce that agreement.

Singh also cannot avoid arbitration by claiming he seeks public injunctive relief. He is pursuing a remedy for alleged overcharges to himself and other Google Ads users and wants to change how Google's advertiser-facing products work; any supposed downstream benefits to the public from such relief are speculative and, at best, "incidental" under the *McGill* standard.

The Court should dismiss Singh's claims, and in the alternative, compel him to arbitrate.

## ARGUMENT

### I. SINGH EXPRESSLY AGREED TO ARBITRATE

Singh argues that more discovery is necessary, ECF No. 638 ("Opp.") at 1, but he does not actually *contest any* of the evidence that he agreed to arbitrate his claims against Google.

**A. Plaintiff Singh Knowingly Accepted Google's Terms and Declined to Opt Out.**

In order to use Google Ads, Singh was required to view Google's 2017 Terms of Service (the "Terms") and click a button labeled "Accept" located under the Terms. Shadd Decl. ¶ 3.[1] The first paragraph of the Terms notified advertisers of the arbitration provision and the opportunity to opt out. Shadd Decl, Ex. A. Advertisers were instructed to review the Terms and were required to click buttons indicating that they accepted or declined them. Shadd Decl. ¶ 3. That webpage clearly stated, at the top and with no scrolling required, that the Terms included an arbitration agreement.

---

[1] Singh does not argue that Google's 2017 Terms do not encompass his claims against Google.

1

*Id.*, Ex. A. This was sufficient to provide actual and inquiry notice. Thus, Singh's citation to various cases where notification was either ambiguous or appeared on a different website are inapposite; here Singh was presented with a "clickwrap" agreement where he clicked to agree on the same web page where he was notified of the arbitration agreement. *See Fteja v. Facebook, Inc.*, 841 F.Supp.2d 829, 837 (S.D.N.Y. 2012) (collecting cases).[2] Notification of the arbitration clause was thus both "spatially coupled with the mechanism for manifesting assent" and "temporally coupled." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) (notice sufficient where terms appear "at a place and time" proximate to assent).

Having been presented with the "clickwrap" screen that specifically notified him of the arbitration agreement, Singh accepted the Terms on September 12, 2017. Shadd Decl. ¶ 13. The same screen notified Singh of a 30 day opt-out period, with a blue hyperlink to a landing page where he could opt out of arbitration. Shadd Decl., Ex. A. But Singh declined to opt out. Shadd Decl. ¶ 13. And after accepting the Terms, he continued to use Google Ads.

Singh complains that Google has not provided subsequent editions of its Terms after 2017 or documents evidencing whether he may have agreed to them. *See* Opp. at 2. But the later Terms are immaterial because Singh agreed to arbitrate in 2017. The Terms expressly notified Singh that, in the event he rejected some later version, he would remain bound by his agreement to the 2017 Terms. Shadd Decl., Ex. A ¶ 13(G). Moreover, Singh has made *no representation* that he declined to agree to subsequent Terms or attempted to opt out, and he continued to use Google Ads after 2017. *See DuBois v. Macy's E. Inc.*, 338 F. App'x 32, 34 (2d Cir. 2009) (plaintiff's "continued

---

[2] Singh cites *Starke v. SquareTrade, Inc.*, which featured a "pay-now-terms-later" mechanism that sharply contrasts with the simplicity of Google's "clickwrap" form, 913 F.3d 279, 295 (2d Cir. 2019), and used a labyrinthine series of screens, emails, and buried hyperlinks to provide inadequate notification. *Id.* at 292-93.

employment constituted acceptance of the modification of the terms"); *see also Diaz v. Sohnen Enterprises*, 34 Cal. App. 5th 126, 130-31 (2019).

### B. Plaintiff Singh Raises No Factual Dispute that Discovery Could Resolve.

Singh has raised no factual dispute. He has at no point suggested, in his pleadings, briefing, or any sworn statement that he (i) was not aware of the agreement (though he would have been on inquiry notice regardless); (ii) did not accept the Terms in September 2017; or (iii) did not knowingly decline to opt out of arbitration.

Singh's failure to raise any factual dispute leaves nothing for discovery to resolve. It also distinguishes his case from every authority he cites where the plaintiff attested to being unaware of the arbitration clause. His complaint that Google has not produced underlying records is therefore insufficient to create a fact issue, given that Singh has given no reason to doubt Google's sworn affidavit. *See Meyer*, 868 F.3d at 80 (enforcing agreement based on uncontested sworn declaration). Because Singh has failed to "carry [his] burden" to show any further materials would inform the question of arbitrability, *Flores v. Nat'l Football League*, 2022 WL 3098388, at *2 (S.D.N.Y. Aug. 4, 2022), he "cannot avoid arbitration" based only on the "unsubstantiated hope that discovery may turn up something." *Olsen v. Charter Commc'ns, Inc.*, 2019 WL 3779190, at *6 n.7 (S.D.N.Y. Aug. 9, 2019).

## II. SINGH'S CLAIMS ARE ARBITRABLE

Singh cannot avoid arbitration by dubiously invoking a request for public injunctive relief. Opp. at 2-5. His claims seek relief for alleged injuries to a discrete subset of individuals (Google Ads customers) and not primarily to benefit the general public as a whole.

Because Singh requests relief that has "the primary purpose or effect of redressing or preventing injury to [Singh]...or to a group of individuals similarly situated to [Singh]," rather than relief that has the primary purpose and effect of "prohibiting unlawful acts that threaten future

3

injury to the general public," *McGill v. Citibank, N.A.* does not apply. 2 Cal. 5th 945, 955 (2017). Labeling his claim as one for "public injunctive relief" does not change its actual nature. *See Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 548-549 (9th Cir. 2021) (rejecting argument that relief labeled "public" was actually such). The only injury that Singh and putative class members have allegedly suffered are overcharges for the use of Google's advertising products. *See, e.g.*, Compl. ¶¶ 337, 344. Singh's argument that an injunction would restore competition and eventually lead to the public benefitting from "lower prices and greater innovation," Opp. at 3 (citing Compl. ¶¶ 338, 387), requires at least three steps between the relief sought and (speculative) benefit to the public. According to Singh's logic, enjoining Google would change how its products operate, which could lead to advertisers paying less for *some* advertising impressions, which could cause advertisers to lower consumer prices across the board. This is precisely the type of "incidental[]" effects *McGill* holds are not public injunctive relief. *See McGill*, 2 Cal. 5th at 955 (distinguishing public relief from relief that "benefits the public, if at all, only incidentally"). And Singh's argument that his supposed pursuit of public injunctive relief conforms with the main purpose of California's antitrust laws "to protect the public" is meritless. If suing under a statute bearing some legislative intent to benefit the public were sufficient, virtually every lawsuit would be shielded from arbitration.

Moreover, Singh's efforts to distinguish *Hodges v. Comcast Cable Commc'ns, LLC* and *California Crane School Inc. v. Google LLC* fail. In *Hodges*, the plaintiff brought class action claims challenging Comcast data-collection practices, but the court ruled that the request for relief only stood to benefit Comcast cable subscribers. *Hodges*, 21 F.4th at 548-49. Singh is similarly seeking relief only for himself and other Google Ads customers for alleged overcharges. In *California Crane School,* the plaintiff sought relief on behalf of himself and a class of people and

4

entities who paid Google for advertising services "on the ground that those individuals and entities paid inflated prices . . . and therefore [were] entitled to recoup their past losses." 621 F. Supp. 3d 1024, 1032 (N.D. Cal. 2022). Singh also brings "paradigmatic representative claims that would primarily benefit a discrete set of similarly-situated persons—namely, individuals or entities that have paid to advertise on Google's services." *Id.* (internal quotations omitted).[3]

The other authorities cited by Singh are inapposite. Like *McGill,* many of the public injunctive relief cases cited by Singh involve false advertising. The "paradigmatic example" of public injunctive relief is the sort sought in *McGill*, where the plaintiff "sought an injunction against the use of false advertising to promote a credit protection plan." *Hodges*, 21 F.4th at 542. This makes sense: the *primary* effect of an injunction prohibiting false advertising is to benefit the general public. One need not speculate as to collateral consequences or economic theories of downstream benefits to see the alleged injury to the broader population. Singh, by contrast, strains and fails to come up with "incidental" effects from his requested relief for overcharges.

Because Plaintiff Singh does not actually seek relief that would primarily benefit the public, Google's arbitration agreement clause may be enforced as to the California claims.

## CONCLUSION

For the foregoing reasons, Google respectfully requests that this Court dismiss Plaintiff Singh's complaint in its entirety. In the alternative, Google moves for an order compelling Plaintiff Singh to arbitrate his claims as he has already agreed to do.

---

[3] Singh's argument that *California Crane School* hinged upon the UCL's absence from that plaintiff's claims, Opp. at 5 n.6, is inaccurate. *See* 621 F. Supp. 3d at 1032 ("Even if [plaintiff's claims were based on California statutes] that "authorize[d] public injunctive relief, the specific claims Plaintiff seeks to raise would still not authorize such relief.")

5

Dated: October 20, 2023                    Respectfully Submitted,

/s/ *Justina Sessions*
Justina K. Sessions
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250
Fax: (650) 461-8276
justina.sessions@freshfields.com

Eric Mahr
Robert J. McCallum
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Fax: (202) 777-4555
eric.mahr@freshfields.com
rob.mccallum@freshfields.com

Daniel Bitton
Denise L. Plunkett
Craig M. Reiser
Eva H. Yung
Claire L. Haws
AXINN, VELTROP & HARKRIDER LLP
114 West 47th Street
New York, New York 10036
Telephone: (212) 728-2200
Fax: (212) 728-2201
dbitton@axinn.com
dplunkett@axinn.com
creiser@axinn.com
eyung@axinn.com
chaws@axinn.com

Bradley Justus (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
Telephone: (202) 912-4700
Fax: (202) 912-4701

bjustus@axinn.com

Caroline P. Boisvert (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, Connecticut 06103
Telephone: (860) 275-8100
Fax: (860) 275-8101
cboisvert@axinn.com

*Counsel for Defendants Google LLC and Alphabet Inc.*