# Freshfields Bruckhaus Deringer US LLP

**Via ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

**Redwood City**
855 Main Street
Redwood City, CA 94063
justina.sessions@freshfields.com
T +1 650-618-9250
E justina.sessions@freshfields.com
www.freshfields.com

October 20, 2023

Re:   *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC)

Dear Judge Castel:

I write on behalf of Defendants Google LLC, Alphabet Inc., and YouTube, LLC (collectively "Google") pursuant to the Court's Order directing the parties to meet and confer concerning search terms and custodians and submit the resolution or outstanding issues in dispute to the Court by today, ECF No. 634.  Regrettably, the parties are at an impasse.  Counter to Your Honor's guidance, it is clear that Plaintiffs have no intention of ending these discussions and continue to demand more regardless of what Google agrees to produce.  Over five rounds of negotiations, Google has agreed to run over 200 search terms over the files of more than 158 custodians, resulting in the production of approximately 6 million documents.  Google has even offered Plaintiffs additional search terms and custodians of their choosing, yet this is not enough.  For the first time, Plaintiffs stated today that they view these negotiations as limited to "an initial set of custodians and search terms" that apply only to Plaintiffs' "first swath of RFPs" and that Plaintiffs plan to serve additional document requests requiring an additional round of search term and custodian negotiations regardless of any agreement that is reached now.  No conference is scheduled.

At the outset of discovery, in February 2023, Google proposed running 80 broad search terms across the files of 119 custodians.  These were largely based on the search terms used to respond to the respective ad tech investigations brought by the Department of Justice and the Texas Office of the Attorney General.  Google has always maintained that this broad initial proposal was sufficient for the needs of the case.

Since February, Google agreed to add all 23 additional search terms requested by EDVA Plaintiffs and over 100 of the 188 additional search terms requested by MDL Plaintiffs across four rounds of search term negotiations.  Along with Google's proposed terms, this totaled more than 200 search terms.  In each round of negotiations, Google provided Plaintiffs with hit counts for

disputed search terms and provided feedback on Plaintiffs' search term proposals to enable them to be narrowed and to minimize false hits.

Further, since February, Google agreed to add 39 additional custodians requested by MDL or EDVA Plaintiffs, bringing the total to 158. To assist with Plaintiffs' decision-making, Google provided Plaintiffs with multiple rounds of managerial reporting line information that they requested for various proposed custodians.

Prior to the commencement of discovery, Google produced over 2 million documents from broad pre-suit investigations. Google subsequently ran the 200+ search terms across the files of 158 agreed custodians. Google has now produced approximately 6 million documents, approximately 200 terabytes of data, and made available for inspection approximately 80 gigabytes of source code.

With that massive amount of discovery, Plaintiffs already have more than is proportional to the needs of this case. But to put the matter to rest, Google provided Plaintiffs with a fifth set of hit counts for the remaining search terms in dispute and invited Plaintiffs to select any additional terms they think they truly need, up to an additional 250,000 hits (calculated, at Plaintiffs' request, on a pre-deduplication basis).

Google took a similar approach with respect to custodians. After already agreeing to add 39 additional custodians across the two cases, Google then proposed that MDL Plaintiffs could select another ten custodians and requested that the Discovery Steering Committee ensure that all Plaintiffs' interests were represented.

The Discovery Steering Committee is tasked with coordinating discovery across all Plaintiff groups but is clearly not doing its job. *See* Pre-Trial Order No. 3, ECF No. 311. Plaintiffs refused to accept Google's proposal on the stated basis that it did not adequately address the interests of all Plaintiffs. Plaintiffs said that they would need (1) three additional custodians common to all Plaintiffs, (2) four additional custodians chosen by Daily Mail, (3) five additional custodians chosen by Gannett, and (4) additional custodians chosen by Inform. (Inform initially asserted it was "entitled" to 62 custodians and identified 18 "priorities," which it has subsequently narrowed to 10 custodians.)

The idea that Plaintiffs need *any* more custodians or search terms at this point is absurd given the enormous breadth of search terms and custodians already used and the volume of material they already have. Though not obligated to do so, Google responded by agreeing to Plaintiffs' proposals as to (1), (2), and (3) and offered six custodians for (4) Inform. Google's agreement was contingent on (a) each Plaintiff group choosing narrowly-tailored search terms for these Plaintiff-specific custodians up to a limit of 50,000 search hits per Plaintiff group (post-deduplication); and (b) the parties agreeing that this would bring search term and custodian negotiations to an end.

Earlier today, Plaintiffs rejected Google's proposal. Plaintiffs made clear—for the first time—that they viewed these protracted negotiations as applying only to "an initial set of

custodians and search terms," and that any agreement on custodians and search terms would be limited to Plaintiffs' "first swath" of 301 Requests for Production. Needless to say, it is difficult to comprehend what an appropriate "second swath" of requests could be given the pre-suit investigations, Plaintiffs' scorched-earth approach to litigation discovery thus far, and the enormous production Google has already made in the case. Nonetheless, various Plaintiff groups stated today that, regardless of whether agreement is reached now, they would be issuing additional Requests for Production and seeking additional search terms and custodians as fact discovery progresses. Plaintiffs' intent to pursue further custodians and search terms regardless of whether agreement is reached now means that any agreement offers no protection to Google and no hope of actually concluding or limiting the document searches for this case.

* * *

Google has always understood that the purpose of this exercise was to bring finality to the issue of search terms and custodians as they apply to Google's productions, and to avoid "delay and volume for the sake of a lodestar," May 16, 2023 Tr. at 29:13-14. The Court instructed the parties to "get in a room, perfect is the enemy of the good, work this out, and get it done." *Id.* at 30:10-15. To that end, Google has engaged in five rounds of negotiations with Plaintiffs, agreed to over 100 of their search terms (bringing the total to more than 200), provided detailed feedback on search terms to help Plaintiffs narrow them, provided managerial reporting line information to Plaintiffs to inform their custodian selections, and invited Plaintiffs (and specific Plaintiff groups) to select additional search terms and custodians that they feel are important to them. Google has produced approximately 6 million documents to Plaintiffs, and would have reviewed a significant number more under its proposals.

It is now clear that Plaintiffs have no intention of focusing their demands or bringing search term and custodian negotiations to an end. As of today, they continue to seek more than 900,000 more search hits across all Plaintiffs based on existing custodians, plus the addition of a further 22 custodians over which broad search terms must also be run. And today, various Plaintiff groups stated that they are now working on follow-up, unspecified Requests for Production and would be seeking still more search terms and custodians in connection with those further Requests. If Plaintiffs seek an order from the Court requiring Google to do additional document searches, Google will respond to such a motion accordingly.

Finally, we note that several plaintiffs have failed to produce any documents whatsoever, and others have failed to substantively respond to Google's discovery requests. Google will bring any issues to the Court's attention as they arise.

Respectfully submitted,

*/s/ Justina K. Sessions*
Justina K. Sessions
FRESHFIELDS BRUCKHAUS
DERINGER US LLP

October 20, 2023<br>Page 4

855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250
Fax: (650) 461-8276
justina.sessions@freshfields.com

Eric Mahr
Robert J. McCallum
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Fax: (202) 777-4555
eric.mahr@freshfields.com
rob.mccallum@freshfields.com

*Counsel for Defendants Google LLC, Alphabet Inc., and YouTube LLC*

CC: All Counsel of Record (via ECF)