UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE: GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION** | No. 1:21-md-3010 (PKC) |

*This Document Relates To:*

| | |
|---|---|
| **GANNETT CO., INC.**<br><br>*Plaintiff*,<br><br>- against -<br><br>**GOOGLE LLC AND ALPHABET INC.,**<br><br>*Defendants.* | No. 1:23-cv-05177 |

**DEFENDANTS GOOGLE LLC AND ALPHABET INC.'S REPLY IN FURTHER
SUPPORT OF THEIR MOTION TO DISMISS GANNETT'S COMPLAINT**

**Table of Contents**

TABLE OF AUTHORITIES .................................................................................................... ii
INTRODUCTION ........................................................................................................................ 1
ARGUMENT ................................................................................................................................ 1
    I.    Gannett Has Failed To Allege That Exchange Bidding Was Anticompetitive. .................. 1
    II.    Gannett Has Failed To Allege That Encrypted User IDs Are Anticompetitive. .............. 2
    III.    Gannett Has Failed To Allege That AMP Coerces Publishers To Abandon Client-Side Header Bidding. ................................................................................................................. 2
    IV.    Gannett Has Failed To Plead That EDA Harmed Competition In Any Market. ............. 3
    V.    Gannett Has Failed To Allege That MBW Is Anticompetitive. ....................................... 4
    VI.    Gannett's Claims Regarding EDA And Line-Item Capping Are Time Barred. .............. 5
        A. There is no continuing violation because Gannett fails to allege any new and independent acts during the four-year limitations period. .......................................................................... 5
        B. *American Pipe* does not save Gannett's EDA and line-item claims. ................................ 7
        C. Gannett has failed to plead fraudulent concealment as to EDA. ...................................... 9
    VII.    Dismissal Should Be With Prejudice. ........................................................................... 10
CONCLUSION ........................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554-55 (1974) ............................................ 7

*Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d at 295-96 ...................................................... 6

*Cangemi v. United States*, 13 F. 4th 115, 134-35 (2d Cir. 2021) ...................................................... 5

*Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 355 (1983) ........................................................ 8

*Devaney et al. v. Google LLC et al.*, No. 20-cv-4130 (N.D. Cal. June 22, 2020) .......................... 7

*E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 31 (2d Cir. 2006) .............................. 4

*Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) ................................... 4

*Franchitti v. Cognizant Tech. Sols. Corp.*, 2022 WL 2657171, at *6 (S.D.N.Y. July 8, 2022) ..... 8

*Gelboim v. Bank of America Corp.*, 823 F.3d 759, 782 (2d Cir. 2016) .......................................... 3

*Genius Media et al. v. Alphabet Inc. et al.*, No. 20-cv-9092 (N.D. Cal. Dec. 16, 2020) ................ 7

*Giordano v. Saks Inc.*, 2023 WL 1451534, at *7 (E.D.N.Y. Feb. 1, 2023) .................................... 6

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 502 n.15 (1968) ......................... 6

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 27 F. Supp. 3d 1015, 1020-21 (N.D. Cal. 2014). 8

*In re Google Digital Publisher Antitrust Litig.*, No. 20-cv-08984 (N.D. Cal. Apr. 5, 2021) ......... 8

*In re London Silver Fixing, Ltd., Antitrust Litig.*, 213 F. Supp. 3d 530, 551 (S.D.N.Y. 2016) ...... 3

*In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1065-66 (8th Cir. 2017) ............. 7

*J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 568 (1981) ..................................... 3

*Kearse v. Kaplan*, 692 F. Supp. 2d 398, 401 (S.D.N.Y. 2010) ....................................................... 9

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189-90 (1997) ............................................................... 7

*Northbrook Nat. Ins. Co. v. J & R Vending Corp.*, 167 F.R.D. 643, 647 (E.D.N.Y. 1996) ......... 10

*Pollis v. New Sch. for Soc. Rsch.*, 132 F.3d 115 (2d Cir. 1997) ..................................................... 5

*Shak v. JPMorgan Chase & Co.*, 156 F. Supp. 3d 462, 475 (S.D.N.Y. 2016) ........................... 7, 8

*State of N.Y. v. Hendrickson Bros.*, 840 F.2d 1065, 1083 (2d Cir. 1988)................................ 9, 10

*Todd v. Exxon Corp.*, 275 F.3d 191 (2d Cir. 2001) ........................................................................ 4

*United States v. Container Corp.*, 393 U.S. 333 (1969) ................................................................ 5

*US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 68 (2d Cir. 2019) ............................. 5, 6

*W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 106-07 (3d Cir. 2010) ................... 7

*Ying Li v. City of New York*, 246 F. Supp. 3d 578, 646-47 (E.D.N.Y. 2017) .............................. 10

**Rules**

*Federal Rule of Civil Procedure 9(b)* ......................................................................................... 9

*Federal Rule of Civil Procedure 15(c)(1)(B)*..................................................................................... 7

**INTRODUCTION**

The Court should dismiss Gannett's federal antitrust claims relating to Exchange Bidding ("EB"), encrypting user IDs, Accelerated Mobile Pages ("AMP"), Enhanced Dynamic Allocation ("EDA"), Minimum Bid to Win ("MBW"), and line-item capping.

In its amended opposition brief ("Opp."), ECF 650, Gannett has not pointed to anything in its Complaint to justify special treatment for claims that this Court already dismissed—EB, AMP, and encrypted user IDs. *See* Opinion and Order, ECF 308 ("MTD Op." or "Order"). As to its EDA and MBW claims, Gannett argues that its claims track the reasoning in the Court's Order, but the actual allegations in its Complaint do not and thus, fail to plausibly allege harm to competition. Next, Gannett fails to excuse its years-too-late filing of EDA and line-item-capping claims. These claims are time-barred even if *American Pipe* tolling were applicable, and no other tolling doctrines apply. Finally, because Gannett had the benefit of the Court's Order and multiple rounds of motion practice on other complaints in this MDL before filing its still-deficient Complaint, Gannett's Complaint should be dismissed with prejudice.

**ARGUMENT**

**I.   Gannett Has Failed To Allege That Exchange Bidding Was Anticompetitive.**

Gannett adds no allegations that warrant disturbing this Court's prior EB ruling. Like the Daily Mail, Gannett does not attempt to explain what the legal standard for coercion is, or whether it has satisfied that standard. Google incorporates the argument it made in its Reply in Support of Google's Motion to Dismiss the Daily Mail's Amended Complaint ("DM Reply"), ECF 521 at 9-10, regarding this deficiency.

Gannett attempts to distract from its EB pleading failure by pointing to *other conduct* (data redactions and line-item caps), which, according to Gannett, allegedly coerced the use of EB. *See* Opp. at 3-4. This does not state a claim that EB itself was coercive or anticompetitive. While the

1

Court found that data redactions and line-item capping could plausibly harm competition in an ad exchange market by thwarting header bidding, MTD Op. at 67-68, it did not find that EB was coercive or that anyone was forced to use EB. *See* MTD Op. at 64 ("The Complaint does not assert that any participant was improperly compelled to participate in [EB]."). Gannett offers no facts about EB that would alter this conclusion. Gannett's analogies (at 4) to the Court's treatment of other claims (*e.g.*, EDA) are irrelevant because none of them explains why EB was coercive. And Gannett points to nothing allegedly anticompetitive about the design and introduction of EB itself. Gannett's EB claim should be dismissed.

## II. Gannett Has Failed To Allege That Encrypted User IDs Are Anticompetitive.

Gannett attempts (at 5) to hang its proverbial hat on the idea that it "owns" the user IDs that Google creates. Yet Gannett's incomplete quotations from unidentified contracts (*see* Compl. ¶ 130) and misinterpretation of congressional testimony (*id.* ¶ 129) establish no such ownership. Google incorporates the argument it made in its Motion to Dismiss the Daily Mail's Amended Complaint ("MTD DM"), ECF 454 at 8. *See also* DM Reply at 12.

Moreover, even if Gannett had plausibly alleged that encrypted user IDs generated by Google's ad server somehow "belonged" to publishers (and it has not), that allegation still would not impose a duty on Google to deal with rivals. *See* Google's Mem. in Support of Mot. to Dismiss Gannett Co. Inc.'s Compl. ("Br."), ECF 624, at 8-9; MTD DM at 6-9.

## III. Gannett Has Failed To Allege That AMP Coerces Publishers To Abandon Client-Side Header Bidding.

As with its EB claim, Gannett does not even attempt to argue that it pleaded coercion. Likewise, Gannett tries to rely upon the Court's findings concerning *other* conduct (*e.g.*, line-item capping and Poirot/Elmo) to paper over its deficient allegations regarding AMP. *See* Opp. at 6. Gannett's response closely tracks the Daily Mail's arguments, and accordingly, Google

2

incorporates its AMP arguments from the DM Reply. *See* DM Reply at 7-9.

## IV. Gannett Has Failed To Plead That EDA Harmed Competition In Any Market.

Gannett contends that its EDA allegations parallel the Court's Order, which "explained why EDA plausibly 'caused injury to competition in the ad exchange market.'" Opp. at 7 (quoting MTD Op. at 49). But two key differences distinguish Gannett's Complaint from the States' EDA allegations that the Court declined to dismiss.

*First*, Gannett concedes that its theory of EDA harm is that EDA manipulates prices—not that EDA was exclusionary.[1] Apart from one conclusory allegation that "for many years" "[e]xchanges participating in header bidding" were not permitted to compete against direct deals, Gannett fails to plead that EDA actually harmed competition in any market. Compl. ¶ 148. Instead, Gannett alleges that EDA made AdX attractive and that EDA caused Gannett to make less money than if Google had designed it differently.[2] Gannett's cited cases are likewise inapposite because unlike Gannett's allegations they involve *harm to competition*, not merely price effects on individual customers.[3]

*Second*, unlike the States, Gannett failed to allege that EDA "channel[ed] publishers' most valuable impressions exclusively to AdX." MTD Op. at 49. Nor does Gannett allege that ads were ineligible to go through all other exchanges, or how the allocation between direct sales and AdX could harm competition between ad exchanges.

Gannett also quibbles (at 9) with Google's characterization of its EDA claim as one of

---

[1] *Compare* Opp. at 17 (EDA "is a market manipulation") *with* States' Third Amend. Compl., ECF 195, ¶ 286 ("[EDA] was exclusionary and successfully foreclosed competition").
[2] *See* Compl. ¶¶ 147-48 (alleging Google's ad server converted "*direct* deals into 'temporary' CPMs" allowing AdX "to compete against a publishers' [sic] directly sold inventory," which "depressed Gannett's revenue and created a new incentive for advertisers to bid through AdX").
[3] *See In re London Silver Fixing, Ltd., Antitrust Litig.*, 213 F. Supp. 3d 530, 551 (S.D.N.Y. 2016) (damages resulted from "competition-reducing aspect or effect" of defendant's conduct); *Gelboim v. Bank of America Corp.*, 823 F.3d 759, 782 (2d Cir. 2016) (allegation of *per se* unlawful horizontal price-fixing need not separately show harm to competition); *see also J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 568 (1981) (remanded to address the issue of anticompetitive conduct, which the trial court had presumed in order to dismiss on other grounds).

"bypassing." Regardless of word choice, the crux of Gannett's claim is that EDA allowed AdX to bid on and sometimes win impressions over direct deals. *See* Compl. ¶ 150. Gannett fails to explain how increasing competition between AdX and directly sold deals could have negatively affected competition in any of its alleged relevant markets (none of which include directly sold deals). Instead, the most Gannett alleges is harm to itself from lower ad prices. This does not state a claim. *See E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 31 (2d Cir. 2006) (a viable antitrust claim must show harm to competition).[4]

## V. Gannett Has Failed To Allege That MBW Is Anticompetitive.

Gannett likewise fails to allege that MBW harms competition. Attempting to salvage this claim, Gannett (at 10) again points to the Court's Order regarding other conduct. But MBW is not "functionally equivalent" to Last Look because Gannett admits that Google gave MBW information to other bidders (not just to Google). *See* Compl. ¶ 189. Nor is MBW analogous to Dynamic Revenue Share ("DRS"). The Court determined that the States plausibly alleged DRS was anticompetitive in their alleged ad exchange market because under this program, Google allegedly "had the ability to alter bids in order to transact impressions it would have lost to rival exchanges." MTD Op. at 57. As alleged, MBW does not involve secretly changing bids but rather, sharing historical transaction information with auction participants and better informing them. *See* Br. at 12-14; Compl. ¶¶ 65-66, 189. This is legitimate competition. Gannett's attempt to rewrite its complaint and conflate different allegations cannot save its claim.

Gannett next compares MBW to the price-fixing conspiracy in *Todd v. Exxon Corp.*, 275 F.3d 191 (2d Cir. 2001). But *Todd* involved direct competitors who conspired by sharing anticipated future salary information to stabilize compensation rates, *id.* at 211-12, whereas MBW

---

[4] *See also Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) ("[H]arm to one or more *competitors* will not suffice" to claim exclusionary conduct) (emphasis in original).

4

involves one party sharing previous (not future) bids with its auction participants to facilitate more competitive pricing. *See id.* at 199 (noting that access to "price data and other information" can "increase economic efficiency and render markets more, rather than less, competitive").[5]

Gannett's allegations confirm that Google introduced a new service to improve results for its advertiser clients, a hallmark of competitive behavior.

## VI. Gannett's Claims Regarding EDA And Line-Item Capping Are Time Barred.

Gannett's EDA and line-item capping claims are time barred and should be dismissed. *See* Br. at 14 (citing *Cangemi v. United States*, 13 F. 4th 115, 134-35 (2d Cir. 2021)).

### A. There is no continuing violation because Gannett fails to allege any new and independent acts during the four-year limitations period.

Gannett ignores that there can be no continuing violation without allegations of "new and independent" acts during the past four years that have inflicted upon it some new harm. *See US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 68 (2d Cir. 2019) (injury resulting from performance of contract was not a new, independent act but a "manifestation" of prior act of entering into the contract, and thus not a continuing violation). At best, Gannett can only point to its own continued use of products introduced long ago.

*As to EDA,* Gannett contends the alleged conduct is "a market manipulation" where the statute of limitations restarts "[e]ach time EDA manipulates the 'sale' of an impression." Opp. at 16-17.[6] Even if Gannett were correct (it is not), Gannett still alleges no specific act of "manipulation" within the limitations period. Any alleged instances of EDA operating are not new

---

[5] Gannett also cites *United States v. Container Corp.*, 393 U.S. 333 (1969), which involved allegations of a price-fixing agreement and information exchange among competitors to stabilize prices. But, as noted above, MBW worked to better advise auction participants and provide more competitive pricing on upcoming impressions.

[6] Gannett relies on *Pollis v. New Sch. for Soc. Rsch.*, 132 F.3d 115 (2d Cir. 1997) to argue that EDA is an ongoing policy subject to the continuing violations doctrine. Opp. at 16. But in *Pollis* the Second Circuit determined that the plaintiff had not presented a "sufficient reason to exempt her from the statute of limitations," and allowed recovery only of damages incurred during the limitations period. 132 F.3d at 118-19.

5

overt acts but rather manifestations of Gannett's underlying decision to enable EDA and thus are not continuing violations. *See US Airways Inc.*, 938 F.3d at 68-69.[7] Nor has Gannett alleged that it suffered injuries from overcharges continuing into the limitations period. *See* Br. at 18-19 (citing *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d at 295-96).

Gannett's attempt (at 17) to distinguish this case from *US Airways* by asserting that "there is no EDA 'contract'" runs counter to Gannett's own arguments.[8] Gannett alleges that its current GAM agreement is more than four years old, and that since 2014 it has been aware that EDA was a DFP feature. *See* Compl. ¶ 120 ("In 2018 . . . Google renegotiated [GAM] contracts with publishers, including Gannett."); *id.* ¶ 151 (Gannett enacted EDA in 2014). Accordingly, recovery for any subsequent operation of EDA flowing from that contract is time barred. *See US Airways Inc.*, 938 F.3d at 68.

**As to line-item caps**, Gannett concedes that Google limited the number of line items "in 2017." Opp. at 17; Compl. ¶ 206. Any purported injury resulting from line-item capping is likewise a manifestation of the original 2017 conduct, and not a new, independent act. *See US Airways*, 938 F.3d at 68. Again, Gannett fails to plead any new and independent act relating to line-item caps: no new caps, no specific changes to the implementation—nothing.

The cases Gannett cites also confirm its failure to plead a continuing violation. *See* Opp. at 15-18. *Hanover Shoe* dealt with a refusal to sell a product—a claim not present here—which the Supreme Court treated as an ongoing act of monopolization. *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 502 n.15 (1968) (continuous refusal to sell tolled the statute of limitations). Nor is *Klehr* helpful. *Klehr* dealt with an alleged twenty-year misrepresentation of a

---

[7] *See also Giordano v. Saks Inc.*, 2023 WL 1451534, at *7 (E.D.N.Y. Feb. 1, 2023) ("artificially suppressed wages" paid during limitations period were "manifestations" of plaintiffs' prior decision to enter their employment contracts).
[8] *Compare* Opp. at 2, 5 (citing "provisions in [Gannett's] Google contracts"), *with id.* at 17 (claiming "there is no EDA 'contract'").

6

defective product under RICO, where the Supreme Court held that subsequent misrepresentations after the initial sale did not cause plaintiffs additional injury when specific and calculable injury accrued from the initial act. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189-90 (1997). Gannett's reliance on *Klehr* to suggest that in a price-fixing conspiracy—also not alleged here—each new sale restarts the limitations period does not salvage its untimely EDA claim.[9]

### B. *American Pipe* does not save Gannett's EDA and line-item claims.

Nor can Gannett rely on the *Genius Media* complaint filed in 2020[10] to toll the statute of limitations on its EDA and line-item capping claims. Gannett's claims are either time barred as of the date the publisher complaints were filed or were not pleaded in 2020, and thus, *American Pipe* tolling does not apply. *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554-55 (1974); *see also Shak v. JPMorgan Chase & Co.*, 156 F. Supp. 3d 462, 475 (S.D.N.Y. 2016).

*2014 EDA Claim*. Gannett's 2014 EDA claims would be time-barred even if *American Pipe* tolling were to apply. Gannett relies on the *Genius Media* complaint filed by other publishers in 2020. Opp. at 18 n.3. But the four-year statute ran on Gannett's EDA claim in 2018, two years before that complaint was filed. Thus, *American Pipe* and the *Genius Media* complaint do not excuse Gannett's many-year delay in filing this lawsuit.

*Line-item Cap Claim*. Gannett concedes (at 20) that the first reference to line-item caps in a publisher class complaint is in the 2022 Publishers' Amended Complaint ("Publisher AC"), ECF 408 (Dec. 5, 2022).[11] Gannett therefore cannot take advantage of the 2020 filing date to toll

---

[9] Gannett also relies on two out of Circuit cases that predate *US Airways*—*W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 106-07 (3d Cir. 2010) and *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1065-66 (8th Cir. 2017). They conflict with *US Airways* and do not control.

[10] *See* Complaint, *Genius Media et al. v. Alphabet Inc. et al.*, No. 20-cv-9092 (N.D. Cal. Dec. 16, 2020), ECF 1. Gannett inaptly tries to rely on an *advertiser* class action for *American Pipe* tolling, *see Devaney et al. v. Google LLC et al.*, No. 20-cv-4130 (N.D. Cal. June 22, 2020), but it cannot because Gannett is not a part of the putative class.

[11] The line-item capping claims do not arise out of the same conduct, transaction, or occurrence as those described in the publishers' 2020 complaints, so they do not relate back to the original filing.  *See* Fed.  R. Civ. P. 15(c)(1)(B).

its line-item claims. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 27 F. Supp. 3d 1015, 1020-21 (N.D. Cal. 2014) (dismissing new state claims as "arguably tolled complaints have to be identical to those from the class action complaints in order for *American Pipe* to apply"). The four-year statute on Gannett's line-item cap claim ran in 2021, before the Publisher AC was filed.

**2018 EDA Claim.** Gannett cannot rely on any publisher class complaint[12] to save this claim because no publisher class makes it—it is unique to Gannett. Gannett alleges that in 2018 it discovered EDA "permitted AdX to steal inventory from Gannett's sponsorship deals" and that Google allegedly made misrepresentations about having resolved the purported issue. Compl. ¶ 155. The statute ran on this claim in 2022.

*American Pipe* tolling would potentially save it only if a publisher class complaint contained claims based on this same conduct, but none does. *See Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 355 (1983) (Powell, J., concurring) ("It is important to make certain, however, that American Pipe is not abused by the assertion of claims that differ from those raised in the original class suit."); *Shak*, 156 F. Supp. 3d at 475 ("[T]o qualify for such tolling, a later individual action must challenge the same conduct as the class action."); *Franchitti v. Cognizant Tech. Sols. Corp.*, 2022 WL 2657171, at *6 (S.D.N.Y. July 8, 2022) (*American Pipe* tolling does not apply where different evidence would be required).

The Publisher AC alleges that Google implemented EDA "to channel publishers' most valuable impressions exclusively to AdX" and "impair[] publishers' direct sales channels, driving more advertisers to Google's programmatic channels," so Google could "extract more profits." Publisher AC ¶ 274. Nowhere does the Publisher AC mention Gannett (or any other) sponsorship deals or any alleged misrepresentations by Google that EDA-related issues had been resolved.

---

[12] This includes the 2020 *Genius Media* complaint, the 2021 complaint filed in *In re Google Digital Publisher Antitrust Litig.*, No. 20-cv-08984 (N.D. Cal. Apr. 5, 2021), ECF 64, and the 2022 Publisher AC.

Accordingly, Gannett's 2018 EDA claim is based on different alleged conduct than the publishers' claim and *American Pipe* tolling does not apply.

### C. Gannett has failed to plead fraudulent concealment as to EDA.

Gannett agrees (at 20) that it must plead: "(1) that the defendant concealed from [it] the existence of [its] cause of action, (2) that [it] remained in ignorance of that cause of action until some point within four years of the commencement of [its] action, and (3) that [its] continuing ignorance was not attributable to lack of diligence on [its] part." *State of N.Y. v. Hendrickson Bros.*, 840 F.2d 1065, 1083 (2d Cir. 1988). These elements must be alleged with particularity under Rule 9(b). *Kearse v. Kaplan*, 692 F. Supp. 2d 398, 401 (S.D.N.Y. 2010). But Gannett has failed to plead fraudulent concealment as to EDA, and by providing no argument in opposition, Gannett concedes that it failed to plead fraudulent concealment as to line-item capping.

Gannett first contends (at 20) that Google concealed material facts underlying EDA. But Gannett fails to allege active concealment by Google. *See* Br. at 16-17. And Gannett's so-called "specific misrepresentations," including reference to a Google-commissioned study, Opp. at 22 (citing Compl. ¶ 151-52), do not include allegations of the speaker, time, or place, as Rule 9(b) requires. At best, Gannett alleges Google failed to offer Gannett "proof" that an alleged under-delivery of direct deals had been fixed. Compl. ¶ 154. A purported failure to provide affirmative "proof" is a far cry from active concealment, and the allegation of failure to offer proof does not satisfy Rule 9(b) in any event. Moreover, Gannett concedes that it was able to detect the alleged issue in 2014. *See id.* ¶¶ 154-55.

Gannett next argues (at 22) that it "remained unaware of its EDA-related cause of action until 2020,"[13] while also admitting (at 22 n.6) that it recognized in 2018 that EDA "was causing

---

[13] While Gannett points to Compl. ¶ 16 (at 23) to assert that it did not know of its EDA cause of action until 2020, ¶ 16 makes no reference to the year "2020" in connection with EDA nor does it mention EDA.

9

harm." But it knew even earlier; "in 2014" Gannett knew of and complained to Google about purported EDA injuries, such as DFP "not delivering on direct deals." Compl. ¶ 154.

Last, Gannett argues (at 23) that its ignorance of its EDA claim was not due to a "lack of diligence," *see Hendrickson Bros.*, 840 F.2d at 1083, but rather a result of Google misleading it. Gannett has not pleaded facts to back this contention. Instead, Gannett alleges only that in 2014 it "complained to Google," Compl. ¶ 154. But merely claiming that Google "never offered Gannett any proof that the under-delivery issue had been resolved," *id.*, is not active diligence by Gannett. Nor is waiting nine years to file a complaint after so-called "repeated requests" for more information on EDA, which Gannett already knew "was not delivering on direct deals." *Id*.

## VII. Dismissal Should Be With Prejudice.

Dismissal with prejudice is warranted because Gannett is not akin to another plaintiff filing its first complaint; it has had the benefit of an extensive, multi-year docket containing the Court's Order and Google's arguments against subsequent complaints. *See* Opp. at 25. Allowing Gannett leave to amend where it has not appropriately "prune[d]" its complaint would constitute "an act of futility and a waste of resources." *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 646-47 (E.D.N.Y. 2017).[14] Dismissal with prejudice is especially warranted as to Gannett's EDA and line-item capping claims as they are time barred. *See Northbrook Nat. Ins. Co. v. J & R Vending Corp.*, 167 F.R.D. 643, 647 (E.D.N.Y. 1996).

## CONCLUSION

For the reasons set forth in Google's Opening Brief and above, the Court should grant the Motion to Dismiss Gannett's Complaint with prejudice.

---

[14] Gannett (at 25) attempts to distinguish *Ying Li* on the basis that the plaintiff in that case was afforded initial leave to amend, but the plaintiff in *Ying Li* did not have the same benefit as Gannett of a multi-year docket replete with opinions and filings on what Gannett alleges are similar claims.

10

Dated: October 27, 2023

*/s/ Justina K. Sessions*

<table>
<tr><td>

Justina K. Sessions
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250
Fax: (650) 461-8276
justina.sessions@freshfields.com

Eric Mahr
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street NW, 10th Floor
Washington, DC 20005
eric.mahr@freshfields.com

Robert J. McCallum
Jeanette Bayoumi
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
601 Lexington Ave, 31st Floor
New York, NY 10022
rob.mccallum@freshfields.com
jeanette.bayoumi@freshfields.com

</td><td>

Daniel Bitton
Denise L. Plunkett
Craig M. Reiser
Eva H. Yung
Claire L. Haws
AXINN, VELTROP & HARKRIDER LLP
114 West 47th Street
New York, New York 10036
Telephone: (212) 728-2200
Fax: (212) 728-2201
dbitton@axinn.com
dplunkett@axinn.com
creiser@axinn.com
eyung@axinn.com
chaws@axinn.com

Bradley Justus (pro hac vice)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
Telephone: (202) 912-4700
Fax: (202) 912-4701
bjustus@axinn.com

Caroline P. Boisvert (pro hac vice)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, Connecticut 06103
Telephone: (860) 275-8100
Fax: (860) 275-8101
cboisvert@axinn.com

*Counsel for Defendants Google LLC and Alphabet Inc.*

</td></tr>
</table>