# Freshfields Bruckhaus Deringer US LLP

**Via ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

**Washington**
700 13th Street, NW
10th Floor
Washington, DC 20005-3960
T +1 202-777-4545
E eric.mahr@freshfields.com
www.freshfields.com

November 1, 2023

Re:   *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC)

Dear Judge Castel:

I write on behalf of Defendants Google LLC, Alphabet Inc., and YouTube, LLC (collectively "Google") in advance of tomorrow's conference concerning search term and custodian negotiations. Google has already produced more than six million documents from the files of 158 custodians—a sweeping set of Google product managers, engineers, salespersons, and executives associated with Google's ad tech products. And Google has already agreed to add (and has run) *more than 100 additional search term strings proposed by Plaintiffs*. Given Google's enormous production and its repeated accommodations of Plaintiffs' discovery demands, we respectfully submit that Google has already produced materials more than sufficient for the needs of this case. Nevertheless, to put to rest any conceivable concerns about the adequacy of its searches, Google put forward an allocation proposal that would allow Plaintiffs to select even more additional custodians and search terms. But Plaintiffs are *still* not satisfied and continue to demand more. Plaintiffs' scorched earth discovery demands should be brought to an end.

Google recognizes that "[a] judicial ruling on custodians and search terms is an inexact and crude tool." ECF No. 656 at 2. That is why Google made its allocation proposal: to ensure that Plaintiffs could fill any purported gaps without the Court or Google having to parse Plaintiffs' ever-expanding, ever-shifting, and apparently insatiable "needs." That proposal is more than adequate, in fact generous, in light of Google's massive document searches and productions to date. The Court should now bring these negotiations to a close by entering the Proposed Order attached hereto as Exhibit A.

**Plaintiffs Misrepresent the Background to This Dispute**

Plaintiffs' summary of "Negotiations to Date"—which begins in August 2023, *see* ECF No. 654 at 2—misrepresents and ignores most of the relevant background to this dispute. After being invited by the Court to prepare RFPs over two years ago,[1] Plaintiffs waited sixteen months

---

[1] ECF No. 142 at 33:9-17.

before serving 301 broad Requests for Production. The Court noted on October 25 that "there seems to be a mindset on the part of the plaintiffs' Discovery Steering Committee of accommodating the demands of each and every plaintiff . . . here it runs the danger of producing unrestrained and unwieldy requests for production." ECF No. 656 at 1. That is exactly what has happened: more than 50 of the Requests specifically targeted the needs of particular private plaintiffs and were not "common" to all Plaintiffs.[2]

On February 27, 2023, Google responded with its Responses and Objections and a comprehensive search term and custodian proposal that was (and remains) sufficient and proportional to the needs of the case: Google would apply 80 broad search strings across the files of 119 custodians covering a ten-year period.

At the same time, in the parallel case filed by the U.S. Department of Justice in the Eastern District of Virginia (the "DOJ Case"), Google negotiated search terms with the DOJ and 17 states in a small fraction of the time the MDL Plaintiffs have taken in this case. On April 11, Google provided the DOJ Plaintiffs the same search term and custodian proposal that it proposed to MDL Plaintiffs. In a matter of weeks, Google agreed to all 23 of EDVA Plaintiffs' search term proposals. Notably, all responsive non-privileged documents hitting on these search terms were also produced to MDL Plaintiffs.

In contrast, MDL Plaintiffs have dragged on negotiations in this case for months and months. Google has met and conferred with MDL Plaintiffs approximately twenty times and has faced ever ballooning demands, even though the Court has cautioned against "delay and volume for the sake of a lodestar," ECF No. 560 at 29:13-14. Google has provided MDL Plaintiffs with five rounds of hit counts and three rounds of managerial reporting line information for over 40 custodians proposed by these various constituencies. Google has also spent many hours walking Plaintiffs through disputed search terms and suggesting ways to narrow them.

Over the course of these protracted negotiations, Google agreed to add *over 100* of the now 200 search terms proposed by Plaintiffs and agreed to a total of 158 custodians—and has since offered allocations on top of that. Against that backdrop, Plaintiffs' assertion that Google has not come "anywhere close to meeting Plaintiffs half way," ECF No. 654 at 1, is incredulous. Likewise, Plaintiffs' various assertions that Google has not supplied Plaintiffs with relevant information to narrow this dispute, *id*. at 1, 2, are false.[3]

Despite Google's efforts, negotiations finally fell apart on October 20 when Plaintiffs, for the first time, took the position that their 301 Requests were merely the "first swath" and that various groups of Plaintiffs were in the process of preparing additional Requests that would require additional search terms and custodians. Plaintiffs' new position cannot be squared with

---

[2] *See* ECF No. 441, Ex. A (RFP Nos. 71-78, 146-52, 182-90, 199-203, 213-20, 255-57, 268, 277, 284-97). RFP Nos. 284-93 fall under the heading "Documents Concerning Individual Action Plaintiffs," but many other RFPs are specific to particular plaintiff groups. To provide just one example, RFP Nos. 294-97 relate to "Arbitration Issues" concerning Advertisers' arbitration agreements.

[3] Plaintiffs' assertion that "Google has steadfastly refused to provide unique hit counts on Plaintiffs' search terms," ECF No. 654 at 2, is misleading. Google has never "refused" to provide this information but instead supplied the only information reasonably available.

their earlier statements that "discovery [should] occur on all issues related to the pleadings as currently constituted," ECF No. 358 at 3, that their initial Requests were intended to be "comprehensive" and cover "all aspects of the case," *see* ECF No. 371 at 8, and the fact that Plaintiffs' initial Requests already contained more than 50 Requests that were clearly tailored to specific claims brought by specific Plaintiffs, *supra* at n.2.

**The Court Should Enter Google's Proposed Order**

Google's proposal that Plaintiffs receive a set allocation of additional search terms and custodians is the most efficient way to resolve this dispute. Given the massive amount of discovery that Google has already provided, Plaintiffs' claims to need more are dubious at best. Google's proposed resolution provides Plaintiffs with a more than reasonable means to request additional information. Google first raised the idea of a search term and custodian allocation in May. Google has consistently told Plaintiffs that the point of its proposal is to allow Plaintiffs to prioritize and select custodians and search terms that they deem important without the need to burden the Court with disputes about the relevance of specific terms and custodians. Regrettably, Plaintiffs are now doing exactly that.

*Custodians*

Google has already agreed to 158 custodians associated with Google's ad tech products. While Google views the existing set of custodians to be more than sufficient, in order to resolve this dispute, Google remains willing to add all three additional custodians requested on behalf of all Plaintiffs and will run all agreed search terms over those custodians. Ex. A ¶ 2.

Separately, Google recognizes that certain Plaintiffs may want to prioritize custodians who communicated directly with those Plaintiffs. That is why Google proposed to allow Daily Mail to add all four of its specifically requested custodians, Gannett to add all five of its specifically requested custodians, and Inform to add six of its ten proposed custodians. But the searches run over these Plaintiff-specific custodians should be narrowly tailored. To ensure they are, Google proposes that each of these three Plaintiffs should choose search terms up to a limit of 50,000 search hits per Plaintiff (post-deduplication). Ex. A ¶ 2. That is more than sufficient, especially as Google has already produced more than six million documents from 158 custodians and non-custodial sources.

Plaintiffs, on the other hand, are demanding that Google run over 150 of the more than 200 search terms over the files of another 22 custodians. But of those 22, only three are common to all Plaintiffs while 19 are at the behest of individual Plaintiffs that have had an outsized influence on the Discovery Steering Committee and whose complaints have yet to survive a motion to dismiss.

For instance, Inform claims to need YouTube-related discovery[4] but has yet to address the fact that more than a dozen of the already agreed 158 custodians worked on YouTube—including

---

[4] Inform's YouTube claims are subject to a pending motion to dismiss every one of Inform's federal-law claims "that are not covered by the other MDL Plaintiffs' allegations." *See* ECF Nos. 592-93.

its current and former chief executive officers.[5] Neither Daily Mail nor Gannett has addressed the fact that the already agreed-upon custodians include multiple senior-level individuals who manage or managed partnerships with news and media organizations and Google's Vice President of News. And none of these individual plaintiffs acknowledge that Google has already agreed to add a number of custodians that they previously identified as "priorities." Under Google's allocation proposal, neither Google nor the Court needs to further address Plaintiffs' shifting priorities.

*Search Terms*

Google's proposal is that Plaintiffs can collectively select whichever search terms are of interest to them up to 250,000 hits (pre-duplication). Ex. A ¶ 1. Plaintiffs' refusal to confine themselves to 250,000 *new* document hits reflects their insatiability, not the inadequacy of Google's proposal.

The fundamental purpose of the Discovery Steering Committee is to coordinate amongst Plaintiffs and streamline discovery. That is not happening. Plaintiffs latest demands are unduly driven by the unique desires—and intransigence—of several different plaintiff factions. Of the ten "disputed" terms, only four terms[6] totaling approximately 165,000 hits relate to common claims and RFPs, and so Google's proposal is sufficient to cover all of those. Of the remaining "disputed" terms, two[7] totaling approximately 48,000 hits relate to plaintiff-specific claims. The remaining four terms[8] comprise the bulk of the hits, approximately 429,000 documents, and seek all references to the names of various plaintiff entities. Since the beginning of these negotiations, Google suggested that Plaintiffs include some sort of modifier or limitation that would tether these search terms to those Plaintiffs' claims or defenses but Plaintiffs have declined to do so. Google has made clear to Plaintiffs that they can still, if they choose to do so, narrow those terms.[9] And Google's allocation proposal allowing for each of Gannett, Daily Mail, and Inform to select additional search terms allows them to target their claims or defenses.

*Limitations on Subsequent Discovery*

In its Order dated October 25, the Court stated that it would would "likely shut down further rounds of requests" that were improper, but may entertain them "if subsequent developments in the course of discovery (*i.e.*, future productions or depositions) demonstrate that

---

[5] YouTube's current CEO was deposed on Monday. MDL Plaintiffs, including Inform (whose counsel is on the Discovery Steering Committee), did not cross-notice that deposition.

[6] Proposed Terms 29, 80, 165, and 177.

[7] Proposed Terms 60 and 179.

[8] Proposed Terms 94, 107, 191, and 200.

[9] Plaintiffs devote much of their October 20 letter to slicing and dicing Google's allocation proposal in an effort to get still further documents, ECF No. 654 at 2-4. Google has already once increased its allocation to address Plaintiffs' various complaints, and again changed it, at Plaintiffs' request, to assess hits on a pre-deduplication basis rather than a post-deduplication basis. It is clear that Plaintiffs will continue to manufacture concerns with Google's proposal unless Google agrees to all of their demands.

there are significant and relevant documents that were not captured by the prior rounds," ECF No. 656 at 2.  Google has incorporated this standard into its Proposed Order, as well as the procedures for seeking leave to issue additional, non-duplicative documents requests that the Court has already put in place with respect to Inform.  Ex. A ¶¶ 3-4.

Plaintiffs have taken the position that the parties should hash out now, in detail, all of the categories of permissible subsequent discovery that may be warranted.  Google does not propose to enumerate those now, without having seen Plaintiffs' contemplated requests.[10]  The Court has put in place clear processes for seeking additional Requests.  In Pre-Trial Order No. 3, the Court directed the DSC to draft a common set of requests.  ECF No. 311 ¶ 3.  In addition, "[c]ounsel for any plaintiff [could] apply to the Court for leave to serve a supplemental discovery request that complies with Rule 26 and is non-duplicative of the requests served by the Discovery Steering Committee."  Id.  Plaintiffs could have done so long ago.  When Inform did so earlier this month, the Court put in place a structure for analyzing those Requests. ECF No. 647. Google's proposal ensures that the same process is followed with respect to any subsequent Requests sought by Plaintiffs.

\* \* \*

For all the reasons stated, the Court should bring these negotiations to an end by entering the Proposed Order at Exhibit A.  The Court should also closely scrutinize any further attempts by Plaintiffs to seek additional discovery that is not proportional to the needs of the case.

Respectfully submitted,

*/s/ Eric Mahr*
Eric Mahr
Robert J. McCallum
FRESHFIELDS BRUCKHAUS DERINGER US LLP
700 13th Street NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Fax: (202) 777-4555
eric.mahr@freshfields.com
rob.mccallum@freshfields.com

Justina K. Sessions
FRESHFIELDS BRUCKHAUS DERINGER US LLP

---

[10] However, one category the parties have discussed at length in the last week is related to State Plaintiffs' DTPA claims.  State Plaintiffs have taken the position that discovery was stayed as to state law claims, but Google sees no basis for that position, and on an October 20 meet and confer, counsel for other plaintiffs disagreed, and took the position that discovery was only stayed as to the Network Bidding Agreement.

855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250
Fax: (650) 461-8276
justina.sessions@freshfields.com

Daniel Bitton
Denise L. Plunkett
Craig M. Reiser
AXINN, VELTROP & HARKRIDER LLP
114 West 47th Street
New York, NY 10036
Telephone: (212) 728-2200
Fax: (212) 728-2201
dbitton@axinn.com
dplunkett@axinn.com
creiser@axinn.com

Bradley Justus (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
Telephone: (202) 912-4700
Fax: (202) 912-4701
bjustus@axinn.com

*Counsel for Defendants Google LLC, Alphabet Inc., and YouTube LLC*

CC: All Counsel of Record (via ECF)