**Discovery Steering Committee**
**In re Google Digital Advertising Antitrust Litigation**

March 8, 2024

<u>**Via ECF**</u>
Hon. P. Kevin Castel
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

*In re Google Digital Advertising Antitrust Litigation*
Case No. 1:21-md-03010 (PKC)

Dear Judge Castel:

On behalf of MDL Plaintiffs, the Discovery Steering Committee respectfully requests that the Court compel Google timely and properly to answer Plaintiffs' Interrogatories Nos. 1 – 3, which seek information on Google's internal file systems and the identification and descriptions of Google data fields and data analysis tools relevant to named Plaintiffs' data. In the alternative, MDL Plaintiffs respectfully request the Court schedule a conference to resolve the dispute. The parties have met and conferred at length but are unable to resolve this dispute without Court intervention. No conference is scheduled at this time.

Google has resisted these repeated requests for over a year. Plaintiffs seek the intervention of the Court to ensure that Google's data productions will include data relevant to plaintiffs claims and damages before the end of fact discovery. Google's resistance and efforts to manufacture delay should not be permitted to threaten this Court's carefully crafted discovery schedule. *Cf.* ECF 708 at 1 ("The Court does not anticipate extending the date for completion of fact discovery.").

**I. The Interrogatories and Google's Responses and Objections**

**Interrogatory No. 1**

In Interrogatory No. 1, served on March 15, 2023, Plaintiffs sought a brief inventory of the kinds of non-custodial sources that Google maintains, to allow Plaintiffs better to tailor further requests for such non-custodial documents:

> Interrogatory No. 1: "Identify all servers, networks, storage devices, facilities (including cloud storage), and databases that You use or have used to store documents concerning Ad Tech Products by providing for each, its: (1) name, (2) location, (3) custodian, (4) a general description of the documents it stores or stored, and (5) for each database, also identify all dashboards, tables, and/or fields (including field descriptions) that are or were used in connection with such database."

Hon. P. Kevin Castel
March 8, 2024
Page 2 of 10

Google proffered four pages of objections, primarily to the definition of "Ad Tech Products," and its only substantive response was that it uses a cloud-based office software suite similar to Microsoft Office and has data centers in several states.[1] Google provided no specifics identifying any particular servers, networks, storage devices, facilities or databases where it stores documents or data concerning its ad tech products that are the focus of this action.

After Plaintiffs challenged the facial inadequacy of Google's response, Google conceded that it would supplement its response "in due course." Letter from R. McCallum to P. Korologos (July 12, 2023), at 2. Despite Plaintiffs raising the issue at numerous meet and confers since, Google has failed to supplement its response. Over the parties' four meet and confers on February 2, 9, 16, and 22, 2024, Google stated that it had no update on its supplemental response and attributed its delay to proceedings in the Texas Action.[2] At the parties' last meet and confer on March 8, 2024, Google conceded that that its negotiations with Texas over non-custodial sources did not necessarily impact its ability to supplement its responses in the MDL and provided yet another noncommittal timeline for its response—a year after the Interrogatory was first served and nine months after it agreed to supplement its response.

**Interrogatories Nos. 2 and 3**

Near the end of last year, and following various failed attempts to obtain information on Google's data fields and sources informally and through Interrogatory No. 1, MDL Plaintiffs served Interrogatories Nos. 2 and 3. Interrogatory No. 2 requested that Google identify the data sources it maintains that "collected, managed, or used Plaintiffs' data derived from [its] Ad Tech Products or Ad Tech Auction Mechanics":

> Interrogatory No. 2: "Identify and describe each and every Google Data Source that collected, managed, or used Plaintiffs' data derived from Your Ad Tech Products or Your Ad Tech Auction Mechanics by providing separately for each: (1) its name; (2) a general description of the Google Data Source, including its (a) function, (b) contents, and (c) operation; (3) each and every field or protocol buffer available therein; (4) a description of each and every field or protocol buffer identified in (3); (5) an identification or description of any associated schema or schematic; and (6) the applicable data retention period or periods."

---

[1] Notwithstanding this high level of generality, Google designated the entirety of its response "Highly Confidential."[1] Thus, in accord with prior practice in this action, the full text of Google's objections and responses to this Interrogatory has been provided to the Court as **Attachment A** to a chambers copy of this letter motion. *See* ECF 654 at 4 & n.3; ECF 660.

[2] Interrogatory No. 1 was served on March 15, 2023, while the Texas case was still part of the MDL.

Interrogatory No. 3 requested that Google identify all of its Analysis tools, including its proprietary RASTA[3] tool and any dashboards, that Google used to conduct analysis on any of Plaintiffs' data sourced directly or indirectly from its Ad Tech Products or its Ad Tech Auction Mechanics:

> Interrogatory No. 3: "Identify each and every Analysis tool, including but not limited to RASTA and any dashboards, that Google used to conduct analysis on any of Plaintiffs' data sourced directly or indirectly from Your Ad Tech Products or Your Ad Tech Auction Mechanics, by providing for each: (1) its name; (2) a general description of the Analysis tool, (3) the sources of data used as inputs by the Analysis tool; (4) the parameters and specifications that may be selected for the Analysis tool to determine output; (5) a description of the outputs available from the Analysis tool; (6) an identification or description of any associated schema or schematic; and (7) the applicable retention period for any outputs available from the Analysis tool."

On January 29, 2024, Google served lengthy objections to Interrogatories Nos. 2 and 3, refusing to provide any substantive response. Google objected on three principal grounds: (i) that the Interrogatories violate Local Civil Rule 33.3; (ii) that a response would be unduly burdensome; and (iii) that the Interrogatories include vague and undefined terms. The full text of Google's objections is set out in **Attachment B** to this letter motion.

MDL Plaintiffs served Interrogatories Nos. 2 and 3 when it became clear that Google was resisting a meaningful response to Interrogatory No. 1 and informal requests during meet and confer discussions and in letters. Plaintiffs' purpose with these requests is to allow all Plaintiff groups better to understand what available data has been excluded from Google's productions and to be able specifically to target requests for data and centrally stored documents (an approach particularly relevant for structured data productions).

For example, MDL Plaintiffs' discovery into Google's alleged anticompetitive conduct has included requests for production seeking transaction-level and aggregated data, data analyses, experimental results, and documents related to the analytical tools Google used in making decisions about its relevant ad tech products. Google has largely attempted to satisfy its obligations to produce documents or data responsive to the Data Requests through re-production of data produced to the Department of Justice, with only limited productions related to the named Plaintiffs in the MDL or in response to MDL Plaintiffs' (as opposed to DOJ's) requests. *See* Letter from D. Pearl to M. Mao and W. Noss (May 30, 2023); Letter from J. Sessions to W. Noss (April 20, 2023). When it comes to data, MDL Plaintiffs—who have individual or class

---

[3] "RASTA" stands for "Reliable A/B Stats Tracking Architecture." Google's Responses and Objections to Plaintiffs' Second Set of Interrogatories at 11. RASTA is the internal experimentation system used by Google to collect, display, and analyze experiment results used for product launches, quality improvements, and financial analyses, including Ads revenue. *See* GOOG-DOJ-AT-00721604.

damages claims—have different interests and different needs than government enforcers primarily seeking injunctive relief.

Recognizing that production of large volumes of structured data could be burdensome on both sides, MDL Plaintiffs proposed to minimize the burden by obtaining information about the nature and structure of the data available—specifically the identity and description of data fields generated or stored by Google relating to its ad tech business. It is standard practice for any large structured data sets to include lists of field names and field descriptions, disclosing what data fields are available, the meaning of the values contained in such fields, and how fields may relate to the other fields in the set. Since April 2023, Plaintiffs have requested this information.[4] Google refused, claiming burden. Plaintiffs then further limited our request to such information solely related to Google's data concerning the named Plaintiffs. Google again refused, claiming burden.[5]

In addition to ensuring that Plaintiffs have necessary data concerning at least our own ad tech transactions, the information sought will allow Plaintiffs to determine whether Google has withheld relevant data. This concern is not hypothetical. On February 15, 2024, Google produced some datasets "*used by Google experts to support their opinions*". Letter from D. Pearl to W. Noss (February 15, 2024) (emphasis added). Google noted that its newly produced datasets included "**additional fields** from the same internal source which created the May 30, 2023 and June 30, 2023 productions" of ad exchange-derived data. *Id.* (emphasis added). In other words, because of Google's incomplete data productions, Plaintiffs' experts had been working with the previously produced ad exchange-derived data for months without knowing that there are other relevant data fields available. Google revealed those other relevant data fields only when Google decided that *its* experts would use the additional, previously undisclosed data fields. This selective production by Google of only the data that it wants to utilize, subjects Plaintiffs to substantial unfair prejudice and makes it more difficult for Plaintiffs accurately calculate the damages we suffered from Google's violations.

---

[4] Email from W. Noss to S. Sherman and D. Bitton (April 10, 2023); Letter from M. Mao to D. Bitton and R. McCallum (April 27, 2023); Email from M. Mao to R. McCallum and J. Sessions (May 1, 2023); Letter from M. Mao to D. Pearl and R. McCallum (June 5, 2023); Email from M. Mao to D. Pearl (June 8, 2023); Email from M. Mao to D. Pearl (June 19, 2023); Letter from M. Mao to D. Pearl and R. McCallum (June 26, 2023); Letter from W. Noss to D. Pearl (July 27, 2023); *see also* Letter from S. Vash to R. McCallum (August 8, 2023) (requesting an event or log-level data set that spans one week during which Inform was operating); Letter from S. Vash to R. McCallum, B. Zweifach and E. Brandon (February 1, 2024) (same); Letter from S. Vash to R. McCallum, B. Zweifach and E. Brandon (March 1, 2024) (same).

[5] Letter from J. Sessions to W. Noss and M. Mao (April 20, 2023); Letter from D. Bitton to M. Mao and W. Noss (May 9, 2023); Letter from D. Pearl to M. Mao (June 12, 2023); Letter from D. Pearl to M. Mao and W. Noss (September 14, 2023).

Hon. P. Kevin Castel
March 8, 2024
Page 5 of 10

In other cases, Google's unilateral withholding of data, even in the face of court order, has repeatedly occurred. *See Brown v. Google LLC*, No. 20-cv-03664-YGR-SVK, ECF 588 (N.D. Cal. May 20, 2022) (sanctioning Google for failing to produce certain data logs and ordering it to "provide plaintiffs with a representation in writing . . . that other than the logs identified thus far as containing Incognito-detection bits, no other such logs exist); *Brown v. Google LLC*, No. 20-cv-03664-YGR-SVK, ECF 898 (N.D. Cal. March 20, 2023) (again sanctioning Google, for failing to identify and produce certain data log fields as mandated by May 20, 2022 sanctions order and ordering that the jury instruction include the language "Despite multiple Court orders requiring Google to disclose the information, Google failed to timely disclose (a) at least 70 relevant data sources . . . ."); *see also In re Google Play Store Antitrust Litig.*, 664 F. Supp. 3d 981, 993–94 (N.D. Cal. 2023) (determining that Google intentionally deleted Google Chat messages in an effort that was "intended to subvert the discovery process"); *In re Google Play Store Antitrust Litig.*, No. 21-md-02981-JD, ECF 850, Jury Instruction No. 13 (N.D. Cal. Dec. 6, 2023) ("You have seen evidence that Google Chat communications were deleted with the intent to prevent their use in litigation. You may infer that the deleted Chat messages contained evidence that would have been unfavorable to Google").

These concerns with Google's failure to provide meaningful productions of data or even information concerning what data is available led Plaintiffs to serve Interrogatories Nos. 2 and 3 on December 29, 2023.

As set forth below, Google's objections are meritless and should be overruled. Google should be required to provide substantive responses to Interrogatories 1, 2 and 3 within ten days to ensure that Plaintiffs can meaningfully understand and ensure the production of data relevant to our claims, including for use by our experts.

## II. Argument

### A. The Interrogatories comply with Local Civil Rule 33.3.

Local Civil Rule 33.3 provides, in relevant part:

"(a) Unless otherwise ordered by the Court, at the commencement of discovery, interrogatories will be restricted to those seeking names of witnesses with knowledge of information relevant to the subject matter of the action, the computation of each category of damage alleged, and the existence, custodian, location and general description of relevant documents, including pertinent insurance agreements, and other physical evidence, or information of a similar nature.

(b) During discovery, interrogatories other than those seeking information described in paragraph (a) above may only be served (1) if they are a more practical method of obtaining the information sought than a request for production or a deposition, or (2) if ordered by the Court."

Hon. P. Kevin Castel
March 8, 2024
Page 6 of 10

All three Interrogatories comply with this rule.

*First*, this case has progressed well past the "commencement of discovery." Indeed, as the Court noted earlier this week, "80% of the fact discovery period ha[s] passed." ECF 708 at 1. Thus, Local Civil Rule 33.3(a) no longer limits written discovery. *See In re Weatherford Int'l Sec. Litig.*, 2013 WL 5788680, at *1, 3 (S.D.N.Y. Oct. 28, 2013) (applying 33.3(b) to permit written discovery where ten months of fact discovery had passed and plaintiffs had served four sets of interrogatories); *Madanes v. Madanes*, 186 F.R.D. 279, 290 (S.D.N.Y. 1999) (holding that 33.3(b) applied to permit written discovery because "discovery has progressed well beyond the initial stages" where complaint was filed 2.5 years ago and parties completed motion to dismiss briefing almost two years ago).

Accordingly, Local Rule 33.3(b) is operative, and the Interrogatories are a "more practical method of obtaining the information sought than a request for production or a deposition." L. Civ. R. 33.3(b). Plaintiffs' Interrogatories here request identification and descriptions of data fields relevant to this litigation. Written interrogatory responses are a far more efficient way to obtain this information than deposition testimony. *See In re Weatherford Int'l Sec. Litig.*, 2013 WL 5788680, at *3 (S.D.N.Y. Oct. 28, 2013) (stating it would be inefficient to rely on a witness at deposition to "accurately recall a series of specific financial transactions"). Courts have recognized that interrogatories are an efficient method for requests to identify various forms of technical information, as requested here. *See id.*; *Madanes*, 186 F.R.D. at 290 (interrogatory was efficient tool for identification of relevant bank accounts); *J. Goldman & Co. v. Kowal*, 1997 WL 452332, at *1 (S.D.N.Y. Aug. 8, 1997) ("[t]o the extent the interrogatories in issue seek the identification of individuals and the identification of certain [accounting] transactions, discovery by way of interrogator[y] is a more practical vehicle for obtaining the information."). And Google's unilateral selection of data—as evidenced by Google's February 15, 2024, production of data it had initially withheld from Plaintiffs but ultimately decided its own experts might use—underscores that use of requests for production is not a meaningful way to ensure either a proper understanding of what is available or that production of relevant data to which Plaintiffs are entitled will in fact be made.

*Second*, even if Local Rule 33(a) applies, the Interrogatories fall well within that provision. Local Rule 33(a) permits interrogatories on the "existence, custodian, location and general description of relevant documents" and Local Civil Rule 26.3(c)(2) and Federal Rule 34 broadly define "documents" to include data and other electronically stored information. Accordingly, all three Interrogatories—which request identification and descriptions of various data sources—comply with Local Rule 33.3(a). *See Frio Energy Partners, LLC v. Fin. Tech. Leverage, LLC*, 2023 WL 4029656, at *3 (S.D.N.Y. June 15, 2023) (finding request to identify financial institution fell within the scope of the information permitted to be requested under Local Rule 33.3).

> **B. The Interrogatories are proportional and were necessitated by Google's refusal to provide sufficient information.**

Google's modus operandi throughout this entire litigation has been to resist and delay responding substantively to any specific request for data relevant to Plaintiffs' damages claims, while pointing at the volume of data it produced to government enforcers whose primary relief is injunctive and whose case differs in important respect from private plaintiffs with respect to proof of damages. The Court should not countenance Google's attempts to "run down the clock," which threaten to push these disputes up to or even beyond the end of fact discovery. *Cf.* ECF 708. "[D]iscovery in this MDL should be winding down," *id.*, but Google continues to block Plaintiffs' legitimate efforts to identify data in Google's possession that may materially impact our damages calculations.

The Interrogatories here are a proportional means of determining whether further data requests are necessary or warranted. As an initial matter, there is little burden because, as Google conceded at the parties' June 23, 2023, meet and confer, it has a lookup tool for fields and field descriptions from its internal systems that can be used to generate lists of the fields and field descriptions that Plaintiffs request. *See* Letter from M. Mao to D. Pearl (June 28, 2023), at 2.

Google has repeatedly pointed to the *volume* of data that it has produced as sufficient. Yet volume for volume's sake is pointedly ***not*** what Plaintiffs are seeking. With these requests Plaintiffs seek to know what data is in Google's possession so that Plaintiffs, not Google, can make a determination of what is available and relevant to Plaintiffs to analyze the consequences of Google's anticompetitive conduct and the resulting damages to Plaintiffs.

Google has repeatedly shown that it cannot be relied on for a fair and unbiased determination of what data should be produced in discovery. As noted, Google recently produced "additional fields" "used by Google experts to support their opinions" that, until February 15, had neither been provided nor even identified by Google to MDL Plaintiffs. Letter from D. Pearl to W. Noss (February 15, 2024). Indeed, even after the February 15 supplemental production of "additional fields", Plaintiffs still do not know what other fields exist that might be relevant but are being withheld from Plaintiffs.[6] The "additional fields" Google recently provided were available to Google at the time it made its initial data productions *nearly a year ago*. This is not how discovery is supposed to work. *Cf. Brown v. Google LLC*, 20-cv-03664-YGR-SVK, ECF 898 (N.D. Cal. March 20, 2023) (sanctioning Google for repeated noncompliance with court orders regarding disclosure of data). Plaintiffs suffer significant prejudice when Google is permitted willfully and selectively to withhold relevant information potentially concerning Plaintiffs' impact and damages analyses for months on end, while simultaneously giving its own experts several months' head start in formulating opinions based off the same data.

Plaintiffs are entitled to know what data and data fields Google has that it has not produced and to have the opportunity to make specific and proportional requests for production

---

[6] To be clear, for the better part of a year we have been asking Google to identify available data fields and its canned response has been for us to look at the data and tell Google what we think is missing: "Catch-22."

of additional data.  Google cannot assert proportionality and burden objections if it is going to willfully withhold data and furnish its own experts the very data and data fields that it claimed would be unduly burdensome for it to produce to Plaintiffs.

### C. Google's vagueness objections are meritless.

Google's vagueness objections are not meaningful objections and are instead posturing to try to "play dumb."  Plaintiffs' requests state with reasonable particularity the information sought using terms well understood by Google and its counsel.  There is no confusion about the information requested—basic inventories of data fields with descriptions—which MDL Plaintiffs have been requesting for nearly a year.

With respect to Interrogatory No. 2, Google objected to the words "Plaintiffs' data," "functions," "content," "operations," "protocol buffer," and "associated schema or schematic" as vague and ambiguous.  It is clear what Plaintiffs are requesting here: identification and descriptions of data fields of data connected with the Plaintiffs, which would include the "functions," "content," and "operations" of these data fields.  "Protocol buffers" are also no mystery to Google—this is a format used to serialize structured data *developed by Google*.  *See Overview*, Protocol Buffers Documentation, https://protobuf.dev/overview/ ("Protocol buffers were open sourced in 2008 as a way to provide developers outside of Google with the same benefits that we derive from them internally. . . . © 2024 Google LLC").  Likewise, schemas and schematics are well-known to Google; they simply define how data is organized within a database.

Interrogatory No. 3 is no different, with Google objecting to the terms "RASTA", "dashboards" and "tool" as vague and ambiguous.  Google objected to "RASTA" as vague and ambiguous despite being able to identify its meaning *in its objection*, having specifically defined it in prior correspondence with MDL Plaintiffs, and despite the fact RASTA is used frequently in Google's internal documents.  RASTA provides experimental results, including financial projections, of potential product changes—including anticompetitive conduct alleged by Plaintiffs, such as Bernanke, Poirot, and Elmo—and was key to Google's internal decision making.  Google also objected to the term "dashboards" as vague and ambiguous even though the term is commonly used to refer to data output tools in Google's own internal documents.  *See, e.g.*, GOOG-AT-MDL-003598353 (displaying a dashboard output graph related to header bidding impression monitoring drawn from an internal Google website URL containing "dashboards" and "hbmonitor"); GOOG-DOJ-AT-01949361, at pp. 84-85 (referencing Global Ad Competition Dashboard that includes information on over 150 ad tech firms).[7]  These dashboards—which track things like header bidding and other ad tech companies—are undoubtedly relevant and may be used to display information relevant to key aspects of Plaintiffs' proof such as market share and revenue impacts.

---

[7] To demonstrate the relevance and utility of these dashboards, Plaintiffs can, upon request, provide to the Court with documents showing examples of these dashboard outputs.

Hon. P. Kevin Castel
March 8, 2024
Page 9 of 10

In addition, "tool"—used in the context of "Analysis tool"—can be given its "ordinary" English meaning of "something (such as an instrument or apparatus) used in performing an operation." *Tool*, Merriam-Webster.com (last accessed March 5, 2024). "Tool" is clearly related to the operation of "Analysis," which Plaintiffs defined as "any analyses, evaluations, or interpretations of Your Metrics, financial performance, expenses, or revenues", "includ[ing] any analyses, evaluations, or interpretations of the Metrics, financial performance, expenses, or revenues of third parties, such as Advertisers, Competitors, and Publishers."[8]

For Interrogatory No. 1, Google raised, among other things, nearly two full pages of boilerplate objections to the term "Ad Tech Products"—the subject of this multi-district litigation. The relevant ad tech products in this litigation have been clear for nearly two years and are named specifically in the parties' complaints and in the definitions to the Interrogatory.

These objections are not legitimate misunderstandings of what is being requested but transparent efforts to manufacture delay and expense for Plaintiffs in this litigation.

\*   \*   \*

Google's objections and its refusal to provide substantive answers to *any* of Plaintiffs' Interrogatories are meritless and intended solely for the purpose of waiting out the fact discovery clock in this litigation. Accordingly, Plaintiffs respectfully ask that the Court order Google to supplement its response to Interrogatory No. 1—as Google represented it would eight months ago—and to provide written answers to Interrogatory Nos. 2 and 3 within ten days. Plaintiffs respectfully request prompt answers because each interrogatory response will inform what additional, targeted discovery may be necessary prior to the approaching end of fact discovery. In the alternative, MDL Plaintiffs respectfully request that the Court hold a conference to discuss these issues so that they can be resolved promptly.

---

[8] Google also objected to the definition of "Analysis" "as vague and ambiguous because it relies upon the term 'Metrics,' which is undefined." Google's Responses and Objections to Plaintiffs Second Set of Requests for Productions at 4. But again, "metrics" can be afforded its ordinary English meaning of "a standard of measurement"—*i.e.*, what Google measures in the ordinary course with respect to its ad tech products. "Metrics" is a term that Google itself uses in the ordinary course of business to describe the data that it collects on its products. *See, e.g.*, GOOG-DOJ-AT-02439082, at -083 (describing RASTA experimentation and analysis across "key metrics").

Hon. P. Kevin Castel
March 8, 2024
Page 10 of 10

    Respectfully submitted,

    */s/ Philip C. Korologos*
    Philip C. Korologos
    **BOIES SCHILLER FLEXNER LLP**
    55 Hudson Yards
    New York, NY 10001
    Telephone: 212-446-2390
    pkorologos@bsfllp.com

    */s/ Jordan Elias*
    Jordan Elias
    **GIRARD SHARP LLP**
    601 California Street, Suite 1400
    San Francisco, CA 94108
    Telephone: 415.981.4800
    jelias@girardsharp.com

    */s/ Serina M. Vash*
    Serina M. Vash
    **HERMAN JONES LLP**
    153 Central Avenue #131
    Westfield, New Jersey 07090
    Telephone: 404-504-6516
    svash@hermanjones.com

    *MDL Plaintiffs' Discovery Steering Committee*

Attachments.

Copies to:    All Counsel of Record (via CM/ECF)