# Attachment B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION** | No. 21-MD-3010 (PKC) |

*This Document Relates To All Actions*

### GOOGLE LLC, ALPHABET INC., AND YOUTUBE, LLC'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' SECOND SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure ("Federal Rules") and Local Rule 33.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules"), Defendants Google LLC, Alphabet Inc., and YouTube, LLC (collectively "Google"), by their undersigned counsel, hereby respond to Plaintiffs' Second Set of Interrogatories (Nos. 2 and 3) as follows.

These Responses and Objections are based on the information currently available to Google and are provided subject to, without intending to waive, and expressly preserving, Google's right at any time to revise, correct, supplement, or clarify any of the responses and objections herein.

In providing these Objections, Google does not waive, and expressly preserves, all defenses and claims. Google provides these Objections without waiving or intending to waive: (a) any objections as to the competency, relevance, materiality, privileged status, or admissibility as evidence, for any purpose, of any information provided in response to the Interrogatories; (b) the right to object on any ground at any time in response to a demand for further responses to the Interrogatories; (c) the right to revise, amend, supplement, or clarify any of the objections set

1

forth herein; or (d) the right to move the Court for a protective order with respect to the Interrogatories.

## OBJECTIONS TO INSTRUCTIONS

1. Google objects to each of Plaintiffs' Instructions to the extent that they seek to impose obligations beyond those required by the Federal Rules, this Court's Local Rules, or any applicable order, including but not limited to Pre-Trial Order No. 5 (ECF No. 394) ("PTO No. 5").

2. Google objects to Instruction 4 because it seeks to impose obligations regarding the production and handling of ESI that are governed by the ESI Order (ECF No. 508) negotiated by the parties and entered by the Court, including by purporting to impose privilege log obligations.  The negotiated and court-ordered ESI Order is the appropriate vehicle for addressing such obligations, not unilaterally imposed instructions to the Interrogatories.

3. Google objects to Instruction 7 as vague and ambiguous as to the meaning of "Present." Google further objects to the seventeen-year timeframe in Instruction 7 as overbroad, unduly burdensome, and disproportionate to the needs of the case.  Google will interpret the relevant time period for the purposes of responding to these Interrogatories as the ten-year time period from January 1, 2013 to March 27, 2023.

## OBJECTIONS TO DEFINITIONS

To the extent that Google does not object to a defined term or responds to Interrogatories containing a defined term, regardless of whether Google has objected to that definition, Google's response should not be taken as a concession or agreement by Google that the defined term is factually accurate or legally sufficient for any evidentiary purposes.  To the extent Google objects to any of Plaintiffs' defined terms below, Google incorporates by reference those

objections wherever such definition is used in the Interrogatories.

1. Google objects to Defintion 1, "Ad Tech Auction Mechanics," as as overbroad, unduly burdensome, vague, and ambiguous to the extent it purports to equate "mechanics" with "systems and software" and purports to include "all systems and software" that, without limitation, "implement" or "effectuate" certain rules, preferences, designs, or features, regardless of the nature, extent, or directness of their contribution to the implementation or effectuation of such features. Google further objects that "Ad Auction rules, preferences, designs, or features" is vague and ambiguous. In responding to specifications using the term "Ad Tech Auction Mechanics," Google will construe that term to refer to any design, feature, limitation, policy, mechanism, innovation, improvement, optimization, or strategy related to how ad tech products buy, sell, price, bid, or auction inventory, how ad tech products improve ad quality or match quality, how ad tech products measure or report on the effectiveness of display advertising, or how ad tech products integrate or interoperate with other ad tech products.

2. Google objects to Definition 2, "Ad Tech Products," as overbroad, unduly burdensome, vague, and ambiguous to the extent it is defined to include "any and all systems, platforms, and software . . . used in the process of identifying, selecting, transmitting, and/or rendering Digital Advertising on a desktop or mobile device, as well as all systems and software . . . that implement and/or effectuate an Ad Auction, including receiving, processing, and transmitting bid requests, bid responses, or related messages." The definition could be read to be limited solely to those portions of a product that implement the specified functionality (e.g., those portions of a DSP that handle bidding, but not, for example, the advertiser-facing user interface), or conversely to include general-purpose infrastructure on which software involved in ad tech relies, such as a user's web browser or Google's proprietary network and data storage

3

infrastructure on which all of its services rely. Google further objects to this definition as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it is defined to include systems, platforms, and software used in Google's search advertising business, an area that is not relevant to any claim that the Court has determined was well-pleaded and that has only the barest connection to these Actions. The Google "systems, platform, and software . . . used in the process of identifying, selecting, transmitting, and/or rendering" search advertising, including the "systems and software . . . that implement and/or effectuate . . . Ad Auction[s]" for such advertising, are distinct from those that Google uses for the display advertising relevant to these Actions, so including them dramatically increases the breadth of this definition and of each of the specifications relying on it, without proportional benefit. Google further objects that this definition's use of the term "Google Ads," without specifying whether an Interrogatory seeks information about the search or display advertising systems offered under that brand, is vague and ambiguous. Google further objects to this definition as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to include Campaign Manager, DoubleClick Campaign Manager, Google Analytics, Search Ads 360, or any other product not the subject of alleged misconduct in these Actions. Given the breadth of discovery already produced and to be produced, any additional information generated by expanding the scope of Google's search and production obligations to include such products would be of limited or no relevance to any party's claims or defenses. Google further objects to this definition to the extent that it purports to include the "Google Display Network." The Google Display Network refers to the group of website publishers and mobile application developers that offer display ad inventory for sale using Google services, not an independent product. Google will construe the term "Ad Tech Products" to refer to independent products that Google and third

4

parties provide to publishers or advertisers to facilitate the sale and purchase of display advertising inventory, and not, for example, the sale of search ad inventory. For the avoidance of doubt, Google will construe the term "Ad Tech Products" to include the following Google products: Google Ads (solely as used for the purchase of display advertising, not search ad inventory), Display & Video 360, Campaign Manager, AdSense for Content (but not, for the avoidance of doubt, AdSense for Search), AdMob, and Google Ad Manager.

3. Google objects to Definition 3, "Analysis," as vague and ambiguous because it relies upon the term "Metrics," which is undefined. Google further objects to this Definition as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it purports to cover information related to products and services that are not the subject of alleged misconduct in these Actions.

4. Google objects to Definition 4, "Google Data Source," as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks without limitation "any digital or physical system . . . that collects, manages, calculates, stores, or makes available for review or experimentation data related to Google's "Ad Tech Products" or "Ad Tech Auction Mechanics." As written, this language could be read to include any system at Google that in any way touches data with any connection to Google's Ad Tech Products or Ad Tech Auction Mechanics, which would include, among other things, general-purpose infrastructure on which software involved in ad tech relies, such as Google's proprietary network and data storage infrastructure on which all of its services rely. Google further objects to Definition 4 as overbroad, unduly burdensome, vague, and ambiguous because it relies upon the terms "Ad Tech Products" and "Ad Tech Auction Mechanics." Google incorporates here its objections to "Ad Tech Products" and "Ad Tech Auction Mechanics." Google further objects to

Definition 4 as vague and ambiguous because it does not define the terms "collects," "manages," "calculates," "stores," "RASTA," "RASTA Metrics," or "makes available" nor explains the distinctions among them.

5. Google objects to Definition 5, "You", "Your", "Alphabet", or "Google," to the extent it defines "subsidiary," "affiliate," and "joint venture" to refer to "any firm in which there is total or partial ownership of twenty-five percent or more or total or partial control between the company and any other Person or entity." Google will construe "subsidiary," "affiliate," and "joint venture" to refer to firms over whose documents Google has possession, custody, or control.

6. Google objects to Definition 7, "Any reference to Your Ad Tech Products or to Your Ad Tech Auction Mechanics, individually or collectively, also shall include any successor or predecessor Ad Tech Products or Ad Tech Auction Mechanics having the same or similar functionality," as overbroad, unduly burdensome, vague, and ambiguous because it relies upon the terms "Ad Tech Products" and "Ad Tech Auction Mechanics." Google incorporates here its objections to "Ad Tech Products" and "Ad Tech Auction Mechanics."

7. Google objects to Definition 8 to the extent it seeks to impose obligations beyond those required by the Federal Rules, this Court's Local Rules, or any applicable order. Google further objects to Definition 8 as overbroad, unduly burdensome, vague, and ambiguous to the extent it seeks to include information not expressly requested by these Interrogatories and/or that is not known by or within the possession, custody, or control of Google.

**GENERAL OBJECTIONS**

1. Google objects to the Interrogatories to the extent they do not comport with the Federal Rules, this Court's Local Rules, or applicable orders of this Court, including PTO No. 5.

2. Google objects to the Interrogatories because they are vague, ambiguous, overbroad, unduly burdensome, and duplicative of previously propounded interrogatories and requests for production of documents.

3. Google objects to each Interrogatory that includes multiple discrete subparts but purports to be a single interrogatory. *See* Fed. R. Civ. P. 33(a)(1).

4. Google objects to the Interrogatories to the extent they call for information that is already in the possession of or equally available to Plaintiffs or their counsel, including, but not limited to, documents previously produced to Plaintiffs and documents available from government agencies, regulatory bodies, court filings, commercial industry sources, or documents available in the public domain.

5. Google's investigation of Plaintiffs' claims is ongoing. These responses are being made after reasonable inquiry into the relevant facts and are based only upon the information and documentation that is presently known to Google. Google's responses should not be construed to prejudice its right to conduct further investigation in these Actions, or to limit its use of any additional evidence that may be developed. Google reserves the right to assert additional objections, and to supplement its responses and objections as appropriate, particularly if any additional information regarding the Interrogatories or the underlying claims at issue is provided.

## **RESPONSES AND OBJECTIONS TO SPECIFIC INTERROGATORIES**

**Interrogatory No. 2:**

Identify and describe each and every Google Data Source that collected, managed, or used Plaintiffs' data derived from Your Ad Tech Products or Your Ad Tech Auction Mechanics by providing separately for each: (1) its name; (2) a general description of the Google Data Source, including its (a) function, (b) contents, and (c) operation; (3) each and every field or protocol buffer available therein; (4) a description of each and every field or protocol buffer identified in (3); (5) an identification or description of any associated schema or schematic; and (6) the applicable data retention period or periods.

**Response to Interrogatory No. 2:**

Google objects to Interrogatory 2 as being in violation of Local Rule 33.3(a) and paragraph 6.2 of PTO No. 5 in this action, insofar as it seeks information outside the scope of Local Rule 33.3(a) interrogatories. As applicable to Plaintiffs, PTO No. 5 states that "[n]o interrogatories shall be served except in compliance with Local Rule 33.3(a) without first obtaining leave of Court." PTO No. 5, Paragraph 6.2. Local Rule 33.3(a) authorizes only three specific types of interrogatories: interrogatories seeking (i) "names of witnesses with knowledge of information relevant to the subject matter of the action," (ii) "the computation of each category of damage alleged," and (iii) "the existence, custodian, location and general description of relevant documents." Plaintiffs' Interrogatory 2 seeks information about data sources—not witnesses, damages, or documents—which are outside the scope of Local Rule 33.3(a) interrogatories.

Google further objects to Interrogatory 2 as irrelevant, overbroad, unduly burdensome, and disproportionate to the needs of the case in that it seeks to have Google gather information concerning any Google Data Source that "collected, managed, or used" data "derived from [Google's] "Ad Tech Products" or "Ad Tech Auction Mechanics." Virtually every Google Data Source involved with Google's Ad Tech business in some fashion collects, manages, or uses data associated with its Ad Tech Products, so Interrogatory 2 would sweep in data sources that are not reasonably connected to any party's claims or defenses.

Google further objects to Interrogatory 2 as overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks for "*each and every* Google Data Source" not only an identification and description but also a number of other pieces of information, several of which are in and of themselves extremely burdensome, such as "e*ach and*

8

*every* field or protocol buffer available therein," a description of *each and every* field or protocol buffer Identified," and "an identification or description of *any* associated schema or schematic" (emphasis added). As Google has explained to Plaintiffs during many meet-and-confers and in many letters concerning Plaintiffs' various requests for inventories of Google's data,[1] based on our reasonable and extensive investigation to date, Google does not maintain these sorts of inventories and descriptions in the ordinary course outside of its source code, the relevant portions of which were made available to Plaintiffs beginning in July of last year. As such, to respond to Plaintiffs' Interrogatory, Google would need to undertake a manual effort to identify every Data Source (of which there could be hundreds), then identify every "field," "protocol buffer," and "associated schema or schematic," (of which there could be thousands) and then create written descriptions for each.

Google further objects to Interrogatory 2 as disproportionate to the needs of the case, particularly in light of Plaintiffs' delay in seeking this information until the present stage of the litigation. The information that Plaintiffs now seek has been at issue since Plaintiffs served 301 Requests for Production on January 27, 2023 (the "RFPs"), and Google has made its position on the request clear since its Responses and Objections to Plaintiffs' First Set of RFPs (the R&Os), filed on February 27, 2023. *See* RFP No. 243; R&O to RFP No. 243. The parties spent many months last year meeting and conferring concerning Google's data and sources of data, during which time Google produced over 200 terabytes of data, as well as a 27-page description of every field in 33 datasets that it produced.[2] The incremental information that Plaintiffs might

---

[1] *See* April 20, 2023 Letter from J. Sessions to W. Noss and M. Mao; May 9, 2023 Letter from D. Bitton to M. Mao and W. Noss; June 12, 2023 Letter from D. Pearl to M. Mao; July 6, 2023 Letter from D. Pearl to M. Mao; Aug. 25, 2023 Letter from D. Pearl to W. Noss; Sep. 14, 2023 Letter from D. Pearl to M. Mao; Sep. 29, 2023 Letter from D. Pearl to W. Noss.

[2] *See* Sep. 29, 2023 Letter from D. Pearl to W. Noss; Sep. 29, 2023 Letter from D. Pearl to W. Noss Appendix A.

gain through Interrogatory 2 is immaterial to the claims and defenses in this case and vastly outweighed by the burden that responding would place on Google. In light of Google's extensive data productions, and the parties' lengthy negotiations on this topic, there is no good faith basis for seeking to impose such a burden on Google.

Google further objects to Interrogatory 2 as vague and ambiguous because the term "Plaintiffs' data" is undefined. Google also objects to Interrogatory 2 as vague and ambiguous because the separately listed terms "functions," "content," and "operations" are undefined and unclear. Specifically, the distinction between these terms is undefined and unclear. Google further objects to Interrogatory 2 as vague and ambiguous because the terms "protocol buffer" and "associated schema or schematic" are undefined and unclear.

Accordingly, Google will not provide a response to Interrogatory 2.

**Interrogatory No. 3:**

Identify each and every Analysis tool, including but not limited to RASTA and any dashboards, that Google used to conduct analysis on any of Plaintiffs' data sourced directly or indirectly from Your Ad Tech Products or Your Ad Tech Auction Mechanics, by providing for each: (1) its name; (2) a general description of the Analysis tool, (3) the sources of data used as inputs by the Analysis tool; (4) the parameters and specifications that may be selected for the Analysis tool to determine output; (5) a description of the outputs available from the Analysis tool; (6) an identification or description of any associated schema or schematic; and (7) the applicable retention period for any outputs available from the Analysis tool.

**Response to Interrogatory No. 3:**

Google objects to Interrogatory 3 because it is improper under PTO No. 5, and Local Rule 33.3. As applicable to Plaintiffs, PTO No. 5 states that "[n]o interrogatories shall be served except in compliance with Local Rule 33.3(a) without first obtaining leave of Court." PTO No. 5, Paragraph 6.2. Local Rule 33.3(a) authorizes only three specific types of interrogatories i.e., those seeking (i) "names of witnesses with knowledge of information relevant to the subject matter of the action," (ii) "the computation of each category of damage alleged," and (iii) "the

existence, custodian, location and general description of relevant documents." Interrogatory 3 seeks, in vague, ambiguous, overbroad, and unduly burdensome terms, information describing Google's use of "[a]nalysis tool[s]"—not witnesses, damages, or documents—which is outside the scope of Local Rule 33.3(a). Thus, pursuant to PTO No. 5 and Local Rule 33.3, Plaintiffs are barred from propounding Interrogatory 3 absent a court order.

Google further objects to Interrogatory 3 as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it calls for "*each and every* Analysis tool … that Google used to conduct analysis on *any* of Plaintiffs' data sourced *directly or indirectly* from Your Ad Tech Products or Your Ad Tech Auction Mechanics…." (emphasis added).

Google further objects to Interrogatory 3 as vague and ambiguous to the extent that the terms "RASTA," "dashboards," and "tool" are undefined. Google will interpret RASTA to refer to Google's internal "Reliable A/B Stats Tracking Architecture" experimentation tool. Google also objects to Interrogatory 3 as vague and ambiguous to the extent it seeks information about use of "data sourced . . . indirectly from Your Ad Tech Products or Your Ad Tech Auction Mechanics."

Google further objects to Interrogatory 3 as disproportionate to the needs of the case in light of Plaintiffs' delay in seeking this information until the present stage of the litigation. The information that Plaintiffs now seek has been at issue since Plaintiffs served 301 Requests for Production over a year ago, on January 27, 2023 (the "RFPs"), and Google has made its position on the request clear since its Responses and Objections to Plaintiffs' First Set of RFPs (the R&Os), filed on February 27, 2023. *See* RFP No. 243; R&O to RFP No. 243. The parties have spent the last ten months meeting and conferring concerning Google's data, sources of data, and "[a]nalysis tools," during which time Google produced over 200 terabytes of data, as well as a

27-page description of every field in 33 datasets that it produced, and put forth a corporate designee to testify on Google's use of RASTA.[3] At this juncture, the incremental information that Plaintiffs might gain through Interrogatory 3 is vastly outweighed by the burden that responding would place on Google.

Accordingly, Google will not provide a response to Interrogatory 3.

Dated: January 29, 2024

Respectfully Submitted,

/s/ Justina Sessions
Justina K. Sessions
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250
Fax: (650) 461-8276
justina.sessions@freshfields.com

Eric Mahr
Robert J. McCallum
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Fax: (202) 777-4555
eric.mahr@freshfields.com
rob.mccallum@freshfields.com

Daniel Bitton
Denise L. Plunkett
Craig M. Reiser
Eva H. Yung
Claire L. Haws
AXINN, VELTROP & HARKRIDER LLP

---

[3] *See* Sep. 29, 2023 Letter from D. Pearl to W. Noss; Sep. 29, 2023 Letter from D. Pearl to W. Noss Appendix A; Deposition of Jason Hsueh, *United States et al. v. Google LLC*, No. 1:23-cv-00108-LMB-JFA (E.D. Va. Nov. 15, 2023).

114 West 47th Street
New York, New York 10036
Telephone: (212) 728-2200
Fax: (212) 728-2201
dbitton@axinn.com
dplunkett@axinn.com
creiser@axinn.com
eyung@axinn.com
chaws@axinn.com

Bradley Justus (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
Telephone: (202) 912-4700
Fax: (202) 912-4701
bjustus@axinn.com

Caroline P. Boisvert (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, Connecticut 06103
Telephone: (860) 275-8100
Fax: (860) 275-8101
cboisvert@axinn.com

*Counsel for Defendants Google LLC and Alphabet Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing instrument was served on counsel for Plaintiffs via email on January 29, 2024.

/s/ *Veronica M. Bosco*
Veronica M. Bosco
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
601 Lexington Avenue, 31st Floor
New York, NY 10022