

Craig M. Reiser
114 West 47th Street
New York, NY
212.728.2218
creiser@axinn.com

March 11, 2024

*Via ECF*

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC)
              *Associated Newspapers Ltd. v. Google LLC*, No. 1:21-cv-03446 (PKC)

Dear Judge Castel:

      On behalf of Defendants Google LLC and Alphabet Inc. (together, "Google"), we request permission to move for an order compelling Plaintiffs Associated Newspapers Ltd. and Mail Media, Inc. (together, "Daily Mail") to search for and produce documents from the custodial files of two key Daily Mail employees who are likely to have documents relevant to Daily Mail's damages and causation allegations: Martin Clarke and Paul Zwillenberg. The parties have extensively met and conferred on this topic but are unable to resolve this dispute without Court intervention. No conference is scheduled at this time.

      Daily Mail's Amended Complaint alleges a wide range of harms resulting from Google's purported misconduct: everything from depressed revenue at Daily Mail to the decline of the newspaper industry more generally. *See, e.g.*, Daily Mail Amended Complaint ("Compl.") ¶ 126 (alleging that Google's Enhanced Dynamic Allocation program "depressed Daily Mail's revenue"); *id*. ¶¶ 5-6 (alleging that while "[o]nline advertising continues to grow," "[n]ews publishers do not see the growing ad spending because Google and its parent Alphabet . . . maintain monopolies for [advertising technology products]" and that, as a result, "newspapers' advertising revenue has declined 70% over the last decade" and "20% of all newspapers have closed" since 2008). Google needs discovery to test whether these purported wide-ranging harms were caused by other factors, such as Daily Mail's failure to pivot its business model from print to digital.

      To that end, Google has over the course of the past four months requested that Daily Mail collect and produce documents from the custodial files of Paul Zwillenberg, former Chief Executive Officer of Associated Newspapers Ltd.'s parent company, Daily Mail & General Trust ("DMGT"), and from Martin Clarke, former editor of MailOnline, which Daily Mail mentions in the first line of its Amended Complaint—both of whom are likely to have documents related to Daily Mail's pivot to digital advertising and the driving forces behind

Daily Mail's allegedly depressed revenues. And for months, Daily Mail has objected without identifying any credible bases for refusing to add as custodians these employees whose documents are highly likely to shed light on what really caused Daily Mail any injury: Daily Mail's own mismanagement.

## I. Relevant Background

Google served its First Set of Requests for Production (the "Requests") on Daily Mail on January 27, 2023. Even though this Court's orders obligated Daily Mail to substantially complete its production of documents in response to those Requests within four months, Pre-Trial Order No. 5, ECF 394 ¶ 6.1, negotiations related to the Requests (and Daily Mail's productions in satisfaction thereof) remain ongoing. In fact, Daily Mail only produced a few hundred documents before its May 31, 2023 substantial completion deadline, all of which were re-productions of documents Daily Mail previously produced in third-party discovery. And to this day, half of Daily Mail's production is nothing more than automated reports. While Google and Daily Mail have recently agreed on targeted search terms and a date by which Daily Mail will finally (albeit belatedly) substantially complete its productions, the parties have not agreed on the list of custodians whose files are to be searched.

Google first requested that Daily Mail include Martin Clarke and Paul Zwillenberg as custodians in a search term and custodian proposal shared with Daily Mail on November 17, 2023. *See* Ex. A at 11. That custodian proposal named 24 individuals—11 that Daily Mail had previously agreed to, and a further 13 individuals that Google had independently identified as likely to have documents that are relevant and proportional to the needs of this case. On December 6, Daily Mail wholesale rejected all of Google's 13 proposed additional custodians without explaining why searching the files of any particular custodian would be duplicative, unduly burdensome, or otherwise inappropriate. *See* Ex. B at 2. In the intervening months, Daily Mail has repeatedly denied or claimed not to understand Google's request for these additional custodians, all while creating significant and unnecessary delay in Daily Mail's satisfaction of its discovery obligations. Specifically:

- On a December 15, 2023 meet-and-confer call, Daily Mail claimed not to understand why Google added a further 13 proposed custodians. In response, Google explained its justifications for these individuals, including Messrs. Clarke and Zwillenberg. *See* Ex. C at 15 (Jan. 12, 2024 email from Google to Daily Mail stating that Google "provided detailed justifications for each of Google's 13 additional proposed custodians during our December 15 meet-and-confer").

- Daily Mail took three weeks to do little more than demand "more fulsome justification[s]" from Google "in writing." *See* Ex. D at 5. In the interest of moving things forward, Google promptly provided such justifications on January 19.

- Yet again, Daily Mail took weeks to respond, and yet again it repeated the same unsubstantiated refrain that it did not understand the inclusion of Messrs. Zwillenberg and Clarke (and other proposed custodians) to be a reasonable means of obtaining

- relevant information. Jan. 30, 2024 S. Henningson Ltr. to C. Boisvert.[1] Daily Mail's only stated basis for rejecting Google's proposal to add Messrs. Clarke and Zwillenberg was that their responsibilities allegedly extended beyond advertising technology and that other agreed-upon custodians are likely to have been included in relevant correspondence involving Messrs. Clarke and Zwillenberg. *Id.*

- In an effort to reach agreement, Google narrowed its custodian proposal (while reserving all rights) and provided further justifications for Messrs. Zwillenberg and Clarke on a February 9 meet-and-confer call, following up in writing on February 12. Ex. E at 3. Daily Mail took three weeks to deliver the same non-answer. *See* Ex. C at 3 (Mar. 5, 2024 Google email to Daily Mail stating: "Given that three weeks had elapsed since the February 9 meet-and-confer where we offered to make significant concessions on several issues, we were disappointed to learn from Daily Mail's March 1 correspondence that Daily Mail's positions on several key issues—including custodians—remain unchanged").

- In one final effort at compromise, Google suggested that it would be willing to withdraw its request as to all outstanding proposed custodians (while reserving all rights) if Daily Mail would agree to include Messrs. Clarke and Zwillenberg. *See* Ex. C at 3. In response, Daily Mail took the position that it would be willing to add *only* Martin Clarke as a custodian, and *only* if Google agreed not to seek additional custodians or search terms with respect to the Requests. *See id.* at 1-2.

Throughout this lengthy meet-and-confer process, Google has invited Daily Mail to substantiate its claim of redundancy with existing custodians by providing de-duplicated hit counts for Messrs. Clarke and Zwillenberg. Daily Mail has never done so. Instead, Daily Mail has dragged its feet and provided canned responses despite Google's good-faith efforts to remain efficient, accommodating, and informative throughout these negotiations. Accordingly, after months of protracted negotiation, the parties are now at an impasse.

II. **The Court Should Compel Daily Mail to Search for and Produce Documents from the Custodial Files of Martin Clarke and Paul Zwillenberg**

The Court should compel Daily Mail to search the custodial files of Martin Clarke and Paul Zwillenberg using the agreed-upon search terms and produce any responsive information it locates because these individuals (1) are highly likely to have relevant information about the reasons behind Daily Mail's declining revenue, among other things; and (2) are proportional to the needs of the case. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2023 WL

---

[1] Because Daily Mail designated the entirety of its letters dated January 30, 2024 and March 1, 2024 as Highly Confidential, Google has not included them as exhibits to this letter motion. Although Google does not believe the content of Daily Mail's letters contains anything even approximating "information . . . likely to cause [Daily Mail] material and significant competitive or commercial harm," *see* Modified Confidentiality Order, ECF 685 ¶ A.1.h, in an abundance of caution, Google's discussion of these letters is limited to the characterization of the legal arguments Daily Mail makes therein. Google is happy to promptly submit these materials to the Court if it would aid the Court in its disposition of this dispute.

2871090, at *9 (S.D.N.Y. Apr. 10, 2023) (describing standard for compelling a party to search the files of additional custodians).

### A. Messrs. Clarke and Zwillenberg are Highly Likely to Have Relevant Information

Courts routinely find that custodians satisfy Federal Rule of Civil Procedure 26(b)(1)'s relevance requirement where their documents are reasonably likely to shed light on, among other things, causation and damages. *See, e.g.*, *Greater N.Y. Taxi Assoc. v. City of N.Y.*, 2017 WL 4012051, at *3 (S.D.N.Y. Sept. 11, 2017) (explaining that a certain group of proposed custodians was relevant because their emails were "reasonably likely to shed light on whether" losses were caused by the reasons plaintiffs contended or by "unrelated reasons"). Here, the custodial files of Messrs. Clarke and Zwillenberg are relevant to shed light on whether Daily Mail's revenues declined due to Google's alleged conduct or for unrelated reasons. Moreover, public reporting and Daily Mail's own (limited) document productions to date underscore that Messrs. Clarke and Zwillenberg were key decision-makers driving Daily Mail's digital advertising strategy over the time period relevant to this case. *See, e.g., In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 2021 WL 10282213, at *2 (N.D. Cal. Nov. 14, 2021) (granting motion to compel the inclusion of two high-level executives as document custodians because "they were key decision-makers related to issues at the heart of Plaintiffs' allegations").

Press coverage about Messrs. Clarke and Zwillenberg highlights their involvement in Daily Mail's overall digital advertising strategy. *See, e.g.*, Rory Gallivan, *Daily Mail Picks Digital Consultant as New Boss*, Wall Street Journal, May 12, 2016 (describing Mr. Zwillenberg as an individual "with a strong digital background illustrat[ing] how newspaper publishers are focusing on how to generate more revenue from online advertising")[2]; Clive Irving, *Nightmare Week for London's Last Press Lord: Name-Shamed by Meghan Markle and His Digital Genius Quits*, The Daily Beast, Dec. 5, 2021 (explaining how Mr. Clarke "grasped the significance" of digital advertising "as a path to making [MailOnline] profitable" and accordingly pursued a strategy of getting clicks and advertisers on Daily Mail's properties to increase Daily Mail's revenue).[3] The leadership of Messrs. Clarke and Zwillenberg and the success of the efforts described by these public sources are highly relevant to testing Daily Mail's claim that it was Google's alleged monopoly that caused Daily Mail's harm.

Daily Mail's limited productions to date further underscore Messrs. Clarke and Zwillenberg's relevance. For example, as Google demonstrated to Daily Mail during the meet-and-confer process, documents produced by Daily Mail demonstrate that Mr. Zwillenberg directly communicated with both Google personnel and Daily Mail personnel related to, among other things, programmatic strategy, contracting related to Google's ad tech products, and Daily Mail's overall ad tech partnership with Google. Moreover, Mr. Zwillenberg's discussions with Google personnel did not always include agreed-upon custodians from the outset, demonstrating that Mr. Zwillenberg is likely to have unique and non-duplicative information. Likewise, as for

---

[2] Available at: https://www.wsj.com/articles/daily-mail-picks-digital-consultant-as-new-boss-1463046729.

[3] Available at: https://www.thedailybeast.com/nightmare-week-for-londons-last-press-lord-name-shamed-by-meghan-markle-and-his-digital-genius-quits.

Mr. Clarke, documents produced by Daily Mail demonstrate that he served as the Chair for regular Programmatic Management Meetings at Daily Mail and communicated with Daily Mail personnel—including Board members—on, among other things, issues related to Google's AdX product, Enhanced Dynamic Allocation, and programmatic revenue.

Daily Mail has not denied that Messrs. Clarke and Zwillenberg possess relevant documents and has even expressed willingness to add Mr. Clarke as a custodian.[4] *See* Ex. C at 2. The assertion Daily Mail has made—that Messrs. Clarke and Zwillenberg had broader responsibilities beyond those directly relevant to this case—ignores that the agreed-upon search terms are designed to target relevant documents. Jan. 30, 2024 S. Henningson Ltr. to C. Boisvert.[5]

Daily Mail's speculation that Messrs. Clarke and Zwillenberg's relevant documents are duplicative of those of the agreed-upon custodians, *see* Jan. 30, 2024 S. Henningson Ltr. to C. Boisvert, is equally baseless because Daily Mail "cannot say with certainty (or even confidence) that [the proposed custodians] do not have unique, relevant information" and because Daily Mail could "utilize procedures to eliminate duplicative search output from their production." *Blackrock Allocation Target Shares: Series S Portfolio v. Bank of N.Y. Mellon*, 2018 WL 2215510, at *8-9 (S.D.N.Y. May 15, 2018) (granting motion to compel the inclusion of certain custodians (internal quotation and citation omitted)). Moreover, Messrs. Clarke and Zwillenberg "are likely to possess at least some of the following categories of relevant information not available through other data sources": "communicat[ions] directly with members of [DMGT's] board of directors," "communicat[ions] directly with relevant third parties, such as business partners, vendors, etc.," and "communicat[ions] with non-custodian subordinates." *In re Facebook*, 2021 WL 10282213, at *2 (granting motion to compel the inclusion of two high-level executives as document custodians based on the likelihood that they would have relevant documents falling into these categories).

### B. Producing Documents from the Custodial Files of Messrs. Clarke and Zwillenberg is Proportional to the Needs of the Case

The inclusion of Messrs. Clarke and Zwillenberg is proportional to the needs of the case given Daily Mail's allegations and in light of the substantial accommodations Google has already made with respect to its proposed custodian list. *See, e.g., Greater N.Y. Taxi Assoc.*, 2017 WL 4012051, at *5 (finding that the addition of 4 custodians, whittled down from a list of 31, was proportional to the needs of the case in light of "the seriousness of the allegations levied

---

[4] Daily Mail's offer to add Mr. Clarke was conditioned on Google forgoing its ability to request additional custodians or search terms with respect to the Requests. Google believes that Mr. Zwillenberg and other potential individuals may be relevant to the Requests, and because Daily Mail has yet to substantially complete its productions, this offer is unfairly prejudicial to Google. Documents yet to be produced by Daily Mail may further indicate the relevance of additional custodians and/or search terms.

[5] With respect to Mr. Clarke, Daily Mail also asserts that documents concerning his editorial decision-making are protected by Daily Mail's First Amendment privilege. Mar. 1, 2024 S. Henningson Ltr. to C. Boisvert. If Daily Mail believes there is an applicable privilege relevant to any document located in Mr. Clarke's files, Daily Mail may assert such privilege pursuant to the procedures in the Court's March 17, 2023 Order Regarding Discovery Procedure, ECF 508.

against the defendants, the amount of money at stake, . . . and the potential evidentiary value of documents in the custodians' possession"). Out of Google's original list of 13 additional custodians, Daily Mail accepted two, and Google otherwise withdrew its request (reserving all rights) as to another nine. With the inclusion of Messrs. Clarke and Zwillenberg, Daily Mail's full custodian list would reach a total of 15 individuals. This is proportional to the size and scope of Daily Mail's allegations, especially in light of Google's production of documents from the custodial files of over 150 individuals, four of which were specifically requested by Daily Mail and the remainder of which are generally relevant to Daily Mail's broad claims.

* * *

For the reasons stated above, the Court should compel Daily Mail to search for and produce documents from the custodial files of Martin Clarke and Paul Zwillenberg.

Dated: March 11, 2024

Respectfully submitted,

/s/ Craig M. Reiser
Craig M. Reiser
Daniel Bitton
Denise L. Plunkett
Eva H. Yung
Claire L. Haws
AXINN, VELTROP & HARKRIDER LLP
114 West 47th Street
New York, New York 10036
Telephone: (212) 728-2200
Fax: (212) 728-2201
creiser@axinn.com
dbitton@axinn.com
dplunkett@axinn.com
eyung@axinn.com
chaws@axinn.com

Bradley Justus (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
Telephone: (202) 912-4700
Fax: (202) 912-4701
bjustus@axinn.com

March 11, 2024
Page 7

                      Caroline P. Boisvert (*pro hac vice*)
                      AXINN, VELTROP & HARKRIDER LLP
                      90 State House Square
                      Hartford, Connecticut 60103
                      Telephone: (860) 275-8100
                      Fax: (860) 275-8101
                      cboisvert@axinn.com

                      *Counsel for Defendants*
                      *Google LLC and Alphabet Inc.*

CC: All Counsel of Record (via ECF)

**Federal Rule of Civil Procedure 37(a)(1) Certification**

      I hereby certify that Defendants Google LLC and Alphabet Inc. have in good faith conferred with Associated Newspapers Ltd. and Mail Media, Inc. and that the parties have reached an impasse.

/s/ Craig M. Reiser
Craig M. Reiser
AXINN, VELTROP & HARKRIDER LLP
114 West 47th Street
New York, New York 10036
Telephone: (212) 728-2200
Fax: (212) 728-2201
creiser@axinn.com

*Counsel for Defendants*
*Google LLC and Alphabet Inc.*