

**Via ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Silicon Valley
855 Main Street
Redwood City, CA 94063
T +1 650 461 8276 (Direct)
F +1 202 507 5945
justina.sessions@freshfields.com
www.freshfields.com

March 14, 2024

Re:   *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC)

Dear Judge Castel:

We write in opposition to Plaintiffs' letter dated March 8, 2024, ECF No. 710, concerning Plaintiffs' Interrogatories Nos. 1-3. Plaintiffs concede in their Motion that the purpose of their belated and disproportionate Motion is to enable Plaintiffs to propound still "further requests for . . . documents." ECF No. 710 at 1. But Plaintiffs have issued over 300 requests already. The Court has stated that discovery in this case should be "winding down," ECF No. 708 at 1, and there is nothing in Plaintiffs' Motion that suggests they should be permitted to begin ramping it back up. Indeed, Plaintiffs' course of conduct over the past year suggests these requests are actually intended to manufacture a discovery dispute rather than obtain relevant information. No conference is scheduled.

Discovery in this MDL has been expansive. Plaintiffs told Google that their initial set of 301 Requests for Production would be "comprehensive" and cover "all aspects of the case." ECF No. 371 at 8. Ultimately, Google ran over 200 comprehensive search strings over the files of more than 150 custodians and more than 1,500 shared drives, producing over 4 million documents in addition to the 2 million documents already produced during the investigative phase and the materials still being reviewed and produced. Google also produced 71 different datasets comprising over 235 terabytes of data, including custom transaction-level datasets that do not exist in the ordinary course of business.

The parties met and conferred extensively regarding Plaintiffs' Requests over the spring, summer, and fall of 2023, addressing search terms, custodians, data, and the scope of Google's non-custodial searches. On November 2, 2023, the Court granted Plaintiffs' motion to compel additional custodians and search terms. ECF No. 664. In so doing, the Court stated that the parties should "get on with the depositions . . . I don't expect anyone here to be back here with follow ups." *See* Hr'g Tr. at 11:6-8 (November 2, 2023).

Next, Plaintiffs went to Texas where they joined with State Plaintiffs in relitigating the coordination order with the goal of obtaining even more discovery through the expanded set of depositions ordered in that case. *See* ECF No. 706. Last week, this Court denied entry of a coordination order between this MDL and in the Texas Case. Once Plaintiffs in this MDL realized that they would no longer be able to leverage additional discovery through the Texas Case, they filed the instant Motion seeking information that they concede is for the

purposes of making "further requests for . . . documents," ECF No. 710 at 1.  As set forth below, Plaintiffs' belated motion should be denied.

Plaintiffs' request that Google create a comprehensive inventory of every possible source of any data is nothing more than an attempt to manufacture a discovery deficiency by Google.  Plaintiffs are aware that Google does not have such an inventory ready at hand and that it would be impossible to create one before the close of fact discovery (if ever). Against that background, their motion is a transparent attempt to force a response that Plaintiffs will then assert is inadequate.

As to Interrogatory No. 1, Plaintiffs' Motion should be denied as moot because Google provided all relevant information to Plaintiffs concerning centrally stored files in correspondence last year and has since supplemented its Interrogatory Response to reflect that additional information (as Google indicated it would before Plaintiffs filed their Motion. *See* Attachment A.

As to Interrogatories Nos. 2 and 3, which seek information regarding Google's "data sources" and "analysis tools," Plaintiffs' Motion should be denied because these Interrogatories are wildly disproportionate to the needs of the case at this late juncture. Plaintiffs have steadfastly declined to identify any particular types of data that they need but lack, as opposed to broad discovery-on-discovery requests,[1] and they have been virtually silent concerning Google's extensive data productions since September 2023.

Moreover, each of these Interrogatories is improper under Local Rule 33.3, which Plaintiffs agree is controlling here.[2]  Local Rule 33.3(a) authorizes only three specific types of interrogatories: interrogatories seeking (i) "names of witnesses with knowledge of information relevant to the subject matter of the action," (ii) "the computation of each category of damage alleged," and (iii) "the existence, custodian, location and general description of relevant documents."  Plaintiffs' Interrogatory No. 2 seeks a data-source directory with detailed descriptions of each possible source, and Interrogatory No. 3 seeks information describing Google's use of "[a]nalysis tool[s]"—neither of which are the names or general categories of witnesses, damages, or documents.  Seeking this information via interrogatory is also not a "more practical method of obtaining the information sought than a request for production" (under Local Rule 33.3(b)) given that Plaintiffs have issued hundreds of requests for production, many of which cover this same information.

**Interrogatory No. 1**

*"Identify all servers, networks, storage devices, facilities (including cloud storage), and databases that You use or have used to store documents concerning Ad Tech Products by providing for each, its: (1) name, (2) location, (3) custodian, (4) a general description of the*

---

[1] Under the Federal Rules of Civil Procedure a "plaintiff is not entitled to conduct discovery that is solely relevant to the sufficiency of the adversary's document production without first identifying facts suggesting that the production is deficient." *Orillaneda v. French Culinary Inst.*, 2011 WL 4375365, at *8 (S.D.N.Y. Sept. 19, 2011); s*ee also Freedman v. Weatherford Int'l Ltd.*, 2014 WL 4547039, at *2 (S.D.N.Y. Sept. 12, 2014) (("[R]equests for such 'meta-discovery' should be closely scrutinized in light of the danger of extending the already costly and time consuming discovery process ad *infinitum*"); The Sedona Principles, Third Edition, 19 SEDONA CONF. 123 ("Sedona Principles") ("[T]here should be no discovery on discovery, absent an agreement between the parties, or specific, tangible, evidence-based indicia (versus general allegations of deficiencies or mere 'speculation') of a material failure by the responding party to meet its obligations").

[2] The Court ordered that "[n]o Interrogatories shall be served except in compliance with Local Rule 33.3(a) without first obtaining leave of Court."  ECF No. 394 at ¶ 6.2.

*documents it stores or stored, and (5) for each database, also identify all dashboards, tables, and/or fields (including field descriptions) that are or were used in connection with such database."*

Plaintiffs' Motion should be denied as moot as to Interrogatory No. 1. As described by Plaintiffs, Interrogatory No. 1 seeks a "brief inventory of the kinds of non-custodial sources that Google maintains, to allow Plaintiffs "to better tailor further requests for such non-custodial documents." ECF No. 710 at 1. (The Interrogatory as drafted is far broader, but Plaintiffs have abandoned the full scope of the request).

Over the summer of 2023, Plaintiffs and Google discussed at length the scope and extent of Google's searches of various "document repositories" and other non-custodial sources of documents. At Plaintiffs' request, Google investigated 28 purported "sources" of non-custodial documents that Plaintiffs had identified following their review of Google's expansive productions. These included purported sources of information concerning performance, bug tracking, product launches, bid manager documents, dashboards, "go" and "goto" links, and various proprietary Google tools and databases. Google also confirmed that it had conducted reasonable searches for relevant contracts through multiple contract databases, and that Google had run the agreed 200+ search terms over a collection of more than 1,500 non-custodial shared drives and produced responsive documents. ECF No. 653 at 2. Beginning over a year ago, Google also repeatedly provided Plaintiffs a comprehensive proposal for providing data from appropriate databases. ECF No. 550-1.

Plaintiffs need nothing more. Nevertheless, Google has now supplemented its Response to Interrogatory No. 1. *See* Attachment A.

**Interrogatory 2**

*"Identify and describe each and every Google Data Source that collected, managed, or used Plaintiffs' data derived from Your Ad Tech Products or Your Ad Tech Auction Mechanics by providing separately for each: (1) its name; (2) a general description of the Google Data Source, including its (a) function, (b) contents, and (c) operation; (3) each and every field or protocol buffer available therein; (4) a description of each and every field or protocol buffer identified in (3); (5) an identification or description of any associated schema or schematic; and (6) the applicable data retention period or periods."*

Plaintiffs have been focused on discovery-on-discovery since early 2023.[3] But in Pre-Trial Order No. 5, the Court ordered that the parties were to begin conducting discovery, but that "[n]o Interrogatories shall be served except in compliance with Local Rule 33.3(a) without first obtaining leave of Court." ECF No. 394 at ¶ 6.2.

To circumvent that limitation, Plaintiffs issued RFP 239—an interrogatory in all but name—which sought "[d]ocuments sufficient to show what data You store concerning each of your Ad Tech Products," as well as "all data fields, . . . descriptions of the format and nature of the storage of the data, and a description of how You transfer, query, and analyze this data in the normal course of business."

---

[3] Feb. 8, 2023 Email from M. Mao to R. McCallum, et al (requesting that Google "promptly identify and specify the data sources Google is preserving.").

Over the last year, and consistent with its Responses and Objections,[4] Google has repeatedly and consistently taken the position that Plaintiffs' requests for a catalog of each and every data source and field therein amounts to improper discovery-on-discovery and that, while Google would entertain *specific* requests for data, Google did not agree to provide Plaintiffs with the company-wide "data inventory" that they sought.[5]

Google has now produced 71 separate datasets totaling over 235 terabytes of data including:

- Seven datasets going back as far as nine years and containing monthly impression and revenue by customer (including named Plaintiffs) information for each of the relevant products in this case, in addition to 12 additional individual datasets tailored to address certain of Plaintiffs' RFPs;

- Four additional datasets containing monthly impression and revenue information by customer (again, including named Plaintiffs) for the same set of products but going back as far as 11 years;

- Four "transaction-level" datasets that contain information on billions of individual transactions involving the relevant products, which Google compiled through a bespoke process of joining data from its ad logs. Developing the bespoke pipelines to produce these datasets required work from *more than 20 Google engineers over the course of nearly six months* as these datasets do not exist in the ordinary course of business;

  - A sample of the underlying log-level data that was queried to create the transaction-level datasets, provided in response to Plaintiffs' demand for such data purportedly so they could determine if they wanted to ask for additional data.

- Nearly 40 additional datasets produced to the Department of Justice in its investigation and the litigation in Virginia.

---

[4] In its timely R&Os, served on February 27, 2023, Google explained that RFP 239 is an improper RFP under Rule 34 as it "seeks to require Google to perform calculations and analyses of data, rather than produce data as it is regularly maintained in the ordinary course of business."

[5] *See* April 20, 2023 Letter from J. Sessions to W. Noss and M. Mao ("Plaintiffs should identify the particular types of relevant and necessary information they believe are missing, and Google will respond."); May 9, 2023 Letter from D. Bitton to W. Noss and M. Mao,("[A]fter three weeks of apparent progress, Plaintiffs have regressed to demanding vast amounts of improper discovery on discovery rather than focusing on the data or information Plaintiffs actually need."); June 12, 2023 Letter from D. Pearl to M. Mao ("Plaintiffs' repeated requests for a list of all potentially relevant data sources are improper discovery on discovery. Google, as shown by our other responses in this letter, and in our prior correspondence, is willing to respond to questions when Plaintiffs articulate with specificity what information they are seeking and why that information is relevant to their claims."); Sept. 14, 2023 Letter from D. Pearl to M. Mao ("We understand that Plaintiffs would like to know more about how Google's internal systems work, to have additional data samples, and to receive even more data beyond what Google already has produced. Google has considered – and will continue to consider – those kinds of requests in good faith, but there are limits on discovery and Plaintiffs cannot impose undue burdens that are out of proportion to the needs of the case, especially in light of the voluminous materials that you have already received."); October 11, 2023 Letter from R. McCallum to P. Korologos, et al ("Your letter reiterates Plaintiffs' previous request that Google "produce the data in its custody, possession, and control regarding the MDL Plaintiffs, or provide a full inventory of what data Google has on the MDL Plaintiffs, including the name of all pertinent logs and data sources." As we have indicated in many previous meet-and-confers and most recently in our September 14, 2023 letter, Google views this request as untethered to any party's claims or defense, unduly burdensome, and disproportionate to the needs of the case.").

Against that backdrop, it is difficult to seriously credit the assertion underpinning Plaintiffs' Motion that Google has "fail[ed] to provide meaningful productions of data," ECF No. 710 at 5. We address the remainder of Plaintiffs' arguments below.

*First*, Plaintiffs' assertion that Google is trying to "run down the clock" with respect to data productions, ECF No. 710 at 7, is incorrect. Contemporaneously with its Responses and Objections, served more than a year ago, Google told Plaintiffs exactly what it proposed to provide and offered up "19 hours over four days to discuss their document Requests and 24 hours spread across five days to discuss their data Requests." *See* ECF No. 550 at 3; *see also* ECF No. 550-1. On September 14, 2023, Google sent Plaintiffs a letter clearly explaining that, while it would not create a comprehensive inventory of all display ads data, it was willing "to answer reasonably specific questions about the data it has produced in response to Plaintiffs' RFPs and to supplement such data in reasonable ways upon request."[6] Google reiterated this position in a letter sent on October 11, 2023.[7] In response, Plaintiffs have been radio-silent.

*Second*, Plaintiffs' assertion that Google has tried to "resist and delay responding to any *specific* request for data," ECF No. 710 at 7 (emphasis added), is belied by Google's voluminous productions of data and the history of the parties' negotiations. Over the course of the past year, Google has repeatedly invited Plaintiffs to make *specific* requests for data. Indeed, Google has made clear to Plaintiffs that Google does "not expect Plaintiffs to make such requests using Google internal nomenclature; a simple description of the data the Plaintiffs seek would suffice."[8] But instead of making any *specific* requests, Plaintiffs sought data inventories or catalogs at first—and then dropped the matter for months before suddenly filing the instant Motion.

*Third*, Plaintiffs' assertion that Google should be required to produce *additional* "field descriptions" is unreasonable because, as we have repeatedly told Plaintiffs, Google does not maintain a comprehensive set of field descriptions in the ordinary course of business for the various datasets it has produced. At Plaintiffs' request, Google nevertheless agreed to create one, which it produced to Plaintiffs on September 29, 2023.[9] Google then agreed to create another set of field descriptions for more recently produced datasets.[10] Plaintiffs' motion ignores all of this, instead focusing on a sample of ad log data that Google provided early in discovery in an effort to demonstrate that voluminous raw log data would not be useful to Plaintiffs. Almost nine months ago, Plaintiffs undertook a quixotic expedition into these sample ad logs and came back with a request for explanations for *7,734* fields contained therein.[11] What this amounted to was a demand that a Google employee run 7,734 separate searches across Google's source code for the name of each of the 7,734 fields, review the relevant code returned by each search, and translate any annotations in the code (which may or may not exist) into a description of that field understandable to Plaintiffs. Google reasonably declined to fulfill this exceedingly burdensome request.[12] In light of all that Google has already provided, and its willingness to discuss specific requests for additional data, that exercise would have been vastly disproportionate to the needs of the case when

---

[6] Sept. 14, 2023 Letter from D. Pearl to M. Mao.

[7] Oct. 11, 2023 Letter from R. McCallum to P. Korologos, et al.

[8] *Id.* at 6.

[9] Sept. 29, 2023 Letter from D. Pearl to W. Noss.

[10] Feb. 29, 2024 Email from D. Pearl to W. Noss, et al.

[11] June 26, 2023 Letter from M. Mao to D. Pearl and R. McCallum at 2.

[12] *See* Sept. 14, 2023 Letter from D. Pearl to M. Mao.

Plaintiffs first suggested it, and it has only become more disproportionate in the five months since Plaintiffs last pressed it, especially in light of the enormity of the undertaking, the short time left for fact discovery, and the uselessness of such an inventory for any purpose other than to propound yet more discovery even closer to the deadline.

**Interrogatory 3**

"Identify each and every Analysis tool, including but not limited to RASTA and any dashboards, that Google used to conduct analysis on any of Plaintiffs' data sourced directly or indirectly from Your Ad Tech Products or Your Ad Tech Auction Mechanics, by providing for each: (1) its name; (2) a general description of the Analysis tool, (3) the sources of data used as inputs by the Analysis tool; (4) the parameters and specifications that may be selected for the Analysis tool to determine output; (5) a description of the outputs available from the Analysis tool; (6) an identification or description of any associated schema or schematic; and (7) the applicable retention period for any outputs available from the Analysis tool."

Plaintiffs' demand for an exhaustive inventory of each and every "analysis tool" is irrelevant and disproportionate to the needs of the case, particularly at this juncture as fact discovery is winding down. The story is the same with respect to dashboards, RASTA, and other "Analysis Tools" sought by Plaintiffs through Interrogatory No. 3: Google made its position very clear a very long time ago and Plaintiffs have sat on their hands until now.

As to dashboards, Google reached out to Plaintiffs in *2022* seeking agreement regarding "appropriate limitations on the scope of discoverable ESI grounded in principles of proportionality." ECF No. 371 at 4 n.5. Among those appropriate limitations, Google raised the issue of "[d]ynamic fields of databases [and] dashboards," which are types of "ephemeral data" that need not be preserved pursuant to the Sedona Principles. Sedona Principles at 136.[13] As Google explained to Plaintiffs back in 2022: "Google has many databases, dashboards, and logs featuring dynamic fields that are automatically populated with refreshed data from (and thus duplicative of) other sources."[14] As a result, Google told Plaintiffs, there is no obligation to "'preserve multiple or duplicative copies of the same relevant ESI.'" *Id.* (quoting Sedona Principles at 94). Google chased for a response to that October 14, 2022 letter for *months* but never received one.[15]

---

[13] *See also* Oct. 14, 2022 Letter from R. McCallum to Z. DeRose.

[14] *Id.*

[15] On October 14, 2022, Google sent Plaintiffs a letter setting forth Google's position on a range of complex ESI issues—including proportional geographic limitations on the obligation to preserve ad log data—and asked that Plaintiffs provide a written response if they disagreed with any of Google's contentions. ECF No. 434-4 at 2-3. On November 10, 2022, the parties held a meet and confer on ESI issues in which Google explicitly asked Plaintiffs to confirm in writing their objections (if any) to Google's October 14 preservation proposals—in particular regarding the technical and complex subject of ephemeral and dynamic data. Plaintiffs promised to provide those written explanations, but then failed to do so. On November 18, 2022, Google followed up with Plaintiffs noting their failure to respond. ECF No. 434-5. ("I write further to our November 10, 2022 meet and confer concerning the ESI protocol . . . It was our understanding from the meet and confer that Plaintiffs would be providing some form of written response to the questions raised by Google in our letter dated October 14, 2022."). On December 16, 2023 Google again reminded Plaintiffs that they had "fail[ed] to provide Plaintiffs' promised explanations to support their positions." ECF No. 434-6. On December 21, 2022, the parties held another meet and confer in which we again asked Plaintiffs for a written response to our questions and Plaintiffs again committed to providing one—but did not. On January 6, 2023, Google again asked Plaintiffs for a response. ECF No. 434-7 ("During the [December 21] meet and confer, Plaintiffs again committed to providing a written response to the questions raised by Google in its letters dated October 14, 2022 and December 16, 2022, . . . but Plaintiffs have yet to send us any response.").

There are likely hundreds of thousands (if not millions) of dashboards at Google that could reflect aspects of Google's Display Ads business, as dashboards are frequently created by individual employees on an ad hoc basis, and none of which is a source of information separate from the underlying data feeding into it.

As to RASTA, Google fielded various questions from Plaintiffs during the summer of 2023. In an August 18, 2023 letter, Google explained to Plaintiffs that "RASTA is a tool for visualizing the results of experiments." However, the letter continued, Google is "not aware of a practical method to export information pertaining to experiments in bulk in a manner that is usable outside of Google." As a result, "[t]o the extent that Plaintiffs seek information relating to particular experiments, Google agrees to conduct a reasonable and proportionate search for RASTA data pertaining to a reasonable number of experiments." We further made clear to Plaintiffs that "[w]e agree to meet and confer about the process for facilitating requests for RASTA data pertaining to a reasonable number of experiments."[16]

Seven months have passed since Google offered to meet and confer regarding reasonable and proportionate requests for production of RASTA experiment data. In that time, Google has produced certain RASTA experiment data relevant to the claims in the case, despite having heard nothing from Plaintiffs. Instead of making any requests (much less reasonable and proportionate requests), Plaintiffs now demand that Google describe seven subcategories of information regarding RASTA to enable Plaintiffs to "to target requests for" even more data. *See* ECF No. 710 at 3.

In the meantime, Plaintiffs in Virginia noticed a 30(b)(6) deposition dealing explicitly with RASTA. And Google produced a witness to testify on November 15, 2023.[17] Plaintiffs in this MDL did not cross-notice that deposition. But through the Coordination Order, Plaintiffs have had access—for nearly four months—to the Department of Justice's deposition of Google regarding RASTA. Plaintiffs need nothing more.

\* \* \*

The Federal Rules require that the Court "must limit the frequency or extent of discovery," when, as here, "the discovery sought is unreasonably cumulative or duplicative" or "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C). Plaintiffs' Motion should be denied.

Respectfully submitted,

*/s/ Justina K. Sessions*
Justina K. Sessions
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
855 Main Street
Redwood City, CA 94063
Telephone: 650-618-9250
Email: justina.sessions@freshfields.com

---

[16] Aug. 18. 2023 Letter from R. McCallum to P. Korologos at 4.

[17] Deposition of Jason Hsueh, *United States et al. v. Google LLC*, No. 1:23-cv-00108-LMB-JFA (E.D.V.A. Nov. 15, 2023).

March 14, 2024
Page 8

*Counsel for Defendants Google LLC,
Alphabet Inc., and Youtube LLC*

CC: All Counsel of Record (via ECF)