

Craig M. Reiser
114 West 47th Street
New York, NY
212.728.2218
creiser@axinn.com

March 15, 2024

*Via ECF*

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC)
*Gannett Co. Inc. v. Google LLC, et al.*, No. 1:23-cv-05177 (PKC)
*Associated Newspapers Ltd., et al. v. Google LLC, et al.*, No. 21-cv-03446 (PKC)

Dear Judge Castel:

We represent Defendants Google LLC and Alphabet Inc. (collectively, "Google") and write further to Your Honor's March 14, 2024 Memo Endorsement and Order, *see* ECF No. 714, to respectfully request permission to move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss (i) the state law claims (Counts V, VI, and VII) in the Complaint filed by Plaintiff Gannett Co., Inc. ("Gannett"); and (ii) the state law claims (Counts V and VI) in the Complaint filed by Plaintiffs Associated Newspapers Ltd. and Mail Media, Inc. (together, "Daily Mail").[1] Pursuant to Your Honor's Individual Practices, we note that there is no conference scheduled at this time.

Gannett asserts state law claims for deceptive practices, fraud, and unjust enrichment. *See* Gannett Compl. ¶¶ 273-94. Daily Mail asserts similar state law claims for deceptive practices and fraud. *See* Daily Mail Compl. ¶¶ 262-72. These state law claims fail on multiple grounds, including under the reasoning of the Court's March 1 Opinion and Order, ECF No. 701 (the "March 1 Order"). In particular:

- Gannett and Daily Mail each allege fraud and deceptive-practices claims based on misrepresentations Google supposedly made about exchange bidding and Accelerated Mobile Pages ("AMP"). But as Your Honor explained in the March 1 Order, the alleged AMP representations amount to "little more than a sales pitch or boast." March 1 Order at 55. Based on this reasoning, Gannett's and Daily Mail's deceptive-practices and fraud claims fail because "mere puffery"

[1] Gannett's Complaint, filed in Case No. 23-05177 on June 20, 2023, is referred to herein as the "Gannett Complaint" or the "Gannett Compl." Daily Mail's Amended Complaint, filed in Case No.21-03446 on December 2, 2022, is referred to herein as the "Daily Mail Complaint" or the "Daily Mail Compl."

cannot support those claims. *Lee v. Mikimoto (Am.) Co.*, 2023 WL 2711825, at *5 (S.D.N.Y. Mar. 30, 2023) ("Statements that are mere puffery cannot support a [deceptive practices claim]" under New York law (internal citations omitted)); *Quasha v. Am. Nat. Beverage Corp.*, 567 N.Y.S.2d 257, 257 (N.Y. App. Div. 1991) (holding that "advertising puffery" cannot form the basis of a fraud claim).

- Gannett and Daily Mail each allege that Google encrypted user IDs to their detriment. To the extent they intend to rely on this theory in aid of their state law claims (which is unclear from the face of Gannett's and Daily Mail's Complaints), it is not actionable for the same reasons the Court rejected Gannett's and Daily Mail's federal claims based on this claimed conduct. *See, e.g.*, March 1 Order at 48, 54.

- Gannett and Daily Mail each allege that Google leveraged its Search business to coerce publishers into using Google ad tech products. Neither Gannett nor Daily Mail have explained how, if at all, these theories support their fraud and deceptive-practices claims—but for the same reasons that they do not give rise to an antitrust claim, they do not give rise to state law claims. *See, e.g.*, *id.* at 48-52, 55.

- In ruling that Gannett's federal law line-item cap claims were untimely, Your Honor held that the time to bring these claims began to run in 2017. *See id.* at 61-62. To the extent Gannett asserts state law claims based on allegations relating to line-item caps, these claims are likewise time-barred, as Gannett did not bring suit until June 20, 2023 and has not alleged a basis for tolling.

Google requests leave to move for dismissal of Gannett's and Daily Mail's state law claims on these grounds.

In addition, and as set forth in greater detail below, Gannett's and Daily Mail's state law claims also fail because: (1) they are time-barred in whole or in part; (2) Gannett and Daily Mail fail to allege the required elements of each of their claims; (3) Gannett and Daily Mail fail to plead fraud with particularity; (4) Gannett and Daily Mail fail to allege a nexus to New York for their New York statutory claims; and (5) Gannett's alleged contracts with Google bar its unjust enrichment claim.

## I. <u>Gannett's State Law Claims Should Be Dismissed</u>.

### A. *Gannett's Deceptive Acts or Practices Claim Should Be Dismissed.*

Count V of the Gannett Complaint alleges a claim under New York General Business Law on Unlawful Deceptive Acts or Practices Sections 349 and 350 ("NY UDAP"). Gannett broadly and generally claims that Google's conduct is deceptive, ranging from Google's enforcement of auction mechanics to Google's alleged "manipulat[ion] of publisher's datasets." Gannett Compl.

¶ 278. In addition, Gannett alleges six purported misrepresentations by Google related to, among other issues, Enhanced Dynamic Allocation ("EDA") and AMP. *Id.* ¶ 280. Google requests leave to move to dismiss Gannett's NY UDAP claim for three reasons.

***First***, much of the conduct Gannett appears to challenge occurred before June 2020. *See, e.g.*, *id.* ¶¶ 279, 58 (alleging Google represented that Dynamic Allocation would "maximize yield"), 56 (alleging that Dynamic Allocation was introduced in 2008); *see also id.* at ¶ 228 (alleging a March 2016 Google representation about monetization on AMP pages). As a result, to the extent Gannett's NY UDAP claim is based on pre-June 2020 conduct, the claim is barred by the applicable three-year statute of limitations for a NY UDAP claim. *Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1184 (N.Y. 2012) (citing N.Y. C.P.L.R. 214(2)).

***Second***, Gannett has failed to allege the required elements of a NY UDAP claim. To state a claim, Gannett must allege that Google "engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [Gannett] suffered injury as a result of the allegedly deceptive act or practice." *Morales v. Apple, Inc.*, 2023 WL 5579929, at * 2 (S.D.N.Y. Aug. 29, 2023). Gannett has failed to plead these essential elements. Not only does this Court's March 1 Order hold that Gannett failed to allege materially misleading practices, *see supra* at 1-2, but Gannett also fails to allege any consumer-oriented conduct. Rather, "the gravamen of [its] complaint is not consumer injury or harm to the public interest but, rather, harm to plaintiff's business." *Emergency Enclosures, Inc. v. Nat'l Fire Adjustment Co.*, 68 A.D.3d 1658, 1661 (N.Y. App. Div. 2009); *see* Gannett Compl. ¶ 6 (alleging that since 2019 "over 170 Gannett publications have been shuttered" and "[f]or Gannett's largest remaining publications, average daily circulation fell by nearly 20% between 2020 and 2021 *alone*"). Nor do Gannett's conclusory assertions about readers of its publications in New York save its claim because Gannett lacks standing to bring a NY UDAP claim on behalf of those purported readers. *See City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 624 (N.Y. 2009) (explaining that standing for a NY UDAP claim does not extend to "persons who . . . can link a derivative injury to some public harm").

***Third***, while Gannett alleges that it "contracted with Google's New York sales team to license Google's ad tech products at issue in this Complaint," Gannett Compl. ¶ 274, it does not allege that Gannett was actually deceived in New York.[2] This is fatal to Gannett's NY UDAP claim, which cannot be based on allegedly deceptive acts or practices that occurred outside of New York. *See Goshen v. Mutual Life Ins. Co. of New York*, 774 N.E.2d 1190, 1196 (N.Y. 2002) (dismissing NY UDAP claim where plaintiff received the deceptive information in Florida and therefore "any deception took place in Florida, not New York"); *see also Haft v. Haier US Appliance Sols., Inc.*, 578 F. Supp. 3d 436, 460 (S.D.N.Y. 2022) (finding that allegations of material misrepresentations made by defendants on a "website, marketing materials, . . . and [in] statements by employees" failed to allege that the deception or "other aspects of the transaction had a connection to New York").

---

[2] The closest Gannett comes to alleging a New York connection is a conclusory allegation about "deceptive transactions that Google has planned and enforced from New York." Gannett Compl. ¶ 277.

**B. *Gannett's Common-Law Fraud Claim Should Be Dismissed.***

Count VI of Gannett's Complaint alleges a claim for fraud. Google requests leave to move for dismissal on three grounds.

***First***, Gannett has failed to plead its fraud claim with particularity as required by Federal Rule of Civil Procedure 9(b). Gannett's burden under Rule 9(b) is to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016). The only specific act Gannett describes in Count VI is an alleged misrepresentation by Google that EDA "increased Gannett's revenue." Gannett Compl. ¶ 287. But Gannett fails to state with particularity any EDA-related representations constituting fraud. Gannett's vague allegations that "Google" represented that EDA "increased Gannett's revenue by 19%" "shortly after" some unspecified time in 2014, *see* Gannett Compl. ¶¶ 151, 287, do not identify a speaker or where or when the statements were made. And to the extent Gannett intends to challenge other purported misrepresentations, it has failed to provide any supporting allegations, much less allegations that are sufficiently particular.

***Second***, Gannett has failed to plead the requisite elements of a fraud claim. "To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Fin Guar. Ins. v. Putnam Advisory Co.*, 783 F.3d 395, 402 (2d Cir. 2015). Gannett's fraud claim fails because, among other things, Gannett has failed to allege that it "reasonably relied" upon any purported misrepresentations. According to Gannett's own allegations, Gannett is a highly sophisticated party. *See, e.g.*, Gannett Compl. ¶¶ 1 (alleging Gannett "owns over 500 digital news and media brands" and "is the largest news media publisher in the United States"), 4 (alleging Gannett uses "sophisticated, enterprise-level software to auction off ad space").

Given its sophistication, to plead reliance, Gannett must allege that it "use[d] the means available to [it] to verify the truth of the information upon which" it relied. *Moskowitz v. Fischer,* 166 N.Y.S. 3d 844, slip op. at 3 (N.Y. Sup. Ct. May 3, 2022); *see McGuire Children, LLC v. Huntress*, 2009 WL 1693725 at *12 (N.Y. Sup. Ct. June 17, 2009) ("[S]ophisticated [parties] must . . . discharge[ ] their own affirmative duty to exercise ordinary intelligence and conduct an independent appraisal of the risks they are assuming" (internal citation omitted)). As noted, the only alleged misrepresentation described in Count VI is a purported statement by someone at Google (Gannett does not say who) to someone at Gannett (Gannett does not say who) at some point in 2014 (Gannett does not say when) to the effect that EDA "increased Gannett's revenue." *See* Gannett Compl. ¶¶ 151, 287. But Gannett has not alleged it did anything to diligence this purported misrepresentation. That alone is fatal to its claim. Beyond that, the information Gannett needed to verify whether its own advertising revenue was increasing—as well as whether deals *negotiated directly* with advertisers were being fulfilled—was within Gannett's province, so there is no basis to Gannett's allegation that it relied on any representations by Google. *See ISS Action, Inc. v. Tutor Perini Corp.,* 170 A.D. 3d 686, 688 (N.Y. App. Div. 2019) (no claim for fraudulent

misrepresentation when "the facts represented are not matters peculiarly within the [defendant's] knowledge").

***Third***, to the extent Gannett is attempting to plead a fraud claim based on anything other than EDA, *see supra* at 4, that claim would be time-barred at least in part because it was brought more than six years after the alleged misrepresentations or omissions. *See* N.Y. C.P.L.R. 213(8); *Wiedis v. Dreambuilder Invs.*, LLC, 268 F. Supp. 3d 457, 467 (S.D.N.Y. 2017) ("The six-year period runs from the commission of the fraud." (internal quotations omitted)); *see, e.g.*, Gannett Compl. ¶¶ 163-68.

### C. *Gannett's Unjust Enrichment Claim Should Be Dismissed.*

Count VII asserts a claim for unjust enrichment, which also should be dismissed for several reasons.

***First***, as a matter of law, Gannett cannot state a claim for unjust enrichment because it admits that its relationship with Google was governed by a contract. *See, e.g.*, Gannett Compl. ¶¶ 120 (alleging contractual relationship between Google and Gannett relating to DFP and AdX), 130 (same). Gannett has therefore pled itself out of any unjust enrichment claim. *See Cornhusker Farms, Inc. v. Hunts Point Co-op. Market, Inc.,* 2 A.D.3d 201, 206 (N.Y. Sup. Ct. 2003) ("[T]he existence of a valid and enforceable written contract precludes recovery on a theory of unjust enrichment"); *see also Clark-Fitzpatrick, Inc. v. Long Island R. R.*, 516 N.E.2d 190, 193 (N.Y. 1987) (rejecting quasi-contract unjust enrichment theory because "it is undisputed that the relationship between the parties was defined by a written contract").

***Second***, many of the acts alleged by Gannett occurred outside the six-year statute of limitations for unjust enrichment claims in New York.[3] *See, e.g.*, Gannett Compl. ¶¶ 56 (alleging introduction of Dynamic Allocation "in 2008"), 292 (alleging Google was unjustly enriched due to Dynamic Allocation); *Ferring B.V. v. Allergan, Inc.*, 932 F. Supp. 2d 493, 513 (S.D.N.Y. 2013) ("The limitations period for unjust enrichment claims is six years, and it starts running when the defendant commits the wrongful act that enriches him." (citation omitted)).

***Third***, Gannett has failed to plead the elements of an unjust enrichment claim. To do so, Gannett must allege facts showing that "(1) [Google] was enriched (2) at [Gannett]'s expense, and (3) . . . it is against equity and good conscience to permit [Google] to retain what is sought to be recovered." *Reese v. Triborough Bridge & Tunnel Auth.*, 91 F.4th 582, 594 (2d Cir. 2024). In particular, "a nexus is required between a defendant's 'enrichment' and a plaintiff's 'expense' to plead a plausible claim to relief on a theory of unjust enrichment." *Weaver v. Indymac Fed. Bank, FSB*, 2010 WL 7634134 at *7 (S.D.N.Y. June 8, 2010), *report and recommendation adopted sub nom. Weaver v. IndyMac Fed. Bank, FSB*, 2011 WL 4526404 (S.D.N.Y. Sep. 29, 2011), *aff'd*, 488 F. App'x 522 (2d Cir. 2012). Gannett has failed to allege this required nexus. Instead,

---

[3] The full breadth of conduct underlying Gannett's unjust enrichment claim is not clear: Gannett alleges that Google benefitted at Gannett's expense based on "Dynamic Allocation, Enhanced Dynamic Allocation, Project Bernanke, UPR" and unspecified "other schemes." Gannett Compl. ¶ 292.

Gannett contends that, to the extent that any of Google's bidding optimizations led to lower publisher revenues, this amounted to unjust enrichment to Google. But the only specific example Gannett provides of conduct that allegedly unjustly enriched Google is Project Bernanke, Gannett Compl. ¶ 293, which Gannett acknowledges was a buy-side optimization that increased Google Ads advertisers' access to inventory. Gannett Compl. ¶ 158. Gannett has made no attempt to allege how a buy-side improvement unjustly enriched Google or how any unjust benefit to Google came at the expense of *Gannett* in particular.

## II. **Daily Mail's State Law Claims Should Be Dismissed**.

As this Court observed in its March 1 Order, "Gannett and Daily Mail are represented by the same counsel" and many of "Gannett's allegations . . . track Daily Mail's allegations word for word." March 1 Order at 53. Daily Mail's similar claims fail for the same reasons as those set forth above as to Gannett, and are further flawed—and should be dismissed—for the additional reasons below.

### A. ***Daily Mail's Deceptive Acts or Practices Claim Should Be Dismissed.***[4]

Unlike Gannett's defective NY UDAP claim, Daily Mail's Complaint does not even identify specific alleged misrepresentations made by Google. Instead, Daily Mail merely identifies allegedly deceptive conduct at a high level of generality that does not provide Google with notice of Daily Mail's claims. *See* Daily Mail Compl. ¶¶ 262-67. In addition, Daily Mail's NY UDAP claim is based on conduct even older than that alleged by Gannett, rendering the claim time-barred on its face. Specifically, Daily Mail alleges that Google "misled federal antitrust enforcers and the U.S. Congress" in connection with "Google's acquisition of DoubleClick," which Daily Mail alleges occurred *sixteen years ago*. *Id.* ¶¶ 265, 91. While it is difficult to discern what purportedly deceptive acts are even the subject of the Daily Mail Complaint, it is clear that the conduct Daily Mail challenges occurred many years ago and so does not give rise to a timely NY UDAP claim.

### B. ***Daily Mail's Common-Law Fraud Claim Should Be Dismissed.***

Daily Mail's fraud claim suffers from all the same defects as Gannett's, but even more acutely. The sum total of Daily Mail's effort to plead fraud amounts to this: "Google falsely represented to Daily Mail that various features of DFP would serve Daily Mail's interests. Google knew that its representations were false." Daily Mail Compl. ¶ 269. As with Gannett's allegations, none of Daily Mail's preceding allegations about specific representations by Google have identified all the information necessary to state a claim, much less with the particularity required. *See supra* at 4-5.

* * *

---

[4] Unlike Gannett, Daily Mail's NY UDAP claim is limited to New York General Business Law § 349.

For all of these reasons, Google respectfully requests permission to file two separate motions to dismiss: one to dismiss Counts V, VI, and VII of Gannett's Complaint and another to dismiss Counts V and VI of Daily Mail's Complaint.[5] If the Court grants leave for Google to file these motions, Google proposes that it be allowed to file the motion within 45 days of the Court's order, that Gannett and Daily Mail respond 45 days later, and that Google reply 30 days after that.

Respectfully submitted,

/s/ Craig M. Reiser
Craig M. Reiser
Daniel Bitton
Denise L. Plunkett
Eva H. Yung
Claire L. Haws
AXINN, VELTROP & HARKRIDER LLP
114 West 47th Street
New York, New York 10036
Telephone: (212) 728-2200
Fax: (212) 728-2201
creiser@axinn.com
dbitton@axinn.com
dplunkett@axinn.com
eyung@axinn.com
chaws@axinn.com

Bradley Justus (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
Telephone: (202) 912-4700
Fax: (202) 912-4701
bjustus@axinn.com

---

[5] Google also requests permission under Federal Rule of Civil Procedure 12(f) to strike the inappropriate punitive damages that Gannett and Daily Mail demand in connection with their state law claims. *See Doe v. Indyke*, 457 F. Supp. 3d 278, 284 (S.D.N.Y. 2020) ("[A]mple authority permits striking [under Rule 12(f)] prayers for punitive damages where such relief is unavailable as a matter of law."). Punitive damages are unavailable with respect to Gannett's unjust enrichment claim, *Hutton v. Klabal*, 726 F. Supp. 67, 73 (S.D.N.Y. 1989), and neither Gannett nor Daily Mail have come close to pleading the level of misconduct required to recover punitive damages in connection with NY GBL §§ 349(h) and 350-e or common-law fraud claims. *See, e.g.*, *Guzman v. Harris*, 2017 WL 4386369, at *1 (S.D.N.Y. Sep. 29, 2017) (noting that limited punitive damages requires a finding of willful or knowing conduct); *Prohealth Care Assocs. v. April,* 2004 WL 1872915, at *9 (N.Y. Sup. Ct. Aug. 18, 2004) ("[P]laintiff must establish that the defendant engaged in intentional or deliberate wrongdoing, the conduct includes aggravating or outrageous circumstances and the defendant had a fraudulent or evil motive or evidenced willful or wanton disregard for the rights of others.").

Caroline P. Boisvert (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, Connecticut 60103
Telephone: (860) 275-8100
Fax: (860) 275-8101
cboisvert@axinn.com

CC: All Counsel of Record (via ECF)