KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900

FACSIMILE:
(202) 326-7999

March 15, 2024

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *In re Google Digital Antitrust Litigation*, No. 1:21-md-03010 (PKC)
             [rel. 1:21-cv-3446]

Dear Judge Castel:

      Plaintiffs Associated Newspapers, Ltd. and Mail Media, Inc. ("Daily Mail") write in opposition to Defendants Google LLC, and Alphabet Inc.'s ("Google") Letter Motion To Compel. *See* MDL Dkt. No. 711. Daily Mail has agreed to produce documents from 13 custodians comprising the individuals most likely to have relevant, non-duplicative documents responsive to Google's requests for production. Daily Mail has collected over a decade's worth of documents from each custodian and has agreed to run 40 broad search strings over those documents. As a result, Daily Mail has to date produced 55,175 documents and over a terabyte of data from those custodians and from centrally stored locations and will, by tomorrow, produce an additional approximately 150,000 documents. Google belatedly seeks additional custodians but has failed to meet its burden to show that those custodians possess unique, relevant information. And even if it had met its burden, Google has failed to show that any marginal benefit it would receive from the additional custodians would outweigh the substantial burden their addition would impose on Daily Mail. The Court should deny Google's letter motion. No conference is scheduled at this time.

**I.    Background**

      Ten months ago, in May 2023, Daily Mail proposed a comprehensive set of 11 custodians comprising the individuals most likely to have relevant, non-duplicative documents responsive to Google's requests for production. The 11 custodians identified by Daily Mail are the individuals most directly responsible for Daily Mail's ad tech operations that are the subject of Daily Mail's complaint. They include, among others:

- The current CEO of dmg media (the consumer media branch of Daily Mail and General Trust, plc, which is plaintiffs Associated Newspapers and Mail Media, Inc.'s ultimate

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable P. Kevin Castel
March 15, 2024
Page 2

- parent), who also served as the Chief Operating Officer of MailOnline from June 2013 to November 2021;

- The former Global Director of Platform Partnerships for dmg media from March 2018 to February 2023;

- The current Chief Digital Officer for MailOnline, who also served as MailOnline's Director of Programmatic from November 2014 to January 2019 and as the Director of Global Operations from January 2019 to June 2022;

- dmg media's current Managing Director of Digital and MailOnline's Commercial Director and Director of Mobile, who, among other roles, also served as the General Manager of Programmatic, Mobile, and Video;

- MailOnline's former Manager of Programmatic Data & Yield Strategy and Manager of Global Commercial Data;

- MailOnline's current Manager of Global Commercial Data; and

- MailOnline's Senior Vice President of Revenue Operations & Data Strategy who, among other roles, also served as MailOnline's Director of Programmatic in the U.S. and the Senior Manager of Programmatic Platforms and Revenue Operations.

For months, Google did not quibble with the sufficiency of Daily Mail's proposed custodians and did not make its own custodian proposal. Following the May 2023 proposal, Daily Mail's counsel met and conferred with Google's counsel from Wilson, Sonsini, Goodrich & Rosati, P.C. on June 5, 2023, and August 9, 2023, and Google's counsel sent letters to Daily Mail on July 12 and 31, 2023. Neither during those meet and confers nor in either of Google's letters did Google identify any deficiency in Daily Mail's custodian proposal. To the contrary, on July 17, 2023, Daily Mail asked Google to provide an explanation if it believed Daily Mail's proposed search term and custodian protocol was insufficient. In response, Google did not request (or even mention) additional custodians. In light of Google's long acquiescence in Daily Mail's custodian proposal, Daily Mail focused its document collection, review, and production efforts on the 11 custodians it identified in May.

On October 19, 2023, Google's counsel from Wilson Sonsini, notified Daily Mail that a team of attorneys from Axinn, Veltrop & Harkrider LLP would be taking over negotiations. Google's new counsel sought to restart custodian negotiations from scratch. In a letter on November 10, 2023, Google indicated for the first time that it would seek additional custodians. Google waited an additional week to propose 13 new custodians, none of which it sought (or even mentioned) in the preceding 6 months. *See* Ex. 1 (Email from E. Yung to S. Henningson, Nov. 17, 2023). Google never explained this months-long delay and made no attempt to show that its 13 proposed custodians would possess unique and relevant documents. *See id.*

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable P. Kevin Castel
March 15, 2024
Page 3

Despite Google's long delay in proposing custodians, Daily Mail was willing to consider Google's request and invited Google to meet its burden to justify its proposal. At the parties' December 15 meet and confer, Daily Mail again asked Google to justify in writing its request to more than double the number of Daily Mail custodians, but Google refused to do so. Instead, on the call Google's counsel merely identified the job titles of its 13 additional proposed custodians and generally averred that some of them "had contact" with employees at Google or "had knowledge" relevant to unidentified issues. Ex. 2 at 4-5 (Letter from E. Maier to C. Boisvert, Jan. 8, 2024). Google's assertion (at 2) that it "provided detailed justifications for each of [its] 13 additional proposed custodians" during the December 15 meeting is thus false. Then, in a December 22 letter, Google repeated its demand that Daily Mail include all 13 additional custodians without providing any justification. *See* Ex. 3 (Letter from C. Boisvert to D. Bird, Dec. 22, 2023).

Although it was Google's burden to justify its additional custodians, in order to move negotiations forward Daily Mail explained that the 11 custodians proposed in May were the individuals who most often interacted with Google's ad tech employees and other ad tech industry participants regarding the issues in Daily Mail's complaint. Google's 13 proposed additional custodians did not hold roles focused on ad tech, and some had no connection to ad tech whatsoever. For instance, Google proposed two Daily Mail journalists as custodians. *See* Ex. 2. Daily Mail asked, once again, that Google "please provide in writing a more fulsome justification for" Google's proposed custodians. *Id.* at 5.

Google failed to provide any written justifications for its proposed custodians until January 19, 2024, eight months after receiving Daily Mail's initial custodian proposal. Even then, Google primarily offered each individual's title, made baseless assertions that they would have relevant documents, and cited a handful of documents that, if anything, showed that discovery from Google's proposed additional custodians would be cumulative. Daily Mail promptly evaluated Google's request and responded on January 30, explaining why each proposed custodian was not relevant and was unnecessary.[1] Nevertheless, in a show of good

---

[1] Google states (at 3 n.1) that "in an abundance of caution" it did "not include[ ]" Daily Mail's January 30 and March 1 letters "as exhibits to [its March 11] letter motion," "[*b*]*ecause* Daily Mail designated" them Highly Confidential, a designation with which Google disagreed. (Emphasis added). But Daily Mail designated those letters Highly Confidential primarily because those letters quote or summarize documents from Google's production that *Google* designated as Highly Confidential. Google's letter implied that Daily Mail's Highly Confidential designation (with which Google disagreed) was the sole reason it did not file the January 30 and March 1 letters together with its March 11 letter motion. Daily Mail understood that Google thus did not object to its own Highly Confidential information being filed and Daily Mail included the letters as Exhibits 4 and 5. Google's counsel contacted Daily Mail on March 15 and demanded that Daily Mail "withdraw" Exhibits 4 and 5. Although Google plainly stated in its March 11 letter motion that Exhibits 4 and 5 were improperly designated as Highly Confidential, out of an

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable P. Kevin Castel
March 15, 2024
Page 4

faith and to avoid burdening the Court, Daily Mail agreed to collect and review the documents of two of Google's proposed custodians. *Id.*

Google chose to drop all but three of its remaining proposed custodians, requesting that Daily Mail add Jonathan Harmsworth, Paul Zwillenberg, and Martin Clarke. In a March 1 letter, Daily Mail explained in detail why these proposed custodians would not produce relevant, non-cumulative documents. Rather than offer additional reasoning or evidence to sustain its burden, Google gave Daily Mail an ultimatum: agree to add Paul Zwillenberg and Martin Clarke as custodians or Google would declare impasse.

In one final attempt to reach compromise without burdening the Court with this dispute, Daily Mail offered to add Martin Clarke as a custodian if Google would withdraw its request for other custodians. Daily Mail conditioned that offer on Google's agreement that it would not seek additional custodians with respect to its first set of requests for production. Plaintiffs previously agreed not to seek additional custodians or search terms related to Plaintiffs' first set of requests for production. Daily Mail sought a reciprocal agreement from Google. Instead of responding to Daily Mail's counterproposal, on March 11, nearly 10 months after Daily Mail first made its custodian proposal, Google filed its letter motion.

**II.     Argument**

As Google has elsewhere explained, "[a]bsent agreement among the parties" a party responding to a discovery request "is entitled to select the custodians most likely to possess responsive information and to search the files of those individuals." Jt. Status Rep. at 25, *United States v. Google LLC*, No. 1:20-cv-3010 (D.D.C. Mar. 18, 2021), ECF No. 118 ("Jt. Status Rep.") (Google quoting *Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2017 WL 2305398, at *2 (S.D.N.Y. May 18, 2017)). And "[u]nless that choice is manifestly unreasonable or the requesting party demonstrates that the resulting production is deficient, the court should play no role in dictating the design of the search, whether in choosing search tools, selecting search terms, or, as here, designating custodians." *Id*. As a result, Google bears the heavy burden of "demonstrat[ing] that the additional requested custodians would provide unique relevant information." *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013). As Google has pointed out, even if the requesting party can establish that the custodians possess additional relevant documents, the Court must still "weigh[ ] this showing against the obvious burden on [the responding party] to collect, review, and produce a new custodial file." Jt. Status Rep. at 25 (Google quoting *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 WL 3100016, at *1 (N.D. Fla. June 11, 2020)).

---

abundance of caution, Daily Mail has filed a new version of this letter removing Exhibits 4 and 5 and removing references to those exhibits. Daily Mail will contact the Clerk on Monday, March 18 and request that its original filing be withdrawn. At the Court's request, Daily Mail will provide its January 30 and March 1 letters to the Court in chambers.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable P. Kevin Castel
March 15, 2024
Page 5

The 13 custodians Daily Mail has agreed to include are sufficient and proportionate to the needs of this case.  Google has not met its burden to show that either of its proposed additional custodians possess unique, relevant documents.  And even if Google could do so, adding those custodians at this late date would substantially increase Daily Mail's burden and produce only minimal benefit, if any.  *See Mortg. Resol.*, 2017 WL 2305398, at *3 (denying additional custodians because "the cost . . . would be substantial.").  The Court should deny Google's letter motion to compel.

      **A.**      **Daily Mail's 13 agreed custodians are sufficient.**

Daily Mail's existing custodians are more than sufficient for the needs of this case.  To select the appropriate custodians, counsel for Daily Mail reviewed Google's requests for production with Daily Mail's employees and interviewed several individuals to determine the custodians who would possess responsive and non-duplicative materials.  Then, as the party "best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing [its] own electronically stored information," Daily Mail collected over a decade's worth of documents from the 11 employees most likely to have materials responsive to Google's requests and proposed them to Google.  The Sedona Conference, *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 118 (2018); *see also Mortg. Resol.*, 2017 WL 2305398, at *2-3.  Following negotiations with Google, Daily Mail agreed to add 2 custodians, bringing the total to 13.  On top of these custodial files, Daily Mail also has agreed to search and produce responsive documents and data from numerous centrally stored file repositories.  Daily Mail has, to date, produced 55,175 documents and over a terabyte of data and will, by tomorrow, produce another approximately 150,000 documents.[2]

Google provides no credible reason to doubt the sufficiency of Daily Mail's 13 custodians.  Google's only stated rationale for its motion – that Daily Mail seeks to recover generally for "the decline of the newspaper industry" and that additional custodians are necessary to "test" whether Daily Mail's purported "failure to pivot its business model from print to digital" caused its damages – falls flat for several reasons.  As an initial matter, Daily Mail has been, at times, the world's most-read English-language news website – Google's assertion that Daily Mail lagged in developing its online presence or failed to "pivot" from "print to digital" strains credulity.  But even if there were substance to Google's assertion, nowhere in its letter motion does Google suggest that the 13 already-agreed custodians do not possess documents

---

      [2] Despite Google's delaying the negotiation of custodians and search terms for months the parties recently agreed on a set of 40 broad search terms.  Daily Mail agreed that it would substantially complete document productions from those search terms over Daily Mail's initial 11 proposed custodians by Mid-March.

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable P. Kevin Castel
March 15, 2024
Page 6

sufficient for Google to "test" its purported defense.[3]  That is not surprising – as described above, Daily Mail's agreed custodians comprise the leadership of its ad tech operations, including the longtime Chief Operating Officer of MailOnline and current CEO of dmg media, Richard Caccappolo.  Google makes no effort to explain why Mr. Caccappolo and the other agreed custodians would not have documents sufficient to understand how Daily Mail managed its online advertising and monetization strategy.  That failure is fatal to Google's letter motion.  It is Google's burden to show that "there are unique responsive documents being missed in the current search scheme that would justify the inclusion of additional custodians." *Coventry Cap. US LLC v. EEA Life Settlements Inc.*, 2020 WL 7383940, at *6 (S.D.N.Y. Dec. 16, 2020), *objections overruled*, 2021 WL 961750 (S.D.N.Y. Mar. 15, 2021).  Google has not done so.

      Google's stated rationale fails for yet another reason – Google seeks to "test" a damages theory that Google knows Daily Mail is not pursuing.  Daily Mail is not seeking, as Google suggests (at 1), damages related to a general decline in its overall revenues or the newspaper industry more broadly.  Instead, Daily Mail brought this suit to recover for specific harms Google's conduct caused and is causing to Daily Mail's online advertising revenues.  In response to one of Google's 30 interrogatories, Daily Mail already has explained the specific categories of damages that Daily Mail seeks to recover, namely:  Google's conduct has depressed the prices paid for Daily Mail's directly and programmatically sold online advertising inventory; Google's anticompetitive conduct has allowed Google to maintain supracompetitive take rates; Google's conduct has steered user traffic away from Daily Mail's website, causing Daily Mail to lose opportunities to sell more advertising; Google's conduct has hampered Daily Mail's ability to invest in additional online content beside which it could sell additional advertising; and Google's serial fraudulent misrepresentations and violations of New York's Unfair Deceptive Acts or Practices statute give rise to both actual and statutory damages.  These damages exist regardless of whether Daily Mail timely "pivot[ed]" its "business model from print to digital."  Google does not need additional custodians to probe a damages theory Daily Mail does not assert.  *See Allianz Global Invs. GmbH v. Bank of Am. Corp.*, 2021 WL 5299238, at *2 (S.D.N.Y. Oct. 18, 2021) (denying motion to compel custodians when their documents were not "of significant importance in resolving the issues in the case").

---

      [3] Google has not yet filed its answer.  As a result, Google has nowhere alleged any facts supporting its assertion (at 2) that Daily Mail's "mismanagement" caused its damages.  That alone dooms Google's letter motion.  *See Tottenham v. Trans World Gaming Corp.*, 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002) (denying, in relevant part, motion to compel discovery into conduct not alleged in a defendant's answer because doing so would be to "condone . . . a fishing expedition" based on "mere speculation").

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable P. Kevin Castel
March 15, 2024
Page 7

### B. Google has failed to demonstrate that Clarke or Zwillenberg have unique, relevant information.

Although it is Google's burden to justify its proposed additional custodians, Daily Mail has demonstrated throughout negotiations that neither Martin Clarke nor Paul Zwillenberg are necessary. Clarke is the former editor of MailOnline and his primary responsibilities concerned editorial decision-making, not digital advertising. Zwillenberg is the former CEO of Daily Mail's parent company, Daily Mail and General Trust, plc (DMGT), and in that role had general oversight over all of DMGT's operations, not only its newspaper properties. Neither Clarke nor Zwillenberg were directly responsible for Daily Mail's ad tech operations. To the extent either discussed ad tech operations, they did so with Daily Mail employees who *were* directly responsible for those operations and who already are custodians.

Courts in this district have denied motions to compel custodians when, as here, the proposed custodians were not directly involved in the issues central to the case, but instead had only general oversight. In *Allianz*, for instance, Magistrate Judge Aaron refused to compel the addition of four custodians because those custodians "relied on others" to "educate them" about the transactions at issue in the case. 2021 WL 5299238 at *1. Because the proposed custodians did not communicate about the relevant transactions without less-senior employees who already were custodians (i.e., "the persons actually in possession of relevant knowledge"), Magistrate Judge Aaron explained that the requesting party would be "able to obtain" the proposed custodians' "relevant internal communications" through documents belonging to those less-senior employees. *Id*. The court held that any potential "marginal utility" of obtaining documents from the proposed custodians that did not involve existing custodians was "outweighed by the burden of pulling, searching, processing and producing several years of these senior executives' emails." *Id*.

The same is true here. Because both Clarke and Zwillenberg "relied on" the existing custodians to "educate" them as necessary regarding Daily Mail's ad tech operations, Google can obtain Clarke's and Zwillenberg's relevant communications through the documents of those existing custodians. As described further below, Google has presented no evidence in its motion or in its correspondence to the contrary. Indeed, the documents Google has cited to Daily Mail as well as Google's *own* documents contradict its claim that the collection, search, review, and production of over a decade's worth of Clarke's and Zwillenberg's documents is necessary.

**1. Martin Clarke.** Google has produced no evidence establishing that Clarke will have unique, relevant documents that Google cannot obtain from the 13 already agreed custodians. In its letter motion, Google first cites (at 4) a single news article to justify its request. That article states the relatively obvious proposition that Clarke, as the editor of an online newspaper, "grasped" that digital advertising was "significan[t]" to make Daily Mail profitable. The article does nothing, however, to establish that Clarke was involved in the ad tech operations that are at the heart of this case.

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable P. Kevin Castel
March 15, 2024
Page 8

      Google next vaguely gestures (at 5) to documents from Daily Mail's productions and asserts that they support its request to add Clarke as a custodian. Google does not identify or attach the documents it references. In its letters to Daily Mail, Google cited only two documents in support of its request. Google identified a meeting invitation and attached presentation titled "Programmatic Management Meetings" that included Clarke. *See* DM_GOOG_0002278.[4] But a review of that invitation reveals that two already-agreed custodians (including Caccappolo) were also "required attendees" at those meetings. Attending meetings at which the conduct at issue in a lawsuit may be discussed is not enough to justify Clarke's addition as a custodian. *See Allianz*, 2021 WL 5299238, at *1 (attendance in meetings regarding at-issue transactions did not justify addition as custodian).

      Google also asserts (at 5), without citation to any document, that Clarke "communicated with Daily Mail personnel" regarding "issues related to Google's AdX product, Enhanced Dynamic Allocation, and programmatic revenue." During the four months since Google restarted custodian negotiations, Google never has identified any such document to Daily Mail. Apart from the meeting invitation described above, the only other document Google cited in justification of its request for Clarke was a document in which he discussed Google's AMP product. *See* DM_GOOG_0001183. The Court dismissed Daily Mail's claim related to AMP two weeks ago. But even if that claim remained in dispute, the document Google cited again shows that Google will be able to obtain Clarke's relevant communications from existing custodians. In the document, a number of Daily Mail employees (including three existing custodians) raise and resolve an issue regarding AMP. Eventually, Clarke is *removed* from the thread so that the other employees can discuss the issue in sufficient detail. In his place they add, among others, Adam Leslie, another already-agreed custodian described as "closer to" the relevant issue "than anyone."

      Clarke's limited relevance to this case is further demonstrated by Google's own production. Despite Google's suggestion that Clarke was heavily involved in discussions surrounding Daily Mail's use of Google's ad tech products, Clarke shows up in only a handful of the over six million documents Google has produced. And in each of the emails in Google's productions on which Clarke does appear, another existing Daily Mail custodian is copied. *See, e.g.*, GOOG-ADTCH-00597135.[5]

      **2. Paul Zwillenberg.** Google likewise has failed to identify any evidence supporting its request to add Zwillenberg as a custodian. Google falsely states (at 4) that it "demonstrated to

---

[4] The two Daily Mail documents cited in this letter opposition have been designated Highly Confidential. Daily Mail has therefore not attached them. Daily Mail will provide the Court copies in chambers at the Court's request.

[5] Google designated this document Highly Confidential. Out of an abundance of caution, Daily Mail has not attached the document to this opposition, but will provide the Court a copy in chambers at the Court's request.

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable P. Kevin Castel
March 15, 2024
Page 9

Daily Mail during the meet-and-confer process" that Daily Mail's documents show "that Mr. Zwillenberg directly communicated with . . . Google personnel" regarding the conduct at issue in this case. But in its correspondence with Daily Mail, Google *never* cited a single Daily Mail document showing that Zwillenberg communicated with Google personnel. In fact, Google never identified any documents at all in support of its request to add Zwillenberg as a custodian. In both its letter motion (at 4) and its correspondence, Google relies on only a single 2016 news article that Google suggests establishes that Zwillenberg was hired as DMGT's CEO because of his experience with digital advertising. But Zwillenberg's experience prior to his time at Daily Mail is irrelevant to whether he is an appropriate custodian in this case.

Google's own production belies its claim (at 4) that Zwillenberg communicated with Google personnel without involving one of the 13 agreed custodians. A review of Google's productions shows that either agreed custodians Caccappolo or Matthew Wheatland (MailOnline's Chief Digital Officer) were included on every single one of the emails and calendar invites addressed to, or copying, Zwillenberg during his time at Daily Mail.

In light of the fact that Google has utterly failed to identify any evidence to demonstrate the necessity of adding Clarke or Zwillenberg as custodians, the Court should dismiss as mere speculation Google's assertion (at 5) that Clarke and Zwillenberg "are likely to possess" certain categories of documents. The primary case on which Google relies establishes that the requesting party must present detailed evidence that its proposed custodians will possess unique, relevant documents. *See In re Facebook, Inc. Consumer Priv. User Profile Litig*., 2021 WL 10282213, at *2 (N.D. Cal. Nov. 14, 2021) (compelling custodians only after finding that they were "key decision-makers related to issues at the heart of Plaintiffs' allegations"); *id*. at *11-12 (attaching plaintiffs' motion to compel that cites numerous documents establishing necessity of proposed custodians). Google has made no such showing in either its letter motion or in its correspondence.

      **C.**    **Any marginal utility of adding Clarke and Zwillenberg as custodians is outweighed by the substantial burden their addition would impose on Daily Mail.**

Even if Google had established that Clarke and Zwillenberg are likely to possess unique, relevant documents – and it has not – adding them as custodians would still be inappropriate. As the cases on which Google relies recognize, establishing that a proposed custodian may have additional relevant documents does not end the inquiry. Google must also demonstrate that the "marginal utility" of collecting, searching, and reviewing those custodians' files outweighs the substantial burden it would impose on the producing party. *Blackrock Allocation Target Shares: Series S Portfolio v. Bank of N.Y. Mellon*, 2018 WL 2215510, at *12 (S.D.N.Y. May 15, 2018) (cited by Google at 5). In *Blackrock*, for example, Magistrate Judge Pitman denied a motion to compel additional custodians even though the requesting party had shown that the proposed custodians "probably possess[ed] relevant documents." *Id*. Judge Pitman explained that the proposed custodians were not directly involved in the relevant conduct, meaning that the slight

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable P. Kevin Castel
March 15, 2024
Page 10

benefit of collecting their documents was outweighed by the burden that collection would impose. *See id*. That was especially true because the producing party already had agreed to produce documents more directly relevant to the case. *See id*.; *see also Allianz*, 2021 WL 5299238 at *1 (denying motion to compel when "marginal utility" gained from adding "senior executive" as a custodian was "outweighed by the burden of pulling, searching, processing and producing several years" of documents).

The burden of collecting, searching, reviewing, and producing Clarke's and Zwillenberg's documents far outweighs any marginal utility Google would gain from their addition. For each new custodian, Daily Mail must collect a decade's worth of documents, instruct and pay its document vendor to process them, run the agreed 40 broad search terms, review the results of those searches for both privilege and responsiveness, and then produce the responsive, non-privileged documents. That substantial burden is compounded by the impending June 28 deadline for the completion of fact discovery. Google's six months of silence regarding custodians followed by Google's months-long delay in providing any justification for its proposed custodians has brought this issue to a head only three months before fact discovery is set to end. Google's eleventh-hour request for additional custodians fails to heed this Court's recent caution that "discovery in this MDL should be winding down." MDL Dkt. No. 708 at 1. Google instead seeks to force Daily Mail to ramp its document discovery back up only a few months before the fact discovery cutoff.

During negotiations, and again in its letter motion, Google asserted (at 3) that Daily Mail should further demonstrate the burden of adding custodians by providing de-duplicated hit counts for Clarke's and Zwillenberg's documents. But Daily Mail can provide de-duplicated hit counts only if it collects Clarke's and Zwillenberg's documents, processes them, and compares them to documents Daily Mail already has collected. In other words, Google's request would force Daily Mail to shoulder the precise burden it is attempting to avoid: the time and cost associated with the collection, processing, and search of a decade's worth of custodial files. *See Allianz*, 2021 WL 5299238, at *1 (noting the "burden of pulling, searching, processing" documents from additional custodians). Google itself refused to collect documents from MDL Plaintiffs' proposed additional custodians during negotiations for that very reason.

Google suggests (at 6) that Daily Mail should be forced to shoulder the unnecessary burden of adding Clarke and Zwillenberg as custodians because Google searched the files of numerous Google custodians and produced a large volume of documents. That is a non-sequitur. As Judge Jordan recently stated in the related *Texas* case, "given the claims and given the parties, there is going to be some asymmetry in the discovery that's going to happen. . . . There's going to be, and has been, a lot more being produced, you know, by Google." Status Conf. Tr. at 22:18-22, *Texas v. Google, LLC*, No. 4:20-cv-00957 (E.D. Tex. Feb. 15, 2024), ECF No. 250. In a case concerning Google's anticompetitive conduct, it is not surprising that Google's documents and data make up the majority of discovery materials.

\*          \*          \*

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable P. Kevin Castel
March 15, 2024
Page 11

      Daily Mail's 13 agreed custodians are sufficient to locate documents responsive to Google's requests for production and are proportional to the needs of this case. Google has not shown that either Clarke or Zwillenberg are likely to possess unique, relevant information. And even if it had met its burden to do so, Google has failed to show that the "marginal utility of obtaining" Clarke's and Zwillenberg's documents would not "be outweighed by the burden of pulling, searching, processing and producing several years of these senior executives' emails." *Allianz*, 2021 WL 5299238, at *1. The Court should deny Google's motion.

      Respectfully submitted,

      /s/ *John Thorne*
      John Thorne
      Daniel G. Bird
      Bethan R. Jones
      Christopher C. Goodnow
      Mark P. Hirschboeck
      Eliana Margo Pfeffer
      Eric J. Maier
      Sven E. Henningson
      Tiberius T. Davis
      KELLOGG, HANSEN, TODD, FIGEL
       & FREDERICK, P.L.L.C.
      1615 M Street NW
      Suite 400
      Washington, DC 20036
      Tel.: (202) 326-7900
      Fax: (202) 326-7999
      Email: jthorne@kellogghansen.com
            dbird@kellogghansen.com
            bjones@kellogghansen.com
            cgoodnow@kellogghansen.com
            mhirschboeck@kellogghansen.com
            epfeffer@kellogghansen.com
            emaier@kellogghansen.com
            shenningson@kellogghansen.com
            tdavis@kellogghansen.com

      *Counsel for Associated Newspapers, Ltd. and Mail Media, Inc.*

cc:   All Counsel of Record via ECF