# EXHIBIT 3



CAROLINE P. BOISVERT
90 STATE HOUSE SQUARE
HARTFORD, CT 06103
860.275.8129
CBOISVERT@AXINN.COM

December 22, 2023

Daniel G. Bird
Eric J. Maier
Sven E. Henningson
John Thorne
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M Street NW
Suite 400
Washington, DC 20036

Re:     *In re Google Digital Advertising Antitrust Litigation*,
        No. 1:21-md-03010 (PKC)

Dear Daniel, Eric, Trip, and John:

I am writing to follow-up on our December 15, 2023 meet-and-confer to memorialize our discussion regarding Google's January 27, 2023 Requests for Production (the "Requests"), Google's January 27, 2023 Interrogatories (the "Interrogatories"), Daily Mail's January 13, 2023 Initial Disclosures (the "Disclosures"), and Volume 1 of Daily Mail's Privilege Log, as well as our understanding of next steps.

As you know, we scheduled the December 15 call to clarify the issues and attempt to reach agreement on as many of them as possible because Daily Mail's December 6, 2023 response to our November 10 and November 17 correspondence mischaracterized our negotiations, ignored many of the questions we raised in the meet-and-confer process, and failed to adequately respond to many others. You requested an agenda to facilitate our discussion, which we provided. Unfortunately, Daily Mail was still unprepared to address many outstanding issues. For example, one of the agenda items was "Daily Mail's Bases for Rejecting Google's Proposed Custodians." Daily Mail was nevertheless unable or unwilling to provide specific reasons for rejecting any of Google's proposed custodians during our call. Similarly, our agenda requested that Daily Mail identify a date certain by which Daily Mail will substantially complete its production of go-get documents, but Daily Mail did not identify any such date.

Google has made every effort to move along negotiations in a swift and productive manner and will continue to do so. Our hope is that we will be able to expeditiously reach agreement with Daily Mail on all of the issues outlined herein, but if an agreement cannot be reached, we need to know as soon as possible. As we have explained, time is of the essence, and if we cannot reach agreement then we will have no choice but to seek relief from the court. Accordingly, we ask that you provide responses to the questions below as soon as possible, and in all events by January 3, 2024.

Daniel G. Bird
December 22, 2023
Page 2

**Timing of Supplementation & Substantial Completion**

During our call, Daily Mail confirmed that by January 31, 2024, it will supplement its Initial Disclosures, the Interrogatories it agreed to supplement with narrative responses,[1] and the Interrogatories it agreed to supplement pursuant to Federal Rule of Civil Procedure 33(d).[2] Daily Mail also agreed to supplement Interrogatory 16 in its December 6 correspondence, but Daily Mail did not indicate whether it would do so through a narrative response or pursuant to Rule 33(d). Please confirm how Daily Mail intends to supplement this Interrogatory and that it will do so by January 31.

During our call, Daily Mail explained that it has substantially completed its data productions but may make minimal additional data productions. Unfortunately, Daily Mail was unable to provide a date certain by which it will substantially produce go-get documents. Please identify such a date.

**Search Terms**

Contrary to what Daily Mail's December 6 letter suggests, Google has never entered into "prior agreements" with Daily Mail on search terms. *See* Dec. 6, 2023 E. Maier Letter to C. Boisvert at 2. Rather, as we explained in our November 10 correspondence and again during our December 15 meet-and-confer, Daily Mail's productions to date have been insufficient, and Google has not agreed to the iterations of search terms proposed by Daily Mail because none of those proposals include terms fully covering each of Google's Requests. You acknowledged during our December 15 call that no agreement has been reached on search terms.

As we discussed during that call, in an effort to reach agreement, Google is willing to agree to certain terms from Appendix A of Daily Mail's December 6 letter so long as Daily Mail is willing to accept modifications to some terms and the addition of others. To facilitate Daily Mail's ability to expeditiously consider our proposal, we have included the following appendices outlining our positions on search terms:

- Appendix A: We have duplicated Appendix A of Daily Mail's December 6 letter and indicated whether we accept each term. For terms that we do not accept, we have provided an explanation and proposed replacement terms.

- Appendix B: We have identified the additional terms necessary so that the search term protocol fully and appropriately covers each Request. We have also attempted to address the overbreadth concerns Daily Mail identified in Appendix B of its December 6 letter.

- Appendix C: We have identified every term from our November 17 proposal that we are willing to cut in order to reach agreement with Daily Mail.

We have also included as Appendix D a revised proposed search term protocol, which includes the terms we have accepted from Appendix A along with the additional terms we have

---

[1] These Interrogatories are Nos. 1, 3, 4, 7, 16, 24, 25, and 29.
[2] These Interrogatories are Nos. 2, 5, 6, 8, 9, and 22.

Daniel G. Bird
December 22, 2023
Page 3

requested in Appendix B.[3] The terms in <u>Appendix D</u> should be run to locate documents from January 1, 2013 through the present, but, as specified in Google's Requests, Daily Mail should apply a broader timeframe as to Request Nos. 23, 39, 40, 41, 57, 58, 63, 64, 66, 69, and 71. Please confirm that Daily Mail will do so and that Daily Mail will run the terms as proposed in <u>Appendix D</u>.

**<u>Custodians</u>**

Because Daily Mail was unprepared to identify its bases for rejecting each of the 13 additional custodians we proposed a month ago, we provided our reasoning for including each of those custodians during our call. We maintain that Google's list of proposed custodians is entirely reasonable and proportionate to the needs of the case.[4] If Daily Mail has specific objections to individual custodians, it should communicate those without any further delay. Otherwise, Daily Mail should include all custodians and conduct searches accordingly. Please confirm that Daily Mail will do so.

**<u>Initial Disclosures</u>**

As we previously indicated, Daily Mail's Initial Disclosures are deficient for many reasons, including that they fail to identify all members of Daily Mail's ad tech team. During our call, you confirmed that the supplemental Initial Disclosures Daily Mail will be providing will include (1) individuals on Daily Mail's ad tech team that Daily Mail believes are likely to have discoverable information that Daily Mail may use to support its claims or defenses; and (2) specific individuals at the third-party companies Daily Mail identified that Daily Mail believes are likely to have discoverable information that Daily Mail may use to support its claims or defenses.

**<u>Privilege Log</u>**

As we discussed, Daily Mail's December 14, 2023 letter regarding Volume 1 of Daily Mail's Privilege Log and the corresponding supplemental log failed to adequately address the entirety of the issues outlined in our December 7 correspondence. In particular:

- <u>Email Addresses or Affiliations</u>. Your December 14 letter stated that Daily Mail "d[id] not understand" how only providing individuals' names failed to meet the requirement to provide their identity. We explained on our call that names alone are insufficient to indicate individuals' connections to Daily Mail and, without email addresses or affiliations associating the individuals named on the Privilege Log with organizations, we are unable to effectively evaluate Daily Mail's claims of privilege.

- <u>"Legal Personnel" Category</u>. Daily Mail never responded to the request from our December 7 correspondence that Daily Mail provide more information on the "legal personnel" category identified in the footer of its Privilege Log. Please define this

---

[3] While we believe our November 17 proposal is appropriate, we are offering this modified proposal as a compromise in the interest of moving these negotiations along. We reserve all rights as to the terms identified in our November 17 proposal if we are unable to reach agreement on this proposed amended proposal. Furthermore, the proposal in Appendix D is subject to further additions and/or modifications based on review of produced documents and ongoing negotiations.

[4] As previously indicated, Google reserves the right to add additional custodians based on review of produced documents and ongoing negotiations.

Daniel G. Bird
December 22, 2023
Page 4

category and confirm that Daily Mail is not asserting privilege over any document based on the involvement of individuals who are not themselves attorneys.

Despite us having raised these points in writing on December 7 and discussed them on December 15, Daily Mail on December 18 served a second volume of its Privilege Log with these very same defects. Please confirm that Daily Mail will revise both volumes of its Privilege Log to address these points and will do so going forward in respect of any additional volumes Daily Mail may serve.

Finally, and as we discussed, Daily Mail never responded to the question in our December 7 correspondence related to Daily Mail's work-product privilege claims. Please respond to our inquiry as indicated therein.

**Interrogatories**

During our call, you asked us to elaborate on our request that Daily Mail supplement Interrogatory Nos. 10-15, 17-21, and 23.

As we expressed, the deficiencies in those responses are apparent on their face because they generally do nothing more than refer back to Daily Mail's Complaint.  *See United States v. W. Va. Pulp & Paper Co.*, 36 F.R.D. 250, 251 (S.D.N.Y. 1964) ("[Rule 33's] function is certainly not performed by a mere restatement of the general terms of the allegations of the complaint. The answer supplies no facts not disclosed by the complaint nor does it clarify or narrow the broad issues posed by the complaint."); *see also Trueman v. N.Y. State Canal Corp.*, 2010 WL 681341, at *3 (N.D.N.Y. Feb. 24, 2010) ("Answers to interrogatories that incorporate other documents by reference are strongly disfavored[;] [r]eference to . . . the complaint itself, or any other documents are improper and unresponsive."). Nevertheless, to move things along and because you claimed to not understand what information Google is seeking, we elaborate on the Interrogatories as follows:

- **Interrogatory No. 10** asks that Daily Mail detail all factors that influence or influenced its advertising selling decisions. Your response names examples of such factors rather than all such factors, and it does not explain those factors' connection to the number, size, and placement of advertising spaces on Daily Mail's website(s). Further, your response restates information apparent from Daily Mail's Complaint, such as that Daily Mail's advertising sales objectives include "maximizing revenue" and "maximizing readership." Please provide a complete response to this Interrogatory.

- **Interrogatory No. 11** asks that Daily Mail detail all factors that influence or influenced its choice of Ad Tech Products. Your response fails to identify any such factors and instead focuses on how Google's conduct allegedly inhibits Daily Mail's choice in products. This is non-responsive. If it is Daily Mail's position that Google's alleged conduct somehow prevents Daily Mail from having factors and considerations it prioritizes when choosing Ad Tech Products and/or selling advertising spaces, it should state as much expressly. Daily Mail should otherwise provide a complete response to this Interrogatory as written.

- **Interrogatory No. 12** asks Daily Mail to describe its use or consideration of specific Google designs or Features and to identify the timeframe of Daily Mail's use of those designs or Features.  Your response mischaracterizes this Interrogatory and provides no information about Daily Mail's use or consideration of any of the specified designs or

Daniel G. Bird
December 22, 2023
Page 5

Features. If Daily Mail's position is that it lacks sufficient information to describe its use or consideration of any of the specified designs or Features, please confirm as much. Otherwise, please provide detailed explanations of how Daily Mail used and considered each of the listed designs or Features and the timeframe in which it used them.

- **Interrogatory No. 13** asks Daily Mail to describe the effects of each of Google's listed design features on Daily Mail's revenue, CPM, impressions, and clicks. Daily Mail's reference back to its Complaint is insufficient, particularly because the Complaint itself does not describe the effect of each feature on each metric over the requested time period. Please provide a complete response to this Interrogatory.

- **Interrogatory No. 14** asks Daily Mail to describe whether and how the amount of content on its websites is impacted by advertising revenue received or fees paid for Ad Tech. Daily Mail's response only describes the impact of advertising revenue on the amount of content on Daily Mail's website indirectly and "[i]n general" terms. It does not, however, specifically address whether "higher fees paid to Ad Tech Providers and lower advertising revenues" limit the number of Daily Mail's web pages, the number of Daily Mail's apps, the amount of content per web page/app, or some combination of the foregoing. Please provide a complete response to this Interrogatory.

- **Interrogatory No. 15** asks that Daily Mail describe its use of AMP, its decision to adopt AMP, and AMP's effect on Daily Mail's websites. Daily Mail's response refers back to and regurgitates allegations from Daily Mail's Complaint. This is insufficient. Please provide a complete response to this Interrogatory, including by describing Daily Mail's use of AMP and the specific impact that AMP has had on particular Daily Mail websites.

- **Interrogatory No. 17** asks that Daily Mail identify any differential price floors it set for Inventory available on more than one Ad Exchange, the time period these differential price floors were in effect, and its reasons for setting such differential price floors. Beyond being deficient due to its references back to Daily Mail's Complaint, Daily Mail's response fails to identify how Daily Mail set price floors (e.g., based on advertiser, brand, ad size, exchange, inventory, or otherwise), nor is it fully responsive with respect to the timeline. Please provide a complete response to this Interrogatory, including by identifying the types of differential price floors Daily Mail used, specifying when Daily Mail started and stopped using each of these types of price floors, and confirming whether Daily Mail continued to use any differential price floors after Unified Pricing Rules were implemented.

- **Interrogatory No. 18** asks, among other things, that Daily Mail identify changes to the number of Line Items used over time. Daily Mail's response that it "*eventually* used upwards of 300,000 active line items" (emphasis added) suggests changes over time that are not addressed in Daily Mail's response. Please provide a complete response to this Interrogatory, including additional detail on the changes that led to Daily Mail "eventually" using over 300,000 active line items.

- **Interrogatory No. 19** asks that Daily Mail identify whether Daily Mail ever enabled Header Bidding and to describe the kind(s) of Header Bidding Daily Mail enabled along with the accompanying time period. This Interrogatory seeks information beyond that found in your Complaint. Your response does not describe Client-Side or Server-Side Header Bidding or its usage thereof, nor does it provide a full time period (i.e., end dates or an acknowledgement of continued use into present) for the types of Header Bidding

Daniel G. Bird
December 22, 2023
Page 6

Daily Mail identifies. Please provide a complete response to this Interrogatory, including by specifying the time periods Daily Mail used each type of Header Bidding and by describing the types of Header Bidding Daily Mail identified, along with any other types of Header Bidding Daily Mail has used.

- **Interrogatory No. 20** asks that Daily Mail describe all reasons for deciding to enable each kind of Header Bidding. Once again, this Interrogatory is seeking more than a repeat of information already available in Daily Mail's Complaint. Please provide a complete response to this Interrogatory, including by identifying *all* of Daily Mail's reasons for deciding to implement each kind of Header Bidding.

- **Interrogatory No. 21** asks that Daily Mail describe Header Bidding's impact on its business, including revenue and CPM from Display Advertising. Daily Mail's response merely references Daily Mail's Complaint without fully addressing whether and how both kinds of Header Bidding identified in Daily Mail's response have impacted revenue or CPM from Display Advertising over time. Please provide a complete response to this Interrogatory.

- **Interrogatory No. 23** asks Daily Mail to identify all steps it has taken to "diversify [its] demand partners." Daily Mail's response provides a general definition of what it means to "diversify its demand partners," but it does nothing to identify the steps Daily Mail has actually taken to do so. For the reasons set forth above, Daily Mail's reference to its response to Interrogatory 17 similarly fails to identify any steps Daily Mail has taken to diversity its demand partners. Please provide a complete response to this Interrogatory.

Please confirm that Daily Mail will supplement each of these Interrogatories as indicated herein and that it will do so as part of the supplementation it has committed to provide before January 31, 2024.

* * * * *

To facilitate expeditious negotiations, we ask that Daily Mail provide the requested confirmation as to each of the questions above (or notify us if your understanding differs from the foregoing) as soon as possible, and in all events by January 3, 2024.

Yours,

/s/ Caroline Boisvert