**Discovery Steering Committee**
**In re Google Digital Advertising Antitrust Litigation**

March 16, 2024

<u>**Via ECF**</u>
Hon. P. Kevin Castel
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

*In re Google Digital Advertising Antitrust Litigation*
Case No. 1:21-md-03010 (PKC)

Dear Judge Castel:

    On behalf of MDL Plaintiffs, the Discovery Steering Committee writes in reply to Google's Letter Response to the Court of March 14, 2024. ECF 717 ("Letter Response"). No conference is scheduled at this time.

    Google's letter contains *no explanation or justification* for its late production last month of datasets "used by Google experts to support their opinions" which contained "***additional fields*** from the same internal source which created the May 30, 2023 and June 30, 2023 productions" of ad exchange-derived data. Letter from D. Pearl to W. Noss and Z. DeRose (February 15, 2024) (emphasis added). While Google has access to all data fields it might use to support its case—which its experts apparently were able to pick and choose from—it refuses to provide a complete list of available data fields to Plaintiffs. Tellingly, Google also did not respond to Plaintiffs' arguments that its prior data productions were "incomplete" and that it made a "selective production" of "only the data that it wants to utilize". ECF No. 710 at 4.

    Far from being an effort to "ramp up" discovery as Google suggests, Plaintiffs' Interrogatories seek to wind it down by permitting Plaintiffs simply to determine that we have received data fields and analyses relevant to our computations of damage without Google including or excluding data fields at its whim. Further, this information will inform whether Google has, once again, selectively withheld or destroyed relevant data. *See* ECF No. 710 at 5 (collecting cases in which Google has been sanctioned for withholding data or destroying documents). Plaintiffs have pursued these issues diligently over the past year and half only to be met by Google's delay and obduracy in the face of reasonable explanatory or confirmatory requests, thus necessitating Interrogatory Nos. 2-3 and our letter motion.

    As detailed below, Google's tardy supplementation of its "response" to Interrogatory No. 1 remains facially inadequate and its continued objections to Interrogatories Nos. 2 and 3 are unjustified, particularly in light of its late production of data used by Google's experts. Plaintiffs respectfully request that the Court order prompt, good-faith responses to these Interrogatories.

**Interrogatory No. 1**

A little over half an hour before filing its Letter Response, eight months after committing to supplement its response, and exactly a year after being served with Interrogatory No. 1, Google served Plaintiffs with its supplemental "response" to Interrogatory No. 1. This now marks the second time in just over a month that Google has acted to comply with its discovery obligations *only after* Plaintiffs were obliged to burden the Court with a motion to compel. *See* ECF 694 (denying MDL Plaintiffs' motion to compel DOC LINK metadata as "moot in light of Google's tardy production of hyperlink metadata"); ECF 687; ECF 690. That is not how discovery is supposed to work. Fed. R. Civ. P. 37(a)(5)(A) ("if the disclosure or requested discovery is provided after the motion was filed[, ]the court must . . . require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees"); *see, e.g.*, *RBS Holdings, Inc. v. Gordon & Ferguson, Inc.*, No. 06-cv-6404, 2007 WL 1610211, at *3 (S.D.N.Y. June 4, 2007) (ordering defendant, "as a sanction, to pay [plaintiff] the attorney's fees and costs it reasonably incurred, in making the motion to compel is appropriate" where defendant complied with interrogatories "after [plaintiff] made its motion to compel").

This time, however, Google's supplemental "response" still does not comply with its obligations. For one thing, it is not verified by any Google employee. *See* Fed. R. Civ. P. 33(b)(1)(B), (b)(5). Moreover, it consists merely of a highly general list of sources of data and documents that it *has already produced* and fails to "identify all dashboards, tables, and/or fields (including field descriptions) that are or were used in connection with [identified] database[s]." *See* Letter Response (chambers copy), Attachment A at 7-9. The utility of Plaintiffs' request is that an appropriate response will permit Plaintiffs properly to assess the scope and completeness of produced data and analysis materials, particularly as to information relevant to Plaintiffs' damages and impact analyses.

Google should be required to provide a substantive, verified response.[1]

**Interrogatories Nos. 2 & 3**

For over a year, Plaintiffs have sought basic inventories of Google's data sources (Interrogatory No. 2) and analysis tools (Interrogatory No. 3) to allow Plaintiffs to assess the

---

[1] Courts in this District have long imposed sanctions to deter such conduct. *See, e.g.*, *Velasquez v. Kiner's Corner LLC*, No. 18-cv-10969, 2022 WL 525640, at *5 (S.D.N.Y. Feb. 22, 2022) (awarding sanctions and ordering a "good faith response to Plaintiff's discovery demands" where defendant failed to provide meaningful responses to interrogatories and pursued "strategy" of delay); *cf. Brill v. Queens Lumber Co.*, No. 10-cv-1975, 2012 WL 441287, at *5 (E.D.N.Y. Feb. 10, 2012) (awarding attorney fee sanctions for improperly certified interrogatory responses). Plaintiffs did not seek sanctions in our opening letter motion to compel but are prepared to provide relevant, contemporaneous time records should the Court determine that sanctions are warranted under the circumstances.

Hon. P. Kevin Castel
March 16, 2024
Page 3 of 6

appropriateness of Google's data productions thus far.  Google makes three principal arguments in response: that it has already produced large quantities of data; that it would be unduly burdensome to produce a simple data inventory; and that the interrogatories do not comply with Local Rule 33.3.  Each of these arguments fail.

First, the volume of data produced is irrelevant to this inquiry.  Further, much of that data was merely a reproduction of data sought by the DOJ, meaning MDL Plaintiffs' requests generated little incremental burden.  A full inventory of available data fields is necessary to determine whether Google has withheld any relevant data fields.  While Google has provided a different set of information—namely, a set of field descriptions of data *already produced* (ECF No. 717 at 5)—that is also beside the point.  Plaintiffs require a *complete* inventory to determine, among other things, what has *not* been produced.[2]

Second, Google's burden argument falls flat.  Google claims it "does not have such an inventory ready at hand and that it would be impossible to create one before the close of fact discovery (if ever)."  ECF No. 717 at 2.  But Google conceded in June 2023 that it has a lookup tool for fields and field descriptions from its internal systems that can be used to generate a full data inventory, ECF No. 710 at 7—a concession that Google does not dispute in its response.  Further, Google's acknowledgment that it previously created an inventory of certain disclosed data fields, ECF No. 717 at 5, undermines its claim that it would be "impossible" to prepare another inventory.

An inventory and description of the analysis tools used by Google in the ordinary course, such as "dashboards," is designed to limit the burdens associated with analysis of the vast amounts of data that Google has retained in the ordinary course of business relating to its anticompetitive conduct in the ad tech industry.  Its datasets *are* large and complex, and Google managers and executives use dashboards and other analysis tools to evaluate precisely the kinds of business metrics that are relevant to Plaintiffs' claims, including regarding market dominance and the injuries caused by Google's exclusionary practices.  *See, e.g.*, Attachment A (a screenshot of a dashboard identified as "DRS Publisher-Impact Dashboard"; DRS refers to "Dynamic Revenue Share"); Attachment B at 1 (describing a dashboard containing a list of "impacted publishers" by Project Bell).[3]

---

[2] Google asserts there could be "hundreds of thousands (if not millions)" of responsive dashboard documents that have not yet been produced.  ECF No. 717 at 7.  This proves Plaintiffs' point.  Only a data inventory will allow Plaintiffs to assess whether any relevant dashboards or RASTA data have been withheld.  To the extent that creating a complete inventory is impossible, a Google witness with knowledge of dashboard and RASTA retention and storage should explain—in a verified interrogatory response—the full set of dashboards and RASTA data that Google retained in the ordinary course of business.

[3] Because Google has identified these materials as Confidential or Highly Confidential, Plaintiffs submit them in chambers, consistent with prior practice in this action.  *See* ECF 717 at 2; ECF 710 at 2; ECF 654 at 4 & n.3; ECF 660.

Hon. P. Kevin Castel
March 16, 2024
Page 4 of 6

      Google has made repeated corrections or supplemental productions to its produced datasets, sometimes forcing Plaintiffs to begin their analysis again. *E.g.*, Letter from D. Pearl to W. Noss and Z. DeRose (Feb. 15, 2024); Letter from D. Pearl to M. Mao, W. Noss, Z. DeRose, and T. Young (Nov. 28, 2023); Letter from D. Pearl to M. Mao, W. Noss, Z. DeRose, and T. Young (Nov. 22, 2023). The burden and expense of this kind of raw data analysis could be mitigated by Google making available to Plaintiffs the analysis tools it uses in the ordinary course of business to analyze these complex data sets. But it has consistently refused to do so. In any event, the current question is merely whether Google should identify such tools.

      Third and finally, Google's Local Rule 33.3 objections are meritless. The Interrogatories plainly seek information regarding the "existence, custodian, location and general description of relevant documents, . . . , and other physical evidence, *or information of a similar nature*." L. Civ. R. 33.3(a) (emphasis added); *see* ECF 710 at 6. And Local Civil Rule 26.3(c)(2) and Federal Rule 34 broadly define "documents" to include data and other electronically stored information. The information requested is, like the other categories of information enumerated in the Rule, designed to ascertain where and how relevant information is stored by the receiving party. Thus, Local Rule 33.3(a) covers inquiries about the architecture and general contents, including available fields, of Google's data systems and descriptions of the analysis tools that Google uses in the ordinary course of business that contain or generate outputs of relevant data.[4]

      Moreover, even if the Interrogatories fell exclusively under Local Rule 33.3(b), Google's representations that other discovery tools are more efficient for obtaining this information lack coherence and credibility. As Google admits, it refused to provide this information in response to RFP 239, which requested "Documents sufficient to show what data You store concerning each of your Ad Tech Products". ECF No. 717 at 3. And properly propounded RFPs have been no impediment to Google withholding relevant data until it determines that it wants to use it in its own expert work. *See* Letter from D. Pearl to W. Noss and Z. DeRose (February 15, 2024) (noting production of "additional fields" in an internal data source that were used by Google's experts). Similarly, depositions are not an efficient method of collecting information about available fields and field descriptions as demonstrated by Google's conduct in this and related litigation. For instance, on March 11, 2024, attorneys for the State of Texas deposed, pursuant to an order from the Special Master in that action, a Google 30(b)(6) witness regarding Google's dashboards. Plaintiffs do not presently have access to that deposition transcript (despite two properly propounded RFPs for transcripts in the Texas Action) but understand, from Texas counsel, that Google's 30(b)(6) designee had done virtually no investigation of dashboards facially relevant to the litigation. As a result, Texas has been forced to seek an evidentiary hearing for Google to provide appropriate testimony before the Special Master.

---

[4] By contrast, at the outset of the case, Google served as many as 30 interrogatories on named plaintiffs—five more than permitted under Pre-Trial Order No. 5 and Federal Rule of Civil Procedure 33. *See* ECF 394 at 2 ¶ 6.2 ("defendants may serve one set of interrogatories not to exceed 25 questions on each named plaintiff, including named class representatives"); Fed. R. Civ. P. 33(a)(1) ("a party may serve on any other party no more than 25 written interrogatories").

   Written responses are thus the best way that MDL Plaintiffs can efficiently obtain the information they require to determine whether Google has produced data and data analysis tools relevant to the MDL Plaintiffs' claims and damage calculations.  *See* ECF No. 710 at 6 (collecting cases where courts have held interrogatories are most efficient method for identification of records).

*  *  *

   Given the foregoing, Plaintiffs respectfully ask that the Court order Google to supplement further its response to Interrogatory No. 1 within ten days, provide written answers to Interrogatory Nos. 2 and 3 within ten days, and award attorneys' fees and costs to the extent warranted.  Plaintiffs respectfully request prompt answers because each interrogatory response will inform what additional, targeted discovery, if any, may be necessary prior to the approaching end of fact discovery.  In the alternative, MDL Plaintiffs respectfully request that the Court hold a conference to discuss these issues so that they can be resolved promptly.

                 Respectfully submitted,

                 */s/ Philip C. Korologos*
                 Philip C. Korologos
                 **BOIES SCHILLER FLEXNER LLP**
                 55 Hudson Yards
                 New York, NY 10001
                 Telephone: 212-446-2390
                 pkorologos@bsfllp.com

                 */s/ Jordan Elias*
                 Jordan Elias
                 **GIRARD SHARP LLP**
                 601 California Street, Suite 1400
                 San Francisco, CA 94108
                 Telephone: 415.981.4800
                 jelias@girardsharp.com

                 */s/ Serina M. Vash*
                 Serina M. Vash
                 **HERMAN JONES LLP**
                 153 Central Avenue #131
                 Westfield, New Jersey 07090
                 Telephone: 404-504-6516
                 svash@hermanjones.com

Hon. P. Kevin Castel
March 16, 2024
Page 6 of 6

*MDL Plaintiffs' Discovery Steering Committee*

Attachments.

Copies to:   All Counsel of Record (via CM/ECF)