

601 California Street, Suite 1400     2600 West Olive Avenue, Suite 500
San Francisco, CA 94108     Burbank, CA 91505
(415) 981-4800     (310) 474-9111

March 21, 2024

Hon. P. Kevin Castel
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

    Re:    *In re Google Digital Advertising Antitrust Litig.*, No. 1:21-md-3010 (PKC)

Dear Judge Castel:

    Pursuant to Paragraph 3(A) of Your Honor's Individual Practices in Civil Cases, the Advertiser Class Plaintiffs respond to Google's pre-motion letter of March 15, 2024 (Doc. 720). There is no conference currently scheduled.

    Advertisers expect to stipulate to dismissal of their antitrust claims under California law that parallel Sherman Act claims dismissed by the Court. *See* Consolidated Advertiser Class Action Complaint ("CAC"), Doc. 399, Counts IV, VI. Advertisers' remaining state-law claim of unfair competition has merit and should proceed. *Id*., Count VII.

    The Unfair Competition Law grants the court wide-ranging authority to issue restitution based on any unfair business practice. Cal. Bus. & Prof. Code §§ 17200, 17203; *Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal. 4th 163, 180 (2000) ("The court's discretion is very broad."). Unfair conduct that violates the UCL is not limited to antitrust violations or fraud, and "[w]hen a scheme . . . on its face violates the fundamental rules of honesty and fair dealing, a court of equity is not impotent to frustrate its consummation because the scheme is an original one." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 181, 187 (1999); *see also Zhang v. Superior Ct.*, 57 Cal. 4th 364, 370 (2013) ("Unfair and fraudulent practices are alternate grounds for relief."). In determining whether conduct is "unfair," the court typically asks if it is unscrupulous, unethical, oppressive, or substantially injurious; whether it has any legitimate justification; and whether it caused harm to consumers that exceeded any benefits. *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006).

    Advertisers' factual allegations show that Google meticulously deployed just the sort of dishonest scheme the UCL prohibits. As summed up by this Court, Advertisers allege Google "coercively channel[ed] advertising transactions to AdX instead of rival exchanges, thus giving Google an unfair competitive advantage in the ad-exchange market." *In re Google Digital*

Hon. P. Kevin Castel
March 21, 2024
Page 2

*Advert. Antitrust Litig.*, — F. Supp. 3d —, 2024 WL 895155, at *7 (S.D.N.Y. Mar. 1, 2024). With advertisers increasingly dependent on AdX, Google fleeced them by manipulating hidden auction dynamics (e.g., Reserve Price Optimization ("RPO"); Project Bernanke) and its own revenue share (e.g., Dynamic Revenue Sharing ("DRS")). RPO used advertisers' bids against them to increase publishers' price floors, "resulting in unwitting overpayments by advertisers." *In re Google Digital Advert. Antitrust Litig.*, 627 F. Supp. 3d 346, 393 (S.D.N.Y. 2022). Bernanke secretly inflated ad prices and pocketed the extra take, driving even more bids to AdX. CAC ¶¶ 218-19. DRS caused AdX to win based on concealed pricing manipulations that "caused advertisers to pay artificially inflated fees to increase AdX's take rate." *In re Google Digital Advert. Antitrust Litig.*, 2024 WL 895155, at *7. Advertisers accordingly place RPO, Bernanke, and DRS among the unfair and deceptive practices that caused Advertisers to lose money. CAC ¶¶ 402-03.

Google's letter offers scattered arguments and ignores that "[w]hether a practice is . . . unfair is generally a question of fact which requires consideration and weighing of evidence from both sides[.]" *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008) (quotation marks and citations omitted). As Judge Spatt pointed out, the UCL's balancing test for unfair conduct "is fact intensive and is *not conducive to resolution* at the motion to dismiss stage." *In re HSBC Bank, USA, N.A. Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 56 (E.D.N.Y. 2014) (emphasis added) (alteration and citation omitted), *reconsidered on other grounds*, 14 F. Supp. 3d 99 (E.D.N.Y. 2014).

Contrary to Google's argument, Advertisers' claims under California law are not coterminous with their federal claims for monopolization. The UCL's "coverage is sweeping," *Cel-Tech*, 20 Cal. 4th at 180, such that "a business practice may be 'unfair,' and therefore illegal under the UCL, 'even if not specifically proscribed by some other law.'" *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 1001 (9th Cir. 2023) (quoting *Cel-Tech*, 20 Cal. 4th at 180). As such, rulings dismissing Sherman Act claims—whether on standing or substantive grounds—do not dictate the viability of Plaintiffs' UCL claims. Google's argument would "collaps[e] the 'unfair' and 'unlawful' prongs into each other" and is "foreclosed by California law." *Epic Games*, 67 F.4th at 1001 (distinguishing *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363 (2001), which addressed conduct categorically *permitted* by antitrust law). Even under Google's mistaken logic, Advertisers' UCL claims would proceed to the extent they arise out of Bernanke, DRS, and other elements of Google's scheme that the Court found plausibly anticompetitive.

Google next contends that Advertisers have not alleged its UCL liability with sufficient particularity. Ironically, Google does not specify which allegations it has in mind. Moreover, a heightened pleading standard does not apply to UCL claims that, rather than sounding in fraud, involve unscrupulous practices harmful to consumers of the defendant's products. *See E.H. v. Meta Platforms, Inc.*, 2024 WL 557728, at *3 (N.D. Cal. Feb. 12, 2024); *see also In re Tobacco II*, 46 Cal. 4th 298, 326 n.17 (2009) (finding "doubtless many types of unfair business practices in which the concept of reliance . . . has no application."). Nor must Advertisers allege "actual falsity" of certain statements. In the securities case cited by Google, the press releases at issue reflected "puffery and corporate optimism." *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004). In contrast, Advertisers sue over a unified course of unfair and injurious conduct.

Hon. P. Kevin Castel
March 21, 2024
Page 3

      Google further asserts that it made one or more statements (which remain unspecified) before the limitation period. But the Advertisers allege that Google engaged in continuing violations (CAC ¶¶ 321-23) and that they could not have reasonably discovered their causes of action (*id*. ¶¶ 324-38). Plaintiffs' tolling allegations present fact questions inappropriate for resolution at this stage. *See Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2023 WL 4159358, at *13 (S.D.N.Y. June 2, 2023); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1024 (N.D. Cal. 2010).

      Google's suggestion that the Advertisers cannot recover under the UCL also is wrong. Section 17203 permits a plaintiff to seek restitution as well as injunctive relief. Google's own case recognizes that a court of equity may enter an order "compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken[.]" *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). Google also cannot avoid injunctive relief under the UCL simply because Advertisers may be able to prove damages for its Sherman Act violations. *See Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021) (declining to dismiss injunctive relief request, as "California's consumer protection laws permit courts to issue injunctions that serve different purposes and remedy different harms than retrospective monetary damages"); CAC ¶ 404 (alleging lack of adequate remedy at law). Advertisers need not elect remedies at this juncture. *Prudential Oil Corp. v. Phillips Petroleum Co.*, 418 F. Supp. 254 (S.D.N.Y. 1975).

      As to Plaintiff Michael Stellman's separate complaint, he will stipulate to withdrawal of his claims under non-California state laws (Counts III and IV). His Counts I, II, and V state viable claims for relief under California law. For the reasons described above relating to Count VII of the CAC, the Court's dismissal of RPO as a basis for antitrust liability does not foreclose Mr. Stellman's separate UCL claims (Count I). Likewise, his allegations satisfy the UCL's pleading standard and are timely.

      Mr. Stellman's Count II asserts fraud by omission and sets forth the "who, what, when, where, and how" of Google's concealment, giving it "notice of the particular misconduct . . . so that they can defend . . . and not just deny that they have done anything wrong." *In re Lui*, 646 F. App'x 571, 573 (9th Cir. 2016); *see* Stellman Comp't ¶¶ 65-86. In addition, because Mr. Stellman alleges fraud by omission, the "Rule 9(b) standard is relaxed because a plaintiff cannot plead either the specific time of an omission or the place, as he is not alleging an act, but a failure to act." *Rivington Partners, LLC v. Rovens*, 2021 WL 8268051, at *4 (N.D. Cal. Dec. 10, 2021) (citation and alteration omitted)

      Mr. Stellman also states an unjust enrichment claim. "Under California law, the elements of unjust enrichment are: (1) receipt of a benefit; and (2) unjust retention of the benefit at the expense of another." *ChromaDex, Inc. v. Elysium Health, Inc.*, 2017 WL 7080237, at *4 (C.D. Cal. Nov. 28, 2017) (citation omitted). Mr. Stellman alleges Google retained the overcharges he paid for advertising services as a result of Google's wrongful implementation of RPO and that it would be inequitable for Google to retain those benefits. Stellman Comp't ¶¶ 150-53. No more is required at this stage. *See, e.g.*, *Jackson v. Fandom, Inc.*, 2023 WL 4670285, at *5 (N.D. Cal. July 20, 2023).

Hon. P. Kevin Castel
March 21, 2024
Page 4

We thank the Court for its continued work on this matter.

Respectfully,

/s/ *Dena C. Sharp*                       /s/ *Tina Wolfson*
Dena C. Sharp                              Tina Wolfson
GIRARD SHARP LLP                           AHDOOT & WOLFSON, P.C.