**Discovery Steering Committee**
**In re Google Digital Advertising Antitrust Litigation**

April 19, 2024

**Via ECF**

Hon. P. Kevin Castel
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

*In re Google Digital Advertising Antitrust Litigation*
Case No. 1:21-md-03010 (PKC)

Dear Judge Castel:

On behalf of MDL Plaintiffs, the Discovery Steering Committee writes pursuant to Pre-Trial Order No. 5 ("PTO-5"), ECF 394 ¶ 6.5, to respectfully seek leave from the Court to take 12 additional depositions beyond the 15 depositions previously permitted by PTO-5. Plaintiffs propose to take these depositions prior to the scheduled close of fact discovery on June 28, 2024. Plaintiffs requested Google's position regarding a potential extension of deposition limits on Friday, April 12, 2024, during the parties' regular meet-and-confer, and Google has not provided a response. A proposed order accompanies this letter motion as **Exhibit A**. No conference is scheduled at this time.

Pre-Trial Order No. 5 provides that the parties "shall be permitted to take up to 15 fact-witness depositions per side" and that "[a] party may seek leave of Court to depose additional witnesses by identifying the particular witnesses by name (or Rule 30(b)(6) categories), describing the matters on which they have unique knowledge; and identifying the actions to which the particular witness pertains." ECF 394 ¶ 6.5. Plaintiffs have deposed or noticed 10 fact witnesses and also intend to issue a 30(b)(6) notice, which will bring the number of fact-witness depositions used by Plaintiffs to 11. Plaintiffs do not seek an extension of the fact discovery cutoff to accomplish these depositions. Plaintiffs seek leave now to notice the below-identified depositions, before noticing the remaining unallocated four fact-witness depositions, so as to ascertain the final number of depositions before allocating the remaining notices.

It bears emphasizing that Plaintiffs could readily benefit from an additional 25 or more depositions—roughly on par with the number of depositions permitted by Judge Jordan in the Eastern District of Texas for *Texas v. Google LLC*, No. 20-cv-00957, (E.D. Tex. Jan. 2, 2024) ECF 194 at 4 (40 fact witness depositions per side) and the number permitted by Judge Brinkema in the Eastern District of Virginia for *United States v. Google LLC*, No. 23-cv-0108 (E.D. Va. Mar. 31, 2023) ("Texas Action"), ECF 94 ¶ 7 (30 fact witness depositions, including nonparties, per side), as well as with deposition limits in similarly complex single-firm monopolization cases. *See infra* at 9. Further, Plaintiffs have theories of liability and theories of damages that,

Hon. P. Kevin Castel
April 19, 2024
Page 2 of 11

while similar in many ways, vary in certain important respects from those of the DOJ, the State Plaintiffs, and each other. Plaintiffs nonetheless must prove their different cases with fewer depositions. Plaintiffs across the cases currently believe we can reasonably complete fact-witness depositions through the addition of 12 fact witness depositions only, for a total of 27 fact witness depositions, subject to potential additional witnesses as needed (and to be requested separately) by Inform upon review of Google's distinct documents to be produced to Inform.

**Proposed Remaining Witnesses with Unique Knowledge**

Consistent with PTO-5, Plaintiffs identify below the 16 fact witnesses that Plaintiffs would depose using the remaining four depositions already permitted under PTO-5 and the 12 additional depositions requested through this motion. To protect the privacy of potential witnesses, **Attachment A** to a chambers copy listed of the names of the witnesses corresponding to the "Witness No." described below.[1] In Attachment A and below, any witness marked with an asterisk (*) appears on Google's initial disclosures in any MDL action.

Witness No. 1 – *All Actions*
Witness No. 1 has unique and uniquely extensive knowledge of management-level decisions regarding Google Display Network, including how its bidding strategies interacted with Google's publisher-facing products, AdSense and AdX. *See, e.g.*, GOOG-DOJ-15070526. Witness No. 1 worked in product management in the Google Display Network from 2008 through 2017, eventually attaining the title of Senior Director of Product Management. Witness No. 1 had broad responsibilities over the Google Display Network's bidding strategies as well as how they interacted with Google's publisher-facing products, AdSense and AdX. GOOG-AT-MDL-016136644. Witness No. 1 was responsible for attracting advertisers to the Google Display Network and thus has a unique understanding of its intended customer segmentation and related marketing strategies. *Id.*; *see also* GOOG-DOJ-14302623. Witness No. 1 had decision-making authority over how the Google Display Network bid on inventory available on AdSense and AdX, including leadership roles in programs like Bernanke and Dynamic Revenue Sharing. *See, e.g.*, GOOG-DOJ-15719987; GOOG-AT-MDL-004229866. In addition, Witness No. 1 represented the Google Display Network in larger organizational discussions about the take rates that Google charged for both advertiser- and publisher-facing products (*see, e.g.*, GOOG-DOJ-15733220), as well as how to discourage publishers from selling inventory through third-party ad exchanges by leveraging the exclusive availability of the Google Display Network to AdSense and AdX.

Witness No. 2* – *All Actions*
Witness No. 2 has unique knowledge of Google's strategic decision-making related to its publisher ad server and ad exchange, and of Google's defenses in this action. Witness No. 2 was a Director and later Vice President of Product Management for 15 years with primary responsibility for AdX. *See* GOOG-AT-MDL-014602929; GOOG-TEX-00069680. Additionally, prior to his time at Google, Witness No. 2 was the Vice President of Product

---

[1] Plaintiffs make this chambers submission in conformity with past practice in this litigation. *See* ECF 717 at 2; ECF 710 at 2; ECF 654 at 4 & n.3; ECF 660.

Hon. P. Kevin Castel
April 19, 2024
Page 3 of 11

Management at DoubleClick, from which Google acquired AdX and DFP. Witness No. 2 thus played a uniquely important role in the strategy and growth of AdX over many years. Witness No. 2's experience with DoubleClick is particularly important because Google defends certain anticompetitive aspects of AdX by claiming they predated the DoubleClick acquisition. *See* GOOG-AT-MDL-009005324 at -35, -40. Witness No. 2 is uniquely positioned to testify on such topics. Finally, in more recent years, Witness No. 2 served as a Google leader on privacy, spam, and brand safety. *See* GOOG-AT-MDL-008709999. Privacy and security rationales are likely to be key "procompetitive" defenses Google raises in this litigation. *See* Google Answers, MDL ECF 737 at 50; 738 at 46; 739 at 81; 740 at 67; 741 at 69; 742 at 78. Witness No. 2 is thus uniquely positioned to testify on Google's defenses.

Witness No. 3 – *All Actions*

Witness No. 3 has unique and extensive knowledge of Google's commercialization and go-to-market strategy for AdX and related products as Google cemented its market power in various relevant markets over the relevant period. Witness No. 3 has served in a variety of strategy roles covering Google's ad-tech products since 2011, including Principal, Corporate Strategy, Head of Global Strategy and Commercialization for Ad Manager and Authorized Buyers, Head of Global Strategy and Commercialization for Programmatic Indirect and Ad Serving, and Global Display Publisher Sales Lead. Indeed, Witness No. 3 was regarded by his colleagues as a "go-to expert" on every difficult issue. GOOG-AT-MDL-015661000 at -05. Witness No. 3 has knowledge of a number of the anticompetitive acts that Plaintiffs and authored communications and strategy documents related to those acts, including the unification of Google's Ad Exchange (AdX) and Ad Server (DFP) (*e.g.*, GOOG-DOJ-03068924), enhanced dynamic allocation (*e.g.*, GOOG-DOJ-06885161), and dynamic revenue share (*e.g.*, GOOG-DOJ-15130321). Witness No. 3 also played key roles in coordinating Google's responses to header bidding. *See, e.g.*, GOOG-DOJ-28420330. And Witness No. 3 also has unique knowledge of Google's pricing strategies for its ad tech products, based on his involvement with formulating and analyzing those strategies. *See, e.g.*, GOOG-AT-MDL-007337529.

Witness No. 4 – *All Actions*

Witness No. 4, having worked at Google on its ad exchange and another major ad-tech provider with header bidding products, has unique knowledge of the market dynamics relating to header bidding in the wider market. Witness No. 4 was the Group Product Manager at Google responsible for AdX, Google's real-time Ad Exchange.[2] Witness No. 4 also led Google Ad Manager and Open Bidding (GOOG-DOJ-AT-01621647), which was one of Google's responses to Header Bidding. Notably, Witness No. 4 was credited as an inventor of header bidding (GOOG-DOJ-13466638) which Google labeled an "existential threat" in a document Witness No. 4 co-authored, GOOG-TEX-00097138. Further, Witness No. 4 played a key role in Google's decision to impose Unified Pricing Rules on publishers, including in presenting purported pro-competitive justifications to publishers and competing Ad Exchanges. *See, e.g.*, GOOG-ADTCH-00422412; GOOG-DOJ-13495808. As an inventor of Header Bidding, Witness

---

[2] Google Ad Manager is the bundled product consisting of Google's Ad Server and Ad Exchange that Google coerced publishers to use in order to continue using either product. *See, e.g.*, ECF 408 at ¶ 226.

Hon. P. Kevin Castel
April 19, 2024
Page 4 of 11

No. 4 is uniquely positioned to testify to the benefits of Header Bidding and Google's assessment that this technology represented an existential threat.  Witness No. 4 is no longer a Google employee and is employed by another firm in the ad-tech market.

Witness No. 5 – *All Actions*

Witness No. 5 has unique knowledge of Google's strategic decision-making and market power in the exchange and ad-buying tools markets.  Witness No. 5 worked for Google for 15 years, first as Director of Product Management and then as Vice President of Products for News, Video Ads, and Search.  Witness No. 5 came to Google through the DoubleClick acquisition (*see* GOOG-AT-MDL-003600711; GOOG-DOJ-03864504).  Witness No. 5 oversaw the Google Display Network (*see* GOOG-DOJ-AT-01427853; GOOG-AT-MDL-006052844), which is Google's primary source of advertising demand and a major contributor to AdX's market power.  Witness No. 5 later extended Google's control into video advertising (*see* GOOG-DOJ-02858797) and designed strategies to consolidate advertiser demand across Google's buyside platforms.  *See* GOOG-AT-MDL-012601840; GOOG-DOJ-03240266.  Witness No. 5 also worked on the news side, holding conversations with publishers about their monetization and advertising traffic concerns.  *See* GOOG-AT-MDL-006052844.

Witness No. 6* – *All Actions*

Witness No. 6 has unique knowledge of Google's product development for DFP and AdX and Google's defenses in communications with antitrust enforcers.  Witness No. 6 is the Director of Product Management and a long-time Google Product Manager.  In that role, Witness No. 6 had primary responsibility for directing Google's sell-side/buy-side strategy – *i.e.*, its strategy for capitalizing on its conflict of interest between buyers and sellers.  *See* GOOG-DOJ-AT-01914586; GOOG-DOJ-14545036.  For example, Witness No. 6 spearheaded Google's efforts to defeat the competitive threat from header bidding.  *See* GOOG-DOJ-06881716.  Witness No. 6 also directed Google's responses to antitrust investigations from Australian antitrust regulators, European Commission, and French Authorities.  *See* GOOG-AT-MDL-006217592; GOOG-AT-MDL-010525710; GOOG-AT-MDL-013246659.  Witness No. 6 is uniquely knowledgeable about the strategies motivating Google's anticompetitive conduct, and Google's defenses including as they have been relayed to antitrust enforcers.

Witness No. 7 – *Advertiser Actions*,[3] *Publisher Class Action*,[4] *Daily Mail Action*,[5] *Gannett Action*[6]

Witness No. 7 has unique knowledge of Reserve Price Optimization ("RPO"), which is one of the business practices at issue in the Advertisers' state-law claim of unfair competition.  Witness No. 7 developed the concept of RPO and led the RPO implementation team.  Internal

---

[3] *In re Google Digital Advertising Antitrust Litigation*, No. 21-cv-07001 (PKC); *Singh v. Google LLC, et al.*, No. 23-cv-03651 (PKC); *Stellman v. Google LLC, et al.*, No. 23-cv-01532 (PKC).

[4] *In re Google Digital Publisher Antitrust Litigation*, No. 21-cv-7034 (PKC).

[5] *Associated Newspapers Ltd., et al. v. Google LLC, et al.*, No. 21-cv-03446 (PKC).

[6] *Gannett Co. Inc. v. Google LLC, et al.*, No. 1:23-cv-05177 (PKC).

documents refer to Witness No. 7 as RPO's engineer (*see*, *e.g.*, GOOG-ADTCH-00325582) and "TL" (team lead). *See*, *e.g.*, GOOG-ADTCH-00025380. Additionally, Witness No. 7 consulted heavily on numerous other auction optimization schemes, including Dynamic Revenue Share and Dynamic Allocation, which feature heavily in the MDL and in Daily Mail's and Gannett's complaints, in particular. Witness No. 7 "implemented a lot of the auction" and was a "consultant on most optimization ideas." *See*, *e.g.*, GOOG-DOJ-13463806 at -812. Thus, Witness No. 7 has unique knowledge related to the Advertiser and other MDL actions.

Witness No. 8 – *Daily Mail Action*, *Gannett Action*, *Publisher Class Action*, *Inform Action*[7]

Witness No. 8 has unique knowledge of Google's misrepresentations to publishers and Google's strategies for addressing publisher complaints. Witness No. 8 is Google's Partnership Lead for News & Publishing Partnerships. For years, Witness No. 8 has managed Google's relationships with the U.S.'s leading publishers, including Daily Mail, Gannett, and others. For example, Witness No. 8 has spearheaded Google's messaging with top publishers (*see*, *e.g.*, GOOG-AT-MDL-011496871), and dictated Google's strategy for negotiating GAM agreements. *See*, *e.g.*, GOOG-AT-MDL-003173329. Internally, Witness No. 8 also has developed Google's strategies for responding to publishers' complaints (*see*, *e.g.*, GOOG-AT-MDL-B-002816869; GOOG-DOJ-14663362), including by making affirmative misstatements. *See*, *e.g.*, DM_GOOG_00029862. Witness No. 8 has unique knowledge and Plaintiffs have not deposed any other witness with the same unique news publisher-facing experience.

Witness No. 9* – *Advertiser Actions*

Witness No. 9 is Vice President of Global Ads at Google, where he has been since 2006. Google identified him in its initial disclosures as a witness whose testimony Google may use to support its defenses in these actions and who has knowledge regarding Google Ads and DV360. Witness No. 9 has had direct contact with advertisers and is expected to be familiar with advertiser buying strategies, what representations Google employees made to advertisers, and the nature and resolution of advertiser complaints, among other matters. Witness No. 9 has discussed issues relating to, and is expected to provide relevant testimony concerning, Google's market share and competition strategies in the relevant markets. *See, e.g.*, GOOG-AT-MDL-001390123; GOOG-ADTCH-00313243. Prior testimony from Witness No. 9 in the DOJ's investigation preceding the EDVA action demonstrates that he has relevant knowledge concerning Google's buy-side pricing structures, which could be critical to Advertiser Plaintiffs' claims and damages issues. Witness No. 9 also has knowledge regarding dynamic revenue share, and Google's practices of manipulating auction mechanisms in the backend. *See, e.g.*, GOOG-DOJ-11885541; GOOG-ADTCH-00242011. In these ways, among others, Witness No. 9 has unique knowledge related to the Advertiser (and other MDL) actions.

Witness No. 10 – *Advertiser Actions*

Witness No. 10 was the marketing lead for a host of important Google ad-tech product launches, including RPO and Dynamic Allocation. He also served as the Product Marketing Manager for numerous programs or products, including DoubleClick for Publishers, DoubleClick Ad Exchange, DoubleClick Bid Manager, Ad Fraud prevention, Better Ads

---

[7] *Inform Inc. v. Google LLC et al.*, No. 23-cv-01530 (PKC).

Ecosystem, Google Ad Manager, and Authorized Buyers. In various such roles, Witness No. 10 had primary responsibility for developing customer-facing FAQs, blog posts, and communication documents, for which he routinely sought input from top Google executives. In addition to these unique matters, Witness No. 10 has unique knowledge of how Google's customer-facing messaging was developed for products that affected all players within the ad-tech stack, including based on Witness No. 10's role in setting the agenda and messaging relating to committee meetings of the DoubleClick Leadership Summit Steering. *See*, *e.g.*, GOOG-AT-MDL-014626669.

Witness No. 11* – *Gannett Action*

Witness No. 11 is Google's Director of Global Partnerships and was Gannett's account lead at Google for several years. In Google's initial disclosures, Witness No. 11 is the only identified witness with knowledge of Google's "[r]elationship with Gannett." Google also plans to use Witness No. 11 "to support its defenses in this action." Among other roles, Witness No. 11 negotiated ad-tech contracts with Gannett, responded to complaints, and made representations to Gannett regarding Google's products and services. That is why, on November 2, 2023, the Court recognized that Witness No. 10 was an important Google witness in Gannett's case and ordered Google to produce her custodial documents. Because Google delayed five months in making that production and produced *almost all* of Witness No. 11's documents the week of April 1, 2024, Gannett has not yet completed its review of Witness No. 10's documents. Nonetheless, even a partial review indicates that Witness No. 11 has been a key player in the Google-Gannett relationship. *See*, *e.g.*, GANNETT-GOOG-0009414 (running contract negotiations); GOOG-AT-MDL-002125059 (developing joint business plan with Gannett); GOOG-AT-MDL-002125059 (discussing error in Google code that cost Gannett millions of dollars).

Witness No. 12* – *Daily Mail Action*

Witness No. 12 is a Strategic Partner Lead for News and was Daily Mail's account lead at Google for several years. The Court recognized Witness No. 12 was an important Google witness in Daily Mail's case and ordered Google to produce her documents. Google did not produce the vast majority of Witness No. 12's custodial documents until the week of April 1, 2024. Daily Mail has thus only just begun its review of Witness No. 12's documents. Nonetheless, it is clear that Witness No. 12 made misrepresentations regarding Google's services (*see*, *e.g.*, DM_GOOG_0032241 (regarding unified first price auction)), was the point person on Daily Mail's contract negotiations (*see*, *e.g.*, GOOG-AT-MDL-006220741), orchestrated executive "summits" with Daily Mail (*see*, *e.g.*, GOOG-AT-MDL-B-004968832), and internally criticized Daily Mail's content (*see*, *e.g.*, GOOG-AT-MDL-B-000866462). Witness No. 12 was thus a mouthpiece for Google's misrepresentations and a potential spokesperson for Google's defenses.

Witness No. 13 – *Inform Action*

Witness No. 13 was the Head of Publishing Channel Partnerships, who has managed Google's relationships with the U.S.'s leading publishers, including Inform/NDN, Daily Mail, Gannett, and others. Witness No. 13 had numerous meetings—both formal and informal—with publishers both on the programmatic and the direct sale sides (including Inform/NDN

Hon. P. Kevin Castel
April 19, 2024
Page 7 of 11

employees) in an effort to garner business and more direct ad inventory, publisher contacts and client data, including as respects Plaintiff Inform. Witness No. 13 has unique knowledge concerning negotiated ad-tech contracts with publishers and as a DFP contact for many prominent publishers, including Inform, responsible for discussing and conveying information concerning DFP and AdX to Inform, negotiating ad-tech contracts, responding to concerns and complaints, and making representations to publishers and Inform/NDN regarding Google's products and services. Google has yet to produce any of this witness' documents from Inform's search terms. Inform has thus not yet received, and in turn has not yet begun, to review Witness No. 13's most important documents.

Witness No. 14 – *Inform Action* – YouTube Witness[8]
 This Witness will speak to the unique issues and unique knowledge concerning online video advertising, YouTube, the tying of YouTube with the Google services, and the preferential treatment received by YouTube in the online video advertising market. The Witness has intimate knowledge of the online video advertising market, YouTube's competition with Inform and other OLV platforms in the market. Once their documents are produced and/or for prior custodians completed, Inform will be seeking to depose one or more of them.

Witness No. 15 - *Inform Action* - Strategic Partner Leads/Ad Tech Partner Lead Witness
 These Witnesses were Strategic Partner Leads or Tech Ad Partner Lead for Inform/NDN, each of whom acted as one of Inform's account leads at Google for several years. The Court recognized these witnesses as important Google witness in Inform's case and was prepared to order Google to produce their documents. Google has since agreed to produce their documents, but has not yet done so. These witnesses worked with Inform/NDN on a daily basis, responded to complaints, and made representations to Inform/NDN regarding Google's products and

---

[8] As respects Inform, Google has agreed to produce the documents of 10 additional custodians and also to search for Inform-specific documents on the previously agreed upon custodians. However, Google has neither provided documents pursuant to Inform's November 8, 2023, supplemental document requests nor has Google produced documents from any of the Inform-specific custodians for previously agreed upon search terms. On April 17, 2024, Plaintiff Inform Inc. moved to compel production of these additional custodial documents. *See* ECF 751 at 4 n.8 ("Without any case-specific documents, Inform has been seriously hampered in the effort to identify the most important deponents and prepare for upcoming depositions with the other MDL Plaintiffs."). As a result, Inform has listed its anticipated witnesses. Additionally, Inform is uniquely situated as both a customer of Google and competitor to Google and YouTube (for advertising and content creation), pleading claims in the online video advertising market, working with Google on both programmatic and direct ads sales, servicing clients on the buy side and the sell side, and managing engineering and technical delivery as respects DFP and Inform's own fleet of ad technology and video players. Pending the production of these documents and needs of the case, Inform also reserves all rights to seek a 30(b)(6) deposition of YouTube, which remains as a defendant *only* in the Inform Action, related to, *inter alia*, the online video advertising market, direct ad sales, flash to HTML5 conversion, and the function and/or blocking off video players in the market, and Google.

Hon. P. Kevin Castel
April 19, 2024
Page 8 of 11

services.  Each of these witnesses made materially false statements to Inform concerning, *inter alia*, dynamic allocation, enhanced dynamic allocation, DFP functionality and the AdX auction, mercurial statement concerning video advertising policies and standards, and ad delivery issues.  Each of these witnesses was also instrumental in cultivating the Inform/Google relationship.  Once their documents are produced, Inform seeking to depose one or more of them.

<u>Witness No. 16</u> – *Inform Action* – Senior/Technical Account Managers and Engineer Witness –
These Witnesses were all Technical Account Managers and Engineers responsible for working with Inform/NDN as respects its online video players, assisting in integrating DFP's software development kit into Inform's video players and troubleshooting ad delivery issues.  Each of them made materially false statements to Inform concerning the functionality of Google's products including DFP and AdX, Google algorithms and ad delivery issues, and Inform's video players.  The Court recognized these witnesses as important Google witness in Inform's case and was prepared to order Google to produce their documents.  Google has agreed to these custodians but still has not provided their documents.  Once their documents are produced, Inform will be seeking to depose one or more of them.

**The Requested Depositions Are Proportional to the Needs of the Case**

Leave to take 12 additional fact witness depositions is appropriate based on the above-described witnesses' unique knowledge of issues relevant to Plaintiffs' claims or Google's defenses.  The requested additional depositions are proportional to the needs of the case and consistent with—indeed fairly limited in relation to—the limits on depositions in other antitrust actions of similar size and complexity. *See infra* 9-10.  There are multiple class cases in this MDL as well as individual actions on behalf of publishers and a competitor to Google.  Plaintiffs in the various actions in this MDL allege monopolization of not one but at least four markets or submarkets in the digital advertising market through no fewer than a dozen anticompetitive practices or acts.  *See generally* ECF 399, ECF 400, ECF 408, ECF 535; No. 23-cv-5177, ECF 1.

Google identified **28** Google employees or former employees in its initial disclosures in the MDL, and Plaintiffs have learned from counsel for Texas that Google, in supplemental disclosures in the EDTX action, recently identified several witnesses in addition to the original 28.  *See* Google LLC's Initial Disclosures at 2-4 (Jan. 13, 2023).  Plaintiffs expect Google to call many of these witnesses to testify at trial, and risk being sandbagged by their testimony if the additional depositions set forth above (at a minimum) are not allowed.

Further, in its recent, March 29, 2024, answers to Plaintiffs' complaints, Google has asserted at least 20 distinct affirmative defenses, many of which require factual development to oppose.  *See* MDL ECF 737 at 49-51; 738 at 45-48; 739 at 80-83; 740 at 66-69; 741 at 68-72; 742 at 77-80.  As such, Plaintiffs' need to obtain sufficient testimony to refute Google's defenses, and to address the acts and markets that survived Google's motions to dismiss (*see* ECF 701), strongly supports permitting Plaintiffs to discover the requested testimony and information for use by their experts, for presentation at summary judgment, and for trial.  As the

above recitation should make plain, Plaintiffs carefully selected the proposed additional deponents to ensure coverage of key issues and conduct in their respective cases.[9]

The proposed extension of the deposition limit to 27 total fact witness depositions for the plaintiffs in this action is modest and falls well within the bounds of reasonableness in an antitrust action of this size and complexity. *See United States v. Google LLC*, No. 20-cv-3010 (D.D.C. Dec. 21, 2020), ECF 85 (permitting, in single-firm monopolization case involving online search market, "65 depositions of fact witnesses", subject to certain exclusions, per side); *In re Google Play Store Litig.*, No. 21-md-02981 (N.D. Cal. Dec. 20, 2021), ECF 171 (ordering, in single-firm monopolization case with representative and individual actions, 35 fact witness depositions per side exclusive of third-party depositions and Rule 30(b)(6) depositions where the witness was not also noticed for deposition pursuant to Rule 30(b)(1) deposition); *Klein v. Meta Platforms*, No. 20-cv-8570 (N.D. Cal. Sept. 20, 2021), ECF 155 (ordering 200 hours—equivalent to 29 seven-hour depositions—as presumptive cap for Rule 30(b)(1) and Rule 30(b)(6) deposition testimony of current Facebook employees in single-firm social media advertising monopolization case involving consumer and advertiser plaintiff classes); *Dial Corp. v. News Corp.*, No. 13-cv-6802 (S.D.N.Y. Nov. 5, 2013), ECF 77 (allocating plaintiffs 150 hours of fact deposition testimony, exclusive of depositions regarding document preservation and retention, in single-firm monopolization case involving advertising of retail product placement); *FTC v. Meta Platforms, Inc.*, No. 1:20-cv-03590 (JEB) (D.D.C. March 3, 2022), ECF 103 (providing 840 deposition hours for fact witnesses in nationwide single-firm monopolization case involving social media services). Accordingly, Plaintiffs' requested deposition limit of 27 total fact depositions—for the specific witnesses identified above through substantial analysis by Plaintiffs[10]—would fall at the low end for actions of this size and complexity.

In addition, as noted above, the parallel actions involving related allegations in the Eastern District of Virginia and the Eastern District of Texas had substantially higher total deposition limits, in recognition of the complexity of the issues—even where those cases lacked the complex class and damages issues at play in this MDL. There are also key differences between the various Plaintiffs' claims and the claims at issue in those enforcement actions, which primarily seek injunctive relief. Hence, while testimony from the EDVA action and CID investigations is available to Plaintiffs, that testimony does not necessarily cover the key issues relevant to Plaintiffs' claims or proof of damages, and many of those depositions occurred prior to the production of several million documents since produced by Google.[11]

Additional depositions are also appropriate to ensure that Plaintiffs can authenticate documents related to their respective cases. The non-cross-noticed depositions in the action in

---

[9] Plaintiffs reserve all rights with respect to seeking depositions of any Google trial witnesses not already deposed.

[10] As noted above, Plaintiffs are reserving one deposition notice for a Rule 30(b)(6) deposition focusing substantially on issues raised by their respective experts.

[11] Google has so far refused to allow Plaintiffs complete access to depositions taken in the Eastern District of Texas.

the Eastern District of Virginia did not offer Plaintiffs an opportunity to authenticate and seek testimony on certain custodial documents for their respective cases, and it may be difficult or impossible to use such testimony at trial. Plaintiffs hope to avoid situations that have occurred in other litigation involving Google where Google has frequently resisted requests to admit pursuant to Federal Rule of Civil Procedure 36(a)(1)(B) as to "the genuineness of [] described documents."

In short, the additional depositions sought by Plaintiffs are proportional to the needs of the case and should be granted in the Court's sound discretion.

\*      \*      \*

For the foregoing reasons, Plaintiffs respectfully request entry of an order permitting 12 additional depositions in this MDL to examine the above witnesses. A proposed order is attached as Exhibit A. As noted, Plaintiffs are prepared to take the requested depositions within the existing discovery deadlines in this MDL.[12] Should it be necessary to resolve these issues, or should the Court have further questions not addressed by the party's correspondence, Plaintiffs request a prompt conference with the Court.

Respectfully submitted,

*/s/ Philip C. Korologos*
Philip C. Korologos
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards
New York, NY 10001
Telephone: 212-446-2390
pkorologos@bsfllp.com

*/s/ Jordan Elias*
Jordan Elias
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: 415.981.4800
jelias@girardsharp.com

---

[12] The lone potential exception to this time frame concerns Plaintiff Inform Inc. as to which discovery opened more than six months after the other MDL Plaintiffs. On November 8, 2023, Inform served on Defendants a Supplemental Request for Production of Documents, as respects which Defendants have yet to produce any documents. On April 17, 2024, Plaintiff Inform moved to compel production of documents responsive to that Supplemental Request. ECF 751.

Hon. P. Kevin Castel
April 19, 2024
Page 11 of 11

          */s/ Serina M. Vash*
          Serina M. Vash
          **HERMAN JONES LLP**
          153 Central Avenue #131
          Westfield, New Jersey 07090
          Telephone: 404-504-6516
          svash@hermanjones.com

          *MDL Plaintiffs' Discovery Steering Committee*

Attachment to chambers copy.

Copies w/o Attachment. to:   All Counsel of Record (via CM/ECF)

Copies w/ Attachment to:   Counsel as indicated in transmission email to chambers.