# EXHIBIT 3

Freshfields Bruckhaus Deringer US LLP

**Via Email**

Serina Vash
Herman Jones LLP
svash@hermanjones.com

**Washington, D.C**
700 13th Street, NW
10th Floor
Washington, DC 20005
T +1 202 777 4543
M +1 202 997 3708
E ben.zweifach@freshfields.com

April 5, 2024

**Re:** ***In re Google Digital Advertising Antitrust Litigation*, 1:21-md-03010 (PKC); *Inform, Inc. v. Google LLC, et. al*, No. 1:21-cv-01530 (PKC)**

Dear Serina,

I write in response to your email dated April 3 and Inform's March 27 search terms proposal (the "March 27 Proposal") which we anticipate will yield over nine million new hits. Inform's latest proposal ignores entirely Google's March 18 counterproposal (the "March 18 Counterproposal"), which was carefully constructed based on Inform's March 1 proposal (the "March 1 Proposal") and tailored to yield a population of documents that are both responsive to Inform's Supplemental RFPs and reasonably proportionate to the needs of this case. Worse, Inform's March 27 Proposal walks back previous offers made by Inform and ignores agreements previously reached by Google and Inform. The March 27 Proposal is a significant step backwards that seriously casts in doubt Inform's stated desire to wrap up negotiations quickly. Hit results are enclosed herewith.

Inform's March 1 Proposal was its third iteration of search terms but was still patently unreasonable, yielding 4.5 million new hits across the Sample Population, or a projected 25 million new document hits in total.[1] Inform had been insisting that Google supply its own proposal, so Google put forth its March 18 Counterproposal. It was based on Inform's March 1 Proposal, making targeted but significant edits intended to return reasonable hit counts while honoring the substance of each constituent search string. Google's March 18 Counterproposal yielded approximately 52,000 new hits in the Sample Population, for a projected total of about 290,000 documents. That figure nearly equals the approximately 352,000 combined hits ordered by Judge Castel on November 2 in connection with terms specific to other private plaintiffs.

[1] As we have previously explained, Inform's February 2 search terms proposal yielded 6.8 million hits (or 18% of the total 38 million) across the original 119 custodians in just one of the ingestion sites. We have used this "Sample Population" and its 18% figure for negotiating purposes and to estimate the total number of hits a proposal may yield. As a result, we expect the document counts in this letter to be at least five times higher when applied across the full population.



Google's March 18 Counterproposal accepted approximately half of Inform's proposals in the March 1 Proposal, subject to only a modification as to date range. *See infra* p. 5. Google's March 18 Counterproposal made only the following changes to Inform's March 1 Proposal:

- Removed Strings 6 and 9, which yielded over 2.3 million and 2.5 million additional documents in the Sample Population alone.
- Reduced the breadth of certain proximity modifiers.
- Added additional proximity modifiers to Strings 4, 5, 8, 22, and 26 which Google has long explained is one of the most effective ways of ensuring that search strings are narrowly tailored to the relevant subject matter.
- Removed references to Android and mobile operating systems in Strings 8, 15,[2] and 16 strings because the Court dismissed Inform's monopoly leveraging claim related to Android. ECF No. 709 at 17-18.
- Edited String 30 to ensure that it tracked the three-proximity structure of the DOJ investigation search string on which it was purportedly based. As revised by Inform, it had been improperly running as two entirely separate strings.

Inform promised a response by March 21, but did not send one until March 27. The March 27 Proposal sweeps in 1.68 million new documents in the Sample Population (a projected total of about 9.33 million documents).[3] In addition to sheer volume and the resulting undue burden and disproportionality, Inform's March 27 Proposal suffers from at least the following defects:

- Inform accepted none of Google's proposals, nor does it appear that Inform's March 27 Proposal is in any meaningful way based on or in response to Google's March 18 Counterproposal.[4] That is particularly surprising considering Inform repeatedly insisted that Google put forth its own proposal. When Google did so, Inform ignored it.
- 14 strings (Strings 1, 4, 7, 11, 14-16, 20-21, and 23-27) in Inform's March 27 Proposal are *broader* than their corresponding strings in *Inform*'s March 1 Proposal. For example:
    - String 21 yields approximately 60,000 new hits, compared to under 500 in Inform's March 1 Proposal. As proposed by Inform on March 1, this string was narrowly tailored to pull in documents regarding complaints, problems, disfavoring, disadvantages, and similar terms in conjunction with references to both YouTube *and* various ad tech products. As revised, the search string broadens the proximity requirements previously proposed by Inform and more

[2] Inform dropped these references in its March 27 version of String 15.

[3] Despite the parties' extensive discussions about a date cut-off, Inform's March 27 Proposal is silent as to date range. While Google objects to Inform's proposed date range, the counts discussed herein employ Inform's proposed date range. Applying a cut-off date of November 25, 2019 would roughly halve the number of hits, yielding approximately 843,000 documents in the Sample Population (a projected total of about 4.68 million).

[4] The only terms that remain unchanged between Google's March 18 Counterproposal and Inform's March 27 Proposal are Strings 3 and 10, which are Inform proposals that Google had previously accepted in full.




than triples the number of topics about which it seeks documents regarding complaints, problems, disfavoring, and the like (as demonstrated by the number of OR terms rising from 14 to about 50).

- String 24 was previously targeted at discussions of YouTube and ad serving, DFP, or GAM. Following an overhaul that added OR terms (approximately 60), the string now sweeps in over 800,000 new documents (up from about 2,500).

- String 26 was one of the broadest strings in Inform's March 1 Proposal, pulling in approximately 188,000 new documents in the Sample Population (yielding a projected total of about a *million* new documents across the full population). Nonetheless, Inform broadened the string such that it now returns about 15% more hits.[5]

- In its March 18 Counterproposal, Google had offered to run 18 (more than half) of Inform's search strings without any edits other than a date limitation. Notwithstanding the parties' apparent prior agreement in principle for these terms, Inform went back to the drawing board, proposing substantial revisions to 10 (Strings 1, 11, 12, 14, 19-21, and 23-25) and inexplicably withdrawing three (Strings 18, 28, 29).[6] For example:

  - Google previously agreed to String 11 because it had been narrowly tailored to discussion of temporary CPM, temporary price, or opportunity cost in conjunction with EDA or Dynamic Allocation. Inform's March 1 Proposal had returned 24 new hits. Inform's March 27 proposal now returns approximately 38,000 new hits. That's because in addition to EDA and Dynamic Allocation, it addresses videos generally, direct sales and ads, pre-sales, YouTube, Bell, and Elmo. It searches for those terms in conjunction with far more OR terms than previously sought.

- The March 27 Proposal includes references to topics, some of which have no apparent relevance to the case, that were never previously mentioned in any of Inform's or Google's prior proposals. For example:

  - String 1 now seeks any reference to any one of four unexplained numbers.

  - String 2 for the first time seeks documents related to the Associated Press. It also seeks documents referring to nine Google employees.

- We had explained that the best way to limit hit results is to more closely tailor them to the relevant subject matter by adding additional proximity modifiers. Not only did Inform

[5] Inform's February 2 version of this string was more reasonable. It employed "Inform" as an additional proximity requirement, such that the string was targeted at documents related to Inform. When Google explained during a meet and confer that the March 1 Proposal inappropriately turned "Inform" into just another OR and as a result brought in astronomically more results, Inform's initial reaction was to agree to return the string to the way it was drafted in February. Instead, Inform turned around and made the string broader still in its March 27 Proposal.

[6] Inform left two strings unchanged (Strings 3 and 10) and merged three more (March 18 Strings 32-34) into one string.





refuse to adopt any of Google's proposed additional proximity modifiers (Strings 4, 5, 8, and 22 in Google's March 18 Counterproposal), Inform *removed* proximity modifiers in Strings 15, 21, and 26 that were in their previous proposals. For example:

- ○ String 15 previously had three requirements that had to be found in proximity to each other: (1) references to market share, market position, and similar terms; (2) references to protecting, defending, and similar terms, and (3) references to online video, Chrome, YouTube, and Android. As revised, the string no longer contains the second modifier limiting it to documents regarding *defending* market share. Unsurprisingly, hits went from several hundred to about 59,000.

- Seven previously unified strings (Strings 2, 4, 5, 7, 24, 25, and 30) are now effectively separate strings connected only by an OR, which appears to be a backdoor into adding additional search strings, especially considering some of these "ORs" address different topics.[7] For example:

    - ○ String 25 used to be a highly targeted string designed to identify documents related to Inform's claim regarding high traffic news days. It now runs as three separate terms, only the first of which appears to be based on (but is still broader than) the prior iterations of this string. The other components are far more general than Inform's original proposal and drive all but ten of the roughly 69,000 hits (whereas the March 1 version of this string brought in five new documents).

- After saying that Inform would "work with [Google]" on Strings 6 and 9, which each had returned millions of hits in the Sample Population alone, Inform's next iteration of each string still returned hundreds of thousands of additional hits. Inform retained most elements of the prior versions, but added more OR terms to each.

- The proposal is rife with syntactical errors, such as missing quotes, extra ORs, or missing ORs, increasing the time it takes to edit, run, and analyze the terms. There are also many examples of quoted wildcards, even though Google has previously told Inform that such terms will not properly run. These errors were not present in Google's proposal.

Because of its numerous defects and substantial steps backwards, Google rejects Inform's March 27 Proposal and declines to use it as a basis for negotiations moving forward. Further negotiations must focus on the issues that remained open following Google's March 18 Counterproposal.

Moreover, it appears that Inform's insatiable appetite for millions more documents cannot be reasonably satisfied. As a result, while Google is willing to engage in further negotiations with respect to the aforementioned changes between Inform's March 1 Proposal and Google's March 18 Counterproposal, there must be a cap. Google will add no more than 11,000 additional hits in the Sample Population. That would bring the Sample Population up to approximately 63,000, resulting in a projected 350,000 new hits in the overall population (which roughly equals

[7] In the hit counts spreadsheet, these strings have been broken out into their constituent subparts.

Freshfields Bruckhaus Deringer US LLP

the 352,000 combined hits ordered by Judge Castel on November 2 for all other private plaintiffs).

If Inform agrees to this proposal, including the date cut-off discussed below and the cap on volume derived from further negotiations, it will allow Google to begin the review of these documents sooner than if Inform continues down its current path of insisting on search terms that will yield many millions of documents. If Inform agrees, Google would ask Inform to identify the search strings that it does *not* intend to negotiate further and Google would begin the process of reviewing those documents as soon as possible, without waiting to reach agreement on the terms that do require further negotiation. But if Inform does not agree to this way forward, there will remain too much uncertainty regarding the search terms for Google to get started.

Date Range

Inform has not provided any colorable explanation for why Google must search for documents dated after Inform went out of business given the Court has already ruled out injunctive relief precisely *because* "Inform repeatedly alleges that it is no longer in business." ECF No. 709 at 25.

Inform's explanations have shifted, but none are persuasive. First, Inform suggested that there is a "flurry of activity after someone gets sued" and that "sometimes that is privileged, sometimes it is not." Next, Inform suggested that documents after Inform went out of business could be relevant to market power, but failed to explain why market power after that date might be relevant following dismissal of injunctive relief claims. Moreover, even if there were marginal relevance, it could not be proportional to the needs of the case, given that applying the default date cut-off of March 27, 2023 would double the volume of new documents swept in by the March 27 Proposal. Inform's insistence on receiving documents after the date on which it went out of business makes clear that Inform is seeking more for the sake of more, without regard to relevance or proportionality.

Google proposes to cut off all searches on the day Inform went out of business. However, Inform is hiding the ball as to when it went out of business by failing to disclose when that happened. As a result, when testing date cut-offs, Google has used as its date cut-off the date of Inform's original complaint, November 25, 2019, because Inform was alleged to have already been out of business by that date. Google requests that Inform disclose when it went out of business because discovery after that date is irrelevant, unduly burdensome, and disproportionate to the needs of the case.




Source Code

On December 16, 2023, Inform asked Google to produce 8 categories of "additional" source code[8] prior to inspecting the 80 gigabytes of source code that Google had previously made available. As we stated in our March 14 Letter, Google is willing to make some additional source code available for inspection by Inform (and Inform alone) as long as it is reasonable and proportionate to the needs of Inform's non-duplicative claims. We continue to believe that 5 of Inform's Source Code Requests (Requests No. 1-4, 8) "appear to be already addressed by the source code that Inform has yet to review." *See* January 5, 2024 McCallum Letter at 4. Inform finally agreed in its March 1 Letter to send its expert to review for the first time the code Google has already produced. On our March 20 meet and confer, you asked if there was an easy way to tell whether the previously produced source code contains code regarding video and direct ad sales in connection with EDA. Based on a simple keyword search of the produced code, it appears that there is indeed code related to video. Moreover, EDA was one of the algorithms for which Google produced source code. However, your expert will need to examine the code to determine whether it satisfies your needs as to source code Requests 1-4 and 8.

Although we believe that the three remaining Source Code Requests (Requests 5-7) are overbroad and disproportionate to the needs of the case, we are willing to meet and confer with Inform regarding their scope, as follows:

- **Requests 5 and 6.** We note the possibility that some portion of the code responsive to **Requests 5** ("Algorithms used to implement or detect violations of TrueView Policy") and **6** ("Viewability algorithm affecting whether an advertisement was not serviced despite its status in an auction") has already been made available to MDL Plaintiffs. We therefore request that Inform's expert make sure to include that assessment as part of its review of the 80 gigabytes of code already provided. We also request that Inform confirm that **Requests 5** and **6** are specifically cabined to video ads. We will in turn speak to our client to confirm whether it would be possible to make some version of these algorithms available to Inform (and Inform alone).

[8] Those Source Code Requests included: (1) Algorithms responsible for the forecasting, delivery pattern, frequency and pacing of direct ad campaigns; "AdX Line Item Forecasting;" (3) Calculation of temporary CPM for Enhanced Dynamic Allocation; (4) Algorithms related to overbooking of direct ad campaigns or preference for programmatic ads. (5) Algorithms used to implement or detect violations of TrueView Policy; (6) "Viewability" algorithm affecting whether an advertisement was not serviced despite its status in an auction; (7) Algorithms implementing the serving or playing of video ads in a Chrome Browser or on YouTube and any related settings, including size of player, autostart, audibility, "intelligent pausing" of video ads for OLV ad platforms; and (8) "High News Peak" or "News Spike" algorithms – this code should include any algorithms used by Google on days of high news traffic whereby Google accounts for and/or alters any manner in which ads are selected and placed.



Freshfields Bruckhaus Deringer US LLP

- **Request 7.** As currently drafted, Request 7 is wildly overbroad and disproportionate to the needs of the case. The Request seeks "Algorithms implementing the serving or playing of video ads in a Chrome Browser or on YouTube and any related settings, including size of player, autostart, audibility, intelligent pausing of video ads for OLV ad platforms." This essentially asks for all code related to YouTube. Please clarify whether Inform is specifically interested in the "size of player, autostart, audibility, intelligent pausing of video ads for OLV ad platforms," and explain why additional code is necessary for these four topics.

We look forward to our Tuesday meet and confer. In advance of that meet and confer, please let us know when Inform went out of business.

Sincerely,

*/s/ Benjamin Zweifach*

Benjamin Zweifach