# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION | 1:21-md-03010 (PKC)<br><br>1:23-cv-01530-PKC |

**PLAINTIFF INFORM'S FIRST SET OF SUPPLEMENTAL REQUESTS**
**FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS**

Pursuant to Fed. R. Civ. P. 26 and 34, Plaintiffs in the above-captioned matter request that Defendants Google LLC, Alphabet Inc., and YouTube, LLC ("Defendants") serve a written response to this First Supplemental Set of Requests for Production and produce for inspection and copying the documents and other materials requested below that are in their possession, custody, or control, or in the possession, custody, or control of their attorneys, accountants, and any person(s) acting on their behalf within 30 days.

## DEFINITIONS

The definitions and rules of construction set forth in Rules 26 and 34 of the Federal Rules of Civil Procedure and Local Civil Rule 26.3 for the Southern District of New York are hereby incorporated and apply to this request for the production of documents and other materials. Additionally, the Definitions and Instructions set forth in Plaintiffs' First and Second Sets for Production of Documents, served January 27, 2023 and September 30, 2023, respectively are hereby incorporated and apply to this request for the production of documents and other materials. The incorporated definitions apply without regard to capitalization of these terms in the Specific Requests.  Plaintiff reserves the right to serve additional requests for the production of documents and other materials.

For the avoidance of doubt, the "YouTube platform" and the products, services and features available as part of the platform  (as the terms is used by You in Your January 5, 2022 Terms of Service) is a "platform . . . used in the process of identifying, selecting, transmitting, and/or rendering Digital Advertising on a desktop or mobile device" and is an "Ad Tech Product[]" under Definition 6 of the Plaintiffs' First Set of Requests for Production of Documents to Defendants.

In addition, the following definitions shall apply to the Requests herein and shall supersede and replace any overlapping terms with regard to these Requests:

"Algorithm" shall mean any process, set of rules, source code, or white paper describing or concerning the operation of Your products or services.

"Analysis" shall have the common meaning of the term and shall not be limited by any prior definition.

"Inform" shall mean Plaintiff Inform Inc., formerly known as News Distribution Network, Inc. or NDN ("Inform").

"LMDOS" shall mean licensable mobile device operating systems, including but not limited to Google's Android OS.

"User" shall have the common meaning of the term and shall not be limited by any prior definition.

## SPECIFIC REQUESTS FOR DOCUMENTS

### RELEVANT MARKETS

1. All documents that refer, reflect or relate to the **U.S. markets** for Online Video Advertising, web browsers, and LMDOS; including but not limited to:

    (a) Documents regarding the size of the U.S. markets for Online Video Advertising, web browsers, and LMDOS on a quarterly and yearly basis by each Metric You use;

    (b) Documents regarding (i) Your share and (ii) Your Competitors' share of the U.S. markets for Online Video Advertising, web browsers, and LMDOS on a monthly, quarterly, and yearly basis by each Metric You use;

    (c) Documents analyzing, evaluating, or studying products and/or services that You considered to be substitutes for, or reasonably interchangeable with, Your products and/or services in the U.S. markets for Online Video Advertising, web browsers, and LMDOS, including Documents sufficient to show all such products and/or services; and

    (d) White papers, market analyses, competitive analyses, strategic plans, and other decision-making Documents, regarding Your **market share** of the Online Video Advertising, web browser, and LMDOS markets since January 1, 2007; and

    (e) Documents related to such market rankings or market share rankings, including but not limited to ComScore.

    (f) Documents that refer, reflect or relate to any analysis, evaluation, or study of **barriers to entry** or expansion faced by any other company that offers or offered, or which potentially may offer or have offered, any product or service in competition with any of Your Ad Tech Products to the U.S. markets for Online Video Advertising, web browsers, and LMDOS, including Documents sufficient to show all barriers to entry to those markets. For purpose of this Request, "barriers" includes switching costs, default biases, information or data asymmetries, and access to inputs or customers.

2. All Documents that refer, reflect or relate to discussion, analyzing, evaluating or studying:

    (a) actual or potential competitive threats (or lack thereof) to Your products and/or services in the U.S. markets for Online Video Advertising, web browsers, and LMDOS, including Documents sufficient to identify Your Competitors and potential Competitors, and their respective products and/or services;

4

(b) actual or potential **effect on the prices and/or quality** of Your products and/or services in the U.S. markets for Online Video Advertising, web browsers, and LMDOS, due to actual or potential competition from possible substitute products and/or services;

(c) any direct or indirect **network effects** between Your Advertiser-facing Ad Tech Products and Your Publisher-facing Ad Tech Products in the U.S. market for Online Video Advertising, web browsers, and LMDOS.

(d) Customers who stopped using Your Advertiser-facing Ad Tech Products and Your Publisher-facing Ad Tech Products in the U.S. market for Online Video Advertising, web browsers, and LMDOS.

## RELEVANT ACQUISITIONS

3.  All Documents that refer, reflect or relate to:

(a) Your acquisition of **YouTube**, including planning Documents, white papers, market analyses, competitive analyses, merger retrospectives, strategic plans or other decision-making and analytical Documents, as well as Documents you submitted to regulators, including the United States Department of Justice ("DOJ"), the Federal Trade Commission ("FTC"), and the United States Securities and Exchange Commission ("SEC") concerning Your acquisition of **YouTube,** including documents which relate to Your then current or potential/projected online advertising and ad tech capabilities and which relate to Your projected or actual synergies between YouTubeand Your other products and services. The time period applicable to this request is January 1, 2005 to December 31, 2006.

(b) Your acquisition of **Android Operating System**, including planning Documents, white papers, market analyses, competitive analyses, merger retrospectives, strategic plans or other decision-making and analytical Documents, as well as Documents you submitted to regulators, including to DOJ, FTC, and SEC concerning Your acquisition of **Android Operating System,** including documents which relate to Your then current or potential/projected online advertising and ad tech capabilities and which relate to Your projected or actual synergies between the Android Operating System and Your other products and services. The time period applicable to this request is January 1, 2004 to December 31, 2005.

(c) Your acquisition of **AdMob**, including planning Documents, white papers, market analyses, competitive analyses, merger retrospectives, strategic plans or other decision-making and analytical Documents, as well as Documents you submitted to regulators, including to DOJ, FTC, and SEC concerning Your acquisition of **AdMob**. The time period applicable to this request is January 1, 2009 to December 31, 2012.

(d) Your acquisition of **Applied Semantics**, including planning Documents, white papers, market analyses, competitive analyses, merger retrospectives, strategic

5

plans or other decision-making and analytical Documents, as well as Documents you submitted to regulators, including to DOJ, FTC, and SEC concerning Your acquisition of **Applied Semantics**. The time period applicable to this request is January 1, 2003 to December 31, 2003.

## CORPORATE ORGANIZATION

4. Documents, such as organizational charts, sufficient to show corporate organization or structure for YouTube LLC, Chrome Browser and Android OS businesses on an annual basis, including the specific entities involved and each person that has managerial responsibilities for the specific entities.

## ANTICOMPETITIVE ACTS ALLEGED IN THE OPERATIVE COMPLAINT

A. <u>YouTube Tying</u>

5. All Documents that refer, reflect or relate to:

(a) How access to advertising on YouTube is affected or influenced by the involvement or usage of Google DSPs—including but not limited to Display and Video 360 (DV 360), DoubleClick Bid Manager (DBM) and Google Ads—for Advertisers and customers who used Google DSPs. This includes monthly data on the number of Advertisers actively using Google DSPs both before and after any changes to any of Your access policies or practices;

(b) The access to YouTube ad inventory and placement of ads on YouTube for DFP, GAM or competing ad servers;

(c) How access to YouTube ad inventory and placement of ads on YouTube is affected by the usage or non-usage of Google's own DFP ad server;

(d) Your communications to users of Google DSPs, Publishers, Advertisers, content creators and users on the YouTube platform about how access to YouTube advertising is affected or influenced by the involvement or usage of Google DSPs, DFP, GAM, and/or any other of Your products or services;

(e) Feedback, including complaints, related to how access to YouTube advertising is affected or influenced by the involvement or usage of Google DSPs, including but not limited to Display and Video 360 (DV 360), DoubleClick Bid Manager (DBM) and Google Ads; and

(f) The impact of access of users of Google DSPs, DFP and/or GAM to YouTube advertising, or lack of access to non-users, on competition in the U.S. markets for online video advertising, online video platforms, Publisher Ad Servers and Ad

      Exchanges, including changes in market shares among Competitors, and concerning the impact on (i) Your Metrics; (ii) Publishers' and/or Advertisers' Metrics; and (iii) Your Competitors' Metrics.

B. <u>Manipulating Ad Placement and Ad Auction Process and Exclusionary Disablement, Technological Blocking and Systematic Interference with Products and Services</u>

    6.    All Documents that refer, reflect or relate to any of Your policies, practices, decisions or discussions concerning:

      (a) the pacing and/or placement of direct ads or direct ad campaigns, including but not limited to (i) ad placement performance of a customer or customers; (ii) complaints by Plaintiff Inform and other of Your customers; (iii) video advertising; and/or (iv) on high traffic news days or days when there are news spikes;

      (b) bypass, suspension or otherwise overriding direct ad or direct ad campaigns and/or favoring AdX programmatic ads over direct sales ads, including but limited to (i) ad placement performance of a customer or customers; (ii) complaints by Plaintiff Inform and other of Your customers; (iii) video advertising; and (iv) on high traffic news days or days when there are news spikes;

      (c) the disabling, pausing, muting, restricting and/or limiting of features, capabilities, or availability of video ads or video players—including Adobe Flash—in any of Your products, services, or on any of Your websites.

    7.    All Documents that refer, reflect or relate to Your use or replacement of any video player—including Adobe Flash—with HTML-5 capabilities in any of Your products, services, or on any of Your websites.  This includes but is not limited to all Documents related to:

      (a) any actual, perceived, or claimed advantages of Adobe Flash over HTML-5 or any preference for Adobe Flash of any Advertiser, Publisher, or other third party;

      (b) changes to any default settings related to the implementation of HTML-5 versus Adobe Flash in any of Your products or services, including but not limited to Chrome and Android including Your evaluation of the default settings and decision to change them;

      (c) changes to any of Your products, services, or websites related to the implementation of HTML-5 versus Adobe Flash for video advertisement display;

      (d) Your ability to influence and/or control the development of HTML-5 versus Adobe Flash.

7

(e) Your ability to technologically restrict, limit, or otherwise control the features, capabilities, or availability of HTML-5, including versus Adobe Flash, with regard to video advertising.

(f) criticisms, comments or other feedback concerning 7(b)-(e) from users of Your Ad Tech Products.

8. All Documents that refer, reflect or relate to any exemption, whitelisting, preferential treatment, or other difference in treatment or functionality for any of Your products, services, or websites—including YouTube, Android OS, and Chrome browser and Flash-to-HTML5 conversion tools —with regard to:

(a) disabling, pausing, muting, restricting and/or limiting features, capabilities, or availability of video ads or video players;

(b) default settings related to video ads or video players;

(c) video ad or player functionality on mobile devices, including any such functionality related to AMP or on Android OS;

(d) YouTube ad serving functions and functionality;

(e) their interaction with any of Your algorithms related to advertising or video display.

(f) This includes any exemption, whitelisting, preferential treatment, or other difference in treatment with regard to any of the above which is affected by the use of DFP, AdX, GAM, AdWords, AdWords Editor, or other ad server or ad serving functionality, or third-party tools that work with Google's ad platform by a customer.

9. All Documents that refer, reflect or relate to:

(a) Your removal of support, including your decision to remove support, for Adobe Flash-based video advertisements from any of Your products, services, or on any of Your websites;

(b) Your offering of Flash-to-HTML5 conversion tools, including your decision to offer the same, to a customer or user of any Google product or services, including but not limited to the Google Display Network and DoubleClick Campaign Manager, as well as Your offering of Flash-to-HTML5 conversion tools to customers and users of non-Google products and services to switch to using any Google product or services.

8

10. All Documents that refer, reflect or relate to any advertising-related inventory forecasting, AdX line item forecasting, calculation of any temporary CPM, traffic shaping, pacing, and/or ad placement management by You, including those concerning any related algorithms, policies, practices, and/or decisions in display advertising, including video advertising.

11. All Documents that refer, reflect or relate to:

   (a) Your ability to control and/or affect the functionality of video advertisements, video players and video ad platforms through the use of Your Chrome browser, including but not limited to Your ability to block or disable Competitors' products and/or services and Your ability to control: how, when, and what videos are played; whether a video will "autostart" or "autoplay"; whether a video will play with or without the sound on or off; specifications as to the allowable size of the video player; and requirements as to compatibility and interoperability of a video ad, video player or video ad platform with Chrome Browser; as well as any complaints from Publishers or Competitors concerning Chrome's ability to control such functionality and documents concerning the effect on Your market share in the online video advertising market;

   (b) the interplay and/or compatibility between Your Publisher Ad Server (including DFP, GAM and other ad server functionality) and Chrome Browser and conversely the incompatibility between competing ad servers and Your Chrome browser and the effect of such compatibility/incompatibility on serving and/or delivery of video advertisements and the impact of such compatibility/incompatibility on (a) Your Metrics; (b) Publishers' and/or Advertisers' Metrics; and (c) Your Competitors' Metrics; and

   (c) the policies, practices, standards, or rules applicable to Publishers, Advertisers and Competitors to allow online videos and video advertisements to be enabled, viewable, audible, acceptable by You and/or otherwise properly function in connection with Chrome browser and/or any of Your Ad Tech Products;

   (d) the policies, practices, standards, or rules, including documents concerning policy violations, that allow, enable or thwart innovative or new video ad experiences and any documents concerning policies purposefully created in response to and/or to disallow a Competitors' product, service or innovation.

12. All Documents that refer, reflect or relate to Your policies, practices, or attempts to obscure the pricing of or take rates applicable to Display Advertising (including online video advertising), including but not limited to Your efforts to hide the ability of Publishers and

9

Advertisers to view, receive, understand and compare pricing and determine the efficacy of Advertisers' ad spend through hashing or encryption of user IDs.

13. All Documents that refer, reflect or relate to Your collection of information, market intelligence and/or data on Competitors, including but not limited to their client lists, proprietary pricing, product or service innovation, and other proprietary, sensitive or private business data, through the use of Your Ad Tech Products or otherwise, as well as documents demonstrating the use of that market intelligence, data and proprietary information to interfere with Competitors' business relationships and contracts, including but not limited to such documents as they relate to Inform Inc.

C. Anticompetitive Contracts and Monopoly Leveraging

14. All Documents that refer, reflect or relate to requiring default placement of Google Search and/or Chrome Browser on any mobile device or desktop device and/or requiring preinstallation of Google Search and/or Chrome Browser as a prerequisite to licensing or access to Your Android licensable mobile device operating system (LMDOS).

15. All Documents that refer, reflect or relate to any of Your policies, practices, and/or Your decisions to:

  (a) design accelerated mobile pages (AMP) to be incompatible with Flash advertisements, including but not limited to any complaints from Publishers regarding your decision;

  (b) give premium placement in search results to YouTube over competing video providers and video platforms, including but not limited to any complaints from Publishers regarding your decision.

### SOURCE CODE AND ALGORITHMS

16. To the extent not already produced, documents sufficient to:

  (a) identify the Source Code and Algorithms used by Your Ad Tech Products in digital video ad sales and auctions.

10

    (b) Show all configuration settings or variables (including both internal and user-configurable) related to the playing and/or display of video advertisements for all versions of for Google's Chrome Browser and Google's Android OS available since January 2008;

    (c) Show all default settings or variables (including both internal and user-configurable) for Chrome/Android related to the playing and/or display of video advertisements for all versions of Google's Chrome Browser and Google's Android OS available since January 2008.

17. All Documents that refer, reflect or relate to Google's ad server (including DFP, GAM and other ad server functionality) and/or Chrome browser Algorithms that implement or effectuate the playing and/or display of video advertisements in any of Your products, services, or on any of Your websites, including but not limited to Source Code and Algorithms utilizing Adobe Flash or HTML-5; those that implement or effectuate AdX Line Item Forecasting; those that implement or effectuate AdX TrueView; those that are responsible for the delivery pattern, frequency and pace of serving ad campaigns, including direct ad campaigns; and those that implement or effectuate blocking, pausing or otherwise disabling video advertisements.

18. A Clone of all Source Code and Algorithms that:

    (a) Implement or effectuate the playing and/or display of video advertisements in any of Your products, services, or on any of Your websites, including but not limited to Source Code and Algorithms utilizing Adobe Flash or HTML-5; those that implement or effectuate AdX Line Item Forecasting; those that implement or effectuate AdX TrueView; those that calculate any temporary CPM for direct advertising campaigns; those that are responsible for the delivery pattern, frequency and pace of serving ad campaigns, including direct ad campaigns; and those that implement or effectuate blocking, pausing or otherwise disabling video advertisements;

    (b) Based upon the volume of news traffic and/or news spikes, implement or effectuate any difference, alteration, or variation to Your Algorithms concerning any Ad Requests, Ad Tech Products, Ad Tech Auction Mechanics, Advertiser Ad Server, Demand Side Products, Demand Side Platforms, Direct Sales, Publisher Ad Servers, Supply Side Platforms, and/or Unified Auctions.

**FINANCIAL DOCUMENTS AND DATA**

19.     All Documents that refer, reflect or relate to show prices, price lists, pricing plans, and pricing policies for online video advertising on Your YouTube platform.

**DOCUMENTS CONCERNING INDIVIDUAL ACTION PLAINTIFFS**

20.     All Documents that refer, reflect or relate to Plaintiff Inform since November 8, 2007.

21.     All documents that would have been produced in response to the DOJ and the Texas AGs search strings set forth in Appendix B of Your June 28, 2023 letter if those search strings had not been altered by You to remove terms related to YouTube, True View, and other terms related to online video advertising.

DATED: November 8, 2023

/s/ *Serina M. Vash*
Serina M. Vash
New York Bar No.: 2773448
svash@hermanjones.com
153 Central Avenue, # 131
Westfield, NJ 07090
(404) 504-6516
**HERMAN JONES LLP**

John C. Herman
jherman@hermanjones.com
3424 Peachtree Road, N.E., Suite 1650
Atlanta, GA 30326
(404) 504-6500
**HERMAN JONES LLP**

*Counsel for Inform Inc.*

**CERTIFICATE OF SERVICE**

I, Serina M. Vash, hereby certify that on November 8, 2023, I caused the foregoing Plaintiff Inform's First Set of Supplemental Requests for Production of Documents to Defendants to be served, via email, to all counsel of record in this litigation currently receiving ECF notice from the Court.

*/s/ Serina M. Vash*
Serina M. Vash
New York Bar No.: 2773448
svash@hermanjones.com
**HERMAN JONES LLP**
153 Central Avenue, # 131
Westfield, NJ 07090
(404) 504-6516

*Counsel for Inform Inc.*