# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION | No. 21-md-3010 (PKC) |

*This Document Relates To:*

| | |
|---|---|
| **MICHAEL STELLMAN**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**GOOGLE LLC ET AL.**,<br><br>*Defendant*. | No. 1:23-cv-01532 (PKC) |

**DEFENDANTS GOOGLE LLC AND ALPHABET INC.'S SECOND SET OF INTERROGATORIES TO PLAINTIFF MICHAEL STELLMAN**

1

**PROPOUNDING PARTIES**:   Google LLC

Alphabet Inc.

**RESPONDING PARTIES**:   Plaintiff Michael Stellman

**SET NUMBER**:   Two

Pursuant to Federal Rules of Civil Procedure ("Federal Rules") 26 and 33, and Rules 26.3 and 33.3 of the Local Rules for the U.S. District Court for the Southern District of New York ("Local Rules"), Defendants Google LLC and Alphabet Inc. (collectively, "Google"), through their counsel, hereby request that Plaintiff Michael Stellman answer the following Second Set of Interrogatories within thirty (30) days of service according to the Definitions and Instructions set forth herein and supplement the Interrogatory answers, as necessary, to comply with the Federal Rules and the Local Rules.

### DEFINITIONS

1. To the extent the terms defined below are used in the Interrogatories, they should be construed broadly to the fullest extent of their meaning in a good-faith effort to comply with the Federal Rules and the Local Rules. These Definitions are provided solely for the purposes of these Interrogatories.

2. The term **"Action"** refers to all lawsuits consolidated in the above-captioned multidistrict litigation, *In re: Google Digital Advertising Antitrust Litigation*, No. 21-md-3010.

3. The term **"Ad Buying Tool"** shall mean any third-party or in-house software, application, service, tool, or other interface (including DSPs and Ad Networks) through which an Advertiser Purchased or can Purchase Inventory.

4. The terms **"Ad Exchange"** or **"Supply-Side Platform"** or **"SSP"** shall mean a third-party or in-house product or service through which two or more Ad Buying Tools (at least

one of which is not owned or controlled by the entity operating the Ad Exchange) placed or can place Bids in real-time auctions for Inventory offered for sale by or on behalf of two or more Publishers (at least one of which is not owned or controlled by the entity operating the Ad Exchange).

5. The term **"Ad Network"** shall mean a third-party or in-house product or service (other than an Ad Exchange) through which two or more Advertisers (at least one of which is unaffiliated with the entity operating the Ad Network) Purchased or can Purchase Inventory offered for sale by two or more Publishers (at least one of which is unaffiliated with the entity operating the Ad Network).

6. The term **"Ad Selling Tool"** shall mean any third-party or in-house software, application, service, tool, or other interface (including Publisher Ad Servers, Ad Exchanges, Ad Networks, SSPs, or Header Bidding) through which a Publisher sold or can sell Inventory.

7. The terms **"Ad Tech"** or **"Ad Tech Product"** shall mean a product, service, application, tool, solution or other interface that facilitates or is involved in the Purchase or sale of Inventory, including but not limited to a Publisher Ad Server, Ad Exchange, Ad Network, Header Bidding, DSP, SSP, other Ad Buying Tool, or other Ad Selling Tool. For the avoidance of doubt, this term includes In-House Ad Tech Products, as well as products or services offered by social media outlets (including but not limited to, for example, Facebook.com and Twitter.com) and certain other Publishers that enable the Purchase of Inventory on their Properties.

8. The term **"Ad Tech Provider"** shall mean a person, firm, association, or other entity selling, reselling, licensing, or otherwise providing at least one Ad Tech Product, whether or not for a fee or other compensation.

9. The term **"Advertiser"** shall mean a person or entity that, directly or through one or more intermediaries, places one or more Display Advertisements intended to advertise or promote a good or service offered by the Advertiser, or otherwise convey such Advertiser's desired message, on a Publisher's Property so that it is viewed by at least one User visiting such Property. For the avoidance of doubt, Advertisers typically, but need not, pay for the placement of such Display Advertisements.

10. The term **"AdX"** shall mean Google's Ad Exchange that was marketed as DoubleClick Ad Exchange, inclusive of all prior and subsequent iterations of the product and all variants thereof, and including, for the avoidance of doubt, the ad exchange functionality of Google Ad Manager and Google Ad Manager 360.

11. The term **"Agency"** shall mean an advertising agency or similar consulting firm that is hired by an Advertiser to manage the Purchase of Inventory for one or more Campaigns. For the avoidance of doubt, although an Agency may use DSPs or other tools to manage such Campaigns, an entity operating a DSP shall not, solely on that basis, be deemed an Agency.

12. The term **"Amazon"** shall mean Amazon.com, Inc., any of its current or former parents, subsidiaries, affiliates, divisions, predecessors, successors, officers, directors, employees, agents or representatives, and any other person acting on their behalf.

13. The term **"Bid"** shall mean an offer, made in response to a Query, to pay a specified amount in exchange for the right to render a Display Advertisement in a unit of Inventory.

14. The term **"Buyer"** shall mean an Advertiser submitting a Bid directly to an Ad Exchange or Publisher Ad Server (without an intermediary), or shall mean a DSP, Ad Network, or other person or entity submitting a Bid to an Ad Exchange or Publisher Ad Server on behalf of

4

an Advertiser, whether known at the time or to be subsequently determined. For the avoidance of doubt, an Ad Exchange shall not be deemed a Buyer even if it forwards a Bid it received on to another Ad Exchange or Publisher Ad Server.

15. The term **"Campaign"** shall mean one or more Display Advertisements that are targeted to particular types of Inventory, Users, or objectives.

16. The term **"Complaint"** shall mean the Class Action Complaint, *Stellman v. Google LLC et al.*, No. 1:23-cv-01532 (S.D.N.Y.), ECF No. 1, or any subsequent operative complaint filed by Plaintiff in the Action.

17. The term **"communication"** shall have the meaning provided in Local Rule 26.3, namely, the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

18. The term **"concerning"** shall have the meaning provided in Local Rule 26.3, namely, relating to, referring to, describing, evidencing or constituting.

19. The term **"Connected Television"** shall mean devices or services that allow Users to watch television content served over the internet on a television screen, such as smart TVs (e.g., Samsung, TCL, Sony), media streaming devices (e.g., Roku Streaming Stick, Apple TV, Chromecast), or video game consoles (e.g., Xbox, PlayStation).

20. The terms **"Demand-Side Platform"** or **"DSP"** shall mean an Ad Buying Tool, that enables an Advertiser to automatically buy Inventory sold via Ad Selling Tools in real-time on an Impression-by-Impression basis. For the avoidance of doubt, an Agency trading desk shall be deemed a DSP for purposes of this definition.

21. The phrase **"describe in detail"** as used in these Interrogatories includes a request for a complete description and explanation of the facts, circumstances, analysis, opinion and other information relating to the subject matter of a specific Interrogatory.

5

22. The term **"Direct Transaction"** shall mean a sale or placement of Display Advertising the price of which was determined through a contractual agreement between an Advertiser (or an Agency acting on an Advertiser's behalf) and a Publisher (without an intervening Ad Tech intermediary), including for the avoidance of doubt an agreement to set such price through an auction.

23. The terms **"Display Advertisement"** or **"Display Advertising"** shall mean Online Advertising *other than* Search Advertising, and shall include native, banner, in-app, or video advertising, whether social or non-social.

24. The term **"document"** shall have the meaning provided in Local Rule 26.3, namely, that the term shall be synonymous in meaning and equal in scope to the usage of the phrase "documents or electronically stored information" in Federal Rule 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

25. The term **"effect"** shall include both qualitative and quantitative, direct and indirect meanings of those terms.

26. The term **"Feature"** shall mean any design, feature, limitation, policy, mechanism, innovation, improvement, optimization, or strategy related to how Ad Tech Products buy, sell, price, Bid, auction, measure, or report on the effectiveness of Display Advertising, including integration or interoperability with other Ad Tech Products, whether owned or operated by the same entity or different entities.

27. The term **"Floor Price"** shall mean the limitation on how low an Advertiser or Ad Buying Tool can Bid for Inventory while still being eligible to win the Impression.

28. The term **"Google"** shall mean Defendants Google LLC and/or Alphabet Inc., any current or former parents, subsidiaries, affiliates, divisions, predecessors, officers, directors, employees, agents or representatives, and any other person acting on their behalf.

29. The term **"Google Ads"** shall mean Google's Ad Buying Tool described on https://ads.google.com/home/, inclusive of all prior iterations or naming conventions, including AdWords.

30. The term **"Header Bidding"** shall mean the use by a Publisher of code that is directly or indirectly called during the web browser's processing or rendering of the HTML header of a webpage (and prior to the invocation of a Publisher Ad Server) and that causes Queries to be sent to one or more Ad Exchanges, Ad Networks, DSPs, or other sources of demand.

31. The term **"identify"** when referring to a person shall have the meaning provided in Local Rule 26.3, namely, to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

32. The term **"identify"** when referring to documents shall have the meaning provided in Local Rule 26.3, namely, to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

33. The term **"Impression"** shall mean the service of a single Display Advertisement to a single User.

34. The term **"including"** shall mean including but not limited to.

35. The term **"Indirect Transaction"** shall mean a sale or placement of Display Advertising other than a Direct Transaction, including an Open Auction Transaction or Private Auction Transaction conducted by an Ad Exchange or a Purchase of Inventory by an Ad Network for resale to one or more Advertisers.

36. The term **"In-House Ad Tech Product"** shall mean an Ad Tech Product created for a Publisher's, Advertiser's, or Agency's internal use.

37. The term **"Inventory"** shall mean space offered by Publishers for the sale or placement of Display Advertising.

38. The term **"Meta"** shall mean Meta Platforms, Inc., including Facebook, Inc., any current or former parents, subsidiaries, affiliates, divisions, predecessors, successors, officers, directors, employees, agents or representatives, and any other person acting on their behalf.

39. The terms **"Online Advertisement"** or **"Online Advertising"** shall mean advertising via the internet, including on websites, apps, and Connected Television. For example, both Display Advertising and Search Advertising are forms of Online Advertising.

40. The term **"Open Auction Transaction"** shall mean an Indirect Transaction for which all, or substantially all, of the Buyers eligible to Bid on the relevant Ad Exchange are or were eligible to submit Bids.

41. The term **"person"** shall have the meaning provided in Local Rule 26.3, namely, any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

42. The term **"Private Auction Transactions"** shall mean an Indirect Transaction for which only a set of Buyers expressly identified by the Publisher (or an agent or employee thereof) are or were eligible to submit Bids.

43. The term **"Programmatic Transaction"** shall mean a Display Advertising transaction, other than a Publisher-Automated Transaction, that is or was negotiated, transacted, or finalized through Ad Tech Products.

44. The term **"Property"** shall mean a website, mobile application, or other product or service containing space that is sold or offered for sale for the placement of Display Advertising.

45. The term **"Publisher"** shall mean a person or entity operating a Property. For the avoidance of doubt, the owner of the Property shall be deemed the Publisher, even if it has out-sourced the sale of its associated Inventory, in whole or in part, to a third party.

46. The term **"Publisher Ad Server"** shall mean a third-party or in-house product, service, or system that is responsible for selecting (or attempting to select), on behalf of a Publisher, the Display Advertisement (or source from which such Display Advertisement shall be obtained) for a unit of Inventory. For the avoidance of doubt, a Publisher Ad Server may be owned and/or operated by a third-party Ad Tech Provider, or may be owned, developed, or operated by the Publisher or by a third party on behalf of or under contract with the Publisher. For the further avoidance of doubt, a system that creates or manages mediation chains constitutes a Publisher Ad Server for purposes of these Interrogatories.

47. The term **"Publisher-Automated Transaction"** shall mean a Direct Transaction that is or was negotiated, transacted, or finalized through one or more automated services, whether or not auction-based, that is controlled by the Publisher or an affiliate thereof (other than

an Ad Network, Ad Exchange, or SSP). This would include, for example, the Publisher's self-service website for Advertisers to create Campaigns or place advertisements, such as that described at https://facebook.com/business/ads. For the avoidance of doubt, the mere fact that the Impression associated with a Direct Transaction was served by, or that information with respect to such transaction was entered into, a Publisher Ad Server (including one operated by the Publisher) shall not be sufficient to render such transaction a Publisher-Automated Transaction.

48. The term **"Purchase,"** when used in connection with Inventory or Impressions, shall mean to obtain, directly or indirectly through one or more intermediaries, the right to render or display a Display Advertisement in a unit of Inventory, typically but not necessarily in exchange for a monetary payment.

49. The term **"Query"** shall mean a request to provide, or Bid to provide, a Display Advertisement to be rendered in a unit of Inventory, whether denominated as an "ad request," "bid request," or otherwise. A Query may, but need not, request a Bid that will be considered before awarding the right to actually display a Display Advertisement to a particular Advertiser.

50. The terms **"Reserve Price Optimization"** or **"Optimized Pricing"** shall mean the Google product or Feature, or any past iteration of the product or Feature, that dynamically changed the Floor Prices for each Query using historical Bid data in AdX or Google Ad Manager auctions of Inventory.

51. The term **"Search Advertising"** shall mean Online Advertising that is displayed in response to a User's search intent or search terms.

52. The term **"User"** shall mean an end user visiting or using a Property, or a proxy for that end user (including, but not limited to, cookie identifiers or mobile ad identifiers).

53. The terms **"You"** or **"Your"** shall mean Michael Stellman and his authorized representatives or agents, and all other persons acting or purporting to act on behalf of Michael Stellman .

## INSTRUCTIONS

1. In addition to the specific instructions set forth below, these Interrogatories incorporate the instructions set forth in Federal Rules 26 and 33, the Local Rules, the Stipulation and Order Regarding Discovery Procedure ("ESI Order") (ECF No. 508), the Confidentiality Order (ECF No. 685), and Pre-Trial Order No. 5 ("Scheduling Order") (ECF No. 394), or the operative version of those Orders in place at the time responses are served.

2. These Interrogatories seek information available to You, or to which You may gain access through reasonable effort, including information in the possession of Your past and present attorneys, accountants, investigators, consultants, agents, or other persons directly or indirectly employed or retained by You, or anyone else otherwise subject to Your control who maintains records on Your behalf, in Your name, or otherwise under Your control.

3. Unless otherwise specified, these Interrogatories each require a separate response.

4. If You cannot provide a full and complete response to any Interrogatory, You should respond to the Interrogatory to the extent possible, specifying the portion of the Interrogatory You are unable to answer and providing whatever information You have regarding the unanswered portion.

5. If You object to, or otherwise decline to answer, all or any portion of any Interrogatory, please provide all information called for by the Interrogatory to which You do not object or do not decline to answer. For those portions of any Interrogatory to which You object or otherwise decline to answer, state the reason for such objection or declination. If You object to

any Interrogatory on the ground that it is too broad (i.e., that it calls for information which is not relevant), please provide such information as You concede to be not overly broad. If You object to any Interrogatory on the ground that it would constitute an undue burden to provide an answer, please provide such requested information as can be supplied without undertaking such undue burden.

6. If You perceive any ambiguity in an Interrogatory, provide a brief statement of the nature of the perceived ambiguity and the interpretation You used to resolve it.

7. Pursuant to Federal Rule 26(b)(5), if You believe that any Interrogatory calls for information subject to a claim of privilege, then:

   a. Answer all parts of the Interrogatory to which You do not object;

   b. Explain the basis for Your claim of privilege as to each part of the Interrogatory to which You object; and

   c. Identify the general nature of the information withheld.

8. In construing the Interrogatories:

   a. Terms not specifically defined shall be given their ordinary meaning as You understand them to be used in the trade;

   b. The use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all other tenses, moods, or voices, whenever necessary, to bring within the scope of any Interrogatory all information that might otherwise be construed to be outside its scope;

   c. The use of the singular form of any word includes the plural and vice versa;

   d. Words in the masculine, feminine, or neutral gender shall include each of the other genders;

e.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Interrogatory all responses that might otherwise be construed to be outside of its scope;

f.  The terms "all," "any," and "each" shall each be construed as encompassing any and all.

9.  None of the Definitions or Interrogatories shall be construed as an admission relating to the existence of any evidence, to the relevance or admissibility of any evidence, or to the truth or accuracy of any statement or characterization in the Definitions or the Interrogatories.

10. These Interrogatories are continuing in nature. In the event that You become aware of responsive information in addition to, or in any way inconsistent with, that which You previously have provided, prompt supplementation of Your responses is required.

11. Google specifically reserves the right to seek supplementary responses to the Interrogatories before trial.

12. The relevant time period for these Interrogatories, unless otherwise specified, is January 1, 2013 to the present.

## INTERROGATORIES

### INTERROGATORY NO. 26

Identify all facts or evidence, including document identification numbers where applicable, related to or referenced in support of Your contention in Paragraph 47 of the Complaint that "the 'take rate' is the difference between what an advertiser pays for an ad and what portion of that payment the publisher of the ad receives for placing the ad on its website.

13

Google's take rate as an intermediary is typically 54-61%. When ads are presented on Google products, such as Google Search or YouTube, Google keeps the entire price of the ad."

**INTERROGATORY NO. 27**

Identify all facts or evidence, including document identification numbers where applicable, related to or referenced in support of Your contention in Paragraph 59 of the Complaint that "the majority of winning bids by advertisers are at the reserve price."

**INTERROGATORY NO. 28**

Identify all facts or evidence, including document identification numbers where applicable, that support Your contention in Paragraph 73 of the Complaint that "Google abused advertisers' trust and secretly used their true value bids against them."

**INTERROGATORY NO. 29**

Identify all facts or evidence, including document identification numbers where applicable, related to or referenced in support of Your contention in Paragraph 85 of the Complaint that "Google ran an experiment measuring the impact of RPO on exchange competition, finding that RPO netted Google an additional $250 million of annual recurring revenue. Because RPO made use of publishers' ad server user IDs, it exacerbated problems of adverse selection between exchanges and foreclosed competition for pricing."

**INTERROGATORY NO. 30**

Identify all facts or evidence, including document identification numbers where applicable, that support Your contention in Paragraph 89 of the Complaint that Google "knowingly, actively, and affirmatively concealed the facts alleged herein, and the truth about its RPO program." *See also* Complaint ¶¶ 110(b).

**INTERROGATORY NO. 31**

Identify all facts or evidence, including document identification numbers where applicable, that support Your contention in Paragraph 96 of the Complaint that Google engaged in unfair business practices.

**INTERROGATORY NO. 32**

If you contend that "Google intentionally and knowingly omitted material facts regarding the core operations and functions of the AdX auction platform," Complaint ¶¶ 106 and 125, state the material facts that you contend Google "intentionally and knowingly omitted."

**INTERROGATORY NO. 33**

Identify, including by document identification number where applicable, every fact that Google "conceal[ed] and/or suppress[ed]" causing Plaintiff and members of the Class to "sustain[] damages because they were induced to purchase digital advertising space at unfairly inflated prices compared to the fair market value." Complaint ¶¶ 129, 148.

**INTERROGATORY NO. 34**

Identify all facts or evidence, including document identification numbers where applicable, that support Your contention in Paragraphs 130 and 148 of the Complaint that Google "unfairly inflated prices compared to the fair market value."

**INTERROGATORY NO. 35**

Identify, including by document identification number where applicable, every statement or omission by Google that You contend was deceptive, including allegations made in Paragraphs 66, 69, 76, 78-81, 96, 121, and 139.

**INTERROGATORY NO. 36**

Identify all facts or evidence, including document identification numbers where applicable, to support Your contention in Paragraph 152 of the Complaint that You overpaid "for Google's digital search and display advertising platforms."

**INTERROGATORY NO. 37**

Identify all facts or evidence, including document identification numbers where applicable, You contend shows how You were harmed by Google's alleged conduct, *see, e.g.*, Complaint ¶ 103, including all data used to claim that Google's alleged conduct caused harm and all data to be used to calculate damages.

Dated: May 20, 2024              Respectfully Submitted,

                                          */s/   Justina K. Sessions*

Justina K. Sessions
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250
justina.sessions@freshfields.com

Eric Mahr
Robert J. McCallum
700 13th Street NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4545
eric.mahr@freshfields.com
rob.mccallum@freshfields.com

*Counsel for Defendants Google LLC and Alphabet Inc.*