

CRAIG M. REISER
114 WEST 47TH STREET
NEW YORK, NY
212.728.2218
CREISER@AXINN.COM

May 29, 2024

*Via ECF*

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC)

Dear Judge Castel:

    We represent Defendants Google LLC, Alphabet Inc., and YouTube LLC (collectively, "Google") and write to request the Court's permission to take 6 (and potentially 7) additional depositions beyond the 15 depositions permitted by Pre-Trial Order No. 5. *See* ECF No. 394 ("PTO 5"). There is no conference scheduled at this time.

    In PTO 5, the Court set a limit of "15 fact-witness depositions per side," PTO 5 ¶ 6.5, but allowed parties to request additional depositions provided they explain "why [they] need who [they] need when [they're] going above the limits." Hr'g Tr. (Apr. 19, 2022) 58:1-3, ECF No. 291. As of May 17, 2024, Google noticed all 15 of its allotted depositions. It now seeks the Court's leave to depose 6 additional fact witnesses, along with one additional fact witness who used to work at Daily Mail (the "Daily Mail Witness") that it may need to depose.[1] Google shared with the MDL Plaintiffs its intent to seek this Court's leave to notice these depositions, as well as proposed dates prior to the close of fact discovery, and the parties have met and conferred regarding Google's proposed additional depositions. Google understands from these meet-and-confers that:

- The Publisher and Advertiser Plaintiffs consent to Google serving deposition notices on 3 of the proposed deponents.

- During a meet-and-confer call on May 24, 2024, Gannett generally objected to Google's request to serve deposition notices on 3 former employees of Gannett on the basis that the witnesses identified by Google purportedly would have information duplicative of already-noticed witnesses. Gannett stated it would provide Google with its positions in

---

[1] Google has redacted the names of the proposed fact witnesses here to protect their privacy and to conform with past practice in this MDL, and will separately provide the Court with a list of their names—as well as any materials cited herein that identifies their names—in Exhibit A.

May 29, 2024
Page 2

- writing, but has not yet done so other than to say that it is still working on contacting those former Gannett employees.

- Daily Mail objected to Google's request to depose the Daily Mail Witness on the grounds that the witness resides in the United Kingdom and is a former employee.

For the reasons set forth below, Google seeks this Court's leave to depose the 6 (and potentially 7) additional witnesses listed below.

## **Google's Requests for Additional Fact Witnesses Are Reasonable**

Google's request to take the additional depositions outlined herein is reasonable and targeted to provide Google with unique information that Google would not otherwise have the opportunity to obtain. *See In re Weatherford Int'l Sec. Litig.*, 2013 WL 5762923, at *2 (S.D.N.Y. Oct. 24, 2013) (citing the considerations in Fed. R. Civ. P. 26(b)(2)(C) for granting additional depositions). If the requested relief is granted, Google, the sole defendant in this MDL, will be allowed to take a total of 21 (and, potentially, 22) depositions, which is fewer than the 24 depositions that the 14 MDL Plaintiffs are allowed to take.

Each of the proposed additional deponents will provide unique information that will not be cumulative or duplicative of the information Google expects to obtain from the previously noticed deponents. These individuals include executive-level decision makers who directed the MDL Plaintiffs' business strategy beyond just display advertising. This information goes directly to MDL Plaintiffs' claims that Google's conduct is to blame for alleged declines in revenue, quality of published content, and newsroom employment. *See, e.g.*, Gannett Am. Compl., ECF No. 795, ¶ 5 (alleging that, because of Google, "newspaper newsroom employment has dropped by more than half, and more than 20% of all newspapers have closed"), ¶ 249 (alleging Google's conduct "reduces Gannett's investment in content for readers"). Moreover, Google has not yet had "a prior opportunity in discovery to obtain the information sought." *Weatherford*, 2013 WL 5762923, at *2 (granting request for additional depositions where the movants "have not had ample opportunity to discover the information they seek"). Indeed, having recently received voluminous productions from the MDL Plaintiffs, Google believes the witnesses identified herein are necessary to support its defenses.

Google is prepared to take all of these depositions (along with the other noticed depositions) by the June 28, 2024 fact discovery deadline, and to work cooperatively with the appropriate parties on scheduling as may be needed.

## **The Proposed Additional Deponents**

Google respectfully requests permission to take the deposition of the 6 additional fact witnesses below pursuant to PTO 5:

1. Witness 1 - *Gannett Action*
   Witness 1 has unique and extensive knowledge of Gannett's merger with GateHouse Media, including GateHouse's digital advertising strategies before, during, and

after the merger. Because Witness 1 was the Senior Vice President, Digital at GateHouse prior to the merger with Gannett, Witness 1 has unique personal knowledge of GateHouse's use of advertising technology products pre- and post-merger—including GateHouse's working relationship with Google as an ad tech product customer before and after the merger. Witness 1 has knowledge of Gannett's digital advertising performance in relation to its competitors and was involved in discussions about how to improve Gannett's display revenue performance. *See, e.g.*, GANNETT_GOOG_1611346. Witness 1 can also speak to the use of non-Google ad tech products, as the signatory on GateHouse contracts dealing with the use of various ad tech products, including those of Google's competitors. *See, e.g.*, GANNETT_GOOG_0015510; *see also* GANNETT_GOOG_0015531.

2. <u>Witness 2</u> - *Gannett Action*

    Witness 2 has unique and extensive knowledge of Gannett's strategic decision-making at the subsidiary level about whether to adopt (or not adopt) various Google ad tech products and features. Witness 2 was General Manager of Gannett subsidiary USA Today's Sports Media Group, where Witness 2 oversaw the development of the group's digital advertising business, including mobile display advertising. Witness 2 participated in discussions regarding USA Today's use of ad tech products, including discussions related to Gannett's use of ad tags in DFP and Gannett's consideration of Google competitors' ad servers. *See, e.g.*, GANNETT_GOOG_0048978; GANNETT_GOOG_0056544; GANNETT_GOOG_0016585. Witness 2 was also involved in joint Gannett-Google Executive Summits, discussing topics such as AMP and ad blocking initiatives. *See, e.g.*, GANNETT_GOOG_0037152.

3. <u>Witness 3</u> - *Gannett Action*

    As a former Gannett executive with 13 years' tenure at the company, Witness 3 has unique and extensive knowledge of Gannett's strategic business decisions impacting its overall revenue, including Gannett's decisions regarding expanding into and financial reliance on digital advertising. Witness 3 held a variety of roles at Gannett relevant to Gannett's claims, including serving as Vice President for Audience Development and Engagement, Senior Vice President for Strategic Initiatives, Chief Transformation Officer, President of Gannett Media, President of News, and Publisher of USA Today. As the former Gannett President, Witness 3 can uniquely comment on the company's overall strategy across Gannett's print and digital businesses, including advertising decisions affecting revenue, as well as any management decisions that would impact newsroom employment and quality of content produced. *See, e.g.*, Rick Edmonds, *Mea culpa: The Print Edition of USA Today is Still Very Much Alive*, Poynter (May 23, 2022) (discussing the profitability of print advertising and any external impacts on revenue).[2] For example, Witness 3 played a role in Gannett's efforts to "accelerate Gannett's digital subscriber growth." Press Release, Gannett, 'Gannett Announces Strategic Organizational Restructuring,' (June 1, 2022). Further, Witness 3 authored the 2020 Gannett memorandum announcing furloughs and other cost-cutting measures, demonstrating Witness 3's unique ability to speak to Gannett's financial picture over the last several years from a company-

---

[2] Available at https://www.poynter.org/business-work/2022/mea-culpa-the-print-edition-of-usa-today-is-still-very-much-alive/.

wide perspective. *See* Rick Edmonds, *Gannett, Responding to the Coronavirus-Related Downturn, Announces a Series of Cuts*, Poynter (Mar. 30, 2020).

4. <u>Witness 4</u> - *Advertisers Action*

   Witness 4 has unique and extensive knowledge about Google advertising accounts and/or payment records for Kinin, Inc., one of the three Advertiser putative class representatives. Witness 4 is the former CEO of Kinin, Inc. As a former member of Kinin's executive team, Witness 4 is likely to possess unique knowledge as to Kinin's executive-level decision-making regarding display advertising that lower-level employees would not be privy to. Google has yet to take a deposition of this putative class representative. Advertiser Plaintiffs have consented to the service of a deposition notice to Witness 4.

5. <u>Witness 5</u> - *Advertisers Action*

   Cliffy Care Landscaping, Inc. is one of three named Advertiser Plaintiffs. Google has yet to take a deposition of this putative class representative or any of its employees. Advertiser Plaintiffs have consented to the service of a deposition notice to Witness 5 but otherwise reserve the right to meet and confer.

6. <u>Witness 6</u> - *Publishers Action*

   Witness 6 has unique and extensive knowledge about Mikula Web Solutions, Inc.'s use of Google's publisher AdSense products to sell advertising space on Mikula's web properties in addition to non-Google advertising platforms; Mikula's relationship and agreements with Google relating to Mikula's use of Google's AdSense products; Mikula's experience with non-Google monetization partners; and the impact of Google's practices, policies, and take rates on Mikula's advertising revenue and sale of advertising space on Mikula web properties using non-Google products and/or services. Witness 6 is one of the founders of Mikula. Mikula is one of the six Publisher putative class representatives. Google has yet to take a deposition of this putative class representative. Publisher Plaintiffs have consented to the service of a deposition notice to Witness 6.

**<u>The Daily Mail Witness</u>**

Finally, Google requests leave to notice the deposition of the Daily Mail Witness in the event the Daily Mail Witness's voluntary participation can be secured and the Daily Mail Witness's yet-to-be-produced documents confirm the Daily Mail Witness possesses necessary information. The Daily Mail Witness has unique and extensive knowledge of Daily Mail's digital advertising decisions at the executive level. During the Daily Mail Witness's tenure as editor-in-chief of MailOnline, the Daily Mail Witness oversaw Daily Mail's transition to digital advertising, including its use of programmatic advertising, and saw the revenue generated from digital advertising surpass that of print advertising. Thus, the Daily Mail Witness can uniquely speak to the changes approved while the Daily Mail Witness was at Daily Mail, which resulted in these revenue changes. The Daily Mail Witness also chaired Daily Mail's regular internal Programmatic Management Meetings, suggesting that the Daily Mail Witness can speak uniquely to management-level decisions discussed and made about Daily Mail's use of programmatic advertising. *See* DM_GOOG_0378375; DM_GOOG_0378376. Further, the Daily

May 29, 2024
Page 5

Mail Witness was involved in discussions regarding changes in traffic to Daily Mail sites driven by its utilization of various ad tech features. *See, e.g.*, DM_GOOG_0036088.

Although Daily Mail was ordered to produce documents from the custodial files of the Daily Mail Witness on March 20, 2024, ECF No. 724, Daily Mail has yet to produce documents from the Daily Mail Witness's files.[3] In recognition of that, and the fact that Daily Mail has previously argued that the Daily Mail Witness does not possess relevant, non-duplicative information of other Daily Mail witnesses whose depositions Google has noticed, *see* ECF No. 718 at 7-8, Google requested that the Daily Mail Witness be made available for a deposition on June 28, 2024 so that Google could withdraw its notice if the yet-to-be-produced documents from the Daily Mail Witness's files establish that the deposition is unnecessary. Daily Mail responded by objecting to the Daily Mail Witness's deposition on the grounds that Google should have sought the Daily Mail Witness's deposition earlier (despite Daily Mail's continued failure to produce documents from the Daily Mail Witness's custodial files), and that the Daily Mail Witness is a resident of the United Kingdom whose deposition would need to be secured through the Hague Convention. However, when Google inquired as to the steps Daily Mail and its counsel took to determine whether the Daily Mail Witness would voluntarily sit for a deposition, Daily Mail refused to answer.[4]

Google may decide not to take the Daily Mail Witness's deposition if the documents from the Daily Mail Witness's yet-to-be-produced custodial files establish that the deposition is unnecessary. Nor does Google wish to delay discovery by pursuing this deposition through the Hague Convention. However, Because Daily Mail has refused to fulfill its Court-ordered discovery obligations in a timely manner and it has refused to identify the steps it took (if any) to secure the Daily Mail Witness's voluntary attendance, Google requests leave to notice the Daily Mail Witness's deposition to preserve its ability to depose the Daily Mail Witness on a voluntary basis.

* * *

For all of these reasons, Google respectfully requests the entry of an order granting it leave to notice and take the depositions of the 6 (and potentially 7) aforementioned individuals.

---

[3] Since the Court's March 20, 2024 Order, Google has repeatedly asked Daily Mail to confirm when it will produce the Daily Mail Witness's documents. It was only during a meet-and-confer last week that Daily Mail finally stated it hopes to produce the Daily Mail Witness's documents sometime this week; that production has yet to be made.

[4] Google will separately provide the Court with this correspondence naming the witness in Exhibit B.

May 29, 2024
Page 6

        Respectfully submitted,

        <u>/s/ Craig M. Reiser</u>
        Craig M. Reiser
        AXINN, VELTROP & HARKRIDER LLP
        114 West 47th Street
        New York, New York 10036
        Telephone: (212) 728-2218
        Email: creiser@axinn.com

        <u>/s/ Justina K. Sessions</u>
        Justina K. Sessions**
        FRESHFIELDS BRUCKHAUS
        DERINGER US LLP
        855 Main Street
        Redwood City, CA 94063
        Telephone: 650-618-9250
        Email: justina.sessions@freshfields.com

        Counsel for Defendants Google LLC,
        Alphabet Inc., and YouTube LLC

        **Except as to *Associated Newspapers Ltd.,*
        *et al. v. Google LLC*, No. 1:21-cv-03446
        (PKC)

CC: All Counsel of Record (via ECF)