

CRAIG M. REISER
114 WEST 47TH STREET
NEW YORK, NY  10036
212.728.2218
CREISER@AXINN.COM

*Via ECF*

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

June 18, 2024

Re:   *In re Google Digital Advertising Antitrust Litigation*, No. 21-md-03010 (PKC)
*In re Google Digital Advertising Antitrust Litigation*, No. 21-cv-07001 (PKC)
*Singh v. Google LLC et al.*, No. 23-cv-03651 (PKC)
*Stellman v. Google LLC et al.,* No. 23-cv-01532 (PKC)
*In re Google Digital Publisher Litigation*, No. 21-cv-07034 (PKC)
*Inform Inc. v. Google LLC et al.*, No. 23-cv-01530 (PKC)
*Associated Newspapers Ltd., et al. v. Google LLC, et al.*, No. 1:21-cv-03446 (PKC)
*Gannett Co., Inc. v. Google LLC, et al.*, No. 1:23-cv-05177 (PKC)

Dear Judge Castel:

We write on behalf of Defendants Google LLC, Alphabet Inc., and YouTube, LLC (together, "Google") to respectfully seek a protective order under Federal Rule of Civil Procedure 26(c) with regard to Requests for Admission ("RFAs") propounded by MDL Plaintiffs that do not seek to authenticate the genuineness of documents under Rule 36(a)(1)(B).[1] There is a conference scheduled for June 20, 2024.

MDL Plaintiffs have already enjoyed substantial discovery produced in this case through requests for production ("RFPs"), interrogatories, and depositions. They have: (1) propounded approximately 340 RFPs which, in conjunction with other productions made in response to investigative subpoenas and RFPs in the Virginia Case,[2] have engendered nearly six and a half million documents from 180 custodians, hundreds of terabytes of data, and access to over 80 gigabytes of source code; (2) propounded almost 60 interrogatories, not including subparts or the 17 interrogatory responses received from the Virginia Case; and (3) taken or noticed at least 24 depositions,[3] in addition to MDL Plaintiffs' access to the transcripts of nearly 30 depositions

---

[1] The RFAs are included in Exhibits A-K to this letter.

[2] *United States et al. v. Google LLC*, No. 1:23-cv-00108 (LMB/JFA) (E.D. Va.) (the "Virginia Case").

[3] In addition, despite having already been granted more additional depositions than Google, MDL Plaintiffs are seeking yet *another* deposition.  *See* ECF No. 833.  Google is opposing this motion in a separate filing.

taken by plaintiffs in the Virginia Case, including 16 transcripts from depositions of 14 Google employees, and an additional 32 transcripts from depositions of 30 Google employees taken by the Department of Justice in connection with their pre-suit investigation.

Despite representing to the Court on May 2, 2024 that discovery was concluding, *see* ECF No. 776 at 2, MDL Plaintiffs subsequently began serving successive and voluminous sets of RFAs that included requests for information beyond the authenticity of documents that Your Honor authorized in Pre-Trial Order No. 5 (ECF No. 394).[4]  In all, MDL Plaintiffs propounded nine sets of RFAs, seeking well over 9,700 requests for non-authentication information related to document admissibility (ballooning to the tens of thousands when including discrete parts of the RFAs)[5] and more than 450 requests for non-authentication information related to the facts of this case, which are duplicative of other discovery produced to date.[6]  These requests for written discovery—numbering (without counting discrete parts) over 10,000 and served at the conclusion of fact discovery—are not proportionate to the needs of this case.  *See* Fed. R. Civ. P. 26(b)(1).

Google attempted in good faith to negotiate with MDL Plaintiffs regarding these RFAs during meet-and-confers on June 7 and 12, 2024.  For MDL Plaintiffs' more than 450 fact-related RFAs, Google proposed to MDL Plaintiffs that it would be willing to accept service of 40 common non-authentication RFAs propounded by the Discovery Steering Committee.  MDL Plaintiffs rejected this proposal.  Google also proposed that it would be willing to negotiate a stipulation addressing admissibility of likely trial exhibits closer to trial to address MDL Plaintiffs' more than 9,700 admissibility RFAs.  This proposal was likewise rejected.

Under Rule 26(b)(1), parties are only entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Furthermore, Rule 26(b)(2)(C) requires a court to limit discovery if, among other things, it determines that "the discovery sought is unreasonably cumulative or duplicative," "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action," or if the discovery is "outside the scope permitted by Rule 26(b)(1)."  *See also Sahu v. Union Carbide Corp.*, 262 F.R.D. 308, 317 (S.D.N.Y. 2009).  Rule 26(c)(1)(D) gives the Court authority on motion and for good cause to limit the scope of discovery.

---

[4] Some of MDL Plaintiffs' RFAs included a subpart seeking information related to document authenticity.  In connection with these authentication RFAs, the parties have been negotiating a stipulation to authenticate documents produced in this action.

[5] Advertiser Plaintiffs and Inform have crafted their admissibility requests as iterative RFAs.  *See* Ex. J & Ex. K. Each have propounded a few umbrella RFAs comprised of numerous discrete parts requesting admissibility information for thousands of documents listed in referenced appendices.

[6] Plaintiffs Gannett and Daily Mail have also served two additional sets of RFAs styled as authenticity RFAs.  *See* Gannett's First Set of RFAs (Ex. A) and Daily Mail's First Set of RFAs (Ex. B).  Within these sets are two identical requests seeking Google's admissions that trial transcripts from a wholly separate action—*United States v. Google*, No. 1:20-cv-3010 (D.D.C. 2023)—are authentic.  These requests are inappropriate authenticity RFAs and irrelevant to this proceeding in any event because they seek admissions as to the authenticity of trial transcripts from another case.  Accordingly, Google requests that those RFAs—for which Gannett and Daily Mail have agreed to extend Google's response deadline to June 21—be treated together with the remaining non-authenticity RFAs that are the subject of this motion for a protective order.

The Court should bar MDL Plaintiffs' unduly extensive requests for written discovery for at least three reasons:

***First*, these over 10,000 non-authentication RFAs are unduly burdensome, including as duplicative of existing discovery, and were served with undue delay**.

MDL Plaintiffs seek to require Google, at the conclusion of fact discovery, to respond to over 10,000 requests for admission relating to facts at issue in this case or the admissibility of documents. The sheer number of requests alone—which MDL Plaintiffs refuse to reduce—renders these requests for written discovery unduly burdensome. Courts routinely deny propounded written discovery as unduly burdensome with as few as 86 requests, particularly in the presence of other substantial discovery produced. *See Sahu*, 262 F.R.D. at 318 (denying 86 RFAs where substantial other discovery had already been produced); *see also Penn Engr'g & Manf'g Corp. v. Peninsula Components, Inc.*, 2021 WL 4037857, at *8 (E.D. Pa. Sept. 3, 2021) (denying 185 RFAs while observing that "'[c]ourts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive,'" and collecting cases); *Joseph L. v. Conn. Dep't of Children & Families*, 225 F.R.D. 400, 403 (D. Conn. 2005) (163 RFAs were "excessive to the point of being abusive"); *Wigler v. Elec. Data Sys. Corp.*, 108 F.R.D. 204 (D. Md. 1985) (denying 1,664 RFAs).

As further evidence of the unduly burdensome nature of these non-authentication RFAs, the substance of many of these requests also reveals MDL Plaintiffs' improper attempt to avoid actually reviewing the vast discovery and Answers they have sought and received from Google. *See Sahu*, 262 F.R.D. at 318 (observing that the RFAs "appear to be an attempt to shift the burden of sifting through this discovery onto Defendants" which is "not an appropriate use of Rule 36"). Many of these non-authentication RFAs are duplicative of existing discovery and/or responses Google provided in its Answers to MDL Plaintiffs' complaints and in related actions. To illustrate just a few examples:

- Written discovery requests seeking the dates of Google's acquisitions of DoubleClick, Invite Media, AdMeld, and AdMob, along with other acquisition information. *See* Plaintiff Gannett's Second Set of RFAs (Ex. C), Nos. 83, 85, 87, 89, 90; Plaintiff Daily Mail's Second Set of RFAs (Ex. D), Nos. 83, 85, 87, 89, 90; Publisher Plaintiffs' Fifth Set of RFAs (Ex. I), Nos. 20, 22, 23, 28, 30, 31; Plaintiff Inform's First Set of RFAs (Ex. J), Nos. 2, 3, 4, 6.

  Google has already made relevant admissions and denials in its Answers in this MDL and in the related Virginia Case. *See, e.g.*, ECF No. 740 ¶¶ 94, 97, 184; ECF No. 830 ¶ 108; ECF No. 829 ¶ 91; E.D. Va. ECF No. 208 ¶¶ 16, 23, 85, 86.

  Information sought in the requests is also found in documents produced by Google, as well as in public records.[7]

---

[7] *See, e.g.*, Google Inc. SEC Form 8-K (Apr. 13, 2007); Google Inc. SEC Form 10-K for the fiscal year ended Dec. 31, 2008 at 11-12; Google Inc. SEC Form 10-K for the fiscal year ended Dec. 31, 2009 at 84; *Statement of the Department of Justice's Antitrust Division on its Decision to Close its Investigation of Google Inc.'s Acquisition of*

June 18, 2024
Page 4

- Written discovery requests seeking information about the introduction and function of Google Ad Manager.  *See* Plaintiff Gannett's Second Set of RFAs (Ex. C), Nos. 13, 14, 15, 16, 17, 18, 20; Plaintiff Daily Mail's Second Set of RFAs (Ex. D), Nos. 13, 14, 15, 16, 17, 18, 20; Publisher Plaintiffs' Fifth Set of RFAs (Ex. I), No. 68; Plaintiff Inform's First Set of RFAs (Ex. J), No. 11.

  Google has already made relevant admissions and denials in its Answers in this MDL and in the related Virginia Case.  *See, e.g.*, ECF No. 740 ¶¶ 16, 226; ECF No. 741 ¶¶ 173, 183; ECF No. 830 ¶¶ 120-21; ECF No. 829 ¶¶ 99-100; E.D. Va. ECF No. 208 ¶ 46.

  Information sought in the requests is also found in testimony from Rule 30(b)(1) and 30(b)(6) depositions taken by MDL Plaintiffs and Virginia plaintiffs, documents produced by Google, as well as in public records and Google's public statements.[8]

- Written discovery requests seeking information regarding price floors under Google's Unified Pricing Rules.  *See* Plaintiff Gannett's Second Set of RFAs (Ex. C), Nos. 68, 69, 71, 72, 73; Plaintiff Daily Mail's Second Set of RFAs (Ex. D), Nos. 68, 69, 71, 72, 73; Publisher Plaintiffs' Fifth Set of RFAs (Ex. I), Nos. 144, 145, 146, 148.

  Google has already made relevant admissions and denials in its Answers in this MDL and in the related Virginia Case.  *See, e.g.*, ECF No. 740 ¶¶ 29, 324; ECF No. 739 ¶¶ 254, 255, 258; ECF No. 830 ¶¶ 216, 223; ECF No. 829 ¶¶ 196, 201; E.D. Va. ECF No. 208 ¶¶ 36, 236, 239, 246.

  Information sought in the requests is also found in documents produced by Google, Google's response to Publisher Plaintiffs' Interrogatory 8, testimony from Rule 30(b)(1) and 30(b)(6) depositions taken by MDL Plaintiffs and Virginia plaintiffs, and Google's public statements.[9]

- Written discovery requests seeking launch dates of sell-side Dynamic Revenue Share, DRS v2, Truthful DRS (or tDRS), Project Bernanke, Project Bell v.2, Project Poirot, and/or Google's unified first-price auction.  *See* Plaintiff Gannett's Second Set of RFAs (Ex. C), Nos. 106, 112, 117; Plaintiff Daily Mail's Second Set of RFAs (Ex D), Nos. 106, 112, 117; Publisher Plaintiffs' Fifth Set of RFAs (Ex. I), Nos. 151, 156,

---

*Admeld Inc.*, U.S. Dep't of Justice (Dec. 2, 2011),  https://www.justice.gov/opa/pr/statement-department-justices-antitrust-division-its-decision-close-its-investigation-google.

[8]  *See, e.g.*, Alphabet Inc. SEC Form 10-K for the fiscal year ended Dec. 31, 2018 at 27; J. Bellack, *Introducing Google Ad Manager*, Google Ad Manager (Jun. 27, 2018), https://blog.google/products/admanager/introducing-google-ad-manager/?_gl=1*16h8fcl*_ga*MTU5ODMzMzQ0OC4xNzExMjU2Mjkz*_ga_KDB2CE5G3Y*MTcxODUyNTY1My4zLjEuMTcxODUyNzI3My4wLjAuMA..; A. Shellhammer, *2018 rewind: A look back at the top stories, moments and research*, Google Ad Manager (Dec. 18, 2018), https://blog.google/products/admanager/2018-ad-manager-year-in-review/.

[9]  *See, e.g.*, Jason Bigler, *An update on first price auctions for Google Ad Manager*, Google Ad Manager (May 10, 2019), https://blog.google/products/admanager/update-first-price-auctions-google-ad-manager/.

160, 171, 178, 185, 195.

Google has already made relevant admissions and denials in its Answers in this MDL. *See* ECF No. 740 ¶¶ 29, 315, 324; ECF No. 739 ¶ 254; ECF No. 830 ¶ 201; ECF No. 829 ¶¶ 119, 149.

Additionally, MDL Plaintiffs already received the launch dates and other information for sell-side Dynamic Revenue Share, DRS v2, tDRS, Project Bell v.2 and Unified First Price Auction in Google's responses to Interrogatory 10 and Interrogatory 13 propounded by the plaintiffs in the Virginia Case. MDL Plaintiffs also received this information, plus for Project Bernanke, through Publisher Plaintiffs' Interrogatory 8, which was propounded after Publisher Plaintiffs had already received Google's responses to Virginia plaintiffs' Interrogatory 10.

This information is also found in testimony from Rule 30(b)(1) and 30(b)(6) depositions taken by MDL Plaintiffs and Virginia plaintiffs, documents produced by Google, some of which are identified in responses to Virginia plaintiffs' Interrogatory 10, as well as in Google's public statements.[10]

Furthermore, the necessity of this additional, duplicative written discovery is belied by that fact that the Court did not contemplate this type of discovery in its pre-trial orders. Pre-Trial Order Nos. 3 and 5 (ECF Nos. 311 & 394) organized discovery in this complex multidistrict litigation around requests for production, depositions, interrogatories, and RFAs seeking document authenticity—that is, nearly every type of discovery vehicle outside of non-authentication RFAs. Pursuant to the Court's Pre-Trial Orders, Google has provided or will provide this discovery in response to MDL Plaintiffs' myriad discovery requests. *See Sahu*, 262 F.R.D. at 318; *see also Tarleton v. DG Louisiana LLC*, 2022 WL 1548529, at *3-4 (W.D. La. May 16, 2022) (denying plaintiff's RFAs in part because they sought information already in the plaintiff's possession or were more properly obtained through other discovery vehicles).

Lastly, MDL Plaintiffs have had ample time to obtain much of this information and have provided no explanation as to why they waited until the conclusion of fact discovery to serve these over 10,000 requests for written discovery. As shown above, there is no reason why MDL Plaintiffs could not have served these requests for written discovery earlier than they did. Their failure to do so results in undue delay that further prejudices Google in light of the massive volume of requests.

Consequently, the Court should bar these requests for written discovery. *See Tarleton*, 2022 WL 1548529, at *2-4 (quashing plaintiff's 178 RFAs served "barely one month before the discovery deadline" because, in pertinent part, the requests sought information already in plaintiff's possession, contravened the spirit of the discovery rules, and the plaintiff had ample time to obtain information); *see also Buxbaum v. Saul*, 2020 WL 4559172, at *2 (N.D. Ind. Aug. 7, 2020) (denying 6 depositions, 15 interrogatories, and 6 RFAs served one month prior to the close of discovery because Plaintiff had ample time to previously obtain the information during

---

[10] *See, e.g.*, Jason Bigler, *An update on first price auctions for Google Ad Manager*, Google Ad Manager (May 10, 2019), https://blog.google/products/admanager/update-first-price-auctions-google-ad-manager/.

June 18, 2024
Page 6

multi-year discovery).

***Second***, **these over 10,000 non-authentication RFAs are inconsistent with the discovery the Court has structured in Pre-Trial Order Nos. 3 and 5.**

For discovery in this complex multidistrict litigation, the Court crafted careful instructions to balance the objectives of Rule 26 with burdens associated with a single defendant fielding discovery requests from a multitude of different parties. The upshot was Pre-Trial Order No. 3, which assigned responsibility to a centralized Discovery Steering Committee to funnel MDL Plaintiffs' discovery requests and to propound requests for production, interrogatories, and depositions common to all MDL Plaintiffs. *See* ECF No. 311. The Court left open the opportunity for case-specific discovery if warranted by requiring parties to first seek leave of the Court, but it necessitated that such case-specific discovery must comply with Rule 26 and must not be duplicative of discovery propounded by the Discovery Steering Committee. *Id.*

In its scheduling order, Pre-Trial Order No. 5, ECF No. 394, the Court provided further limitations on discovery, including instructions for initial requests for production (¶ 6.1), limitations on the type and number of interrogatories that could be served (¶ 6.2), deadlines by which the parties should serve authentication RFAs (¶ 6.3), and tight guidelines for depositions of fact witnesses, including those prohibiting duplicative questioning (¶¶ 6.4-6.7). In particular, although MDL Plaintiffs and Google had both submitted proposed orders seeking deadlines by which the parties should serve RFAs "other than for the sole purpose of authenticating documents," *see* ECF No. 358-1 ¶ 6.3 (MDL Plaintiffs' proposal); ECF No. 371-1 ¶ 6.3 (Google's proposal), Pre-Trial Order No. 5 ultimately only set deadlines for "Requests to Admit for the *purpose of authenticating documents*." ECF No. 394 ¶ 6.3 (emphasis added).

By insisting that Google answer over 10,000 written discovery requests from nine different sets of RFAs duplicative of other existing discovery and Google's Answers, MDL Plaintiffs are circumventing this Court's ordered approach and limitations to discovery in an effort to overload Google with written discovery requests in the twilight of fact discovery. *See Siani*, 2009 WL 3254924, at *1 (Rule 36's "purpose is not to provide a means of bypassing traditional discovery devices or avoiding limitations on such devices, such as the interrogatory and deposition limits in this District").

This is an improper use of Rule 36 and is antithetical to the carefully calculated approach this Court set forth in Pre-Trial Order Nos. 3 and 5. *See Tarleton*, 2022 WL 1548529, at *3-4.

***And third***, **the more than 9,700 admissibility RFAs are premature because admissibility may be addressed by the parties in a trial stipulation.**

MDL Plaintiffs propounded 9,700 RFAs with numerous discrete parts seeking information related to document admissibility, including under Federal Rule of Evidence 803(6). MDL Plaintiffs represent to Google that their non-authentication RFAs are intended to "reduce trial time and narrow the issues in dispute." *See* I. Earnhardt e-mail to S. Murray (June 14, 2024) (Ex. L). MDL Plaintiffs, however, do not address the prematurity of admissibility RFAs at this stage in the litigation. Moreover, RFAs under Rule 36 are generally disfavored during discovery given their purpose of narrowing issues for trial. *See Siani v. SUNY Farmingdale et al.*, 2009

June 18, 2024
Page 7

WL 3254924, at *1 (E.D.N.Y. Oct. 7, 2009) (denying RFAs as instruments not well-suited for fact discovery).  This is particularly true for information like document admissibility that is relevant for sets of trial exhibits, which the parties will assemble at a later stage in this litigation.  Consequently, as a matter of efficiency and economy, parties typically address such issues closer to trial when triable issues have already been narrowed after the motion for summary judgment stage.  *See, e.g.*, *Mayaguez S.A. v. Citigroup Inc. et al.*, No. 1:16-cv-06788 (S.D.N.Y.), ECF No. 381 (trial stipulation involving agreement on admissibility of trial exhibits).

Google has already proposed to address document admissibility closer to trial when the parties will have a clearer sense of relevant trial exhibits at issue.  MDL Plaintiffs have rejected this proposal without addressing the disproportionate and premature nature of their more than 9,700 written discovery requests seeking information related to document admissibility propounded at the conclusion of fact discovery.

\* \* \*

Accordingly, Google respectfully requests from the Court a protective order under Federal Rule of Civil Procedure 26(c) with regard to non-authentication Requests for Admission.

Respectfully submitted,

/s/ Craig M. Reiser
Craig M. Reiser
AXINN, VELTROP & HARKRIDER LLP
114 West 47th Street
New York, New York 10036
Telephone: (212) 728-2218
creiser@axinn.com

/s/ Justina K. Sessions
Justina K. Sessions\*\*
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
855 Main Street
Redwood City, CA 94063
Telephone: 650-618-9250
Email: justina.sessions@freshfields.com

Counsel for Defendants Google LLC, Alphabet Inc., and YouTube, LLC

\*\*Except as to *Associated Newspapers Ltd. v. Google LLC*, No. 21-cv-03446 (PKC)

CC: All Counsel of Record (via ECF)

## Federal Rule of Civil Procedure 37(a)(1) Certification

      I hereby certify that Defendants Google LLC, Alphabet Inc., and YouTube, LLC (together, "Google") have in good faith conferred with the Discovery Steering Committee and that the parties have reached an impasse.

/s/ Craig M. Reiser
Craig M. Reiser
AXINN, VELTROP & HARKRIDER LLP
114 West 47th Street
New York, New York 10036
Telephone: (212) 728-2218
creiser@axinn.com

/s/ Justina K. Sessions
Justina K. Sessions**
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
855 Main Street
Redwood City, CA 94063
Telephone: 650-618-9250
Email: justina.sessions@freshfields.com

Counsel for Defendants Google LLC,
Alphabet Inc., and YouTube, LLC

**Except as to *Associated Newspapers Ltd. v. Google LLC*, No. 21-cv-03446 (PKC)