

**Silicon Valley**
855 Main Street
Redwood City, CA 94063
T +1 650 618 9250 (Switchboard)
 +1 650 461 8276 (Direct)
E justina.sessions@freshfields.com
www.freshfields.com

**Via ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

June 18, 2024

**Re:**   *In re Google Digital Advertising Antitrust Litigation*, **No. 1:21-md-03010 (PKC);**
  *Inform Inc. v. Google LLC, et al.*, **No. 1:23-cv-01530 (PKC)**

We write on behalf of Google LLC, Alphabet Inc., and YouTube, LLC (together, "Google") in opposition to Inform's letter motion to compel dated June 14, 2024, ECF No. 833. As set forth below, the Court should deny all of the relief sought by Inform.  Despite representing to this Court that it would not expand the scope of discovery and frequently proclaiming itself as the "first-filed" digital advertising action in the MDL, *e.g.* ECF No. 479 at 1, Inform is nevertheless seeking to balloon discovery or alter the case schedule without justification at this very late stage.  The Court has scheduled a discovery conference for June 20, 2024.

*First*, Inform's representation to the Court—that Google has failed to explain the reasons for purportedly "missing" communications in Google's productions, Ltr. at 2—is false.  Google provided written explanations for the supposed discrepancies, including custodial search parameters, hold dates, and retention periods.  Inform has not challenged those explanations.

*Second*, Inform has also misrepresented Google's position with respect to data productions.  Ltr. at 3-4.  Google has repeatedly explained to Inform why its late-stage request for additional, bespoke, transaction-level data is not feasible.  Just last week, Inform agreed to accept a compromise proposal in which Google would reproduce a subset of previously produced data in the specific format requested by Inform.  But two days later, Inform inexplicably changed position and then moved to compel the exact type of bespoke, custom dataset that it knows does not exist in the ordinary course of business, is not feasible to produce, and that Google told the Court it would object to producing.

*Third*, Inform's request for yet another deposition should be denied.  Inform already moved once for additional depositions, but did not limit its sweeping request or otherwise prioritize the one it now seeks.  The Court granted Inform permission to take one additional deposition, but denied Inform's request for a "blank check" to take others. ECF No. 777.  Inform now seeks to relitigate that request based on the theory that it could not have known the importance of their latest proposed deponent until recently.  But the record shows that Inform

had extensive knowledge of their preferred deponent for many months (if not years) but failed to seek their deposition when Inform had the opportunity to do so.

**Google Has Already Provided The Explanations Sought In Inform's Motion.**

Inform takes issue with the volume of direct communications between Google and Inform that Google has produced.  Inform falsely represents that, while it has requested an explanation, "Inform has received none."  Ltr. at 2.[1]  But Google already told Inform that the content of its document production is explained by the combination of custodial search parameters, legal hold dates, and Google's applicable 18-month retention period for emails (the standard retention period in place absent a legal hold).  Google's additional analysis since receiving Inform's motion further supports that assessment.  The fact that Google may not have retained emails from many years before Inform filed its complaint is a function of the length of time Inform waited to sue, not any deficiency in the heavily negotiated search terms and custodians, or the resulting productions.

Google has produced approximately 6.5 million documents to MDL Plaintiffs, including Inform.  Google negotiated search terms and custodians with all Plaintiffs in the MDL over the course of eight months in 2023, culminating in Plaintiffs filing a motion to compel on November 1, 2023.  The Court granted Plaintiffs' motion on November 2, 2023, ECF No. 664.

Inform opted out of the Court's November 2, 2023 Order and told the Court that it intended to negotiate separately with Google.  Nov. 2, 2023 Conference H'rg Tr. 15:10-14 ("THE COURT:  Inform is not content with the additional search terms and the additional custodians *which I just said I was prepared to give them*.  You want to do a whole different round.  We'll carve you out of this, and we'll take you in due course.") (emphasis added).

Since then, Inform and Google have had further protracted custodian and search terms negotiations.  Google agreed to add all ten of the custodians proposed by Inform, and ran 200+ previously agreed search terms across the files of those ten new custodians.  Google also agreed to add another 39 search strings to be run across the files of all MDL custodians.  Google has completed those Inform-specific productions, comprising over 270,000 documents.

Inform now complains that it has not found as many communications between Inform and its chosen Google custodians as it expected to see, and has represented to the Court that Google has failed to provide any explanation for the asserted discrepancy.  That is false:  Google investigated Inform's concerns and told Inform—prior to its filing the instant motion—-that they lacked basis.  The vast majority of "direct communications" produced by Inform are from 2017 and earlier, so Google's standard 18-month email retention period for all employees generally explains why those emails did not appear in Google's review and production sets.  On June 14, 2024, Google explained as much to Inform:

> We have looked into Inform's assertions about purported incompleteness of Google's productions and are not aware of any evidence to support Inform's assertions.  While Inform complains that it has produced email communications with Inform that were not also produced by Google, there are a number of possible explanations for such

---

[1] Contrary to Inform's assertion, Google never represented that "the communications would be forthcoming,"  Ltr. at 2.  Google simply noted that its Inform's productions were not yet complete.  May 21, 2024 H'rg Tr. at 7:23-8:4.

discrepancy.  For example, unless a custodian is on legal hold, emails are retained for 18 months.  Custodian, date, and search term restrictions can also play a role.

[Custodian X], the only custodian specifically identified by Inform as supporting its concerns, is illustrative.  Google has produced over 10,000 emails from [Custodian X's] custodial files.  However, [Custodian X] was put on legal hold shortly after Inform filed its first complaint. All correspondence between [Custodian X] and Inform that we have identified in Inform's productions occurred in 2016 or earlier.  Therefore, it is unsurprising that such correspondence is not found in the custodial productions of [Custodian X]. We also looked into the 10 Inform-specific custodians and likewise found that their respective hold dates and retention timeframes explain why their communications with Inform—which based on Inform's productions occurred in 2016 and earlier—did not appear in their custodial files.

Thus, the discrepancy in produced communications between Inform and Google does not support Inform's assertion that Google's production is incomplete or otherwise deficient.

Google has now gone beyond the above analysis, previously supplied to Inform, to assess which Google custodians agreed to in the MDL had emails that were produced in Inform's productions.  Beyond those analyzed for the purpose of Google's June 14 letter, Google identified only five additional Google custodians with emails in the To, From, CC, or BCC fields of Inform's productions, and all but two of their "direct communications" were dated more than 18 months prior to the relevant custodian's placement on legal hold.  This explains why Google did not produce the documents: they no longer exist and Google had no obligation to preserve them because they did not exist at the time of the hold.  As to the two remaining documents, one was already produced[2] and one was previously deemed not responsive but will now be produced in short order.[3]

Inform's motion should be denied.  Google has produced all responsive communications that hit on the parties' agreed-upon search terms and custodian parameters.[4]

**Google Has Already Explained To Inform Why It Is Not Feasible To Produce Additional Transaction-Level Data That Is Not Kept In The Ordinary Course Of Business.**

Google has produced hundreds of terabytes of data, including multiple transaction-level datasets related to three Google products (Google Ads, DV360, and Google Ad Manager).  As we have repeatedly explained to Inform (and represented to the Court), it is not feasible for Google to create additional bespoke transaction-level datasets at this late stage of discovery.[5] Indeed, Inform remains the only MDL Plaintiff still requesting them.[6]

---

[2] GOOG-AT-MDL-B-001242452.

[3] Google has in good faith re-reviewed all documents in its review database that hit on Inform's email domains and has identified five additional responsive documents for production.

[4] The sole exceptions are the five documents referenced in footnote 4, which will be produced tomorrow, June 19.

[5] Inform's claim that Google's burden objection "contradicts Google's clear representations to Judge Castel," Ltr. at 3, is false.  Counsel for Google was clear at the May 21 status conference that "we would preserve our burden objections with respect to Inform's request to creating any kind of new custom bespoke dataset that does not exist in the ordinary course of business because those could take months," to which the Court responded: "All right.  I can rule on that.  That's fine."  May 21, 2024 H'rg Tr. at 15:13-19.

[6] Other Plaintiffs have sought such data but eventually dropped such requests.

Inform has been on notice of the burden to Google of collecting and analyzing transaction-level data since at least February 27, 2023.[7]   Since then, Google has repeatedly described the burden associated with constructing the transaction-level datasets it has produced in this and related litigations—which is not kept in the ordinary course of business—in both written correspondence and dozens of meet-and-confers with the Discovery Steering Committee and counsel to Inform.   (Indeed, Ms. Vash has been a member of the Discovery Steering Committee since before Inform's case was added to the MDL).

As Inform well knows, prior attempts to create such datasets have required months of extensive work from multiple Google engineers, who developed custom processes to pull, assemble, and quality-check the data.   In total, over the last year, Google has produced to MDL Plaintiffs seven bespoke, transaction-level datasets that contain data on tens of billions of individual auctions from a contemporaneous week or month. Each of these took between four and six months to create.[8]

The Department of Justice, in both its investigation and in the litigation in the Eastern District of Virginia, engaged in extensive negotiations with Google concerning the precise types of information it sought, as well as the time periods it sought to cover, with its transaction-level data requests (Google produced relevant correspondence with the DOJ on this topic to Inform and the other MDL Plaintiffs as early as July 21, 2023).[9]   Inform had more than a year in which it could have constructively engaged with Google, as the Department of Justice did, to formulate a request for transaction-level data to which both parties could agree.   It did not do so.[10]

Instead, Inform first issued a formal request for production seeking transaction-level data in its May 24, 2024 Second Supplemental Set of Requests for Production.   Despite a vague reference in its August 2023 letter noting that Inform "would like to request an event or log level data set that spans one week during which Inform Inc. was operating," Inform's First Set of Supplemental Requests for Production, served three months later, included no requests for transaction-level data at all.

In light of the burden of producing additional transaction-level data, Google has endeavored to help Inform make use of the voluminous data that has already been produced.   Twice, Google thought its efforts to assist Inform had resolved all outstanding data issues.   But it hasn't stopped Inform from resurrecting its requests for burdensome transaction-level data at a time when discovery "should be winding down," ECF No. 708.

---

[7] *See* February 27, 2023 Responses and Objections to Plaintiffs' First Set of Requests for Production of Documents.

[8] *See* Letter from D. Pearl Letter to M. Mao dated June 12, 2023; Letter from D. Pearl to M. Mao and W. Noss dated August 3, 2023; Letter from D. Pearl to M. Mao and W. Noss dated August 15, 2023; Letter from  D. Pearl to M. Mao and W. Noss dated August 25, 2023; and Letter from D. Pearl to W. Noss and Z. DeRose dated May 3, 2024.

[9] *See* July 21, 2023 letter from M. Evans-Aziz; *see also* GOOG-AT-MDL-007334086 - GOOG-AT-MDL-007334165.

[10] Inform asserts in its letter motion that it is aware of the existence at some point of some transaction-level data at Google that would purportedly satisfy its request. Inform has never in the previous year-plus mentioned this data or explained what it is beyond the vague language in its letter motion, so Google cannot evaluate this allegation. Had Inform identified this data in a more particularized and timely fashion, Google might have had sufficient time to investigate it and determine whether such data indeed existed, had been retained, was called for by a Request for Production and was reasonably accessible.

*First*, in response to a renewed request from Inform for transaction-level data from when Inform was in business, Google noted that "the log-level datasets that Google has produced to MDL Plaintiffs do not exist in the ordinary course of business," but referred Inform to four aggregated datasets that do cover that time period.  In response, Inform asked whether the aggregated datasets contained data regarding certain topics of interest to Inform (data regarding online video ads, direct ad sales, and data specific to Inform).  On a March 15 meet and confer, Google directed Inform to resources that would help answer its data questions; Inform stated that it would come back to Google with any questions.  It did not do so, and Google considered the data issues to have been put to rest.  *See* May 21, 2024 H'rg Tr. at 13:24-14:2 ("[W]e thought, your Honor, that as of around middle of March, we had actually resolved these data requests.  So we were a little surprised to see that data request be resuscitated in the form of [an] interrogatory request.").  Out of the blue, Inform asserted on May 1 that Google had not answered its data queries, even though Google had already referred Inform to materials that would allow them to answer those questions.  Even though Inform could have answered the questions itself, on a May 6 meet and confer Google answered all of Inform's questions regarding data and memorialized it in writing on May 10.

*Second*, on a June 10 meet and confer, at Inform's request Google came prepared to discuss its responses and objections to Inform's Second Supplemental Set of Requests for Production seeking transaction-level data.  Inform did not press its transaction-level requests, instead clarifying that the reason Inform sought additional data productions from Google were that (1) the time periods of aggregated data produced by Google are broader than those sought by Inform and (2) the aggregated data produced by Google concerned entities other than Inform.  Inform noted that, given the volume, Google's data productions were "too unwieldy to wade through."  So, although under no obligation to do so, Google offered in a June 12 letter to help Inform filter the previously-produced data on the understanding that it would resolve all outstanding data issues.  Google again considered the data issues to have been put to rest, but Inform changed its mind and two days later filed its motion to compel.

Inform should not be rewarded for waiting until the last second to request transaction-level data, despite being on notice that it would be extremely burdensome and would take months.  If Inform were serious about its need for transaction-level data, it should have pressed its requests with specificity as early as possible to allow Google to address them to the extent possible.  Instead, Inform wasted valuable time and now seeks to compel Google to produce additional data that simply is not feasible in the remaining time allotted.  Inform's motion should be denied.

**Inform's Renewed Request for an Additional Deposition is Unjustified.**

Inform has not demonstrated good cause to depose an additional witness at the very end of fact discovery.  Any cause for delays related to Inform's eleventh-hour request to depose Witness Number 1 falls squarely at the feet of Inform, not Google.

Inform's contention that it only recently became aware that Witness Number 1 "has unique knowledge and is the best situated among the other identified witnesses to be deposed," Ltr. at 5, is belied by the record.  Indeed, Inform insisted as early as August 2023 that Witness No. 1 was "deeply involved with Plaintiff Inform, its employees and the matters set forth in the [Second Amended Complaint]."  In its November 1, 2023 letter to the Court, Inform described

Witness No. 1 as the "Primary contact for Inform on the business side," who had "[d]irectly communicated with and made representations to Inform" and who was the "[d]irect supervisor to primary account managers with Inform."

Inform could have singled out Witness No. 1 in its April 19, 2024 letter motion to the Court seeking leave to depose additional witnesses. Inform nevertheless declined to do so, instead seeking a "blank check" for additional categories of witnesses, and included Witness Number 1 as one of several possible individuals. *See* ECF Nos. 755, 777. The Court granted Inform's request for the one witness Inform actually prioritized in its own deponent category (who was not Witness No. 1).

As Your Honor recognized, discovery "should be winding down," ECF No. 708. Google should not be punished for Inform's own procrastination and delay in seeking the deposition of a witness Inform was intimately acquainted with almost a year ago. Accordingly, Inform cannot demonstrate good cause to exceed Court-ordered deposition limits in order to depose the witness.

\* \* \*

For these reasons, Google requests that the Court deny Inform's motion.

Respectfully submitted,

*/s/ Justina K. Sessions*
Justina K. Sessions
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
855 Main Street
Redwood City, CA 94063
Telephone: 650-618-9250
Email: justina.sessions@freshfields.com

*Counsel for Defendants Google LLC,
Alphabet Inc., and YouTube, LLC*

CC: All Counsel of Record (via ECF)