UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW
YORK
-----------------------------------------------------------------x

IN RE: GOOGLE DIGITAL ADVERTISING                    21-md-3010 (PKC)
ANTITRUST LITIGATION

                                                      PRETRIAL ORDER NO. 15

-----------------------------------------------------------------x

CASTEL, Senior District Judge.

          The Court has reviewed the parties' letters describing their failure to reach an

agreement on plaintiffs' Rule 30(b)(6) notice of deposition to Google, as well as their letters

filed in advance of the conference of June 20, 2024.  (See ECF 832, 837, 840, 841.)

          After the conference of June 20, the parties held meet-and-confer sessions on

June 21, 23 and 24.  (ECF 840 at 2.)  On June 24, 2024, plaintiffs sent Google a "Third

Amended Notice to Google of Deposition of Google LLC Pursuant to Rule 30(b)(6) of the

Federal Rules of Civil Procedure" (the "Third Amended Notice") that, by Google's count,

consists of 18 topics with 85 discrete parts, as compared to an earlier Notice that consisted

of 38 topics with "nearly 200" discrete parts.  (See ECF 841 at 2; 840-1.)  Fact discovery

will close on June 28, 2024.  (See ECF 394.)

          Google urges that the Third Amended Notice includes duplicative topics,

would subject witnesses to a memory contest, and makes requests better suited to written

responses or supplemental document productions.  (See ECF 841 at 2-3.)  Google notes that

it has agreed to designate a witness to testify for up to 3.5 hours regarding Topics 6-10 of

the Third Amended Notice, which relate to AdSense, and that this deposition is scheduled

for June 28.  (ECF 841 at 4; see also ECF 840 at 1.)  Google also proposes to designate buy-

and sell-side witnesses to sit for no more than four hours each to respond to deposition

questions previously asked by plaintiffs that Google's witnesses were unable to answer. (ECF 841 at 4.)  Lastly, Google proposes to designate a witness to testify for no more than 2.5 hours as to the migration from Adobe Flash to HTML5 on Google Chrome.  (ECF 841 at 4.)

Rule 30(b)(6), Fed. R. Civ. P., provides that "[i]n its notice or subpoena, a party may name as the deponent a public or private corporation . . . and must describe with reasonable particularity the matters for examination."  "The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." Id.  "The persons designated must testify about information known or reasonably available to the organization." Id.

"[M]ost critically, the organization will be bound by the answers provided by the Rule 30(b)(6) witness." Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n, 2017 WL 9400671, at *1 (S.D.N.Y. Apr. 27, 2017) (Netburn, M.J.).  "Like other forms of discovery, a Rule 30(b)(6) deposition notice is subject to the limitations under Federal Rule 26—deposition topics should be proportional to the needs of the case, not unduly burdensome or duplicative, and described with 'reasonable particularity.'" Id.  "[T]opics that generally seek testimony as to every fact that supports a legal claim will likely fail the reasonable particularity requirement." Id.  "Relatedly, a Rule 30(b)(6) deposition is not a vehicle for extracting broadly dispositive, smoking-gun testimony on matters more properly reserved for summary judgment." Id.  "[A] Rule 30(b)(6) deposition should not be a 'memory contest' of topics better suited to a written response or a supplemental document production." Id. at *2.  "Given the potential impact of

the testimony that can be obtained through this procedural device, courts should scrutinize Rule 30(b)(6) notice topics for proportionality, burden and reasonable particularity to ensure that the responding party can select and prepare the most suitable witness and so that the topics do not engender abuse of the process by either party."  Id.

The following are the Court's rulings as to the Topics set forth in the Third Amended Notice:

**Topics 1 to 4.**  Topics 1 through 4 relate to Google's accounting practices for its ad business.  Google urges that Topics 1, 3 and 4 "would require Google witnesses to study and remember definitions for fields within various datasets or otherwise memorize information about the underlying data in various data sets."  (ECF 841 at 3.)

Topic 1 is directed to Display and Video, Apps and Analytics profit-and-loss statements ("DVAA P&Ls"), including "periodic reports created by Google's controller, and other similar documents . . . ."  (Definition ¶ 22.)  Questions include "[h]ow different versions of DVAA P&Ls relate to each other" and "[d]ifference(s) between the 'management' and 'external' views in the DVAA P&Ls."  (Topic 1(a), 1(i).)  Topic 3 relates solely to "the XPP-M dataset," which is defined as "the dataset Google produced on July 6, 2023" within a Bates range of 000561031 to 000561262.  Questions include "how the 'pub_product' field in the XPP-M dataset relates to the 'simplified_pub_product' field of the 'Revenue Detail' tab at GOOG-AT-MDL-00964893 and similar documents . . . ."  (Topic 3(e).)  Topic 4 relates to an "AdX/Open Bidding dataset" that appears to include a Bates range covering hundreds of thousands of pages. (Definition ¶ 8.)  Topic 4 questions include how "the XPP-M dataset relates to the data provided in the AdX/Open Bidding data" and how certain data fields and tabs "relate[ ]" to one another. (Topic 4(c), (e), (f).)

Questions of how different documents and data fields, some of which appear massive in scope, "relate" to one another lack reasonable particularity and appear to require a witness to engage in the type of memory contest that Judge Netburn cautioned against.  The Court will not require Google to designate a Rule 30(b)(6) witness to testify on Topics 1, 3 and 4.

Topic 2 inquires as to how Google evaluates its financial performance on DVAA products, including its return on investment in "Ad Tech Products" and a risk-adjusted "Cost of Capital" applicable to "Ad Tech Products."  "Ad Tech Products" is a defined term that consists, by the Court's count, of seventeen different named products, as well as "any other product or service, however named, that You provide . . . ."  (Definition ¶ 6.)  "Cost of Capital" is also a defined term, and means "a company's minimum required rate of return."  (Definition ¶ 14.)  Though capitalized, "Return on Investment" is not a defined term, but the definition of "Return on Invested Capital" cites a definition "on page -7012 at GOOG-AT-MDL-004326981 or is defined as otherwise used in Google documents."  (Definition ¶ 30.)

While Topic 2 superficially appears to be narrower than Topics 1, 3 and 4, it is actually an open-ended inquiry as to how Google "evaluate[s] the financial performance" of seventeen different products according to two metrics that are not clearly defined in the Third Amended Notice.  It also is not clear what "evaluate" may entail, as the term is used in Topic 2. The Court will not require Google to designate a Rule 30(b)(6) witness to testify on Topic 2.

**Topic 5.**  Topic 5 seeks testimony "on the factual basis" for Google's affirmative defense that its conduct was "justified, procompetitive, and carried out in Google's legitimate business interests and constitutes bona fide competitive activity," and for its contention that "the benefits of" this conduct outweighed alleged anticompetitive effects.  Google urges that the

factual basis for an affirmative defense is the proper subject of Rule 30(b)(6) testimony.  Though couched as a factual inquiry, Topic 5 is more appropriately the subject of expert testimony and legal argument.  The Court will not require Google to designate a Rule 30(b)(6) witness to testify on Topic 5.

**Topics 6 to 10.**  A witness has been designated by Google to sit for a deposition on topics 6 through 10.  No ruling from the Court is required.

**Topics 11 to 16.**  These topics relate to ad-auction practices that plaintiffs contend are unlawful, such as Dynamic Allocation, Enhanced Dynamic Allocation and Dynamic Revenue Share.  Google's letter of June 24 offers to designate one witness knowledgeable about Google's sell-side products and a second witness knowledgeable about its buy-side products, provided that "[p]laintiffs provide legitimate, narrow, non-duplicative, specific topics described with reasonable specificity . . . . ."  (ECF 841 at 2.)  Google's letter of June 24 does not identify which aspects of Topics 11 to 16 it considers improper, duplicative or overbroad, urging that it is plaintiffs' burden formulate topics with reasonable particularity.  (ECF 841 at 3.)  Plaintiffs' letter points to the deposition testimony of previous witnesses who were unable to recall details about the implementation and effects of these ad-auction practices.  (ECF 840 at 4-6.)

While certain of these Topics are somewhat technical in nature (see, e.g., Topics 11(c), 15), they are not as general and open-ended as Topics 1 through 4.  The requests about the impact of certain practices seek responses "in at least general terms" and by "general impact," and would not require a witness to memorize such figures.  (See, e.g., Topics 11(c)(i), 11(c)(ii), 11(e), 12(a), 14(c), 14(d), 15(c)(iii), 16(b).)  To the extent that certain questions call for witnesses to identify the "frequency" and "differences" of certain changes or auction outcomes (see, e.g., Topics 11(c)(iii), 11(c)(iv), 15(b)(i)) the witnesses may similarly respond in general

terms.

The Court will require Google to designate one witness knowledgeable about Google's sell-side products and a second witness knowledgeable about its buy-side products to testify in response to Topics 11 to 16. Each witness will sit for no more than four hours in total.

**Topics 17 and 18.** Topics 17 and 18 pertain to the claims of Inform. Topic 17 inquires about five sub-topics that cover any differences between Google's treatment of video advertising on YouTube and non-YouTube video advertising, including policies, controls and settings on DFP, AdX and the Chrome browser, uses of ad servers unique to YouTube, the conversion from Flash to HTML, and any differential treatment afforded to YouTube and its ads. Topic 18 pertains to the rules and policies of Google and YouTube as to video advertising and "TrueView ads," including how rules are enforced, disclosed, the consequences for any rule violations, and whether differential treatment is afforded to Google's ad tech products.

Google's June 24 letter does not specifically address Topics 17 and 18, though Google notes that it has offered to designate a witness to sit for up to 2.5 hours to testify about the migration from Adobe Flash to HTML5 on Google Chrome. (ECF 841 at 4.) Google does not urge that Topics 17 and 18 lack reasonable particularity, proportionality or are unduly burdensome.

The Court will required Google to designate one witness to sit for no more than four hours in response to Topics 17 and 18.

CONCLUSION.

As to Plaintiffs' Third Amended Notice, Google is not required to designate a Rule 30(b)(6) witness to testify on Topics 1 through 5. No ruling from the Court is required on Topics 6 through 10. Google shall designate one witness knowledgeable about Google's sell-

side products and one witness knowledgeable about its buy-side products to testify in response to

Topics 11 through 16.  Each witness shall sit for no more than four hours in total.  Google shall

designate one witness to sit for no more than four hours in response to Topics 17 and 18.  All

depositions shall take place no later than 14 days following the close of fact discovery on June

28, 2024.

        SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
      June 25, 2024