**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION** | **No. 1:21-md-3010 (PKC)** |

*This Document Relates To:*

| | |
|---|---|
| **IN RE GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION** | **No. 1:21-cv-7001 (PKC)** |

| | |
|---|---|
| **MICHAEL STELLMAN, individually and on behalf of all others similarly situated** *Plaintiff*, - against - **GOOGLE LLC ET AL.,** *Defendants.* | **No. 1:23-cv-01532 (PKC)** |

**DEFENDANTS GOOGLE LLC AND ALPHABET INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR RENEWED MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS AS TO PLAINTIFFS CLIFFY CARE LANDSCAPING LLC AND MICHAEL STELLMAN**

## TABLE OF CONTENTS

**INTRODUCTION** ................................................................................................................ **1**

**FACTUAL BACKGROUND** ............................................................................................... **2**

   I.   Google's Terms of Service. ...................................................................................... 2

   II.   Michael Stellman Accepted The September 2017 Terms of Service. ..................... 5

   III.   Cliffy Care Accepted The November 2019 Terms of Service. ............................... 6

**LEGAL STANDARDS** ........................................................................................................ **7**

**ARGUMENT** ........................................................................................................................ **8**

   I.   The Federal Arbitration Act Requires Arbitration Here. ...................................... 8

     A. Google's Terms of Service Contain a Valid and Enforceable Arbitration Agreement. ..... 8

     B. Cliffy Care and Stellman's Claims Fall Within the Scope of the Broad Arbitration Agreement. ................................................................................................ 9

     C. Cliffy Care and Stellman Agreed to Arbitrate. ............................................... 10

     D. No Exception or Exclusion Applies to California-Law Injunctive-Relief Claims as Advertisers Do Not Seek "Public Injunctive Relief." ........................................ 12

     E. Advertisers Must Arbitrate with Alphabet as Well as With Google. ................ 16

   II.   The Court Should Stay Proceedings as to Cliffy Care and Michael Stellman. .................. 16

**CONCLUSION** ................................................................................................................. **17**

# TABLE OF AUTHORITIES

**Cases**

*Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013) ...................................................... 7

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ............................................................. 7

*Bensadoun v. Jobe-Riat*, 316 F.3d 171 (2d Cir. 2003) ................................................................. 7

*Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819 (9th Cir. 2019).............................................................. 15

*California Crane Sch., Inc. v. Google LLC*, 2024 WL 1221964 (N.D. Cal. Mar. 21, 2024) ....... 14

*California Crane Sch., Inc. v. Google LLC,* 621 F. Supp. 3d 1024 (N.D. Cal. 2022).. 9, 10, 14, 15

*Chee v. Tesla Inc.*, 2024 WL 1898434 (N.D. Cal. Apr. 30, 2024) ................................................. 9

*Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16 (2d Cir. 1995) ................................ 12

*Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213 (1985)............................................................... 7

*Grigorian v. Citibank, N.A.*, 2024 WL 2106944 (C.D. Cal. Apr. 17, 2024) ......................... 14, 15

*Hodges v. Comcast Cable  Commc'ns, LLC*, 21 F.4th 535 (9th Cir. 2021)............... 12, 13, 14, 15

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218 (2d Cir.  2001) ... 9

*Meridian Autonomous Inc. v. Coast  Autonomous LLC*, 2020 WL 496078 (S.D.N.Y. Jan. 30,

    2020)...................................................................................................................................... 16

*Meridian Autonomous Inc. v. Coast Autonomous LLC*, 2018 WL 4759754 (S.D.N.Y. Sept. 30,

    2018)...................................................................................................................................... 16

*Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017)............................................................ 7, 8

*Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201 (9th Cir. 2016)................................................. 8, 9

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016)....................................................... 7, 8

*Pinnacle Museum  Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 282 P.3d 1217 (Cal. 2012) .... 9

*Scally v. PetSmart LLC*, 2024 WL 37222 (N.D. Cal. Jan. 2, 2024) ........................................... 14

*Smith v. Spizzirri*, 601 U.S. 472 (2024) ................................................................................... 7, 16

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88 (2d Cir. 1999) .................................................................................................................. 16

*Sonic-Calabasas A, Inc. v. Moreno*, 311 P.3d 184 (Cal. 2013) ...................................................... 8

*Spinelli v. NFL*, 96 F. Supp. 3d 81 (S.D.N.Y. 2015) ..................................................................... 10

*TradeComet.com LLC v. Google, Inc.*, 435 F. App'x 31 (2d Cir. 2011) .................................... 10

*Trudeau v. Google LLC*, 349 F. Supp. 3d 869 (N.D. Cal. 2018) ................................................. 8, 9

**Statutes**

9 U.S.C. § 2 ..................................................................................................................................... 8

9 U.S.C. § 3 ................................................................................................................................. 8, 17

Pursuant to Section 3 of the Federal Arbitration Act, Defendants Google LLC and Alphabet Inc. ("Google") move to compel arbitration and stay proceedings as to Advertiser Plaintiffs Cliffy Care Landscaping LLC and Michael Stellman. Google files its motion without prejudice to a later motion for summary judgment on the merits, should this Court deny its motion to compel arbitration.

## INTRODUCTION

When Google previously moved to compel arbitration as to several named Advertiser Plaintiffs, including Cliffy Care, Plaintiffs did not dispute that those Advertisers had agreed to arbitrate with Google. Instead, they argued that the motion was not ripe, ECF No. 490 at 24.[1] This Court denied the motion without prejudice, ruling that Google's motion was "premature at this juncture, and require[d] a more developed factual record as to the advertisers' purported consents to arbitrate." ECF No. 701 at 3. Following the close of fact discovery and a significantly "more developed factual record," it is indisputable that both Cliffy Care and Stellman agreed to arbitrate their claims.

The record evidence includes a sworn declaration from Google (never challenged by any plaintiff), the Google customer records of Cliffy Care and Stellman, the deposition testimony of Cliffy Care, and the discovery responses of the named plaintiffs. All of this evidence shows that both plaintiffs expressly agreed to Google's Advertising Terms of Service, including an arbitration agreement therein. The disclosure of the arbitration agreement was clear and unequivocal. Both plaintiffs were given the opportunity to opt out of arbitration, but neither did.

---

[1] The other named Advertisers that were the subject of Google's prior motion have since voluntarily dismissed their claims. As noted below, Advertiser Plaintiff Michael Stellman filed a separate lawsuit from Cliffy Care, *Michael Stellman v. Google LLC and Alphabet, Inc.*, 1:23-cv-01532 (PKC), ECF No. 1. Google noted its intention to enforce Mr. Stellman's arbitration agreement, while acknowledging the Court's prior ruling that arbitration issues could not be resolved at the Rule 12 stage. ECF No. 720 at 2 n.2.

Plaintiffs have never disputed that they agreed to arbitrate, and have not produced any evidence that could create any factual dispute on this point.  The arbitration agreement is valid, enforceable, and clearly covers all of Cliffy Care and Stellman's claims against both Google LLC and its parent company Alphabet Inc.

Plaintiffs cannot avoid arbitration of their California Unfair Competition Claims by erroneously claiming that they are seeking "public injunctive relief."  Such relief is specifically defined as relief sought on behalf of the general public as a whole, not relief benefiting a discrete set of similarly situated persons.  Cliffy Care and Stellman seek relief on behalf of a defined class of commercial entities, not consumers, and seek relief that would benefit only those advertisers that chose to use Google Ads to advertise their businesses.  They cannot avoid their agreement to arbitrate by claiming that their lawsuit might have follow-on benefits to consumers.

This Court should therefore enforce Cliffy Care and Stellman's arbitration agreements, and stay proceedings as to both plaintiffs' claims in the MDL.

## FACTUAL BACKGROUND

### I. Google's Terms of Service.

Beginning at least as early as 2016, Google has required advertisers using Google Ads to accept Google's Advertising Terms of Service ("Terms of Service").  Declaration of Armete Mobin, ECF No. 891 ("Mobin Decl.") ¶ 4.[2]  When advertisers sign up to use Google Ads in the United States, they are shown the most updated Terms of Service and are asked to expressly agree to the Terms of Service by clicking a button labeled "Accept" located under the Terms of Service. If an advertiser instead clicks the button labeled "Decline" or does not submit an acceptance, an advertiser will not be able to use Google Ads.  Mobin Decl. ¶ 3; *see also* Ex. 1 at 95:18-21 (when

---

[2] This affidavit was originally styled as a Declaration "in support of [Google's] motion for summary judgment" when it was executed on June 24, 2024, and was produced to Plaintiffs as such, but Google submits it now as a declaration in support of its motion to compel arbitration and stay proceedings.

asked whether Cliffy Care would have needed to accept the Terms of Service in order to open its Google Ads account, its corporate representative answered "I would imagine so, yes"). These Terms of Service are publicly available online for anyone to review. Mobin Decl. ¶¶ 5, 12, 13, Exs. A, D, E.

The Terms of Service were modified on September 1, 2017, to include an arbitration agreement ("Dispute Resolution Agreement"). *Id.* ¶ 4, Ex. A. Each subsequent version of the Terms of Service, including the one published on November 1, 2019, has included a Dispute Resolution Agreement.

Advertisers already using Google Ads prior to September 1, 2017, were provided notice of the September 2017 Terms and asked to review and accept them. That notice campaign included direct email to advertisers, a public blog post, and an alert that advertisers could see when they logged in to their accounts. *Id.* ¶ 4. Each type of notice included a link that, when clicked, directed the advertiser to a webpage containing Instructions. *Id.* ¶ 6. At the top of the Instructions webpage, the advertiser was instructed: "Please review these Terms carefully. They include the use of binding arbitration to resolve disputes rather than jury trials or class actions. Please follow the instructions in the terms below if you wish to opt out of this provision." *Id.* ¶ 6, Ex. B (containing webpage). The entire text of the September 2017 Terms was available directly below these instructions by scrolling down in the embedded window, without needing to access other webpages. *Id.* ¶ 6, Ex. B. Below the embedded window containing the September 2017 Terms of Service, the Google Ads user was given the option of clicking "Accept" or "Decline" (the latter of which would pause the user's advertising). *Id.*, Ex. B.

Advertisers who opened a Google Ads account *after* the September 2017 addition of the Dispute Resolution Agreement were alerted to the Dispute Resolution Agreement when presented

with the Terms of Service: the first paragraph of the September 2017 (and all subsequent) Terms of Service contain the following instruction: "Please read these Terms carefully.  They require the use of binding individual arbitration to resolve disputes rather than jury trials or class actions.  If Customer wishes, Customer may opt out of the requirement to arbitrate disputes by following the instructions in Section 13(F) below within 30 days of the first acceptance date of any version of these Terms containing an arbitration provision."  *Id.*, Exs. A & E.

Section 13(A) of the Terms of Service includes the Dispute Resolution Agreement, which states that the advertiser "agree[s] to arbitrate all disputes and claims" between the advertiser and Google "that arise out of or relate in any way to" to the use of Google's advertising programs or the Terms of Service.  It also states that the Dispute Resolution Agreement "is intended to be broadly interpreted" and includes (1) claims brought under any legal theory, (2) claims that arose before the advertiser accepted the Terms, (3) claims that may arise after the advertiser has stopped using Google Ads, (4) claims brought by or against Google, Google affiliates, or Google's parent company, and (5) claims brought by or against the advertiser or its respective affiliates or parent company.  *Id.*, Exs. A & E.

Section 13(F) of the Terms of Service states that any advertiser who does not wish to be bound by the Dispute Resolution Agreement must opt out "within 30 days of the first acceptance date of any version of these Terms containing an arbitration provision," and that advertisers could proceed accordingly by clicking on an in-text hyperlink.  *Id.*, Exs. A & E.  By clicking on that hyperlink, an advertiser would be taken to a landing webpage containing the Opt-Out Procedure.  *Id.* ¶ 10, Ex. C (containing Opt-Out Page).  The webpage containing the Opt-Out Procedure went live in September 2017 in a coordinated rollout with the September 2017 Terms, and has not substantively changed since.  *Id.* ¶ 10.  The Opt-Out landing page offers an advertiser with two

prominently displayed options: to either accept arbitration or to opt out.  *Id*. ¶ 10, Ex. C.  If an advertiser accepts the Terms of Service *without* opting out of the Dispute Resolution Agreement, their account will default to acceptance of arbitration after 30 days.  *Id.* ¶ 11.

Each Google Ads user has access to a Google Ads Home Page and Customer Change History associated with that account.  If an advertiser accepts the Terms of Service, that information is reflected on the Customer's Home Page under "Google Program Advertiser Terms" as "Status: Accepted" along with the date of acceptance; in addition, the date of acceptance and specific version of the Terms of Service will be reflected in the advertiser's Customer Change History.  ¶¶ 17-18.  For those Google Ads users who elect to opt out of the Dispute Resolution Agreement, the user's account Home Page also reflects that decision under "Google Program Advertiser Terms" with the label "Opted Out of Arbitration."  *Id.* ¶ 19, Ex. L (displaying an example of the "Opted Out of Arbitration" label on the Home Page of an anonymous Google Ads account).

## II.    Michael Stellman Accepted The September 2017 Terms of Service.

The Google Ads account associated with Michael Stellman existed prior to the publication of the 2017 Terms.  *See* Ex. 2 at 9.  Michael Stellman accepted the September 2017 Terms on September 14, 2017.  Under "Google Program Advertiser Terms," Stellman's Google Ads Home Page displays "Status: Accepted (2017-9-14[])."  Mobin Decl. ¶ 18, Ex. J.  Stellman's Customer Change History contains an entry for the same date, September 14, 2017, stating "Customer has ACCEPTED terms and conditions…."  *Id.* ¶ 18, Ex. K.  Despite being presented with the opportunity to opt out of the Dispute Resolution Agreement, Stellman never did so: Stellman's Home Page does not include the "Opted Out" status that would indicate such a decision.  *Id.* ¶ 17, 19, 20; *compare* Ex. J (Stellman's Google Ads Home Page) *with* Ex. L (Google Ads user's Home Page indicating account holder opted out of arbitration).

On September 15, 2022, Michael Stellman filed a putative class action complaint in the United States District Court for the Northern District of California alleging that Google had overcharged Stellman and other similarly situated advertisers who had "used Google's display advertising services to place an ad on a website operated by another entity." *See* 1:23-cv-01532 (PKC), ECF No. 1 ("Stellman Compl.") ¶ 91. Stellman's Complaint was subsequently transferred to the MDL on February 14, 2023.

### III.    Cliffy Care Accepted The November 2019 Terms of Service.

Cliffy Care admits to opening a Google Ads account on November 20, 2019. Ex. 3 at 12. In order to open its account, Cliffy Care accepted the November 2019 Terms. Under "Google Program Advertiser Terms," its Google Ads Home Page displays "Status: Accepted (2019-11-20[])," Mobin Decl. ¶ 17, Ex. H. Its Customer Change History contains an entry for the same date, November 20, 2019, stating "Customer has ACCEPTED terms and conditions…." *Id.* ¶ 17, Ex. I. When asked whether Cliffy Care would have needed to accept the Terms of Service in order to open its Google Ads account, Cliffy Care's corporate representative testified "I would imagine so, yes." Ex. 1 at 95:18-21. Despite being presented with the opportunity to opt out of the Dispute Resolution Agreement, Cliffy Care never did so: its Home Page does not include the "Opted Out" status that would indicate such a decision. Mobin Decl.. ¶ 17, 19, 20; *compare* Ex. H (Cliffy Care's Google Ads Home Page) *with* Ex. L (Google Ads user's Home Page indicating account holder opted out of arbitration). Indeed, Cliffy Care admits that it took no action to opt out of the Dispute Resolution Agreement. *See* Ex. 4 at Response to RFA No. 3.

On December 2, 2022, Cliffy Care and a number of other named advertisers filed a putative class action complaint against Google, seeking relief "on behalf of themselves and all others similarly situated[.]" Consolidated Advertiser Class Action Complaint, ECF No. 399 ("Cliffy Care Compl.") at 1. Cliffy Care seeks to represent a putative class of advertisers who

"placed a display ad . . . via a transaction in which the impression was sold, brokered, exchanged or auctioned by Google." *Id*. ¶ 339.  It seeks relief on the grounds that it "pa[id]  anticompetitive overcharges as a result of Defendants' conduct." *Id*. ¶¶ 370, 376.

## LEGAL STANDARDS

The Federal Arbitration Act ("FAA") reflects a "liberal federal policy favoring arbitration."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  It creates a presumption of arbitrability, providing that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract …" 9 U.S.C. § 2.  "[C]ourts must 'rigorously enforce' arbitration agreements according to their terms."  *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228,  233 (2013) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).  Courts deciding motions to compel arbitration apply a "standard similar to that applicable for a motion for summary judgment."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (citing *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)).  On a motion for summary judgment, the court "consider[s] all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with … affidavits." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (internal quotations omitted).

Section 3 of the FAA states that, when a dispute is subject to arbitration, the court "shall on application of one of the parties stay the trial of the action until [the] arbitration" has concluded. 9 U.S.C. § 3; *see also Smith v. Spizzirri*, 601 U.S. 472, 476 (2024) (when court finds that a dispute is subject to arbitration, it shall grant a stay of proceedings).

## ARGUMENT

**I.    The Federal Arbitration Act Requires Arbitration Here.**

A contractual agreement to arbitrate must be enforced under the FAA[3] if (A) a valid and enforceable agreement exists between the parties, and (B) the dispute falls within the scope of the arbitration agreement.  *Meyer*, 868 F.3d at 73-74.  This analysis is governed by state law principles of contract formation, *Nicosia,* 834 F.3d at 231, and Google's Terms of Service provide that "all claims arising out of or relating to" the terms or Google's advertising programs "will be governed by California Law[.]"  Mobin Decl., Exs. A & E § 14 (emphasis omitted).  As set forth below, both requirements are met.  Moreover, (C) no exceptions or exclusions apply, and (D) Cliffy Care and Stellman must therefore also arbitrate with Alphabet as well as with Google.

### A. Google's Terms of Service Contain a Valid and Enforceable Arbitration Agreement.

The arbitration agreement to which Cliffy Care and Stellman agreed is valid and enforceable.  Under California law, "a contractual clause is unenforceable only if it is both procedurally and substantively unconscionable."  *Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 877 (N.D. Cal. 2018), *aff'd,* 816 F. App'x 68 (9th Cir. 2020).  The party opposing arbitration has the burden of establishing unconscionability.  *Sonic-Calabasas A, Inc. v. Moreno*, 311 P.3d 184, 205 (Cal. 2013).  The "threshold inquiry in California's unconscionability analysis is whether the arbitration agreement is adhesive."  *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016).  But an "arbitration agreement is not adhesive *if there is an opportunity to opt out of it*."  *Id.* (emphasis added).

Here, Google's Terms of Service allow advertisers to opt out of the arbitration provision within 30 days, and provide a mechanism for doing so.  Mobin Decl., Exs. A & E § 13(F).  Because

---

[3] *See* Mobin Decl., Exs. A & E § 13 ("The Federal Arbitration Act governs the interpretation and enforcement of this Dispute Resolution Agreement.").

of this voluntary opt-out procedure, the arbitration clause in Google's Terms of Service has been found to be "not procedurally unconscionable and thus not unconscionable." *See, e.g.*, *Trudeau*, 349 F. Supp. 3d at 877; *California Crane Sch., Inc. v. Google LLC,* 621 F. Supp. 3d 1024, 1030 (N.D. Cal. 2022). And because the arbitration agreement is not procedurally unconscionable, the Court need not reach the issue of whether the agreement is also substantively unconscionable. *See Mohamed*, 848 F.3d at 1211 ("Because the agreements were not procedurally unconscionable, and because both procedural and substantive unconscionability must be present in order for an agreement to be unenforceable, we need not reach the question whether the agreements here were substantively unconscionable." (internal citation omitted)). But, even if the Court did consider the question, the agreement is not "so one-sided as to shock the conscience." *See Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 282 P.3d 1217, 1232 (Cal. 2012) ("A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be so one-sided as to shock the conscience." (internal quotation marks omitted)). Unlike arbitration agreements that carve out potential causes of action for only one party and may therefore be substantively unconscionable due to a "lack of sufficient mutuality," *Chee v. Tesla Inc.*, 2024 WL 1898434, at *6 (N.D. Cal. Apr. 30, 2024) (internal citation omitted), the Dispute Resolution Agreement is not one-sided at all. On the contrary, it explicitly covers claims brought "by or against" Google. Mobin Decl., Exs. A & E § 13(A)(4-5).

### B. Cliffy Care and Stellman's Claims Fall Within the Scope of the Broad Arbitration Agreement.

The arbitration agreement here is "broad," creating a "presumption of arbitrability." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 224 (2d Cir. 2001); *see also* Mobin Decl., Exs. A & E at § 13(A) ("This agreement to arbitrate . . . is intended to be

broadly interpreted[.]").  With exceptions not applicable here,[4] the Dispute Resolution Agreement applies to "all disputes and claims" under "any legal theory" that "arise out of or relate in any way" to Google's advertising programs.  Mobin Decl., Exs. A & E § 13(A).  Plaintiffs' claims are clearly within the scope of the agreement because the injuries Cliffy Care and Stellman purportedly suffered flowed from their use of Google's advertising programs.  *See* Cliffy Care Compl. ¶¶ 14-32, 355, 362, 370; Stellman Compl. ¶¶ 4, 8, 61, 113; *see also TradeComet.com LLC v. Google, Inc.*, 435 F.  App'x 31, 35 (2d Cir. 2011) (affirming that antitrust claims were subject to Google Terms' forum selection clause with similarly broad language because the claims arose out of or related to plaintiff's use of Google's AdWords); *Spinelli v. NFL*, 96 F. Supp. 3d 81, 104 (S.D.N.Y. 2015) (finding that, because the alleged damages "flowed" from agreements with Defendants, "any assertion that the antitrust claims are not sufficiently connected to the [agreements] to be arbitrable must fail"); *Cal. Crane Sch.*, 621 F. Supp. 3d at 1029-30 (finding the same arbitration clause encompassed plaintiffs' antitrust claims).

### C. Cliffy Care and Stellman Agreed to Arbitrate.

When the Dispute Resolution Agreement was added to Google's Terms of Service on September 1, 2017, Michael Stellman was already an existing user of Google Ads.  *See* Ex. 2 at 9; Mobin Decl., Ex. K.  In order to continue using Google Ads, Stellman was required to agree to the new Terms of Service.  *See* Mobin Decl. ¶ 3, Ex. B.  Stellman, like all existing Google Ads users, received several types of notice of the new Terms of Service, *id.* ¶ 4, each of which included a link that, when clicked, directed Stellman to a webpage.  *Id.* ¶ 6.  The webpage (1) prominently featured instructions alerting Stellman that the September 2017 Terms included "the use of binding

---

[4] The arbitration agreement "does not preclude any party from seeking an individualized preliminary injunction or temporary restraining order until a claim is arbitrated, or from bringing an individualized action in small claims court … or from bringing issues to the attention of federal, state, or local agencies."  Mobin Decl., Exs. A & E § 13.

arbitration to resolve disputes" and as well as an opt-out mechanism. *Id.* ¶ 6, Ex. B. The entire text of the September 2017 Terms was available directly below those instructions by scrolling down in the embedded window, without needing to access any other webpage. *Id.* ¶ 6, Ex. B. The September 2017 Terms themselves *also* conspicuously alerted Stellman to the Dispute Resolution Agreement and the existence of an opt-out mechanism. *Id.* Ex. A. Below the embedded window containing the September 2017 Terms of Service, Stellman was provided the option of clicking either "Accept" or "Decline." *Id.*, Ex. B. Had Stellman clicked "Decline," or failed to click "Accept," his advertising campaigns would have been paused. But they were not. As confirmed by Stellman's Customer Home Page and Change History, he accepted the 2017 Terms of Service on September 14, 2017, and did not opt out of the Dispute Resolution Agreement. *Id.* ¶¶ 18, 19, Exs. J, K, L.

When Cliffy Care opened its account on November 20, 2019, it was required to accept the most updated version of the Terms of Service in order to use Google Ads. *Id.* ¶ 3. Cliffy Care was shown the November 1, 2019 Terms of Service and asked to expressly agree by clicking a button labeled "Accept" under the Terms. *Id.* ¶ 3, 17. The first paragraph of the 2019 Terms of Service displayed in bold, conspicuous font the following instructions: "Please read these Terms carefully. They require the use of binding individual arbitration to resolve disputes rather than jury trials or class actions. If Customer wishes, Customer may opt out of the requirement to arbitrate disputes by following the instructions in Section 13(F) below within 30 days of the first acceptance date of any version of these Terms containing an arbitration provision." *Id.*, Ex. E.

Cliffy Care's customer records confirm that it clicked "Accept" on November 20, 2019, when it opened its Google Ads account and did not opt out of the Dispute Resolution Agreement. *Id.* ¶¶ 17, 19, Exs. H, I, L; *see also* Ex. 4 at Response to RFA No. 3 (admitting that it took no

action to opt out).

Neither Stellman nor Cliffy Care have produced any evidence to the contrary, nor has either Plaintiff ever disputed that they agreed to arbitrate with Google.  There is therefore no factual dispute as to whether Stellman or Cliffy Care accepted Google's Terms of Service and, in doing so, "agree[d] to arbitrate all disputes and claims . . . that arise out of or relate in any way to" Google's advertising programs.  Mobin Decl., Exs. A & E § 13(A):  they did.  Nor is there any factual dispute as to whether Stellman or Cliffy Care ever elected to opt out of the agreement: they did not.

### D. No Exception or Exclusion Applies to California-Law Injunctive-Relief Claims as Advertisers Do Not Seek "Public Injunctive Relief."

Advertisers have previously invoked their prayer for injunctive relief as a means to avoid arbitration of their California Unfair Competition Law claims.  *See* ECF No. 490 at 25-29. Plaintiffs argue that because they seek "public injunctive relief," the Court cannot compel them to arbitrate their UCL claims.  *Id.*  But where a claim for public injunctive relief is found to be non-arbitrable, it must be severed from those claims that are subject to arbitration.  *See Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995).  Regardless, Plaintiffs' UCL claims should be arbitrated.

Neither Plaintiff is seeking "public injunctive relief" via their respective Unfair Competition Law claims.  Under California law, "public injunctive relief" is defined as "prospective injunctive relief that aims to restrain future violations of law for the benefit of the general public as a whole, rather than a discrete subset of similarly situated persons." *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 548 (9th Cir. 2021).  And Cliffy Care and Stellman each seek relief for the benefit of precisely such a "discrete subset of similarly situated persons." *Id.*  Each seeks to represent a putative class of advertisers who used Google's display advertising

services.  *See* Stellman Compl. ¶ 91; Cliffy Care Compl. ¶ 339.  This Court's March 1, 2024 Order narrowed those proposed classes to users of Google Ads only, because the complaint failed to plausibly allege standing in the market for large advertisers (or those who use DV360).  ECF No. 701 at 13.  Advertisers' expert confirms that Advertisers now bring their claims "solely on behalf of advertisers that purchased programmatic digital display advertising from Google Ads."  Ex. 5 ¶ 30.

Both plaintiffs seek relief for themselves and their fellow Google Ads users to remedy the alleged injuries caused by Google's design and implementation of particular optimizations (ostensibly) within Google Ads.  *See* Cliffy Care Compl. ¶¶ 199-284 (alleging that Advertisers have been harmed by various optimizations, including Dynamic Allocation, Enhanced Dynamic Allocation, Project Bernanke, Dynamic Revenue Share, Unified Price Rules, Line-Item Caps, and Redaction of Auction Data); Stellman Compl. ¶ 76 ("[Reserve Price Optimization] clearly harmed advertisers by forcing them to pay more than they would have if Google had run a true second-price auction, as it advertised.").[5]  Obviously, the only entities that could possibly benefit from an injunction eliminating or altering this conduct are the subset of Google Ads advertisers who were allegedly harmed by it.  This is not, by any stretch of the imagination, the general public.

Courts have rejected similar efforts to slap a label of "public injunctive relief" on claims brought by a defendant's customers to remedy practices that applied only to those customers.  In *Hodges v. Comcast Cable Commc'ns, LLC*, the plaintiff brought class action claims challenging Comcast's data-collection practices, but the court ruled that the request for relief only stood to

---

[5] Advertisers' expert concluded that, of the various Google product optimizations that survived Google's motion to dismiss, Buy-side Dynamic Revenue Share, Project Bernanke, Global Bernanke, and Unified Pricing Rules "had a detrimental effect on competition," and did "not [reach] a conclusion as to the pro- and anti-competitive effects of the other auction optimizations."  Ex. 5 ¶ 118.  This further narrows the discrete category of conduct Cliffy Care would seek to enjoin, and does not address at all the *only* allegedly injurious conduct (Reserve Price Optimization) Stellman seeks to enjoin.

benefit Comcast cable subscribers.  21 F.4th at 548-49; *see also Grigorian v. Citibank, N.A.*, 2024 WL 2106944, at *4 (C.D. Cal. Apr. 17, 2024) (citing *Hodges* to rule that injunctive relief that would prohibit the discriminatory denial of Citibank credit cards to certain applicants could not be said to "primarily benefit the general public as a more diffuse whole" but rather would benefit a discrete subset of customers); *Scally v. PetSmart LLC*, 2024 WL 37222, at *2 (N.D. Cal. Jan. 2, 2024) (citing *Hodges* to rule that relief enjoining PetSmart from alleged false advertisements about its Grooming Academy did not qualify as public injunctive relief because the "primary beneficiaries…[would be] a sub-set of current PetSmart employees rather than the general public").

In *California Crane School*, the plaintiff claimed to be seeking public injunctive relief on behalf of himself and a class of people and entities who paid Google for advertising services "on the ground that those individuals and entities paid inflated prices . . . and therefore [were] entitled to recoup their past losses," but the court was unconvinced; just as in Stellman and Cliffy Care's putative class action complaints, the *California Crane School* plaintiffs brought "paradigmatic representative claims that would primarily benefit a discrete set of similarly-situated persons— namely, individuals or entities that have paid to advertise on Google's services."  621 F. Supp. 3d at 1032 (internal quotations omitted).[6]  While the relief that Plaintiffs seek is couched in the broadest possible language, an examination of the actual conduct that they challenge demonstrates that an injunction would directly affect only a very specific group of Google Ads customers: those

---

[6] A different court subsequently determined that a claim under the UCL seeking to enjoin Google and Apple from entering into an alleged horizontal agreement not to compete with respect to search services was a claim for public injunctive relief because it "would provide diffuse benefits to the public by potentially bolstering competition in the search and search advertising markets, increasing consumer choice, improving data privacy, and decreasing costs for both general search engine users and digital advertisers like CCS."  *California Crane Sch., Inc. v. Google LLC*, 2024 WL 1221964, at *5 (N.D. Cal. Mar. 21, 2024).  That court dismissed the UCL claim under Rule 12(b)(6) for failure to adequately plead an unlawful horizontal conspiracy.  To the extent this second decision addressed the issue of arbitrability of the UCL claim, Google believes that court incorrectly focused on hypothetical downstream and indirect effects of the requested injunction rather than the primary benefits, as *Hodges* instructs.

who were allegedly subject to very specific product optimizations (or in Stellman's case, one optimization–RPO). This is the opposite of "public injunctive relief."

Nor can Plaintiffs evade their agreement to arbitrate by invoking their conclusory allegations—made in virtually every antitrust case—about harm to American citizens, Cliffy Care Compl. ¶ 319, off-hand references to the "public interest," Stellman Compl. ¶ 114, or tacked-on claims seeking injunctive relief to "benefit the public," Cliffy Care Compl. ¶¶ 356, 405, Stellman Compl. ¶ 117. These types of superficial recitations do not transform the true nature of the relief sought. *See Cal. Crane Sch.*, 621 F. Supp. 3d at 1032 (plaintiffs cannot back out of their "plainly valid arbitration agreement[s] by tacking on the label of 'public injunctive relief'"); *see also Hodges*, 21 F.4th at 548-549 (rejecting argument that relief simply labeled "public" was actually such). Nor does the truism that any injunction against allegedly illegal behavior might somehow have public benefits suffice to avoid the arbitration agreement. *See Grigorian*, 2024 WL 2106944, at *4 (rejecting the argument that "enjoining discriminatory behavior has broad public benefits" served as a basis to avoid arbitration).

Put simply, both Plaintiffs seek relief on behalf of Google Ads users who were supposedly overcharged for using one Google advertising product as a result of specific bidding optimizations—a limited category of commercial entities that have allegedly suffered a specific injury.

Finally, even if this Court were to rule that either Stellman or Cliffy Care's California Unfair Competition Law claims seek public injunctive relief in more than name only, and that those claims were therefore non-arbitrable, the appropriate remedy is to sever those claims rather than invalidate the entire arbitration agreement. *See Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 831 (9th Cir. 2019) (severing the claim for public injunctive relief from the scope of arbitration).

**E. Advertisers Must Arbitrate with Alphabet as Well as With Google.**

Cliffy Care and Stellman's claims against Alphabet Inc. must also be arbitrated. The Dispute Resolution Agreement expressly applies to claims brought against "Google" and "Google parent companies[.]" Mobin Decl., Exs. A & E § 13(A)(4). Further, both complaints refer to Google LLC and Alphabet Inc. together collectively as "Google" and make no attempt to differentiate between the functions of Google LLC and Alphabet Inc. Stellman Compl. at 1 & ¶ 11; Cliffy Care Compl. ¶ 35. Plaintiffs are therefore estopped from arguing they are not obligated to arbitrate claims against Alphabet Inc. As this Court found in *Meridian Autonomous Inc. v. Coast Autonomous LLC*, "where a plaintiff treats the defendants, some of which are signatories and some of which are non-signatories, 'as a single unit in its complaint[, the plaintiff] is estopped from claiming that the current signatories [to the arbitration clause] are distinct from the [non-signatory] defendants.'" 2018 WL 4759754, at *4 (S.D.N.Y. Sept. 30, 2018) (quoting *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98 (2d Cir. 1999)) (alterations in original); *see also Meridian Autonomous Inc. v. Coast Autonomous LLC*, 2020 WL 496078, at *2 (S.D.N.Y. Jan. 30, 2020). Therefore, the Court should compel plaintiffs to arbitrate their claims against Alphabet Inc. as well.

**II. The Court Should Stay Proceedings as to Cliffy Care and Michael Stellman.**

The Court should stay proceedings in the MDL as to Advertisers Cliffy Care and Michael Stellman if it grants Google's Motion to Compel Arbitration. Section 3 of the FAA states that, when a dispute is subject to arbitration, the court "shall on application of one of the parties stay the trial of the action until [the] arbitration" has concluded. 9 U.S.C. § 3; *see also Smith v. Spizzirri*, 601 U.S. 472, 476 (2024) (when court finds that a dispute is subject to arbitration, it shall grant a stay of proceedings).

**CONCLUSION**

For the foregoing reasons, Google respectfully requests that this Court compel Advertiser Plaintiffs Cliffy Care Landscaping LLC and Michael Stellman to arbitrate their claims against Google pursuant to the terms of the Dispute Resolution Agreement, and stay proceedings as to both plaintiffs.

Dated: October 18, 2024

/s/ Justina Sessions
Justina K. Sessions
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250
justina.sessions@freshfields.com

Eric Mahr
700 13th Street NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
eric.mahr@freshfields.com

*Counsel for Defendants Google LLC and Alphabet Inc.*

17