## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Google Digital Advertising Antitrust Litigation | Civil Action No. 21-MD-3010 (PKC) |

*This Document Relates to:*

| | |
|---|---|
| In re Google Digital Advertising Antitrust Litigation | Civil Action No. 21-CV-7001 (PKC) |

| | |
|---|---|
| Michael Stellman, individually and on behalf of all others similarly situated<br><br>      Plaintiff,<br><br>  - against -<br><br>Google LLC et al.,<br><br>      Defendants. | Civil Action No. 23-CV-1532 (PKC) |

**ADVERTISER CLASS PLAINTIFFS' RESPONSE TO DEFENDANTS GOOGLE LLC AND ALPHABET INC.'S RENEWED MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS AS TO PLAINTIFFS CLIFFY <u>CARE LANDSCAPING LLC AND MICHAEL STELLMAN</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................... 1

II.   ARGUMENT ......................................................................................................... 2

      A.    Google Has Not Established a Valid Agreement to Arbitrate ............................... 2

            1.    Google Has Not Met the Applicable Standard for Establishing a
                  Valid Agreement to Arbitrate ...................................................................... 3

            2.    Google Has Not Proven That New and Existing Advertisers
                  Received Notice of Its Arbitration Terms.................................................... 4

                  a.    Google Has Not Established That Existing Advertisers
                        Were Adequately Notified of the 2017 Terms Which
                        Added Arbitration ............................................................................ 4

                  b.    Google Has Not Established That New Advertisers Were
                        Adequately Notified of the Terms .................................................... 7

            3.    Google Fails to Establish Plaintiffs' Purported Acceptance...................... 8

      B.    Google's Arbitration Terms Are Unconscionable .................................................. 9

      C.    Google's Arbitration Terms Are Unenforceable Because They Violate
            California Law by Prohibiting Claims for Public Injunctive Relief.................... 11

      D.    The Arbitration Agreement's Severability Clause Requires the Entirety
            of the California Law Claims to Proceed in This Court ...................................... 16

      E.    The Court Should Allow All Claims Not Subject to Arbitration to
            Proceed................................................................................................................ 17

III.  CONCLUSION.................................................................................................... 18

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Armendariz v. Found. Health Psychcare Servs. Inc.*,
    24 Cal. 4th 83 (2000) ....................................................................................................9

*Berkson v. Gogo LLC*,
    97 F. Supp. 3d 359 (E.D.N.Y. 2015) .........................................................................10

*Berman v. Freedom Fin. Network, LLC*,
    30 F.4th 849 (9th Cir. 2022) .................................................................................5, 6, 8

*Blair v. Rent-A-Center, Inc.*,
    928 F.3d 819 (9th Cir. 2019) .......................................................................15, 16, 17

*Braune v. Abbott Labs.*,
    895 F. Supp. 530 (E.D.N.Y. 1995) ......................................................................10, 15

*California Crane Sch., Inc. v. Google LLC*,
    722 F. Supp. 3d 1026 (N.D. Cal. 2024) ..............................................................13, 14, 16

*California Crane School, Inc. v. Google LLC*,
    621 F. Supp. 3d 1024 (N.D. Cal. 2022) ...................................................................13, 15

*California Crane School, Inc. v. Google LLC*,
    No. 21-cv-10001-HSG, 2023 WL 2769096 (N.D. Cal. Mar. 31, 2023) .................................13

*Cannon v. Wells Fargo Bank N.A.*,
    917 F. Supp. 2d 1025 (N.D. Cal. 2013) ......................................................................16

*Carlson v. Home Team Pest Defense, Inc.*,
    239 Cal. App. 4th 619 (2015) ....................................................................................10

*Clayworth v. Pfizer, Inc.*,
    49 Cal. 4th 758 (2010) ..............................................................................................15

*Cordas v. Uber Techs., Inc.*,
    228 F. Supp. 3d 985 (N.D. Cal. 2017) .........................................................................3

*Genesco, Inc. v. T. Kakiuchi & Co.*,
    815 F.2d 840 (2d Cir. 1987)........................................................................................17

*In re Google Digital Advert. Antitrust Litig.*,
    No. 20-cv-03556-BLF, 2021 WL 2021990 (N.D. Cal. May 13, 2021) ...........................11, 15

*Hall-Johnson v. Citibank, N.A.*,
   No. 23-cv-05378-JST, 2024 WL 1590645 (N.D. Cal. Mar. 11, 2024)....................................9

*Hill v. Quicken Loans Inc.*,
   No. 19-cv-0163 FMO, 2020 WL 5358394 (C.D. Cal. Aug. 5, 2020)........................................3

*Hiradate v. Ralphs Grocery Co.*,
   No. 22-cv-03593-SSS-PDx, 2022 WL 19299128 (C.D. Cal. Nov. 28, 2022)..................13, 15

*Hoang v. Citibank, N.A.*,
   702 F. Supp. 3d 864 (N.D. Cal. 2023) ................................................................................3, 7

*Hodges v. Comcast Cable Commc'ns, LLC*,
   21 F.4th 535 (9th Cir. 2021) ...........................................................................................14, 15

*Hope v. Early Warning Servs. LLC*,
   No. 22-cv-04639-DOC-ADS, 2023 WL 5505020 (C.D. Cal. July 13, 2023) ........................15

*Jeong v. Nexo Cap. Inc.*,
   No. 21-cv-02392-BLF, 2023 WL 2717255 (N.D. Cal. Mar. 29, 2023)..................................15

*Johnson v. Holder*,
   564 F.3d 95 (2d Cir. 2009)...................................................................................................11

*Johnson v. Stoneridge Creek Pleasanton CCRC LLC*,
   No. A165800, 2023 WL 7125117 (Cal. Ct. App. Oct. 30, 2023)..........................................10

*Lawrence v. Finicity Corp.*,
   716 F. Supp. 3d 851 (E.D. Cal. 2024)...................................................................................6

*Maldonado v. Fast Auto Loans, Inc.*,
   60 Cal. App. 5th 710 (2021) ................................................................................................12

*McGill v. Citibank, N.A.*,
   2 Cal. 5th 945 (2017) ....................................................................................... *passim*

*Mejia v. DACM Inc.*,
   54 Cal. App. 5th 691 (2020) ................................................................................................12

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017)........................................................................................4, 5, 6, 9

*Mohamed v. Uber Techs., Inc.*,
   848 F.3d 1201 (9th Circ. 2016)...........................................................................................10

*Nagrampa v. MailCoups, Inc.*,
   469 F.3d 1257 (9th Cir. 2006) ..............................................................................................9

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016)......................................................................3

*Ramsey v. Comcast Cable Commc'ns, LLC*,
    99 Cal. App. 5th 197 (2023), *review denied* May 1, 2024.................................12, 14

*Rui Chen v. Premier Fin. All., Inc.*,
    No. 18-cv-3771 YGR, 2019 WL 280944 (N.D. Cal. Jan. 22, 2019) .......................3

*Sellers v. JustAnswer LLC*,
    73 Cal. App. 5th 444 (2021) .....................................................................8

*Smith v. Spizzirri*,
    601 U.S. 472 (2024)........................................................................17, 18

*Soliman v. Subway Franchisee Advert. Fund Trust, Ltd.*,
    999 F.3d 828 (2d Cir. 2022)......................................................................3

*Specht v. Netscape Commc'ns Corp.*,
    306 F.3d 17 (2d Cir. 2002)........................................................................8

*Swain v. LaserAway Med. Grp., Inc.*,
    57 Cal. App. 5th 59 (2020) .....................................................................10

*United States, et al. v. Google LLC*,
    No. 23-cv-00108 (E.D. Va. filed Jan. 24, 2023) .....................................13

*Valiente v. Nexgen Glob., LLC*,
    No. 22-cv-22480, 2023 WL 6213583 (S.D. Fla. Sept. 25, 2023) ...........................5

*Vasquez v. Cebridge Telecom CA, LLC*,
    569 F. Supp. 3d 1016 (N.D. Cal. 2021) ......................................................16, 17

*Vaughn v. Tesla, Inc.*,
    87 Cal. App. 5th 208 (2023) .....................................................................15

*White v. Cantor Fitzgerald, L.P.*,
    393 F. App'x 804 (2d Cir. 2010) ................................................................17

**Rules**

Fed. R. Civ. P. 8(a) ...............................................................................16

## I.    INTRODUCTION

Google's motion to compel arbitration as to two of the three remaining named Advertiser Plaintiffs should be denied. Google admits that none of Plaintiff Hanson Law Firm's claims are arbitrable and does not move to compel arbitration as to that Plaintiff, but its motion as to Plaintiffs Michael Stellman and Cliffy Care Landscaping LLC ("Plaintiffs") fails to demonstrate that their claims are subject to arbitration.

*First*, Google fails to meet its burden of proving that Plaintiffs agreed to arbitrate. It is well established that Google must produce evidence showing Plaintiffs agreed that their claims would be subject to arbitration, but Google has not done so. Instead, it relies on a declaration from a legal assistant that vaguely asserts Plaintiffs "were requested to review and accept the new Terms" which include Google's arbitration provisions, without introducing any evidence that might allow the Court to conclude that Plaintiffs actually received adequate notice concerning those Terms. (Dkt. 891 at ¶ 6.)

*Second*, because Google has failed to prove that Plaintiffs or other Advertisers received adequate notice concerning its Terms, it has not shown that they had a meaningful opportunity to opt out of arbitration. Accordingly, Google cannot rely on the opt-out provisions included in its Terms to insulate itself from a finding of unconscionability.

*Third*, even assuming Google met its burden of proving the Plaintiffs agreed to arbitrate (which it has not done), Plaintiffs nonetheless are entitled to pursue their California law claims, which seek public injunctive relief in addition to damages, under California's *McGill* doctrine. That doctrine arises from the California Civil Code and prohibits a business from shielding itself from an injunction primarily benefiting the public. Google's arbitration agreement would preclude the arbitrator from issuing relief that applies beyond the individual claimant. This provision violates *McGill* because if Google's ad-tech monopolies are enjoined, consumers throughout the

1

economy will pay less for goods and services because retailers and other vendors no longer will bear monopoly overcharges for display advertising. Breaking Google's stranglehold on such a vast portion of online commerce will result in a freer, more prolific online experience for the average American, funded by better, more efficient advertising.

*Fourth*, under the severability clause Google included in its Terms, no portion of Advertisers' California-law claims may be compelled to arbitration. The same provision that is unenforceable because it precludes relief beyond the claimant also states that any "claim" as to which the clause is found unenforceable must be severed and may proceed in court. Thus, Advertisers' non-arbitrable California law causes of action cannot be split between this Court for injunctive relief and arbitration for monetary relief; nor does Google advocate such claim-splitting.

Accordingly, Advertisers respectfully request that the Court deny Google's Motion with prejudice.

## II.    ARGUMENT

### A.    Google Has Not Established a Valid Agreement to Arbitrate

The Court denied Google's prior motion to compel arbitration against Advertiser Plaintiffs on the ground that the declaration on which it then relied failed to establish adequate foundation for the declarant's assertions. Specifically, the declarant did not "annex supporting documentation of plaintiffs' acceptance of the Program Terms or explain how Google's records are maintained and indexed" and the declarant's "unsupported factual assertions [were] not appropriately considered at the pleading stage." Dkt. 701 at 23-24. While Google submits a new declaration from a different "legal specialist on [Google's] Ads legal team" in support of the present motion, it continues to be deficient, including because it fails to annex documentation concerning Plaintiffs' purported notice and acceptance of the arbitration Terms. Dkt.891 at ¶ 1.

1.    **Google Has Not Met the Applicable Standard for Establishing a Valid Agreement to Arbitrate**

A party can only be compelled to arbitration if a valid agreement to arbitrate exists between the parties. Google has failed to demonstrate the parties entered into a valid agreement.

A "standard similar to that applicable for a motion for summary judgment" governs the decision on a motion to compel arbitration. *Nicosia v. Amazon.com, Inc*., 834 F.3d 220, 229 (2d Cir. 2016) (citation and internal quotation marks omitted). This summary judgment standard requires a court to consider relevant, admissible evidence while drawing all reasonable inferences in favor of the non-moving party. *Id*. "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Rui Chen v. Premier Fin. All., Inc.*, No. 18-cv-3771 YGR, 2019 WL 280944, at *2 (N.D. Cal. Jan. 22, 2019) (internal quotation marks and citation omitted); *see also Hill v. Quicken Loans Inc*., No. 19-cv-0163 FMO (SPx), 2020 WL 5358394, at *5 (C.D. Cal. Aug. 5, 2020) ("Courts may only compel arbitration where there are no genuine disputes of material fact surrounding the arbitration agreement's existence.").

Questions of contract formation are questions of state law. *Cordas v. Uber Techs., Inc*., 228 F. Supp. 3d 985, 988 (N.D. Cal. 2017). The parties agree California law applies. (Mot. at 8.) Under California law, it is Google's burden to demonstrate Plaintiffs entered into an agreement to arbitrate. *See, e.g.*, *Soliman v. Subway Franchisee Advert. Fund Trust, Ltd.*, 999 F.3d 828, 834 (2d Cir. 2022) (reasoning that "under California law the burden of proving a contract exists is with the party seeking enforcement"; finding moving party failed to meet that burden and affirming denial of motion to compel arbitration); *Hoang v. Citibank, N.A*., 702 F. Supp. 3d 864, 869 (N.D. Cal. 2023) ("Citibank has not met its burden of proving that [plaintiff] entered into this agreement to arbitrate."). Drawing all reasonable inferences in Plaintiffs' favor, Google has not established the

absence of issues of material fact regarding notification, or Plaintiffs' purported acceptance, of arbitration. Google has not carried its burden and its motion should be denied.

### 2. Google Has Not Proven that New and Existing Advertisers Received Notice of Its Arbitration Terms

Google has not established that new or existing advertisers were reasonably on notice of Google's Advertising Program Terms ("Terms"). To show the existence of a valid agreement to arbitrate Google must show that "undisputed facts establish that there is reasonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms[.]" *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (citation and internal quotation marks omitted) (applying California law).

Thus, "the enforceability of a web-based [arbitration] agreement is clearly a fact-intensive inquiry." *Id.* at 76 (citation omitted). The facts surrounding formation of an arbitration agreement are critical, but here Google has failed to adduce those facts—including the design of the notices and web pages that are only vaguely described in Google's Mobin Declaration.

### a. Google Has Not Established that Existing Advertisers Were Adequately Notified of the 2017 Terms Which Added Arbitration

Google has failed to adduce evidence sufficient to show that its terms and conditions were presented to existing advertisers in a manner that would allow the Court to conclude that these advertisers agreed to, and are bound by, those terms.

*First*, Google does not provide any evidence of the notice existing advertisers received alerting them to the changes to the Terms in 2017 (when Google added an arbitration provision), so no Google Ads users that created accounts prior to 2017, like Plaintiff Stellman, can be compelled to arbitrate. The Mobin Declaration begins by acknowledging that Plaintiff Stellman did not agree to arbitration when he opened his Google Ads account in 2008. (Mobin Dec. ¶ 4.) In

conclusory fashion, it goes on to assert that, on an unspecified date "in September 2017 . . . the Terms were modified to, among other things, incorporate an agreement to arbitrate disputes" and existing account holders, such as Plaintiff Stellman, "were given notice asking them to review and accept the modified Terms" through "direct email to advertisers, a public blog post, and an alert." *Id*.

Google does not annex copies (or even the text) of any of the alerts it purports contained links to the Terms containing notice of the arbitration provision, nor does it provide any evidence that Plaintiff Stellman ever received or viewed them. *See Valiente v. Nexgen Glob., LLC*, No. 22-cv-22480, 2023 WL 6213583, at *13 (S.D. Fla. Sept. 25, 2023) ("Since Nexgen has, despite this burden, produced no relevant evidence in support of this part of its claim, we reject its . . . contentions."). In addition, where the moving party contends that arbitration terms were accessible via a hyperlink, it must show that the hyperlink is "readily apparent," for instance through "[c]ustomary design elements denoting the existence of a hyperlink" such as "the use of a contrasting font color (typically blue) and the use of all capital letters, both of which can alert a user that the particular text differs from other plain text in that it provides a clickable pathway to another webpage." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022). Without copies of these notices and their purported links to the Terms in the record, Google has failed to show that it adequately notified existing advertisers of the arbitration provision through any of these means.

The Mobin Declaration also is silent as to whether or not existing advertisers were required to express their acceptance of the Terms in order to continue using their Google Ads accounts. It states that existing users "were *requested* to review and accept the new Terms. Each type of notice

included a link that, when clicked, directed the advertiser to the webpage shown at Exhibit B."
(Mobin Dec. ¶ 6 (emphasis added).)

There is no evidence of how conspicuous the notices themselves were, how conspicuous the links to the Terms in the notices were or whether, even if the advertisers had seen the notices, they were required to and did click the link. Without copies of these notices in the record, or evidence that existing advertisers were required to (and did) agree to the Terms in a manner sufficient to create a contractual agreement to arbitrate, material factual issues remain unresolved as to whether any enforceable agreement to arbitrate binds existing advertisers. *See, e.g.*, *Berman*, 30 F.4th at 858.

*Second*, the actual link in the Terms leading advertisers to the arbitration opt-out page is not in the record. Without it, it is impossible to assess its conspicuousness. *See e.g.*, *Meyer*, 868 F.3d at 71, 78 (assessing font, hyperlink placement, "design of the screen and language" in notice including hyperlink). Exhibit B only includes a screenshot of the landing page that existing advertisers purportedly would have accessed. This landing page does not show where the opt-out link was placed or how it would have been viewed by a user in the small, embedded scroll box in which the Terms appeared. Rather, Google includes the full, large text of the terms and conditions as Exhibits A, D, and E. Because Google does not include an image of how the opt-out link would have been presented to existing advertisers in the scroll box, Google cannot establish that the scroll box text would have adequately enabled existing advertisers to opt out of arbitration. *Berman*, 30 F.4th at 856 ("[T]o be conspicuous in this context, a notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it."); *see, e.g.*, *Lawrence v. Finicity Corp.*, 716 F. Supp. 3d 851, 882–83 (E.D. Cal. 2024) (denying motion to compel arbitration).

*Third*, Google has not presented evidence of the opt-out page that existing advertisers would have viewed in 2017 had they viewed the Terms. If an advertiser did click on the opt-out link embedded in section 13F (the 23rd paragraph of the Terms) of the scroll box in Exhibit B, Google states they would have arrived at an opt-out page annexed as Exhibit C. (Mobin Dec. ¶ 10.) But it is unclear from the declaration if the image included in Exhibit C was the image Plaintiff Stellman would have viewed in 2017 as the copyright date is 2021. (*Id*. Ex. C.) The declaration ambiguously states that "[t]he substance of this webpage has been unchanged since its inception in September 2017." *Id*. What is meant by substance is unclear. Is the text unchanged? The layout of the page? That the page provided the opportunity to opt out? These factual questions remain. *Hoang*, 702 F. Supp. 3d at 871 ("But considering this evidence in the light most favorable to [non-moving party] as required, Citibank has not met its burden of proof. To start, its explanation . . . is cursory at best, and leaves many questions unanswered.").

Because numerous factual issues remain regarding the notice that existing advertisers received concerning Google's September 2017 Terms (including whether they would have actually viewed the Terms), existing advertisers cannot be compelled to arbitration.

### b. Google Has Not Established That New Advertisers Were Adequately Notified of the Terms

Google also does not provide any evidence demonstrating how advertisers, such as Cliffy Care, who opened accounts after Google added arbitration provisions to its September 2017 Terms would have viewed these Terms and the opt-out page when opening accounts. Google merely asserts, vaguely, that "[w]hen advertisers sign up to use Google's advertising platforms in the United States, they are shown Google's Advertising Program Terms ('Terms') and are requested to expressly agree to the Terms by clicking a button labeled 'Accept' located under the Terms." (Mobin Dec. ¶ 3.) Again, with no evidence in the record establishing what this page looked like,

Google cannot "establish the contractual terms were presented to the consumer in a manner that made it apparent the consumer was assenting to those very terms when checking a box or clicking on a button," as California law requires. *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 461 (2021). "[M]erely clicking on a button on a webpage," as Google's declarant asserts Plaintiffs did, "viewed in the abstract, does not signify a user's agreement to anything." *Berman*, 30 F.4th at 857 (citing *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29-30 (2d Cir. 2002)).

### 3.    Google Fails to Establish Plaintiffs' Purported Acceptance

Google's evidence of Plaintiffs' purported acceptance of the Terms fairs no better than its notification evidence and raises even more factual questions.

Google's screen shot of Cliffy Care's Google Ads Account Hompage, included as Exhibit H to the Mobin Declaration, indicates that Cliffy Care accepted "Google Program Advertiser Terms" on November 20, 2019. (Mobin Dec. Ex. H.) But it is unclear exactly which terms this acceptance references. The terms attached as Exhibits A, D, and E are entitled "Google LLC Advertising Program Terms," not "Google Program Advertiser Terms[.]" (*Id*. Ex. A, D and E.) Further, Cliffy Care's change history attached as Exhibit I states: "Customer has ACCEPTED terms and conditions for agreement 294, version 2.5, legal_document_id: 131839[.]" (*Id*. Ex. I.) Nowhere does Google explain what "agreement 294, version 2.5, legal_document_id: 131839" refers to. The Mobin Declaration simply concludes that "an account associated with Cliffy Care Landscaping LLC accepted the November 2019 Terms on November 20, 2019[.]" (Mobin Dec. ¶ 17.) It is unclear if "agreement 294, version 2.5, legal_document_id: 131839" refers to the 2019 "Google LLC Advertising Program Terms" attached as Exhibit E, which may or may not be the "Google Program Advertiser Terms" referenced as accepted in Exhibit H. (*Id*. Ex. I, E, and H.)

These factual questions are further complicated by the fact that more than one set of terms and conditions applied to Google advertising accounts. Exhibit H references at least one additional

set of terms and conditions entitled "Google Ads Data Processing Terms[.]" (*Id.* Ex. H.) To which terms and conditions does Cliffy Care's acceptance of "agreement 294, version 2.5, legal_document_id: 131839" refer—"Google LLC Advertising Program Terms[,]" "Google Program Advertiser Terms[,]" or "Google Ads Data Processing Terms"?[1] It is not clear from the record what agreement Plaintiffs accepted. Google's evidence that Plaintiffs manifested consent to arbitration is far from "unambiguous[.]" *Meyer*, 868 F.3d at 75; *Hall-Johnson v. Citibank, N.A.*, No. 23-cv-05378-JST, 2024 WL 1590645, at *3 (N.D. Cal. Mar. 11, 2024) ("[B]efore Citibank can prove that Hall-Johnson agreed to arbitration through her conduct, it must establish beyond genuine dispute that she consented to the arbitration agreement."). Inferences are required to determine whether or not Plaintiffs Cliffy Care and Stellman consented to arbitration, and those inferences must be drawn in favor of plaintiffs as the nonmoving party.

## B.      Google's Arbitration Terms Are Unconscionable

Separately, the Court should find the Terms are unenforceable because they are unconscionable. "California courts analyze contract provisions for both procedural and substantive unconscionability." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006); *see also Armendariz v. Found. Health Psychcare Servs. Inc.*, 24 Cal. 4th 83, 113 (2000).

Google implicitly admits that its Terms were presented on a "take-it-or-leave-it basis," and that there was an "inequality of bargaining power that result[ed] in no real negotiation and an absence of meaningful choice" satisfying the standard for procedural unconscionability. *Nagrampa*, 469 F.3d at 1281 (citation and internal quotations omitted). Indeed, the very essence of this action, being an antitrust case, underscores that Plaintiffs had no meaningful alternative choice. Google's only argument regarding unconscionability is that its "Terms of Service allow

---

[1] Plaintiff Cliffy Care is referenced in this example, but the same issues are present for Plaintiff Stellman. (Mobin Dec. Ex. J and K.)

advertisers to opt out of the arbitration provision" and, thus, contends Google, those Terms cannot be found unconscionable. Mot. at 8.

As outlined above, Google fails to submit competent evidence to support its argument that Advertisers were in fact afforded a "meaningful" opportunity to opt out, as required for the rule on which Google relies to apply. *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Circ. 2016) (. Google does not present evidence of how the hyperlink to the opt-out would have appeared to existing advertisers or any evidence at all as to the notification page or link to the opt-out for existing advertisers. Further, the California Court of Appeal has held that the Ninth Circuit case on which Google relies— *Mohamed*—misconstrued California law and that, contrary to Google's position: "Under California law, 'an opt-out provision does not insulate an arbitration agreement from a finding of procedural unconscionability.'" *Johnson v. Stoneridge Creek Pleasanton CCRC LLC*, No. A165800, 2023 WL 7125117, at *2 (Cal. Ct. App. Oct. 30, 2023) (quoting *Swain v. LaserAway Med. Grp., Inc.*, 57 Cal. App. 5th 59, 69 (2020)).[2] Accordingly, based on the record that Google submitted, the Court should find the Terms procedurally unconscionable.

The Terms also are substantively unconscionable because, for example, they contain a unilateral modification clause, a class action waiver, and a pre-arbitration procedure requiring a complainant to submit a pre-arbitration informal request for dispute resolution to Google. *See Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 392 (E.D.N.Y. 2015) (collecting cases identifying unconscionable terms); *Carlson v. Home Team Pest Defense, Inc.*, 239 Cal. App. 4th 619, 635-36 (2015) (holding pre-arbitration procedure requiring complainant to submit an informal request for

---

[2] In applying state law, "[g]reat weight is given to lower state court decisions, with decisions of intermediate state appellate courts . . . particularly persuasive." *Braune v. Abbott Labs.*, 895 F. Supp. 530, 542 (E.D.N.Y. 1995) (internal quotation marks and citation omitted).

dispute resolution was substantively unconscionable because it provided the company a "free peek" at the claim).

### C.    Google's Arbitration Terms Are Unenforceable Because They Violate California Law by Prohibiting Claims for Public Injunctive Relief

Before this case was transferred to this Court by the JPML, Judge Beth Labson Freeman correctly rejected Google's argument that Advertisers do not seek public injunctive relief under California law. *In re Google Digital Advert. Antitrust Litig.*, No. 20-cv-03556-BLF, 2021 WL 2021990, at *6 (N.D. Cal. May 13, 2021) ("Plaintiffs' requested injunctive relief is focused on 'prohibiting unlawful acts that threaten future injury to the general public.'") (quoting *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 951 (2017)). There is no "cogent and compelling reason" to reach a different conclusion now, and Judge Freeman's decision in this regard should be considered the "law of the case." *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009).

Google's arbitration provisions prohibit "class or representative arbitration," and limit any arbitration to "individualized damages and relief." (Dkt. 891 at 12 of 58.) An arbitrator may enjoin Google's conduct "only to the extent necessary to provide relief warranted by that [claiming] party's individual claim without affecting other Google users or other customers or advertisers." (*Id*. at pp. 23-24, & 32 of 58.)

This provision contravenes the rule enunciated in *McGill* in light of the relief Advertisers seek on their Sixth Cause of Action for violation of California's Cartwright Act and their Seventh Cause of Action for violation of California's Unfair Competition Law ("UCL"). (Dkt. 399.) Advertisers seek an injunction against Google's unlawful anticompetitive conduct that will benefit the general public in the form of more effective, informative advertising and higher-quality and lower-priced goods and services. (*Id.* at ¶¶ 314, 319, 405, 406(C).) It now is well established that such injunctive relief falls within the *McGill* rule and that Plaintiffs cannot be prohibited from

seeking it in arbitration. *See Mejia v. DACM Inc.*, 54 Cal. App. 5th 691, 702-03 (2020) (affirming denial of arbitration motion in unfair competition case because the clause would have precluded an award affecting "anyone other than a named party"); *Maldonado v. Fast Auto Loans, Inc.*, 60 Cal. App. 5th 710, 721-22 (2021) (declining to limit *McGill* to false advertising claims and holding that "[i]t is enough that the requested relief has the purpose and effect of protecting the public from Lender's ongoing harm."); *Ramsey v. Comcast Cable Commc'ns, LLC*, 99 Cal. App. 5th 197, 207, 209 (2023), *review denied* May 1, 2024 (finding requested injunctive relief against cable company fell within *McGill* because it would "provide increased pricing transparency" benefitting "any member of the public considering such a subscription").

Consumers are the ones who see the display ads on platforms subject to Google's restraints, and they would be the primary beneficiaries of the innovations in advertising that free competition would permit. Advertising "allows consumers to learn of the range of competitors in a market, their prices, and the nature of the products and services offered. When advertising effectiveness is reduced, competition between products and services is reduced, and consumers are harmed." Dkt. 399, ¶ 319. Eliminating Google's ad-tech monopolies also would lower the prices of goods and services purchased online, benefiting a very broad set of consumers, to the extent advertisers freed of Google's monopoly pricing would be able to reduce their own prices. *Id.*, ¶¶ 319-20. These allegations are plausible, not "[c]onclusory." Mot. at 15.

The urgent public interest is underscored by the lawsuits brought by the United States and nearly every State to terminate Google's control of digital advertising. Google's monopolization "hurts all of us"—including because "as publishers make less money from advertisements" they

"have fewer resources to create content for internet users," and "fewer publishers are able to offer internet content without subscriptions [or] paywalls[.]"[3]

Contrary to Google's legal argument, the fact that Advertisers sue on behalf of a discrete class of advertisers does not prevent them from also seeking a public injunction. Google's argument "mistakenly impl[ies] that class actions and public injunctions are mutually exclusive. But of course that is not the case." *Hiradate v. Ralphs Grocery Co.*, No. 22-cv-03593-SSS-PDx, 2022 WL 19299128, at *7 (C.D. Cal. Nov. 28, 2022) (internal citations omitted). The relevant question is whether the injunction would have the "primary" purpose and effect of benefiting the public, or the "primary" purpose and effect of "redressing or preventing injury . . . to a group of individuals similarly situated to the plaintiff." *McGill*, 2 Cal. 5th at 955.

Google principally relies on *California Crane School, Inc. v. Google LLC*, 621 F. Supp. 3d 1024 (N.D. Cal. 2022) ("*Crane I*"). However, a subsequent decision from the same action explained that the opinion on which Google relies was based on the lack of a claim for injunctive relief under state law, which is not the situation in this case:

> In *Crane I*, the Court held . . . that while California's *McGill* rule makes an arbitration provision that waives a party's ability to seek public injunctive relief in any forum invalid and unenforceable . . . , such relief could not be sought on the federal law claims [then] in the complaint.

*California Crane Sch., Inc. v. Google LLC*, 722 F. Supp. 3d 1026, 1032 (N.D. Cal. 2024) (citations omitted) ("*Crane III*"[4]). After *Crane I*, the plaintiff amended its complaint to include state law claims seeking injunctive relief under California's Cartwright Act and the UCL based on alleged

---

[3] Compl., ¶¶ 9, 265, *United States, et al. v. Google LLC*, No. 23-cv-00108, Doc. 1 (E.D. Va. filed Jan. 24, 2023).
[4] There was also an intermediary decision *California Crane School, Inc. v. Google LLC*, No. 21-cv-10001-HSG, 2023 WL 2769096 (N.D. Cal. Mar. 31, 2023) ("*Crane II*"), which does not speak to the instant motion.

violations of the Cartwright Act. In light of this amendment the *Crane III* court this time found that *McGill* applied to plaintiff's UCL claim, because the "relief would benefit the general public as a whole rather than providing benefits to only a specific and identifiable subset of the population."[5]

Google also places great weight on the Ninth Circuit's decision in *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535 (9th Cir. 2021), to argue that Plaintiffs do not seek "public injunctive relief." Google's argument in this regard fails for the same reason that it failed in *Crane III*:

> Unlike the class-specific relief sought in *Hodges*, the relief here would provide diffuse benefits to the public by potentially bolstering competition in the [online] advertising markets, increasing consumer choice, improving data privacy, and decreasing costs for both general search engine users and digital advertisers like [Plaintiffs]. Greater competition could also accelerate innovation, bringing positive downstream effects on internet users as a whole.

*Crane III*, 722 F. Supp. 3d at 1036–37. The relief requested by Advertisers in the instant case is similarly distinguishable from *Hodges* and comparable to that in *Crane III*. Plaintiffs seek injunctive relief directed at Google's ad-tech monopolies, "[t]he primary purpose and effect of which . . . will be to benefit the public from the lower prices and greater innovation that will prevail in competitive digital advertising markets in the absence of Google's monopoly." Dkt. 399, ¶ 405.

Moreover, subsequent California Court of Appeal decisions explain that *Hodges* failed to apply California law correctly. Most recently, in *Ramsey v. Comcast Cable Communications, LLC*, the California Court of Appeal disagreed with the majority in *Hodges* and found "compelling the reasoning of the dissent, which observed that an injunction requiring "statutorily mandated

---

[5] The *Crane III* court held that plaintiffs in that case failed to state a claim under California's Cartwright Act or the Sherman Act. 722 F. Supp. 3d at 1040. This Court already held that Advertiser Plaintiffs *do* state antitrust claims, differentiating this case from *Crane III* in that respect. Dkt. 701.

disclosures in a single document, though not benefiting every member of the public, would benefit "potential *and* actual purchasers . . . when they are considering whether to enter into a transaction." 99 Cal. App. 5th at 211-12; *see also Vaughn v. Tesla, Inc.*, 87 Cal. App. 5th 208, 231 n.16 (2023) ("[W]e believe the analysis of the [*Hodges*] dissent is more consistent with *McGill*."). This Court similarly is "not bound" by the majority opinion in *Hodges*, or by district court cases relying on that opinion, such as *Crane I. Id.*; *Braune*, 895 F. Supp. at 542 ("[In applying state law, g]reat weight is given to lower state court decisions, with decisions of intermediate state appellate courts . . . particularly persuasive.") (internal quotation marks and citation omitted).

California district courts regularly deny motions to compel arbitration of class claims under *McGill. See, e.g.*, *Jeong v. Nexo Cap. Inc.*, No. 21-cv-02392-BLF, 2023 WL 2717255, at *8 (N.D. Cal. Mar. 29, 2023) (citing *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819 (9th Cir. 2019)). In this case, Advertisers' request for injunctive relief is not "limited to or solely for the benefit of the putative class," *Hiradate*, 2022 WL 19299128, at *7, and "constitutes public injunctive relief by seeking to enjoin Defendant from future violations of California's Unfair Competition Law" and Cartwright Act. *Hope v. Early Warning Servs. LLC*, No. 22-cv-04639-DOC-ADS, 2023 WL 5505020, at *9 (C.D. Cal. July 13, 2023).

As Judge Freeman reasoned when this case was pending before her, "[t]he purpose of antitrust [law] is to protect and promote competition to properly allocate economic resources." *In re Google Digital Advert. Antitrust Litig.*, 2021 WL 2021990, at *6; *see also Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 783 (2010) ("The main purpose of the anti-trust laws is to protect *the public* from monopolies and restraints of trade.") (emphasis added) (citations and internal quotation marks omitted). Thus, under a straightforward application of *McGill*, the Court should preserve all of Advertisers' UCL and Cartwright Act claims for adjudication in this forum.

15

### D.    The Arbitration Agreement's Severability Clause Requires the Entirety of the California Law Claims to Proceed in This Court

Google's arbitration agreement provides that, if it is held enforceable as to any claim, that "claim" is to remain in court. Because Advertisers' request for injunctive relief under their UCL and Cartwright claims are non-arbitrable, their UCL and Cartwright Act causes of action must remain in this Court, in their entirety. Google concedes that "if the Court found certain claims under California law non-arbitrable, the appropriate remedy is to sever those claims." (Mot. at 15.)

In *Blair*, the Ninth Circuit held that a contractual provision requiring severance of a "claim for relief" required the court to sever the claim as a whole—not just the remedy. 928 F.3d at 830-31. The agreement in that case included a severability clause that, like Google's, provided for:

> severance of "that claim" . . . to allow it to "be brought in court."  A "claim for relief," as that term is ordinarily used, is synonymous with "claim" or "cause of action."  *See, e.g.*, Fed. R. Civ. P. 8(a) (interchangeably using "claim" and "claim for relief," and using "demand for relief sought" to refer specifically to requested remedy); . . . *Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025, 1031 (N.D. Cal. 2013) ("[E]quitable relief is not a claim for relief but rather only a remedy."). We read the clause, as did the district court, to provide that the entire claim be severed for judicial determination.

928 F.3d at 831-32. Similarly, the district court in *Vasquez v. Cebridge Telecom CA, LLC*, 569 F. Supp. 3d 1016, 1029 (N.D. Cal. 2021), denied an arbitration motion in its entirety because the clause both contravened *McGill* and precluded claim-splitting by providing for severance of a claim and only a claim. Likewise, the *Crane III* court "sever[ed] the UCL claim from [Google's] arbitration agreement and . . . allow[ed] that claim to proceed in . . . Court." *Crane III*, 722 F. Supp. 3d at 1037 (citing *Blair*, 928 F.3d at 831).

Google's severance clause was before the *Crane III* court, is similar to the one before the *Blair* court, and is identical to that in *Vasquez*:

> If . . . applicable law precludes enforcement of any of this subsection's limitations as to a particular claim for relief, then ***that claim (and only that claim)*** must be severed from the arbitration and may be brought in court.

*Id.* at 1037 (emphasis added); *see also Vasquez*, 569 F. Supp. 3d at 1029.  In sum, "[c]laims, not specific forms of relief, are severable." *Id*. The private remedies that flow from these same state-law claims thus cannot be compelled to arbitration. Under the arbitration agreement, the parties "must litigate the entirety of each of those claims before this Court, including . . . requests for restitution, declaratory relief and injunctive relief for . . . the putative class." *Vasquez*, 569 F. Supp. 3d at 1029 (citing *Blair*, 928 F.3d at 831). Google's arbitration agreement precludes dismissal of any portion of Advertisers' claims under California law.

### E.    The Court Should Allow All Claims Not Subject to Arbitration to Proceed

Google's request to stay proceedings in this MDL even if the Court only partially grants Google's motion to compel arbitration should be denied. When some, but not all, claims are compelled to arbitration, "[t]he decision to stay the balance of the proceedings pending arbitration is a matter largely within the district court's discretion to control its docket." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 856 (2d Cir. 1987); *see also White v. Cantor Fitzgerald, L.P.*, 393 F. App'x 804, 808 (2d Cir. 2010) ("[T]he district court is not required to stay the litigation of the nonarbitrable claims before it . . . pending the outcome of any arbitrated claims."). In the instant case, Advertisers' claims are coordinated with those of numerous other plaintiffs, none of whom are subject to arbitration. Should the Court compel only some of Advertisers' claims, it should move forward with the remainder. It would be grossly inefficient to proceed with other plaintiffs' claims based on similar facts, while staying the Advertisers.

The case law cited by Google speaks only to whether the action should be stayed or dismissed once a motion to compel arbitration is granted *in full*. *See Smith v. Spizzirri*, 601 U.S. 472, 476 (2024). In its prior motions seeking to compel arbitration of Advertisers' claims, filed before the Supreme Court's *Smith* decision, Google requested dismissal, not a stay of action. *Smith*

now clarified that when an *entire* action is compelled to arbitration it should be stayed, not dismissed. However, *Smith* does not apply to a partial denial of a motion to compel arbitration, where some claims are subject to arbitration but others are not, and claims of other plaintiffs groups are entirely unaffected by any order compelling arbitration.

## III.    CONCLUSION

For the foregoing reasons, Advertisers respectfully submit that the Court should deny Google's motion to compel arbitration with prejudice.

Dated: November 18, 2024                    Respectfully submitted,

/s/ *Tina Wolfson*
Tina Wolfson (TW-1016)
Theodore W. Maya (*pro hac vice*)
Bradley K. King (BK-1971)
**AHDOOT & WOLFSON, PC**
2600 West Olive Ave., Suite 500
Burbank, California 91505
Tel.: (310) 474-9111
Fax: (310) 474-8585
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com
bking@ahdootwolfson.com

Dena C. Sharp (*pro hac vice*)
Jordan Elias (*pro hac vice*)
Scott M. Grzenczyk (*pro hac vice*)
Mikaela Bock (*pro hac vice*)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dsharp@girardsharp.com
jelias@girardsharp.com
scottg@girardsharp.com
mbock@girardsharp.com

*Interim Co-Lead Counsel for Advertiser*
*Plaintiffs and the Proposed Advertiser Class*

Jonathan L. Rubin (*pro hac vice*)
**MOGINRUBIN LLP**
2101 L Street, NW, Third Floor
Washington, D.C. 20037
Tel: (202) 630-0616
jrubin@moginrubin.com

Daniel J. Mogin (*pro hac vice*)
Timothy Z. LaComb (*pro hac vice*)
**MOGINRUBIN LLP**
4225 Executive Square, Suite 600
La Jolla, CA 92037
Tel: (619) 687-6611
dmogin@moginrubin.com
tlacomb@moginrubin.com

*Counsel for Plaintiff Cliffy Care*

Archana Tamoshunas (AT-3935)
**TAUS, CEBULASH & LANDAU, LLP**
123 William Street, Suite 1900A
New York, NY 10038
Tel.: (212) 931-0704
Fax: (212) 931-0703
atamoshunas@tcllaw.com

April D. Lambert (*pro hac vice*)
John D. Radice (JR 9033)
**RADICE LAW FIRM, PC**
475 Wall Street
Princeton, NJ 08540
Tel: (646) 245-8502
Fax: (609) 385-0745
alambert@radicelawfirm.com
jradice@radicelawfirm.com

*Counsel for Plaintiff Hanson Law Office, as
successor in-interest to Hanson Law Firm, PC*