# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE: GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION** | **No. 1:21-md-3010 (PKC)** |

*This Document Relates To:*

| | |
|---|---|
| **IN RE GOOGLE DIGITAL ANTITRUST LITIGATION** | **No. 1:21-cv-7001 (PKC)** |

| | |
|---|---|
| **MICHAEL STELLMAN, individually and on behalf of all others similarly situated**<br><br>*Plaintiff*,<br><br>**- against -**<br><br>**GOOGLE LLC ET AL.,**<br><br>*Defendants.* | **No. 1:23-cv-01532 (PKC)** |

**DEFENDANTS GOOGLE LLC AND ALPHABET INC.'S REPLY IN SUPPORT OF RENEWED MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDINGS AS TO PLAINTIFFS
<u>CLIFFY CARE LANDSCAPING LLC AND MICHAEL STELLMAN</u>**

## TABLE OF CONTENTS

**INTRODUCTION**................................................................................................................. 1

**ARGUMENT** ...................................................................................................................... 1

I.    Google Presents Sufficient Evidence Showing a Valid and Enforceable Arbitration
Agreement Under the FAA ...................................................................................................... 1

   A.    Cliffy Care and Stellman Offer No Evidence Disputing that They Entered Valid and
Enforceable Arbitration Agreements Under the FAA ............................................................ 2

   B.    Google's Arbitration Agreement is Neither Procedurally Nor Substantively
Unconscionable .................................................................................................................... 4

      1.    Google's Arbitration Provision is Not Procedurally Unconscionable Because
Advertisers Were Afforded a Meaningful Opportunity to Opt Out..................................... 5

      2.    Google's Arbitration Agreement is Not Substantively Unconscionable Because
Plaintiffs Do Not Show It Contains Unconscionable Terms ................................................ 7

II.    Cliffy Care and Stellman Have Not Shown Their California State Law Claims Satisfy the
*McGill* Doctrine..................................................................................................................... 8

   A.    Judge Freeman's May 2021 Ruling is Not the "Law of the Case" ................................. 8

   B.    Enjoining Conduct in Markets for Purchasing Online Display Advertising Would Only
Benefit the Putative Advertiser Class .................................................................................... 9

**CONCLUSION** ........................................................................................................... **10**

# TABLE OF AUTHORITIES

## Cases

*Barrows v. Brinker Rest. Corp.,* 36 F.4th 45 (2d Cir. 2022) .......................................................... 3

*Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 392 (E.D.N.Y. 2015) ................................................ 7

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) ........................................ 4

*Carlson v. Home Team Pest Defense, Inc.*, 239 Cal. App. 4th 619  (Cal. Ct. App. 1st Dist. 2015)
................................................................................................................................................. 7, 8

*Cliffy Care Landscaping LLC v. Facebook, Inc.*, No. 1:21-cv-00360-KBJ (D.D.C.) .................. 9

*E. End Eruv Ass'n, Inc. v. Town of Southampton*, 2014 WL 4826226 (E.D.N.Y. Sept. 24, 2014) 8

*Hines v. Overstock.com, Inc.*, 380 F. App'x 22 (2d Cir. 2010) .................................................. 3, 4

*Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535 (9th Cir. 2021) ................................. 10

*In re Google Digit. Advert. Antitrust Litig.*, 2021 WL 2021990 (N.D. Cal. May 13, 2021) .......... 9

*In re Google Digit. Advertiser Antitrust Litig.*, No. 5:20-cv-03556-BLF (N.D. Cal.) ................... 9

*In re Int. Rate Swaps Antitrust Litig.*, 351 F. Supp. 3d 698 (S.D.N.Y. Nov. 20, 2018) ................ 8

*Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673 (2d Cir. 1972) .......... 2

*Johnson v. Stoneridge Creek Pleasanton CCRC LLC*, 2023 WL 7125117 (Cal. Ct. App. 1st Dist.
Oct. 30, 2023)................................................................................................................................ 6

*Martinez v. GAB.K, LLC*, 2024 WL 3460983 (S.D.N.Y. July 18, 2024) ...................................... 3

*McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017) ........................................................................... 9

*Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017) ............................................................... 4

*Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006) ..................................................... 5

*Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223 (2012) ....... 4, 5

*Ramsey v. Comcast Cable Commc'ns, LLC*, 99 Cal. App. 5th 197 (2023) ................................. 10

*Sawyer v. New York State Dep't of Corr. Servs.*,  2015 WL 6641471 (W.D.N.Y. Oct. 28, 2015). 8

*Swain v. LaserAway Med. Grp., Inc.*, 57 Cal. App. 5th 59 (Cal. Ct. App. 2d Dist. 2020) ......... 6, 7

*Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95 (2d Cir 2022)................................... 2

**INTRODUCTION**

Advertisers' Opposition (ECF No. 892, "Opp.") to Google's Motion to Compel Arbitration and Stay Proceedings (ECF No. 890, "Mot.") is significant for its total failure to rebut Google's evidence that Advertisers agreed to arbitrate their claims. Advertisers erroneously argue that it is Google's burden to prove that its arbitration provision is valid and enforceable. On the contrary: because Google has provided evidence of the Dispute Resolution Agreement (and Advertisers' assent), the burden shifts to Advertisers to prove unenforceability. Yet Advertisers have not even *disputed* any of the following facts, let alone provided a shred of evidence to rebut them: (i) Advertisers received adequate notice of the Agreement; (ii) Advertisers assented to the Agreement; and (iii) Advertisers declined the opportunity to opt out of it. These undisputed facts establish that Cliffy Care and Stellman agreed to arbitrate.

In the absence of any actual evidence to support their position, Advertisers resort to specious legal arguments regarding the sufficiency of Google's evidence, erroneous claims of unconscionability, and strained efforts to paint their complaint as seeking public injunctive relief under California's *McGill* test.

All of these arguments fail, and the Court should grant Google's Renewed Motion.

**ARGUMENT**

**I.  Google Presents Sufficient Evidence Showing a Valid and Enforceable Arbitration Agreement Under the FAA**

Despite the parties' agreement that a standard similar to summary judgment applies to a motion to compel arbitration (Opp. at 3), Advertisers appear to have the evidentiary burden backwards. Google bears an initial burden of "demonstrating that an agreement to arbitrate was made," but that burden "does not require [showing] that the agreement would be enforceable– only that an agreement to arbitrate existed." *Zachman v. Hudson Valley Fed. Credit Union*, 49

F.4th 95, 101–02 (2d Cir 2022).  Once the "existence of an agreement to arbitrate is established, the burden shifts to the party seeking to avoid arbitration to show the agreement to be inapplicable or invalid." *Id.*  Moreover, in order for Advertisers to "make a genuine issue" of fact that survives a motion to compel, "an unequivocal denial" that they agreed to arbitrate is "needed, and some evidence [must be] produced to substantiate that denial."  *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673, 676 (2d Cir. 1972).

Google has more than satisfied its initial burden: it has now submitted (i) an affidavit that extensively describes the process by which Advertisers interfaced with the Google Ads Terms of Service (Mobin Declaration, ECF No. 891); (ii) annexed exhibits reflecting the several conspicuous notices alerting Advertisers to the presence of an arbitration agreement and the opportunity to opt out (*id.* Exs. A-E); (iii) customer records showing that Advertisers accepted the Terms of Service and did not opt out of the Dispute Resolution Agreement (*id.* Exs. H-L); and (iv) Cliffy Care's admissions that it would have needed to accept the Terms of Service to use Google Ads and also took no affirmative steps to opt out of arbitration (Mot. at 6).

Advertisers' response is to offer *zero* evidence–not a single affidavit– contradicting any of this; indeed, they fail to even dispute any of Google's assertions.  They instead lob a flurry of inaccurate complaints that the particular evidence offered by Google is not to their liking.

### A. Cliffy Care and Stellman Offer No Evidence Disputing that They Entered Valid and Enforceable Arbitration Agreements Under the FAA

Advertisers concede that the question at issue is whether there is any factual dispute as to the existence and formation of a contract.  Opp. at 3.  Simply put, there is none.  *Nowhere* in their Opposition do Advertisers actually assert or even suggest any of the following: (i) Stellman or Cliffy Care did not receive adequate notice of an arbitration agreement; (ii) Stellman or Cliffy Care did not read or understand the arbitration agreement; (iii) Stellman or Cliffy Care did not

knowingly agree to the Terms of Service; or (iv) that Stellman or Cliffy Care opted out of the arbitration agreement. Nor have they offered any evidence—including any testimony from either plaintiff claiming that they lacked notice of the agreement, did not accept it, or opted out—that would support such a claim. *See Barrows v. Brinker Rest. Corp.,* 36 F.4th 45, 50 (2d Cir. 2022) (after movant proved existence of agreement and the burden shifted, the non-movant "needed to counter with at least *some evidence* … to substantiate [her] denial that an agreement had been made." (emphasis added) (internal citations omitted). All evidence in the record points in only one direction: Stellman and Cliffy Care were alerted to the arbitration agreement and manifested their assent to it.

Because they cannot claim or prove any actual facts to the contrary, Advertisers simply nitpick Google's evidence. Yet each of their quibbles fall flat, given the absence of any dispute.

Advertisers first argue that Google has not proved with enough particularity that it provided notice to Google Ads users. But these two plaintiffs have never once challenged—whether before this Court or in discovery responses—Google's position that Stellman and Cliffy Care each received notice of the Terms of Service's arbitration agreement, let alone provided any evidence to that effect. *See Martinez v. GAB.K, LLC*, 2024 WL 3460983, at *3 (S.D.N.Y. July 18, 2024) (non-movant failed to carry burden to "put the making of [the agreement] in issue.") (citing *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010)).

In any event, Google provided evidence that every single Google Ads user was alerted to the arbitration agreement contained in the Terms of Service beginning in 2017, including in prominent, boldfaced notices at the top of the Terms themselves, Instructions webpages, and the opt-out landing page. Mot. at 3-4. Google has offered evidence supporting its position that Stellman and Cliffy Care received notice. The burden therefore rests with Advertisers, *not Google*,

to rebut that evidence with its own and put the agreement "in issue." *Hines*, 380 F. App'x at 24. They have not.[1]

Advertisers next argue that Google has not sufficiently proved acceptance, claiming that the Terms of Service referred to in Advertisers' customer records do not exactly match the heading for the Terms of Service attached as an exhibit to the Mobin Declaration (Opp. at 8-9). This ignores Google's uncontested evidence that its arbitration agreement was included in Terms of Service introduced on September 1, 2017 and in subsequent versions, all Google Ads users needed to accept the Terms of Service in order to use Google Ads, and Advertisers' customer records demonstrate that Stellman and Cliffy Care, as of March 19, 2024, last accepted Terms of Service after September 1, 2017 without opting out of the arbitration agreement. *See, e.g.*, ECF No. 891 ¶¶ 3-9, 12-13, 17-20, Exs. A-E, H-L; Mot. Exs. 1-4. Stellman and Cliffy Care have otherwise never represented to this Court (or Google) that they did not accept the agreement, and likewise have never introduced evidence to contradict the evidence offered by Google.

### B. Google's Arbitration Agreement is Neither Procedurally Nor Substantively Unconscionable

The Dispute Resolution Agreement is not procedurally unconscionable due to its opt-out provision, Mot. 9, and even if the Court considered the question of substantive unconscionability, the agreement is not "so one-sided as to shock the conscience." *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012) (internal citations omitted).

Advertisers have not met their burden to show why either element of this test would apply here, much less both of them. *See Pinnacle Museum*, 55 Cal. 4th at 247 ("The party resisting

---

[1] Unsurprisingly, each of Advertisers' "lack of notice" cases involved plaintiffs that *actually disputed* that they received notice. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 853 (9th Cir. 2022) (plaintiff "did not see a notice in fine print" about arbitration); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017) ("Meyer attests that he was not on actual notice of the hyperlink to the Terms of Service or the arbitration provision itself.").

arbitration bears the burden of proving unconscionability.").

1.  Google's Arbitration Provision is Not Procedurally Unconscionable Because Advertisers Were Afforded a Meaningful Opportunity to Opt Out

Advertisers' first argument—that the arbitration agreement was presented with an "inequality of bargaining power … and an absence of meaningful choice" (Opp. at 9)—is wildly misleading and falls well short of satisfying their burden to show unconscionability.  Google does not "implicitly admit[]" that its arbitration agreement was presented on a "take-it-or-leave-it-basis" with "an absence of meaningful choice."  Opp. at 9.  To the contrary, Google has expressly demonstrated that advertisers were *not* given a "take-it-or-leave-it" arbitration agreement.  Instead, they were given the opportunity to opt out of arbitration *while still using* Google Ads (Mot. at 8-9), rendering inapplicable Advertisers' only authority here, *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006).

Advertisers' second argument—that Google has not provided evidence that Advertisers were afforded a meaningful opportunity to opt out—is also baseless.  First (once again) it is Advertisers' burden to prove unconscionability, and they have provided no evidence refuting that they were provided a meaningful opportunity to opt out.  Second, Google has provided evidence of the uniform, standard Google Ads sign-up process through which all Google Ads advertisers (including Cliffy Care and Stellman) are presented with the Terms of Service.  *See* Mobin Decl. ¶¶ 3-4, 13, Exs. A, B, E.  Before setting out any terms, the first paragraph of the Terms of Service includes an explanation that advertisers could opt out of the Terms of Service's arbitration agreement—without requiring that access to Google Ads be paused or revoked—within 30 days of accepting the Terms of Service, and directs advertisers to the specific opt-out provision within the arbitration agreement.  *See id*. Exs. A, E; *see also id*. Ex. C (explaining that opt-out is specific to "the Dispute Resolution provisions" of the Terms of Service).  A similar explanation is repeated

on the webpage giving advertisers the Terms of Service and the option to accept or decline. *See id.* ¶ 6, Ex. B.

Advertisers also argue that Google's arbitration provision was procedurally unconscionable because its opt-out provisions did not insulate its arbitration agreement from procedural unconscionability. Advertisers' sole authority is a California First District Court of Appeal decision, *Johnson v. Stoneridge Creek Pleasanton CCRC LLC*, 2023 WL 7125117, at *2 (Cal. Ct. App. 1st Dist. Oct. 30, 2023). But *Johnson* was decided on grounds not present here. Although the court observed that opt-out provisions alone did not insulate arbitration agreements from a finding of procedural conscionability, it ultimately ruled that the arbitration agreement was procedurally unconscionable because plaintiff experienced pressure to forego opting out, and because there was no form provided to withdraw solely from the agreement to arbitrate. *Id.* at *2 (noting "[s]enior citizens signing a residence and continuing care agreement may [] feel pressure not to exercise a right to opt out" given the defendant retirement community's "reservation of discretion in making later decisions that may impact residents' quality of care").[2] Again, no such evidence of pressure (or any other factor) has been offered by Advertisers here.

Advertisers include the decision on which *Johnson* relies, *Swain v. LaserAway Med. Grp., Inc.*, 57 Cal. App. 5th 59 (Cal. Ct. App. 2d Dist. 2020), but *Swain* is of even less help to their argument. While the *Swain* court likewise observed that the opt-out provision did not insulate an arbitration agreement from a finding of procedural unconscionability, it concluded that the plaintiff sufficiently showed the arbitration agreement was procedurally unconscionable because plaintiff offered evidence that the opt out provision was confusing and that agreement was presented with

---

[2] Additionally, this decision—that Advertisers claim should be given "[g]reat weight," Opp. 10, n.2—is officially unpublished, and so is not meant to be cited or relied upon as authority according to California Rules of Court. Cal. R. Ct. 8.1105, 8.1115.

elements of pressure and surprise. *Id.* at 68-70. In contrast to *Swain* and *Johnson*, Advertisers offer no evidence—and do not even contend—that Google exerted any pressure on Google Ads advertisers to forgo opting out of the arbitration agreement, or that Google engaged in surprising, confusing, or otherwise coercive conduct.

> 2.  Google's Arbitration Agreement is Not Substantively Unconscionable Because Plaintiffs Do Not Show It Contains Unconscionable Terms

Advertisers also argue that Google's arbitration agreement is substantively unconscionable because Google's arbitration agreement contains a "unilateral modification clause, a class action waiver, and a pre-arbitration procedure requiring a complainant to submit a pre-arbitration request for dispute resolution to Google." Opp. at 10. But Google's arbitration agreement does not contain a unilateral modification clause, given that any changes could be rejected by the Google Ads advertiser, *see* Mobin Decl. Exs. A & E ¶ 13(G), and the other two terms Advertisers raise do not satisfy their burden of showing substantive unconscionability.

None of Advertisers' cited authority support that waiving the right to bring a class action is itself unconscionable under California law. Advertisers' cited authority *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 392 (E.D.N.Y. 2015), does not hold that a class action waiver is unconscionable, let alone address whether it is under California law. And Advertisers' cited authority for arguing pre-arbitration requests for dispute resolution are unconscionable under California law, *Carlson v. Home Team Pest Defense, Inc.*, 239 Cal. App. 4th 619, 635-36 (Cal. Ct. App. 1st Dist. 2015), is inapposite. The *Carlson* court held that the pre-arbitration provision at issue was unconscionable because it only applied to claims brought by the employee, not the employer, and because the defendant-employer there would gain "even more significant advantage . . . because Carlson was explicitly forbidden legal representation" during the mandatory pre-arbitration settlement efforts. *Id.* at 636.

7

In contrast, Google's pre-arbitration process does not require complainants to submit to such mandatory efforts as a condition for initiating arbitration. It only requires "any party . . . seek[ing] arbitration of a dispute . . . [to] provide the other party with notice in writing" and a 60-day buffer period after the written notice is submitted. Mobin Decl. Exs. A & E ¶ 13(B).

Consequently, Plaintiffs have failed to meet their burden of showing that Google's arbitration agreement is both procedurally and substantively unconscionable.

## II. Cliffy Care and Stellman Have Not Shown Their California State Law Claims Satisfy the *McGill* Doctrine

Google addressed in its opening brief why Advertisers' claims do not satisfy the *McGill* doctrine. Mot. at 11-15. Advertisers do not appear to dispute that Stellman's state law claims do not seek public injunctive relief as contemplated by *McGill*, as their opposition brief is silent on this point. Advertisers also fail to show that Cliffy Care's claims satisfy the *McGill* doctrine.

### A. Judge Freeman's May 2021 Ruling is Not the "Law of the Case"

The law of the case doctrine does not control in scenarios where there are "different factual situations or different parties." *Sawyer v. New York State Dep't of Corr. Servs.*, 2015 WL 6641471, at *2 (W.D.N.Y. Oct. 28, 2015); *see also E. End Eruv Ass'n, Inc. v. Town of Southampton*, 2014 WL 4826226, at *13 (E.D.N.Y. Sept. 24, 2014) ("[T]he law of the case doctrine does not apply" to "different parties in different cases involving different circumstances."). This is true even where a MDL constituent action alleges claims that "are coextensive with those of the earlier plaintiffs[]" on which the court already ruled. *In re Int. Rate Swaps Antitrust Litig.*, 351 F. Supp. 3d 698, 701 (S.D.N.Y. Nov. 20, 2018).

Judge Freeman's ruling in May 2021, *In re Google Digit. Advert. Antitrust Litig.*, 2021 WL 2021990 (N.D. Cal. May 13, 2021), did not involve Cliffy Care (or Stellman), nor the present consolidated MDL complaint, which reflects salient differences with the complaint at issue in that

ruling, including, but not limited to, a different class definition and differing claims and allegations, such as those Cliffy Care filed in the District of Columbia related to harm from Google's Network Bidding Agreement with Facebook and those relating to the Advertiser Antitrust Complaint's Unfair Competition Law claim.  *See* Consol. Am. Class Action Compl., *Cliffy Care Landscaping LLC v. Facebook, Inc.*, No. 1:21-cv-00360-KBJ (D.D.C.), ECF No. 25; *compare* Consol. Advertiser Class Action Compl., ECF No. 399 ¶¶ 339, 365-77, 395-405 *with* First Am. Consol. Class Action Compl., ECF No. 408 ¶¶ 225, 245-51, *In re Google Digit. Advertiser Antitrust Litig.*, No. 5:20-cv-03556-BLF (N.D. Cal.), ECF No. 52.[3]   Given the differences in parties and circumstances present here, Judge Freeman's ruling does not control.

### B. Enjoining Conduct in Markets for Purchasing Online Display Advertising Would Only Benefit the Putative Advertiser Class

The only injury that Advertisers have allegedly suffered are overcharges for the use of Google's advertising products, yet Advertisers request relief that supposedly has "[t]he primary purpose and effect . . . to benefit the public from the lower prices and greater innovation that will prevail in competitive digital advertising markets in the absence of Google's monopoly." Advertiser ECF No. 399 ¶ 405.  This speculative, strained public benefit is a far cry from injunctive relief for which the primary effect is "prohibiting unlawful acts that threaten future injury to the general public." *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 951 (2017).  Advertisers' argument that an injunction would restore competition and eventually lead to "lower prices and greater innovation[,]" (Opp. at 14) requires at least three steps between the relief sought and (speculative) benefit to the public.  According to Advertisers' logic, enjoining Google would change how its products operate, which *could* lead to advertisers paying less for some advertising impressions,

---

[3] Stellman's complaint is even further removed, alleging a deception-based theory of harm related to Google's Reserve Price Optimization that was decidedly distinct from the antitrust claims alleged in the constituent complaints consolidated into the Advertiser Antitrust Complaint.

which *could* cause advertisers to lower consumer prices across the board. This is precisely the type of "incidental[]" effects *McGill* holds are not public injunctive relief. *See McGill*, 2 Cal. 5th at 955 (distinguishing public from private relief "that benefits the public…only incidentally").

That "incidental" effect also distinguishes Advertisers' pursued relief from the relief sought in *Ramsey v. Comcast Cable Commc'ns, LLC*, which Advertisers rely upon. In *Ramsey*, the court focused on relief seeking to enjoin Comcast from perpetuating false representations, misleading statements and omissions, and secret discounts. 99 Cal. App. 5th 197, 209 (2023), *review denied* (May 1, 2024). That type of relief approximates the false advertising claims found in *McGill* that tend to form the "paradigmatic example[s]" of public injunctive relief. *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 542 (9th Cir. 2021). This makes sense: the primary effect of an injunction prohibiting false statements or some lack of transparency is to benefit the general public. One need not speculate as to collateral consequences or economic theories of downstream benefits to see the alleged injury to the broader population. Advertisers, by contrast, strain and fail to come up with "incidental" effects from their requested relief for overcharges, which requires a causal chain of hypothetical innovation and purported post-monopoly price-lowering to eventually reach the general population beyond Google Ads users.[4]

## CONCLUSION

For the foregoing reasons, Google respectfully requests that this Court compel Advertiser Plaintiffs Cliffy Care Landscaping LLC and Michael Stellman to arbitrate their claims against Google pursuant to the terms of the Dispute Resolution Agreement, and stay proceedings as to both plaintiffs.

---

[4] Google reiterates its position that the so-called "*Crane III*" decision cited by Advertisers made the mistake of incorrectly focusing on hypothetical downstream and indirect effects of the requested injunction, rather than the primary benefits, as *Hodges* instructs. *See* Mot. at 14 n.6.

Dated: December 3, 2024

*/s/ Justina K. Sessions*

Justina K. Sessions
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250
justina.sessions@freshfields.com

Eric Mahr
700 13th Street NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
eric.mahr@freshfields.com

John Harkrider
Daniel Bitton
Bradley Justus (admitted *pro hac vice*)
AXINN VELTROP & HARKRIDER LLP
114 West 47th Street
New York, NY 10036
Telephone: (212) 728-2200
jharkrider@axinn.com
dibtton@axinn.com
bjustus@axinn.com

*Counsel for Defendants Google LLC and
Alphabet Inc.*