**Discovery Steering Committee**
**In re Google Digital Advertising Antitrust Litigation**

February 14, 2025

**Via ECF**

Hon. P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

*In re Google Digital Advertising Antitrust Litigation*
Case No. 21-md-3010 (PKC) (S.D.N.Y.)

Dear Judge Castel:

  MDL Plaintiffs respectfully request that the Court order Google to produce "data" and "other information . . . relied on by" its survey expert, Itamar Simonson. ECF No. 428 ("Expert Discovery Order") ¶ 4.1.1. Google retained Professor Simonson to prepare surveys of advertisers and ad agencies to support the opinions of another Google expert, Mark Israel, regarding market definition and market power. Professor Simonson did not conduct the surveys himself. Instead, that work was contracted to a company called Advertiser Perceptions ("AP"). Yet Google refuses to provide all responses AP received to its surveys. It likewise refuses to provide information describing how AP selected advertisers to participate in the surveys. MDL Plaintiffs repeatedly have asked Google to provide this material and served a third-party subpoena on AP requesting the same. Originally, Google opposed MDL Plaintiffs' request and directed AP not to produce any materials. Then, two days ago, Google claimed it "does not possess the information [MDL Plaintiffs] are seeking." Ex. A at 1. AP likewise stated it does not have the requested information "in its files." *Id.* at 2. The Court should order Google to produce AP's survey responses and methodology, as the Expert Discovery Order requires. If Google no longer has this basic information, the Court should order Google to explain when it was deleted and why it was not preserved. There is no conference scheduled at this time.

  Professor Simonson obviously "referred to" and "relied on" the AP surveys in his report. AP *conducted* the surveys reproduced in his report. According to Professor Simonson, "[a]ll surveys were administered" from "samples of advertisers and of ad agency employees . . . obtained through Advertiser Perceptions." Simonson Rep. ¶ 30. AP provided a "representative inbound sample" of advertisers using an "approach . . . similar to the methodology applied by many other panel providers [Professor Simonson has] worked with in the past." *Id.* ¶ 33 n.35. To help "design[ ] the survey questionnaires," Professor Simonson also conducted "14 preliminary interviews" with "members of the same Advertiser Perceptions panel . . . that was used for the online surveys." *Id.* ¶ 22 & n.9. Ultimately, "[t]he final dataset provided by AP included all respondents who entered the survey, passed AP's quality control processes, and did not choose to exclude their responses." *Id.* ¶ 37. Yet Google has failed to provide documents

Hon. P. Kevin Castel
February 14, 2025
Page 2 of 6

describing AP's sampling "methodology," answers to "preliminary interviews," *all* responses to AP's surveys, and AP's "quality control processes" used to exclude any responses. Google must provide this basic information about the AP surveys upon which Professor Simonson relies.

Google's failure to comply with the Expert Discovery Order is serious because it does not permit MDL Plaintiffs or the Court an adequate opportunity to assess Professor Simonson's opinion. That opinion, moreover, already has been called into substantial doubt. In the EDVA case, Google offered Professor Simonson as its survey expert and intended to call him as a witness regarding the *exact same* AP surveys. Professor Simonson's 129-page opinion in this case is nearly *identical*[1] to the opinion he submitted in Virginia. Judge Brinkema gave "very careful consideration" to Professor Simonson's surveys and concluded that "there are many features of the survey that are problematic." Tr. 20:5-7, *United States v. Google LLC*, No. 1:23-cv-108 (E.D.V.A. June 14, 2024), ECF 799. Not long after, Google withdrew Professor Simonson as a witness.[2] Google should not be permitted to rely on AP's surveys without providing basic information about them—particularly where another Court has found them flawed in "many" respects.

Google's opposition is untimely and forfeited. On December 23, 2024, MDL Plaintiffs served AP with a subpoena seeking the above-described materials and related information. *See* Ex. B. Eleven days later, Google asked to meet and confer but declined to object to the subpoena. *See* Ex. C at 9. AP likewise failed to object timely to the subpoena.[3] Plaintiffs agreed to tell Google what materials, if any, AP ultimately agreed to produce. *See id.* at 2-3. On January 29, 2025, during a meet-and-confer, counsel for AP said AP could likely produce AP's "file" for each survey, subject to its counsel's review of those documents, which had not yet occurred. Just days later, hours after AP canceled a meet-and-confer with MDL Plaintiffs on short notice, Google "direct[ed] Advertiser Perceptions not to produce any of the identified materials in response to MDL Plaintiffs' subpoena." Ex. A at 17. Google reiterated that documents from AP would not be produced on February 7. *See id.* at 15. AP has refused to produce anything until Google withdraws its instruction. *See* Ex. D. Google's objection to the AP subpoena, and thus the production of the requested materials, is improper and comes many

---

[1] Professor Simonson added a sentence to paragraph 65 and footnote number 66 to explain his use of "small but significant" rather than a specific percentage in question 5 of the higher spend advertiser survey. He then added two sentences to footnote 88 of the EDVA report (now footnote 89) to reference "sensitivity analyses" he performed to justify excluding survey answers that Google now claims he never reviewed. Those sensitivity analyses were appended as Appendix Exhibits 111 and 112 to his opinion in this case.

[2] *Compare* Google Witness List at 3, *United States v. Google LLC*, No. 1:23-cv-108 (E.D.V.A. July 5, 2024), ECF 891 (including Simonson), *with* Trial Witness List, *United States v. Google LLC*, No. No. 1:23-cv-108 (E.D. Va. Sept. 27, 2024), ECF 1334-3 (omitting Simonson).

[3] AP only recently served objections and responses—36 days after the deadline to do so under Rule 45. All of its objections are therefore waived. *See Freeman v. Giuliani*, 2024 WL 5054913, at *3 (S.D.N.Y. Dec. 10, 2024).

weeks too late. *Cf. Ehrlich v. Incorporated Village of Sea Cliff*, 2007 WL 1593241, at *4 (E.D.N.Y. June 1, 2007) ("A waiver based upon a failure to timely object applies . . . to a motion for a protective order[,] which must be served before the date set for production.") (cleaned up); *In re Rule 45 Subpoena Issued to JP Morgan Chase Bank, N.A.*, 319 F.R.D. 132, 135 (S.D.N.Y. 2016) (motion to quash third-party subpoena was untimely when filed after return date). As expert discovery concludes next month, MDL Plaintiffs cannot afford further delay.

Google's objections also are meritless. Google objects that communications between AP and Analysis Group (Professor Simonson's support staff) are work product and barred from production under Paragraphs 5.1.1 and 5.1.2 of the Expert Discovery Order. The AP materials sought by MDL Plaintiffs—the survey files, the survey responses, documents describing how AP conducted the surveys, and responses to preliminary interviews—are not communications entitled to work product privilege because Professor Simonson relied on them. In all events, Google's response begs the question. Google's objections are expressly foreclosed by this Court's precedent and Section 5.2 of the Expert Discovery Order, which mandates production of all materials relied upon, "notwithstanding any provision in Paragraph 5." ECF 428 ¶ 5.2; *see Harrington Global Opp. Fund, Ltd. v. CIBC World Mkts. Corp.*, 2024 WL 5074923, at *4 (S.D.N.Y. Dec. 9, 2024).

In correspondence, Google has claimed that Professor Simonson did not rely upon the above-identified AP material either because Professor Simonson did not review it, or because his support staff modified it before he reviewed it and included it in his report.[4] But Professor Simonson expressly relied on AP's survey, which was based on "preliminary interviews" and a "representative inbound sample . . . methodology," Simonson Rep. ¶¶ 22, 33 n.35, and yielded a "final dataset" of responses, *id.* ¶ 37. Whether or not Professor Simonson carefully reviewed AP's survey methodology or complete results, he nonetheless relied upon them. *See Harrington*, 2024 WL 5074923, at *4 (ordering production of "'preliminary' work product . . . included in the final algorithm"); *Derrickson v. Circuit City Stores, Inc.*, 1999 WL 1456538, at *9 (D. Md. Mar. 19, 1999) (ordering production of "any analysis performed and supporting documentation created by [a survey expert's] assistants," including "computer instructions used to manipulate the data later analyzed by" the expert), *aff'd*, 203 F.3d 821 (4th Cir. 2000); *In re Rock 'N Play Sleeper Mktg. Sales Practices, & Prods. Liability Litig.*, 2021 WL 11962970, at *4 (W.D.N.Y. Aug. 4, 2021) (ordering production of "screener" survey results because they "provide support for [the expert's] conclusion that the answers given on the main questionnaires are from respondents within the 'relevant universe' for the survey."); *Apple Inc. v. Amazon, Inc.*, 2013 WL 1320760, at *3 (N.D. Cal. Apr. 1, 2013) (permitting discovery into preliminary survey work done prior to a formal survey because an expert's "opinion is influenced by, among other things, the

---

[4] According to Google, Professor Simonson's dataset omitted answers from participants removed by AP or that opted out after AP disclosed that Google sponsored the survey. *See* Ex. C at 1. Professor Simonson's staff also appears to have anonymized the identity of any survey participants. MDL Plaintiffs do not (and cannot) know whether Professor Simonson's staff made other modifications.

Hon. P. Kevin Castel
February 14, 2025
Page 4 of 6

development of the surveys, the collection of the data from those surveys, and the analysis of that data"). Professor Simonson necessarily relied on the survey design decisions made by AP.

After more than a week of objections, Google informed MDL Plaintiffs two days ago that Professor Simonson and his staff "do[ ] not possess the information [MDL Plaintiffs] are seeking." Ex. A at 1. AP likewise told Plaintiffs that it does not have the requested information "in its files." *Id.* at 2. There are two problems with that. First, AP already collected survey files it was planning to produce, which Google then reviewed and directed AP to withhold. That set of documents exists within Google's control and must be produced. Second, as to the remaining documents, the Expert Discovery Order and Federal Rules require more than a cursory search of what Google or AP presently "possess" in "files." Google must produce all material upon which Professor Simonson relied, *see* Expert Discovery Order ¶ 5.2; and, if necessary, it must secure that material from whichever sources it practically "control[s]," *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 182(S.D.N.Y. Apr. 19, 2006). Google obviously controls AP, as it has already ordered AP not to produce documents in response to a subpoena.[5] AP's supposed search of its "files"—whatever those might be—does not satisfy Google's burden to obtain relevant information required by the Expert Discovery Order. Further, AP previously has informed MDL Plaintiffs that its subcontractor, Course5 Intelligence (now known as "C5i"), potentially possesses relevant documents. To our knowledge, Google has not instructed AP to seek documents from C5i, either. Google has made no real effort to secure the basic survey material underlying Professor Simonson's report. To the contrary, it repeatedly has obstructed any production of material in response to MDL Plaintiffs' request.

If Google cannot secure the requested information, that is a grave breach of its discovery obligations. This information once existed. The only explanation why it might have disappeared is because someone deleted it—after performing work specifically for Google's expert in active litigation. If Google contends the requested information no longer exists, the Court should order Google to explain where this information was stored, who was responsible for its preservation, what steps Google took to ensure its preservation, and all circumstances regarding when and why those steps failed. The Court also should order Google to produce any communications between Google and AP regarding document preservation.

\*     \*     \*

For the foregoing reasons, MDL Plaintiffs respectfully request that the Court order Google to produce (1) the survey files AP already provided to Google, which Google has refused to produce, (2) all responses AP received to its surveys, including responses which did not "pass[ ] AP's quality control process" or which AP chose to "exclude," Simonson Rep. ¶ 37; (3) documents describing the "representative inbound sample . . . methodology" used by AP to

---

[5] AP has a long-standing business relationship with Google and thus a pecuniary interest in the outcome of this dispute. *See* GOOG-AT-MDL-B-000838832; GOOG-AT-MDL-013019905; GOOG-AT-MDL-013802937. MDL Plaintiffs have not included these documents as exhibits because Google has designated them Highly Confidential under the Modified Confidentiality Order, ECF 685. MDL Plaintiffs can provide Chambers with copies upon request.

Hon. P. Kevin Castel
February 14, 2025
Page 5 of 6

select (and exclude) survey respondents, *id.* ¶ 33 n.35, and (4) any memorialization of the questions and answers from the "preliminary interview[ ]"identified in Professor Simonson's report, *id.* ¶ 22 & n.9.  If Google cannot obtain these records, MDL Plaintiffs request that the Court order Google to provide the above-described written explanation and produce any communications between Google and AP regarding document retention.

 MDL Plaintiffs request that this Court order prompt production of these materials, or the requested written explanation, no later than two weeks prior to the final date selected for Professor Simonson's deposition.

        Respectfully submitted,

        */s/ Christopher C. Goodnow*
        Christopher C. Goodnow
        **KELLOGG, HANSEN, TODD, FIGEL &**
         **FREDERICK, P.L.L.C.**
        1615 M Street, NW, Suite 400
        Washington, DC 20036
        Telephone: 202-326-7907
        cgoodnow@kellogghansen.com

        *On behalf of the MDL Plaintiffs' Discovery Steering Committee*

        */s/ Philip C. Korologos*
        Philip C. Korologos
        **BOIES SCHILLER FLEXNER LLP**
        55 Hudson Yards
        New York, NY 10001
        Telephone: 212-446-2390
        pkorologos@bsfllp.com

        */s/ Scott Grzenczyk*
        Scott Grzenczyk
        **GIRARD SHARP LLP**
        601 California Street, Suite 1400
        San Francisco, CA 94108
        Telephone: 415-981-4800
        scottg@girardsharp.com

Hon. P. Kevin Castel
February 14, 2025
Page 6 of 6

                                                 */s/ Serina M. Vash*
Serina M. Vash
**HERMAN JONES LLP**
153 Central Avenue #131
Westfield, New Jersey 07090
Telephone: 404-504-6516
svash@hermanjones.com

*MDL Plaintiffs' Discovery Steering Committee*

Copies to:     All counsel via ECF.