# FRESHFIELDS

**Silicon Valley**
855 Main Street
Redwood City, CA 94063
T +1 650 618 9250 (Switchboard)
  +1 650 461 8276 (Direct)
E justina.sessions@freshfields.com
www.freshfields.com

**<u>Via ECF</u>**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

May 8, 2025

Re:   ***In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC);**
      ***In re Google Digital Publisher Litigation*, No. 1:21-cv-07034 (PKC)**

Dear Judge Castel:

Defendants Google LLC, Alphabet Inc., and YouTube, LLC (together, "Google") respectfully submit this response to Publishers' pre-motion letter seeking leave to move for partial summary judgment on the basis of collateral estoppel. ECF No. 953 ("Pub. Ltr."). In accordance with Your Honor's Individual Practices, we note there is no conference currently scheduled before the Court.

Publishers seek to foreclose Google from defending itself in this case based on the recent interim decision of the U.S. District Court for the Eastern District of Virginia in a related case,[1] even though no final judgment has been entered and Google plans to appeal to the Fourth Circuit once that occurs. But Publishers cannot establish the elements required to receive the benefits of collateral estoppel because, at least, the legal standards applied in the Virginia case differ materially from those that apply here and there are significant differences between Publishers' allegations and the issues addressed by the Virginia court. Moreover, applying collateral estoppel could introduce inefficiency into these proceedings because, if the Fourth Circuit reverses the Virginia decision, any of this Court's rulings that relied on that decision would need to be revisited. There is no reason to rush ahead with briefing on collateral estoppel when this Court has other opportunities to narrow the potential applicability of that doctrine through its rulings on Publishers' motion for class certification (ECF Nos. 955, 958) and Google's motion for summary judgment (ECF No. 949).

---

[1] *United States v. Google LLC*, 2025 WL 1132012 (E.D. Va. Apr. 17, 2025).

## I.    Collateral Estoppel Does Not Apply

To invoke the doctrine of nonmutual offensive collateral estoppel, "a plaintiff must satisfy four conditions: (1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits." *Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 79-80 (2d Cir. 2019). "[A]ll of these conditions must be met" for any issue as to which collateral estoppel is sought. *See Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013). Further, "[t]he burden of showing that the issues are identical and were necessarily decided in the prior action rests with the party seeking to apply issue preclusion." *Kulak v. City of New York*, 88 F.3d 63, 72 (2d Cir. 1996). Publishers cannot carry their burden because there are significant differences in the legal standards and facts between this case and the Virginia case.

### A.    The Legal Standards Applied In The Virginia Case Are Not Identical To Those Applicable In This Circuit

Publishers cannot show the issues are identical because the Virginia decision relied on Fourth Circuit legal standards and interpretations of Supreme Court precedent that differ from the relevant law in the Second Circuit.[2] Collateral estoppel is not appropriate where different legal standards apply. *See Jim Beam Brands Co. v. Beamish & Crawford Ltd.*, 937 F.2d 729, 734 (2d Cir. 1991) (explaining that "[i]ssues that may bear the same label are nonetheless not identical if the standards governing them are significantly different" and reversing collateral estoppel finding on this basis); *McTyere v. Apple*, 663 F. Supp. 3d 247, 253 (W.D.N.Y. 2023) (explaining that "issues are not identical if the second action involve[s] application of [a] different legal standard, even though the factual setting of the suits may be the same" and declining to apply collateral estoppel on that basis (internal quotation and citations omitted)). The Virginia court applied legal standards differing from those in the Second Circuit in at least four respects.

*First*, the Virginia court relied on the Fourth Circuit's decision in *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337 (4th Cir. 2024), to rule that Google's "conduct, when considered as a whole, harmed competition and therefore harmed consumers." *Google*, 2025 WL 1132012, at *36. Not only does the *Duke Energy* case have an outstanding petition for a writ of certiorari before the Supreme Court on the very question of whether "a plaintiff can prevail on a monopolization claim under Section 2 of the Sherman Act by aggregating multiple distinct, independently lawful acts into an unlawful whole,"[3] but *Duke Energy* is also

---

[2] Moreover, private parties face a heavier burden in antitrust cases, including proving antitrust standing, than a government enforcer. *See* ECF No. 949 at 1-2; *see also* Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 650c ("While proving anticompetitive behavior 'capable' of contributing to monopoly may be sufficient in a government equity suit seeking a prohibitory injunction, more will be required for structural relief or for all private suitors.").

[3] The unsettled nature of the appeal in *Duke Energy*, which underlies much of the legal reasoning in the Virginia case, also weighs against evaluation of collateral estoppel issues at this juncture. This is because "an intervening material change in the law may warrant cutting short the preclusive effect of a factual finding or judgment in some

inconsistent with the governing law in the Second Circuit.  *See* Petition for a Writ of Certiorari at I, 25-27, *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, No. 22-2168 (U.S.) (citing *City of Groton v. Conn. Light & Power*, 662 F.2d 921 (2d Cir. 1981) and *Eatoni Ergonomics, Inc. v. Research in Motion Corp.*, 486 F. App'x 186 (2d Cir. 2012) to explain that "the Second Circuit has agreed with the majority view" that "an antitrust plaintiff cannot aggregate various acts that are immune from antitrust scrutiny . . . to make out an antitrust violation").  Specifically, and contrary to *Duke Energy*, *City of Groton* and *Eatoni* establish that, when plaintiffs challenge a course of conduct, each type of conduct must be analyzed separately.

*Second*, the Virginia court ruled that "[t]he refusal to deal doctrine in [*Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004),] does not apply to Google's conduct at issue."  *Google*, 2025 WL 1132012, at \*42-43.  To reach this conclusion, the Virginia court again applied legal standards inconsistent with those applicable in the Second Circuit.  For example, the court reasoned that *Trinko* was distinguishable because it "involved assessing the defendant's conduct in a regulated market."  *Google*, 2025 WL 1132012, at \*43 (relying on *Duke Energy*).  The Second Circuit has rejected that distinction, instead holding that the "pervasive regulatory scheme" at issue in *Trinko* was "not essential to *Trinko*'s holding."  *In re Elevator Antitrust Litig.*, 502 F.3d 47, 53 (2d Cir. 2007) (internal citations and quotation omitted).  Accordingly, "the sole exception to the broad right of a firm to refuse to deal with its competitors" in the Second Circuit involves "terminat[ion] [of a] prior course of dealing" —circumstances that Publishers neither allege nor can prove here.  *Id.* at 52.

*Third*, despite recognizing that ad exchanges like AdX constitute two-sided markets, *see Google*, 2025 WL 1132012, at \*33, the Virginia court defined a market for "ad exchanges for open-web display advertising" without evaluating substitution on both sides of that market.  *See id.* at \*21-22 (analyzing, for example, whether publishers view ad networks as substitutes for ad exchanges but not analyzing advertiser substitution).  This failure to consider *advertisers'* substitutes for ad exchanges is inconsistent with governing Second Circuit law holding that "the relevant market must, *as a matter of law*, include both sides of the platform."  *U.S. Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 57 (2d Cir. 2019) (emphasis added) (explaining that "evaluating both sides of a two-sided transaction platform is . . . necessary to accurately assess competition" (cleaned up)); *United States v. Am. Express Co.*, 838 F.3d 179, 199-200 (2d Cir. 2016) (similar), *aff'd sub nom. Ohio v. Am. Express Co.*, 585 U.S. 529 (2018).

*Fourth*, the Virginia court's analysis of tying was governed by the Fourth Circuit's legal standard, which differs from the Second Circuit standard because it does not require a plaintiff to prove anticompetitive effects in the tied market.  *Compare Google*, 2025 WL 1132012, at \*38 (relying on *Serv. & Training, Inc. v. Data Gen. Corp.*, 963 F.2d 680 (4th Cir. 1991) for four elements of a tying claim, which do not include anticompetitive effects in the tied market), *with In re Google Digital Advert. Antitrust Litig.*, 721 F. Supp. 3d 230, 261 (S.D.N.Y. 2024) (relying on *Kaufman v. Time Warner*, 836 F.3d 137 (2d Cir. 2016) for five elements of a tying claim, one of which is that "the tie-in has anticompetitive effects in the tied market" (internal quotations and citation omitted)).

---

circumstances."  *Phoenix Light SF Ltd. v. Wills Fargo Bank, N.A.*, 2022 WL 2702616, at \*10 (S.D.N.Y. July 12, 2022).

Each of these differences in the applicable legal standards preclude a finding of identicality for purposes of applying collateral estoppel.[4]

### B. The Facts In The Virginia Case Are Not Identical To The Facts Here

In addition to these legal differences, Publishers also cannot establish that the factual issues resolved in the Virginia case are "identical" to those in their case. *Cf. Donohue Candy and Tobacco Co. v. Consumer Prod. Distrib., Inc.*, 422 F. Supp. 3d 637, 646 (E.D.N.Y. 2019) (declining defendants' request to apply collateral estoppel against plaintiffs where, *inter alia*, the prior "[s]tate court case concerned [the state court defendant's] liability for alleged violations as to different retailers, none of which are presented here"). Publishers' letter identifies twenty-one issues that they will seek to preclude Google from re-litigating, while also trying to reserve their rights to identify even more issues in the future. *See* Pub. Ltr. at 6 n.2 (noting that "Publishers do not enumerate every factual finding by Judge Brinkema that Google should be precluded from re-litigating"). One might have expected their first twenty-one arguments to be their strongest, but they serve only to highlight deficiencies in Publishers' position. A few examples illustrate the point.

*First*, Publishers maintain that they should benefit from the Virginia court's rulings about the relevant markets, even though they allege different markets. Pub. Ltr. tbl. 1, items 1-2. The Virginia court found that there were relevant markets for publisher ad servers and ad exchanges that exclude instream video, *Google*, 2025 WL 1132012, at *20, *23, but Publishers' expert defined those markets to include instream video, Elhauge Rebuttal Rpt. ¶ 79. While the Virginia court found that the geographic scope of the relevant markets was worldwide, *Google*, 2025 WL 1132012, at *28, Publishers neither alleged a worldwide market in their complaint, FAC ¶¶ 121-124, nor offered expert testimony that such a market exists. In short, Publishers' alleged markets are not identical to those found by the Virginia court. *See Wrede v. Am. Tel. & Tel. Co.*, 1984 WL 1631, at *4 (M.D. Ga. May 28, 1984) (declining to apply collateral estoppel where the jury in the prior case found a market limited to specific telephone systems and "there [was] no indication . . . that [the] plaintiff's relevant market was in any way limited" in the same way).

*Second*, Publishers assert that Google should be collaterally estopped from re-litigating the Virginia court's findings about Google's monopoly power. Pub. Ltr. tbl. 1, items 3-4. But the Virginia court determined that Google possessed monopoly power in the markets that it defined. *See, e.g.*, *Google*, 2025 WL 1132012, at *34 (discussing evidence of "AdX's share of the worldwide ad exchange market"). Whether Google has monopoly power in those markets does not resolve whether Google has monopoly power in the non-identical markets that Publishers allege here.

*Third*, Publishers seek to bar Google from challenging their allegations about competitive effects, despite the Virginia court not having considered identical theories. For instance, Publishers contend that the Virginia court embraced their theory of a wide-ranging "Scheme" encompassing 16 allegedly anticompetitive acts, *see* Pub. Ltr. tbl. 1, item 14 (citing FAC

---

[4] In addition to the differences between the legal standards applied in the Virginia case and those applicable in the Second Circuit, Google separately maintains that the decision in the Virginia case contains multiple errors of law and unsupported factual findings, and Google plans to appeal it. *See* ECF No. 949 at 1.

¶¶ 194-195), and that this "Scheme lacks any procompetitive justification," *id.* tbl. 1, item 15 (citing FAC ¶ 366). But Publishers' alleged "Scheme" is not identical to the conduct discussed in the Virginia decision. To the contrary, the Virginia court did not even address 11 of the 16 acts comprising the alleged "Scheme," and one other act was explicitly found not to be anticompetitive. *See Google*, 2025 WL 1132012, at *42 n.29 (discussing Project Poirot). Similarly, Publishers assert that the Virginia decision supports their allegations of a "two-way" tie between AdX and DFP, Pub. Ltr. tbl. 1, item 7 (citing FAC ¶ 196), but the Virginia court discussed only one direction of that tie, *Google*, 2025 WL 1132012, at *40.

*Fourth*, some of the issues that Publishers want to block Google from contesting were not necessary for the Virginia court's liability determinations. For example, Publishers seek to give collateral estoppel effect to the Virginia court's finding that "Once DFP had obtained near-total market share, Google combined DFP and AdX under a single publisher-facing product, Google Ad Manager, which further intertwined DFP and AdX." Pub. Ltr. tbl. 1, item 6 (quoting *Google*, 2025 WL 1132012, at *33). Although Publishers try to connect that finding with their tying theory, *see* Pub. Ltr. tbl. 1, item 6 (citing FAC ¶ 16), the point was discussed in the part of the Virginia decision discussing ad exchange monopoly power, not the part discussing the tying claim. *Compare Google*, 2025 WL 1132012, at *33, *with id.* at *38-41. Because the Virginia court's finding about the integration of DFP and AdX into Google Ad Manager was not relied upon (or even discussed) in connection with its liability ruling on the tying claim, it could not have been necessary to that ruling and should not be given collateral estoppel effect.

## II.    Applying Collateral Estoppel In Light Of An Anticipated Appeal Would Be Inefficient

Publishers' request also fails because applying collateral estoppel here would create uncertainty and inefficiency, and "[w]hen the efficiency rationale for collateral estoppel fails, . . . courts have understandably declined to apply the doctrine." *S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 304 (2d Cir. 1999). Indeed, as collateral estoppel is an equitable doctrine, courts have declined to give preclusive effect to "a significant set of antitrust issues during the pendency of a merits appeal of the first-decided action." *In re: American Express Anti-Steering Rules Antitrust Litig.*, 2016 WL 748089, at *6 (E.D.N.Y. Jan. 7, 2016); *see also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979) ("[W]here . . . the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel.").

*In re: American Express Anti-Steering Rules Antitrust Litigation* is instructive. There, the court declined to consider a collateral estoppel summary judgment motion "during the pendency of a merits appeal of the first-decided action" because doing so "could, in fact, *create inefficiencies*." 2016 WL 748089, at *6 (emphasis added); *see also Jack Faucett Assocs., Inc. v. Am. Tel. & Tel. Co.*, 744 F.2d 118, 124 (D.C. Cir. 1984) (reversing application of collateral estoppel to plaintiffs' antitrust claims and stating that "[t]he doctrine [of offensive collateral estoppel] is detailed, difficult, and potentially dangerous"). The court in *In re: American Express* implicitly recognized that tethering a case to an earlier government case subject to appeal—particularly one raising fundamental questions of antitrust law—presents obvious risks

of inefficiency from a reversal or vacatur of the government case.[5]  Just as with Publishers here, the plaintiffs seeking to apply collateral estoppel in *In re: American Express* had not identified any case where a court had done so on "such a significant set of antitrust issues" during the pendency of a merits appeal, and the court there also recognized that application of collateral estoppel during the pendency of a merits appeal of the first-decided action risks creating inefficiencies.  2016 WL 748089, at *6; *see also* 18A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 4433 & n.23 (3d ed.) ("It is useful to postpone the question of preclusion in the second action until the appeal of the first judgment has been decided.").  The same logic applies here, and the cases that Publishers cite do not support their contrary claim that the Court should analyze the applicability of collateral estoppel now.[6]

As Publishers acknowledge, Google intends to appeal the interim ruling in the Virginia case.  Pub. Ltr. at 4 & n.1.  The Virginia court recently entered an order setting a September 22, 2025 start date for the remedies trial, and Google cannot pursue its appeal until that trial results in a final judgment.  Order, *United States v. Google LLC*, No. 1:23-cv-00108 (E.D. Va. May 2, 2025), ECF No. 1428.  Waiting to address collateral estoppel until resolution of Google's appeal would not cause undue delay.  The Virginia case continues to proceed on an exceptionally accelerated timeline for a complex antitrust matter, and the trial there will begin September 22.  Accordingly, a remedies decision may be reached in the Virginia case before, or soon after, this Court rules on Publishers' motion for class certification.  And the median disposition time for an appeal in the Fourth Circuit is eight months—e.g., in or around July 2026.[7]

Contrary to Publisher's protestations, denying their request to seek partial summary judgment on collateral estoppel would not "waste party and judicial resources and risk inconsistent outcomes."  Pub. Ltr. at 4. To the contrary, it would promote efficiency and certainty because a successful Google appeal would reverse any preclusive effect of the Virginia case and require relitigating any issues resolved based on that decision.  *See McCray v. City of New York*, 2007 WL 4352748, at *12 (S.D.N.Y. Dec. 11, 2007) ("A reversed judgment can have no preclusive effect."); *Parklane*, 439 U.S. at 329 (explaining that the "offensive use of collateral estoppel does not promote judicial economy in the same manner as defensive use does").  Specifically, to the extent the decision in the Virginia case is reversed or vacated on appeal, any decision in this case that is predicated on the preclusion of issues decided in the Virginia case could be reopened.  *See* Fed. R. Civ. P. 60(b)(5).

Relatedly, collateral estoppel would provide comparatively limited benefits to judicial economy relative to the noted significant risk of inefficiency.  Extensive discovery has already occurred in this case.  Publishers have already spent significant resources obtaining fact

---

[5] The "first-decided" action referenced in *In re: American Express* was *United States v. Am. Express Co.*, 88 F. Supp. 3d 143 (E.D.N.Y. 2015), *rev'd and remanded United States v. Am. Express Co.*, 838 F.3d 179 (2d Cir. 2016), *aff'd sub nom. Ohio v. Am. Express Co.*, 585 U.S. 529 (2018).

[6] For example, there was no need to consider efficiency issues in light of a pending appeal in *In re Namenda Direct Purchaser Antitrust Litigation* because the first-decided action had already proceeded through appeal.  2017 WL 4358244, at *1 (S.D.N.Y. May 23, 2017).  The same is true of *Discover Fin. Servs. v. Visa U.S.A. Inc.*, 598 F. Supp. 2d 394, 397 (S.D.N.Y. 2008).

[7] FAQs - Opinions, United States Court of Appeals for the Fourth Circuit, https://www.ca4.uscourts.gov/faqs/faqs-opinions (last accessed May 7, 2025).

discovery far beyond that available in the Virginia case. *See* ECF No. 662 at 1 (explaining that Google produced more than six million total documents in this case, including by running 100 search strings in addition to the 28 search strings proposed in the Virginia case); ECF No. 841 at 3 (explaining that Google produced 80 gigabytes of source code and made 24 current or former Google employees sit for depositions in addition to producing deposition transcripts from the Virginia case). Publishers also have engaged in voluminous expert discovery. The benefit of collateral estoppel here is therefore significantly less than if fact discovery had yet to begin, given the extensive discovery required in a complex antitrust case. Courts in the Second Circuit have declined to apply collateral estoppel based on judicial efficiency under similar circumstances, where a case has already proceeded beyond discovery. *See, e.g., Dish Network Corp. v. Ace Am. Ins. Co.*, 431 F. Supp. 3d 415, 418 (S.D.N.Y. 2019) (declining to apply collateral estoppel after discovery and before a decision on summary judgment was reached, finding "'judicial efficiency would not be served by estopping [plaintiff] from proceeding'" (quoting *John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 406 n.5 (2d Cir. 2018))), *aff'd*, 21 F.4th 207 (2d Cir. 2021).

### III.    Proposed Briefing Procedures

Plaintiffs are proposing that the parties simultaneously brief their summary judgment motions concerning collateral estoppel and Google's motions for summary judgment. For example, Publishers have proposed that their issue preclusion motion for summary judgment be due on June 13, that Google's opposition be due 30 days later (July 14), and that Publishers' reply be due 18 days later (August 1). Pub. Ltr. at 10. Plaintiffs indicated that they also would propose a July 1 deadline for Google to file its summary judgment motion, with their opposition due 45 later (August 15), and Google's reply due 30 days later (September 15). ECF No. 941, at 3. That approach would result in the Court receiving twenty-four briefs covering overlapping issues, as the Virginia decision is likely to be discussed in all of the briefs. Many of those briefs are likely to be filed before the pending class certification motions—on which briefing will not conclude until July 16, ECF No. 942—can be resolved, so they could not reflect the Court's rulings on class certification.

Google respectfully submits that there is a more efficient alternative that would not risk burdening the Court with repetitive and potentially unnecessary briefing. Specifically, Google proposes that the Court could sequence briefing so that (a) Google would submit its summary judgment motions 30 days after the Court resolves class certification motions; and (b) Plaintiffs' summary judgment motions concerning collateral estoppel would be deferred until a later date. This sequence would allow for tailoring of Google's summary judgment motions in light of the rulings on class certification. It would also allow Plaintiffs to tailor their collateral estoppel arguments to any claims that survive Google's motions for summary judgment, rather than seeking collateral estoppel on issues that could end up being resolved at summary judgment.

Depending on when Google's motions for summary judgment are resolved and the timing of Google's Fourth Circuit appeal of the Virginia decision, the Court could choose whether to (i) require Plaintiffs to file their summary judgment motions concerning collateral estoppel promptly after the Court rules on Google's summary judgment motions; or (ii) continue to defer Plaintiffs' motions pending the Fourth Circuit's ruling, as the Eastern District of New York did in

an analogous situation.  *See In re: Am. Express Anti-Steering Rules Antitrust Litig.*, 2016 WL 748089, at *6 (E.D.N.Y. Jan. 7, 2016) ("defer[ring] a resolution of the [plaintiffs'] motion for collateral estoppel until after the Second Circuit reaches a decision in the appeal of the Government Action").

This proposed sequence will maximize the efficiency of the MDL.  Indeed, it would be highly inefficient for the parties to inundate the Court with dozens of briefs this summer, when they may very well have to update their briefing to address subsequent rulings by this Court and/or the Fourth Circuit.  Moreover, if the Fourth Circuit reverses the Virginia decision, any rulings based on that decision would be subject to re-litigation.  *See* Fed. R. Civ. P. 60(b)(5) (permitting relief from an order "based on an earlier judgment that has been reversed or vacated").  Google's proposal—to start with class certification, then proceed to summary judgment, and then address collateral estoppel—would keep the MDL moving and give all parties the chance to make their arguments, while minimizing the chances that, after a Fourth Circuit ruling, this Court would be confronted with re-opening matters it has already considered once.

Regardless of how the Court chooses to sequence briefing on class certification, Google's summary judgment motions, and Plaintiffs' motions seeking collateral estoppel, Google proposes that its briefs in opposition to Plaintiffs' motions concerning collateral estoppel be due 45 days after opening briefs and that reply briefs be due 21 days later.  Google agrees with Publishers' proposal that "the Court's standard lengths of briefs [should] apply—25 pages for opening and opposition [briefs], and 10 pages for reply."  *See* Pub. Ltr. at 10.

*        *        *

For all of these reasons, Google respectfully requests that the Court deny Publishers' request to file a motion for summary judgment concerning collateral estoppel at this time.  Alternatively, Google requests that the Court defer briefing until after Publishers' class certification motion and Google's summary judgment motion have been resolved.

Sincerely,

*/s/ Justina K. Sessions*
Justina K. Sessions
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250
Email: justina.sessions@freshfields.com

Eric Mahr
Andrew J. Ewalt
700 13th Street, NW
10th Floor

Washington, DC 20005
Telephone: (202) 777-4545
Email: eric.mahr@freshfields.com
       andrew.ewalt@freshfields.com

Craig M. Reiser
AXINN, VELTROP & HARKRIDER LLP
630 Fifth Avenue, 33rd Floor
New York, New York 10111
Telephone: (212) 728-2200
Email: creiser@axinn.com

*Counsel for Defendants Google LLC,
Alphabet Inc., and YouTube, LLC*

CC: All Counsel of Record (via ECF)