

May 12, 2025

**VIA ECF**

Hon. P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

*In re Google Digital Advertising Antitrust Litigation*
Case No. 1:21-md-03010 (PKC)

*In re Google Digital Publisher Antitrust Litigation*
Case No. 1:21-cv-07034 (PKC)

Dear Judge Castel:

  We write in reply to Google's letter response (ECF 977) to Publisher Class Plaintiffs' ("Publishers") pre-motion letter (ECF 953) for partial summary judgment based on issue preclusion in light of the recent opinion in the Eastern District of Virginia. Despite having lost on the merits following a full and fair opportunity to litigate overlapping issues, Google seeks to cause further delay—likely for years—in these proceedings. To avoid delay and prevent inconsistencies, the Court should apply the approach set forth in Publishers' pre-motion letter. No conference is scheduled at this time.

  I. **Google's Arguments Against Collateral Estoppel Lack Merit.**

  A. **The legal standards in the Second and Fourth Circuits are not materially different.**

  Google's argument that different "legal standards" exist between the Fourth and Second Circuits (Ltr. at 2) relies on cases where the parties had sought preclusion based on disparate causes of action or the laws of different states. *See Jim Beam Brands Co. v. Beamish & Crawford Ltd.*, 937 F.2d 729, 734 (2d Cir. 1991) (trademark cancellation vs. trademark infringement); *McTyere v. Apple*, 663 F. Supp. 3d 247, 253 (W.D.N.Y. 2023) (California UCL vs. New York GBL). Here, Publishers and DOJ both brought claims under Sections 1 and 2 of the Sherman Act and there are no material differences between the Circuits that would justify different results.

  *First*, as this Court has recognized, there is "nothing remarkable" in the proposition that a course of anticompetitive conduct must be evaluated as a whole, including conduct that, standing alone, may be "perfectly lawful." *In re Google Digital Advert. Antitrust Litig.*, 627 F. Supp. 3d 346, 381 (S.D.N.Y. 2022) (citing *Valassis Commc'ns v. News Corp.*, 2019 WL 802093, at *9-10 (S.D.N.Y. Feb. 21, 2019); *see also New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 653-54 (2d Cir. 2015) (holding conduct like "product improvement" and "product withdrawal," which would each be lawful standing alone, could be anticompetitive when a



Hon. P. Kevin Castel
May 12, 2025
Page 2 of 8

monopolist combines them). Indeed, Supreme Court precedent has unambiguously held for decades that, in monopolization cases, "plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each." *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962); *accord Swift & Co. v. United States*, 196 U.S. 375, 396 (1905) ("whatever we may think of them separately, when we take them up as distinct charges, they are alleged sufficiently as elements of the scheme. It is suggested that the several acts charged are lawful . . . . But they are bound together as the parts of a single plan. The plan may make the parts unlawful.").

This standard is the same in the Fourth Circuit as it is in the Second. *See Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 355 (4th Cir. 2024) (Niemeyer, J.) (holding "it is a misapplication of antitrust doctrine for a court to treat a plaintiff's allegations of anticompetitive conduct 'as if they were five completely separate and unrelated lawsuits,' effectively 'tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each'" and that "a firm's exclusionary efforts [must] be considered in their totality"); *City of Groton v. Connecticut Light & Power Co.*, 662 F.2d 921, 928 (2d Cir. 1981) ("Sherman Act plaintiffs 'should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each'") (quoting *Continental Ore.*, 370 U.S. at 699)); *id.* at 929 ("The proper inquiry is whether, qualitatively, there is a 'synergistic effect.'"); *Actavis*, 787 F.3d at 653-54.

Thus, there is nothing remarkable about the EDVA court's "holistic assessment" of Google's anticompetitive scheme. *United States v. Google LLC*, 2025 WL 1132012, at *35 (E.D. Va. Apr. 17, 2025) ("EDVA Op."). Moreover, Publishers do not allege any acts that are "immune from antitrust scrutiny". *See* ECF 977 at 3. Indeed, most of the anticompetitive acts still at issue in this case—First Look, Last Look, DRS, UPR, tying between DFP and AdX— have already been found anticompetitive by the EDVA court, as explained in Publishers' pre-motion letter. *See* ECF 953 at 1-3.

*Second*, as Publishers addressed in their May 8, 2025 letter (ECF 982 at 11-12) that responds to Google's pre-motion letter regarding summary judgment, and as the EDVA court explained, the "refusal to deal doctrine in *Trinko* does not apply to Google's conduct at issue", EDVA Op. *43. Google's tying restraints were aimed at its customers not at its rivals. *See United States v. Live Nation Ent., Inc.*, 2025 WL 835961, at *2 (S.D.N.Y. Mar. 14, 2025) (Subramanian, J.); *see also Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 463 n.8 (1992). Moreover, as the EDVA opinion explained, in the alternative, the *Aspen Skiing* exception regarding refusals to deal is satisfied even if, contrary to fact, Google's conduct had been aimed at rivals. *See* EDVA Op. *43.

*Third*, Google's assertions regarding purported differences in the EDVA court's analysis of two-sided market issues (Ltr. at 3) ignore specific findings distinguishing ad exchanges from the two-sided transaction platforms at issue in *Amex*. EDVA Op. at *27 & n.24.

*Fourth*, the EDVA court did find anticompetitive effects in the markets for the tied product (DFP ad server), thereby satisfying the additional element for Section 1 tying claims that



Google purports (Ltr. at 3) to identify under Second Circuit case law. *See, e.g.*, EDVA Op. *31, ("many once-large rival ad servers have either left the ad serving business entirely (*e.g.*, OpenX), or sought to compete in channels other than open-web display advertising"); *id*. ("Google degraded some DFP features, such as by removing publishers' ability to set a higher price floor on AdX as part of its Unified Pricing Rules update, despite negative publisher feedback.").

**B. Differences in facts do not preclude collateral estoppel.**

Contrary to Google's suggestion (Ltr. at 4), "there does not need to be perfect identity of issues" for collateral estoppel to apply. *Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 360 (S.D.N.Y. 2014) (citing *Montana v. United States*, 440 U.S. 147, 155 (1979)). It is enough that the "issues presented by this litigation are in substance the same as those resolved" in the prior litigation. *Montana*, 440 U.S. at 155. Notably, Google's letter ignores this Supreme Court precedent.

Moreover, Google has itself repeatedly asserted that claims in the EDVA case and this Court involve the "same relevant markets" and "nearly identical categories of alleged conduct", Google LLC's Memorandum in Support of Its Motion to Transfer Venue at 13-14, *United States v. Google LLC*, No. 23-cv-108 (E.D. Va.) ("EDVA"), ECF 44-2, and are "substantially similar", ECF 536 at 1-2. As Google represented in the EDVA case, "Both the S.D.N.Y. cases and this case" are "*based on the same legal theories and the same alleged conduct involving the same Google products and services, relying on many of the same documents collected in parallel investigations*". Google LLC's Reply Memo. in Support of its Motion to Transfer Venue, EDVA ECF 50 at 5 (emphasis added); *see also* Google LLC's Brief in Support of Coordination Order, EDVA ECF 166 at 2 ("substantially similar cases concerning the same alleged conduct pending in the Southern District of New York").

Indeed, none of Google's postulated factual differences tilts the scale against collateral estoppel.

*First*, while Publishers include an additional transaction type at the margins (instream video), the market definition and market power findings for advanced publisher ad servers and advanced auction platforms (ad exchanges) are "in substance the same." *See Montana*, 440 U.S. at 155. The factors identified by the EDVA court as supporting its finding of market power in the publisher ad server market—including a durable market share over 90% and qualitative factors including high barriers to entry, EDVA Op. *30—are not altered materially by including an additional transaction type. Likewise, the substantial evidence identified by that court as supporting a finding of market power in the advanced ad auction platform market—including Google's durable 20% take rate (direct evidence) and durable market share in excess of 60% (indirect evidence), EDVA Op. *31-35—are likewise unaltered by the inclusion of a small subset of transactions to which that same evidence applies.

*Second*, on geographic market, Google is wrong that publishers have not "offered expert testimony that . . . a [worldwide] market exists". Ltr. at 4. As explained in Publishers' May 8 letter, Publishers offered expert testimony in support of "defining a geographic market that is at



least as large as the United States," and for "defining a worldwide market" such that it isn't necessary to "to choose between the two of them". Elhauge Dep. at 50:13-18; *see* ECF 982 at 7-8 (citing Elhauge Rpt. ¶¶186-87 and Kroger Rpt. ¶80). While Publishers initially pleaded market geography limited to the United States or English-speaking countries, there is no inconsistency with the worldwide market defined by the EDVA court and litigated by Google in that case that cannot be remedied by an amendment to conform to the evidence.

*Third*, Google's uncovering of some differences between *complaints* in the two courts (Ltr. at 4-5) ignores the substantial ways in which Publishers have narrowed the conduct at issue in this litigation, *see* ECF 982 at 4 n.3 (listing conduct and claims no longer pursued by Publishers), and ignores that the factual bases of Publishers' other alleged exclusionary conduct, including the various two-way ties, were developed and addressed by the EDVA court as essential parts of its liability finding, *see* ECF 982 at 2-3, 6-7. The scheme alleged by Publishers is, again, "in substance the same". While Publishers should not be relieved of proving truly distinct issues, it does not serve judicial economy to permit Google to re-litigate the anticompetitive effects of conduct on which the EDVA court's findings were unequivocal.

Google's fourth and blanket assertion that certain of the EDVA court's findings were not necessary to its liability determination (Ltr. at 5) presents precisely the kind of issue that Publishers' proposed collateral estoppel motion should and can address.

## II. Applying Collateral Estoppel Is Fair and Efficient.

Google does not attempt to address the fairness factors identified in *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331-32 (1979), and its progeny, instead asserting that its planned appeal should further delay this litigation. Ltr. at 5-6. But the "law is clear that ordinarily the pendency of an appeal should not impact the collateral estoppel effect of an otherwise final and valid judgment." *Russell-Newman, Inc. v. The Robeworks, Inc.*, 2002 WL 1918325, at *1 n.1 (S.D.N.Y. Aug. 19, 2002) (Keenan, J.); *see Ferring B.V. v. Serenity Pharms., LLC*, 391 F. Supp. 3d 265, 286 (S.D.N.Y. 2019) ("a judgment should be given collateral estoppel effect where it is 'firm and stable,' i.e., the 'last word' of the rendering court on a particular issue, even if it is not yet appealable'") (quoting Restatement (Second) of Judgments § 13, cmt. a).

Here, the EDVA court has issued a well-reasoned opinion with extensive factual findings based on trial evidence holding Google liable for anticompetitive conduct in multiple markets, and Google has stated that the EDVA case and this case are "based on the same legal theories and the same alleged conduct involving the same Google products and services." EDVA ECF 50 at 5. Notwithstanding Google's vague assertion that it plans to appeal unspecified "errors of law and unsupported factual findings" (Ltr. at 4 n.4), it identifies no legitimate basis for delaying briefing on collateral estoppel.

Delaying collateral estoppel briefing will only further delay this litigation which is in its fifth year. While it is expedient for the Court not to decide summary judgment until notice and an opportunity to opt out is provided to any classes that are certified, careful consideration of the



summary judgment papers and exhibits from the various parties in this MDL may take months and such briefing and consideration need not await class certification. And the scope of collateral estoppel and the scope of issues that can be decided on summary judgment are closely related—the broader the scope of collateral estoppel, the narrower the issues truly on the table for summary judgment. At a minimum, the findings in the EDVA opinion preclude summary judgment in Google's favor on a substantial number of issues. It serves efficiency and judicial economy to brief Google's and Publishers' summary judgment motions in an overlapping manner rather than deferring Publishers' motion to some uncertain date in the distant future.

Google cites *In re: American Express Anti-Steering Rules Antitrust Litigation*, 2016 WL 748089 (E.D.N.Y. Jan. 7, 2016),[1] to suggest that the Court should defer *briefing* on collateral estoppel because there is an appeal pending. But in that case, the Court had the benefit of full briefing on motions for partial summary judgment based on collateral estoppel when it denied those without prejudice after the Second Circuit issued a stay in the parallel government case. *See id.* at *3-4. Briefing the scope of collateral estoppel over the coming months while the discovery record is fresh ensures that the Court can move expeditiously. Proceeding as Google proposes would add many months, if not years, to the litigation and potentially stall forward progress towards trial or settlement.

### III.    Summary Judgment Briefing Should Proceed Promptly.

Google's position on summary judgment briefing has shifted over the past two months from one that had some dates certain into one that leans fully into the kinds of delaying tactics that could leave this case mired in limbo for months or years rather than proceeding promptly towards trial or settlement. *See* ECF 943-3. Google's seriatim one-motion-or-appeal-at-a-time approach will neither meaningfully reduce the number of briefs nor allow this case to proceed to resolution on a non-prejudicial timeline.

Accordingly, the Court should enter Publishers' proposed briefing schedule, *see* ECF 982 at 14, which ensures that the Court has a full picture of the post-discovery record and that it can move promptly in issuing decisions on summary judgment.

---

[1] Originally filed in 2008, the merchant plaintiff actions against American Express took over a decade to resolve. *See In re: Am. Express Anti-Steering Rules Antitrust Litig.*, No. 1:11-md-02221 (S.D.N.Y. Apr. 12, 2019), ECF 889-90 (stipulations of dismissal of merchant plaintiff actions).



Respectfully submitted,

David Boies
dboies@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200

*Lead Counsel for the Publisher Class*

/s/ *Philip C. Korologos*
Philip C. Korologos
pkorologos@bsfllp.com
Robert J. Dwyer
rdwyer@bsfllp.com
James Keyte
jkeyte@bsfllp.com
Luke Williams
lwilliams@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300

Mark C. Mao
mmao@bsfllp.com
Sean P. Rodriguez
srodriguez@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6820



Hon. P. Kevin Castel
May 12, 2025
Page 7 of 8

Sabria A. McElroy
smcelroy@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 377-4216

Izaak Earnhardt
iearnhardt@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave NW, 11th Floor
Washington, DC 2005
Telephone: (202) 237-2727

George A. Zelcs
gzelcs@koreintillery.com
Randall P. Ewing
rewing@koreintillery.com
Marc A. Wallenstein
mwallenstein@koreintillery.com
Ryan A. Cortazar
rcortazar@koreintillery.com
**KOREIN TILLERY LLC**
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Fax: (312) 641-9751

Stephen M. Tillery
stillery@koreintillery.com
Michael E. Klenov
mklenov@koreintillery.com
Carol L. O'Keefe
cokeefe@koreintillery.com
Andrew M. Ellis
aellis@koreintillery.com
Ian Moody
imoody@koreintillery.com
**KOREIN TILLERY LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Fax: (314) 241-3525



Eric L. Cramer
ecramer@bm.net
Michael C. Dell'Angelo
mdellangelo@bm.net
Caitlin G. Coslett
ccoslett@bm.net
Patrick F. Madden
pmadden@bm.net
Jeremy Gradwohl
jgradwohl@bm.net
**BERGER MONTAGUE PC**
1818 Market St., Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000

Robert E. Litan
rlitan@bm.net
**BERGER MONTAGUE PC**
1001 G Street, NW
Suite 400 East
Washington, DC 20001
Telephone: (202) 559-9740

*Interim Co-Lead Counsel for the Publisher Class*

Copies to: All Counsel (via ECF)