**FRESHFIELDS**

Silicon Valley
855 Main Street
Redwood City, CA 94063
T +1 650 618 9250 (Switchboard)
   +1 650 461 8276 (Direct)
E justina.sessions@freshfields.com
www.freshfields.com

**Via ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

June 11, 2025

**Re:**   *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC)

Dear Judge Castel:

Defendants Google LLC, Alphabet Inc., and YouTube, LLC (together, "Google") respectfully submit this response to Plaintiffs' pre-motion letter seeking leave to move for an adverse inference in connection with Google's preservation of Chat messages and privilege assertions. ECF No. 1004 ("Ltr.").[1] No conference is scheduled.

Plaintiffs cannot meet the high standard for an adverse inference in this case. *First*, Plaintiffs do not justify their years-long strategic delay in raising this request. Google disclosed its Chat retention processes to the now-remanded lead state plaintiff Texas five years ago, and the Court ordered all Plaintiffs to coordinate with Texas on ESI issues four years ago. *Second*, Plaintiffs will not be able to meet their burden to satisfy the threshold requirements for any sanctions under Federal Rule 37(e) because (A) a duty to preserve arose no earlier than September 2019, (B) Google timely issued litigation holds that resulted in the preservation of 9.5 million Chat messages (of which 9 million were not produced because they did not hit on search terms), and (C) Plaintiffs have never suggested that additional discovery was necessary to plug any perceived gap in the mountains of other ESI produced by Google. *Third*, "[a]n adverse inference instruction is an extreme sanction and should not be imposed lightly."[2] Plaintiffs cannot meet the stringent standard under Rule 37(e)(2) to show that Google had a specific intent to deprive Plaintiffs of ESI *in this litigation*. Google's disclosures and enormous productions of ESI are irreconcilable with that specific intent. Plaintiffs also allege no "prejudice" warranting lesser curative "measures" under Rule 37(e)(1). Nor could they: Google had no duty to preserve until 2019, and the vast majority of Plaintiffs' allegations pre-date any preservation obligation. And Plaintiffs articulate no basis for the lesser sanction they seek—denial of summary judgment—because their arguments are foreclosed by the 2015 amendments to Federal Rule of

---

[1] Google Chat—formerly known as "Hangouts"—is an instant messaging tool used by companies (including Google). Every Chat message in a conversation can be set to "history on" or "history off," and the setting (during the period relevant to the Letter) applied to future messages in the conversation until changed by a participant. Ex. 1.
[2] *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 498 (S.D.N.Y. 2022) (internal quotations omitted).

Civil Procedure 37(e). *Finally*, Plaintiffs' criticisms of the "Communicate with Care" guidelines amount to an untimely and meritless discovery motion dressed up as a sanctions motion.

**I.   Plaintiffs' opportunistic delay renders their pre-motion letter untimely.**[3]

**More than five years ago**, Google disclosed full details of its Chat retention processes to the now-remanded lead state plaintiff Texas who coordinated with Plaintiffs on ESI issues in this litigation. Google disclosed that:

- "Google [Chat] messages by default are set to be 'off-the-record,'" and that "Off-the-record messages are not retained by Google." Ex. 2 at 4.

- Google "instructs custodians on a legal hold to preserve relevant materials, including an instruction to preserve relevant [Chat] conversations by putting those conversations 'on-the-record' on a message-by-message basis." *Id.*

- "Once an employee is put on a legal hold, 'on the record' [Chat] conversations are preserved for the duration of the legal hold." *Id.*

Texas acknowledged all of this, writing its own letter "memorializ[ing]" its understanding that "[Chat] messages are not retained in any way unless they are marked on-the-record by the user. . . . If the user does not take this action for every conversation, the unmarked ones will be deleted immediately." Ex. 3 at 1, 2.

**Almost four years ago**, Your Honor ordered "Counsel for state plaintiffs, individual plaintiffs and putative class plaintiffs . . . to coordinate through a Plaintiffs Coordinating Committee the drafting of ESI protocols and Rule 34 requests." ECF No. 129 ¶ 4. Plaintiffs then represented to the Court that they all met with Texas and were "consolidating comments" on an ESI Order. ECF No. 141 at 1. Plaintiffs spent a full six months collectively working on their draft ESI Order, which they first presented to Google in April 2022. *See* ECF No. 434-2 at 1. Over the course of the following eleven months, the parties met and conferred more than thirty times on ESI and preservation and exchanged more than a dozen drafts of the ESI Order. *See* ECF No. 434 at 4-5. The Court also ordered Plaintiffs to establish a Discovery Steering Committee, with state plaintiffs taking two of the five seats and the private plaintiff constituencies occupying the

---

[3] Federal Rule 26(f) requires parties, at the outset of the case, to discuss "any issues about preserving discoverable information" as part of scheduling ESI order negotiations. *See* Fed. R. Civ. P. 26(f)(2). "A corollary" to the need for early ESI preservation discussions is that "untimely challenges to production failures may not provide a basis for relief." *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 196 (2018) ("Sedona"). And "'[w]hile Rule 37 does not establish any time limits within which a motion for sanctions must be filed, unreasonable delay may render such motions untimely.'" *Rodriguez v. Vill. of Port Chester*, 535 F. Supp. 3d 202, 217 (S.D.N.Y. 2021) (rejecting sanctions argument where party failed to make any formal requests for certain information and failed to bring the issue to the court's attention until after the close of discovery) (citation omitted); *see also Carroll v. Trump*, 2024 WL 475140, at *12 (S.D.N.Y. Feb. 7, 2024) ("[A] motion for sanctions pertaining to a discovery issue that [a party] sat on for about one year [is] 'untimely' under any construction of the term."); *Baez v. Delta Airlines, Inc.*, 2013 WL 5272935, at *9 n.15 (S.D.N.Y. Sept. 18, 2013) (collecting cases and noting that certain issues should have been raised promptly during discovery, and not in a motion for spoliation after discovery has closed); *Tri-Cnty. Motors, Inc. v. Am. Suzuki Motor Corp.*, 494 F. Supp. 2d 161, 178 (E.D.N.Y. 2007) (stating "[i]t is, quite simply, too late to raise [these issues] now" when sanctions motion for discovery-related misconduct was brought after the close of discovery), *aff'd*, 301 F. App'x 11 (2d Cir. 2008).

June 11, 2025
Page 3

other three. ECF No. 311.

Texas and the Publisher Plaintiffs led those negotiations, and all Plaintiffs were represented. All Plaintiffs had every opportunity to explore preservation issues during those protracted negotiations. Google responded to a litany of queries from Plaintiffs addressing linked documents, metadata fields, production specifications, centrally stored documents, and a raft of other issues. And Plaintiffs demanded more than 100 separate changes to the draft ESI Order. *See* ECF No. 434 at 1. **But none of those changes concerned Chat messages.**

The parties then litigated ESI and preservation issues. Plaintiffs told the Court that metadata fields, linked documents, and presenter comments were "critical" to their case. ECF No. 439 at 9-10; *see also* ECF Nos. 434, 440, 464, 468, 500. At oral argument, Plaintiffs argued that Google should be required to preserve vast quantities of European ad logs that Plaintiffs represented as the "heart and soul" of the case. ECF No. 481 at 9:7-8. Again, there were no disputes about Google's Chat retention processes. Instead, the ESI Order Plaintiffs proposed to the Court provided that the parties *continue* their retention processes. ECF No. 439-1 at 3.

Plaintiffs were also actively monitoring developments in the *Play* case[4] the entire time. In fact, the Publishers' Counsel in this MDL also represents the consumer plaintiff class in the *Play* case.[5] In April 2022, Plaintiffs emphasized the importance of source code in discovery—asserting that it would be "direct evidence of Google's relevant conduct," ECF No. 273 at 11—and urged this Court to adopt the source code protocol from *Play*. ECF No. 291 at 15:11-19; ECF No. 294 at 1-3 (referencing *Play* case 18 times). At the same time, plaintiffs in *Play* first signaled their intent to seek sanctions in that case based on the Chat retention processes that Plaintiffs belatedly challenge here. *See Play* ECF No. 229 at 22:7-16. Plaintiffs here could have asked Google to modify its Chat preservations processes at that time, but chose not to do so—it appears at this point for strategic reasons.

Plaintiffs' initial discovery requests reflected a keen awareness of Google's retention processes. In January 2023, Plaintiffs served their first round of 301 Requests for Production, including a request for documents "concerning deletion and/or failure to preserve informal communications and chats in relation to any actual or potential antitrust action." Ex. 4 at 80. Google raised with the Court its concern that "Plaintiffs' voluminous requests implicate complex questions regarding ESI preservation and production that Plaintiffs could have raised at a much earlier juncture—but failed to do so," ECF No. 441 at 3, and flagged that "Plaintiffs have chosen not to raise these issues until now for tactical reasons," *id.* at 4. Google agreed to (and did) produce its retention policies and requested that Plaintiffs do the same. Plaintiffs either refused to do so or admitted that they had none.

**More than two years ago**, Plaintiffs demanded Google "[i]mmediately begin preserving all chat data for custodians relevant to these actions." Ex. 5 at 2. As it had done before, Google promptly responded with a description of its Chat retention processes. Ex. 6. In so doing, Google noted that Plaintiffs had been well aware of those processes for many years. *Id*. at 1-2. Google

---

[4] *In re Google Play Store Antitrust Litigation*, No. 21-md-02981 (N.D. Cal.) ("*Play*").
[5] George Zelcs of the Korein Tillery firm appeared in the *Play* in August 2020, *Play* ECF No. 6, and in this case in September 2021. *See* ECF No. 38 (George Zelcs, Counsel, Korein Tillery, Pro Hac Motion).

also told Plaintiffs that, "although Google believes its past processes were reasonable and proportionate, out of an abundance of caution, Google implemented an additional [retention] process on February 8, 2023." *Id.* at 3.

Twenty-six months later, *i.e.*, over eleven months after the close of fact discovery, Plaintiffs now seek to file a sanctions motion. Plaintiffs claim that their request for an adverse inference is timely because *expert* discovery closed in April 2025, which "provided the information necessary to litigate" these issues. Ltr. at 9. But there was no expert discovery regarding Google's Chat retention processes *in this case*.[6] And Plaintiffs have known of the processes they now challenge for many years.

Against that backdrop, the Court should deny Plaintiffs' request to file a brief seeking sanctions because it is untimely. If Plaintiffs thought that Chat messages were an important form of ESI in this MDL then they had countless opportunities to ask Google about its processes during the ESI Order negotiations and to ask Google to modify them. It appears Plaintiffs did not do so because, strategically, they would prefer the extreme remedy of an adverse inference rather than Chat messages post-dating most of the conduct at issue. *See, e.g.*, *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 49-52 (S.D.N.Y. 2010) (finding adverse inference instruction inappropriate where plaintiff had all the evidence necessary to make a possible spoliation claim but remained silent, "without a word about spoliation, only to complain a month later"); *see generally Tri-Cnty. Motors, Inc. v. Am. Suzuki Motor Corp.*, 494 F. Supp. 2d 161, 178 (E.D.N.Y. 2007) ("More dispositively, the record reveals that the issues now raised . . . were neither brought to the attention of [the] Magistrate Judge nor were they the subject of an appeal during discovery. It is, quite simply, too late to raise them now [at summary judgment].").

## II.   Plaintiffs cannot meet their burden to prove the elements of Federal Rule 37(e).

"The party seeking spoliation sanctions . . . has the burden of establishing the elements of a spoliation claim." *Doubleline Cap. LP v. Odebrecht Fin., Ltd.*, 2021 WL 1191527, at *5 (S.D.N.Y. Mar. 30, 2021) (internal quotations omitted). Specifically, Plaintiffs must demonstrate that "[A] electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because [B] a party failed to take reasonable steps to preserve it, and [C] it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e).

### A. The duty to preserve attached no earlier than September 2019, and Plaintiffs cannot show relevant ESI that needed to be preserved has been lost.

"Identifying the boundaries of the duty to preserve involves two related inquiries: **when** does the duty to preserve attach, and **what** evidence must be preserved?" *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003). As set forth below, Plaintiffs are seeking to

---

[6] Plaintiffs cite only an expert report in the Texas Case and claim that Google "did not contest" its conclusions. Ltr. at 4. But Google filed a *Daubert* motion to exclude those opinions in their entirety because they lack any reliable methodology and purport to draw sweeping conclusions based on a biased sample of convenience drawn from logs produced in *Play* (covering five employees and spanning two months beginning in late 2022). *See* EDTX ECF No. 762 (filed publicly with redactions as EDTX ECF No. 773-1). The EDTX Court's opinion is pending.

backdate Google's preservation—based on a theory already rejected in the Texas Case[7]—because they allege anticompetitive conduct between 2006 and 2019. Without this backdating, any ESI Plaintiffs claim was spoliated is unlikely to be relevant to their claims.

**The duty attached no earlier than September 2019**. As to the first inquiry, Federal Rule 37 "does not apply when information is lost before a duty to preserve arises." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Judge Jordan has already ruled that the relevant preservation date is September 9, 2019, and that "[p]icking any point on the timeline of this case prior to September 2019, as the date that Google could 'reasonably anticipate' *this* lawsuit, would be, at best, arbitrary, and, at worst, nonsensical." EDTX ECF No. 776 at 20; *see also CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 2021 WL 4190628, at *14 (S.D.N.Y. Aug. 18, 2021) (a party's "obligation to preserve evidence" is triggered only after that party reasonably anticipates "*this* litigation") (emphasis original); *In re Pfizer Inc. Sec. Litig.*, 288 F.R.D. 297, 316 (S.D.N.Y. 2013) (prior litigation "rais[ing] different factual issues" did not trigger duty to preserve evidence for subsequent litigation).[8]

Plaintiffs assert a prevention obligation starting in February 2019 based on an investigation by a foreign regulator, Ltr. at 2, but Judge Jordan rejected that argument in the Texas Case because "a government investigation does not necessarily create a duty as a matter of law to preserve evidence with respect to later civil litigation," and "[t]hus, the start of an investigation is not necessarily the date on which litigation is reasonably foreseeable, because it is common that investigations can result in no litigation being filed." EDTX ECF No. 776 at 10 (internal citations and quotations omitted); *see also Jacquety v. Baptista*, 538 F. Supp. 3d 325, 343 (S.D.N.Y. 2021) (clarifying that reasonable anticipation of litigation requires "reasonable anticipation that litigation would ensue *in the United States*") (emphasis added). He also declined Texas Case plaintiffs' invitation to be the first court to endorse the controversial notion—that Plaintiffs also press here—of a shifting duty to preserve owed to the world at large. EDTX ECF No. 776 at 10-16 (collecting cases). This Court should likewise decline that invitation. *See, e.g.*, *Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 458 (2d Cir. 2007) (rejecting assertion "that there is a broad duty to preserve evidence" that "continues indefinitely"); *Tchatat v. O'Hara*, 249 F. Supp. 3d 701, 709 (S.D.N.Y. 2017) (rejecting attempt to "graft" a duty to preserve evidence from one case to another).

**Plaintiffs cannot establish that *relevant* evidence was lost**. As to the second inquiry, "[r]elevance cannot be established solely on the basis of conjecture. Nor can a finding of relevance be grounded solely on the basis that *some* evidence in the custody of key witnesses no longer exists. Plaintiff has the burden of articulating what that evidence is with some degree of factual detail." *Alter v. Rocky Point Sch. Dist.*, 2014 WL 4966119, at *12 (E.D.N.Y. Sep. 30, 2014) (emphasis original) (citing *Simoes v. Target Corp.,* 2013 WL 2948083, at *7 (E.D.N.Y. June 14, 2013) ("Because the present record does not satisfy the relevance element, plaintiff's motion for spoliation sanctions in the form of an adverse inference must fail.")).

---

[7] *The State of Texas v Google, LLC*, No. 4:20-cv-00957 (E.D. Tex.) (the "Texas Case"). References to docket entries from this case are noted as "EDTX ECF No.".

[8] In *United States et al v. Google LLC*, No. 1:23-cv-00108 (E.D. Va.) (the "Virginia Case"), the Department of Justice did not assert that any duty arose until December 2019. EDVA ECF No. 1169 at 18 (noting "DOJ starts its clock as of December 2019"). References to docket entries from this case are noted as "EDVA ECF No.".

Plaintiffs' Letter assumes that all Chat messages are relevant to this case when that is plainly not so. While some Googlers use Chat to discuss substantive topics, deposition testimony in this case reflects that they also used Chat in a variety of different ways, including making lunch plans,[9] coordinating logistics (such as meeting arrangements),[10] and various personal reasons.[11] Evidence that some Google employees use Chat daily or that some *produced* Chat messages reference topics in the case is *not* evidence that unpreserved messages contained *relevant* information—information with a tendency to make a "*fact [] of consequence* in determining the action" "more or less probable." Fed. R. Evid. 401 (emphasis added); *see also* Fed. R. Civ. P. 26(b)(1) (limiting scope of discovery to evidence "relevant" to the case at hand); *see generally Taylor v. Google LLC*, 2024 WL 4947270, at *3 (N.D. Cal. Dec. 3, 2024) (conclusory statements that an employee "used chat messages for work purposes" do not provide "evidentiary support" to conclude that relevant information was likely contained in those messages) (internal quotations omitted).[12]

The emails and Chat messages that Plaintiffs exhibit do not support the conclusion that relevant evidence was not preserved. Plaintiffs cite one document authored by a Googler who reported that he regularly toggled the Chat history setting to "history on" when discussing matters related to a legal hold,[13] two documents from a period when even Plaintiffs concede there was no preservation obligation,[14] ten documents that, on their face, have nothing to do with the issues in dispute in this case,[15] and three documents discussing the importance of clear and concise communication but which do not suggest that information was deleted.[16]

### B. Plaintiffs cannot show that Google did not take reasonable steps to preserve.

Rule 37(e) requires only that a party take "reasonable steps to preserve" relevant ESI; it

---

[9] *See, e.g.*, Ex. 7 at 229:9-14 ("I use chat for the situation that I described, that, okay, I'm late in the meeting, or where should we go for lunch, and those things.").

[10] *See, e.g.*, Ex. 8 at 24:5-9 ("[W]hen I communicate over chat, it's mostly, hey, can you jump into this meeting, or are you going to make it on time to the next meeting, or something like that."); Ex. 9 at 243:7-11 ("We use chat to send, like, one-line messages. We don't use chat for material work discussions. It's usually like, Hey, are you coming to this meeting? Here is the link to the document. Things like that."); Ex. 10 at 37:10-12 (describing Chat as "informal, kind of, not super relevant in some sense. Like, just chitchat and that kind of thing").

[11] *See, e.g.*, Ex. 11 at -132 ("Team chat! All fun stuff, gossip, pictures you wanna share! LETS BUILD SOME OF THAT TEAM SPIRIT!").

[12] In *Taylor*, the court denied discovery-on-discovery on Google's Chat preservation, emphasizing that preservation should be assessed on the facts of that case and not other cases involving Chat. 2024 WL 4947270, at *2–*4 ("[P]laintiffs have not shown that Google failed to preserve relevant Chat messages across custodians *in this case*.") (emphasis added).

[13] *Compare* Ltr. Ex. 18, *with* Ltr. Ex. 14 at 3 n.4.

[14] *See* Ltr. Exs. 9 (May 15, 2018), 19 (April 4, 2016).

[15] Plaintiffs cite four communications between participants who are not custodians in this case and which do not concern the claims and defenses in this case. *See* Ltr. Exs. 4, 8, 9, 16. Plaintiffs cite three others involving participants who once worked in ad tech but no longer worked in ad tech at the time of the communication and which do not concern ad tech. *See id.* Exs. 7, 23, 25. Plaintiffs cite three others that, on their face, have nothing to do with this case. *See id.* Exs. 21, 22, 24.

[16] *See* Ltr. Exs. 16, 17, 18. These communications reflect practices consistent with American Bar Association guidance advising members to "[c]ommunicate clearly and concisely" and not "exaggerate or make jokes" because "[w]hat is funny in your email today may be hard to explain when that email is produced during some potential dispute years later." Am. Bar Ass'n, *The Antitrust Compliance Handbook: A Practitioner's Guide* § XIII.D.1. (2019).

"does not call for perfection." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Under this standard, Plaintiffs are "not entitled to every single document that could possibly have existed" since "[d]iscovery must be reasonable, not perfect." *Johnson v. L'Oréal USA*, 2020 WL 5530022, at *3 (S.D.N.Y. Sep. 15, 2020). Google's preservation efforts meet that standard here. *See generally World Trade Ctrs. Ass'n, Inc. v. Port Auth. of N.Y & N.J.*, 2018 WL 1989616, at *13 (S.D.N.Y. Apr. 2, 2018) (Report and Recommendation) (denying sanctions where low responsiveness rate showed "some other factor in play, such as lack of relevance, not lost evidence"), *adopted*, 2018 WL 1989556 (S.D.N.Y. Apr. 25, 2018).

Prior to February 2023, Google's default message setting (changeable by the user) was "history off" for most Chat conversations—meaning that a message was not retained after 24 hours. Ex. 12 at 1. When a message was sent after a user toggled "history on," however, it was retained for a time period depending on the type of Chat conversation (*e.g.*, one-on-one versus a group), and if a participant was placed on legal hold, then for the duration of the hold. Ex. 12 at 1-2. During that same period, Google's policy for, and instructions to, employees subject to legal holds was **always** that they **shall not** send "history off" Chat messages about any topics covered by the hold, and messages within the scope of holds *must be retained*. Ltr. Ex. 1; Exs. 13, 12. Starting in October 2019, Google began issuing detailed legal holds to employees potentially relevant to this case. *See* EDVA ECF No. 1169-1. Google sent hold notices to additional employees relevant to the various private plaintiffs when they began to sue in 2020. *See id.*

Plaintiffs do not dispute when Google began issuing hold notices in connection with this case, nor that Google specifically instructed employees to refrain from sending relevant "history off" Chat messages. They instead mis-cite *Zubulake*, 229 F.R.D. at 432, for the proposition that expecting employees to follow these instructions was inherently unreasonable. Ltr. at 3. However, the quoted portion of *Zubulake* involved instructing employees to "retain and *produce*" documents (which is not what Google did), and the court required monitoring by counsel "so that all sources of discoverable information *are identified and searched*." 229 F.R.D. at 432 (emphases added).

Here, Google's specific instructions to employees on legal hold was a preservation practice approved by the Sedona Conference.[17] Google's preservation efforts resulted in the preservation of approximately 9.5 million individual Chat messages for the 194 agreed upon custodians in this case. Ex. 14. Google has produced approximately half a million of those messages to Plaintiffs after running agreed search terms. *Id*. **The remaining 9 million messages hit on none of those agreed search terms.**

Plaintiffs cite nothing to support a conclusion that *any* Google employee deliberately disobeyed the repeated legal hold instructions and sent "history off" messages discussing relevant information.[18] In any event, isolated and cherry-picked instances of individual Google

---

[17] *See* The Sedona Conference, *Commentary on Ephemeral Messaging*, 22 Sedona Conf. J. 435, 479 (2021) (approving of either disabling or "otherwise prohibit[ing]" employees on legal hold from using ephemeral messaging for "communications related to the subject matter of the hold").

[18] Plaintiffs assert that four of the Googlers deposed in this case stated that they "never" turned history on. Ltr. at 4. But the testimony they cite does not support the theory that Googlers disobeyed their preservation obligations. Neal Mohan, for example, testified that he only "[o]ccasionally use[d] Chats" and that his usage was "[o]ftentimes to schedule meetings or check in on an employee, that kind of thing." Ex. 15 at 108:15-17. Jonathan Bellack had left

employees allegedly not following the instructions in Google's legal hold notice do not demonstrate that Google's instructions were unreasonable at the time they were issued. *See La Belle v. Barclays Cap. Inc.*, 340 F.R.D. 74, 84 (S.D.N.Y. 2022) ("[W]e do not find that Barclays acted unreasonably in assuming the policy was followed and limiting its document search to company-issued devices until the issue was brought to its attention."); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 520 (S.D.N.Y. 2022) (finding that defendant did not "act[] unreasonably in assuming that its employees complied with [the] policy that instructed them to save documents [in a specific way], despite [p]laintiffs' claim that employees frequently violated the policy") (internal citations and quotations omitted).[19]

### C. Plaintiffs cannot show that any lost Chat messages cannot be replaced.

Plaintiffs bear the burden of "show[ing] that the lost evidence cannot 'be restored or replaced through additional discovery.'" *Minnie Rose LLC v. Yu*, 2023 WL 2386608, at *5 (S.D.N.Y. Mar. 7, 2023) (quoting Fed. R. Civ. P. 37(e)). This is a "threshold element[]" under Rule 37 that Plaintiffs must establish by a preponderance of the evidence. *Chepilko v. Henry*, 722 F. Supp. 3d 329, 338 (S.D.N.Y. 2024); *see also CBF*, 2021 WL 4190628, at *13 n.17. But Plaintiffs have failed to address this element of their burden *at all*. Nor could they: Google produced an extraordinary amount of discovery in this case, including more than six million total documents, 80 gigabytes of source code, and over 750 terabytes of data, and Plaintiffs have not identified any particular subject or issue as to which they lack discovery.

Plaintiffs had the ability to follow up through depositions but failed to do so. The Court initially permitted each side 15 depositions with the ability to request more for cause. ECF No. 394 ¶ 6.5. Plaintiffs then sought <u>12 more</u> depositions on the basis that the additional witnesses had "unique knowledge" that would help them "prove their [] case[]." ECF No. 755 at 2. But Plaintiffs did not assert any need to plug any gaps left by allegedly unpreserved Chat messages.

Plaintiffs only asked seven deponents about how they used or preserved Chat messages. None of those deponents testified that there is information stored in unpreserved Chat messages that is not reflected elsewhere. Plaintiffs never followed up and thus cannot meet their burden to show that the unspecified discovery they say is missing could not be obtained via other means. *See King v. Wang*, 2021 WL 5495799, at *2 (S.D.N.Y. Nov. 23, 2021) (denying motion for adverse inference where movant failed "[to] follow up" on "answers at deposition," failed "[to] seek additional discovery," and failed "[to] file a motion to compel regarding the supposedly withheld information").

---

Google's ad tech business in January 2019—before even Plaintiffs allege any preservation obligation arose. Ltr. Ex. 14 at 3 n.3. Brad Bender testified that he only used Chat "[o]n occasion," and in any event left the display ads less than one month after receiving a legal hold notice relevant to this case. Ex. 16 at 212:22, 28:20-29:5. And the fourth Googler received a legal hold notice in June 2020, EDVA ECF No. 1169-1, and left Google a year later in June 2021, Ex. 17 at 17:1-18:4.

[19] Plaintiffs' suggestion that "89%" of Google employees did not preserve Chat messages, Ltr. at 4, is misleading and wrong. In the Virginia Case, Google surveyed 33 employees about their Chat practices (and not nine as Plaintiffs assert). Ltr. Ex. 14 at 2. Of those 33, *none* of them reported that they did not preserve relevant Chat messages subject to a preservation obligation. The *majority* "reported that it was not their regular practice to use Chat for substantive communications related to ad tech." *Id.* And nearly half of the minority that reported they "sometimes" used Chat had transitioned out of the display ads business before any preservation obligations arose in that case. *Id.* at 3 n.3.

### III. Plaintiffs cannot show intent to deprive them of ESI and they assert no prejudice.

Even if Plaintiffs could meet the threshold requirements for any kind of sanctions under Rule 37(e), they cannot meet the stringent requirement for an adverse inference under Rule 37(e)(2). And they assert no "prejudice" that could support a claim for other curative "measures" under Rule 37(e)(1).

**No intent to deprive under Rule 37(e)(2)**. The Second Circuit recently clarified that an adverse inference is only warranted when the movant can meet the stringent standard of demonstrating an "intent to deprive" their adversary of relevant evidence. *Hoffer*, 128 F.4th at 435. In so doing, the Second Circuit also clarified that the "lesser 'culpable state of mind' standard, which includes negligence . . . does not apply to the imposition of sanctions." *Id*. (citation omitted). As set forth below, that is fatal to Plaintiffs' contention that Google intended to deprive them of discovery in this case.[20]

*First*, Google's disclosure of its Chat preservation processes is inconsistent with an intent to deprive. Google disclosed its Chat retention processes to the now-remanded lead state plaintiff Texas in January 2020 and explained those processes again when asked in 2023. *Supra* at § I; Exs. 18, 2, 6; *cf. Minnie Rose*, 2023 WL 2386608, at *7 ("[C]ooperation . . . in the discovery process weighs against finding an intent to deprive."); *Pfizer*, 288 F.R.D. at 317-19 (no intent to deprive where party "did not conceal the existence of either the eRooms or the centralized databases" and otherwise "produced 40 million pages of documents from 94 custodians"); *Keurig*, 341 F.R.D. 474 at 519-20 (finding defendant's "endeavor[ing] to meet all its [discovery] obligations as Plaintiffs inquired about perceived gaps" inconsistent with an intent to deprive). In the interim, all Plaintiffs and Google negotiated an extensive ESI protocol, whereby the parties exchanged over a dozen drafts and discussed over 100 changes to the draft ESI order; none of those changes related to Chat messages.

*Second*, Google's 2008 announcement that the default setting for a new "Chat" would be "history off" (a.k.a. "off-the-record") stated a single, generalized purpose: to help "streamline and simplify" Google's review, in responding to document production requests, of "millions of pages" of Chat messages that had no ongoing business value (*e.g.*, routine or duplicative communications and meeting requests). Ltr. Ex. 1. Google's 2020 "Chat Retention Policy" reaffirmed that purpose: to help "reduce redundant, obsolete, and trivial information," "time spent sifting through irrelevant old messages," and "storage costs." Ex. 12. That purpose is consistent with best practices articulated by the Sedona Conference.[21] And adherence to established document preservation policies does not reflect an intent to deprive. *See Minnie Rose*, 2023 WL 2386608, at *5-*8. Plaintiffs ignore those legitimate purposes and focus on language indicating that Google anticipated the possibility of unspecified legal or regulatory "challenges". Ltr. at 2. But the Supreme Court has ruled that "[d]ocument retention policies, which are created in part to keep certain information from getting into the hands of others,

---

[20] This higher standard has recently been applied by courts in this Circuit. *See Ocasio v. City of Canandaigua*, 2025 WL 1064721, *9-*10 (W.D.N.Y. Apr. 9, 2025) (denying adverse inference because there was no evidence of proactive misconduct or bad faith, and nothing suggested that crucial or dispositive evidence was lost due to the spoliation).

[21] *See* Sedona at 61 (in addition to addressing retention, an effective information governance protocol should also address "the effective, timely, and consistent disposal of ESI that no longer needs to be retained or preserved.").

including the Government, are common in business. It is, of course, not wrongful . . . to comply with a valid document retention policy under ordinary circumstances." *Arthur Andersen LLP v. United States*, 544 U.S. 696, 704 (2005).

*Third*, Google specifically instructed employees on legal hold not to use Chat or, if they must do so, to switch history on so that messages are preserved. The 2008 announcement explicitly states: "**If you've received notice that you're subject to a litigation hold, and you must chat regarding matters concerned by that hold, please make sure that those chats are 'on the record'.**" Ltr. Ex. 1 at -619 (emphasis added). Beginning in 2019, Google "cast a wide net in timely issuing litigation holds to [hundreds of] custodians." *Keurig*, 341 F.R.D. at 521; *supra* at § II B. Plaintiffs' argument that Google should have been more diligent in monitoring compliance with those instructions, Ltr. at 3-4, does not meet the required legal standard because it asserts only negligence. But "not following up with certain of its custodians sooner to make sure that [it] was capturing what was required under the ESI Order . . . [does not constitute] an intent to deprive." *Keurig*, 341 F.R.D. at 521.

*Fourth*, Google's preservation efforts led to the preservation of 9.5 million Chat messages (of which half a million were produced) and millions of other ESI. *Supra* at § II B. That massive collection effort "belies any inference that [defendant] intended to deprive [p]laintiffs of . . . documents." *Keurig*, 341 F.R.D. at 523 (no intent to deprive plaintiffs of documents in light of "[t]he volume and scope of [defendant's] production," consisting of millions of documents); *see also Johnson*, 2020 WL 5530022, at *1-*4 (insufficient evidence of intent to deprive where defendant "applied Plaintiff's onerous . . . search terms, . . . generated more [than] 3,500 separate lines of search results[,] . . . analyzed and reviewed more than 48,000 documents, and . . . produced more than 1,600 documents").

*Finally*, Plaintiffs cannot simply point to *other cases* in an effort to meet their burden to demonstrate an intent to deprive Plaintiffs *in this case*. *See Doubleline* 2021 WL 1191527, at *8 (collecting cases and emphasizing need to show parties acted with specific "intent to deprive" adversary of ESI "*in this litigation*"); *Keurig*, 341 F.R.D. at 496 (same).[22] Judge Donato's ruling in *Play* relied on different facts; namely, that Google "chose to stay silent until compelled to speak by the filing of the Rule 37 motion and the Court's intervention." *Play*, 664 F. Supp. 3d at 993. Google was not silent here. *Supra* at § I. In the companion ad tech cases where Google made the same disclosures, Judge Jordan has "confirm[ed] that no ruling has been made on spoliation at this time, preliminary or otherwise," EDTX ECF No. 776 at 2, and Judge Brinkema has not "adopt[ed] an adverse inference or otherwise sanction[ed] Google at this juncture." EDVA ECF No. 1410 at 114. Likewise, in the Search case, "[o]n the request for sanctions, the court decline[d] to impose them." *United States v. Google LLC*, 747 F. Supp. 3d 1, 187 (D.D.C. 2024).

**No prejudice under Rule 37(e)(1)**. Recognizing that they cannot meet the requisite stringent standard, Plaintiffs retreat to asserting that they should instead be entitled to squeak by

---

[22] *See also* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment ("The fact that a party had an independent obligation to preserve information does not necessarily mean that it had such a duty with respect to the litigation, and the fact that the party *failed to observe some other preservation obligation* does not itself prove that its efforts to preserve were not reasonable *with respect to a particular case*.") (emphasis added).

summary judgment because of the theoretical possibility that an unpreserved Chat message contains a smoking gun that is not otherwise ascertainable from Google's massive discovery efforts. Ltr. at 5, 8. But Plaintiffs' Letter does not articulate any prejudice necessary for lesser curative measures under Federal Rule 37(e)(1). Nor could they: Any "evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. It is Plaintiffs' burden to prove prejudice when "the abundance of preserved information [] appears sufficient to meet the needs of all parties." *Int'l Bus. Machs. Corp. v. Naganayagam*, 2017 WL 5633165, at *6 (S.D.N.Y. Nov. 21, 2017) (quoting Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment). To meet that burden, Plaintiffs must articulate how they are prejudiced by an asserted lack of Chat messages from September 9, 2019, through February 8, 2023, when the vast majority of their allegations pre-date 2019 and stretch as far back as 2006, and Google has produced millions of ESI.

In addition, Plaintiffs cite no applicable legal basis for the sanction they seek—denial of summary judgment. Plaintiffs point only to two decades-old cases, neither of which involved sanctions for ESI spoliation under Rule 37(e) but instead concerned the Court's inherent authority to impose sanctions for spoliation of physical evidence (and both of which applied a pre-*Hoffer* standard for the level of intentionality required to support an adverse inference). Ltr. at 5, 8 (citing *Kronisch v. United States*, 150 F.3d 112 (2d Cir. 1998); *Buskey v. Bos. Mkt. Corp.*, 2006 WL 2527826 (E.D.N.Y. Aug. 14, 2006)). The 2015 Amendments[23] to Rule 37(e) "foreclose[] reliance on inherent authority or state law to determine when certain measures should be used" to address the loss of ESI. Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. And Plaintiffs ignore the more recent case law addressing Federal Rule 37(e) holding that these sorts of issues should be addressed early and that it is simply too late to raise them at summary judgment. *Supra* at § I.

IV.     **Plaintiffs' unsupported and amorphous privilege challenges are also untimely.**

The Court should not permit Plaintiffs to file any motion addressing an asserted "systematic abuse of privilege" based on the "Communicate with Care" guidelines because it is an untimely discovery dispute dressed up as a sanctions motion.[24] Rule 37(e) only applies when ESI "is lost because a party failed to take reasonable steps to preserve it." But Plaintiffs do not assert that ESI was lost because of the guidelines and they articulate no other basis for their motion.

Privilege determinations in this case were not made by Google employees; they were made by outside lawyers and not pursuant to the Communicate with Care guidelines. And Plaintiffs cannot credibly challenge those privilege determinations, let alone establish a systematic abuse of privilege. The parties have not discussed privilege with respect to Google's productions in well over a year. In November 2022, Plaintiffs challenged Google's assertion of

---

[23] Those amendments were intended to raise the threshold for ordering severe sanctions for spoliation because the "ever-increasing volume of electronically stored information and the multitude of devices that generate such information" made "perfection in preserving all relevant electronically stored information…often impossible." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

[24] Indeed, Plaintiffs' Letter admits that their allegations about privilege abuse are based on Google's purported "contempt for its **discovery** obligations." Ltr. at 8 (emphasis added).

privilege with respect to four clawbacks. ECF No. 368. Google largely prevailed, and the Court directed the parties to meet and confer regarding any remaining concerns as to the adequacy of the descriptions on Google's privilege log. ECF No. 438. Plaintiffs raised no further concerns.

One year later, in November 2023, Plaintiffs sent Google a list of gripes about its privilege logs (including "Communicate with Care") and asked Google to conduct a privilege re-review. Ex. 19 at 2. Google disagreed with Plaintiffs' assertions but as a sign of good faith, agreed to conduct a re-review. *See* Exs. 20, 21. Plaintiffs have had the output of that review for over a year and have not followed up in any way—much less challenged any specific log entries.

Against that backdrop, Plaintiffs have no basis to assert that Google has engaged in "systematic abuse of privilege."[25] Plaintiffs' reliance on Judge Donato's order in *Play* is not enough to justify additional discovery—much less sanctions. *See Taylor*, 2024 WL 4947270, at *4 (denying motion to compel discovery-on-discovery concerning Communicate with Care guidelines based on *Play* case where plaintiffs failed to challenge any specific claims of privilege). If Plaintiffs had an issue with Google's privilege calls or its privilege log then they should have raised that with Google as directed by the Court. But "[t]he notion that plaintiffs should receive an adverse inference . . . when plaintiffs failed to timely pursue a motion to compel is absurd." *Morgan v. Cnty. of Nassau*, 2017 WL 664027, at *7 (E.D.N.Y. Feb. 17, 2017) (denying motion for sanctions); *see also Martinez v. Long Island R.R. Co.*, 2025 U.S. Dist. LEXIS 36704, at *27 n.10 (E.D.N.Y. Feb. 27, 2025) ("To the extent that [p]laintiff is making a motion for an adverse inference, the Court respectfully recommends that it be denied as inconsistent with the record, which demonstrates that [p]laintiff had a more than full opportunity to pursue discovery and raise discovery issues in the discovery periods extending over several years."); *A.I.A. Holdings, S.A. v. Lehman Bros.*, 2002 WL 31385824, at *6 (S.D.N.Y. Oct. 21, 2002) ("If [privilege] assertions are not challenged, the withholding party has no further obligation with respect to its assertions of privilege.").

\* \* \*

For all of these reasons, the Court should deny Plaintiffs' request. If Plaintiffs are permitted to file their motion, they should be directed to coordinate and file a single 25 page motion because the contentions in the Letter all concern Google's preservation processes and it would be wasteful and burdensome to submit separate briefs on those same issues. Google respectfully requests that any motion, to the extent one is needed, should be due at the same time as Plaintiffs' Oppositions to Google's Motions for Summary Judgment, with Google's Opposition to that motion due 30 days later.

---

[25] In support of their newly-minted assertions of systematic abuse, Plaintiffs cite just two documents produced in this case. The first is an email in which one Googler states that employees should be "careful about language that could be misinterpreted," Ltr. Ex. 27, and in the second, a Googler states that they should "avoid characterizing the use of house ads as circumvention (since house ads are legitimately exempt from UPR enforcement – maybe we frame it as 'analysis of demand that isn't subject to UPR.')." Ltr. Ex. 28. Plaintiffs also mischaracterize Google's "Communicate with Care" guidelines by omitting reference to the portion of the guidelines that noted "[i]n addition to addressing [an email] to an attorney and labeling it as such, for the email to be attorney-client privileged, **it must be for the purposes of getting legal advice**." *Play*, 664 F. Supp. at 984 (emphasis added) (internal quotation marks and citation omitted).

Sincerely,

*/s/ Justina K. Sessions*

Justina K. Sessions
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250
Email: justina.sessions@freshfields.com

Eric Mahr
Andrew J. Ewalt
700 13th Street, NW
10th Floor
Washington, DC 20005
Telephone: (202) 777-4545
Email: eric.mahr@freshfields.com
          andrew.ewalt@freshfields.com

Craig M. Reiser
AXINN, VELTROP & HARKRIDER LLP
630 Fifth Avenue, 33rd Floor
New York, New York 10111
Telephone: (212) 728-2200
Email: creiser@axinn.com

*Counsel for Defendants Google LLC, Alphabet Inc., and YouTube, LLC*

CC: All Counsel of Record (via ECF)