## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re Google Digital Advertising Antitrust Litigation** | Case No. 1:21-md-3010 (PKC) |
| *This document relates to:* | |
| **In re Google Digital Publisher Antitrust Litigation** | Case No. 1:21-cv-07034 (PKC) |
| **In re Google Digital Advertising Antitrust Litigation** | Case No. 1:21-cv-07001 (PKC) |
| **Associated Newspapers Ltd. v. Google LLC** | Case No. 1:21-cv-03446 (PKC) |
| **Gannett Co., Inc. v. Google LLC** | Case No. 1:23-cv-05177 (PKC) |
| **Inform Inc. v. Google LLC** | Case No. 1:23-cv-01530 (PKC) |

### MDL PLAINTIFFS' JOINT MEMORANDUM OF LAW
### IN SUPPORT OF THEIR MOTIONS FOR
### <u>COLLATERAL ESTOPPEL AND PARTIAL SUMMARY JUDGMENT</u>

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ................................................................................................................... 1

LEGAL STANDARD.............................................................................................................. 2

ARGUMENT ......................................................................................................................... 4

    I.    The elements of issue preclusion are satisfied. ................................................. 4

        A.    The issues are substantially the same. ...................................................... 4

        B.    The issues for which preclusion is sought were actually litigated and decided in the EDVA action. .............................................................. 9

        C.    Google had a full and fair opportunity to litigate the issues on which preclusion is sought. ......................................................................... 10

        D.    The issues for which preclusion is sought were necessary to the EDVA decision. ........ 10

        E.    The EDVA opinion is final for purposes of collateral estoppel. .................................. 12

    II.    It is fair and efficient to apply issue preclusion here.................................................... 14

        A.    Applying collateral estoppel here is fair. ....................................................... 15

        B.    Applying collateral estoppel here is efficient.................................................. 17

    III.    Collateral estoppel and summary judgment may be granted on parts of claims........... 19

CONCLUSION..................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*63rd St. Realty II LLC v. Philadelphia Indem. Ins. Co.*,
    2024 WL 3966097 (E.D.N.Y. Aug. 28, 2024) ........................................................................ 14

*Akhenaten v. Najee, LLC*,
    544 F. Supp. 2d 320 (S.D.N.Y. 2008) ................................................................................. 12

*Bifolck v. Philip Morris USA Inc.*,
    936 F.3d 74 (2d Cir. 2019) ..................................................................................................... 3

*City of Groton v. Conn. Light & Power Co.*,
    662 F.2d 921 (2d Cir. 1981) ................................................................................................... 7

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*,
    370 U.S. 690 (1962).................................................................................................................. 7

*Discover Fin. Servs. v. Visa U.S.A. Inc.*,
    598 F. Supp. 2d 394 (S.D.N.Y. 2008) .......................................................................... passim

*Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*,
    111 F.4th 337 (4th Cir. 2024) ................................................................................................. 7

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
    504 U.S. 451 (1992)............................................................................................................ 8, 10

*Ferring B.V. v. Serenity Pharms., LLC*,
    391 F. Supp. 3d 265 (S.D.N.Y. 2019) ................................................................................ 13

*GAF Corp. v. Eastman Kodak Co.*,
    519 F. Supp. 1203 (S.D.N.Y. 1981) ............................................................................. passim

*Gelb v. Royal Globe Ins. Co.*,
    798 F.2d 38 (2d Cir. 1986) ................................................................................................... 12

*In re American Express Anti-Steering Rules Antitrust Litigation*,
    2016 WL 748089 (E.D.N.Y. Jan. 7, 2016) .................................................................... 18, 19

*In re Google Digital Advert. Antitrust Litig.*,
    627 F. Supp. 3d 346 (S.D.N.Y. 2022) ......................................................................... 7, 9, 11

*In re Namenda Direct Purchaser Antitrust Litig.*,
    2017 WL 4358244 (S.D.N.Y. May 23, 2017) ................................................................ passim

*ITT Corp. v. United States*,
    963 F.2d 561 (2d Cir.1992) ..................................................................................................... 3

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
    466 U.S. 2 (1984) ................................................................ 9

*Jim Beam Brands Co. v. Beamish & Crawford Ltd.*,
    937 F.2d 729 (2d Cir. 1991) ............................................... 6

*Kaufman v. Time Warner*,
    836 F.3d 137 (2d Cir. 2016) ............................................... 9

*Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*,
    23 F. Supp. 3d 344 (S.D.N.Y. 2014) ................................... 5

*Lia v. Saporito*,
    541 F. App'x 71 (2d Cir. 2013) ........................................... 6

*Lummus Co. v. Commonwealth Oil Ref. Co.*,
    297 F.2d 80 (2d Cir. 1961) ......................................... 12, 13

*Matusick v. Erie Cnty. Water Auth.*,
    757 F.3d 31 (2d Cir. 2014) ................................................. 6

*McTyere v. Apple*,
    663 F. Supp. 3d 247 (W.D.N.Y. 2023) ............................... 6

*Metromedia Co. v. Fugazy*,
    983 F.2d 350 (2d Cir. 1992) ............................................. 13

*Montana v. United States*,
    440 U.S. 147 (1979) ................................................... passim

*New York ex rel. Schneiderman v. Actavis PLC*,
    787 F.3d 638 (2d Cir. 2015) ............................................... 7

*Parklane Hosiery Co., Inc. v. Shore*,
    439 U.S. 322 (1979) ................................................... passim

*Proctor v. LeClaire*,
    715 F.3d 402 (2d Cir. 2013) ............................................. 10

*Rocky Aspen Mgmt. 204 LLC v. Hanford Holdings LLC*,
    2019 WL 3940218 (S.D.N.Y. July 29, 2019) ................. 12, 13

*Russell-Newman, Inc. v. Robeworks, Inc.*,
    2002 WL 1918325 (S.D.N.Y. Aug. 19, 2002) ................ 13, 14

*SEC v. Namer*,
    2004 WL 2199471 (S.D.N.Y. Sept. 30, 2004) ................... 13

*Serv. & Training, Inc. v. Data Gen. Corp.*,
    963 F.2d 680 (4th Cir. 1992) ............................................................... 9

*Sherman v. Jacobson*,
    247 F. Supp. 261 (S.D.N.Y. 1965) ...................................................... 14

*U.S. Airways, Inc. v. Sabre Holdings Corp.*,
    938 F.3d 43 (2d Cir. 2019) .................................................................. 8

*U.S. Commodity Futures Trading Comm'n v. Efrosman*,
    2012 WL 2510338 (S.D.N.Y. June 26, 2012) ..................................... 15

*United States v. Google LLC*,
    2025 WL 1132012 (E.D. Va. Apr. 17, 2025) ............................... passim

*United States v. Google LLC*,
    661 F. Supp. 3d 480 (E.D. Va. 2023) ............................................ 1, 17

*United States v. Hartford-Empire Co.*,
    573 F.2d 1 (6th Cir. 1978) .................................................................. 15

*United States v. Live Nation Ent., Inc.*,
    2025 WL 835961 (S.D.N.Y. Mar. 14, 2025) ...................................... 8

*Univac Dental Co. v. Dentsply Int'l, Inc.*,
    702 F. Supp. 2d 465 (M.D. Pa. 2010) ............................................... 14

*Valassis Commc'ns, Inc. v. News Corp.*,
    2019 WL 802093 (S.D.N.Y. Feb. 21, 2019) ........................................ 7

*Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko LLP*,
    540 U.S. 398 (2004) ........................................................................ 7, 8

*Zherka v. City of New York*,
    459 F. App'x 10 (2d Cir. 2012) ........................................................... 3

**Statutes**

15 U.S.C. § 16(a) .................................................................................... 17

**Other Authorities**

18A Charles Alan Wright & Arthur R. Miller,
    Fed. Prac. & Proc. § 4433 (3d ed.) ................................................... 18

7C Charles Alan Wright & Arthur R. Miller,
    Fed. Prac. & Proc. Civ. § 1909 (3d ed.) ............................................ 15

H.R. Rep. No. 96-874,
96th Cong., 2d Sess. (1980) ................................................................................ 3

Restatement (Second) of Judgments § 13 ............................................................. 13

**Rules**

Fed. R. Civ. P. 52(a)(1) ........................................................................................ 9

Fed. R. Civ. P. 56(a) ............................................................................................. 19

Fed. R. Civ. P. 56(g) ............................................................................... 4, 19, 20

Fed. R. Civ. P. 60(b) ............................................................................................. 14

Plaintiffs submit this joint memorandum of law in support of their respective motions for collateral estoppel and partial summary judgment.[1]

## INTRODUCTION[2]

These actions present a textbook case for precluding Google from relitigating issues already resolved by Judge Brinkema in *United States v. Google LLC*, No. 23-cv-108-LMB (E.D. Va.) ("the EDVA action").[3]  Google has long acknowledged that the markets and conduct at issue in the EDVA action are identical to the markets and conduct at issue in this MDL.  Google sought unsuccessfully to transfer the EDVA action to this court primarily out of a concern that permitting the cases to proceed in separate venues would create "the risk of inconsistent judgments."  EDVA ECF 44-2 at 12 (Ex. 1).  That is because, according to Google, the EDVA action implicated "the same facts [and] relevant markets" and challenged "the same alleged conduct, under the same laws."  *Id.* at 1-2, 11.  Google further conceded, in its reply in support of its motion to transfer, that "[b]oth the S.D.N.Y. cases and th[e EDVA] case" are "based on the same legal theories and the same alleged conduct involving the same Google products and services, relying on many of the same documents collected in parallel investigations."  EDVA ECF 50 at 5 (Ex. 2).  Judge Brinkema denied that motion, explaining that "the risk of inconsistent judgments" would be "minimized" if she were "the first to reach a final judgment."  *United States v. Google LLC*, 661 F. Supp. 3d 480, 493 (E.D. Va. 2023).

After its motion to transfer the EDVA action was denied, Google successfully moved to coordinate fact discovery between the MDL and EDVA action.  *See* ECF 536.  As a result, the

---

[1] Pursuant to the Court's May 15, 2025 Order, Plaintiffs are separately filing individual memoranda of law.
[2] Unless otherwise noted, all emphases and alterations are added, and all alterations in the original and internal quotation marks and citations are omitted.  Cited documents not available on Westlaw are identified with exhibit numbers—Ex. __—and are attached as exhibits to the declaration of Izaak Earnhardt accompanying this brief.
[3] Citations to docketed materials in the EDVA action are labeled "EDVA ECF __."

factual records in the EDVA action and the MDL are substantially the same.

Following the period of coordinated fact discovery, expert discovery, *Daubert* briefing, and an unsuccessful motion for summary judgment, the EDVA court held a three-week trial in September 2024 that involved 39 live witnesses (including certain Plaintiffs in this MDL), hundreds of exhibits, and hundreds of pages of briefing. *See United States v. Google LLC*, 2025 WL 1132012 at *1-2 (E.D. Va. Apr. 17, 2025) ("EDVA opinion" or "EDVA Op."). On April 17, 2025, the EDVA court issued a 115-page opinion finding Google liable under Sections 1 and 2 of the Sherman Act for monopolizing the markets for publisher ad servers and ad exchanges, and for unlawfully tying its publisher ad server to its ad exchange. EDVA Op. *48.

This Court should preclude Google from relitigating issues decided by the EDVA court. The doctrine of non-mutual offensive collateral estoppel (or issue preclusion) allows a plaintiff that was not a party to a prior judgment to "use that judgment 'offensively' to prevent a defendant from relitigating issues resolved in the earlier proceeding." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979). Applying collateral estoppel here would serve judicial economy by narrowing the pre-trial and trial issues to be litigated and enabling the Court to grant partial summary judgment on matters already decided against Google in the EDVA action.

## LEGAL STANDARD

"Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979). There are four prerequisites for issue preclusion: "(1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation

in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits." *Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 79-80 (2d Cir. 2019). Courts do not require perfect identity of the issues in the prior litigation and the case in which preclusion is sought. Instead, collateral estoppel is appropriate where "the issues presented by [the subsequent] litigation are *in substance the same* as those resolved" in the prior litigation. *Montana*, 440 U.S. at 155; *see also Zherka v. City of New York*, 459 F. App'x 10, 13 (2d Cir. 2012) ("To meet the identity-of-issues prong of collateral estoppel, it is not necessary that the issues be exactly identical; it is sufficient that the issues presented in the earlier litigation are substantially the same as those presented by the later action.") (quoting *ITT Corp. v. United States*, 963 F.2d 561, 564 (2d Cir.1992)).

Collateral estoppel must also be fair and efficient in the circumstances of the case. *Bifolck*, 936 F.3d at 84-85. The Supreme Court has identified four indicia of fairness and efficiency—(i) whether the party seeking estoppel "could easily have joined" the other proceeding; (ii) whether there are inconsistent judgments; (iii) whether the party to be estopped had the equivalent incentives to litigate both cases; and (iv) whether the defendant had equivalent procedural opportunities in both actions. *Parklane*, 439 U.S. at 331-32. Section 5(a) of the Clayton Act expressly endorses applying collateral estoppel in private antitrust cases, in order "to eliminate wasteful retrying of issues and reduce the costs of complex antitrust litigation to the courts and parties." *GAF Corp. v. Eastman Kodak Co.*, 519 F. Supp. 1203, 1211 (S.D.N.Y. 1981) (quoting H.R. Rep. No. 96-874, 96th Cong., 2d Sess. at 3 (1980)).

Plaintiffs seek partial summary judgment under Rules 56(a) and 56(g) based upon collateral estoppel. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *In re Namenda Direct*

3

*Purchaser Antitrust Litig.*, 2017 WL 4358244, at *8 (S.D.N.Y. May 23, 2017). Material facts that are "not genuinely in dispute" because Google is precluded from relitigating them under collateral estoppel should be "treat[ed] … as established in the case." Fed. R. Civ. P. 56(g). And whether Google's conduct violates the antitrust statutes under which Plaintiffs have brought their claims has in large part been established as a matter of law in the EDVA opinion.

## ARGUMENT

Each of the four conditions for non-mutual collateral estoppel is present here. As discussed *supra* at 1-2 and *infra* § I.A, Google itself has argued that many of the issues in these actions, including those involving market definition and Google's anticompetitive conduct, are "in substance the same as those resolved" against it in the EDVA action. *See Montana*, 440 U.S. at 155. Those issues were vigorously litigated by Google in the EDVA action, were decided by the EDVA court, and were necessary to the EDVA court's findings. As a result, those issues are sufficiently "final" under Second Circuit precedent to bind Google in these actions.

Applying issue preclusion is fair and efficient in these cases. Applying the doctrine of collateral estoppel will substantially narrow the issues remaining in this MDL and will "promote the public interest by preventing needless and repetitive litigation and by conserving the resources of the Court and the parties." *GAF Corp.*, 519 F. Supp. at 1218. Moreover, none of the four "unfairness" factors identified in *Parklane* is implicated here. Plaintiffs could not have easily joined the EDVA action; Google had strong incentives to (and in fact did) vigorously defend that action; no inconsistent judgments exist; and there are no procedural opportunities here that were not present in that action. *Parklane*, 439 U.S. at 331-32.

## I.    The elements of issue preclusion are satisfied.

### A.    The issues are substantially the same.

Issue preclusion is appropriate when the "issues presented by this litigation are in

4

substance the same as those resolved" in the prior litigation. *Montana*, 440 U.S. at 155. There "does not need to be perfect identity of issues" for collateral estoppel to apply. *Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 360 (S.D.N.Y. 2014) (citing *Montana*, 440 U.S. at 155).

As explained further in Plaintiffs' individual briefs, these MDL actions and the EDVA action involve the same core conduct and legal questions: whether Google violated Sections 1 and 2 of the Sherman Act by monopolizing the markets for publisher ad servers and ad exchanges and unlawfully tying its publisher ad server and ad exchange. The EDVA opinion decided issues that are at the center of this case, including the definitions of the relevant markets, Google's market power, whether Google's conduct was anticompetitive, and whether Google's conduct was procompetitive or justified.

Google has admitted that this action satisfies the "identity-of-issues" test by repeatedly acknowledging that the issues in this MDL are "in substance the same" as the issues in the EDVA action. *Montana*, 440 U.S. at 155. Indeed, Google has repeatedly asserted that Plaintiffs' claims in the EDVA action and in the MDL actions involve the "same relevant markets" and "nearly identical categories of alleged conduct," EDVA ECF 44-2 at 13-14, and that "[b]oth the S.D.N.Y. cases and this case" are "based on the same legal theories and the same alleged conduct involving the same Google products and services, relying on many of the same documents collected in parallel investigations," EDVA ECF 50 at 5; *see also* EDVA ECF 166 at 2 (Ex. 3) (describing the SDNY actions as "substantially similar" to the EDVA action); ECF 536 at 1-2 (Google characterizing the cases as "substantially similar"); ECF 547 at 1 (Google stating that the actions involve "similar facts"); EDVA ECF 1472 at 9 n.5 (Ex. 4) (Google calling Daily Mail's claims "closely related"). Those admissions are binding on Google. *See, e.g.*, *Lia v.*

*Saporito*, 541 F. App'x 71, 73 (2d Cir. 2013) ("A party who assumes a certain position in a legal proceeding, and succeeds in maintaining that position, can be judicially estopped from assuming a contrary position thereafter simply because his interests have changed.").

Google has erroneously asserted that differences in "legal standards" between the Fourth and Second Circuits preclude application of collateral estoppel.  *See* ECF 977 at 2.[4]  Notably, the cases Google cited in its pre-motion letters dealt with parties that sought preclusion based on disparate causes of action or the laws of different states.  *See Jim Beam Brands Co. v. Beamish & Crawford Ltd.*, 937 F.2d 729, 734 (2d Cir. 1991) (trademark cancellation vs. trademark infringement); *McTyere v. Apple*, 663 F. Supp. 3d 247, 253 (W.D.N.Y. 2023) (California UCL vs. New York GBL).  Here, by contrast, both the government and Plaintiffs assert claims under Sections 1 and 2 of the Sherman Act based on the same conduct.  To the extent that there are any differences at all in the legal standards for such claims between the two Circuits, they are not material.  *See Jim Beam*, 937 F.2d at 734 (departure from issue preclusion is only warranted if legal standards are "significantly different").  And in any event, different legal standards have no bearing on issue preclusion based on *factual* findings.  *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 48 (2d Cir. 2014) ("If the issues are merely factual, they need only deal with the same past events to be considered identical.").

*First*, Google incorrectly claims (ECF 977 at 2-3) that Judge Brinkema's "holistic assessment" of Google's anticompetitive conduct was improper and inconsistent with Second Circuit precedent.  EDVA Op. *35.  But Judge Brinkema evaluated each component piece of Google's course of conduct separately and found each anticompetitive and unjustified.  *See*

---

[4] Google filed virtually identical letters in response to Plaintiffs' pre-motion letters seeking leave to move for partial summary judgment based on collateral estoppel.  *See* ECF 976, 977, 978, 980.  For convenience and consistent pagination, this brief refers to only one of those letters.

EDVA Op. *38-42.  And in the Second Circuit, as in the Fourth, the pieces of a multi-faceted course of anticompetitive conduct must also be evaluated with an eye to their combined effects. *See City of Groton v. Conn. Light & Power Co.*, 662 F.2d 921, 928 (2d Cir. 1981) ("Sherman Act plaintiffs 'should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each'") (quoting *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962)); *id.* at 929 ("The proper inquiry is whether, qualitatively, there is a 'synergistic effect'"); *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 653-54 (2d Cir. 2015) ("neither product withdrawal nor product improvement alone is anticompetitive," but "when a monopolist *combines* product withdrawal with some other conduct, the overall effect of which is to coerce consumers rather than persuade them on the merits, and to impede competition, its actions are anticompetitive under the Sherman Act" (emphasis in original)); *see also In re Google Digital Advert. Antitrust Litig.* ("*Google I*"), 627 F. Supp. 3d 346, 381 (S.D.N.Y. 2022) ("there is nothing remarkable" in the proposition that "purportedly unlawful schemes were 'more powerful' because of their 'combined effect'"; "[i]n assessing whether conduct is anticompetitive, it is often necessary to examine other market conduct, including practices that are perfectly lawful") (citing *Valassis Commc'ns, Inc. v. News Corp.*, 2019 WL 802093, at *9-10 (S.D.N.Y. Feb. 21, 2019)).[5]

*Second*, Google incorrectly suggests that Judge Brinkema distinguished *Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko LLP*, 540 U.S. 398 (2004) solely on the basis that it concerned a regulated market.  *See* ECF 977 at 3.  But Judge Brinkema found that

---

[5] And contrary to Google's suggestion, Judge Brinkema's citations to *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337 (4th Cir. 2024), did not cause her to depart from the antitrust standards used over decades by the Second Circuit, other courts of appeals, and the Supreme Court.  She relied on a straightforward application of Supreme Court and appellate court decisions, including *Duke Energy*, to assess Google's anticompetitive conduct, *see* EDVA Op. *35, and reject Google's defense that its conduct was "shielded from antitrust liability because [it] involved product design choices," *id.* at *46.

*Trinko* "does not apply" because this case, unlike that one, does not involve conduct appropriately characterized as a refusal to deal with rivals.  *See* EDVA Op. *43 ("*Trinko* does not apply to . . . anticompetitive restraints that a monopolist places on its customers, as opposed to its competitors.").  That is consistent with Supreme Court and Second Circuit precedent.  *See, e.g., Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 463 n.8 (1992); *United States v. Live Nation Ent., Inc.*, 2025 WL 835961, at *2 (S.D.N.Y. Mar. 14, 2025).[6]

*Third*, Google argues that Judge Brinkema's analysis of two-sided-market issues does not comport with Second Circuit precedent requiring "evaluat[ion] [of] both sides of a two-sided transaction platform."  ECF 977 at 3 (quoting *U.S. Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 57 (2d Cir. 2019)).  But Judge Brinkema relied on Supreme Court precedent (which, of course, applies equally in both Circuits) and explicitly "evaluate[d] both sides of the ad exchange market," which was the only market she found to "resemble two-sided transaction platforms." EDVA Op. *26, *33.[7]  Judge Brinkema also noted Google's concession in another federal action—contrary to the opinions of its expert in these cases—that "combining the 'distinct' products in the ad tech ecosystem into one market would be improper."  EDVA Op. *27 (citing Mot. to Dismiss, *In re Google Digital Advertising Antitrust Litig.*, No. 5:20-cv-03556-BLF, 2021 WL 7083558, at *6 (N.D. Cal. Jan. 15, 2021) (Ex. 6)).

*Fourth*, Google argues that the "Virginia court's analysis of tying was governed by the Fourth Circuit's legal standard, which differs from the Second Circuit standard because it does not require a plaintiff to prove anticompetitive effects in the tied market."  ECF 977 at 3.[8]  But

---

[6] Judge Brinkema also distinguished *Trinko* on the facts; "like in *Aspen Skiing* but unlike in *Trinko*, Plaintiffs presented evidence that Google sacrificed 'short-run benefits because it was more interested in reducing competition over the long run by harming its smaller competitors.'"  EDVA Op. *43 (quoting *Trinko*, 540 U.S. at 409).

[7] Google also ignores specific findings distinguishing ad exchanges from the two-sided transaction platforms at issue in *Amex*. EDVA Op. *27 & n.24.

[8] Google's argument is premised on linguistics, not substance.  The Fourth Circuit articulates one of the elements of the tying test as having one part, and the Second Circuit articulates the same element as having two parts.  *Compare*

as this Court has recognized, "[i]f monopoly power (or sufficient market power) is alleged and proven, the tying arrangement may be unlawful *per se* without the need to prove anticompetitive effects or other market conditions." *Google I,* 627 F. Supp. 2d at 368 (citing *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 15 (1984)). In any event, Judge Brinkema *did* find anticompetitive effects in the tied product market (publisher ad servers). *See* EDVA Op. \*31 ("many once-large rival ad servers have either left the ad serving business entirely (*e.g.*, OpenX), or sought to compete in channels other than open-web display advertising"); *id.* ("Google degraded some DFP features, such as by removing publishers' ability to set a higher price floor on AdX as part of its Unified Pricing Rules update, despite negative publisher feedback.").

## B.    The issues for which preclusion is sought were actually litigated and decided in the EDVA action.

Each of the issues for which preclusion is sought was actually litigated and decided in the EDVA action and is analyzed in detail in Judge Brinkema's 115-page opinion. Each of those issues was the subject of a multi-week trial and discussed in the parties' extensive briefing. EDVA Op. \*1-2. There is no ambiguity about which issues were litigated and decided in the EDVA action. Google tendered a check to moot the DOJ's damages claim and successfully moved to strike its jury demand, thereby choosing to try the EDVA action as a bench trial, rather than as a jury trial. *See* EDVA Op. \*2. As a result, Judge Brinkema was required to, in writing, "find the facts specially and state [her] conclusions of law separately." Fed. R. Civ. P. 52(a)(1).

---

*Serv. & Training, Inc. v. Data Gen. Corp.*, 963 F.2d 680, 683 (4th Cir. 1992) ("(3) the seller's possession of sufficient economic power in the tying product market *to restrain competition in the tied product market*"), *with Kaufman v. Time Warner*, 836 F.3d 137, 141 (2d Cir. 2016) ("(iii) the seller has sufficient economic power in the tying product market to coerce purchasers into buying the tied product; (iv) the tie-in *has anticompetitive effects in the tied market*"). The EDVA court explicitly found that "the tying of DFP to AdX has had a substantial anticompetitive effect in the publisher ad server market for open-web display advertising." EDVA Op. \*41. That satisfies both the Second Circuit's and the Fourth Circuit's formulation of that element.

### C.   Google had a full and fair opportunity to litigate the issues on which preclusion is sought.

The "burden of showing that the prior action did not afford a full and fair opportunity to litigate the issues rests with the party opposing the application of issue preclusion."  *Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013).  Google cannot meet that burden.  Google contested these issues in the EDVA action, which involved extensive coordinated discovery, Google's motion for summary judgment, a three-week trial, EDVA Op. *1-2, hundreds of pages of post-trial briefing, and a full day of closing argument, EDVA ECF 1375, 1381, 1389 (Exs. 6, 7, 8).

Google's full participation in those proceedings satisfies this element of the preclusion test.  *See, e.g.*, *Parklane*, 439 U.S. at 324-25, 336-37 (finding issue preclusion based on four-day bench trial resulting in declaratory judgment); *Discover Fin. Servs. v. Visa U.S.A. Inc.*, 598 F. Supp. 2d 394, 401 (S.D.N.Y. 2008) (issue preclusion on antitrust liability elements applied following bench trial that resulted in detailed findings of fact); *Namenda*, 2017 WL 4358244, at *14 (issue preclusion on antitrust liability elements following five-day preliminary injunction hearing that resulted in detailed findings of fact, affirmed by Second Circuit).

### D.   The issues for which preclusion is sought were necessary to the EDVA decision.

Judge Brinkema's findings of facts and conclusions of law, which she identified as satisfying the elements of the monopolization and tying claims under Section 1 and Section 2 of the Sherman Act, were necessary to her entry of judgment on those claims.

***Sherman Act Section 2***.  "The offense of monopolization has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident."  EDVA Op. *18 (quoting *Eastman Kodak*, 504 U.S. at 481; *accord Google I*, 627 F. Supp. 3d at 378.  To hold Google liable for

10

monopolizing the markets for publisher ad servers and ad exchanges, Judge Brinkema

necessarily had to find and did in fact find that: (i) there are relevant markets for publisher ad

servers and ad exchanges (EDVA Op. *19-23); (ii) Google possesses monopoly power in those

markets (EDVA Op. *30-35); (iii) Google's acquisition or maintenance of monopoly power was

the result of anticompetitive conduct (EDVA Op. *41-42, 47); and (iv) Google's purported

justifications were invalid or outweighed by anticompetitive effects (EDVA Op. *44-46).

     ***Sherman Act Section 1***. "To prove a tying claim, a plaintiff must establish four elements:

(1) the existence of two separate products, (2) an agreement conditioning purchase of the tying

product upon purchase of the tied product (or at least upon an agreement not to purchase the tied

product from another party), (3) the seller's possession of sufficient economic power in the tying

product market to restrain competition in the tied product market, and (4) a not insubstantial

impact on interstate commerce."  EDVA Op. *38; *accord Google I*, 627 F. Supp. 3d at 367.

     To conclude that Google violated Section 1, the court necessarily had to find, and did in

fact find: (i) "publisher ad servers and ad exchanges are 'two separate products'" (EDVA Op.

*38); (ii) Google "conditioned purchase of the tying product AdX upon purchase of the tied

product DFP" (EDVA Op. *39); (iii) Google "possessed sufficient economic power in the tying

product market to restrain competition in the tied product market" (EDVA Op. *40); (iv)

Google's "tying of AdX and DFP has had a 'not insubstantial impact on interstate commerce'"

(EDVA Op. *40); and (v) "the tying of DFP to AdX has had a substantial anticompetitive effect

in the publisher ad server market for open-web display advertising" (EDVA Op. *41).

     The EDVA court's Section 2 liability finding rested on its holdings that Google's conduct

was anticompetitive and enabled Google to obtain and maintain its monopoly power.  Elements

of anticompetitive conduct analyzed by the EDVA court included the AdX-DFP tie, policies

11

related to that tie (including the restriction of AdWords demand to AdX), Dynamic Allocation ("First Look" and "Last Look"), sell-side dynamic revenue share, and Unified Pricing Rules. *See* EDVA Op. *38-42. The EDVA court made findings that each of those elements of conduct was anticompetitive, *see id.*, both separately and when considered as part of the broader course of conduct by Google, *see id.* *35, and lacked any procompetitive justification that outweighed its anticompetitive effects, *see id.* *44-47.

The "general rule in the Second Circuit with respect to whether alternative, independently sufficient grounds are necessary to a judgment for collateral estoppel purposes is that if a court decides a case on two grounds, each is a good estoppel." *Akhenaten v. Najee, LLC*, 544 F. Supp. 2d 320, 332 (S.D.N.Y. 2008) (quoting *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 45 (2d Cir. 1986)). Thus, each piece of challenged conduct provides independent support for the EDVA court's finding of liability on the Section 2 claim, and each of the EDVA court's findings on the anticompetitive effects of piece that conduct should be considered "necessary" to the decision.

### E.    The EDVA opinion is final for purposes of collateral estoppel.

"The Court of Appeals for the Second Circuit takes a broad view of the application of collateral estoppel to rulings made at an interim stage of litigation." *Rocky Aspen Mgmt. 204 LLC v. Hanford Holdings LLC*, 2019 WL 3940218, at *4 (S.D.N.Y. July 29, 2019). Within "the Second Circuit, finality for the purposes of issue preclusion 'may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.'" *Id.* (quoting *Lummus Co. v. Commonwealth Oil Ref. Co.*, 297 F.2d 80, 89 (2d Cir. 1961)). Whether a ruling is sufficiently "final" for preclusion purposes turns on "such factors as the nature of the decision (*i.e.*, that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review." *Lummus*, 297 F.2d at 89.

The first two *Lummus* factors are readily met. The EDVA opinion is not tentative and the

extensive three-week trial satisfies the adequacy test. That is so even though the EDVA court has yet to decide a final remedy for Google's Sherman Act violations. The equitable remedy the Virginia court imposes will not alter Judge Brinkema's underlying findings in her detailed liability opinion. *Cf. Metromedia Co. v. Fugazy*, 983 F.2d 350, 366 (2d Cir. 1992).

The third *Lummus* factor is also satisfied, as the "opportunity for review" element does not require the exhaustion of appellate remedies. An "inability to obtain appellate review" that militates against preclusion "refers, not to cases that are temporarily unreviewable because proceedings are ongoing, but rather to decisions that are, by law, unreviewable by their very nature." *Ferring B.V. v. Serenity Pharms., LLC*, 391 F. Supp. 3d 265, 285 (S.D.N.Y. 2019). Indeed, "numerous Second Circuit cases . . . have reaffirmed *Lummus*'s fundamental holding that an interlocutory decision can be given preclusive effect." *Id.* at 286 (collecting cases).

The EDVA opinion is not "unreviewable by [its] very nature." Indeed, Google has stated that it plans to appeal. *E.g.,* ECF 949 at 1. The pendency of an appeal of the EDVA opinion does not affect its finality for purposes of issue preclusion. *See Ferring*, 391 F. Supp. 3d at 286 (McMahon, C.J.) ("a judgment should be given collateral estoppel effect where it is 'firm and stable," *i.e.*, the "last word" of the rendering court on a particular issue, even if it is not yet appealable") (quoting Restatement (Second) of Judgments § 13, cmt. a); *SEC v. Namer*, 2004 WL 2199471, at *8 (S.D.N.Y. Sept. 30, 2004) (Castel, J.) (collecting cases); *Russell-Newman, Inc. v. Robeworks, Inc.*, 2002 WL 1918325, at *1 n.1 (S.D.N.Y. Aug. 19, 2002) ("The law is clear that ordinarily the pendency of an appeal should not impact the collateral estoppel effect of an otherwise final and valid judgment."); *Rocky Aspen Mgmt.*, 2019 WL 3940218, at *4 (same).

If the EDVA opinion is reversed or modified in whole or in part, Google may seek to amend any issue preclusion order under Rule 60(b*). See Sherman v. Jacobson*, 247 F. Supp. 261,

270 (S.D.N.Y. 1965) ("Should the Iowa decision ultimately be reversed, defendant will not be

without remedy, Fed. R. Civ. P. 60(b), even if an appeal is pending in this circuit or has already

resulted in affirmance.").  Numerous other cases also apply issue preclusion to decisions being

appealed.  *E.g., Russell-Newman*, 2002 WL 1918325, at *4 & n.1; *63rd St. Realty II LLC v.

*Philadelphia Indem. Ins. Co.*, 2024 WL 3966097, at *1-2 (E.D.N.Y. Aug. 28, 2024).

## II.    It is fair and efficient to apply issue preclusion here.

Fairness and efficiency considerations strongly favor applying collateral estoppel in this

action.  Google has had a full and fair opportunity to litigate these issues.  Allowing Google to

relitigate the issues Judge Brinkema already decided would waste party and judicial resources

and risk inconsistent outcomes.  *See Montana*, 440 U.S. at 153-54 (collateral estoppel "protects .

. . adversaries from . . . expense and vexation" and "fosters reliance on judicial action by

minimizing the possibility of inconsistent decisions"); *Discover*, 598 F. Supp. 2d at 398 (same)

(quoting *Montana*, 440 U.S. at 153-54); *GAF Corp.*, 519 F. Supp. at 1218 ("Application of

collateral estoppel to the [Section] 2 issues of relevant market definition and monopoly power

and the [Section] 1 issues . . . will promote the public interest by preventing needless and

repetitious litigation and by conserving the resources of the Court and the parties.").

In *Parklane*, defendants in an action brought by private plaintiffs were barred from re-

litigating issues decided in an action initiated by the SEC.  439 U.S. at 324-25, 336-37.  After

*Parklane*, courts have applied collateral estoppel in private antitrust actions following a

government action.  *See Discover*, 598 F. Supp. 2d at 401; *Namenda*, 2017 WL 4358244, at *13-

16; *Univac Dental Co. v. Dentsply Int'l, Inc.*, 702 F. Supp. 2d 465, 491-98 (M.D. Pa. 2010).

In *Discover*, a non-governmental plaintiff which asserted claims under Sections 1 and 2

of the Sherman Act against Visa and Mastercard moved for partial summary judgment, invoking

collateral estoppel based on findings entered against the defendants in a prior antitrust action by

the United States. 598 F. Supp. 2d at 396-97. The court applied collateral estoppel on several key issues, including the definition of the relevant markets, the existence of market power, and the illegality of certain restrictive bylaws. *Id.* at 401.

And in *Namenda*, the plaintiffs moved for summary judgment, invoking collateral estoppel based on the factual findings supporting a preliminary injunction obtained by the State of New York that was subsequently affirmed by the Second Circuit. 2017 WL 4358244, at *1-2. The court applied collateral estoppel on the issue of market power, anticompetitive effects and the pharmaceutical company's purported procompetitive justifications. *Id.* at *16.

### A. Applying collateral estoppel here is fair.

None of the four circumstances that *Parklane* identified as potentially rendering the application of collateral estoppel unfair is present here. *See* 439 U.S. at 331-32.

**1. *Plaintiffs could not "easily have joined" the EDVA action*.** *Parklane*, 439 U.S. at 331. "A private party generally will not be permitted to intervene in Government antitrust litigation absent some strong showing that the Government is not vigorously and faithfully representing the public interest." *United States v. Hartford-Empire Co.*, 573 F.2d 1, 2 (6th Cir. 1978); *see CFTC v. Efrosman*, 2012 WL 2510338, at *4 (S.D.N.Y. June 26, 2012) ("Courts are reluctant to allow private parties to intervene in government enforcement actions.") (collecting cases); 7C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1909 (3d ed.) ("in the absence of a very compelling showing to the contrary, it will be assumed that the United States adequately represents the public interest in antitrust suits").

**2. *Google had every "incentive to defend vigorously" the DOJ action.*** *Parklane*, 439 U.S. at 331. Google retained experienced antitrust counsel and engaged in pre-trial and trial activities in the EDVA action, reflecting Google's understanding that DOJ could obtain injunctive and other structural relief that would significantly alter Google's ad tech business

15

operations and expose Google to significant damages claims from private plaintiffs in these actions. *See supra* at 1-2. As in *GAF Corp.*, where the second action was pending at the time the first was tried, Google had "full knowledge that the day would come when [the MDL Plaintiffs] sought to use the [EDVA] findings to [their] advantage." 519 F. Supp. at 1217-18; *see* May 16, 2023, Hr'g Tr. at 29:8-10 (Ex. 9) (The Court: "you're all going to be fighting over collateral estoppel if the plaintiffs [in EDVA] win").

**3. *There are no "inconsistent . . . previous judgments in favor of the defendant*.**" *Parklane*, 439 U.S. at 330. The only liability ruling is the one issued by the EDVA court. The conduct and claims on which Judge Brinkema found Google liable are the same conduct and claims that have already survived Google's motions to dismiss in this Court. Indeed, permitting Google to relitigate the issues already decided in the EDVA action is what would raise the possibility of inconsistent findings and judgments. The upcoming trial in the Eastern District of Texas does not tilt the scales; mere speculation that another court could reach a different conclusion based on the same factual record falls far short of the "inconsistent . . . previous judgment" needed to render collateral estoppel unfair. [9]

**4. *There are "no procedural opportunities available to the petitioners that were unavailable in the [EDVA] action . . . likely to cause a different result*.**" *Id.* at 332. Google can still contest issues that it has not already litigated and lost. Nor does the possibility that the MDL actions will be tried before juries affect the collateral estoppel analysis. In short, the "slim possibility that the jury could reach a different conclusion is insufficient justification for

---

[9] Further, much of the monetary relief sought by the state plaintiffs consists of civil penalties for deceptive trade practices, not antitrust injuries, creating different incentives. *See* Google LLC's Mot. for Summary Judgment on Plaintiffs' DTPA Claims at 1, *State of Texas v. Google LLC*, No. 4:20-cv-957-SDJ (E.D. Tex. Dec. 9, 2024), ECF 695-1 (Ex. 10) ("the Attorneys General of 17 states demand more than $120 billion in penalties from Defendant Google based on alleged violations of 17 different deceptive trade practices laws").

relitigating issues vigorously and fully contested." *GAF Corp.*, 519 F. Supp. at 1214.

All told, fairness strongly supports preclusion. When it sought to transfer the government's case to this Court to avoid "the risk of inconsistent judgments," Google knew the EDVA action could have issue-preclusive effects in this and other pending actions in the MDL. EDVA ECF 44-2 at 12. Moreover, in denying transfer, Judge Brinkema cited the presumption in the Clayton Act that judgments in government antitrust cases would lead to estoppel in subsequent private cases as a safeguard to "minimize" that risk. *United States v. Google LLC*, 661 F. Supp. 3d at 493 (citing 15 U.S.C. § 16(a)). Google subsequently litigated all pending actions against it in a coordinated manner, cross-producing much of the same discovery record in each action, and relying on the same experts, fact witnesses, arguments, and defenses. Issue preclusion was foreseen by Google, and it is fair to apply it now.

**B.    Applying collateral estoppel here is efficient.**

Applying collateral estoppel would substantially narrow the triable issues. Like the defendants in *Discover,* Google "ha[s] demonstrated clearly by their unwillingness to accept even the most basic underpinnings of th[e] [c]ourt's decision in the DOJ action, that precluding them from relitigating those core determinations would conserve judicial resources, despite the fact that there may be substantial overlap in the evidence to support the damages model[s] and liability." *Discover,* 598 F. Supp. 2d at 400. Collateral estoppel overcomes that intransigence. In addition to narrowing the issues in dispute, granting this motion is consistent with the Congressional intent to allow private plaintiffs to benefit from successful government suits through collateral estoppel. *See* Clayton Act § 5(a), 15 U.S.C. § 16(a) ("Nothing contained in this section shall be construed to impose any limitation on the application of collateral estoppel."); *GAF Corp.*, 519 F. Supp. at 1216.

In its pre-motion letters, Google asserted that applying collateral estoppel would be

inefficient because it plans to appeal to the Fourth Circuit in the EDVA action. *See* ECF 977 at 5-6. But without collateral estoppel, the parties in this action would need to relitigate broad areas of evidence related to liability issues on which Google has already lost. Applying collateral estoppel is the only path to avoid potentially duplicative litigation. Indeed, experience teaches that, "[d]espite the manifest risks of resting preclusion on a judgment that is being appealed, the alternative of retrying the common claims, defenses, or issues is even worse." 18A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 4433 (3d ed.).

In its pre-motion letters, Google cited *In re American Express Anti-Steering Rules Antitrust Litigation*, 2016 WL 748089 (E.D.N.Y. Jan. 7, 2016), to suggest that the pendency of an appeal renders collateral estoppel inappropriate. ECF 977 at 5. But Judge Garaufis' reasoning in the *American Express* litigation rested explicitly on the "posture of the Government Decision" in that case. *In re Am. Express*, 2016 WL 748089, at *6. There—after a motions panel had initially rejected a stay—a Second Circuit merits panel had "entered on its own motion a temporary stay of the Permanent Injunction and a temporary stay of the Government Action" and heard oral argument, and a decision in the action was pending when the district court was considering collateral estoppel motions. *Id.* at *3-6. Consequently, the court deferred a decision on collateral estoppel until disposition of the appeal, permitting the plaintiffs "to renew the application following the Second Circuit's decision in the Government Action." *Id*. at *6.

Here, the EDVA Court has issued a well-reasoned opinion with extensive factual findings based on trial evidence holding Google liable for anticompetitive conduct in multiple markets, grounded on stable, well-established antitrust theories and taking full account of Google's attempts to reframe the case in different doctrinal terms. *See, e.g.*, EDVA Op. * 25-28 (rejecting Google's contention that there is a single two-sided market for all display advertising, which

ignored product markets that Google itself recognizes); *id.* *42-44 (rejecting Google's contention that its conduct can be characterized as refusal to deal with its rivals); *see supra* § I.A (describing how the EDVA court's analysis rested on stable, decades-old precedent). Although Google argues that there were "multiple errors of law and unsupported factual findings" in the EDVA opinion, ECF 977 at 4 n.4, Google does not identify any with specificity, let alone "significant set of antitrust issues" of the magnitude and novelty presented in *American Express*. 2016 WL 748089, at *6. Nor are the procedural circumstances that informed the analysis in *American Express—i.e.*, an already-briefed and argued Second Circuit appeal with a *sua sponte* stay—present here. By contrast, denying collateral estoppel would ensure that Google could prolong this litigation, unduly burdening the Court and the Plaintiffs.

## III. Collateral estoppel and summary judgment may be granted on parts of claims.

Rule 56 was modified in 2010 to expressly permit summary judgment on "parts" of claim or defenses, Fed. R. Civ. P. 56(a), and entry of "an order stating any material fact - including an item of damages or other relief - that is not genuinely in dispute and treating the fact as established in the case," Fed. R. Civ. P. 56(g). As a practical matter—whether labeled collateral estoppel or partial summary judgment under Rule 56(a) or Rule 56(g)—there is no question the Court may prevent a defendant from relitigating key facts and elements of antitrust liability, and certain defenses such as procompetitive justifications.

In *Discover*, Judge Jones gave collateral estoppel effect to findings regarding key elements of Discover's Section 1 claim against Visa and MasterCard: (1) establishing the relevant product markets; (2) finding that the defendants had market power in the relevant markets; (3) finding that exclusionary restraints were unlawful; (4) finding that the restraints caused harm to competition in the relevant markets by, *inter alia*, limiting output by competitors, restricting competitors' competitive strength, foreclosing competitors from competing to provide

certain products, and depriving consumers of competitive choice; and (5) finding the restraints lacked procompetitive justifications. *See Discover*, 598 F. Supp. 2d at 401.

Similarly, former Chief Judge McMahon in *Namenda* declined to grant partial summary judgment as to liability on the plaintiffs' Section 2 claim because they were still required to prove antitrust injury, but gave collateral estoppel effect to prior determinations regarding critical elements of that claim, including that the defendant "possessed monopoly power over the U.S. . . . market", which was the relevant product market; that the challenged conduct "was coercive and anticompetitive"; and that the defendant lacked "any non-pretextual procompetitive justification for its illegal conduct." *Namenda*, 2017 WL 4358244, at *16.

Even if the Court concludes that partial summary judgment is not warranted as to particular elements of certain claims, it nevertheless "may enter an order stating any material fact" necessarily decided by the EDVA Court as "not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g). This approach protects against inconsistent judgments and factual findings and serves judicial economy by preventing re-litigation of issues already conclusively decided by the EDVA Court. Partial summary judgment also would streamline the issues for subsequent summary judgment proceedings.

## CONCLUSION

For the foregoing reasons and those set forth in the individual briefs of each Plaintiff group, the Court should preclude Google from relitigating certain issues under the doctrine of collateral estoppel and grant partial summary judgment in favor of Plaintiffs. In the alternative, if the Court concludes that partial summary judgment is not warranted as to some issues, the Court also "may enter an order stating any material fact" decided by the EDVA Court "that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g).

Dated: June 20, 2025

/s/ *Dena C. Sharp*
Dena C. Sharp (*pro hac vice*)
Scott Grzenczyk (*pro hac vice*)
Mikaela Bock (*pro hac vice*)
Isabela Velez (*pro hac vice*)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dsharp@girardsharp.com
scottg@girardsharp.com
mbock@girardsharp.com
ivelez@girardsharp.com

/s/ *Tina Wolfson*
Tina Wolfson (TW-1016)
Theodore W. Maya (*pro hac vice*)
Bradley K. King (BK-1971)
**AHDOOT & WOLFSON, PC**
2600 West Olive Ave., Suite 500
Burbank, California 91505
Tel.: (310) 474-9111
Fax: (310) 474-8585
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com
bking@ahdootwolfson.com

*Interim Co-Lead Counsel for Advertiser*
*Plaintiffs and the Proposed Advertiser Class*

Respectfully submitted,

David Boies
dboies@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200

*Lead Counsel for the Publisher Class*

/s/ *Philip C. Korologos*
Philip C. Korologos
pkorologos@bsfllp.com
Robert J. Dwyer
rdwyer@bsfllp.com
James Keyte
jkeyte@bsfllp.com
Luke Williams
lwilliams@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300

Mark C. Mao
mmao@bsfllp.com
Sean P. Rodriguez
srodriguez@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6820

Sabria A. McElroy
smcelroy@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 377-4216

/s/ John Thorne
John Thorne
Daniel G. Bird
Bethan R. Jones
Christopher C. Goodnow
Mark P. Hirschboeck
Eliana Margo Pfeffer
Eric J. Maier
Sven E. Henningson
**KELLOGG, HANSEN, TODD, FIGEL
& FREDERICK, P.L.L.C.**
1615 M Street NW
Suite 400
Washington, DC 20036
Tel.: (202) 326-7900
Fax: (202) 326-7999
jthorne@kellogghansen.com
dbird@kellogghansen.com
bjones@kellogghansen.com
cgoodnow@kellogghansen.com
mhirschboeck@kellogghansen.com
epfeffer@kellogghansen.com
emaier@kellogghansen.com
shenningson@kellogghansen.com

*Counsel for Associated Newspapers, Ltd., Mail
Media, Inc., and Gannett Co., Inc.*

/s/ Serina M. Vash
Serina M. Vash
**HERMAN JONES LLP**
153 Central Avenue, # 131
Westfield, NJ 07090
(404) 504-6516
svash@hermanjones.com

John C. Herman
**HERMAN JONES LLP**
3424 Peachtree Road, N.E., Suite 1650
Atlanta, GA 30326
(404) 504-6555
(404) 504-6501 (fax)
jherman@hermanjones.com

*Counsel for Plaintiff Inform Inc.*

Izaak Earnhardt
iearnhardt@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave NW, 11th Floor
Washington, DC 2005
Telephone: (202) 237-2727

George A. Zelcs
gzelcs@koreintillery.com
Randall P. Ewing
rewing@koreintillery.com
Marc A. Wallenstein
mwallenstein@koreintillery.com
Ryan A. Cortazar
rcortazar@koreintillery.com
**KOREIN TILLERY LLC**
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Fax: (312) 641-9751

Stephen M. Tillery
stillery@koreintillery.com
Michael E. Klenov
mklenov@koreintillery.com
Carol L. O'Keefe
cokeefe@koreintillery.com
Andrew M. Ellis
aellis@koreintillery.com
Ian Moody
imoody@koreintillery.com
**KOREIN TILLERY LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Fax: (314) 241-3525

Eric L. Cramer
ecramer@bm.net
Michael C. Dell'Angelo
mdellangelo@bm.net
Caitlin G. Coslett
ccoslett@bm.net

22

Patrick F. Madden
pmadden@bm.net
Jeremy Gradwohl
jgradwohl@bm.net
**BERGER MONTAGUE PC**
1818 Market St., Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000

Robert E. Litan
rlitan@bm.net
**BERGER MONTAGUE PC**
1001 G Street, NW
Suite 400 East
Washington, DC 20001
Telephone: (202) 559-9740

*Interim Co-Lead Counsel for the Publisher
Class*