**CLARICK GUERON REISBAUM**

Isaac B. Zaur
izaur@cgr-law.com
Direct: 212.633.4314

<u>Via ECF</u>

June 20, 2025

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

[Handwritten annotation: "Letter Motion ECF 1036 should be terminated"]

[Handwritten annotation: "The redacted portions of the Haider Report may provisionally remain under seal. SO ORDERED" — signed PKC USDJ 6-24-25]

Re: *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC)

Dear Judge Castel,

We represent non-party PubMatic, Inc. We write to request the continued sealing of three passages in the Expert Report of Dr. Laila Haider (ECF No. 1033-1) ("Haider Report") that contain express references to PubMatic's highly confidential pricing information. The Haider Report was filed with these passages (among others) provisionally sealed on Monday, June 16. Hence, this request is timely under the Modified Confidentiality Order in this Action (ECF 685), and Rule 6 of the Court's Individual Practices.

*Factual Background*

PubMatic participates in the digital advertising market in a variety of ways, principally by operating a supply-side platform. As such, PubMatic both competes with Google and relies on Google as a counter-party and business partner. PubMatic is not a party to any litigation—with Google or otherwise—concerning alleged monopolization in the digital advertising market. PubMatic has, however, received and complied with multiple subpoenas and a civil investigative demand in this and other related proceedings.

PubMatic has always taken care to ensure the maximum possible confidentiality protection in this context, because much of the material it has produced is of the greatest competitive sensitivity. Most sensitive of all are "take rates," which measure the share of a publisher's revenue that a supply-side platform "takes" in exchange for its services. This price information is among the most highly confidential and carefully protected pieces of information in the digital advertising market. PubMatic does not disclose its take rates, which are specifically negotiated and agreed with individual publisher partners. Disclosure of PubMatic's take rates to its competitors would cause acute competitive harm by allowing those competitors access to profoundly asymmetrical information on PubMatic's pricing.

Hon. P. Kevin Castel
June 20, 2025
Page 2 of 3

**_Limited Redaction Request_**

This submission concerns three passages in the Haider Report that cite or otherwise refer to highly confidential PubMatic data. Specifically, PubMatic requests that the Court maintain the sealed status of the following items in the Haider Report:

(i) the sentence in Page 114 n. 297 of the Haider Report that contains reference to PubMatic and its average revenue share[1];

(ii) the sentence at ¶ 210 of the Haider Report that contains reference to PubMatic and its average revenue share; and

(iii) the last three sentences in Page 135 n. 364 of the Haider Report, which refer to and describe PubMatic and its competitively sensitive information, including PubMatic's market share relative to other exchanges.

*[handwritten annotation: "provisionally OK"]*

**_Legal Standard_**

Under both common law and the First Amendment, the public has a "general right to inspect and copy . . . judicial records," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), and courts in this Circuit recognize this "general presumption in favor of public access to judicial documents," *Collado v. City of N.Y.*, 193 F. Supp. 3d 286, 288 (S.D.N.Y. 2016). This presumption, however, may be overcome. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006). To overcome the common law presumption of public access, a party seeking to prevent disclosure must identify countervailing interests, such as "the privacy interests of those resisting disclosure," *McKoy v. Trump Corp.*, No. 18-cv-9936, 2024 WL 3290160, at *1 (S.D.N.Y. July 2, 2024) (citation omitted), or the confidentiality of "trade secrets and sources of business information that might harm the [party]'s competitive standing," *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 154-55 (S.D.N.Y. 2015). Similarly, to overcome the First Amendment right to access, a party must demonstrate that sealing is "essential to preserve higher values" and that the request "is narrowly tailored to serve that interest." *Lugosch*, 435 F.3d at 120. Among the "higher values" that courts have recognized is protecting "the confidentiality of sensitive commercial information." *Kewazinga Corp. v. Google, LLC*, No. 20-cv-1106, 2024 WL 3442428, at *1 (S.D.N.Y. July 17, 2024); *see also Red Hawk, LLC v. Colorforms Brand LLC*, No. 20-cv-9032, 2024 WL 551543, at *2 (S.D.N.Y. Feb. 9, 2024) (recognizing that "courts commonly find that documents containing trade secrets, confidential research and development information, marketing plans, revenue information, pricing information, and the like reflect important privacy interests that satisfy the sealing standard") (citation omitted); *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (recognizing as a "higher value" a need to protect "specific business information and strategies, which, if revealed, may provide valuable insights into a company's current business practices that a competitor would seek to exploit") (citation omitted).

---

[1] "Revenue share" is often used synonymously with "take rate."

Hon. P. Kevin Castel
June 20, 2025
Page 3 of 3

*Analysis*

    The three passages of the Haider Report for which PubMatic requests continued sealing refer explicitly to PubMatic's competitively sensitive information, including its take rates. PubMatic's privacy interests outweigh the presumption of access with respect to this information, as allowing PubMatic's competitors access to this information would put PubMatic at a severe competitive disadvantage. Courts routinely shield from disclosure similarly sensitive commercial information. *See, e.g., In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 81 n.1 (S.D.N.Y. 2017) (concluding that "internal pricing strategies and competitive pricing data [are] sufficiently sensitive to warrant redaction"); *Oliver Wyman, Inc. v. Eielson*, 282 F. Supp. 3d 684, 707 (S.D.N.Y. 2017) (recognizing that disclosure of cost structure and billing rates "could place [defendant] at a competitive disadvantage by allowing competitors to undercut [defendant's] bids and capture a larger market share"); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-mc-2542, 2014 WL 12772236, at *2-3 (S.D.N.Y. Nov. 5, 2014) (granting redactions because presumption of public access was outweighed by plaintiff's "interest as a privately held business in safeguarding [financial] information from competitors who may wish to exploit it").

    Shielding these passages from public disclosure is especially appropriate here in light of PubMatic's status as a non-party. Courts in this Circuit have held that a non-party's interest in keeping its competitively sensitive information private outweighs the common law and First Amendment rights of access. *See, e.g., In re Digital Music Antitrust Litig.*, 321 F.R.D. at 81 n.1 (finding "the privacy interests of the affected non-parties are sufficient to overcome" the presumption in favor of public access).

    Moreover, PubMatic's request is narrowly tailored to the specific portions of the Haider Report that expressly reference PubMatic's take rate and revenue share information. *See Lugosch*, 435 F.3d at 119. PubMatic does not seek redaction of references to generalized descriptions of the market's structure, or to certain financial information that has been made public in other venues or that is of limited competitive sensitivity (such as aggregate historical revenue or profit).

*Conclusion*

    For the foregoing reasons, PubMatic requests that the Court maintain under seal the portions of the Haider Report specified herein.

Respectfully submitted,

/s/Isaac B. Zaur

Isaac B. Zaur