**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE: GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION** | **No. 1:21-md-3010 (PKC)** |

*This Document Relates To:*

| | |
|---|---|
| **IN RE: GOOGLE DIGITAL PUBLISHER ANTITRUST LITIGATION** | **No. 1:21-cv-07034 (PKC)** |

**DEFENDANTS GOOGLE LLC, ALPHABET INC., AND**
**YOUTUBE, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO**
**PUBLISHERS' MOTION FOR LEAVE TO AMEND COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

ARGUMENT .......................................................................................................................6

    I. PUBLISHERS' MOTION TO AMEND SHOULD BE DENIED........................................6

        A. Publishers Cannot Show Good Cause Under Rule 16 ....................................................6

        B. Publishers Are Not Entitled to Amend Their Complaint Under Rule 15........................7

            1. Publishers Have Unduly Delayed in Seeking to Amend Their Complaint................8

            2. Publishers' Amendment Would Prejudice Google .................................................10

            3. Amendment Would Be Futile ................................................................................18

    II. REGARDLESS OF WHETHER AMENDMENT IS ALLOWED, PUBLISHERS'
    MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED ....................................20

        A. Publishers' Proposed Amendments Will Not Address Most of Google's Arguments
        Against Collateral Estoppel ..............................................................................................20

        B. Publishers' Proposed Amendments Would Not Entitle Them To Collateral Estoppel on
        Monopoly Power...............................................................................................................21

        C. The Court Should Decline to Exercise Its Discretion to Apply Collateral Estoppel ....24

CONCLUSION....................................................................................................................25

# TABLE OF AUTHORITIES

## Cases

*B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*,
     909 F. Supp. 162 (S.D.N.Y. 1995).................................................................................... 19

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
     2013 WL 6484727 (S.D.N.Y. Dec. 9, 2013)........................................................................ 8

*Boyer v. Channel 13 Inc.*,
     2005 WL 2249782 (S.D.N.Y. Mar. 9, 2005)...................................................................... 23

*Cent. Air Freight, Inc. v. Am. Airlines, Inc.*,
     597 F. Supp. 564 (S.D.N.Y. 1984), *aff'd*, 738 F.2d 418 (2d Cir. 1984) ........................... 12

*City of New York v. Group Health*,
     2010 WL 2132246 (S.D.N.Y. 2010), *aff'd sub nom. City of New York v. Group Health
     Inc.*, 649 F.3d 151 (2d Cir. 2011)................................................................................. 12, 13

*Concord Assocs., L.P. v. Ent. Props. Tr.*,
     817 F.3d 46 (2d Cir. 2016).................................................................................. 12, 18, 19

*Conte v. Justice,*
     996 F.2d 1398 (2d Cir. 1993) ............................................................................................ 24

*Cresswell v. Sullivan & Cromwell*,
     922 F.2d 60 (2d Cir. 1990) .................................................................................................. 8

*Davidowitz v. Patridge*,
     2010 WL 1779279 (S.D.N.Y. Apr. 23, 2010) ............................................................. 10, 11

*DeWitt Stern Grp., Inc. v. Eisenberg*,
     14 F. Supp. 3d 480 (S.D.N.Y. 2014).................................................................................... 7

*Evans v. Syracuse City Sch. Dist.*,
     704 F.2d 44 (2d Cir. 1983)................................................................................................. 11

*Faulkner v. Nat'l Geographic Enters. Inc.*,
     409 F.3d 26 (2d Cir. 2005)................................................................................................. 16

*Grant v. Citibank (S.D.), N.A.*,
     2010 WL 5187754 (S.D.N.Y. Dec. 6, 2010)........................................................................ 8

*Grochowski v. Phoenix Constr.*,
     318 F.3d 80 (2d. Cir. 2003) ................................................................................................. 7

*Hayes v. New England Millwork Distributors, Inc.*,

602 F.2d 15 (1st Cir. 1979) ................................................................................................. 9

*Heerwagen v. Clear Channel Commc'ns*,
435 F.3d 219 (2d Cir. 2006) ................................................................... 13, 19, 22

*In re GPC Biotech AG Sec. Litig.*,
2009 WL 5125130 (S.D.N.Y. Dec. 29, 2009) .............................................. 9, 10

*In re: Tether & Bitfinex Crypto Assert Litig.*,
2024 WL 3520363 (S.D.N.Y. July 24, 2024) ..................................................... 10

*In re: Am. Express Anti–Steering Rules Antitrust Litig.*,
2016 WL 748089 (E.D.N.Y. Jan. 7, 2016) ........................................................ 25

*Krumme v. WestPoint Stevens, Inc.*,
143 F.3d 71 (2d Cir. 1998) .............................................................................. 9, 11

*Lucente v. Int'l Bus. Machs. Corp.*,
310 F.3d 243 (2d Cir. 2002) ............................................................................... 18

*Mackey v. Mendoza-Martinez*,
362 U.S. 384 (1960) .................................................................................... 17, 18

*Mangahas v. Eight Oranges Inc.*,
2023 WL 3170404 (S.D.N.Y. May 1, 2023) ........................................................ 7

*Marsh v. Sheriff of Cayuga Cty.*,
36 F. App'x 10 (2d Cir. 2002) ............................................................................ 11

*Mathias v. Daily News, L.P.*,
152 F. Supp. 2d 465 (S.D.N.Y. 2001) .......................................................... 12, 19

*Maxon Hyundai Mazda v. Carfax, Inc.*,
726 F. App'x 66 (2d Cir. 2018) .......................................................................... 24

*McCagg v. Marquis Jet Partners*,
2007 WL 2454192 (S.D.N.Y. Mar. 29, 2007) .............................................. 12, 19

*McCarthy v. Dun & Bradstreet Corp.*,
372 F. Supp. 2d 694 (D. Conn. 2005), *aff'd* 482 F.3d 184 (2d Cir. 2007) ....... 13

*McCarthy v. Dun & Bradstreet Corp.*,
482 F.3d 184 (2d Cir. 2007) ......................................................................... 11, 14

*MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*,
66 F.4th 77 (2d Cir. 2023) .................................................................................... 8

*N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*,

    2025 WL 1311115 (E.D.N.Y. May 6, 2025) ..................................................................... 22

*Ohio v. Am. Express Co.*,
    585 U.S. 529 (2018) ........................................................................................................ 23

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979) ................................................................................................. 24, 25

*PepsiCo, Inc. v. Coca-Cola Co.*,
    315 F.3d 101 (2d Cir. 2002)........................................................................................... 23

*Pristine Jewelers NY, Inc. v. Broner*,
    492 F. Supp. 3d 130 (S.D.N.Y. 2020) ............................................................................. 6

*Sanders v. Thrall Car Mfg. Co.*,
    582 F.Supp. 945 (S.D.N.Y. 1983), *aff'd*, 730 F.2d 910 (2d Cir. 1984) .............................. 9

*Schnepf v. Jerome H. Siegel, M.D., P.C.*,
    1998 WL 474132 (S.D.N.Y. July 11, 1998) ................................................................... 13

*Silva-Markus v. N.Y.C. Dep't of Educ.*,
    2022 WL 736425 (S.D.N.Y. Mar. 11, 2022) .................................................................. 18

*Simon v. City of New York*,
    2011 WL 317975 (E.D.N.Y. Jan. 3, 2011)...................................................................... 10

*State Teachers Ret. Bd. v. Fluor Corp.*,
    654 F.2d 843 (2d Cir. 1981)........................................................................................ 8, 9

*Steir v. Girl Scouts of the USA*,
    383 F.3d 7 (1st Cir. 2004) ........................................................................................... 6, 9

*Strunk v. U.S. House of Representatives*,
    68 F. App'x 233 (2d Cir. 2003) ..................................................................................... 11

*Tardif v. City of New York*,
    2016 WL 2343861 (S.D.N.Y. May 3, 2016) ..................................................................... 7

*Todd v. Exxon Corp.*,
    275 F.3d 191 (2d Cir. 2001) .......................................................................................... 12

*TQ Delta, LLC v. CommScope Holding Co., Inc.*,
    657 F. Supp. 3d 892 (E.D. Tex. 2023)............................................................................ 16

*United States v. Google LLC*,
    778 F. Supp. 3d 797 (E.D. Va. 2025) ............................................................. 5, 19, 22, 23

*Zahra v. Town of Southhold*,
    48 F.3d 674 (2d Cir. 1995) ............................................................................................ 10

*Zubulake v. UBS Warburg LLC*,
231 F.R.D. 159 (S.D.N.Y. 2005) .......................................................................................... 9

**Rules**

Fed. R. Civ. P. 15(a)(2) .................................................................................................... 7

Fed. R. Civ. P. 16 ............................................................................................................. 7

**Treatises**

Areeda & Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application*
(5th ed. 2024) ................................................................................................................. 24

## INTRODUCTION

Publishers have intentionally and consistently pursued claims based on different geographic markets than those found by the Virginia Court. Despite plaintiffs in Virginia advancing claims in January 2023 based on worldwide geographic markets, Publishers stuck with their own U.S.-centric claims throughout the entirety of this litigation, waiting to see how the Virginia trial turned out before they decided to try to take advantage of rulings against Google. Even after the Virginia Court's decision in April and collateral estoppel briefing over the summer, Publishers still did not move to amend their alleged geographic market until this Court invited them to do so.

Publishers' brief shows why they were reluctant to move in the first place. They offer no explanation whatsoever for their years-long delay in adding claims based on a worldwide market. And Publishers' tardy amendment manifestly prejudices Google. Had Publishers acted sooner, Google could have used the ten months of additional fact discovery in this case (after fact discovery closed in the Virginia case) to further develop its defenses to a worldwide market. But Google had no reason to do so because Publishers alleged a United States market. Additionally, allowing amendment would be futile because Publishers' proposed additions fail to allege sufficient facts to state a plausible claim based on worldwide geographic markets. And even if Publishers' proposed amendment were allowed, it would do little to advance this litigation because their amendment relates to only one of the numerous reasons why collateral estoppel cannot apply here.

Publishers propose to amend their complaint to prop up their flawed arguments for collateral estoppel, but they fail to cite a single precedent where any court has permitted amendment over a defendant's objection in similar circumstances. This Court should not break new ground. Allowing Publishers to amend at this late stage would not only prejudice Google, but

reward Publishers for wasting the parties' and the Court's time with years of litigation over theories that they now cast aside. Knowing that their claims diverged from those being litigated in Virginia, Publishers could have sought to amend their claims years ago—or they could have sought to stay this case and waited to see how the Virginia case played out. Instead, they gambled that either the Virginia Court would embrace their precise theories or this Court would relax the requirements for collateral estoppel. That gamble should not pay off: Publishers' motion to amend should be denied.

## BACKGROUND

All three of Publishers' complaints, including the operative complaint, filed on December 2, 2022, allege that the United States is the relevant geographic market for purposes of evaluating the challenged conduct.[1] *See* Compl. *Genius Media Group, Inc. et al. v. Google LLC*, No. 5:20-cv-09092 (N.D. Cal. Dec. 16, 2020), N.D. Cal ECF No. 1 ¶ 84; N.D. Cal. ECF No. 64 (Amended Consolidated Class Action Compl., Apr. 5, 2021) ¶ 176; ECF No. 408 ¶ 121.[2]

In January 2023, the Department of Justice ("DOJ") and eight states filed their own antitrust complaint in the Eastern District of Virginia. *See* Compl., *United States v. Google LLC*, No. 1:23-cv-00108 (E.D. Va. Jan. 24, 2023) ("Virginia case" or "Virginia complaint"), EDVA ECF No. 1. The Virginia complaint alleged that "[t]he United States is a relevant geographic market" and also that there is a worldwide market "[i]n the alternative." EDVA ECF No. 1 ¶¶ 280–81; *see also* EDVA ECF No. 120 ¶¶ 280–81 (same markets in amended complaint).

---

[1] In Publishers' first amended complaint and in their currently operative second amended complaint, Publishers also included an alternative geographic market of "predominantly English-speaking countries" (United States, Canada, the United Kingdom, and Australia). Publishers now seek to amend their complaint to replace that alternative market with an alternative worldwide geographic market. ECF No. 408 ¶ 121.

[2] This Court issued a Scheduling Order on November 21, 2022 establishing that "[a]ny motion to amend or join additional parties (except as to the state law claims, as to which amendments are stayed pending further Order) shall be filed within 30 days of this Order." ECF No. 394 ¶ 1 (Pre-Trial Order No. 5). Publishers' operative complaint was filed in response to that Scheduling Order.

Discovery in this multidistrict litigation ("the MDL") had begun by January 2023. ECF No. 394 ¶ 1 (Pre-Trial Order No. 5). And on June 2, 2023, this Court entered an order coordinating the Virginia case and the cases included in this MDL for purposes of fact discovery, but only until the end of fact discovery in the Virginia case. *See* ECF No. 564 ¶¶ 2(e), 7. Fact discovery in the Virginia case ended on September 8, 2023, *see* EDVA ECF No. 69, but continued in this Court for nearly another ten months, until June 28, 2024, ECF No. 394 ¶ 5.

On December 2, 2023, three months after the close of coordinated fact discovery, Prof. Robin Lee (one of the Virginia plaintiffs' experts) submitted an expert report that made clear that

███████████████████████████████████████████████████████████████████

███████████████████████. Sessions Decl., Ex. 1 (Expert Report of Robin S. Lee, Dec. 22, 2023) ("Lee Rpt.") ¶¶ 388–90. Notably, ███████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████. *See id.* at Figs. 88–89. On April 26, 2024, while fact discovery was still ongoing in the MDL, Google moved to exclude some of Prof. Lee's opinions, including his opinion that the worldwide market was the relevant geographic market. EDVA ECF No. 573 at 21–24. The portion of Google's motion that discussed Prof. Lee's worldwide market definition was available on the public docket. *Id.*

In May 2024, one month before the close of fact discovery in the MDL, Google served an interrogatory requesting that Publishers "state the relevant product and geographic market(s) in which You contend each of Google's Ad Tech Products alleged in the Complaint participates." Sessions Decl., Ex. 2 (Named Publisher Plaintiffs' Responses and Objections to Defendants' Second Set of Interrogatories) ("Pub. Interrogatory Resp."), at 6 (Interrog. No. 26). Publishers responded by directing Google to "the relevant markets pleaded in Plaintiffs Amended

Consolidated Complaint, ECF 408 paragraphs 110–93," which they claimed "provide[d] Google fair notice of the relevant markets and products at issue in the litigation." Pub. Interrogatory Resp. at 6–7. The paragraphs referenced in that response alleged the U.S.-only geographic market that Publishers now seek to amend. ECF No. 408 ¶ 121. While Publishers "reserve[d] the right to supplement this response in due course and with the benefit of expert discovery," they never did so. Pub. Interrogatory Resp. at 7.

Trial in the Virginia case took place in September 2024. At trial, Prof. Lee testified in open court that it is "appropriate to look at the competitive effects on a worldwide basis." EDVA ECF No. 1359 at 126:17–24; *see also id.* at 70:25–71:4, 91:23–92:3, 95:24–96:2 (testifying to worldwide market share data).

About two weeks after Prof. Lee testified, on October 4, 2024, Publishers served their opening expert reports, including a report from Professor Einer Elhauge arguing that the geographic market was first and foremost the United States. In a section of his report titled "The Relevant Geographic Market Is No Smaller Than the United States," Prof. Elhauge offered five reasons why the record supports limiting the relevant geographic market to the United States: (1) U.S. advertisers "are likely to be most interested in displaying their ads on websites that attract users located in the U.S."; (2) language, cultural, and "other differences" constrain geographic substitutability; (3) legal and regulatory environments may differ in ways that affect competition and substitutability; (4) websites load faster in the same geographic area, impeding substitutability to ad tech providers outside of the United States; and (5) Google itself defined the relevant market as the United States in the Virginia case. ECF No. 959-1 (Expert Report of Einar S. Elhauge, Oct. 4, 2024 ) ("Elhauge Rpt.") ¶¶ 180–85*.* In a single paragraph, he also asserted that "[o]ther evidence supports defining a worldwide market," noting that Google prices its ad tech services and reports

profits and losses on a worldwide basis. *Id.* ¶ 186.[3] Prof. Elhauge cited no evidence indicating that consumer or supplier responses to price increases informed his opinions about the relevant geographic market. Nevertheless, Publishers did not move to amend.

On April 17, 2025, the Virginia Court issued its liability decision. The court rejected the Virginia plaintiffs' claim that Google had monopolized the advertiser ad network market, but it found Google liable for monopolizing the market for open-web display ad exchanges and the market for publisher ad servers and for tying DFP to AdX. *See United States v. Google LLC*, 778 F. Supp. 3d 797, 873 (E.D. Va. 2025) ("*Google*"). All of those determinations depended on the court's finding that the relevant geographic markets were worldwide. *Id.* at 847–49. The remedies trial begins on September 22, 2025.

On June 20, 2025, Publishers filed a Motion for Collateral Estoppel and Summary Judgment, arguing that "[t[his Court should apply the doctrine of non-mutual offensive collateral estoppel to give preclusive effect to Judge Brinkema's liability determinations and their predicates." ECF No. 1041 at 1. In their brief, Publishers asserted that "the complaint in this action can be amended under Rule 15(a) or 15(b) to align with the evidence and to give preclusive effect to the EDVA court's determination of the relevant geographic market." *Id.* at 9. On July 18, 2025, Google filed its brief opposing Publishers' motion for summary judgment. ECF No. 1079 ("Google SJ Opp.").

After summary judgment briefing was complete, this Court issued an Order noting*, inter alia*, that "the proposed Publishers' Class has asserted that an amendment to the pleadings . . . would, if leave were granted by the Court, render many of Google's arguments moot" and

---

[3] In support of a worldwide market, Prof. Elhauge cited the report of Publishers' accounting expert, Dr. Elizabeth Kroger. Elhauge Rpt. ¶ 186 nn.525–26. Dr. Kroger "does not offer an opinion on what the appropriate relevant geographic market is for analyzing the claims in this case." ECF 983-19 (Expert Report of Elizabeth K. Kroger) ¶ 20.

permitting "[a]ny summary judgment movant who wishes to amend its pleadings to conform to rulings in the E.D.V.A." to file such a motion. ECF No. 1106. Only after entry of that Order did Publishers move to file a further amended complaint to allege a worldwide geographic market. ECF No. 1124 ("Pub. Br.").

**ARGUMENT**

## I.   PUBLISHERS' MOTION TO AMEND SHOULD BE DENIED

### A. Publishers Cannot Show Good Cause Under Rule 16

Publishers acknowledge that, once the deadline for amendment has passed, any subsequent motion to amend is governed by Rule 16's "good cause" standard, Pub. Br. at 5 n.4, but they do not make any attempt to show good cause for the amendments they propose here. Instead, they simply assert that their motion is timely because it was "invited by the Court's Order (ECF 1106) of two weeks ago." *Id.* at 6. The Court's invitation to file a motion does not relieve Publishers of their burden to show good cause for why that motion should be granted.

In November 2022, this Court issued a Scheduling Order setting a deadline of 21 days therefrom to amend. ECF No. 394. Publisher's motion to amend comes nearly three years after that deadline and is therefore governed by Rule 16. *See Pristine Jewelers NY, Inc. v. Broner*, 492 F. Supp. 3d 130, 131 (S.D.N.Y. 2020) ("When a party files a motion to amend after the pleading deadline set forth in the case management plan and scheduling order, Fed. R. Civ. P. 16(b) governs and the party must establish 'good cause' to amend its pleadings.") (internal citation omitted); *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004) ("Once a scheduling order is in place, the liberal default rule is replaced by the more demanding 'good cause' standard of Fed. R. Civ. P. 16(b).") (internal citation omitted).

Rule 16 sets limits on a court's discretion to permit amendments after the deadlines set in the applicable scheduling order to ensure that "at some point both the parties and the pleadings

6

will be fixed." Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment. The "good cause" standard under Rule 16 is "not a forgiving standard." *Mangahas v. Eight Oranges Inc.*, 2023 WL 3170404, at *3 (S.D.N.Y. May 1, 2023). "A finding of good cause depends on the diligence of the moving party." *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d. Cir. 2003); *see also Tardif v. City of New York*, 2016 WL 2343861, at *5 (S.D.N.Y. May 3, 2016) (plaintiff's five-month gap between discovering new information and seeking leave to amend precluded her from demonstrating the diligence necessary to satisfy Rule 16(b)'s good cause standard).

Publishers provide no explanation for their delay in seeking to amend their complaint to include a worldwide geographic market, and there can be no dispute that they have not been diligent in seeking to amend. The Virginia plaintiffs filed their complaint alleging a worldwide geographic market more than two and a half years ago, in January 2023. The Virginia trial occurred one year ago, in September 2024. And the Virginia Court issued its decision in April 2025. In short, Publishers knew that the Virginia plaintiffs alleged a "worldwide geographic market" *before* the close of fact discovery in this case, but they knowingly and deliberately stuck with their own United States geographic market until finally moving to amend ten days ago. The fact that Publishers would now like to avoid the consequences of that choice is no excuse.

### B. Publishers Are Not Entitled to Amend Their Complaint Under Rule 15

Even under the more lenient standard of Rule 15, Publishers' motion to amend should be denied. Rule 15 provides that "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Amendment under Rule 15 "is by no means 'automatic.'" *DeWitt Stern Grp., Inc. v. Eisenberg*, 14 F. Supp. 3d 480, 484 (S.D.N.Y. 2014) (internal citation omitted). A court may deny leave to amend "for good reason, including

futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (internal citation omitted).

In evaluating motions to amend pursuant to Rule 15, courts consider "the length of delay, the judicial and party resources that have been expended, and any tactical behavior evident in the plaintiff's request for leave to amend." *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 2013 WL 6484727, at *3 (S.D.N.Y. Dec. 9, 2013). "The burden is on the party who wishes to amend to provide a satisfactory explanation of delay." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990); *see also MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc*., 157 F.3d 956, 962 (2d Cir. 1998) ("The burden to explain a delay is on the party that seeks leave to amend."). The "non-movant bears the burden of showing prejudice, bad faith and futility of the amendment." *Grant v. Citibank (S.D.), N.A.*, 2010 WL 5187754, at *6 (S.D.N.Y. Dec. 6, 2010).

Here, Publishers have not only unduly delayed in seeking to amend their complaint for over two and a half years, but their proposed amendment prejudices Google and is futile.

### 1. Publishers Have Unduly Delayed in Seeking to Amend Their Complaint

Publishers have been on notice that the Virginia plaintiffs were asserting claims based on a worldwide geographic market since January 2023 and were reminded of that fact again when Google moved to exclude Prof. Lee's opinion about a worldwide geographic market in April 2024. Yet until this Court's August 14 Order, Publishers had never sought to amend their complaint to change their long-standing allegations of a United States geographic market to allegations of a worldwide geographic market like the one pursued in the Virginia case.

Citing *State Teachers Ret. Bd. v. Fluor Corp*., 654 F.2d 843 (2d Cir. 1981), Publishers try to dismiss their deliberate choice as a "mere delay." Pub. Br. at 6. But this is not a case of "mere delay" like what occurred in *State Teachers*. There, plaintiff waited only four months after learning

8

new facts at a deposition before moving to amend the complaint to include a claim which was "obviously one of the objects of discovery." *State Teachers*, 654 F.2d at 856. By contrast, this case involves a delay of *years*, and worldwide geographic markets were never "objects" of fact discovery in the MDL.

Rule 15 does not give Publishers a free pass for sitting on their hands for such a lengthy period of time. Publishers' failure to offer *any* explanation for their inordinate delay in moving to amend their complaint is reason enough to deny their motion. A party seeking to amend under Rule 15 must "provide a satisfactory explanation for the delay" when a significant amount of time has passed. *Zubulake v. UBS Warburg LLC*, 231 F.R.D. 159, 162 (S.D.N.Y. 2005) (denying leave to amend based in part on the "unexplained twenty-two month delay"); *see also Krumme v. WestPoint Stevens, Inc.*, 143 F.3d 71, 88 (2d Cir. 1998) (affirming district court's denial of leave to amend under Rule 15 on the basis that moving party "offered no adequate excuse for its delay in seeking to amend"); *Sanders v. Thrall Car Mfg. Co*., 582 F.Supp. 945, 952 (S.D.N.Y. 1983), *aff'd*, 730 F.2d 910 (2d Cir. 1984) (When a "considerable period of time has passed between the filing of the complaint and the motion to amend, courts have placed the burden upon the movant to show some valid reason for his neglect and delay.") (*quoting Hayes v. New England Millwork Distributors, Inc*., 602 F.2d 15, 19–20 (1st Cir. 1979)); *Steir*, 383 F.3d at 7 ("Regardless of [whether a motion to amend is analyzed under Rule 16 or 15], . . . protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend.") (internal citation omitted).

Nor can there be any serious dispute that Publishers' delay constitutes "undue delay." Courts in this Circuit have held that even shorter delays are "undue" when (as in this case) the delay "could and should have been avoided." *In re GPC Biotech AG Sec. Litig*., 2009 WL 5125130,

at *4–5 (S.D.N.Y. Dec. 29, 2009) (denying motion to amend "more than two years" after filing their complaint and based on information plaintiff "knew or should have known"). For example, in *Davidowitz v. Patridge*, the court found that the motion to amend was made "unquestionably, after undue delay" because it sought to add "allegations that [the plaintiff] could have made when he filed his . . . complaint" thirteen months earlier. 2010 WL 1779279, at *3 (S.D.N.Y. Apr. 23, 2010); *see also Zahra v. Town of Southhold*, 48 F.3d 674, 686 (2d Cir. 1995) (affirming denial of plaintiffs' motion to amend based, in part, on "undue delay" where the plaintiff sought to amend "two and one-half years after the commencement of the action"); *Simon v. City of New York*, 2011 WL 317975, at *6 (E.D.N.Y. Jan. 3, 2011) (finding undue delay where the plaintiff "waited one year after filing her original complaint . . . and only five days before discovery was set to close, to seek leave to amend the complaint a second time").[4] Here, it has taken Publishers nearly five years from their first complaint and more than two and a half years since the Virginia plaintiffs alleged a worldwide market to try to amend their complaints, yet they still offer no explanation for such protracted and undue delay.

### 2. Publishers' Amendment Would Prejudice Google

Publishers' adherence to a U.S.-only geographic market should not be viewed in a vacuum, as Google has been pursuing fact and expert discovery and building its defenses in reliance on Publishers' allegations. Plaintiffs should not be permitted to unring that bell and pretend as though the last five years of litigation never happened now that their chosen geographic market has exposed a fatal flaw in their collateral estoppel argument.

---

[4] Publishers' reliance on *In re Tether & Bitfinex Crypto Assert Litig.* is misplaced. 2024 WL 3520363 (S.D.N.Y. July 24, 2024) (cited in Pub. Br. at 5, 6, 13). In *Tether*, the plaintiff moved to amend "one day" after the close of fact discovery, *id.* at *5, and the court found "good cause" under Rule 16, including because "the facts comprising the substantive amendments … did not emerge until late in discovery" and plaintiff's motion to amend one day after discovery closed "demonstrated sufficient diligence," *id.* at *6, 9. Here, Publishers delayed far longer than one day, and they do not cite to any evidence that was unavailable to them before the close of fact discovery.

An amendment prejudices a non-moving party when, among other things, it "would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial [or] (ii) significantly delay the resolution of the dispute." *Marsh v. Sheriff of Cayuga Cty.*, 36 F. App'x 10, 11 (2d Cir. 2002) (internal citation and quotation omitted); *see also Krumme*, 143 F.3d at 87–88 (affirming denial of motion to amend complaint under Rule 15 since it was "apparent that the proposed amendments would require a new wave of discovery and would substantially delay the resolution of this action"). Moreover, "[t]he concepts of delay and undue prejudice are interrelated—the longer the period of unexplained delay, the less will be required of the non-moving party in terms of showing prejudice." *Davidowitz*, 2010 WL 1779279, at *2 (citing *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983)).

Publishers' proposed amendment would prejudice Google because it would require re-opening fact discovery, which closed over a year ago, and expert discovery, which closed five months ago. Google relied on Publishers' allegations during those discovery periods. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 201–02 (2d Cir. 2007) ("A complaint provides a defendant with 'notice of what the plaintiff's claim is and the grounds upon which it rests. Having received such notice, a defendant may conduct his trial preparation accordingly and is not required, based on the plaintiff's subsequent conduct in litigation, to anticipate future claims that a plaintiff might intend to pursue.") (internal citations and quotation omitted); *see also Strunk v. U.S. House of Representatives*, 68 F. App'x 233, 235 (2d Cir. 2003) ("The purpose of th[e] requirement[s of pleadings under the Federal Rules] is to provide fair notice of the claims and to enable the adverse party to answer the complaint and prepare for trial.") (internal citation omitted). In a similar situation, Judge Sullivan denied a plaintiff leave to amend its market definition three years into the litigation because doing so would "force Defendants to analyze an entirely different,

11

broader market" and require additional discovery. *City of New York v. Group Health*, 2010 WL 2132246, at \*6 (S.D.N.Y. 2010) ("*Group Health*"), *aff'd sub nom. City of New York v. Group Health Inc.*, 649 F.3d 151 (2d Cir. 2011).

Publishers are not proposing a trivial amendment. The scope of the relevant market is of paramount importance in an antitrust case. *See McCagg v. Marquis Jet Partners*, 2007 WL 2454192, at \*5 (S.D.N.Y. Mar. 29, 2007) (noting that "relevant market" is a "substantive element" of a Section 2 claim); *see also Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 52 (2d Cir. 2016) (reasoning that a relevant market is an essential element in a Section 2 case). Indeed, the relevant market is the lens through which the entire case is viewed and against which a court evaluates whether the defendant exercises monopoly power and engages in anticompetitive conduct. *See Mathias v. Daily News, L.P.*, 152 F. Supp. 2d 465, 481 (S.D.N.Y. 2001) ("[T]he product and geographic components illuminate the relevant market analysis, which is essential for assessing the potential harm to competition from defendant's alleged misconduct."); *Cent. Air Freight, Inc. v. Am. Airlines, Inc.*, 597 F. Supp. 564, 573 (S.D.N.Y. 1984) (concluding plaintiff had "failed to meet its burden in establishing that American had monopoly power in the relevant market, because it . . . failed to present credible evidence that the relevant market is defined as it claims"), *aff'd*, 738 F.2d 418 (2d Cir. 1984). And "[m]arket definition is a highly fact-based analysis that generally requires discovery." *Todd v. Exxon Corp.*, 275 F.3d 191, 199 (2d Cir. 2001) (internal citation and quotation omitted).

Had Google known during fact discovery that Publishers were alleging a worldwide market, it would have sought additional discovery including, but not limited to, discovery concerning the presence of significant ad tech competitors outside the United States, Publishers' and third parties' use of ad tech providers in other countries, and more granular, country-specific

data to analyze empirically how price increases affect ad tech customers and/or suppliers. *Cf.*
*Heerwagen v. Clear Channel Commc'ns*, 435 F.3d 219, 227 (2d Cir. 2006) (internal citation
omitted) (describing geographic market definition as inquiry into "how far consumers will go to
obtain the product or its substitute in response to a given price increase and how likely it is that a
price increase for the product in a particular location will induce outside suppliers to enter that
market and increase supply-side competition in that location"). Google's experts could have
analyzed this additional evidence about the geographic market, and they also could have responded
to any new opinions from Publishers' experts based on that evidence.

Courts regularly find prejudice when a proposed amendment would require additional
discovery, including because of the significance of the relevant market in an antitrust case. *See,*
*e.g.*, *Group Health*, 2010 WL 2132246 at \*6 (denying leave to amend market definition three years
into the litigation since doing so would "force Defendants to analyze an entirely different, broader
market" and require additional discovery); *McCarthy v. Dun & Bradstreet Corp.*, 372 F. Supp. 2d
694, 701 (D. Conn. 2005) (finding prejudice because, "[i]f the amendment is allowed, merits
discovery will need to be reopened and the litigation will, in essence, start over—the same experts
will likely need to produce new reports and be re-deposed"), *aff'd* 482 F.3d 184, 202 (2d Cir.
2007); *Schnepf v. Jerome H. Siegel, M.D., P.C.*, 1998 WL 474132, at \*4 (S.D.N.Y. July 11, 1998)
("It is clear that if leave to amend were to be granted, defendants would be prejudiced because
discovery is closed. The new claim would require new discovery, including the retention of
additional and different expert witnesses by defendant. Thus, such a belated amendment would
unduly prejudice defendant.") (citations omitted).

Publishers try to sweep this issue under the rug by elliptically claiming that the "parties to
this action conducted fact and expert discovery regarding a potential worldwide market[.]" Pub.

13

Br. at 7. But there was no *fact* discovery in this case about a potential worldwide market because Publishers never alleged a worldwide market in their complaint. In fact, when Google served an interrogatory asking about the relevant geographic market, Publishers responded by directing Google back to the complaint, which alleged a United States market—not a worldwide one. Pub. Interrogatory Resp. at 6–7.

Although the parties' *experts* disputed the relevant geographic market in their reports, the experts based their opinions on the record developed during fact discovery, which (as described above) was based on Publishers' U.S.-only claims and would have been far more developed if Publishers had indicated that they would pursue worldwide markets. Moreover, the Second Circuit has previously considered and rejected the very same argument about expert discovery that Publishers now advance. In *McCarthy*, plaintiffs claimed that "defendants were not prejudiced by an amendment because the . . . declaration and . . . deposition of plaintiffs' . . . expert gave defendants full and fair notice," but the court reasoned that "[a] complaint provides a defendant with 'notice of what the plaintiff's claim is and the grounds upon which it rests. Having received such notice, a defendant may conduct his trial preparation accordingly and is not required, based on the plaintiff's subsequent conduct in litigation, to anticipate future claims that a plaintiff might intend to pursue." *McCarthy*, 482 F.3d at 201–02 (internal citations and quotation omitted). The same holds true here. Google has spent nearly five years litigating Publishers' claim that Google monopolized the markets for publisher ad servers and ad exchanges *in the United States* (including more than two and a half years since the Virginia plaintiffs alleged a worldwide market), and it would prejudice Google to allow them to amend their geographic market definition after the close of discovery.

14

Implicitly conceding that there was no fact discovery *in this case* concerning a worldwide geographic market, Publishers retreat to the assertion that allowing amendment would not prejudice Google because "the relevant issue for collateral estoppel is whether Google litigated the issue fully and fairly in the EDVA[.]" Pub. Br. at 7. But the standard relevant to their motion to amend is whether it would prejudice Google *in this case*—not whether an issue was fully and fairly litigated *in a different case* brought by different plaintiffs. Further, Publishers overlook that discovery closed in the Virginia case in September 2023, and Google had no reason to use the remaining ten months of fact discovery available *in this case* to develop defenses to a worldwide geographic market because no MDL Plaintiff was pursuing claims based on a worldwide geographic market.[5] Had Publishers sought to amend while fact discovery was still available here, Google would have been able to use the remaining time to further develop its geographic-market defenses as described above. It would be highly prejudicial for Publishers to deprive Google of the full opportunity for discovery provided in this Court's orders, as their belated motion now seeks to do.

To the extent that Publishers contend that Google would not be prejudiced by the denial of discovery concerning a worldwide market because application of collateral estoppel would render the discovery record irrelevant, their position only underscores the prejudice that would occur if Publishers were permitted to amend and this Court applied collateral estoppel on that basis. Google would be prejudiced regardless of whether the Virginia decision survives an appeal.

If the Virginia decision is reversed, it could no longer receive collateral estoppel effect, and the parties would resume litigating this case on the merits, based on Publishers' amended

---

[5] Nor did Google have any incentive to use the additional ten months of fact discovery in this case to develop evidence about a worldwide geographic market for use in the Virginia case. The coordination order prohibited it. *See* ECF No. 564 ¶ 2(e).

complaint. In that event, Google would be entitled to further fact and expert discovery to develop its defenses to Publishers' new allegations concerning worldwide geographic markets. As described above, re-opening discovery would involve the expense and delay that courts regularly recognize as sufficiently prejudicial to deny amendment.

Even if the Virginia decision is not reversed, Google would be prejudiced by the application of collateral estoppel in an unprecedented situation. As explained in Google's brief opposing summary judgment, collateral estoppel is not available unless "the issues in both proceedings [are] identical," *see Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 37 (2d Cir. 2005) (cited in Google SJ Opp. at 3), so the differences between the geographic markets found by the Virginia Court and alleged by Publishers in their currently operative complaint preclude collateral estoppel here, *see* Google SJ Opp. at 34–35. Permitting amendment *for the purpose of collateral estoppel* would provide an end-run around this well-settled law. It would be contrary to notice pleading, prejudice Google for the reasons that the Second Circuit identified in *McCarthy*, and create not only uncertainty for litigants, but also inefficiency for the parties and the Court alike. The parties have spent years litigating Publishers' claims as set forth in their operative complaint. The Court should not now countenance Publishers' belated effort to paper over the fatal deficiency in their collateral estoppel arguments arising from their deliberate choice to pursue a different geographic market than the one at issue in the Virginia case.

Google is aware of no case where a court has permitted an amended complaint on facts analogous to those here—after the close of discovery and for the purpose of obtaining offensive collateral estoppel over the defendant's objections. On the other hand, there is at least one case where a court has denied amendment in similar circumstances. *See TQ Delta, LLC v. CommScope*

16

*Holding Co., Inc.*, 657 F. Supp. 3d 892, 901 (E.D. Tex. 2023) ("untimely" request to amend waived opportunity for offensive collateral estoppel).

Despite claiming that "courts permit the amendment of pleadings to provide for the application of collateral estoppel," Pub. Br. at 7, Publishers' lone support comes from a brief per curiam opinion issued sixty-five years ago in an entirely different context—one that did not even involve the Rule 15 and Rule 16 standards that this Court must apply here. That case arose when the government tried to deport Mendoza following his criminal conviction for draft evasion. *See Mackey v. Mendoza-Martinez*, 362 U.S. 384, 384–85 (1960). The government contended that Mendoza was not a U.S. citizen because the Nationality Act stripped citizenship from draft evaders, and Mendoza argued that the Act was unconstitutional. Mendoza won in the district court, and the government appealed directly to the Supreme Court. *Id.* at 385. Following oral argument, the Court *sua sponte* requested supplemental briefing about the collateral estoppel effect of the prior criminal conviction. *Id.* After considering those briefs, the Court concluded that "[t]he issue of collateral estoppel. . . . clouds the underlying issue of constitutionality" and remanded the case "with permission to the parties to amend the pleadings, if they so desire, to put in issue the question of collateral estoppel and to obtain an adjudication upon it." *Id.* at 385–86, 387. Justice Frankfurter wrote separately to emphasize that he did "not think that this new matter—a claim of collateral estoppel—should be considered here as though this were a court of first instance." *Id.* at 387. He also noted the "Solicitor General's acquiescence in having this case disposed of by avoiding decision of [an] important constitutional question," *id.* at 387, which was a notable concession by the party that had lost below and was arguing that collateral estoppel did not apply, *see id.* at 385 (recognizing that the district court had found the Act unconstitutional); *id.* at 386 (describing the government's response to plaintiff's collateral estoppel argument).

17

This case is completely different from *Mackey*. First, although the Supreme Court exercised its inherent authority to remand *Mackey* for further development in the district court, this Court must apply the relevant standards under Rules 15 and 16. Second, unlike the government's "acquiescence" in the *Mackey* remand, Google objects to Publishers' attempt to amend their complaint. *Mackey* has never been followed or interpreted for the proposition Publishers' advance. Indeed, *Mackey* has been cited only fifteen times over the past sixty-five years and none of the citing decisions "permit the amendment of pleadings to provide for the application of collateral estoppel." *Cf.* Pub. Br. at 7.

### 3. Amendment Would Be Futile

*"*[L]eave to amend need not be granted where the proposed amendment is futile." *Silva-Markus v. N.Y.C. Dep't of Educ.*, 2022 WL 736425, at *6 (S.D.N.Y. Mar. 11, 2022) (internal citation and quotation omitted). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to [Federal Rule of Civil Procedure] 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (internal citation omitted); *accord Jones-Cruz v. Rivera*, 2022 WL 20437017, at *7 (S.D.N.Y. Oct. 28, 2022). Here, Publishers' proposed amended complaint does not allege sufficient facts to support a worldwide geographic market and thus could not withstand a motion to dismiss.

"In order to survive a motion to dismiss, it is appropriate for a district court to assess whether the plaintiffs' complaint asserts sufficient facts to allege plausibly the existence of both a product and geographic market." *Concord Assocs.*, 817 F.3d at 53 (internal citation omitted). An alleged product market must consist of "products that have reasonable interchangeability for the purposes for which they are produced—price, use and qualities considered." *Id* at 52 (internal citations and quotation omitted). An alleged geographic market must identify the precise

geographic boundaries of affected competition to reach an informed view of potential harm to the market. *Id.* at 53 (citing *Mathias*, 152 F. Supp. 2d at 481).

Publishers propose to amend their complaint to allege United States and worldwide geographic markets, ECF No. 1125-1 ¶ 121, but none of the factual allegations Publishers seek to include are sufficient to plausibly define a worldwide market. Specifically, Publishers allege that (1) "Google prices its Ad Tech Stack services on a worldwide basis"; (2) "Google also reports financial profit and loss statements for its Ad Tech Stack operations worldwide"; and (3) "the conduct at issue in Google's anticompetitive scheme was enacted on a global basis." *Id.* ¶¶ 122–23. None of these allegations address the central geographic-market definition question: "how far consumers will go to obtain the product or its substitute in response to a given price increase and how likely it is that a price increase for the product in a particular location will induce outside suppliers to enter that market and increase supply-side competition in that location." *Heerwagen*, 435 F.3d at 227 (internal citation omitted). As a result, the claims based on a worldwide market would be subject to dismissal, and it would be futile to allow amendment. *Cf. B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162, 171–72 (S.D.N.Y. 1995) ("Because a relevant market includes all products which are reasonably interchangeable, . . . [the plaintiffs'] failure to define [the] market by reference to the rule of reasonable interchangeability is, standing alone, valid grounds for dismissal.") (internal quotation and citation omitted); *McCagg*, 2007 WL 2454192, at *5–6 (dismissing antitrust claims for failure to allege a plausible relevant market).[6]

---

[6] Publishers appear to draw their allegations concerning a worldwide geographic market from facts found by the Virginia Court, *see Google*, 778 F. Supp. 3d at 847–49, but those facts are legally insufficient to support a worldwide geographic market for the reasons discussed above.

## II.    REGARDLESS OF WHETHER AMENDMENT IS ALLOWED, PUBLISHERS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED

The Court directed the parties to address "whether and how the proposed amendments affect the pending summary judgment motions." ECF No. 1106 at 2. Publishers maintain that amendment is not necessary for collateral estoppel, but that "the proposed amendment facilitates this Court's ability to grant collateral estoppel by removing an argument raised by Google." Pub. Br. at 14. That argument not only overstates the impact of the proposed amendments, but also rests on a misinterpretation of the Virginia Court's decision and a misapplication of Second Circuit law.

### A.  Publishers' Proposed Amendments Will Not Address Most of Google's Arguments Against Collateral Estoppel

Publishers claim that their proposed amendment would remove "an argument raised by Google," but they fail to acknowledge that, for 24 of the 25 issues on which they seek collateral estoppel (all except Issue 4), the "argument" to which they refer—that the worldwide geographic market found by the Virginia Court is not identical to the United States geographic market alleged in Publishers' currently operative complaint—is only one of several reasons why collateral estoppel cannot apply. *See* Google SJ Opp. at 33–50; ECF No. 1079-2 (summarizing arguments against collateral estoppel).[7] The scope of the geographic market is entirely irrelevant to Google's collateral estoppel arguments on numerous issues, including:

- Issue 3, concerning whether the ad tech stack is a single two-sided market, *see* ECF No. 1041 at 4, 8; Google SJ Opp. at 45–48;

- Issue 13, concerning whether *Trinko* applies to Google's conduct, *see* ECF No. 1041 at 5, 12; Google SJ Opp. at 46, 49;

- Issue 20, concerning whether Google's "anticompetitive acts" should be analyzed as product design choices, *see* ECF No. 1041 at 5, 12; Google SJ Opp. at 46–47, 50; and

---

[7] Publishers' proposed amendments are also irrelevant to any of the 54 "predicate factual findings" for which they seek collateral estoppel. *See* ECF No. 1041 at 4–6; ECF No. 1040-2.

20

- Issues 21–23 and 25, concerning elements of the Virginia plaintiffs' tying claim, *see* ECF No. 1041 at 5–6, 12–15; Google SJ Opp. at 42–45.

While the differences between the Virginia Court's findings about a worldwide market and Publishers' currently operative allegations concerning a United States market provide *one reason* for denying collateral estoppel on the other issues, Google also offered *additional arguments* not to apply collateral estoppel on those issues, Google SJ Opp. at 33–50, and those additional arguments are unaffected by whether Publishers are permitted to amend their complaint. For example, Plaintiffs' proposed amendments concerning the geographic market do nothing to address the product-market differences that also preclude collateral estoppel on Issues 1–2, 5–12, 14–19, 21, 24. *See* Google SJ Opp. at 37–40, 43.

### B. Publishers' Proposed Amendments Would Not Entitle Them To Collateral Estoppel on Monopoly Power

Publishers argue that "collateral estoppel would be appropriate regardless of amendment." Pub. Br. at 14. As Publishers have articulated it, their argument relates only to Issue 5 ("Google has monopoly power in the market for ad exchanges"); it does not apply to any of the other Issues on which Publishers seek collateral estoppel. *Id.*; ECF No. 1041 at 4, 9–10. And even as to the issue of monopoly power in the market for ad exchanges, Publishers are incorrect.

Publishers contend that the Virginia Court's finding of monopoly power "does not rest only on indirect evidence of dominant market share in a defined worldwide market but also rests on 'direct evidence of AdX charging durable and supracompetitive prices' that would be valid proof of market power regardless of the geographic scope of the defined market." Pub. Br. at 14. In doing so, Publishers recycle the argument that, because the Virginia Court found direct evidence of Google's market power in the ad exchange market, Google's market share in the ad exchange market is irrelevant. *See id.*; ECF No. 1041 at 17. This argument is doubly flawed.

21

First, the Virginia Court did not find that Google had monopoly power based only on the alleged direct evidence. Instead, it held that "the direct evidence [], *in combination* with [AdX] maintaining [its] market share . . . provides strong support for the conclusion that Google has possessed and still possesses monopoly power." *Google*, 778 F. Supp. 3d at 855–56 (emphasis added). Contrary to Publishers' claim, the Virginia Court did not find that such direct evidence alone was sufficient to establish market power independent of the evidence concerning Google's market share. Direct evidence can "support" a finding that a party has monopoly power in particular defined geographic and product markets, but it cannot do away with the need to define markets altogether.

Second, the Second Circuit has considered and rejected the argument Publishers seek to advance here. As explained in *Heerwagen v. Clear Channel Communications*, a "showing of market power is a substantive element of plaintiff's monopolization claim, and plaintiff cannot escape proving her claims with reference to a particular market even if she intends to proffer direct evidence of controlling prices or excluding competition." 435 F.3d at 229 (internal citation omitted). Likewise, the Eastern District of New York explicitly rejected the same argument earlier this year:

> To the extent Plaintiff tries to seize on the *PepsiCo* language stating that 'direct measurements of a defendant's ability to control prices or exclude competition' may serve as an alternative to relying on a relevant market, Defendants are right to point out that the Second Circuit narrowed that path in *Heerwagen v. Clear Channel Communications*, when it stated precedentially that '[a] showing of market power is a substantive element of plaintiff's monopolization claim, and plaintiff cannot escape proving her claims with reference to a particular market even if she intends to proffer direct evidence of controlling prices or excluding competition,' as Plaintiff says it did here.

*N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc*., 2025 WL 1311115, at *8 (E.D.N.Y. May 6, 2025) (internal citations omitted).

Publishers also misunderstand *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 107 (2d Cir. 2002) (cited in Pub. Br. at 14). In that case, the Second Circuit acknowledged the "numerous cases stat[ing] that defining a relevant market is generally a necessary component of analyzing a monopolization claim." 315 F.3d at 108; *see also Boyer v. Channel 13 Inc.*, 2005 WL 2249782, at *7 (S.D.N.Y. Mar. 9, 2005) (internal citation omitted) ("In order to determine the defendant's market power, a plaintiff alleging monopolization generally must define a relevant geographic and product market"). And since then, the Supreme Court has limited the situations in which direct evidence can obviate the need to define markets to cases involving horizontal restraints. *See Ohio v. Am. Express Co.*, 585 U.S. 529, 543 n.7 (2018). As Publishers do not allege claims involving horizontal restraints, they cannot evade their burden of defining markets and proving monopoly power by relying on earlier cases from lower courts that gave greater weight to direct evidence.

Further, the facts in *PepsiCo* illustrate why Publishers seek to short-circuit this Court's review of the evidence through the application of collateral estoppel. The *PepsiCo* court found that the plaintiff failed to establish monopoly power because the defendant's 64% market share was too low and there was no direct evidence of market power. *See id.* at 109 ("Absent additional evidence, such as an ability to control prices or exclude competition, a 64 percent market share is insufficient to infer monopoly power."); *id.* at 108 ("PepsiCo has failed to adduce direct evidence that Coca–Cola has market power."). Even if Publishers could amend their complaint to include a worldwide market, their expert, Prof. Elhauge, found that Google's share of the worldwide ad exchange market was between only 62.65% and 66.63%. Elhauge Rpt. ¶ 206. And Publishers have offered no direct evidence that Google could control prices or exclude competition marketwide.[8]

---

[8] The Virginia Court's findings about Google maintaining its own 20% fee on AdX do not demonstrate an ability to control prices marketwide. *Google*, 778 F. Supp. at 852–54. That court relied on Prof. Lee's testimony, but his analysis showed that, when competitors lowered prices, Google's market share declined. EDVA ECF No. 1360 at 114:14–115:19; Lee Rpt., at Fig. 55 (designated as PTX 1242).

*Maxon Hyundai Mazda v. Carfax, Inc.*, 726 F. App'x 66, 69 (2d Cir. 2018) (affirming summary judgment when pricing evidence related "only" to defendant's prices, rather than prices "in the market as a whole")*.* In other words, if Publishers litigated their claim of a worldwide market, the facts here would look a lot like *PepsiCo*, a case where the Second Circuit affirmed summary judgment for the defendant. (And Google's case would be even stronger if there were a United States market because its share is even lower there. ECF 983-19 (Expert Report of Mark A. Israel, Dec. 22, 2023) ¶¶ 430–31). The only way for Publishers to avoid summary judgment is to prevent Google from pointing out the errors in their (and the Virginia Court's) theory by invoking collateral estoppel.[9]

### C. The Court Should Decline to Exercise Its Discretion to Apply Collateral Estoppel

Collateral estoppel is an equitable doctrine—not a matter of absolute right. Its invocation requires the consideration of fairness in the individual case. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979) (concluding that courts have "broad discretion" to refuse to apply collateral estoppel, even if all the elements are present); *Conte v. Justice,* 996 F.2d 1398, 1400 (2d Cir. 1993) (doctrine is "premised on notions of due process and fairness"). Thus, even if Publishers satisfied the standards for amendment and established the other elements required for collateral estoppel, which they do not, this Court has discretion to decline the application of offensive collateral estoppel when doing so would be unfair. *See* Google SJ Opp. at 16–20.

---

[9] In relying on Areeda & Hovenkamp to claim that market shares are a "surrogate" for direct evidence of market power, Pub. Br. at 14, Publishers quote selectively from one part of the treatise. The same paragraph goes on to recognize that "even when direct measures of power are feasible, courts would still find market definition useful . . . . Thus, while market definition and computation of market share is often said to be a surrogate for more 'direct' measures of market power, it is often more than a surrogate." Areeda & Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 531a (5th ed. 2024).

As the Supreme Court has acknowledged, offensive collateral estoppel provides a plaintiff with "every incentive to adopt a 'wait and see' attitude, in the hope that the first action by another plaintiff will result in a favorable judgment." *Parklane*, 439 U.S. at 330. Gamesmanship would only be further encouraged if the doctrine were applied to permit a plaintiff to amend its complaint to allege a different *substantive* element of its claim *after* the close of discovery and while the first-decided case is *on appeal*. Such a permissive application of offensive collateral estoppel would allow plaintiffs to waste party and judicial resources litigating one claim only to see it morph after-the-fact into a different claim. Those types of concerns led the Supreme Court to caution courts to "not allow the use of offensive collateral estoppel" when its application "would be unfair to a defendant." *Id.* at 331. Because Publishers' post-discovery request to amend their complaint to take advantage of offensive collateral estoppel is seemingly unprecedented and inherently unfair for all the reasons described above, Google respectfully submits that, even if amendment were allowed, this Court should decline to apply collateral estoppel at least until the Virginia Court's decision can be tested on appeal. *See In re: Am. Express Anti–Steering Rules Antitrust Litig.*, 2016 WL 748089, at *6 (E.D.N.Y. Jan. 7, 2016) (deferring resolution of private plaintiffs' motion for collateral estoppel until after defendant's appeal of parallel government case).

## CONCLUSION

For the foregoing reasons, the Court should deny Publishers' motion to amend.

Dated: September 8, 2025

Respectfully submitted,
*/s/ Justina K. Sessions*

Justina K. Sessions
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250
Email: justina.sessions@freshfields.com

Eric Mahr
Andrew J. Ewalt
700 13th Street, NW
10th Floor
Washington, DC 20005
Telephone: (202) 777-4545
Email: eric.mahr@freshfields.com
          andrew.ewalt@freshfields.com

Craig M. Reiser
AXINN, VELTROP & HARKRIDER LLP
630 Fifth Avenue, 33rd Floor
New York, New York 10111
Telephone: (212) 728-2200
Email: creiser@axinn.com

*Counsel for Defendants Google LLC,*
*Alphabet Inc., and YouTube, LLC*

CC: All Counsel of Record (via ECF)