IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re Google Digital Advertising Antitrust Litigation** | Case No. 1:21-md-3010 (PKC) |
| *This document relates to:*<br><br>**In re Google Digital Publisher Antitrust Litigation** | Case No. 1:21-cv-7034 (PKC) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PUBLISHER CLASS PLAINTIFFS' MOTION FOR LEAVE TO FILE
SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ..................................................................................................................... 2

    A. The Amendments Are Supported by Good Cause Under Rule 16. ......................... 2

    B. Amendments Should Be Freely Allowed Under Rule 15. ....................................... 4

        1. Google fails to establish undue delay. ......................................................... 4

        2. Google fails to establish undue prejudice. .................................................. 4

        3. Google fails to establish futility. ................................................................. 8

    C. Collateral Estoppel Is Warranted Regardless of the Amendments. ......................... 8

III. CONCLUSION ................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Cases** Page(s)

*Bifolck v. Philip Morris USA*,
   936 F.3d 74 (2d Cir. 2019) ................................................................................................. 8

*Christians of California v. Clive Christian New York*,
   2014 WL 3605526 (S.D.N.Y. July 18, 2014) ................................................................... 5, 7

*City of New York v. Grp. Health*,
   2010 WL 2132246 (S.D.N.Y. May 11, 2010) ..................................................................... 5

*De La Rosa Martinez v. Harbor Express*,
   2020 WL 7249499 (S.D.N.Y. Oct. 19, 2020) ..................................................................... 3

*DeCastro v. City of New York*,
   278 F. Supp. 3d 753 (S.D.N.Y. 2017) ............................................................................... 10

*Duling v. Gristede's Operating Corp.*,
   265 F.R.D. 91 (S.D.N.Y. 2010) .......................................................................................... 4

*F.T.C. v. QT, Inc.*,
   236 F.R.D. 402 (N.D. Ill. 2006) ......................................................................................... 6

*Franklin-Mason v. Spencer,*
   756 F. App'x 20 (D.C. Cir. 2019) ...................................................................................... 3

*GAF v. Eastman Kodak*,
   519 F. Supp. 1203 (S.D.N.Y. 1981) ................................................................................... 7

*Hurtado v. Hudson Fulton Corp.*,
   2023 WL 2945846 (S.D.N.Y. Apr. 14, 2023) .................................................................... 2

*In re Aggrenox Antitrust Litig.*,
   199 F. Supp. 3d 662 (D. Conn. 2016) ................................................................................ 9

*Johnson v. Watkins*,
   101 F.3d 792 (2d Cir. 1996) ............................................................................................... 5

*Loreley Fin. (Jersey) No. 3 v. Wells Fargo Sec.*,
   797 F.3d 160 (2d Cir. 2015) ............................................................................................... 4

*Mackey v. Mendoza-Martinez*,
   362 U.S. 384 (1960) ............................................................................................................ 7

*Mangahas v. Eight Oranges Inc.,*
   2023 WL 3170404 (S.D.N.Y. May 1, 2023) ...................................................................... 3

*McCarthy v. Dun & Bradstreet*,
    372 F. Supp. 2d 694 (D. Conn. 2005) ............................................................................... 6

*Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*,
    468 U.S. 85 (1984) ............................................................................................................ 9

*Olaf Soot Design v. Daktronics,*
    299 F. Supp. 3d 395 (S.D.N.Y. 2017) ........................................................................... 3, 5

*Parklane Hosiery Co. v. Shore*,
    439 U.S. 322 (1979) .......................................................................................................... 8

*Richardson Greenshields Sec. v. Lau*,
    825 F.2d 647 (2d Cir. 1987) ............................................................................................. 4

*Russell-Newman. v. Robeworks*,
    2002 WL 1918325 (S.D.N.Y. Aug. 19, 2002) .................................................................. 8

*Todd v. Exxon*,
    275 F. 3d 191 (2d Cir. 2001) ............................................................................................ 7

*Tops Markets v. Quality Markets*,
    142 F.3d 90 (2d Cir. 1998) ........................................................................................ 9, 10

*TQ Delta v. CommScope Holding Co.,*
    657 F. Supp. 3d 892 (E.D. Tex. 2023) .............................................................................. 5

*United States ex rel. Maritime Administration v. Continental Illinois National Bank & Trust Co.
    of Chicago,*
    889 F.2d 1248 (2d Cir.1989) ............................................................................................ 7

*United States v. Google LLC*,
    778 F. Supp. 3d 797 (E.D. Va. 2025) ....................................................................... passim

*US Airways v. Sabre Holdings*,
    2015 WL 8335119 (S.D.N.Y. Dec. 8, 2015) ................................................................ 3, 4

**Other Authorities**

IIB Areeda & Hovenkamp,
    Antitrust Law (3rd ed. 2007) ............................................................................................. 9

**Rules**

Fed. R. Civ. P. 15 ................................................................................................................... 3-4

Fed. R. Civ. P. 16 ................................................................................................................... 2-3

## I. INTRODUCTION

In an April 2025 decision based on essentially the same conduct at issue here, Judge Leonie Brinkema found Google liable for monopolization and unlawful tying in a worldwide geographic market. *United States v. Google LLC*, 778 F. Supp. 3d 797 (E.D. Va. 2025) ("EDVA Opinion" or "EDVA Op."). Plaintiffs seek to amend to conform their allegations to the EDVA court's finding on the geographic scope of the market, thereby facilitating the application of collateral estoppel. Google argues that such an amendment is unfair, but the principles of collateral estoppel—judicial economy, consistency, and the avoidance of re-litigation—all support granting Publishers' Motion for Leave to File Second Amended Consolidated Class Action Complaint, ECF 1120 ("Motion").[1]

Publishers' Motion is supported by good cause and furthers the interests of justice. The evidence here supports a worldwide geographic market. *See, e.g.*, ECF 988 at 3-4; ECF 1041 at 8-9; ECF 1085 at 11-13. Both sides' expert economists—Prof. Einer Elhauge for Publishers and Dr. Mark Israel for Google—opined *in this case* that their conclusions about market power and other issues apply equally to United States and worldwide markets. ECF 959-1, Elhauge Rpt. ¶187 ("A worldwide market thus would not alter any of my conclusions on market definition, market power, anticompetitive restraints, anticompetitive effects, or procompetitive effects, . . . classwide impact or aggregate classwide damages"); ECF 959-4, Elhauge Dep. at 43:25-44:12, 45:3-16, 47:12-20, 50:9-18; ECF 983-18, Israel Rpt. ¶437 ("My conclusions . . . do not depend on whether the relevant geographic market is the United States or worldwide"); ECF 1123-5, Israel Dep. at 86:10-14 ("my conclusions in the case don't depend on reasonable modifications to . . . those boundaries"). Dr. Israel also conceded that Publishers could plead a worldwide

---

[1] Publishers' opening brief, ECF 1122, is "Opening Br." herein; Google's opposition brief, ECF 1153, is "Opp."

1

market in the alternative. Israel Rpt. ¶¶430-31; ECF 959-3, Elhauge Reb. Rpt. ¶¶172-73.

No unfair prejudice to Google would result from granting this Motion. Google had the opportunity to—and did—pursue fact and expert discovery on a worldwide market in the EDVA Action. Discovery there was coordinated with discovery here, and Google's economic expert submitted an identical analysis on the geographic market in both the EDVA Action, where Google was responding to a primary worldwide market claim,[2] and in this case. *Compare* Israel Rpt. ¶¶431-37, *with* ECF 1123-2, Israel EDVA Rpt. ¶¶367-374. Moreover, because Google tracks and accounts for its ad tech products on a worldwide basis, ECF 983-19, Kroger Rpt. ¶¶20, 80-84, & n. 25; Elhauge Rpt. ¶¶186, 221-22, n.50, n.57, Google is well aware of—and indeed is the primary repository of—evidence concerning the geographic scope of the market.

Further, because discovery concerning geographic scope is unnecessary for the application of collateral estoppel, Google is not prejudiced by the scope of fact discovery. The Court should grant Publishers' Motion, thereby facilitating the application of collateral estoppel and securing "the just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1.

## II. ARGUMENT

### A. The Amendments Are Supported by Good Cause Under Rule 16.

Google argues with respect to "good cause" that Publishers "have not been diligent in seeking to amend." Opp. at 6-7. Google is wrong. Publishers have been diligent and good cause can be established by "any . . . factor which might understandably account for failure of counsel to undertake to comply with the scheduling order." *Hurtado v. Hudson Fulton Corp.*, 2023 WL 2945846, at *4 (S.D.N.Y. Apr. 14, 2023) (cleaned up).[3]

---

[2] Opp. at 3 (EDVA plaintiffs "submitted an expert report that made clear that the Virginia plaintiffs were pursuing a worldwide geographic market not as an 'alternative,' but as their primary geographic market.")

[3] In *Mangahas v. Eight Oranges Inc.*, cited by Google (Opp. at 7), the court found good cause for amendment after

2

As an initial matter, the Court's April 14 Order (ECF 1106) set a new deadline to seek to amend to conform with the EDVA Opinion. Accordingly, Rule 16's "good cause" standard is inapplicable as Publishers are not requesting a modification of a scheduling order. *See* Fed. R. Civ. P. 16(b)(4); *De La Rosa Martinez v. Harbor Express*, 2020 WL 7249499, at \*\*6 (S.D.N.Y. Oct. 19, 2020) ("Where Rule 16's 'good cause' standard is inapplicable (or where the movant has met that standard), the Court should "freely" grant leave to amend under Rule 15").

Regardless, Publishers meet the "good cause" standard. The EDVA Opinion was issued over two years after the deadline for amendments here. Publishers moved to conform their alleged geographic scope within four months of that opinion after first suggesting within one month after the opinion that an amendment could moot Google's argument. ECF 988, at 4. That timing parallels *Franklin-Mason v. Spencer*, which permitted the Navy to amend its answer to add a collateral estoppel defense a few months after the prior decision. 756 F. App'x 20, 22 (D.C. Cir. 2019) ("we do not see how the district court could have expected the Navy to amend its answer years before the Court of Federal Claims actually issued its decision").

Further, Publishers more than satisfy the permissive standard as recognized by Judge Sweet in *Olaf Soot Design v. Daktronics,* which holds that "a district court has discretion to grant a motion to amend *even where the moving party has not shown diligence* in complying with a deadline for amendments in a Rule 16 scheduling order." 299 F. Supp. 3d 395, 397 (S.D.N.Y. 2017) (emphasis added). The benefits of collateral estoppel—preventing re-litigation while conserving the parties' and the Court's resources and time—independently provide good cause. *US Airways v. Sabre Holdings*, 2015 WL 8335119, at \*3 (S.D.N.Y. Dec. 8, 2015) ("the interest of justice would be best served by granting the proposed amendment because this antitrust case

---

the class action opt-out period, necessary to provide the movant with the information it sought to add via amendment. 2023 WL 3170404, at \*5 (S.D.N.Y. May 1, 2023).

is not just a dispute affecting the corporate litigants; it also involves claims of illegal restraints on trade that allegedly have harmed consumers").

### B. Amendments Should Be Freely Allowed Under Rule 15.

"The court should freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). "This permissive standard is consistent with the 'strong preference for resolving disputes on the merits.'" *US Airways*, 2015 WL 8335119, at *3 (quoting *Loreley Fin. (Jersey) No. 3 v. Wells Fargo Sec.*, 797 F.3d 160, 190 (2d Cir. 2015)). Google acknowledges, but fails to meet, its "burden of showing prejudice, bad faith and futility of the amendment." Opp. at 8.

#### 1. Google fails to establish undue delay.

Google's "delay" argument, Opp. at 8-10, misses the mark. Publishers' amendments are premised on facilitating the application of collateral estoppel. As a result, delay should be measured from the date the EDVA Opinion issued, in which case there is none. And any arguable delay is excusable. *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 97 (S.D.N.Y. 2010).[4]

The caselaw cited by Google, Opp. at 9-10, deals with movants who long knew or should have known of the relevant facts supporting their motions to amend. Here, Publishers did not delay in filing their Motion, which seeks to "conform to the rulings in the E.D. Va." and thereby "render many of Google's [collateral estoppel] arguments moot." ECF 1106; *see supra* § II.A.[5]

#### 2. Google fails to establish undue prejudice.

Google cannot establish undue prejudice because Publishers' proposed amendments are narrowly tailored for the purpose of applying collateral estoppel. "Prejudice can exist if an

---

[4] "[D]elay is rarely fatal to a Rule 15 motion if it can be explained. Although *some* explanation must be provided to excuse a delay, even vague or 'thin' reasons are sufficient, in the absence of prejudice or bad faith". *Duling*, 265 F.R.D. at 97 (emphasis in original) (citations omitted).

[5] Courts allow amendments (despite unexcused delay of several years) requested "long after they acquired the facts necessary to" amend. *Richardson Greenshields Sec. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (collecting cases).

4

amendment would (1) require the defendant to expend *significant* additional resources to conduct discovery, or would (2) *significantly* delay the resolution of the dispute." *Olaf Soot Design*, 299 F. Supp. 3d at 399 (emphasis added) (cleaned up); *see also* Opp. at 11 (agreeing "significance" is required). "While prejudice to the opposing party is an important consideration, only *undue* prejudice justifies denial of leave to amend." *Christians of California v. Clive Christian New York*, 2014 WL 3605526, at *5 (S.D.N.Y. July 18, 2014) (emphasis in original).

The proposed amendments—designed to facilitate application of collateral estoppel—do not require additional discovery. To the contrary, collateral estoppel would foreclose any need for discovery or re-litigation of market definition issues while advancing the principles of judicial economy and consistency. *Johnson v. Watkins*, 101 F.3d 792, 795 (2d Cir. 1996) ("The doctrine promotes important goals: it allows a party only one opportunity to litigate an issue thereby conserving the time and resources of the parties and the court; promotes the finality of judgments; preserves the integrity of the judicial system by eliminating inconsistent results; and ensures that a party not be able to relitigate issues already decided against it in prior litigation."). Indeed, collateral estoppel would advance the goals touted by Google—avoiding "uncertainty for litigants" and "inefficiency for the parties and the Court alike". Opp. at 16.[6]

Amending to facilitate collateral estoppel will not unduly prejudice Google, which had a full and fair opportunity in the EDVA Action to litigate geographic scope.[7] In the EDVA Action, Google's expert Dr. Israel opined that the appropriate geographic market was the United

---

[6] *City of New York v. Grp. Health*, cited by Google (Opp. at 11-12), is inapposite. There, defendants' pending motion for summary judgment showed plaintiff's failure to proffer any evidence or expert opinion on reduced competition in the market that plaintiff defined. 2010 WL 2132246, at *5 (S.D.N.Y. May 11, 2010), *aff'd,* 649 F.3d 151 (2d Cir. 2011). "Given the flaws in Plaintiff's market definition . . . and detailed in Defendants' able briefing, Plaintiff's desire to amend its Complaint" was "unsurprising." *Id.*, at *6. Here, Publishers do not seek to address flaws in their allegations, but to conform to the EDVA Opinion to apply collateral estoppel.

[7] *TQ Delta v. CommScope Holding Co.*, cited by Google (Opp. at 16-17), is irrelevant to Publishers' Motion. There, the court granted defendant's motion for summary judgment based on plaintiff's failure to plead the defense of collateral estoppel—available at all times—under Federal Rule 8(c). 657 F. Supp. 3d 892, 900 (E.D. Tex. 2023).

5

States. Dr. Israel here has the very same opinion on this issue. Judge Brinkema rejected Dr. Israel's opinion and adopted the worldwide market advanced by the EDVA plaintiffs. *See* Opening Br. at 8-9. As the defendant in the EDVA Action, no prejudice arises from Publishers' Motion to conform to that court's decision. *See F.T.C. v. QT, Inc.*, 236 F.R.D. 402, 405 (N.D. Ill. 2006) (no prejudice where the non-movant plaintiff was "aware" of the prior action and "used documents from that litigation" in the present action, making it "neither surprised nor prejudiced if Defendant amends his answer and adds these affirmative defenses" of issue preclusion).

Even if the Court allows amendment but does not apply collateral estoppel, Google still cannot establish prejudice as it already litigated the propriety of a worldwide market in the EDVA Action and thus already has the discovery needed to relitigate the same issue here. Confronted with a worldwide geographic market in EDVA, Google had nine months to pursue discovery on that issue.[8] Google's suggestion that it needs still more discovery on that issue is without merit, and the cases Google cites on that point, Opp. at 13, are inapplicable.

Google's brief includes only a single sentence describing the "additional discovery" it claims it would have undertaken had Publishers amended earlier.[9] But Google did not undertake such discovery with respect to the Publishers' alleged alternative geographic market of the United States, Canada, the United Kingdom, and Australia, *see* ECF 408 ¶ 121, nor has Google explained how its postulated discovery would provide evidence different from discovery concerning Publishers' alternative geographic market. Given the coordinated discovery between the EDVA Action and this action, we know that Google did not engage in the postulated

---

[8] Unlike in *McCarthy v. Dun & Bradstreet*, 372 F. Supp. 2d 694 (D. Conn. 2005), Opp. at 13, here Google had notice of the EDVA plaintiffs' worldwide market definition and fully litigated that issue.

[9] Opp. at 12-13 ("the presence of significant ad tech competitors outside the United States, Publishers' and third parties' use of ad tech providers in other countries, and more granular, country-specific data to analyze empirically how price increases affect ad tech customers and/or suppliers").

discovery in the EDVA Action (which Google litigated through trial).  *See* Opening Br. at 12-13.

Google's arguments against amendment relying on its pending appeal, Opp. at 15-16, fail for the same reason.  The "fact that the opposing party will have to undertake additional discovery, 'standing alone, does not suffice to warrant denial of a motion to amend'".  *Christians of California*, 2014 WL 3605526, at *5.[10]  Moreover, Publishers, not Google, would be prejudiced by lack of fact discovery in the worldwide geographic market.  Google possesses the evidence of its ad tech business and its worldwide operations.  Google analyzes its ad tech business from a global perspective, Kroger Rpt. ¶¶ 20, 80-84, and fewer than two weeks ago was fined almost €3 billion by the European Commission for the same conduct in Europe.[11]  Publishers are the party without such discovery, are not asking for such discovery, and do not need it to try this action, just as it was not needed in the EDVA Action.

Google argues without support that market definition deserves a unique status among plaintiffs' allegations and thus should not be easily amended.  Opp. at 12.  To the contrary, "market definition is a deeply fact-intensive inquiry," *Todd v. Exxon*, 275 F. 3d 191, 199-200 (2d Cir. 2001) (Sotomayor, J.), and as such, the Court should apply collateral estoppel and not be forced to relitigate complex factual issues already carefully decided in the EDVA Opinion.  *See GAF v. Eastman Kodak*, 519 F. Supp. 1203, 1211 (S.D.N.Y. 1981).[12]

Google fails to distinguish *Mackey v. Mendoza-Martinez*, 362 U.S. 384 (1960), which holds that amendments to pleadings can facilitate the application of collateral estoppel.  Indeed,

---

[10] Quoting *United States ex rel. Maritime Administration v. Continental Illinois National Bank & Trust Co. of Chicago,* 889 F.2d 1248, 1255 (2d Cir.1989).

[11] European Commission Press Release IP/25/1992, Commission fines Google €2.95 billion over abusive practices in online advertising technology (Sept. 4, 2025).

[12] "Antitrust litigation and trials are frequently and increasingly criticized for being too costly, time-consuming, and complex.  Indeed, Congress has evidenced its intention and concern about the matter by giving full preclusive effect to prior government antitrust suits in order to eliminate wasteful retrying of issues and reduce the costs of complex antitrust litigation to the courts and parties." *GAF*, 519 F. Supp. at 1211 (cleaned up).

7

the theory of that decision was embraced by *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979), and its progeny that relaxed the requirements for applying collateral estoppel.

### 3. Google fails to establish futility.

Publishers' proposed amendments would carry out their purpose—to facilitate collateral estoppel. Google's argument that the proposed amendments fail to satisfy Rule 12, Opp. at 18-19, are irrelevant to the specific, limited purpose of amending to precisely match the EDVA Opinion on geographic scope. Opening Br. at 3-4. If Publishers' Motion is granted and collateral estoppel is applied, the door would close on any attempt to re-litigate that issue—whether on a motion to dismiss, summary judgment, or at trial.

### C. Collateral Estoppel Is Warranted Regardless of the Amendments.

Collateral estoppel necessarily presumes the validity of the prior decision, demonstrated by the fact that "the pendency of an appeal should not impact the collateral estoppel effect of an otherwise final and valid judgment." *Russell-Newman. v. Robeworks*, 2002 WL 1918325, at *1 n.1 (S.D.N.Y. Aug. 19, 2002). Google's attempts to relitigate "Publishers['] . . . (and the Virginia Court's) theory" further support the application of estoppel. Opp. at 24.

Similarly, collateral estoppel applies to all issues necessary to support the prior decision. *Bifolck v. Philip Morris USA*, 936 F.3d 74, 79-80 (2d Cir. 2019). Google asserts that "All of" the EDVA court's "determinations depended on the court's finding that the relevant geographic markets were worldwide." Opp. at 5. If true, Publishers' amendment would advance this litigation by eliminating Google's primary argument against application of collateral estoppel, smoothing the path to precluding Google from re-litigating the EDVA court's determinations.

Even without amendment, collateral estoppel is appropriate, as Publishers' expert economist, Prof. Elhauge, long ago advanced an alternative definition of the market as

8

worldwide in this case. ECF 1041 at 8-9. Google argues that even if amendment is granted, Publishers lack sufficient evidence of market power. Opp. at 21-24. Google's argument is relevant only to the extent that the Court grants amendment but denies collateral estoppel.

But were that to happen, Google's argument still fails. While Google asserts that Prof. Elhauge's estimated worldwide market shares are insufficient to establish market power, Opp. at 23, in this Circuit, market power can be independently established with direct evidence "of the control of prices or the exclusion of competition."[13] *Tops Markets v. Quality Markets*, 142 F.3d 90, 98 (2d Cir. 1998); *see also* EDVA Op. at 852 ("AdX's charging a durable 20% take rate for well over a decade is direct evidence that Google has possessed monopoly power in the open-web display ad exchange market."). The primary focus of a market power inquiry is on whether a defendant had "the ability to raise prices above those that would be charged in a competitive market." *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85, 109 n.38 (1984); *see also In re Aggrenox Antitrust Litig.*, 199 F. Supp. 3d 662, 664-65 (D. Conn. 2016) (same). "As the leading antitrust treatise explains: '[M]arket power is the abilities (1) to price substantially above the competitive level *and* (2) to persist in doing so for a significant period without erosion by new entry or expansion.'" *Aggrenox*, 199 F. Supp. 3d at 665 (quoting IIB Areeda & Hovenkamp, Antitrust Law, ¶ 501, at 111 (3rd ed. 2007)) (emphasis in original).

A plaintiff can demonstrate market power through direct evidence "of the control of prices or the exclusion of competition." *Tops Mkts.*, 142 F.3d at 98. When "direct evidence is available that a party profitably charges supracompetitive prices, the existence of market power can be established from that fact alone." *Aggrenox*, 94 F. Supp. 3d 224, 246 (D. Conn. 2015). Alternatively, a plaintiff can demonstrate market power indirectly; it "may be inferred from one

---

[13] Publishers have already submitted direct evidence of Google's market power and will submit more in opposition to any Google motion for summary judgment. *See* ECF 988 at 3-4; ECF 1041 at 8-9; ECF 1085 at 11-13.

9

firm's large percentage share of the relevant market." *Tops Mkts.*, 142 F.3d at 98.  Google is thus wrong that Judge Brinkema necessarily considered Google's market shares in finding monopoly power, because her findings on Google's durable supracompetitive prices independently establish market power.  *See* EDVA Op. at 854 ("AdX's durable 20% take rate constitutes direct evidence of monopoly power."); *id.* at 855 ("AdX's relatively high and durable market share is consistent with the Court's conclusion that Google has monopoly power").

Google argues, Opp. at 22-23, that Publishers are seeking to avoid defining a relevant market.  That is false.  Publishers point out both that the direct evidence of market power is consistent with a U.S. or worldwide market and that the overwhelming evidence of monopoly power supports the application of collateral estoppel notwithstanding immaterial differences in the specific markets alleged absent the proposed amendments.  ECF 1041 at 17.

In sum, Google attempts to avoid the consequences of its EDVA loss by ignoring the purposes of collateral estoppel—saving "parties and the courts from the waste and burden of relitigating stale issues, and, by discouraging inconsistent results," forwarding "public policy favoring the establishment of certainty in legal relations."  *DeCastro v. City of New York*, 278 F. Supp. 3d 753, 763-64 (S.D.N.Y. 2017).  Google wishes to retry multiple issues it already lost.  The EDVA court's three-week trial provided Google a full and fair opportunity to litigate.  Google should not be permitted to duplicate fact discovery, merits briefing, and trial on the relevant market definition, or the other issues that follow as addressed in Publishers' Motion for Collateral Estoppel and Partial Summary Judgment, ECF 1040.

### III. CONCLUSION

For the foregoing reasons, the Court should grant Publisher Class Plaintiffs leave to file their Second Amended Complaint.

10

Dated: September 15, 2025

Respectfully submitted,
David Boies
dboies@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200

*Lead Counsel for the Publisher Class*

*/s/ Philip C. Korologos*
Philip C. Korologos
pkorologos@bsfllp.com
Robert J. Dwyer
rdwyer@bsfllp.com
James Keyte
jkeyte@bsfllp.com
Luke Williams
lwilliams@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300

Mark C. Mao
mmao@bsfllp.com
Sean P. Rodriguez
srodriguez@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6820

Sabria A. McElroy
smcelroy@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 377-4216

Izaak Earnhardt
iearnhardt@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave NW, 11th Floor
Washington, DC 2005
Telephone: (202) 237-2727

George A. Zelcs
gzelcs@koreintillery.com
Randall P. Ewing
rewing@koreintillery.com
Marc A. Wallenstein
mwallenstein@koreintillery.com
Ryan A. Cortazar
rcortazar@koreintillery.com
**KOREIN TILLERY LLC**
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Fax: (312) 641-9751

Stephen M. Tillery
stillery@koreintillery.com
Michael E. Klenov
mklenov@koreintillery.com
Carol L. O'Keefe
cokeefe@koreintillery.com
Andrew Ellis
aellis@koreintillery.com
Ian Moody
imoody@koreintillery.com
**KOREIN TILLERY LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Fax: (314) 241-3525

Eric L. Cramer
ecramer@bm.net
Michael C. Dell'Angelo
mdellangelo@bm.net
Caitlin G. Coslett
ccoslett@bm.net
Patrick F. Madden
pmadden@bm.net
Jeremy Gradwohl
jgradwohl@bm.net
**BERGER MONTAGUE PC**
1818 Market St., Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000

Robert E. Litan
rlitan@bm.net
**BERGER MONTAGUE PC**
1001 G Street, NW
Suite 400 East
Washington, DC 20001
Telephone: (202) 559-9740

*Interim Co-Lead Counsel for the Publisher Classes*