KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
——
(202) 326-7900
FACSIMILE:
(202) 326-7999

November 14, 2025

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:  *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC) [rel. *Dotdash Meredith Inc. v. Google LLC*, No. 1:25-cv-07194 (PKC); *Insider, Inc. v. Google LLC*, No. 1:25-cv-07409 (PKC); and *Slate Group LLC v. Google LLC*, No. 1:25-cv-07697 (PKC)]

Dear Judge Castel:

We write in response to the request by Defendants Google LLC and Alphabet Inc. (together, "Google") to file a motion to dismiss certain claims by People Inc., Business Insider, and Slate ("Plaintiffs").  There is no efficiency in briefing the issues raised in Google's letter on its proposed schedule.  Briefing will not conclude until after substantial completion of discovery in these cases, and Google's arguments implicate myriad issues of fact.  This Court should instead resolve these issues on a full discovery record, after first resolving many of the same issues in connection with Google's summary judgment motions in the Daily Mail and Gannett cases.  Plaintiffs do not at this time seek leave to amend their complaints based on the issues identified in Google's premotion letter, but reserve the right to seek leave to amend in the future. The next case management conference is scheduled for February 18, 2026.  MDL Dkt. No. 1209.

**I.      The Court Should Defer Briefing on Any Motion To Dismiss Until It Decides Google's Motion for Summary Judgment in Daily Mail's And Gannett's Cases**

Plaintiffs plead the same state law claims as Daily Mail and Gannett, which are other premium publishers in the MDL represented by undersigned counsel.[1]  Earlier this week, Google sought leave to move for summary judgment on Daily Mail's and Gannett's state law claims,

---

[1] *Compare* MDL Dkt. No. 1196 ¶¶ 272-89 (Daily Mail state law claims), *and* MDL Dkt. No. MDL Dkt. No. 1197 ¶¶ 281-304 (Gannett state law claims), *with* Dkt. No. 1 ¶¶ 260-83, *Dotdash Meredith Inc. v. Google LLC*, No. 1:25-cv-07194 (S.D.N.Y. Aug. 29, 2025) ("People Compl."); Dkt. No. 1 ¶¶ 259-82, *Insider, Inc. v. Google LLC*, No. 1:25-cv-07409 (S.D.N.Y. Sept. 8, 2025) ("Business Insider Compl."); Dkt. No. 1 ¶¶ 257-80, *Slate Group LLC v. Google LLC*, No. 1:25-cv-07697 (S.D.N.Y. Sept. 16, 2025) ("Slate Compl.").

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable P. Kevin Castel
November 14, 2025
Page 2

raising many of the same legal arguments it makes here. *See* MDL Dkt. No. 1223 at 12-17.
Rather than separately resolve two motions addressing the same claims, the Court should decide
summary judgment, first, before permitting briefing on Google's proposed motion to dismiss.

  *First*, the Court already has decided to evaluate the state law claims with the benefit of
the MDL record. Last year, Google sought leave to move to dismiss Daily Mail's and Gannett's
state law claims, and the Court denied its request. The Court "defer[ed] briefing on any motion
to dismiss until the summary judgment stage." MDL Dkt. No. 784. Now that the state law
claims have made it to summary judgment, Google provides no reason why the Court should
decline to review the record that the parties spent years developing.

  *Second*, the Court's summary-judgment decision will inform any motion-to-dismiss
briefing—and could eliminate the need for further motions practice. If the Court decides that the
state law claims will proceed to trial, those same claims in Plaintiffs' cases likewise should
survive dismissal on the pleadings. And if the Court grants Google summary judgment, the
parties can brief any motion to dismiss consistent with the Court's decision. Those efficiencies
do not run in the other direction: a decision on a motion to dismiss, without the benefit of the
record, cannot streamline briefing on summary judgment.

  *Third*, deferring any briefing on Google's proposed motion to dismiss provides other
efficiencies. The State Plaintiffs in the Eastern District of Texas plead similar state law claims,
and Google's motion for summary judgment there is fully briefed. *See* MDL Dkt. No. 541
¶¶ 674-758 (identifying unfair trade practice claims under the laws of Texas and other states);
Dkt. Nos. 672 (sealed motion), 712 (sealed response), 731 (reply), *Texas v. Google LLC*,
No. 4:20-cv-00957 (E.D. Tex.). A decision from Judge Jordan could inform the Court's
decisions on summary judgment and any motion to dismiss.

  *Fourth*, Google's proposal for serial rebriefing is inefficient. Document productions in
these cases must be substantially complete by December 19, and fact discovery closes on
February 6, 2026. *See* MDL Dkt. 1209 at 1. Even under Google's proposed expedited briefing
schedule, it is highly unlikely that any decision from this Court could streamline fact discovery.
Further, while Google currently requests two sets of briefs addressing the same claims, it is
likely to request a third round of briefing in the next few weeks. Another premium publisher,
CMI Marketing, Inc. ("Raptive"), recently joined the MDL, is represented by undersigned
counsel, and pleads the same state law claims as Plaintiffs, Daily Mail, and Gannett. *See* Dkt.
No. 1 at ¶¶ 265-88, *CMI Marketing, Inc. v. Google LLC*, No. 1:25-cv-08630 (S.D.N.Y. Oct. 17,
205). Google's pre-motion letter in the *Raptive* case is due on December 5 under the parties'
proposed case management order, *see* MDL Dkt. No. 1220-1 at 1, and Google is likely to seek
leave to move to dismiss Raptive's state law claims. In effect, Google likely will propose three
sets of briefing, on different timelines, all about the same issues. Resolving summary judgment
first, and reserving further briefing until later, avoids that inefficient result.

  Should this Court wish to set a briefing schedule now, however, Plaintiffs propose that
the schedule align with the briefing schedule for Google's forthcoming motions regarding Daily

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable P. Kevin Castel
November 14, 2025
Page 3

Mail's and Gannett's claims. This schedule would allow the Court to address the same issues at the same time across all cases. Whenever these issues are litigated, Plaintiffs will show that each of Google's arguments is meritless, and Plaintiffs have stated claims for common law fraud, violations of New York's Unfair or Deceptive Acts and Practices law ("UDAP"), and unjust enrichment.

## II. Plaintiffs' Fraud Claims Satisfy the Special Facts Doctrine and Merit Additional Discovery

Google argues Plaintiffs' fraud claims are deficient for lack of specificity and because Plaintiffs should not have relied on Google's misrepresentations. Both arguments ignore the nature and duration of Plaintiffs' relationships with Google, a corporate behemoth that cultivated and manipulated an information asymmetry over Plaintiffs for years. Neither argument has merit.

*First*, in light of the duration and nature of Google's fraudulent scheme, Plaintiffs can satisfy the applicable pleading standard in this case. Second Circuit courts recognize that "Rule 9(b) does not require that each specific misrepresentation be identified where an ongoing fraudulent scheme is alleged." *State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*, 589 F. Supp. 2d 221, 237 (E.D.N.Y. 2008). "It is only common sense that the sufficiency of pleadings under Rule 9(b) may depend upon the nature of the case, the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice." *In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318, 333 (D. Conn. 2004) (cleaned up). "To approach the issue otherwise would allow the more sophisticated to escape liability." *Id.* As Plaintiffs' complaints point out, Google engaged in a years-long campaign to harm publishers and evade detection. *See*, *e.g.*, People Inc. Compl. ¶ 176 ("Publishers . . . had no way to discover that Google was engaging in bid-rigging. Google never disclosed Project Bernanke or its successors . . . . In the words of one Google employee, 'the first rule of Bernanke is we don't talk about Bernanke.'"). In light of the extent of Google's deception through multiple corporate mouthpieces making seemingly benign but misleading and deceptive statements, Plaintiffs are not required to make an exhaustive accounting of the fraudulent misrepresentations and omissions without an opportunity to take discovery.

New York's "special facts" doctrine, applicable in this case, provides further support for the sufficiency of Plaintiffs' allegations under Rule 9(b). New York law recognizes that business dealings are inherently unfair when one party has superior knowledge and fails to disclose material information to its counterparty. *See Greenman-Pedersen, Inc. v. Berryman & Heniger, Inc.*, 130 A.D.3d 514, 516 (N.Y. App. Div. 2015). In such cases, if a "material fact was information peculiarly within the knowledge of one party and that the information was not such that could have been discovered by the other party through the exercise of ordinary intelligence," the party with superior knowledge has a duty to disclose that material information. *Id.*; *see also Newbro v. Freed*, 409 F. Supp. 2d 386, 401 (S.D.N.Y. 2006) ("The superior knowledge held by one party renders its transaction without disclosure with another party 'inherently unfair' and

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable P. Kevin Castel
November 14, 2025
Page 4

thus the transaction may constitute fraud." (quoting *P.T. Bank Cent. Asia v. ABN AMRO Bank N.V.*, 301 A.D.2d 373, 378 (N.Y. App. Div. 2003)).

As another court in this district recently recognized, when the special facts doctrine applies, the pleading standard under Rule 9(b) is modified: "In cases where the alleged fraud consists of an omission and the plaintiff is unable to specify the time and place because no act occurred, the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud." *NCR Corp. v. B.A.T. Indus. P.L.C.*, 2024 WL 4188358, at *11 (S.D.N.Y. Sept. 14, 2024) (citation omitted) (declining to dismiss fraud claim and applying the special facts doctrine, as resolving whether information was readily available to the other party was "more appropriate at summary judgment after factual development during discovery.").

Plaintiffs' complaints have met Rule 9(b)'s requirements by detailing the repeated affirmative misrepresentations, misleading partial statements, and deceptive omissions that Google made regarding the effects of First Look, Bernanke, Last Look, Alchemist, Enhanced Dynamic Allocation, Dynamic Revenue Sharing, and Exchange Bidding over a period of years. *See, e.g.*, People Compl. ¶ 61 ("Google told publishers that Dynamic Allocation was a 'risk-free way to get the highest real-time revenues for all their non-guaranteed impressions.'"); ¶ 148 ("Had Google disclosed how Last Look operated, People Inc. would have objected to the practice and taken additional measures to do business with rival exchanges"); ¶¶ 157-61 ("Google chose not to give publishers the data necessary to determine for themselves whether Enhanced Dynamic Allocation was in fact beneficial or not"), ¶ 174 ("Scott Spencer, a Google executive, represented in a media interview that 'AdX is a second price auction with minimum CPMs set by the publisher.' . . . .Yet, in effect, the result of Bernanke was to silently impose a third-price auction."); ¶¶ 176-77 ("Had Google disclosed Bernanke and its variants and how they operated, People Inc. would have objected to the program and explored auction techniques to avoid Bernanke's negative impacts."); ¶ 187 ("Google never told publishers that Dynamic Revenue Share was manipulating publisher-set price floors"); ¶¶ 191-92 ("Google employees recognized that its representations regarding latency were merely a story to discourage publishers from using client-side header bidding"); ¶ 221 ("[I]n the May 2019 'Best Practices' guide, Google represented that applying multipliers to non-Google bids — one potential workaround to the unified price floors — would not 'maximize yield.'"). In short, Plaintiffs' complaints are replete with specific allegations regarding the misrepresentations or omissions upon which the common law fraud claims are based, that Google was responsible for that failure to disclose, the context in which the misrepresentations and omissions arose, and the benefit that Google accrued through the misrepresentations and omission.

*Second*, it was entirely reasonable for Plaintiffs to rely on Google as their partner in monetizing their digital advertising space, and in any event, reliance is "a fact-specific inquiry generally considered inappropriate for determination on a motion to dismiss." *Glidepath Holding B.V. v. Spherion Corp.*, 590 F. Supp. 2d 435, 459 (S.D.N.Y. 2007). Under New York

Kᴇʟʟᴏɢɢ, Hᴀɴꜱᴇɴ, Tᴏᴅᴅ, Fɪɢᴇʟ & Fʀᴇᴅᴇʀɪᴄᴋ, ᴘ.ʟ.ʟ.ᴄ.

The Honorable P. Kevin Castel
November 14, 2025
Page 5

law, "most cases where courts have granted motions to dismiss because of a failure to adequately plead reasonable reliance have concerned situations where a plaintiff failed to examine readily available information, relied on oral representations of information when it could easily have asked for additional information, or failed to properly investigate a transaction." *Id.* Where the relationship between the plaintiff and defendant is "sufficiently complex," the case is particularly "ill-suited for decision on a motion to dismiss." *Id.* at 460; *see also Karsch v. Blink Health Ltd.*, 291 F. Supp. 3d 503, 507 (S.D.N.Y. 2018) (holding reasonable reliance is "often not decided at the motion to dismiss phase of a litigation" because the court must "consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them.").

The relationships between Plaintiffs and Google at issue in these cases is sufficiently complex as to preclude the resolution of reasonable reliance on a motion to dismiss. As this Court already recognized in the context of Enhanced Dynamic Allocation ("EDA"), "Google's concealments and omissions misled" publishers as to the "true nature and effect" of at least some of Google's anticompetitive conduct. *In re Google Digit. Advert. Antitrust Litig.*, 721 F. Supp. 3d 230, 272 (S.D.N.Y. 2024). The Eastern District of Virginia further acknowledged that many of the programs which Google misrepresented or did not disclose to publishers were "built in" to the products at issue and could not be turned off. *See United States v. Google*, 778 F. Supp. 3d 797, 826-27, 830-31 (E.D. Va. 2025) (discussing First Look, Last Look, and UPR). Regarding each of the programs identified as concealed or misrepresented to Plaintiffs, however, Plaintiffs will demonstrate that Google had superior knowledge regarding their true nature and effects, and prevented publishers from learning of those effects either through coercion or deception.

Google argues (at 2) that Plaintiffs cannot state a claim because they "have not alleged they did anything to test [Google's] purported misrepresentations." But Google's argument simply raises a question of fact that need not be pleaded. Unsurprisingly, none of Google's authorities address reasonable reliance at the motion to dismiss stage. *See* MDL Dkt. No. 1221 at 2 (first citing *McGuire Children, LLC v. Huntress*, 2009 WL 1693725, at *12 (N.Y. Ct. June 17, 2009) (addressing reasonable reliance after a bench trial), and then citing *ISS Action, Inc. v. Tutor Perini Corp.*, 170 A.D. 3d 686, 688 (N.Y. App. Div. 2019) (summary judgment)).[2] Neither case offers guidance here on a motion to dismiss, and this Court should defer the question of reasonable reliance until after discovery.

## III.    Plaintiffs Bring Timely Claims Regarding New York Deceptive Acts or Practices

Google next argues that Plaintiffs cannot state claims under UDAP statutes because Google does not offer "consumer-oriented" goods or services and because Plaintiffs' claims are

_____

[2] *ISS Action* found at summary judgment that reliance was not reasonable when the plaintiff had neither alleged that the defendant "was in the exclusive possession of any facts which bore" upon the purported fraudulent misrepresentation, nor "raise[d] a triable issue of fact as to whether its reliance upon the alleged misrepresentations was justified under the circumstances." 170 A.D. 3d at 688-89.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable P. Kevin Castel
November 14, 2025
Page 6

untimely.  Again, Google mischaracterizes the law and ignores questions of fact that bear on Plaintiffs' claims.

*First*, there is no question that the Google products and services upon which Plaintiffs' UDAP claims are based were provided to the general public and therefore unquestionably "consumer-oriented" within the ambit of Sections 349 and 350.  *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995) (defining consumer-oriented conduct as "acts or practices [that] have a broader impact on consumers at large"); *see also Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 37 N.Y.3d 169, 178 (2021).

The New York Court of Appeals's most recent guidance on the meaning of "consumer-oriented" under Section 349—*Himmelstein*—demonstrates that Google's conduct falls within the ambit of the statute.  *See* 37 N.Y. 3d at 178.  That case considered misstatements regarding the "Tanbook," a resource generally used by legal professionals but also made available to the general public.  *Id.*  Despite the typical use of the Tanbook by sophisticated professionals, the Court of Appeals made clear that products "made . . . available for sale to the general public"— like Google's ad server and ad exchange—are within the scope of Section 349 because the statute "is focused on the seller's deception and its subsequent impact on consumer decision-making, not on the consumer's ultimate use of a product."  *Id.*  Plaintiffs' UDAP claims similarly arise out of Google's misrepresentations regarding, and misuse of, ad tech products offered "to consumers operating in the state of New York"—including the ad tech teams of People Inc., Slate, and Business Insider, all of whom are located substantially in New York, *see* People Compl. ¶¶ 261-64; Business Insider Compl. ¶¶ 260-63; Slate Compl. ¶¶ 259-62.  Plaintiffs' claims therefore target "consumer-oriented" Conduct under Sections 349 and 350.

Google argues (at 3) that "private disputes and interactions among businesses do not amount to consumer-oriented conduct," but Google's cases are outdated or otherwise confirm that Plaintiffs' UDAP claims are within the ambit of Section 349.  *See* MDL Dkt. No. 1221 at 3 (citing *ExxonMobil Inter-Am., Inc. v. Adv. Info. Eng. Servs., Inc.*, 328 F. Supp. 2d 443, 448-49 (S.D.N.Y. 2004)).  *ExxonMobil* concerned a complex contractual dispute between a provider of a bespoke technology and support system and its customer, 328 F. Supp. 2d at 445-46, and was decided prior to the New York Court of Appeals's decision in *Himmelstein*, which abrogated or distinguished cases relied upon by the court in *ExxonMobil*, *see* 37 N.Y.3d at 177.

Google fares no better with *Emergency Enclosures, Inc. v. National Fire Adjustment Co.*, 68 A.D.3d 1658, 1661 (N.Y. App. Div. 2009) or *City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 622-23 (2009).  In *Emergency Enclosures*, the Appellate Division rejected the UDAP claims of a direct competitor because the "gravamen of the complaint" was "harm to [the competitor's] business," not "consumer injury."  68 A.D.3d 1658 at 1661.  And *Smoke-Spirits.Com* rejected the plaintiff's Section 349 claim because it was based on the loss of downstream tax revenue due to deceptive sales, not any harm from the deceptive sales themselves.  *See* 12 N.Y.3d at 622-23.  Here, because Plaintiffs' claims stem directly from Google's deceptive statements and practices directed at its many customers (including Plaintiffs),

Kᴇʟʟᴏɢɢ, Hᴀɴsᴇɴ, Tᴏᴅᴅ, Fɪɢᴇʟ & Fʀᴇᴅᴇʀɪᴄᴋ, ᴘ.ʟ.ʟ.ᴄ.

The Honorable P. Kevin Castel
November 14, 2025
Page 7

the claims are consumer-oriented under Section 349.  *See* People Compl. ¶¶ 266-71; Business Insider Compl. ¶¶ 265-72; Slate Compl. ¶¶ 263-70 (collecting representative deceptive conduct and statements leveled at publisher customers).

*Second*, "it is well established that a statute of limitations analysis is generally riddled with questions of fact which the defendants must establish in order to bar the plaintiffs' claims and that because of this fact-intensive burden, affirmative defenses such as the statute of limitations are generally not resolved with a motion to dismiss under Rule 12(b)(6)."  *Bais Yaakov of Spring Valley v. Educational Testing Serv.*, 251 F. Supp. 3d 724, 749 (S.D.N.Y. 2017) (cleaned up).  Google raises at least one of these fact questions by focusing (at 3) on the *start* dates of certain conduct underlying Plaintiffs' UDAP claims—without recognizing that "where a [GBL Section] 349 claim is based on a series of allegedly deceptive acts, . . . the continuing violations doctrine applies and effectively tolls the limitations period until the date of the commission of the last wrongful act."  *Stanley v. Direct Energy Servs. LLC*, 466 F. Supp. 3d 415, 432-33 (S.D.N.Y. 2020) (second alternation in original) (cleaned up) (holding that the continuing violation applied to utility charges made on a periodic basis, calculated through "a monthly variable rate methodology" that was consistently deceptive). Because Section 349's statute of limitations cannot be applied without a robust inquiry into the facts surrounding the Google conduct underlying those claims, this Court should defer resolution of the question until the factual record is developed.[3]

## IV.    Unjust Enrichment Is Available to Plaintiffs Whose GAM Contracts Do Not Cover Google's Anticompetitive Actions

With respect to Plaintiffs' unjust enrichment claims, Google asserts that Plaintiffs' claims are precluded by their contracts with Google and by the statute of limitations.  Both arguments are either legally flawed or demand factual inquiry inappropriate on a motion to dismiss.

*First*, claims of unjust enrichment are available to Plaintiffs because their contracts do not contemplate or account for Google's misconduct at issue in these cases.  In order for claims of unjust enrichment to be precluded by contract, "the scope of [the agreement]" must "clearly cover[ ] the dispute between the parties."  *Clark-Fitzpatrick, Inc. v. Long Island R. R.*, 70 N.Y.2d 382, 389 (1987).  When the scope of the agreement does not clearly cover the dispute between the parties, New York courts have recognized that plaintiffs may recover for unjust enrichment. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447, 483 (S.D.N.Y. 2014).  In *LIBOR*, for example, the plaintiffs brought unjust enrichment claims against defendants for manipulating the interest rate benchmark, despite having a swap contract requiring defendants to pay a prescribed rate of return using an interest rate benchmark.  *See id.*

---

[3] Google states in a single sentence—without citation or explanation—that "Plaintiffs also have not met their burden to justify tolling due to fraudulent concealment."  MDL Dkt. No. 1221 at 3. Plaintiffs reserve the right to assert that fraudulent concealment tolls all claims.

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

The Honorable P. Kevin Castel
November 14, 2025
Page 8

The court denied defendants' motion to dismiss the unjust enrichment claims because the contract did *not* "clearly cover the subject matter" of the claims. *Id.* (cleaned up).

This district has repeatedly held that conduct like Google's is not covered by the scope of general commercial contracts governing purchase, sale, or service agreements. In *Allianz Global Investors GmbH v. Bank of America Corp.*, the parties' master foreign exchange swap agreements did not preclude the plaintiff's unjust enrichment claims stemming from defendants' anticompetitive price fixing because those allegations did not "arise out of the subject matter" of the underlying master agreements. *See* 463 F. Supp. 3d 409, 432-33 (S.D.N.Y. 2020). In *Edmar Financial Company, LLC v. Currenex, Inc.*, the court held that an unjust enrichment claim based on the defendants' alleged manipulation of a trading platform via undisclosed tiebreaking rules and administrator access should survive a motion to dismiss because such conduct was not within the scope of the general service agreements between the parties. 2023 WL 3570017, at *21 (S.D.N.Y. May 18, 2023). Likewise here, because Plaintiffs' injuries stem from anticompetitive or fraudulent conduct not contemplated by their contracts with Google, they too may pursue their unjust enrichment claims.

Google's own cases demonstrate the flaw in its argument. Google cites *Cornhusker Farms, Inc. v. Hunts Point Cooperative Market*, 2 A.D.3d 201, 206 (N.Y. App. Div. 2003), for the general proposition that the existence of a written contract precludes recovery on unjust enrichment. But *Cornhusker* is a breach of contract action with the discussion of the unjust enrichment claim appended (and dismissed) in a single sentence. *Id.* In any event, the only authority cited by *Cornhusker* to dismiss the unjust enrichment claim is *Clark-Fitzpatrick*. In that case, it was "undisputed" that the parties entered into an agreement which "specifically provid[ed]" for the actions for which the plaintiff sought recovery under its unjust enrichment theory. *Clark-Fitzpatrick*, 70 N.Y.2d at 389. Google makes no argument that its agreements with Plaintiffs "specifically provide" for Google's anticompetitive and fraudulent actions. To the extent there could be any question about the scope of the parties' contracts, that would be an issue for the trier of fact to resolve. *See Net2Globe Int'l, Inc. v. Time Warner Telecom of N.Y.*, 273 F. Supp. 2d 436, 466 (S.D.N.Y. 2003) ("[A] claim of unjust enrichment may serve as a basis for recovery should a trier of fact determine . . . that the contractual obligations did not encompass the events underlying the asserted basis for [plaintiff's] unjust enrichment claim.").

*Second*, the Plaintiffs allege that Google profited at their expense by taking more of their inventory for its tools at lower prices; this Court should disregard Google's attempted obfuscation of the issue. Google argues that "Plaintiffs have made no attempt to allege how buy-side improvements unjustly enriched Google or how any unjust benefit to Google came at the expense of Plaintiffs in particular" because "Plaintiffs acknowledge [that Bernanke, Alchemist, and Poirot] were buy-side optimization that increased Google Ads advertisers' access to inventory." MDL Dkt. No. 1221 at 4 (citing *Weaver v. Indymac Fed. Bank, FSB*, 2010 WL 7634134, at *7 (S.D.N.Y. June 8, 2010), *report and recommendation adopted* 2011 WL 4526404 (S.D.N.Y. Sep. 29, 2011), *aff'd*, 488 F. App'x 522 (2d Cir. 2012)). But the complaints are clear in identifying the reduced prices paid to publishers as a result of these programs redounded to

Kᴇʟʟᴏɢɢ, Hᴀɴsᴇɴ, Tᴏᴅᴅ, Fɪɢᴇʟ & Fʀᴇᴅᴇʀɪᴄᴋ, ᴘ.ʟ.ʟ.ᴄ.

The Honorable P. Kevin Castel
November 14, 2025
Page 9

Google's benefit directly through increased sales through Google's own tools. *See*, *e.g.*, People Compl. ¶ 164 ("In an internal study, Google found that Bernanke could depress a publisher's revenue by upwards of 40%. Meanwhile, Google estimated that Bernanke made it many hundreds of millions of dollars in additional profit."); Business Insider Compl. ¶ 163 (same); Slate Compl. ¶ 162 (same).

In any event, Google's citation to *Weaver*—a case in which a pro se purchaser of real property sought to recover against the seller, mortgage company, brokers, and a number of other defendants—offers little guidance. Any claim of unjust enrichment against the seller there was precluded by the sale contract, and otherwise the "Plaintiff [did] no more than speculate that unspecified 'defendants' [had] been unjustly enriched at Plaintiff's expense." 2010 WL 7634134, at *7. That is not the case here, where Plaintiffs have alleged how Google's manipulations benefited Google's buying tools (and therefore Google) at Plaintiffs' expense. *See*, *e.g.*, People Compl. ¶ 281 ("Google would secretly depress bids on non-Google exchanges to coerce publishers to sell inventory to AdX (e.g., Project Poirot)."); Business Insider Compl. ¶ 280 (same); Slate Compl. ¶ 281 (same).

## V.  Google Should Not Be Permitted To Move To Dismiss Allegations that Do Not Exist

The portion of Google's letter directed to Exchange Bidding mischaracterizes Plaintiffs' allegations. Google asserts (at 5) that "[t]his Court has ruled on multiple occasions that Exchange Bidding was not anticompetitive conduct," and for that reason "Plaintiffs' federal antitrust claims concerning Exchange Bidding should thus be rejected." That is a red herring: Plaintiffs do not allege that Exchange Bidding was anticompetitive conduct. In their complaints, Plaintiffs identify Exchange Bidding, identify how Google misrepresented Exchange Bidding to publishers, and allege those misrepresentations support their UDAP claims. *See*, *e.g.*, Business Insider Compl. ¶¶ 189-91, 267. Google thus asks this Court to reject allegations that do not exist. Allowing Google to move on that basis would be wasteful.

* * *

Google's premotion letter raises fact-intensive questions pertaining to Plaintiffs' state law claims which will be better resolved after this Court has decided the summary judgment motion requested by Google in the Daily Mail and Gannett cases. This Court should defer resolution of these issues until that time. If the Court is inclined to set a briefing schedule now, Plaintiffs propose that it should align with the summary judgment briefing schedule in the Daily Mail and Gannett cases.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable P. Kevin Castel
November 14, 2025
Page 10

Respectfully submitted,

/s/ *John Thorne*
John Thorne
Daniel G. Bird
Bethan R. Jones
Christopher C. Goodnow
Mark P. Hirschboeck
Eliana Margo Pfeffer
Eric J. Maier
Sven E. Henningson
KELLOGG, HANSEN, TODD, FIGEL
  & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, DC 20036
Tel.: (202) 326-7900
Fax: (202) 326-7999
Email: jthorne@kellogghansen.com
      dbird@kellogghansen.com
      bjones@kellogghansen.com
      cgoodnow@kellogghansen.com
      mhirschboeck@kellogghansen.com
      epfeffer@kellogghansen.com
      emaier@kellogghansen.com
      shenningson@kellogghansen.com

*Counsel for Dotdash Meredith Inc., Meredith
Operations Corporation, Insider, Inc., and
The Slate Group LLC*

cc:   All Counsel of Record via ECF