### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE: GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION** | **No. 1:21-md-3010 (PKC)** |

*This Document Relates To:*

| | |
|---|---|
| **DOTDASH MEREDITH INC. A/K/A PEOPLE INC. and MEREDITH OPERATIONS CORPORATION,** <br><br>                ***Plaintiffs,*** <br><br>    **v.** <br><br> **GOOGLE LLC and ALPHABET INC.,** <br><br>                ***Defendants.*** | **No. 1:25-cv-07194 (PKC)** |

| | |
|---|---|
| **INSIDER, INC.,** <br><br>                ***Plaintiff,*** <br><br>    **v.** <br><br> **GOOGLE LLC and ALPHABET INC.,** <br><br>                ***Defendants.*** | **No. 1:25-cv-07409 (PKC)** |

| | |
|---|---|
| **THE SLATE GROUP LLC,** <br><br>                ***Plaintiff,*** <br><br>    **v.** <br><br> **GOOGLE LLC and ALPHABET INC.,** <br><br>                ***Defendants.*** | **No. 1:25-cv-07697 (PKC)** |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS GOOGLE LLC AND ALPHABET INC.'S MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 2

I.     Plaintiffs' Deceptive Acts Or Practices Claims Should Be Dismissed ............................. 3

     A.    Plaintiffs Fail to Allege Consumer-Oriented Conduct ............................................ 3

     B.    Plaintiffs Fail to Allege "Materially Misleading" Conduct .................................... 5

           1.    Dynamic Allocation .................................................................................... 5

           2.    Enhanced Dynamic Allocation ................................................................... 6

           3.    Last Look and Minimum Bid to Win ......................................................... 7

           4.    Bernanke ..................................................................................................... 8

           5.    Unified Pricing Rules ................................................................................. 9

           6.    Exchange Bidding ..................................................................................... 10

           7.    Dynamic Revenue Share ........................................................................... 11

     C.    Plaintiffs Fail to Allege the Challenged Practices Caused Actual Injury ............. 12

II.    Plaintiffs Fail To State A Claim For Fraud ..................................................................... 14

     A.    Plaintiffs Fail to Satisfy the Particularity Requirement of Rule 9(b) .................... 14

     B.    Google Had No Duty to Disclose Information to Plaintiffs ................................... 17

     C.    Plaintiffs Fail to Plead Justifiable Reliance ......................................................... 18

III.   Plaintiffs' Unjust Enrichment Claims Should Be Dismissed .......................................... 20

     A.    Plaintiffs' Unjust Enrichment Claims are
          Precluded by the Parties' Written Contracts ......................................................... 20

     B.    Plaintiffs Fail to Allege a Nexus to an Expense They Suffered ........................... 21

     C.    Plaintiffs' Unjust Enrichment Claims
          are Duplicative of Their NY UDAP Claims .......................................................... 23

IV.   Plaintiffs' Unjust Enrichment And NY UDAP Claims Are Time-Barred ....................... 24

CONCLUSION ........................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Am. Home Mortg. Servicing, Inc.*,
  947 F. Supp. 2d 222 (E.D.N.Y. 2013) ...............................................................6, 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................................3

*Barreto v. Westbrae Nat., Inc.*,
  518 F. Supp. 3d 795 (S.D.N.Y. 2021).............................................................3, 24

*Basso v. New York Univ.*,
  2018 WL 2694430 (S.D.N.Y. June 5, 2018) .......................................................24

*Belin v. Weissler*,
  1998 WL 391114 (S.D.N.Y. July 14, 1998) ........................................................18

*Bildstein v. MasterCard Int'l Inc.*,
  329 F. Supp. 2d 410 (S.D.N.Y. 2004)..................................................................12

*Bono v. Monarch Life Ins. Co.*,
  2006 WL 839412 (W.D.N.Y. Mar. 27, 2006).........................................................4

*Borenkoff v. Buffalo Wild Wings, Inc.*,
  2018 WL 502680 (S.D.N.Y. Jan. 19, 2018) ........................................................24

*Celestin v. Martelly*,
  698 F. Supp. 3d 443 (E.D.N.Y. 2023) .................................................................13

*Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.*,
  2015 WL 4191419 (S.D.N.Y. July 10, 2015),
  *aff'd,* 837 F.3d 146 (2d Cir. 2016)......................................................................21

*Colella v. Atkins Nutritionals, Inc.*,
  348 F. Supp. 3d 120 (E.D.N.Y. 2018) ............................................................12, 14

*Coombs v. Jervier*,
  74 A.D.3d 724 (N.Y. App. Div. 2010) .................................................................25

*Corsello v. Verizon NY, Inc.*,
  967 N.E.2d 1177 (N.Y. 2012)........................................................................23, 25

*Coty, Inc. v. L'Oreal S.A.*,
  320 F. App'x 5 (2d Cir. 2009) ............................................................................20

*Dafofin Holdings S.A. v. Hotelworks.com, Inc.*,
   2001 WL 940632 (S.D.N.Y. Aug. 17, 2001) ............................................................6

*DeBlasio v. Merrill Lynch & Co*,
   2009 WL 2242605 (S.D.N.Y. July 27, 2009) .......................................................22

*Dixon v. Ford Motor Co.*,
   2015 WL 6437612 (E.D.N.Y. Sept. 30, 2015) ................................................8, 10

*Dwyer v. Allbirds, Inc.*,
   598 F. Supp. 3d 137 (S.D.N.Y. 2022)...................................................................23

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
   837 F. Supp. 2d 162 (S.D.N.Y. 2011) ..................................................................15

*Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs.*,
   328 F. Supp. 2d 443 (S.D.N.Y. 2004)....................................................................5

*Fin. Guar. Ins. Co. v. Putnam Advisory Co.*,
   2020 WL 5518146 (S.D.N.Y. Sept. 14, 2020).......................................................17

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013)...................................................................................8

*Foto Elec. Supply Co. v. Marut Enters. LLC*,
   777 F. Supp. 3d 179 (S.D.N.Y. 2025)..................................................................11

*Fusco v. Uber Techs., Inc.*,
   2018 WL 3618232 (E.D. Pa. July 27, 2018).........................................................7

*Gaidon v. Guardian Life Ins. Co. of Am.*,
   750 N.E.2d 1078 (N.Y. 2001) ..............................................................................25

*Gale v. IBM Corp.*,
   9 A.D.3d 446 (2d Dep't 2004) ...............................................................................13

*Golden Pac. Bancorp v. FDIC*,
   273 F.3d 509 (2d Cir. 2001)..................................................................................24

*Granite Partners, L.P. v. Bear, Stearns & Co.*,
   58 F. Supp. 2d 228 (S.D.N.Y. 1999).....................................................................19

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
   277 F. Supp. 2d 269 (S.D.N.Y. 2003)....................................................................4

*Harris v. Dutchess Cnty. Bd. of Co-op. Educ. Servs.*,
   25 N.Y.S.3d 527 (N.Y. Sup. Ct. 2015) ................................................................12

*Hayrioglu v. Granite Cap. Funding, LLC*,
  794 F. Supp. 2d 405 (E.D.N.Y. 2011) ...................................................................19

*Hernandez v. Zenlen, Inc.*,
  2025 WL 1070331 (S.D.N.Y. Apr. 9, 2025)............................................................11

*Hinterberger v. Catholic Health Sys., Inc.*,
  536 Fed. Appx. 14 (2d Cir. 2013)...........................................................................23

*Kermanshah v. Kermanshah*,
  580 F. Supp. 2d 247 (S.D.N.Y. 2008)......................................................................24

*Klausner v. Annie's, Inc.*,
  581 F. Supp. 3d 538 (S.D.N.Y. 2022)...............................................................14, 16

*Kommer v. Bayer Consumer Health*,
  252 F. Supp. 3d 304 (S.D.N.Y. 2017)........................................................................4

*Lerner v. Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir. 2006).......................................................................................3

*Lokai Holdings, LLC v. Twin Tiger USA, LLC*,
  306 F. Supp. 3d 629 (S.D.N.Y. 2018)........................................................................4

*Lutin v. New Jersey Steel Corp.*,
  1996 WL 636037 (S.D.N.Y. Nov. 1, 1996)..............................................................18

*Manchanda v. Google*,
  2016 WL 6806250 (S.D.N.Y. Nov. 16, 2016).....................................................22, 23

*Melendez v. Sirius XM Radio, Inc.*,
  50 F.4th 294 (2d Cir. 2022) .....................................................................................11

*In re Merrill Lynch Auction Rate Sec. Litig.*,
  851 F. Supp. 2d 512 (S.D.N.Y. 2012),
  *aff'd sub nom. Louisiana Pac. Corp. v. Merrill Lynch & Co.*,
  571 F. App'x 8 (2d Cir. 2014) ..................................................................................14

*Miller v. HSBC Bank U.S.A., N.A.*,
  2015 WL 585589 (S.D.N.Y. Feb. 11, 2015)..............................................................4

*Morales v. Apple, Inc.*,
  2023 WL 5579929 (S.D.N.Y. Aug. 29, 2023).............................................................3

*Murray Eng'g P.C. v. Remke*,
  2018 WL 3773991 (S.D.N.Y. Aug. 9, 2018).............................................................23

*N. Fork Partners Inv. Holdings, LLC v. Bracken*,
　　2020 WL 6899486 (S.D.N.Y. Nov. 23, 2020) ........................................................15, 16, 17

*Negrete v. Citibank, N.A.*,
　　237 F. Supp. 3d 112 (S.D.N.Y. 2017) ..................................................................15, 19, 20

*Nelson v. MillerCoors, LLC*,
　　246 F. Supp. 3d 666 (E.D.N.Y. 2017) ...............................................................................8

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*,
　　537 F.3d 168 (2d Cir. 2008) ............................................................................................23

*Network Enters., Inc. v. Reality Racing, Inc.*,
　　2010 WL 3529237 (S.D.N.Y. Aug. 24, 2010) .................................................................21

*Newman v. L.F. Rothschild, Unterberg, Towbin*,
　　651 F. Supp. 160 (S.D.N.Y. 1986) ....................................................................................5

*Oden v. Bos. Sci. Corp.*,
　　330 F. Supp. 3d 877 (E.D.N.Y. 2018) ........................................................................12, 13

*Paraco Gas Corp. v. Travelers Cas. & Sur. Co. of Am.*,
　　51 F. Supp. 3d 379 (S.D.N.Y. 2014) ...............................................................................19

*Pasternack v. Lab'y Corp. of Am. Holdings*,
　　59 N.E.3d 485 (N.Y. 2016) ..............................................................................................16

*Prysm Grp., LLC v. Emeritus Inst. of Mgmt. PTE LTD*,
　　2025 WL 1827274 (S.D.N.Y. July 2, 2025) .....................................................................18

*Ramiro Aviles v. S & P Global, Inc.*,
　　380 F. Supp. 3d 221 (S.D.N.Y. 2019) ..............................................................................23

*Royal Host Realty, LLC v. 793 Ninth Ave. Realty, LLC*,
　　192 F. Supp. 3d 348 (S.D.N.Y. 2016) ..............................................................................23

*Silvester v. Selene Fin., LP*,
　　2019 WL 1316475 (S.D.N.Y. Mar. 21, 2019) ...................................................................7

*Tasini v. AOL, Inc.*,
　　851 F. Supp. 2d 734 (S.D.N.Y. 2012),
　　*aff'd*, 505 F. App'x 45 (2d Cir. 2012) ..............................................................................11

*Tomasino v. Estee Lauder Cos. Inc.*,
　　44 F. Supp. 3d 251 (E.D.N.Y. 2014) ................................................................................11

*United States v. Google LLC*,
　　778 F. Supp. 3d 797 (E.D. Va. 2025) ...............................................................................16

*Valley Juice Ltd., v. Evian Waters of France, Inc.*,
   87 F.3d 604 (2d Cir. 1996)......................................................................................21

*Vista Food Exch., Inc. v. Champion Foodservice, LLC*,
   124 F. Supp. 3d 301 (S.D.N.Y. 2015)......................................................................20

*Waksman v. Cohen*,
   2002 WL 31466417 (S.D.N.Y. Nov. 4, 2002) .........................................................19

*Wawa, Inc. v. Mastercard Int'l, Inc.*,
   2023 WL 6147177 (S.D.N.Y. Sept. 20, 2023)........................................................4, 5

*Weight Watchers Int'l, Inc. v. Noom, Inc.*,
   403 F. Supp. 3d 361 (S.D.N.Y. 2019) (Castel, J.) ....................................................6

*Wiedis v. Dreambuilder Invs., LLC*,
   268 F. Supp. 3d 457 (S.D.N.Y. 2017).......................................................................24

*Wolff Off. Equip. Corp. v. Wang Lab'ys, Inc.*,
   1987 WL 26844 (S.D.N.Y. Nov. 30, 1987)................................................................16

*Yuille v. Uphold HQ, Inc.*,
   686 F. Supp. 3d 323 (S.D.N.Y. 2023).............................................................7, 9, 10

## Statutes and Other Authorities

Fed. R. Civ. P. 8, 9 ........................................................................................... *passim*

## INTRODUCTION

More than four years after their counsel first filed a complaint for Daily Mail in this multidistrict litigation, Plaintiffs now assert their own nearly identical state law claims for fraud, deceptive practices, and unjust enrichment.[1] When Google sought permission to dismiss Daily Mail and Gannett's corresponding state law claims over a year and a half ago, Daily Mail and Gannett sought leave to amend them, and then asked the Court to defer addressing until the summary judgment stage those claims' compliance with Federal Rules of Civil Procedure 8 and 9. ECF No. 784. Plaintiffs now repackage those same flawed claims, which, like the state law claims Daily Mail and Gannett asserted before them, fail to state a claim for relief:

*First*, Plaintiffs' claims under New York General Business Law on Unlawful Deceptive Acts or Practices Sections 349 and 350 ("NY UDAP") fail to meet the notice requirements of Rule 8(a). Plaintiffs do not allege the purported deception was "consumer-oriented," and they do not identify any "materially misleading" statements that were the source of any injury. In short, they fail to plead *any* of the required elements to state a NY UDAP claim. To the contrary, Plaintiffs' allegations demonstrate that their grievances have nothing to do with the sort of public harm this statute was intended to address.

*Second*, Plaintiffs' fraud claims fall well short of the particularized pleading that Rule 9(b) requires. Pleading fraud requires the Plaintiffs to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." ECF No. 719 at 4 (quoting *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016)). Despite their counsel's

---

[1] "Plaintiffs" are Dotdash Meredith Inc. a/k/a People Inc. and Meredith Operations Corporation (together, "People"), Insider, Inc. ("Insider"), and The Slate Group LLC ("Slate"). Plaintiffs' Complaints for Damages and Injunctive Relief are referred to by the respective Plaintiff's name.

familiarity with the facts based on the voluminous discovery record in the MDL, Plaintiffs fail to plead fraud with particularity: they do not specify what the statements were, who made them, when and where they were made, and why they were false. Nor can Plaintiffs circumvent this obligation by relying on Google's purportedly fraudulent omissions because they have failed to allege that Google had a duty to disclose information to them. Plaintiffs' fraud claims also fail for the independent reason that Plaintiffs have not pleaded reasonable reliance. As sophisticated entities, Plaintiffs had an enhanced duty to use information available to them to uncover Google's alleged misrepresentations. Their failure to make any allegations of having discharged that duty precludes them from alleging that they reasonably relied on Google.

*Third*, Plaintiffs' unjust enrichment claims fail because Plaintiffs' Complaints concede that this dispute arises out of the parties' contracts. These claims also fail because (i) they duplicate Plaintiffs' NY UDAP claims, and (ii) Plaintiffs do not allege the required nexus between any purported enrichment to Google and any purported detriment to themselves.

*Finally*, even if Plaintiffs had sufficiently stated their NY UDAP and unjust enrichment claims (they have not), their claims are untimely because they accrued well before the three-year statute of limitations period applicable to those claims.

For all these reasons and those that follow, the Court should dismiss Plaintiffs' state law claims in their entirety.

## ARGUMENT

Plaintiffs fail to meet their burden of asserting plausible state law claims. Under Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)). Here, Plaintiffs offer nothing more than a series of "'naked assertion[s]' devoid of 'further factual enhancement'" that they were harmed by unspecified misrepresentations, *id.* (quoting *Twombly*, 550 U.S. at 555), leaving it to Google—and this Court—to parse how their unwieldy collection of general grievances meets the elements of their causes of action. Such "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" are precisely the sort of allegations that do not suffice to state a claim. *Id.* at 678.

In addition, for claims sounding in fraud—such as Plaintiffs' fraud and unjust enrichment claims—Rule 9(b) imposes a heightened pleading standard requiring that "the circumstances constituting fraud or mistake shall be stated with particularity." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). At a minimum, this requires Plaintiffs to support their allegations with the who, what, when, where and how of the events at issue. *See id.* All of Plaintiffs' claims are so imprecise, vague, and devoid of facts that they fail to meet Rule 8's notice pleading requirements, much less the heightened particularity that Rule 9(b) requires.

## I.    Plaintiffs' Deceptive Acts Or Practices Claims Should Be Dismissed

Plaintiffs' NY UDAP claims (Count V in their Complaints) should be dismissed. To prevail on their NY UDAP claims, Plaintiffs must allege that Google "engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [Plaintiffs] suffered injury as a result of the allegedly deceptive act or practice." *Morales v. Apple, Inc.*, 2023 WL 5579929, at *2 (S.D.N.Y. Aug. 29, 2023); *see also Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 802 (S.D.N.Y. 2021) (Castel, J.) ("The standard for recovery under [section] 350, while specific to false advertising, is otherwise identical to Section 349."). Plaintiffs fail to allege any of these elements.

### A.    Plaintiffs Fail to Allege Consumer-Oriented Conduct

Plaintiffs do not plausibly allege that Google's conduct was "consumer-oriented." *See, e.g.*, *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 310 (S.D.N.Y. 2017). The "gravamen

3

of [a NY UDAP] complaint must be consumer injury or harm to the public interest." *Lokai Holdings, LLC v. Twin Tiger USA, LLC*, 306 F. Supp. 3d 629, 642 (S.D.N.Y. 2018). Plaintiffs fail to allege such injury for two reasons.

First, Plaintiffs' Complaints focus on the alleged financial harm to *their own businesses* arising out of their individual commercial contracts with Google. *E.g.*, People ¶¶ 261, 268; Insider ¶¶ 260, 267; Slate ¶¶ 258, 265. As courts have consistently recognized, plaintiffs cannot assert a NY UDAP claim in these circumstances because "[a] dispute between businesses [does] not satisfy the consumer-oriented prong under" the NY UDAP—particularly where they arise from a contract between sophisticated parties. *Wawa, Inc. v. Mastercard Int'l, Inc.*, 2023 WL 6147177, at *7 (S.D.N.Y. Sept. 20, 2023); *see also Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003) ("Commercial claimants . . . must allege conduct that has significant ramifications for the public at large in order to properly state a [NY UDAP] claim." (quotations omitted)); *Miller v. HSBC Bank U.S.A., N.A.*, 2015 WL 585589, at *8 (S.D.N.Y. Feb. 11, 2015) ("[Plaintiff] has not alleged damage to the consuming public at large. She has alleged nothing more than injury to herself resulting from a private contractual dispute, which is insufficient to state a [NY UDAP] claim.").[2]

Second, even if Google's alleged conduct could be characterized as "consumer-oriented" (which it cannot), Plaintiffs' NY UDAP claims still fail for the independent reason that Plaintiffs are large, sophisticated businesses, "not the small-time individual consumers [NY UDAP] was intended to protect." *Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs.*, 328 F. Supp. 2d

---

[2] Plaintiffs' conclusory allegations that Google's deceptive conduct was aimed at "publishers" writ large cannot save their deficient NY UDAP claims. "To defeat a motion to dismiss . . . a plaintiff advancing a [NY UDAP] claim . . . must allege *facts* showing injury or potential injury to the public." *Bono v. Monarch Life Ins. Co.*, 2006 WL 839412, at *2 (W.D.N.Y. Mar. 27, 2006) (emphasis in original) (quotations omitted). The Complaints are devoid of facts that plausibly suggest harm to the public at large.

443, 449 (S.D.N.Y. 2004). "[A]llegedly deceptive acts that occur between relatively sophisticated entities with equal bargaining power do not give rise to [NY UDAP] liability." *Id*.; s*ee also Wawa*, 2023 WL 6147177, at *8 ("Even assuming the [alleged deceptive act] is sufficiently consumer-oriented, Wawa's claims also fail because [the allegations] arise from a contract between relatively sophisticated entities with equal bargaining power." (cleaned up)). Because Plaintiffs—three prominent online media companies, *see infra* n.9—are undeniably large, sophisticated businesses that negotiated and entered the commercial contracts with Google on which their claims are based, their NY UDAP claims fail.

### B.  Plaintiffs Fail to Allege "Materially Misleading" Conduct

Plaintiffs' NY UDAP claims are based on alleged misrepresentations or omissions related to seven Google optimizations: (1) Dynamic Allocation ("DA"), (2) Enhanced Dynamic Allocation ("EDA"), (3) Last Look and Minimum Bid to Win ("MBTW"), (4) Bernanke, (5) Unified Pricing Rules ("UPR"), (6) Exchange Bidding, and (7) Dynamic Revenue Share ("DRS"). People ¶¶ 260-73; Insider ¶¶ 259-72; Slate ¶¶ 257-70. But as detailed below, Plaintiffs fail to allege that any of these purported misrepresentations or omissions were "materially misleading."

### 1.  Dynamic Allocation

Plaintiffs allege that Google made misrepresentations concerning DA by purportedly communicating at some unspecified time that DA would generally allow publishers to "maximize yield" and provide a "risk-free way to get the highest real-time revenues for all their non-guaranteed impressions." People ¶ 61; Insider ¶ 60; Slate ¶ 60. Plaintiffs do not, however, explain how any reasonable customer would find such general statements about revenue-maximization "materially misleading." Nor could they. *See, e.g.*, *Newman v. L.F. Rothschild, Unterberg, Towbin*, 651 F. Supp. 160, 163 (S.D.N.Y. 1986) (statement that "[plaintiffs] were going to 'make good money'" not actionable); *Dafofin Holdings S.A. v. Hotelworks.com, Inc.*, 2001 WL 940632, at *4

n.6 (S.D.N.Y. Aug. 17, 2001) (alleged assurance that a hotel was a "great investment" which would make "quick money" was "mere puffery"); *Weight Watchers Int'l, Inc. v. Noom, Inc*., 403 F. Supp. 3d 361, 371 (S.D.N.Y. 2019) (Castel, J.) (statements promoting "'[a] healthier you in 16 weeks' . . . fall comfortably within the category of non-actionable puffery"). Indeed, this Court has previously held in this MDL that similar statements are not actionable as they amount to "little more than a sales pitch." ECF No. 701 at 55 (Google's representation that "monetization on AMP pages 'has been similar or better than ads on mobile sites' . . . does not strengthen any theory of anticompetitive conduct").

### 2.    Enhanced Dynamic Allocation

Plaintiffs allege that Google misrepresented that EDA (i) "would protect [their] direct deals, . . . would not cause [them] to lose revenue from direct deals" and (ii) "did not permit Google to compete with certain sponsorship deals" because those deals would be "immune" from EDA. *See* People ¶¶ 157, 268; Insider ¶¶ 156, 267; Slate ¶¶ 155, 265. But only Slate identifies *any* statements purportedly made by Google about sponsorship deals or the protection of direct deals. Because People and Insider fail to identify a single representation (much less a misrepresentation) by Google concerning EDA, their NY UDAP claims based on this optimization are doomed from the start. *See, e.g.*, *Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 234-35 (E.D.N.Y. 2013) (dismissing NY UDAP claim for lack of "allegations about the specific disclosures [plaintiff] did or did not receive").

Slate's EDA-based claims likewise fail, as the representations it does allege are neither material nor misleading. Slate alleges that Google informed Slate that it would "'protect[] guaranteed ads in all cases.'" Slate ¶ 155. But Slate does not and cannot allege how a reasonable consumer would find such a general statement about "protection" to be materially misleading. *See,*

*e.g., Yuille v. Uphold HQ, Inc.*, 686 F. Supp. 3d 323, 344-45 (S.D.N.Y. 2023) (holding that statements that are not "specific enough to be falsifiable" are not actionable under NY UDAP); *see also Fusco v. Uber Techs., Inc.,* 2018 WL 3618232, at *6 (E.D. Pa. July 27, 2018) ("a claim that a product is 'safe' generally" is not an actionable misrepresentation). Slate's only other alleged misrepresentation purportedly concerning EDA—that "in a presentation on Optimized Competition, Google told Slate that the program 'will not change the price floor of your sponsorship line items or affect their delivery,'"—lacks any plausible basis from which to infer that a reasonable consumer could conclude from this statement that sponsorships "would be completely immune from Enhanced Dynamic Allocation." Slate ¶ 155.

### 3.    Last Look and Minimum Bid to Win

In support of their NY UDAP claims based on Last Look and MBTW, Plaintiffs allege that "in its DFP agreements, Google . . . represented to [them] that it does not use 'data entered by [publishers] . . . that is not generally shared with buyers' . . . 'for purposes of informing bids' made by Google." People ¶ 268(c); Insider ¶ 267(c); Slate ¶ 265(b). But Plaintiffs' vague allegation that Last Look and MBTW "traded on inside information," People ¶ 245; Insider ¶ 244; Slate ¶ 242, does not demonstrate that this language in Google's DFP agreements was in fact false or misleading. Moreover, Plaintiffs ignore the rest of the agreement from which they select the purportedly misleading statement. Indeed, just a few lines above the sentence of the DFP agreement that Plaintiffs selectively quote, Google discloses that it may use "data entered by [publishers] . . . as necessary to provide the Services,"[3] demonstrating that Google's alleged representation was not misleading. Because Plaintiffs make no attempt to allege how their

---

[3] On a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider information from "documents that are referenced in the complaint." *Silvester v. Selene Fin., LP*, 2019 WL 1316475, at *1 n.1 (S.D.N.Y. Mar. 21, 2019).

selectively quoted statement was misleading within the context of the entire DFP agreement, they have not stated a plausible NY UDAP claim for Last Look and MBTW. *See, e.g.*, *Fink v. Time Warner Cable,* 714 F.3d 739, 742 (2d Cir. 2013) ("[I]n determining whether a reasonable consumer would have been misled by a [statement], context is crucial."); *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 674 (E.D.N.Y. 2017) ("The idea that consumers purchase products based on certain of a label's statements or images . . . but are blind to others . . . in close proximity on that label strains credibility.").

### 4.    Bernanke

Plaintiffs assert that (i) certain purported statements about Google running a second-price auction were deceptive due to Bernanke, and (ii) Google's purported failure to disclose the existence of Bernanke and its purported variations was itself deceptive. Neither gives rise to a material misrepresentation.

Plaintiffs allege that "Google falsely represented that AdX ran a true second-price auction, when in reality, Project Bernanke and its variants converted AdX's auction into a manipulated auction." People ¶ 268(f); Insider ¶ 267(f); Slate ¶ 265(e). But Plaintiffs do not identify any specific representations that Google made to this effect. This failure "alone is reason to dismiss [their] misrepresentations claims." *See, e.g.*, *Dixon v. Ford Motor Co*., 2015 WL 6437612, at *8 (E.D.N.Y. Sept. 30, 2015) (dismissing NY UDAP claims where "the complaint never identifies the specific advertisements or statements at issue").

Unable to conjure up any actual misrepresentations made by Google with respect to Bernanke, Plaintiffs instead point to isolated comments that have no connection to any purported impact Bernanke had on AdX's second-price auction. For example, Plaintiffs point to a 2010 statement that "AdX is a second price auction with minimum CPMs set by the publisher." People

¶ 174; Insider ¶ 173; Slate ¶ 172. But Plaintiffs do not—and cannot—allege how Google's launch of Bernanke three years later renders this 2010 statement false or deceptive. To the contrary, Plaintiffs' own allegations demonstrate that AdX continued to operate as a second-price auction following the launch of Bernanke, as they allege that Bernanke optimized Google Ads bids "*before submitting them to the second-price AdX auction*." People ¶ 166; Insider ¶ 165; Slate ¶ 164 (emphasis added). Plaintiffs also make vague reference to unspecified statements in a 2014 research paper. People ¶ 174; Insider ¶ 173; Slate ¶ 172. But this research paper was neither published nor exclusively written by Google employees, and, in any event, it does not discuss or otherwise contain representations about any Google product or the AdX auction.

Plaintiffs also allege that Google failed to disclose that "Bell v.2," which Plaintiffs incorrectly describe as a variation of Bernanke, mitigated the harmful effects of certain multi-calling practices while "Google for years told publishers that multi-calling was an appropriate auction strategy." People ¶ 268(g); Insider ¶ 267(g). But Plaintiffs do not allege how a general statement by Google that multi-calling is an appropriate auction strategy for publishers would be made materially misleading by the existence of a buy-side optimization that curbed the harmful effects of certain multi-calling practices on advertisers. *See Yuille*, 686 F. Supp. 3d at 344-45 (statements not "specific enough to be falsifiable" are not actionable under NY UDAP).

### 5.    Unified Pricing Rules

Plaintiffs allege that Google made "false representations" about UPR because, in a "May 2019 'Best Practices' guide, Google represented that applying multipliers to non-Google bids . . . would not 'maximize yield.'" People ¶ 221; Insider ¶ 220; Slate ¶ 219. Plaintiffs do not allege how Google's launch of UPR in *September 2019* made this statement from Google's *May 2019* guide false or misleading, nor do they explain how a general statement about maximizing yield in a set

of "Best Practices" would be materially misleading to any reasonably sophisticated customer, such as Plaintiffs. *See Yuille*, 686 F. Supp. 3d at 344-45. Plaintiffs' NY UDAP claims therefore fail because they do not point to a single false or misleading statement. *See, e.g.*, *Dixon*, 2015 WL 6437612, at *8.

### 6.    Exchange Bidding

Plaintiffs allege that Google made a "false promise" by "represent[ing] . . . that Exchange Bidding leads to higher revenue because, with a server-side connection, publishers can load ads more quickly on their webpages." People ¶ 268(d); Insider ¶ 267(d); Slate ¶ 265(d). But Plaintiffs do not allege any facts showing that Google made false or deceptive statements regarding Exchange Bidding. *See, e.g.*, *Dixon*, 2015 WL 6437612, at *8 ("[T]he complaint never identifies the specific advertisements or statements at issue. That alone is reason to dismiss plaintiff's misrepresentations claims."). The only example that Plaintiffs provide of an allegedly deceptive statement is a sentence from a blog post in which a Google employee wrote that, "[w]ith Exchange Bidding, publishers *can* increase revenue by allowing multiple exchanges to compete with each other." People ¶ 191 n.4 (emphasis added); Insider ¶ 190 n.4; Slate ¶ 189 n.4. These are the same type of statements the Court previously found amount to "little more than a sales pitch." ECF No. 701 at 55. Moreover, Plaintiffs offer no allegations from which this Court could reasonably infer that a reasonable consumer would interpret this statement as promising that Exchange Bidding *would* lead to higher revenue or that such revenue comes from the reduced ad load time of a server-side connection—indeed, the blog post incorporated into Plaintiffs' Complaints makes no mention of ad load time or the relative latency of client-side header bidding. *See* People ¶ 191 n.4; Insider ¶ 190 n.4; Slate ¶ 189 n.4.

### 7.  Dynamic Revenue Share

Plaintiffs allege that Google failed to disclose DRS when it initially launched and that Google failed to disclose the details of how DRS operated. People ¶ 184; Insider ¶ 183; Slate ¶ 182. But Plaintiffs once again fail to allege any facts suggesting that these purported omissions were materially misleading.[4] Plaintiffs instead allege that, "[h]ad Google disclosed how Dynamic Revenue Share functioned, [they] would have taken steps to counter Google's unfair practices." People ¶ 189; Insider ¶ 188; Slate ¶ 187. Plaintiffs do not attempt to identify what "steps" they purportedly would have taken, and these are precisely the kind of vague and conclusory allegations that do not establish materially misleading conduct to support a NY UDAP claim. *See, e.g.*, *Tomasino v. Estee Lauder Cos. Inc.*, 44 F. Supp. 3d 251, 257-58 (E.D.N.Y. 2014); *Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 745 (S.D.N.Y. 2012), *aff'd*, 505 F. App'x 45 (2d Cir. 2012) (omission was not "material" where "there [wa]s no plausible allegation that the plaintiffs would have acted differently" had the information been disclosed).

Plaintiffs further allege that, at some unspecified point in time, "Google's publicly available website threatened that disabling Dynamic Revenue Share would 'reduce Ad Exchange yield.'" People ¶ 185; Insider ¶ 184; Slate ¶ 183. But Plaintiffs cannot point to any facts suggesting that this broad statement is false.[5] *See Hernandez v. Zenlen, Inc.*, 2025 WL 1070331, at *2 (S.D.N.Y. Apr. 9, 2025) (dismissing claim based on alleged misrepresentation where the complaint "simply states that the challenged statement is false").

---

[4] Moreover, as discussed in Section II.B below, Plaintiffs fail to sufficiently allege Google had a duty to disclose information to Plaintiffs.

[5] Plaintiffs' example that purports to illustrate DRS, People ¶¶ 181-82; Insider ¶¶ 180-81; Slate ¶¶ 179-80, does not move the needle as it is nothing more than a hypothetical unconnected to any facts. *See, e.g., Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 306 (2d Cir. 2022) (a plaintiff "cannot use any hypothetical allegations to 'nudge[] [his] claims across the line from conceivable to plausible'"); *Foto Elec. Supply Co. v. Marut Enters. LLC*, 777 F. Supp. 3d 179, 185 (S.D.N.Y. 2025) (dismissing antitrust claim where allegations were "hypothetical and devoid of particularized facts").

Finally, Plaintiffs allege that "Google's publicly available website now states that 'revenue share optimizations' were 'paused' in September 2019." People ¶ 186; Insider ¶ 185; Slate ¶ 184. Not only are Plaintiffs unable to allege that this statement was misleading, but they do nothing to allege its materiality because they make no attempt to explain how it "involve[d] information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004).

### C.    Plaintiffs Fail to Allege the Challenged Practices Caused Actual Injury

Finally, Plaintiffs' NY UDAP claims fall short because Plaintiffs fail to allege injury caused by Google's alleged misrepresentations. *Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 902 (E.D.N.Y. 2018) ("A claim for deceptive business practices . . . requires facts illustrating a causal connection between some injury to plaintiffs and some misrepresentation made by defendants." (cleaned up)). To the contrary, Plaintiffs' Complaints are devoid of nonconclusory allegations that *any* of Google's alleged misrepresentations *caused* them to suffer a cognizable injury under NY UDAP. *See, e.g.*, People ¶ 271; Insider ¶ 270; Slate ¶ 268.

For instance, in support of their claims based on MBTW/Last Look, Plaintiffs offer a single conclusory statement that, "[h]ad Google disclosed how Last Look operated, [they] would have objected to the practice and taken additional measures to do business with rival exchanges." People ¶ 148; Insider ¶ 147; Slate ¶ 146. But this is precisely the sort of speculative and "conclusory allegations [that] are insufficient to identify a cognizable injury." *Colella v. Atkins Nutritionals, Inc.,* 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018); *see also Harris v. Dutchess Cnty. Bd. of Co-op. Educ. Servs.*, 25 N.Y.S.3d 527, 542 (N.Y. Sup. Ct. 2015) (allegations that plaintiffs would not have enrolled in defendants' program had they known defendants' representations were false did not constitute an "actual injury" sufficient to state a NY UDAP claim because they required the

court "to indulge in impermissible speculation" that plaintiffs "would have done better in another program").

Plaintiffs' allegations in support of their EDA-based claims are similarly deficient, as Plaintiffs merely assert that they "enabled and continued to use Enhanced Dynamic Allocation for many years on the basis of [Google's] representations." People ¶ 158; Insider ¶ 157; Slate ¶ 156. Plaintiffs do not allege what, if anything, they would have done differently absent the purported misrepresentations. *See, e.g., Celestin v. Martelly*, 698 F. Supp. 3d 443, 471 (E.D.N.Y. 2023) (dismissing NY UDAP claims where there were no "allegations that the representations were material to Plaintiffs and that they acted in reliance on those representations"). To the contrary, Plaintiffs acknowledge that they continue to use EDA to this day to receive "live, competitive bids for [their] impressions." People ¶ 162; Insider ¶ 161; Slate ¶ 160.

Plaintiffs' allegations that Google's purported misrepresentations concerning DRS caused identifiable injury are also deficient, as Plaintiffs do not allege that they even *saw* either one of the purported misrepresentations. *See, e.g.*, *Gale v. IBM Corp.*, 9 A.D.3d 446, 447 (2d Dep't 2004) ("If the plaintiff did not see any of [defendant's] statements, they could not have been the cause of [her] injury, there being no connection between the deceptive act and the plaintiff's injury."); *Abraham*, 947 F. Supp. 2d at 234-35 (dismissing NY UDAP claim for lack of "allegations about the specific disclosures [plaintiff] did or did not receive. [Plaintiff] thus has failed to plead that *she* was injured as a result of any Defendant's actions."); *Oden*, 330 F. Supp. 3d at 902 (similar).

Nor do Plaintiffs allege injury due to purported omissions regarding DRS—they merely provide a single conclusory allegation that, "[t]he result to [Plaintiffs] from DRS, and Google's deception about it, was substantial financial injury." People ¶ 189; Insider ¶ 188; Slate ¶ 187.

These are precisely the type of allegations insufficient to establish injury. *See Colella*, 348 F. Supp. 3d at 143.

Finally, Plaintiffs acknowledge they suffered no injury flowing from their Bernanke-based claims. Indeed, they allege that in auctions operating with Bernanke, "publishers *made no more money*" than they otherwise would have without Bernanke. People ¶ 170; Insider ¶ 169; Slate ¶ 168 (emphasis in original). This does not suffice to allege that Plaintiffs *lost* money. Moreover, Plaintiffs' lone reference to Google's study that purportedly concluded that Bernanke "*could* depress a publisher's revenue" also does not show that *Plaintiffs* in fact lost money, and it falls far short of establishing a causal connection between any publisher's revenue and Google's alleged misrepresentations. *See* People ¶ 164; Insider ¶ 163; Slate ¶ 162 (emphasis added).

## II.    Plaintiffs Fail To State A Claim For Fraud

The Court should dismiss Plaintiffs' common law fraud claims (Count VI in their Complaints) for at least two reasons. First, Plaintiffs do not plead their fraud claims with the requisite particularity. Second, Plaintiffs have failed to allege reasonable reliance.

### A.    Plaintiffs Fail to Satisfy the Particularity Requirement of Rule 9(b)

A plaintiff asserting a fraud claim must: "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Klausner v. Annie's, Inc.*, 581 F. Supp. 3d 538, 551 (S.D.N.Y. 2022) (quotations omitted); Fed. R. Civ. P. 9(b). Allegations that fail to "include the who, what, when, where and why of each statement alleged to be fraudulent" are insufficient. *In re Merrill Lynch Auction Rate Sec. Litig.*, 851 F. Supp. 2d 512, 533 (S.D.N.Y. 2012), *aff'd sub nom. Louisiana Pac. Corp. v. Merrill Lynch & Co.*, 571 F. App'x 8 (2d Cir. 2014).

Plaintiffs do not specify which of Google's alleged misrepresentations underlie their fraud

claims. Rather, they each generally allege that "Google falsely represented to [Plaintiffs] that various features of DFP would serve [Plaintiffs'] interests." People ¶ 275; Insider ¶ 274; Slate ¶ 272. To the extent this vague allegation is intended to refer to the purported misrepresentations Plaintiffs claim gives rise to a NY UDAP claim, they have failed at the outset to allege a material misrepresentation, as required to plead and prove common law fraud. *See supra* §§ I.B.1-7 (detailing Plaintiffs' failure to allege how Google's alleged misrepresentations concerning DA, EDA, Last Look, MBTW, Bernanke, Bell v.2, UPR, Exchange Bidding, and DRS were false or misleading); *see also, e.g.*, *N. Fork Partners Inv. Holdings, LLC v. Bracken*, 2020 WL 6899486, at *15 (S.D.N.Y. Nov. 23, 2020) (dismissing fraud claim where plaintiff "failed to plead . . . why [the alleged misrepresentations] were fraudulent"). Moreover, those allegations do nothing to satisfy Rule 9(b)'s "who, what, when, where, and why" requirements.

For example, in all but two instances,[6] Plaintiffs do not identify who at Google made the alleged misrepresentations. *See* People ¶¶ 174, 191 n.4; Insider ¶¶ 173, 190 n.4; Slate ¶¶ 172, 189 n.4. At times, Plaintiffs attribute statements to "Google," *e.g.*, People ¶ 61; Insider ¶ 60; Slate ¶ 60, at others, they attribute statements to unnamed "Google executives," *e.g.*, People ¶ 174; Insider ¶ 173; Slate ¶ 172. None of these allegations are sufficient. *See, e.g.*, *Negrete v. Citibank, N.A.*, 237 F. Supp. 3d 112, 122 (S.D.N.Y. 2017) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to defendants." (quotations omitted)); *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 199 (S.D.N.Y. 2011) (allegation of false statements by "various officers and employees of [corporate defendant]" did not adequately identify speakers). Similarly, for nearly every one of Google's alleged

---

[6] The two allegations that do identify the speaker, *see* People ¶¶ 174, 191 n.4; Insider ¶¶ 173, 190 n.4; Slate ¶¶ 172, 189 n.4, are nevertheless deficient under Rule 9(b) because, as explained above, Plaintiffs fail to allege that either statement was false or misleading. *See supra* §§ I.B.4 & 6.

misrepresentations, Plaintiffs fail to identify when and where the statements were made. *See, e.g.*, *Wolff Off. Equip. Corp. v. Wang Lab'ys, Inc.*, 1987 WL 26844, *3 (S.D.N.Y. Nov. 30, 1987) (dismissing fraud claims where plaintiff failed to "plead specifically the time and place of the alleged fraudulent misrepresentation").

The sole alleged misstatement that all Plaintiffs expressly advance in support of their fraud claims is that "Google justified UPR because it supposedly 'help[ed] . . . publisher[s] . . . simplify their decision making, receive better matches, and increase revenue,' but admitted internally that UPR was 'an opportunity to significantly limit the ability of publishers to set floor prices.'" People ¶ 275; Insider ¶ 274; Slate ¶ 272. But this alleged statement is not even a statement made by Google; it is a statement made by Judge Brinkema without quote or reference to any representation made by Google. *See United States v. Google LLC*, 778 F. Supp. 3d 797, 871 (E.D. Va. 2025). Plaintiffs therefore cannot meet their burden of "identif[ying] the speaker" nor "where and when the statements . . . were made," *Klausner*, 581 F. Supp. 3d at 551, absent allegations about what *Google* said *to them*. *See Pasternack v. Lab'y Corp. of Am. Holdings*, 59 N.E.3d 485, 493 (N.Y. 2016) ("[A] fraud claim requires the plaintiff to have relied upon a misrepresentation by a defendant . . . a situation which does not occur where, as here, the misrepresentations were not communicated to, or relied on, by plaintiff.").

Nor do Plaintiffs provide any indication of when or where the purported representations were made, which runs afoul of Rule 9(b)'s requirement that the plaintiff "plead with sufficient particularity the time [and] place . . . of [the] allegedly fraudulent misrepresentations." *Wolff*, 1987 WL 26844, at *3; s*ee also N. Fork Partners*, 2020 WL 6899486, at *15 (allegations of statements "made 'throughout April and May of 2018'" were "deficien[t]" because they "failed to plead when each fraudulent statement was made").

16

In addition, Slate alone alleges a second allegedly fraudulent statement in support of its fraud claims: that "Google represented that Optimized Competition would 'bring incremental revenue,' 'drive more revenue' to Slate, and have only 'very minimal impact' on direct deals." Slate ¶ 274. This allegation, too, fails to satisfy Rule 9(b) because it does not identify the speaker, as well as where and when these alleged statements were made. And Slate's purported explanation of why these alleged representations were false also misses the mark. Slate alleges: "As Google was aware, Optimized Competition allowed AdX to outbid direct deals based on a deflated temporary CPM." *Id.* But even assuming that is true, it does not mean Google made a material misstatement or omission by purportedly saying that "Optimized Competition would 'bring incremental revenue,' 'drive more revenue' to Slate, and have only 'very minimal impact' on direct deals." *Id.* This allegation is thus also "deficien[t]" under Rule 9(b) because Plaintiffs "failed to plead . . . why [the alleged misrepresentations] were fraudulent." *N. Fork Partners*, 2020 WL 6899486, at *15.

### B.    Google Had No Duty to Disclose Information to Plaintiffs

Plaintiffs' general allegations that Google fraudulently concealed information from them, *see, e.g.*, People ¶ 192; Insider ¶ 191; Slate ¶ 190, do not help them surmount their Rule 9(b) burden because pleading fraud by omission requires Plaintiffs to allege a duty to disclose. *See, e.g.*, *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 2020 WL 5518146, at *87 (S.D.N.Y. Sept. 14, 2020) ("If a plaintiff is proceeding under a material omission theory, it must further allege that the defendant had a duty to disclose material information." (cleaned up)). Plaintiffs have not alleged that Google owed them any such duty: they have not alleged that they had a fiduciary relationship

with Google or that Google made "partial or ambiguous statement[s]." *Id.* at *88.[7]

Plaintiffs' only argument that Google had a duty to disclose information to them is the so-called "special facts doctrine,"[8] ECF No. 1240 at 3-4, but that doctrine has no application here because Plaintiffs have not alleged that Google knew that Plaintiffs were "acting on the basis of mistaken knowledge." *Fin. Guar.*, 2020 WL 5518146, at *88. Indeed, no Plaintiff alleges that Google knew the specific reasons that Plaintiffs chose to use Google's products. *See, e.g., Prysm Grp., LLC v. Emeritus Inst. of Mgmt. PTE LTD*, 2025 WL 1827274, at *12 (S.D.N.Y. July 2, 2025) (declining to apply special facts doctrine and dismissing fraudulent concealment claim where plaintiff failed to adequately allege that "Defendants knew that [Plaintiff] was acting on the basis of mistaken knowledge."). Nor have Plaintiffs adequately alleged that any of Google's purported misrepresentations were false or misleading, *see supra* §§ I.B.1-7, so there is no basis from which to infer that Plaintiffs' knowledge was mistaken. Thus, Plaintiffs have failed to plead that Google had a duty to disclose information to Plaintiffs, and Google's allegedly fraudulent omissions cannot be the basis for Plaintiffs' fraud claims.

### C.     Plaintiffs Fail to Plead Justifiable Reliance

Plaintiffs' fraud claims also fail because Plaintiffs have not pleaded they "reasonably relied" on any of the alleged misrepresentations or omissions. *Fin. Guar.*, 2020 WL 5518146, at *83. "[R]eliance must be pleaded with particularity, pursuant to Rule 9(b)," *Lutin v. New Jersey Steel Corp.*, 1996 WL 636037, at *7 (S.D.N.Y. Nov. 1, 1996) (cleaned up), and "the asserted reliance must be found to be justifiable," *Belin v. Weissler*, 1998 WL 391114, at *5 (S.D.N.Y. July

---

[7] A duty to disclose may arise in three ways: (1) a "fiduciary relationship"; (2) "where a party has made a partial or ambiguous statement, whose full meaning will only be made clear after complete disclosure"; or (3) "under the special facts doctrine." *Id.* at *87-88.

[8] Under the special facts doctrine, a duty to disclose information may arise if a party "possesses superior knowledge, not readily available to [a second party] and knows that the [second party] is acting on the basis of mistaken knowledge." *Fin. Guar.*, 2020 WL 5518146, at *88.

14, 1998) (granting motion to dismiss where "[plaintiff's] reliance was neither justified nor reasonable").

Here, Plaintiffs' conclusory allegations of reliance, *see, e.g.*, People ¶ 136; Insider ¶ 135; Slate ¶ 134, fall far short of meeting the particularity requirements of Rule 9(b). Moreover, as large, sophisticated publishers,[9] Plaintiffs have an obligation to "make use of the means of verification that were available to [them]." *Paraco Gas Corp. v. Travelers Cas. & Sur. Co. of Am.*, 51 F. Supp. 3d 379, 395 (S.D.N.Y. 2014); *Negrete*, 237 F. Supp. 3d at 124 ("Courts impose enhanced duties on sophisticated parties before deeming their reliance reasonable."). This means that Plaintiffs have a duty to "conduct [their] own diligent research" and "make affirmative efforts to protect themselves from misrepresentations." *Granite Partners, L.P. v. Bear, Stearns & Co.*, 58 F. Supp. 2d 228, 259 (S.D.N.Y. 1999). Plaintiffs' Complaints lack any plausible allegations that they satisfied this duty.

For example, as discussed above, the only express misrepresentation that Plaintiffs allege in support of their fraud claims is that Google misrepresented UPR's effect on Plaintiffs' revenue. People ¶ 275; Insider ¶ 274; Slate ¶ 272. Slate also alleges that Google misrepresented Optimized Competition's effect on its revenue. Slate ¶ 274. But Plaintiffs had the information needed to track any purported "effects" on their revenue. *See Hayrioglu v. Granite Cap. Funding, LLC*, 794 F. Supp. 2d 405, 413-14 (E.D.N.Y. 2011) (dismissing fraud claim based on defendant's alleged misstatement of plaintiff's income as "it is difficult to contemplate how the plaintiff could have

---

[9] *See* People ¶ 4 (People "is the largest publisher in the nation with more than 40 renowned brands"), ¶ 6 (People "uses sophisticated technology across its properties to auction off ad space"); Insider ¶ 4 ("Insider is a global news brand renowned for its coverage of business, technology, and innovation, helping millions of readers get more out of their careers and lives through award-winning journalism."), ¶ 6 (Insider "uses sophisticated technology across its properties to auction off ad space"); Slate ¶ 4 ("Slate has established itself as a prominent digital publication, well-regarded for its news, political analysis, cultural commentary, and innovative use of podcasts."), ¶ 5 ("Slate uses sophisticated technology across its web properties and mobile app to auction off ad space").

19

relied on such a statement"); *Waksman v. Cohen*, 2002 WL 31466417, at *6 (S.D.N.Y. Nov. 4, 2002) ("New York courts have repeatedly found that reasonable reliance was absent where a party failed to review available records."). Because Plaintiffs "ha[d] access to information that could expose a misrepresentation," their purported reliance on Google is not "sufficiently justifiable to merit legal protection." *Negrete*, 237 F. Supp. 3d at 124.

## III.    Plaintiffs' Unjust Enrichment Claims Should Be Dismissed

Plaintiffs' unjust enrichment claims (Count VII in their Complaints) should be dismissed because (i) the existence of the parties' valid and enforceable contracts governing the dispute bars recovery for unjust enrichment; (ii) Plaintiffs fail to adduce any facts showing the requisite causal connection between Google's purported enrichment and Plaintiffs' expense; and (iii) they are entirely duplicative of Plaintiffs' NY UDAP claims.

### A.    Plaintiffs' Unjust Enrichment Claims are
### Precluded by the Parties' Written Contracts

"[I]t is black-letter law in New York that recovery on an equitable theory of unjust enrichment is not permitted where the matter at issue is covered by a valid, enforceable contract." *Coty, Inc. v. L'Oreal S.A.*, 320 F. App'x 5, 6 (2d Cir. 2009). Because Plaintiffs admit in their Complaints that the "subject matter of the dispute" is governed by their contracts with Google, Plaintiffs' theory of unjust enrichment fails at the threshold. *Vista Food Exch., Inc. v. Champion Foodservice, LLC*, 124 F. Supp. 3d 301, 312 (S.D.N.Y. 2015).

Plaintiffs' unjust enrichment claims arise out of the same subject matter as their contracts with Google—i.e., online auctions run on DFP and AdX. Indeed, Plaintiffs allege they "contracted with Google's New York sales team . . . to license Google's ad-tech products at issue in this Complaint." People ¶ 261; Insider ¶ 260; Slate ¶ 258; *see also* People ¶ 126 (alleging contractual relationship between Google and People relating to DFP and AdX); Insider ¶ 125; Slate ¶ 125.

Plaintiffs also allege Google was unjustly enriched "by manipulating its online advertising auctions" and that "[b]y manipulating auctions run by DFP and intermediated through AdX, Google artificially depressed the price of [their] display advertising inventory to Google's benefit." People ¶¶ 280, 282; Insider ¶¶ 279, 281; Slate ¶¶ 277, 279.

Plaintiffs' conclusory statements that "Google's deceptions extend beyond the specific representations it made in its contracts . . . and concern details that were not disclosed or within the subject matter of the contracts" are unavailing. People ¶ 281; Insider ¶ 280; Slate ¶ 278. As courts have recognized, "it is not necessary that the agreement speak to the precise factual circumstances of the dispute at hand. Instead, it is generally sufficient that the contract speaks to the *subject-matter* at issue." *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co*., 2015 WL 4191419, at *9 (S.D.N.Y. July 10, 2015), *aff'd,* 837 F.3d 146 (2d Cir. 2016); *see also Valley Juice Ltd., v. Evian Waters of France, Inc.*, 87 F.3d 604, 610 (2d Cir. 1996) (rejecting unjust enrichment claim against distributor where parties' relationship was governed by contract, despite fact that alleged deception by distributor either pre-dated contract or involved conduct not specifically anticipated by agreement). It is beyond cavil that the subject matter of Plaintiffs' case is their use of auctions on DFP and AdX to monetize their ad inventory, which is the same subject matter governed by their contracts with Google.

Finally, Plaintiffs' own allegations directly rebut their conclusory statements: they allege misleading statements *in Google's contracts with Plaintiffs. See, e.g.*, People ¶ 148 (alleging that a statement in Google's "DFP and AdX (and now GAM) contracts" was deceptive); Insider ¶ 147; Slate ¶ 146. As a result, Plaintiffs have no unjust enrichment claim.

### B.    Plaintiffs Fail to Allege a Nexus to an Expense They Suffered

This Court should also dismiss Plaintiffs' unjust enrichment claims because Plaintiffs have not met their obligation to plead "a causal 'nexus' between a defendant's enrichment and their own

expense that goes beyond mere 'correlation.'" *Network Enters., Inc. v. Reality Racing, Inc.*, 2010 WL 3529237, at *7 (S.D.N.Y. Aug. 24, 2010) (internal citations omitted); *see also Manchanda v. Google*, 2016 WL 6806250, at *6 (S.D.N.Y. Nov. 16, 2016) (dismissing claim where plaintiff "fail[ed] to plead any clear relationship between Defendants' profit and [plaintiff's] injury").

While Plaintiffs generally contend that lower publisher revenues redound to the benefit of Google, the only connection between Google's "profit" and their "expense" that they allege is related to Bernanke. People ¶ 164 ("In an internal study, Google found that Bernanke could depress a publisher's revenue by upwards of 40%. Meanwhile, Google estimated that Bernanke made it many hundreds of millions of dollars in additional profit."); Insider ¶ 163 (same); Slate ¶ 162 (same). But this falls far short of demonstrating the requisite causal "nexus" between Google's profit and *Plaintiffs'* revenue.

*DeBlasio v. Merrill Lynch & Co* is instructive. 2009 WL 2242605 (S.D.N.Y. July 27, 2009). There, the court found that plaintiffs' allegations that defendant-banks paid customers lower interest rates, and enriched themselves by using those funds to generate profits were insufficient to plead the requisite causal nexus because the claim appeared "to be based on the *correlation* between (1) the reduced rates of interest they allegedly received [as part of defendants' programs] . . . and (2) [d]efendants' increased profits as a result of the implementation of these [p]rograms." *Id.* at *40. Likewise, Plaintiffs' isolated allegation regarding Bernanke does not plead any actual reduction in publisher revenue for any Plaintiff, and the cited general language alleges at most a "correlation" between Google's profit and publishers' revenues generally. That is not enough.

### C.      Plaintiffs' Unjust Enrichment Claims
###          are Duplicative of Their NY UDAP Claims

Finally, even if Plaintiffs had adequately pleaded their unjust enrichment claims,[10] those

claims must still be dismissed as duplicative of their NY UDAP claims. *See Dwyer v. Allbirds,*

*Inc.*, 598 F. Supp. 3d 137, 157 (S.D.N.Y. 2022). "[A]n unjust enrichment cause of action is not

permitted where it is duplicative of other avenues for relief, as is the case here with [Plaintiffs']

multiple overlapping claims." *Manchanda*, 2016 WL 6806250, at *6; *see also Corsello v. Verizon*

*NY, Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012) (unjust enrichment claims are "available only in

unusual situations when, though the defendant has not breached a contract nor committed a

recognized tort, circumstances create an equitable obligation running from the defendant to the

plaintiff").[11]

Claims are considered duplicative if they "arise from the same facts and do not allege

distinct damages." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir.

2008) (internal quotations and citations omitted). Here, the unjust enrichment and NY UDAP

claims arise from the same alleged conduct, *see supra* § I.B., and purportedly resulted in the same

damages—depressed prices on Plaintiffs' display ad inventory.[12] *See* People ¶ 282 ("By

---

[10] Plaintiffs' unjust enrichment claims are premised on Google's alleged "deceptions." *See, e.g.*, People ¶ 281 ("Google's deceptions extend beyond the specific representations it made in its contracts with People"), ¶ 282 (People "relied on Google to operate honest advertising auctions"); Insider ¶¶ 280-81; Slate ¶¶ 278-79. Accordingly, Rule 9(b)'s heightened pleading standard applies. *See Royal Host Realty, LLC v. 793 Ninth Ave. Realty, LLC*, 192 F. Supp. 3d 348, 357 (S.D.N.Y. 2016) (applying Rule 9(b) to unjust enrichment claim "premised on claims of fraudulent conduct"); *Murray Eng'g P.C. v. Remke*, 2018 WL 3773991, at *15 (S.D.N.Y. Aug. 9, 2018). Plaintiffs' unjust enrichment claims fail for the same reason as their fraud claims: they do not identify the what, who, where, when, and why of any alleged misrepresentations. *See supra* § II.A.

[11] Although Plaintiffs' NY UDAP claims are also inadequately pleaded, that does not save their unjust enrichment claims from being dismissed on the grounds that they are improperly duplicative. *See, e.g.*, *Hinterberger v. Catholic Health Sys., Inc.*, 536 Fed. Appx. 14, 17 (2d Cir. 2013) (affirming dismissal of breach of contract claim and, because it duplicated the breach of contract claim, also affirming dismissal of unjust enrichment claim); *see also Corsello*, 967 N.E.2d at 1185 ("[U]njust enrichment is not a catchall cause of action to be used when others fail.").

[12] Plaintiffs cannot save their unjust enrichment claims by purporting to allege them in the alternative. Such pleading only applies when a contract claim is also pleaded, and even that alternate pleading is barred where, as here, all parties admit the existence of contracts governing their relationships. *See supra* § I.B.3; *see, e.g.*, *Ramiro Aviles v. S & P Global, Inc.*, 380 F. Supp. 3d 221, 305 (S.D.N.Y. 2019) ("Although courts will sometimes decline to dismiss an

manipulating auctions run by DFP and intermediated through AdX, Google artificially depressed the price of People Inc.'s display advertising inventory to Google's benefit."); Insider ¶ 281; Slate ¶ 279. As a result, the "essence of [Plaintiffs'] unjust enrichment" claim is "entirely duplicative of" the NY UDAP claims. *Borenkoff v. Buffalo Wild Wings, Inc.*, 2018 WL 502680, at *4-5 (S.D.N.Y. Jan. 19, 2018); *see also Barreto*, 518 F. Supp. at 809 (dismissing unjust enrichment claim that "merely restates [the same] core theory of deception" as NY UDAP claims).

## IV. Plaintiffs' Unjust Enrichment And NY UDAP Claims Are Time-Barred[13]

Plaintiffs' claims for unjust enrichment and NY UDAP (together, the "Time-Barred Claims") are subject to three-year statutes of limitations, which began to run when those claims accrued. *See, e.g.*, *Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 263 (S.D.N.Y. 2008) ("The unjust enrichment limitations period . . . is three years if plaintiff seeks monetary damages."); *Basso v. New York Univ.*, 2018 WL 2694430, at *2-3 (S.D.N.Y. June 5, 2018). People, Insider, and Slate filed their complaints on August 29, September 8, and September 16, 2025, respectively. Accordingly, the Time-Barred Claims are untimely for all Plaintiffs to the extent that they accrued on or before August 29, 2022.[14]

An unjust enrichment claim accrues when the defendant "beg[ins] to pay itself" and be "enriched []or possess[] any of [plaintiffs'] money or property." *Golden Pac. Bancorp v. FDIC*,

---

[13] To the extent Plaintiffs' fraud claims are also based on any of the conduct identified in Appendix A other than Alchemist, UPR, and MBTW, they are also untimely under the six-year statute of limitations on fraud. *See Wiedis v. Dreambuilder Invs., LLC*, 268 F. Supp. 3d 457, 467 (S.D.N.Y. 2017).

[14] Class action tolling cannot save Plaintiffs' state law claims. The majority of the challenged conduct was not mentioned in the earliest publisher class complaints. *See, e.g.*, *In re Google Digital Publisher Antitrust Litig.*, No. 5:20-cv-08984 (N.D. Cal. Dec. 15, 2020), ECF No. 1 (omitting UPRs, Bernanke, etc.). NY UDAP and unjust enrichment claims as to the conducts that were included in those complaints were already untimely when those complaints were filed. *See id.* (alleging harm from DA in 2020, twelve-years after DA was introduced).

273 F.3d 509, 520 (2d Cir. 2001) (cleaned up); *Coombs v. Jervier*, 74 A.D.3d 724, 724 (N.Y. App. Div. 2010) (unjust enrichment claims accrue "upon the occurrence of the wrongful act . . . not from the time the facts constituting the fraud are discovered" (cleaned up)). Similarly, a UDAP claim accrues "when [Plaintiffs have] been injured by a deceptive act or practice," which "occur[s] when [Plaintiffs] [are] first called upon to pay additional" money. *Gaidon v. Guardian Life Ins. Co. of Am.*, 750 N.E.2d 1078, 1083 (N.Y. 2001); *see also Corsello*, 967 N.E.2d at 1185 ("Plaintiffs' injury was suffered when, relying on those omissions and representations, they refrained from demanding [compensation]."). Accordingly, the Time-Barred Claims accrued, at the latest, as of the first auctions following the launch of the challenged conducts or the alleged misrepresentations. As Appendix A shows, Plaintiffs' claims based on the programs on which they appear to bring unjust enrichment and NY UDAP claims are time-barred because the alleged practices all predated 2022. Because those claims are untimely on the face of the Complaints, they should be dismissed.

## CONCLUSION

For the foregoing reasons, Google respectfully requests that this Court dismiss Plaintiffs' state law claims in their entirety.

Dated: November 24, 2025

Respectfully Submitted,

*/s/ Craig M. Reiser*
Craig M. Reiser
Daniel S. Bitton
AXINN, VELTROP & HARKRIDER LLP
630 Fifth Avenue, 33rd Floor
New York, NY 10111
Telephone: (212) 728-2218
Email:  creiser@axinn.com
         dbitton@axinn.com

Bradley D. Justus
AXINN, VELTROP & HARKRIDER LLP
1901 L Street, NW
Washington, DC 20036
Telephone: (202) 469-3532
Email:  bjustus@axinn.com

Justina K. Sessions
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250
Email: justina.sessions@freshfields.com

Eric Mahr
Andrew J. Ewalt
FRESHFIELDS US LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Email:  eric.mahr@freshfields.com
         andrew.ewalt@freshfields.com

*Counsel for Defendants*
*Google LLC and Alphabet Inc.*

**Appendix A: Alleged Dates of Challenged Google Programs**

| Program | Date Allegedly Implemented | Date of Alleged Misrepresentations / Omissions |
|---|---|---|
| DA/Last Look | **2008** (People ¶ 59; Insider ¶ 58; Slate ¶ 58) | **2008** (People ¶¶ 148, 268(c); Insider ¶¶ 147, 267(c); Slate ¶¶ 146, 265(b)) |
| Bernanke | **2013** (People ¶ 164; Insider ¶ 163; Slate ¶ 162) | **2013** (People ¶ 174; Insider ¶ 173; Slate ¶ 172) |
| DRS | **2014** (People ¶ 179; Insider ¶ 178; Slate ¶ 177) | **2016** (People ¶¶ 184-85, 268(e); Insider ¶¶ 183-84, 267(e); Slate ¶¶ 182-83, 265(d)) |
| EDA | **2015** (People ¶ 162; Insider ¶ 161; Slate ¶ 160) | **2015** (People ¶¶ 157-58, 268(a-b); Insider ¶¶ 156-57, 267(a-b); Slate ¶¶ 155-56, 265(a)) |
| Bell v. 2 | **2016** (People ¶¶ 171, 268(g); Insider ¶¶ 170, 267(g); Slate ¶ 169) | **2016** (People ¶¶ 171, 268(g); Insider ¶¶ 170, 267(g); Slate ¶ 169) |
| Poirot | **2018** (People ¶¶ 199, 203; Insider ¶¶ 198, 202; Slate ¶¶ 197, 201) | **2018** (People ¶¶ 199, 203; Insider ¶¶ 198, 202; Slate ¶¶ 197, 201) |
| Alchemist | **2019** (People ¶ 172; Insider ¶ 171; Slate ¶ 170) | **2019** (People ¶ 175; Insider ¶ 174; Slate ¶ 173) |
| UPR | **2019** (People ¶ 215; Insider ¶ 214; Slate ¶ 213) | **2019** (People ¶ 221; Insider ¶ 220; Slate ¶ 219) |
| MBTW | **2019** (People ¶ 193; Insider ¶ 192; Slate ¶ 191) | **Fall 2019** (People ¶¶ 194-96; Insider ¶¶ 193-95; Slate ¶¶ 192-94) |