UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION | No. 1:21-md-03010 (PKC) |

*This Motion Relates To:*

| | |
|---|---|
| RUMBLE CANADA INC., <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE LLC and ALPHABET INC., <br><br> Defendants. | No. 1:24-cv-09904 (PKC) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT GOOGLE LLC AND ALPHABET INC.'S MOTION TO DISMISS
<u>RUMBLE CANADA INC.'S SECOND AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................................1

ARGUMENT ...................................................................................................................................1

    I.    RUMBLE LACKS ANTITRUST STANDING. ............................................................1

        A.    Rumble does not participate in its narrow "web display" markets. ...........................2

        B.    Rumble also lacks customer and competitor standing. ...............................................3

            1.    Rumble is not a customer or competitor in the ad exchange, ad network, and ad-buying tool markets. ....................................................................3

            2.    The ad server allegations would provide standing to challenge only the DFP-AdX tie and the Facebook NBA. ................................................3

            3.    Rumble's status as an online video competitor does not give it antitrust standing because Rumble makes no claim for monopolization of an online video market or for tying affecting an online video market. ........................................................4

    II.    RUMBLE'S CLAIMS BASED ON THE AD NETWORK AND AD-BUYING TOOLS MARKETS FAIL FOR ADDITIONAL REASONS. ........................................4

        A.    Rumble has not plausibly alleged relevant markets for ad networks or ad-buying tools. ......................................................................................................4

        B.    Rumble has not plausibly alleged ad-buying tool monopoly power. ..........................5

    III.    RUMBLE ALLEGES NO CLAIMS BASED ON HARM TO AN ONLINE VIDEO MARKET; ANY SUCH CLAIMS WOULD FAIL FOR LACK OF ALLEGATIONS OF HARM TO COMPETITION. .................................................6

    IV.    RUMBLE'S TYING ALLEGATIONS FAIL TO STATE A CLAIM. ..........................7

        A.    Alleged YouTube–Google ad-buying tools tie. ..........................................................7

        B.    Alleged Google Ads–GDN and Google Ads–AdX ties. ..............................................8

    V.    SEVERAL OF RUMBLE'S NON-TYING ALLEGATIONS ALSO FAIL. ................9

        A.    Non-Transparent Pricing ..............................................................................................9

        B.    Dismissed Conduct (Facebook NBA, user IDs, RPO, Exchange Bidding) ...............9

    VI.    ALMOST ALL OF RUMBLE'S CLAIMS ARE UNTIMELY. ..................................10

CONCLUSION ...............................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**

*AD/SAT, Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216 (2d Cir. 1999) ..................... 5
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................ 3
*Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46 (2d Cir. 2016) ....................................... 4
*Gatt Commc'ns, Inc. v. PMC Assocs.*, 711 F.3d 68 (2d Cir. 2013) ......................................... 8
*In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151 (2d Cir. 2017) .......................... 3
*In re Am. Express Anti-Steering Rules Antitrust Litig.*, 361 F. Supp. 3d 324
   (S.D.N.Y. 2019) ................................................................................................................ 5
*In re Google Digital Advert. Antitrust Litig.*, 2024 WL 988966 (S.D.N.Y. Mar. 7, 2024) ... 6, 7
*In re Google Digital Advert. Antitrust Litig.*, 627 F. Supp. 3d 346 (S.D.N.Y. 2022) ........... 5, 9
*In re Google Digital Advert. Antitrust Litig.*, 721 F. Supp. 3d 230
   (S.D.N.Y. 2024) .................................................................................................. 3, 5, 6, 10
*In re Google Play Store Antitrust Litig.*, 147 F.4th 917 (9th Cir. 2025) ................................. 2
*In re Time Warner Inc. Set-Top Cable Television Box Antitrust Litig.*, 2010 WL 882989
   (S.D.N.Y. Mar. 5, 2010) .................................................................................................... 8
*JM Comp. Servs. v. Schlumberger Technologier, Inc.*, 1996 WL 241607
   (N.D. Cal. May 3, 1996) .................................................................................................. 10
*Kaufman v. Time Warner*, 836 F.3d 137 (2d Cir. 2016) ........................................................ 7
*Miller v. Hyundia Motor Am.*, 2016 WL 5476000 (S.D.N.Y. Sept. 28, 2016) ...................... 10
*Rumble Inc. v. World Fed'n of Advert'rs*, No. 7:24-cv-115 (N.D. Tex. Aug. 6, 2024) ............ 2
*United States v. E.I. Du Pont de Nemours & Co.*, 351 U.S. 377 (1956) .................................. 4
*United States v. Google LLC*, 778 F. Supp. 3d 797 (E.D. Va. 2025) ....................................... 2
*Yelp Inc., v. Google LLC*, 2025 WL 2978394 (N.D. Cal. Oct. 22, 2025)……………….. 10

**INTRODUCTION**

Rumble's opposition does not cure the fundamental defects in its Second Amended Complaint ("SAC"). After three rounds of amendments, Rumble chooses to stand on an irreconcilably conflicted and glaringly deficient pleading. Rumble attempts to parlay others' claims into a case of its own, but has not supported its own claims with plausible allegations. The SAC should be dismissed with prejudice.

As the mapping between Rumble's alleged markets and the conduct it challenges is not always straightforward, Google has attached as Appendix A a chart detailing the alleged markets and the conduct that supposedly affected each market.

**ARGUMENT**

**I.   RUMBLE LACKS ANTITRUST STANDING.**

Rumble has two fundamental antitrust standing problems. *First*, Rumble does not participate in any of the allegedly affected markets as Rumble has defined them.[1] Rumble circumscribes its tool markets in two key ways, by ad format and by content: they are limited to tools for transacting (i) display formatted ads; and (ii) advertisements alongside "web display" content. Rumble does not publish "web display" content and therefore does not participate in "web display" advertising tool markets. This fundamental mismatch between Rumble's business and its markets dooms all of Rumble's claims. *Second*, Rumble's conclusory allegations that it was a customer or competitor are insufficient to establish antitrust standing. Rumble's "customer" allegations are nothing but legal conclusions and do not relate to "display" format ads. And Rumble's "competitor" allegations do not support standing for claims outside of the markets where Rumble supposedly competes, i.e., for the vast majority of the conduct.

---

[1] While Rumble alleges it participates in its alleged online video advertising market, as discussed below, Rumble makes no plausible claim that Google monopolized or harmed competition in that market.

### A. Rumble does not participate in its narrow "web display" markets.

Rumble is an "online video platform" that shows ads against user-generated content, SAC ¶ 16, but pleads ad tech tool markets limited to "web display" advertising, expressly excluding tools that transact ads shown on social media sites, "walled garden" sites, in apps, and against instream video content.[2]  *See* SAC ¶¶ 13, 59-63, 77, 96, 107, 111, 121.  Rumble claims this is a non-issue because Rumble sells some image ads on its website.  *See* Opp. at 4.  Not so.  The static image ads that are shown alongside Rumble videos are not the "web display" ads around which Rumble defined its markets because Rumble is not a "web display" publisher.

Rumble has argued in other litigation that "user-generated platforms" like itself are fundamentally different from "traditional websites" where "web display" advertising is sold.[3]  Am. Compl. ¶¶ 2, 77-78, *Rumble Inc. v. World Fed'n of Advert'rs*, No. 7:24-cv-115 (N.D. Tex. Aug. 6, 2024), ECF No. 13.  Rumble stated that the ad tech tools at issue here are "not active in the sale of user-generated platform advertising."  *Id.* ¶ 77.  This distinction between "traditional website" publishers and "user-generated platforms" comports with the way the Virginia Court limited the "web display" markets that Rumble now adopts.  The Virginia Court defined markets in part based on its finding that open-web-display publishers "cannot monetize the primary content on their websites with instream video ads," and cannot monetize their "content on app and social media pages."  *United States v. Google LLC*, 778 F. Supp. 3d 797, 836 (E.D. Va. 2025).  Under this analysis, Rumble is not a "web display" publisher because it does monetize its primary content with video ads, on apps, and on social media pages. Rumble lacks standing.

---

[2] Rumble adopts the Virginia Plaintiffs' markets, which were so limited.  *See, e.g.*, *United States v. Google LLC*, 778 F. Supp. 3d 797, 833-43 (E.D. Va. 2025);

[3] Rumble's citation to the *Play* decision is irrelevant.  *See* Opp. at 8.  *Play* involved a completely different procedural posture: it analyzed whether markets were "identical" for purposes of issue preclusion.  *See In re Google Play Store Antitrust Litig.*, 147 F.4th 917, 934-35 (9th Cir. 2025).  The *Play* court's observation that relevant markets might differ across cases has no bearing on whether Rumble is a "web display" publisher.  While the relevant area of effective competition might differ depending on the conduct being challenged (as in *Play*), Rumble's business model and the type of content on its website and app does not.

### B. Rumble also lacks customer and competitor standing.

> *1. Rumble is not a customer or competitor in the ad exchange, ad network, and ad-buying tool markets.*

Rumble claims standing because it "has been a customer of Google in … the ad exchange market, and ad network markets" from 2014 to the present.[4] SAC ¶ 327. But a single catch-all phrase—particularly in Rumble's third version of its complaint and after this issue was raised in Google's past briefs—does not suffice. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (a "formulaic recitation of the elements of a cause of action will not do"). The SAC lacks any specific factual allegations that Rumble ever used Google's ad exchange (AdX), ad network (GDN), or ad-buying tools (Google Ads or DV360) to transact "web display" ads. As a result, Rumble has not plausibly alleged customer standing in these markets, *see In re Google Digital Advert. Antitrust Litig.*, 721 F. Supp. 3d 230, 245-46 (S.D.N.Y. 2024) ("*Google II*") (dismissing Advertisers' claims in the market for large-advertiser buying tools where they did not plead use of those tools), and therefore cannot bring claims based on harm to those markets. *See* Appendix A.

> *2. The ad server allegations would provide standing to challenge only the DFP-AdX tie and the Facebook NBA.*

Rumble claims that it became a competitor in the ad server market when it launched the RAC in 2022. Opp. at 5. And Rumble claims to have used DFP before that. Even assuming that Rumble were a "web display" publisher (it is not), these allegations would give Rumble standing to challenge conduct that allegedly affected the publisher ad server market only. That

---

[4] Rumble does not argue it has competitor standing in its ad exchange, ad network, or ad-buying tool markets, nor that it has been a customer in its alleged ad-buying tools market. *See* Opp. at 5. While Rumble contends that "Google's conduct allowed it to restrict competition in the downstream markets where Rumble is a customer," *id.*, being a customer in some "downstream market" does not give Rumble antitrust standing to claim monopolization of markets it does not participate in when Rumble's injury was not the "means" by which Google accomplished its alleged illegal objective in those other markets. *See, e.g.*, *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 158-61 (2d Cir. 2017).

conduct is limited to the DFP-AdX tie[5] and the Facebook Network Bidding Agreement ("NBA") (which fails for other reasons, *see infra* Section V.B). *See* Appendix A.

> 3. *Rumble's status as an online video competitor does not give it antitrust standing because Rumble makes no claim for monopolization of an online video market or for tying affecting an online video market.*

Rumble also asserts that it competes with Google in a market for online video advertising. *See* Opp. at 6. This does not support antitrust standing for any of its claims because none of Rumble's claims is predicated on harm to competition in that market. *See* Appendix A. Rumble's Section 2 claims are for monopolization or attempted monopolization of markets for "web display" publisher ad servers, ad exchanges, ad networks, and ad-buying tools. SAC ¶¶ 293, 300-01, 303. Rumble's only conclusory mention of online video in those claims is that Google abused power in that market "to force advertisers to use Google's ad buying tools." SAC ¶¶ 296, 304. Rumble's tying claims likewise involve alleged harm only in these same "web display" markets. SAC ¶¶ 311, 316, 320; *see also infra* Sections III, IV.A. Participation in an online video market is therefore irrelevant.

## II. RUMBLE'S CLAIMS BASED ON THE AD NETWORK AND AD-BUYING TOOLS MARKETS FAIL FOR ADDITIONAL REASONS.

### A. Rumble has not plausibly alleged relevant markets for ad networks or ad-buying tools.

A plausible relevant market must account for "reasonable interchangeability." *United States v. E.I. Du Pont de Nemours & Co.*, 351 U.S. 377, 404 (1956). Rumble's web display ad network and ad-buying tool markets fail this test because they artificially exclude obvious substitutes. The SAC alleges markets for tools facilitating the buying and selling of "web display" ads but concedes that the very same content those ads accompany—Rumble's own videos—appears across websites, mobile apps, and social media platforms. *See, e.g.*, SAC ¶ 16. Where the SAC concedes that the same content can be monetized and advertised via either

---

[5] While the SAC alleges that ties other than the AdX-DFP tie had anticompetitive effects in the ad server market, SAC ¶ 260, this is implausible because none of the other ties involved that market as the tied product.

4

web display ads or video/in-app ads on social media platforms, Rumble must do more than invoke the phrase "not interchangeable" to render its gerrymandered markets plausible. *See Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 55 (2d Cir. 2016) (antitrust market not plausibly pleaded where plaintiff failed to explain why "other options" were not substitutes). Merely alleging price differences between video and display ads do not define separate markets. *See* Mot. at 13-14 (addressing SAC ¶ 121).

Rumble claims that substitution among ad formats is irrelevant to the question of whether the tools to buy those ads are substitutes. *See* Opp. at 17. Rumble is wrong. The relevant question for market definition is whether customers would shift to using other tools if the price of "web display" ad-buying tools increased. *See AD/SAT, Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 228-29 (2d Cir. 1999). Customers' ability to accomplish their advertising and monetization goals using other tools is absolutely relevant to—and dispositive of—that question.[6] Rumble does not plausibly plead the buy-side markets.

### B. Rumble has not plausibly alleged ad-buying tool monopoly power.

Rumble separately fails to allege monopoly power in either ad-buying tool market.[7] Rumble continues to rely on inapposite statistics, like Google Ads' share of purchases on AdX, rather than Google Ads' share of the overall alleged market, control over price, or exclusion of competitors. *See In re Google Digital Advert. Antitrust Litig.*, 627 F. Supp. 3d 346, 377 (S.D.N.Y. 2022) ("*Google I*") (rejecting States' in-app mediation tool market where the complaint "allege[d] in a conclusory fashion that Google has market power" but "failed to plausibly allege that Google has the ability to control prices or exclude competition" in that

---

[6] Treating the alleged ad network market as two-sided would not make Rumble's market definition any more plausible. *See* Opp. at 16-17. The bounds of a two-sided market are also defined by reasonable interchangeability of use or cross-elasticity of demand. *See, e.g., In re Am. Express Anti-Steering Rules Antitrust Litig.*, 361 F. Supp. 3d 324, 345 (S.D.N.Y. 2019). There are no allegations suggesting that open-web-display ad network transactions are not interchangeable with, e.g., walled-garden transactions.

[7] Rumble has not attempted to rebut Google's argument that the SAC contains no allegations pleading market power or monopoly power in the alleged large-advertiser ad-buying tools market. *See* Mot. at 14.

market). Rumble's claim that the Court previously found that Google possesses monopoly power in a small advertiser ad-buying tools market is plainly wrong. *See* Opp. at 20, 21 (both quoting *Google II*, 721 F. Supp. 3d at 242). Instead, what Rumble quoted "recount[s] the principal allegations made at the pleading stage *and is not intended to suggest any findings of fact or legal conclusions* about the conduct alleged." *Google II*, 721 F. Supp. 3d at 241 (emphasis added). Indeed, this Court's cited opinion did not analyze whether the complaints plausibly alleged that Google possessed monopoly power in a small advertiser ad-buying tools market, as Google did not challenge that issue in its previous motions to dismiss.

### III. RUMBLE ALLEGES NO CLAIMS BASED ON HARM TO AN ONLINE VIDEO MARKET; ANY SUCH CLAIMS WOULD FAIL FOR LACK OF ALLEGATIONS OF HARM TO COMPETITION.

As noted in Section I.B.3, Rumble does not actually plead any claims predicated on harm to the online video advertising market. Rumble attempts to sidestep this failure by appealing to this Court's prior ruling on Inform's claims in that same alleged market. *See In re Google Digital Advert. Antitrust Litig.*, 2024 WL 988966, at *7-8 (S.D.N.Y. Mar. 7, 2024) ("*Google III*"). This is unavailing because Rumble is differently situated from Inform. *First*, there is no "implicit" prior Eleventh Circuit analysis in this case that the Court need be considerate of. *Id.* at *7. *Second*, Inform pled additional conduct affecting that market that Rumble's complaint lacks, such as the industry-wide Flash-HTML5 transition, which this Court pointed to in finding Inform plausibly alleged harm to competition in that market. *See id*. at *5-6. In contrast, the only conduct Rumble raises (in conclusory fashion) involving the alleged online video advertising market is that "in 2015, Google forced advertisers to exclusively use Google's ad buying tools … to advertise on YouTube." SAC ¶ 125; *see also* Opp. at 13 (pointing to this sentence only). *Third*, Rumble makes **no well-pleaded allegation that this conduct affected competition for video advertising**. Instead, the SAC merely alleges that this alleged tie "divert[ed] ad spend away from other online video *ad buying tools*."

6

SAC ¶ 125 (emphasis added).  The contention that the tie "strengthen[ed] Google's market power in the video advertising market," SAC ¶ 125, is purely conclusory, as any harm to competition from tying would be felt in the tied market (ad-buying tools), not the tying market (online video advertising).  All of these factors distinguish Rumble's claim from Inform's "coercive[] channeling" theory.

## IV.   RUMBLE'S TYING ALLEGATIONS FAIL TO STATE A CLAIM.[8]

Rumble's tying claims collect repackaged and deficient theories.  A tying claim requires, among other things, "actual coercion" and anticompetitive effects in the tied market. *Kaufman v. Time Warner*, 836 F.3d 137, 141 (2d Cir. 2016).  Rumble pleads neither.

### A. Alleged YouTube–Google ad-buying tools tie.

Rumble still cannot explain how the accessibility of YouTube *video* ad inventory has any anticompetitive effect on a market for *web display* ad-buying tools.  First, Rumble points to its allegation of an online video advertising market.  But pleading a market by itself does nothing to explain the relationship between the tying product (video ads) and effects in the tied product market (web display ad-buying tools).  Indeed, Rumble alleges no facts showing that advertisers who wanted to buy *video* ads on YouTube were forced into using Google's ad-buying tools for non-YouTube *web display* ad purchases.[9]  Next, Rumble claims that "the relevant ad buying tools also serve instream online video ads." Opp. at 14.  Indeed they do, but Rumble limited its ad-buying tools market to "web display ad buying tools." SAC ¶ 111.  Rumble does not allege anticompetitive effects in this narrow market.  Finally, Rumble again points to this Court's opinion determining that Inform had alleged standing to challenge this alleged tie.  But in resolving the Inform standing argument, *Google III*, 2024 WL 988966 at

---

[8] While Google seeks dismissal of Rumble's Count III (unlawful tying) in full due to lack of standing, *see supra* Section I, in light of this Court's collateral estoppel opinion, ECF No. 1219, Google no longer seeks dismissal of the alleged DFP-AdX tie on its merits for failure to state a claim.
[9] Again, it is Rumble that chose to define its buying-tools markets to include only the tools that buy display-formatted ads.  *See* SAC ¶ 112.

\*6, the Court did not address the arguments Google raises here, of market mismatch and the resulting failure to plausibly allege anticompetitive effects in the tied product market. Rumble points to no allegations in its own complaint that would sustain its claim.

### B. Alleged Google Ads–GDN and Google Ads–AdX ties.

Both alleged ties fail for the same three reasons. ***First***, for the reasons discussed in Section II.B, Rumble has not plausibly alleged Google has market power in the tying product market (ad-buying tools for small advertisers). ***Second***, Rumble does not plausibly allege coercion, as Rumble recognizes that Google Ads did not bid exclusively into GDN or AdX, *see* SAC ¶ 139. There's simply no allegation that Google Ads users were forced to also use either GDN or AdX to the exclusion of other inventory sources. Conclusory and unsupported statements that Google "intentionally restrained the routing of bids to non-Google exchanges" are insufficient to plead a tying claim where the two products can be purchased separately. *See In re Time Warner Inc. Set-Top Cable Television Box Antitrust Litig.*, 2010 WL 882989, at \*5-6 (S.D.N.Y. Mar. 5, 2010) (Castel, J.) (rejecting tying claim where customers could purchase tying product without also purchasing tied product). Nor do vague allusions to unidentified "contractual arrangements and other conduct," *see* Opp. at 22, substitute for well-pleaded factual allegations of coercion. ***Third***, the SAC offers no facts to show that competition among ad networks or ad exchanges was substantially foreclosed due to the alleged ties. To the contrary, it acknowledges significant demand from other sources, including Facebook and Amazon, *see* SAC ¶¶ 188, 203, 206, 242, which undermines any claim of foreclosure. The harms to the ad exchange market, *see* Opp. at 21 (citing SAC ¶¶ 264-66), are not alleged to have been specifically caused by either of these two ties. *See Gatt Commc'ns, Inc. v. PMC Assocs.*, 711 F.3d 68, 76 (2d Cir. 2013) (alleged anticompetitive injury must be causally linked to that which makes conduct unlawful).

8

## V. SEVERAL OF RUMBLE'S NON-TYING ALLEGATIONS ALSO FAIL.

### A. Non-Transparent Pricing

Rumble's claim that "nontransparent pricing" violates Section 2, *see* SAC ¶¶ 230-34, fails because Google has no antitrust duty to disclose its pricing or margins to *competitors*. *See* Mot. at 21-22. Tacitly recognizing this, Rumble now deviates from the SAC to claim that non-transparent pricing is anticompetitive because Google should reveal margins to its *customers*. *See* Opp. at 23. But even if the SAC contained a theory that Google had a duty to disclose more pricing details to customers, Rumble fails to connect that supposed lack of transparency to any plausible harm to the competitive process. Google's alleged lack of pricing disclosure did not coercively prevent customers from taking their business elsewhere, and Google has no duty to provide every shred of information anyone might desire.

### B. Dismissed Conduct (Facebook NBA, user IDs, RPO, Exchange Bidding)

Rumble's attempt to revive a twice-rejected theory that the Google-Facebook NBA unlawfully restrained trade fails. New allegations concerning "the size of Facebook's annual spending on display ads" and "the NBA's effect on Facebook's use of header bidding," Opp. at 24, do not change the procompetitive nature of the NBA. As this Court explained, "[o]ffering favorable terms to a large potential customer, such as Facebook, undoubtedly had the effect of diverting business from a competing service, but this does not convert the agreement into an unreasonable restraint of trade." *Google I*, 627 F. Supp. 3d at 373.

Rumble concedes it does not allege that user ID encryption, RPO, or Exchange Bidding violated Section 2. Opp. at 24-25. Rumble instead asserts that these acts support its tying claim that Google "force[s] publishers and others to use Google's ad server (DFP) if they use Google's exchange (AdX)," SAC ¶ 308; Opp. at 24-25. This attempt to re-cast the complaint has it backwards. Allegations about user ID encryption, RPO, and Exchange Bidding are directed towards how Google's control of DFP allegedly forced publishers to use AdX. Opp.

9

at 24-25 (citing SAC ¶¶ 154, 159, 201 as evidence these acts "ma[d]e publishers and advertisers … 'transact in Google's exchange'"). But unlike Publishers, Rumble has no such tying claim, *see* Opp. at 24. These allegations should be dismissed or stricken.

## VI.   ALMOST ALL OF RUMBLE'S CLAIMS ARE UNTIMELY.

Google demonstrated that all claims accrued more than four years before Rumble filed its complaint (i.e., before May 13, 2020). *See* Mot. at 23-24. At that point, "the burden shifts to the plaintiff to show that the claim falls within a [tolling] exception." *Miller v. Hyundia Motor Am.*, 2016 WL 5476000, at *5 (S.D.N.Y. Sept. 28, 2016). Rumble has not satisfied its burden that any of its laundry list of tolling doctrines apply here (other than for UPR, which Google concedes was tolled):

- ***Fraudulent concealment.*** Fraudulent concealment requires pleading with Rule 9(b) particularity that the defendant took affirmative steps to prevent discovery of the plaintiff's claim. *Google II*, 721 F. Supp. 3d at 271. Yet Rumble alleges no particular act of concealment that Google took towards Rumble. Vague allegations that Google "concealed the nature of its conduct" or acted with a "lack of transparency" are precisely the kind of conclusory assertions that fail the 9(b) standard. *E.g.* Opp. at 30.

- ***Continuing violations.*** Rumble has failed to plead any "overt act" taken by Google after May 13, 2020. *See* Opp. at 26-29. That components of Google's alleged scheme are ongoing does not qualify because continuance of a preexisting policy (such as an alleged tying restraint) is merely a "repeated manifestation" of a past act, not a new one. *See Google II*, 721 F. Supp. 3d at 272-73 (no tolling for continued enforcement of line item cap policy).[10] The decision in *Yelp Inc., v. Google LLC* does not help Rumble because it has not alleged UPR made any alleged tie "more effective." 2025 WL 2978394, at *8 (N.D. Cal. Oct. 22, 2025) (finding certain conduct was not a continuing violation absent "allegations as to how [that conduct] impacted Yelp's tying claim").

- ***Speculative damages.*** That Rumble later entered the ad server market with RAC in 2022 does not retroactively toll claims that already expired. *JM Comp. Servs. v. Schlumberger Technologier, Inc.*, 1996 WL 241607, at *5 (N.D. Cal. May 3, 1996) (dismissing plaintiff's "allegations of conduct prior to its entry into the restrained market … as Plaintiff lacks standing … to bring suit for [such] time periods").

## CONCLUSION

For the foregoing reasons, and as Rumble has now had three opportunities to amend, the Court should dismiss Rumble's Second Amended Complaint with prejudice.

---

[10] Rumble also concedes that all conduct other than the alleged ties and UPR has stopped. Opp. at 27.

Dated: November 25, 2025                    Respectfully submitted,

/s/ Justina Sessions
Justina K. Sessions
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250
Email: justina.sessions@freshfields.com

Eric Mahr
Andrew J. Ewalt
700 13th Street, NW
10th Floor
Washington, DC 20005
Telephone: (202) 777-4545
Email: eric.mahr@freshfields.com
         andrew.ewalt@freshfields.com

*Counsel for Defendants Google LLC and Alphabet Inc.*