**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION | Case No. 1:21-md-03010 (PKC) |

*This Document Relates To:*

| | |
|---|---|
| ASSOCIATED NEWSPAPERS LTD. and MAIL MEDIA, INC.<br><br>                    Plaintiffs,<br><br>     -against-<br><br>GOOGLE LLC and ALPHABET INC.,<br><br>                    Defendants. | Case No. 1:21-cv-03446 (PKC) |
| GANNETT CO., INC.<br><br>                    Plaintiff,<br><br>     -against-<br><br>GOOGLE LLC and ALPHABET INC.,<br><br>                    Defendants. | Case No. 1:23-cv-5177 (PKC) |

**PLAINTIFFS DAILY MAIL AND GANNETT'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON GOOGLE'S AFFIRMATIVE DEFENSES**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ........................................................................................................................1

BACKGROUND ..........................................................................................................................3

LEGAL STANDARD....................................................................................................................5

ARGUMENT ...............................................................................................................................6

I.  The Court Should Enter Summary Judgment for Daily Mail and Gannett on
    Google's Unclean Hands Defense ........................................................................................6

    A.  Unclean Hands Is Not a Defense to Daily Mail's and Gannett's Antitrust
        Claims. ....................................................................................................................6

    B.  Google Has Not Identified Any Misconduct Directly Related to Daily
        Mail's and Gannett's Claims in This Case. ...............................................................7

II. The Court Should Enter Summary Judgment for Daily Mail and Gannett on
    Google's Failure to Mitigate Defense................................................................................11

    A.  Google Is Estopped to Argue Daily Mail and Gannett Could Have
        Mitigated Damages by Turning Off AdX. ..............................................................11

    B.  Google's Mitigation Defense Fails Because It Has No Evidence of The
        Amount of Damages That Purportedly Could Have Been Avoided......................14

CONCLUSION...........................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Apex Oil Co. v. DiMauro*, 713 F. Supp. 587 (S.D.N.Y. 1989) .................................................. 1, 7

*APL Co. PTE v. Blue Water Shipping U.S. Inc.*, 592 F.3d 108 (2d Cir. 2010) ........................ 1, 11

*Chrysler Corp. v. Gen. Motors Corp.*, 596 F. Supp. 416 (D.D.C. 1984) ..................................... 7

*CLIP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114 (2d Cir. 2013) ................... 5

*Curley v. Brignoli Curley & Roberts Assocs.*, 746 F. Supp. 1208 (S.D.N.Y. 1989) ................... 7

*EC ex rel. RC v. Cty. of Suffolk*, 882 F. Supp. 2d 323 (E.D.N.Y. 2012) ................................... 10

*Ellerman Lines, Ltd. v. The President Harding*, 288 F.2d 288 (2d Cir. 1961) ........................... 11

*F.D.I.C. v. Giammettei*, 34 F.3d 51 (2d Cir. 1994) ................................................................. 5

*Fleisig v. ED&F Man Cap. Mkts., Inc.*,
    2021 WL 2678675 (S.D.N.Y. June 30, 2021) ...................................................... 11-12, 15

*Gidatex S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 126 (S.D.N.Y. 1999) ..................... 9

*Google Digit. Advert. Antitrust Litig., In re*, 627 F. Supp. 3d 346 (S.D.N.Y. 2022) ................... 15

*Int'l Cards Co., Ltd. v. MasterCard Int'l Inc.*,
    2016 WL 7009016 (S.D.N.Y. Nov. 29, 2016) ......................................................... 14

*Jane Street Grp., LLC v. Millennium Mgmt. LLC*,
    2024 WL 3357005 (S.D.N.Y. July 10, 2024) ........................................................ 1, 6, 7, 9

*Kiefer-Stewart Co. v. Joseph E. Seagram & Sons*, 340 U.S. 211 (1951) ................................. 6, 7

*MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*,
    842 F. Supp. 2d 682 (S.D.N.Y. 2012) ................................................................. 1, 5, 7

*Natcontainer Corp. v. Cont'l Can Co.*, 362 F. Supp. 1094 (S.D.N.Y. 1973) ............................... 7

*Perma Life Mufflers, Inc. v. International Parts Co.*, 392 U.S. 134 (1968) ............................. 6, 7

*PharmacyChecker.com LLC v. LegitScript LLC*, 137 F.4th 1031 (9th Cir. 2025) ....................... 7

*Sogem-Afrimet, Inc. v. M/V Ikan Selayang*, 951 F. Supp. 429 (S.D.N.Y. 1996),
    *aff'd*, 122 F.3d 1057 (2d Cir. 1997) ..................................................................... 2, 5

*Specialty Mins., Inc. v. Pluess-Stauffer AG*, 395 F. Supp. 2d 109 (S.D.N.Y. 2005) ............... 8, 11

*Steves & Sons, Inc. v. JELD-WEN, Inc.*, 2018 WL 4171496 (E.D. Va. Aug. 30, 2018) ............... 7

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 749 F. Supp. 2d 130 (S.D.N.Y. 2010) ........................ 15

*Townsquare Media, Inc. v. Regency Furniture, Inc.*,
    2022 WL 4538954 (S.D.N.Y. Sept. 28, 2022)................................................................... 5, 9

*Trs. of New York City Dist. Council of Carpenters Pension Fund v. M.C.F. Assocs., Inc.*,
    530 F. Supp. 3d. 460 (S.D.N.Y. 2021)...................................................................... 8

*Trebuhs Realty Co. v. News Syndicate Co.*, 107 F. Supp. 595 (S.D.N.Y. 1951)........................... 7

*United States v. Google LLC*, 778 F. Supp. 3d 797 (E.D. Va. 2025) ............................ 2, 9, 12, 13

*Wrobel v. County of Erie*, 692 F.3d 22 (2d Cir. 2012) ................................................... 5

**RULES**

Fed. R. Civ. P. 56(a) .................................................................................................. 5

**OTHER AUTHORITIES**

D. Dobbs, *Remedies* (1973) ....................................................................................... 7

## INTRODUCTION

The Court should enter summary judgment for Daily Mail and Gannett on Google's affirmative defenses of:  (1) unclean hands and (2) unreasonable failure to mitigate damages. MDL Dkt. No. 1211 at 56; MDL Dkt. No. 1212 at 53.  *First*, as a matter of law unclean hands is not a defense to Google's (now established) violations of the Sherman Act.  *See*, *e.g.*, *Apex Oil Co. v. DiMauro*, 713 F. Supp. 587, 604-05 (S.D.N.Y. 1989) ("[T]he law has remained consistent that unclean hands is not a defense to an antitrust action.").  Even if unclean hands were an available defense, Google cannot show the direct relationship that the law requires between any purportedly "immoral" or "unconscionable conduct" by Daily Mail and Gannett and their "use or acquisition" of the rights they seek to enforce in these cases.[1]  *Jane Street Grp., LLC v. Millennium Mgmt. LLC*, 2024 WL 3357005, at *2-3 (S.D.N.Y. July 10, 2024) (citations omitted). In the 20 months since Google first raised its unclean hands defense, it has claimed support from only 9 documents and fewer than 25 pages of deposition testimony.  None of that evidence is directly related to Daily Mail's or Gannett's acquisition of their antitrust or state law claims. Google's unclean hands defense therefore fails as a matter of law.  *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 842 F. Supp. 2d 682, 712-13 (S.D.N.Y. 2012) (granting summary judgment when purported misconduct was not "directly related" to plaintiff's claims).

*Second*, Google has utterly failed to carry its burden of showing that Daily Mail and Gannett failed to take "reasonable efforts" in response to Google's unlawful conduct, and the amount by which those efforts would have reduced their damages.  *APL Co. PTE v. Blue Water Shipping U.S. Inc.*, 592 F.3d 108, 111 (2d Cir. 2010).  The only measure Google has suggested

---

[1] To be clear, Daily Mail and Gannett dispute that Google has any evidence that they engaged in immoral or unconscionable conduct.  But to avoid factual disputes for purposes of this summary judgment motion, this brief focuses on the absence of the legally required direct relationship between conduct and claims.

Daily Mail and Gannett should have taken to avoid damages from Google's antitrust violations is to "simply stop[] using" Google's monopoly advertising exchange, AdX.  MDL Dkt. No. 1238 at 3.  But it is now settled law that turning off AdX was not feasible, much less "reasonable," for large publishers like Daily Mail and Gannett.  Judge Brinkema found, based on testimony from Daily Mail and Gannett witnesses, that "it was not financially viable for large publishers to forgo using AdX."  *United States v. Google LLC*, 778 F. Supp. 3d 797, 870 (E.D. Va. 2025) ("E.D. Va. Op.").  Indeed, it was AdX's status "as a 'must call' exchange" that gave Google's unlawful tie its "coercive power" because "Google has ensured that publishers would lose significant revenue if they did not use AdX."  *Id*. at 854, 861-63.  In its October 27 Issue Preclusion Order, this Court held that Google is estopped to relitigate "the coercive power of the AdX-DFP tie."  MDL Dkt. No. 1219 at 27-28.  Google thus cannot contend that publishers acted unreasonably by continuing to use Google's monopoly exchange.

Google's mitigation defense fails as a matter of law for the independent reason that Google has presented no evidence of "the portion of the loss" Daily Mail or Gannett could have avoided – i.e., the actual dollar amount.  *Sogem-Afrimet, Inc. v. M/V Ikan Selayang*, 951 F. Supp. 429, 444 (S.D.N.Y. 1996), *aff'd*, 122 F.3d 1057 (2d Cir. 1997).  None of Google's six experts make any attempt to calculate the extent to which Daily Mail or Gannett purportedly could have mitigated their damages by turning off AdX.  Instead, as the only support Google identifies for its mitigation defense, Google relies on a distortion of *Plaintiffs'* expert's testimony.  Google wrongly claims that Daily Mail and Gannett's damages expert, Professor Ali Hortacsu, opined that they could have mitigated damages from Google's Enhanced Dynamic Allocation ("EDA") by turning off AdX.  MDL Dkt. No. 1238 at 3.  But Hortacsu nowhere states that turning AdX off would have any impact on the damages Daily Mail and Gannett suffered from EDA.  To the

contrary, Hortacsu states plainly there are "no reasonable effective mitigation strategies for publishers to avoid the detrimental impact of Google's EDA."  Hortacsu Reply Rep. ¶ 31 (Ex. 1).[2]  Because Google has no actual evidence supporting its mitigation defense, the defense fails as a matter of law.

## BACKGROUND

Google first answered Daily Mail's and Gannett's complaints on March 29, 2024.  MDL Dkt. No. 737 (Gannett Answer); MDL Dkt. No. 738 (Daily Mail Answer).  Those answers asserted identical defenses to Daily Mail's and Gannett's claims.  As relevant here, Google claimed that both Daily Mail's and Gannett's claims "are barred, in whole or in part, by the doctrine of unclean hands" and asserted that both Daily Mail and Gannett have "failed to mitigate any alleged damages."  MDL Dkt. No. 737 at 51; MDL Dkt. No. 738 at 47.  Google's answers did not specify the claims to which the defenses applied, nor did they contain any factual support for either defense.  *Id.*  Each of Google's subsequent answers to Daily Mail's and Gannett's amended complaints have maintained identical defenses.  MDL Dkt. No. 829 at 56; MDL Dkt. No. 830 at 54; MDL Dkt. No. 1211 at 56; MDL Dkt. No. 1212 at 53.  Although Google's most recent answers were filed months after fact and expert discovery was completed, they likewise contain no factual support for Google's defenses.  MDL Dkt. No. 1211 at 56; MDL Dkt. No. 1212 at 53.

In June 2024, Daily Mail and Gannett served separate sets of interrogatories seeking, among other things, the factual basis for Google's unclean hands defense.  Daily Mail's First Set of Interrogs. at 5 (Ex. 2); Gannett's First Set of Interrogs. at 5 (Ex. 3).  In response, Google

---

[2] All references to exhibits are references to the exhibits attached to the Declaration of Eric J. Maier in Support of Daily Mail and Gannett's Motion for Partial Summary Judgment on Google's Affirmative Defenses.

asserted that both Daily Mail and Gannett "engaged, or sought to engage, in conduct that was either similar to the alleged conduct underlying its claims against Google, or was otherwise inequitable and/or improper."  Google's Resps. & Objs. to Daily Mail's First Set of Interrogs. at 12 (Ex. 4); Google's Resps. & Objs. to Gannett's First Set of Interrogs. at 12 (Ex. 5).  As support for that claim, Google identified five documents and 13 pages of deposition testimony in response to Daily Mail's interrogatory and four documents[3] and 11 pages of deposition testimony in response to Gannett's.  Google's interrogatory responses did not explain how any of the cited documents supported its unclean hands defense.  Two months later, Google supplemented its responses to Daily Mail's and Gannett's interrogatories, but made no alterations or additions to its support for its unclean hands defense.  Google's Suppl. Resps. & Objs. to Daily Mail's First Set of Interrogs. at 13 (Ex. 6); Google's Suppl. Resps. & Objs. to Gannett's First Set of Interrogs. at 13-14 (Ex. 7).

After the close of discovery, the Court permitted Daily Mail and Gannett to move for partial summary judgment on their antitrust claims on the basis of collateral estoppel.  In October 2025, this Court granted Daily Mail and Gannett's collateral estoppel motion, holding that Google was precluded from relitigating the existence of separate, global markets for publisher ad servers and ad exchanges, that Google had engaged in anticompetitive conduct, and that Google had unlawfully tied its publisher ad server ("DoubleClick for Publishers" or "DFP") to its ad exchange ("AdX").  MDL Dkt. No. 1219 at 32-33.

Separately, Daily Mail and Gannett twice sought leave to move for summary judgment on Google's affirmative defenses of unclean hands and unreasonable failure to mitigate.  MDL

_____

[3] Google's response lists five Gannett documents, but two of the listed documents are the same email thread.

Dkt. No. 948; MDL Dkt. No. 1222.  In response to both requests, Google did not identify any additional evidence in support of its unclean hands defense, and pointed only to Hortaçsu's reports in support of its mitigation defense.  MDL Dkt. No. 976 at 9-10; MDL Dkt. No. 1238 at 2-3.  The Court granted Daily Mail and Gannett leave to file this motion in Pre-Trial Order No. 19.  MDL Dkt. No. 1248 ¶ 7.

## LEGAL STANDARD

Summary judgment is required as to any "defense – or the part of each . . . defense" – on which "there is no genuine dispute as to any material fact" and for which a plaintiff "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (summary judgment appropriate on affirmative defenses).  When the movant seeks summary judgment on an affirmative defense for which the non-movant bears the burden of proof, summary judgment is appropriate when the movant "point[s] to a lack of evidence to go to the trier of fact on an essential element" of the defense.  *Townsquare Media, Inc. v. Regency Furniture, Inc.*, 2022 WL 4538954, at *5 (S.D.N.Y. Sept. 28, 2022) (quoting *CLIP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013)).  Because Google bears the burden of proof on its affirmative defenses, Google can avoid summary judgment only if it "come[s] forward with specific facts showing that there is a genuine issue for trial."  *Townsquare Media*, 2022 WL 4538954, at *5 (quoting *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012)); *see MBIA Ins.*, 842 F. Supp. 2d at 712 ("Defendants bear the burden of proving their affirmative defense[ ] of unclean hands."); *Sogem-Afrimet*, 951 F. Supp. at 444 ("[T]he burden to show failure to mitigate lies with the defendant.").

5

## ARGUMENT

**I.    The Court Should Enter Summary Judgment for Daily Mail and Gannett on Google's Unclean Hands Defense**

Google's unclean hands defense fails as a matter of law and should be dismissed for two independent reasons.  *First*, it is well-settled that unclean hands is not a defense to federal antitrust claims.  *Second*, Google has failed to identify any misconduct that is directly related to Daily Mail's or Gannett's "use or acquisition" of the rights they seek to enforce in these cases. *Jane Street Grp.*, 2024 WL 3357005, at *3.

### A.    Unclean Hands Is Not a Defense to Daily Mail's and Gannett's Antitrust Claims.

For the last three-quarters of a century, unclean hands has been unavailable as a defense to federal antitrust claims.  In *Kiefer-Stewart Co. v. Joseph E. Seagram & Sons*, an antitrust defendant claimed that the plaintiff conspired to fix "minimum prices" and that the plaintiff's conspiracy was a defense to the defendants' own price fixing cartel.  340 U.S. 211, 214 (1951). The Court rejected that argument, holding that the plaintiff's "alleged illegal conduct . . . could not legalize the [defendants'] unlawful combination . . . nor immunize them against liability to those they injured."  *Id*.  The Court reaffirmed that principle in *Perma Life Mufflers, Inc. v. International Parts Co.*, 392 U.S. 134 (1968).  There, in rejecting the related *in pari delicto* defense, the Court explained that allowing a plaintiff's own purportedly wrongful conduct to be a complete defense to a defendant's antitrust violations would "seriously undermin[e] the usefulness of the private action as a bulwark of antitrust enforcement."  *Id*. at 139; *see also id.* (A "plaintiff who reaps the reward of treble damages" under the Sherman Act "may be no less morally reprehensible than the defendant, but the law encourages his suit to further the overriding public policy in favor of competition.")

6

Since *Kiefer-Stewart* and *Perma Life*, federal courts uniformly have rejected unclean hands as a defense to antitrust liability. *See PharmacyChecker.com LLC v. LegitScript LLC*, 137 F.4th 1031, 1039-42 (9th Cir. 2025) (plaintiff's allegedly unlawful conduct could not impact its antitrust standing); *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 2018 WL 4171496, at *2-4 (E.D. Va. Aug. 30, 2018); *Apex Oil*, 713 F. Supp. at 604-05 ("Since *Kiefer-Stewart*, the law has remained consistent that unclean hands is not a defense to an antitrust action."); *Chrysler Corp. v. Gen. Motors Corp.*, 596 F. Supp. 416, 418-20 (D.D.C. 1984) ("The public interest in preventing anticompetitive injury would be dampened tremendously if defendants were allowed to raise the defense of unclean hands."); *Natcontainer Corp. v. Cont'l Can Co.*, 362 F. Supp. 1094, 1099 (S.D.N.Y. 1973) ("The Court concludes that the defense of unclean hands is available neither with respect to relief by way of damages nor by way of equitable relief."); *Trebuhs Realty Co. v. News Syndicate Co.*, 107 F. Supp. 595, 599 (S.D.N.Y. 1951) (recognizing "rejection of the 'unclean hands' defense"). This Court likewise should dismiss as a matter of law Google's unclean hands defense to Daily Mail's and Gannett's antitrust claims.

### B. Google Has Not Identified Any Misconduct Directly Related to Daily Mail's and Gannett's Claims in This Case.

Google's unclean hands defense fails for the independent reason that Google has not identified any evidence of Daily Mail or Gannett misconduct that is "directly related" to the federal or state law claims in this case. *MBIA Ins.*, 842 F. Supp. 2d at 712-13. The unclean hands defense cannot rest on "unrelated bad conduct." *Curley v. Brignoli Curley & Roberts Assocs.*, 746 F. Supp. 1208, 1219 (S.D.N.Y. 1989) (quoting D. Dobbs, *Remedies* § 2.4 at 46 (1973)). Misconduct is "directly related" only if the defendant shows that "the plaintiff's improper conduct is the source, or part of the source, of his equitable claims." *Id.*; *see also Jane Street Grp.*, 2024 WL 3357005, at *3 (rejecting unclean hands when alleged misconduct was

unrelated to the "use or acquisition of the right in suit"); *Specialty Mins., Inc. v. Pluess-Stauffer AG*, 395 F. Supp. 2d 109, 113-14 (S.D.N.Y. 2005) (same).

The requirement of a direct relationship between the alleged misconduct and the use or acquisition of the right a plaintiff seeks to assert "has resulted in the 'narrowness of the doctrine's application.'" *Trs. of New York City Dist. Council of Carpenters Pension Fund v. M.C.F. Assocs., Inc.*, 530 F. Supp. 3d 460, 465 (S.D.N.Y. 2021) (citation omitted); *Specialty Mins.*, 395 F. Supp. 2d at 112 ("The Second Circuit has repeatedly emphasized the narrowness of the doctrine's application."). In *Specialty Minerals*, for instance, the plaintiff alleged that the defendant had fraudulently obtained a patent and then used that patent to engage in unfair competition by bringing an infringement action against plaintiff and telling the plaintiff's customers that the plaintiff was infringing defendant's patent. 395 F. Supp. 2d at 112-13. The defendant claimed the plaintiff had unclean hands because it had engaged in nearly identical conduct: the plaintiff itself had falsely accused the defendant of violating different but related patents and had falsely told the defendant's customers that it was violating the plaintiff's patents. *Id*. The court struck the defense because alleged hypocrisy is insufficient: "an allegation of a similar pattern of misconduct" on the plaintiff's part "does not, in itself, establish the requisite relationship." *Id*. at 114. Instead, the defense can succeed only if alleged misconduct is "directly related to plaintiff's use or acquisition of the right in suit." *Id*. at 112-13. Here, to sustain its unclean hands defense, Google must show that Daily Mail and Gannett engaged in misconduct that is directly related to their antitrust, fraud, unjust enrichment, and deceptive practice claims against Google. Google has utterly failed to do so.

Daily Mail and Gannett acquired their claims in these cases because they are consumers in two markets Google willfully monopolized, not through any misconduct on their part. Judge

Brinkema explained that Google's monopolies in the ad server and ad exchange markets "enabled Google to introduce a series of anticompetitive policies, practices, and technology changes to its sell-side ad tech tools that were not in its publisher customers' best interests." E.D. Va. Op. at 864.  The actions of Google's publisher customers did nothing to induce Google's anticompetitive conduct.  To the contrary, Judge Brinkema found that Google often introduced its anticompetitive policies and auction manipulations despite vocal complaints from its publisher customers.  *Id*. (Google introduced anticompetitive conduct "despite customer complaints"); *see also id.* at 831 ("Google's largest publisher customers were disgruntled with the implementation of Unified Pricing Rules").

It is no surprise, then, that none of the nine documents or the snippets of deposition testimony Google has identified are directly related to Daily Mail's or Gannett's "use or acquisition" of the claims in these cases.  *Jane Street Grp.*, 2024 WL 3357005, at *3.[4]  Only with respect to a single document has Google even attempted to explain how its purported evidence is

---

[4] The materials Google identified in response to Daily Mail's and Gannett's unclean hands interrogatories are:  DM_GOOG_0045401; DM_GOOG_0089942; DM_GOOG_0260817; DM_GOOG_0368872; DM_GOOG_0880607; 30(b)(6) Dep. of Daily Mail (Matthew Wheatland) at 239:11-252:8 (June 12, 2024); GANNETT_GOOG_0043625; GANNETT_GOOG_0183231; GANNETT_GOOG_0247783; GANNETT_GOOG_0321812; GANNETT_GOOG_0345929; and 30(b)(6) Deposition of Gannett Co., Inc. (Jeff Burkett) at 289:10-300:6 (June 21, 2024).  Google has made no attempt to explain how any of the cited materials show that Daily Mail or Gannett have engaged in the kind of "truly unconscionable and brazen behavior" unclean hands requires and Daily Mail and Gannett dispute that the evidence comes anywhere close to making that showing.  *Gidatex S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 126, 131 (S.D.N.Y. 1999).  But for purposes of this motion, what matters is that none of the evidence is directly related to Daily Mail's or Gannett's use or acquisition of their claims.

Because Daily Mail and Gannett's position is that there is no evidence of misconduct on their parts directly related to their claims, they have not attached the cited materials but can provide them at the Court's request.  It is Google's burden to identify "specific facts showing that there is a genuine issue for trial." *Townsquare Media*, 2022 WL 4538954, at *5 (citation omitted).  Google can attach any of the above-referenced materials it contends show Daily Mail or Gannett committed misconduct that is directly related to the use or acquisition of their claims.

"directly related" to the use or acquisition of the rights Daily Mail and Gannett seek to enforce.

And the one explanation Google can muster relies on a mischaracterization of a statement made

not by Daily Mail or Gannett, but by an unrelated non-party.  In its response to Daily Mail and

Gannett's pre-motion letter, Google claimed that GANNETT_GOOG_0321812 (Ex. 8)

"allud[es] to Gannett and other publishers' . . . coordinated campaign to, among other things,

apply negotiation pressure against Google with the threat of government action."  MDL Dkt. No.

1238 at 2.  The document does no such thing.  GANNETT_GOOG_0321812 is an email chain in

which an employee of Weather.com states that he was "increasingly seeing partners waffle on

offering business services that are typical of an SSP" and that those unspecified partners were

saying they would not provide certain services because they were "just a platform."  Ex. 8 at 1.

The Weather.com employee states that he "can't wait" for those partners to "try[] that routine

with a senator and US justice department some day."  *Id*.  The document nowhere mentions a

"coordinated campaign" to "threat[en] government action" against Google.  A non-party's

musings about unspecified "partners'" future interactions with the department of justice do not

relate in any way to Gannett's or Daily Mail's claims in this case.  Google cannot support its

defense through mischaracterizations of the record.  *Cf. EC ex rel. RC v. Cty. of Suffolk*, 882 F.

Supp. 2d 323, 343 (E.D.N.Y. 2012) ("Plaintiff's evidence may not amount to a

mischaracterization of facts because attempts to twist the record do not create a genuine issue of

material fact for a jury." (internal quotation marks omitted))

      As for the remaining cited materials, Google contends only that they are evidence that

Daily Mail and Gannett engaged in "conduct that was either similar to the alleged conduct

underlying [their] claims against Google, or was otherwise inequitable and/or improper."

Google's Suppl. Resps. & Objs. to Daily Mail's First Set of Interrogs. at 13 (Ex. 6); Google's

Suppl. Resps. & Objs. to Gannett's First Set of Interrogs. at 13-14 (Ex. 7).  But allegations that a plaintiff engaged in "factually similar conduct" is insufficient to "create the necessary link for an unclean hands defense." *Specialty Mins.*, 395 F. Supp. 2d at 112-13.  Google must show that the alleged misconduct was "directly related to" Daily Mail's and Gannett's "use or acquisition of the right in suit." *Id.* at 113. Because Google has failed to do so, the Court should enter summary judgment for Daily Mail and Gannett on Google's unclean hands defense.

## II.    The Court Should Enter Summary Judgment for Daily Mail and Gannett on Google's Failure to Mitigate Defense

Google's defense that Daily Mail and Gannett unreasonably failed to mitigate their damages likewise fails for at least two independent reasons:  *First*, Google is estopped to argue that turning off Google's monopoly ad exchange – the only "reasonable" measure Google says Daily Mail or Gannett failed to take to mitigate their damages – was feasible, much less reasonable.  *Second*, Google has made no effort to calculate the specific dollar amount by which Daily Mail or Gannett could have mitigated their damages, an essential element of Google's mitigation defense.

### A.    Google Is Estopped to Argue Daily Mail and Gannett Could Have Mitigated Damages by Turning Off AdX.

The defense of unreasonable failure to mitigate damages, most often asserted in breach of contract and tort cases, provides that a plaintiff should "make reasonable efforts to mitigate its damages and [that] failure to do so may cause a court to lessen the [plaintiff's] recovery." *APL*, 592 F.3d at 111.  A plaintiff, however, is not required to take "mitigating action" that is outside "the range of reason." *Id.* (cleaned up).  And "the standard of what reason requires of the injured party is lower than in other branches of the law." *Ellerman Lines, Ltd. v. The President Harding*, 288 F.2d 288, 290 (2d Cir. 1961) (Friendly, J.).  Google bears the burden to prove "both [Daily Mail's and Gannett's] failure 'to make diligent efforts to mitigate [their] damages' and 'the

extent to which such efforts would have diminished [their] damages.'" *Fleisig v. ED&F Man Cap. Mkts., Inc.*, 2021 WL 2678675, *13 (S.D.N.Y. June 30, 2021) (citation omitted).

Google has not identified any triable issue of fact on whether Daily Mail or Gannett unreasonably failed to mitigate their damages.  To date, Google has proposed only a single mitigation measure that it contends Daily Mail and Gannett unreasonably failed to take:  turning off AdX entirely.  MDL Dkt. No. 976 at 9-10 (claiming "Gannett would have lost less revenue had it simply stopped using AdX for indirect sales than it claims to have lost as a result of EDA"); MDL Dkt. No. 1238 at 3 (same).  But Google is estopped to contend that publishers could have forgone revenue from AdX.

Whether Daily Mail and Gannett, and other large publishers like them, could go without AdX was a central issue in the E.D. Va. trial.  DOJ alleged that Google had unlawfully tied its AdX exchange to its ad server, DFP.  Specifically, DOJ claimed that Google "compelled publishers to use" DFP by conditioning access to AdX's real-time demand on licensing DFP. E.D. Va. Op. at 860.  Daily Mail and Gannett's employees testified that they would lose significant revenue if they lost access to AdX:  Matthew Wheatland, Daily Mail's Chief Digital Officer, testified that Daily Mail "would lose roughly 28 percent of [its] programmatic revenue if [it] switched off AdX."  E.D. Va. Trial Tr. at 130:11-24 (Sept. 18, 2024) (Ex. 9).  As a result, Daily Mail continues doing business with AdX despite its take rate being "around double" what other exchanges charge.  *Id*. at 134:3-16.  Wheatland testified that Daily Mail was compelled to accede to Google's unlawful tie because it needed AdX advertising demand.  E.D. Va. Trial Tr. at 76:4-17 (Sept. 27, 2024) (Ex. 10).  Tim Wolfe, Gannett's Senior Vice President of Revenue Operations described the "revenue loss" Gannett would suffer it if did not have "direct access to the Google ad exchange as a demand source for our inventory."  E.D. Va. Trial Tr. at 75:23-76:8

(Sept. 9, 2024) (Ex. 11).  As a result, Gannett could not "switch away from using Google's ad exchange."  *Id.* at 104:9-19.

Google argued that publishers were not coerced to accede to Google's tie because publishers "did not necessarily have to use AdX."  E.D. Va. Op. at 862.  Judge Brinkema rejected that argument.  Relying on Daily Mail's and Gannett's testimony, she found that Google "has ensured that publishers would lose significant revenue if they did not use AdX," *id.* at 863, and, as a result, "it was not financially viable for large publishers to forgo using AdX and the access it offered to . . . unique advertising demand," *id.* at 870.  Judge Brinkema's finding that publishers could not forgo AdX's "uniquely large and diverse array of advertising demand" was essential to her holding that Google "possessed sufficient economic power in the tying product market [ad exchanges] to restrain competition in the tied product market [ad servers]."  *Id.* at 862 (cleaned up).

That finding applies here and precludes Google's mitigation defense.  In its order on collateral estoppel, this Court held that Google is estopped to relitigate the "elements of an unlawful tying arrangement . . . established by Judge Brinkema's findings and conclusions," including Judge Brinkema's finding that "publishers . . . understood the coercive power of the AdX-DFP tie."  MDL Dkt. No. 1219 at 27-28.  Google's contention, couched in its mitigation defense, that Daily Mail and Gannett could have "simply stopped using" AdX is the same argument Google tried and lost before Judge Brinkema.  E.D. Va. Op. at 862.  This Court's collateral estoppel decision bars a second trial on that issue.  And because Google's only proposed mitigation measure is one it is now estopped to assert, Google's mitigation defense must fail as a matter of law.

**B.    Google's Mitigation Defense Fails Because It Has No Evidence of The Amount of Damages That Purportedly Could Have Been Avoided.**

Even if Google could lawfully assert that Daily Mail or Gannett should have turned AdX off, Google has made no attempt to show "the extent to which" doing so "would have diminished [their] damages." *Int'l Cards Co., Ltd. v. MasterCard Int'l Inc.*, 2016 WL 7009016, at *5 (S.D.N.Y. Nov. 29, 2016) (citation omitted).  None of the six experts Google disclosed in Daily Mail's and Gannett's cases provide any calculations of the impact that turning off AdX would have had on Daily Mail's or Gannett's damages.  That should end the matter.  Google has utterly failed to present any evidence of a required element of its mitigation defense.  *See id*.

With no evidence of its own, Google has resorted to misreading plaintiffs' evidence. Google argued in its response to Daily Mail and Gannett's pre-motion letter that Hortacsu "offered testimony demonstrating the extent to which [disabling AdX] would have diminished [their] damages" arising from Enhanced Dynamic Allocation.  MDL Dkt. No. 1238 at 3.  But Hortacsu expressly opined there are "no reasonable effective mitigation strategies for publishers to avoid the detrimental impact of Google's EDA."  Hortacsu Reply Rep. ¶ 31 (Ex. 1).  So, nowhere does Hortacsu calculate what Daily Mail and Gannett's EDA damages would have been had they declined to sell any ad inventory through AdX.  Hortacsu's reports do not (and cannot) relieve Google of its burden affirmatively to prove the dollar amount by which Daily Mail and Gannett should have mitigated their damages.

Google argues that, according to Hortacsu's damages models, Gannett "lost more revenue from the operation of EDA on AdX than it would have lost had Gannett simply stopped using AdX for indirect deals."  MDL Dkt. No. 1223 at 10-11.  But that presents a false choice: Google offers no evidence that turning off AdX would erase EDA damages.  For example, EDA would continue to calculate a "temporary CPM" for direct deals that understated the contracted

price, permitting other advertisers to purchase ad inventory at a lower price.  *See In re Google Digit. Advert. Antitrust Litig.*, 627 F. Supp. 3d 346, 386 (S.D.N.Y. 2022); Li Rep. ¶ 902(a)-(f) (Ex. 12); GOOG-AT-MDL-008842393 (Decl. of N. Korula) ¶¶ 18-22 (Ex. 13) ("███

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████.").; 30(b)(6)

Dep. of Nitish Korula at 59:19-25 (July 12, 2024) (Ex. 14) ("████████████████

████████████████████████████████████████████████████

████████████████████████████████").  Just last month, the Department of

Justice described this harm to publishers in its closing arguments during the remedy phase of the

E.D. Va. case.  *See* E.D. Va. Trial Tr. at 99-100 (Nov. 21, 2025) (Ex. 15); E.D. Va. Gov't Pls.'

Rebuttal Demonstrative (Nov. 21, 2025) (Ex. 16).  In all events, no expert calculated whether (or

how much Daily Mail and Gannett's) damages would be reduced if EDA continued to operate,

but AdX no longer continued to bid.  That is fatal to the mitigation defense.

It is Google's burden to identify evidence of "the extent to which" its proposed mitigation

measures would have diminished Daily Mail's and Gannett's damages.  *Fleisig*, 2021 WL

2678675, at *13 (citation omitted).  Google has developed no evidence on that question and it

cannot rest its defense on a blatant mischaracterization of plaintiffs' expert opinion.  *Teva

Pharms. USA, Inc. v. Sandoz, Inc.*, 749 F. Supp. 2d 130, 134-35 (S.D.N.Y. 2010) (finding

defendants failed to meet their summary judgment burden when they offered "nothing more than

attorney argument" regarding the import of plaintiff's expert's testimony).  Because Google has

no evidence of the extent to which Daily Mail and Gannett purportedly could have mitigated

their damages, Google's defense fails as a matter of law and must be dismissed.

**CONCLUSION**

For the foregoing reasons, the Court should enter summary judgment for Daily Mail and Gannett on Google's unclean hands and unreasonable failure to mitigate defenses.

Date:  December 1, 2025

Respectfully submitted,

*/s/ John Thorne*

John Thorne
Daniel G. Bird
Bethan R. Jones
Christopher C. Goodnow
Mark P. Hirschboeck
Eliana Margo Pfeffer
Eric J. Maier
Sven E. Henningson
Jonathan I Liebman
Kyle B. Grigel
KELLOGG, HANSEN, TODD, FIGEL
  & FREDERICK, P.L.L.C.
1615 M Street NW, Suite 400
Washington, DC 20036
Tel.: (202) 326-7900
Fax: (202) 326-7999
Email: jthorne@kellogghansen.com
    dbird@kellogghansen.com
    bjones@kellogghansen.com
    cgoodnow@kellogghansen.com
    mhirschboeck@kellogghansen.com
    epfeffer@kellogghansen.com
    emaier@kellogghansen.com
    shenningson@kellogghansen.com
    jliebman@kellogghansen.com
    kgrigel@kellogghansen.com

*Counsel for Associated Newspapers, Ltd.,
Mail Media, Inc., and Gannett Co., Inc.*

17