**I'M UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION | Case No. 1:21-md-03010 (PKC) |

*This Document Relates To:*

| | |
|---|---|
| ASSOCIATED NEWSPAPERS LTD. and MAIL MEDIA, INC.<br><br>                              Plaintiffs,<br><br>     -against-<br><br>GOOGLE LLC and ALPHABET INC.,<br><br>                              Defendants. | Case No. 1:21-cv-03446 (PKC) |
| GANNETT CO., INC.<br><br>                              Plaintiff,<br><br>     -against-<br><br>GOOGLE LLC and ALPHABET INC.,<br><br>                              Defendants. | Case No. 1:23-cv-5177 (PKC) |

**PLAINTIFFS DAILY MAIL AND GANNETT'S STATEMENT OF**
**MATERIAL FACTS NOT IN DISPUTE PURSUANT TO LOCAL RULE 56.1(A)**

Pursuant to Rule 56.1 of the Local Civil Rules for the Southern District of New York, Plaintiffs Associated Newspapers Ltd. and Mail Media, Inc. (together "Daily Mail") and Gannett Co., Inc. ("Gannett" and, together with Daily Mail "Plaintiffs") submit the following statement of material facts as to which there can be no genuine dispute for trial.

I.      **Background**

    A.      **Plaintiffs' Claims**

1.      Plaintiffs claim that Defendants Google LLC and Alphabet Inc. (collectively "Google") have violated Section 2 of the Sherman Act, 15 U.S.C. § 2 by unlawfully acquiring and maintaining a monopoly in the market for publisher ad servers.  MDL Dkt. No. 1196 ("DM TAC") ¶¶ 251-55; MDL Dkt. No. 1197 ("Gannett SAC") ¶¶ 260-64.

2.      Plaintiffs claim that Google has violated Section 2 of the Sherman Act by unlawfully acquiring and maintaining a monopoly in the market for ad exchanges.  DM TAC ¶¶ 256-59; Gannett SAC ¶¶ 265-68.

3.      Plaintiffs claim that Google has violated Section 2 of the Sherman Act by attempting to monopolize the market for ad exchanges.  DM TAC ¶¶ 260-64; Gannett SAC ¶¶ 269-73.

4.      Plaintiffs claim that Google has violated Section 1 of the Sherman Act by unlawfully tying its AdX ad exchange to its DFP ad server.  DM TAC ¶¶ 265-71; Gannett SAC ¶¶ 274-80.

5.      Daily Mail claims that Google violated New York General Business Law § 349. DM TAC ¶¶ 272-84.

6.      Gannett claims that Google violated New York General Business Law §§ 349-50. Gannett SAC ¶¶ 281-94.

7.      Plaintiffs claim that Google defrauded them by making false representations regarding Google's publisher ad server, DFP, and its ad exchange, AdX.  *See*, *e.g.*, DM TAC ¶¶ 110, 132-33, 153-55, 207, 279-89; Gannett SAC ¶¶ 131, 158-60, 184-86, 228, 281-99.

8.      Gannett claims that Google was unjustly enriched and benefited by manipulating its online advertising auctions.  Gannett SAC ¶¶ 300-04.

### B.      Google's Defenses

9.      Google first answered Daily Mail's and Gannett's complaints on March 29, 2024. MDL Dkt. Nos. 737 (Gannett Answer), 738 (Daily Mail Answer).

10.     Google has since filed two additional answers to Daily Mail's and Gannett's complaints.  MDL Dkt. No. 829; MDL Dkt. No. 830; MDL Dkt. No. 1211; MDL Dkt. No. 1212.

11.     In each of Google's answers to Daily Mail's and Gannett's complaints, Google has claimed that Plaintiffs' claims "are barred, in whole or in part, by the doctrine of unclean hands" and has asserted that Plaintiffs have "failed to mitigate any alleged damages."  MDL Dkt. No. 737 at 51; MDL Dkt. No. 738 at 47; MDL Dkt. No. 829 at 56; MDL Dkt. No. 830 at 54; MDL Dkt. No. 1211 at 56; MDL Dkt. No. 1212 at 53.

## II.     Material Facts Relevant to Google's Unclean Hands Defense

12.     In June 2024, Plaintiffs served separate sets of interrogatories requesting that Google "[i]dentify the material and/or primary facts and evidence in support of and the legal basis for [Google's] defense that [Plaintiffs'] claims are barred, in whole or in part, by the doctrine of unclean hands" (the "Unclean Hands Interrogatories").  Daily Mail's First Set of Interrogs. at 5 (Ex. 1); Gannett's First Set of Interrogs. at 5 (Ex. 2).

13.     Google's response on June 28, 2024, stated that Plaintiffs "engaged, or sought to engage, in conduct that was either similar to the alleged conduct underlying its claims against Google, or was otherwise inequitable and/or improper."  Google's Resps. & Objs. to Daily Mail's First Set of Interrogs. at 12 (Ex. 3); Google's Resps. & Objs. to Gannett's First Set of Interrogs. at 12 (Ex. 4).

14.     Google's response to Gannett's Unclean Hands Interrogatory contained what Google called a "non-exhaustive list of documents sufficient to show support for" its unclean hands defense.  Google Resps. & Objs. to Gannett's First Set of Interrogs. at 12 (Ex. 5).

Google's response to Gannett's Unclean Hands Interrogatory listed the following documents and testimony:  GANNETT_GOOG_0321812, GANNETT_GOOG_0043625, GANNETT_GOOG_0183231, GANNETT_GOOG_0345929, GANNETT_GOOG_0247783, and 30(b)(6) Deposition of Gannett Co., Inc. (Jeff Burkett) at 289:10-300:6 (June 21, 2024).  Google Resps. & Objs. to Gannett's First Set of Interrogs. at 12 (Ex. 5).

15.    Google's response to Daily Mail's Unclean Hands Interrogatory contained what Google called a "non-exhaustive list of documents sufficient to show support for" its unclean hands defense.  Google Resps. & Objs. to Daily Mail's First Set of Interrogs. at 12 (Ex. 4). Google's response to Daily Mail's Unclean Hands Interrogatory listed the following documents and testimony:  DM_GOOG_0260817, DM_GOOG_0880607, DM_GOOG_0045401, DM_GOOG_0089942, DM_GOOG_0368872, and 30(b)(6) Deposition of Daily Mail (Matthew Wheatland) at 239:11-252:8 (June 12, 2024).  Google Resps. & Objs. to Daily Mail's First Set of Interrogs. at 12 (Ex. 4).

16.    Google served supplemental responses to Plaintiffs' interrogatories on August 30, 2024.  Google Suppl. Resps. & Objs. to Daily Mail's First Set of Interrogs. (Ex. 6); Google Suppl. Resps. & Objs. to Gannett's First Set of Interrogs. (Ex. 7).  Google's August 30, 2024 Supplemental Responses did not alter or supplement its June 28, 2024 Responses to the Unclean Hands Interrogatories.  Google Suppl. Resps. & Objs. to Daily Mail's First Set of Interrogs. at 12-14 (Ex. 6); Google Suppl. Resps. & Objs. to Gannett's First Set of Interrogs. at 13-14 (Ex. 7). Google has not supplemented its responses to the Unclean Hands Interrogatories since it served them on June 28, 2024.

## III.    Material Facts Relevant to Google's Failure To Mitigate Defense

17.    Daily Mail employee Matthew Wheatland testified during the trial in *United States v. Google LLC*, No. 1:23-cv-108 (E.D. Va.).  EDVA Tr. at 130:11-24 (Sept. 18, 2024)

(Ex. 9); EDVA Tr. at 76:4-17 (Sept. 27, 2024) (Ex. 10).  He testified that Daily Mail "would lose roughly 28 percent of [its] programmatic revenue if [it] switched off AdX."  EDVA Tr. at 130:11-24 (Sept. 18, 2024) (Ex. 9).  Wheatland testified that Daily Mail was compelled to accede to Google's unlawful tie because it needed AdX advertising demand.  EDVA Tr. at 76:4-17 (Sept. 27, 2024) (Ex. 10) ("[W]e're forced to purchase Google's ad server if we want to get access to AdX demand . . . an[d] AdX demand is huge"; "[I]f we didn't have AdX demand, we would lose money.  And so because of that requirement to access ad demand, we need to purchase Google's ad server.")

18.     Gannett employee Tim Wolfe testified during the trial in *United States v. Google LLC*, No. 1:23-cv-108 (E.D. Va.).  EDVA Tr. at 75:23-76:8 (Sept. 9, 2024) (Ex. 11).  He testified that Gannett would suffer "revenue loss" if it did not have "direct access to the Google ad exchange as a demand source for our inventory."  EDVA Tr. at 75:23-76:8 (Sept. 9, 2024) (Ex. 11).  In response to a question asking "why is it that Gannett can't switch away from using Google's ad exchange," he said that "Google represents about 50 percent of the programmatic revenue that Gannett generates."  EDVA Tr. at 104:9-23 (Sept. 9, 2024) (Ex. 11).

19.     Judge Brinkema issued a decision in *United States v. Google LLC*, No. 1:23-cv-108 (E.D. Va.), in which she found that Google "has ensured that publishers would lose significant revenue if they did not use AdX."  *United States v. Google LLC*, 778 F. Supp. 3d 797, 863 (E.D. Va. 2025) ("E.D. Va. Op.").  She further found that "it was not financially viable for large publishers to forgo using AdX and the access it offered to . . . unique advertising demand."  *Id*. at 870.  Judge Brinkema further found that "Google has largely limited AdWords exchange bidding to AdX" and that "[b]y so limiting AdWords, Google has ensured that publishers would view AdX as a 'must call' exchange."  *Id*. at 854.  Citing Wolfe's and Wheatland's testimony,

Brinkema found that "Google has ensured that publishers would lose significant revenue if they did not use AdX." *Id*. at 863 (citing Section VI(B)(2) of the E.D. Va. Op., which references Wolfe's and Wheatland's testimony).

20.    Google LLC "is precluded from relitigating" certain "findings and conclusions in the E.D. Va. Action" including "that Google has unlawfully tied DoubleClick for Publishers and AdX." MDL Dkt. No. 1219 at 32.

21.    No expert disclosed by Google in Plaintiffs' cases conducted a calculation of the amount of damages Plaintiffs suffered as a result of Google's Enhanced Dynamic Allocation.

22.    No expert disclosed by Google in Plaintiffs' cases conducted a calculation of the amount of damages Plaintiffs would have suffered as a result of Google's Enhanced Dynamic Allocation if Plaintiffs had disabled AdX.

23.    Plaintiffs' damages expert, Professor Ali Hortacsu, disclosed his opinion that there are "no reasonable effective mitigation strategies for publishers to avoid the detrimental impact of Google's EDA." Hortacsu Reply Rep. ¶ 31 (Ex. 1).

24.    Hortacsu did not conduct a calculation of how turning off AdX would impact Daily Mail's and Gannett's damages from Enhanced Dynamic Allocation. Hortacsu Rep.; Hortacsu Reply Rep.

25.    Under Enhanced Dynamic Allocation, the DFP publisher ad server calculates a "temporary CPM" for direct deals. The temporary CPM ███████████████████████ ██████████████████████████████████. GOOG-AT-MDL-008842393 (Decl. of N. Korula) ¶¶ 18-22 (Ex. 13) (noting that ████████████████████████ ████████████████████).

26.     By operation of Enhanced Dynamic Allocation, ██████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███. GOOG-AT-MDL-008842393 (Decl. of N. Korula) ¶¶ 18-22 (Ex. 13) ████████

████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████.).

Date:  December 1, 2025

Respectfully submitted,

*/s/ John Thorne*

John Thorne
Daniel G. Bird
Bethan R. Jones
Christopher C. Goodnow
Mark P. Hirschboeck
Eliana Margo Pfeffer
Eric J. Maier
Sven E. Henningson
Jonathan I Liebman
Kyle B. Grigel
KELLOGG, HANSEN, TODD, FIGEL
   & FREDERICK, P.L.L.C.
1615 M Street NW, Suite 400
Washington, DC 20036
Tel.: (202) 326-7900
Fax: (202) 326-7999
Email: jthorne@kellogghansen.com
        dbird@kellogghansen.com
        bjones@kellogghansen.com
        cgoodnow@kellogghansen.com
        mhirschboeck@kellogghansen.com
        epfeffer@kellogghansen.com
        emaier@kellogghansen.com
        shenningson@kellogghansen.com
        jliebman@kellogghansen.com
        kgrigel@kellogghansen.com

*Counsel for Associated Newspapers, Ltd.,*
*Mail Media, Inc., and Gannett Co., Inc.*