# Exhibit 15

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF VIRGINIA
 2                         ALEXANDRIA DIVISION

 3   ---------------------------x
     UNITED STATES, et al.,      :   Civil Action No.:
 4                               :   1:23-cv-108
                 Plaintiff,      :
 5       versus                  :   Friday, November 21, 2025
                                 :   Alexandria, Virginia
 6   GOOGLE LLC,                 :   Day 11
                                 :   Pages 1-122
 7               Defendant.      :
     ---------------------------x
 8         The above-entitled bench trial was heard before the
     Honorable Leonie M. Brinkema, United States District Judge.
 9   This proceeding commenced at 10:56 a.m.

10                     A P P E A R A N C E S:

11   FOR THE PLAINTIFFS:    GERARD MENE, ESQUIRE
                            OFFICE OF THE UNITED STATES ATTORNEY
12                          2100 Jamieson Avenue
                            Alexandria, Virginia  22314
13                          (703) 299-3700

14                          JULIA TARVER WOOD, ESQUIRE
                            MATTHEW HUPPERT, ESQUIRE
15                          DAVID TESLICKO, ESQUIRE
                            MICHAEL WOLIN, ESQUIRE
16                          UNITED STATES DEPARTMENT OF JUSTICE
                            ANTITRUST DIVISION
17                          950 Pennsylvania Avenue, NW
                            Washington, D.C.  20530
18                          (202) 894-4266

19   (State of VA):         TYLER HENRY, ESQUIRE
                            OFFICE OF THE ATTORNEY GENERAL
20                          OFFICE OF THE SOLICITOR GENERAL
                            202 North Ninth Street
21                          Richmond, Virginia  23219
                            (804) 786-7704
22

23

24

25
                                                                    1
```

1  logic.  And, again, the suggestion that final auction logic
2  is a concept that wasn't heard in the liability trial is
3  simply not true; of course it was heard in the liability
4  trial.
5              If we could turn to Slide 9, please.
6              But in any event, it certainly was a term that
7  Google's own engineers used when they talked about making
8  the final auction logic open source.  We did not coin that
9  phrase.  Just like they said that we coined the phrase
10 open-web display during the liability case.  These are not
11 concepts that are made up for litigation; these are concepts
12 that preexist and that you can see in Google's own
13 documents.
14             But let me put aside that and just talk about why
15 the final auction logic needs to include things like
16 Enhanced Dynamic Allocation, here reflected as EDA, and
17 reserve price optimization.  And this is a simple
18 illustration to show on the left-hand side before Enhanced
19 Dynamic Allocation and RPO, those are algorithms, before
20 those algorithms are applied, you have a publisher with a
21 direct deal that's valued at $1.05, and you have let's say
22 it's an AdX bid or a Prebid bid for that matter of $1.01.
23 So let's say all the Prebid ad exchange, third-party ad
24 exchange bids come out as $1.01 and you have a floor price
25 of $1, well, it's clear in those three circumstances that

98

```
 1    the winner with the best price is the direct deal at $1.05.
 2              But then what happens when it goes into the black
 3    box, the black box that these customers of DFP don't even
 4    know how it's functioning?  When it goes into that black box
 5    and EDA and RPO are applied, look at what happens, we have a
 6    very different winner.  All of the sudden the AdX bid is now
 7    .92, but it still is the winner because the direct deal, by
 8    virtue of process of the EDA analysis, has been reduced to
 9    .91 and the floor price has been reduced to .90.  So now
10    they're not going to get a deal at $1.05, they're going to
11    get a deal at .92.  They just lost money.  They would have
12    been better without EDA and without RPO.
13              And to suggest that the winner of the Prebid
14    auction is enough and we can send all of our auction logic
15    to Prebid and let them be the final arbiter.  No.  Because
16    it still comes back.  If you have on the left-hand side, you
17    substitute the word AdX bid for the word Prebid, you'll see
18    my point.  In their proposal, the final auction will still
19    choose between the Prebid auction result and direct deals.
20    That will still happen in Google.
21              And, yes, after the close of evidence before we
22    could examine a single witness about it, they say, oh, we're
23    going to give you some technical documents.  We're going to
24    make a disclosure to publishers that will make all of this
25    clear.  We don't know what those technical documents are, we
```

99

1  don't know how often they're provided, we don't know the
2  format they're provided, and we don't know what publishers
3  can do with them.  But most importantly, that doesn't let a
4  rival publisher ad server kickstart a new business.
5           Remember that EDA and RPO were fed by Google's
6  illegal scale.  This Court found that Google illegally took
7  scale from rival ad exchanges and rival ad servers and that
8  scale and data was used to feed the algorithms of EDA and
9  RPO.  It is only appropriate that those algorithms that were
10 borne out of that scale that Google illegally took be
11 offered back to the industry as a whole so that new
12 publisher ad servers can finally start.
13          Because again, Your Honor, you found in the
14 publisher ad server market there is no competition.  No
15 competition, Your Honor.  It is not the case that this is a
16 case where it will be easy and we can just let some
17 behavioral remedies take place, because again the Supreme
18 Court has said in order for rational actors, not people who
19 are being emotional and holding Google to blame for its
20 prior misconduct, if rational economic actors can't believe
21 that a new regime is in place where auctions will be fair
22 and access will be equal, they will not make the decision to
23 switch ad servers, and they will not make the decision to
24 invest the incredible amount of time, money and spirit to
25 invest in a new ad server.  And that is why you need the

100

```
 1  boldness of a structural remedy, because without it, these
 2  witnesses told you, without it, they are going to continue
 3  doing the same.
 4          And, again, this divestiture does have precedent
 5  in the law.  I have limited time remaining, but I would ask
 6  the Court to look at the materials we've given you in our
 7  briefing, as well as the slides that we showed, that, yes,
 8  there are Supreme Court cases where divestitures have been
 9  required, including of assets that were lawfully acquired in
10  the first instance.  There are divestitures that have
11  required businesses to wholly leave the marketplace.  There
12  are divestitures in all of the circumstances that are
13  relevant here.
14          And, in fact, Your Honor, genuinely it's hard to
15  imagine a case more deserving of structural remedies than
16  this one.  When you have a recidivist monopolist who has
17  illegally acquired its monopolies, despite what counsel may
18  tell you, this Court found those monopolies did not arise by
19  virtue of being better, but by cheating.  And when that
20  happens, the equitable thing to do is to terminate the
21  monopolies.  That's been the case for Supreme Court
22  precedent for 100 years, and it's no less true here, Your
23  Honor.
24          So in closing, I want to start with where I began
25  at the beginning of this remedies trial.  We are at a
```