

December 12, 2025

<u>Via ECF</u>

Hon. P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

*In re Google Digital Advertising Antitrust Litigation*
Case No. 21-md-3010 (PKC)

*In re Google Digital Publisher Antitrust Litigation*
Case No. 21-cv-7034 (PKC)

Dear Judge Castel:

We write on behalf of the AdX Class and AdSense plaintiffs The Progressive, Inc. ("The Progressive") and Mikula Web Solutions, Inc. ("Mikula") (together, "Publishers" or "Plaintiffs") pursuant to the Court's directive in Pre-Trial Order No. 19 (ECF 1248) to tailor or withdraw anticompetitive acts, allegations, or claims.[1]  No conference is scheduled at this time.

The AdX Class, The Progressive, and Mikula pursue claims for violation of (a) Section 2 of the Sherman Act (Cause of Action II) for acquiring and maintaining monopoly power in the markets for publisher ad servers and ad auction platforms, and (b) Section 1 of the Sherman Act (Cause of Action I) for tying publisher ad servers and ad auction platforms together.[2]  Publishers below identify the anticompetitive acts and allegations they continue to pursue, followed by a description of the claims, allegations, and anticompetitive conduct they hereby withdraw.  In sum, using the nomenclature of the Second Amended Complaint ("SAC"), Publishers:

- Pursue claims under Sherman Act Sections 1 and 2 for an anticompetitive scheme or course of conduct that included the following anticompetitive acts: tying AdX to DoubleClick for Publishers (Act 1), tying DoubleClick for Publishers to AdX (Act 2), Dynamic Allocation's First Look and Last Look (Act 5), Dynamic Revenue Share (Act 8), Unified Pricing Rules (Act 13), tying the AdSense auction platform to Google's basic ad server tag (Act 3), and tying Google's basic ad server tag to the AdSense auction platform (Act 4);

---

[1] Publishers are continuing to analyze the Court's order of this afternoon (ECF 1266) regarding class certification and Google's *Daubert* motion aimed at Publishers' yardstick damages.

[2] As a general matter, the AdX Class is pursuing claims relating to the advanced ad server and advanced auction platform (or ad exchange) markets, while The Progressive and Mikula are pursuing claims relating to the basic ad server and basic auction platform markets.  *See* Mem. in Support of Class Certification ("Class Br."), ECF 958 at nn.33-34; Elhauge Rpt. ¶4 (ECF 959-1).



- Withdraw the allegation that Enhanced Dynamic Allocation (Act 6) is independently anticompetitive, and tailor proof of allegations related to Enhanced Dynamic Allocation to show how that conduct disadvantaged third-party exchanges while expanding the scope of First Look and Last Look (Act 5); and

- Withdraw the following anticompetitive acts, allegations, or claims: Project Bernanke (Act 7), Line-Item Capping (Act 9), Redaction of Auction Data (Act 10), Project Poirot (Act 11), Project Elmo (Act 12), Minimum Bid to Win (Act 15), discriminatory risk aversion coefficients (*see* Elhauge Rpt. ¶¶368-371; *see also* Class Br., ECF 958 at 11-12),[3] and their claims under California's Unfair Competition Law (Cause of Action III) and the Cartwright Act (Cause of Action IV).

## I.    The AdX Class's Claims

As the Court ruled in its October 27, 2025, collateral estoppel opinion based on *United States* v. *Google, LLC*, 778 F. Supp. 3d 797 (E.D. Va. 2025) ("*E.D. Va. Op.*"), the AdX Class has established Google's violation of Sections 1 and 2 of the Sherman Act.  The Court's ruling precludes Google from relitigating whether it engaged in an anticompetitive scheme through which it acquired and maintained monopoly power in the markets for publisher ad servers with advanced functionalities and ad exchanges, which Publishers refer to as advanced ad auction platforms ("Google's scheme").  *See In re Google Digital Advert. Antitrust Litig.* ("*Google IV*"), 2025 WL 3012840, at *3, n.3, *17 (S.D.N.Y. Oct. 27, 2025).  Google is also estopped from re-litigating the existence of what Publishers denote as the Act 1 tie under Section 1, with AdX as the tying product and DoubleClick for Publishers as the tied product.  *Id.* at *8, *17.

Publishers maintain that the same conduct that Google is estopped from relitigating—First Look, Last Look, Dynamic Revenue Share, and Unified Pricing Rules (Elhauge Rpt. ¶¶323, 341, 367)—along with certain contractual restraints, collectively comprises a distinct tie (the Act 2 tie) by which Google coerced users of DoubleClick for Publishers (the tying product) to use AdX (the tied product).  Publishers pursue the Act 2 tie both as a tie under Section 1 and as a species of anticompetitive conduct leading to monopolization of the ad exchange market under Section 2.  Importantly, this Court's collateral estoppel ruling establishes the anticompetitive conduct component of the Act 2 tie under both Sections 1 and 2.[4]  Nevertheless, and to be clear, because the conduct is the same whether it is deemed a distinct tie or not, Google's exposure to overcharge damages to the AdX Class does not depend upon Publishers' proving the Act 2 tie as a distinct act.

As part of the course of conduct that Google is barred from relitigating, Google also made its ad buying tool, AdWords (now, "Google Ads"), purchase nearly exclusively into

---

[3] Search+ (Act 14) and "policing of code" (Act 16) were previously dismissed.  *In re Google Digital Advert. Antitrust Litig.* ("*Google II*"), 721 F. Supp. 3d 230, 273 (S.D.N.Y. 2024).

[4] Publishers sometimes refer to the dynamic of coercion running in both directions between the advanced ad auction platform (AdX) and use of its advanced publisher ad server (DoubleClick for Publishers) as a two-way tie (Acts 1 and 2).  ECF 1192 ¶ 395.



Google's auction platforms, thereby "compell[ing] its publisher customers to use DFP if they want to use AdX and receive real-time bids from AdWords advertisers." *Google IV,* 2025 WL 3012840, at *12 (quoting *E.D. Va. Op.,* 778 F. Supp. 3d at 867). Publishers' economic expert (Prof. Elhauge) reviewed this evidence and concluded that, as an economic matter, Google engaged in conduct with the characteristics of an anticompetitive two-way tie between Google's ad buying tool and its auction platform and ad server. *See* Elhauge Dep. 178:19-179:13 (ECF 959-4); Elhauge Rpt. ¶¶276, 302; Elhauge Reb. Rpt. ¶366 (ECF 959-3). Google incorrectly attempts to characterize this conduct as a new allegation ("Act 19a"), *see* Google Nov. 10, 2025, Ltr. ("Google Ltr."), ECF 1224 at 3-4. It is neither a new allegation nor a new claim. *See* ECF 1192 ¶¶16, 168-70, 178, 204, 238, 344. Rather, Google's conditioning of access to its AdWords advertising demand on use of Google's ad auction platforms and ad server has already been ruled an integral part of Google's tying of DoubleClick for Publishers to AdX (Act 1) and the broader anticompetitive scheme to monopolize the advanced ad platform and ad server markets and extract the overcharge that Publishers claim as damages. *Google IV,* 2025 WL 3012840, at *12, *17; *see also E.D. Va. Op.,* 778 F. Supp. 3d at 862 ("by prohibiting publishers that used a non-DFP ad server from having access to the essential AdX feature of real-time bidding by AdWords advertisers, Google effectively has 'coerced the abdication of publishers' independent judgment as to the 'tied' product's merits and insulated it from the competitive stresses of the open market") (cleaned up); *id.* at 825-26, 831, 861-62, 867. Thus, the conditioning of access to AdWords demand is part and parcel of the anticompetitive conduct that Google is estopped from relitigating.

Publishers claim that AdX Class members suffered antitrust injury and damages due to Google's scheme—the same conduct regarding which Google is estopped from relitigating.[5] Publishers' proof will include testimony from Prof. Elhauge showing that Google's scheme—already deemed anticompetitive by the Court—enabled Google to charge supracompetitive prices for the products at issue. *See* Class Br., ECF 958 at 25-35; Elhauge Rpt. ¶398-413. Using a yardstick based on comparable transactions from Google's mobile app ad auction platform—for which competitive pressure caused Google to lower its price—and supported by expert and fact testimony and documents, Publishers will show that Google's scheme inflated its take rates for open display ad transactions on AdX (and had no corresponding or cognizable offsetting benefits). *See* Class Br., ECF 958 at 25-28, 33-35.

Because acts that Publishers intend to present will establish liability, impact, and damages for the AdX Class, Publishers are withdrawing their allegations and will not present proof at trial that Enhanced Dynamic Allocation (Act 6), Project Poirot (Act 11), and the discriminatory risk aversion coefficient (*see* Elhauge Rpt. ¶¶ 368-371; *see also* Class Br., ECF 958 at 11-12), were anticompetitive acts supporting their Section 2 claims. Publishers' presentation of proof on allegations relating to Enhanced Dynamic Allocation will be limited to showing that it expanded the scope of Dynamic Allocation's anticompetitive First Look and Last

---

[5] Any proceedings related to injunctive relief have been deferred by Stipulation and Order until "after findings have been made with respect to liability." ECF 885 at 2.



Look, giving AdX access to 90 percent of DFP impressions, and disadvantaged third-party exchanges in doing so.  *See* Class Br., ECF 958 at 9.[6]

Publishers have previously withdrawn the following anticompetitive acts and will not present proof related to them at trial: Project Bernanke (Act 7), Line-Item Capping (Act 9), Redaction of Auction Data (Act 10), Project Elmo (Act 12), and Minimum Bid to Win (Act 15). *See* Publishers' Nov. 17, 2025, Ltr. ("Pub. Ltr."), ECF 1244 at 3 n.2.  The alleged anticompetitive acts of Search+ (Act 14) and "policing of code" (Act 16) were previously dismissed.  *Google II*, 721 F. Supp. 3d at 273.  Publishers have also withdrawn their claims under California's Unfair Competition Law (Cause of Action III) and the Cartwright Act (Cause of Action IV).  Pub. Ltr., ECF 1244 at 3 n2.

## II.    The Progressive's and Mikula's Section 1 and Section 2 Claims Rest on the Act 3 and 4 Two-Way Ties.

While somewhat different given the "basic" level of services provided by Google's AdSense products, in parallel with Google's Sherman Act violations in the DoubleClick for Publishers and AdX markets, Google also violated the Sherman Act with respect to AdSense.[7]

Publishers claim that two-way AdSense ties (Acts 3 and 4) led to a comparable ad auction platform overcharge to those for AdX.  *See supra* at 2; Class Br., ECF 958 at 25-31, 33-35; *see* ECF 1192 ¶¶198-200 (tie of Google's basic auction platform to DoubleClick for Publishers/AdSense ad servers and *vice versa*), 233-41 (alleging the AdSense ties).[8]  With one exception, these are primarily ties between Google's basic ad server (the "AdSense tag")[9] and its basic auction platform (the "AdSense auction platform").[10]  Google admits that it requires Publishers to use Google's basic ad server and its basic auction platform together.  Google Ltr., ECF 1224 at 5 (asserting "AdSense is and always has been a single, integrated product").  The only exception is that Google allows some Publishers using Google's advanced ad server (DoubleClick for Publishers) to access the AdSense auction platform, sometimes referred to as

---

[6] While other exchanges were nominally allowed to participate in Enhanced Dynamic Allocation, Google "throttled" these third-party exchanges, regularly preventing them from winning impressions even when they offered publishers the highest price.  *See* Elhauge Rpt. ¶¶325-27; Elhauge Reb. Rpt. ¶¶464, 495, 502.  The "throttling" of other exchanges' participation was the only aspect of Enhanced Dynamic Allocation that Publishers continued to challenge as anticompetitive by the time they moved for class certification.  *See* Class Br., ECF 958 at 9.

[7] Mikula used the AdSense ad server tag to access the AdSense auction platform, and The Progressive principally used DoubleClick for Publishers to access the AdSense auction platform.

[8] As Publishers have previously noted (*e.g.*, Pub. Ltr., ECF 1244 at 9-10; Elhauge Rpt. ¶6 nn.11, 13), their Complaint erroneously referred to Google's basic ad auction platform as the Google Display Network ("GDN"). *See* ECF 1192 ¶¶92, 119-20, 177-82 (referring to GDN as having the same functions as basic auction platforms). In fact, discovery revealed that Google referred to GDN as its buying tool for smaller advertisers.

[9] The AdSense basic ad server consists of "an AdSense tag (computer coding)" that publishers place on their websites allowing them "to select from a limited standardized menu of ad options, primarily consisting of ad format, size, and placement."  Elhauge Rpt. ¶22.

[10] *See* Elhauge Rpt. ¶23 (describing the "AdSense-dedicated ad auction platform for advertiser bids").



the "backfill" feature. *See* Google Memorandum of Law in Opposition to Publisher Plaintiffs' Motion for Class Certification, ECF 1028 at 27 n.25. Publishers assert that the AdSense ties constitute independent unlawful acts in violation of Sections 1 and 2 of the Sherman Act, ECF 1192 ¶¶398-400, and that those ties are part of Google's monopolization scheme in violation of Section 2, *id.* ¶¶404-09.

As set forth in Publishers' Pre-Motion Response Letter, Publishers claim that the two-way AdSense ties (Acts 3 and 4) satisfy the requisite tests for unlawful tying. Publishers are claiming that (a) both ad server markets (basic and advanced) are separate from the basic auction platform market, Pub. Ltr., ECF 1244 at 11-12; (b) Publishers' relevant market definitions and market power for basic and advanced ad servers and basic ad auction platforms are supported by substantial evidence, *id.* 12-13; and (c) Google's conduct caused anticompetitive effects in the basic and advanced ad server and ad auction platform markets, *id.* 13-14.

Respectfully submitted,

David Boies
dboies@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200

*Lead Counsel for the Publisher Class*

*/s/ Philip C. Korologos*
Philip C. Korologos
pkorologos@bsfllp.com
Robert J. Dwyer
rdwyer@bsfllp.com
James Keyte
jkeyte@bsfllp.com
Luke Williams
lwilliams@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300



Mark C. Mao
mmao@bsfllp.com
Sean P. Rodriguez
srodriguez@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6820

Sabria A. McElroy
smcelroy@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 377-4216

Izaak Earnhardt
iearnhardt@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave NW, 11th Floor
Washington, DC 2005
Telephone: (202) 237-2727

George A. Zelcs
gzelcs@koreintillery.com
Randall P. Ewing
rewing@koreintillery.com
Marc A. Wallenstein
mwallenstein@koreintillery.com
Ryan A. Cortazar
rcortazar@koreintillery.com
**KOREIN TILLERY LLC**
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Fax: (312) 641-9751



Stephen M. Tillery
stillery@koreintillery.com
Michael E. Klenov
mklenov@koreintillery.com
Carol L. O'Keefe
cokeefe@koreintillery.com
Andrew Ellis
aellis@koreintillery.com
Ian Moody
imoody@koreintillery.com
**KOREIN TILLERY LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Fax: (314) 241-3525

Eric L. Cramer
ecramer@bm.net
Michael C. Dell'Angelo
mdellangelo@bm.net
Caitlin G. Coslett
ccoslett@bm.net
Patrick F. Madden
pmadden@bm.net
Jeremy Gradwohl
jgradwohl@bm.net
**BERGER MONTAGUE PC**
1818 Market St., Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000

Robert E. Litan
rlitan@bm.net
**BERGER MONTAGUE PC**
1001 G Street, NW
Suite 400 East
Washington, DC 20001
Telephone: (202) 559-9740

*Co-Lead Counsel for the AdX Class and
Counsel for The Progressive and Mikula*

Copies to: All counsel of record via ECF.