**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION | Case No. 1:21-md-03010 (PKC) |

*This Document Relates To:*

DOTDASH MEREDITH INC. A/K/A
PEOPLE INC. and MEREDITH
OPERATIONS CORPORATION,

<em>Plaintiffs</em>,

   -against-

GOOGLE LLC and ALPHABET INC.,

<em>Defendants</em>.

Case No. 1:25-cv-7194 (PKC)

INSIDER, INC.,

<em>Plaintiff</em>,

   -against-

GOOGLE LLC and ALPHABET INC.,

<em>Defendants</em>.

Case No. 1:25-cv-07409 (PKC)

THE SLATE GROUP LLC,

<em>Plaintiff</em>,

   -against-

GOOGLE LLC and ALPHABET INC.,

<em>Defendants</em>.

Case No. 1:25-cv-07697 (PKC)

**PLAINTIFFS PEOPLE INC., BUSINESS INSIDER, AND SLATE'S OPPOSITION TO
GOOGLE LLC AND ALPHABET INC.'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ ii

ARGUMENT ............................................................................................................................2

I.     Plaintiffs Have Adequately Pleaded NY UDAP Claims. .....................................................2

     A.     Google's deceptions about its ad tech products are consumer oriented. .................2

     B.     Google's deceptive conduct was materially misleading. ..........................................4

     C.     Google's deceptive practices harmed Plaintiffs and enabled Google to take their inventory at depressed prices. ........................................................................12

II.    Plaintiffs Adequately Pleaded Their Fraud Claims To Warrant Discovery. .....................15

     A.     Plaintiffs' fraud allegations satisfy Rule 9(b)'s particularity requirement. ...........15

     B.     Plaintiffs satisfy the special facts doctrine that applies to Google's misleading disclosures and fraudulent concealment. ...............................................17

     C.     Google fails to establish that the fact-bound issue of justifiable reliance can be resolved against Plaintiffs as a matter of law. .............................................19

III.   Unjust Enrichment Is Available to Plaintiffs Whose GAM Contracts Do Not Cover Google's Anticompetitive Acts and Who Seek Relief Separate from NY UDAP. ...........20

     A.     Plaintiffs' GAM contracts do not contemplate the alleged conduct. ....................20

     B.     Plaintiffs allege a nexus by showing how Google profited at their expense. ........21

     C.     Plaintiffs may plead unjust enrichment and NY UDAP in the alternative. ...........23

IV.   Plaintiffs' Unjust Enrichment and UDAP Claims Are Timely. .........................................23

CONCLUSION .......................................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222 (E.D.N.Y. 2013)................. 6

*ACA Fin. Guar. Corp. v. Goldman, Sachs & Co.*, 25 N.Y.3d 1043 (2015)................................. 19

*Allianz Global Investors GmbH v. Bank of America Corp.*,
    463 F. Supp. 3d 409 (S.D.N.Y. 2020)................................................................... 20

*Anwar v. Fairfield Greenwich Ltd.*, 826 F. Supp. 2d 578 (S.D.N.Y. 2011) ................................ 16

*Bais Yaakov of Spring Valley v. Educ. Testing Serv.*,
    251 F. Supp. 3d 724 (S.D.N.Y. 2017)................................................................... 23

*Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*,
    57 F.3d 146 (2d Cir. 1995)................................................................................17-18

*Barkley v. Olympia Mortg. Co.*, 2007 WL 2437810 (E.D.N.Y. Aug. 22, 2007) ......................... 24

*Bernstein v. JPMorgan Chase Bank, N.A.*, 775 F. Supp. 3d 701 (S.D.N.Y. 2025) ..................... 14

*Celestin v. Martelly*, 698 F. Supp. 3d 443 (E.D.N.Y. 2023)......................................... 14

*Blank v. TriPoint Glob. Equities, LLC*, 338 F. Supp. 3d 194 (S.D.N.Y. 2018).......................... 21

*Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667 (S.D.N.Y. 2021)....................................... 5

*Cardiac Devices Qui Tam Litig.*, *In re*, 221 F.R.D. 318 (D. Conn. 2004) ............................ 15, 16

*Celestin v. Martelly*, 698 F. Supp. 3d 443 (E.D.N.Y. 2023)......................................... 14

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ....................................... 7

*Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.*,
    2015 WL 4191419 (S.D.N.Y. July 10, 2015) ....................................................... 21

*City Calibration Ctrs. Inc. v. Heath Consultants Inc.*,
    727 F. Supp. 3d 332 (E.D.N.Y. 2024) ................................................................... 9

*Clark-Fitzpatrick, Inc. v. Long Island R. R.*, 70 N.Y.2d 382 (1987) ........................................... 20

*Clemmons v. Upfield US Inc.*, 667 F. Supp. 3d 5 (S.D.N.Y. 2023)................................................. 5

*Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120 (E.D.N.Y. 2018) ................................ 13

*Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562 (S.D.N.Y. 2021)................................... 5

*Continental Cas. Co. v. Marshall Granger & Co. LLP*,
  921 F. Supp. 2d 111 (S.D.N.Y. 2013) ..................................................................... 10

*Cullen v. Margiotta*, 811 F.2d 698 (2d Cir. 1987) ....................................................... 25

*Dafofin Holdings S.A. v. Hotelworks.com, Inc.*,
  2001 WL 940632 (S.D.N.Y. Aug. 17, 2001) ............................................................. 6

*Danders & More v. Nova Cap. Partners, LLC*,
  2013 WL 425267 (N.Y. Sup. Ct. Jan. 14, 2013) ....................................................... 9

*DeBlasio v. Merrill Lynch & Co.*, 2009 WL 2242605 (S.D.N.Y. July 27, 2009) ....................... 22

*DIMON Inc. v. Folium, Inc.*, 48 F. Supp. 2d 359 (S.D.N.Y. 1999) ...................................... 20

*Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337 (S.D.N.Y. 2020) ................................ 5, 11

*Edmar Fin. Co. v. Currenex, Inc.*, 2023 WL 3570017 (S.D.N.Y. May 18, 2023) ......... 3, 4, 8, 10, 12, 13, 14, 20

*Epiphany Cmty. Nursery Sch. v. Levey*, 171 A.D.3d 1 (N.Y. App. Div. 2019) .......................... 19

*Express Gold Cash, Inc. v. Beyond 79*, 2019 WL 4394567 (W.D.N.Y. Sept. 13, 2019) ............. 24

*ExxonMobil Inter-Am., Inc. v. Adv. Info. Eng. Servs., Inc.*,
  328 F. Supp. 2d 443 (S.D.N.Y. 2004) ..................................................................... 4

*Fink v. Time Warner Cable*, 714 F.3d 739 (2d Cir. 2013) ............................................... 8

*Fusco v. Uber Techs., Inc.*, 2018 WL 3618232 (E.D. Pa. July 27, 2018) ............................... 7

*Google Digit. Advert. Antitrust Litig.*, *In re*, 627 F. Supp. 3d 346 (S.D.N.Y. 2022) ................... 14

*Google Digit. Advert. Antitrust Litig.*, *In re*, 721 F. Supp. 3d 230 (S.D.N.Y. 2024) ........ 13, 18, 25

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269 (S.D.N.Y. 2015) ..................... 4

*Harris v. Duchess County Bd. of Co-operational Educ. Servs.*,
  25 N.Y.S.3d 527 (Sup. Ct. 2015) ......................................................................... 13

*Hernandez v. Zenlen, Inc.*, 2025 WL 1070331 (S.D.N.Y. Apr. 9, 2025) ............................... 12

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v.
  Matthew Bender & Co.*, 37 N.Y.3d 169 (2021) ............................................... 2-3, 4, 10

*In re People v. Applied Card Sys., Inc.*, 27 A.D.3d 104 (N.Y. App. Div. 2005) .......................... 9

*James v. Penguin Grp. (USA) Inc.*, 2014 WL 1407697 (S.D.N.Y. Apr. 11, 2014) ....................... 6

*Knobel v. Shaw*, 90 A.D.3d 493 (N.Y. 2011) ............................................................ 24

*LIBOR-Based Fin. Instruments Antitrust Litig.*, *In re*,
    27 F. Supp. 3d 447 (S.D.N.Y. 2014)................................................................... 20

*M & T Mortg. Corp. v. Miller*, 323 F. Supp. 2d 405 (E.D.N.Y. 2004)......................... 25

*MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89 (2d Cir. 2023) ............................ 5

*Mason v. Reed's Inc.*, 515 F. Supp. 3d 135 (S.D.N.Y. 2021)...................................... 23

*Mexican Gov't Bonds Antitrust Litig.*, *In re*, 2025 WL 104099 (S.D.N.Y. Jan. 15, 2025) .......... 20

*Miller v. HSBC Bank U.S.A., N.A.*, 2015 WL 585589 (S.D.N.Y. Feb. 11, 2015) ......................... 4

*NCR Corp. v. B.A.T. Indus. P.L.C.*, 2024 WL 4188358 (S.D.N.Y. Sept. 14, 2024) ............. 16, 17

*Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666 (E.D.N.Y. 2017).............................. 8

*Newman v. L.F. Rothschild, Unterberg, Towbin*, 651 F. Supp. 160 (S.D.N.Y. 1986) .................. 6

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
    85 N.Y.2d 20 (1995) ................................................................................ 2, 10

*P.T. Bank Central Asia v. ABN Amro Bank N.V.*,
    301 A.D.2d 373 (N.Y. App. Div. 2003) .............................................................. 17

*Prysm Grp., LLC v. Emeritus Inst. of Mgmt. PTE LTD*,
    2025 WL 1827274 (S.D.N.Y. July 2, 2025) ......................................................... 18

*Scholder v. Sioux Honey Ass'n Coop.*,
    2022 WL 125742 (E.D.N.Y. Jan. 13, 2022) ........................................................ 23

*Solutia Inc. v. FMC Corp.*, 385 F. Supp. 2d 324 (S.D.N.Y. 2005).......................... 19-20

*Somerville v. Major Exploration, Inc.*, 576 F. Supp. 902 (S.D.N.Y. 1983) .................... 16

*Stanley v. Direct Energy Servs. LLC*, 466 F. Supp. 3d 415 (S.D.N.Y. 2020) .................. 24

*State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*,
    589 F. Supp. 2d 221 (E.D.N.Y. 2008) ............................................................... 15

*Stutman v. Chem. Bank*, 95 N.Y.2d 24 (2000).................................................. 12-13, 14

*Swersky v. Dreyer & Traub*, 219 A.D.2d 321 (N.Y. App. Div. 1996) ........................... 19

*Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734 (S.D.N.Y. 2012) ...................................... 11

*Tomasino v. Estee Lauder Cos. Inc.*, 44 F. Supp. 3d 251 (E.D.N.Y. 2014) .................... 11

*U.S. ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Resp., Inc.*,
  865 F.3d 71 (2d Cir. 2017)............................................................................... 15

*United States v. Google LLC*, 2025 WL 2523010 (D.D.C. Sept. 2, 2025) ..................................... 1

*United States v. Google LLC*, 778 F. Supp. 3d 797 (E.D. Va. 2025) ................................... 1, 3, 9,
  16, 18, 21

*Valley Juice Ltd., Inc. v. Evian Waters of France, Inc.*, 87 F.3d 604 (2d Cir. 1996) ................. 21

*Velez v. Lasko Prods.*, 706 F. Supp. 3d 444 (S.D.N.Y. 2023) ....................................................... 2

*Wawa, Inc. v. Mastercard Int'l, Inc.*, 2023 WL 6147177 (S.D.N.Y. Sept. 20, 2023) ................... 4

*Weight Watchers Int'l, Inc. v. Noom, Inc.*, 403 F. Supp. 3d 361 (S.D.N.Y. 2019)....................... 6

*Winans v. Ornua Foods N. Am. Inc.*, 731 F. Supp. 3d 422 (E.D.N.Y. 2024) ............................. 23

*Yuille v. Uphold HQ, Inc.*, 686 F. Supp. 3d 323 (S.D.N.Y. 2023)............................................. 7, 9

**STATUTES**

New York Gen. Bus. Law § 349.............................................................................................. *passim*

New York Gen. Bus. Law § 350.............................................................................................. *passim*

**RULES**

Fed. R. Civ. P. 9(b) ........................................................................................... 2, 15, 16, 17

Fed. R. Civ. P. 8(d)(3)........................................................................................................... 23

Fed. R. Civ. P. 12(b)(6)......................................................................................................... 23

Google used fraud and deception on its way to becoming an adjudicated monopolist.[1] Google's deceit in implementing its anticompetitive schemes formed a core part of Judge Brinkema's 115-page opinion, which this Court largely adopted in granting preclusive effect to her liability decision.  MDL Dkt. 1219.  In analyzing Google's liability, Judge Brinkema found that Google implemented at least Dynamic Revenue Share (DRS) and Unified Pricing Rules (UPR) under false pretenses, 778 F. Supp. 3d at 830-31 (UPR), 870 (DRS).  She also specifically noted Google's "regular[ ]" disregard of litigation holds and evidentiary rules to cover up "'legally sensitive' topics that they did not want to be preserved." *Id.* at 872-73.  Google is a recidivist monopolist that has engaged in serious misconduct, including misleading and deceptive practices harming publishers.

Google nevertheless asks this Court to reject the facts alleged by Plaintiffs, confirmed by Judge Brinkema, and supported by this Court's prior orders:  that Google gained and supported its multiple monopolies through decade-long schemes.  These programs were intended to cultivate Google's reputation as an honest partner, but actually diverted hard-earned publisher dollars to Google.  To be clear, only Google knows the full details of its deceptions.  For over a decade, it has obscured its ad tech manipulations and their effects from every publisher consumer.  But despite Google's informational advantages, Plaintiffs have still alleged in detail how Google misled Plaintiffs, giving Google fair notice of their claims for violations of New York General Business Law Sections 349 and 350 ("NY UDAP"), common law fraud, and unjust enrichment.

---

[1] *United States v. Google LLC*, 778 F. Supp. 3d 797 (E.D. Va. 2025) (Ad Server and Ad Exchange monopolies); *United States v. Google LLC*, 2025 WL 2523010 (D.D.C. Sept. 2, 2025) (General Search Services monopoly); Jury Verdict, *In re Google Play Store Antitrust Litig.*, No. 20-cv-05671 (N.D. Cal. Dec. 11, 2023), Dkt. 606 (Play Store monopoly).

*First*, Plaintiffs have stated cognizable claims under NY UDAP by alleging how Google offered consumer-facing products—DFP and AdX—and made materially misleading statements or omissions that caused harm to publishers.

*Second*, as to common law fraud, Plaintiffs have presented a wealth of factual allegations regarding Google's fraudulent representations, half-truths, and omissions.  In the context of Google's "superior knowledge" of its own hidden schemes (and a corresponding duty to disclose the relevant facts to Plaintiffs), these allegations satisfy Rule 9(b)'s particularity requirement.  Moreover, justifiable reliance is fact-bound and unsuitable for resolution before discovery.

*Third*, Plaintiffs' unjust enrichment claims can proceed.  The relevant contracts do not contemplate Google's illegal market manipulation, and Plaintiffs allege Google profited at their expense.  Plaintiffs seek no double recovery and may plead unjust enrichment in the alternative.

*Finally*, Google's fact-intensive statute of limitations defenses do not warrant dismissal.

Discovery on Plaintiffs' claims already is underway on an expedited schedule.  Google's arguments are erroneous and premature.  Google's motion to dismiss should be denied.

## ARGUMENT

## I.    Plaintiffs Have Adequately Pleaded NY UDAP Claims.

Plaintiffs alleged each element:  "(1) consumer-oriented conduct that is (2) materially misleading and that (3) [Plaintiffs] suffered injury as a result of the allegedly deceptive act or practice."  *Velez v. Lasko Prods.*, 706 F. Supp. 3d 444, 452 (S.D.N.Y. 2023).

### A.    Google's deceptions about its ad tech products are consumer oriented.

Plaintiffs adequately allege consumer-oriented conduct.  Under NY UDAP, consumer-oriented conduct includes "acts or practices [that] have a broader impact on consumers at large."  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995).  Such "conduct need not be directed to *all* members of the public."  *Himmelstein, McConnell,*

*Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 37 N.Y.3d 169, 177 (2021).
Instead, "[w]hat matters is whether the defendant's allegedly deceptive act or practice is directed
to the consuming public and the marketplace." *Id*.; *see also Edmar Fin. Co. v. Currenex, Inc.*,
2023 WL 3570017, at *20 (S.D.N.Y. May 18, 2023) (allegations sufficiently consumer-oriented
where FX trading platform owners "rig[ged]" auctions "affected all Platform users alike").

The misleading conduct Plaintiffs allege—stemming from Google's public marketing and
sale of DFP and AdX, as well as representations in Google's form contracts regarding those
products—falls comfortably within that ambit.  A product or service is sufficiently consumer
oriented where the defendant makes it available to "a robust consumer base," "defendant's
conduct [is] not unique to the parties," and "[t]he marketing and sale of the [product is] not
limited to a single transaction." *Himmelstein*, 37 N.Y. 3d at 178.  That is the case here.
Google's ad tech products—DFP and AdX—are marketed and sold "to a robust consumer base,"
typically using a form contract or online terms and conditions not "unique to the parties" or
"designed to the specifications of a specific buyer," nor "limited to a single transaction." *Id*.; *see*
People ¶¶ 261-64; Insider ¶¶ 260-63; Slate ¶¶ 259-62; Mot. at 7 (relying on common form
language from "Google's DFP agreements").

As Judge Brinkema found, in the markets for publisher ad servers and ad exchanges that
Google monopolized, "publisher[s]" like Plaintiffs are "the primary consumer" and Google's
conduct "substantially harmed Google's publisher customer."  778 F. Supp. 3d at 842, 873.

Google's two arguments fail.  First, Google erroneously contends (at 4), that the
existence of "individual commercial contracts" between parties is dispositive.  *Himmelstein*
proves otherwise:  the defendant—like Google—used form contracts with consumers. *See*
*Himmelstein*, 37 N.Y. 3d at 178. The "significant[ ]" consideration is whether "defendant's

conduct is unique to the parties." *Id*. Here, Google's deceptive conduct is imposed market-wide, not through individualized, highly negotiated agreements.

Second, Plaintiffs may bring NY UDAP claims even though Google describes them as "large, sophisticated businesses" with supposedly "equal bargaining power." *See* Mot. 4-5 (citing *ExxonMobil Inter-Am., Inc. v. Adv. Info. Eng. Servs., Inc.*, 328 F. Supp. 2d 443, 448-49 (S.D.N.Y. 2004)). Routine transactions by any type of consumer are cognizable under NY UDAP. *See Edmar*, 2023 WL 3570017, at *1, *20 (allowing NY UDAP claims by financial firms who entered into form contracts with providers of foreign exchange trading platforms). Indeed, *Himmelstein* (unmentioned by Google) confirms "individuals and businesses" can bring NY UDAP claims: it rejected that NY UDAP claims (1) are particular to products "directed at consumers at large for personal, family, or household use" and (2) "do[] not apply to a business's purchase of 'a widely sold service that can only be used by businesses.'" 37 N.Y.3d at 177.

Google's remaining citations are unavailing. *Wawa* confirms that "a dispute between businesses does not satisfy the consumer-oriented prong *if the transaction 'does not have ramifications for the public at large*'" (Google's conduct does here). *Wawa, Inc. v. Mastercard Int'l, Inc.*, 2023 WL 6147177, at *7 (S.D.N.Y. Sept. 20, 2023). *Miller* involved deceptions "specific to" a single individual—namely, a bank's loan modifications to a single mortgage (Google's conduct applies to all publishers). *Miller v. HSBC Bank U.S.A., N.A.*, 2015 WL 585589, at *9 (S.D.N.Y. Feb. 11, 2015). *Gucci* involved speculative harm to consumers that was separate from the harm suffered by the competitor plaintiff (Google harmed publishers at large). *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 272-75 (S.D.N.Y. 2015).

**B.    Google's deceptive conduct was materially misleading.**

In assessing whether conduct is materially misleading, "the inquiry is whether, objectively, the act is 'likely to mislead a reasonable consumer acting reasonably under the

circumstances.'" *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020).

Materiality is typically so fact-intensive that dismissal "should rarely be granted." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 581 (S.D.N.Y. 2021). This is not that rare case.

Plaintiffs have explained in detail why each of Google's various schemes was seriously

misleading. Google's general effort (at 5) to downplay them as "Google optimizations" should

not be credited: Judge Brinkema already held that most of Google's conduct was

"anticompetitive," not optimizing.

### 1.    Dynamic Allocation ("DA")

Plaintiffs allege that Google misrepresented that DA allowed publishers to "maximize

yield" by providing publishers a "risk-free way to get the highest real-time revenues for all their

non-guaranteed impressions." *See* People ¶ 61; Insider ¶ 60; Slate ¶ 60. Google claims these

"general" statements are "puffery" and not reasonably misleading. But puffery consists of

"subjective statements that cannot be proven true or false," or "objective statements that can be

proven true or false but are so exaggerated that no reasonable buyer could justifiably rely on

them." *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 96 (2d Cir. 2023). Courts

"must proceed with care in" determining whether a reasonable consumer would be misled as a

matter of law: "the inquiry is generally a question of fact not suited for resolution at the motion

to dismiss stage." *Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 676 (S.D.N.Y. 2021);

*Clemmons v. Upfield US Inc.*, 667 F. Supp. 3d 5 (S.D.N.Y. 2023) (Castel, J.) ("[S]uch a

determination should be rare").

Under that standard, Google's specific representations here are sufficiently objective and

definite. *See* People ¶ 61; Insider ¶ 60; Slate ¶ 60. Google's cases involve nonspecific assertions

about "great investment[s]" to make "quick money"; the "subjective" promise of "a healthier you

in 16 weeks"; and boasts of being "the best in the business" and able to "make money for you."[2] By contrast, Google made specific representations about specialized technology meant to have a specific effect on its target audience:  Maximizing yield, real-time revenues, and non-guaranteed impressions are specific commercial terms that carry weight with publishers.  Google's deceptive claims were real, not mere puffery.

## 2.     Enhanced Dynamic Allocation ("EDA")

Direct deals are among publishers' most profitable.  People ¶ 155, Insider ¶ 154; Slate ¶ 153.  With EDA, Google targeted those deals to take the most profitable for itself.  People ¶ 156, Insider ¶ 155; Slate ¶ 154.  When Google misrepresented that EDA "would protect [Plaintiffs'] direct deals," or "would not cause [Plaintiffs] to lose revenue from direct deals," or "did not permit Google to compete with certain sponsorship deals," those are materially misleading statements.  *See* People ¶¶ 157, 268; Insider ¶¶ 156, 267; Slate ¶¶ 155, 265.

Contrary to Google's suggestion (at 6), a NY UDAP plaintiff "is not required to identify particular misstatements" on a motion to dismiss.  *James v. Penguin Grp. (USA) Inc.*, 2014 WL 1407697, at *10 (S.D.N.Y. Apr. 11, 2014) (allegations that a defendant "misrepresented the nature of its services" without identifying "particular misstatements" sufficient).  Google's case found a lack of causation when plaintiff "failed to plead that *she* was injured" by defendant's acts.  *Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 234-35 (E.D.N.Y. 2013).  Here, Plaintiffs identify how People, Business Insider, and Slate "enabled and continued

---

[2] *Dafofin Holdings S.A. v. Hotelworks.com, Inc.*, 2001 WL 940632, at *4 n.6 (S.D.N.Y. Aug. 17, 2001) ("great investment" and "quick money"); *Weight Watchers Int'l, Inc. v. Noom, Inc.*, 403 F. Supp. 3d 361, 371 (S.D.N.Y. 2019) ("healthier you in 16 weeks"); *Newman v. L.F. Rothschild, Unterberg, Towbin*, 651 F. Supp. 160, 163 (S.D.N.Y. 1986) ("I'm the best in the business" and "I'll make money for you").

to use Enhanced Dynamic Allocation for many years on the basis of [Google's] representations"
about EDA.  People ¶ 158; Insider ¶ 157; Slate ¶ 156.

As to Slate, Google argues that no "reasonable consumer" could be misled by Google's
promises to "protect guaranteed ads in all cases," assurances that sponsorship advertisements
would be "completely immune" from EDA, and representations that EDA would not "change the
price floor of [ ] sponsorship line items or affect their delivery."  Mot. at 6-7 (quoting Slate
¶ 155).  Again, those are clear, specific false statements to a consumer about important, highly
profitable transactions.  They were intended to, and did, have a specific effect on the target
audience.  They are nothing like the generic, subjective statements in Google's cited cases.[3]

### 3.    Last Look and Minimum Bid To Win (MBTW)

Plaintiffs allege how Google misrepresented in its contracts to abstain from using "data
entered by [publishers] . . . that is not generally shared with buyers . . . for purposes of informing
bids made by Google."  People ¶ 268(c); Insider ¶ 267(c); Slate ¶ 265(b).  In response, Google
asserts that a reasonable consumer would not have been misled by this statement "in the context
of the entire DFP agreement" because the contracts (purportedly) also state that Google may use
"data entered by publishers . . . as necessary to provide the Services."  Mot. at 7.

Again, these efforts to downplay fail.  First, the contracts are not before the Court, and
Plaintiffs have been unable to identify where in Google's standard terms of service that language
appears.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002) (holding that the
Court must "exclude[ ] extrinsic documents" or "give the parties an opportunity to conduct

---

[3] *See Yuille v. Uphold HQ, Inc.*, 686 F. Supp. 3d 323, 344-45 (S.D.N.Y. 2023)
(statements that "[s]ecurity is built into our systems and culture," that defendant "respond[s]
immediately to any detected threat" were not specific enough to be falsifiable); *Fusco v. Uber
Techs., Inc.*, 2018 WL 3618232, at *6 (E.D. Pa. July 27, 2018) (holding that "general terms of
quality" such as "thorough[ ]," "rigorous," and "safe" were not actionable).

appropriate discovery and submit the additional supporting material"). Second, no reasonable consumer would read a generic statement about necessary services to trump a specific statement about informing bids, nor understand that Google would undermine competition by trading on Plaintiffs' confidential information in rendering ad tech services.[4]

### 4.    Bernanke

Bernanke is a pernicious and fraudulent bid manipulation scheme that is a centerpiece of the Texas Attorney General's case against Google. Fourth Am. Compl. ¶¶ 298-317, MDL Dkt. 541 (alleging how "Project Bernanke deceives publishers and advertisers and excludes competition in the exchange market"). Here, Plaintiffs specifically allege how, over a period of years, Google repeatedly and falsely "represented that AdX ran as a true second-price auction, when in reality, Project Bernanke and its variants converted AdX's auction into a manipulated auction," by secretly inflating and deflating Google Ads bids submitted to AdX. People ¶¶ 166, 268(f); Insider ¶¶ 165, 267(f); Slate ¶¶ 164, 265(e). Plaintiffs describe how this was doubly deceptive because (i) Google and its staff affirmatively represented to publishers it was running a true second-price auction—in at least two specific instances in 2010 and 2014, before and after implementing Bernanke—and then (ii) never corrected misimpressions about the auction once Google implemented Bernanke. *See* People ¶ 174, Insider ¶ 173, Slate ¶ 172. These specific and detailed deceptions about the mechanics of Google's auctions are plausibly material. *Edmar*, 2023 WL 3570017, at *8, *20 (finding omission of information regarding a secret tie-breaking

---

[4] Google's citations to *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) and *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 674 (E.D.N.Y. 2017) are inapposite. In *Fink*, the plaintiffs failed altogether to submit the misleading advertisement upon which they purported to base their case in response to the Second Circuit's request to supplement the record. 714 F.3d at 741. In *Nelson*, a clear disclaimer in all capital letters that Fosters beer was "brewed and packaged" in "ALBANY GA AND FORT WORTH TX" defeated plaintiffs' claims that MillerCoors misrepresented the beer as Australian. *MillerCoors*, 246 F. Supp. 3d at 676.

rule in trading platform material to consumers); *In re People v. Applied Card Sys., Inc.*, 27 A.D.3d 104, 107-08 (N.Y. App. Div. 2005) (failure to disclose information expected by credit consumers was sufficient to allege a NY UDAP violation).

Google appears to argue (at 8) that there can be no misrepresentation regarding Bernanke because "Plaintiffs do not identify any specific representations" about it. That is too clever by half: Bernanke was a secret program whose "first rule" was "we don't talk about Bernanke." *E.g.* People ¶ 176. In any case, Plaintiffs have identified Google's misrepresentations about the auction, alleged that Google deliberately concealed the true nature of the program, and alleged that implementation of Bernanke disproved Google's statements.[5]

Google's half-hearted argument regarding Bell V.2 fares even worse. Google argues that representing that "multi-calling was an appropriate auction strategy" while punishing publishers engaging in multi-calling is not "specific enough to be falsifiable." Mot. at 9 (citing *Yuille*, 686 F. Supp. 3d at 344-45). Saying one thing while meaning the opposite cannot be excused as puffery.

### 5.    Unified Pricing Rules

By May 2019, Google's impending move to the First Price auction had received complaints from some of its "largest publisher customers [who] were disgruntled with the implementation of [UPR], which reduced their ability to control ad pricing, maintain ad quality, and diversify their sources of revenue." *Google*, 778 F. Supp. 3d at 831 (relying on a May 2019

---

[5] Google suggests (without authority) that the presence of a fourth co-author on the 2014 *American Economic Review* paper authored by three Google employees with Google email addresses immunizes the representations therein. *See* People ¶ 174, Insider ¶ 173, Slate ¶ 172. Reasonable consumers would understand that paper to contain accurate statements from Google. *See Danders & More v. Nova Cap. Partners, LLC*, 2013 WL 425267 (N.Y. Sup. Ct. Jan. 14, 2013) (title of "business development director" gave appearance of authority to speak on defendant's behalf); *City Calibration Ctrs. Inc. v. Heath Consultants Inc.*, 727 F. Supp. 3d 332, 355 (E.D.N.Y. 2024) ("employee's title alone can indicate apparent authority.") (cleaned up).

email chain discussing "difficult PR" around "removing publisher controls").[6]  That same month,

Google represented in a best practices guide that "applying multipliers to non-Google bids . . .

would not 'maximize yield.' "  People ¶ 221; Insider ¶ 220; Slate ¶ 219.

Google argues (at 10) that its statement could not have been materially false because

UPR had not been fully rolled out at the time.  This argument raises several questions of fact—

namely, whether Plaintiffs indeed had access to UPR at the time of Google's statements (they

did), and whether Google ever corrected its misstatements or partial disclosures (it did not).

Google alternatively argues (at 10) that as "sophisticated customers," Plaintiffs could not have

been misled.  That is irrelevant:  reliance is not an element of a NY UDAP claim, though reliance

is sufficient (but not necessary) to state an injury.  *Oswego*, 85 N.Y.2d at 26.  So long as a

misstatement is directed to the public, it is actionable.  *See Himmelstein*, 37 N.Y.3d at 177;

*Edmar*, 2023 WL 3570017, at *20.

### 6.    Exchange Bidding

Plaintiffs adequately allege that Google misrepresented the benefits of exchange bidding

in order to steer plaintiffs away from header bidding, which Google executives knew was better

for publishers.  *See*, *e.g.*, People ¶ 191 ("I would suggest being very careful here what we say to

publishers. . . . Publishers are likely fine with header bidding, they make more money with it.").

Plaintiffs specifically point to a Google executive's blog post stating that "[w]ith Exchange

Bidding, publishers can increase revenue by allowing multiple exchanges to compete with each

other," that Google was working to ensure publishers continued getting the greatest value for all

their ad inventory, and that publishers were benefitting from Exchange Bidding.  *Id.*  Google also

---

[6] "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  *Continental Cas. Co. v. Marshall Granger & Co. LLP*, 921 F. Supp. 2d 111, 118 (S.D.N.Y. 2013).

represented "that Exchange Bidding leads to higher revenue because . . . publishers can load ads more quickly on their webpages."  People ¶ 268(d); Insider ¶ 267(d); Slate ¶ 265(c).

Google cites (at 10) this Court's finding in the antitrust context that its statements regarding Exchange Bidding were a "sales pitch." MDL Dkt. 701 at 55.  It then argues that no "reasonable consumer would interpret [its claims] as promising that Exchange Bidding *would* lead to higher revenue." Mot. at 10.  Google included specific details about Exchange Biddint's impact and effect, and publishers were misled.  Google cannot contend that publishers chose Exchange Bidding due to its "pitch," but then deny the materiality of those representations.

### 7.     Dynamic Revenue Share (DRS)

Plaintiffs detail how Google failed to disclose DRS upon launch, how Google failed to disclose DRS's operations when it finally disclosed the program, how Google misrepresented that disabling DRS would "reduce Ad Exchange yield," and how Google falsely represented that "'revenue share optimizations' were 'paused' in 2019" despite continuing until at least 2021. *See* People ¶¶ 184-89; Insider ¶¶ 184-88; Slate ¶¶ 183-87.  This was "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Duran*, 450 F. Supp. 3d at 346.

Google's arguments fail.  First, Google contends (at 11) that Plaintiffs must "identify what 'steps' they purportedly would have taken" had they known of Google's deception.  But NY UDAP does not require that.[7]  Moreover, the only fair reading of Plaintiffs' allegations is that they would have disabled DRS while they had the option if they had known.

---

[7] The portion of *Tomasino v. Estee Lauder Cos. Inc.*, cited by Google addresses whether the plaintiff had alleged sufficient facts identifying the falsity of defendants' statements.  44 F. Supp. 3d 251, 257-58 (E.D.N.Y. 2014).  Similarly, *Tasini v. AOL, Inc.*, on which Google relies, says that "[s]tatements that have virtually no effect cannot be said to be material." 851 F. Supp. 2d 734, 745 (S.D.N.Y. 2012).  Here, Plaintiffs have alleged facts establishing falsity of information material to publishers.

Second, Google argues (at 11) that Plaintiffs must identify facts showing the falsity of Google's statement that disabling DRS would "reduce Ad Exchange yield." Unlike *Hernandez v. Zenlen, Inc.*, 2025 WL 1070331, at *2 (S.D.N.Y. Apr. 9, 2025), Plaintiffs do not "simply state[] that the challenged statement is false." Plaintiffs identify the auction mechanics demonstrating that Google's DRS representations were false. People ¶¶ 180-85; Insider ¶¶ 179-84; Slate ¶¶ 178-83. The mathematical illustrations in Plaintiffs' Complaints are not mere "hypotheticals," as Google contends, but examples of how Google's deception worked.

Third, Google asserts (at 11) that Plaintiffs have not explained why Google's false statement regarding pausing revenue optimizations was "important to consumers." The Complaints state that "publishers' ability to set their own price floors was an important mechanism by which they maximized revenue and controlled the sources of advertisements on their websites," and that Google feared "disclosing details about how [DRS] actually worked, lest publishers disable it." People ¶¶ 186-87; Insider ¶¶ 185-86; Slate ¶¶ 184-85. Those allegations satisfy NY UDAP's "materially misleading" requirement.

### C.    Google's deceptive practices harmed Plaintiffs and enabled Google to take their inventory at depressed prices.

Plaintiffs' Complaints allege how each of Google's deceptions enabled Google to take plaintiffs' advertising inventory at lower prices through the relevant programs.[8] That is sufficient. *See Edmar*, 2023 WL 3570017, at *10, *20 (holding that auction inventory sold at a lower price is a cognizable harm for a UDAP claim). A plaintiff's allegation that a "defendant's material deception caused them to suffer a [monetary] loss . . . satisfies the causation

---

[8] **Dynamic Allocation:** *E.g.*, People ¶¶ 60, 148. **EDA:** *E.g.*, Slate ¶¶ 150, 155-56. **Last Look/MBTW:** *E.g.*, People ¶¶ 147-48, 193. **Bernanke:** *E.g.*, People ¶¶ 174, 268(f). **UPR:** *E.g.*, Insider ¶¶ 219-22. **Exchange Bidding:** *E.g.*, Insider ¶¶ 191, 267(d). **DRS:** *E.g.*, Insider ¶ 267(e).

requirement." *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 30 (2000).  Plaintiffs have met their

burden here in showing that they "suffered an injury as a result of the deception."  *Edmar*, 2023

WL 3570017, at *20.  In arguing to the contrary, Google seeks to exploit the procedural posture

of these cases:  Google knows full well that Plaintiffs will be able to demonstrate causation, just

as Daily Mail and Gannett have done through expert testimony.  The Court should reject

Google's effort to ignore Plaintiffs allegations and cut short what it knows Plaintiffs can do.

Google's arguments (at 12-14) regarding Plaintiffs' injuries stemming from MBTW/Last

Look, EDA, DRS, and Bernanke largely restate materiality arguments that fail to address the test

for actual injury:  whether Google's misrepresentations caused a loss to Plaintiffs.  *Stutman*, 95

N.Y. 2d at 30.  Google argues (at 12) that Plaintiffs make only "conclusory" allegations of injury

from Last Look.  But Plaintiffs allege that Last Look and MBTW enabled Google to take

Plaintiffs' inventory at bargain-basement prices, *e.g.*, People ¶¶ 142-49, 198, and this Court

previously held that similar allegations "plausibly explain" how MBTW "artificially depress[ed]

the bids for publisher impressions" and "benefit[ed] consumers of [Google's] ad buying tools at

the expense of consumers of its publisher ad servers."  *In re Google Digit. Advert. Antitrust

Litig.*, 721 F. Supp. 3d 230, 259-60 (S.D.N.Y. 2024).[9]

Regarding EDA, Google argues (at 13) that Plaintiffs "do not allege what, if anything,

they would have done differently absent the purported misrepresentations."  Again, reliance is

---

[9] Google's citations to *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120 (E.D.N.Y. 2018) and *Harris v. Duchess County Board of Co-operational Education Services*, 25 N.Y.S.3d 527 (Sup. Ct. 2015) confirm Plaintiffs have carried their burden.  In *Colella*, the plaintiffs did not explain why they had been charged "a premium." 348 F. Supp. 3d at 143.  In *Harris*, the court merely held that plaintiffs' purported injury of lost employment opportunities was speculative because it was "clearly beyond the ability of [the] Court to assess." *Id.* at 544.  Here, by contrast, Plaintiffs have identified the auction mechanisms that harmed them and will be able to show the but-for world through experts.

not an element of a NY UDAP claim, and materiality is a separate element from injury: "there is a difference between reliance and causation." *Stutman*, 95 N.Y.2d at 30. Google thus misapprehends *Celestin v. Martelly*'s holding on materiality to be one regarding causation. 698 F. Supp. 3d 443, 471 (E.D.N.Y. 2023). In *Celestin*, the plaintiffs only alleged that defendants "utilized" deceptive "tactics" without offering "any detail whatsoever" about the content or impact of such tactics. *Id.* Plaintiffs identify how EDA took away publisher control of their inventory, "depress[ed] the price paid to publishers for *billions* of impressions for their high-value inventory," and reduced the value of Plaintiff's current and future direct deals. *E.g.* Slate ¶¶ 150, 156. Plaintiffs thus alleged injury. *Edmar*, 2023 WL 3570017, at *10, *20.

Google next misreads Plaintiffs' DRS allegations by asserting that they fail to identify the misrepresentations Plaintiffs "saw," even though the crux of Plaintiffs' DRS-related claims are Google's *omissions* and lack of transparency about DRS. Google ignores these allegations and this Court's previous holding on another motion to dismiss that other publishers sufficiently alleged they "were misled about the implementation of [DRS]." *In re Google Digit. Advert. Antitrust Litig.*, 627 F. Supp. 3d 346, 390 (S.D.N.Y. 2022). Indeed, "[b]ecause of Google's lack of transparency and misrepresentations" publishers "had no way of knowing how [DRS] worked." *E.g.*, Slate ¶ 187. Alleging such a connection is sufficient at this stage. *See Bernstein v. JPMorgan Chase Bank, N.A.*, 775 F. Supp. 3d 701, 719 (S.D.N.Y. 2025) (holding plaintiffs had adequately alleged injury in describing statements on a public website on which they relied).

Finally, Google asserts, without authority, that Plaintiffs fail to allege an injury because they do not show they lost money from Bernanke. But Plaintiffs allege that, using Bernanke, "Google's bid manipulation depressed publishers' revenue" and Google's revenues increased "at

14

the expense of publishers." *E.g.*, Slate ¶¶ 162, 165. As Google knows from related cases in this

MDL, Plaintiffs will have expert testimony showing significant injury caused by Bernanke.

## II.    Plaintiffs Adequately Pleaded Their Fraud Claims To Warrant Discovery.

### A.    Plaintiffs' fraud allegations satisfy Rule 9(b)'s particularity requirement.

Plaintiffs' fraud allegations satisfy Rule 9(b). "[T]he adequacy of particularized

allegations under Rule 9(b) is . . . case- and context-specific." *U.S. ex rel. Chorches for Bankr.*

*Est. of Fabula v. Am. Med. Resp., Inc.*, 865 F.3d 71, 81 (2d Cir. 2017) (cleaned up). "Rule 9(b)

does not require that each specific misrepresentation be identified where an ongoing fraudulent

scheme is alleged." *State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*, 589 F.

Supp. 2d 221, 237 (E.D.N.Y. 2008). Indeed, it "is only common sense that the sufficiency of

pleadings under Rule 9(b) may depend upon the nature of the case, the complexity or simplicity

of the transaction or occurrence, the relationship of the parties and the determination of how

much circumstantial detail is necessary to give notice." *In re Cardiac Devices Qui Tam Litig.*,

221 F.R.D. 318, 333 (D. Conn. 2004) (cleaned up).

The context here is revealing: Plaintiffs allege Google's decade-long collection of

ongoing fraudulent schemes to monopolize two separate ad tech markets and empty publishers'

pockets. *See*, *e.g.*, People ¶ 59; Insider ¶ 58; Slate ¶ 58 (alleging 2008 start date for Dynamic

Allocation). Google made myriad affirmative representations across several years, personnel,

calls, and presentations to disguise its product features from publisher scrutiny. *See*, *e.g.*,

People ¶¶ 184-85; Insider ¶¶ 183-84; Slate ¶¶ 182-83 (alleging 2016 misrepresentations about

DRS); People ¶ 221; Insider ¶ 220; Slate ¶ 219 (alleging 2019 misrepresentations about UPR).

As identified above, Google's misrepresentations about First Look, Last Look, Bernanke, EDA,

DRS, and Exchange Bidding took place over many years in the context of a complex

relationship.  *See supra* Section I.B.  In this context, Google has ample "circumstantial detail" to be on notice of Plaintiffs' claims.  *See Cardiac Devices*, 221 F.R.D. at 333.

Plaintiffs also meet the relevant pleading standard in alleging their fraud claims by omission.  "In cases where the alleged fraud consists of an omission and the plaintiff is unable to specify the time and place because no act occurred, the complaint must still allege:  (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud."  *NCR Corp. v. B.A.T. Indus. P.L.C.*, 2024 WL 4188358, at *11 (S.D.N.Y. Sept. 14, 2024) (citation omitted).  Nevertheless, the case- and context-specific nature of Rule 9(b) means that pre-discovery plaintiffs need not always identify specific individuals.  If a defendant "should know which of [its] agents interacted" with the relevant plaintiffs, Rule 9(b)'s notice purpose is satisfied.  *See Anwar v. Fairfield Greenwich Ltd.*, 826 F. Supp. 2d 578, 586-87 (S.D.N.Y. 2011).  And where circumstances preclude plaintiffs from "associating specific misstatements with individual[s]," such "identification [is] unnecessary."  *Somerville v. Major Exploration, Inc.*, 576 F. Supp. 902, 911 (S.D.N.Y. 1983).

Plaintiffs' fraudulent concealment claims satisfy this standard.  Plaintiffs pleaded the circumstances of Google's fraud by identifying:  (1) the omissions made, (2) the context of the omissions and how they misled Plaintiffs, and (3) the benefits Google obtained via its fraud.  *See, e.g.*, People ¶¶ 221-23 (describing Google's misrepresentations about its real reasons for imposing UPR)[10]; Insider ¶¶ 220-22 (same); Slate ¶¶ 219-21 (same).  Google knows the individuals responsible for communicating product features to Plaintiffs and has enough notice.

---

[10] Plaintiffs incorporate by reference a quote by Ali Amini explaining that Google was misrepresenting the true nature of UPR.  *See Google*, 778 F. Supp. 3d at 871 (citing PTX0762, in which Ali Amini identifies information withheld from publishers).

Contrary to its assertions (at 16-17), Google is best equipped to answer for its concealment regarding UPR and Optimized Competition. People ¶ 275 (UPR); Insider ¶ 274 (same); Slate ¶ 272 (same); *id.* ¶ 274 (Optimized Competition). As *NCR Corp.* demonstrates, there is no talismanic requirement that fraud-by-omission plaintiffs must identify the "when and where" a defendant chose not to disclose material information. 2024 WL 4188358, at *11. There, the court declined to dismiss omission-based fraud claims under Rule 9(b) because the counterclaim alleged "what the omissions were," the defendant's "responsibility for the failed disclosure," the "context of the omissions," and how the omissions "impacted [the plaintiff's] decision to enter into" a specific agreement. *Id.* Plaintiffs have done so here. Just as Plaintiffs have satisfied the NY UDAP pleading standard and should take discovery of Google's deceptive practices, the Court also should allow overlapping discovery of Google's fraudulent misconduct.

### B. Plaintiffs satisfy the special facts doctrine that applies to Google's misleading disclosures and fraudulent concealment.

Plaintiffs' fraud claims based on partial disclosures and omissions are governed by and satisfy the special facts doctrine. It applies when "(1) one party has superior knowledge of certain information; (2) that information is not readily available to the other party; and (3) the first party knows that the second party is acting on the basis of mistaken knowledge." *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 155 (2d Cir. 1995); *see P.T. Bank Central Asia v. ABN Amro Bank N.V.*, 301 A.D.2d 373, 378 (N.Y. App. Div. 2003).

Each element is satisfied here. Plaintiffs lacked knowledge of essential facts regarding Google's deceptive auction mechanics. People ¶ 136 (alleging that Google misled publishers regarding its own internal auction rules); Insider ¶ 135 (same); Slate ¶ 134 (same). Having invented those deceptive mechanics, Google knew that this information "not readily available" to Plaintiffs would affect their view of Google's products and their detrimental effects on Plaintiffs'

revenues.  Plaintiffs allege (and this Court has recognized) how Google repeatedly obscured the proprietary mechanisms by which its products harmed Plaintiffs' businesses while holding exclusive knowledge of the functioning of its ad tech products.[11]  Google thus had a duty to correct its misleading statements and to disclose its omissions.  Instead, Google intentionally chose to hide the auction mechanics that it alone designed to profit Google at Plaintiffs' expense. Under *Banque Arabe*, Plaintiffs' fraud claims satisfy the special facts doctrine.  57 F.3d at 155.

Google argues (at 18) it had no duty to disclose because "no Plaintiff alleges that Google knew the specific reasons Plaintiffs chose to use Google's products."  Google is an adjudicated monopolist who dominated the ad server and ad exchange markets—that is why Plaintiffs were compelled to use Google's products.  *See Google*, 778 F. Supp. 3d at 850 (concluding that DFP possessed a durable high market share).  In any event, Plaintiffs do not ask this Court to infer defendant's knowledge of their mistaken beliefs as did the plaintiff in the case upon which Google relies. Mot. at 18 (citing *Prysm Grp., LLC v. Emeritus Inst. of Mgmt. PTE LTD*, 2025 WL 1827274, at *12 (S.D.N.Y. July 2, 2025)).  Plaintiffs adequately allege Google's knowledge.[12]

---

[11] *See*, *e.g.*, People ¶ 159 (alleging Google chose not to give publishers data to assess effects of EDA); Insider ¶ 158 (same); Slate ¶ 157 (same); People ¶ 176 (alleging same as to Bernanke, including a Google employee's comment that "the first rule of Bernanke is we don't talk about Bernanke."); Insider ¶ 175 (same); Slate ¶ 174 (same).  *See Google Digit. Advert.*, 721 F. Supp. 3d at 271-72 (noting "secretive nature of EDA's implementation," how those "omissions misled" a publisher, and how Google "gained").

[12] *See*, *e.g.*, People ¶ 191 (alleging Google's knowledge of Plaintiffs' mistaken beliefs regarding Exchange Bidding); Insider ¶ 190 (same); Slate ¶ 189 (same); People ¶ 216 (alleging Google's knowledge of Plaintiffs' mistaken beliefs regarding UPR); Insider ¶ 215 (same); Slate ¶ 214 (same).

**C.    Google fails to establish that the fact-bound issue of justifiable reliance can be resolved against Plaintiffs as a matter of law.**

Plaintiffs adequately allege reliance, and Google's bid to dismiss Plaintiffs' fraud claims on justifiable reliance grounds fails.  "[T]he question of what constitutes reasonable reliance is not generally a question to be resolved as a matter of law on a motion to dismiss."  *ACA Fin. Guar. Corp. v. Goldman, Sachs & Co.*, 25 N.Y.3d 1043, 1045 (2015).  The pertinent inquiry is whether the omitted facts were material to the plaintiff's decision, and the "trier of fact must determine the reasonableness of [the plaintiff's] reliance upon" the defendant's representations. *Swersky v. Dreyer & Traub*, 219 A.D.2d 321, 328 (N.Y. App. Div. 1996).  Here, Plaintiffs allege that Google's concealment was material, such that Plaintiffs would have acted differently had Google satisfied its duty to disclose.  *See, e.g.*, People ¶ 148 ("Had Google disclosed how Last Look operated," Plaintiffs "would have objected to the practice and taken additional measures to do business with rival exchanges"); Insider ¶ 147 (same); Slate ¶ 146 (same).[13]  Resolving these issues now would be premature and erroneous.

In urging dismissal, Google argues (at 19) that Plaintiffs have "sophistication," but even sophisticated companies can be defrauded, especially given Google's superior knowledge of its concealed programs.  "[S]uperior knowledge or means of knowledge on the part of the person making the representation" is relevant in determining justifiable reliance.  *Epiphany Cmty. Nursery Sch. v. Levey*, 171 A.D.3d 1, 9-10 (N.Y. App. Div. 2019).  "[W]here the alleged misrepresentations supporting a claim of fraud arise from facts within the 'peculiar knowledge' of a party," an otherwise sophisticated party is not required to verify its counterparty's representations or bargain for specific warranties.  *See Solutia Inc. v. FMC Corp.*, 385 F. Supp.

---

[13] *See also, e.g.*, People ¶ 177 ("Had Google disclosed Bernanke and its variants and how they operated," Plaintiffs "would have objected to the program and explored auction techniques to avoid Bernanke's negative impacts."); Insider ¶ 176 (same); Slate ¶ 175 (same).

2d 324, 340 (S.D.N.Y. 2005).  In *Solutia*, a chemical producer's sophistication did not preclude actionable reliance on the fraudulent misstatements of a more sophisticated co-venturer because the producer had "adequately pled reliance on representations that concern facts within the peculiar knowledge of" the co-venturer.  *Id.*  Like the co-venturer in *Solutia*, Google had within its "exclusive knowledge" "access to the information underlying" Google's misstatements about its technology.  *DIMON Inc. v. Folium, Inc.*, 48 F. Supp. 2d 359, 372 (S.D.N.Y. 1999).

Google's final argument (at 19) that "Plaintiffs had the information needed to track any purported 'effects' on their revenue" is naked speculation contrary to the pleaded allegations.  It is implausible that Plaintiffs—no matter how sophisticated—could have unearthed Google's fraudulent concealment, especially when, for example, "the first rule of Bernanke [was] we don't talk [to publishers] about Bernanke," People ¶ 176; Insider ¶ 175; Slate ¶ 174.

## III.    Unjust Enrichment Is Available to Plaintiffs Whose GAM Contracts Do Not Cover Google's Anticompetitive Acts and Who Seek Relief Separate from NY UDAP.

### A.    Plaintiffs' GAM contracts do not contemplate the alleged conduct.

For a contract to preclude claims of unjust enrichment, "the scope of [the agreement]" must "clearly cover[ ] the dispute between the parties."  *Clark-Fitzpatrick, Inc. v. Long Island R. R.*, 70 N.Y.2d 382, 389 (1987).  When the scope of the agreement does not clearly cover the dispute between the parties, the plaintiff asserts a claim for unjust enrichment.  *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447, 483 (S.D.N.Y. 2014).

Other courts in this district repeatedly have held that conduct like Google's is not covered by the scope of general commercial agreements governing purchase, sale, or service transactions. *See Allianz Global Investors GmbH v. Bank of America Corp.*, 463 F. Supp. 3d 409, 432-33 (S.D.N.Y. 2020); *Edmar*, 2023 WL 3570017, at *21; *In re Mexican Gov't Bonds Antitrust Litig.*, 2025 WL 104099, at *10 (S.D.N.Y. Jan. 15, 2025).  Here too, because Plaintiffs' injuries stem

from anticompetitive or fraudulent conduct not contemplated by their contracts with Google, Plaintiffs may pursue unjust enrichment.

Google's own cases demonstrate its error in claiming (at 20-21) that because "Plaintiffs' unjust enrichments claims arise out of the same subject matter as their contracts with Google—i.e. online auctions run on DFP and AdX"—they cannot recover through unjust enrichment the funds Google diverted through market manipulation. *See Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.*, 2015 WL 4191419, at *9-11 (S.D.N.Y. July 10, 2015); *Valley Juice Ltd., Inc. v. Evian Waters of France, Inc.*, 87 F.3d 604 (2d Cir. 1996). Here the contracts do not allude to Google's actions, and Plaintiffs did not contemplate them.

### B.    Plaintiffs allege a nexus by showing how Google profited at their expense.

Google's nexus argument obscures what is plain in Plaintiffs' Complaints. Google profited at Plaintiffs' expense by employing each of its schemes to take more of their inventory at lower prices.[14] It is sufficient for Plaintiffs to allege that they "plausibly conferred some benefit on Defendants," even "indirectly," and "defendants profited." *Blank v. TriPoint Glob. Equities, LLC*, 338 F. Supp. 3d 194, 219 (S.D.N.Y. 2018) (denying motion to dismiss).

Google argues (at 22) that "the only connection between Google's 'profit' and [Plaintiffs'] 'expense' that they allege is related to Bernanke." That mischaracterizes the Complaints, which allege that Google used several strategems—*including* Bernanke—to

---

[14] Judge Brinkema so concluded regarding several schemes in Plaintiffs' Complaints: "First Look exacerbated the anticompetitive effect of the unlawful AdX-DFP tie by artificially advantaging AdX within DFP's auction logic at the expense of Google's publisher customers." *Google*, 778 F. Supp. 3d at 865. Last Look "provided Google and its advertising customers with a 'significant informational advantage'" which "harmed publishers using DFP, who were not compensated as much as they would have been for their inventory had Google's AdX demand been required to compete with third-party exchanges." *Id.* at 829. "U[PR] increased the number of impressions AdX won and the revenue it received" while "[f]or at least one major publisher, The Daily Mail, [UPR] also resulted in lower revenue per impression." *Id.* at 831.

manipulate auctions and ensure Google bought more of Plaintiffs' inventory for less.  *See* Slate ¶¶ 277-79 (alleging unjust enrichment via "Dynamic Allocation, [EDA], Project Bernanke, UPR, and other schemes"); People ¶¶ 279-81 (same); Insider ¶¶ 280-82 (same).

Taking each in turn:  Plaintiffs allege how Dynamic Allocation diminished publisher revenue on impressions Google bought on the cheap.  Plaintiffs "could call exchanges only one at a time" and "could not compare offers between exchanges" leaving them "to accept AdX's bid even though, had another exchange been permitted to bid, it could have offered more for the impression."  *E.g.*, Insider ¶ 59.  This dynamic "depressed publishers' revenue."  *Id.* ¶ 60.

Plaintiffs allege how absent Last Look and MBTW, they "would have sold [their] impression[s] to another exchange at a higher price," but again, "Google traded on inside information and bought [Plaintiffs'] inventory on the cheap."  *E.g.*, Insider ¶ 65-66. When Google moved to the First-Price auction environment, it continued "buy[ing] an inflated share of [Plaintiffs'] ad inventory at artificially depressed prices."  *Id.* ¶ 70.

Regarding DRS, Plaintiffs explain how "by trading on inside information with Dynamic Revenue Share, Google can make far more money at publishers' expense" and how the "result to [Plaintiffs] was substantial financial injury, repeated over billions of auctions."  *E.g.*, Insider ¶¶ 180-88.  So too with Poirot.  *See*, *e.g.*, People ¶ 281 ("Google would secretly depress bids on non-Google exchanges to coerce publishers to sell inventory to AdX (*e.g.*, Project Poirot).").

Finally, Plaintiffs explain how reduced prices paid to publishers as a result of Bernanke benefited Google with increased sales through Google's own tools.  *See*, *e.g.*, People ¶ 164; Insider ¶ 163 (same); Slate ¶ 162 (same).[15]

---

[15] Google's citation to *DeBlasio v. Merrill Lynch & Co.* demonstrates the adequacy of the pleadings.  2009 WL 2242605 (S.D.N.Y. July 27, 2009).  Any alleged harm there was

**C.    Plaintiffs may plead unjust enrichment and NY UDAP in the alternative.**

Plaintiffs do not seek a double recovery and may bring their NY UDAP and unjust enrichment claims in the alternative, even if on similar facts.  "Federal Rule of Civil Procedure 8(d)(3) permits a party to state 'as many separate claims or defenses as it has, regardless of consistency.'"  *Mason v. Reed's Inc.*, 515 F. Supp. 3d 135, 147 (S.D.N.Y. 2021).  Even where an "unjust enrichment claim may ultimately be deemed duplicative of plaintiff's other theories of recovery, at this stage of the proceedings, plaintiff[s]'s allegations are sufficient."  *Scholder v. Sioux Honey Ass'n Coop.*, 2022 WL 125742, at *6 (E.D.N.Y. Jan. 13, 2022); *see Winans v. Ornua Foods N. Am. Inc.*, 731 F. Supp. 3d 422, 432 (E.D.N.Y. 2024) (declining to dismiss unjust enrichment as duplicative).  Google argues Plaintiffs' unjust enrichment claims fail because they duplicate NY UDAP claims Google argues Plaintiffs do not have.  Google cannot have it both ways.  The Court should not preclude recovery on alternative theories on a motion to dismiss.[16]

**IV.    Plaintiffs' Unjust Enrichment and UDAP Claims Are Timely.**

Finally, this Court should reject Google's cursory argument (at 24-25) that Plaintiffs' unjust enrichment and UDAP claims are time barred.  "[A] statute of limitations analysis is generally riddled with questions of fact which the defendants must establish in order to bar the plaintiffs' claims."  *Bais Yaakov of Spring Valley v. Educ. Testing Serv.*, 251 F. Supp. 3d 724, 749 (S.D.N.Y. 2017) (cleaned up).  "[B]ecause of this fact-intensive burden, affirmative defenses such as the statute of limitations are generally not resolved with a motion to dismiss under Rule 12(b)(6)."  *Id.*  Plaintiffs plead continuing violation and fraudulent concealment.  They also are

---

speculative and indirect.  Here, Google used Bernanke and Poirot to directly interfere with true bids made for publisher inventory, pay publishers less, and pocket the difference.

[16] Google offers no support for its assertion (in footnote 12) that an unjust enrichment claim in the alternative "only applies when a contract claim is also pleaded."  To the contrary: *Scholder* and *Winans* demonstrate the opposite.

putative class members covered by *American Pipe* tolling.   Their claims are thus timely—or at least raise fact-intensive questions that cannot be resolved on a motion to dismiss.

First, the continuing violation doctrine applies because Google's auction-by-auction manipulations are independently wrongful acts.  *See Stanley v. Direct Energy Servs. LLC*, 466 F. Supp. 3d 415, 432-33 (S.D.N.Y. 2020) ("Where a [GBL Section] 349 claim is based on a series of allegedly deceptive acts," the "doctrine applies and effectively tolls the limitations period until the date of the commission of the last wrongful act.") (cleaned up); *Knobel v. Shaw*, 90 A.D.3d 493, 495 (N.Y. 2011) (holding, as to an unjust enrichment claim, that "part of the claim that is based on the individual defendants' keeping all the profits from the properties for themselves is viable for the . . . years preceding the commencement of this action").   As detailed in Plaintiffs' Exhibit 1, Google's auction manipulations continue to this day, and harm accrues with each auction.  Plaintiffs can therefore recover for both their UDAP and unjust enrichment claims.  *See Stanley*, 466 F. Supp. 3d at 433 (holding that "each payment" made as a result of a misrepresentation six years prior to filing of complaint was recoverable); *cf. Barkley v. Olympia Mortg. Co.*, 2007 WL 2437810, at *16 (E.D.N.Y. Aug. 22, 2007) (allegations that illegal practices "persisted at least" into limitations period were "sufficient to withstand a motion to dismiss on timeliness grounds").   At a minimum, "the potential applicability of the continuing wrong doctrine prevents the Court from determining, from the face of the Complaint, that Plaintiff's . . . claims are time-barred."  *Express Gold Cash, Inc. v. Beyond 79*, 2019 WL 4394567, at *4 (W.D.N.Y. Sept. 13, 2019) (UDAP).

Second, Google's fraudulent concealment renders both claims timely.  As described above, Google concealed the nature and effect of Dynamic Allocation, EDA, Last Look and MBTW, Bernanke, UPR, Exchange Bidding, and DRS.  *See supra* Section I.B.  This Court

already considered substantially identical allegations regarding EDA from Gannett and found they "plausibly alleg[ed] that EDA's true nature and effect were fraudulently concealed." *Google Digit. Advert.*, 721 F. Supp. 3d at 272. Thus, to the extent Plaintiffs' claims rely on those manipulations, "[n]othing in the [Complaint] precludes [Plaintiffs] from developing facts showing a basis for fraudulent concealment and therefore for equitable tolling." *M & T Mortg. Corp. v. Miller*, 323 F. Supp. 2d 405, 411 (E.D.N.Y. 2004) (deferring resolution of NY UDAP statute of limitations analysis on motion to dismiss).

Third, *American Pipe* tolling extends the limitations period for claims "arising from the same facts that underpin [a] class complaint." *Cullen v. Margiotta*, 811 F.2d 698, 720 (2d Cir. 1987). Google acknowledges (at 24 n.14) that, but asserts that "the majority" of the challenged conduct was not mentioned in earlier class complaints. Google is incorrect: it identifies one class complaint identifying Last Look and MBTW, and omits others which toll limitations periods for other manipulations.[17] Because Plaintiffs' NY UDAP and unjust enrichment claims rely on these manipulations, *American Pipe* extends the statute of limitations and makes them timely. *See* Ex. 1 (noting, *e.g.*, UPR's launch in 2019 and inclusion in 2021 class complaint).

## CONCLUSION

Google's decade-long campaign of deception has been central to the monopolization of two, distinct relevant markets already found unlawful by multiple federal courts. Despite Google holding all the facts regarding this deception, Plaintiffs have pleaded their claims for NY UDAP, fraud, and unjust enrichment based on this deception with remarkable detail and specificity. This Court should deny Google's motion to dismiss Plaintiffs' state law claims.

---

[17] *See*, *e.g.*, Consolidated Class Action Compl., *In re Google Digit. Publisher Antitrust Litig.*, No. 20-cv-08984 (N.D. Cal. Apr. 5, 2021), Dkt. 64 (identifying exchange bidding, UPR); First Am. Consolidated Class Action Compl., MDL Dkt. 408 (identifying Bernanke, DRS, EDA, Project Bell, and Poirot—in addition to the previously identified schemes).

Date:  December 12, 2025

Respectfully submitted,

*/s/ John Thorne*

John Thorne
Daniel G. Bird
Bethan R. Jones
Christopher C. Goodnow
Mark P. Hirschboeck
Eliana Margo Pfeffer
Eric J. Maier
Sven E. Henningson
Jonathan I. Liebman
Kyle B. Grigel
KELLOGG, HANSEN, TODD, FIGEL
  & FREDERICK, P.L.L.C.
1615 M Street NW, Suite 400
Washington, DC 20036
Tel.: (202) 326-7900
Fax: (202) 326-7999
Email: jthorne@kellogghansen.com
      dbird@kellogghansen.com
      bjones@kellogghansen.com
      cgoodnow@kellogghansen.com
      mhirschboeck@kellogghansen.com
      epfeffer@kellogghansen.com
      emaier@kellogghansen.com
      shenningson@kellogghansen.com
      jliebman@kellogghansen.com
      kgrigel@kellogghansen.com

*Counsel for Dotdash Meredith Inc.,*
*Meredith Operations Corp., Insider Inc.,*
*and the Slate Group LLC*

26

**EXHIBIT 1**

| Program | Date Allegedly Implemented | Date of Misrepresentations/ Omissions | Status of Auction Manipulation | Date Alleged in Class Complaint |
|---|---|---|---|---|
| DA/Last Look | **2008** (People ¶ 59; Insider ¶ 58; Slate ¶ 58) | **2008** (People ¶¶ 148, 268(c); Insider ¶¶ 147, 267(c); Slate ¶¶ 146, 265(b)) | **Ongoing** – Google's Last Look advantage continues "to this day." People ¶ 149; Insider ¶ 148; Slate ¶ 147 | **2020** – Class Compl., *In re Google Digit. Publisher Antitrust Litig.*, No. 20-cv-08984 (N.D. Cal. Dec. 15, 2020), Dkt. 1 |
| Bernanke | **2013** (People ¶ 164; Insider ¶ 163; Slate ¶ 162) | **2013** (People ¶ 174; Insider ¶ 173; Slate ¶ 172) | **Ongoing** – Bernanke was continued as Alchemist. People ¶ 175; Insider ¶ 174; Slate ¶ 173 | **2022** – First Am. Consolidated Class Action Compl. (Dec. 5, 2022), MDL Dkt. 408 |
| DRS | **2014** (People ¶ 179; Insider ¶ 178; Slate ¶ 177) | **2016** (People ¶¶ 184-85, 268(e); Insider ¶¶ 183-84; 267(e); Slate ¶¶ 182-83, 265(d)) | **Ongoing** – DRS remained active at least until 2021, and may continue. People ¶ 186; Insider ¶ 185; Slate ¶ 184 | **2022** – First Am. Consolidated Class Action Compl. (Dec. 5, 2022), MDL Dkt. 408 |
| EDA | **2015** (People ¶ 162; Insider ¶ 161; Slate ¶ 160) | **2015** (People ¶¶ 157-58, 268(a-b); Insider ¶¶ 156-57, 267(a-b); Slate ¶¶ 155-56, 265(a)) | **Ongoing** – EDA remains in effect. People ¶162; Insider ¶ 161; Slate ¶ 161 | **2022** – First Am. Consolidated Class Action Compl. (Dec. 5, 2022), MDL Dkt. 408 |
| Bell v.2 | **2016** (People ¶¶ 171, 268(g); Insider ¶¶ 170, 267(g); Slate ¶ 169) | **2016** (People ¶¶ 171, 268(g); Insider ¶¶ 170, 267(g); Slate ¶ 169) | **Ongoing** – No end date alleged | **2022** – First Am. Consolidated Class Action Compl. (Dec. 5, 2022), MDL Dkt. 408 |
| Poirot | **2018** (People ¶¶ 199, 203; Insider ¶¶ 198, 202; Slate ¶¶ 197, 201) | **2018** (People ¶¶ 199, 203; Insider ¶¶ 198, 202; Slate ¶¶ 197, 201) | **Ongoing** – No end date alleged. People ¶¶ 199-204; ¶¶ Insider 198-203; Slate ¶¶ 197-202 | **2022** – First Am. Consolidated Class Action Compl. (Dec. 5, 2022), MDL Dkt. 408 |
| Alchemist | **2019** (People ¶ 172; Insider ¶ 171; Slate ¶ 170) | **2019** (People ¶ 175; Insider ¶ 174; Slate ¶ 173) | **Ongoing** – Alchemist is in operation "to this day." People ¶ 172; Insider ¶ 171; Slate ¶ 170 | **2022** – First Am. Consolidated Class Action Compl. (Dec. 5, 2022), MDL Dkt. 408 |
| UPR | **2019** (People ¶ 215; Insider ¶ 214; Slate ¶ 213) | **2019** (People ¶ 221; Insider ¶ 220; Slate ¶ 219) | **Ongoing** – UPR remains in effect. People ¶¶ 211 -223; Insider ¶¶ 210-22; Slate ¶¶ 209 -221 | **2021** – Consolidated Class Action Compl., *In re Google Digit. Publisher Antitrust Litig.*, No. 20-cv-08984 (N.D. Cal. Apr. 5, 2021), Dkt. 64 |
| MBTW | **2019** (People ¶ 193; Insider ¶ 192; Slate ¶ 191) | **Fall 2019** (People ¶¶ 194-96; Insider ¶¶ 193-95; Slate ¶¶ 192-94) | **Ongoing** – "Minimum Bid to Win remains in effect to this day." People ¶ 71; Insider ¶ 70; Slate ¶ 70 | **2020** – Class Compl., *In re Google Digit. Publisher Antitrust Litig.*, No. 20-cv-08984 (N.D. Cal. Dec. 15, 2020), Dkt. 1 |