# EXHIBIT 2

# FILED UNDER SEAL

HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE: GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION** | Case No. 1:21-md-3010 (PKC) |

**EXPERT REPORT OF MARK A. ISRAEL**

**December 13, 2024**

**HIGHLY CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

AdX integrations with third-party ad servers, including technical difficulties with integration and challenges in dealing with spam.[926] In such a case, where integration creates benefits that would be difficult if not impossible to achieve with third parties, the choice of publishers to use DFP, and thus take advantage of the benefits of integration, reflects competition on the merits.

          (c)      *Publishers can access demand from Google Ads without using AdX (via AwBid)*

654.    In addition to publishers being able to access demand from AdX without using DFP, Google's AwBid program provides a mechanism through which exchanges besides AdX (and hence publishers not using AdX) can access demand from Google Ads. AwBid was launched in 2013 to allow Google Ads to "buy valuable impressions outside of GDN" (i.e., outside of the properties of publishers using Google's sell-side tools).[927] AwBid was initially limited to retargeting inventory, but was later expanded to other inventory types: ███████████████████████████████████████████████████████████████████████ "[928]

655.    The development and rollout of AwBid provides a clear example of why integration is beneficial and why it can be challenging to work with third parties. As further explained in

---

        pursued this work."); and GOOG-DOJ-03610002 at -003 (stating that "North America does not appear to have demand").

[926]    GOOG-DOJ-06583662 at -665 (noting "engineering concerns associated with spam detection and inventory quality controls"); and GOOG-DOJ-03604468 at -469 (stating that "[p]roduct management and engineering are committed to server-side dynamic allocation" but noting "technical hurdles" including ad spam, and that "integration with 3rd party ad servers may be blocked or hindered by the ad server vendors themselves").

[927]    GOOG-DOJ-04405315 at -317. See also GOOG-AT-MDL-019215643 at -655 (noting that "AwBid has been operating since Q2 2013, but started accelerating rapidly in Q3 2015").

[928]    GOOG-DOJ-AT-02307442 at -443. See also GOOG-DOJ-10924864; and GOOG-DOJ-13615208.

Section VI.B.4 above, Google faced many obstacles when expanding Google Ads' purchases to third-party exchanges via AwBid, including dealing with cookie matching and spam issues.[929] It makes economic sense for Google Ads and its advertiser customers to focus much of their spending on AdX where the same issues are either not present or are easier to deal with.[930]

656. According to Google Ads data produced in this case, among the web display (non-video) spending by U.S. advertisers on Google Ads via AdX and third-party exchanges, the percentage going to third-party exchanges increased from approximately one percent in 2015 to ▇ percent in 2023 (and has been above ten percent since 2017) (see Figure 89).[931] In 2023, ▇ of Google Ads' U.S. web display (non-video) spending was via third-party exchanges. Therefore, although it is true that Google Ads predominantly buys on AdX, Plaintiffs' characterization that Google Ads "transact[s] *exclusively* on Google's exchange"[932] (emphasis added) is simply incorrect (or the conduct at issue ceased with the launch of AwBid).[933]

---

[929] GOOG-DOJ-09434884 at -886 to -887; and GOOG-DOJ-07227229 at -236 to -239.

[930] GOOG-DOJ-13521136 at -137 (noting that "[Google Ads] does best on AdX because AdX/[Google Ads] share a cookie space" and "[Google Ads]/AdX share a common AdSpam standard and enforcement, meaning [Google Ads] is able to buy without being cautious on AdX inventory").

[931] See Figure 143 in the appendix for the same pattern including non-web and video spending.

[932] *Inform Complaint*, ¶ 172. See also *Publisher Complaint*, ¶ 165.

[933] In addition to AwBid, certain publishers with their own in-house ad servers have previously received access to real-time bids from Google Ads via Google's "Ad Connector" program, also known as "Yavin" (GOOG-DOJ-AT-02160057). Previous Yavin publishers include some very large publishers with substantial ad inventory, such as eBay, LinkedIn, and Snapchat (see, e.g., GOOG-DOJ-AT-02225544; GOOG-DOJ-AT-02324779; and GOOG-DOJ-AT-02321586). Although Yavin is not currently an active program in the United States (to my knowledge), Yavin nonetheless demonstrates Google's efforts to make Google Ads demand accessible to publishers without those publishers using either AdX or DFP. The general lack of demand for Yavin is again consistent with Google not controlling "unique," "must have" demand (see, e.g., GOOG-DOJ-AT-00055901 at -902 to -903 (describing that the effort to build Yavin "touched the entire display ad stack, spanned 20+ engineers from different parts of the organization across 5



Figure 89: Google Ads U.S. Web Display (Non-Video) Spending via Third-Party Exchanges, 2015-2023

Sources: RFP 243 data (Google Ads)

657. Notably, the pattern of an advertiser buying tool tending to buy from an exchange that is operated by the same company is not unique to Google Ads, and thus cannot be taken as an

---

locations," but that, as of September 2019, only two publishers were onboarded, with another two in process)).