

**<u>Via ECF</u>**
Hon. P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

*In re Google Digital Advertising Antitrust Litigation*
Case No. 21-md-3010 (PKC)

*In re Google Digital Publisher Antitrust Litigation*
Case No. 21-cv-7034 (PKC)

Dear Judge Castel:

On December 12, 2025, the Court appointed Boies Schiller Flexner LLP, Korein Tillery LLC, and Berger Montague PC as Co-Lead Class Counsel ("Class Counsel") for the AdX Class. ECF 1266 at 11.[1] The Class Counsel firms served for over four years as Interim Co-Lead Class Counsel and have committed substantial time and resources in developing and prosecuting the claims of the AdX Class. This devotion of resources and effort began well before the filing of the class action Complaint in December 2020 and has since included extensive fact discovery (including in coordination with the U.S. DOJ) and expert discovery, successful pursuit of issue preclusion, certification of the AdX class, and defeating *Daubert* challenges. Accordingly, Class Counsel request entry of the accompanying Proposed Order, or permission for leave to move for an order, pursuant to the common-benefit doctrine setting aside 10 percent of recoveries by AdX Class opt-out plaintiffs. *See* Proposed Order (attached as **Exhibit A**). Such set-aside funds would be distributed later at the discretion of the Court to ensure adequate compensation for work by Class Counsel that has inured to the benefit of plaintiffs opting out of the AdX Class. Neither Google nor Kellogg Hansen—the only firm to have thus far filed individual actions for Class members—have provided Class Counsel a definitive position on this motion following an email from Class Counsel on February 14, 2026. No conference is currently scheduled.

The time is ripe for a set-aside order. Over the past five months, approximately five years after Class Counsel commenced this litigation, ten absent members of the AdX Class have filed complaints. These new plaintiffs, all represented by Kellogg Hansen, are expected to request exclusion from the AdX Class and have benefitted from the extensive efforts of Class Counsel to develop claims and evidence against Google. Class Counsel should be compensated appropriately for those efforts. In applying set-aside orders to ensure such compensation, courts recognize that the "benefit created by common labor and compensated by joint assessments is sometimes intangible and difficult to quantify in individual cases" and reject "case-by-case review for whether any particular claimant has actually benefited from common benefit work". *In re Gen. Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d 170, 184 (S.D.N.Y. 2020).

---

[1] Except as otherwise noted, references to ECF entries refer to the docket in *In re Google Digital Advertising Antitrust Litigation*, No. 21-md-3010 (PKC) (S.D.N.Y.).



**I.** **Set-Aside Orders Are an Accepted Means of Ensuring That Class Counsel Is Compensated for Common Benefit Work and Investments That Advanced the Cases of Absent Class Members Who Opt Out.**

Judge Furman has summarized the need for issuing set-aside orders to compensate class counsel and plaintiff leadership counsel for their work and investments in undertaking the development of class-action litigation, recognizing that:

- "[C]omplex aggregate litigation often raises a classic free-rider problem";

- "A subset of plaintiffs' lawyers do the lion's share of the work, but that work accrues to the benefit of all plaintiffs";

- "If those other plaintiffs were not required to pay any costs of that work, 'high-quality legal work would be under-incentivized and, ultimately, under-produced'"; and

- "To solve this problem, courts frequently invoke what is known as the 'common-benefit doctrine' and impose assessments on the recoveries of those who benefit from the work done for the benefit of all; those assessments are deposited into a 'common-benefit fund,' and counsel that did the work for the common benefit are then paid from the fund."

*Gen. Motors*, 477 F. Supp. 3d at 174; *see also In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 129 (2d Cir. 2010) (Kaplan, Dist. J., sitting by designation, concurring); *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 644, 657-65 (E.D. Pa. 2003).

The common-benefit doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1018 (5th Cir. 1977) (noting that a federal court's inherent powers of equity provide the "foundation for the historic practice of granting reimbursement for the costs of litigation" and allow the court to ensure "justice as between a party and the beneficiaries of his litigation") (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 166-67 (1939)).

Here, the transferor court appointed interim co-lead counsel for the Class, this Court designated lead attorneys for the putative class plaintiffs, and the Court created a Discovery Steering Committee ("DSC")—which included a representative for the Publisher Class—to coordinate common discovery in this MDL. *See* Pre-Trial Order No. 3 (ECF 311). The work performed under such appointments to coordinate multi-plaintiff discovery as liaison counsel or through a discovery steering committee does not necessarily give direct benefit to their clients. A "necessary corollary to court appointment of lead and liaison counsel and appropriate management committees is the power to assure that these attorneys receive reasonable compensation for" the services rendered by lead counsel. *In re Zyprexa Prods. Liab. Litig.*, 467 F. Supp. 2d 256, 265-66 (E.D.N.Y. 2006) (quoting *Linerboard*, 292 F. Supp. 2d at 653) (granting common benefit fund where lead counsel's responsibilities included "initiating, coordinating, and conducting all pretrial discovery on behalf of plaintiffs" and "acting as a spokesperson for



plaintiffs during pretrial proceedings").[2]  The right to equitable compensation extends not only to the parties specifically represented by court-appointed class counsel, but to any "parties on whose behalf the work is performed and on whom a benefit has been conferred." *Id.* at 265 (quoting *In re Worldcom, Inc. Sec. Litig.*, 2004 WL 2549682, at *2 (S.D.N.Y. Nov. 10, 2004)). To ensure the availability of funds to compensate equitably lead counsel or interim lead counsel, courts across the country, including in this Circuit, confirm that it is "standard practice . . . to compensate attorneys who work for the common benefit of all plaintiffs by setting aside a fixed percentage of settlement proceeds." *Id.*

Courts recognize the "utility" of set-aside orders in "antitrust class actions like this one" where the prospect of treble damages may attract tag-along litigation from "large, well-resourced class members" that builds on the efforts of class counsel. *In re Zetia (Ezetimibe) Antitrust Litig.*, 2022 WL 18108387, at *4 (E.D. Va. Nov. 8, 2022) (citing *Linerboard*, 292 F. Supp. at 654-56; *In re Lidoderm Antitrust Litig.*, 2017 WL 3478810, at *1 (N.D. Cal. Aug. 14, 2017); and *In re Aggrenox Antitrust Litig.*, 2018 WL 10705542, at *5 (D. Conn. July 19, 2018)) (entering set-aside orders); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 2022 WL 19837725, at *1 (E.D.N.Y. Aug. 3, 2022) (entering a set-aside order "to pay attorneys' fees and expenses incurred by EPP Class Counsel for their common benefit work"); *see also Zetia*, 2022 WL 18108387, at *4 ("the risk of free-riding in class actions is not non-existent, especially in complex, vigorously contested antitrust cases such as this one.  Without a set-aside order, tag-along plaintiffs could file their individual cases at the last possible minute, request and rely on the record developed by class counsel, and reap the savings in legal fees.  That situation presents a classic problem of unjust enrichment, which the common benefit doctrine is meant to remedy.").

While Class Counsel will apply for an award of attorneys' fees and reimbursement of costs from any class-wide recovery they may achieve from Google, absent a set-aside order, Class Counsel would not receive payment for any recoveries obtained by opt-out plaintiffs that nevertheless benefited from Class Counsel's work and investments, and those opt outs would have received the benefit without having to bear any burden.  As recognized by courts, Class Counsel's ability to seek an award of fees and costs for a class recovery does not cure this potentially inequitable result.  *See Lidoderm*, 2017 WL 3478810 at *1 ("Class Counsel will of course seek a recovery for their fees and costs from any common fund secured for the EPP Class members who do not opt-out.  But that does not resolve the equitable 'free rider' problem identified by Class Counsel."); *Zyprexa*, 594 F.3d at 130 (Kaplan, Dist. J., sitting by designation, concurring) (noting that without a set aside order, "common benefit work would enrich the non-contributing individual plaintiffs unjustly").

An order "setting aside" a portion of individual recoveries only ensures that sufficient funds will be available to compensate common-benefit work; counsel seeking such

---

[2] *See also* Elizabeth C. Burch, *Judging Multidistrict Litigation*, 90 N.Y.U. L. Rev. 71, 103-04 (2015) ("When lead lawyers perform the work for individually retained attorneys, they benefit them.  Failing to pay lead lawyers could thus unjustly enrich non-lead attorneys, particularly free riders who simply wait for lead lawyers to negotiate a proposed settlement.").



compensation must later move the Court for disbursement of any funds that were set aside. *See* 5 Newberg and Rubenstein on Class Actions § 15:116 (6th ed. 2022) ("At or near the conclusion of the MDL," lead counsel "will petition for an award of fees and costs from the common benefit fund."). And consistent with the approaches taken in other antitrust class actions, the order proposed by Class Counsel requires that Class Counsel confer with counsel for any opt-out plaintiff to attempt to resolve any dispute over the amount of such distribution prior to moving the court and further provides that any funds not disbursed would be returned to opt-out plaintiffs on a *pro rata* basis. *Compare* Ex. A, *with Restasis*, 2022 WL 19837725, at *1; *Lidoderm*, 2017 WL 3478810, at *4.

Consistent with the substantial weight of authority, Class Counsel respectfully requests that the Court enter a set-aside order.

## II. The Work of Class Counsel Has Benefited All Members of the AdX Class.

### A. Background

On December 16, 2020, after months of investigation, Class Counsel filed a class-action complaint in Northern District of California on behalf of Class representatives Genius Media Group, Inc. and The Nation. *See* Class Action Compl., *Genius Media Grp., Inc. v. Alphabet Inc.*, No. 5:20-cv-09092-BLF (N.D. Cal. Dec. 16, 2020), ECF 1. The California court subsequently appointed all three Class Counsel firms as "Interim Co-Lead Class Counsel". Modified Order Appointing Interim Co-Lead Class Counsel for Publisher Class at 1, *In re Google Digital Publisher Antitrust Litig.*, No. 5:20-cv-08984-BLF (N.D. Cal. Apr. 26, 2021), ECF 76.[3] Class Counsel went on to further develop the claims of the class, file a consolidated class-action complaint, seek and receive early discovery, and respond to a motion to dismiss.[4] In August 2021, while initial discovery and Google's motion to dismiss were pending, the case was transferred to this Court by the JMPL. Transfer Order at 8-9 (ECF 1).

On April 20, 2021, Kellogg, Hansen, Todd, Figel & Frederick P.L.L.C. filed a complaint in this District on behalf of its client Daily Mail (Mail Media, Inc. and Associated Newspapers Ltd.) that alleged antitrust violations based on substantially the same conduct challenged in the then-operative class action Complaint. *See* Compl., *Associated Newspapers Ltd. v. Google LLC*,

---

[3] Following transfer to the Southern District of New York as part of MDL proceedings, this N.D. Cal.-filed action was assigned a new docket number: 20-cv-7034 (PKC) (S.D.N.Y.). For consistency, subsequent references to filings on this case docket, both before and after transfer, will use the S.D.N.Y. docket number.

[4] *See* Am. Consolidated Class Action Compl., *In re Google Digital Publisher Antitrust Litig.*, No. 1:21-cv-7034 (PKC) (S.D.N.Y. Apr. 5, 2021), ECF 64; Joint Proposed Agenda for June 10, 2021 Case Management Conference at 2-3, *In re Google Digital Publisher Antitrust Litig.*, No. 1:21-cv-7034 (PKC) (S.D.N.Y. June 3, 2021), ECF 80 (cataloging discovery already served); Publisher Pls.' Mem. in Opp'n to Mot. to Dismiss Consolidated Class Action Compl., *In re Google Digital Publisher Antitrust Litig.*, No. 1:21-cv-7034 (PKC) (S.D.N.Y. July 23, 2021), ECF 92.



No. 1:21-cv-03446 (PKC) (S.D.N.Y. Apr. 20, 2021).[5]  That case was consolidated in this MDL along with the Publishers' class action.

On September 14, 2022, this Court appointed David Boies of Boies Schiller Flexner LLP as Lead Counsel for the Publisher Class, Pre-Trial Order No. 2 at 2 (ECF 309), and on September 16 established a Discovery Steering Committee to coordinate common discovery in the MDL, Pre-Trial Order No. 3 at 1-2 (ECF 311).  Philip Korologos, a Boies Schiller partner, was designated to represent the Publisher Class on the Discovery Steering Committee.[6]  *See* Ltr. to the Court from Plfs.' Lead Att'ys at 1 (Sept. 30, 2022) (ECF 314).  Counsel for Daily Mail was not a member of the Discovery Steering Committee but was consulted by the Committee and was occasionally assigned specific tasks or briefing consistent with Pre-Trial Order No. 3. *See id.*  On December 5, 2022, after significant document review and the Court's Order on the motion to dismiss in the States' action, Class Counsel filed the Publishers' Amended Consolidated Class Action Complaint.  *See* ECF 408.

On June 20, 2023, six months into the common discovery period in this MDL, AdX Class member Gannett Co., Inc., also represented by Kellogg Hansen, filed a complaint in this District challenging largely the same underlying conduct as the class Complaint.  *See* Compl., *Gannett Co., Inc. v. Google LLC*, No. 1:23-cv-05177 (PKC) (S.D.N.Y. June 20, 2023), ECF 1.  From the motion-to-dismiss stage until late last year, Daily Mail and Gannett were the only individual AdX class members to litigate their claims as part of the MDL.

Since September 2025, ten additional AdX Class members, all represented by Kellogg Hansen, have filed largely identical complaints alleging antitrust and other violations based on

---

[5] While Daily Mail's complaints and those of the other individual Class member plaintiffs described below allege additional state-law causes of actions, those claims are largely based on the same core conduct that underpins the Class's federal antitrust claims—including tying DFP and AdX, Dynamic Allocation, Enhanced Dynamic Allocation and Last Look, Dynamic Revenue Share, Project Poirot, and Unified Pricing Rules.  *Compare* Am. Consolidated Class Action Compl. at 22-29, *In re Google Digital Publisher Antitrust Litig.*, No. 1:21-cv-7034 (PKC) (S.D.N.Y. Apr. 5, 2021), ECF 64 (challenging, *e.g.*, Dynamic Allocation/Last Look and Enhanced Dynamic Allocation), *with* Compl. at 11-14, 30-31, *Associated Newspapers, Ltd. v. Google LLC*, No. 1:21-cv-03446 (PKC) (S.D.N.Y. Apr. 20, 2021), ECF 1 (same); *compare also* First Am. Consolidated Class Action Compl. at 62-113, *In re Google Digital Publisher Antitrust Litig.*, No. 1:21-cv-7034 (PKC) (Dec. 5, 2022), ECF 131 (challenging, *e.g.*, AdX-DFP tying, Dynamic Allocation/Last Look, EDA, Dynamic Revenue Share, Project Bernanke, Minimum Bid to Win, Line-Item Capping, Redaction of Auction Data, Project Poirot, Unified Pricing Rules, and Minimum Bid to Win), *with* Am. Compl. at 24-56, *Associated Newspapers, Ltd. v. Google LLC*, No. 1:21-cv-03446 (PKC) (S.D.N.Y. Dec. 2, 2021), ECF 66 (same).

[6] Although the Discovery Steering Committee originally had five members—two for the States, one for the Publisher Class, one for the Advertiser Class, and one for individual-action plaintiffs (represented by counsel for Inform, Inc.), Pre-Trial Order No. 3 at 1 n.1 (ECF 311)—it was reduced to three members after the JMPL's June 2023 order remanding the States' action took effect in October 2023.  Publishers assumed an even larger role on the Committee in coordinating MDL Plaintiffs, coordinating with the U.S. DOJ action in the Eastern District of Virginia, and negotiating discovery and other procedural aspects with Google after the departure of the States from the MDL.



the same conduct challenged in the Class Complaint.[7]  Thus far, Gannett and other AdX Class members now pursuing claims on their own have benefitted from the diligence and fact development work of Class Counsel including by expressly invoking tolling under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), for both their federal-law and state-law claims based on conduct allegations in the Complaint filed by Class Counsel.  *See* Gannett's Opp'n to Google's Mot. to Dismiss at 18-20 (ECF 639); Plfs.' People Inc., Business Insider, and Slate's Opp'n to Google LLC and Alphabet Inc.'s Mot. to Dismiss at 22, 25 (ECF 1278).  Further, the proposed case management orders governing these individual actions contemplate accelerated discovery periods because of the extensive discovery record developed during the common discovery period led by Class Counsel.  *See* Proposed Civil Case Management Plan & Scheduling Order at 4-8 (ECF 1391-1).

On January 29, 2026, the Court certified and approved a plan for notice to the AdX Class, requiring that any Class members seeking to opt out of the Class do so within 45 days of the start of the notice period.  *See* Order at 1-2 (ECF 1383).  That notice period will begin once Google provides Class member contact information to Class Counsel, which Google is required to produce no later than February 23, 2026.  *See id.*  Beyond those already having filed individual actions, additional Class members may request exclusion from the Class and pursue claims individually.

**B.  Class Counsel Have Represented the Interests of All AdX Class Members and Other Plaintiffs Through Conferences, Briefing of Common Motions, and Coordination of Discovery.**

Class Counsel have extensively briefed discovery disputes on behalf of the Discovery Steering Committee, obtaining relief benefiting all Plaintiffs.  *See generally, e.g.*, ECF 239 (seeking production of documents previously produced to State Plaintiffs); ECF 244 (ordering such production); ECF 660 (seeking additional custodians and search terms); ECF 664 (ordering production based on additional custodians and search terms); ECF 755 (seeking leave to take additional depositions); ECF 777 (granting leave for additional depositions); ECF 896 (motion to compel production of Texas and EDVA expert reports); ECF 899 (granting motion to compel production of Texas and EDVA expert reports); ECF 905 (seeking additional time for depositions of three Google expert witnesses); ECF 919 (granting leave to depose those experts for up to 16 hours).  In addition to such motion practice, Class Counsel have negotiated with Google, coordinated between MDL plaintiffs, coordinated with the United States Department of Justice for its EDVA Action, and drafted and filed in this MDL most of the ministerial motions

---

[7] *See CMI Marketing, Inc. v. Google LLC*, No. 1:25-cv-08630 (PKC) (S.D.N.Y.); *Dotdash Meredith Inc. v. Google LLC*, No. 1:25-cv-07194 (PKC) (S.D.N.Y.); *Slate Group LLC v. Google LLC*, No. 1:25-cv-07697 (PKC) (S.D.N.Y.); *Insider, Inc. v. Google LLC*, No. 1:25-cv-07409-PKC (S.D.N.Y.); *Penske Media Corp. v. Google LLC*, No. 1:26-cv-00225 (PKC) (S.D.N.Y.); *Atl. Monthly Grp. LLC v. Google LLC*, No. 1:26-cv-00272 (PKC) (S.D.N.Y.); *Advance Publ'ns, Inc. v. Google LLC*, No. 1:26-cv-00343 (PKC) (S.D.N.Y.); *McClatchy Media Co., LLC et al v. Google LLC*, No. 1:26-cv-00339 (PKC) (S.D.N.Y.); *Vox Media, LLC v. Google LLC*, No. 1:26-cv-00325 (PKC) (S.D.N.Y.); *Ziff Davis, Inc. v. Google LLC*, No. 1:26-cv-01055 (S.D.N.Y.).



including, for example, for adjustment of common deadlines. *E.g.*, ECF 875 (seeking extension of time for expert discovery); ECF 880 (granting extension); ECF 921 (seeking extension of time for expert discovery); Order Extending Certain Deadlines (ECF 926) (granting motion for extension of time for expert discovery).

By contrast, counsel for Daily Mail and Gannett have largely relied on the efforts of Class Counsel in briefing or coordinating common briefing for all Plaintiffs. When Daily Mail and Gannett did submit discovery letters, those submissions generally addressed discovery specific to their own claims. *See, e.g.*, ECF 718 and ECF 721 (responses to Google's motions to compel); ECF 808 (response to Google's request to serve contention interrogatories); ECF 814 (response to Google's request to take additional depositions). And when common discovery motions were filed by counsel for Daily Mail, they were often drafted at the direction of and in coordination with the Discovery Steering Committee and with substantial input from Class Counsel. *See* ECF 528 (motion to compel Google to produce 800,000 documents previously produced to DOJ); ECF 914 (motion to compel Google to produce data relied upon by Itamar Simonson).

Either Mr. Boies or Mr. Korologos appeared at and argued extensively at Court conferences related to discovery and case coordination issues on behalf of the Class or the Discovery Steering Committee. *See generally* 9/24/2021 Hr'g Tr. (ECF 142) (initial status conference);[8] 4/19/2022 Hr'g Tr. (ECF 291) (status conference); 5/16/2023 Hr'g Tr. (ECF 560) (discovery coordination and search terms); 11/2/2023 Hr'g Tr. (ECF 665) (search terms and custodians); 5/21/2024 Hr'g Tr. (extension of expert discovery, additional depositions); 6/20/2024 Hr'g Tr. (ECF 842) (30(b)(6) depositions and RFAs). Counsel for Daily Mail and Gannett did not make similar contributions to the discovery and case coordination issues in these proceedings.

And the opt-out AdX Class member plaintiffs have benefited, too, from Class Counsel's briefing of substantive issues in addition to discovery briefing. For example, at the motion-to-dismiss stage, Gannett benefited from the Class's more extensive allegations and briefing regarding "Minimum Bid to Win"—conduct it continues to pursue. *See* Mar. 1, 2024 Op. & Order at 57 (ECF 701) ("For the reasons previously discussed in connection with the Publishers' claims, Gannett has plausibly alleged a section 2 violation premised on Google's implementation of MBW. Gannett's allegations are somewhat sparer than those set forth by the Publishers, but they describe the same underlying conduct and harm to competition". (citation omitted)). And after the conclusion of fact and expert discovery and the liability decision by the Eastern District of Virginia, Class Counsel coordinated the efforts of MDL Plaintiffs to move for collateral estoppel, including doing the principal drafting for the joint brief on collateral estoppel ordered by the Court. *See* MDL Plfs.' Joint Mem. of Law in Supp. of Their Mots. for Partial Summ. J. & Collateral Estoppel (ECF 1043); Decl. of Izaak Earnhardt in Supp. of MDL Plfs..' Joint Mem. of Law (ECF 1044). When it granted partial collateral estoppel, the Court analyzed the overlapping

---

[8] During this conference, counsel for Daily Mail's participation was principally limited to addressing why it did not have a conflict in the MDL because of its concurrent representation of Facebook, which was at that time a defendant in multiple actions coordinated in the MDL. 9/24/2021 Hr'g Tr. at 39.



claims of the Publisher Class and individual AdX Class member plaintiffs together. *See* Oct. 27, 2025 Op. & Order at 14-18, 32 (ECF 1219).

### C. Class Counsel Developed Common Discovery and Did Substantial Coordination Work Between Plaintiffs in the Discovery Process.

Class Counsel led drafting of the over 300 common document requests and then led negotiations of those requests with Google's counsel on behalf of all Plaintiffs. Mr. Korologos, along with colleagues from Boies Schiller, Korein Tillery, and Berger Montague, led negotiations with Google over common search terms, common custodians, common data productions, and the status and progress of Google's productions in near-weekly meetings with Google counsel for nearly a year during fact discovery.

Class Counsel ensured that key fact depositions taken of Google witnesses in the case were taken by experienced attorneys, often senior partners or shareholders at Class Counsel firms.



- Philip Korologos of Boies Schiller took the depositions of ▮▮▮▮▮▮ (Director of Product Management for DFP and AdX, 2008-2018); ▮▮▮▮▮ (a senior AdX product manager responsible for developing EDA and DRS); ▮▮▮▮▮ (senior sales and business strategy head for Publisher display advertising); and ▮▮▮▮▮ (senior engineer who authored declarations on publisher ID hashing and AdSense).

- Carol O'Keefe of Korein Tillery took the depositions of ▮▮▮▮▮ (senior buy-side engineer); ▮▮▮▮▮ (Vice President of Engineering and Data Science); ▮▮▮▮▮ (senior sell-side engineer); ▮▮▮▮▮ (senior sell-side engineer who worked on Dynamic Allocation and DRS); and ▮▮▮▮▮ (Group Product Manager for AdX, who played key role in developing header bidding and launching Unified Pricing Rules). Ms. O'Keefe also took Buy-Side 30(b)(6) (▮▮▮▮▮) and Sell-Side 30(b)(6) (▮▮▮▮▮) depositions of Google.

- Patrick Madden of Berger Montague took the depositions of ▮▮▮▮▮ (Vice President of Engineering, Display and Video Ads); ▮▮▮▮▮ (senior sales and strategy lead for sell-side products); ▮▮▮▮▮ (Senior Director of Product Management for Google Display Network, with key knowledge on its bidding into sell-side products). Mr. Madden also took the AdSense 30(b)(6) (▮▮▮▮▮) deposition of Google.

These examinations by Class Counsel were frequently the longest or first examinations of the witness by MDL counsel and focused on developing the common antitrust claims in the MDL. With few exceptions, Class Counsel engaged in examination at nearly every deposition of common MDL witnesses.[9] Boies Schiller has provided space in its New York office for at least

---

[9] The only exceptions were ▮▮▮▮▮ (an advertiser-side product manager noticed by the Advertiser class), ▮▮▮▮▮ and ▮▮▮▮▮ (Google account representatives for Daily Mail and Gannett), ▮▮▮▮▮ (a witness taken by Inform), and the very first MDL deposition of ▮▮▮▮▮ in November 2023 (Ms. O'Keefe appeared but did not ask questions). That ▮▮▮ deposition was assigned to Kellogg Hansen pursuant to an original plan of assigning full depositions to different MDL



half a dozen depositions of witnesses from Kellogg Hansen's individual AdX Class member plaintiffs, including last week.

In expert discovery, experienced senior attorneys for Class Counsel also took extended and opening examinations of key Google expert witnesses who had reports common to all Plaintiffs:

- Mr. Boies: Dr. Mark Israel (who opined on antitrust economics);

- Mr. Korologos: Prof. Paul Milgrom (who opined on auction theory).

These examinations focused on developing testimony that could be used by all Plaintiffs including the AdX Class and the opt-out publisher plaintiffs.

In addition to taking many of the key depositions in the MDL, Class Counsel also managed the negotiations and administrative processes that allowed those multi-party depositions to proceed in an orderly fashion: drafting and negotiating multiple common 30(b)(6) notices with Google; coordinating court reporting vendors for nearly every deposition by Plaintiffs during the common fact and expert discovery periods; and negotiating deposition dates between all Plaintiff counsel and Google.

Class Counsel also took the lead in coordinating a joint e-discovery vendor early in the case. After it became necessary to change vendors to ensure efficient prosecution of large-scale offensive document review, Korein Tillery's in-house e-discovery specialist led the search for and transition to a new vendor.

### D. Publisher Plaintiffs Developed Factual Allegations in Discovery.

Because Daily Mail, Gannett, and other individual AdX Class members are pursuing claims based on the same conduct alleged by and developed by the Class—including tying between DFP and AdX, Dynamic Allocation (Last Look), Enhanced Dynamic Allocation, Dynamic Revenue Share, Project Poirot, Unified Pricing Rules, and Minimum Bid to Win—they have benefited from the document discovery, data, and deposition testimony obtained by Class Counsel to develop the factual record of that conduct. Courts in this District have held that it is enough that individual actions involve "the same subject matter" as the MDL for a set-aside order to be applicable to them. *See Gen. Motors*, 477 F. Supp. 3d at 180. In document review and depositions in particular, Class Counsel developed a factual record regarding the mechanics of many of the auction manipulations at issue in the case, with Ms. O'Keefe and Mr. Korologos conducting the significant examinations of most of the engineers and product managers, respectively, responsible for developing or implementing those auction manipulations. *See* §II.C, above.

---

participants. Following that deposition, Class Counsel determined that so allocating witnesses would not sufficiently develop common evidence serving the interests of the Class, and most subsequent depositions proceeded with questioning distributed between the various MDL Plaintiffs.



The example of discriminatory risk aversion coefficients—conduct identified and developed by Class Counsel in discovery and *not alleged* in the cases brought by the States or the United States Department of Justice—illustrates this point. Through substantial document review and application of auction theory and antitrust concepts, Class Counsel identified a novel manipulation of Google's bidding algorithm that had escaped the scrutiny of other litigants against Google—the introduction of a risk aversion coefficient as Google prepared to move AdX to a first-price auction in September 2019. *See* GOOG-AT-MDL-009837331 at -334.

Class Counsel examined Google's use of a risk aversion coefficient in the 30(b)(1) deposition of Google witness ▆▆▆▆▆▆▆ on April 25, 2024, obtaining testimony from Google on different aspects of this coefficient and its effects. *See* ▆▆▆▆ Apr. 25, 2024 Depo. Tr. at 121-38. Class Counsel unilaterally pursued this conduct through demands for source code inspection, a 30(b)(6) deposition topic, and meet and confers with Google's counsel that eventually led to Google confirming the values of the risk aversion coefficients over time. *See* Email from W. Noss to D. Pearl, R. Steinthal (May 8, 2024)); Pre-Trial Order No. 15 at 5-6 (ECF 843) (Topic 15(c)(iii)); Ltr. from R. Steinthal to I. Earnhardt (December 12, 2024)). Building off the work of Class Counsel in developing discovery on this conduct, Daily Mail and Gannett's auction expert Prof. Shengwu Li, Ph.D. devoted an entire section of his expert report to the "risk aversion" parameter aspect of Project Poirot identified and developed in discovery by Class Counsel. Revised Expert Report of Prof. Shengwu Li, Ph.D. ¶¶ 1298-1352.

Publisher Class Plaintiffs tailored their liability and damages theories to those best pursued on a class basis, *see* Dec. 12, 2025 Op. & Order at 6-38, 40-46 (ECF 1266), and further narrowed their allegations in consideration of the Court's direction Pre-Trial Order No. 19 (ECF 1248) to "streamline" allegations, *see* Ltr. to Court from Publisher Pltfs. re: Pre-Trial Order No. 19 (ECF 1269). Daily Mail and Gannett are continuing to pursue not only risk aversion—the only aspect of Project Poirot they challenge as anticompetitive—but also other conduct developed by Publisher Class Plaintiffs, including Last Look, Enhanced Dynamic Allocation, Dynamic Revenue Share, Bernanke, EDA, and Minimum Bid to Win. *See generally* Ltr. to Court from Plintiffs Daily Mail and Gannett re: Pre-Trial Order No. 19 (ECF 1265). And their additional damages theories are premised on proof of the same conduct. *See generally* Defs.' Mem. of Law in Supp. of Their Mot. for Summ. J. on All Claims Asserted by Pltfs. Daily Mail and Gannett (ECF 1360).

In short, Class Counsel have "done much to craft the case against defendants," and that "work has benefitted all litigants in the class action and [potential] tag-along actions." *Linerboard*, 292 F. Supp. 2d at 657.

## III.    A Set-Aside Order is Appropriate at This Time.

Now is an appropriate time for the Court to establish a structure to ensure that Class Counsel will be able to seek equitable compensation from opt-out Plaintiffs for common-benefit work. "Without the entry of a set-aside order in advance of Individual Action settlements or judgments, Individual Actions could be dismissed after settlement or a judgment, requiring" Class Counsel "to pursue separate compensation claims in any number of jurisdictions around



the country." *In re Worldcom, Inc. Sec. Litig*, 2004 WL 2549682, at *4 (S.D.N.Y. Nov. 10, 2004). MDL courts routinely enter set-aside orders "prior to any recovery, as long as the litigation has been 'significantly advanced.'" *Lidoderm*, 2017 WL 3478810 at *2 (collecting cases).

"Potential factors showing that litigation is sufficiently advanced include class certification, expiration of the [] class opt-out period, and evidence that identifiable non-class plaintiffs stand to benefit from class counsels' work." *Zetia*, 2022 WL 18108387, at *7. Here, fact and expert discovery has been completed for over a year, the AdX Class has been certified (and no Rule 23(f) petition for appeal pursued), Dec. 12, 2025 Op. & Order at 76-77 (ECF 1266), and the Court has granted collateral estoppel on key aspects of liability for the claims of the AdX Class, Oct. 27, 2025 Op. & Order at 32-33 (ECF 1219). The Court has approved a plan of notice to the AdX Class, Order at 1-2 (ECF 1383), and notice to the Class, as well as the opt-out period, will occur shortly. In addition, large absent members of the AdX Class Plaintiffs have recently commenced actions. *See* § II.A, above.

By any measure, this five-plus year litigation has "significantly advanced." *Lidoderm*, 2017 WL 3478810 at *2-*3 (holding litigation had significantly advanced where class had been certified and notice had been sent to putative class members); *Zetia*, 2022 WL 18108387, at *6-*7 (holding that the litigation had significantly advanced where discovery had closed, plaintiffs "obtained partial summary judgment on the relevant market," and defendants' motion for summary judgment "has been fully briefed and argued with a recommended disposition pending on fully briefed objections"). Because additional Class members may request exclusion, entry of a set-aside order at this stage to cover those already so filing and those who may yet file is appropriate.

## IV.     The Court has Authority to Enter a Set-Aside Order Applicable to Future Recoveries by Absent AdX Class Members.

It "is well-settled that an MDL court's authority to . . . order contributions to compensate leadership counsel derives from its 'managerial' power over the consolidated litigation, and, to some extent, from its inherent equitable power." *Gen. Motors*, 477 F. Supp. 3d at 190 (alteration in original) (citation omitted).

An additional basis for the Court's authority to enter set-aside orders is the Court's "authority to regulate the conduct of the MDL parties and MDL counsel, even where such regulation affects the interests of others." *Id.* at 189. Each of the actions filed thus far by Kellogg Hansen on behalf of AdX Class members is against the same MDL defendants, has been filed in this District, and is pending before this Court. *See* § I.A, above. Even when counsel appearing in an MDL represents other plaintiffs, Courts in this and other circuits have upheld assessments on settlements in unfiled and state-court cases. *See Gen. Motors*, 477 F. Supp. 3d at 184-92 (collecting cases).


In short, the Court has the authority to order assessments from recoveries in AdX Class member cases brought by Kellogg Hansen or other counsel with access to discovery and factual development derived from the efforts of Class Counsel in the MDL.

## V. A Set-Aside Assessment of 10 Percent from All Recoveries by AdX Class Members Is Appropriate.

In this case, a 10-percent set-aside from any gross settlements by AdX Class members is reasonable given the contributions of Class Counsel to date and is consistent with the approaches taken by other courts administering consolidated antitrust cases. *See, e.g.*, *In re Aggrenox Antitrust Litig.*, 2018 WL 10705542, at *6 (D. Conn. July 19, 2018), *aff'd*, 812 F. App'x 26 (2d Cir. 2020) (10%); *Restasis*, 2022 WL 19837725, at *1 (12.5%); *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 2024 WL 1683640, at *8 (N.D. Cal. April 17, 2024) (10%); *Lidoderm*, 2017 WL 3478810, at *3 (10%). Such a set-aside proportion is reasonable given the substantial upfront risks and costs borne by Class Counsel in litigating a large antitrust class action and the proportion of work counsel for individual plaintiffs may be relieved of by following on a class action and participating in a consolidated multidistrict litigation. *See* 5 Newberg and Rubenstein on Class Actions § 15:116 (6th ed. 2022). As noted in § I above, the purpose of such an order is to ensure that sufficient funds are available, and any disbursement of set-aside funds, which may be less than 10 percent, must be approved by the Court.

In applying such set-aside orders, courts reject "case-by-case review for whether any particular claimant has actually benefited from common benefit work" because the "benefit created by common labor and compensated by joint assessments is sometimes intangible and difficult to quantify in individual cases." *Gen. Motors*, 477 F. Supp. 3d at 184; *see also In re Bard IVC Filters Prods. Liab. Litig.*, 603 F. Supp. 3d 822, 840 (D. Ariz. 2022) (rejecting contention that the set-aside order should only apply to "the recoveries 'fairly traceable' to the use of common benefit work"). Accordingly, a set-aside assessment should be applicable to all AdX Class members choosing to opt out that choose to pursue claims individually, including those that have already filed and others that might choose yet to pursue claims on their own.

*       *       *



For the reasons set forth above, Class Counsel respectfully requests that the Court enter the proposed set-aside order attached as Exhibit A, which order calls for a copy of such order to be made available on the website established in connection with AdX Class notice efforts. In the alternative, Class Counsel respectfully requests permission to file a motion to pursue such an order or a conference to address the proposed motion.

Respectfully submitted,

David Boies
dboies@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200

*/s/ Philip C. Korologos*
Philip C. Korologos
pkorologos@bsfllp.com
Robert J. Dwyer
rdwyer@bsfllp.com
James Keyte
jkeyte@bsfllp.com
Luke Williams
lwilliams@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300

Mark C. Mao
mmao@bsfllp.com
Sean P. Rodriguez
srodriguez@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6820

Sabria A. McElroy
smcelroy@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 377-4216





Izaak Earnhardt
iearnhardt@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave NW, 11th Floor
Washington, DC 2005
Telephone: (202) 237-2727

George A. Zelcs
gzelcs@koreintillery.com
Randall P. Ewing
rewing@koreintillery.com
Marc A. Wallenstein
mwallenstein@koreintillery.com
Ryan A. Cortazar
rcortazar@koreintillery.com
**KOREIN TILLERY LLC**
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Fax: (312) 641-9751

Stephen M. Tillery
stillery@koreintillery.com
Michael E. Klenov
mklenov@koreintillery.com
Carol L. O'Keefe
cokeefe@koreintillery.com
Andrew Ellis
aellis@koreintillery.com
Ian Moody
imoody@koreintillery.com
**KOREIN TILLERY LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Fax: (314) 241-3525



Eric L. Cramer
ecramer@bm.net
Michael C. Dell'Angelo
mdellangelo@bm.net
Caitlin G. Coslett
ccoslett@bm.net
Patrick F. Madden
pmadden@bm.net
Jeremy Gradwohl
jgradwohl@bm.net
**BERGER MONTAGUE PC**
1818 Market St., Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000

Robert E. Litan
rlitan@bm.net
**BERGER MONTAGUE PC**
1001 G Street, NW
Suite 400 East
Washington, DC 20001
Telephone: (202) 559-9740

*Co-Lead Class Counsel for the AdX Class
and Counsel for The Progressive and
Mikula*

Copies to: All counsel of record via ECF.