Elizabeth Prewitt
Direct Dial: +1.212.906.1200
elizabeth.prewitt@lw.com

1271 Avenue of the Americas
New York, New York 10020-1401
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

**LATHAM & WATKINS LLP**

February 20, 2026

**VIA ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

RE: *In re: Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC)

Dear Judge Castel,

We represent non-party The Trade Desk Inc. ("The Trade Desk"). We write to respectfully request the continued sealing of certain materials of The Trade Desk's confidential and competitively sensitive information contained in filings made by defendants Google LLC, Alphabet Inc., and YouTube LLC (collectively, "Google") in this action. On February 11, 2026, counsel for Google notified us that several expert reports and deposition transcripts filed by Google include citations and references to material and documents produced by The Trade Desk in this matter (collectively, "TTD Confidential Materials"), making this request timely under the Modified Confidential Order in this Action (ECF 685).

The parties met and conferred concerning sealing TTD Confidential Materials in Google's filed reports and deposition transcripts. Before filing this motion, The Trade Desk's counsel confirmed with Google's counsel that it would file this motion regarding these topics that required continued sealing in Google's filings. It is our understanding Google does not oppose this motion.

Accordingly, The Trade Desk requests that its confidential information remain sealed in all such filings.

### I. Background.

By operating a demand-side platform ("DSP"), The Trade Desk provides its clients access to digital ad inventory and works with ad exchanges to deliver tailored digital experiences. Each DSP offers a different mix of inventory options and products to choose from, making the choice of which DSPs to use a strategic choice. The Trade Desk spends considerable resources to compete

LATHAM&WATKINS LLP

against other DSP platforms and provide the best performance for its clients' campaigns in terms of targeting, reach, cost-efficiency, and return-on-investment. The Trade Desk's financial strategies, knowledge, and understanding of DSP strategies make part of the valuable service it provides to its clients and can be seen as a competitive advantage.

The Trade Desk has produced a significant amount of documents and data in this and related actions, including the TTD Confidential Materials. The TTD Confidential Materials include certain information designated as "Highly Confidential" pursuant to the Modified Confidential Order in this Action (ECF 685). The information contained therein relates to The Trade Desk's financials and customers, which are highly confidential, sensitive, proprietary information that The Trade Desk uses to develop its competitive strategy and complex operational decision-making.

## II. Legal Standard

The Trade Desk's sealing request is consistent with the Second Circuit's guidance in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006). Although the "right of public access to judicial documents is firmly rooted in our nation's history," it is not absolute, and courts "must balance competing considerations against" the presumption of access. *Id.* at 119-20. Sealing is appropriate where the requesting party demonstrates that sealing is "essential to preserve higher values and is narrowly tailored to serve that interest," *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 144 (2d Cir. 2016), or the confidentiality of "trade secrets and sources of business information that might harm the [party]'s competitive standing," *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 154-55 (S.D.N.Y. 2015). Among the "higher values" that courts have recognized is protecting "the confidentiality of sensitive commercial information." *Kewazinga Corp. v. Google, LLC*, No. 20-cv-1106, 2024 WL 3442428, at *1 (S.D.N.Y. July 17, 2024); *see also Red Hawk, LLC v. Colorforms Brand LLC*, No. 20-cv-9032, 2024 WL 551543, at *2 (S.D.N.Y. Feb. 9, 2024) (recognizing that "courts commonly find that documents 'containing trade secrets, confidential research and development information, marketing plans, revenue information, pricing information, and the like' reflect important privacy interests that satisfy the sealing standard") (citation omitted); *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (recognizing as a "higher value" a need to protect "specific business information and strategies, which, if revealed, 'may provide valuable insights into a company's current business practices that a competitor would seek to exploit'") (citation omitted). Moreover, the presumption of public access to materials connected to non-dispositive motions is "generally somewhat lower." *Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019).

## III. The Trade Desk's Materials Warrant Sealing

TTD Confidential Materials discuss The Trade Desk's competitively sensitive information, including:

- data regarding The Trade Desk's inventory, media, advertisements, and suppliers, and breakdowns of bids, impressions, and partner costs, which is highly

- confidential, non-public, and competitively sensitive information that The Trade Desk uses to execute its competitive strategy;

- information related to The Trade Desk's spend, billing, and revenue;

- information related to product development and specifications; and

- customer data and financial data that would expose the Trade Desk's confidential customer approach and pricing strategy.

Public disclosure of this information would compromise The Trade Desk's position in the marketplace by giving its competitors an inside look into the proprietary practices that give The Trade Desk a competitive advantage. This data would provide The Trade Desk's competitors with insight into The Trade Desk's confidential analyses which would allow them to undermine The Trade Desk's strategies and competitive edge.

Courts in the Second Circuit routinely recognize the importance of keeping information reflecting proprietary and sensitive business information, like the information at issue here, confidential. *See, e.g.*, *SEC v. Telegram Grp. Inc.*, 2020 WL 3264264, at *3 (S.D.N.Y. June 17, 2020) (sealing "proprietary business information"); *Rodo Inc. v. Guimaraes*, 2022 WL 17742392, at *1 (S.D.N.Y. Dec. 5, 2022) (citation omitted) (finding confidential business information to be the "proper subject of sealing" even where the materials were "entitled to the highest presumption of access")*, In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 81 n.1 (S.D.N.Y. 2017) (concluding that "internal pricing strategies and competitive pricing data [are] sufficiently sensitive to warrant redaction"); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-mc-2542, 2014 WL 12772236, at *2-3 (S.D.N.Y. Nov. 5, 2014) (granting redactions because presumption of public access was outweighed by plaintiff's "interest as a privately held business in safeguarding [financial] information from competitors who may wish to exploit it").

Shielding this material from public disclosure is especially appropriate here in light of The Trade Desk's status as a non-party. The Trade Desk's privacy interests outweigh the presumption of access with respect to this information, as allowing The Trade Desk's competitors access to this information would put The Trade Desk at a severe competitive disadvantage.

**IV.    The Trade Desk's Sealing Request is as Narrowly Tailored as Possible**

The Trade Desk does not seek to redact a large portion of Google's filings. The Trade Desk's request is narrowly tailored to the specific portions of Google's filings that discuss The Trade Desk's highly confidential information. *See Lugosch*, 435 F.3d at 119. Courts in this district have found such redaction requests reasonable and appropriate. *See Falberg on behalf of Goldman Sachs 401(k) Plan v. Goldman Sachs Grp., Inc.*, 2022 WL 601967, at *2 (S.D.N.Y. Mar. 1, 2022) (granting motion to seal a party's motion for summary judgment, attorney declaration, and 62 exhibits where the documents "analyze, quote, and rely on confidential information and documents produced by [a party] pursuant to the Protective Order"). The Trade Desk only seeks redactions to specific portions of Google's filing which discuss The Trade Desk's confidential information, including competitive strategy, financials, and customers.

LATHAM&WATKINS LLP

## V. Conclusion

For the foregoing reasons, and given the sensitive nature of these materials, The Trade Desk respectfully submits this letter motion to seal the TTD Confidential Materials.

Respectfully submitted,

*/s/ Elizabeth Prewitt*
Elizabeth Prewitt
LATHAM & WATKINS LLP

cc: All Counsel of Record (via ECF)