**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE: GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION | No. 1:21-md-03010 (PKC) |

*This Document Relates To:*

|  |  |
|---|---|
| RUMBLE CANADA INC., *Plaintiff,* v. GOOGLE LLC and ALPHABET INC., *Defendants.* | No. 1:24-cv-09904 (PKC) |

**DEFENDANTS GOOGLE LLC AND ALPHABET INC.'S**
**ANSWER TO RUMBLE CANADA INC.'S THIRD AMENDED COMPLAINT**

Defendants Google LLC and Alphabet Inc. (together, "Google") answer the Third Amended Complaint of Rumble Canada Inc. ("Rumble" or "Plaintiff"), through undersigned counsel as set forth below. Google generally denies the legal claims asserted in Plaintiff's January 30, 2026 Complaint, ECF No. 1390 (the "Complaint"). Ad tech (the technology that powers digital advertising on publishers' sites) is an important part of a healthy web. Google's investments and innovations in this space help publishers fund their work, make it easy for large and small businesses to reach consumers, and support the proliferation of creative and diverse content. Google's products foster competition for the benefit of publishers, advertisers, and consumers.

1

**RESPONSE TO NUMBERED PARAGRAPHS**

Except to the extent specifically admitted herein, Google denies each and every allegation contained in the Complaint, including all allegations contained in headings or otherwise not contained in one of the Complaint's 334 numbered paragraphs. Google generally denies the legal claims asserted in the Complaint and responds to the Complaint's numbered paragraphs as follows. The section headings in the Complaint do not require a response. To the extent that the section headings contain allegations requiring a response, Google denies all such allegations.

1. To the extent the allegations in Paragraph 1 characterize or describe another legal proceeding, Google notes that the filings in that proceeding speak for themselves and denies any characterization or description that is inconsistent therewith.

2. To the extent the allegations in Paragraph 2 characterize or describe another legal proceeding, Google notes that the filings in that proceeding speak for themselves and denies any characterization or description that is inconsistent therewith.

3. To the extent the allegations in Paragraph 3 characterize or describe another legal proceeding, Google notes that the filings in that proceeding speak for themselves and denies any characterization or description that is inconsistent therewith. As to the third sentence of Paragraph 3, this contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google does not dispute the existence of the DOJ Ad Tech Case or the Court's ruling therein, but denies any characterization that is inconsistent with the Court's actual findings. As to the fourth sentence of Paragraph 3, Google admits the existence of ECF No. 1410 in the DOJ Ad Tech Case containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents.

4. Paragraph 4 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 4.

5. As to the first sentence of Paragraph 5, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and on that basis denies those allegations.

6. As to the first sentence of Paragraph 6, Google admits that Google LLC is a limited liability company organized and existing under the laws of the state of Delaware and that it maintains a Mountain View, California business address. As to the second sentence of Paragraph 6, Google admits that Google LLC is a subsidiary of XXVI Holdings, Inc., which is a subsidiary of Alphabet Inc., a publicly traded company that is incorporated and existing under the laws of the State of Delaware and that maintains its principal executive offices in Mountain View, California. Google denies the allegations in Paragraph 6 in all other respects.

7. As to the first sentence of Paragraph 7, Google admits that Google LLC is a subsidiary of XXVI Holdings, Inc., which is a subsidiary of Alphabet Inc., a publicly traded company incorporated under the laws of Delaware and headquartered in Mountain View, California. As to the second sentence of Paragraph 7, Google admits that the Complaint defines "Google" or "Defendants" to refer jointly to Google LLC and Alphabet Inc. As to the third sentence of Paragraph 7, this contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in the third sentence of Paragraph 7.

8. The first sentence of Paragraph 8 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google admits that it is engaged in interstate trade and commerce. As to the second sentence of Paragraph 8, Google admits that it provides a range of products and services that are marketed, distributed, and offered to consumers throughout the United States, across state lines, and internationally. The third sentence of Paragraph 8 contains legal conclusions to which no response is required. To the

extent a response is deemed necessary, admits that it is engaged in interstate trade and commerce.

9. As to the first sentence of Paragraph 9, this contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies that 28 U.S.C. § 1407 confers personal jurisdiction but does not object to proceeding in the United States District Court for the Southern District of New York. As to the second sentence of Paragraph 9, Google admits that this case was originally filed in the Northern District of California before being transferred to this Court. As to the third sentence of Paragraph 9, this contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google does not dispute—for purposes of this action only—that the Northern District of California has jurisdiction over Defendants. As to the fourth sentence of Paragraph 9, Google admits that the Complaint defines "this District" to refer to the Northern District of California.

10. Paragraph 10 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google does not dispute—for purposes of this action only—that this Court currently has federal subject matter jurisdiction over this action.

11. Paragraph 11 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google does not dispute venue in this matter but reserves all rights should events or future investigation render the venue improper.

12. As to the first sentence of Paragraph 12, Google admits that both before and after the internet, content was communicated to consumers through various means such as television, radio, newspapers, and magazines. As to the second sentence of Paragraph 12, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding the nature of all pre-internet advertising transactions, and on that basis denies those allegations. To the extent this sentence cites a to a third-party website,

4

Google lacks knowledge or information sufficient to form a belief as to the contents of that website.

13. Google admits that the internet revolutionized the way people consume content and expanded the opportunities for companies to advertise. Google denies the allegations in Paragraph 13 in all other respects.

14. As to the first sentence of Paragraph 14, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and on that basis denies those allegations. Google admits that digital advertising transactions may include information about the impression at issue. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the fifth and sixth sentences of Paragraph 14 and on that basis denies those allegations. Google denies the allegations in Paragraph 14 in all other respects.

15. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the first sentence of Paragraph 15. The second sentence of Paragraph 15 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in the second sentence of Paragraph 15. As to the fifth sentence of Paragraph 15, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and on that basis denies those allegations. Google denies the allegations in Paragraph 15 in all other respects.

16. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 16 and on that basis denies those allegations.

17. Paragraph 17 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 17.

18. As to the first sentence of Paragraph 18, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and on that basis denies

those allegations. To the extent the allegations in the second sentence of Paragraph 18 characterize or describe data from Google's analytics tools, Google notes that such data speak for themselves and denies any characterization or description that is inconsistent therewith.

19. The first sentence of Paragraph 19 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in the first sentence of Paragraph 19. As to the second, third, and fourth sentences of Paragraph 19, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and on that basis denies those allegations. The fifth sentence of Paragraph 19 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google admits it operates an ad exchange and denies the remainder of the sentence. As to the sixth and seventh sentences of Paragraph 19, Google admits that Rumble has contracted with Google for certain ad tech services, including in 2015. Google denies the allegations in Paragraph 19 in all other respects.

20. As to the first sentence of Paragraph 20, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding Rumble's motivations for its business decisions. The remainder of the sentence, along with the second sentence of Paragraph 20, contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in the first and second sentences of Paragraph 20. As to the third sentence of Paragraph 20, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding Rumble's investment in building RAC, and on that basis denies those allegations. As to the fourth sentence of Paragraph 20, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and on that basis denies those allegations. As to the fifth sentence of Paragraph 20, Google denies the allegations therein, and denies the allegations in Paragraph 20 in all other respects.

21. As to the first sentence of Paragraph 21, Google admits the existence of the referenced court filings and news article, which speak for themselves, and denies any characterization inconsistent therewith. Google denies the allegations in Paragraph 21 in all other respects.

22. Paragraph 22 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 22.

23. Google denies the allegations in Paragraph 23.

24. Google admits the existence of proceedings referenced in the first sentence of Paragraph 24, but denies the characterizations of such proceedings and denies the allegations in the first sentence of Paragraph 24 in all other respects. To the extent the second sentence of Paragraph 24 characterizes or describes the U.K. Competition and Markets Authority's Online Platforms and Digital Advertising Market Study Final Report, Google notes that such source speaks for itself and denies any characterization or description that is inconsistent therewith. Google admits the existence of the quoted language in the cited report, to which Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 24 in all other respects.

25. To the extent the allegations in the first sentence of Paragraph 25 characterize or describe a report from the Australian Competition and Consumer Commission, Google notes that such report speaks for itself and denies any characterization or description that is inconsistent therewith. As to the second sentence of Paragraph 25, Google admits the existence of the referenced U.S. House Antitrust Subcommittee report containing the quoted language, to which report Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 25 in all other respects.

26. As to the first sentence of Paragraph 26, Google admits that it is a company that earns revenue from online advertising. As to the third sentence of Paragraph 26, Google lacks

knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and on that basis denies those allegations. As to the fourth sentence of Paragraph 26, Google admits its parent company, Alphabet, Inc., has revenues as disclosed in its public filings. Google denies the allegations in Paragraph 26 in all other respects.

27. As to the first sentence of Paragraph 27, Google admits that its advertising products include services for buying and selling online advertising. As to the second and third sentences of Paragraph 27, Google admits it operates an ad exchange used by advertisers and publishers and that it offers tools that advertisers can use to purchase display advertising inventory. Google denies the allegations in Paragraph 27 in all other respects.

28. Google denies the allegations in Paragraph 28.

29. Google denies the allegations in Paragraph 29.

30. Google denies the allegations in Paragraph 30.

31. Google admits that it acquired DoubleClick in 2008. The second and third sentences of Paragraph 31 contain legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in the second and third sentences of Paragraph 31. As to the fourth sentence of Paragraph 31, Google admits that it charges a fee for certain DSP service and charges a fee for the use of its ad server, each of which varies based on a number of factors, including customer and transaction type. As to the fifth sentence of Paragraph 31, Google admits that it retains a percentage of the clearing price of transactions on its ad exchange, of which varies based on a number of factors, including customer and transaction type. Google denies the allegations in Paragraph 31 in all other respects.

32. The first sentence of Paragraph 32 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 32 in all respects.

33. The first sentence of Paragraph 33 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google admits that its publisher ad server included a feature known as "Dynamic Allocation" that was designed to compare real-time bids received through Google's ad exchange with a publisher's estimate of its yield from other channels, so as to maximize the publisher's revenue. Google denies the allegations in Paragraph 33 in all other respects.

34. Google admits that publishers, including those using Google Ad Manager, can implement header bidding by inserting code into the HTML header of their webpages and that header bidding can enable bid requests to multiple exchanges and other demand sources. Google also admits that header bidding was and remains popular. As to the fifth and sixth sentences of Paragraph 34, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations, and on that basis denies those allegations. Google denies the allegations in Paragraph 34 in all other respects.

35. Google denies the allegations in Paragraph 35.

36. The first sentence of Paragraph 36 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in the first sentence of Paragraph 36. The second sentence of Paragraph 36 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, Google admits that in March 2017, Facebook published a blog post indicating that mobile web publishers who use header bidding would be able to join its Facebook Audience Network through approved partners or through open-source header bidding solutions. As to the third sentence of Paragraph 36, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations

and on that basis denies those allegations. Google denies the allegations in Paragraph 36 in all other respects.

37. Google denies the allegations in Paragraph 37 in all respects.

38. Paragraph 38 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, Google admits the existence of a September 2018 Google-Facebook agreement identified in Paragraph 38, and admits that the internal codename for Google's Network Bidding Agreement with Facebook was "Jedi Blue." Google denies the allegations in Paragraph 38 in all other respects.

39. Paragraph 39 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 39 and on that basis denies those allegations.

40. The first sentence of Paragraph 40 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 40 in all respects.

41. Paragraph 41 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 41.

42. Paragraph 42 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 42.

43. Paragraph 43 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, Paragraph

43 contains legal conclusions to which no response is required. To the extent a response is again deemed necessary, Google denies the allegations in Paragraph 43.

44. Google admits that publisher ad servers gather and communicate information for each impression, that publishers use publisher ad servers to facilitate their advertising sales, and that publishers can route their inventory to multiple different exchanges. As to other aspects of the first and second sentences of Paragraph 44, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and on that basis denies those allegations. Google denies the allegations in Paragraph 44 in all other respects.

45. Google denies the allegations in Paragraph 45.

46. As to the first sentence of Paragraph 46, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and on that basis denies those allegations. The second sentence of Paragraph 46 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in the second sentence of Paragraph 46.

47. Paragraph 47 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 47.

48. As to the first sentence of Paragraph 48, Google admits that it acquired DoubleClick in 2008 and AdMeld in 2011. Google denies the allegations in Paragraph 48 in all other respects.

49. Google admits that ad exchanges match buyers and sellers of display ads on an impression-by-impression basis in real time, typically through an auction mechanism; that a publisher's ad server can route the publisher's inventory to ad exchanges in real time; that advertisers can connect with ad exchanges through ad buying tools, among other means; and

that many advertisers do not bid directly on ad exchanges. Google denies the allegations in Paragraph 49 in all other respects.

50. As to the first sentence of Paragraph 50, Google admits that it operates an ad exchange sometimes referred to as AdX. To the extent the allegations in the second sentence of Paragraph 50 characterize or describe documents or other sources, Google notes that such sources speak for themselves and denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 50 in all other respects.

51. Paragraph 51 refers to a figure that purports to show how Google AdX operates, to which no response is required. To the extent a response is deemed necessary, Google denies that the figure presents a fair, accurate, and complete description of the matters described therein and, on that basis, denies any allegations contained in the figure.

52. As to the first sentence of Paragraph 52, Google admits that the revenue share that AdX charges for auctions of inventory that are generally available to all the buyers on the exchange is roughly 20 percent, but varies based on a number of factors, including customer and transaction type. The second sentence of Paragraph 52 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in the second sentence of Paragraph 52. Google denies the allegations in Paragraph 52 in all other respects.

53. Google denies the allegations in Paragraph 53.

54. Google denies the allegations in Paragraph 54.

55. Paragraph 55 refers to a figure that purports to show how an ad server routes to many exchanges, to which no response is required. To the extent a response is deemed necessary, Google denies that the figure presents a fair, accurate, and complete description of the matters described therein and, on that basis, denies any allegations contained in the figure.

56. As to the first sentence of Paragraph 56, Google admits the existence of a document containing the quoted language, to which Google refers the Court for a complete and accurate statement of its contents. As to the third sentence of Paragraph 56, Google admits that its AdSense for Content service typically retains a 32% revenue share. Google denies the allegations in Paragraph 56 in all other respects.

57. Paragraph 57 refers to a figure that purports to show how Google's ad server controls routing, to which no response is required. To the extent a response is deemed necessary, Google denies that the figure presents a fair, accurate, and complete description of the matters described therein and, on that basis, denies any allegations contained in the figure.

58. Google denies the allegations in Paragraph 58.

59. The allegations in Paragraph 59 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 59.

60. Google admits that publisher ad servers can help publishers manage their online advertising inventory, including but not limited to image-based graphical ads alongside web content and video advertisements, and that Google Ad Manager can help publishers manage ad inventory, inclusive of both image-based graphical ads and video ads. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding the functionality of all other ad servers. Google denies the allegations in Paragraph 60 in all other respects.

61. The allegations in Paragraph 61 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is required, Google admits that ad servers can help publishers manage and sell their online advertising inventory, whether directly or indirectly, and that many publisher ad servers

provide, to varying degrees and in varying ways, the listed features. Google denies the allegations in Paragraph 61 in all other respects.

62. Google admits that many publishers use one ad server at a time to manage their web display inventory and that a publisher may, for a variety of reasons, use more than one ad server. As to other aspects of the first, second, third, and fifth sentences of Paragraph 62, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and on that basis denies those allegations. Google denies the allegations in Paragraph 62 in all other respects.

63. The allegations in Paragraph 63 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is required, Google denies the allegations in Paragraph 63.

64. The allegations in Paragraph 64 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is required, and to the extent the allegations in the third, fourth, fifth, and sixth sentences of Paragraph 64 characterize or describe documents or other sources, Google notes that such sources speak for themselves, denies any characterization or description that is inconsistent therewith, and refers the Court to those materials for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 64 in all other respects.

65. The allegations in Paragraph 65 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 65.

66. The allegations in Paragraph 66 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is deemed necessary, Google admits the existence of the cited order in the DOJ Ad Tech Case containing the quoted language, to which order Google refers the Court for a complete and

accurate statement of its contents. Google admits that the geographic market definition provided in Paragraph 65 is the same as the geographic market definition identified by the Eastern District of Virginia in the DOJ Ad Tech Case.

67. The allegations in Paragraph 67 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 67.

68. The allegations in Paragraph 68 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is deemed necessary, Google denies the allegations in the first sentence of Paragraph 68. As to the second sentence of Paragraph 68, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations, which are based on unspecified "published reports," and on that basis denies those allegations. To the extent the allegations in the third sentence of Paragraph 68 characterize or describe Google's internal documents, Google notes that such documents speak for themselves and denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 68 in all other respects.

69. To the extent the allegations in the first sentence of Paragraph 69 purport characterize or describe Google's internal documents, Google notes that such documents speak for themselves and denies any characterization or description that is inconsistent therewith. Google admits that some ad servers have entered and exited since 2012. Google denies the allegations in Paragraph 69 in all other respects.

70. The allegations in Paragraph 70 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is deemed necessary, Google denies the allegations in the first sentence of Paragraph 70. As to

15

the second sentence of Paragraph 70, Google admits that its ad server charges fees for some services. Google denies the allegations in Paragraph 70 in all other respects.

71. Google denies the allegations in Paragraph 71.

72. As to the first sentence of Paragraph 72, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and on that basis denies those allegations. The second sentence of Paragraph 72 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 72 in all respects.

73. Google denies the allegations in Paragraph 73.

74. As to the first sentence of Paragraph 74, Google admits it launched Dynamic Allocation, Enhanced Dynamic Allocation, and Unified Pricing Rules. Google denies the allegations in Paragraph 74 in all other respects.

75. Paragraph 75 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 75.

76. As to the fourth sentence of Paragraph 76, Google admits that it charges a fee for certain DSP services, that it charges a fee for the use of its ad server, and that it retains a percentage of the clearing price of transactions on its ad exchange, each of which varies based on a number of factors, including customer and transaction type. The remainder of Paragraph 76 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 76 in all other respects.

77. The first, third, and fourth sentences of Paragraph 77 contain legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in the first, third, and fourth sentences of Paragraph 77. As to the second sentence of Paragraph 77, Google lacks knowledge or information sufficient to form a belief

as to the truth or falsity of the allegations and on that basis denies those allegations. Google denies the allegations in Paragraph 77 in all other respects.

78. The allegations in Paragraph 78 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 78.

79. The allegations in Paragraph 79 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is deemed necessary, Google admits that ad exchanges match buyers and sellers of display ads on an impression-by-impression basis in real time, typically through an auction mechanism, and that ad exchanges interface with other ad tech products, including publisher ad servers and ad buying tools. Google denies the allegations in Paragraph 79 in all other respects.

80. The allegations in Paragraph 80 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is deemed necessary, Google admits that ad exchanges generally do not bear inventory risk, that ad exchanges match buyers and sellers of display ads on an impression-by-impression basis in real time, typically through an auction mechanism, and that some ad exchanges may retain a percentage of the clearing price of transactions on their ad exchanges, which can vary based on a number of factors including publisher and transaction type. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the other allegations in Paragraph 80 and on that basis denies those allegations. Google denies the allegations in Paragraph 80 in all other respects.

81. The allegations in Paragraph 81 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is deemed necessary, Google admits that different ad exchanges, publisher ad servers, ad

networks, and ad buying tools may have different features and pricing. Google denies the allegations in Paragraph 81 in all other respects.

82. The allegations in Paragraph 82 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is deemed necessary, as to the second, third, and fourth sentences of Paragraph 82, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and on that basis denies those allegations. Google denies the allegations in Paragraph 82 in all other respects.

83. The allegations in Paragraph 83 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is deemed necessary, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 83 and on that basis denies those allegations.

84. The allegations in Paragraph 84 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 84.

85. As to the first sentence of Paragraph 85, Google admits the existence of the cited order in the DOJ Ad Tech Case containing the quoted language, to which order Google refers the Court for a complete and accurate statement of its contents. Google admits that the geographic market definition provided in Paragraph 84 is the same as the geographic market definition identified by the Eastern District of Virginia in the DOJ Ad Tech Case.

86. The allegations in Paragraph 86 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 86.

87. The allegations in Paragraph 87 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is deemed necessary, Google admits it introduced Unified Pricing Rules in 2019. Google denies the allegations in Paragraph 87 in all other respects.

88. As to the second sentence of Paragraph 88, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and on that basis denies those allegations. Google denies the allegations in Paragraph 88 in all other respects.

89. Google admits that Magnite, Xandr, OpenX, and Index Exchange, among many others, all operate ad exchanges with which Google competes. Google denies the allegations in Paragraph 89 in all other respects.

90. The allegations in Paragraph 90 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is deemed necessary, Google admits that that the revenue share that AdX charges for auctions of inventory that are generally available to all the buyers on the exchange is roughly 20 percent, but varies based on a number of factors, including customer and transaction type. To the extent the allegations in the sixth sentence of Paragraph 90 characterize or describe a Google internal analysis, Google notes that such documents speak for themselves and denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 90 in all other respects.

91. The allegations in Paragraph 91 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 91.

92. The allegations in Paragraph 92 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is deemed necessary, to the extent the allegations in the first and second sentences of Paragraph

92 characterize or describe Google internal documents, Google notes that such documents speak for themselves and denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 92 in all other respects.

93. The allegations in Paragraph 93 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is deemed necessary, as to the fourth sentence of Paragraph 93, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations. Google denies the allegations in Paragraph 93 in all other respects.

94. The allegations in Paragraph 94 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 94.

95. Google denies the allegations in Paragraph 95.

96. As to the first sentence of Paragraph 96, Google admits that Rumble has contracted with Google for certain ad tech services. As to the second, third, fourth, and fifth sentences of Paragraph 96, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding Rumble's reasoning for its business decisions, and on that basis denies those allegations. Google denies the allegations in Paragraph 96 in all other respects.

97. The first and fourth sentences of Paragraph 97 contain legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in the first and fourth sentences of Paragraph 97. As to the second sentence of Paragraph 97, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and on that basis denies those allegations. Google denies the allegations in Paragraph 97 in all other respects.

98. Paragraph 98 purports to describe allegations relating to the Ad Network market, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, the allegations in Paragraph 98 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is further deemed necessary, Google denies the allegations in Paragraph 98.

99. Paragraph 99 purports to describe allegations relating to the Ad Network market, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, the allegations in Paragraph 99 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is further deemed necessary, Google admits that ad networks can, but do not always, carry inventory risk by purchasing impressions on their own behalf as opposed to on the direct behalf of a specific advertiser or advertiser representative, that ad networks are distinct from exchanges, and that ad networks would aggregate remnant inventory from multiple digital content providers and resell the inventory to advertisers. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the rest of the allegations in Paragraph 99 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 99 in all other respects.

100. Paragraph 100 purports to describe allegations relating to the Ad Network market, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, Google admits that ad networks provide varying degrees of price transparency on a per-impression basis. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the other allegations in Paragraph 100 and on that basis denies those allegations.

101. Paragraph 101 purports to describe allegations relating to the Ad Network market, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 101 and on that basis denies those allegations.

102. Paragraph 102 purports to describe allegations relating to the Ad Network market, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, as to the third sentence of Paragraph 102, Google admits that it does not impose monthly page view or impression requirements on publishers who sell through GDN. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the other allegations in Paragraph 102 and on that basis denies those allegations.

103. Paragraph 103 purports to describe allegations relating to the Ad Network market, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, the allegations in Paragraph 103 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is further deemed necessary, Google admits that different ad exchanges, publisher ad servers, ad networks, and ad buying tools may have different features and pricing. Google denies the allegations in Paragraph 103 in all other respects.

104. Paragraph 104 purports to describe allegations relating to the Ad Network market, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, the allegations in Paragraph 104 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to

admission or denial. To the extent a response is further deemed necessary, Google denies the allegations in Paragraph 104.

105. Paragraph 105 purports to describe allegations relating to the Ad Network market, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, the allegations in Paragraph 105 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is further deemed necessary, Google denies the allegations in Paragraph 105.

106. As to the first sentence of Paragraph 106, Google admits the existence of its materials containing the quoted language, to which materials Google refers the Court for a complete and accurate statement of their contents. Google further admits that many publishers, large and small, use Google's ad networks. Google denies the allegations in Paragraph 106 in all other respects.

107. Paragraph 107 purports to describe allegations relating to the Ad Network market, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, the allegations in Paragraph 107 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is further deemed necessary, Google admits that its AdSense for Content service typically retains a 32% revenue share. To the extent the allegations in Paragraph 107 characterize or describe an internal conversation, Google notes that such documents speak for themselves and denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 107 in all other respects.

108. Paragraph 108 purports to describe allegations relating to the Ad Network market, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, the allegations in Paragraph 108 are

premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is further deemed necessary, as to the fifth sentence of Paragraph 108, Google admits that, generally, an ad network may be more attractive to advertisers as more publishers use it, and more attractive to publishers as more advertisers use it. Google denies the allegations in Paragraph 108 in all other respects.

109. Paragraph 109 purports to describe allegations relating to the ad-buying tools markets, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, Google admits that different buying tools provide different types of interfaces; that advertisers of all types and sizes use automated buying tools to bid on and purchase ad inventory, including inventory sold on ad exchanges and ad networks; and that advertisers use buying tools to achieve their advertising goals. Google denies the allegations in Paragraph 109 in all other respects.

110. Paragraph 110 purports to describe allegations relating to the ad-buying tools markets, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 110.

111. Paragraph 111 purports to describe allegations relating to the ad-buying tools markets, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 111.

112. Paragraph 112 purports to describe allegations relating to the ad-buying tools markets, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, Google admits that Google Ads does not impose a minimum spending requirement on advertisers. As to the second, third, and fourth sentence of Paragraph 112, Google lacks knowledge or information sufficient to form a

24

belief as to the truth or falsity of the allegations and on that basis denies those allegations. Google denies the allegations in Paragraph 112 in all other respects.

113. Paragraph 113 purports to describe allegations relating to the ad-buying tools markets, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, the allegations in Paragraph 113 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is further deemed necessary, Google denies the allegations in Paragraph 113.

114. Paragraph 114 purports to describe allegations relating to the ad-buying tools markets, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, Google admits that different buying tools provide different types of interfaces; that advertisers of all types and sizes use automated buying tools to bid on and purchase ad inventory, including inventory sold on ad exchanges and ad networks; and that advertisers use buying tools to achieve their advertising goals. Google denies the allegations in Paragraph 114 in all other respects.

115. Paragraph 115 purports to describe allegations relating to the ad-buying tools markets, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, Google admits that different buying tools have different features and requirements suitable to different users; that some advertisers outsource their ad purchasing to ad agencies; that buying tools charge different prices, in part due to differences in their features. Google denies the allegations in Paragraph 115 in all other respects.

116. Paragraph 116 purports to describe allegations relating to the ad-buying tools markets, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, the allegations in Paragraph

116 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is further deemed necessary, Google denies the allegations in Paragraph 116.

117. Paragraph 117 purports to describe allegations relating to the ad-buying tools markets, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, the allegations in Paragraph 117 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is further deemed necessary, Google denies the allegations in Paragraph 117.

118. Paragraph 118 purports to describe allegations relating to the ad-buying tools markets, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, to the extent the allegations in Paragraph 118 purport to characterize or describe unspecified documents or other sources, Google notes that such sources speak for themselves and denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 118 in all other respects.

119. Paragraph 119 purports to describe allegations relating to the ad-buying tools markets, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, the allegations in Paragraph 119 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is further deemed necessary, Google denies the allegations in Paragraph 119.

120. Paragraph 120 purports to describe allegations relating to the ad-buying tools markets, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, the allegations in Paragraph

120 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is further deemed necessary, Google denies the allegations in Paragraph 120.

121. Paragraph 121 purports to describe allegations relating to the ad-buying tools markets, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, the allegations in Paragraph 121 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is further deemed necessary, Google denies the allegations in Paragraph 121.

122. Paragraph 122 purports to describe allegations relating to the Instream Online Video Advertising market, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, the allegations in Paragraph 122 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is further deemed necessary, Google denies the allegations in Paragraph 122.

123. Paragraph 123 purports to describe allegations relating to the Instream Online Video Advertising market, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, the allegations in Paragraph 123 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is further deemed necessary, Google denies the allegations in Paragraph 123.

124. Paragraph 124 purports to describe allegations relating to the Instream Online Video Advertising market, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, the allegations in Paragraph 124 are premised on Plaintiff's proposed market definition, a legal conclusion

not subject to admission or denial. To the extent a response is further deemed necessary, Google denies the allegations in Paragraph 124.

125. Paragraph 125 purports to describe allegations relating to the Instream Online Video Advertising market, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, the allegations in Paragraph 125 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is further deemed necessary, Google denies the allegations in Paragraph 125.

126. Paragraph 126 purports to describe allegations relating to the Instream Online Video Advertising market, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, the allegations in Paragraph 126 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is further deemed necessary, Google admits that in 2021 YouTube had advertising revenues exceeding $28 billion. To the extent the allegations in Paragraph 126 characterize or describe documents or other sources, Google notes that such sources speak for themselves and denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 126 in all other respects.

127. Paragraph 127 purports to describe allegations relating to the Instream Online Video Advertising market and to the alleged tying of YouTube to Google's ad buying tools, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 127.

128. Paragraph 128 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 128.

129. As to the second, third, sixth, and seventh sentences of Paragraph 129, Google admits that ad exchanges and ad servers were in use prior to 2009 and that both prior to and after its acquisition of DoubleClick, it has faced continual competition from multiple well-funded rivals, including those listed. As to the fourth and fifth sentences of Paragraph 129, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and on that basis denies those allegations. Google denies the allegations in Paragraph 129 in all other respects.

130. Google admits that Google Ads was formerly known as AdWords. The first and fourth sentences of Paragraph 130 contain legal conclusions to which no response is required. The allegations in the second, third, and fifth sentences on Paragraph 130 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is deemed necessary, Google operated AdWords in 2008 and 2009, and Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the fifth sentence of Paragraph 130 and on that basis denies those allegations. Google denies the allegations in Paragraph 130 in all other respects.

131. Paragraph 131 purports to describe allegations relating to claims concerning the alleged tying of Google Ads to AdX and GDN, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, as to the third sentence of Paragraph 131, Google admits that it charges a fee for certain DSP services, that it charges a fee for the use of its ad server, and that it retains a percentage of the clearing price of transactions on its ad exchange, each of which varies based on a number of factors, including customer and transaction type. Google denies the allegations in Paragraph 131 in all other respects.

132. Paragraph 132 purports to describe allegations relating to claims concerning the ad-buying tools markets and the alleged tying of Google Ads to AdX and GDN, to which no

response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 132 and on that basis denies those allegations. Google denies the allegations in Paragraph 132 in all other respects.

133. Paragraph 133 purports to describe allegations concerning the ad-buying tools markets, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 133.

134. Paragraph 134 purports to describe allegations concerning the ad-buying tools markets, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 134.

135. The first sentence of Paragraph 135 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in the first sentence of Paragraph 135. To the extent the allegations in the fifth sentence of Paragraph 135 characterize or describe an internal presentation, Google notes that such documents speak for themselves and denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 135 in all other respects.

136. Google denies the allegations in Paragraph 136.

137. The first sentence of Paragraph 137 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, to the extent the allegations in Paragraph 137 characterize or describe Google internal documents, Google notes that such documents speak for themselves and denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 137 in all other respects.

138. Google lacks knowledge and information sufficient to form a belief as to the truth of the allegations in the third sentence of Paragraph 138. Google denies the allegations in Paragraph 138 in all other respects.

139. Google admits the existence of an article in The Wall Street Journal containing the quoted language, to which article Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 139 in all other respects.

140. The allegations in the first and second sentences of Paragraph 140 are premised on Plaintiff's proposed market definition, a legal conclusion not subject to admission or denial. To the extent a response is required, Google admits that from 2008 to the present, Google's ad exchange and ad server faced significant competition. Google denies the allegations in Paragraph 140 in all other respects.

141. Google admits that beginning in approximately 2016, Google Ads began bidding on display ad inventory on non-Google ad exchanges on behalf of advertisers. Google denies the allegations in Paragraph 141 in all other respects.

142. Google admits that it launched Unified Pricing Rules and Project Bernanke. As to the eighth sentence in Paragraph 142, Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 142 in all other respects.

143. As to the first and second sentences of Paragraph 143, Google admits that prior to 2009, its ad server had different features than it does today, and that there was an industry practice known as "waterfalling" that involved sequentially offering inventory to multiple exchanges, networks, or other sources of demand. Google denies the allegations in Paragraph 143 in all other respects.

144. Google admits that its publisher ad server originally known as DoubleClick for Publishers included a feature known as "dynamic allocation" that was designed to compare

real-time bids received through Google's ad exchange with a publisher's estimate of its yield from other channels, so as to maximize the publisher's revenue, that while Dynamic Allocation only supported the DoubleClick ad exchange (both before and after Google acquired DoubleClick), publishers could configure an estimated or contracted CPM for any other non-guaranteed demand source, including exchanges or networks, and that many publishers use and used an exchange's historical performance when determining the expected value to configure for that exchange for a particular ad impression. Google denies the allegations in Paragraph 144 in all other respects.

145. Google admits that prior to Google's acquisition of DoubleClick and subsequently, DFP (and now Google Ad Manager) selected ads or ad providers based on a number of factors, including the publisher's configured preferences and the feature that became known as dynamic allocation. Google denies the allegations in Paragraph 145 in all other respects.

146. Google denies the allegations in Paragraph 146.

147. Google admits the existence of documents containing the quoted language in the second and third sentences of Paragraph 147, to which documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 147 in all other respects.

148. Google admits the existence of a document containing the quoted language in the third sentence of Paragraph 148, to which document Google refers the Court for a complete and accurate statement of its contents. Google lacks knowledge and information sufficient to form a belief as to the truth of the allegations in the fourth sentence of Paragraph 148. To the extent the allegations in the fourth sentence of Paragraph 148 purport to characterize or describe an unspecified Google study, such study speaks for itself and Google denies any characterization or description that is inconsistent therewith. Google admits the existence of an article containing the quoted language in the sixth sentence of Paragraph 148, to which

32

article Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 148 in all other respects.

149. Google understands the allegations in Paragraph 149 to have been dismissed as they concern the ad-buying tools markets. *See* ECF No. 1336. To the extent a response is required, Google denies the allegations in Paragraph 149.

150. As to the first sentence of Paragraph 150, Google admits that one of its ad server's functions is to help publishers manage their ad inventory. As to the second sentence of Paragraph 150, Google admits that its ad server may use identifiers to help deliver relevant advertising.

151. Google understands the allegations in the second sentence of Paragraph 151 regarding User ID Encryption to have been dismissed as independently actionable conduct. *See* ECF No. 1336. To the extent a response is required, Google admits that cookies (including hashed or encrypted cookie identifiers) help publishers with measurement, reaching users, and frequency capping, and that impressions without associated cookies or alternative means of understanding what may be relevant to users can have lower value when sold on an exchange (which one study estimated could be approximately 50% less). Google denies the allegations in Paragraph 151 in all other respects.

152. Google understands the allegations in the first sentence of Paragraph 152 regarding User ID Encryption to have been dismissed as independently actionable conduct. *See* ECF No. 1336. To the extent Paragraph 152 nonetheless still requires an answer as relevant to Rumble's remaining claims, Google admits that it hashes or encrypts the identifiers it shares with third parties in connection with publishers' impressions to ensure user privacy. Google denies the allegations in Paragraph 152 in all other respects.

153. As to Paragraph 153, Google admits the existence of documents containing the quoted language, to which documents Google refers the Court for a complete and accurate

account of their contents. Google further admits its use of confidential, non-public publisher data is and was subject to the restrictions in its contracts with the respective publishers. To the extent the allegations in the fifth sentence of Paragraph 153 characterize or describe DoubleClick's contracts, Google notes that such documents speak for themselves and denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 153 in all other respects.

154. Google understands the allegations in the second sentence of Paragraph 154 regarding User ID Encryption to have been dismissed as independently actionable conduct. *See* ECF No. 1336. To the extent a response is required, Google admits that it hashes or encrypts the identifiers it shares with third parties in connection with publishers' impressions, such that such identifiers are unique to a given third party; and that the encrypted cookie identifiers shared with publishers and advertisers differ. Google denies the allegations in Paragraph 154 in all other respects.

155. Google understands the allegations in the Paragraph 155 regarding User ID Encryption to have been dismissed as independently actionable conduct. *See* ECF No. 1336. To the extent a response is required, Google denies the allegations in Paragraph 155.

156. Google understands the allegations in the second sentence of Paragraph 156 regarding User ID Encryption to have been dismissed as independently actionable conduct. *See* ECF No. 1336. To the extent a response is required, Google denies the allegations in Paragraph 156.

157. Google understands the allegations in Paragraph 157 regarding User ID Encryption to have been dismissed as independently actionable conduct. *See* ECF No. 1336. To the extent a response is required, Google admits that ad servers allow the publisher to attempt to maximize its revenue or achieve other goals, and that its publisher ad server was and is designed to help maximize publisher revenue, subject to the publisher's configuration

and other internal and external constraints. Google denies the allegations in Paragraph 157 in all other respects.

158. Google understands the allegations in the second sentence of Paragraph 158 regarding User ID Encryption to have been dismissed as independently actionable conduct. *See* ECF No. 1336. To the extent a response is required, Google admits that one reason it hashes or encrypts the identifiers it shares with third parties in connection with publishers' impressions is due to privacy concerns. Google denies the allegations in Paragraph 158 in all other respects.

159. Paragraph 159 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 159.

160. Google denies the allegations in Paragraph 160.

161. Google admits that RPO was launched in 2015 and that RPO generated dynamic per-buyer floor prices based, in part, on historical bids. Google denies the allegations in Paragraph 161 in all other respects.

162. Google admits that its ad exchange supported a feature called Dynamic Revenue Share and that, if enabled by the publisher, Dynamic Revenue Share dynamically adjusts the revenue share retained by Google's ad exchange for particular impressions to allow more bids to clear applicable price floors. Google denies the allegations in Paragraph 162 in all other respects.

163. Google admits that DRS was launched on or about August 20, 2015, and that, for a period of time, it was intended to apply to all AdX publishers. Google denies the allegations in Paragraph 163 in all other respects.

164. Google admits that Project Bernanke was intended to increase Google Ads advertisers' win rates in Google's ad exchange, and that Project Bernanke uses data about historical bids through Google Ads (comparable to data maintained by other buying tools) to adjust Google Ads' bids on certain auctions to increase its likelihood of winning impressions that would otherwise be won by other buying tools or go unfilled. Google denies the allegations in Paragraph 164 in all other respects.

165. Google admits that Project Bernanke was intended to increase Google Ads advertisers' win rates in Google's ad exchange. Google denies the allegations in Paragraph 165 in all other respects.

166. Google admits that Project Bernanke was intended to increase Google Ads advertisers' win rates in Google's ad exchange. Google denies the allegations in Paragraph 166 in all other respects.

167. Google admits that it developed different versions of the Bernanke program and that the program was intended to increase the win rates in Google's ad exchange for advertisers who use Google Ads. Google admits that it launched another version of Bernanke, called Global Bernanke, in 2015. Google further admits that the original version of Bernanke varied the Google Ads revenue share with the aim of maintaining the same average revenue share for each publisher, and that Global Bernanke performed the same optimization but targeted an average revenue share across all publishers. Google denies the allegations in Paragraph 167 in all other respects.

168. Google admits that it developed different versions of the Bernanke program and that the program was intended to increase the win rates in Google's ad exchange for advertisers who use Google Ads. Google admits the existence of a program called "Bell." Google denies the allegations in Paragraph 168 in all other respects.

169. Google admits that, like other aspects of buying tools' (both Google's and rivals') determination of bids for particular impressions, the details of Project Bernanke's operations are not disclosed to publishers, although publishers do have transparency into the final bids submitted by Google Ads and other buying tools/demand-side platforms. Google denies the allegations in Paragraph 169 in all other respects.

170. Google denies the allegations in Paragraph 170.

171. Google admits that Project Bernanke was intended to increase Google Ads advertisers' win rates in Google's ad exchange. To the extent the allegations in the eighth sentence of Paragraph 171 characterize or describe internal Google documents, Google notes that such documents speak for themselves and denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 171 in all other respects.

172. Google understands the allegations in the third sentence of Paragraph 172 regarding User ID Encryption to have been dismissed as independently actionable conduct. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 172 in all respects.

173. Google admits that it uses a variety of programs to improve the auction performance of its various products and services for the benefit of advertisers and publishers; that those programs consequently increase Google's revenue; and that the figures alleged in Paragraph 173 reflect the approximate increase in Google's revenue from certain of those programs, though Google notes that such documents speak for themselves and denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 173 in all other respects.

174. Google admits that Google Ad Manager implemented a feature originally known as Enhanced Dynamic Allocation ("EDA"); that many publishers have historically sold many of their most valuable impressions directly to advertisers; and that EDA permits

non-guaranteed demand in Google Ad Manager (including both demand from Google's ad exchange and third-party exchanges) to compete simultaneously with guaranteed line items in Google Ad Manager when the revenue to be derived from the non-guaranteed option was higher than the opportunity cost of not serving the guaranteed line item (without risking the fulfillment of the guarantee). Google denies the allegations in Paragraph 174 in all other respects.

175. Google admits that when a directly-sold guaranteed line item is configured in its Google Ad Manager ad server, the Google Ad Manager ad server uses its best efforts to allocate impressions to that advertiser so as to meet the criteria specified by the publisher. Google further admits that, prior to the implementation of EDA, when such a guaranteed line item was eligible for an impression, the ad server did not consider alternative, non-guaranteed line items or bids, even if they might have had a higher price; and that when EDA applies to an impression, Google's ad server now considers whether selling a given impression on a non-guaranteed basis is likely to increase the publisher's overall revenue, even if a guaranteed line item would also be eligible to fill the impression, if it can do so without risking the fulfilment of the guarantee. Google denies the allegations in Paragraph 175 in all other respects.

176. Google denies the allegations in Paragraph 176.

177. Google denies the allegations in Paragraph 177.

178. Google admits that EDA causes a non-guaranteed line item to win an impression only when the highest eligible non-guaranteed line item is greater than the EDA reserve price and any other floor price. Google admits the existence of documents containing the quoted language, to which documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 178 in all other respects.

179. Google admits that Google Ad Manager implemented a feature originally known as Enhanced Dynamic Allocation; that many publishers have historically sold many of their most valuable impressions directly to advertisers; and that EDA permits non-guaranteed demand in Google Ad Manager (including both demand from Google's ad exchange and third-party exchanges) to compete simultaneously with guaranteed line items in Google Ad Manager when the revenue to be derived from the non-guaranteed option was higher than the opportunity cost of not serving the guaranteed line item (without risking the fulfillment of the guarantee). Google denies the allegations in Paragraph 179 in all other respects.

180. Google admits that when a directly-sold guaranteed line item is configured in its Google Ad Manager ad server, the Google Ad Manager ad server uses its best efforts to allocate impressions to that advertiser so as to meet the criteria specified by the publisher. Google further admits that, prior to the implementation of EDA, when such a guaranteed line item was eligible for an impression, the ad server did not consider alternative, non-guaranteed line items or bids, even if they might have had a higher price; and that when EDA applies to an impression, Google's ad server now considers whether selling a given impression on a non-guaranteed basis is likely to increase the publisher's overall revenue, even if a guaranteed line item would also be eligible to fill the impression, if it can do so without risking the fulfilment of the guarantee. Google denies the allegations in Paragraph 180 in all other respects.

181. Google denies the allegations in Paragraph 181.

182. Google denies the allegations in Paragraph 182.

183. Google admits that EDA causes a non-guaranteed line item to win an impression only when the highest eligible non-guaranteed line item is greater than the EDA reserve price and any other floor price. Google denies the allegations in Paragraph 183 in all other respects.

184. Google denies the allegations in Paragraph 184.

39

185. Google admits the existence of documents containing the quoted language in the second and fourth sentences of Paragraph 185, to which documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 185 in all other respects.

186. Google understands the allegations of Paragraph 186 regarding User ID Encryption to have been dismissed as independently actionable conduct. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 186.

187. Google understands the allegations in the first sentence of Paragraph 187 regarding User ID Encryption to have been dismissed as independently actionable conduct. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 187.

188. As to the first and second sentences of Paragraph 188, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and on that basis denies those allegations. Google admits the existence of a document containing the quoted language in the fourth sentence of Paragraph 188, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 188 in all other respects.

189. Google admits that publishers, including those using Google Ad Manager, can implement header bidding by inserting code into the HTML header of their webpages and that header bidding can enable bid requests to multiple exchanges and other demand sources. Google lacks knowledge or information sufficient to form a belief as to the truth of the fourth and fifth sentences of Paragraph 189 and on that basis denies those allegations. Google denies the allegations in Paragraph 189 in all other respects.

190. Google admits that header bidding was and remains popular, and that publishers route their inventory through multiple exchanges. As to the second sentence of Paragraph 190, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and on that basis denies those allegations. As to the third sentence of Paragraph 190, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and on that basis denies those allegations. Google denies the allegations in Paragraph 190 in all other respects.

191. Google admits that there has been an evolution of technologies seeking to maximize publishers' yield, including waterfalling, dynamic allocation, and enhanced dynamic allocation. As to the first, fourth, and fifth sentences of Paragraph 191, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and on that basis denies those allegations. To the extent the allegations in the third and sixth sentences of Paragraph 191 characterize or describe internal discussions, Google admits the existence of documents containing the quoted language, to which documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 191 in all other respects.

192. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 192 in all other respects.

193. Google admits that consumers benefit from goods and services that are lower priced and of higher quality. As to the first and second sentences of Paragraph 193, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and on that basis denies those allegations. Google denies the allegations in Paragraph 193 in all other respects.

194. Google denies the allegations in Paragraph 194.

195. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 195 in all other respects.

196. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 196 in all other respects.

197. Google admits it competes directly with Amazon and Facebook. Google denies the allegations in Paragraph 197 in all other respects.

198. Google denies the allegations in Paragraph 198.

199. Google understands the allegations in Paragraph 199 to concern Exchange Bidding, which has been dismissed as independently actionable conduct. *See* ECF No. 1336. To the extent Paragraph 199 nonetheless still requires an answer as relevant to Rumble's remaining claims, Google admits that Exchange Bidding was later renamed Open Bidding; that Exchange Bidding was codenamed Jedi; that it designed Exchange Bidding to solve many of the problems associated with header bidding; and that it evaluated the success of the program by, among other things, comparing its adoption by publishers to publishers' adoption of header bidding. Google denies the allegations in Paragraph 199 in all other respects.

200. Google understands the allegations in Paragraph 200 to concern Exchange Bidding, which has been dismissed as independently actionable conduct. *See* ECF No. 1336. To the extent Paragraph 200 nonetheless still requires an answer as relevant to Rumble's remaining claims, Google admits that, in an effort to better protect user privacy, Open Bidding provides exchanges with less direct access to user information than they can obtain through header bidding. Google denies the allegations in Paragraph 200 in all other respects.

201. Google understands the allegations in Paragraph 201 to concern Exchange Bidding, which has been dismissed as independently actionable conduct. *See* ECF No. 1336.

To the extent Paragraph 201 nonetheless still requires an answer as relevant to Rumble's remaining claims, Google admits that it retains a revenue share of 5-10% for transactions matched through Open Bidding as consideration for the value provided by Google's service. Google further admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 201 in all other respects.

202. Google understands the allegations in Paragraph 202 to concern Exchange Bidding, which has been dismissed as independently actionable conduct. *See* ECF No. 1336. To the extent Paragraph 202 nonetheless still requires an answer as relevant to Rumble's remaining claims, Google denies the allegations in Paragraph 202.

203. Google understands the allegations in Paragraph 203 to concern Exchange Bidding, which has been dismissed as independently actionable conduct. *See* ECF No. 1336. To the extent Paragraph 203 nonetheless still requires an answer as relevant to Rumble's remaining claims, Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 203 in all other respects.

204. Google understands the allegations in Paragraph 204 to concern Google's Network Bidding Agreement with Facebook, which has been dismissed as independently actionable conduct. *See* ECF No. 1336. To the extent a response is deemed necessary, Google admits that it competes with Facebook in digital advertising. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 204, and on that basis denies those allegations. Google denies the allegations in Paragraph 204 in all other respects.

205. Google understands the allegations in Paragraph 205 to concern Google's Network Bidding Agreement with Facebook, which has been dismissed as independently actionable

conduct. *See* ECF No. 1336. To the extent a response is deemed necessary, Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 205, and on that basis denies those allegations.

206. Google understands the allegations in Paragraph 206 to concern Google's Network Bidding Agreement with Facebook, which has been dismissed as independently actionable conduct. *See* ECF No. 1336. To the extent a response is deemed necessary, Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 206, and on that basis denies those allegations.

207. Google understands the allegations in Paragraph 207 to concern Google's Network Bidding Agreement with Facebook, which has been dismissed as independently actionable conduct. *See* ECF No. 1336. To the extent a response is deemed necessary, Google admits that in March 2017, Facebook published a blog post indicating that mobile web publishers who use header bidding would be able to join its Facebook Audience Network through approved partners or through open-source header bidding solutions. As to the second sentence of Paragraph 207, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and on that basis denies those allegations. As to the third and fourth sentences of Paragraph 207, Google admits the existence of articles containing the quoted language, to which articles Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 207 in all other respects.

208. Google understands the allegations in Paragraph 208 to concern Google's Network Bidding Agreement with Facebook, which has been dismissed as independently actionable conduct. *See* ECF No. 1336. To the extent a response is deemed necessary, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first, second, and third sentences of Paragraph 208, and on that basis denies those

allegations. Google admits the existence of documents containing the quoted language in the fourth sentence of Paragraph 208, to which documents Google refers the Court for a complete and accurate statement of their contents. Google also admits that certain of its employees were aware of Facebook's March 2017 blog post referenced in Paragraph 207 and that a Google employee referenced Facebook's March 2017 blog post or industry press in an email. Google denies the allegations in Paragraph 208 in all other respects.

209. Google understands the allegations in Paragraph 209 to concern Google's Network Bidding Agreement with Facebook, which has been dismissed as independently actionable conduct. *See* ECF No. 1336. To the extent a response is deemed necessary, Google admits the existence of documents containing the quoted language in the second and third sentences of Paragraph 209, to which documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 209 in all other respects.

210. Google understands the allegations in Paragraph 210 to concern Google's Network Bidding Agreement with Facebook, which has been dismissed as independently actionable conduct. *See* ECF No. 1336. To the extent a response is deemed necessary, Google admits that it entered into a Network Bidding Agreement with Facebook, to which Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 210 in all other respects.

211. Google understands the allegations in Paragraph 211 to concern Google's Network Bidding Agreement with Facebook, which has been dismissed as independently actionable conduct. *See* ECF No. 1336. To the extent a response is deemed necessary, Google admits that the internal codename for Google's Network Bidding Agreement with Facebook was "Jedi Blue." Google denies the allegations in Paragraph 211 in all other respects.

212. Google understands the allegations in Paragraph 212 to concern Google's Network Bidding Agreement with Facebook, which has been dismissed as independently actionable conduct. *See* ECF No. 1336. To the extent a response is deemed necessary, Google admits that it entered into a Network Bidding Agreement with Facebook, to which Google refers the Court for a complete and accurate statement of its contents. As to the second sentence of Paragraph 212, Google admits that it retains a revenue share of 5-10% for transactions matched through Open Bidding as consideration for the value provided by Google's service, and that the revenue share that AdX charges for auctions of inventory that are generally available to all the buyers on the exchange is roughly 20 percent, but varies based on a number of factors, including customer and transaction type. Google further admits that, prior to its amendment, the original Network Bidding Agreement contained a volume discount for which Facebook never qualified. As to the third sentence in Paragraph 212, Google admits that some bidders in its auctions have requested that timeouts in Google's auctions be lengthened, while others have requested that they be shortened. Google also admits that it ultimately opted to increase the timeout for certain auctions uniformly for all bidders. As to the fourth sentence in Paragraph 212, Google admits that Facebook has direct billing and contractual relationships with publishers transacting with the Facebook Audience Network through Google's Open Bidding program. Google also admits that it typically has commonplace confidentiality provisions in its contracts with and terms of service for ad networks and ad exchanges participating in its Open Bidding program. As to the fifth sentence of Paragraph 212, Google admits that it does not charge any buyer, including Facebook Audience Network, for impressions it believes to be resulting from spam. As to the seventh sentence of Paragraph 212, Google admits that the Network Bidding Agreement limits the use of Facebook bid response data and is consistent with Google's existing practice

regarding all bidders' data. Google denies the allegations in Paragraph 212 in all other respects.

213. Google understands the allegations in Paragraph 213 to concern Google's Network Bidding Agreement with Facebook, which has been dismissed as independently actionable conduct. *See* ECF No. 1336. To the extent a response is deemed necessary, Google admits that it entered into a Network Bidding Agreement with Facebook, to which Google refers the Court for a complete and accurate statement of its contents. Google further admits that, prior to its amendment, the original Network Bidding Agreement contained a volume discount for which Facebook never qualified. Google denies the allegations in Paragraph 213 in all other respects.

214. Google understands the allegations in Paragraph 214 to concern Google's Network Bidding Agreement with Facebook, which has been dismissed as independently actionable conduct. *See* ECF No. 1336. To the extent a response is deemed necessary, Google admits the existence of documents containing the quoted language in the second sentence of Paragraph 214, to which documents Google refers the Court for a complete and accurate statement of their contents. As to the third sentence of Paragraph 214, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations, and on that basis denies those allegations. Google denies the allegations in Paragraph 214 in all other respects.

215. Google understands the allegations in Paragraph 215 to concern Google's Network Bidding Agreement with Facebook, which has been dismissed as independently actionable conduct. *See* ECF No. 1336. To the extent a response is deemed necessary, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 215, and on that basis denies those allegations.

216. Google understands the allegations in Paragraph 216 to concern Google's Network Bidding Agreement with Facebook, which has been dismissed as independently actionable conduct. *See* ECF No. 1336. To the extent a response is deemed necessary, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 216 and on that basis denies those allegations. Google denies the allegations in Paragraph 216 in all other respects.

217. Google understands the allegations in Paragraph 217 to concern Google's Network Bidding Agreement with Facebook, which has been dismissed as independently actionable conduct. *See* ECF No. 1336. To the extent a response is deemed necessary, as to the first sentence of Paragraph 217, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and on that basis denies those allegations. As to the second sentence of Paragraph 217, Google admits the existence of the quoted language in an AdAge report, to which report Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 217 in all other respects.

218. Google understands the allegations in Paragraph 218 to concern Google's Network Bidding Agreement with Facebook, which has been dismissed as independently actionable conduct. *See* ECF No. 1336. To the extent a response is deemed necessary, Google admits that the Network Bidding Agreement contains a provision governing cooperation between Google and Facebook in the event of certain government investigations of the agreement and that the Network Bidding Agreement contains a provision governing the parties' options to terminate the agreement in the event of certain government investigations or lawsuits. Google also refers the Court to the Network Bidding Agreement itself for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 218 in all other respects.

219. Google understands the allegations in Paragraph 219 to concern Google's Network Bidding Agreement with Facebook, which has been dismissed as independently actionable

conduct. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 219.

220. As to the fourth sentence of Paragraph 220, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding what unnamed Google employees told an unnamed publisher, and on that basis denies those allegations. Google denies the allegations in Paragraph 220 in all other respects.

221. Google admits the existence of a document containing the quoted language in the first sentence of Paragraph 221, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 221 in all other respects.

222. As to the fifth sentence in Paragraph 222, Google admits that some non-Google parties have used "Last Look" to refer to the way some publisher configurations call AdX after calling header bidding. Google denies the allegations in Paragraph 222 in all other respects.

223. To the extent the allegations in the third and fourth sentence of Paragraph 223 characterize or describe internal Google documents, Google notes that such documents speak for themselves and denies any characterization or description that is inconsistent therewith. As to the fifth sentence of Paragraph 223, Google admits that prior to Google's transition to a Unified First Price Auction for Google Ad Manager, publishers could set price floors that applied only to specific exchanges or buyers. Google denies the allegations in Paragraph 223 in all other respects.

224. As to the third sentence of Paragraph 224, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and on that basis denies those allegations. Google denies the allegations in Paragraph 224 in all other respects.

225. Google admits that Google's advertiser-facing tools, like competitive buying tools, use historical data to attempt to model the optimal bids for impressions to improve win rates for advertisers. Google denies the allegations in Paragraph 225 in all other respects.

226. Google denies the allegations in Paragraph 226.

227. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second and third sentences of Paragraph 227 and on that basis denies those allegations. Google denies the allegations in Paragraph 227 in all other respects.

228. Google denies the allegations in Paragraph 228.

229. Google admits that since well before header bidding became popular, DoubleClick for Publishers (and now Google Ad Manager) has limited the total number of line items that a publisher can create to ensure the efficient operation of the ad server; that it has received requests from time to time from publishers to increase the number of permitted line items to enable them to better implement their preferred header bidding scheme, and has at times granted waivers. Google admits the existence of a document containing the quoted language in the third and fifth sentence of Paragraph 229, to which documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 229 in all other respects.

230. As to the second sentence of Paragraph 230, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and on that basis denies those allegations. Google denies the allegations in Paragraph 230 in all other respects.

231. Google understands allegations in Paragraph 231 to concern Rumble's "Nontransparent Pricing" claim that has been dismissed. *See* ECF No. 1336. To the extent a

response is still necessary, Google admits the existence of a document containing portions of the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 231 in all other respects.

232. Google understands allegations in Paragraph 232 to concern Rumble's "Nontransparent Pricing" claim that has been dismissed. *See* ECF No. 1336. To the extent a response is still necessary, Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 232 in all other respects.

233. Google understands allegations in Paragraph 233 to concern Rumble's "Nontransparent Pricing" claim that has been dismissed. *See* ECF No. 1336. To the extent a response is still necessary, as to the second, third, and fourth sentences of Paragraph 233, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and on that basis denies those allegations. Google denies the allegations in Paragraph 233 in all other respects.

234. Google understands allegations in Paragraph 234 to concern Rumble's "Nontransparent Pricing" claim that has been dismissed. *See* ECF No. 1336. To the extent a response is still necessary, Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 234 in all other respects.

235. Google understands allegations in Paragraph 235 to concern Rumble's "Nontransparent Pricing" claim that has been dismissed. *See* ECF No. 1336. To the extent a response is still necessary, Google denies the allegations in Paragraph 235.

236. Google understands allegations in Paragraph 236 to concern Rumble's "Nontransparent Pricing" claim that has been dismissed. *See* ECF No. 1336. To the extent a response is still necessary, Google denies the allegations in Paragraph 236.

237. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first and fourth sentences of Paragraph 237 and, on that basis, denies those allegations. Google denies the allegations of Paragraph 237 in all other respects.

238. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 238, and on that basis denies those allegations. Google denies the allegations in Paragraph 238 in all other respects.

239. Google admits that, as a result of a simplification of Google Ad Manager's pricing rules functionality released in 2019, publishers were able to configure different floor prices for various advertisers, brands, ad formats, or ad slots, but that any such rules apply uniformly to all demand sources participating in Ad Manager's unified auction, including ad exchanges, networks, DSPs, or other buying tools. Google further admits that, as a result of the unified pricing rules, publishers could no longer set different floors for different buyers in Google Ad Manager's unified auction, including exchanges participating via Open Bidding, when bidding on the same inventory on behalf of the same advertiser; that a publisher can no longer use Google Ad Manager to set different price floors for two bidders in the same auction if they are bidding on behalf of the same advertiser and that it refers to the 2019 revision of Google Ad Manager's pricing rules system as Unified Pricing Rules. Google denies the allegations in Paragraph 239 in all other respects.

240. Google admits that, as a result of a simplification of Google Ad Manager's pricing rules functionality released in 2019, publishers were able to configure different floor prices for various advertisers, brands, ad formats, or ad slots, but that any such rules apply uniformly to all demand sources participating in Ad Manager's unified auction, including ad exchanges, networks, DSPs, or other buying tools. Google further admits that, as a result of the unified pricing rules, publishers could no longer set different floors for different buyers in Google Ad Manager's unified auction, including exchanges participating via Open Bidding,

when bidding on the same inventory on behalf of the same advertiser; that a publisher can no longer use Google Ad Manager to set different price floors for two bidders in the same auction if they are bidding on behalf of the same advertiser and that it refers to the 2019 revision of Google Ad Manager's pricing rules system as Unified Pricing Rules. As to the third and fourth sentences of Paragraph 240, Google admits that it hashes or encrypts the identifiers it shares with third parties in connection with publishers' impressions to ensure user privacy. Google denies the allegations in Paragraph 240 in all other respects.

241. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first, second, and third sentences of Paragraph 241, and on that basis denies those allegations. Google denies the allegations in Paragraph 241 in all other respects.

242. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second, third, and fourth sentences of Paragraph 242 and on that basis denies those allegations. Google denies the allegations in Paragraph 242.

243. Google denies the allegations in Paragraph 243.

244. Google denies the allegations in Paragraph 244.

245. Google denies the allegations in Paragraph 245.

246. Google admits the existence of a document containing substantially the quoted language in the second sentence of Paragraph 246, to which document Google refers the Court for a complete and accurate statement of its contents. The third and fifth sentences of Paragraph 246 purport to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because those allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 246 in all other respects.

247. Google understands the allegations in Paragraph 247 to have been dismissed as they concern the ad-buying tools markets. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 247.

248. Google understands the allegations in Paragraph 248 to have been dismissed as they concern the ad-buying tools markets. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 248.

249. Google understands the allegations in Paragraph 249 to have been dismissed as they concern the ad-buying tools markets. *See* ECF No. 1336. To the extent a response is deemed necessary, Google admits that, before its introduction of Unified Pricing Rules, publishers could set different price floors for different buyers. Google denies the allegations in Paragraph 249 in all other respects.

250. Google understands the allegations in Paragraph 250 to have been dismissed as they concern the ad-buying tools markets. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 250.

251. Google understands the allegations in Paragraph 251 to have been dismissed as they concern the ad-buying tools markets, including the alleged tying of YouTube to Google ad-buying tools. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 251.

252. Google understands the allegations in Paragraph 252 to have been dismissed as they concern the ad-buying tools markets, including the alleged tying of YouTube to Google ad-buying tools. *See* ECF No. 1336. To the extent a response is deemed necessary, Google admits that prior to 2016, a small percentage of the sales of certain types of YouTube advertising space occurred on Google's ad exchange, such that third-party demand side platforms or advertising networks were able to bid to buy those types of YouTube advertising space at that time. Google denies the allegations in Paragraph 252 in all other respects.

253. Google understands the allegations in Paragraph 253 to have been dismissed as they concern the ad-buying tools market and the alleged tying of YouTube to Google ad-buying Tools. *See* ECF No. 1336. To the extent a response is deemed necessary, Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 253 in all other respects.

254. Google understands the allegations in Paragraph 254 to have been dismissed as they concern the ad-buying tools markets and the alleged tying of YouTube to Google ad-buying tools. *See* ECF No. 1336. To the extent a response is deemed necessary, Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 254 in all other respects.

255. Google understands the allegations in Paragraph 255 to have been dismissed as they concern the ad-buying tools markets and the alleged tying of YouTube to Google ad-buying tools. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 255.

256. Google understands the allegations in Paragraph 256 to have been dismissed as they concern the ad-buying tools markets and the alleged tying of YouTube to Google ad-buying tools. *See* ECF No. 1336. To the extent a response is deemed necessary, Google admits that the risk of self-competition (instances in which an advertiser bids against itself) increases when the same advertiser bids on the same inventory through multiple channels, and that such self-competition is generally inefficient, but otherwise denies the allegation. Google denies the allegations in Paragraph 256 in all other respects.

257. Google understands the allegations in Paragraph 257 to have been dismissed as they concern the ad-buying tools markets and the alleged tying of YouTube to Google

ad-buying tools. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 257.

258. Google denies the allegations in Paragraph 258.

259. Google denies the allegations in Paragraph 259.

260. Google denies the allegations in Paragraph 260.

261. Google denies the allegations in Paragraph 261.

262. Google denies the allegations in Paragraph 262.

263. Google denies the allegations in Paragraph 263.

264. Google admits that publisher ad servers can help publishers manage their online display advertising inventory. Google denies the allegations in Paragraph 264 in all other respects.

265. Google admits that some publishers use revenue generated from selling ad space to, among other things, support content development. Google denies the allegations in Paragraph 265 in all other respects.

266. Google denies the allegations in Paragraph 266.

267. As to the first, second, and fourth sentences of Paragraph 267, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations, and on that basis denies those allegations. Google denies the allegations in Paragraph 267 in all other respects.

268. Google denies the allegations in Paragraph 268.

269. Google understands the allegations in Paragraph 269 to have been dismissed as they concern the Ad Network market. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 269.

270. Google understands the allegations in Paragraph 270 to have been dismissed as they concern the Ad Network market. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 270.

271. Google understands the allegations in Paragraph 271 to have been dismissed as they concern the Ad Network market. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 271.

272. Google understands the allegations in Paragraph 272 to have been dismissed as they concern the ad-buying tools markets and the alleged tying of YouTube to Google's ad-buying tools. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 272.

273. Google understands the allegations in Paragraph 273 to have been dismissed as they concern the ad-buying tools markets. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 273.

274. Google understands the allegations in Paragraph 274 to have been dismissed as they concern the ad-buying tools markets. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 274.

275. Google understands the allegations in Paragraph 275 to have been dismissed as they concern the ad-buying tools markets. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 275.

276. Google understands the allegations in Paragraph 276 to have been dismissed as they concern the ad-buying tools markets. *See* ECF No. 1336. To the extent a response is deemed necessary, Google admits that advertising can promote competition in some sectors. Google denies the allegations in Paragraph 276 in all other respects.

277. Google denies the allegations in Paragraph 277.

278. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 278 and on that basis denies those allegations. Google denies the allegations in Paragraph 278 in all other respects.

279. Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence of Paragraph 279 and on that basis denies those allegations. Google denies the allegations in Paragraph 279 in all other respects.

280. Google restates its response to every allegation set forth above as if stated herein.

281. Paragraph 281 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 281.

282. Paragraph 282 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 282.

283. Paragraph 283 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 283.

284. Paragraph 284 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 284.

285. Google admits the existence of a document containing the language quoted in the third sentence of Paragraph 285, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 285 in all other respects.

286. Paragraph 286 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 286.

287. Google restates its response to every allegation set forth above as if stated herein.

288. Paragraph 288 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 288.

289. Paragraph 289 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 289.

290. Google restates its response to every allegation set forth above as if stated herein.

291. As to the first sentence of Paragraph 291, Google admits that the DOJ filed the referenced civil suit, the complaint for which speaks for itself, and denies any characterization inconsistent therewith. As to the second sentence of Paragraph 291, Google admits that the referenced order was issued on April 17, 2025, which speaks for itself, and denies any characterization inconsistent therewith. As to the third sentence of Paragraph 291, Google admits that the referenced civil proceeding remains ongoing. Google denies the allegations in Paragraph 291 in all other respects.

292. Google admits that certain conduct pled in the Complaint is substantially similar to conduct complained of in the DOJ Ad Tech Case, including that both complaints include claims against Google for monopolization of an ad exchange market, and that both complaints assert claims against Google for unlawful tying in violation of Sections 1 and 2 of the Sherman Act. Google refers the Court to the underlying complaints themselves for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 292 in all other respects.

293. Paragraph 293 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 293.

294. Google restates its response to every allegation set forth above as if stated herein.

295. Paragraph 295 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 295.

296. Paragraph 296 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 296.

297. Paragraph 297 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 297.

298. Google understands the allegations in Paragraph 298 to have been dismissed as they concern the Instream Online Video Advertising market and the ad-buying tools markets. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 298.

299. Paragraph 299 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 299.

300. Paragraph 300 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 300.

301. Google restates its response to every allegation set forth above as if stated herein.

302. Paragraph 302 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 302.

303. Paragraph 303 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 303.

304. Paragraph 304 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 304.

305. Google understands the allegations in Paragraph 305 to have been dismissed as they concern the ad-buying tools markets. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 305.

306. Google understands the allegations in Paragraph 306 to have been dismissed as they concern the Instream Online Video Advertising market and the ad-buying tools markets. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 306.

307. Paragraph 307 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 307.

308. Paragraph 308 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 308.

309. Google restates its response to every allegation set forth above as if stated herein.

310. Paragraph 310 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 310.

311. Paragraph 311 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 311.

312. Paragraph 312 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 312.

313. Paragraph 313 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 313.

314. Paragraph 314 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 314.

315. Google understands the allegations in Paragraph 315 to have been dismissed as they concern the alleged tying of YouTube to Google's ad-buying tools. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 315.

316. Google understands the allegations in Paragraph 316 to have been dismissed as they concern the ad-buying tools markets and the alleged tying of YouTube to Google ad-buying tools. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 316.

317. Google understands the allegations in Paragraph 317 to have been dismissed as they concern the alleged tying of YouTube to Google ad-buying tools. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 317.

318. Google understands the allegations in Paragraph 318 to have been dismissed as they concern the ad-buying tools markets and the alleged tying of YouTube to Google ad-buying tools. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 318.

319. Google understands the allegations in Paragraph 319 to have been dismissed as they concern the alleged tying of Google Ads to GDN and AdX. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 319.

320. Google understands the allegations in Paragraph 320 to have been dismissed as they concern the Ad-Buying Tools and Ad Network markets and the alleged tying of Google Ads to GDN and AdX. ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 320.

321. Google understands the allegations in Paragraph 321 to have been dismissed as they concern the Ad-Buying Tools and Ad Network markets and the alleged tying of Google Ads to GDN and AdX. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 321.

322. Google understands the allegations in Paragraph 322 to have been dismissed as they concern the Ad-Buying Tools and Ad Network markets and the alleged tying of Google Ads to GDN and AdX. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 322.

323. Google understands the allegations in Paragraph 323 to have been dismissed as they concern the Ad-Buying Tools and Ad Network markets and the alleged tying of Google

Ads to GDN and AdX. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 323.

324. Google restates its response to every allegation set forth above as if stated herein.

325. Paragraph 325 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 325.

326. Paragraph 326 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 326.

327. Paragraph 327 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 327.

328. Google restates its response to every allegation set forth above as if stated herein.

329. Google understands the allegations in the first sentence of Paragraph 329 to have been dismissed as they concern the Ad Network market. *See* ECF No. 1336. To the extent the sentence contains other allegations, Google admits that Rumble has contracted with Google for certain ad tech services, including in April 2014. The second sentence of Paragraph 329 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in the second sentence of Paragraph 329. Google denies the allegations in Paragraph 329 in all other respects.

330. Paragraph 330 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* ECF No. 1336. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 330.

331. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 331 and on that basis denies those allegations. Google denies the allegations in Paragraph 331 in all other respects.

332. Paragraph 332 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 332.

333. To the extent the allegations in Paragraph 333 characterize or describe another legal proceeding, Google notes that the filings in that proceeding speak for themselves and denies any characterization or description that is inconsistent therewith.

334. To the extent the allegations in Paragraph 334 characterize or describe another legal proceeding, Google notes that the filings in that proceeding speak for themselves and denies any characterization or description that is inconsistent therewith.

Prayer for Relief (Unnumbered). The Prayer for Relief sets forth the relief sought by Plaintiff, to which no response is required. To the extent a response is deemed necessary, Google denies that Plaintiff is entitled to any of the remedies or relief sought in the Complaint.

Demand for Jury (Unnumbered). No response is required to Plaintiff's Jury Demand.

## ADDITIONAL DEFENSES

Without assuming any burden that it would not otherwise bear, Google asserts the following defenses to the Complaint. By designating these defenses, Google does not intend to suggest either that Plaintiff does not bear the burden of proof as to such matters or that such matters are not elements of Plaintiff's prima facie case against Google—or that Google bears the burden of proof as to such matters. Further, Google reserves all affirmative defenses under Federal Rule of Civil Procedure 8(c) and any additional defenses, at law or in equity, that may now exist or in the future be available based on discovery and further factual investigation in this case.

### First Defense

Plaintiff's claims are barred, in whole or in part, because the Complaint fails to state a claim upon which relief can be granted.

### Second Defense

The relief sought by Plaintiff would be contrary to the public interest, harm consumers and businesses, and is otherwise inequitable, impractical, and unworkable.

### Third Defense

Plaintiff's claims are barred, in whole or in part, because the Complaint fails to allege any legally cognizable relevant product or geographic market.

### Fourth Defense

Google has never had, and is unlikely to obtain, monopoly power in any properly defined relevant market for advertising services.

### Fifth Defense

Google's conduct alleged by Plaintiff in the Complaint was lawful, justified, procompetitive, and carried out in Google's legitimate business interests and constitutes bona

fide competitive activity, the benefits of which significantly outweigh any alleged anticompetitive effects.

## Sixth Defense

The Plaintiff's claims are barred, in whole or in part, for failure to allege any plausible harm to competition or consumers.

## Seventh Defense

The Plaintiff's claims are barred, in whole or in part, because the Complaint fails to allege a cognizable antitrust injury.

## Eighth Defense

Plaintiff is not entitled to injunctive relief on conduct that occurred solely in the past.

## Ninth Defense

Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations and/or by the doctrine of laches.

## Tenth Defense

Plaintiff's alleged damages were not legally caused by Google.

## Eleventh Defense

Plaintiff has failed to mitigate any alleged damages.

## Twelfth Defense

Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

## Thirteenth Defense

Plaintiff's claims are barred, in whole or in part, because they were relinquished by Plaintiff through contract with Google.

## Fourteenth Defense

Plaintiff's claims are barred because Plaintiff did not suffer any legally cognizable injury or damages as a result of Google's conduct.

**Fifteenth Defense**

Plaintiff's claims are barred, in whole or in part, because they are subsumed within the parens patriae claims asserted in the case captioned *The State of Texas, et al. v. Google, LLC* that is pending in the U.S. District Court for the Eastern District of Texas under docket number 4:20-cv-00957-SDJ.

**Sixteenth Defense**

To the extent Plaintiff seeks relief on behalf of parties other than natural persons who are direct purchasers, Plaintiff's claims are barred in whole or in part because Plaintiff lacks standing to do so.

Google reserves the right to supplement its Answer and affirmative and additional defenses with other defenses that become available or apparent in the course of investigation, preparation, and/or discovery, and to amend its Answer accordingly.

**PRAYER FOR RELIEF**

WHEREFORE, Google prays for relief as follows:

(a) That the Complaint against Google be dismissed in its entirety, with prejudice;

(b) That Google be awarded its attorneys' fees and costs and expenses of the suit; and

(c) That the Court award such other and further relief to Google as the Court deems just and proper.

67

Dated: March 3, 2026

Respectfully Submitted,

*/s/ Justina K. Sessions*
Justina K. Sessions
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250
Fax: (650) 461-8276
Email: justina.sessions@freshfields.com

Eric Mahr
Andrew J. Ewalt
FRESHFIELDS US LLP
700 13th Street NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Fax: (202) 777-4555
　　　eric.mahr@freshfields.com
　　　andrew.ewalt@freshfields.com

Craig M. Reiser
AXINN, VELTROP & HARKRIDER LLP
630 Fifth Avenue, 33rd Floor
New York, New York 10111
Telephone: (212) 728-2200
Email: creiser@axinn.com

*Counsel for Defendants Google LLC and Alphabet Inc.*