# Dunn Isaacson Rhee

March 16, 2026

Via ECF

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

> **Re:** ***In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC); *OpenX Technologies, Inc. v. Google LLC*, No. 1:25-cv-10817 (PKC); *Magnite, Inc. v. Google LLC*, No. 1:25-cv-10818 (PKC); *PubMatic, Inc. v. Google LLC*, No. 1:25-cv-10819 (PKC); *Equativ SAS v. Google LLC*, No. 1:26-cv-00140 (PKC); *Index Exchange Inc. v. Google LLC*, No. 1:25-cv-10477 (PKC); *Kargo Global LLC v. Google LLC*, No. 1:25-cv-10630 (PKC); *Sovrn Holdings, Inc. v. Google LLC*, No. 1:26-cv-01587 (PKC).**

Dear Judge Castel:

Defendant Google LLC ("Google") respectfully submits this pre-motion letter requesting permission to move to dismiss certain claims in the two separate consolidated complaints ("Complaints") filed by ad tech competitors OpenX, Magnite, PubMatic, Equativ, Index Exchange, Kargo (on behalf of itself and TripleLift), and Sovrn ("Competitor Plaintiffs").[1] No conference is currently scheduled in the Competitor Actions.

Each Competitor Plaintiff is a sophisticated ad tech company that, based on their own allegations, has competed in ad tech for over a decade. Competitor Plaintiffs build and operate ad tech that connects advertisers and publishers and conducts auctions. They have rich transaction data and dedicated engineering and data teams that enable them to identify, observe, and analyze patterns in display ad transactions. *Infra* (detailing allegations). As the Complaints make clear, Competitor Plaintiffs had the capability to, and in fact did, identify, observe, and document the challenged Google conduct and its effects for years prior to any of them filing suit.

---

[1] No. 1:21-md-03010 (S.D.N.Y.), ECF No. 1543 ("Index Exchange Compl."); No. 1:21-md-03010 (S.D.N.Y.), ECF No. 1492 ("OpenX Compl.").

**Dunn Isaacson Rhee LLP**
www.dirllp.com
401 9th Street, NW
Washington, DC 20004
(202) 240-2900



Google therefore seeks to move to dismiss the subset of Competitor Plaintiffs' claims that are time-barred because they are based on conduct that predates January 24, 2019—4 years prior to the DOJ filing suit.  Google also seeks to move to dismiss certain claims in both Complaints for failure to state a claim.

## I.    Competitor Plaintiffs' Claims that Relate to Conduct that Predates the Statute of Limitations Window Should Be Dismissed.

Google requests permission to move to dismiss certain of Competitor Plaintiffs' claims as barred by the four-year statute of limitations.  Specifically, Google requests permission to move to dismiss as time-barred Plaintiffs' claims that relate to (1) the alleged tie of AdWords demand to AdX; (2) the alleged tie of AdX real-time bids to DFP; (3) Exchange Bidding[2]; (4) Project Poirot; (5) First Look; (6) Last Look; and (7) DFP's use of a waterfall and Google's alleged refusal to share certain data or information about DFP's logic.[3]  Google previews below why Competitor Plaintiffs' actions are differently situated than earlier-filed MDL actions in which the Court has ruled on statute of limitations arguments at the motion-to-dismiss stage.

"A court may dismiss a claim as untimely at the Rule 12(b)(6) stage 'when the complaint shows on its face that the limitations period has run.'" *In re Google Digital Advert. Antitrust Litig.*, 721 F. Supp. 3d 230, 271 (S.D.N.Y. 2024) (quoting *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 101 (2d Cir. 2019)).  The statute of limitations for federal antitrust claims bars any action unless brought "within four years after the cause of action accrued." *Higgins v. N.Y. Stock Exch., Inc.*, 942 F.2d 829, 831 (2d Cir. 1991) (quoting 15 U.S.C. § 15b).[4]  "Generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business"; in other words, an antitrust cause of action "ordinarily accrues <u>as soon as there is an injury to competition</u>." *Id.* at 832 (first quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971)).  Under the Second Circuit's "continuing violations" doctrine, that statute of limitations period is restarted only by "a <u>new and independent act</u> that is not merely a reaffirmation of a previous act" and inflicts "new and accumulating injury on the plaintiff." *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 68 (2d Cir. 2019).

---

[2] Alleged by PubMatic and Equativ in the OpenX Complaint and in the Index Exchange Complaint only.

[3] Alleged in the Index Exchange Complaint only.

[4] PubMatic's California Unfair Competition Law ("UCL") claim, OpenX Compl. ¶¶ 480-488, is similarly subject to a four-year statute of limitations, Cal. Bus. & Prof. Code § 17208, and should be dismissed to the extent it is based on time-barred conduct.

**Dunn Isaacson Rhee LLP**
www.dirllp.com
401 9th Street, NW
Washington, DC 20004
(202) 240-2900



Competitor Plaintiffs allege that their claims are based on matters the DOJ alleged in its complaint filed January 24, 2023.  They allege that, as a result, the statute of limitations has been suspended, pursuant to 15 U.S.C. § 16(i), since January 24, 2023, so that claims that accrued on or after January 24, 2019 are timely.  Regardless of whether government action tolling applies, it is clear from the face of both Complaints that many of Plaintiffs' claims have already expired because they accrued before January 24, 2019.

The Competitor Complaints also acknowledge that, under the four-year statute of limitations, certain of their claims would be time-barred unless a tolling doctrine applies.  OpenX Compl. ¶¶ 178-179; Index Exchange Compl. ¶¶ 247-249, 260.  Plaintiffs' arguments for tolling of their time-barred claims are unavailing.

Competitor Plaintiffs are, by their own admissions, sophisticated ad tech companies who have all spent more than a decade building and operating complex technical tools and competing fiercely with each other and with Google.  *See In re Google Digital Advert. Antitrust Litig.*, 627 F. Supp. 3d 346, 394-95 (S.D.N.Y. 2022) (a "non-Google exchange" "presumably would be sophisticated in the nature and operation of an ad exchange").

- OpenX asserts that it "has been at the forefront of innovation transforming the ad tech industry for decades," including launching a publisher ad server and an ad exchange by early 2009.  OpenX Compl. ¶¶ 227, 234, 236.

- Magnite "was one of the earliest entrants in" the "emerging ad exchange ecosystem," eventually growing to process "billions of daily transactions" and investing "heavily in auction design, yield optimization, and data analytics."  *Id.* ¶¶ 252, 257, 275.  Magnite launched an ad exchange with real-time bidding by 2010.  *Id.* ¶¶ 252-253.

- PubMatic "was at the forefront of the digital advertising revolution," entered the ad tech market in 2006, allegedly invented real-time bidding, and launched a "modern ad exchange" by 2009.  *Id.* ¶¶ 296-297, 306, 309.

- Equativ is a "pioneer in the ad tech space" that "first launched its publisher ad server" "nearly 20 years ago."  *Id.* ¶ 362.

- Index Exchange "has been providing services related to internet advertising since its founding in 2003," including investing "heavily in technology and infrastructure" to expand its "data centers, engineering teams, analytics function, and proprietary algorithms."  Index Exchange Compl. ¶¶ 9, 101.  It launched its ad exchange in 2011.  *Id.* ¶¶ 99, 273.

**Dunn Isaacson Rhee LLP**
www.dirllp.com
401 9th Street, NW
Washington, DC 20004
(202) 240-2900



- Kargo "has existed since the beginning of Internet advertising," and entered the ad tech space in 2008 to build on its "long-standing relationships with premium publishers." *Id.* ¶¶ 10, 106. Kargo launched its ad exchange in January 2016. *Id.* ¶¶ 112, 274.

- TripleLift, which launched an ad exchange in 2014 with "advanced technology," has also "invested heavily in technology and infrastructure" that handle trillions of ad transactions and make TripleLift a "leader in programmatic display advertising." *Id.* ¶¶ 11, 142, 276.

- Sovrn launched in 2014 through a merger and immediately touted "the largest and most diverse programmatic supply-side platforms in the world, with almost 3 billion ad requests/day and 180 million U.S. monthly uniques," and was one of the "few exchanges that was using data superiority to facilitate placement of more effective ads." *Id.* ¶¶ 120, 132, 275.

Some of Competitor Plaintiffs' significant technological investments have been directed specifically at the challenged Google conduct. For over a decade, Competitor Plaintiffs have been collaborating with each other to develop header bidding tools that are designed to "mitigate some of the effects of Google's anticompetitive restrictions"—*i.e.*, the very Google conduct on which Competitor Plaintiffs base their antitrust claims. OpenX Compl. ¶¶ 65, 240; Index Exchange Compl. ¶¶ 147 ("Index Exchange, Kargo, Sovrn, and TripleLift joined with other non-Google market participants to lead the development" of header bidding, which was "mitigating the effects of Google's self-preferencing of AdX"), 153-158. In addition, Competitor Plaintiffs acknowledge that they have invested in "significant, and expensive, data analysis efforts" dedicated to analyzing Google's tools, including performing experiments and hiring dedicated consultants to investigate Google's tools and features and their effects on competition. Index Exchange Compl. ¶¶ 62-64; OpenX Compl. ¶¶ 202-204.

Yet Competitor Plaintiffs ask this Court to excuse their own decisions to delay—for some claims, a delay of almost two decades—bringing suit against Google until 6 years after the DOJ launched its investigation into Google (of which they were aware and in which they participated); almost 6 years after the first private plaintiff filed suit; almost 5 years after the Texas Attorney General filed suit; over 2.5 years after the DOJ filed suit; 1 year after the liability bench trial in the DOJ action; and 3 to 10 months after the liability decision was issued in the DOJ action. No tolling doctrines excuse this delay.

(1) The alleged tie of AdWords demand to AdX. Both complaints challenge a purported "tie" between AdWords demand and AdX that has existed since 2009, when Google rebuilt AdX with real-time bidding. OpenX Compl. ¶¶ 56, 418; Index Exchange Compl. ¶¶ 50, 54. Competitor Plaintiffs' claims relating to this tie therefore accrued well before 2019, as they allege that they



were competing in the relevant markets and suffered injury to competition years before 2019. *Supra*.   Competitor Plaintiffs are not like Rumble, who the Court found sufficiently alleged timeliness based on Rumble's particular allegations, including that it "launched its RAC ad server in 2022, which falls within the limitations period." *In re Google Digital Advert. Antitrust Litig.*, 2026 WL 91448, at *9 (S.D.N.Y. Jan. 13, 2026).

Nor do Plaintiffs' allegations relating to the "tie" describe continuing violations that would restart the statutory period.   Plaintiffs' allegations describe "a repeated manifestation of the same overt act," "not new and independent acts."  *In re Google Digital Advert. Antitrust Litig.*, 721 F. Supp. 3d at 272-73; *see also Eichman v. Fotomat Corp.*, 880 F.2d 149, 160 (9th Cir. 1989) (tying arrangement did not constitute continuing violation as "passive receipt of profits from an illegal contract" was not an overt act restarting the period).

(2) The alleged tie of AdX real-time bids to DFP.   Both complaints allege that the challenged tie between AdX and DFP began in 2008, after Google acquired DFP.  OpenX Compl. ¶¶ 183, 420; Index Exchange Compl. ¶¶ 50, 54, 263.   Again, Plaintiffs' claims relating to this tie accrued before 2019, as they allege that they have been competing in relevant markets since before 2019.  *Supra*.

Competitor Plaintiffs' allegations that Google entered into publisher contracts (to which Competitor Plaintiffs were not a party) subject to the same restriction after 2008, *see* OpenX Compl. ¶ 185; Index Exchange Compl. ¶ 58, do not constitute allegations of "new and independent" acts; rather, they describe a "repeated manifestation of the same overt act," *In re Google Digital Advert. Antitrust Litig.*, 721 F. Supp. 3d at 272-73—namely, Google's refusal to share AdX real-time bids with DFP's competitors.  *Eichman*, 880 F.2d at 160; *O.E.M. Glass Network, Inc. v. Mygrant Glass Co., Inc.*, 436 F. Supp. 3d 576, 589 (E.D.N.Y. 2020) ("if an initial refusal to deal with a party is final, the statute of limitations begins to run and does not restart when the plaintiff makes subsequent unsuccessful efforts to deal with the defendant").  This Court previously analyzed the timeliness of claims relating to line-item caps in the same way:  it did not find that the statute of limitations period was restarted each time Google had a new DFP publisher contract subject to the line-item cap.  *In re Google Digital Advert. Antitrust Litig.*, 721 F. Supp. 3d at 272-73.

(3) Exchange Bidding / Open Bidding.   Both Complaints allege that Google publicly launched Exchange Bidding (also known as Open Bidding)—which the EDVA Court did not find was anticompetitive, *see United States v. Google LLC* ("EDVA Op."), 778 F. Supp. 3d 797, 864-65 (E.D. Va. 2025)—in 2018.  OpenX Compl. ¶ 121; Index Exchange Compl. ¶ 184.  Plaintiffs do not allege new and overt acts after the launch or their ignorance of the harms Exchange Bidding allegedly caused when it was launched.   The alleged harms were publicly knowable, such as

**Dunn Isaacson Rhee LLP**
www.dirllp.com
401 9th Street, NW
Washington, DC 20004
(202) 240-2900



requiring rival exchanges to share bid data, charging an additional fee on transactions by rival exchanges, transacting directly with publishers on behalf of rival exchanges, or sharing less data about header bidding data with publishers, OpenX Compl. ¶¶ 122-130; Index Exchange Compl. ¶¶ 187-189.

(4) Project Poirot.  Both Complaints allege that Project Poirot[5] began in <u>2017</u>.  OpenX Compl. ¶ 94; Index Exchange Compl. ¶ 175.  Plaintiffs allege that, throughout 2017 and 2018, they not only observed the injuries Poirot allegedly caused them in real time, but asked Google about those injuries and implemented technological solutions to investigate them.  OpenX Compl. ¶¶ 199-200 ("in late 2018," OpenX observed a "40% decrease in year-over-year spend from DV360," "sent an email to Google showing the massive decline in DV360 spend on the OpenX Ad Exchange," and "ran experiments" to investigate the decrease), 202 (Magnite reviewed "its internal data on bidding" and "reached out to the DV360 team at Google"), 203-204 (PubMatic "first noticed the decline in DV360 spend" before August 2017, after which it "contacted Google" and "provided reports demonstrating this decline"; PubMatic only later ran an "experiment" as a DV360 advertiser); Index Exchange Compl. ¶¶ 181 (alleging Poirot began in 2017 and caused "a significant economic shock to a number of" "competing ad exchanges"), 182 (Competitor Plaintiffs invested "substantial resources in data analysis and testing of various bid optimization techniques" in order to investigate the effects).

These claims therefore accrued when Competitor Plaintiffs became aware of the change in DV360's bidding into their own exchanges, allegedly precipitated by Project Poirot, and of the harms to competition Project Poirot allegedly caused.  *In re Ciprofloxacin Hydrocholoride Antitrust Litig.*, 261 F. Supp. 2d 188, 225 (E.D.N.Y. 2003) ("The critical determinant is when a significant fact emerges, not when plaintiffs realize the specific details of their alleged claims."); *SD3 II LLC v. Black & Decker (U.S.) Inc.*, 888 F.3d 98, 112 (4th Cir. 2018) (antitrust claim accrued when plaintiff "knew enough factual information," *i.e.*, "the nature and scope of" plaintiff's "injury and the identity of those who had injured it").  As is clear from the allegations, that occurred <u>before</u> January 2019.

Plaintiffs assert that their Project Poirot claims should be tolled by fraudulent concealment. To plead fraudulent concealment, a plaintiff must plead with particularity: "(1) that the defendant concealed from him the existence of his cause of action, (2) that he remained in ignorance of that cause of action until some point within four years of the commencement of his action, and (3) that

---

[5] Judge Brinkema held that Project Poirot was not anticompetitive, stating: "The evidence suggests that Project Poirot was a reasonable method for protecting Google's advertiser customers from third-party ad exchanges that were running unfair auctions."  778 F. Supp. 3d at 865 n.29.

**Dunn Isaacson Rhee LLP**
www.dirllp.com
401 9th Street, NW
Washington, DC 20004
(202) 240-2900



his continuing ignorance was not attributable to lack of diligence on his part." *In re Google Digital Advert. Antitrust Litig.*, 721 F. Supp. 3d at 271 (quoting *State of N.Y. v. Hendrickson Bros.*, 840 F.2d 1065, 1083 (2d Cir. 1988)).  Plaintiffs' allegations do not meet this heightened standard.  Alleging that they were ignorant of the precise inner workings of the Project Poirot algorithm until the DOJ filed suit does not plausibly plead that they had been ignorant of their cause of action.  As explained, unlike a publisher plaintiff who this Court found had not been "alerted" to "EDA's anticompetitive effects," *In re Google Digital Advert. Antitrust Litig.*, 721 F. Supp. 3d at 272, Competitor Plaintiffs were not ignorant of the effects of Poirot: as they allege, they observed decreases in DV360 bids into their exchanges in real time.

(5) First Look.  Both complaints allege that First Look began after Google's acquisition of DoubleClick by 2010, and before the introduction of header bidding.  OpenX Compl. ¶¶ 60, 66, 192; Index Exchange Compl. ¶¶ 76-77, 152.  They further allege that First Look ended with the introduction of header bidding around 2013 or 2014.  OpenX Compl. ¶¶ 66, 192; Index Exchange Compl. ¶¶ 147, 152, 163; *see* EDVA Op., 778 F. Supp. 3d at 828 (header bidding would "improve competition between AdX and other exchanges by negating Google's First Look advantage").

The OpenX Complaint does not allege fraudulent concealment of First Look.  It alleges the opposite—that "many publishers complained to both PubMatic and directly to Google about the costs of First Look" when First Look existed.  OpenX Compl. ¶ 318.  Based on those allegations, claims based on First Look accrued well before 2019.  The Index Exchange Complaint's efforts to plead fraudulent concealment of First Look, *see* Index Exchange Compl. ¶ 251, do not meet the requisite pleading standard.  They are contradicted by allegations in the same Complaint that suggest that ad tech participants were well aware of the effects of First Look as it was happening.  *Id.* ¶¶ 146-147 ("disruptive innovation found a way to partially solve the problem" of First Look "by mitigating the effects of Google's self-preferencing of AdX").

(6) Last Look.  Both complaints allege that Last Look started to advantage AdX over other exchanges with the advent of header bidding around 2013 or 2014, and that Google ended Last Look when it adopted Unified Pricing Rules in 2019.  OpenX Compl. ¶¶ 66, 80, 449; Index Exchange Compl. ¶¶ 152, 163, 191; *see* EDVA Op., 778 F. Supp. 3d at 830, 865 (Google removed Last Look in 2019).

As with First Look, only the Index Exchange Complaint (but not the OpenX Complaint) alleges that Google fraudulently concealed the existence of Last Look.  *See* Index Exchange Compl. ¶ 252.  The Index Exchange Complaint does not meet the heightened pleading standard for fraudulent concealment.  For one, Plaintiffs have not pleaded specific facts to allege what Google purportedly did to conceal the existence of Last Look, or to explain why Index Exchange, Kargo, TripleLift, and Sovrn—sophisticated ad tech competitors who were allegedly involved in

**Dunn Isaacson Rhee LLP**
www.dirllp.com
401 9th Street, NW
Washington, DC 20004
(202) 240-2900



the innovation of header bidding, Index Exchange Compl. ¶¶ 153-158—did not know about (or could not have discovered) the existence of Last Look.

(7) Additional conduct alleged in the Index Exchange Complaint.  The Index Exchange Complaint alleges that multiple additional forms of conduct "unlawfully protected and further exploited" Google's "market power," Index Exchange Compl. ¶ 244, yet does not include that conduct as bases for the Sherman Act claim, *id.* ¶ 270.  To the extent Index Exchange, Kargo, and Sovrn intend to bring claims based on those forms of conduct, such claims are also time-barred.

The Index Exchange Complaint alleges that DFP maintained the "waterfall" process for allocating impressions; "created a built-in advantage for AdX by making it the only exchange that could receive the user IDs generated by DFP"; and made DFP a "black box" in 2008, after Google acquired DoubleClick.  Index Exchange Compl. ¶¶ 60-62, 66, 70, 82.  The Index Exchange Complaint does not allege that Google concealed any of these publicly known product design decisions following the DoubleClick acquisition, such that Plaintiffs' claims based on this conduct should be tolled.

Plaintiffs' course of conduct allegations cannot salvage their various time-barred claims by making the sweeping allegation that all of Google's conduct should be considered one amorphous, twenty-year continuous course of conduct for statute of limitations purposes.  OpenX Compl. ¶¶ 186, 193; Index Exchange Compl. ¶ 264.  As this Court previously did when analyzing statute of limitations arguments, different alleged antitrust violations should be assessed for timeliness independently.  *In re Google Digital Advert. Antitrust Litig.*, 721 F. Supp. 3d at 270-73 (analyzing timeliness of EDA and line item caps separately despite plaintiff's claim that both programs were part of an overarching scheme); *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997) (in "antitrust cases, the plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other predicate acts that took place outside the limitations period"); *CSX Transp v. Norfolk S. Ry. Co.*, 648 F. Supp. 3d 679, 697-98 (E.D. Va. 2023) (rejecting plaintiff's "contention that it only needs to point to a single act illustrating the continuance of the conspiracy or monopoly during the limitations period to broadly restart the limitations period and recover antitrust damages for any and all harm suffered during the limitations period"), *aff'd,* 114 F.4th 280 (4th Cir. 2024).  Were the law otherwise, competitors like Plaintiffs could consistently circumvent the statute of limitations by asserting that historical conduct was part of the same scheme as more recent conduct.

**Dunn Isaacson Rhee LLP**
www.dirllp.com
401 9th Street, NW
Washington, DC 20004
(202) 240-2900



**II.     Competitor Plaintiffs' Claims Relating to Exchange Bidding, or Open Bidding, Should Be Dismissed for Failure To State a Claim.**

This Court has ruled on multiple occasions that Exchange Bidding (also known as Open Bidding) was not anticompetitive conduct. *In re Google Digital Advert. Antitrust Litig.*, 627 F. Supp. 3d at 394-95; 721 F. Supp. 3d at 264-65, 268-69. Plaintiffs' allegations relating to Exchange Bidding suffer from the same deficiencies previously identified by the Court. For example, Plaintiffs have not plausibly alleged non-speculative facts that show Exchange Bidding was not "a voluntary venture," or that establish "the anticompetitive effect, if any, that Exchange Bidding has had on the popularity or profitability of header bidding" (as distinguished from the effects of lawful competition). *In re Google Digital Advert. Antitrust Litig.*, 627 F. Supp. 3d at 394-95. Plaintiffs' claims relating to Exchange Bidding should therefore be dismissed for failure to state a claim.

**III.    Competitor Plaintiffs' Claims Relating to Google's Alleged Refusal To Share Proprietary Information with Its Competitors Should Be Dismissed for Failure To State a Claim.**

The Index Exchange Complaint alleges that Google "unlawfully protected and further exploited its monopoly power" by "maintaining black-box secrecy over the logic used by DFP," "refusing to share first-party data about users . . . with publishers or competitor exchanges," and "refusing to share data generated by the enormous volume of advertising transactions" with competitors. Index Exchange Compl. ¶ 244(vi), (vii), (viii).

Claims based on this alleged conduct should be dismissed for failure to allege exclusionary conduct. Google's decision not to share its own data or the inner workings of its own algorithms with competitors is a lawful refusal to deal. *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1074 (10th Cir. 2013) (Gorsuch, J.) (a firm has "no duty to share (or continue to share) its intellectual or physical property with a rival"); *see also In re Google Digital Advert. Antitrust Litig.*, 627 F. Supp. 3d at 382-83 (dismissing allegations that "Google's refusal to share unencrypted user IDs amounted to anticompetitive conduct" because "the Supreme Court has warned against a reading of section 2 that would require a monopolist to provide information or assistance to its competitors"). And Plaintiffs have not alleged that Google "terminated any prior course of dealing—the sole exception to the broad right of a firm to refuse to deal with its competitors." *In re Elevator Antitrust Litig.*, 502 F.3d 47, 52 (2d Cir. 2007).

* * *

Google requests permission to file a single omnibus motion to dismiss directed at a subset of claims asserted in the two consolidated Complaints filed by Competitor Plaintiffs. If the Court

**Dunn Isaacson Rhee LLP**
www.dirllp.com
401 9th Street, NW
Washington, DC 20004
(202) 240-2900



grants leave for Google to file, Google proposes that it be allowed to file the motion by April 10, 2026; that Plaintiffs respond by May 1, 2026; and that Google reply by May 15, 2026.  Google proposes that, because the omnibus motion would be directed at both Complaints, the page limit for Google's motion be extended to 35 pages; Competitor Plaintiffs file an omnibus opposition of 35 pages; and Google's reply to its motion be extended to 15 pages.

Sincerely,

*/s/ Martha L. Goodman*

Martha L. Goodman (MG5624)
Jeannie S. Rhee (*PHV forthcoming*)
Karen L. Dunn (*PHV forthcoming*)
William A. Isaacson (*PHV forthcoming*)
Jessica E. Phillips (*PHV forthcoming*)
Amy J. Mauser (*PHV forthcoming*)
**DUNN ISAACSON RHEE LLP**
401 Ninth Street, NW
Washington, DC 20004
Telephone: (202) 240-2900
mgoodman@dirllp.com
jrhee@dirllp.com
kdunn@dirllp.com
wisaacson@dirllp.com
jphillips@dirllp.com
amauser@dirllp.com

Erin J. Morgan (EM1694)
**DUNN ISAACSON RHEE LLP**
11 Park Place
New York, NY 10007
Telephone: (202) 240-2900
emorgan@dirllp.com

*Attorneys for Defendants Google LLC and Alphabet Inc.*

CC: All Counsel of Record (via ECF)

**Dunn Isaacson Rhee LLP**
www.dirllp.com
401 9th Street, NW
Washington, DC 20004
(202) 240-2900

