UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

IN RE: GOOGLE DIGITAL ADVERTISING                    21-md-3010 (PKC)
ANTITRUST LITIGATION
                                                     OPINION AND ORDER


-------------------------------------------------------------x
CASTEL, Senior District Judge:

       Counsel for the now-certified Publisher Class applies to this Court for an

Order requiring other publishers bringing similar individual actions against Google to set

aside 10 percent of any settlement or judgment, including an award of treble damages and

attorneys' fees, for possible distribution to class counsel.  (ECF 1400 & 1400-1.)  Class

counsel proposes that these set-aside funds would be distributed at the Court's discretion to

"ensure adequate compensation" for class counsel's work.  Any disputes between class

counsel and counsel for individual plaintiffs on the allocation of funds set aside would be

submitted to the Court for adjudication.  The set-aside would apply to publishers who filed

individual actions long before the class was certified on December 12, 2025, as well as

future filers, and extend to work performed by class counsel dating back to September

2022, when counsel for the putative class was appointed as one of the four lead plaintiffs'

lawyers with limited responsibilities.  (ECF 309.)

       The Court assumes without deciding that it has the discretion to grant the

relief as ancillary to its authority to manage the MDL, but on these facts declines to do so.

       Class counsel's claim that individual plaintiffs are free riding on their work

is greatly exaggerated.  The bellwether pleading for the purpose of the initial motion to

dismiss was the Third Amended Complaint of the sixteen States and the Commonwealth of

Puerto Rico, some of whom obtained substantial pre-suit discovery of Google by means of

civil investigative demands. After the Court ruled on Google's motion to dismiss,[1] all plaintiffs were invited to make conforming amendments and seek leave to file other amendments. The putative publisher class and individual plaintiffs did so. A new round of motions to dismiss were filed separately by the putative publisher class and three individual publisher plaintiffs, Daily Mail, Gannett and Inform. It was the Third Amended Complaint of the States, not the putative publisher class, that served as the bellwether pleading.

More recently, three separate, successful motions were filed for partial summary judgment on the basis of preclusive effect of trial findings of Judge Brinkema in the Eastern District of Virginia on claims brought by the Department of Justice ("DOJ"). Daily Mail and Gannet filed a joint motion and Inform and the putative class counsel filed separate motions. In support of the findings of liability, Judge Brinkema's Opinion cites the testimony of a witnesses from Daily Mail or Gannett over 60 times. A Gannett witness was the lead-off witness in the DOJ's case. The Daily Mail witness testified in the direct and rebuttal cases of the DOJ. (ECF 1496 at 12.) Daily Mail and Gannett have not been passive participants in pursuing their claims.

The Court has focused on Daily Mail and Gannet because class counsel's submissions focus on these two entities and their counsel. This is because the law firm representing the entities has recently brought suit on behalf of eleven other publishers. (ECF 1400 at 6 n.7 & 1499 at 1 n.1.) Class counsel and counsel for the Daily Mail and Gannett spend much time debating the relative contributions of each with class counsel pointing out, for example, that counsel for these two entities drafted only 25 of the 80 Requests to Admit. (ECF 1499 at 3.)

---

[1] Counsel for the putative class sought and was granted the right to file a separate submission in opposition to Google's motion to dismiss addressed to the States' Third Amended Complaint. (ECF 271.) Of course, when, as and if the class prevails, class counsel will have the ability to seek attorneys' fees for that work.

It is true that class counsel played a leading role in the Court-appointed Discovery Steering Committee, which framed a common set of Rule 34 requests on behalf of all plaintiffs.  But Daily Mail and Gannett also were successful in expanding the custodians and search terms required for electronic searches by Google.  Indeed, according to counsel for Daily Mail and Gannett, "for years, Daily Mail and Gannett paid, out of pocket, an equal share with the publisher class and advertiser class to host Google's documents" through an outside vendor."  (ECF 1496 at 7.)

To support its set aside request, class counsel points to American Pipe tolling as a benefit it conferred on individual plaintiffs, enabling them to bring their own timely actions for which class counsel should be compensated.  (ECF 1400 at 6.)  But the application of the judicial tolling doctrine flows equally to a grant or a denial of class certification.  It was not bestowed by class counsel.  It is simply a tolling doctrine that is a necessary and collateral consequence of filing a putative class action.

Class counsel argues that its success in obtaining class certification was a benefit it secured for plaintiffs wishing to pursue individual actions.  (ECF 1499 at 3.) Why this is so is not explained.  The Court assumes it is because certification gives a publisher the choice to remain or pursue an individual action.  But Daily Mail, Gannett and Inform filed their actions before the motion for class certification was filed.  Indeed, Daily Mail filed its action before the MDL came into existence.[2]

Class counsel also notes that it made its offices available for at least a half dozen depositions of witnesses represented by counsel for Daily Mail and Gannett.  No order of this Court required class counsel to do so.  No lawyer has the right to use another

---

[2] Associated Newspapers Ltd. v. Google LLC, 21-cv-3446 (PKC) (S.D.N.Y.) (filed April 20, 2021). Class counsel notes that it filed a publisher class action in the Northern District of California on December 16, 2020, that was transferred as part of this MDL.

lawyer's office except on agreed terms. But to learn months after the fact that the unspoken price of hospitality is a freeze and potential forfeiture of 10 percent of the client's gross recovery is more than a bit rich.

These antitrust claims are different in many respects from consumer or product liability claims. First, the Clayton Act provides for treble damages and an award of attorneys' fees. 15 U.S.C. § 15. Second, some publishers pursuing individual actions are entities of substantial size, including Ziff Davis, the L.A. Times, Gannett and Daily Mail. It is logical that a plaintiff with a large claim may prefer to pursue that claim individually. The fact that the set aside may be policed by the Court on the back end is a small comfort to an entity deciding whether to file its own suit. Either a 10 percent set aside is a good-faith estimate by class counsel of their expected entitlement or it is abusive and nothing more than an inappropriate deterrent to those who would consider opting out of the class and filing their own suit. Neither Rule 23 nor the case law interpreting the rule creates an inherent bias in favor of a person remaining in a class rather than exercising the unfettered right to opt out.

Proceeding from its self-interested point of view, Google notes that a 10 percent set-aside Order and the process for adjudicating its distribution would negatively impact the settlement process because a plaintiff in an individual action would have no way of knowing the net amount of its settlement until other claims were resolved and class counsel's recovery was determined. (ECF 1495.) Google's assertion is plausible.[3]

The Court is mindful that one of the lawyers for the putative class was appointed as one of four Co-Lead counsel for plaintiffs at an early stage of the action.

---

[3] Indeed, the Court notes that class counsel's proposed order goes so far as to require valuation of any non-monetary benefits received as part of a settlement and a set aside based on that valuation. (ECF 1400-1.)

(ECF 309.)  Now that the class to which he is counsel has been certified, the advertiser class has not been certified and the States' case has been remanded, the Court, with thanks, relieves him and the other Co-Lead counsel of that responsibility.  Any work performed in that capacity was for the benefit of the class and he and his firm will have the right to make a fee application if there is a recovery.

The Court has reviewed the modicum of precedent for a set-aside order tendered by class counsel and finds the cases in the main inapposite in view of the procedural history of this MDL and the nature of the claims asserted.  To the extent, relevant, the Court expresses its respectful disagreement.

It would be manifestly unjust for a Court retroactively to impose a 10 percent "common benefit" set-aside more than three-and-a-half years into the MDL, that contains no cap on the size of the claim or recovery to be taxed or assessed and is premised in part on indirect or collateral benefits purportedly conferred by class counsel.  Coming as the application does during the class notice and opt-out period, it would, if granted, operate as an improper disincentive to opt out of the class.[4]

The letter motion by counsel for the Publisher Class for a 10 percent set aside on the gross recovery of any person who has opted out of the class by previously filing suit or doing so in the future (ECF 1400) is DENIED.

---

[4] The Class Notice was approved by this Court on January 29, 2026 (ECF 1383) and the opt-out period has not expired.  The opt-out cut-off date is April 13, 2026.  (See ECF 1503.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       March 19, 2026