KRESSIN POWERS

Via ECF
The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

**Re: *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC); *OpenX Technologies, Inc. v. Google LLC*, No. 1:25-cv-10817 (PKC); *Magnite, Inc. v. Google LLC*, No. 1:25-cv-10818 (PKC); *PubMatic, Inc. v. Google LLC*, No. 1:25-cv-10819 (PKC); *Equativ SAS v. Google LLC*, No. 1:26-cv-00140 (PKC); *Index Exchange Inc. v. Google LLC*, No. 1:25-cv-10477 (PKC); *Kargo Global LLC v. Google LLC*, No. 1:25-cv-10630 (PKC); *Sovrn Holdings, Inc. v. Google LLC*, No. 1:26-cv-01587 (PKC).**

Dear Judge Castel:

Plaintiffs Magnite, Inc. ("Magnite"), OpenX Technologies, Inc. and OpenX Ltd. ("OpenX"), PubMatic, Inc. ("PubMatic"), Equativ SAS, Equativ Inc., Sharethrough Inc., and Sharethrough USA, Inc. ("Equativ"), Index Exchange Inc. ("Index Exchange"), Kargo Global LLC ("Kargo" on behalf of itself and TripleLift), and Sovrn Holdings, Inc. ("Sovrn") (collectively, "Competitor Plaintiffs") respectfully submit this letter in opposition to Defendant Google LLC's ("Google") pre-motion letter of March 16, 2026, seeking leave to move to dismiss certain claims as time-barred and for failure to state a claim. For the reasons set forth below, Google's letter ignores this Court's prior rulings and its proposed motion lacks merit. Leave to file should therefore be denied. In accordance with this Court's Individual Practices in Civil Cases, Competitor Plaintiffs state that they do not seek leave to amend their complaints and no conference is currently scheduled in any of the Competitor Plaintiff actions.

## I. Google's Letter Ignores This Court's Prior Rulings and the Purpose of the Consolidated Pleading Process

Google's pre-motion letter fails to account for a series of this Court's prior decisions that bear directly on the statute of limitations arguments Google now raises. Given the context in which the Complaints were filed, Google's attempt to sidestep these rulings demonstrates that its request should be denied.

In Pre-Trial Order No. 20, dated January 13, 2026 (ECF No. 1335) ("PTO 20"), the Court directed Competitor Plaintiffs to file consolidated amended pleadings because some of the original complaints "pre-date this Court's October 27, 2025 Order substantially granting a motion for issue preclusion based upon the findings and conclusions of Judge

Brinkema in the E.D. Va. Action," and because "there is no indication that the Competitor Actions transferred from the E.D. Va. take account of the rulings made by this Court on the several motions to dismiss." PTO 20 at 2. The Court's consolidation order was designed to ensure that the complaints reflected this Court's prior rulings. Competitor Plaintiffs filed their consolidated amended pleadings in compliance with that directive. Google's pre-motion letter proceeds as if those prior rulings do not apply.

Google's letter shortchanges this Court's prior rulings upholding allegations of fraudulent concealment on multiple occasions, arguing that those rulings were limited to the *effects* of Google's anticompetitive practices. Letter from Martha Goodman to Judge Castel (Mar. 16, 2026) (ECF No. 1553) ("Google Ltr.") at 7. The Court's rulings were, however, premised on the concealment of the *practices* themselves and the details of their operation.

The Court first found in 2022 that Google's auction-manipulation practices "lacked transparency, occurred out of the public eye, and had effects that were not immediately obvious or well understood," *Texas v. Google*, 627 F. Supp. 3d 346, 406 (S.D.N.Y. 2022). The Court cited this same language in 2024 when it upheld allegations of "fraudulent concealment of the effects and operations of EDA" because its rollout was "opaque, and accompanied by misrepresentations about its intent and effects." *In re Google Digital Advert. Antitrust Litig.*, 721 F. Supp. 3d 230, 271 (S.D.N.Y. 2024).

And the same day the Court issued PTO 20 the Court again cited this language when it rejected identical timeliness arguments from Google and found that "Rumble's complaint plausibly alleges that the auction-manipulation practices alleged by Rumble as features, methods or aspects of its section 2 claims were opaque and not well-understood outside of Google." *Rumble v. Google LLC*, No. 24-cv-9904, 2026 WL 91448, at *9 (S.D.N.Y. Jan. 13, 2026) ("*Rumble* Op."). Critically, the Court's rulings in all cases were premised on Google's concealment of its anticompetitive practices, not merely the effects stemming from those practices.

Similarly, the Court's decision in Rumble also makes clear that Google's tying—the predicate for its market power and its ability to enforce First Look and Last Look—"is an act that 'inflicted continuing and accumulating harm'," and thus is a continuing violation that continues through the limitations period. *Rumble* Op. at *9 (citing *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 502 n. 15 (1968)). The Court's findings in *Rumble* did not depend on allegations that Rumble launched its RAC ad server in 2022, as Google claims. The Court specifically found that allegations about the continuing nature of the tie were made *in addition* to the finding regarding the date the RAC ad server was launched. *Id.* (holding that "Rumble *also* has adequately alleged" the continuing nature of the conduct.)

Finally, although Google appears to concede that the government-action tolling provision of 15 U.S.C. § 16(i) applies to Competitor Plaintiffs, such that the limitations period is tolled to January 23, 2019, Google's letter still accuses the Competitor Plaintiffs of "delay,"

ignoring the Court's Section 16(i) findings in *Rumble*. Google argues that Competitor Plaintiffs should be penalized for purported "delay" in that they did not file their cases when "the DOJ launched its investigation into Google" six years ago. Google Ltr. at 4. But Section 16(i) is not based on confidential government investigations; it is based on the date when a civil proceeding is "instituted" and explicitly tolls all limitations until a year after it is concluded. *See Rumble Op.* at *9 (Section 16(i) is "a broad tolling provision that goes into effect when the United States brings a civil proceeding."). The DOJ Action is still ongoing and no remedies decision has been issued. Under the plain language of Section 16(i), Google's accusations of "delay" are unfounded.

The Court ordered Competitor Plaintiffs to update their pleadings to account for its prior rulings in this MDL and Competitor Plaintiffs did so. Google's pre-motion letter now asks this Court to dismiss claims under statute of limitations theories that those prior rulings squarely rejected.

## II. The Complaints Plausibly Allege Continuing Violations That Restart the Limitations Period

In antitrust cases, the statute of limitations "does not only run from a defendant's initial act." *Chalmers v. Nat'l Collegiate Athletic Ass'n*, No. 25-1307-CV, 2025 WL 3628416, at *3 (2d Cir. Dec. 15, 2025) (citing *U.S. Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 67 (2d Cir. 2019)). Under the continuing violation doctrine, "each overt act that is part of the violation and that injures the plaintiff . . . starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997). An overt act requires only two elements: "(1) it must be a new and independent act that is not merely a reaffirmation of a previous act; and (2) it must inflict new and accumulating injury on the plaintiff." *Chalmers*, 2025 WL 3628416, at *3 (citing *U.S. Airways, Inc.*, 938 F.3d at 68).

Google mischaracterizes each category of anticompetitive conduct alleged in the complaints as one-time, independent historical acts that must be viewed in a vacuum. But the Complaints make clear that Google operates an ongoing, evolving campaign of anticompetitive conduct, including new and independent overt acts that inflicted fresh injury during the limitations period, and continues today.

Competitor Plaintiffs are not alone in taking this view. Judge Brinkema found that Google engaged in a "decade-long campaign of exclusionary conduct," *United States v. Google LLC*, 778 F. Supp. 3d 797, 871 (E.D. Va. 2025).[1] Judge Brinkema's opinion repeatedly makes

---

[1] The European Commission similarly concluded that Google's conduct constituted "a continuum of abusive behaviour" because "Google's different forms of conduct pursued an identical objective and were complementary." *See* Case AT.40670—Google–Adtech & Data-related practices, Eur. Comm'n, DG Competition Decision (Sept. 5, 2025) (the "EC Decision") ¶¶ 2076-77, 2218.

clear that Google's anticompetitive acts were not implemented in a vacuum, but purposefully designed to "enhance" the AdX-DFP tie:

- "[S]ubsequent Google product changes such as Last Look *enhanced the power of the AdX-DFP tie*." *Id.* at 862 (emphasis added)

- "First Look *exacerbated the anticompetitive effect of the unlawful AdX-DFP tie* by artificially advantaging AdX." *Id.* at 864 (emphasis added)

- "This is strong evidence that Google implemented Unified Pricing Rules *to enhance the AdX-DFP tie*, and not for its proffered justifications." *Id.* at 871 (emphasis added)

Competitor Plaintiffs make similar allegations demonstrating how each additional anticompetitive conduct introduced by Google was designed to enhance, reinforce, or replace prior anticompetitive conduct. These include allegations that Google replaced AdX's First Look with Last Look (EDVA Compl. ¶ 80; SDNY Compl. ¶ 163)[2] and both Sell-Side Dynamic Revenue Share ("SSDRS") and Project Poirot enhanced and leveraged Last Look's advantage. EDVA Compl. ¶ 82-83, 86, 95, 102, 104, 110, 117, 192, 216, 219, 446, 448; SDNY Compl. ¶¶ 167-168, 174, 180, 264-265. Google also introduced UPR to generate a similar effect when it removed Last Look. EDVA Compl. ¶ 192; SDNY Compl. ¶¶ 95, 193. These programs collectively built upon one another to allow Google to win transactions away from the Competitor Plaintiffs by enhancing the effectiveness of the DFP-AdX and AdWords-AdX ties. EDVA Compl. ¶ 192; SDNY Compl. ¶264. Plaintiffs have also alleged that Google's conduct was unilateral, and therefore subject to change by Google at any time, and not merely a "passive" "manifestation of the prior overt act of entering into [a] contract." *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 69 (2d Cir. 2019).

Accordingly, Google's conduct constitutes a continuing violation "that 'inflicted continuing and accumulating harm.'" *Rumble* Op. at *9 (citing *Hanover Shoe, Inc.*, 392 U.S. at 502 n.15).[3]

---

[2] The complaint filed by OpenX, Equativ, Magnite, and PubMatic (ECF No. 1492) is cited as the "EDVA Complaint," and the complaint filed by Index Exchange, Kargo, and Sovrn (ECF No. 1543) is cited as the "SDNY Complaint."

[3] The continuing violation doctrine was recently applied to Google's similar anticompetitive conduct in the search market. In *Yelp Inc. v. Google LLC*, No. 5:24-cv-06101, 2025 WL 2978394 (N.D. Cal. Oct. 22, 2025) ("*Yelp*"), the court denied Google's motion to dismiss based on timeliness arguments, finding that specific product changes implemented after the original 2007 tying arrangement — including a 2016 algorithm update, a 2021 SERP redesign, and the 2024 introduction of AI Overviews — each constituted new and independent overt acts sufficient to restart the limitations period. The court rejected Google's argument that subsequent implementations of an ongoing anticompetitive

For each of the acts that Google claims are time-barred, Competitor Plaintiffs have made specific allegations demonstrating overt acts during the limitations period that inflicted new and accumulating injury.

**(1) The AdWords-AdX and AdX-DFP Ties.** This Court has already held that "the DFP-AdX product tie is an act that 'inflicted continuing and accumulating harm.'" *Rumble* Op. at *9 (citing *Hanover Shoe, Inc.*, 392 U.S. at 502 n.15). With respect to the AdWords-AdX tie, the Complaints allege that Google maintains this unlawful tie by continuously signing up new advertisers for AdWords and subjecting them to the same tying arrangement. EDVA Compl. ¶ 182; SDNY Compl. ¶ 262. With respect to the DFP-AdX tie, the Complaints allege that each time a new publisher signs up with DFP and is subject to the same tying arrangement, Google commits a new and affirmative act, and that Google continued renegotiating contracts to force publishers to access AdX through DFP after January 2019. EDVA Compl. ¶¶ 184-85; SDNY Compl. ¶ 263. These are precisely the kinds of new agreements and affirmative enforcement steps that courts have held restart the limitations period. *See Connecticut v. Sandoz, Inc.*, No. 3:20-cv-00802-MPS, 2025 WL 3043397, at *9 (D. Conn. Oct. 31, 2025) (distinguishing case from *U.S. Airways* where the relevant acts were "not limited to those controlled by an earlier contract with consumers" because sales "to both new customers and to existing customers pursuant to new agreements" occurred during the limitations period).

**(2) First Look and Last Look.** First Look and Last Look were two elements of Google's Dynamic Allocation program. The Complaints allege that Last Look was in place until at least May 2019, during the limitations period, when Unified Pricing Rules were implemented. EDVA Compl. ¶ 179; SDNY Compl. ¶ 193. Each time Google used Last Look to manipulate the results of an otherwise final auction so that AdX won and other exchanges lost, Google committed an independent overt act which caused independent injuries to Competitor Plaintiffs. Moreover, the Complaints allege that Last Look was enhanced over time through Project Poirot—which was both a continuing violation, *and* fraudulently concealed—and SSDRS, which Google does not argue is time barred. EDVA Compl. ¶¶ 82-83, 86, 95, 102, 104, 110, 117, 192, 216, 219, 446, 448; SDNY Compl. ¶¶ 167-168, 174, 180, 264-265.

**(3) Project Poirot.**[4] Poirot began in 2017, but the Complaints allege that after September 2019, when AdX had formally moved to a first-price auction, Google altered Project Poirot's

---

scheme are merely reaffirmations of a prior act rather than independent violations. *Id.* at 12-13.

[4] Google claims in its letter that "Judge Brinkema held that Project Poirot was not anticompetitive." Google Ltr. at 6 n. 5. In reality, Judge Brinkema stated in a footnote that "the Court does not consider Project Poirot as part of the anticompetitive conduct" detailed in the liability opinion. 778 F. Supp. 3d at 865 n.29. This Court has already upheld allegations that Project Poirot "harmed competition in the ad-exchange market." *In re Google Digital Advert. Antitrust Litig.*, 627 F. Supp. 3d 346, 398 (S.D.N.Y. 2022).

algorithm to further increase AdX's win rate at the expense of rival exchanges. EDVA Compl. ¶ 188; SDNY Compl. ¶¶ 178-79. This post-2019 modification to Poirot's mechanisms is an independent overt act within the limitations period and not a mere reaffirmation of a prior act. *See Yelp* at *8 (describing algorithm change as a continuing violation). Moreover, as described in Section III below, Poirot was specifically structured by Google to fraudulently conceal it from Competitor Plaintiffs.

Google argues that this Court's prior analysis of allegations related to line-item caps in Gannett's complaint forecloses Competitor Plaintiffs' continuing violation theory. Google claims the Court "did not find that the statute of limitations period was restarted each time Google had a new DFP publisher contract subject to the line-item cap." Google Ltr. at 5. But the Court's analysis was focused on a single publisher, Gannett, and does not mention new publisher contracts at all. Moreover, Gannett's complaint did not associate the line-item caps with any other anticompetitive conduct or detail how conduct inside the limitations period reinforced or enhanced the anticompetitive effect of the cap on line items.

**III. The Complaints Plausibly Allege Fraudulent Concealment of Project Poirot**

Google's argument that Competitor Plaintiffs' sophistication defeats fraudulent concealment of Project Poirot misapplies the governing standard and ignores this Court's prior rulings in this MDL. Nothing in the fraudulent concealment doctrine requires plaintiffs to be unsophisticated. Competitor Plaintiffs have also alleged the fraudulent concealment of other practices, such as Project Bernanke and SSDRS, but Google's letter does not challenge these allegations. Indeed, by not challenging the allegations of fraudulent concealment with respect to SSDRS and Project Bernanke, Google impliedly concedes that Competitor Plaintiffs are not too sophisticated to be kept in the dark by Google about its anticompetitive conduct.

The elements of fraudulent concealment are: (1) that the defendant concealed the existence of the cause of action; (2) that the plaintiff remained ignorant until within four years of filing; and (3) that continuing ignorance was not attributable to lack of diligence. *In re Google Digital Advert. Antitrust Litig.*, 721 F. Supp. 3d at 271 (citing *State of N.Y. v. Hendrickson Bros.*, 840 F.2d 1065, 1083 (2d Cir. 1988)). As noted above, this Court has upheld fraudulent concealment allegations against Google in this MDL on multiple occasions, and the same logic applies to Competitor Plaintiffs' allegations about Project Poirot. While it is true that fraudulent concealment allegations must be "alleged with the particularity required by Federal Rule of Civil Procedure 9(b)," Competitor Plaintiffs have provided the "particularized allegations" that Rule 9(b) requires. *Kearse v. Kaplan, Inc.*, 692 F. Supp. 2d 398, 401 (S.D.N.Y. 2010).

First, Google misstates when claims accrue under fraudulent concealment. Google asserts that Competitor Plaintiffs' claims related to Poirot accrued "when Competitor Plaintiffs became aware of the change in DV360's bidding into their own exchanges."

Google Ltr. at 6. But the Second Circuit has rejected such a reading of fraudulent concealment because "knowledge of an injury—and the person or entity responsible for it—is distinct from knowledge that the injury was part of an anticompetitive or otherwise illegal scheme." *Phhhoto Inc. v. Meta Platforms, Inc.*, 123 F.4th 592, 608 (2d Cir. 2024). Competitor Plaintiffs could not bring an action unless and until they became aware of facts suggesting anticompetitive conduct on Google's part; mere suspicion is not enough, because there is a "distinction between finding [Google's] conduct suspicious—and considering it probable that [Google] had engaged in wrongdoing." *Id.* at 609; *see also In re GSE Bonds Antitrust Litig.*, 396 F. Supp. 3d 354, 367-68 (S.D.N.Y. 2019) (denying a motion to dismiss on statute of limitations grounds and holding that "requiring potential plaintiffs to conduct exhaustive statistical analysis of millions of transactions, just on the off chance that it would reveal some suspicious behavior, would be absurd").

Second, Competitor Plaintiffs have alleged all three elements of fraudulent concealment and provided the "particularized allegations" required in their complaints. *Kearse*, 692 F. Supp. 2d at 401. The Complaints allege that Google concealed Project Poirot by introducing it over several phases and initially limited the amount that DV360 could shade bids into rival ad exchanges to 40%, making Project Poirot difficult to detect on the exchange side. EDVA Compl. ¶ 198; SDNY Compl. ¶ 254. The Complaints allege that Competitor Plaintiffs were unable to determine the cause of declined DV360 spend on their exchanges and remained ignorant of the anticompetitive nature of Project Poirot until the State of Texas included allegations about the project in its Third Amended Complaint filed on January 14, 2022, and when the Government's complaint in the Eastern District of Virginia, filed on January 24, 2023, included additional details about the project. EDVA Compl. ¶ 207; SDNY Compl. ¶ 259.

Third, Google's argument that Competitor Plaintiffs' sophistication and investigative efforts demonstrate a lack of diligence is contradicted by the specific facts and law. *See GSE Bonds*, 396 F. Supp. 3d at 367–68. Far from showing lack of diligence, the Complaints provide specific details regarding Competitor Plaintiffs (unsuccessful) efforts to investigate the source of competitive harm, both efforts to get an answer from Google and internal experiments conducted to uncover the cause. EDVA Compl. ¶¶ 199, 202, 204; SDNY Compl. ¶ 258.

## IV. Allegations Related to Open Bidding Should Not Be Dismissed (Alleged by SDNY Plaintiffs, Equativ, and PubMatic)

The Court should reject Google's arguments for dismissal of allegations relating to Open Bidding. In its letter, Google selectively and inaccurately cites this Court's prior rulings on the topic. Moreover, Google's contentions lack substantive merit.

Google writes: "This Court has ruled on multiple occasions that Exchange Bidding (also known as Open Bidding) was not anticompetitive conduct." Google Ltr. at 9. This is false. The two orders that Google cites were rulings on motions to dismiss. *Id.* (*citing In re Google*

*Digital Advert. Antitrust Litig.*, 627 F. Supp. 3d 346, 394-95 (S.D.N.Y. 2022); *Singh v. Google LLC (In re Google Digital Advert. Antitrust Litig.)*, 721 F. Supp. 3d 230, 264-65, 268-69 (S.D.N.Y. 2024)). In each of those orders, this Court held only that the respective plaintiffs had failed to adequately allege facts supporting their claims based on pleadings materially different from Competitor Plaintiffs' complaint.

In the orders Google cites, the Court ruled that the plaintiffs there had failed to detail how Open Bidding was marketed at publishers or exchanges, the terms of the agreements that governed participation in Open Bidding, or the resulting harms. 627 F. Supp. 3d at 395-96; 721 F. Supp. 3d at 264-65. In contrast, Competitor Plaintiffs have explained how Google lied to publishers and created artificial technical obstacles to interacting with header bidding to force publishers, and the ad exchanges who serve them, onto Open Bidding. EDVA Compl. ¶¶ 122-26; SDNY Compl. ¶¶ 185-86. Competitor Plaintiffs similarly have detailed the onerous terms that Google imposed on ad exchanges within Open Bidding that placed them at a competitive disadvantage with AdX, as well as the ways that these terms reinforced AdX's dominance and harmed the competing ad exchanges. EDVA Compl. ¶¶ 128-132; SDNY Compl. ¶¶ 187-90.

Moreover, Google fails to mention that the Court more recently denied a motion to dismiss in *Rumble* relating to Open Bidding as conduct supporting a broader monopolization claim. *See Rumble* Op. at *7-8. Competitor Plaintiffs do not bring a standalone claim on the basis of Google's Open Bidding. Rather, Open Bidding is alleged as one of the many methods by which Google attempted and achieved its monopolies of the ad server and ad exchange markets. EDVA Compl. ¶¶ 462, 471, 492; SDNY Compl. ¶ 270. As the Court ruled with respect to Rumble's complaint, Competitor Plaintiffs' allegations concerning Open Bidding "therefore are appropriate factual allegations in the context of these actionable claims." *Rumble* Op. at 8.

## V. The SDNY Complaint's Allegations Provided Historical Context

The SDNY Complaint does not base its claim against Google on DFP's maintenance of the waterfall process for allocating impressions. The anticompetitive acts supporting Index Exchange, Kargo, and Sovrn's claim for monopolization of the ad exchange market are specifically enumerated in the SDNY Complaint and do not include that conduct. SDNY Compl. ¶ 270. That the SDNY Complaint points to DFP's black box as an example to "la[y] the foundation" for Google's "campaign against rival ad exchanges" does not alter the allegations regarding the lengths Google went to conceal its anticompetitive conduct and the continuing nature of the harm. *See Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 296 (2d Cir. 1979) ("The taint of an impure origin does not dissipate after four years if a monopolist continues to extract excessive prices because of it."); *PharmacyChecker.com, LLC v. Nat'l Ass'n of Boards of Pharmacy*, 530 F. Supp. 3d 301, 350 (S.D.N.Y. 2021) ("Evidence of claims which cannot give rise to liability because of a statute of limitations may be introduced to show the nature of the transactions under scrutiny and to establish a continuing course of conduct.").

## VI. Conclusion

For the foregoing reasons, Competitor Plaintiffs respectfully submit that Google's proposed motion to dismiss is without merit and that leave to file should be denied.

PTO 20 ordered Competitor Plaintiffs and Google to file a joint letter "setting forth a joint proposal by the parties to the Competitor Actions for a briefing schedule." PTO 20 at 3. Google's letter included a proposed briefing schedule that was not shared with Competitor Plaintiffs before filing. The parties have since conferred, however, and agreed to propose the following briefing schedule to the Court: Google's omnibus motion of up to 35 pages must be filed by April 29; Competitor Plaintiffs' joint omnibus opposition of up to 35 pages must be filed by May 27; and Google's reply of up to 15 pages must be filed by June 12. The parties will file this proposed briefing schedule separately, as ordered.

Dated: March 24, 2026

Sincerely,

/s/ Brandon Kressin

Brandon Kressin
KRESSIN POWERS LLC
Brandon@kressinpowers.com
400 7th St. NW, Unit 300
Washington, DC 20004
Tel: 202.464.2905

*Counsel for Plaintiff*
*Magnite, Inc.*

/s/
Nicolas Stebinger
Victoria Sims (pro hac vice)
SIMONSEN SUSSMAN LLP
1629 K Street NW, Suite 300
Washington, DC 20006
Telephone: (202) 384-3130
nicolas@simonsensussman.com
victoria.sims@simonsensussman.com

Shaoul Sussman (admission pending)
Paul Goodrich (pro hac vice forthcoming)
Nico Gurian
SIMONSEN SUSSMAN LLP
307 West 38th Street, 16th Floor
New York, NY 10018
Telephone: (718) 510-5495
shaoul@simonsensussman.com
paul.goodrich@simonsensussman.com
nico.gurian@simonsensussman.com

Catherine Simonsen (pro hac vice)
Thomas Mattes (pro hac vice)
SIMONSEN SUSSMAN LLP
418 Bamboo Lane, Suite C-18
Los Angeles, CA 90012
Telephone: (917) 747-5196
catherine@simonsensussman.com
thomas.mattes@simonsensussman.com

*Counsel for Plaintiffs Equativ SAS, Equativ Inc., Sharethrough Inc., and Sharethrough USA, Inc.*

/s/
Christina V. Rayburn
Hueston Hennigan LLP
620 Newport Center Drive,
Suite 1300
Newport Beach, CA 92660
Tel: 949.356.6412
crayburn@hueston.com

*Counsel for Plaintiff PubMatic, Inc.*

/s/
Yonatan Even
Lauren M. Rosenberg
Jonathan Mooney
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000
Facsimile: (212) 474-3700
yeven@cravath.com
lrosenberg@cravath.com
jmooney@cravath.com

Benjamin H. Diessel
Nathan E. Denning
Colleen M. Kozikowski

WIGGIN AND DANA LLP
437 Madison Avenue, 35th Floor
New York, NY 10022
Telephone: (212) 551-2600
Facsimile: (212) 551-2888
bdiessel@wiggin.com
ndenning@wiggin.com
ckozikowski@wiggin.com

*Counsel for Plaintiffs OpenX Technologies, Inc., and OpenX Ltd*

*/s/* ___________________
Ian Crosby (*pro hac vice)*
Edgar Sargent (*pro hac vice)*
Steve M. Seigel (*pro hac vice forthcoming)*
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
icrosby@susmangodfrey.com
esargent@susmangodfrey.com
sseigel@susmangodfrey.com

Davida Brook (*pro hac vice forthcoming)*
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
dbrook@susmangodfrey.com

Emily Portuguese (NY 5920327)
Tom Boardman (NY 4838074)
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
eportuguese@susmangodfrey.com
tboardman@susmangodfrey.com

*Attorneys for Index Exchange Inc. and Kargo Global LLC*

*/s/* ___________________
Paul A. Williams (Admitted SDNY)
Eric J. Hobbs (pro hac vice)
SHOOK, HARDY AND BACON L.L.P.
1660 17th Street, Suite 450
Denver, CO 80202
Telephone: (303) 285-5300
Facsimile: (303) 285-5301
pwilliams@shb.com
ehobbs@shb.com

Riley C. Mendoza (Admitted SDNY)
SHOOK, HARDY AND BACON L.L.P.
111 S. Wacker Drive, Suite 4700
Chicago, IL 60606
Telephone: (312) 704-7700
Facsimile: (312) 558-1195
rmendoza@shb.com

Ryan M. Sandrock (PHV to be filed)
SHOOK, HARDY AND BACON L.L.P.
555 Mission Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 544-1900
Facsimile: (415) 391-0281
rsandrock@shb.com

Erin M. Fishman (PHV to be filed)
SHOOK, HARDY AND BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
efishman@shb.com

David M. Liu (PHV to be filed)
SHOOK, HARDY AND BACON L.L.P.
1800 K Street NW, Suite 1000
Washington, DC 20006
Telephone: (202) 783-8400
Facsimile: (202) 783-4211
dliu@shb.com

CC: All Counsel of Record (via ECF)