# FRESHFIELDS

Silicon Valley
855 Main Street
Redwood City, CA 94063
T  +1 650 618 9250 (Switchboard)
   +1 650 461 8276 (Direct)
justina.sessions@freshfields.com
www.freshfields.com

**Via ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

May 11, 2026

Re:   ***In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC);**
***Dotdash Meredith Inc. v. Google LLC*, No. 1:25-cv-07194 (PKC);**
***Insider, Inc. v. Google LLC*, No. 1:25-cv-07409 (PKC);**
***The Slate Group LLC v. Google LLC*, No. 1:25-cv-07697 (PKC);**
***CMI Marketing Inc. v. Google LLC*, No. 1:25-cv-08630 (PKC)**

Dear Judge Castel:

Defendant Google respectfully moves to compel Plaintiffs in the above-captioned cases ("Plaintiffs") to respond fully to two of Google's interrogatories asking Plaintiffs to identify the specific communications and the sponsorship deals upon which their claims are based. Instead of answering these straightforward questions and providing the necessary discovery to which Google is entitled, Plaintiffs engaged in an impermissible "document dump" by identifying tens of thousands of documents—many of which have no discernable relevance to the interrogatories. Without answers to these questions, Google is prejudiced by being left to guess at the alleged misrepresentations and the supposedly affected transactions underlying Plaintiffs' claims. This information is vital for Google's defenses to Plaintiffs' allegations of deception and of the impact of auction optimization programs. Plaintiffs requested extension after extension to respond to Google's requests before finally committing, on March 31, to provide partial supplemental responses. But Plaintiffs did not do so until over two weeks later, on April 17, and those responses remained deficient as they *still* did not provide answers to the interrogatories, and instead attempted to improperly shift the burden onto Google to guess the answers or defer answering until expert discovery. Plaintiffs then gave Google the run-around for weeks, eventually agreeing to make an unspecified update to one of the two interrogatories but refusing to commit to any timeline for doing so. Discovery ended nearly three months ago, and there is no excuse for further delay. Google is entitled to *immediate* and *complete* responses to these interrogatories so that it may promptly investigate Plaintiffs' allegations and prepare defenses without further prejudice or delay. The Court should compel Plaintiffs to answer the interrogatories to identify the precise communications and sponsorship deals related to Plaintiffs' claims by May 29, 2026. No conference is scheduled at this time.

May 11, 2026
Page 2

**I.    The Court Should Compel Plaintiffs to Provide Adequate Responses to Google's Interrogatories.**

Plaintiffs have repeatedly refused to provide straightforward responses to straightforward questions about the bases for their claims.   Google should not be left to guess at the communications and transactions on which Plaintiffs plan to rely.

Google's First Set of Interrogatories to Plaintiffs include two interrogatories asking for the specific communications and sponsorship deals that Plaintiffs contend are the foundation of their claims (the "Communications" and "Sponsorship Deal" Interrogatories[1]).

DDM[2], Insider[3], and Slate[4] served their initial responses on December 1, 2025, and Raptive[5] served its initial responses on December 29, 2025.[6]   In their initial responses, none of these Plaintiffs included any substantive information in response to the Communications Interrogatories or the Sponsorship Deal Interrogatories.   Instead, Plaintiffs asserted that, "█████████████████████████████████████████████████████████████████████████████████████."   Ex. 5 at 18, 25; Ex. 6 at 16-17, 23; Ex. 7 at 16, 23-24; Ex. 8 at 19, 25.

On February 27, 2026—the final day of fact discovery—Plaintiffs supplemented their responses with appendices listing, collectively, tens of thousands of documents.   In response to the Communications Interrogatories, DDM listed over 38,100 documents, Insider listed over 9,100 documents, Slate listed over 3,300 documents, and Raptive listed over 27,400 documents.[7]   And in response to the Sponsorship Deal Interrogatories, Plaintiffs DDM and Slate listed a slew of irrelevant documents that did not answer the questions posed by Google.[8]   On April 17, 2026, DDM and Slate supplemented their responses to the Sponsorship Deal Interrogatories to each list

---

[1] The Communications Interrogatories – DDM, Insider, and Slate Interrogatory No. 5 and Raptive Interrogatory No. 6 – ask Plaintiffs to identify: "Your communications with Google upon which You rely for any of Your claims, including identifying the dates of such communications, the relevant individuals from You and Google who participated in the communications, the subject matter of such communications, and all documents related thereto." *See* Ex. 1 at 14; Ex. 2 at 13-14; Ex. 3 at 13-14; Ex. 4 at 14.  The Sponsorship Deal Interrogatories – DDM and Slate Interrogatory No. 10 – ask Plaintiffs to identify: "Your 'sponsorship' deals from which Enhanced Dynamic Allocation reallocated inventory to AdX, as set forth in Paragraph [161, 159] of Your Complaint, and identify the terms of each 'sponsorship' deal, the effective dates of each deal, the amount of inventory reallocated to AdX and the date of each reallocation, and the amount paid for the inventory sold through AdX."  *See* Ex. 1 at 15; Ex. 3 at 15.

[2] "DDM" refers to Plaintiffs Dotdash Meredith Inc. A/K/A People Inc. and Meredith Operations Corporation.

[3] "Insider" refers to Plaintiff Insider, Inc.

[4] "Slate" refers to Plaintiff The Slate Group LLC.

[5] "Raptive" refers to Plaintiff CMI Marketing Inc.

[6] *See* Exs. 5, 6, 7, 8.

[7] *See* Ex. 9 at 17; Ex. 10 at 15-16; Ex. 11 at 16; Ex. 12 at 18-19.  To avoid burdening the Court in the context of a pre-motion letter, Exhibits 9, 10, 11, and 12 do not include the appendices to Plaintiffs supplemental responses.  Google can submit the appendices should the Court find them useful.

[8] *See* Ex. 9 at 26; Ex. 10 at 24; Ex. 11 at 26.

an additional five Google documents, none of which refers specifically to either Plaintiff nor to any specific sponsorship deal, and otherwise punt the issue to expert discovery. Ex. 13 at 26-28; Ex. 14 at 26-28. On May 6, 2026, Plaintiffs "agree[d] to supplement their responses to the [C]ommunications [I]nterrogatories." Ex. 28 at 2-3. After Google asked for details on the timing of this supplementation, on May 8, 2026, Plaintiffs stated that, despite fact discovery having ended several months ago and having had Google's consistent position regarding these interrogatories since March 13, they would "supplement their responses in due course." *Id.* at 1-2.

Plaintiffs' responses and ambiguous promises do not answer the Communications Interrogatories or the Sponsorship Deal Interrogatories. For the reasons explained below, the Court should compel Plaintiffs to fully respond now to the Communications Interrogatories and the Sponsorship Deal Interrogatories.

### A. The Communications Interrogatories.

The Communications Interrogatories ask Plaintiffs to identify "Your communications with Google upon which You rely for any of Your claims, including identifying the dates of such communications, the relevant individuals from You and Google who participated in the communications, [or] the subject matter of such communications[.]" *See* Ex. 1 at 14; Ex. 2 at 13-14; Ex. 3 at 13-14; Ex. 4 at 14. These Interrogatories are relevant because Plaintiffs repeatedly allege that they were harmed as a result of misrepresentations by Google to Plaintiffs.[9] For example:

- DDM, Insider, Slate, and Raptive all allege that, "[w]hile secretly implementing changes to the auction mechanisms behind the scenes, *Google continued to represent to publishers* that it was running a fair, transparent, second-price auction (until 2019) and then a fair, transparent first-price auction (through the present). *These misrepresentations* harmed [Plaintiff] and thousands of publishers like it." DDM Compl. ¶ 136; Insider Compl. ¶ 135; Slate Compl. ¶ 134; Raptive Compl. ¶ 141 (emphasis added for all complaints).

- DDM, Insider, and Slate all allege that they "enabled and continued to use Enhanced Dynamic Allocation for many years *on the basis of [Google's] representations [to Plaintiff]*. They were false." DDM Compl. ¶¶ 157-58; Insider Compl. ¶¶ 156-57; Slate Compl. ¶¶ 155-56 (emphasis added for all complaints).

- DDM, Insider, Slate, and Raptive all allege that "*Google repeatedly represented to [Plaintiff] that Exchange Bidding would lead to higher revenue* because ads would

---

[9] Dotdash Meredith Inc. a/k/a People Inc. and Meredith Operations Corporation's Complaint for Damages and Injunctive Relief, Case No. 1:25-cv-07194, ECF No. 1 (Aug. 29, 2025) ("DDM Compl.") ¶¶ 136, 157-58, 161, 177, 185-86, 189, 191-92, 221, 260-78, 283; Insider, Inc.'s Complaint for Damages and Injunctive Relief, Case No. 1:25-cv-07409, ECF No. 1 (Sept. 8, 2025) ("Insider Compl.") ¶¶ 135, 156-57, 176, 184-85, 188, 190-91, 220, 259-77, 282; The Slate Group LLC's Complaint for Damages and Injunctive Relief, Case No. 1:25-cv-07697, ECF No. 1 (Sept. 16, 2025) ("Slate Compl.") ¶¶ 134, 155-56, 159, 175, 183-84, 187, 189-90, 219, 257-75, 280; CMI Marketing, Inc.'s Complaint for Damages and Injunctive Relief, Case No. 1:25-cv-08630, ECF No. 1 (Oct. 17, 2025) ("Raptive Compl.") ¶¶ 141, 162, 179, 187-88, 191, 194-95, 227, 265-283, 288.

load more quickly. . . . For years, [Plaintiff] enabled Exchange Bidding based in part on these representations." DDM Compl. ¶¶ 191-92; Insider Compl. ¶¶ 190-91; Slate Compl. ¶¶ 189-90; Raptive Compl. ¶¶ 194-95 (emphasis added for all complaints).

Having laced their pleadings with and basing some of their damages claims on allegations that Google misled them, and having obtained millions of documents in discovery, Plaintiffs must now explain the bases for their allegations. *See Ohanian et al. v. Apple*, 2022 WL 576314, at *2 (S.D.N.Y. Feb. 25, 2022) (compelling response to interrogatories "which request that [plaintiff] identify all documents and communications" relied upon related to claims that plaintiffs were misled). Absent such explanation, Google has no way to know the bases for Plaintiffs' claims. Google cannot investigate and defend against allegations that it made misrepresentations when Plaintiffs refuse to identify what those supposed misrepresentations were.

Plaintiffs should not be permitted to side-step their discovery obligations—as they seek to do—by invoking Rule 33(d) and listing tens of thousands of documents, many of which have nothing to do with these cases. *See CRA Holdings US, Inc. v. United States*, 2018 WL 4001675, at *4 (W.D.N.Y. Aug. 22, 2018) (finding that the plaintiffs' interrogatory response relying on Rule 33(d) amounted to a "document dump" where lists were provided as answers); *Cathay Pac. Airways, Ltd. v. Fly and See Travel, Inc.*, 1991 WL 156381, at *3 (S.D.N.Y. Aug. 8, 1991) (holding that Rule 33 does not allow a producing party to answer by directing the seeking party to "an undifferentiated mass of business records which may or may not answer the interrogatory"); *see also Innis Arden Golf Club v. Pitney Bowes, Inc.*, 2008 WL 11377708, at *2 (D. Conn. May 12, 2008) (ordering supplemental response because "plaintiff provide[d] no specification as to where amongst the thousands of Bates stamped documents the information can be located other than repeating the generalized reference to the 'Document Production' [and] [s]uch a response is insufficient in these circumstances and does not comply with Fed. R. Civ. P. 33(d). . . ." (internal citations and quotations omitted); Fed. R. Civ. P. 33 advisory committee's note to 1980 amendment ("[P]arties upon whom interrogatories are served have occasionally responded by directing the interrogating party to a mass of business records. . . . Such practices are an abuse of the option.").

Plaintiffs are abusing Rule 33(d). Many of the documents that Plaintiffs identified bear no discernible connection to alleged misrepresentations or any other issue in the cases. Indeed, many are not statements by Google at all. These are just a few examples of the many irrelevant documents included in Plaintiffs' responses:

- An email from Inventec (a non-party) to Google regarding requirements for certain mobile applications in certain Asian markets. *See* Ex. 15 (GOOG-DOJ-00158935) (identified by DDM).

- An auto-generated email from Business Insider consisting of a Business Insider article titled "Huawei surpasses Xiaomi as number one in China— SMS is still relevant — AT&T suffers high churn rate despite subscriber growth." *See* Ex. 16 (GOOG-DOJ-03139590) (identified by Insider).

- An email sent from Politico listing several unrelated Politico article headlines (e.g., about drug measures, the California governor's race, Uber's antitrust case, and Google Maps). *See* Ex. 17 (GOOG-DOJ-06556970) (identified by Slate).

-  *See* Ex. 18 (identified by Raptive).

Google promptly pointed out to Plaintiffs that many of the documents they identified were irrelevant, *see* Ex. 19 at 3-5 (identifying more examples), and requested that, if Plaintiffs disagreed, they should explain the documents' relevance, *see id.* at 4-5. Plaintiffs never did so. With no explanation for their approach to answering the Communications Interrogatories, Plaintiffs' lists of thousands of documents amount to impermissible "document dumps." *See CRA Holdings US, Inc.*, 2018 WL 4001675, at *4.

Plaintiffs complain that the Communications Interrogatories are "improperly broad," Ex. 28 at 1, and "do not seek to 'narrow the issues' in these cases" since they ask for "all communications" and documents "related to" the communications, Ex. 20 at 2, Ex. 28 at 1. But that makes no sense: requiring Plaintiffs to identify the supposed misrepresentations at issue in their cases will surely narrow the issues from the "undifferentiated mass of business records which may or may not answer the interrogatory" to which Plaintiffs currently point. *See Cathay Pac. Airways, Ltd.*, 1991 WL 156381, at *3. Courts have held that questions like the Communications Interrogatories are proper precisely because "they seek the underlying description of documents containing the purported "false [representations]" at the heart of [Plaintiffs'] claim." *Ohanian*, 2022 WL 576314, at *3; *see also Concerned Citizens of Belle Haven v. Belle Haven Club*, 223 F.R.D. 39, 47 (D. Conn. 2004) (Rule 33 notes "the permissible practice of using a single interrogatory to ask for information about all 'communications of a particular type'"). Plaintiffs cannot evade their obligation to answer the Communications Interrogatories by deliberately and obtusely misconstruing them. Plaintiffs must provide what the interrogatories obviously ask for: the specific communications that form the bases of Plaintiffs' claims.

Nor may Plaintiffs defer answering the Communications Interrogatories until after they serve their expert reports. *See* Ex. 28 at 1.[10] Google was entitled *months ago*—when fact discovery ended on February 27, 2026—to know exactly which communications support Plaintiffs' claims. It is not required to wait until closer to Fall or Winter 2026 for information that is already past due, or to investigate and defend against claims on Plaintiffs' schedule rather than the Court's discovery deadlines.

---

[10] Plaintiffs state that "Google has not explained why it requires that supplementation urgently. Motions for summary judgment will not occur until after expert discovery ends in December. And to the extent Google believes its experts need to rely on Group 1 Premium Publishers' responses to the Communications Interrogatories – and it is not clear why they would – their reports are not due until September 11. Group 1 Premium Publishers will supplement their responses in due course." Ex. 28 at 1.

The Court should compel Plaintiffs to answer the Communications Interrogatories now so that Google has a fair opportunity to understand the bases of the claims that Plaintiffs are currently asserting against it.

### B. The Sponsorship Deal Interrogatories.

DDM and Slate both seek damages based on Google's alleged misrepresentations regarding Enhanced Dynamic Allocation. DDM and Slate refer to "a certain subset of the[ir] most valuable direct deals" as "sponsorships." DDM Compl. ¶ 157; Slate Compl. ¶ 155. Each claims that Google told them their sponsorships "would be completely immune from Enhanced Dynamic Allocation." DDM Compl. ¶ 157; Slate Compl. ¶ 155. More specifically, DDM alleges that "Enhanced Dynamic Allocation had permitted AdX to steal inventory from People Inc.'s sponsorship deals" and that "Google lied that Enhanced Dynamic Allocation did not permit Google to compete with certain sponsorship deals." DDM Compl. ¶¶ 161, 268(b). Slate alleges that "EDA can (and does) take impressions otherwise eligible to be sold to sponsorship advertisers and sells them instead to AdX." Slate Compl. ¶ 159.

The Sponsorship Deal Interrogatories ask plaintiffs to identify the specific sponsorship deals allegedly affected by EDA. Specifically, they ask for identification of "all Your 'sponsorship' deals from which Enhanced Dynamic Allocation reallocated inventory to AdX, as set forth in Paragraph [161,159] of Your Complaint, and identify the terms of each 'sponsorship deal,' the effective dates of each deal, the amount of inventory reallocated to AdX and the date of each reallocation, and the amount paid for the inventory sold through AdX." *See* Ex. 1 at 15; Ex. 3 at 15.

DDM and Slate did not provide this information. Instead, they listed a wide array of irrelevant documents, leaving Google to guess which sponsorship deals Plaintiffs contend are the bases for their claims.[11] To highlight a few:



- Exs. 21, 22, 23 ( ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ) (all identified by DDM) are ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮—much less DDM sponsorship deals.

- Ex. 24 ( ▮▮▮▮▮▮▮▮▮▮ ) (identified by Slate) is ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ and Ex. 25 ( ▮▮▮▮▮▮▮▮▮ ) (also identified by Slate) is ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮—much less information about Slate's sponsorship deals.

DDM and Slate also point to Google's documents and improperly attempt to shift *their* burden onto Google by claiming that Google should piece together Plaintiffs' cases from Google's records. *See* Ex. 13 at 26-28; Ex. 14 at 26-28. But it is not Google's job to fight Plaintiffs' cases for them. Nor could Google even begin to guess what Plaintiffs' claims are based on from the Google documents DDM and Slate identify, as the Google documents do not reference Plaintiffs, do not address any allegedly affected sponsorship deals, and simply do not contain the information that the Sponsorship Deal Interrogatories seek. *See, e.g.*, Exs. 26, 27 ((GOOG-AT-MDL-

---

[11] *See, e.g.*, Ex. 19 at 5-6.

004043498 and GOOG-AT-MDL-009311242) (identified by both DDM and Slate)).  This list of documents does nothing to inform Google of which of Plaintiffs' sponsorship deals, if any, Plaintiffs claim were affected.  Plaintiffs may not avoid their duty to respond to Google's Interrogatories by identifying irrelevant or generic documents that leave Google to guess which sponsorship deals Plaintiffs contend are the bases for their claims.

Nor can Plaintiffs defer to expert discovery.  *See* Ex. 20 at 3; Ex. 13 at 28; Ex. 14 at 28; Ex. 28 at 3, 4.  Google is entitled to know *now* which of Plaintiffs' sponsorship deals, if any, were affected by the alleged conduct so that Google can investigate and defend against Plaintiffs' assertions.  Having alleged in their complaints that inventory was "stolen" or "taken" from sponsorship deals, Plaintiffs can and must identify those deals without the need to defer to experts.

The Court should compel Plaintiffs DDM and Slate to answer the Sponsorship Deal Interrogatories promptly so that Google has a fair opportunity to understand the bases of the claims that Plaintiffs are asserting against it.  *See, e.g.*, *Ohanian*, 2022 WL 576314, at *2 (compelling response to interrogatories requesting "information relating to the harm or injury [plaintiff] alleges").  To the extent that expert discovery requires further supplementation, Plaintiffs can provide that supplementation later.

## II.    The Parties Are Now at an Impasse.

Plaintiffs have engaged in gamesmanship by unilaterally granting themselves more time to respond to Google's inquiries and then ultimately failing to do so.

- On February 27, 2026—the final day of fact discovery—Plaintiffs supplemented their responses with appendices listing, collectively, tens of thousands of documents.[12]

- On March 13, 2026, Google requested that Plaintiffs confirm by March 16, 2026 that they would further supplement their responses.  If Plaintiffs did not agree to do so, Google planned to raise the issue at the conference that had been scheduled for March 19.[13]                       ECF         No.         1374.

- On March 17, 2026, Plaintiffs informed Google that they would need until the end of the week (after the Court conference) to respond.[14]  Later that same day, the conference     was     cancelled     by     the     Court.     ECF     No.     1554.

---

[12] *See* Exs. 9, 10, 11, 12.  Having identified tens of thousands of documents for the first time on the last day of fact discovery, any assertion that Google's challenge is untimely, *see e.g.*, Ex. 28 at 8, lacks merit and should be disregarded.

[13] *See* Ex. 19 at 6.

[14] *See* Ex. 28 at 7-8.

- At the end of the week, on March 20, 2026, Plaintiffs informed Google that they would need *another* week to respond i.e., by March 27, 2026.[15]

- Plaintiffs did not respond on March 27, 2026. It was not until March 31, 2026 that Plaintiffs first provided a substantive response to Google's questions. In it, Plaintiffs implied that they would not supplement their responses to the Communications Interrogatories and stated that "People . . . and Slate will supplement their responses to Interrogatory No. 10 to further explain that Google is in possession of information concerning which of their sponsorship deals were detrimentally impacted by Enhanced Dynamic Allocation and that further analysis of this issue will be developed through expert discovery."[16]

- On April 7, 2026, Google asked Plaintiffs when they would provide their supplemental response to the Sponsorship Deal Interrogatories, and asked Plaintiffs to confirm whether they would provide the details previously requested by Google. Google also sought confirmation that the parties were at an impasse as to the Communications Interrogatories.[17] DDM and Slate did not supplement their responses to the Sponsorship Deal Interrogatories until 10 days later (on April 17, 2026—nearly a month after committing to doing so), and neither responded to Google's request for confirmation on the requested sponsorship deal-related details nor provided such details in their supplemental responses. Plaintiffs did not respond at all regarding the Communications Interrogatories.

- Because Plaintiffs' supplemental responses to the Sponsorship Deal Interrogatories remained deficient, and because Plaintiffs remained silent as to the Communications Interrogatories, on April 24, 2026, Google informed Plaintiffs that it understood the parties to be at an impasse.[18] Plaintiffs responded later that same day asking for a meet and confer to discuss these issues, and although Google replied again that same day with its own availability, Plaintiffs further delayed an attempt to reach a resolution as to these issues by waiting until after the weekend to answer Google and offering to meet several days later.[19] When Google responded to confirm the time, it also reaffirmed its positions regarding both Interrogatories: that Google does not agree that the Sponsorship Deal Interrogatories are appropriately deferred to expert discovery, and that, as consistently stated since March 13, Plaintiffs must specifically identify the communications that form the bases for their claims in response to the Communications Interrogatories.[20]

---

[15] *See id.* at 7.

[16] *See* Ex. 20.

[17] *See* Ex. 28 at 6.

[18] *See* Ex. 29 at 3-4.

[19] *See id.* at 1-3.

[20] *See id.* at 1.

- The parties met and conferred on April 29, 2026.  Plaintiffs queried whether Google would withdraw its objections regarding the Communications Interrogatories if they narrowed the number of documents they identified in response.  Plaintiffs now claim that "Google indicated that such a supplement would address its objections," Ex. 28 at 1, but this mischaracterizes Google's position.  Google said it would *consider* whether such a supplementation would address Google's concerns *if* Google also received assurance from Plaintiffs, in writing, that a "narrowed" supplement would identify the precise communications underlying Plaintiffs' claims and a commitment about when it would receive such a supplementation.  Plaintiffs also questioned whether there was anything they could do, apart from identifying the sponsorship deals now upon which their claims are based, to avoid being at an impasse on the Sponsorship Deal Interrogatories.  Google reiterated its position that if Plaintiffs did not identify the specific sponsorship deals allegedly affected by the conduct at issue here *now*, at this stage of the case, the parties were at an impasse.  With respect to both Interrogatories, Google also emphasized the passage of time since Google first raised these issues on March 13 and stressed the importance of promptly reaching resolution (even if that resolution was impasse).  Ultimately, no resolution was reached on the meet and confer and Plaintiffs noted that they would get back to Google regarding both Interrogatories.

- Plaintiffs did not get back to Google in a timely fashion.  On May 5, 2026, Google asked Plaintiffs to confirm within 24 hours (a week after the meet and confer), their final positions on the Communications and Sponsorship Deal Interrogatories.[21]  On May 6, Plaintiffs "agree[d] to supplement their responses to the [C]ommunications [I]nterrogatories."[22]  They also stated that they "do not understand Google's position that the parties are at impasse" on the Sponsorship Deal Interrogatories, despite maintaining their position that they intend to defer responses until expert discovery and having Google's position that deferral to the expert stage is not appropriate.[23]

- On May 8, 2026, Google asked Plaintiffs to confirm "when Plaintiffs intend to supplement their responses to these [Communications] [I]nterrogatories and whether those supplemental responses will identify the precise communications at issue so that Google may determine whether the parties are at an impasse."[24]  Google also stated that "Plaintiffs—not Google or any experts—possess th[e] information" about Plaintiffs' own sponsorship deals that they make allegations about and seek damages related to, and that "Google continues to believe that it is entitled to this information now so that it can investigate and defend against

---

[21] *See* Ex. 28 at 3-4.

[22] *See id.* at 2-3.

[23] *See id.*

[24] *See id.* at 1-2.

Plaintiffs' assertions. Plaintiffs can and must identify those deals without the need to defer to experts, and Plaintiffs' refusal to do so leaves the parties at impasse on this issue."[25]

- Plaintiffs did not respond to Google's request with respect to the Communications Interrogatories. Instead, on May 8, 2026, Plaintiffs stated, without any additional detail regarding substance, that they would "supplement their responses in due course" and indicated that they may not supplement their responses until closer to Fall or even possibly Winter of 2026.[26] As to the Sponsorship Deal Interrogatories, Plaintiffs, for the first time, raised a counter-proposal to Google,[27] seemingly abandoning their prior position that responses be deferred to expert discovery *after* recognizing the parties were at an impasse. Plaintiffs' gamesmanship in shifting positions after months of stalemate should not be rewarded—it is obvious that they are attempting to further delay providing any meaningful response to the Sponsorship Deal Interrogatories.

\* \* \*

Against that backdrop, the parties are now at an impasse. Plaintiffs' counsel have had years to search through the many millions of documents that Google has produced in discovery and to investigate Plaintiffs' own records. Google is entitled to fair notice of the factual bases for Plaintiffs' claims, and the Court should compel them to provide supplemental responses that answer the Communications and Sponsorship Deal Interrogatories by May 29, 2026. Google has already been prejudiced by Plaintiffs' refusal to answer these questions in a timely manner during fact discovery.

Respectfully submitted,

*/s/ Justina K. Sessions*
Justina K. Sessions
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250
Email: justina.sessions@freshfields.com

*Counsel for Defendants Google LLC, and Alphabet Inc.*

CC: All Counsel of Record (via ECF)

---

[25] *See id.*

[26] *See id.* at 1.

[27] *See id.*

### **<u>Federal Rule of Civil Procedure 37(a)(1) Certification</u>**

I hereby certify that Defendants Google LLC and Alphabet Inc. have in good faith conferred with Plaintiffs and that the parties have reached an impasse as to this issue.

Sincerely,

*/s/ Justina K. Sessions*