# EXHIBIT 20

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215

———
(202) 326-7900

FACSIMILE:
(202) 326-7999

March 31, 2026

*Via Electronic Mail*
*Confidential*

Veronica Bosco
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
Veronica.Bosco@freshfields.com

> Re:     *In re Google Digital Advertising Antitrust Litigation, No. 1:21-md-03010;*
> *Dotdash Meredith Inc. v. Google LLC, No. 1:25-cv-07194 (PKC); Insider, Inc. v.*
> *Google LLC, No. 1:25-cv-07409 (PKC); The Slate Group LLC v. Google LLC,*
> *No. 1:25-cv-07697 (PKC); CMI Marketing Inc. v. Google LLC, No. 25-cv-08630*
> *(PKC)*

Dear Veronica:

I write in response to your letter dated March 13, 2026 ("Ltr."), concerning People, Inc.'s, Business Insider's, Slate's, and Raptive's (collectively, "Premium Publishers") responses to certain Google interrogatories.  Contrary to Google's assertions, Premium Publishers have complied with their discovery obligations and have provided Google the information requested in Google's interrogatories.  Nevertheless, in a good faith effort to reach a compromise on this dispute and avoid unnecessarily burdening the Court, People, Business Insider, and Slate, agree to supplement their response to Google's Interrogatory No. 10.

### I.     Communications Interrogatory

Google's Interrogatory No. 5 to People, Business Insider, and Slate, and its Interrogatory No. 6 to Raptive, (the "Communications Interrogatories") ask for all "communications with Google" that Premium Publishers may "rely [upon] for any of" Premium Publishers' claims, along with "all documents related thereto."

Courts regularly hold – and Premium Publishers have consistently maintained – that interrogatories like the Communications Interrogatories are improper insofar as they "ask[] a party to describe 'all facts' that supported various allegations of the complaint." *Pasternak v. Dow Kim*, 2011 WL 4552389, *2 (S.D.N.Y. Sept. 28, 2011) (collecting cases); *see also Silva v. New York City Transit Auth.*, 2022 WL 22961114, *1 (E.D.N.Y. May 27, 2022) ("Courts generally resist efforts to use contention interrogatories as a vehicle to obtain every fact and

K ELLOGG, H ANSEN, T ODD, F IGEL & F REDERICK, P.L.L.C.

Veronica Bosco
March 31, 2026
Page 2 of 3

piece of evidence a party may wish to offer concerning a given issue at trial."). Contention interrogatories are meant to "narrow the issues for trial" – they are not "a vehicle for requiring an adversary to regurgitate all factual information obtained in discovery." *Pasternak*, 2011 WL 4552389, at *2-3. The Communications Interrogatories do not seek to "narrow the issues" in these cases, but instead ask for a comprehensive and undifferentiated list of any communication with Google that Premium Publishers may rely on to support any of their claims, *and* any document that is in any way "related to" such communications.

Despite the impropriety of the Communications Interrogatories, Premium Publishers responded in good faith by identifying communications with Google that they may rely on to support their claims and related documents. Google suggests (at 2), without elaboration, that invoking Rule 33(d) in response to the Communications Interrogatories was a "non-response." But the Communications Interrogatories expressly request Premium Publishers to "[i]dentify . . . communications" and "related" "documents," which is what Premium Publishers did. And Google can obtain all of the other information requested in the Communications Interrogatories – the dates of, individuals involved in, and subject matters of the communications – by reviewing the identified documents. Premium Publishers' invocation of Rule 33(d) is thus appropriate.

Google then pivots to complaining (at 3) that Premium Publishers identified *too many* documents. The breadth of Premium Publishers' responses, however, merely reflects the overbreadth of Google's interrogatory, which asks for all communications with Google on which Premium Publishers may rely *and* all documents "related to" those communications in any way. Google also complains (at 3-4) that some of the documents Premium Publishers identified do not, according to Google, appear to relate directly to Premium Publishers' claims. But that again is a reflection of what Google asked for in the Communications Interrogatories. The Communications Interrogatories do not ask for documents that support any particular claim; they ask for documents that "relate to" communications that in turn relate to Premium Publishers' claims. Google cannot seek through a post-discovery letter to rewrite its interrogatory.

Google is poorly placed to complain (as it does at 3) that Premium Publishers' responses to the Communications Interrogatories "shift the burden of identifying responsive information by directing" Google "to a broad universe of tens of thousands of documents." In its own Rule 33(d) interrogatory responses, Google has not even identified the universe of documents like Premium Publishers have; instead, it pointed to ten "examples" and then told Premium Publishers to run search terms across Google's productions and review the "more than a hundred thousand produced documents" the search returned. Google's Supp. Resp. to Plf.'s First Set of Interrogs. at 20-22. Unlike Premium Publishers, Google did not "specify[] the records that" purportedly contain information responsive to Plaintiffs' interrogatory as required by 33(d), but instead pointed plaintiffs to – as one of Google's cited cases put it – "an undifferentiated mass of business records which may or may not answer the interrogatory." *Cathay Pacific Airways, Ltd. v. Fly and See Travel, Inc.*, 1991 WL 156381, *3 (S.D.N.Y. Aug. 8, 1991).

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Veronica Bosco
March 31, 2026
Page 3 of 3

## II.    Sponsorship Deals Interrogatory

Google's Interrogatory No. 10 to People, Business Insider, and Slate asks them to "identify all . . . 'sponsorship deals' from which Enhanced Dynamic Allocation reallocated inventory to AdX," as well as certain details about those sponsorship deals.  Google now complains that the responses lack sufficient detail about those reallocated deals.  But as alleged in their complaints, Google has long withheld from People, Business Insider, and Slate the details of how Enhanced Dynamic Allocation operates.  Google "never has made available any data or analytics that would allow [Premium Publishers] to track how AdX competes with direct deals with Enhanced Dynamic Allocation."  *See*, *e.g.*, Slate Compl. ¶ 158.  And specifically with respect to sponsorship deals, Premium Publishers have "limited ability to determine precisely when and how AdX continues to compete against sponsorships."  *Id.* ¶ 159.  Only Google knows precisely how and when Enhanced Dynamic Allocation reallocated inventory meant for a sponsorship deal instead to AdX.  Because that knowledge is uniquely within Google's possession, Premium Publishers cannot identify each and every sponsorship deal from which Google reallocated inventory to AdX without analyzing the materials Google has produced in discovery.  That analysis will be a subject of expert discovery.

In any event, in a good faith effort to resolve this dispute, People, Business Insider, and Slate will supplement their responses to Interrogatory No. 10 to further explain that Google is in possession of information concerning which of their sponsorship deals were detrimentally impacted by Enhanced Dynamic Allocation and that further analysis of this issue will be developed through expert discovery.

Sincerely,

/s/ *Eric J. Maier*

Eric J. Maier