**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE: GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION** | **Case No. 1:21-md-3010 (PKC)** |

*This Document Relates To:*

| | |
|---|---|
| OPENX TECHNOLOGIES, INC., and OPENX LTD.,<br>*Plaintiffs*,<br>vs.<br>GOOGLE LLC, and ALPHABET INC.,<br>*Defendants*. | Case No. 1:25-cv-10817 (PKC) |
| MAGNITE, INC.,<br>*Plaintiff*,<br>vs.<br>GOOGLE LLC, and ALPHABET INC.,<br>*Defendants*. | Case No. 1:25-cv-10818 (PKC) |
| PUBMATIC, INC.,<br>*Plaintiff*,<br>vs.<br>GOOGLE LLC, and ALPHABET INC.,<br>*Defendants*. | Case No. 1:25-cv-10819 (PKC) |

| | |
|---|---|
| EQUATIV SAS, EQUATIV INC.,<br>SHARETHROUGH INC., and<br>SHARETHROUGH USA, INC.,<br><br>*Plaintiffs*,<br><br>vs.<br><br>GOOGLE LLC, and ALPHABET INC.,<br><br>*Defendants*. | Case No. 1:26-cv-00140 (PKC) |
| INDEX EXCHANGE INC.,<br><br>*Plaintiff*,<br><br>vs.<br><br>GOOGLE LLC,<br><br>*Defendant*. | Case No. 1:25-cv-10477 (PKC) |
| KARGO GLOBAL LLC,<br><br>*Plaintiff*,<br><br>vs.<br><br>GOOGLE LLC,<br><br>*Defendant*. | Case No. 1:25-cv-10630 (PKC) |
| SOVRN HOLDINGS, INC.,<br><br>*Plaintiff*,<br><br>vs.<br><br>GOOGLE LLC, and ALPHABET INC.,<br><br>*Defendants*. | Case No. 1:26-cv-1587 (PKC) |

TRUSTX DIGITAL ADVERTISING SERVICES, INC. P.B.C.,

*Plaintiff*,

vs.

GOOGLE LLC, and ALPHABET INC.,

*Defendants*.

Case No. 1:26-cv-3135 (PKC)

**DEFENDANTS GOOGLE LLC AND ALPHABET INC.'S**
**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS


ARGUMENT ........ 1

I. Competitor Plaintiffs Have Not Pleaded that Any Tolling Doctrine Saves Their Time-Barred Claims ........ 1

A. Continuing Violation Doctrine Does Not Toll Competitors' Claims. ........ 2

1. Competitors Cannot Use Timely Claims To Salvage Time-Barred Claims. ........ 2

2. The Continuing Violation Doctrine Requires a New and Independent Act; Ongoing Conduct Is Insufficient. ........ 4

3. Claims Based on Alleged Ties of AdWords Demand to AdX and AdX Real-Time Bids to DFP Are Not Supported by Continuing Violations. ........ 6

B. Fraudulent Concealment Does Not Toll Competitors' Claims. ........ 9

1. Competitors No Longer Argue that Fraudulent Concealment Tolls Claims Based on "First Look" and "Last Look." ........ 9

2. Competitors Have Not Plausibly Alleged that Fraudulent Concealment Tolls Claims Based on Project Poirot. ........ 10

C. No Doctrine Tolls Claims Based on Open Bidding. ........ 12

D. PubMatic and Equativ Have Not Adequately Pleaded that the Speculative Damages Doctrine Tolls Their Claims. ........ 12

II. Competitors' Claims Based on Open Bidding Should Be Dismissed for Failure To State a Claim. ........ 14

III. Group B Plaintiffs Should Not Be Permitted To Seek Damages for Their Allegations Relating to Lawful Refusals To Deal. ........ 15

TRUSTX-SPECIFIC ARGUMENT ........ 16

I. Procedural History ........ 16

II. Argument ........ 16

APPENDIX A: Tolling Arguments Advanced by Competitor Plaintiffs ........ 19

# TABLE OF AUTHORITIES

## Cases


*Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP*,
592 F.3d 991 (9th Cir. 2010) ........ 15

*Argus Inc. v. Eastman Kodak Co.*,
552 F. Supp. 589 (S.D.N.Y. 1982) ........ 3

*Berkey Photo, Inc. v. Eastman Kodak Company*,
603 F.2d 263 (2d Cir. 1979) ........ 4, 8

*Cenedella v. Metropolitan Museum of Art*,
348 F. Supp. 3d 346 (S.D.N.Y. 2018) ........ 16

*Columbia Steel Casting Co. v. Portland General Electric Co.*,
111 F.3d 1427 (9th Cir. 1996) ........ 6

*Connecticut v. Sandoz*,
2025 WL 3043397 (D. Conn. Oct. 31, 2025) ........ 7

*CSX Transportation, Inc. v. Norfolk Southern Railway Company*,
114 F.4th 280 (4th Cir. 2024) ........ 3

*CSX Transportation, Inc. v. Norfolk Southern Railway Company*,
648 F. Supp. 3d 679 (E.D. Va. 2023) ........ 8

*Giordano v. Saks Inc.*,
654 F. Supp. 3d 174 (E.D.N.Y. 2023) ........ 15

*Hennegan v. Pacifico Creative Service, Inc.*,
787 F.2d 1299 (9th Cir. 1986) ........ 5

*Higgins v. New York Stock Exchange, Inc.*,
942 F.2d 829 (2d Cir. 1991) ........ 13

*Hinds County, Mississippi v. Wachovia Bank N.A.*,
620 F. Supp.2d 499 (S.D.N.Y. 2009) ........ 3

*In re Google Digital Advertising Antitrust Litigation* ("*MDL I*"),
627 F. Supp. 3d 346 (S.D.N.Y. 2022) ........ 15

*In re Google Digital Advertising Antitrust Litigation* ("*MDL II*"),
721 F. Supp. 3d 230 (S.D.N.Y. 2024) ........ passim

*In re Google Digital Advertising Antitrust Litigation* ("*MDL III*"),
2026 WL 91448 (S.D.N.Y. Jan. 13, 2026) ........ 3, 7, 8, 15

*In re Merrill, Bofa & Morgan Stanley Spoofing Litigation*,
2021 WL 827190 (S.D.N.Y. Mar. 4, 2021) .................................................................. 11

*In re Seroquel*,
2022 WL 2438934 (D. Del. July 5, 2022)..................................................................... 7

*Klehr v. A.O. Smith Corporation*,
521 U.S. 179 (1997) ...................................................................................................... 3

*Midwestern Machinery Co., Inc. v. Northwest Airlines, Inc.*,
392 F.3d 265 (8th Cir. 2004)......................................................................................... 6

*PharmacyChecker.com v. National Association of Boards of Pharmacy*,
530 F. Supp. 3d 301 (S.D.N.Y. 2021)............................................................................ 4

*Phhhoto Inc. v. Meta Platforms, Inc.*,
123 F.4th 592 (2d Cir. 2024)....................................................................................... 12

*Reid Brothers Logging Company v. Ketchikan Pulp Company*,
699 F.2d 1292 (9th Cir. 1983)....................................................................................... 4

*Rite Aid Corp. v. American Express Travel Related Services Co.*,
708 F. Supp. 2d 257 (E.D.N.Y. 2010)......................................................................... 14

*SaurikIT, LLC v. Apple, Inc.*,
2023 WL 8946200 (9th Cir. Dec. 28, 2023) ............................................................. 5, 7

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
215 F. Supp. 3d 486 (E.D. Va. 2016)........................................................................... 11

*State of New York v. Hendrickson Brothers, Inc.*,
840 F.2d 1065 (2d Cir. 1988)....................................................................................... 10

*Tseng v. PeopleConnect, Inc.*,
665 F. Supp. 3d 1136 (N.D. Cal. 2023) ...................................................................... 11

*United States v. Google LLC*,
778 F. Supp. 3d 797 (E.D. Va. 2025)........................................................................ 2, 9

*US Airways, Inc. v. Sabre Holdings Corporation*,
938 F.3d 43 (2d Cir. 2019)...................................................................................... 5, 6, 14

*Verizon Communications Inc. v. Law Offices of Curtis V. Trinko*,
540 U.S. 398 (2004) ...................................................................................................... 2

*Yelp Inc. v. Google LLC*,
2025 WL 2978394 (N.D. Cal. Oct. 22, 2025)....................................................... 5, 6, 8, 9

Competitor Plaintiffs ("Competitors") cede key points demonstrating the untimeliness of their claims based on: (1) alleged ties of AdWords demand to AdX and AdX real-time bids to DFP, (2) "First Look" and "Last Look," (3) Project Poirot, and (4) Open Bidding. Only claims that accrued on or after January 24, 2019 are timely, but the Complaints allege they were first injured by Google's challenged conduct well before, including as early as 2009. The Complaints show that Competitors have devoted substantial resources to analyzing the time-barred Google conduct and its effects, even going so far as to develop a new technology, header bidding, to mitigate those effects. And the Complaints show that, before January 2019, Competitors knew about the alleged ties, "First Look" and "Last Look," and Open Bidding, and knew that, at the time of Poirot, DV360 bidding into Competitors' exchanges had noticeably decreased.

Despite all this, Competitors argue in their Opposition that their time-barred claims survive under three tolling doctrines: continuing violation, fraudulent concealment, and speculative damages. Each of Competitors' arguments stretches those doctrines beyond recognition, and is refuted by Competitors' own cited cases.

This Court has never previously considered the timeliness of claims like Competitors', and it should dismiss them as time-barred. In addition, Competitors' claims based on Open Bidding or lawful refusals to deal should be dismissed for failure to state a claim.[1]

## ARGUMENT

### I. Competitor Plaintiffs Have Not Pleaded that Any Tolling Doctrine Saves Their Time-Barred Claims.

No tolling doctrine saves Competitors' claims based on (1) alleged ties of AdWords demand to AdX and AdX real-time bids to DFP, (2) "First Look" and "Last Look," (3) Project

[1] In both Competitor cases and prior actions against Google, that Google does not move to dismiss a particular claim does not constitute agreement that the claim is plausibly alleged.

Poirot, and (4) Open Bidding. *See* ECF No. 1815 ("Opp.") at 12-13 (not contesting these claims are time-barred absent tolling).[2] Competitors' arguments boil down to the contention that, if one piece of anticompetitive conduct upon which the claim is based is timely, then all other claims based on otherwise untimely conduct are also timely. That is not the law, and has already been rejected by this Court. The challenged conduct must be analyzed separately for purposes of assessing timeliness. When done here, none of the tolling doctrines invoked by Competitors save their claims.[3]

**A. Continuing Violation Doctrine Does Not Toll Competitors' Claims.**

**1. Competitors Cannot Use Timely Claims To Salvage Time-Barred Claims.**

Competitors argue that the Court need not separately analyze the timeliness of Competitors' claims based on each alleged anticompetitive act. Opp. at 28. Under Competitors' approach, for example, all of "Plaintiffs' monopolization claims are timely" just "because Google fraudulently concealed Project Poirot." *Id.* at 20.[4] Competitors argue each challenged act need not "independently violate the antitrust laws," as they can be "overt acts demonstrating" Google's alleged overarching, years-long "tying and monopolization conduct." *Id.* at 29.

A monopolization claim requires not just "possession of monopoly power," but "an element of anticompetitive <u>conduct</u>." *Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko*, 540 U.S. 398, 407 (2004). As Google explained in its Motion, for purposes of the statute of

---

[2] Plaintiffs claim that "Judge Brinkema ultimately found the AdWords-AdX tie unlawful." Opp. at 6. That is false: the list of conduct Judge Brinkema found anticompetitive does not include the AdWords-AdX tie. *United States v. Google LLC*, 778 F. Supp. 3d 797, 859, 864-65, 872 (E.D. Va. 2025). Indeed, Judge Brinkema's findings undermine Plaintiffs' alleged tie. Judge Brinkema found that no relevant market existed in the alleged tying market, "open-web display advertiser ad networks," because "substantial trial evidence showed that advertisers reallocate resources among different digital advertising channels." *Id.* at 810, 841-42. Such advertiser substitution suggests that Google does not have the ability, as Plaintiffs allege, to exploit its position in AdWords to coerce customers into using AdX.

[3] Though the Opposition refers to certain tolling arguments as equally applicable to both sets of Competitors, the Complaints vary in material ways. Those differences are summarized for the Court's convenience in Appendix A.

[4] With respect to quoted material, unless otherwise indicated, all brackets, ellipses, footnote call numbers, internal quotations, and citations have been omitted for readability. All emphasis is added unless otherwise indicated.

limitations analysis, courts have therefore separately parsed the timeliness of each piece of alleged anticompetitive conduct, including at the pleading stage. ECF No. 1727 ("Mot.") at 30-31. In reviewing limitations period issues, courts have not, as Competitors request, Opp. at 29, treated challenged acts as mere evidence "demonstrating" "monopolization conduct." That includes this Court in this MDL, which separately evaluated the timeliness of each underlying act in other MDL plaintiffs' claims. *In re Google Digital Advert. Antitrust Litig.* ("*MDL II*"), 721 F. Supp. 3d 230, 270-73 (S.D.N.Y. 2024); *In re Google Digital Advert. Antitrust Litig.* ("*MDL III*"), 2026 WL 91448, at *9 (S.D.N.Y. Jan. 13, 2026). Competitors do not even attempt to distinguish Google's cited cases or to justify treating their allegations differently from prior MDL plaintiffs'.

Decades of case law establish that Competitors' approach is wrong. A plaintiff can only assert a damages claim based on conduct that either (1) occurred during the statute of limitations window or (2) is subject to tolling. *Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 519 (S.D.N.Y. 2009) (plaintiffs "can only recover damages based on those acts" "that occurred within the statute of limitations," "and not based on previous acts"); *CSX Transp., Inc. v. Norfolk S. Railway Co.*, 114 F.4th 280, 292 (4th Cir. 2024) ("a plaintiff's recovery is limited to the damages caused by the injurious act"). In *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997), the Supreme Court affirmed that a "plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." *See also Argus Inc. v. Eastman Kodak Co.*, 552 F. Supp. 589, 593 (S.D.N.Y. 1982) ("basic teaching" "that each unlawful act committed by defendants gives rise to a separate cause of action which will be barred by the statute unless it accrued within the limitations period"); *CSX*, 114 F.4th at 292 ("a unitary theory seeking recovery for all anti-competitive acts, regardless of when they occurred, dooms" a damages claim).

Competitors cite no case—and Google is aware of none—that endorses their efforts to amalgamate time-barred claims that accrued outside the limitations window with timely claims that accrued within the limitations window. In Competitors' cited cases, Opp. at 28-29, 35, the claims were timely because they accrued to the plaintiffs during the limitations window. In *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 295-96 (2d Cir. 1979), the customer-plaintiff's claim could be based on conduct that started outside the limitations window because the plaintiff's claim accrued within the limitations window when the plaintiff made a purchase at supracompetitive prices. Competitors' claims, by contrast, accrued when they were allegedly "injured at the time the anticompetitive conduct occurred," *id.* at 295—here, before January 2019 and therefore outside the limitations period, Mot. at 9-14. In *PharmacyChecker.com v. Nat'l Ass'n of Boards of Pharmacy*, 530 F. Supp. 3d 301, 350 (S.D.N.Y. 2021), "all of the conduct that allegedly gave rise to damages occurred" during the limitations window. In *Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292, 1305-06 (9th Cir. 1983), the plaintiffs' claim was based on "an overt act in furtherance of the conspiracy" that occurred during the limitations window.

**2. The Continuing Violation Doctrine Requires a New and Independent Act; Ongoing Conduct Is Insufficient.**

Competitors also argue that the continuing violation doctrine tolls all of their claims because the fact of Google's alleged anticompetitive conduct "operating within the limitations period" constitutes a continuing violation. Opp. at 29. Competitors argue that because Google could have, but did not, end either alleged tie, "Last Look," Project Poirot, or Open Bidding before January 2019, their claims are tolled by the continuing violation doctrine. *Id*. at 15-16 ("Google had the ability to unilaterally change its conduct"). Competitors are wrong.

Second Circuit law establishes that, to satisfy the continuing violation doctrine, the defendant must commit a "new and independent act that is not merely a reaffirmation of a previous

act." *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 68 (2d Cir. 2019). As explained in Google's Motion, Mot. at 19-20, 29, courts analyzing monopolization claims have therefore required more than a decision not to cease alleged anticompetitive conduct in order to find a continuing violation. Courts have held that there was no "new and independent act" in multiple similar scenarios: (1) where the defendant did not discontinue allegedly anticompetitive algorithms, *Yelp Inc. v. Google LLC*, 2025 WL 2978394, at *7 (N.D. Cal. Oct. 22, 2025) ("to allow Yelp to state" "that, every time a user uses Google to search" subject to certain algorithms, "a new violation occurs, would effectively swallow the statute of limitations rule"); (2) where the defendant continued to enforce an allegedly anticompetitive policy, *MDL II*, 721 F. Supp. 3d at 271-73 (referring to Google's continued enforcement of line item caps as "a repeated manifestation of the same overt act"); and (3) where the defendant continued to sign up new users subject to an allegedly anticompetitive contract term, *SaurikIT, LLC v. Apple, Inc.*, 2023 WL 8946200, at *1 (9th Cir. Dec. 28, 2023). These courts rejected application of the continuing violation doctrine even if the defendants' decisions could be characterized as a "unilateral" continuation of time-barred conduct. Requiring "new and independent" conduct during the limitation period to establish the continuing violation doctrine avoids eviscerating the statute of limitations; otherwise, a plaintiff could be on notice of its claim, but the statute of limitations would essentially never start running if the defendant simply continued doing what it started doing 10, 20, or more years earlier.

Competitors' two cited cases (both Ninth Circuit cases predating *SaurikIT*), Opp. at 15, do not support Competitors' approach. *Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d 1299, 1300-01 (9th Cir. 1986), involved more than "merely providing the same product in an unchanged manner"; during the limitations window, conspirators engaged in affirmative, new "acts" "to enforce a pre-existing contract" when they shepherded tourists away from plaintiffs' shop pursuant

to their conspiracy agreement. *Yelp*, 2025 WL 2978394, at *8. *Columbia Steel Casting Co. v. Portland Gen. Electric Co.*, 111 F.3d 1427, 1432, 1444 (9th Cir. 1996), held only that an affirmative overt act in 1990 taken in furtherance of a 1972 agreement not to compete could constitute a continuing violation. The 1972 agreement, standing alone, had no effect, *id.* at 1444 ("the 1972 Agreement was not a permanent and final decision"), because it was the conspirator's subsequent, affirmative decision to carry out the conspiracy that caused the claim to accrue. Competitors, by contrast, base their claims on product design decisions Google made years before the limitations window (for some, more than a decade before); those decisions allegedly excluded Competitors from the get-go. Mot. at 9-14; *Midwestern Mach. Co., Inc. v. Nw. Airlines, Inc.*, 392 F.3d 265, 272 (8th Cir. 2004) ("In practice, where the plaintiff had actual knowledge of the initial violation and suffered sufficient injury, courts generally do not toll the statute of limitations based on a continuing violation theory."). Competitors cannot invoke the continuing violation doctrine by merely alleging that Google has maintained those product choices; they must identify new and independent acts that inflicted new injury on them. *US Airways*, 938 F.3d at 68.

#### 3. Claims Based on Alleged Ties of AdWords Demand to AdX and AdX Real-Time Bids to DFP Are Not Supported by Continuing Violations.

Competitors' claims based on the alleged ties of (1) AdWords demand to AdX and (2) AdX real-time bids to DFP accrued in 2009, so they are time-barred. Mot. at 18-22. In opposition, Competitors advance two arguments to contend that their claims based on the alleged ties are timely as continuing violations. Neither argument succeeds.

*First*, Competitors argue that Google entering into new contracts with publishers and advertisers subject to the alleged ties constituted "new and independent acts." Opp. at 19-20. However, Competitors cannot distinguish the Ninth Circuit case, *SaurikIT*, that squarely rejected their argument. Mot. at 20. Competitors try to do so by arguing that Google "has repeatedly

changed the contractual mechanisms enforcing its tying restrictions," but there is no allegation in either Complaint about any changes that reinforced the alleged "tying restrictions." Opp. at 16.[5]

Competitors analogize to two price-fixing cases, *Connecticut v. Sandoz*, 2025 WL 3043397 (D. Conn. Oct. 31, 2025), and *In re Seroquel*, 2022 WL 2438934 (D. Del. July 5, 2022), that were brought by purchasers. The claims in those cases are inapposite to the claims of excluded rivals because a purchaser's claim based on a price-fixing conspiracy accrues only when the purchaser transacts with a defendant and pays a supracompetitive price, not when defendants first fix prices. Mot. at 20-21 (discussing *Sandoz*); *Seroquel*, 2022 WL 2438934, at *8 (claims did not accrue when defendants first entered into price agreements to which plaintiffs were not parties). Neither of Competitors' cases holds that a competitor plaintiff bringing a monopolization claim based on alleged tying—who is injured as soon as the defendant's conduct excludes it—can rely on a defendant continuing to enter into the same contracts, with customers, as a continuing violation.

Competitors also compare themselves to Rumble, Opp. at 13-14, but as Google explained, Mot. at 21, Competitors are not similarly situated to Rumble. Competitors allege they have been excluded by the challenged conduct since long before the limitations window, Mot. at 9, whereas Rumble first experienced injury <u>as a competitor</u> immediately after it started to compete in 2022; Rumble's claim as a competitor therefore accrued in 2022, "which falls within the limitations period." *MDL III*, 2026 WL 91448, at *9. Google—and Competitors—have both cited cases that differentiate between claims brought by competitors and those brought by customers in determining when claims accrue. Mot. at 20-21; *Berkey Photo*, 603 F.2d at 295 ("Although the business of a monopolist's rival may be injured at the time the anticompetitive conduct occurs, a

[5] Group A Plaintiffs' single allegation that Google "unilaterally" changed the terms of its contracts with publishers, Group A Compl. ¶ 185, does not concern the relevant "tying restrictions." The contract change allegedly restricted access to <u>AdX without real-time bids</u>, but Competitors allege a tie between <u>AdX real-time bids</u> and DFP. Mot. at 9 n.7.

purchaser, by contrast, is not harmed until the monopolist actually exercises its illicit power to extract an excessive price."); *CSX Transp., Inc. v. Norfolk S. Railway Co.*, 648 F. Supp. 3d 679, 701-02 (E.D. Va. 2023) ("the limitations period for antitrust damages is generally treated differently when the plaintiff is a customer forced to pay a supracompetitive price" "than when the plaintiff is a competitor suffering harm due to partial or total exclusion from an industry").

*Second*, Competitors argue again to amalgamate separate acts for the timeliness analysis by arguing that an assortment of other acts should be treated as continuing violations of the alleged ties because they purportedly "made the ties more effective." Opp. at 17. Again, this Court has never taken that approach to analyze the timeliness of claims brought by other MDL plaintiffs based on the same underlying Google conduct. *E.g.*, *MDL III*, 2026 WL 91448, at *9 (analyzing timeliness of alleged AdX-DFP tie separate from "auction-manipulation practices").

Nor is Competitors' argument saved by citing to *Yelp*. In *Yelp*, the court found that Yelp plausibly alleged continuing violations at the pleading stage because it credited the complaint's allegations that Google made modifications to the purported tying mechanism itself, Google's Terms of Service and a search engine results page component called OneBox, during the limitations window. 2025 WL 2978394, at *4, *7-8 (finding plausibly alleged continuing violations based on (1) algorithm changes that made OneBox "more effective," and (2) "actions to expand its pre-existing contract," *i.e.*, Google's Terms of Service).

Here, of Competitors' many alleged acts, they identify only four that purportedly "made the ties more effective" and "post-date January 2019": UPR, a modification to Poirot's algorithm, a modification to Bernanke's algorithm called Alchemist, and "AwBid expansion." Opp. at 18.[6]

[6] Competitors also point to "First Look" and "Last Look" as continuing violations, Opp. at 17, but conduct that began before 2019 cannot restart the statute of limitations within the limitations period. Nor could "First Look" and "Last Look" have "made the ties more effective," Opp. at 17; they did not relate to AdWords and are not alleged to have coerced publishers into using DFP. Group A Compl. ¶¶ 417, 440; Group B Compl. ¶¶ 76-77, 165.

Unlike the allegations in *Yelp*, none of these acts are alleged to have modified the purported tying mechanism itself to reinforce the alleged ties.[7] UPR and the Bernanke modification are alleged by all Competitors; the other two post-2019 acts (Poirot and AwBid) are alleged only by Group A Plaintiffs. App. A. UPR was a DFP program that allegedly coerced publishers to use AdX, not—as Competitors allege in their tying claim—to coerce AdX customers to use DFP. Group A Compl. ¶ 225; Group B Compl. ¶¶ 194-198. Poirot concerned a buy-side product, DV360, not part of either alleged tie. Group A Compl. ¶ 220; Group B Compl. ¶ 175.[8] Bernanke allegedly varied the AdWords revenue share so that "AdWords advertisers—and by extension, AdX—won auctions" more often; it is not alleged to have coerced AdWords advertisers into using AdX or to have coerced publishers to use DFP. Group A Compl. ¶¶ 133-144; Group B Compl. ¶¶ 89-97. The alleged expansion of AwBid in 2019 enabled AdWords advertisers to purchase an additional targeting format outside AdX, thus unlinking, not tying, AdWords and AdX. Group A Compl. ¶ 181. Not surprisingly, Group A Plaintiffs make no allegation that the 2019 AwBid expansion "augmented" the tie. The AwBid change they do argue (for the first time in opposition) augmented the tie occurred in 2015, Opp. at 18 n.5, which predates the limitations window.

### B. Fraudulent Concealment Does Not Toll Competitors' Claims.

#### 1. Competitors No Longer Argue that Fraudulent Concealment Tolls Claims Based on "First Look" and "Last Look."

---

[7] Here, too, Competitors misrepresent the EDVA Opinion. Competitors assert that "Judge Brinkema found that several of these programs enhanced the power of the AdX-DFP tie." Opp. at 2. But Judge Brinkema concluded that Poirot was "a <u>reasonable</u> method for protecting Google's advertiser customers from third-party ad exchanges that were running unfair auctions"—not a means to enhance any tie. 778 F. Supp. 3d at 865 n.29. Judge Brinkema made no findings as to Project Bernanke, which the United States did not challenge as anticompetitive. *See* 9/17/24 AM Tr. at 134:10-11. AwBid was a program that "allowed some AdWords demand to bid into non-Google ad exchanges." 778 F. Supp. 3d at 825 n.15. Judge Brinkema did not conclude that expanding AwBid somehow "enhanced" the AdX-DFP tie when AwBid <u>increased</u> rival exchanges' access to AdWords demand. *See id.*

[8] Only Group A Plaintiffs made any allegation that Poirot was modified in 2019; Group B Plaintiffs did not. Opp. at 18 (citing Group B Compl. ¶¶ 180-181, which do not include such allegations). The alleged modification to Poirot's algorithm does not constitute a continuing violation—even just for Project Poirot. As Google explained in its Motion, a cursory allegation of "algorithm-tweaking" is not enough to plead a continuing violation. Mot. at 29.

Only Group B Plaintiffs alleged that claims based on "First Look" and "Last Look" were concealed. Group B Compl. ¶¶ 251-252. After Google pointed out that those allegations directly contradicted other Competitor allegations, Mot. at 23-26, Group B Plaintiffs no longer argue in opposition that fraudulent concealment applies to claims based on "First Look" and "Last Look."

**2. Competitors Have Not Plausibly Alleged that Fraudulent Concealment Tolls Claims Based on Project Poirot.**

Claims based on Project Poirot are time-barred. Mot. at 26-29. In their Opposition, Competitors maintain that Google fraudulently concealed Poirot from them, but Competitors have not sufficiently pleaded the elements of fraudulent concealment.

*First*, Competitors have not pleaded "that the defendant concealed from him the existence of his cause of action." *MDL II*, 721 F. Supp. 3d at 271. Competitors argue they satisfy this element because Poirot was "inherently 'self-concealing.'" Opp. at 21. "Inherently self-concealing fraud" refers to acts that prevent the plaintiff from discovering it has been **wronged**, such as the "passing off of a sham article as one that is genuine" or "a collusive bid purporting to reflect genuine competition." *State of N.Y. v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1084-85 (2d Cir. 1988). Competitors' lack of access to the inner workings of the Poirot algorithm did not prevent them from detecting their alleged injury. Their complaints state the opposite: Competitors allege they were aware of their injuries caused by Poirot, Group A Compl. ¶¶ 199-203 (*e.g.*, "in late 2018," OpenX "sent an email to Google showing the massive decline in DV360 spend on the OpenX Ad Exchange as of November 2018"); Group B Compl. ¶ 181 (Poirot caused "a significant economic shock" to rival exchanges), so they have not pleaded that Poirot was self-concealing.

Competitors also argue that Google made affirmative misstatements that misled them. Equativ and Group B Competitors fatally fail to allege any specific misstatement by Google directed at them. Opp. at 23 (citing only Group B Compl. ¶ 254, which contain no specific

misstatement); *In re Merrill, Bofa & Morgan Stanley Spoofing Litig.*, 2021 WL 827190, at *11 (S.D.N.Y. Mar. 4, 2021) ("defendants' misconduct" must be "toward the potential plaintiffs, not a community at large"). The remaining three—OpenX, Magnite, and PubMatic—allege that Google responded misleadingly to their inquiries about decreased DV360 bidding, but those allegations are also insufficient because OpenX, Magnite, and PubMatic have not alleged that they relied on Google's statements. *SD3, LLC v. Black & Decker (U.S.) Inc.*, 215 F. Supp. 3d 486, 497 (E.D. Va. 2016) (no fraudulent concealment where "SawStop did not rely on Defendants' statement"); *Tseng v. PeopleConnect, Inc.*, 665 F. Supp. 3d 1136, 1148 (N.D. Cal. 2023) (no fraudulent concealment "since Plaintiff did not rely on any affirmative misrepresentations supposedly made by Defendant"); *cf. MDL II*, 721 F. Supp. 3d at 271-72 (Gannett plausibly alleged concealment of EDA because Google's representations "for many years about the purpose and effects of EDA" "induced Gannett to enroll in EDA"). Competitors' allegations suggest the opposite of reliance—they continued to suspect wrongdoing because they found Google's explanations "made no sense" and were "terse, inconsistent," and "vague." Group A Compl. ¶¶ 200-204.

*Second*, Competitors argue that they "have adequately pled lack of notice" because, though they knew "the fact of some injury and the entity responsible," they did not know additional, "critical facts" about Poirot. Opp. at 24-25. Competitors analogize to this Court's prior decision finding that Gannett sufficiently alleged fraudulent concealment of EDA and to the Second Circuit case *Phhhoto Inc. v. Meta Platforms, Inc.*, 123 F.4th 592 (2d Cir. 2024). Opp. at 24-25. As explained in Google's Motion, Mot. at 27-28, both cases highlight that Competitors <u>were</u> on inquiry notice. Though Gannett was aware "that EDA was not operating as promised," according to Gannett's complaint, it allegedly had no way to know "the anticompetitive effects of EDA," as "Google has never shared data or analytics that were necessary to track how AdX transactions

competed with direct sales." *MDL II*, 721 F. Supp. 3d at 271-72. Competitors, on the other hand, were not just aware that something was purportedly amiss; as they allege, they had the requisite "data or analytics" to identify the trends caused by Poirot. Mot. at 12-13.

As to *Phhhoto*, that plaintiff "reasonably could have believed that Meta had a sincere interest in the companies' continued collaboration" because Meta's actions had never previously given Phhhoto any indication that "Meta was engaged in an anticompetitive scheme to destroy Phhhoto's business." 123 F.4th at 607. Competitors have alleged the opposite: that Google excluded their businesses via openly known anticompetitive conduct since 2009. Mot. at 9. By 2013, Competitors banded together to invent header bidding for the express purpose of "negating" Google's alleged anticompetitive conduct. *Id.* at 10. Competitors make the implausible argument that, from their perspective in 2017 and 2018, it was "unlikely" "that Google's true intent was anticompetitive," Opp. at 23—despite this long history, predating Poirot, in which Competitors allege that they knew about and responded to Google's allegedly anticompetitive conduct.[9]

As to the third element of fraudulent concealment, diligence, Competitors do not dispute that the Court need not reach whether they have alleged diligence if, as here, they were already on notice of their claims before their limitations period and still failed to bring suit. Mot. at 29 n.18.[10]

### C. No Doctrine Tolls Claims Based on Open Bidding.

PubMatic, Equativ, and Group B Plaintiffs do not argue in opposition that their Open Bidding claims are independently saved by any tolling doctrine, only that their timeliness should not be assessed separately. Opp. at 28. That argument fails for the reasons above. *Supra* § I.A.1.

### D. PubMatic and Equativ Have Not Adequately Pleaded that the Speculative Damages

[9] *E.g.*, Group A Compl. ¶¶ 65-66, 72-73, 240, 242, 258-259, 273-274, 311-314, 318, 376-377; Group B Compl. ¶¶ 146-147, 152, 158.

[10] Even were the Court to reach diligence, Equativ and Group B Plaintiffs have not specifically alleged that they undertook "investigative efforts" as to Project Poirot in particular, so they have failed to plead diligence. Opp. at 27 (identifying Poirot-related diligence only for OpenX, Magnite, and PubMatic).

**Doctrine Tolls Their Claims.**

Only PubMatic and Equativ argue that all of their claims "are independently tolled by the speculative-damages doctrine." Opp. at 29-31. Citing to allegations by Equativ, the Opposition argues that all claims should be tolled because certain algorithms, including Poirot, were "impossible" for Equativ and PubMatic to "contemporaneously detect, quantify, or understand," such that a plaintiff could not have "estimated the nature or amount of their damages" "before government enforcement" revealed how the algorithms worked. Opp. at 29-31.[11]

This speculative damages argument fails for multiple reasons. *First*, the speculative damages doctrine applies only in "the rare case in which the damages caused by an antitrust injury are so speculative that the court is unwilling to estimate them." *Higgins v. N.Y. Stock Exch., Inc.*, 942 F.2d 829, 832 (2d Cir. 1991). But Equativ alleges only that it did not contemporaneously know how Google's algorithms worked before bringing suit, Opp. at 29-31, not that a court would have been unable to calculate damages with the benefit of discovery had Equativ timely filed suit.

*Second*, Equativ and PubMatic cite as support a single district court case *Rite Aid Corp. v. Am. Exp. Travel Related Servs. Co.*, 708 F. Supp. 2d 257, 266 (E.D.N.Y. 2010), but the Second Circuit rejected *Rite Aid*'s holding that "performance during the limitations period pursuant to an illegal prelimitations contract can constitute an overt act if resulting damages were speculative at the time of contracting," and instead adopted a more "categorical rule" that "performance of a contract" is "a manifestation of" "the decision to enter the contract, rather than an independent overt act of its own." *US Airways*, 938 F.3d at 68-69 (specifically abrogating *Rite Aid* by name).[12]

[11] As explained above, timeliness of claims based on separate acts must be analyzed separately. *Supra* § I.A.1. Arguments that damages from Poirot, SSDRS, and Bernanke are subject to the speculative damages exception have no bearing on the timeliness of Plaintiffs' other claims.

[12] *Rite Aid* is also inapposite because, there, the plaintiffs were purchasers under a contract that would force them to pay supracompetitive prices at undefined points in the future for unidentified quantities of goods, making the court unable to estimate damages at the time of contracting. 708 F. Supp. 2d at 265-66.

Though PubMatic attempts to join in Equativ's failed speculative damages argument in the Opposition, PubMatic cannot because it did not make any such allegations in its Complaint. PubMatic alleged a different speculative damages theory that, had PubMatic "attempted to bring suit regarding the ties between DFP and AdX in 2013, PubMatic would have had no way to predict the damages that tie would cause many years later." Group A Compl. ¶ 357; *see also* Opp. at 30 (citing no other allegation in PubMatic's Complaint). As Google explained in its Motion, that argument fails because a timely suit could presumably have prevented future damages caused by unknown future conduct, Mot. at 22; PubMatic makes no response, *see* Opp. at 29-31.

## II. Competitors' Claims Based on Open Bidding Should Be Dismissed for Failure To State a Claim.

Claims based on Open Bidding should be dismissed for failure to state a claim, as this Court has done in prior cases. PubMatic, Equativ, and Group B Plaintiffs simultaneously argue that they "did not plead Open Bidding as a standalone Section 1 or Section 2 violation," but also that they plausibly alleged "Open Bidding as an independent anticompetitive act." Opp. at 32. As this Court has previously recognized, only allegations about "distinct and separately actionable anticompetitive conduct" are "actionable claims." *MDL III*, 2026 WL 91448, at *8. Claims based on Open Bidding as "distinct and separately actionable anticompetitive conduct" should be dismissed (as should any tolling argument based on Open Bidding as an anticompetitive act).

Creating a new product, like Open Bidding, with "traits that may be both more and less appealing to customers than header bidding" is not anticompetitive; "even a monopolist must generally be responsive to the demands of customers." *In re Google Digital Advert. Antitrust Litig.* ("*MDL I*"), 627 F. Supp. 3d 346, 395 (S.D.N.Y. 2022); *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 999-1000 (9th Cir. 2010) ("product improvement by itself does not violate Section 2, even if it" "harms competitors as a result"). Competitors must plead

that the product was associated with some "anticompetitive abuse." *Allied Orthopedic*, 592 F.3d at 1000. Group B Plaintiffs' claims fail because they have made no such allegation of associated anticompetitive conduct for Open Bidding. Opp. at 32-34 (citing only Group A allegations).

As to PubMatic and Equativ, in opposition they do not (and cannot) point to any allegation that addresses the key deficiency in their Complaints: they have not alleged "the anticompetitive effect, if any, that Exchange Bidding has had." *MDL I*, 627 F. Supp. 3d at 395; *MDL II*, 721 F. Supp. 3d at 264-65. It is not enough to allege that they were injured when they participated in Open Bidding because they were allegedly forced to pay a 5% fee, win fewer impressions, and share data with Google, *see* Opp. at 33-34. They must allege that Open Bidding caused harm to <u>competition in the market</u>, which demands more than individualized harms to certain competitors. *Giordano v. Saks Inc.*, 654 F. Supp. 3d 174, 207 (E.D.N.Y. 2023) ("An antitrust plaintiff must allege not only cognizable harm to herself, but an adverse effect on competition market-wide."); *Cenedella v. Metro. Museum of Art*, 348 F. Supp. 3d 346, 362 (S.D.N.Y. 2018) (dismissing complaint that alleged harm to "a select few artists" but did not allege "how the alleged conspiracy affects" the "market as a whole"). PubMatic and Equativ therefore cannot plead anticompetitive effects based only on their own alleged injuries from participating in Open Bidding.

## III. Group B Plaintiffs Should Not Be Permitted To Seek Damages for Their Allegations Relating to Lawful Refusals To Deal.

Group B Plaintiffs concede that they are not alleging that DFP's use of a waterfall, a "black box," and Google's refusal to share data with rivals are "anticompetitive acts supporting Group B's single claim for monopolization." Opp. at 34. At the same time, however, they suggest that their damages may still be based in part on these acts—even though they are not alleged to be independently anticompetitive. *Id.* at 35. The Court should dismiss Group B Plaintiffs' claims to the extent they are predicated on these lawful refusals to deal. Mot. at 35.

## TRUSTX-SPECIFIC ARGUMENT

### I. Procedural History

On April 16, 2026, competitor TRUSTX Digital Advertising Services, Inc. ("TRUSTX") filed a complaint against Google. ECF No. 1, No. 1:26-cv-3135 (S.D.N.Y.) ("TRUSTX Compl."). On May 6, 2026, the Court entered an order permitting: Google's motion to dismiss arguments to apply against TRUSTX's complaint, TRUSTX to join in Competitors' Opposition, and Google to make any TRUSTX-specific arguments for dismissal in a 5-page section. ECF No. 1743.

### II. Argument

All arguments in Google's Motion to Dismiss and this reply brief relating to Group B Plaintiffs apply in equal measure to TRUSTX.

TRUSTX's claims based on (1) alleged ties of AdWords demand to AdX and AdX real-time bids to DFP, (2) "First Look" and "Last Look," (3) Project Poirot, and (4) Open Bidding should be dismissed as time-barred. Those claims accrued before January 2019. TRUSTX alleges that it has been competing in ad tech against Google, and excluded by Google's conduct, for close to a decade: TRUSTX was "founded in 2016 by 30 prominent members of Digital Content Next," including "Disney, Fox News, NBCUniversal, and Paramount," and launched its ad exchange in 2017. TRUSTX Compl. ¶¶ 9, 216; Mot. at 9-14, 18-30 (citing Group B Plaintiffs' allegations of harm by Google's conduct, which are identical to TRUSTX's). TRUSTX joined in Competitors' Opposition; TRUSTX therefore does not dispute that Competitors' claims accrued outside the limitations window, and makes no TRUSTX-specific allegation that it was first harmed as a competitor within the limitations period.

When each act is analyzed separately for timeliness, *supra* § I.A.1, no tolling doctrine saves TRUSTX's time-barred claims. TRUSTX has not pleaded any new and independent act sufficient to constitute a continuing violation that would restart the statute of limitations window. Mot. at

18-21, 24, 29; *supra* § I.A. TRUSTX does not join PubMatic and Equativ in alleging that speculative damages tolling applies.

Nor has TRUSTX sufficiently pleaded that fraudulent concealment saves its claims based on "First Look," "Last Look," or Project Poirot. Like other Competitors, TRUSTX alleges that it is a technologically sophisticated competitor who had the capability to—and did—identify, observe, and document the effects of Google's time-barred conduct. TRUSTX touts that, as "the premium private marketplace," it "has invested heavily in optimizing technology to fulfill its unique mission." TRUSTX Compl. ¶¶ 9, 94. In response to Google's allegedly anticompetitive conduct, TRUSTX "invested substantial resources in data analysis and bid optimization" to analyze DFP's logic for selecting a winning bid. *Id.* ¶ 57. In addition, TRUSTX joined other rival exchanges "to lead the implementation" of header bidding, with the goal of "mitigating the effects of Google's self-preferencing of AdX." *Id.* ¶ 99.

As to "First Look" and "Last Look," TRUSTX joins Group B Plaintiffs in abandoning any fraudulent concealment argument in their Opposition. *Supra* § I.B.1. As to Project Poirot, TRUSTX—whose allegations are identical to Group B Plaintiffs'—has not sufficiently pleaded the requisite elements of fraudulent concealment: Google did not conceal from TRUSTX its cause of action; TRUSTX was on notice of its claim; and, even if TRUSTX were not on notice, TRUSTX has not alleged that it acted with diligence to uncover its claim. TRUSTX Compl. ¶ 129; Group B Compl. ¶ 181 (alleging exchanges saw "a significant economic shock" when Poirot caused DV360 transactions on rival exchanges to decrease); Mot. at 26-29; *supra* § I.B.2.

Like Group B Plaintiffs, TRUSTX also pleads claims based on (1) Open Bidding and (2) Google's use of the waterfall and alleged refusal to share proprietary information with its competitors. TRUSTX Compl. ¶¶ 188, 213. Those claims should be dismissed for failure to state

a claim. TRUSTX has not alleged facts establishing that Open Bidding had anticompetitive effect, Mot. at 33-34; *supra* § II, and its allegations about DFP's use of the waterfall, the "black box," and refusal to share data with competitors challenge lawful refusals to deal, Mot. at 34-35; *supra* § III.

Dated: June 12, 2026

Respectfully submitted,

*/s/ Martha L. Goodman*

Martha L. Goodman
Jeannie S. Rhee
Karen L. Dunn
William A. Isaacson
Jessica E. Phillips
Amy J. Mauser
**DUNN ISAACSON RHEE LLP**
401 Ninth Street, NW
Washington, DC 20004
Telephone: (202) 240-2900
mgoodman@dirllp.com
jrhee@dirllp.com
kdunn@dirllp.com
wisaacson@dirllp.com
jphillips@dirllp.com
amauser@dirllp.com

Erin J. Morgan
**DUNN ISAACSON RHEE LLP**
11 Park Place
New York, NY 10007
Telephone: (202) 240-2900
emorgan@dirllp.com

Bradley D. Justus
Allison M. Vissichelli
**AXINN, VELTROP & HARKRIDER LLP**
1901 L Street, NW
Washington, DC 20036
Telephone: (202) 469-3532
bjustus@axinn.com
avissichelli@axinn.com

*Attorneys for Defendants Google LLC and Alphabet Inc.*

**APPENDIX A: Tolling Arguments Advanced by Competitor Plaintiffs**

Two columns added to the table in Google's Motion, Mot. at 7-8, describe arguments made by Competitors that are specific to each alleged anticompetitive act and that vary across Competitor Plaintiffs.

| **Conduct** | **Began and Date of Awareness** | **Group A Complaint/Arguments (OpenX, Magnite, Equativ, PubMatic)** | **Group B Complaint/Arguments (Index Exchange, Kargo, Sovrn, TRUSTX)** |
|---|---|---|---|
| AdX-DFP Tie and AdWords-AdX Tie | 2009 | Continuing violations based on four post-January 2019 acts: (1) UPR, (2) a modification to Poirot, (3) a modification to Bernanke, and (4) "AwBid expansion." Opp. at 17-18 (citing Group A Compl. ¶¶ 179, 181, 188-189). | Continuing violations based on two post-January 2019 acts: (1) UPR, and (2) a modification to Bernanke. Opp. at 17-18 (citing Group B Compl. ¶¶ 95, 193-198). |
| "First Look" | By 2010 | No "First Look"-specific tolling arguments in opposition or complaint. | Fraudulent concealment is alleged, Group B Compl. ¶ 251, but Competitors no longer argue fraudulent concealment in opposition. |
| "Last Look" | 2013-2014 | No "Last Look"-specific tolling arguments in opposition or complaint. | Fraudulent concealment is alleged, Group B Compl. ¶ 252, but Competitors no longer argue fraudulent concealment in opposition. |
| Project Poirot | 2017 and 2018 | OpenX, PubMatic, and Magnite: Fraudulent concealment based on (1) self-concealing fraud and alleged affirmative statements directed at OpenX, PubMatic, and Magnite; (2) lack of notice; and (3) diligence demonstrated by investigative efforts specific to Poirot. Opp. at 20-28 (citing Group A Compl. ¶¶ 198-204).<br><br>PubMatic: Speculative damages because PubMatic could not have predicted future damages caused by | Fraudulent concealment based on (1) self-concealing fraud (but no specific alleged misstatements directed at Group B Plaintiffs); (2) lack of notice; and (3) diligence demonstrated by bringing suit (but no specific investigative efforts undertaken by Group B Plaintiffs). Opp. at 20-28 (citing only Group B Compl. ¶¶ 254 and 258-259, which contain no specific misstatements or diligence efforts). |

| **Conduct** | **Began and Date of Awareness** | **Group A Complaint/Arguments (OpenX, Magnite, Equativ, PubMatic)** | **Group B Complaint/Arguments (Index Exchange, Kargo, Sovrn, TRUSTX)** |
|---|---|---|---|
| | | the ties had it timely sued. Opp. at 29-31 (citing Group A Compl. ¶ 357).<br><br>Equativ: Fraudulent concealment based on (1) self-concealing fraud (but no specific alleged misstatements directed at Equativ); (2) lack of notice; and (3) diligence demonstrated by bringing suit (but no specific investigative efforts undertaken by Equativ). Opp. at 20-28 (citing Group A Compl. ¶¶ 198-204, which contains no allegations specific to Equativ).<br><br>Speculative damages because Equativ could not "contemporaneously detect, quantify, or understand" Poirot. Opp. at 29-31 (citing Group A Compl. ¶¶ 390-403). | |
| Open Bidding | 2018 | PubMatic, Equativ: No Open Bidding-specific tolling arguments in opposition or the complaint. | No Open Bidding-specific tolling arguments in opposition or the complaint. |