KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE

1615 M STREET, N.W.

SUITE 400

WASHINGTON, D.C. 20036-3215

————

(202) 326-7900

FACSIMILE:

(202) 326-7999

July 7, 2026

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:    *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010-PKC
[rel: *Dotdash Meredith Inc. v. Google LLC*, No. 1:25-cv-07194-PKC; *Insider, Inc. v. Google LLC*, No. 1:25-cv-07409-PKC; *Slate Group LLC v. Google LLC*, No. 1:25-cv-07697-PKC; *CMI Marketing, Inc. v. Google LLC*, No. 1:25-cv-08630-PKC; *Advance Publications, Inc. v. Google LLC*, No. 1:26-cv-00343-PKC; *McClatchy Media Company v. Google LLC*, No. 1:26-cv-00339-PKC; *Vox Media, LLC v. Google LLC*, No. 1:26-cv-00325-PKC; *The Atlantic Monthly Group LLC v. Google LLC*, No. 1:26-cv-00272-PKC; *Penske Media Corporation v. Google LLC*, No. 1:26-cv-00225-PKC; *Ziff Davis, Inc. v. Google LLC*, No. 1:26-cv-01055-PKC; and *Los Angeles Times Commc'ns LLC v. Google LLC*, No. 1:26-cv-01593]

Dear Judge Castel:

Premium Publishers respectfully reply to Google's opposition to their request for source code change logs. *See* MDL Dkt. No. 1886 ("Opp."). Google does not respond to Professor Mickens' declaration explaining the relevance and importance of change logs for reviewing the April 2026 source code snapshot. Google also concedes it produced change logs with each source code snapshot before April 2026. *See* Opp. at 3. Because Google's few, remaining arguments are meritless, the Court should grant the relief requested in Premium Publishers' letter of June 26. *See* MDL Dkt. No. 1879 ("Ltr."). The Court has scheduled a conference for Wednesday, July 8, 2026. *See* MDL Dkt. No. 1889.

*First*, Google insists change logs are "unrelated to the[] allegations" in this case, and that Premium Publishers have not "even attempt[ed] to explain the logs' relevance." Opp. at 2. But the April 2026 code snapshot, and how it compares to prior versions, is plainly relevant to these cases – which is why Google agreed to produce the snapshot in the first place.

Google inflicts ongoing harm on Premium Publishers' businesses. *See*, *e.g.*, Ziff Davis Compl. ¶ 253 ("As a result of Google's unlawful conduct, Ziff Davis has suffered, and continues to suffer, monetary harm in an amount to be proved at trial."). Premium Publishers further allege

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable P. Kevin Castel
July 7, 2026
Page 2

that Google "secretly implement[s] changes to the auction mechanisms behind-the-scenes," that the "impact of Google's misrepresentations carries forward through today," and that Google's "auction manipulations continued to lack transparency, occurred out of the public eye, and had effects that were not immediately obvious or well understood." *Id.* ¶¶ 139-140. Many auction manipulations remain in operation today, often in secret or with limited transparency. *See*, *e.g.*, *id.* ¶ 73 (Minimum Bid to Win); ¶ 161 (EDA); ¶ 173 (Bernanke). And they have changed over time: Bernanke, for example, was not imposed at a fixed moment in 2013. *Compare* Opp. at 5 (asserting 2013 Bernanke date), *with*, *e.g.*, Ziff Davis Compl. ¶¶ 172-173 (describing evolution of Bernanke from per-publisher Bernanke, Global Bernanke, and Alchemist). The source code change logs will enable Premium Publishers to determine how Google's algorithms continue to operate so that they can recover the full measure of their damages under the antitrust laws.

Two examples demonstrate the point. Professor Mickens has discovered changes to the Bernanke/Alchemist algorithm that potentially make it more harmful to Premium Publishers. *See* MDL Dkt. No. 1880 ("Mickens Decl.") ¶ 13. This Court already has held that Bernanke plausibly violates the Sherman Act, *see In re Google Digital Advert. Antitrust Litig.*, 627 F. Supp. 3d 346, 389 (S.D.N.Y. 2022), so getting to the bottom of it is not a "fishing expedition," Opp. at 6. Google responds that Premium Publishers should not be permitted further discovery because they do not plead 2026 revisions to Bernanke in their complaints. *Id.* But Project Bernanke is squarely at issue in these cases, *see*, *e.g.*, Ziff Davis Compl. ¶¶ 165-179, which includes any modifications Google has made, *see Buchanan v. City of New York*, 556 F. Supp. 3d 346 (S.D.N.Y. 2021) ("developing these detailed factual supports for the parties' claims is precisely the role discovery is designed to serve"). Nor could Premium Publishers have known of recent Bernanke modifications at the pleading stage, because "the first rule of Bernanke is we don't talk about Bernanke." Ziff Davis Compl. ¶ 177. And even if (contrary to fact) a complaint amendment were necessary, "it is well established that amending a complaint to add details learned through discovery is permissible." *Hough v. Petty*, 2023 WL 7687866, at *4 (E.D.N.Y. Oct. 10, 2023) (citing *Friedl v. City of New York*, 210 F.3d 79, 88 (2d Cir. 2000)) (collecting cases). This Court previously has allowed Plaintiffs in these cases to amend complaints to conform with new facts and findings in the DOJ action. *See* MDL Dkt. Nos. 1106; 1190. If the Court found it necessary, Premium Publishers could do the same here.

Google also claims it has rescinded one unlawful practice, Unified Pricing Rules ("UPR"), which it argues "cast[s] doubt on Group 2 Publishers' continuing damages claims." Opp. at 3, 6. Yet Google would prohibit Premium Publishers from reviewing the source code change logs to test whether and how Google changed UPR. Google's demand that Premium Publishers first review a forthcoming document production rings hollow, as business documents are not a substitute for change logs. *See* Mickens Decl. ¶ 11. Likewise meritless is Google's complaint that Premium Publishers "have not identified what changes logs are relevant to the 2025 update." Opp. at 6. Google knows better than anyone what source code it used to effect changes to UPR. Indeed, Google already should have identified and produced the relevant source code as part of the April 2026 snapshot.

Kᴇʟʟᴏɢɢ, Hᴀɴsᴇɴ, Tᴏᴅᴅ, Fɪɢᴇʟ & Fʀᴇᴅᴇʀɪᴄᴋ, ᴘ.ʟ.ʟ.ᴄ.

The Honorable P. Kevin Castel
July 7, 2026
Page 3

*Second*, Google complains that Group 2 Premium Publishers requested the April 2026 snapshot while Group 1 Premium Publishers did not. *See* Opp. at 1-2 & n.1. That is a distraction. The Court never has ordered, and Google never has requested, that a Group 2 Publisher (Ziff Davis, for example) cannot serve a discovery request simply because a Group 1 Publisher (Raptive, to take another example) declined to do so. Quite the contrary, Premium Publishers in later-filed cases always have been permitted to serve their own discovery requests, and the Court ordered (at Google's request) that all discovery in the Group 2 cases should be produced in the Group 1 cases. *See* MDL Dkt. Nos. 1391; 1444; 1502. Google produced the April 2026 snapshot anticipating it would be part of a joint record shared by Group 1 and Group 2 Premium Publishers, as it acknowledges in its letter. *See* Opp. n.1.

The problem now is that Google's production is incomplete: it did not produce the change logs that have come with every other source code production. Group 1 and Group 2 Premium Publishers are equally disadvantaged as a result. All Premium Publishers are governed by a single expert discovery schedule (which, again, Google requested). They have retained Professor Mickens as their source code expert, who will submit one set of reports on their behalf. *See* Mickens Decl. ¶¶ 5, 7. Google's failure to produce change logs, as they have before, has made it substantially more difficult for Professor Mickens to conduct his review on behalf of all Premium Publishers, Group 1 and Group 2 alike.

*Third*, Google asserts that Premium Publishers "did not seek change logs" in their Rule 34 document requests. Opp. at 2. That is incorrect, *see* Ltr. at 2; MDL Dkt. No. 1879-1 at 8, 13 (RFPs requesting "change logs"), as Google later concedes, *see* Opp. at 7 (noting RFPs' "definition of 'Source Code' included associated 'change logs'"). Google pivots to complain that the request for change logs was "facially overbroad." *Id.* But Premium Publishers requested only what Google had produced four times before, and the current request is substantially narrower – rather than seek change logs for *all* files in the relevant snapshot as originally requested, Premium Publishers request change logs for only a subset: a few dozen of the more than 100,000 files in the code base. *See* Ltr. at 3-4; Mickens Decl. App. A. Premium Publishers offered that compromise because Google asked them to identify a subset of relevant files during a meet and confer. *See* MDL Dkt. No. 1886-1, Ex. A to Opp., at 8-11. Yet Google now suggests that no "subset of . . . files" could be a "reasonable" number. Opp. at 8. And Google nowhere proves up the burden of producing change logs for the requested subset – much less with "competent evidence." *Fletcher v. Atex, Inc.*, 156 F.R.D. 45, 54 (S.D.N.Y. 1994). The Court should reject Google's shifting positions and order it to do (far less than) what it has done before.

*Finally*, Google faults Premium Publishers for waiting until May 12 – "just over three weeks before the then-close of fact discovery" – to raise the issue of change logs. Opp. at 3. But Premium Publishers had requested change logs months earlier; Google had agreed to produce a snapshot and never objected to providing change logs as it had before; and Premium Publishers expected the change logs to be on the source code computer when they started their review. To their surprise, however, the change logs were missing when source code review began on May

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable P. Kevin Castel
July 7, 2026
Page 4

12, so Premium Publishers immediately raised the issue.  Google's suggestion that Premium Publishers delayed in seeking change logs is baseless.

*     *     *

Premium Publishers respectfully request that the Court compel Google to produce the change logs for the files identified in Appendix A to Professor Mickens's declaration.  We thank the Court for its attention to this matter and appreciate the opportunity to discuss further at tomorrow's conference.


Dated:  July 7, 2026

Respectfully submitted,

/s/ *John Thorne*

John Thorne
Evan T. Leo
Joseph S. Hall
Daniel G. Bird
Bradley E. Oppenheimer
Bethan R. Jones
Daniel S. Severson
Christopher C. Goodnow
Eliana M. Pfeffer
Eric J. Maier
Mark P. Hirschboeck
Jonathan I. Liebman
Rund M. Khayyat
Matthew N. Drecun
Jahvonta A. Mason
Reno G. Varghese
Sean P. Quirk
Eric X. Xu
Zachary J. Tauscher
Seth D. Crockett
Christie M. Lawrence
KELLOGG, HANSEN, TODD, FIGEL
& FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, DC 20036
Tel.: (202) 326-7900
Fax: (202) 326-7999
Email: jthorne@kellogghansen.com
          eleo@kellogghansen.com
          jhall@kellogghansen.com

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable P. Kevin Castel
July 7, 2026
Page 5

dbird@kellogghansen.com
boppenheimer@kellogghansen.com
bjones@kellogghansen.com
dseverson@kellogghansen.com
cgoodnow@kellogghansen.com
epfeffer@kellogghansen.com
emaier@kellogghansen.com
mhirschboeck@kellogghansen.com
jliebman@kellogghansen.com
rkhayyat@kellogghansen.com
mdrecun@kellogghansen.com
jmason@kellogghansen.com
rvarghese@kellogghansen.com
squirk@kellogghansen.com
exu@kellogghansen.com
ztauscher@kellogghansen.com
scrockett@kellogghansen.com
clawrence@kellogghansen.com

*Counsel for Premium Publishers*

cc:   All Counsel of Record via ECF