# EXHIBIT G

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
---------------------------x
UNITED STATES, et al.,      :     Civil Action No.:
                            :     1:23-cv-108
          Plaintiffs,       :
     versus                 :
                            :     Friday, January 26, 2024
GOOGLE LLC,                 :     Alexandria, Virginia
                            :     Pages 1-31
          Defendant.        :
---------------------------x
```

        The above-entitled motions hearing was heard before the Honorable John F. Anderson, United States Magistrate Judge.  This proceeding commenced at 10:06 a.m.

A P P E A R A N C E S:

```
FOR THE PLAINTIFF:     AARON TEITELBAUM, ESQUIRE
                       UNITED STATES DEPARTMENT OF JUSTICE
                       ANTITRUST DIVISION
                       450 Fifth Street, NW
                       Washington, D.C.  20530
                       (202) 894-4266

                       JONATHAN HARRISON, II, ESQUIRE
                       OFFICE OF THE ATTORNEY GENERAL
                       OFFICE OF THE SOLICITOR GENERAL
                       202 North Ninth Street
                       Richmond, Virginia  23219
                       (804) 786-7704

                       WILLIAM HOCHUL, ESQUIRE
                       OFFICE OF THE UNITED STATES ATTORNEY
                       2100 Jamieson Avenue
                       Alexandria, Virginia  22314
                       (703) 299-3700
```

1

Stephanie Austin, RPR, CRR USDC/EDVA (571) 298-1649

                        A P P E A R A N C E S:

FOR THE MOVANTS:        CHARLES BENNETT MOLSTER, III, ESQUIRE
                        THE LAW OFFICES OF CHARLES B. MOLSTER,
                        III, PLLC
                        2141 Wisconsin Avenue, NW
                        Suite M
                        Washington, D.C.  20007
                        (703) 346-1505

                        JOHN THORNE, ESQUIRE
                        DANIEL BIRD, ESQUIRE
                        KELLOGG HANSEN TODD
                        FIGEL & FREDERICK PLLC
                        Summer Square
                        1615 M Street, NW
                        Suite 400
                        Washington, D.C.  20036
                        (202) 326-7900

FOR THE DEFENDANT:      BRADLEY JUSTUS, ESQUIRE
                        JAMES HUNSBERGER, ESQUIRE
                        AXINN VELTROP & HARKRIDER, LLP
                        1901 L Street, NW
                        Washington, D.C.  20036
                        (202) 699-0950

                        BLAKE PESCATORE, ESQUIRE
                        AXINN VELTROP & HARKRIDER, LLP
                        114 West 47th Street
                        New York, New York  10036
                        (212) 782-3181

COURT REPORTER:         STEPHANIE M. AUSTIN, RPR, CRR
                        Official Court Reporter
                        United States District Court
                        401 Courthouse Square
                        Alexandria, Virginia  22314
                        (571) 298-1649
                        S.AustinReporting@gmail.com

        (PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING,
        TRANSCRIPT PRODUCED BY COMPUTERIZED TRANSCRIPTION.)

                                                               2

P R O C E E D I N G S

THE DEPUTY CLERK:  Calling Civil Action Matter Number 23-cv-108, United States, et al. versus Google LLC.

THE COURT:  Good morning.  I'll have counsel introduce themselves for the record, please.

MR. TEITELBAUM:  Good morning, Your Honor.  Aaron Teitelbaum for the United States from the Antitrust Division.

MR. HARRISON:  Jonathan Harrison from the Virginia Attorneys General's Office.

MR. HOCHUL:  William Hochul for the United States.

THE COURT:  Thank you.

MR. MOLSTER:  Good morning, Your Honor.  Charles Molster on behalf of the movants, Daily Mail and Gannett.  Also with me at counsel table is John Thorne and Daniel Bird.  And with the Court's permission, Mr. Thorne will argue our motion.

THE COURT:  Okay.  Thank you.

MR. JUSTUS:  Your Honor, Bradley Justus from Axinn for Google.  I have my colleagues James Hunsberger and Blake Pescatore, and I'll be arguing.

THE COURT:  Okay.  Thank you.

Well, good morning, everybody.  Happy new year.  It should be an interesting year for everyone, I suspect.

So, Mr. Thorne, the first question for you is, you

3

Stephanie Austin, RPR, CRR USDC/EDVA (571) 298-1649

know -- and I've read everything, so this won't take long, I don't think.

The relief you're -- your clients are in the New York action; right?

MR. THORNE:  That's correct, Your Honor.

THE COURT:  Why are you involved at all in the Texas case?  You asked for relief that would apply to the Texas case.  What basis do you have to come into our court asking for something with the Texas Attorney General and others?

MR. THORNE:  The MDL plaintiffs -- by the way, Your Honor, John Thorne for Gannett and Daily Mail.  Those are my two clients.

THE COURT:  All right.

MR. THORNE:  Gannett, the largest circulation U.S. newspaper; Daily Mail, the most popular online --

THE COURT:  All right.

MR. THORNE:  Thanks.

The MDL plaintiffs have been coordinating with Texas since we were ordered --

THE COURT:  Texas didn't want to be there, so they left.  So why am I doing anything on your behalf that has to do with Texas?

MR. THORNE:  Your Honor, I represent -- I'm on behalf of the MDL plaintiff.  I carry no water for Texas

4

other than --

THE COURT: Well, you're asking for relief for Texas.

MR. THORNE: Relief for the parties that are in the MDL or were in the MDL.

When Congress passed the Venue Act, they wanted to enhance state enforcement, and it seems odd that we would somehow prejudice a state that has moved back to its home forum by not giving them the same ability that other plaintiffs would have in getting access to --

THE COURT: They had the opportunity to be here. They had the opportunity to be involved in the MDL action here. They had the opportunity to negotiate here under the protective order and they didn't do it. But, for some reason, you, a non-party in this case, a party in the New York case, are coming in and asking for relief that would also apply to the Texas case.

I'm just -- I'm confused as to why you, on behalf of your client that is in the New York case, apparently want me to do something that would impact actions in Texas for parties who were in the New York case but fought hard to get out of the New York case to be able to go back to Texas.

MR. THORNE: Your Honor, the only effect we're looking for is relief from this Court for either the Department of Justice and Virginia and other states, or

5

Google, if it changes its mind and wants to, to share expert materials with the other people that have access to the same raw factual underlying material.  It's a -- it just seemed logical to include Texas and others who were in that same group that were coordinated with the Virginia parties all the way through the Virginia fact discovery.

Your Honor, I have no brief for Texas.  It seemed like a logical piece of the relief to request here.

THE COURT:  And what is logical about the relief that you're asking?  You have an expert schedule in New York that the Court has entered; right?

MR. THORNE:  That's correct, Your Honor.

THE COURT:  Okay.  And what is that schedule?

MR. THORNE:  The schedule is our first expert report is due in August, and then a rebuttal report and depositions that all concludes by the end of this year.  That's our expert schedule.  This motion is not about our expert schedule.  This is because --

THE COURT:  Oh, it is.  It is about the expert schedule.  You want to see the experts' reports in our case before you have to do your expert reports in New York.

MR. THORNE:  For the purpose of being efficient in the fact discovery.  As you know, the amount of factual material that's been produced here is huge.

THE COURT:  All right.  Well, let me ask you this,

6

in New York, is there fact discovery and then expert discovery?

MR. THORNE: That's correct, Your Honor.

THE COURT: So what's more -- why is it going to be any -- if we didn't have this case going on, why do you -- what would be any different in the fact discovery and the expert discovery in New York?

MR. THORNE: If there were two plaintiffs in two cases, wherever they're located -- and here we've got the prior efficiency that they were coordinated, we have access to literally the same --

THE COURT: All the fact discovery.

MR. THORNE: All the same fact discovery.

THE COURT: Right. So that got coordinated, you know --

MR. THORNE: Two --

THE COURT: All the fact discovery in this case is done.

MR. THORNE: Two plaintiffs trying to figure out what's the truth of the matter, what did Google do. It's hard to do the discovery that we have to do, given the volume of materials.

If DOJ has identified here's where Project Bernanke happened, these documents, look at these documents, if that's in their expert reports, they will save us time.

7

That will help focus the discovery we're doing. We're headed towards something north of 100 more depositions, Your Honor. Texas is taking 40. They're in the process -- they're dragging us into coordination with Texas. Google is taking another 40 Texas depositions, another 15 MDL depositions. We're looking at a large body of additional fact discovery that can be done more efficiently if we have access to -- only if people want to do it. If the Department of Justice had no interest in sharing its expert reports, we wouldn't be here. If Google changes its mind or wants to share, what should stop them?

THE COURT: So you're telling me if the United States has got an expert that says X, you're not going to do any discovery about whatever some expert that the United States has in this case that says X?

MR. THORNE: If the United States has got an expert that says, here are the 20 documents that show where Bernanke happened -- you know, I'll give you a very concrete example. We have -- we have a software source code expert that has been in sort of a cramped room at the Axinn firm up in New York trying to read the source code. I assume DOJ's got that, too. It's literally where the crime scene is, where the software was changed to manipulate the documents. If they've identified locations in the software, that will facilitate our getting to the heart of the matter as well.

8

THE COURT: Why do you need that in an expert report? Why don't you just, you know, try and coordinate informally with the United States or whoever else about, you know, where is all this -- you know, where are the hot documents for Bernanke? Is there anything that limits you from doing that other than seeing an expert report?

MR. THORNE: Your Honor, I believe nothing limits that sort of important issue.

THE COURT: So why do you need the expert report?

MR. THORNE: The expert reports are an efficient way to get at the -- you know, essentially the fact discovery analysis that will aid the additional similar fact discovery that's going on in our cases.

THE COURT: And so the good cause is, you want something to make it easy for you?

MR. THORNE: The good cause is to be more efficient in enforcing the antitrust laws. And, you know, the best case that Google had than the Texas case, which said you can't compel a defendant, can't compel Google to turn over DOJ's expert reports, but if DOJ wants to share what Texas says, that's fine.

THE COURT: DOJ isn't moving for this.

MR. THORNE: DOJ --

THE COURT: They haven't taken a position on it, so, you know, they're not the ones coming in here asking me

9

to change the order that we negotiated and signed and the parties have lived under for an extended period of time.

MR. THORNE: DOJ will speak for itself, Your Honor. They're willing to share their expert materials with the plaintiffs that they have been coordinating with. That seems like an efficiency. A lot of courts have recognized that.

And if we were going first, if this was the U.S. against AT&T case and I was MCI and I had filed my case first and I got the 7 million documents from AT&T and I had figured out the one and a half million that mattered and wanted to convey that to DOJ in the form of an expert report, that would be --

THE COURT: Why in the form of an expert report? That's what I'm trying to -- I still don't understand. I've given you multiple opportunities to explain to me why seeing the expert report is what needs to be done for you to try and have some coordination with the Department of Justice.

MR. THORNE: I don't see coordination generally being hampered by the coordination order. And if -- to the extent the goal of the coordination order is to enhance coordination, then a party that wants to share its expert materials should be permitted to do so after the meeting and conferring, which has occurred here.

I'm sorry to -- I know I've got the burden, I'm

10

the movant.  But, on the flip side, Google hasn't identified any prejudice to us seeing DOJ's expert materials.

Well, one other technical point, Your Honor, and maybe it's in the weeds, but private plaintiffs are entitled to collateral estoppel under the -- not just the common law, but there's a part of the Clayton Act that says if the United States establishes there's been any trust violation, private parties don't have to re-prove that.  So it's in the statute.

If we pick different market definitions or different theories, that would be our choice to do.  If we align closely with the markets that DOJ successfully proves in a trial this spring or summer, that will make the effect of the collateral estoppel easier.  That's a benefit that Congress anticipated private plaintiffs should get under the statute.

THE COURT:  Well, you know what the Department of Justice is going to say the market is; right?

MR. THORNE:  The expert reports are sort of the best way to understand markets, market power and the documents that support the conduct.  And, as I say, I'm mostly focused on identifying and being able to establish the conduct without redoing the 6 million documents and the 80 gigabytes of source code, et cetera, with doing as efficiently that work.

11

THE COURT: Well, again, I'm trying to understand why you were trying to bootstrap your case on what the United States is doing in our case.

MR. THORNE: We were required to coordinate with the United States, follow your Court's very efficient schedule in depositions and fact discovery.

THE COURT: Right. And you negotiated all of that for fact, and expert discovery was not part of that; right?

MR. THORNE: Expert discovery is -- you know, we're going to file an expert report, and Google will file its rebuttal after us. We're not jumping the gun getting ahead of it. We don't need to see Google's expert report or anything that reflects their material. I don't see the concern with -- that Google has expressed applying to DOJ sharing its expert materials with us based on the same fact material. I only see efficiencies for the parties.

THE COURT: Okay. As best I can, I think I understand what you're trying to say. Okay. I'll hear from Google.

All right. Anybody from DOJ want to say anything on this?

MR. TEITELBAUM: I would just reiterate, Your Honor, that we don't oppose the relief that's requested here. I'm not sure if the Court views that as being identical to taking no position, but, beyond that, we don't

12

have anything substantive to add.

THE COURT: I mean, you're cooperating in other respects, I take it?

MR. TEITELBAUM: You know, when --

THE COURT: To the extent they, you know, they ask for it, you'll cooperate with them, right, providing information and other --

MR. TEITELBAUM: When it's consistent with our obligations under the various orders that the Court has issued, including the coordination order, then yes.

THE COURT: All right. Let me hear from Google. And explain why you think your -- and I understand you don't want them to have your expert reports, and I think they have clarified, and I think I understand now, or closely, you know, this is a if-you-want-to, you-can-do-it. And I'm sure you're not going to want to, and I'm not going to order you to do it, so don't be worried about that.

The question I do have, though, and I'm still not sure that was fully fleshed out in your memorandum in opposition, is what is the harm in letting the United States give them their expert reports if they want to?

MR. JUSTUS: Yes, Your Honor. Two key points. One is, the coordination order that's governed the MDL and this case is a hard-struck bargain. We negotiated certain benefits to Google and certain things that Google gave up in

13

reaching a lawyer agreement with the DOJ, and the Court resolved a few open issues. It's also been resolved by the SDNY. And Judge Castel, importantly, actually rejected the very relief that the plaintiffs are now trying to come to this Court and get.

So the first reason why we're harmed is, we just struck a bargain that had some benefits and some not benefits from us, and that's what all the courts entered, and now they just want to go and retrieve that bargain to give them benefit, without additional benefit to Google. So it's just --

THE COURT: Well, the order left open the opportunities for the parties to come in and talk about coordination of expert discovery. So, you know, whatever was -- whatever was negotiated was not a hard-and-fast you can't do anything; it was, you need to come back once we get to the expert discovery phase and talk about it, I guess.

MR. JUSTUS: Yes, Your Honor. I still think they need good cause, even under that provision, and I don't think making it easier to litigate a parallel case is good cause. But, in any event, there is a concrete prejudice to Google.

To the extent that DOJ's expert opinion from this case just gets shared into the MDL case, what's likely to happen is the MDL plaintiffs will produce a superset of

14

expert opinions. So everything the DOJ opined on here, and everything they would otherwise opine in the MDL, and it's going to leave Google to respond to this superset of expert reports, which is an additional burden, and it would also just hurt the litigation itself by making the whole thing less focused and making it a mess.

THE COURT: Well, why do you think it would be a superset and not -- if not an identical -- at least close to an identical set as to what you would have already responded to in this case?

MR. JUSTUS: So what the movants note in their brief is that they've already retained experts who are already working. So presumably they're already developing some opinions, Point 1. Point 2 is, there are differences between the MDL case and this case. So, necessarily, there's going to have to be some different take on those expert reports.

So, in my view, the logical thing -- the most likely thing to happen is, everything specific to that case that would need to happen will still happen, plus the uniquenesses of this EDVA case that might not otherwise be part of the MDL will also become part of the MDL, and you'll have just a mess of expert discovery and fighting.

So it's really -- it's really -- I mean, it's a tough motion they've brought because it's asking you to

15

issue an order to not only interfere with the expert process in another court, where that Court has already rejected plaintiffs' attempt to order the sharing.

THE COURT: And what -- tell me now Judge Castel was faced with that issue and what did he do.

MR. JUSTUS: Yes, Your Honor. Would it be helpful if I shared with you the plaintiffs' proposed coordination order from the SDNY?

THE COURT: Well, just tell me about it. I mean, I --

MR. JUSTUS: Sure.

So in the SDNY, plaintiffs proposed their own coordination order. That coordination order required mandatory -- mandatory sharing of expert reports from the EDVA case into the SDNY case. Not only did Judge Castel reject that coordination order, he had really harsh words for that --

THE COURT: He called it -- I was just trying to figure out procedurally how that came about. And that was back at the time that the orders were being negotiated; is that right?

MR. JUSTUS: Yes, Your Honor.

THE COURT: Not anything recent now that fact discovery has ended here and expert discovery has started?

MR. JUSTUS: Yes, Your Honor. Surely if he had

16

wanted to have a provision when expert discovery just automatically comes out of EDVA and goes into the SDNY, he could have taken that piece of the plaintiffs' proposed coordination order, and he rejected the whole order out of hand.

THE COURT: Okay. Well, again, let me just -- I'm trying to focus on the concerned burden that Google may have. By the time you get the MDL plaintiffs' expert report, you will have completely responded to all the expert opinions given by the experts in this case?

MR. JUSTUS: Yes, Your Honor.

THE COURT: So that's done. I mean -- so if you add that to what's going on in New York, why is there any increase in the burden that Google would have if they just have to provide the same response to whatever opinions you did here up there, and then they'd have a couple others that they'd throw in that you need to respond.

MR. JUSTUS: Yes, Your Honor. I don't anticipate that when they receive the DOJ's expert reports -- if they do receive the DOJ expert reports from this case -- that what they'll do is they'll say, here, we'll have the same DOJ expert and the exact same report. Instead, they're going to use the points from the DOJ expert reports to fill into their existing experts or get new experts. We know the known experts have these ideas. I do think that they will

17

reissue those opinions, but they're going to reissue them with their own spin on it, right. Because they're independent experts, they'll have different evidence that they focus on, so it will require Google to largely redo these reports and also respond to the MDL reports that would otherwise be there.

And there's really -- I mean, so there is a prejudice, and there's really no reason that plaintiffs need this expert -- these expert reports, given how many able counsel are in that MDL, and the, you know, millions of pages of documents and source code and data they already have.

THE COURT: Okay. All right. Thank you.

Mr. Throne, let me hear from you just a little bit more on this. Tell me again what you think the good cause is that would justify changing the order that was negotiated and entered by our court and the New York court.

MR. THORNE: Your Honor, first to clarify one thing that my friend said. Judge Castel was confronted with two proposed coordination orders. One was the one that had been negotiated between the Department of Justice and Google and I think had the input of some of your early suggestions. So it was pretty baked. And then an MDL proposal that was much more streamlined and would have imposed fewer burdens of the MDL to try to rush -- the MDL is hard to work as a

18

Case 1:20-cv-03010-JPK Document 1618-7 Filed 01/26/24 Page 20 of 32 PageID# 7815

group to keep up with the schedule here.

Judge Castel pretty much said we're going to go with the Virginia order, and then, by exception, took a couple of handwritten exceptions. But those were few. He didn't focus on what's the standard for meeting and conferring to have early expert disclosures by those who want to disclose it.

I will note one thing, Your Honor, I'm not fighting a good cause standard for your hearing this motion, I'm not fighting that. But the coordination order actually has several places where it uses the word "good cause," such as if you want to retake a third-party deposition and make that person come in and sit a second time, you have to have good cause for that. The coordination order is clear in a few places where there is a strong burden to show. This is not that. This is meet and confer. See if you can figure it out. If you can't, further court order.

THE COURT: Well, what do you think the standard is for me to change an order that has been negotiated and signed by the Court? It's not like I want to do it; somebody's got to prove that it needs to be done for a reason.

MR. THORNE: Thank you. That's an important clarification that I need to make.

We are not asking you to change the order. Please

19

Stephanie Austin, RPR, CRR USDC/EDVA (571) 298-1649

don't change the coordination order. We're asking you to apply the order by issuing, as is the first sentence of, you know, Section 7, expert discovery shall not be shared pending further order. We're asking for that further order; we're not asking to change that standard.

Here, the relevant party, the Department of Justice, is willing to give us what it has produced here. Google has not articulated any prejudice of DOJ's sharing with these parties. So we're not asking you to change a bargained-for order, just to apply. To issue a further order allowing DOJ to do what it's agreed to do.

THE COURT: Well, I don't think you've really made that point in your reply in opposition to their -- their opposition talks about this is a good cause standard.

MR. THORNE: I accept the burden of persuading you that this is fully warranted. I accept that burden. And I think the way that we meet that burden is because there will be a large efficiency given the large amount of documents and the -- something north of 100 depositions that are going to be occurring in the next few months, being able to focus better on those as a result of having access to the -- I'm not going to call it work product, but Judge Wilkey in the D.C. circuit case said the thing he was considering was very much akin to an expert report, the work product that MCI shared with DOJ was, in his mind, like an expert report.

20

There was no unfairness in that case even of not providing it to AT&T.  Here, Google has DOJ's report, they know what they're responding to, and they're working on it now.

THE COURT:  And what about Judge Castel's comments when this was presented to him early on in the negotiation phase?  It seemed like he was not interested in having this done at the time.

MR. THORNE:  Your Honor, I'm going to answer that question, but I'm going to answer it in a way you aren't expecting.

Last time we had a hearing in front of Judge Castel, he asked, when is that Virginia case going to trial.  And Mr. Mahr, who was speaking for Google, said, well, there hasn't been a trial date set, Your Honor.  And I said people have been watching the court here for a long time, you know, we're guessing end of May or sometime, you know, spring/summer.  Judge said, I hope that's true.  I take my hat off in admiration to my colleagues in the Eastern District of Virginia, and I've admired their work and recall days as a practicing lawyer when I was -- trying to find the right word -- maybe I was the subject of their work.  He did not want -- he does not want to do anything to slow down this court.

So in the choice of what makes sense for just an MDL versus what makes sense to not interfere, he invited the

21

Department of Justice to come up to his court when the coordination order was being discussed to make sure he didn't do anything to harm what this court was doing.

I think that was -- his remarks about you're not trying hard enough to let the Virginia case go forward, that's the context for his remarks. And that's across the board. That was more related to the sequencing and timing of depositions rather than this meet and confer and you can share expert reports.

THE COURT: I take it your experts are working on their reports now; right?

MR. THORNE: That's correct, Your Honor.

THE COURT: Are any of your experts the same experts that's being used by DOJ?

MR. THORNE: I only know Gannett and Daily Mail's details. I don't know all of the other MDLs. But I believe -- I believe that no one is in common with DOJ, that they're all disjoint. Your Honor, I don't know who DOJ's experts are because I haven't seen their expert reports, but I believe there's nothing in common.

THE COURT: It's no secret about knowing who their experts are.

MR. THORNE: Your Honor, I don't know.

THE COURT: Have you asked? I mean, you seem to be so interested in their reports, you would at least want

22

to know who they are.

MR. THORNE:  I have been, and their suggestion, frankly, was, well, why don't you ask the judge if we can share them with you.

THE COURT:  The names or the reports?

MR. THORNE:  In response to a question about the names.  But my understanding is that there are no experts in common.

THE COURT:  What issues are -- for the experts are there that are different than the issues that are involved in this case?  So Google has talked about, you know, a supersized or whatever expert report that you're going to just glob onto what the DOJ says here, and then, you know, add your own bells and whistles to the New York case.  I'm trying to figure out what the other issues are in New York that an expert would have to opine on that wouldn't already be probably done and litigated by the time the expert's schedule goes in New York.

MR. THORNE:  There's a lot in common.  I think everybody agrees with that point.  The differences relate to particular services that particular MDL parties were providing.  So there's an MDL party that was a direct competitor to YouTube, and so there's some things that that party will probably have in an expert report that are different from what this case involves because this -- the

23

Virginia case does not include those claims against YouTube. Daily Mail and Gannett have claims about some of Google's search behavior that is not present in the DOJ/Virginia case. But that's a function the MDL's collected and coordinated a bunch of different cases that had different clients and different issues.

THE COURT: All right. So let's go back to the question of -- now that you say that you're willing to at least live with my view that you have to show good cause, again, help me understand what you think the good cause is for me modifying the order to allow the Department of Justice to share its expert reports.

MR. THORNE: If I could restate your question, the good cause for you to issue, using the language of Section 7, a further order permitting DOJ or Google voluntarily, if they want to, to share expert materials with the MDL participants, if that's the question, the good cause is because there will be an efficiency in the other plaintiffs' ability to conduct discovery. They will save resources and be able to -- and the judge -- in the words of Nogglewalkie (phonetic), get to the truth better.

THE COURT: And why does the efficiency of a party not in my case matter to me?

MR. THORNE: What I'm not going to say, Your Honor, is -- for the same reasons that Judge Castel wanted

24

to take every effort possible to avoid interference with this case, I think if there's an efficiency of allowing a party in this case to share materials based on facts that are already in common across all the plaintiffs, then there's no reason not to do so. And we've cited cases where cross plaintiff in different cases, sharing is -- it's a commonplace. It's unusual to have a prohibition on sharing -- or at least in the Texas case, sharing of opening expert reports. That's -- the courts say that may be done. And after meeting and conferring with the Department of Justice, they're willing to, and so, you know, we ask, and they don't oppose, and if Google has no prejudice, I see no reason not to -- not to permit.

THE COURT: You haven't explained to me why you don't think they have prejudice. You just heard what he was saying about the prejudice, is that your experts are likely to just adopt everything that has happened here and give their own spin on it and then add their own. So why don't we make them do their own work, honestly, and come up with their own opinions independent of what the DOJ experts do?

MR. THORNE: Your Honor, there's a very serious investment going on with experts. They are doing their own work. They're not going to parrot -- to use Google's word, they're not going to parrot what DOJ's experts do. But if DOJ has found the particular documents that matter to

25

different pieces of conduct, that's --

THE COURT: That's in their view, you know. They're not involved in the New York case. You have your own independent duty to look at the documents and find the documents yourself.

MR. THORNE: Absolutely.

THE COURT: They may have missed something. So you can't just rely on their expert report to say, okay, well, you know, they think these are the ten documents that I should look at.

MR. THORNE: Your Honor, we're not relying on -- we're not -- I don't hear any real argument here for -- that we're not doing everything that we need to do in our client's interest.

THE COURT: And when is your expert report due?

MR. THORNE: August 21st is the opening expert report.

THE COURT: So you've got another six months to do an expert report?

MR. THORNE: Between --

THE COURT: Do you know how long the Department of Justice had to do their expert report in this case?

MR. THORNE: It was very rushed, Your Honor. I know that.

THE COURT: And why is it that you think I need to

26

give you a head start on your expert's report when they already have six more months to do it?

MR. THORNE:  Your Honor, Google is taking -- or being a party to something north of 100 depositions in the next four -- roughly four months, and they're guided by what the department's theories are, what the department found in their documents, and they're using those depositions and additional discovery to try to build up a -- things to impeach DOJ's witnesses.  They're not done with -- Google's not done with discovery.  They have access to this, and DOJ's willing to give us that same access so that we can be efficient in discovery just like Google's going to be more efficient.

THE COURT:  How is this making Google more efficient?

MR. THORNE:  Google now has -- with the benefit of DOJ's expert reports -- knows what the common -- the common things are to shoot at in a continued fact discovery, which it's conducting.

THE COURT:  Google has the Department of Justice's expert report and the claims being asserted by the Department of Justice and the state attorney generals in our case; right?

MR. THORNE:  That's correct.

THE COURT:  They don't know what your experts are

27

going to be saying in your case.

So, again, help me understand how you think they are being more efficient in dealing with your case by having the Department of Justice's expert reports in this case.

MR. THORNE:  The -- well, this is a bit in the weeds, but the -- Google's conduct revealed in its documents, buried in the trove of 6 million -- I mean, 6 million sounds like a benefit when Google says it's not a benefit.  A more focused set of documents would be a benefit, documents that included the links in them.  And the document discovery here is -- it's huge and it's a mess. You know, most of it here was produced after the close of fact discovery, September 8th.  That's your issue, not mine. But getting through that massive stuff, DOJ's done some of that work.  It's reflected in their expert reports.  That will benefit the fact discovery on both sides.

Google is saying what it has to confront and giving the MDL plaintiffs a chance to see what's important. We're -- we've gone through the documents, too.  We've found lots of things.  It's normal to have multiple plaintiffs collaborating in a way to be more efficient in finding the truth.

THE COURT:  All right.  Let me just hear one last time from Google just on the --

MR. JUSTUS:  Yes, Your Honor.

28

I think I have two points.  One is, most of what I think we just heard as the reason for the sharing is to get additional information from the Department of Justice regarding the key documents they found.  I don't think that anything in the current coordination order prevents a call to the DOJ to the MDL plaintiffs to say, hey, on this topic of our complaint, here's a list of 50 Bates numbers we found that's especially relevant.  So I don't know how that relates to sharing expert reports.  Point 1.

Point 2 is I think -- actually, let me stop there.

THE COURT:  Okay.  All right.  Well, you know, I -- I do think, given the procedural posture of how this has come before the Court, that an order was negotiated by the parties and entered by the Court, that there has to be good cause or good reason for me to modify that order, and even though there may be a statement in there, you know, you can't do something unless there's further order of the Court, that's pretty much any order.  If I order something or the District Judge orders something and you want to modify it, you've got to have an order to modify it.

You know, this is somewhat of a close call in that I didn't realize the prejudice that might -- Google might have in coming in here if the Department of Justice wanted to share its report with the parties, but I think they have come in and established that there would be some prejudice

29

involved here.

The good cause -- you know, I'm -- I'm having a hard time understanding that just because you want someone to lead you the way in doing what you need to do on an independent basis and preparing your expert reports and coming up with your opinions really isn't good cause. I mean, it may or may not be more efficient.

The coordination order I don't think -- and if there needs to be some further discussions about that, then I'm willing to hear it, but the coordination order I don't think limits the parties from talking about, throughout the fact discovery we found these documents to be significant on this issue. You know, that's coordination, that's giving you what you want to an extent that you think your experts need help in finding out what, you know, the Department of Justice thinks important, you know, you can ask for it. They don't have to give it to you, but, again, you can ask for it through the coordination order.

But the idea that, you know, you're going to get their expert reports, you know, six months before you have to do your expert reports because you think it would be helpful, I don't find is good cause. I'm going to deny the motion. Okay. Thank you.

MR. JUSTUS: Thank you, Your Honor.

MR. THORNE: Thank you, Your Honor.

30

Stephanie Austin, RPR, CRR USDC/EDVA (571) 298-1649

THE COURT:  Thank you.

MR. MOLSTER:  Thank you.

THE COURT:  Thank you, Mr. Molster.

(Proceedings adjourned at 10:43 a.m.)

-----------------------------------

I certify that the foregoing is a true and accurate, to the best of my ability, transcription of proceedings recorded by electronic sound recording (FTR system).

*Stephanie Austin*
_____

Stephanie M. Austin, RPR, CRR

31

Stephanie Austin, RPR, CRR USDC/EDVA (571) 298-1649