BSF | BOIES SCHILLER FLEXNER

July 22, 2026

**Via ECF**

Hon. P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

*In re Google Digital Advertising Antitrust Litigation*
Case No. 21-md-3010 (PKC)

*In re Google Digital Publisher Antitrust Litigation*
Case No. 21-cv-7034 (PKC)

Dear Judge Castel:

I write on behalf of the Publisher Class Plaintiffs ("Publishers") to inform the Court of recent relevant authority from the Second Circuit that supports Publishers' opposition to Google's motion for summary judgment. *See* ECF 1353; ECF 1517; ECF 1570. No conference is currently scheduled.

On July 13, the Second Circuit issued *Cumulus Media New Holdings v. The Nielsen Company (US)*, No. 26-88 ("Slip. Op.") (attached as Exhibit 1), affirming that "constructive tying is a valid theory of Sherman Act liability." Slip Op. at 24; *see id.* at 25, 28. "Tying may also occur", the Court held, "when a seller *de facto* ties two products" by "leaving the buyer with only one economically rational choice: to purchase the products together." *Id.* at 25.

The *Cumulus* decision confirms that the "'essential characteristic' of tying—the compulsion to purchase an unwanted product" "can also occur via a constructive tie . . . that ha[s] 'the effect of' coercing the buyer into accepting the bundle." Slip Op. at 28-29 (c*iting Jefferson Parish v. Hyde*, 466 U.S. 2 at 12 (1984) and *id.* at 14 ("When 'forcing' occurs, our cases have found the tying arrangement to be unlawful.")). The decision thus undermines Google's arguments (ECF 1353 at 9-11) that Publishers' Act 2 lacks "coercion" and is not a tie from Google's ad server (DFP) to its ad exchange (AdX) because—Google argues—use of DFP does not expressly require Publishers to sell impressions through AdX. *See also* ECF 1517 at 5-14 (Publishers' opposition brief addressing these arguments).

The Second Circuit's analysis underscores the breadth of conduct that may fulfill the coercion element of a tie, such as Google's imposition of coercive restraints within the DFP ad server—including dynamic allocation—that provided AdX a first look and last look on each impression, forcing Publishers to use AdX to sell the impression even where competing exchanges would have paid more (*see* ECF 1517 at 7-14). *See, e.g.*, Slip Op. at 32 (Neilsen's "standalone offer was coercive even in the absence of a formal tie" and gave plaintiff "only an illusory choice: accept [defendant's] tied June offer, or pay $1.2 million more to purchase the

desired local data from a competitor" which, "is no choice at all"); *id*. at 34 ("the non-cost justified offer for" the tying product gave plaintiff "no rational choice but to accept" the "unlawfully tied June offer" which "is precisely the type of 'economic pressure' we have said is the hallmark of tying liability" (internal citations omitted)).

Respectfully submitted,

*/s/ Philip C. Korologos*
Philip C. Korologos
BOIES SCHILLER FLEXNER LLP

Copies to: All Counsel of Record via ECF.