

**Bradley Justus**

Axinn LLP
1901 L Street NW
Washington, DC  20036
202.469.3532
bjustus@axinn.com

July 22, 2026

<u>**Via ECF**</u>

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re:   ***In re Google Digital Advertising Antitrust Litigation*, 21-md-03010 (PKC);**
***Penske Media Corporation v. Google LLC*, No. 1:26-cv-00225 (PKC);**
***The Atlantic Monthly Group LLC v. Google LLC*, No. 1:26-cv-00272 (PKC);**
***Vox Media, LLC v. Google LLC*, No. 1:26-cv-00325 (PKC);**
***Advance Publications, Inc. v. Google LLC*, No. 1:26-cv-00343 (PKC);**
***McClatchy Media Company v. Google LLC*, No. 1:26-cv-00339 (PKC);**
***Ziff Davis, Inc. v. Google LLC*, No. 1:26-cv-01055 (PKC);**
***Los Angeles Times Communications LLC v. Google LLC*, No. 1:26-cv-01593 (PKC)**

Dear Judge Castel,

Group 2 Publishers[1] will claim billions of dollars of damages for "significant financial harm" they allege to have suffered as a result of Google's alleged monopolistic and deceptive practices purportedly carried out for over a decade. Yet Group 2 Publishers refuse to provide foundational discovery into how they were purportedly harmed, how and when they discovered this alleged harm and what, if anything, they did to mitigate it, or what they heard from Google that allegedly deceived them—all information exclusively within Group 2 Publishers' possession and control. We therefore write on behalf of Defendants Google LLC and Alphabet Inc. (together, "Google") to respectfully move pursuant to Federal Rules of Civil Procedure 30 and 37 for this Court to compel Group 2 Publishers to designate and prepare a witness to testify on the below Rule 30(b)(6) Topics that speak directly to each of these questions that are core to Google's defenses:

---

[1] Here, "Group 2 Publishers" refer to Plaintiffs in the following actions: *McClatchy Media Company v. Google LLC*, No. 1:26-cv-00339 (PKC) (S.D.N.Y.); *Vox Media, LLC v. Google LLC*, No. 1:26-cv-00325 (PKC) (S.D.N.Y.); *Advance Publications, Inc. v. Google LLC*, No. 1:26-cv-00343 (PKC) (S.D.N.Y.); *The Atlantic Monthly Group LLC v. Google LLC*, No. 1:26-cv-00272 (PKC) (S.D.N.Y.); *Ziff Davis, Inc. v. Google LLC*, No. 1:26-cv-01055 (PKC) (S.D.N.Y.); *Los Angeles Times Communications LLC et al v. Google LLC et al*, No. 1:26-cv-01593 (PKC) (S.D.N.Y.); *Penske Media Corporation v. Google LLC*, No. 1:26-cv-00225 (PKC) (S.D.N.Y.).

axinn.com

July 22, 2026
Page 2

- *Topic 4.* The factual basis for Group 2 Publishers' allegations that Google caused their direct deals to underdeliver: (i) Group 2 Publishers' understanding of the number of their Standard Direct Deals[2] and Programmatic Guaranteed Transactions that underdelivered during the Relevant Period; (ii) the internal analyses or tracking Group 2 Publishers undertook in the ordinary course of business during the Relevant Period to determine the number of Standard Direct Deals and Programmatic Guaranteed Transactions that underdelivered and the causes of underdelivery; and (iii) what costs Group 2 Publishers have incurred due to any underdelivery of their Standard Direct Deals and Programmatic Guaranteed Transactions.

- *Topic 9.* Factual testimony regarding any experiments, A/B tests, and/or studies conducted by Group 2 Publishers in the ordinary course of business during the Relevant Period concerning the impact of the Google features challenged by Group 2 Publishers[3] on Group 2 Publishers' revenue, profitability, Impression volume, and/or Performance Metrics.

- *Topic 18.* For each of the Google features challenged by Group 2 Publishers: (i) when Group 2 Publishers first learned of the feature; (ii) any steps Group 2 Publishers took to understand the feature; and (iii) when and how Group 2 Publishers believe they were first injured by the feature.

- *Topic 19.* For each of the Google features challenged by Group 2 Publishers: (i) any reasons Group 2 Publishers have or had for using or not using the feature; (ii) Group 2 Publishers' efforts to disable, avoid, circumvent, optimize, or adjust the operation of the feature on their Inventory; and (iii) Group 2 Publishers' understanding, and the basis for their understanding, of the impact of the feature on their revenue, profitability, Impression volume, and/or Performance Metrics.

- *Topic 20.* The factual basis for Group 2 Publishers' allegations that Google made misrepresentations and omissions to Group 2 Publishers: (i) the specific omissions or misrepresentations Google purportedly made to Group 2 Publishers, including when Google made any such omissions or misrepresentations to Group 2 Publishers, who made the statement, and to whom it was made; and (ii) whether and how any such

---

[2] Capitalized terms are given the definitions provided in Google's Notices of Deposition served on Group 2 Publishers for testimony pursuant to Rule 30(b)(6). *See* Notices of Rule 30(b)(6) Deposition, Ex. A (McClatchy), Ex. B (Vox), Ex. C (Advance), Ex. D (The Atlantic), Ex. E (Ziff Davis), Ex. F (LA Times), and Ex. G (Penske).

[3] Group 2 Publishers challenge the following Google conduct: Dynamic Allocation (including "First Look"/"Last Look"), the alleged tying of DFP to AdX, Enhanced Dynamic Allocation, Optimized Competition, Projects Bernanke, Global Bernanke, Bell, Alchemist, Dynamic Revenue Share ("DRS"), Open Bidding, Unified First-Price Auction, Minimum Bid to Win, Project Poirot, Redaction of Datasets, Unified Pricing Rules. *See, e.g.*, McClatchy Compl. ¶ 67 (Dynamic Allocation/Last Look), ¶ 111 (alleged DFP-AdX tie), ¶ 152 (Enhanced Dynamic Allocation), ¶ 155 (Optimized Competition), ¶ 168 (Bernanke), ¶ 173 (Global Bernanke, Bell), ¶ 174 (Alchemist), ¶ 181 (DRS), ¶ 192 (Open Bidding), ¶ 197 (Unified First-Price Auction), ¶ 198 (Minimum Bid to Win), ¶ 204 (Poirot), ¶ 212 (Redaction of Datasets), ¶ 222 (Unified Pricing Rules).

July 22, 2026
Page 3

misrepresentations or omissions impacted Group 2 Publishers' decisions regarding the sale of their Inventory, use of Ad Tech, or selection of Ad Tech Products or Ad Tech Provider.

The parties have discussed these Topics over the course of multiple letters, emails, and meet-and-confers. Google repeatedly narrowed its Topics, explained why it sought Rule 30(b)(6) testimony on these Topics, and attempted to address each of Group 2 Publishers' objections. Group 2 Publishers, in turn, have repeatedly failed to explain the basis for many of their objections and have confirmed they refuse to designate witnesses for any of the above-identified Topics. The parties have thus reached an impasse requiring the Court's intervention to allow Google to obtain this information relevant to its defenses.

## I.    Relevant Background

On May 11, 2026, Google timely served Group 2 Publishers with deposition notices and accompanying topics pursuant to Federal Rule of Civil Procedure 30(b)(6). *See* Notices of Rule 30(b)(6) Deposition, Exs. A-G. At the time, fact discovery was set to close on June 5. MDL Dkt. No. 1502 ¶ 6. The notices were tailored to seek testimony regarding matters solely known, and specific, to Group 2 Publishers, including their own business practices, analyses, and knowledge of the challenged conduct, and other acts underlying Group 2 Publishers' claims.

On May 15, Group 2 Publishers Advance, The Atlantic, McClatchy, Vox, and Ziff Davis sent letters identifying certain narrowed topics or subtopics for which they would designate a Rule 30(b)(6) witness while declining to designate any witness for several other noticed topics. For a majority of the topics or subtopics for which these Group 2 Publishers agreed to produce a designee, the designee was an individual already scheduled for a 30(b)(1) deposition in the following week or weeks. These Group 2 Publishers insisted they would not make that witness available at any other time. Ex. H, 2026.05.15 Ltr. from E. Maier to B. Pescatore, at 2 (McClatchy); Ex. I, 2026.05.15 Ltr. from M. Hirschboeck to B. Pescatore, at 3 (Vox); Ex. J, 2026.05.15 Ltr. from B. Oppenheimer to T. LaRitz, at 2 (The Atlantic); Ex. K, 2026.05.15 Ltr. from C. Goodnow to T. LaRitz, at 2-3 (Advance); Ex. L, 2026.05.15 Ltr. from J. Hall to T. LaRitz, at 3 (Ziff Davis). Two days later, on May 17, Google requested a meet and confer regarding the topics the Group 2 Publishers narrowed and those for which Group 2 Publishers did not agree to provide a designee. Ex. M, Email thread titled "Re: In re: Google Digital Advertising Antitrust Litigation - No. 1:21-md-03010 (PKC) - Meet and Confer re 30(b)(6) Depositions of Group 2 Publishers," at 5-7 (2026.05.17 Email from A. Henderson to Z. Tauscher). On May 18, the parties participated in two meet and confers regarding Google's Rule 30(b)(6) notice, prioritizing the topics to be covered in depositions scheduled to occur in that week or shortly thereafter. Google explicitly and repeatedly reserved its right to pursue Rule 30(b)(6) testimony on noticed topics for which Group 2 Publishers had not yet provided a designee. *See, e.g.,* Ex. M, at 3-4 (2026.05.19 Email from T. LaRitz to C. Goodnow); Ex. N, 2026.05.27 Ltr. from N. Moorthy to B. Oppenheimer, at 1 n.1.

July 22, 2026
Page 4

Following the meet and confers, all Group 2 Publishers served formal Rule 30(b)(6) responses and objections.[4]

Throughout May and early June, Google proceeded with the combined Rule 30(b)(1) and Rule 30(b)(6) depositions for which Group 2 Publishers had designated witnesses. During this time, the Court extended the close of fact discovery from June 5 to September 9. MDL Dkt. No. 1799.

Thereafter, Google reviewed the Rule 30(b)(1) and Rule 30(b)(6) testimony of Group 2 Publisher witnesses that had been deposed in an effort to narrow the remaining 30(b)(6) topics for which it still required testimony. Google concluded that additional Rule 30(b)(6) testimony was necessary for only a subset of the topics noticed by Google for which Group 2 Publishers had refused to provide a designee. On June 19, Google wrote to counsel for Group 2 Publishers identifying the 30(b)(6) topics for which it still sought testimony and asking for a meet and confer as to the bases for Group 2 Publishers' objections to these topics. Ex. M, at 1-2 (2026.06.19 Email from B. Pescatore to E. Pfeffer). The parties met and conferred on June 24. *See id.* at 1.

Nearly three weeks after the parties' meet and confer, counsel for Group 2 Publishers wrote to Google refusing to provide a designee for any of the Topics subject to Google's instant motion. Ex. O, 2026.07.13 Ltr. from J. Liebman to B. Pescatore.

## II.    Publishers Must Produce Rule 30(b)(6) Testimony Concerning the Facts Underlying Their Own Allegations

Google's remaining Rule 30(b)(6) topics seek testimony concerning Group 2 Publishers' unique knowledge and understanding of the facts underlying the allegations they chose to plead. As narrowed, these Topics seek testimony regarding Group 2 Publishers' own analyses, experiments, and business decisions related to Google's alleged conduct and their understanding of Google's alleged misrepresentations to them. Courts have consistently recognized that a corporate plaintiff cannot initiate litigation and then refuse to provide corporate testimony regarding the corporation's knowledge and understanding of the factual bases underlying its own allegations. *See, e.g.*, *Klosin v. E.I. Du Pont De Nemours and Co.*, 2023 WL 1097859, at *4 (W.D.N.Y. Jan. 30, 2023) ("The 30(b)(6) designee must not only testify about facts within the corporation's knowledge, but also its subjective beliefs and opinions and the corporation's interpretation of documents and events."); *Loc. 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York,* 2023 WL 8804257, at *4 (S.D.N.Y. Dec. 20, 2023) ("It makes sense that a corporate plaintiff would be able to appoint a 30(b)(6) representative who could detail the corporation's position on allegations in a lawsuit the corporation initiated."). Because Topics 4, 9, and 18-20 seek the factual basis of core allegations in Group 2 Publishers' complaints, Rule 30(b)(6) requires Group 2 Publishers to designate and prepare a corporate

---

[4] McClatchy served their responses and objections one week after the combined Rule 30(b)(1) and Rule 30(b)(6) deposition of their corporate witness.

July 22, 2026
Page 5

witness on these topics. Group 2 Publishers have provided no reasonable basis to refuse to provide testimony on any of these Topics.[5]

   ***Topic 4.*** Group 2 Publishers allege that Google's Enhanced Dynamic Allocation (EDA) feature caused their direct deals to underdeliver[6] and that Google misrepresented to them that EDA protected direct deals (and thus would not result in underdelivery).[7] As narrowed, Topic 4 seeks testimony to allow Google to understand the factual basis for these allegations. Specifically, Topic 4 is targeted at information concerning Group 2 Publishers' own understanding of the extent to which any underdelivery of their direct deals occurred, including how Group 2 Publishers tracked this information and what, if any, analyses Group 2 Publishers performed to understand the causes of any underdelivery, and over what period of time. This is precisely the type of information discoverable under the Federal Rules. *See, e.g.*, *Loc. 3621,* 2023 WL 8804257, at *4 ("It makes sense that a corporate plaintiff would be able to appoint a 30(b)(6) representative who could detail the corporation's position on allegations in a lawsuit the corporation initiated.").

   Notably, Group 2 Publisher Plaintiffs have not disputed that Topic 4 concerns information central to their antitrust and deception claims. Instead, they refuse to designate a witness on any portion of Topic 4 because "Google has never attempted to explain why it requires both Rule 30(b)(6) testimony and interrogatory responses on this topic." Ex. O at 4. That objection fails. Group 2 Publishers have not identified—and Google has not located—any interrogatory response or document that renders Topic 4 unnecessary. Indeed, Group 2 Publishers have not provided *any* interrogatory response identifying their direct deals that underdelivered due to EDA.[8] Group 2 Publishers cannot refuse to provide corporate testimony based on other discovery that they have never provided. Nor have Plaintiffs pointed to authority

---

[5] In various correspondence, Group 2 Publishers have suggested that Google's 30(b)(6) notices were somehow untimely. This assertion is wholly without merit. Google served its notices more than twenty-one days before the initial close of fact discovery on June 5 and met and conferred with Group 2 Publishers promptly thereafter. *See supra* Section I at 3-4; *see also* MDL Dkt. No. 1502 ¶ 7.4 (ordering that no deposition be noticed for a date sooner than 21 days after service of the notice). Google has since diligently pursued discovery on these issues. *See supra* Section I at 3-4. Group 2 Publishers' claim is particularly specious given that they noticed Google for a 30(b)(6) deposition days *after* Google served its 30(b)(6) notices, and only last week, Group 2 Publishers served a revised notice on Google, which added five new topics.

[6] *See, e.g.,* McClatchy Compl. ¶ 160 ("Enhanced Dynamic Allocation has also caused McClatchy, at times, to under deliver on its direct deals."); Vox Compl. ¶ 158 (same, for Vox); Advance Compl. ¶ 164 (same, for Advance); Atlantic Compl. ¶ 157 (same, for The Atlantic); Ziff Davis Compl. ¶ 159 (same, for Ziff Davis); LA Times Compl. ¶ 157 (same, for LA Times); Penske Compl. ¶ 170 (same, for Penske).

[7] *See, e.g.,* McClatchy Compl. ¶ 275a; Vox Compl. ¶ 274a; Advance Compl. ¶ 279a; Atlantic Compl. ¶ 272a; Ziff Davis Compl. ¶ 274a; LA Times Compl. ¶ 272a; Penske Compl. ¶ 285a.

[8] Despite Google's continued requests for Group 2 Publishers to supplement their non-substantive responses to Google's interrogatory directed at Google's purported underdelivery of direct deals, *see, e.g.*, Ex. P, Vox Responses and Objections to First Set of Interrogatories at 21-24 (responding to Google's Interrogatory No. 9), Group 2 Publishers have refused to provide this information, committing only to identify non-privileged discovery materials at some undisclosed later date. *Id.* They have yet to provide any responsive information.

July 22, 2026
Page 6

requiring Google to provide an explanation when it seeks—as Group 2 Publishers concede—plainly relevant testimony uniquely within their knowledge.

***Topic 9.*** Group 2 Publishers also allege that the challenged features suppressed their revenues or otherwise caused "substantial financial injury."[9] For example, Group 2 Publishers allege that, "for years," they "found" that setting differential exchange floors caused higher bids to be returned and led to "higher revenue."[10] They likewise allege that they "observed" that they "receive[d] higher bids when multiple exchanges compete through header bidding."[11] Those allegations necessarily rest on Group 2 Publishers' own experiments, testing, studies, and evaluation of their advertising performance.

Consistent with those allegations, Topic 9, as narrowed, seeks factual testimony regarding any experiments, A/B tests, studies, and/or analyses conducted by Group 2 Publishers concerning the impact of the challenged features on their revenue, profitability, impression volume, and related performance metrics. Rule 30(b)(6) testimony properly encompasses a corporation's internal experiments, testing, studies, and analyses where those materials concern the very conduct and purported injuries the corporation places at issue through its claims. *See Resolution Trust Corp. v. Sands*, 151 F.R.D. 616, 620 (N.D. Tex. 1993) (requiring plaintiff "to designate someone to state the facts upon which [it] bases its claims" and its "claims for damages, including the causes and calculation thereof").

Group 2 Publishers do not dispute that Topic 9 seeks testimony directly related to the conduct and injuries they allege in their complaints. Instead, Group 2 Publishers contend that, even as narrowed, Topic 9 remains vague, overbroad, and an improper "memory contest." Ex. O at 5. But Topic 9 does not require Group 2 Publishers to catalog every experiment they have ever performed or engage in a memory test. It only seeks testimony regarding the experiments, studies, and analysis concerning the challenged conduct that Group 2 Publishers used as the basis for the factual allegations in their complaints. Moreover, Rule 30(b)(6) requires a corporation to prepare a witness using information reasonably available to it, and the burden of preparation does not eliminate the corporation's obligation to provide relevant and otherwise discoverable testimony. *See Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 2002 WL 1835439, at *3 (S.D.N.Y. Aug. 8, 2002) ("Rule 30(b)(6) explicitly requires a corporation to have persons testify on its behalf as to all matters known or reasonably available to it and, therefore, implicitly requires such persons to review all matters known or reasonably available to it in preparation for the Rule 30(b)(6) deposition." (cleaned up)).

---

[9] *See, e.g.,* McClatchy Compl. ¶¶ 62, 191, 195 (alleging Dynamic Allocation, DRS, and Exchange Bidding caused "substantial financial injury" or "substantial financial harm"); Vox Compl. ¶¶ 60, 190, 194 (same); Advance Compl. ¶¶ 65, 195, 199 (same); Atlantic Compl. ¶¶ 59, 188, 192 (same); Ziff Davis Compl. ¶¶ 62, 190, 194 (same); LA Times Compl. ¶¶ 61, 188, 192 (same); Penske Compl. ¶¶ 71, 201, 205 (same).

[10] *See, e.g.,* McClatchy Compl. ¶ 221; Vox Compl. ¶ 220; Advance Compl. ¶ 225; The Atlantic Compl. ¶ 218; Ziff Davis Compl. ¶ 220; LA Times Compl. ¶ 218; Penske Compl. ¶ 231.

[11] *See, e.g.,* McClatchy Compl. ¶ 66; Vox Compl. ¶ 64; Advance Compl. ¶ 69; Atlantic Compl. ¶ 63; Ziff Davis Compl. ¶ 66; LA Times Compl. ¶ 65; Penske Compl. ¶ 75.

July 22, 2026
Page 7

*Topics 18 & 19.* Group 2 Publishers allege that Google "forced" publishers to use the challenged features, secretly implemented several of the features, and otherwise "enforced" auction mechanics without publishers' knowledge or consent.[12] Those allegations depend on Group 2 Publishers' own knowledge of the information sought by Topics 18 and 19, as narrowed: when Group 2 Publishers learned of the challenged features, what steps they took to understand the challenged features, when Group 2 Publishers believed they were injured by the challenged features, why Group 2 Publishers used the challenged features, whether they attempted to avoid a feature or mitigate its effects, and Group 2 Publishers' understanding of how they were harmed by the challenged features.

Group 2 Publishers nevertheless object that Topics 18 and 19 seek expert testimony or legal theories. Group 2 Publishers are wrong. As Google has repeatedly clarified, Topics 18 and 19 seek only factual testimony concerning Group 2 Publishers' *own knowledge, understanding, and conduct*—information that is uniquely within Group 2 Publishers' possession. Ex. Q, 2026.06.25 Ltr. from B. Pescatore to J. Liebman, at 3-4. Rule 30(b)(6) exists precisely to obtain testimony concerning factual information uniquely within a corporation's knowledge, and courts regularly require 30(b)(6) testimony concerning "information under [the corporation's] control." *See Fox Film Corp.*, 2002 WL 1835439, at *4. Such information constitutes neither expert testimony nor legal theory. *See Resolution Trust*, 151 F.R.D. at 620 (compelling 30(b)(6) testimony on "claims for damages, including the causes and calculation thereof" as it does not "mandate the production of expert testimony" and does not "require the [plaintiff] to divulge information in the form of attorney work product or information accumulated by the [plaintiff] in anticipation of litigation" because "[t]he [plaintiff] retains the right to object in accordance with the usual procedure"); *Protective Nat. Ins. Co. of Omaha v. Commonwealth Ins. Co.,* 137 F.R.D. 267, 282-83 (D. Neb. 1989) (compelling 30(b)(6) testimony on the "facts underlying [the] allegations," including "how, why, and in what measure, [the witness'] employer claims to be damaged as a matter of fact").

The cases on which Group 2 Publishers have relied in an attempt to justify their refusal to produce a Rule 30(b)(6) witness confirm that, far from legal theories or privileged communications, Topics 18 and 19 seek the sort of testimony that courts find appropriate under Rule 30(b)(6). For example, Group 2 Publishers point to *S.E.C. v. Morelli*, where the court denied the plaintiff's motion to compel Rule 30(b)(6) testimony from the SEC on topics related to the SEC's insider trading claims. 143 F.R.D. 42, 44 (S.D.N.Y. 1992). There, the court noted that the "touchstone of the work-product inquiry is whether the discovery demand is made 'with the precise goal of learning what the opposing attorney's thinking or strategy may be.'" *Id*. 46-47. The court found itself "drawn inexorably to the conclusion" that the deposition's purpose was to ascertain how the SEC intended to marshal evidence because the SEC had made a "sworn, uncontroverted statement that all relevant, non-privileged evidence [has already] been disclosed to the defendants." *Id*. 47. Google's Topics 18 and 19 are not "made 'with the precise goal of learning what the opposing attorney's thinking or strategy may be.'" *Id.* at 46-47. To the

---

[12] *See, e.g.,* McClatchy Compl. ¶¶ 137, 164, 252; Vox Compl. ¶¶ 136, 162, 251; Advance Compl. ¶¶ 141, 168, 256; Atlantic Compl. ¶¶ 135, 161, 249; Ziff Davis Compl. ¶¶ 138, 163, 251; LA Times Compl. ¶¶ 136, 161, 249; Penske Compl. ¶¶ 147, 174, 262.

July 22, 2026
Page 8

contrary, Topics 18 and 19 seek historical facts that remain uniquely within Group 2 Publishers' possession concerning their own pre-litigation understanding and conduct.

Group 2 Publishers' other cases likewise confirm that Google's Topics 18 and 19 fall well outside proscribed categories of evidence. In each of the cases on which Group 2 Publishers have relied, the court rejected attempts to have plaintiffs synthesize *all* information regarding *every allegation* in their complaints or provide the *legal basis* for their allegations. *See Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 2009 WL 3463912, at *1 n.2 (E.D.N.Y. Oct. 21, 2009); *Liveperson, Inc. v. 24/7 Customer, Inc.*, 2015 WL 4597546, at *7 (S.D.N.Y. July 30, 2015); *Gov't Emps. Ins. Co. v. Lenex Servs., Inc.*, 2018 WL 1368024, at *3 (E.D.N.Y. Mar. 16, 2018). Here, Topics 18 and 19 do not ask Group 2 Publishers to marshal evidence or synthesize the entire body of information related to their complaints or identify the "legal bases" for their complaints. Nor do Topics 18 and 19 seek testimony for which Group 2 Publishers lack "independent knowledge." *Contra Wilmington Tr., Nat'l Ass'n v. Samcom 48 (DE) LLC*, 2022 WL 17977499, at *4 (E.D.N.Y. Dec. 28, 2022). Topics 18 and 19 ask only for factual testimony regarding Group 2 Publishers' own understanding or actions underlying discrete allegations.

Group 2 Publishers also invoke blanket assertions of attorney-client privilege and work product. Ex. O at 5. To date, and despite repeated requests by Google to clarify their position, Group 2 Publishers have been unable to articulate the basis for this objection. In any event, the existence of privileged communications or attorney work product does not excuse a corporate plaintiff from providing Rule 30(b)(6) testimony concerning the factual bases underlying its claims. When the facts underlying a corporate plaintiff's allegations are sought via Rule 30(b)(6) testimony, plaintiffs are required to "produce a witness capable of providing facts in support of the allegations," and may not "refuse to identify non-protected documents or facts because such information is identified in a protected document." *Sec. Ins. Co. of Hartford v. Trustmark Ins. Co.*, 218 F.R.D. 29, 34 (D. Conn. 2003); *see also Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*, 2013 WL 1286078, at *3 (S.D.N.Y. Mar. 28, 2013) (the "corporate representative was obliged to gain some understanding of the underlying facts, regardless of the source identifying underlying facts, and to answer questions accordingly even if witness's understanding is gleaned from documents protected as work product" (cleaned up)); *State Farm Mut. Auto Ins. Co. v. New Horizont, Inc.*, 250 F.R.D. 203, 215-216 (E.D. Pa. 2008) (similar); *Dealer Comput. Servs., Inc. v. Curry*, 2013 WL 499520, at *6 (S.D.N.Y. Feb. 7, 2013) ("Litigants are permitted to learn the facts underlying their opponent's claims and defenses"). If Group 2 Publishers have no independent knowledge of the events underlying their claims, Google is entitled to this information. *See, e.g., Labroad v. Costco Wholesale Corp.*, 2026 WL 1746249, at *3 (D. Conn. June 27, 2026) ("If [the] corporate designee '*genuinely* does not have knowledge on [the topics], [the designee] should be prepared to testify concerning [the party's] efforts to obtain this information and why it lacks sufficient knowledge to testify . . .'"). Moreover, as the cases on which Group 2 Publishers have relied make clear, Group 2 Publishers cannot avoid providing Rule 30(b)(6) testimony through blanket assertions of privilege without providing any actual explanation of why "specific categories of information sought by defendant are privileged." *Morelli*, 143 F.R.D. at 46.

July 22, 2026
Page 9

Finally, Group 2 Publishers cannot avoid their obligation to provide corporate testimony on Topics 18 and 19 by characterizing them as "undisguised contention interrogatories." Ex. O at 5-6. Google does not—and Topics 18 and 19 cannot be reasonably read to—seek legal arguments or litigation strategy. Topics 18 and 19 plainly seek Plaintiffs' own understanding of the facts underlying the allegations they affirmatively chose to place before this Court.

**Topic 20.** As narrowed, Topic 20 seeks factual testimony concerning Group 2 Publishers' pre-litigation understanding of Google's alleged misrepresentations, including when those alleged misrepresentations were made, who made them, to whom they were made, and Plaintiffs' understanding of how those alleged misrepresentations caused them injury. That testimony is directly relevant to Group 2 Publishers' deception claims.

Courts have compelled Rule 30(b)(6) testimony concerning a plaintiff's understanding of the alleged misstatements or omissions and the resulting injury because that information lies at the heart of deception claims and is uniquely within a plaintiff's possession. *See, e.g.*, *S.E.C. v. McCabe*, 2015 WL 2452937, at *3 (D. Utah May 22, 2015) ("[I]t is difficult to conceive of deposition topics more relevant and appropriate than, for example, [']Plaintiff's claims in this action relating to statements or omissions made in connection with Defendant's [products] and the relief sought.'"); *State Farm,* 250 F.R.D. at 215-16 (compelling testimony "seeking the 'reasons [plaintiff] believes that it did not receive all treatment billed for['] . . . as it seeks only facts reasonably available to [plaintiff], and not counsel's mental impressions"). For example, Group 2 Publishers allege, "[h]ad Google disclosed how Dynamic Revenue Share functioned, [they] would have taken steps to counter Google's unfair practices, including telling Google to disable it or taking other countermeasures."[13] The nature of those countermeasures and Group 2 Publishers' understanding of how those actions would have altered their alleged injuries are factual matters known only to Group 2 Publishers. Rule 30(b)(6) exists to obtain precisely that testimony.

Group 2 Publishers' objections to Topic 20 are identical to their objections to Topics 18 and 19 and fail for the same reasons. Ex. O at 6. Topic 20 does not seek legal theories, attorney work product, privileged communications, or expert testimony; it seeks only historical facts concerning Group 2 Publishers' own understanding of the alleged misrepresentations and their understanding of the effects of those alleged misrepresentations.

**\*\*\***

For the foregoing reasons, Google respectfully requests that the Court grant its motion to compel Group 2 Publishers to provide Rule 30(b)(6) testimony on Topics 4, 9, and 18-20 as narrowed.

---

[13] *See, e.g.,* McClatchy Compl. ¶ 191; Vox Compl. ¶ 190; Advance Compl. ¶ 195; The Atlantic Compl. ¶ 188; Ziff Davis Compl. ¶ 190; LA Times Compl. ¶ 188; Penske Compl. ¶ 201.

July 22, 2026
Page 10

Dated: July 22, 2026

Respectfully submitted,

*/s/ Bradley Justus*

Bradley Justus
Allison Vissichelli
Axinn LLP
1901 L Street NW
Washington, DC 20036
Telephone: (202) 912-4700
bjustus@axinn.com
avissichelli@axinn.com

Craig M. Reiser
Blake E. Pescatore
Axinn LLP
630 Fifth Avenue
New York, NY 10111
Telephone: (212) 728-2218
creiser@axinn.com
bpescatore@axinn.com

Justina K. Sessions
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250
justina.sessions@freshfields.com

*Counsel for Defendants*
*Google LLC and Alphabet Inc.*

cc: All Counsel of Record (via ECF)

axinn.com