September 30, 2026

**VIA ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

**Re:** ***In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC); *OpenX Technologies, Inc., et al. v. Google LLC*, No. 1:25-cv-10817 (PKC); *Magnite, Inc. v. Google LLC*, No. 1:25-cv-10818 (PKC); *PubMatic, Inc. v. Google LLC*, No. 1:25-cv-10819 (PKC); *Equativ SAS v. Google LLC*, No. 1:26-cv-00140 (PKC); *Index Exchange Inc. v. Google LLC*, No. 1:25-cv-10477 (PKC); *Kargo Global LLC v. Google LLC*, No. 1:25-cv-10630 (PKC); *Sovrn Holdings, Inc. v. Google LLC*, No. 1:26-cv-01587 (PKC); *TRUSTX Digital Advertising Services, Inc., P.B.C. v. Google LLC*, No. 1:26-cv-03135 (PKC); *Teads Holding Co. v. Google LLC*, No. 1:26-cv-06591 (PKC)**

Dear Judge Castel:

Defendant Google LLC and Alphabet Inc. (collectively, "Google") and former Google employee Samuel Cox respectfully seek a protective order prohibiting Plaintiffs in the above-captioned cases (collectively, the "Competitors") from deposing Mr. Cox and six current Google employees (collectively, the "Disputed Deponents").[1] No conference is scheduled at this time.

This request comes against a backdrop of Competitors already having access to over a hundred preexisting deposition transcripts of former and current Google employees and having identified nearly thirty additional former or current Google employees that they intend to depose that are not in dispute.[2] For six of the Disputed Deponents, Competitors already have their deposition transcripts (and for some deponents, multiple transcripts), and for the seventh, the Court already ruled he could not be deposed by Group 2 Publishers because of the "extensive discovery" already taken of Google's auction-related practices.

After sitting on the sidelines for years while the U.S. Department of Justice and other private plaintiffs pursued substantively similar claims against Google, Competitors now follow the Publishers in pursuing discovery this Court has rejected. *See* MDL Dkt. No. 1799 at 1 (granting motion for protective order prohibiting Group 2 Publishers from taking additional depositions of Google employees). Competitors want to enjoy the benefits of the vast pool of

[1] As discussed herein, the six current employees for which Google seeks a protective order are Nitish Korula, Nirmal Jayaram, George Levitte, [redacted], [redacted], and [redacted].

[2] Competitors requested the vast majority of these depositions of Google in the last two weeks; Google is in the process of scheduling them.

prior discovery that already exists, while attempting to re-take the very discovery that has already occurred. The depositions Competitors seek from the Disputed Deponents are unduly burdensome, cumulative, and duplicative of discovery already in Competitors' possession and, therefore, improper under the Federal Rules of Civil Procedure. Google's protective order should be granted.

## I. Legal Standard

Under Federal Rule of Civil Procedure 26(b)(1), discovery sought must be "proportional to the needs of the case," which requires considering, among other things, "the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit." Even if a witness "might have discoverable information, a party is not always entitled to depose that individual." *Commodity Futures Trading Comm'n v. Commodity Inv. Grp.*, 2005 WL 3030816, at *1 (S.D.N.Y. Nov. 10, 2005). District courts "limit the frequency or extent of discovery" that they determine are "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i); *see also S.E.C. v. Rayat*, 2023 WL 5276544, at *1 (S.D.N.Y. Aug. 16, 2023) (denying depositions of witnesses not "central to [the plaintiff's] case" and where the plaintiff "has not explained how [one witness's] testimony would not be duplicative of that of other witnesses"); *In re Weatherford Int'l. Sec. Litig.*, 2013 WL 5762923, at *2 (S.D.N.Y. Oct. 24, 2013) (finding proposed deponents cumulative where plaintiffs "ha[d] not demonstrated" that each would "provide sufficiently unique information").

## II. Competitors' Requested Depositions of Previously Deposed Google Employees Would Be Unduly Burdensome, Cumulative, and Duplicative of Prior Discovery.

Competitors' demand for more deposition testimony from the Disputed Deponents is not "proportional to the needs of the case." Disputed Deponents Nitish Korula, Nirmal Jayaram, Samuel Cox, [redacted], George Levitte, and [redacted] "have already been the subject of extensive discovery," and Competitors cannot show that their testimony "would shed new light on any topic." MDL Dkt. No. 1799 at 1-2. Instead, such depositions would be cumulative and duplicative of the voluminous discovery already taken of these witnesses, as well as the discovery otherwise available to Competitors, which includes:

- 110 deposition transcripts from present and former Google employees;[3]

[3] This figure includes depositions taken in the "Virginia Action" (*United States v. Google LLC*, No. 1:23-cv-00108-LMB-JFA (E.D. Va.)); the Initial MDL Cases (*In re Google Digital Publisher Antitrust Litig.*, No. 1:21-cv-07034-PKC (S.D.N.Y.); *In re Google Digital Advertising Antitrust Litig.*, No. 1:21-cv-07001-PKC (S.D.N.Y.); *Associated Newspapers Ltd. v. Google LLC*, No. 1:21-cv-03446-PKC (S.D.N.Y.); *Gannett Co., Inc. v. Google LLC*, No. 1:23-cv-05177-PKC (S.D.N.Y.); and *Inform Inc. v. Google LLC*, No. 1:23-cv-01530-PKC (S.D.N.Y.)); the Group 1 Publisher Cases (*Dotdash Meredith Inc. v. Google LLC*, No. 1:25-cv-07194-PKC (S.D.N.Y.); *Insider, Inc. v. Google LLC*, No. 1:25-cv-07409-PKC (S.D.N.Y.); *Slate Group LLC v. Google LLC*, No. 1:25-cv-07697-PKC (S.D.N.Y.); *CMI Marketing,*

- Fifteen transcripts of live testimony from Google employees during the liability trial before Judge Brinkema, *United States v. Google LLC*, No. 1:23-cv-108 (E.D. Va.), ("Virginia Action Liabilities Trial");
- Approximately 7.3 million documents from approximately 260 custodians, including approximately 220,000 documents produced in response to RFPs from Competitors;
- Hundreds of terabytes of data and more than eighty gigabytes of source code; and
- Responses to hundreds of written discovery requests.

Despite the voluminous discovery that they possess from related cases, Competitors contend that they are entitled to depositions of previously deposed Google employees because they did not personally question those employees in prior depositions, which were instead conducted by plaintiffs who purportedly were not "similarly situated" to Competitors. This argument fails for at least two reasons.

First, this Court has already recognized that later-filing plaintiffs in this MDL do not get to redo the discovery already taken in this case simply because they were not the ones asking the questions. MDL Dkt. No. 1799 at 1 (granting motion for protective order prohibiting Group 2 Publishers from taking additional depositions of Google employees). As further detailed below, Competitors cannot show that their proposed depositions of the Disputed Deponents "would shed new light" on any of the proposed topics for which the Disputed Deponents and others have provided extensive testimony. Competitors' desire to retread old ground does not justify the burden of having these Disputed Deponents sit again for deposition, some for the fifth time. Moreover, Competitors have ample opportunity to personally question Google's employees and have taken or have identified their intention to take nearly thirty (and counting) other depositions of former or current Google employees.

Second, Competitors have acknowledged that they challenge substantially the same conduct that was challenged by the Department of Justice in order to "restore competition" in ad tech markets. Virginia Action Dkt. No. 1380 at 1. Indeed, not only did Competitors make up the majority of the non-Google witnesses that testified against Google in support of the Department of Justice during the Virginia Action Liabilities Trial, Plaintiff OpenX even more recently touted the "extensive similarities" between OpenX's case against Google and *United States v. Google*

---

*Inc. v. Google LLC*, No. 1:25-cv-08630-PKC (S.D.N.Y.)); the Group 2 Publisher Cases (*McClatchy Media Company v. Google LLC*, No. 1:26-cv-00339 (PKC) (S.D.N.Y.); *Vox Media, LLC v. Google LLC*, No. 1:26-cv-00325 (PKC) (S.D.N.Y.); *Advance Publications, Inc. v. Google LLC*, No. 1:26-cv-00343 (PKC) (S.D.N.Y.); *The Atlantic Monthly Group LLC v. Google LLC*, No. 1:26-cv-00272 (PKC) (S.D.N.Y.); *Ziff Davis, Inc. v. Google LLC*, No. 1:26-cv-01055 (PKC) (S.D.N.Y.); *Los Angeles Times Communications LLC et al v. Google LLC et al*, No. 1:26-cv-01593 (PKC) (S.D.N.Y.); *Penske Media Corporation v. Google LLC*, No. 1:26-cv-00225 (PKC) (S.D.N.Y.)); Competitors' cases, and the investigation conducted by the Department of Justice into Google's advertising technology business ("DOJ Investigation").

*LLC*, No. 1:23-CV-108 (E.D. Va.). *See, e.g.*, Plaintiffs Openx Technologies, Inc.'s and Openx Ltd.'s Mem. Support Mot. Vacate CTO-13 at 1, *In re Google Digital Advertising Antitrust Litigation*, MDL No. 3010 (J.P.M.L. Sept. 17, 2025), Dkt. No. 303-1. Competitors also willingly leveraged the similarities between their claims and those brought by the Department of Justice in vigorously pursuing and submitting a preclusion stipulation to this Court. MDL Dkt. No. 1872 at 7. Like the Department of Justice and the other plaintiffs to this MDL, Competitors challenge the purported AdX-DFP tie, Dynamic Allocation, sell-side Dynamic Revenue Sharing (DRS), Poirot, Open Bidding, Bernanke, and Unified Pricing Rules as anticompetitive under the Sherman Act. Competitors largely seek testimony on this same conduct from the Disputed Deponents.

Competitors' arguments specific to each of the Disputed Deponents fare no better.

**a. Nitish Korula**

Competitors have Nitish Korula's testimony from four depositions[4] and the Virginia Action Liabilities Trial. A fifth deposition would place undue burden on Mr. Korula, who has not worked on Google's display advertising products for over 5 years, having left his position as Engineering Director for Google Ad Manager in December 2021. He currently serves as a Senior Director of Engineering for Google Home (a product not at issue in this case). Mr. Korula, therefore, cannot speak to any purported continuing Google conduct that Competitors claim has occurred after the date of Mr. Korula's last deposition in July 2024. Given the substantial existing discovery record already available to Competitors, it is needlessly cumulative and unduly burdensome to ask Mr. Korula to testify about matters on which he has testified extensively and that are now at least five years old.

Competitors assert that they want testimony from Mr. Korula on Poirot (including its interaction with Reserve Price Optimization (RPO)), AdX's transition to a first price auction and the unspecified "adaptation of Google's anticompetitive programs" (which they identified on a September 11 meet and confer as Poirot, Bernanke, and DRS) into a first price environment. Ex. A, September 28, 2026 Email from J. Mooney to M. Goodman. These topics do not justify deposing Mr. Korula for a fifth time.

First, Mr. Korula worked on the sell-side of Google's display advertising business and has repeatedly testified that he has limited knowledge of Poirot and Bernanke, which were buy-side auction optimizations. *See* Ex. B, Korula (DOJ Investigation) Tr. 186:13-14 ("But I don't really know the details of how Poirot was implemented and what exactly happened"), 221:8-11 ("I don't really know the details of how Bernanke works and when it raises or lowers bids"); Ex.

[4] Mr. Korula was deposed in the DOJ Investigation on October 28, 2021, the Virginia Action on November 14, 2023, and the Initial MDL Cases on both November 3, 2023 and July 12, 2024. Competitors have the transcripts of each of those depositions. On the date of his last deposition on July 12, 2024, deposing plaintiffs had access to 135,056 documents from Mr. Korula's custodial files alone.

C, Korula (Initial MDL Cases on November 3, 2023) Tr. 310:11-13 ("I didn't design [Poirot] or develop [Poirot] or work on [Poirot]. And I can't speak to the intent of people who did"), 312:20-21 ("I don't recall the details of Project Poirot"). Second, while Competitors seek Mr. Korula's testimony about purported changes to DRS after AdX moved to a first price auction, Mr. Korula has already testified as to his understanding that "dynamic revenue share was never reintroduced after the move to a first-price AdX auction." Ex. D, Korula (Initial MDL Cases on July 12, 2024) Tr. 100:9-13. Third, as shown below, Competitors have substantial testimony from other witnesses (including Mr. Korula himself) already on the topics which they claim to need to examine Mr. Korula.

For instance, to the extent Competitors seek testimony on Poirot and Alchemist after Google transitioned to a first price auction, they can consult at least the following deposition transcripts:

1. Nirmal Jayaram (Senior Director of Engineering, Buy-side), Initial MDL Cases (April 25, 2024 and July 10, 2024); and
2. [redacted] (Vice President, Engineering, Buy-side), Virginia Action and Initial MDL Cases.

Similarly, to the extent Competitors seek testimony on DRS, they can consult at least the following deposition transcripts:

1. Nitish Korula (Director of Engineering, Sell-side), Initial MDL Cases;
2. Jonathan Bellack (Senior Director of Product Management, Sell-side), DOJ Investigation;
3. [redacted] (Product Manager, Google Ad Manager, Sell-side), Group 1 Follow-On Publisher Cases; and
3. Eisar Lipkovitz (Vice President, Engineering, Display & Video Ads), EDVA and Initial MDL Cases.

**b. Nirmal Jayaram**

Competitors have Nirmal Jayaram's testimony from four depositions[5] and the Virginia Action Liabilities Trial. A fifth deposition would place undue burden on Mr. Jayaram, who has not worked on Google's display advertising products for over a year, having left his position as a Senior Director of Engineering for Google's buy-side ad tech tools in April 2025. He currently serves as a Senior Director of Engineering for YouTube Ads Personalization (a product not at issue in Competitors' Cases). Mr. Jayaram, therefore, cannot speak to any purported continuing

[5] Mr. Jayaram was deposed in the DOJ Investigation on September 17, 2021, the Virginia Action on November 14, 2023 and the Initial MDL Cases on both April 25, 2024 and July 10, 2024. Competitors have the transcripts of each of those depositions. On the date of his last deposition on July 10, 2024, deposing plaintiffs had access to 97,976 documents from Mr. Jayaram's custodial files alone.

Google conduct that Competitors claim occurred since April 2025.

Competitors indicated that they want testimony from Mr. Jayaram on Alchemist and related buyside optimizations, Poirot (including its interaction with RPO), "AdX's post-2019 auction dynamics" and "[e]fforts to perpetuate Google's Last Look advantage in a first price auction." Ex. A, September 28, 2026 Email from J. Mooney to M. Goodman. These topics do not justify deposing Mr. Jayaram for a fifth time.

First, Google's buyside optimizations have been well-trod ground in discovery for this and related litigations. To the extent Competitors seek testimony on Google buy-side optimizations such as Poirot and Alchemist, they can consult at least the following deposition and trial transcripts:

*Deposition Transcripts*

1. Nirmal Jayaram (Senior Director of Engineering, Buy-side), DOJ Investigation, Virginia Action and Initial MDL Cases;
2. [redacted] (Vice President, Engineering, Buy-side), Virginia Action and Initial MDL Cases;
3. [redacted] (Product Manager, Buy-side), DOJ Investigation;
4. [redacted] (Senior Director of Product Management, Display & Video Ads), DOJ Investigation; and
5. Eisar Lipkovitz (Vice President, Engineering, Display & Video Ads), Virginia Action and Initial MDL Cases.

*Trial Transcripts*

1. Nirmal Jayaram (Senior Director of Engineering, Buy-side), in the Virginia Action Liabilities Trial.

Second, Mr. Jayaram worked on the buy-side of Google's display advertising business and has already testified that he was only "somewhat familiar" with Last Look "since it's a sellside feature," Ex. E, Jayaram (DOJ Investigation) Tr. 207:23-25, and that he is "not exactly sure how dynamic allocation [i.e., the feature that Competitors assert created Last Look] works" because it is a sell-side feature. Ex. F, Jayaram (Initial MDL Cases on April 25, 2024) Tr. 231:7-9. In any event, Mr. Jayaram has already testified as to his understanding that "last look" was deprecated "around the time of [Google Ad Manager's] migration to [a] first price" auction. Ex. E, Jayaram (DOJ Investigation) Tr. 207:21-211:3. Moreover, Competitors do not base their claims on any alleged anticompetitive conduct of perpetuating "last look" in first-price auctions. It is therefore unnecessary and unreasonable to subject Mr. Jayaram to the substantial burden of a fifth deposition on a topic for which Competitors themselves have not even articulated a theory of harm and for which Mr. Jayaram has already testified about his lack of knowledge.

**c. Samuel Cox**

Competitors have testimony from Mr. Cox, who has not worked at Google since 2021, from two depositions—once during his tenure with Google and once after.[6] Yet another deposition would place undue burden on Mr. Cox and his current employer, adMarketplace, where he serves as Chief Product Officer, an executive position. *See Baker v. Saint-Gobain Performance Plastics Corp.*, 2024 WL 4523805, at *5 (N.D.N.Y. Mar. 21, 2024) (denying second deposition of non-party because "[t]he Court is also sensitive to the burden of duplicative discovery where, as here, the proposed deponent is a non-party."); *see also Consol. Rail Corp. v. Primary Indus. Corp.*, 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993) (denying depositions of executives because "permitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation. Accordingly, where other witnesses have the same knowledge, it may be appropriate to preclude a redundant deposition of a highly-placed executive."). Given the substantial existing discovery record already available to Competitors, including two transcripts of Mr. Cox's testimony, it is needlessly cumulative and unduly burdensome to ask a former employee to take time away from his new job to testify about matters on which he already testified and that are now at least five years old.

Moreover, Google did not disclose Mr. Cox as a witness on its initial disclosures. *See* Exs. G and H, Google's Initial Disclosures to Competitors. The Court previously granted a protective order prohibiting "cumulative and burdensome" depositions of former Google employees that were not identified by Google in its initial disclosures, and the Court's logic applies equally here. MDL Dkt. No. 1799 at 1.

Competitors assert they want to depose Mr. Cox a third time due to his involvement in header bidding and Google's Exchange Bidding, and because he "was involved in discussions about the Competitor Plaintiffs specifically and their involvement in Google's Exchange Bidding, as well as discussions with OpenX and internally at Google regarding the decreased DV360 spend on OpenX's ad exchange in 2018." Ex. I, August 18, 2026 Email from D. Dowling to A. Vissichelli; *see also* Ex. A, September 28, 2026 Email from J. Mooney to M. Goodman (similar). These topics do not justify deposing Mr. Cox a third time.

First, Mr. Cox has already testified extensively about both header bidding, *see, e.g.*, Ex. J, Cox (DOJ Investigation) Tr. 44:12-50:24, 54:5-100:13, 101:24-103:10, 106:12-107:16, 109:24-122:13, 122:25-123:13, 130:18-131:23, 139:16-146:21, 149:2-13, 150:22-155:7, and Google's Exchange Bidding (now called "Open Bidding"), including how Exchange Bidding works, Google's internal strategy and discussions about Exchange Bidding, the revenue share that Google charged Exchange Bidders, competition between header bidding and Exchange Bidding,

[6] Mr. Cox was deposed in the DOJ Investigation on October 26, 2020 and again in the Initial MDL Cases on June 25, 2024. Competitors have the transcripts of both depositions. On the date of his last deposition on June 25, 2024, deposing plaintiffs had access to 35,241 documents from Mr. Cox's custodial files alone.

and industry feedback about Exchange Bidding. Ex. K, Cox (Initial MDL Cases) Tr. 100:19-103:15, 139:2-140:3, 170:5-186:18, 194:12-202:16, 205:11-216:18, 252:4-254:19, 281:11-282:25, 294:4-309:22. Second, OpenX already knows the substance of Google's "discussions with OpenX. . . regarding the decreased DV360 spend on OpenX's ad exchange in 2018"—and the substance of Google's "communications with Competitors' employees," Ex. A, September 28, 2026 Email from J. Mooney to M. Goodman— because those discussions are memorialized in OpenX's own document productions and are available from their witnesses. *See, e.g.*, Ex. L, [redacted] *see also* Ex. M, [redacted]. To the extent OpenX intends to argue that any purported communications caused OpenX to act or respond in some manner, such information resides uniquely in OpenX's knowledge, not Mr. Cox's or Google's knowledge. Competitors also seek Mr. Cox's testimony on Project Poirot, but Mr. Cox testified two years ago that he had only a "vague recollection of Poirot" and "never managed Poirot." Ex. K, Cox (Initial MDL Cases) Tr. 285:12-13, 287:3-4. Contemporaneous documents confirm the same, as Mr. Cox remarked in an August 2019 document that he is not privy to information relevant to Poirot. Ex. N, GOOG-AT-MDL-011692514 at -514 ("I don't really think I'm the right guy for this question since I'm not really privy to our buying on 3PE [third party exchanges]").

It is unnecessary and unreasonable to subject Mr. Cox to the substantial burden of yet another deposition on topics about which there is ample testimony in the discovery record. More specifically, many depositions of current and former Google employees have already covered the topics on which Competitors seek discovery through a third deposition of Mr. Cox.

*Depositions Discussing Exchange Bidding*

1. Jonathan Bellack (Senior Director of Product Management, Sell-side), DOJ Investigation;
2. Eisar Lipkovitz (Vice President, Engineering, Display & Video Ads), DOJ Investigation;
3. George Levitte (Director of Product Management, AdX), DOJ Investigation and Initial MDL Cases;
4. [redacted] (Senior Product Manager, Sell-side), DOJ Investigation;
5. Chris LaSala (Managing Director, Global Publisher Platforms), Virginia Action and Initial MDL Cases; and
6. [redacted] (Director of Product Management, Mobile App Advertising Products), Group 1 Follow-On Publisher Cases.

*Depositions Discussing DV360's Spending Behavior, including Poirot*

1. Nirmal Jayaram (Senior Director of Engineering, Buy-side), DOJ Investigation, Virginia Action and Initial MDL Cases;
2. [redacted] (Vice President, Engineering, Buy-side), Virginia Action and Initial MDL Cases;
3. [redacted] (Group Product Manager, Buy-side), DOJ Investigation;
4. [redacted] (Senior Director of Product Management, Display & Video Ads), DOJ Investigation.

*Trial Transcripts Discussing Poirot*

1. Nirmal Jayaram (Senior Director of Engineering, Buy-side), in the Virginia Action Liabilities Trial.

[redacted]

[redacted] has already been deposed in this case, and Competitors have the transcript of his testimony.[7] Another deposition would place undue burden on Mr. [redacted], who has not worked on Google's display advertising products for over seven years, having left his position as a Research Scientist for Google's sell-side products in February 2019. He currently serves as a Research Scientist for Chrome (a product not at issue in this case). Mr. [redacted], therefore, cannot speak to any purported continuing Google conduct that Competitors claim has occurred since the date of his transition from working on Google's display advertising business in February 2019, which occurred years prior to his previous deposition.

Competitors indicated they want to depose Mr. [redacted] about RPO (and its interaction with Poirot), sell-side DRS, and the interaction of Project Bernanke with both "Last Look" and RPO. Ex. A, September 28, 2026 Email from J. Mooney to M. Goodman. These topics do not justify deposing Mr. [redacted] again.

First, Mr. [redacted] has already testified about RPO, *see, e.g.*, Ex. O, [redacted] (Initial MDL) Tr. 30:14-32:9, the interaction of RPO and Poirot, *see, e.g.*, *id.* at 288:21-297:12, and how AdX competes with non-Google demand sources through DRS, *see, e.g.*, *id.* at 179:12-197:6. Second, Mr. [redacted] recollection is limited as to the Bernanke-related topics: Mr. [redacted] testified that he "never worked on" Bernanke," he had a "possibly flawed understanding" of Bernanke and how it interacted with "last look," he could "only make assumptions" about how Bernanke worked, and he did not have a "precise recollection of [] working on th[e] proposal" to exempt ad buying tools from RPO. Ex. O, [redacted] (Initial MDL) Tr. 205:3-206:12, 217:14-16, 266:2-18. Furthermore, as described in Sections II.a through II.d, several Google witnesses have already testified

[7] Mr. [redacted] was deposed in the Initial MDL Cases on June 4, 2024. Competitors have the transcript of his deposition. On the date of his deposition, deposing plaintiffs had access to 18,119 documents from Mr. [redacted] custodial files alone.

extensively about Project Poirot (including about its interaction with RPO), DRS, and Google's buyside optimizations. Competitors have access to all of that testimony.

**e. George Levitte**

Competitors have George Levitte's testimony from two depositions.[8] Competitors indicated that they want to depose Mr. Levitte about "Competitors' Exchange Bidding relationships with Google," Mr. Levitte's "communications with Competitors Plaintiffs' employees," and Project Poirot (including its interaction with Reserve Price Price Optimization). Ex. A, September 28, 2026 Email from J. Mooney to M. Goodman.[9] A third deposition would place undue burden on Mr. Levitte and would be needlessly cumulative.

First, Competitors know their own relationships with Google and the communications they have received from Google employees, which are memorialized in their own document productions and are available from their witnesses. To the extent Competitors wish to argue that any purported communication caused Competitors to act or respond in some manner, such information resides in their knowledge, not Mr. Levitte's or Google's knowledge.

Second, Mr. Levitte has already testified extensively about Exchange Bidding, *see, e.g.*, Ex. P, Levitte (DOJ Investigation) Tr. 54:25-56:19, 133:8-141:10; Ex. Q, Levitte (Initial MDL Cases) Tr. 114:12-122:5; 228:15-233:3.

Third, as described in Sections II.a through II.d, Google witnesses have already testified extensively about Project Poirot (including about its interaction with RPO).

In an effort to find a compromise solution and narrow the issues before the Court, Google offered to make Mr. Levitte available for a two-hour deposition regarding Competitors' Exchange Bidding relationships with Google and Mr. Levitte's communications with

---

[8] Mr. Levitte was deposed in the DOJ Investigation on August 10, 2021 and the Initial MDL Cases on June 13, 2024. Competitors have the transcripts of each of those depositions. On the date of his last deposition on June 13, 2024, deposing plaintiffs had access to 71,027 documents from Mr. Levitte's custodial files alone.

[9] Competitors also propose to question Mr. Levitte, Mr. Korula, Mr. Jayaram, and Mr. [redacted] on all topics for which they were disclosed in Google's Initial Disclosures. *See* Ex. A, September 28, 2026 Email from J. Mooney to M. Goodman. Mr. Korula, Mr. Levitte, and Mr. [redacted] were identified by Google to have information regarding Google Ad Manager; Mr. Korula was also identified by Google to have information regarding AdMob. Mr. Jayaram was identified by Google to have information regarding Display & Video 360 and Google Ads. It is unclear whether Competitors consider this topic to be discrete from the other topics they identified, which are discussed above and all of which relate to these products. In any event, as the above makes plain, Mr. Levitte, Mr. Korula, Mr. Jayaram, and Mr. [redacted] have all testified at length about each of the Google products on which they were disclosed to have information, and there can be no question that Google Ad Manger, AdMob, Display & Video 360, and Google Ads have been covered extensively in the other depositions in this case.

Competitors' employees. Competitors rejected Google's offer. To the extent the Court allows Competitors to depose Mr. Levitte, the deposition should be limited to the scope of Google's proposal.

[redacted]

[redacted] has already been deposed, and Competitors have the transcript of his testimony.[10] Another deposition would place undue burden on Mr. [redacted], who has not worked on Google's display advertising products for over four years, having left his position as a Product Manager for Google's buy-side products in April 2022. He currently serves as a Group Product Manager for YouTube Creator Monetization Product Strategy (a product not at issue in this case). Mr. [redacted], therefore, cannot speak to any purported continuing Google conduct that Competitors claim occurred since April 2022.

Google did not disclose Mr. [redacted] as a witness on its initial disclosures. *See* Exs. G and H, Google's Initial Disclosures to Competitors. The Court previously granted a protective order prohibiting "cumulative and burdensome" depositions of former Google employees that were not identified by Google in its initial disclosures, and the Court's logic applies equally here. MDL Dkt. No. 1799 at 1.

Competitors state that they want to depose Mr. [redacted] about Poirot (including its interaction with RPO and Google's responses to Competitor inquiries about it), the competitive impact of "[d]isplay inventory bidding, including bid shading algorithms," Google Ads' cross-exchange bidding program called AwBid, and Google's relationship with third-party exchanges, including Competitors. Ex. A, September 28, 2026 Email from J. Mooney to M. Goodman. These topics do not justify deposing Mr. [redacted] again.

First, Mr. [redacted] has already testified about DV360's bid shading algorithm, Poirot, Ex. R, [redacted] (DOJ Investigation) Tr. 55:14-59:19, and so too have many other Google witnesses (as described in Sections II.a through II.d). Second, Competitors know their own relationships with Google and how Google has responded to their inquiries. To the extent Competitors wish to argue that any purported response caused Competitors to act or respond in some manner, such information resides in their knowledge, not Mr. [redacted] or Google's knowledge. Third, Mr. [redacted] has already testified about AwBid. *See, e.g.*, *id.* at 76:12-80:21. To the extent Competitors seek additional testimony on AwBid from Google employees, they can consult at least the following transcripts.

*Deposition Transcripts*

1. Brad Bender (Vice President, Product, Display & Video Ads), in the Initial MDL Cases.

---

[10] Mr. [redacted] was deposed in the DOJ Investigation on November 9, 2020. On the date of his deposition, deposing plaintiffs had access to 160,648 documents from Mr. [redacted] custodial files alone.

*Trial Transcripts*

1. Brad Bender (Vice President, Product, Display & Video Ads), in the Virginia Action Liabilities Trial; and

2. Per Bjorke (Director of Product Management, Ad Spam), in the Virginia Action Liabilities Trial.

In an effort to find a compromise solution and narrow the issues before the Court, Google offered to make Mr. [redacted] available for a two-hour deposition regarding strategic responses to Competitor inquiries (including TrustX, OpenX and Magnite) about Project Poirot. Competitors rejected Google's offer. To the extent the Court allows Competitors to depose Mr. [redacted], the deposition should be limited to the scope of Google's proposal.

**III. Competitors' Requested Deposition of [redacted] Would Be Unduly Burdensome, Cumulative, and Duplicative of Prior Discovery.**

[redacted] currently serves as a Staff Software Engineer for Google's buy-side advertising products. Competitors have offered only high-level bases for why they want to depose Mr. [redacted], namely, claiming that he had responsibility for Google bidding programs such as smart bidder, pHOB, pWin, and WinMax. That does not justify deposing Mr. [redacted].

First, this Court previously granted Google's motion for a protective order prohibiting Group 2 Publisher Plaintiffs from deposing Mr. [redacted] about his knowledge of Google's first-price bidding optimizations, finding that his testimony "would be cumulative and burdensome" due to the "extensive discovery" already taken of Google's auction-related practices. MDL Dkt. No. 1799 at 1-2. The Court's logic applies equally here.

Second, as described in Section II.b, knowledge of engineering on Google's buy-side products and its bidding algorithms has already been thoroughly explored in the multiple rounds of discovery that Plaintiffs undertook in related actions, including in depositions of Google's engineers. For example, Mr. Jayaram has already testified on Google's first price bidding optimizations as Google's corporate representative. *See, e.g.*, Ex. S, Jayaram (Initial MDL Cases on July 10, 2024) Tr. 106:23-179:4.

* * *

For the foregoing reasons, Google and Samuel Cox respectfully move for a protective order prohibiting Competitors from deposing Nitish Korula, Nirmal Jayaram, Samuel Cox, George Levitte, [redacted], [redacted], and [redacted].

Dated: September 30, 2026

Respectfully submitted,

*/s/ Allison Vissichelli*

Bradley Justus
Allison Vissichelli
Sam Sherman
Axinn LLP
1901 L Street NW
Washington, DC 20036
Telephone: (202) 912-4700
bjustus@axinn.com
avissichelli@axinn.com
ssherman@axinn.com

Craig M. Reiser
Axinn LLP
630 Fifth Avenue
New York, NY 10111
Telephone: (212) 728-2218
creiser@axinn.com

Daniel S. Bitton
Axinn LLP
55 Second Street
San Francisco, CA 9410
Telephone: (415) 490-1486
dbitton@axinn.com

Jeannie S. Rhee
Karen L. Dunn
William A. Isaacson
Martha L. Goodman
Jessica E. Phillips
Amy J. Mauser
DUNN ISAACSON RHEE LLP
401 Ninth Street, NW
Washington, DC 20004
Telephone: (202) 240-2900
jrhee@dirllp.com
kdunn@dirllp.com
wisaacson@dirllp.com
mgoodman@dirllp.com
jphillips@dirllp.com
amauser@dirllp.com

Erin J. Morgan
DUNN ISAACSON RHEE LLP
11 Park Place
New York, NY 10007
Telephone: (202) 240-2900
emorgan@dirllp.com

*Counsel for Samuel Cox and Defendants Google LLC and Alphabet Inc.*

cc: All Counsel of Record (via ECF)

**Federal Rule of Civil Procedure 37(a)(1) Certification**

I hereby certify that Google has in good faith conferred with Competitors and that the parties have reached an impasse.

Dated: September 30, 2026

Respectfully submitted,

*/s/ Allison Vissichelli*

Allison Vissichelli
Axinn LLP
1901 L Street NW
Washington, DC 20036
Telephone: (202) 912-4700
avissichelli@axinn.com

*Counsel for Defendants*
*Google LLC and Alphabet Inc.*