**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE: GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION** | **No. 1:21-md-03010 (PKC)** |

*This Document Relates To:*

| | |
|---|---|
| **IN RE: GOOGLE DIGITAL PUBLISHER ANTITRUST LITIGATION** | **No. 1:21-cv-07034 (PKC)** |
| **ASSOCIATED NEWSPAPERS LTD. and MAIL MEDIA, INC.,** *Plaintiffs,* -against- **GOOGLE LLC and ALPHABET INC.,** *Defendants.* | **No. 1:21-cv-03446 (PKC)** |
| **GANNETT CO., INC.,** *Plaintiff,* -against- **GOOGLE LLC and ALPHABET INC.,** *Defendants.* | **No. 1:23-cv-05177 (PKC)** |

**DEFENDANTS GOOGLE LLC, ALPHABET INC., AND YOUTUBE LLC'S MEMORANDUM IN SUPPORT OF MOTION TO STAY**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ..................................................................................................................... 4

ARGUMENT ......................................................................................................................... 6

I. Judicial Efficiency And Avoiding Conflicting, Overlapping Litigation Favors A Stay ............................................................... 10

A. A Stay Will Avoid Duplication Of Effort ....................................................... 10

B. Judicial Efficiency Is Served By A Stay ......................................................... 15

II. A Stay Will Promote The Public Interest And Protect Non-Parties ............................... 17

III. A Stay Will Not Prejudice Plaintiffs, Who Can Still Pursue Their Full Claims For Damages ................................................. 20

CONCLUSION ..................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
2022 WL 17853203 (N.D. Fl. Dec. 22, 2022) ........ 17

*In re Aluminum Warehousing Antitrust Litig.*,
833 F.3d 151 (2d Cir. 2016) ........ 21

*Amazon.com, Inc. v. WDC Holdings LLC*,
2023 WL 7272350 (E.D. Va. Aug. 30, 2023) ........ 18

*In re American Express Anti-Steering Rules Antitrust Litig.*,
2016 WL 748089 (E.D.N.Y. Jan. 7, 2016) ........ 6, 10

*Bohn v. Bartels*,
620 F. Supp. 2d 418 (S.D.N.Y. 2007) ........ 9, 19

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA*,
630 F. Supp. 2d 295 (S.D.N.Y. 2009) ........ 8, 9, 19

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*,
843 F.3d 48 (2d Cir. 2016) ........ 21

*Consumer Fin. Prot. Bureau v. MoneyLion Techs. Inc.*,
2023 WL 8644377 (S.D.N.Y. Dec. 1, 2023) ........ 18

*D'Antonio v. Cable News Network, Inc.*,
2026 WL 1815527 (S.D.N.Y. 2026) ........ *passim*

*Estate of Heiser v. Deutsche Bank Trust Co. Americas*,
2012 WL 2865485 (S.D.N.Y. July 10, 2012) ........ 18

*In re Google Digital Advertising Antitrust Litig.*,
2025 WL 3012840 (S.D.N.Y. Oct. 27, 2025) ........ *passim*

*Koninklijke Philips N.V. v. ZOLL Med. Corp.*,
77 F. Supp. 3d 255 (D. Mass. 2015) ........ 11

*Lamborn v. Dittmer*,
726 F. Supp. 510 (S.D.N.Y. 1989) ........ 22

*LePage's Inc. v. 3M*,
324 F.3d 141 (3d Cir. 2003)............................................................................... 16

*In re MPM Silicones, LLC*,
2017 WL 4386378 (S.D.N.Y. Oct. 2, 2017)............................................................. 9, 18

*Nelson v. G.Skill USA, Inc.*,
2023 WL 3300408 (W.D.N.Y. May 8, 2023)............................................................. 19

*Novell, Inc. v. Microsoft Corp.*,
2012 WL 2913234 (D. Utah July 16, 2012)............................................................. 16

*Nuccio v. Duve*,
2015 WL 1189617 (N.D.N.Y. Mar. 16, 2015)............................................................. 19

*OV Loop, Inc. v. Mastercard Inc.*,
2023 WL 7905690 (S.D.N.Y. Nov. 16, 2023)............................................................. 10, 20, 21

*Pakage Apparel, Inc. v. Tommy John, Inc.*,
2024 WL 4117200 (S.D.N.Y. Sept. 9, 2024)............................................................. 21

*In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*,
No. 1:05-MD-1720, Dkt. No. 8727 (E.D.N.Y. Oct. 7, 2022)............................................ 14

*Philips N. Am. LLC v. Glob. Med. Imaging, LLC*,
2024 WL 4240920 (N.D. Ill. Sept. 19, 2024)............................................................. 19

*Pry v. Auto-Chlor Sys., LLC*,
2024 WL 3728981 (S.D.N.Y. Aug. 8, 2024)............................................................. 20

*Riverkeeper, Inc. v. EPA*,
2007 WL 4208757 (S.D.N.Y. Nov. 26, 2007)............................................................. 16

*Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*,
356 F. Supp. 3d 287 (S.D.N.Y. 2018)............................................................. *passim*

*Sutherland v. Ernst & Young LLP*,
856 F. Supp. 2d 638 (S.D.N.Y. 2012)............................................................. 20

*Uniloc USA, Inc. v. Motorola Mobility LLC*,
52 F.4th 1340 (Fed. Cir. 2022)............................................................. 10, 19

*United States v. American Express Co.*,
838 F.3d 179 (2d Cir. 2016)............................................................. 11

*United States v. Google LLC*,
778 F. Supp.3d 797 (E.D. Va. Apr. 17, 2025) ........................................................ *passim*

*United States v. Microsoft Corp.*,
253 F.3d 34 (D.C. Cir. 2001) ........................................................................................ 21

*UnitedHealthcare Ins. Co. v. Regeneron Pharms., Inc.*,
2021 WL 6137097 (S.D.N.Y. Dec. 29, 2021) .................................................... 16, 17, 19

*US Airways, Inc. v. Sabre Holdings Corp.*,
938 F.3d 43 (2d Cir. 2019)........................................................................... 11, 12, 16

*Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*,
540 U.S. 398 (2004)...................................................................................... 2, 12, 13

*Weaver Corp. v. Kidde, Inc.*,
701 F. Supp. 61 (S.D.N.Y. 1988)............................................................................ 10, 19

*Wiggins v. Liakas L., P.C.*,
2023 WL 2402866 (S.D.N.Y. Mar. 8, 2023) ............................................................... 8, 19

*Wolf Designs, Inc. v. Donald McEvoy Ltd., Inc.*,
341 F. Supp. 2d 639 (N.D. Tex. 2004) ...................................................................... 16

*Yamaha Int'l Corp. v. Cent. Venture, Inc.*,
1991 WL 4548 (S.D.N.Y. Jan. 14, 1991) ................................................................ *passim*

# INTRODUCTION

Plaintiffs' claims are tethered to the liability findings in *United States, et al. v. Google LLC*, No. 1:23-CV-00108 (E.D. Va.) (the "Virginia Action"), which Google has been estopped from challenging in this Court.[1] With the Gannett and Daily Mail cases set for trial in less than six months and the Publisher Class about to be remanded to the Northern District of California for pre-trial scheduling, there is a real risk of having two jury trials unwound because of errors in the Virginia Action decision. With a final judgment in the Virginia Action set to issue, Google will shortly be appealing the ruling on which Plaintiffs' claims rely. A reversal of the liability findings in the Virginia Action would entirely dispose of or, at a minimum, substantially re-shape Plaintiffs' cases—requiring them to present their own evidence to attempt to establish the core elements of their claims, including the relevant market, monopoly power, and exclusionary conduct. If these cases proceed to trials in the interim, two courts, the public (including the respective juries), trial witnesses, and the parties will potentially have to do everything over again after Google's appeal is resolved by the Fourth Circuit.

Trials in these cases will require two courts and two juries to each devote significant time unpacking complicated facts regarding Google's advertising technology, hearing from dozens of fact witnesses and numerous expert witnesses, and reviewing thousands of exhibits. The liability and remedies bench trials in the Virginia Action are illustrative. There, the court in the Virginia Action (the "Virginia Court") heard from dozens of live witnesses for over a collective trial month. The exhibit lists for the liability trial alone spanned thousands of documents. And the Virginia Court did not even have to adjudicate issues like antitrust standing and damages, which the juries

[1] "Plaintiffs" refers to Gannett, Daily Mail, and the Publisher Class. "Gannett" refers to Gannett Co. Inc. and "Daily Mail" refers to Associated Newspapers Ltd. and Mail Media, Inc. The "Publisher Class" refers to the AdX Publisher Class, *see* MDL Dkt. No. 1266, and Mikula Web Solutions, Inc. "Google" refers to Google LLC, Alphabet Inc., and YouTube LLC.

will have to resolve here. Regardless of the parties' best efforts to streamline their presentation for a lay jury based on this Court's guidance, *see* MDL Dkt. No. 2054, trials in these cases will inevitably be complex and time-consuming undertakings.

Google expects to challenge the Virginia Action Liability Opinion on appeal, including the court's conclusions that go to the heart of Plaintiffs' claims, such as the holding that Google's conduct was exclusionary and the erroneous application of *Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004). In *Trinko*, the defendant failed to adequately service its competitors' customers, which the plaintiff alleged discouraged those customers from doing business with the defendant's rivals. 540 U.S. at 404-05. Reaffirming a long-standing antitrust principle, the Court held the defendant had no obligation under the antitrust laws to design or implement "new systems . . . simply to make [rivals'] access possible." *Id*. at 410. A reversal on *Trinko* or other issues would reopen the conduct Plaintiffs challenge and otherwise likely be dispositive of the Plaintiffs' cases. And even if the result in the Virginia Action is affirmed, a stay would still benefit all involved, because the Fourth Circuit's decision would provide greater clarity on the scope of trial and permit the trials to proceed without the uncertainties presented by a potential reversal of the Virginia Court.

By staying these cases until Google's appeal is resolved, the Court can avoid two multi-week jury trials resulting in verdicts premised on errors of law by another court. Courts in this District routinely stay actions to avoid duplicative proceedings, preserve judicial resources, and protect the public interest. A stay would serve these interests here because Google's forthcoming appeal of the Virginia Action will shape, streamline, and potentially entirely dispose of the issues to be tried.

*First*, a stay ensures there is no duplication and waste of judicial resources. Any reversal of the Virginia Action by the Fourth Circuit would unravel any judgments in Plaintiffs' cases and require new trials at a minimum. Moreover, a stay ensures consistency between the Virginia Action and both the Gannett and Daily Mail actions and the Publisher Class action.

*Second*, a stay would be in the public interest. While the public has no interest in Plaintiffs' private damages claims, it does have a substantial interest in efficient litigation. Given Google's impending appeal, there is a meaningful risk that any trials that occur in these cases will need to be repeated—in part or in whole—and thus require empaneling a second set of juries. In fact, trials may be unnecessary if, for example, the Fourth Circuit concludes that Google's conduct is not unlawful under *Trinko*. *See* MDL Dkt. No. 1219 § F.1 (finding "[n]o [i]nconsistency" between the Second Circuit and Fourth Circuit in their application of the refusal to deal doctrine under *Trinko*).

*Third*, a stay that eliminates the risk of duplicative litigation would benefit non-parties. Any jury trials in these cases will likely involve many non-party witnesses, who, absent a stay, may be called to appear twice in the same case.

*Fourth*, a stay would not prejudice the Plaintiffs as they will remain able to pursue their full claims. Any claims they have for equitable relief would be effectively mooted by affirmance of the Virginia Action, where the Virginia Court announced its ordered remedies "will be sufficient to effectively pry [the 'open-web display' ad exchange and publisher ad server markets] open to competition." E.D. Va. Dkt. No. 1858 at 3 (citation and internal quotation marks omitted). Any delay of their claims for money damages could be addressed by pre-judgment interest, if necessary.

For these reasons and as set forth below, the Court should stay Plaintiffs' cases.

## BACKGROUND

In May 2025—before the Virginia Court issued a final judgment that would allow Google to appeal any aspect of that court's ruling on liability (the "Liability Opinion")—Plaintiffs in these cases all sought leave to use the Liability Opinion to preclude Google from challenging liability on their own antitrust claims. *See* MDL Dkt. No. 948; MDL Dkt. No. 953. Google opposed, arguing that applying collateral estoppel before Google had a chance to appeal the Liability Opinion would create significant "uncertainty and inefficiency." MDL Dkt. No. 976 at 7; MDL Dkt. No. 977 at 5.

The Court ruled on estoppel prior to appeal of the Virginia Action and held that Google is precluded from litigating in Plaintiffs' cases the following findings and conclusions from the Liability Opinion:

1. "[T]he existence of separate and distinct markets for publisher ad servers and ad exchanges";
2. "[T]hat the ad server and ad exchange markets are worldwide in scope";
3. "[T]hat Google has engaged in the following anticompetitive conduct which support[s] the Publisher Movants' claim that it willfully acquired and maintained its monopoly power in the ad server and ad exchange markets: Unlawful Tying, First Look, Last Look, Dynamic Revenue Share and Unified Pricing Rules"; and
4. "[T]hat Google has unlawfully tied DoubleClick for Publishers and AdX in violation of section 1 of the Sherman Act."

*In re Google Digital Advertising Antitrust Litig.*, 1:21-md-03010, 2025 WL 3012840, at *17 (S.D.N.Y. Oct. 27, 2025) (the "Preclusion Order").

Following the Court's Preclusion Order, Google moved for summary judgment only as to the aspects of Plaintiffs' claims not directly addressed in the Liability Opinion and not subject to this Court's Preclusion Order. Google was otherwise barred by the Court from challenging at summary judgment core elements of Plaintiffs' claims, including market definition, monopoly

power, and whether the precluded conduct was exclusionary. *See* Preclusion Order, 2025 WL 3012840, at *9. In opposing Google's motions for summary judgment, Plaintiffs relied heavily on the Liability Opinion. Gannett and Daily Mail, for example, argued that they can recover damages allegedly due to EDA "for the independent reason that they flow from Google's illegal tie." MDL Dkt. No. 1526 at 10. Similarly, the Publisher Class argued that they can pursue damages based on "actions designed to coerce DFP publishers to use AdX" because those actions are "the same anticompetitive restraints Google is precluded from relitigating." MDL Dkt. No. 1517 at 3.

On September 2, 2026, before the Court ruled on Google's summary judgment motions, the Virginia Court issued its Remedies Order, E.D. Va. Dkt. No. 1857, and Remedies Opinion, E.D. Va. Dkt. No. 1858. The Remedies Order and Opinion required Google to make changes to how it operates and develops certain "open-web display" ad tech products including:

- Requiring Google to build new integrations between AdX and non-Google publisher ad servers, including functionality for the submission of real-time bids, as well as integrations between both AdX and DFP and Prebid, E.D. Va. Dkt. No. 1858 at 60-62, 65-66;
- Requiring Google to provide bidding data and technical documentation to publishers, *id*. at 68-71; and
- Requiring certain Google ad tech products to operate in a non-discriminatory manner, *id*. at 74, 83, 86-87.

The remedies prescribed by the Virginia Court mirror the equitable remedies that Plaintiffs in these cases seek. *See, e.g.*, MDL Dkt. No. 1197 (Gannett Second Am. Compl.) at ¶ 306 (requesting the Court to "enter relief to restore competition"); MDL Dkt. No. 1196 (Daily Mail Third Am. Compl.) at ¶ 291 (requesting the Court to "enter relief to restore competition"); MDL Dkt. No. 1192 (Second Am. Consolidated Class Action Compl.) at ¶ 425 (requesting the Court to "permanently enjoin . . . the conduct alleged herein, and from adopting or following any [conduct with] a similar purpose or effect.").

On September 30, 2026, the Court ruled on Google's summary judgment motions targeting the aspects of Plaintiffs' claims that were not subject to the Court's Preclusion Order. *See* MDL Dkt. No. 2041. Following its summary judgment ruling, this Court set an April 5, 2027 trial date for the Gannett and Daily Mail cases. *See* MDL Dkt. No. 2054. On October 13, 2026, the Publisher Class requested that its case be remanded to the Northern District of California. *See* MDL Dkt. No. 2069.

On October 2, 2026, the parties in the Virginia Action submitted a Proposed Final Judgment to the Virginia Court. *See* E.D. Va. Dkt. No. 1868-1. Once the Virginia Court enters its final judgment, Google will appeal.

## ARGUMENT

Plaintiffs' cases are inextricably intertwined with a liability opinion that Google will appeal imminently. Core elements of Plaintiffs' antitrust claims, such as market definition and monopoly power, will be assumed at trials, but possibly reversed because of errors of another court. Trial for the Gannett and Daily Mail cases is less than six months away. MDL Dkt. No. 2054. The Court should thus stay Plaintiffs' cases pending the resolution of Google's impending appeal of the Virginia Court's Liability Opinion.

Giving "preclusive effect to such a significant set of antitrust issues" that will be appealed risks requiring multiple, duplicative trials to resolve the same issues. *In re Am. Express Anti-Steering Rules Antitrust Litig.*, No. 11-MD-2221, 2016 WL 748089, at *6 (E.D.N.Y. Jan. 7, 2016). To avoid the "possibility of overlapping or duplicative litigation," courts routinely enter stays pending the resolution of appeals that can—like those here—meaningfully impact the complexion of the proceedings. *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 356 F. Supp. 3d 287, 299 (S.D.N.Y. 2018); *see also Yamaha Int'l Corp. v. Cent. Venture, Inc.*, No. 90-CV-9595, 1991 WL

4548, at *2-3 (S.D.N.Y. Jan. 14, 1991) (granting a stay where a pending appellate ruling in a parallel action could "destroy[]" the collateral estoppel effect of the predicate decisions).

Trying Plaintiffs' cases even a single time will be exacting. The juries will have to be educated on publisher ad servers, ad exchanges, and the tools that advertisers use to purchase digital advertising. The juries will be called on to reach conclusions regarding whether conduct not covered in the Preclusion Order was anticompetitive. They will also have to reach conclusions regarding whether any conduct, whether or not covered by the Preclusion Order, caused the purported damages of which Plaintiffs complain. Across several weeks covering both the liability and remedies trials, the Virginia Court heard from thirty-nine and twenty-six live witnesses, respectively, for over a collective trial month. The liability trial in the Virginia Action featured testimony from 15 live non-party witnesses, while the remedies phase included testimony from 12 live non-party witnesses. *See* E.D. Va. Dkt. Nos. 1335-1364 (liability trial); E.D. Va. Dkt. Nos. 1789-1808 (remedies trial). The trial exhibit lists for the liabilities trial alone spanned thousands of documents. *See*, *e.g.*, E.D. Va. Dkt. No. 923. Any trials here will likely require the testimony of dozens of party and non-party witnesses regarding complicated technology offerings, spanning thousands of exhibits and numerous experts. *See, e.g.*, MDL Dkt. No. 1050 at 2 ("Any trial in Daily Mail's and Gannett's lawsuits would feature the same witnesses, testimony, and evidence that Judge Brinkema considered.").

This Court evaluates a motion to stay by balancing five factors: (i) the court's interest in judicial efficiency and avoiding conflicting, overlapping litigation; (ii) the public interest, including reducing the burdens on jurors; (iii) the interests of non-parties; (iv) the burdens facing the defendant; (v) the plaintiffs' interest in speed versus any actual prejudice from a temporary

delay. *See Wiggins v. Liakas L., P.C.*, No. 21-CV-772, 2023 WL 2402866, at *3 (S.D.N.Y. Mar. 8, 2023). Each factor favors a stay here.

Courts have found these factors weigh in favor of a stay in analogous situations to those present here. For example, in *D'Antonio v. Cable News Network, Inc.*, Judge Marrero considered whether to stay a California Invasion of Privacy Act class action. 2026 WL 1815527, at *1 (S.D.N.Y. 2026). An earlier-decided California case denied a motion to dismiss for lack of Article III standing, and the defendant sought to assert the same challenge to the plaintiffs' standing in this District. *Id.* While the case in this District was proceeding, the California case was appealed to the Ninth Circuit. *Id.* Recognizing the appeal's significance, Judge Marrero stayed the action, finding that it would be an inefficient use of judicial time and resources to proceed further given that the Ninth Circuit's impending resolution of the appeal would "ultimately impact the course of this litigation," and that a stay would be in the "best interests of the courts and the public." *Id.* at *2-3. In so doing, Judge Marrero determined that the plaintiff's interest in proceeding expeditiously with its litigation was not unique prejudice sufficient to defeat a stay, while the burden on the defendant was high given its exposure to a costly and time-consuming litigation if the stay was denied. *Id.*

Similarly, in *Catskill Mountains Chapter of Trout Unlimited Inc. v. EPA*, the court stayed a Clean Water Act case because a separate case concerning overlapping issues was on appeal before the Eleventh Circuit. *See* 630 F. Supp. 2d 295, 304-07 (S.D.N.Y. 2009). The court found that a stay would "best serve the interests of the courts by promoting judicial efficiency" because the Eleventh Circuit's petitions raised questions "identical to those" in the current action and waiting for the Eleventh Circuit would conserve judicial resources. *Id.* at 304-05. Additionally, the court held that a stay would benefit the public and non-parties because it would avoid the prejudice

resulting from the simultaneous litigation of identical issues in different courts. *Id.* at 306. The court determined that the plaintiffs suffered no unique prejudice from a temporary delay while the Eleventh Circuit petitions were decided because any immediate district court ruling would face certain appeal to the Second Circuit. *Id.* at 307.

Here, too, the Court should stay these actions in deference to the forthcoming judgment of the Fourth Circuit. All the factors courts consider in this District confirm that a stay is appropriate. First, a stay here benefits the "interests of the court" by promoting judicial efficiency and avoiding the conflicting rulings that may result if this Court moves forward with multi-week trials premised on incorrect conclusions of law by the Virginia Court. *See Yamaha*, 1991 WL 4548, at *2-3 (staying case where an appellate ruling could upend collateral estoppel). Second, a stay serves "the public interest" by ensuring that citizens of New York (and California) are not subject to unnecessary litigation if these trials proceed on incorrect conclusions of law and require new trials. *See Bohn v. Bartels*, 620 F. Supp. 2d 418, 433-34 (S.D.N.Y. 2007). Third, a stay protects "the interests of persons not parties to the civil litigation" by eliminating the possibility of duplication and sparing many non-party witnesses from the disruption of testifying multiple times. *In re MPM Silicones, L.L.C.*, No. 15-CV-2280, 2017 WL 4386378, at *2 (S.D.N.Y. Oct. 2, 2017) (staying action to prevent "time-consuming" testimony for non-parties). Fourth, "the private interests of and burden on the defendant" favor a stay due to the risk of "overlapping or duplicative litigation" if the Virginia Action is reversed, since a Fourth Circuit reversal on even a single issue could require an inefficient and costly unwinding of any verdict in favor of or relief entered for Plaintiffs. *See Royal Park*, 356 F. Supp. 3d at 300. Finally, a stay does not prejudice the Plaintiffs in their pursuit of monetary relief. *See OV Loop, Inc. v. Mastercard Inc.*, No. 23-CV-1773, 2023 WL 7905690, at *7 (S.D.N.Y. Nov. 16, 2023).

## I. Judicial Efficiency And Avoiding Conflicting, Overlapping Litigation Favors A Stay

### A. A Stay Will Avoid Duplication Of Effort

"The possibility of overlapping or duplicative litigation weighs heavily" in the Court's analysis of whether to grant a stay. *Royal Park*, 356 F. Supp. 3d at 299. Courts have recognized the risks of proceeding with a case where a predicate ruling is under appeal, especially when that appeal risks upending the availability of collateral estoppel. *See*, *e.g.*, *Weaver Corp. v. Kidde, Inc.*, 701 F. Supp. 61, 66 (S.D.N.Y. 1988) (granting a stay of a federal declaratory action pending the appeal of a parallel state court order that would determine the collateral estoppel effect); *In re Am. Express Anti-Steering*, 2016 WL 748089, at *6, *15 (staying pre-trial proceedings and "postpon[ing] the . . . trial date" to avoid the inefficiency of an overlapping action "during the pendency of a merits appeal of the first-decided action"); *Uniloc USA, Inc. v. Motorola Mobility LLC*, 52 F.4th 1340, 1348-49 (Fed. Cir. 2022) (staying rulings and finding that forcing litigation while a preclusive judgment is pending appeal risks inefficiency and wasted effort).

*Yamaha* is illustrative. There, the court evaluated a motion to stay summary judgment proceedings where the moving party sought to apply collateral estoppel from a parallel California district court decision. 1991 WL 4548, at *2-3. Because that underlying California decision was on appeal, the moving party argued a stay was appropriate to avoid having a New York judgment entered and subsequently undone should the California ruling be reversed. *Id*. The court granted a stay to avoid "the possibility of the case having to be considered and [then] reconsidered . . . depending on the outcome of the [California case] appeal." *Id.* This same reasoning applies here.

Google's impending appeal of the Liability Opinion will challenge issues and conclusions that Google has been estopped from litigating on the merits in these actions. *See* Preclusion Order, 2025 WL 3012840, at *9. This Court has further confirmed that "[i]f the finding of liability in the

E.D. Va. Action were to be reversed on appeal, Rule 60(b), Fed. R. Civ. P., would provide Google with a remedy in any MDL member case in which issue preclusion was applied." *Id.* at *6. Undoing such a liability finding *after trials* in Plaintiffs' cases would be unnecessarily costly. *See, e.g.*, *Koninklijke Philips N.V. v. ZOLL Med. Corp.*, 77 F. Supp. 3d 255, 257 (D. Mass. 2015) (staying upcoming damages trial pending appeal of liability issue in a related matter to avoid the "large expense[]" of a second trial). There is no reason to proceed with trials in these circumstances, which present a meaningful risk of "overlapping or duplicative litigation." *Royal Park*, 356 F. Supp. 3d at 299.

This risk of duplicative litigation is not theoretical. The Gannett and Daily Mail cases are scheduled to go to trial in less than six months. MDL Dkt. No. 2054. Other courts in this District adjudicating antitrust cases have been forced to undo multi-week trials where the appeal of a related case toppled the foundations of the second-decided case. In *US Airways, Inc. v. Sabre Holdings Corp*, the case proceeded to a jury trial in this District while an appeal to the Second Circuit in another case, *United States v. American Express Co.*, 838 F.3d 179 (2d Cir. 2016) ("*Amex*"), raised a common legal issue. Both cases turned on whether the respective relevant markets were two-sided such that the fact-finder must consider the impact of alleged anticompetitive conduct on both sides of the market. 938 F.3d 43 (2d Cir. 2019). After the court in *Sabre* had already streamlined the scope of the trial through *Daubert* motions and motions *in limine*, the Second Circuit in *Amex* held the market in that case was two-sided and a two-sided market required antitrust plaintiffs to show anticompetitive effects in both sides of that market, not just one. *Id.* at 56. To accommodate the presentation of expert testimony and other evidence of harm, the court in *Sabre* provided the jury with hypothetical questions on the verdict form so that, even if the jury found a one-sided market (concerning global distribution system services to

airlines), it was also required to answer whether it would come to the same verdict had it found a two-sided market. *Id.* at 57. Despite the court's foresight in trying to avoid duplication through special interrogatories on the verdict form, the Second Circuit vacated both verdicts from the nine-week trial and ordered a new trial. *Id.* at 59-60. The Second Circuit ruled that the primary jury verdict (premised on a one-sided market) was untenable given the market at issue had to be two-sided. *Id*. at 60. The Second Circuit also vacated the alternative verdict premised on a two-sided market. *Id*. The court reasoned that the jury's damages award "cast[] serious doubt on the reliability of the alternative verdict" because the jury awarded the same amount of damages under both verdicts even though the damages should have been lower under a two-sided market definition. *Id*.

*Sabre* illustrates how fragile antitrust verdicts can be where there is a parallel related proceeding. And the circumstances here are even more perilous because Plaintiffs do not bring merely analogous claims (as in *Sabre*); they challenge the very same conduct that was at issue in the Virginia Action. Google intends to appeal several aspects of the Virginia Court's Liability Opinion that would have a significant impact on Plaintiffs' cases.

For example, Google intends to challenge the Virginia Court's finding of an anticompetitive tie between Google's "open-web display" ad exchange (tying product) and its "open-web display" publisher ad server (tied product) as inconsistent with the Supreme Court's *Trinko* decision. In *Trinko*, the defendant failed to adequately service its competitors' customers, which the plaintiff alleged discouraged those customers from doing business with the defendant's rivals. 540 U.S. at 404-05. Reaffirming a long-standing antitrust principle, the Court held the defendant had no obligation under the antitrust laws to design or implement "new systems . . . simply to make [rivals'] access possible." *Id*. at 410. In contravention of that antitrust principle, the Virginia Court nevertheless faulted Google for never having developed specific "real-time

bidding" integrations between AdX's "open-web display" auctions and third-party "open-web display" publisher ad servers. Liability Opinion at 866-67; *see also Trinko*, 540 U.S. at 409 (rejecting the application of *Aspen Skiing* where there was no allegation defendant "voluntarily engaged in a course of dealing with its rivals").

If this Court and the California court proceed to trial and the Fourth Circuit reverses the finding of a tie between AdX and DFP, that result alone would require unwinding any damages awarded in Plaintiffs' cases, given that Plaintiffs have anchored their theories of harm and resulting alleged damages on an AdX-DFP tie. *See* Preclusion Order § F.1 (finding "no inconsistency" between the Second Circuit and Fourth Circuit in their application of the refusal to deal doctrine under *Trinko*). For example, Gannett and Daily Mail represented to this Court in their opposition to Google's summary judgment motion that their purported damages from product designs, such as Enhanced Dynamic Allocation and Bernanke, are "traceable to Google's unlawful tying arrangement." MDL Dkt. No. 1526 at 15. Likewise, as this Court recognized in its class certification opinion, the "[AdX] Publishers describe the DFP-AdX ties as the 'lynchpin' of their claims and assert that these additional practices had a synergistic effect of intentionally consolidating Google's monopoly power." MDL Dkt. No. 1266 at 33.

Similarly, a reversal of the Virginia Court's determination that AdX had monopoly power in "open-web display" ad exchanges would also undo any trials in Plaintiffs' cases. Plaintiffs' liability theories and damages are squarely based on the Virginia Court's finding that the "open-web display" ad exchange market has been monopolized. Plaintiffs assert that the markets they claim were monopolized "match precisely" and are the "same" as the "open-web display" markets for ad exchanges and publisher ad servers in the Virginia Action. *See* MDL Dkt. No. 1496 at 9 (representing to the Court that the "market definitions [offered by Gannett and Daily Mail's

economic expert] match precisely the markets identified by Judge Brinkema."); MDL Dkt. No. 1041 at 7 ("Both Publisher[] [Class Plaintiffs] and the government alleged the same product markets specific to programmatic open-web display advertising."); *see also* Preclusion Order, 2025 WL 3012840, at *7 (finding an identity of issue between Plaintiffs' cases and the Liability Opinion regarding AdX's monopoly power).

Should Plaintiffs' cases proceed and the Fourth Circuit reverse the Virginia Court's judgment, that result will also require adjudication of issues that were not previously addressed by the Court due to its collateral estoppel ruling. In particular, this Court will need to consider new motions by Google challenging precluded issues such as whether it had a duty to build new integrations for its rivals, market definition, monopoly power, and several pieces of precluded challenged conduct. *See, e.g.*, *In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*, No. 1:05-MD-1720, Dkt. No. 8727 (E.D.N.Y. Oct. 7, 2022) (excluding expert opinion about payment card markets after a Supreme Court holding concerning similar markets rendered the expert opinion "contrary to controlling law"). If this Court were to decide in Google's favor on topics of market definition or monopoly power, for example, Plaintiffs' cases could not go forward to trial. Regardless, the Court would need to apply any legal standard articulated by the Fourth Circuit to Plaintiffs' allegations of anticompetitive conduct.

This "possibility of overlapping or duplicative litigation weighs heavily" in favor of a stay of Plaintiffs' cases. *Royal Park*, 356 F. Supp. 3d at 299 (granting a stay); *Cable News Network*, 2026 WL 1815527, at *3 (granting stay to "prevent the possibility of conflicts between different courts" (citation and internal quotation marks omitted)).

### B. <u>Judicial Efficiency Is Served By A Stay</u>

Given the significant possibility of wasted judicial resources, a stay is appropriate to serve "the interests of the courts" and the ability to "conserv[e] judicial resources." *Royal Park*, 356 F. Supp. 3d at 298-299. In *Royal Park*, the court considered whether to stay a breach of contract claim over U.S. Bank's billing of residential mortgage-backed securities trusts for its legal costs because the outcome of an underlying suit would determine if U.S. Bank had a contractual right to indemnification. *See id*. at 290-91. In granting the stay, the court highlighted that no other factor "outweigh[ed] the potential waste of resources if the case were to proceed" because an unfavorable outcome in the underlying suit would "fatally undermine" the defendant's defenses here. *Id*. at 299. Therefore, staying the proceedings avoided a "possible waste of both the parties' and the court's resources" by removing the "inefficiencies associated with determining indemnification issues during ongoing litigation as opposed to at its conclusion." *Id*. Where a predicate decision with preclusive effect is subject to appeal, "judicial efficiency would be best served by granting" a stay "until after the decision" of the appellate court. *Yamaha*, 1991 WL 4548, at *3.

Google's appeal of the Virginia Action will similarly resolve fundamental legal issues in these cases, and staying Plaintiffs' cases will therefore preserve judicial resources and prevent having to re-try proceedings. Any trials in these cases will expend multiple weeks of this Court's and the California court's time. In the Virginia Action, the court conducted over a month of trial time between the liabilities and remedies bench trials. *See supra* at 7. Here, multiple jury trials covering more conduct than in the Virginia Action likely would take even longer.[2] *See, e.g.*, *Sabre*, 938 F.3d 43 (nine-week jury trial concerning Sherman Act §§ 1 and 2 claims); *LePage's Inc. v.*

[2] In addition to adjudicating damages for conduct covered by the Preclusion Order, Plaintiffs' cases cover a number of product designs not addressed in the Virginia Action. *See, e.g.*, MDL Dkt. 2041 at 22-27 (EDA, MBTW, Bernanke, and Alchemist), 48 (the "Act 2" DFP-AdX tie).

*3M*, 324 F.3d 141, 145 (3d Cir. 2003) (nine-week jury trial concerning Sherman Act § 2 claim); *Novell, Inc. v. Microsoft Corp.*, No. 2:04-CV-01045, 2012 WL 2913234, at *1 (D. Utah July 16, 2012) (eight-week jury trial concerning Sherman Act § 2 claim). Without a stay, there is a significant possibility that trials would need to be repeated and expend even more judicial resources. Particularly in a "complex and technical area" such as antitrust law, "[p]iecemeal litigation . . . is especially undesirable" and the "interest of justice may dictate [a stay] to prevent an extravagantly wasteful and useless duplication of the time and effort of the federal courts." *Wolf Designs, Inc. v. Donald McEvoy Ltd., Inc.*, 341 F. Supp. 2d 639, 645 (N.D. Tex. 2004).

To protect judicial resources, courts in this District have granted stays where it "would be an inefficient use of time and resources of the Court and the parties to proceed," given an appellate court's resolution of an issue that would "ultimately impact the course of [the] litigation." *Cable News Network*, 2026 WL 1815527, at *3; *see also UnitedHealthcare Ins. Co. v. Regeneron Pharms., Inc.*, No. 20-CV-10664, 2021 WL 6137097, at *5 (S.D.N.Y. Dec. 29, 2021) (explaining that stays are appropriate where claims in the second case may turn on pending resolution of issues in the first-decided case); *Riverkeeper, Inc. v. EPA*, No. 06-CV-12987, 2007 WL 4208757, at *1-2 (S.D.N.Y. Nov. 26, 2007) (granting stay pending ruling by Fifth Circuit on jurisdictional question to avoid wasting resources of the parties and the court).

In both *Cable News Network* and *UnitedHealthcare*, the courts granted stays pending appeals "aris[ing] from the same nucleus of facts" because "courts have a strong interest in preserving judicial resources and maintaining the efficiency of its docket." *Cable News Network*, 2026 WL 1815527, at *3; *see also UnitedHealthcare*, 2021 WL 6137097, at *4-6. Like those cases, and as recognized in this Court's collateral estoppel ruling, Plaintiffs' cases arise from a common set of facts as to those in the Virginia Action. And here, like *Cable News Network* and

*UnitedHealthcare*, that set of facts will be subject to appeal, and the outcome of Google's appeal may significantly affect issues of liability and the damages at issue. *See Cable News Network*, 2026 WL 1815527, at *3; *UnitedHealthcare*, 2021 WL 6137097, at *5.

Moreover, conflicts between courts will arise and the MDL's full benefits of consistency and efficiency will be lost if the Fourth Circuit reverses. Absent a stay, the Publisher Class case will be remanded to the Northern District of California, splitting it from the efficiencies of this MDL. If the Fourth Circuit then reverses, the Publisher Class case would remain separate, isolated, and no longer benefiting from the efficiencies of pretrial consolidation in this Court. In that scenario, two separate courts would have to adjudicate the motions for relief from a judgment. This would lead to further delay and motion practice to determine whether to transfer the case back to this Court to avoid the risk of conflicting rulings between courts. Should a transfer not occur, the Publisher Class case would remain in the Northern District of California, leaving a high risk for conflicting rulings as two federal judges separately grapple with the implications from the Fourth Circuit's decision (e.g., in the case of a partial reversal, the two courts could differ regarding how that reversal affects the respective Plaintiffs' claims). *See, e.g.*, *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-MD-2885, 2022 WL 17853203, at *7 (N.D. Fl. Dec. 22, 2022) (staying MDL cases pending appeal as the appealed order impacted all cases in the MDL), 2023 WL 8609280, at *3 (N.D. Fl. Aug. 29, 2023) (specifying that the stay extended to hundreds of motions to remand to transferor courts).

## II. <u>A Stay Will Promote The Public Interest And Protect Non-Parties</u>

Protecting non-party witnesses from attending multiple trials for the same cases also supports a stay. Complex antitrust cases like these may require many non-party witnesses to offer testimony on, among other topics, product designs not found unlawful by the Virginia Court. *See*

*supra* at 7. If the trial is not stayed and Google "prevails on even one claim before the Fourth Circuit, this Court will have to hold a second trial . . . in th[ese] complicated case[s]—each potentially lasting multiple weeks and involving many witnesses and pre-trial motions—[that] would impose significant and unnecessary burdens on the Court, the parties, and the witnesses." *Amazon.com, Inc. v. WDC Holdings LLC*, No. 1:20-CV-484, 2023 WL 7272350, at *1 (E.D. Va. Aug. 30, 2023).

Where a stay can reduce the potential burden on non-parties, courts in this District find the interests of non-parties support a stay. For example, in *Estate of Heiser v. Deutsche Bank Trust Co. Americas*, the court specifically highlighted the importance of the interests of the non-parties, holding that failing to stay the case would result in "unnecessary" and "time-consuming" litigation for "third-parties that might be joined in this turnover proceeding" because an ongoing appeal would "rul[e] on legal issues potentially dispositive in this case[.]" No. 11-CV-1608, 2012 WL 2865485, at *5 (S.D.N.Y. July 10, 2012); *see also Consumer Fin. Prot. Bureau v. MoneyLion Techs. In*c., No. 22-CV-8308, 2023 WL 8644377, at *4 n.3 (S.D.N.Y. Dec. 1, 2023) (recognizing the burden litigation can impose on non-parties in granting a stay); *In re MPM Silicones, L.L.C.*, No. 15-CV-2280, 2017 WL 4386378, at *2 (S.D.N.Y. Oct. 2, 2017) (staying proceedings pending appeal of a dispositive legal issue in a related case where trial court proceedings would be "time-consuming" for "third parties that might be joined").

Courts also evaluate the "interests of persons not parties to the civil litigation," who stand to benefit from promoting judicial efficiency and minimizing the possibility of conflicts between different courts. *Wiggins*, 2023 WL 2402866, at *3; *see also Nelson v. G.Skill USA, Inc.*, No. 22-CV-6175, 2023 WL 3300408, at *4 (W.D.N.Y. May 8, 2023); *Nuccio v. Duve*, No. 7:13-CV-1556, 2015 WL 1189617, at *5 (N.D.N.Y. Mar. 16, 2015) (granting a stay in part to "minimiz[e] the

possibility of conflicts between different courts"); *Weaver Corp.*, 701 F. Supp. at 66 ("A stay would also foreclose the very real danger of inconsistent decisions and concomitant waste of judicial resources."); *Catskill Mountains*, 630 F.2d at 306 (granting stay and noting the "particular importance" of "[m]inimizing the risk of inconsistent judgments" between parallel cases); *Cable News Network*, 2026 WL 1815527, at *3 (quoting *Melville v. HOP Energy, LLC.*, No. 21-CV-10406, 2024 WL 4224850, at *4 (S.D.N.Y. Sept. 18, 2024)); *UnitedHealthcare*, 2021 WL 6137097, at *5 (finding that granting a stay pending resolution of a related case in a separate jurisdiction served the public interest).

To the extent that this Court and the California court go forward with trials that apply collateral estoppel concerning issues that are subsequently reversed by the Fourth Circuit, any judgment in Plaintiffs' cases will be premised on incorrect conclusions from the Virginia Court, resulting in conflict between multiple courts. *See Uniloc*, 52 F.4th at 1348-49 (finding that forcing litigation while a preclusive judgment is pending appeal risks the "grotesque result of perpetuating a judgment that rests on nothing more than a subsequently reversed judgment" (citation and quotation marks omitted)).

Moreover, a stay would ensure that citizens of New York and California do not need to participate in repeated jury trials for the exact same case. *See Bohn*, 620 F. Supp. at 433-34 ("The possible duplication of effort . . . is a matter of public interest because it likely imposes an unnecessary burden on this Court and on New York jurors."); *Philips N. Am. LLC v. Glob. Med. Imaging, LLC*, No. 21-CV-3615, 2024 WL 4240920, at *11 (N.D. Ill. Sept. 19, 2024) (dismissing duplicative claims because of their burden on the jury and noting that jurors "deserve treatment as honored guests").

### III. A Stay Will Not Prejudice Plaintiffs, Who Can Still Pursue Their Full Claims For Damages

Finally, courts evaluating a stay consider whether "a delay in adjudicating" will "prejudice the plaintiff." *OV Loop, Inc.*, 2023 WL 7905690, at *5. Here, without a stay, all parties "would be prejudiced by expending time and resources litigating [] question[s] that may be definitively resolved" by the Fourth Circuit. *Pry v. Auto-Chlor Sys., LLC*, No. 23-CV-4541, 2024 WL 3728981, at *2 (S.D.N.Y. Aug. 8, 2024) (granting a stay in part because a stay would prevent prejudice to the non-movant). Moreover, Plaintiffs are not prejudiced because a stay, at most, "only delays realization of [their claimed] damages." *OV Loop*, 2023 WL 7905690, at *7. Plaintiffs will remain free to pursue damages—and, as appropriate, pre- and post-judgment interest—whenever any necessary trials are scheduled following the resolution of Google's imminent appeal. For example, in *OV Loop*, the court granted a stay pending appeal of the challenged patent even though a stay could delay the plaintiff in launching its product to market, as well as its claimed damages. *Id.* at *7. The court reasoned that the stay "would not diminish any potential monetary damages . . . it only delays realization of those damages." *Id.*; *see also Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638, 643 (S.D.N.Y. 2012) ("the only harm to [Plaintiffs] from a stay is delay in achieving a final resolution of [their] claim[s], and that harm may be fully remedied by an award of pre-judgment interest.").[3]

Plaintiffs also raise claims for equitable relief for markets where the Virginia Court has already ordered equitable relief. The Virginia Court stated that its ordered remedies "will be sufficient to effectively pry open to competition the ad tech markets that were injured by Google's

---

[3] Plaintiffs' interest in trying their claims more quickly does not provide grounds for declining to stay their claims in the interest of efficiency. *See, e.g.*, *Cable News Network*, 2026 WL 1815527, at *2-3 (quoting *Diatek Licensing LLC v. Estrella Media, Inc.,* No. 22-CV-3508, 2022 WL 5108090, at *2 (S.D.N.Y. Oct. 4, 2022) ("Plaintiff has not shown prejudice to it aside from the prejudice present in every stay that it will be delayed in prosecuting its case.")).

unlawful conduct, and prevent Google from reverting to anticompetitive conduct in these markets." E.D. Va. Dkt. No. 1858 at 3 (citation and internal quotation marks omitted). Because the Virginia Court's remedies would address any competitive harm from Plaintiffs' challenged conduct, no additional equitable relief is available to Plaintiffs if the Virginia Action remedy decision is unchanged.[4] *See Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 72 (2d Cir. 2016) ("[I]njunctive relief should be no broader than necessary to cure the effects of the harm caused by the violation" (citation and internal quotation marks omitted)); *United States v. Microsoft Corp.*, 253 F.3d 34, 107 (D.C. Cir. 2001) (holding that a remedy must be "tailored to fit the wrong creating the occasion of the remedy."). Even if Plaintiffs were to be entitled to incremental injunctive relief post-trial, they cannot claim any material prejudice where none of the Plaintiffs has sought preliminary injunctive relief. *See OV Loop*, 2023 WL 7905690, at *7; *Pakage Apparel, Inc. v. Tommy John, Inc.*, No. 24-CV-6371, 2024 WL 4117200, at *5 (S.D.N.Y. Sept. 9, 2024) ("Plaintiff has not sought preliminary injunctive relief . . . undermin[ing] Plaintiff's claim that it would suffer prejudice if the Court stays action").

If the Virginia Court's judgment is reversed, Plaintiffs would maintain the right to attempt to prove their entitlement to equitable relief in this Court. In any event, the impending appeal of the Virginia Action to the Fourth Circuit will determine the appropriate scope of any equitable relief concerning Plaintiffs' cases.

---

[4] Neither Gannett nor Daily Mail allege any market that includes Google's advertising-facing ad tech products or that they use such products. *See*, *e.g.*, MDL Dkt. No. 1197 § II; MDL Dkt. No. 1196 § II. While Publisher Class Plaintiffs have alleged Google has monopoly power in certain "ad buying tool" markets, MDL Dkt. No. 1192 § III.A.2, they do not claim they use those tools, *see id*. ¶ 127. As Plaintiffs concede they are not "participant[s] in the very [ad buying tool] markets" they allege are "directly restrained," they are not entitled to injunctive relief in those alleged markets. *See In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 161 (2d Cir. 2016) (affirming dismissal of claim for injunctive relief where plaintiffs were not "participant[s] in the very market that is directly restrained.").

## **CONCLUSION**

For the foregoing reasons, Google respectfully requests that the Court stay proceedings in the above-captioned cases pending resolution of the forthcoming appeal of the final judgment in the Virginia Action.

In the alternative, Google asks that the Gannett and Daily Mail trial be rescheduled to no sooner than the second half of 2027 (with the parties to confer on an appropriate and mutually workable start date that takes into account each side's additional trial commitments). Google's trial counsel from Dunn Isaacson Rhee have conflicting trials scheduled for April, May, and June 2027, and Google's lead in-house counsel have a conflicting arbitration scheduled for June 2027. "It often is proper to postpone a proceeding because of schedule conflicts of counsel." *Lamborn v. Dittmer*, 726 F. Supp. 510, 517 (S.D.N.Y. 1989). To the extent a stay is not granted as to the Publisher Class, Google requests that case be remanded to the Northern District of California and that any denial be without prejudice to permit the Northern District of California's consideration of a stay.

Dated: October 19, 2026

Respectfully Submitted,

Jeannie S. Rhee
Karen L. Dunn
William A. Isaacson
Martha L. Goodman
Jessica E. Phillips
Amy J. Mauser
DUNN ISAACSON RHEE LLP
401 Ninth Street, NW
Washington, DC 20004
Telephone: (202) 240-2900
jrhee@dirllp.com
kdunn@dirllp.com
wisaacson@dirllp.com
mgoodman@dirllp.com
jphillips@dirllp.com
amauser@dirllp.com

Erin J. Morgan
DUNN ISAACSON RHEE LLP
11 Park Place
New York, NY 10007
Telephone: (202) 240-2900
emorgan@dirllp.com

*/s/ Bradley Justus*
Bradley Justus
Allison Vissichelli
Axinn LLP
1901 L Street NW
Washington, DC 20036
Telephone: (202) 912-4700
bjustus@axinn.com
avissichelli@axinn.com

Craig M. Reiser
Christopher Erickson
Axinn LLP
630 Fifth Avenue
New York, NY 10111
Telephone: (212) 728-2218
creiser@axinn.com
cerickson@axinn.com

Justina K. Sessions**
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94603
Telephone: (650) 618-9250
justina.sessions@freshfields.com

*Counsel for Defendants Google LLC, Alphabet Inc., and YouTube LLC*

***Except as to Associated Newspapers Ltd., et al. v. Google LLC, No. 1:21-CV-03446 (PKC)*