IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re Google Digital Advertising Antitrust Litigation** | Case No. 1:21-md-3010 (PKC) |
| *This document relates to:*<br><br>**In re Google Digital Publisher Antitrust Litigation** | Case No. 1:21-cv-7034 (PKC) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO GOOGLE'S MOTION FOR STAY**

# TABLE OF CONTENTS


TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

BACKGROUND ..... 3

LEGAL STANDARD ..... 7

ARGUMENT ..... 7

I. Google's Proposed Appeal Lacks Merit and Cannot Support a Stay. ..... 10

A. Google's *Trinko* argument lacks merit. ..... 10

B. Google does not raise any other colorable appeal arguments. ..... 12

II. The Stay Factors Favor Proceeding with the Litigation. ..... 14

A. The "private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed" weigh against a stay. ..... 15

B. The "private interests of the defendants" cannot support a stay. ..... 17

C. The "interests of the courts" and judicial economy weigh strongly against a stay. ..... 17

D. "Non-parties' interests" do not support a stay. ..... 20

E. The "public interest" does not support a stay. ..... 20

F. Google's delay in moving also counsels against a stay. ..... 21

CONCLUSION ..... 22

# TABLE OF AUTHORITIES

**Cases**

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
472 U.S. 585 (1985) ........ 12

*Capak v. Epps*,
2018 WL 6726553 (S.D.N.Y. Dec. 21, 2018) ........ 14

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. EPA*,
630 F. Supp. 2d 295 (S.D.N.Y. 2009) ........ 9

*Conn. Bar Ass'n v. United States*,
620 F.3d 81 (2d Cir. 2010) ........ 14

*D'Antonio v. Cable News Network, Inc.*,
2026 WL 1815527 (S.D.N.Y. June 24, 2026) ........ 9

*Discover Fin. Servs. v. Visa U.S.A. Inc.*,
598 F. Supp. 2d 394 (S.D.N.Y. 2008) ........ 3, 21

*Discover Fin. Servs. v. Visa U.SA. Inc.,*
2008 WL 11516437 (S.D.N.Y. Oct. 1, 2008) ........ 3

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
637 F.3d 435 (4th Cir. 2011) ........ 13

*Eastman Kodak Co. v. Image Tech. Servs., Inc.,*
504 U.S. 451 (1992) ........ 11

*Equinor USA Onshore Props. Inc. v. Pine Res., LLC*,
917 F.3d 807 (4th Cir. 2019) ........ 13

*FTC v. Anderson*,
1978 WL 1297 (D.D.C. Jan. 11, 1978) ........ 20

*GTFM, Inc. v. Park*,
2002 WL 31890940 (S.D.N.Y. Dec. 30, 2002) ........ 7, 9, 18

*In re American Express Anti-Steering Rules Antitrust Litigation*,
2016 WL 748089 (E.D.N.Y. Jan. 7, 2016) ........ 8, 9, 18, 19

*In re Blood Reagents Antitrust Litigation*,
756 F. Supp. 2d 623 (E.D. Pa. 2010) ........ 20

*In re Google Digital Advert. Antitrust Litig.*,
2025 WL 3012840, at *17 (S.D.N.Y. Oct. 27, 2025) ........ 6, 8, 12, 19

*In re Google Digital Advert. Antitrust Litig.*,
2026 WL 2942363 (S.D.N.Y. Sept. 30, 2026) ........................................................ 6, 17, 19

*In re Google Digital Advert. Antitrust Litig.*,
627 F. Supp. 3d 346 (S.D.N.Y. 2022) ........................................................................ 12

*Kappel v. Comfort,*
914 F. Supp. 1056 (S.D.N.Y. 1996) ............................................................................ 7

*Kaufman v. Time Warner*,
836 F.3d 137 (2d Cir. 2016) ...................................................................................... 12

*Koninklijke Philips N.V. v. Zoll Med. Corp.*,
77 F. Supp. 3d 255 (D. Mass. 2015)......................................................................... 18

*Landis v. North American Co.*,
299 U.S. 248 (1936)............................................................................................... 7, 17

*Laumann v. Nat'l Hockey League*,
2013 WL 837640 (S.D.N.Y. Mar. 6, 2013) ................................................................. 7

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
676 F.3d 83 (2d Cir. 2012) ........................................................................ 7, 14, 17, 21

*Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*,
385 F.3d 72 (1st Cir. 2004)........................................................................................ 21

*Nat'l Coal. on Black Civic Participation v. Wohl*,
2021 WL 694557 (S.D.N.Y. Feb. 22, 2021)......................................................... 14, 15

*Novell, Inc. v. Microsoft Corp.*,
731 F.3d 1064, 1072 (10th Cir. 2013) ........................................................................ 11

*Oahu Gas Serv., Inc. v. Pac. Res., Inc.*,
838 F.2d 360 (9th Cir.1988) ...................................................................................... 13

*OV Loop, Inc. v. Mastercard Inc.*,
2023 WL 7905690 (S.D.N.Y. Nov. 16, 2023)............................................................ 15

*Pry v. Auto-Chlor Sys., LLC*,
2024 WL 3728981 (S.D.N.Y. Aug. 8, 2024)............................................................... 15

*Royal Park Investments SA/NV v. U.S. Bank National Assoc.*,
356 F. Supp. 3d 287 (S.D.N.Y. 2018) ........................................................................ 18

*Scott v. State Farm Mut. Auto. Ins. Co.*,
2021 WL 7542564 (D. Colo. June 18, 2021) .............................................................. 17

*Sherman v. Jacobson*,
247 F. Supp. 261 (S.D.N.Y. 1965) .......... 6, 8

*Strougo v. Barclays PLC*,
194 F. Supp. 3d 230 (S.D.N.Y. 2016) .......... 17

*Sutherland v. Ernst & Young LLP*,
856 F. Supp. 2d 638 (S.D.N.Y. 2012) .......... 15

*Tolbert v. Queens Coll.*,
242 F.3d 58 (2d Cir. 2001) .......... 14

*U.S. Airways, Inc. v. Sabre Holdings Corp.*,
938 F.3d 43 (2d Cir. 2019) .......... 18, 19

*Uniloc USA, Inc. v. Motorola Mobility LLC*,
52 F.4th 1340 (Fed. Cir. 2022) .......... 18

*United States v. Google LLC*,
2026 WL 2754741 (E.D. Va. Sept. 2, 2026) .......... 17

*United States v. Google LLC*,
661 F. Supp. 3d 480 (E.D. Va. 2023) .......... 4

*United States v. Google LLC*,
778 F. Supp. 3d 797 (E.D. Va. 2025) .......... passim

*United States v. Live Nation Ent., Inc.*,
2025 WL 835961 (S.D.N.Y. Mar. 14, 2025) .......... 11

*United States v. Zannino*,
895 F.2d 1 (1st Cir. 1990) .......... 14

*UnitedHealthcare Insurance Co. v. Regeneron Pharmaceuticals, Inc.*,
2021 WL 6137097 (S.D.N.Y. Dec. 29, 2021) .......... 9

*Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*,
540 U.S. 398 (2004) .......... 2, 10, 11, 12

*Weaver Corp. v. Kidde, Inc.*,
701 F. Supp. 61 (S.D.N.Y. 1988) .......... 18

*Wiggins v. Liakas Law, P.C.*,
2023 WL 2402866 (S.D.N.Y. Mar. 8, 2023) .......... 7

*Yamaha International Corp. v. Central Venture, Inc.*,
1991 WL 4548 (S.D.N.Y. Jan. 14, 1991) .......... 9, 18

**Statutes**

Clayton Act Section 4(a), 15 U.S.C. § 15(a) .................................................................... 16

**Other Authorities**

ABA Antitrust Law Section,
*Antitrust Law Developments,* ch. 9.D.1 (9th ed. 2022)........................................................ 16

W. Joseph Bruckner & Matthew R. Salzwedel,
*Plaintiffs' Remedies*, The International Handbook on Private Enforcement of Competition Law 207 (Albert A. Foer & Jonathan W. Cuneo, eds., 2010) ............................................. 16

Wright, Miller & Cooper,
Fed. Practice & Proc. § 4433 (3d ed. 2021)................................................................ 8

**Rules**

Fed. R. Civ. P. 52(a) ........................................................................................................ 13

Fed. R. Civ. P. 60(b) ...................................................................................................... 6, 8

Plaintiffs Genius Media Group, Inc. and The Nation Company LLC, the certified AdX Class that they represent, and Plaintiff Mikula Web Solutions, Inc. (collectively "Plaintiffs") respectfully submit this memorandum in opposition to Google's motion for a stay pending appeal ("Motion" or "Mot.").

## INTRODUCTION

Google's Motion is a last-ditch attempt to further delay the reckoning for its monopolization of multiple internet advertising technology markets. Its attempt is inexplicably tardy and fails to satisfy the applicable standard. Google has long recognized the overlap between the Eastern District of Virginia action and this MDL, but it never sought a stay until after the Court's ruling on summary judgment. Google could have sought, but failed to seek, a stay at multiple junctures, including: when the Department of Justice filed its action in early 2023; when Judge Brinkema ruled against Google on liability over 18 months ago; when Plaintiffs moved for partial summary judgment seeking preclusion based on that decision; and when Google itself moved for summary judgment.

Judge Brinkema oversaw a three-week trial where she questioned witnesses, comprehensively analyzed the relevant markets and the alleged anticompetitive conduct, and issued a decision that is notable for its clarity, comprehensive findings of fact, and precise application of the relevant law. Essentially, Google seeks to stay these proceedings based solely on what it characterizes as a "real risk" of reversal. But Google provides no reasonable basis to believe that the Fourth Circuit will alter Judge Brinkema's amply supported factual findings or her legal conclusions, or will otherwise undermine this Court's application of collateral estoppel—the application of which ensures consistency of judgments across these actions. The absence of any real risk of reversal may explain why Google's papers repeatedly emphasize its intent to appeal while failing to identify any specific supposed reversible error.

Google provides only one argument to support its bid for a reversal—an argument it lost at both summary judgment and trial in the Eastern District of Virginia, and that it lost again when it opposed Plaintiffs' collateral estoppel motion before this Court: that the antitrust claims prosecuted by the DOJ and Plaintiffs are supposedly barred by *Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004). But Google continues to ignore that the challenged conduct—as the EDVA court found—is a tying restraint on *customers* rather than a refusal to deal with *competitors*, and that this distinction places the claims beyond *Trinko*'s reach. And, even if *Trinko* were somehow applicable, which it is not, the EDVA court also found that Google sacrificed short-run benefits in pursuit of its anticompetitive ends, thereby forfeiting any protection that *Trinko* might have offered.

Beyond its desultory invocation of *Trinko*, Google fails to explain why the EDVA court's extensive and well-supported factual findings on market definition, monopoly power, and anticompetitive effects (including procompetitive balancing) face any colorable risk of being reversed on appeal—especially given that such factual findings may only be set aside if clearly erroneous. Indeed, other than a few sentences on why it believes that *Trinko* should apply, Google's Motion merely states that it will seek reversal of the Virginia Court's fact-bound determinations of market definition, monopoly power, and exclusionary conduct without providing any basis for such reversal. Google thus fails to establish that there is a meaningful risk, let alone a "real risk", that its appeal will be successful or that a stay of this action is warranted.

Against that backdrop, none of the stay factors favors Google's request. While conferring no efficiency benefit, a stay would prejudice Plaintiffs' interests "in proceeding expeditiously" with the litigation, and would undermine both judicial efficiency and the public's

interest in the prompt enforcement of the antitrust laws. While effective prosecution of this action would secure relief for the named Plaintiffs and members of the AdX Class, because claims for pre-judgment interest in antitrust actions are routinely denied, Google reaps a reward for every day that judgment is delayed.

Google's posturing is similar to that addressed by Judge Jones in 2008 in the *Discover v. Visa* case:

> "With respect to judicial economy, Defendants have demonstrated clearly by their unwillingness to accept even the most basic underpinnings of [the] decision in the DOJ action, that precluding them from relitigating those core determinations would conserve judicial resources". *Discover Fin. Servs. v. Visa U.S.A. Inc.*, 598 F. Supp. 2d 394, 400 (S.D.N.Y. 2008), *order clarified on reconsideration,* 2008 WL 11516437 (S.D.N.Y. Oct. 1, 2008).

Indefinitely staying remand and the trial of this action—filed in 2020—to await the outcome of that appeal would vitiate the significant efficiencies that this Court created through its collateral estoppel order, and Plaintiffs and the certified class would be prejudiced by the delay.

Google has not articulated any compelling argument why this action should be stayed, and its Motion should be denied.

## **BACKGROUND**

This action was filed in December 2020. Just over two years later, the U.S. Department of Justice filed its action in the Eastern District of Virginia. Google, the Plaintiffs in this action, the Department of Justice, and the two courts quickly recognized that there was substantial overlap between the MDL actions and the Department of Justice action. Google unsuccessfully moved to transfer the EDVA action to this court, arguing that it was concerned that permitting the actions to proceed in separate venues would create "the risk of inconsistent judgments."

EDVA ECF 44-2 at 12.[1] Google argued on that motion that the EDVA action implicated "the same facts [and] relevant markets" and challenged "the same alleged conduct, under the same laws" as the MDL actions. *Id.* at 2, 11. Google conceded that both the MDL actions and the EDVA action are "based on the same legal theories and the same alleged conduct involving the same Google products and services, relying on many of the same documents collected in parallel investigations." EDVA ECF 50 at 5. Judge Brinkema denied that motion, explaining that "the risk of inconsistent judgments" would be "minimize[d]" if she were "the first to reach a final judgment." *United States v. Google LLC*, 661 F. Supp. 3d 480, 493 (E.D. Va. 2023).

Google did not seek to stay the MDL proceedings pending resolution of the EDVA action. Instead, Google successfully moved to coordinate fact discovery between the MDL and EDVA action. *See* ECF 536. At the time, this Court raised the likelihood of "collateral estoppel if the plaintiffs [in EDVA] win". May 16, 2023, Hr'g Tr. at 29:8-10 (ECF 560). As a result of the coordination of fact discovery, the factual records in the EDVA action and the MDL are substantially identical with respect to liability, which Google was aware would be a consequence of its discovery coordination motion.

The EDVA court held a three-week trial on liability in September 2024 that involved 39 live witnesses, hundreds of exhibits, and hundreds of pages of briefing. *See United States v. Google LLC* ("*EDVA Op.*"), 778 F. Supp. 3d 797, 810-11 (E.D. Va. 2025). On April 17, 2025, the EDVA court issued a 115-page opinion finding that Google violated Sections 1 and 2 of the Sherman Act by unlawfully tying its publisher ad server to its ad exchange and monopolizing the markets for publisher ad servers and ad exchanges. *Id.*

[1] References to filings on the docket of *United States v. Google LLC*, No. 23-cv-108-LMB-JFA (E.D. Va.), are cited as "EDVA ECF". The exhibits to the Declaration of Izaak Earnhardt, filed herewith, are cited as "Ex. __."

On May 2, 2025, Google asserted that the EDVA court's opinion "contains multiple errors of law and unsupported factual findings" and announced that it "plan[ned] to appeal it". ECF 949 at 1. Google, however, did not then move for a stay of proceedings in this action pending that appeal. Instead, Google requested leave to move for summary judgment as to the merits of all of Plaintiffs' claims. *Id.* Moreover, in its letter of May 8, 2025, Google opposed Plaintiffs' request for leave to file a motion for partial summary based on collateral estoppel, using many of the same arguments that are repeated in the instant stay Motion—supposed "uncertainty and inefficiency" in light of an anticipated appeal. ECF 977 at 5. But Google did not seek a stay, choosing instead to oppose only consideration of Plaintiffs' motion for collateral estoppel. *Id.*[2]

The Court permitted Plaintiffs to move for partial summary judgment based on collateral estoppel. ECF 990. Google (without requesting a stay) again raised many of the same arguments it makes in the instant motion, *e.g.*, if the Virginia Court's findings are reversed, then "any proceedings in this case that occur in the interim based on collateral estoppel would need to be reopened, risking an enormous waste of judicial resources" "would require a retrial where Google would have the opportunity to present all of its defenses" and "to move for summary judgment" on grounds precluded by collateral estoppel and "in that event, this Court would have wasted time and resources". ECF 1080 at 17.[3]

On October 27, 2025, the Court granted Plaintiffs' motion, precluding Google from:

> "relitigating, inclusive of the balancing of procompetitive benefits and anticompetitive effects, the following findings and conclusions in the E.D. Va. Action: (1) the existence of separate and distinct markets for publisher ad servers

[2] Google proposed to "defer briefing" on collateral estoppel "until after Publishers' class certification motion and Google's summary judgment motion have been resolved." ECF 977 at 8.

[3] Google proposed to "postpone the question of preclusion" until its appeal of the EDVA liability decision was resolved. ECF 1080 at 18.

> and ad exchanges, (2) that the ad server and ad exchange markets are worldwide in scope, excluding countries restricting access to the internet or subject to U.S. sanctions, (3) that Google has engaged in the following anticompetitive conduct which support's the Publisher Movants' claim that it willfully acquired and maintained its monopoly power in the ad server and ad exchange markets: Unlawful Tying, First Look, Last Look, Dynamic Revenue Share and Unified Pricing Rules, and (4) that Google has unlawfully tied DoubleClick for Publishers and AdX in violation of section 1 of the Sherman Act."

*In re Google Digital Advert. Antitrust Litig.* ("*Google III*"), 2025 WL 3012840, at *17 (S.D.N.Y. Oct. 27, 2025).

In that opinion last October, the Court recognized principles that favored granting partial summary judgment and that also undercut the instant Motion:

> "The findings and determinations in E.D. Va. Action are the final word on Google's liability and will be capable of appellate review upon completion of the remedies trial and entry of final judgment." *Id.* at *6.
>
> "If the finding of liability in the E.D. Va. Action were to be reversed on appeal, Rule 60(b), Fed. R. Civ. P., would provide Google with a remedy in any MDL member case in which issue preclusion was applied." *Id.* at *6 (citing *Sherman v. Jacobson*, 247 F. Supp. 261, 270 (S.D.N.Y. 1965)).

Following this Court's collateral estoppel order, Google still did not move for a stay. Instead, Google sought leave to move for summary judgment, and the parties addressed non-precluded issues with extensive briefing, fact statements, and exhibits. *See* ECF 1352, 1353, 1355, 1514, 1515, 1516, 1517, 1570, 1709. The Court denied Google's motion on September 30, 2026, *In re Google Digital Advertising Antitrust Litig.* ("*Google V*"), 2026 WL 2942363 (S.D.N.Y. Sept. 30, 2026), and requested the parties' positions on remand in anticipation of ordering a schedule "leading to trial in this district or remand", ECF 2048. Over 18 months after the EDVA court's opinion was issued, and only after it awaited the outcome of this Court's summary judgment opinion, did Google move for a stay based upon its planned appeal of the EDVA opinion.

## LEGAL STANDARD

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)) (cleaned up). "The person seeking a stay bears the burden of establishing its need," *id*. at 97 (citation omitted), and must establish "a clear case of hardship or inequity in being required to go forward," *Landis,* 299 U.S. at 255. "Courts in this Circuit generally consider five factors when deciding whether to grant a stay pending the outcome of a related action: (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest."[4] *GTFM, Inc. v. Park*, 2002 WL 31890940, at *2 (S.D.N.Y. Dec. 30, 2002) (quoting *Kappel v. Comfort,* 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)). "In balancing these factors, 'the basic goal is to avoid prejudice.'" *Laumann v. Nat'l Hockey League*, 2013 WL 837640, at *2 (S.D.N.Y. Mar. 6, 2013).

## ARGUMENT

This Court's collateral estoppel order determined that, notwithstanding Google's stated intent to appeal, the EDVA liability decision was sufficiently final under Second Circuit law to be given preclusive effect, and that there was "no unfairness to Google in giving preclusive effect" to that decision "in the Moving Plaintiffs' private antitrust actions." *Google III*, at *5-6,

[4] These factors constitute a "rough guide for the district court as it exercises its discretion". *Louis Vuitton*, 676 F.3d at 99. Google's brief in support of its Motion rewrites and reorders those factors. Mot. 7-8 (citing *Wiggins v. Liakas Law, P.C.*, 2023 WL 2402866, at *3 (S.D.N.Y. Mar. 8, 2023)).

*17. Google's Motion transparently seeks retroactive relief from that Order. This Court has already weighed the "risks of resting preclusion on a judgment that is being appealed", concluded that the cases should proceed, and recognized that "the alternative of retrying the common claims, defenses, or issues is even worse." *Id.* at *6 n.7 (quoting 18A Wright, Miller & Cooper, Fed. Practice & Proc. § 4433 (3d ed. 2021)). As the Court noted, should the EDVA liability decision ultimately be reversed, "Rule 60(b), Fed. R. Civ. P., would provide Google with a remedy in any MDL member case in which preclusion was applied." *Id.* at *6 (citing *Sherman*, 247 F. Supp. at 270).

This is not a case like *In re American Express Anti-Steering Rules Antitrust Litigation* ("*American Express*"), 2016 WL 748089 (E.D.N.Y. Jan. 7, 2016) (cited Mot. 6, 10), where Judge Garaufis's decision to defer collateral estoppel and stay trial rested explicitly on the "posture of the Government Decision" in that case. *Id.* at *6, 15. There, a Second Circuit motions panel rejected a request for a stay. *Id.* at *3. Only after argument on the underlying appeal, which allowed the merits panel an opportunity to vote on the outcome, did the Second Circuit enter "on its own motion a temporary stay of the Permanent Injunction and a temporary stay of the Government Action". *Id.* at *4. This *sua sponte* stay was issued while the district court was considering collateral estoppel motions in related proceedings. *Id.* at *3-6.

Here, in contrast, Google has failed to identify any colorable or dispositive appeal issue in the reasoned and well-supported opinion of the EDVA court, *see infra* § I, let alone a "significant set of antitrust issues" of the magnitude and novelty presented in *American Express*, 2016 WL 748089, at *6. Nor are the procedural circumstances that informed the analysis in

*American Express*—an already-briefed and argued Second Circuit appeal with a *sua sponte* stay suggesting the likelihood of reversal—present here.[5]

Because the extraordinary posture of the *American Express* case is absent here, the stay factors decisively favor proceeding with the litigation and denying the stay.[6] Plaintiffs have a clear interest in "proceeding expeditiously with the civil litigation" and would suffer prejudice from further delay, the courts have an interest in securing the judicial efficiencies of collateral estoppel and proceeding while the matter is fresh, and the public has an interest in the prompt enforcement of the antitrust laws. *GTFM*, 2002 WL 31890940, at *2. Non-parties' interests are, at worst, neutral: with the benefit of collateral estoppel, fewer non-parties will be burdened with testimony, and expeditiously proceeding to trial will ensure that non-parties are not subject to disruption indefinitely into the future. Finally, Google's interest in delaying ultimate judgment

[5] *Yamaha International Corp. v. Central Venture, Inc.*, 1991 WL 4548 (S.D.N.Y. Jan. 14, 1991) (cited Mot. 6-7, 9-10), is likewise an unsound comparison. That case resolved around a single dispositive (and largely settled) legal issue, and the *plaintiffs*—who had had lost and appealed to the Ninth Circuit in the parallel proceeding in the Central District of California—were the movants for the stay. *Id.* at *1-2. There, the defendants—the party seeking the benefit of collateral estoppel—suffered no prejudice because, under either collateral estoppel or a stay, the case would not proceed. *Id.* In this case though, a stay would undermine the benefits of already granted collateral estoppel and prejudice the Plaintiffs' interest in proceeding expeditiously to trial.

[6] Google's other cases are not analogous. In *D'Antonio v. Cable News Network, Inc.*, 2026 WL 1815527 (S.D.N.Y. June 24, 2026) (cited Mot. 8), the court granted a stay before discovery pending the outcome of an interlocutory appeal to the Ninth Circuit that would determine the dispositive, threshold question of whether the plaintiffs had Article III standing. *Id.* at *1. Because a lack of Article III standing would deprive the court of jurisdiction, it would make little sense to proceed to discovery before the issue was resolved. *See id.* at *2-3. There is no such threshold issue in this case.

In *Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. EPA*, 630 F. Supp. 2d 295 (S.D.N.Y. 2009) (cited Mot. 8-9), the plaintiffs—anticipating a jurisdictional dispute about the appropriate forum—filed substantively identical parallel suits challenging a nationwide administrative rule involving unsettled legal issues in both the District Court and the Second Circuit, and their petition for review in the Second Circuit, along with petitions from the First and Eleventh Circuits, was consolidated in the Eleventh Circuit by the JMPL. *Id.* at 303-04. Accordingly, the District Court "had yet to address the merits of Plaintiffs' challenge," and the matter had been fully briefed before the Eleventh Circuit, so the District Court stayed the matter, reasoning that the Eleventh Circuit's decision would be "instructive as to the underlying merits of the instant actions." *Id.* at 305. This case is far from the unsettled morass of administrative law issues in *Catskills*, nor have proceedings in the Fourth Circuit begun.

In *UnitedHealthcare Insurance Co. v. Regeneron Pharmaceuticals, Inc.*, 2021 WL 6137097 (S.D.N.Y. Dec. 29, 2021) (cited Mot. 16), the later-filed proceeding was stayed before discovery because resolution of the earlier-filed government action would resolve the overlapping issue of whether the defendant engaged in an illegal kickback scheme, which conduct formed the basis for the claims in the second suit. *Id.* at *4.

cannot justify a stay; the burdens it faces are no different than those of any defendant proceeding to trial.

## I. <u>Google's Proposed Appeal Lacks Merit and Cannot Support a Stay.</u>

Google premises its Motion on its assertion that "there is a real risk of having" a jury trial "unwound because of errors in the Virginia Action decision". Mot. 1. But Google's Motion fails to establish the reality of this supposed risk. Google simply seeks to delay the inevitable trial, thereby prejudicing Plaintiffs.

### A. Google's *Trinko* argument lacks merit.

Google argues that it "expects to challenge the Virginia Action Liability Opinion on appeal, including the court's conclusions that go to the heart of Plaintiffs' claims, such as the holding that Google's conduct was exclusionary and the erroneous application of *Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004)." Mot. 2. The only specific finding Google identifies in its Motion as "inconsistent" with *Trinko* is the "finding of an anticompetitive tie between Google's 'open-web display' ad exchange (tying product) and its 'open-web display' publisher ad server (tied product)". *See* Mot. 12.[7] Google does not attempt to characterize any of the other conduct that formed the basis of the EDVA court's monopolization finding or Plaintiffs' claims—First Look, Last Look, Dynamic Revenue Share, or Unified Pricing Rules—as a "refusal to deal". *See id.* at 13.

[7] As Google previously conceded in opposing Plaintiffs' collateral estoppel motion, the only conduct that could plausibly be characterized as a refusal to deal—user ID encryption—has already been dismissed. *See* ECF 1080 at 9.

Google's tying argument (Mot. 12-13) mischaracterizes both *Trinko*[8] and the EDVA court's findings.[9] *Trinko* does not apply because the tying conduct for which Google was held liable consisted of restraints on customers and is not appropriately characterized as a refusal to deal with rivals. *See EDVA Op.*, 778 F. Supp. 3d at 866-67 ("*Trinko* does not apply to . . . anticompetitive restraints that a monopolist places on its customers, as opposed to its competitors.") (collecting cases); *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 463 n.8 (1992); *United States v. Live Nation Ent., Inc.*, 2025 WL 835961, at *2 (S.D.N.Y. Mar. 14, 2025).[10]

The EDVA court also found *Trinko* inapt: "Unlike in *Trinko*, Google's ad tech business has not operated in a highly regulated industry in which state and federal regulators require the leading firms to share access to capital-intensive infrastructure." *EDVA Op.*, 778 F. Supp. at 867; *id.* ("Google's ad tech products operate in markets where there is no industry-specific 'regulatory structure designed to deter and remedy anticompetitive harm' or otherwise 'perform[] the antitrust function.'") (quoting *Trinko,* 540 U.S. at 412) (alteration in original).

---

[8] Google's assertion that *Trinko* "held the defendant had no obligation under the antitrust laws to design or implement 'new systems . . . simply to make [rivals'] access possible'", Mot. 12 (quoting *Trinko*, 540 U.S. at 410), overstates the holding in *Trinko*. *See Trinko*, 540 U.S. at 410-11 ("The unbundled elements offered pursuant to § 251(c)(3) exist only deep within the bowels of Verizon; they are brought out on compulsion of the 1996 Act and offered not to consumers but to rivals, and at considerable expense and effort. New systems must be designed and implemented simply to make that access possible—indeed, it is the failure of one of those systems that prompted the present complaint. . . . The 1996 Act's extensive provision for access makes it unnecessary to impose a judicial doctrine of forced access.").

[9] *Compare* Mot. 12-13 ("the Virginia Court nevertheless faulted Google for never having developed specific 'real-time bidding' integrations between AdX's 'open-web display' auctions and third-party 'open-web display' publisher ad servers. Liability Opinion at 866-67") with *EDVA Op.*, 778 F. Supp. 3d at 867 ("Here, Google has engaged in tying that effectively has compelled its publisher customers to use DFP if they want to use AdX and receive real-time bids from AdWords advertisers. This tying has had the anticompetitive effect of limiting Google's publisher customers' choice of publisher ad server for reasons other than competition on the merits.") (citation omitted).

[10] *See also EDVA Op.*, 778 F. Supp. 3d at 866 ("Courts have also 'contrast[ed]' the '[r]efusal to deal doctrine' from 'a monopolist's more direct interference with rivals,' such as 'limit[ing] the abilities of third parties to deal with rivals (exclusive dealing)' or 'requir[ing] third parties to purchase a bundle of goods rather than just the ones they really want (tying).'") (quoting *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1072, 1076 (10th Cir. 2013) (Gorsuch, J.)) (modifications in original).

This is "in the Fourth Circuit's view"—where Google will be taking its appeal—"an 'important distinction.'"[11] *Google III*, 2025 WL 3012840, at *12.

Even if a refusal-to-deal analysis were appropriate, "*Trinko* does not purport to set out a 'test'" that is limited only to the facts of *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585 (1985). *In re Google Digital Advert. Antitrust Litig.*, 627 F. Supp. 3d 346, 383 (S.D.N.Y. 2022). Rather, conduct that suggests "a willingness to forsake short-term profits to achieve an anticompetitive end" is indicative of anticompetitive intent that may render a refusal to deal unlawful. *Trinko*, 540 U.S. at 409 (explaining that the economically irrational conduct in *Aspen Skiing* "revealed a distinctly anticompetitive bent" but that Verizon's alleged conduct "tells us nothing about dreams of monopoly"). That is exactly what the EDVA court found, based upon a well-developed trial record.[12]

In sum, Google's *Trinko* argument is not applicable to the conduct the EDVA court found was anticompetitive and thus is neither dispositive nor likely to impact or shape the triable issues.

**B. Google does not raise any other colorable appeal arguments.**

The only other specific finding that Google targets for appeal is whether Google has monopoly power in the ad exchange market, positing that "a reversal of the Virginia Court's determination that AdX had monopoly power in 'open-web display' ad exchanges would also

[11] Google raised this issue in its opposition to Plaintiffs' motion for partial summary judgment, ECF 1080 at 7, and this Court rejected Google's contention that whether the dispute concerns a "regulated industry is not an important factor" in Second Circuit jurisprudence as "utterly without merit." *Google III*, 2025 WL 3012840, at *13; *see also Kaufman v. Time Warner*, 836 F.3d 137, 145 (2d Cir. 2016) ("'Antitrust analysis must always be attuned to the particular structure and circumstances of the industry at issue,' including 'the existence of a regulatory structure designed to perform the antitrust function,' which may 'diminish the likelihood of major antitrust harm.'") (quoting *Trinko*, 540 U.S. at 411-12) (cleaned up).

[12] *EDVA Op.*, 778 F. Supp. 3d at 867 ("like in *Aspen Skiing* but unlike in *Trinko*, Plaintiffs presented evidence that Google sacrificed 'short-run benefits because it was more interested in reducing competition . . . over the long run by harming its smaller competitor[s].' *Trinko*, 540 U.S. at 409 (quoting *Aspen Skiing*, 472 U.S. at 608).") (modifications in original).

undo any trials in Plaintiffs' cases." Mot. 13.[13] But Google does not articulate *any* reason why that *factual finding* would be subject to reversal. The EDVA court made extensive and well-supported factual findings distinguishing open-web display ads from other digital advertising types, *EDVA Op.*, 778 F. Supp. 3d at 821-22, and found that ad exchanges for open-web display advertising are a distinct product market, as recognized by industry participants, including Google, *id.* at 837-40. The EDVA court's monopoly power finding was supported by indirect evidence and expert analysis and by direct evidence of durable supracompetitive pricing and product degradation that Google's own employees acknowledged. *See id.* at 852-56.

Both market definition and market power are questions of fact. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 442 (4th Cir. 2011) ("market definition is a question of fact") (collecting cases); *id.* (citing and quoting *Oahu Gas Serv., Inc. v. Pac. Res., Inc.*, 838 F.2d 360, 363 (9th Cir.1988) ("Our previous decisions establish that both market definition and market power are essentially questions of fact.")). As such, Google would need to meet the heavy burden of showing that Judge Brinkema's factual findings are "clearly erroneous". *See* Fed. R. Civ. P. 52(a)(6) ("Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility."); *Equinor USA Onshore Props. Inc. v. Pine Res., LLC*, 917 F.3d 807, 813 (4th Cir. 2019) ("if the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently") (citation omitted). Given the strength and depth of the record here, and

[13] Although it also suggests that it expects to challenge the EDVA court's "holding that Google's conduct was exclusionary", Mot. 2, Google does not point to any colorable basis for such an appeal.

against Google's failure to identify any error, Google's assertion that these findings will be reversed is not plausible.

Google has offered little more than speculation to show that there is any probability of its success on the merits of its Fourth Circuit appeal or, correspondingly, that the "risk" on which its stay request is premised is real. As explained below, the significant prejudice to the Plaintiffs and the AdX class, the public, and the judicial process of entering a stay substantially outweigh the speculative benefits hypothesized by Google.[14]

## II. The Stay Factors Favor Proceeding with the Litigation.

"If they wish to prevail" on a motion for a stay, "Defendants must carry their burden of demonstrating prejudice—they cannot continue to merely rely on speculation." *Nat'l Coal. on Black Civic Participation v. Wohl*, 2021 WL 694557, at *5 (S.D.N.Y. Feb. 22, 2021); *see Capak v. Epps*, 2018 WL 6726553, at *4 (S.D.N.Y. Dec. 21, 2018) ("Where a defendant is seeking the stay and therefore bears the burden of establishing its need, the Court will not base a stay solely on speculative and uncertain risks to Defendant's interests where no showing of possible prejudice has been made.") (cleaned up). Google has failed to demonstrate prejudice, and the relevant factors thus weigh heavily against a stay.

[14] Because the "person seeking a stay bears the burden of establishing its need," *Louis Vuitton*, 676 F.3d at 97 (cleaned up), Google was obligated to put forth the legal and factual bases for its request in its opening brief. Any attempt to enliven its skeletal appeal issues or raise new ones on reply should be disregarded. *See Conn. Bar Ass'n v. United States*, 620 F.3d 81, 92 n.13 (2d Cir. 2010) ("Issues raised for the first time in a reply brief are generally deemed waived."); *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived") (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).

**A. The "private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed" weigh against a stay.**

A stay of this action, which has been pending for nearly six years, would prejudice Plaintiffs.[15] Further delay has a practical impact; "proceeding expeditiously in lawsuits is a matter of importance given the evidentiary concerns stemming from delay." *Nat'l Coal.*, 2021 WL 694557, at *3; *see id.* ("For instance, a stay could result in witnesses becoming unavailable or suffering from fading memories, which would hamper Plaintiffs' case.").

Contrary to Google's suggestion (Mot. 20), the slim possibility of pre-judgment interest does not cure the prejudice to Plaintiffs.[16] The crux of this case is that Google has been depriving publishers of approximately ten percent of their advertising revenue on open auction display advertising transactions for over a decade, resulting in less revenue to support the content and user functionalities that Publishers support on their websites. A significant, and potentially indefinite, delay in adjudicating whether Google's take rate has been, and continues to be, supracompetitive,[17] whether Google should be permitted to exact those excessive fees going forward, and what Publishers are owed for that injury, is prejudicial to Plaintiffs and cannot be

[15] *Pry v. Auto-Chlor Sys., LLC*, 2024 WL 3728981 (S.D.N.Y. Aug. 8, 2024) (cited Mot. 20), is inapt because the issue in the parallel proceeding there—whether a private right of action for liquidated damages existed at all under the relevant New York statute—was both subject to a split between Appellate Division departments and wholly dispositive of the claims. *Id.* at *2 That is not the case here. *See supra* § I.

[16] The case cited by Google (Mot. 20), *OV Loop, Inc. v. Mastercard Inc.*, 2023 WL 7905690 (S.D.N.Y. Nov. 16, 2023), arose in the patent infringement context, which has a different stay analysis for proceedings initiated under the statutorily authorized "*inter partes* review" process through the Patent and Trademark Appeal Board and different analyses for entitlement to damages. *See id.* at 4. *Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638 (S.D.N.Y. 2012) (cited Mot. 20), is similarly irrelevant; the language quoted by Google refers to the showing of "irreparable harm" that the party seeking must make to obtain a stay of judgment pending appeal. *Id.* at 643.

[17] *See EDVA Op.*, 778 F. Supp. 3d at 852 ("For over a decade, Google has charged durable supracompetitive prices for AdX—taking 20% of each open-web display transaction—and has exhibited an unwillingness to lower AdX's take rate even as the market matured and other ad exchanges reduced their prices.").

cured by the illusory prospect that pre-judgment interest may be available at some indefinite future point in time.

Further, pre-judgment interest for antitrust claims is governed by Clayton Act Section 4(a), 15 U.S.C. § 15(a), is not automatic, and is rarely, if ever, awarded. Indeed, "the court shall consider only": (1) whether a party "made motions or asserted claims or defenses so lacking in merit as to show that such party . . . acted intentionally for delay, or otherwise acted in bad faith"; (2) whether a party "violated any applicable rule, statute, or court order providing for sanctions for dilatory behavior or otherwise providing for expeditious proceedings"; and (3) whether a party "engaged in conduct primarily for the purpose of delaying the litigation or increasing the cost thereof." 15 U.S.C. § 15(a)(1)-(3). Those circumstances may well be presented by Google's Motion, but Google should not be permitted to rely on the availability of such a remedy that it would undoubtedly oppose.[18]

Google's argument (Mot. 3, 5-6, 20-21) that a stay is appropriate because Plaintiffs' claims for equitable relief parallel the remedies ordered in the EDVA action makes little sense. The existence of equitable relief ordered by Judge Brinkema would not preclude the courts overseeing MDL actions from ordering equitable relief regarding the same subject matter. Moreover, Google's argument is premature. As the Court noted in its summary judgment opinion, a "Stipulation and Order of October 7, 2024 provides that expert discovery on equitable remedies will be deferred until after any findings on liability." *Google V*, 2026 WL 2942363, at

[18] Plaintiffs are not aware of any reported case providing pre-judgment interest to antitrust plaintiffs. *See* 1 ABA Antitrust Law Section, *Antitrust Law Developments,* ch. 9.D.1 (9th ed. 2022) ("Although this language was added to the statute in 1980, there is no reported decision awarding prejudgment interest under Section 4(a).") (Ex. 1); W. Joseph Bruckner & Matthew R. Salzwedel, *Plaintiffs' Remedies*, *in* The International Handbook on Private Enforcement of Competition Law 207 (Albert A. Foer & Jonathan W. Cuneo, eds., 2010) ("Because the bar is set high for a plaintiff to show that it is entitled to an award of pre-judgment interest, it appears that no court to date has awarded prejudgment interest to a successful antitrust plaintiff.") (Ex. 2).

*27 (citing ECF 885). Further, the "issue of equitable relief in this action is more appropriately considered in light of a trial record" in this action "and careful review of the relief ordered in the E.D. Va. Action". *Id.* What additional equitable relief may remain to be ordered can be considered after trial in this action, and the mere existence of claims for equitable relief does not support entering a stay.[19]

**B. The "private interests of the defendants" cannot support a stay.**

Google's ordinary burdens in preparing for a damages trial and its obvious interest in delaying payment of a judgment do not amount to the "clear case of hardship or inequity in being required to go forward," *Landis,* 299 U.S. at 255, that it must establish. "Defendants are always burdened when they are sued, and the ordinary burdens associated with litigating a case do not constitute undue burdens" that justify a stay. *Scott v. State Farm Mut. Auto. Ins. Co.*, 2021 WL 7542564, at *3 (D. Colo. June 18, 2021) (cleaned up); *cf. Strougo v. Barclays PLC*, 194 F. Supp. 3d 230, 234 (S.D.N.Y. 2016) (noting that "the prospect of incurring litigation costs, even if substantial" does not justify a stay pending appeal).

**C. The "interests of the courts" and judicial economy weigh strongly against a stay.**

A stay to protect against a speculative risk does not promote judicial economy and undermines the Court's "own well-recognized interest in disposing 'of the causes on its docket with economy of time and effort for itself'". *Louis Vuitton*, 676 F.3d at 104 (quoting *Landis,* 299 U.S. at 254). A stay undermines the interests of the courts in finality and the judicial economy

[19] The applicability of any restrictions on the availability of injunctive relief as to ad buying tools (*see* Mot. 21 n.4) can be evaluated at that later date. In any event, the AdWords ad buying tool was so inextricably linked to the harms in the ad server and ad exchange markets alleged by Plaintiffs and the Department of Justice that the EDVA court concluded that behavioral relief was warranted. *United States v. Google LLC*, 2026 WL 2754741, at *35 (E.D. Va. Sept. 2, 2026) ("Because the Court has found that AdWords demand played a pivotal role in Google's unlawful ad tech campaign, its exclusion from behavioral remedies could allow Google to continue to leverage its buy-side bidding tools to maintain its monopolies in the ad exchange and publisher ad server markets.").

that come from resolving disputes that have been fully and fairly litigated. Remand and trial will move these long-pending disputes toward resolution, whereas a stay would prolong them for an uncertain period without guaranteeing any meaningful reduction in the issues requiring adjudication. Further, the "Court has a substantial interest in proceeding with this action while its knowledge of the underlying facts is still fresh." *GTFM*, 2002 WL 31890940, at *2. The mere possibility of appellate reversal does not outweigh the inefficiency and disruption caused by suspending nearly trial-ready litigation.

Google's truism that there are "risks of proceeding with a case where the predicate ruling is under appeal" (Mot. 10) does not establish that any such risks are present in this action or that those risks justify a stay.[20] Google's claim (Mot. 10-12) that there is a risk of "duplicative litigation" because of the possibility of reversal of the EDVA liability decision appears "theoretical" under the circumstances.[21] Contrary to Google's suggestion (Mot. 11-12), this action lacks the unsettled legal issues—how to define and evaluate two-sided markets—and the improvised jury instruction modifications that resulted in reversal of the jury verdict in *U.S. Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43 (2d Cir. 2019). Far from "illustrat[ing] how

[20] Google's supporting cases are inapt. Unlike in *Weaver Corp. v. Kidde, Inc.*, 701 F. Supp. 61 (S.D.N.Y. 1988) (cited Mot. 10), the order determining collateral estoppel effect has already been issued and thus the rationale for a stay in that case is inapplicable. *See id.* at 66; *see also id.* ("entry of a final judgment will have preclusive effect despite the pendency of an appeal"). *Uniloc USA, Inc. v. Motorola Mobility LLC*, 52 F.4th 1340 (Fed. Cir. 2022) (cited Mot. 10) simply does not say what Google claims. *See id.* at 1347-49 (finding collateral estoppel for defendant, making no mention of a stay, and noting "collateral estoppel can be applied based on a district court decision that is still pending on appeal, and we have affirmed the application of issue preclusion even when the preclusive judgment was pending appeal"). In *Koninklijke Philips N.V. v. Zoll Med. Corp.*, 77 F. Supp. 3d 255, 257 (D. Mass. 2015) (cited Mot. 11), the court stayed the second half of a bifurcated patent damages trial because "the chances of modification of the decision" in a pending interlocutory "appeal to the Federal Circuit Court of Appeals [were] not insignificant." Finally, *American Express* and *Yamaha* are not "instructive" for the reasons explained above at 8-9 and n.5.

[21] The circumstances that created duplication concerns in *Royal Park Investments SA/NV v. U.S. Bank National Assoc.*, 356 F. Supp. 3d 287, 299-300 (S.D.N.Y. 2018) (cited Mot. 10-11, 14-15), are not present here. There, the same trial court, in the same consolidated proceeding, was poised to decide whether the defendant had acted with gross negligence, a factual determination that would directly resolve an element of the stayed claim for indemnification for attorneys' fees; under such circumstances, there was no reason to decide the same issue twice.

fragile antitrust verdicts can be where there is a parallel related proceeding" (Mot. 12), Google's half-hearted retread of its *Trinko* argument (Mot. 12-14) simply underscores how different this case is from *American Express* and *Sabre*. *See supra* § I.

Similarly, Google's expressed concerns about the possible need to repeat lengthy jury trials (Mot. 15-16) ignore the substantial trial efficiencies created by the application of collateral estoppel in this action.

Google is also wrong in asserting (Mot. 15 n.2) that the Act 2 DFP-AdX tie was "not addressed in the Virginia Action". Plaintiffs have been clear that the "Act 2 tie" refers to the coercive effect of the same conduct the EDVA court already found anticompetitive in violation of Sherman Act Section 2.[22]

Google's suggestion (Mot. 17) that remand of this action to the Northern District of California for trial would generate conflicting decisions is unfounded. This Court's collateral estoppel ruling and other pre-trial rulings minimize the possibility of conflicting decisions on remand. Moreover, Google exaggerates the impact of the possibility that the Fourth Circuit will reverse the EDVA court's liability decision and does not provide any reason why the district court in the Northern District of California would be unable to address the issues arising from such a reversal or would be unable to coordinate matters to avoid conflict with the MDL.

---

[22] *See Google V*, 2026 WL 2942363, at *22 (S.D.N.Y. Sept. 30, 2026) ("*Google III* also applied issue preclusion to the finding that Google willfully acquired and maintained monopoly power in the ad-exchange market through Dynamic Revenue Share, Unified Pricing Rules, and the First Look and Last Look features of Dynamic Allocation. The AdX Class asserts that these practices, along with Enhanced Dynamic Allocation, had the cumulative effect of creating an anticompetitive product tie that compelled the customers of DFP (Google's publisher ad server, the tying product) to sell their ad impressions on AdX (Google's ad exchange, the tied product). The AdX Class calls this product tie the 'Act 2' claim.") (citations omitted); Pls.' Mem. of Law in Opp. to Google's Mot. for Summ. J., at 9 (Mar. 16, 2026), ECF 1517 ("Dynamic Allocation, Dynamic Revenue Share, and Unified Pricing Rules each deprived publishers of choice and allowed Google to dictate anticompetitive restraints within DFP that favored AdX bids and drove impressions to AdX at the expense of rivals on terms other than the merits. These three coercive restraints, independently and collectively, imposed the type of conditional tie condemned in *Northern Pacific*.") (citation omitted).

**D. "Non-parties' interests" do not support a stay.**

Google's argument (Mot. 17-19) that the interests of non-parties weigh in favor of a stay also rests on the speculative premise that the Fourth Circuit will reverse the EDVA liability opinion, thus potentially requiring their participation in a second trial. Google ignores, however, that a substantial number of absent class members have an interest in the expeditious resolution of the claims at issue in this action and that potential non-party witnesses have an interest in completing their testimony without undue delay.

**E. The "public interest" does not support a stay.**

There "is a substantial public interest in effective and immediate enforcement of the antitrust laws." *FTC v. Anderson*, 1978 WL 1297 (D.D.C. Jan. 11, 1978) (denying stay of enforcement order). As in *In re Blood Reagents Antitrust Litigation*, 756 F. Supp. 2d 623, 636 (E.D. Pa. 2010), which denied a stay of a class action pending resolution of parallel criminal proceedings, the "public's interest in the enforcement of the antitrust laws is furthered by the expeditious resolution of this class-action lawsuit," which concerns the claims of the thousands of publishers who are class members and who rely on advertising revenues to support online content. Expeditious resolution of the claims of Plaintiffs regarding the extent of Google's overcharges and the damages suffered by publishers serves the interests of members of the class as well as the public at large who use and rely on the open web. That includes the claims of AdSense plaintiff Mikula which will serve other AdSense users, who would be able to pursue collateral estoppel benefits on their similar claims.

By contrast, the generalized "public interests" that Google identifies in avoiding conflicting judgments (Mot. 18-19) and in not empaneling repeat juries (Mot. 19) rest again on the speculative premise that a second trial would be required if the Fourth Circuit reverses the EDVA liability opinion.

Accordingly, the public interest favors allowing case to proceed. Google has not identified any non-speculative harm to the public interest that would result from proceeding to trial. Those benefits of avoiding a purely hypothetical risk do not outweigh the public's concrete interest in the timely enforcement of the antitrust laws and adjudication of the issues in this case.

**F. Google's delay in moving also counsels against a stay.**

Because the decision to stay a case in light of parallel proceedings rests in the discretion of the district court, it may consider additional factors, including "the good faith of the litigants (or the absence of it)" and "the status of the cases". *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 78 (1st Cir. 2004) (Selya, J.); *see Louis Vuitton*, 676 F.3d at 99 (factors are a "rough guide for the district court as it exercises its discretion"). A motion "asking to stay proceedings for an indefinite (and potentially protracted) period" made "on the brink of trial" when "foot-dragging" has already occurred may give "the court good reason for skepticism about the requested stay." *Microfinancial,* 385 F.3d at 79 (affirming denial of stay motion made on the brink of trial where case had been pending for over three years). Here, the EDVA proceeding and decision are not recent events. Google could have moved much earlier, on the same grounds, and it should not be rewarded for its dilatory tactics. Google's Motion demonstrates its "unwillingness to accept even the most basic underpinnings of th[e] decision in the DOJ action". *Discover*, 598 F. Supp. 2d at 400.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion, with prejudice, to prevent Google from seeking further delay by making a similar motion following remand.

Dated: October 26, 2026

Respectfully submitted,

David Boies
dboies@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200

*/s/ Philip C. Korologos*
Philip C. Korologos
pkorologos@bsfllp.com
Robert J. Dwyer
rdwyer@bsfllp.com
James Keyte
jkeyte@bsfllp.com
Luke Williams
lwilliams@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300

Mark C. Mao
mmao@bsfllp.com
Sean P. Rodriguez
srodriguez@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6820

Sabria A. McElroy
smcelroy@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 377-4216

George A. Zelcs
gzelcs@koreintillery.com
Randall P. Ewing
rewing@koreintillery.com
Marc A. Wallenstein
mwallenstein@koreintillery.com
Ryan A. Cortazar
rcortazar@koreintillery.com
**KOREIN TILLERY LLC**
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750

Stephen M. Tillery
stillery@koreintillery.com
Michael E. Klenov
mklenov@koreintillery.com
Carol L. O'Keefe
cokeefe@koreintillery.com
Andrew Ellis
aellis@koreintillery.com
Ian Moody
imoody@koreintillery.com
**KOREIN TILLERY LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844

Eric L. Cramer
ecramer@bm.net
Michael C. Dell'Angelo
mdellangelo@bm.net
Caitlin G. Coslett
ccoslett@bm.net
Patrick F. Madden
pmadden@bm.net
Jeremy Gradwohl
jgradwohl@bm.net
**BERGER MONTAGUE PC**
1818 Market St., Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000

Robert E. Litan
rlitan@bm.net
**BERGER MONTAGUE PC**
1001 G Street, NW
Suite 400 East
Washington, DC 20001
Telephone: (202) 559-9740

*Co-Lead Counsel for the AdX Class*
*and Counsel for Mikula Web Solutions, Inc.*

Izaak Earnhardt
iearnhardt@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave NW, 11th Floor
Washington, DC 2005
Telephone: (202) 237-2727